**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF**
**EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this application (the "<u>Application</u>"):[2]

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"), (a) authorizing, but not directing, the Debtors to appoint Epiq Corporate Restructuring, LLC ("<u>Epiq</u>") as claims and noticing agent ("<u>Claims and Noticing Agent</u>") in the Debtors' chapter 11 cases effective as of the Petition Date (as defined herein) pursuant to the terms and conditions of that certain engagement agreement dated March 9, 2023, by and between the Debtors and Epiq (the "<u>Engagement Agreement</u>"), and (b) granting related relief.  A copy of the Engagement Agreement is attached as <u>Exhibit 1</u> to **<u>Exhibit A</u>** attached hereto.  In support of this Application, the Debtors submit the *Declaration of Kathryn Tran in Support of Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief,* attached hereto as **<u>Exhibit B</u>** (the "<u>Tran Declaration</u>").

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration.

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### Background

5.    The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork is publicly traded on the New York Stock Exchange and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

6.    On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to

Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### Epiq's Qualifications

7.      Epiq comprises leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Epiq's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Epiq's active and former cases in this and other districts include: *In re LTL Management LLC*, No. 23-12825 (MBK) (Bankr. D.N.J. June 7, 2023); *In re Digicel Group Holdings Limited*, No. 23-11479 (JPM) (Bankr. S.D.N.Y. Sep. 11, 2023); *In re American Physicians Partners, LLC*, No. 23-11469 (BLS) (Bankr. D. Del. Sep 18, 2023); *In re Hartman SPE, LLC*, No. 23-11452 (MFW) (Bankr. D. Del. Sep 13, 2023)*; In re Yellow Corporation*, No. 23-11069 (CTG) (Bankr. D. Del. Aug 6, 2023)*; In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. May 8, 2022)*; In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021)*; In re Alamo Drafthouse Cinemas Holdings, LLC,* No. 21-10474 (MFW) (Bankr. D. Del. Mar. 3, 2021); *In re LTL Management LLC,* No. 21-30589 (MBK) (Bankr. D.N.J. Nov. 4, 2021); *In re Aluminum Shapes, L.L.C.*, No. 21-16520 (JNP) (Bankr. D.N.J. Sept. 23, 2021); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports Int'l LLC*, No. 20-12168 (CSS) (Bankr.D. Del. Sept. 16, 2020); *In re RGN Group Holdings, LLC,* No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020); *In re*

*Tonopah Solar Energy, LLC*, No. 20-11884 (KBO) (Bankr. D. Del. July 31, 2020); *In re Grupo*

*AeroMexico, S.A.B. de C.V.* (JPM) (Bankr. S.D.N.Y. June 30, 2020).

8.     By appointing Epiq as the Claims and Noticing Agent in these chapter 11 cases, the

distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved

of the administrative burden of processing what may be an overwhelming number of claims.

9.     Prior to selecting Epiq as their Claims and Noticing Agent, the Debtors solicited

and reviewed engagement proposals from two other Court-approved claims and noticing agents to

ensure selection through a competitive process.   The Debtors submit that Epiq's rates are

competitive and reasonable given Epiq's quality of services and expertise.   The terms of Epiq's

engagement are set forth in the Engagement Agreement.

## **Services to Be Provided**

10.    This Application pertains only to the work to be performed by Epiq under

the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).   Any work to be performed by

Epiq outside of this scope is not covered by this Application or by any order granting approval

hereof.   Specifically, Epiq will perform the following tasks, as necessary, in its role as Claims and

Noticing Agent, as well as all quality control relating thereto:

      a.     prepare and serve required notices and documents in these chapter 11 cases
in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the
Local Rules in the form and manner directed by the Debtors and/or the
Court, including (as applicable) (i) notice of the commencement of these
chapter 11 cases and any initial meeting of creditors under Bankruptcy Code
§ 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of
claims, (iv) notices of objections to claims and objections to transfers of
claims, (v) notices of any hearings on a disclosure statement and
confirmation of the Debtors' plan or plans of reorganization, including
under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan,
and (vii) all other notices, orders, pleadings, publications, and other
documents as the Debtors or Court may deem necessary or appropriate for
an orderly administration of these chapter 11 cases;

b.      maintain, if applicable, an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

c.      maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

d.      update and make the lists described in the previous paragraph 10(c) available upon request by a party in interest or the Clerk;

e.      furnish a notice, if applicable, to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

f.      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

g.      for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service, which affidavit or certificate shall include (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

h.      process all proofs of claim received, including those received by the Clerk, check such processing for accuracy, and maintain the original proofs of claim in a secure area;

i.      maintain an electronic platform for purposes of filing proofs of claim;

j.      maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk and upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers;

k.      specify in the Claims Registers the following information for each claim docketed (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim

(*e.g.*, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

l.     provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

m.     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original proofs of claim;

n.     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

o.     relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of Epiq, not less than weekly;

p.     upon completion of the docketing process for all proofs of claim received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

q.     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

r.     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

s.     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

t.     monitor the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

u.     if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Epiq of entry of the order converting the cases;

v.     thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

    w.      within fourteen (14) days of notice to Epiq of entry of an order closing or dismissing these chapter 11 cases, or within twenty-eight (28) days of entry of a final decree, Epiq shall (i) provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases, (ii) forward to the Clerk an electronic version of all imaged claims, (iii) upload the creditor mailing list into CM/ECF and (iv) docket a final Claims Register.

11.      The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

12.      For the avoidance of doubt, this Application pertains only to services to be provided by Epiq pursuant to 28 U.S.C. § 156(c) and does not seek approval for Epiq to perform any services outside of that scope.

**Professional Compensation**

13.      The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any other party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.      Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $40,000.00.  Epiq seeks to first apply the retainer against all prepetition invoices, which retainer

shall be replenished to the original retainer amount, and, thereafter, hold such retainer during these chapter 11 cases as security for the payment of fees and expenses incurred in performing its duties as Claims and Noticing Agent.

15.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its officers, members, directors, agents, representatives, managers, consultants and employees under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence, willful misconduct, or actual fraud or as otherwise provided in the Engagement Agreement or the Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of the Claims and Noticing Agent in these chapter 11 cases.

## **Disinterestedness**

16.     Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application, Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, except as disclosed in the Tran Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

17.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that:

    a.      Epiq is not a creditor of the Debtors;

    b.      Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

c.    by accepting employment in these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d.    in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.    Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

f.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g.    in its capacity as Claims and Noticing Agent in these chapter 11 cases, Epiq will not intentionally misrepresent any fact to any person;

h.    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.    Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    none of the services provided by Epiq as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

18.    Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**Basis for Relief**

19.    The Debtors request entry of an order appointing Epiq as the Claims and Noticing Agent during the Debtors' chapter 11 cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' chapter 11 cases.  Moreover, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.  The terms of Epiq's retention are set forth in the Engagement Agreement and rate structure incorporated by reference therein, attached hereto as Exhibit 1 to **Exhibit A**.

20.     Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Fed. R. Bankr. P. 2002(f).  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Office of the Clerk of Court (the "Clerk") give notice of the various matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  28 U.S.C. § 156(c).  Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     Due to the size of these chapter 11 cases, the Debtors anticipate that thousands of entities will need to be noticed.  Accordingly, Bankruptcy Rule 2002 and section 156(c) of title 28 of the United States Code both empower and require the Debtors to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

22.     For all of the foregoing reasons, the Debtors believe that the appointment of Epiq as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the fees and expenses that would be incurred by Epiq under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

23.     By separate application, the Debtors intend to seek authorization to retain and
employ Epiq as the administrative agent in these chapter 11 cases pursuant to section 327(a) of the
Bankruptcy Code because the administration of these chapter 11 cases will require Epiq to perform
duties outside the scope of 28 U.S.C. § 156(c).

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

24.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one
days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable
harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into
chapter 11 is critical to the viability of their operations and that any delay in granting the relief
requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the
failure to receive the requested relief during the first twenty-one days of these chapter 11 cases
would severely disrupt the Debtors' operations at this critical juncture.  The appointment of Epiq
as Claims and Noticing Agent is vital to a smooth transition into chapter 11.  Accordingly, the
Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to
support the relief requested herein.

**Request of Waiver of Stay**

25.     To the extent that the relief sought in the Motion constitutes a use of property under
section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under
Bankruptcy Rule 6004(h).  Furthermore, to the extent applicable, the Debtors request that the Court
find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief
requested in this Motion is immediately necessary for the Debtors to be able to continue to operate
their businesses and preserve the value of their estates.

**Waiver of Memorandum of Law**

26.    The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**No Prior Request**

27.    No prior request for the relief sought in this Application has been made to this Court or any other court

**Notice**

28.    The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group; (d) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank; (e) Cooley LLP, as counsel to Cupar Grimmond, LLC; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Securities and Exchange Commission; (j) the Internal Revenue Service; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 6, 2023

/s/ *Michael D. Sirota*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**ORDER (I) AUTHORIZING THE APPOINTMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the appointment of Epiq Corporate Restructuring LLC ("Epiq") as claims and noticing agent ("Claims and Noticing Agent") effective as of the Petition Date, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Tran Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

1.      The Application is **GRANTED** to the extent set forth herein**.**

2.      The Debtors are authorized to retain Epiq as Claims and Noticing Agent, effective as to the Petition Date, pursuant to the terms of the Engagement Agreement, in the form attached hereto as **Exhibit 1**, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

3.      Any services Epiq will provide relating to the Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of their schedules of assets and liabilities and statements of financial affairs.

4.      Epiq shall serve as the custodian of Court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official Claims Registers for each of the Debtors and to provide the Clerk with a certified duplicate of any and all proofs of claim upon the request of the Clerk.

5.      Epiq is authorized and directed to provide public access to every proof of claim unless otherwise ordered by the Court and to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other action to comply with all the duties set forth in the Application.

7.      The Debtors are authorized to compensate Epiq in accordance with the terms of the Engagement Agreement, upon the receipt of reasonably detailed invoices setting forth the services

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

provided by Epiq and the rates charged thereof and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the payment of compensation for services rendered and reimbursement of expenses incurred.

8.      Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, and counsel for any statutory committee appointed in these chapter 11 cases.

9.      Parties shall have seven (7) days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on Epiq, to the fees and expenses being requested by Epiq.  If an objection is interposed, the parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or Epiq's monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful.  If no objection has been raised, the Debtors are authorized to pay Epiq the full amount of the requested fees and expenses upon expiration of the ten (10)-day review period without further order of the Court.  If an objection has been raised, the Debtors may not pay the objected-to amount pending agreement of the parties entry of an order of this Court authorizing such payment. Notwithstanding anything to the contrary contained in the Engagement Agreement, no late charges shall accrue on any invoices.

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.  Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and, thereafter, Epiq may hold its retainer during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Epiq under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement thereof are approved by the Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or actual fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity,

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this

Order.

14.      If, before the earlier of the entry of an order (i) confirming a chapter 11 plan in

these chapter 11 cases (that determination having become final) or (ii) closing these

chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on

account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the

Engagement Agreement, as modified by this Order, including the advancement of defense costs,

Epiq must file an application therefor in this Court, and the Debtors shall not pay any such amounts

to Epiq before the entry of an order of this Court approving the payment.  This paragraph is

intended only to specify the period of time under which the Court shall have jurisdiction over any

request for fees and expenses by Epiq for indemnification, contribution, or reimbursement and is

not intended to limit the duration of the Debtors' obligation to indemnify Epiq.  All parties in

interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or

reimbursement.

15.      In the event Epiq is unable to provide the services set out in this Order, Epiq shall

immediately notify the Clerk and Debtors' counsel and, upon approval of the Court, shall cause

all original proofs of claim and computer information to be turned over to another claims and

noticing agent with the advice and consent of the Clerk and Debtors' counsel.

16.      The limitation of liability section in paragraph 8 of the Engagement Agreement is

deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

(Page | 8)

| Debtors: | WeWork Inc., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

17.    Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 3.2 thereof, Epiq shall provide at least ten (10) days' notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases.

18.    Notwithstanding anything to the contrary contained in the Engagement Agreement, by this Order the Court is not authorizing Epiq to establish accounts with financial institutions in the name of and as agent for the Debtors.

19.    Notwithstanding anything to the contrary contained in the Engagement Agreement, termination of Epiq's retention shall only commence upon entry of an order by this Court terminating Epiq's retention.

20.    Notwithstanding anything to the contrary in the Engagement Agreement, in the event that any of these chapter 11 cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of Epiq.

21.    The Debtors may submit a separate retention application, pursuant to section 327(a) of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Epiq but that is not specifically authorized by this Order.

22.    Notwithstanding any term in the Engagement Agreement to the contrary (including with regard to paragraph 11.3 of the Engagement Agreement), the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

23.    Epiq shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.

(Page | 9)

| Debtors: | WeWork Inc., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

24.     In the event of any inconsistency between the Engagement Agreement and this Order, this Order shall govern.

25.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Application or otherwise deemed waived.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

27.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

28.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29.     The requirement set forth in 9013-1(a)(3) of the Local Rules that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

30.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

31.     A true copy of this Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client.

**3.  Charges.**

3.1  For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly; provided, however, that Epiq will provide an estimated invoice prior to the closing of the transaction which shall be due and payable at closing.  All invoices shall be due and payable upon receipt.

3.2  Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2024.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3   Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4   Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5   Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule; provided, however, that Epiq employees shall not be required to travel in connection with this engagement and shall attend all meetings or hearings telephonically.

3.6   In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7   To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $40,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.   Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5.   Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs,



systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

**6.   Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7.   Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting



solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. <u>Limitation of Liability</u>

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

## 9.   <u>Representations / Warranties.</u>

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. <u>Confidential On-Line Workspace</u>



Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11.  <u>General</u>

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.



11.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>> Epiq Corporate Restructuring, LLC
>> 777 Third Avenue, 12th Floor
>> New York, New York 10017
>> Attn:  Brad Tuttle

> If to Client:
>> WeWork Inc.
>> 75 Rockefeller Plaza
>> New York, NY 10019
>> Attn: Andre Fernandez

> With a copy to:
>> Kirkland & Ellis LLP
>> 601 Lexington Avenue
>> New York, NY 10022
>> Attn:  Alborz Tolou , Esq.

11.11  Invoices sent to Client should be delivered to the following address:

>> WeWork Inc.
>> 75 Rockefeller Plaza
>> New York, NY 10019
>> Attn: Andre Fernandez

> Email:        andre.fernandez@wework.com

11.12  The "Effective Date" of this Agreement is March 9, 2023.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____

Name:  Brad Tuttle

Title:   Senior Managing Director and GM

**CLIENT: WEWORK INC.**

By:_____

Name:  Andre Fernandez

Title:   Chief Financial Officer

_[Signature Page to Epiq Standard Services Agreement]_



# SERVICES SCHEDULE

## Exchange Offer with Rights Offering

➢ Epiq would provide the following exchange agent and subscription agent services in connection with the exchange offer / rights offering event:

- Review the exchange offer / rights offering memorandum for all procedural and timing aspects.

- Confer with DTC about whether the ATOP system can be used or if they have any comments or concerns. (DTC often has constructive feedback after the confidential review of documents relating to an offer that may have special features.)

- Presuming DTC agrees, establish the offer on DTC's ATOP platform, act as ATOP agent for the offer, and coordinate the transaction with DTC on all exchange aspects other than the receipt of funding; or if DTC does not permit the use of their ATOP system for the transaction, facilitate manual processing through Deposit or Withdrawal at Custodian ("DWAC") withdrawals and deposits, although this is not recommended.

- Coordinate the distribution of exchange offer documents to beneficial owners by forwarding the appropriate documents to the reorganization departments of the banks and brokerage firms holding the securities (or their agent), who in turn will contact their beneficial owners.

- Receive a list of backstop parties, generate a unique "backstop party code" for each, and prepare a notice for each backstop party reflecting the relevant backstop party code and related instructions.

- Establish a subscription account to receive rights offering payments from non-backstop parties.

- If needed, establish an escrow account to receive payments from backstop parties.

- Coordinate the DTC eligibility of new first lien notes and new second lien notes with the cooperation of the indenture trustee.

- In connection with the common stock to be distributed, to the extent an Accredited Investor CUSIP can be made DTC eligible, assist with that eligibility process with the cooperation of the transfer agent; or, if not eligible, collect and tabulate registration details from all exchanging holders in the format required by the transfer agent.

- Following any early deadline and expiration, prepare formal reporting of results – and track required funding by exchanging non-backstop holders participating in the rights offering exchange event, and prepare reports for the company's financial advisors regarding (i) tenders by backstop parties; and (ii) overall results, to be used in the preparation of backstop party funding notices.



- In the unlikely event DTC does not agree to make the ATOP system available for the offer, arrange for the DWAC withdrawal of any exchanged notes and the corresponding DWAC deposit of the first lien notes and second lien notes via DWAC deposit.

- Receive information from the financial advisors to utilize in the preparation of backstop party funding notices and prepare such notices for distribution to the backstop parties.

- Prepare the exchange entitlement spreadsheet for DTC based upon transaction details and DTC requirements for review and approval by the company's financial advisors and then DTC.

- If applicable, prepare the upload file of registered holders of restricted stock for the transfer agent.

- Undertake such other duties as may be agreed upon between Epiq and Client.

***Additional services, only if applicable***

**Call Center**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):
  - Create frequently asked questions, call scripts, escalation procedures and call log formats.
  - Record automated messaging.
  - Train Call Center staff.
  - Maintain and transmit call log to Client and advisors.

**Schedules/ Statement Preparation**

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):
  - Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
  - Create and maintain databases for maintenance and formatting of Schedules and Statements data.
  - Coordinate collection of data from Client and advisors.
  - Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**Claims Management**

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims



and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

**<u>Noticing</u>**

➢ Prepare and serve required notices in the potential Chapter 11 case, including:

- Notice of the commencement of the potential Chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;



- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of the potential Chapter 11 case.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

**<u>Miscellaneous</u>**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## SOLICITATION/ EXCHANGE/ SUBSCRIPTION AGENT HOURLY RATES

| Title | Rates |
|---|---|
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $215.00 |

## EXCHANGE/ SUBSCRIPTON AGENT FEE

| | |
|---|---|
| Exchange/ Subscription Agent Fee (Standard Epiq Agent fee for events such as exchange offer, tender offer, consent, election, subscription, mandatory exchange, distribution, or other special event) | $75,000.00 |

## SUBSCRIPTION BANK ACCOUNT

$10,000 to establish account plus hourly charges to administer

## OTHER RATES; ONLY IF APPLICABLE

*Other Hourly Rates*

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $35.00 – $55.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $165.00 – $195.00 |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

\* Quoted at time of request for high volume blasts to all creditors



| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
|---|---|
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## **DATA MANAGEMENT RATES**

| Data Storage, Maintenance and Security | $0.10 per record/month |
|---|---|
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## **ON-LINE CLAIM FILING SERVICES**

| On-Line Claim Filing | NO CHARGE |
|---|---|

## **CALL CENTER RATES**

| Standard Call Center Setup | NO CHARGE |
|---|---|
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## **OTHER RATES**

| Custom Software, Workflow and Review Resources | Quoted at time of request |
|---|---|
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

13

## **Exhibit B**

**Tran Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF KATHRYN TRAN IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Kathryn Tran, being duly sworn, state the following under penalty of perjury and that the

following is true to the best of my knowledge, information, and belief:

1.      I am a Director with Epiq Corporate Restructuring, LLC ("Epiq"), with offices

located at 777 3rd Ave., 12th Floor, New York, NY 10017.  I am authorized to submit this

declaration in support of the *Debtors' Application for Appointment of Epiq Corporate*

*Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date*

(the "Section 156(c) Application").[2]  Except as otherwise noted, I have personal knowledge of the

matters set forth herein, and if called and sworn as a witness, I could and would testify

competently thereto.

2.      Epiq is one of the country's leading chapter 11 administrators, with significant

expertise in noticing, claims administration, soliciting, balloting, and facilitating other

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including several recent cases filed in this District.[3]

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Clerk's office, the claims and noticing services specified in the Section 156(c) Application and the Engagement Agreement.  In addition, at the Debtors' request, Epiq will perform such other claims and noticing services specified in the Section 156(c) Application.  For the avoidance of doubt, pursuant to the Engagement Agreement, Epiq will perform claims and noticing services for the Debtors in these chapter 11 cases.

4.      Subject to Court approval, the Debtors have agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with these chapter 11 cases according to the terms and conditions of the Engagement Agreement.  Payments are to be based upon the submission of a billing statement by Epiq to the Debtors after the end of each calendar month, which shall include a detailed listing of services and expenses.  Epiq has received a $40,000.00 retainer from the Debtors and will first apply the retainer against all prepetition invoices, which retainer shall be replenished to the original retainer amount of $40,000.00 and, thereafter, held the retainer under the Engagement Agreement during these chapter 11 cases as

---

[3]   See, e.g., In re LTL Management LLC, No. 23-12825 (MBK) (Bankr. D.N.J. June 7, 2023); In re Digicel Group Holdings Limited, No. 23 11479 (JPM) (Bankr. S.D.N.Y. Sep. 11, 2023); In re American Physicians Partners, LLC, No. 23-11469 (BLS) (Bankr. D. Del. Sep 18, 2023); In re Hartman SPE, LLC, No. 23-11452 (MFW) (Bankr. D. Del. Sep 13, 2023); In re Yellow Corporation, No. 23-11069 (CTG) (Bankr. D. Del. Aug 6, 2023); In re Armstrong Flooring, Inc., No. 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); In re Gulf Coast Health Care, LLC, No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021); In re Alamo Drafthouse Cinemas Holdings, LLC, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 3, 2021); In re LTL Management LLC, No. 21-30589 (MBK) (Bankr. D.N.J. Nov. 4, 2021); In re Aluminum Shapes, L.L.C., No. 21-16520 (JNP) (Bankr. D.N.J. Sept. 23, 2021); In re RTI Holding Co., LLC, No. 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); In re Town Sports Int'l LLC, No. 20-12168 (CSS) (Bankr.D. Del. Sept. 16, 2020); In re RGN Group Holdings, LLC, No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020); In re Tonopah Solar Energy, LLC, No. 20-11884 (KBO) (Bankr. D. Del. July 31, 2020); In re Grupo AeroMexico, S.A.B. de C.V. (JPM) (Bankr. S.D.N.Y. June 30, 2020).

security for the payment of fees and expenses incurred under the Engagement Agreement. Epiq represents, among other things, the following:

    a.  Epiq is not a creditor of the Debtors;

    b.  Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    c.  by accepting employment in these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

    d.  in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

    e.  Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

    f.  Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    g.  in its capacity as Claims and Noticing Agent in these chapter 11 cases, Epiq will not intentionally misrepresent any fact to any person;

    h.  Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.  Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.  none of the services provided by Epiq as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

    5.    Although the Debtors do not propose to retain Epiq under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of identified potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors.

6.    Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

7.    In addition, to the best of my knowledge, none of Epiq's employees are related to bankruptcy judges in the District of New Jersey, the United States Trustee for Region 3, or any attorney known by Epiq to be employed in the Office of the United States Trustee serving the District of New Jersey and none of Epiq's employees are equity security holders of the Debtors.

8.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Epiq nor any of its professionals have any adverse connection to the Debtors, their creditors, or other relevant parties.  Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

9.    Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and chapter 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.    Epiq Systems, Inc. is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned

Case 23-19865-JKS    Doc 5    Filed 11/07/23    Entered 11/07/23 00:09:58    Desc Main
Document    Page 44 of 46


subsidiary of DTI Topco, Inc. ("DTI Topco").  DTI Topco is a privately-held entity with majority

ownership held by OMERS Administration Corporation ("OAC"), the administrator of the

OMERS pension funds, and managed by OMERS Private Equity Inc. (which together with OAC

are referred to as "OMERS"), and funds managed by Harvest Partners, LP, ("Harvest") a leading

private equity investment firm.

11.     Neither DTI, DTI Topco, OMERS, nor Harvest is currently identified on the

Potential Parties in Interest list.  Nevertheless, the following disclosure is made out of an

abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12.     Designees of OMERS and Harvest are members of the Board of Directors of DTI

Topco ("Parent Board Designees").  No designees of OMERS or Harvest are members of the Board

of Directors of DTI or Epiq, or any other subsidiaries of DTI.  Furthermore, Epiq has the following

restrictions in place:  (i) prior to the Debtors commencing these chapter 11 cases, Epiq did not

share the names or any other information identifying the Debtors with DTI, DTI Topco, OMERS,

Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material

nonpublic information about the Debtors to DTI, DTI Topco, OMERS, Harvest, or the Parent

Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent

Board Designees, work on Epiq client matters or have access to Epiq client information, client

files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the

Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq

operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not

share any employees, officers, or other management with OMERS or Harvest, has separate offices

in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a

director, officer, or employee of OMERS or Harvest (or vice versa other than the Parent

Board Designees).

13.    Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the

Debtors and the Potential Parties in Interest list provided by the Debtors.  Based solely on the

foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections.

Because of any applicable securities laws and the fact that Epiq operates independently from DTI,

DTI Topco, OMERS, and Harvest, prior to the Petition Date, Epiq was unable to further investigate

with either OMERS or Harvest, to the extent necessary, any potential or actual connection between

either OMERS or Harvest and the Debtors and the Potential Parties in Interest.

14.    Epiq has working relationships with certain of the professionals retained by the

Debtors and other parties herein, but such relationships are completely unrelated to these

chapter 11 cases.  Epiq has represented, and will continue to represent, clients in matters unrelated

to these chapter 11 cases, and has had, and will continue to have, relationships in the ordinary

course of its business with certain professionals in connection with matters unrelated to these

chapter 11 cases.

15.    Moreover, to the best of my knowledge, neither Epiq nor any of its partners or

employees holds or represents any interest adverse to the Debtors' estates with respect to any

matter upon which Epiq is to be engaged.  Based on the foregoing, I believe Epiq is a "disinterested

person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in

section 101(14) of the Bankruptcy Code.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated:  November 6, 2023

*/s/ Kathryn Tran*
Kathryn Tran
Consulting Director
Epiq Corporate Restructuring, LLC