**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) MAINTAIN AND ADMINISTER THEIR**
**CUSTOMER PROGRAMS AND (B) HONOR CERTAIN PREPETITION**
**OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (the "<u>Motion</u>"):[2]

## Relief Requested

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "<u>Interim Order</u>" and "<u>Final Order</u>"): (i) authorizing, but not directing, the Debtors to (a) maintain and administer their Customer Programs (as defined herein) and (b) honor certain prepetition obligations related thereto; and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing twenty-eight (28) days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 6003(b) and 6004(h) of the

---

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.    The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork is publicly traded on the New York Stock Exchange and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

6.    On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### The Customer Programs[3]

7.      The Debtors serve more than 100,000 customers across six continents.  The vast majority of the Debtors' revenue comes from the Debtors' core "space-as-a-service" products, which offer members access to flexible workspace and related business amenities and services. WeWork Private Workspace offers individuals and teams access to, among other services, dedicated private workspaces—either dedicated desks, private offices, or full-floor offices—on a month-to-month or fixed-term basis ("WeWork Private Workspace").  The Debtors offer two additional "space-as-a-service" products, which WeWork's customers can use on a standalone basis or to complement their other WeWork subscriptions (collectively, "WeWork Access," and together with WeWork Private Workspace, the "WeWork Membership Programs," and the customers of the WeWork Membership Programs, collectively, the "Member Companies" and each, a "Member Company"):  (a) WeWork All Access, which is a monthly subscription service that allows customers to book workspaces, conference rooms, and private offices online or from their mobile devices on an *ad hoc* basis at select locations around the world ("WeWork All Access"); and (b) WeWork on Demand, a "pay-as-you-go" service that is similar to WeWork All Access but does not require a monthly subscription.

8.      Through the WeWork Membership Programs, Member Companies and their employees are given access to WeWork locations in addition to certain amenities and ancillary services, such as conference rooms, private phone booths, internet, printers, copiers, mail and package handling, front desk services, off-peak building access, shared amenities and common areas, complimentary coffee and other beverages, and daily cleaning.

---

[3]    Although the description of the Customer Programs set forth in this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted some of the Customer Programs.  The Debtors request relief regarding all Customer Programs, regardless of whether any individual Customer Program is specifically identified herein.

9.      In addition to WeWork's core "space-as-a-service" offerings, the Debtors offer a number of other products to customers including, among others, WeWork Workplace, a proprietary office management software and data analytics platform that allows subscribers to manage and optimize their workspaces, whether at a WeWork location or in a customer's own offices, in exchange for a monthly licensing fee (the customers of WeWork Workplace and WeWork's other products and services together with the Member Companies, collectively, the "Customers" and each, a "Customer").

10.      The Debtors maintain their position as the world's leading flexible workspace provider by offering their Customers best-in-class service across all business lines.  In order to meet competitive market pressures, the Debtors have historically provided certain programs to incentivize and improve Customer retention, increase Customer satisfaction and loyalty, and attract new Customers.  Specifically, among other things, the Debtors have offered:  (i) Credits; (ii) Refunds; (iii) Rebates; (iv) Sales Promotions; (v) Service Retainer Refunds; (vi) Referral Programs; and (vi) Non-Cash Payments (each as defined herein, and together with certain other customer programs described below, the "Customer Programs").  As of the Petition Date, the Debtors estimate that there are approximately $14 million of prepetition obligations outstanding related to the Customer Programs.

11.      The Debtors believe that their ability to continue the Customer Programs and honor any obligations thereunder in the ordinary course of business is necessary to maintain their reputation for reliability, remain competitive in the flexible and coworking office space market, ensure Customer satisfaction and retention, and preserve goodwill and WeWork's brand equity. Maintaining the Customer Programs is therefore critical to the Debtors' ongoing operations during

the pendency of these chapter 11 cases and is necessary to maximize the value of their estates for the benefit of all stakeholders.

12.    Accordingly, the Debtors seek authorization, but not direction, to pay any prepetition amounts owed on account of the Customer Programs and to continue honoring their obligations under the Customer Programs in the ordinary course of business on a postpetition basis.

I.    **Member Company and Customer Programs.**

A.    **Credits.**

13.    In the ordinary course of business, the Debtors offer certain credits to Member Companies either in connection with a Member Company's agreement with WeWork (the agreements entered into with Member Companies, the "Membership Agreements," and the Membership Agreements specific to the WeWork Private Workspace service, the "WeWork Private Workspace Agreements") or on an *ad hoc* basis, including as customer service accommodations. As set forth in greater detail below, the Debtors provide three principal forms of credit: (i) Membership Credits; (ii) Satisfaction Credits; and (iii) Service Disruption Abatement Credits (each as defined herein, and collectively, the "Credits"). The Debtors' ability to honor the Credits and to continue issuing Credits in the ordinary course of business is critically important to the Debtors' reputation and their ability to maintain their Customers' goodwill.

14.    ***Membership Credits.*** In the ordinary course of business, pursuant to the Membership Agreements, WeWork issues a preset number of Credits that can be used to pay for certain ancillary services offered at WeWork locations (the "Membership Credits"). Such ancillary services include, among other things, access to conference rooms, private workspaces, access to other WeWork locations, and printing. Typically, Member Companies receive a specified number of Membership Credits per month as specified in their Membership Agreements, which expire at the end of the month in which they are issued and cannot be rolled

over from month to month.  In the event that a Member Company uses all of its Membership

Credits, the Member Company is invoiced for any additional use for the covered services at

scheduled rates.  The Membership Credits are issued under the Membership Agreements for all

WeWork Membership Programs.

15.    ***Satisfaction Credits.***  In the ordinary course of business, the Debtors provide

certain Credits to Member Companies on an *ad hoc* basis to boost Member Companies'

satisfaction and loyalty (the "Satisfaction Credits").  Like the Membership Credits, the Satisfaction

Credits can be used by Member Companies to pay for certain ancillary services at WeWork

locations.  Generally, WeWork employees at specific WeWork locations will issue the Satisfaction

Credits as one-time accommodations or to address Member Company complaints.  The

Satisfaction Credits are offered in connection with the WeWork Membership Programs and are

not redeemable for cash.

16.    ***Service Disruption Abatement Credits.***  In the ordinary course of business, the

Debtors issue certain Credits to compensate Member Companies for service disruptions that may

occur from time-to-time while utilizing a WeWork location (the "Service Disruption Abatement

Credits").  The Service Disruption Abatement Credits are generally issued on an *ad hoc* basis in

the form of a credit that is automatically applied to a Member Company's next monthly invoice.

After negotiations, WeWork may occasionally decide to provide cash payments in lieu of the

Service Disruption Abatement Credits.  The Service Disruption Abatement Credits are offered in

connection with the WeWork Membership Programs.

17.    The Credits, which can generally only be applied to Member Companies' invoices,

are typically not redeemable for cash and, thus, do not require a material cash outlay by the

Debtors.  Virtually all Credits are redeemed in the year they are issued.  In order to maintain brand

equity, attract new Member Companies, and maintain relationships with existing Member Companies, the Debtors seek authority, but not direction, to continue to honor the Credits, including any prepetition obligations related thereto, and to continue issuing new Credits in the ordinary course of business on a postpetition basis consistent with past practice.[4]

**B.      Refunds.**

18.      In the ordinary course of business, the Debtors issue certain refunds to Member Companies (the "Refunds") to promote goodwill, attract new Member Companies, and improve Member Company loyalty.   Under the WeWork All Access Membership Agreements, WeWork All Access subscriptions automatically renew if they are not canceled at least five days prior to their renewal date (*i.e.*, the end of the month).   To accommodate Member Companies who try to cancel shortly after the cancelation deadline, WeWork occasionally offers discretionary Refunds, as is common practice for auto-renewing subscription services.   The Debtors' ability to provide these Refunds is necessary to attract new Member Companies who might otherwise be reluctant or unwilling to subscribe to WeWork's offerings.

19.      WeWork provides certain other Refunds to Member Companies on a case-by-case basis.   For example, WeWork sometimes offers partial Refunds to Member Companies that wish to terminate their WeWork Private Workspace or WeWork All Access subscriptions early due to significant service disruptions.   The Debtors may also offer Refunds to Member Companies for service reservations that are canceled prior to applicable cancelation deadlines (*e.g.*, waiving a cancelation fee for a conference room reservation).   Refunds are generally issued to Member

---

[4]      In the ordinary course of business, the Debtors keep track of the Credits and Refunds (as defined below) together. Therefore, approximate estimates of the amounts of Credits and Refunds issued annually by the Debtors and outstanding obligations due and owing as of the Petition Date are provided in the aggregate.

Companies in their original form of payment (*e.g.*, refunded to a Member Company's credit card) in accordance with the terms of the parties' arrangement.

20.      Offering Refunds maintains Customer goodwill, facilitates trust with new and existing Customers, and is consistent with industry practice.  Moreover, discontinuing or failing to honor the Refunds could harm WeWork's reputation for reliability and best-in-class customer service.  In addition, in certain jurisdictions where WeWork operates, WeWork is required by applicable law to provide consumers full Refunds within a certain time period after purchase.[5] Failure to provide Refunds when required by applicable law could subject WeWork to civil and monetary penalties.  The Debtors estimate that they issue approximately $7.2 million in Credits and Refunds annually.  As of the Petition Date, the Debtors estimate that approximately $670,000 on account of Credits and Refunds.  The Debtors seek authority, but not direction, to pay any prepetition obligations on account of Refunds and to continue paying Refunds in the ordinary course of business on a postpetition basis.

**C.    Rebates.**

21.      In the ordinary course of business, WeWork will negotiate and agree to certain global terms with WeWork's enterprise clients that govern the parties' relationships across locations and WeWork Membership Programs (the "Enterprise Master Agreements").  The Enterprise Master Agreements occasionally include rebates at a negotiated, preset rate for enterprise Member Companies who meet certain regional spend thresholds (the "Rebates").  Because the Rebates are only provided to WeWork's large, enterprise Member Companies, disruption in the Debtors' ability to offer and honor the Rebates may have an outsized effect on

---

[5]    Specifically, consumer protection laws in the United Kingdom and European Union require WeWork to offer consumers full cash refunds within fourteen days of certain purchases.

the Debtors' operations.  The Debtors provide approximately $70,000 of Rebates annually, but since they are typically applied against the Member Companies' accounts payable and are not redeemable for cash, the Rebates do not require material cash outlays.  Nevertheless, and out of an abundance of caution, the Debtors seek authority, but not direction, to continue to honor the Rebates, including any prepetition obligations related thereto, and to continue providing Rebates in the ordinary course of business on a postpetition basis.

### D.     Sales Promotions.

22.     In the ordinary course of business, the Debtors offer sales and other promotions on an *ad hoc* basis, both online and at physical WeWork locations, for select WeWork locations (collectively, the "Sales Promotions").  The Sales Promotions are intended to attract new Member Companies and incentivize existing Member Companies in the form of membership renewal discounts.  For example, WeWork occasionally sends online discount codes to new WeWork Access Member Companies that can be used to redeem a discount on their monthly membership fee for a fixed period of time.  In addition, WeWork sometimes offers prospective WeWork Private Workspace Member Companies the first month free when making a commitment of at least twelve months and occasionally runs seasonal Sales Promotions to promote certain WeWork locations.  The Sales Promotions are not redeemable for cash and thus do not require material cash outlays (*i.e.*, Sales Promotions are provided in the form of discounted future monthly service fees).  Nevertheless, the Sales Promotions have historically been a critical channel through which the Debtors bring in valuable new Member Companies.  Accordingly, the Debtors seek authority, but not direction, to continue to offer the Sales Promotions and to honor any prepetition obligations related thereto in the ordinary course of business on a postpetition basis.

### E.    Service Retainers.

23.    The Debtors operate the WeWork Private Workspace service in accordance with the terms of the individual WeWork Private Workspace Agreements entered into between WeWork and Member Companies.  Pursuant to the WeWork Private Workspace Agreements, each Member Company is required to pay a "Service Retainer" fee (the "Service Retainers") in addition to a monthly membership fee and an initial set-up fee, prior to the commencement of the Member Company's WeWork Private Workspace subscription term.  Upon paying their Service Retainers, Member Companies, including their authorized employees, gain access to the benefits provided in their WeWork Private Workspace subscription.  In general, Service Retainers are equal to approximately two months of the WeWork Private Workspace Agreement's monthly service fee.  So long as a Member Company makes all other payments and completes all other obligations under its WeWork Private Workspace Agreements prior to its conclusion, WeWork will refund the Member Company's Service Retainer (a "Service Retainer Refund"), subject to WeWork's contractual right to make certain deductions and offsets (including for damages or unpaid fees), if applicable.  The amount owed as the Service Retainer Refund is not known until the WeWork Private Workspace Agreement is concluded.  As of the Petition Date, the Debtors estimate that they owe approximately $8.8 million of accrued and unpaid Service Retainer Refunds.

24.    The Service Retainers are an integral part of the WeWork Private Workspace Agreements.  Any failure or disruption to the Debtors' timely issuance of Service Retainer Refunds could lead to irreparable reputational harm, alienate Member Companies (which may be driven to the Debtors' competitors or seek alternative workspace), and create unnecessary confusion at the outset of these chapter 11 cases.  Accordingly, the Debtors believe that continuing to meet their obligations under the WeWork Private Workspace Agreements, including in connection with

Service Retainer Refunds, is critical to the Debtors' successful reorganization.  Accordingly, the

Debtors seek authority, but not direction, to honor prepetition amounts owed in connection with

Service Retainer Refunds and to continue paying Service Retainer Refunds in the ordinary course

of business on a postpetition basis.

## II.    Referral Programs.

25.     The Debtors offer certain referral incentives to WeWork Member Companies and

third-party brokers to encourage new Member Company referrals to WeWork Private Workspace

and WeWork All Access services (the "Member Referral Program" and the "Broker Referral

Program," respectively, and together, the "Referral Programs").  The Company also maintains a

referral program that provides employees who refer new Member Companies a similar

referral bonus.[6]  Through the Referral Programs, eligible Member Companies and Brokers (as

defined herein) are incentivized to refer new Member Companies to WeWork.  The Referral

Programs constitute a vital component of WeWork's strategy to grow its Customer base and attract

new clientele.

### A.    The Member Referral Program.

26.     In general, the Member Referral Program rewards both existing Member

Companies that make successful referrals and qualified new Member Companies by rewarding

each (i) one free additional month of membership and (ii) a cash bonus ((i) and (ii), together,

a "Referral Bonus").

---

[6]    For the avoidance of doubt, through this Motion, the Debtors do not seek authority to continue the employee referral program or pay any prepetition amounts thereunder.  The Debtors seek such relief with respect to employees in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

27.     To make a referral, existing Member Companies are provided a unique referral link, which they can share with prospective Member Companies, including via posts on social media or directly to individuals who have requested a link.  The magnitude of the cash component of the Referral Bonus is determined by several factors including, but not limited to, (i) the WeWork Membership Program that the Member Company subscribed to, (ii) the amount of office space the Member Company is contracting to use, and (iii) the geographic location of the selected WeWork workspace.  In the United States, the cash component of the Referral Bonus ranges from approximately $250 to $2,500 depending on the service subscribed to and the amount of space occupied by the new Member Company.  As of the Petition Date, the Debtors estimate that they owe approximately $40,000 in accrued and unpaid Referral Bonuses to existing and newly referred Member Companies.

**B.     Broker Referral Programs**.

28.     WeWork utilizes a network of third-party brokers and institutional brokerages (collectively the "Brokers") to attract new Member Companies and develop its global clientele. Through WeWork's proprietary "Broker Platform," WeWork allows individual Brokers to earn commission for making successful referrals on an *ad hoc* basis (the "Broker Commission"). To earn a Broker Commission, participating Brokers must register via WeWork's Broker Platform by making an account and providing certain information including, but not limited to, information about the brokerage firm that that the Broker represents, the prospective Member Company's name and contact information, and the prospective Member Company's location of interest.  Typically, WeWork remits Broker Commissions within sixty days of a Member Company entering a Membership Agreement with WeWork.  The Broker Commissions vary on a case-by-case basis but typically range from 3 percent of the contract value for Membership Agreement renewals to

10 percent of the contract value for new Membership Agreements, depending on the facts and circumstances of each referral.

29.     In addition to the Broker Commissions offered via the Broker Platform, WeWork has partnered with several institutional Brokers to serve as exclusive Brokers at select WeWork locations pursuant to written agreements (the "Brokerage Agreements").  Under the terms of the Brokerage Agreements, institutional Brokers typically work with WeWork to develop and execute marketing strategies at specific WeWork locations.  Like the Broker Commissions provided on WeWork's Broker Platform, Broker Commissions under the Brokerage Agreements are earned on account of successful new Member Company referrals, ranging from approximately between 2.5 percent and 5 percent of the total contract value for new Member Company referrals. By partnering with institutional Brokers through the Brokerage Agreements, WeWork can tap into its Brokers' existing networks of prospective Member Companies who may not be familiar with WeWork or the benefits of flexible workspaces.

30.     The Broker Referral Program is by far the largest of the Referral Programs. Through the Broker Referral Program, WeWork is able to maintain relationships with hundreds of individual Brokers and leverage a network and scale it would be unable to achieve if acting alone. The Broker Referral Program also fosters goodwill among WeWork's existing Member Companies, employees, and network of third-party Brokers and supports WeWork's brand image. Absent the Debtors' ability to maintain the Broker Referral Program, Brokers would not be incentivized to help bring in new clientele, which would jeopardize WeWork's relationships with their long-term Brokers and, ultimately, would be value destructive.

31.     On average, the Debtors spend approximately $2.9 million per month on account of the Referral Programs, almost all of which is in the form of Broker Commissions.  As of the

Petition Date, the Debtors estimate that they owe approximately $3.2 million in accrued but unpaid Broker Commissions.  Through this Motion, the Debtors seek authority, but not direction, to pay any prepetition amounts outstanding on account of the Referral Programs, including accrued and unpaid Referral Bonuses and Broker Commissions, and to continue meeting their obligations in connection with the Referral Programs in the ordinary course of business on a postpetition basis.

### III.   Credit Cards and Other Payment Processors.

32.     In addition to cash, the Debtors accept certain non-cash methods of payment from Customers, including, through American Express, Visa, Mastercard, Diners, Discover, and JCB, among others (the "Non-Cash Payments").[7]  To process Non-Cash Payments, the Debtors are party to certain agreements (the "Payment Processing Agreements") with payment processors (each, a "Payment Processing Company"), such as Adyen N.V., CyberSource, and Stripe, Inc.

33.     Pursuant to the Payment Processing Agreements, the Debtors generally receive net Customer sales less any chargebacks, returns, and processing fees.  The processing fees charged by each Payment Processing Company vary depending on the location of the transaction and the type of transaction but average approximately 3.1 percent for credit card transactions and 1.5 for debit card transaction (the "Processing Fees").  Some of the Payment Processors also hold cash deposits and/or letters of credit to minimize their exposure to chargebacks.  As of the Petition Date, the Debtors have an outstanding balance of approximately $1.2 million in Processing Fees.

34.     The Debtors' continued acceptance of Non-Cash Payments and performance under the Payment Processing Agreements is critical to the operation of the Debtors' business because the majority of the Debtors' sales are made using Non-Cash Payments.  Declining to accept

---

[7]     In addition to the cash and Non-Cash Payments, certain WeWork locations accept gift cards.  The Debtors' gift cards, which are only offered at certain WeWork locations are described in the Other Customer Programs section (as defined herein).

Non-Cash Payments or ceasing to perform under the Payment Processing Agreements would have a severe negative effect on the Debtors' business. To avoid disrupting these vital payment processing services, the Debtors seek authority, but not direction, to pay any prepetition amounts owed on account of the Processing Fees and under the Payment Processing Agreements, and to continue paying the Processing Fees and performing under the Payment Processing Agreements in the ordinary course of business on a postpetition basis.

## IV.    Other Customer Programs.

35.    The Debtors offer certain other miscellaneous Customer Programs (the "Other Customer Programs"), including market-specific Customer Programs operated at the regional level. For example, certain WeWork locations have historically offered WeWork gift cards on an *ad hoc* basis at the discretion of the location's employees. Certain WeWork locations may on occasion bring local vendors in to provide Member Companies with complimentary benefits, such as free breakfast for the Member Companies' employees, with WeWork receiving a discount from the vendor in exchange for joint marketing. The Debtors rely on the Other Customer Programs to increase Customer satisfaction and loyalty, improve retention, and respond to market-specific expectations. Typically, the Other Customer Programs are not redeemable for cash and thus do not require a cash outlay by the Debtors. The Debtors do not believe any material obligations related to the Other Customer Programs remain outstanding as of the Petition Date. Out of an abundance of caution, the Debtors seek authority, but not direction, to pay all prepetition amounts outstanding on account of the Other Customer Programs and to continue meeting their obligations in connection with the Other Customer Programs in the ordinary course of business on a postpetition basis.

**Basis for Relief**

I.    **Continuing to Honor the Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a), 363(b), and 1108 of the Bankruptcy Code**.

36.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S. 286, 311 (1882) ("Many circumstances may exist which may make it necessary and indispensable to the business . . . and the preservation of the property, for the receiver to pay pre-existing debts."); *In re Lehigh & N. Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (finding payment of prepetition obligations appropriate where (i) such payment "is essential to the continued operation of the [business] during reorganization" and (ii) there exists a "possibility that the creditor will employ an immediate economic sanction, failing such payment.");  *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–26 (D. Del. 1999) (acknowledging section 105(a) of the Bankruptcy Code as a standalone statutory basis for the payment of prepetition obligations and synthesizing Third Circuit law into the general rule that payment of such prepetition obligations is appropriate where failure to pay places the business in serious jeopardy).  Courts acknowledge several legal theories rooted in the Bankruptcy Code that support the payment of prepetition obligations.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (acknowledging sections 105(a) and 1107(a) of the Bankruptcy Code as statutory bases for paying prepetition obligations).

37.    Section 1107(a) of the Bankruptcy Code (i) grants a debtor in possession the "rights . . . and powers . . . of a trustee" and (ii) mandates a debtor in possession to perform "all the functions and duties . . . of a trustee."  11 U.S.C. § 1107(a).  In turn, section 1108 of the Bankruptcy Code authorizes a debtor in possession to "operate the debtor's business." 11 U.S.C. § 1108.

38.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and

a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale

or lease of property of the estate under this section, courts require the debtor to show that a sound

business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward*

*Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999)

(collecting cases); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A.*

*Phillips, Inc.)*, 29 B.R. 391, 397 (relying on section 363 to allow contractor to pay prepetition

claims of suppliers who were potential lien claimants because the payments were necessary for

general contractors to release funds owed to debtors); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,

175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment

of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987)

(requiring the debtor to show a "good business reason" for a proposed transaction under

section 363(b) of the Bankruptcy Code).

39.     Courts also authorize payment of prepetition claims in appropriate circumstances

based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies

a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).

Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when

essential to the continued operation of a debtor's businesses.  *See In re Just for Feet*,

242 B.R. at 825–26.   Specifically, a court may use its power under section 105(a) of the

Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of

payment" rule (also referred to as the "doctrine of necessity").  *See In re Ionosphere Clubs*,

98 B.R. at 176; *In re Lehigh & N. Eng. Ry Co.*, 657 F.2d at 581 (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

40.    Accordingly, the Court has authority to authorize the Debtors to continue the Customer Programs, and pay prepetition claims arising thereunder, pursuant to sections 105(a), 363(b), and 1108 of the Bankruptcy Code.  Continuing to administer the Customer Programs without interruption during the pendency of these chapter 11 cases is critical to preserve the value of the Debtors' assets by, most importantly, preserving Customer goodwill and the Debtors' market share, which will benefit from continuing the Customer Programs.

41.    Failure to honor the Customer Programs could place the Debtors at a competitive disadvantage in the marketplace, amplifying the negative effect of any customer uncertainty that may arise from these chapter 11 cases.  Such uncertainty could erode the Debtors' hard-earned reputation and brand loyalty, which could adversely impact their prospects for a successful emergence from bankruptcy.  Maintaining the Customer Programs and the corresponding relationships will ensure a smooth transition immediately following the filing of these

chapter 11 cases.  Accordingly, the Debtors submit that they have shown sufficient cause to warrant the authority to honor any amounts owed in connection with the Customer Programs.

42.    Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts in this district and others have granted relief similar to that requested here. *See, e.g.*, *In re Rite Aid., Corporation*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (authorizing the debtors to administer any customer programs that were in effect prepetition and honor any prepetition obligations related thereto on an interim basis); *In re Cyxtera Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (authorizing the debtors to administer any customer programs that were in effect prepetition and honor any prepetition obligations related thereto on a final basis); *In re David's Bridal, LLC, et al.,* No. 23-13131 (Bankr. D.N.J. May 18, 2023) (CMG) (same); *In re L'Occitane, Inc.*, No. 21-10632 (Bankr. D.N.J. Feb. 2, 2021) (MBK) (same); *In re SLT Holdco, Inc., et al.* Case No. 20-18368 (Bankr. D.N.J. July 29, 2020) (MBK) (same).[8]

## II.    Continuing the Customer Programs and Honoring any Prepetition Amounts Owed Thereunder is in the Best Interests of the Debtors' Business and Their Estates.

43.    Continuing to administer the Customer Programs without interruption during the pendency of these chapter 11 cases will help to preserve the Debtors' valuable Customer and partner relationships and goodwill and maintain and drive additional business, all of which will inure to the benefit of the Debtors' stakeholders and their estates.  If the Debtors are unable to continue the Customer Programs postpetition or pay amounts due and fulfill obligations owing on account of the Customer Programs, the Debtors risk alienating certain Customer constituencies (who might then initiate business relationships with the Debtors' competitors) and suffer

---

[8]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request made to the Debtors' proposed counsel.

corresponding losses in Customer acquisition and loyalty that will harm the Debtors' prospects for

a successful reorganization or otherwise damage the value of their estates.  Importantly, the

Debtors' competitors maintain programs similar to the Customer Programs, meaning that

customers have a ready audience willing to meet their needs and poach business from the Debtors

at this crucial time.

44.      Accordingly, the Debtors have shown cause sufficient to warrant the authority to

continue the Customer Programs and to honor any obligations relating thereto, and request that the

relief sought herein be approved on the terms set forth in the proposed Interim and Final Orders.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

45.      Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one

days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into

chapter 11 is critical to the viability of their operations and that any delay in granting the relief

requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the

failure to receive the requested relief during the first twenty-one days of these chapter 11 cases

would severely disrupt the Debtors' operations at this critical juncture.  Continuing to administer

the Customer Programs is vital to a smooth transition into chapter 11.  Accordingly, the Debtors

have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support

the relief requested herein.

## Request of Waiver of Stay

46.      To the extent that the relief sought in the Motion constitutes a use of property under

section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under

Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find

that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested

in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### **Waiver of Memorandum of Law**

47.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### **Reservation of Rights**

48.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or of a type otherwise specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are

valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Prior Request

49.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Notice

50.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group; (d) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank; (e) Cooley LLP, as counsel to Cupar Grimmond, LLC; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Securities and Exchange Commission; (j) the Internal Revenue Service; (k) the Payment Processing Companies; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 6, 2023
*/s/ Michael D. Sirota*
_____

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Edward O. Sassower, P.C. |
| Felice R. Yudkin, Esq. | Joshua A. Sussberg, P.C (*pro hac vice* pending) |
| Ryan T. Jareck, Esq. | Steven N. Serajeddini, P.C. (*pro hac vice* pending) |
| Court Plaza North, 25 Main Street | Ciara Foster (*pro hac vice* pending) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| Telephone:     (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | Telephone:     (212) 446-4800 |
| wusatine@coleschotz.com | Facsimile:     (212) 446-4900 |
| fyudkin@coleschotz.com | edward.sassower@kirkland.com |
| rjareck@coleschotz.com | joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |
| | ciara.foster@kirkland.com |

*Proposed Co-Counsel for Debtors and Debtors in Possession*

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

---

In re:

WEWORK INC., *et al.*,

      Debtors.[1]

Chapter 11

Case No. 23-19865 (JKS)

(Joint Administration Requested)

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**INTERIM ORDER (I) AUTHORIZING THE
DEBTORS TO (A) MAINTAIN AND ADMINISTER THEIR
CUSTOMER PROGRAMS AND (B) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Finals Orders (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to (i) maintain and administer their Customer Programs and (ii) honor certain prepetition obligations related thereto, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief |

of the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, **2023, at** _____

**(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be

actually received by the Debtors' proposed counsel on or before _____, **2023,**

**at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an

order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, to continue to administer the

Customer Programs (including, but not limited to, those discussed in the Motion) currently in

effect and honor any undisputed prepetition obligations related to the Customer Programs, in each

case in the ordinary course of business, consistent with prepetition practices, and to modify,

replace, or terminate any Customer Programs in the ordinary course of business; *provided*,

*however*, the Debtors shall provide five (5) business days' notice, or such other notice as is

reasonably practicable, before making any material changes to, or terminating, any of the

Customer Programs to any statutory committee appointed in these cases, the U.S. Trustee,

Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group, and

Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank.

4.      Notwithstanding the relief granted in this Interim Order and any actions taken

pursuant to such relief, nothing in this Interim Order is intended as or shall be construed or deemed

to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief |

claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

(Page | 6)

| Debtors: | WeWork Inc., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief |

5.      Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made pursuant to the authority granted in this Interim Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders.  To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Interim Order, the terms of the Cash Collateral Orders shall control.

6.      The Debtors are authorized, but not directed to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

7.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

(Page | 7)
Debtors:              WeWork Inc., *et al.*
Case No.              23-19865 (JKS)
Caption of Order:     Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer
                      Their Customer Programs and (B) Honor Certain Prepetition Obligations
                      Related Thereto, and (II) Granting Related Relief

designation of any particular check or electronic payment request as approved by this Interim

Order.

8.      Nothing contained in the Motion or this Interim Order is intended or should be

construed to create an administrative priority claim on account of any of the Customer Programs.

9.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents

of the Motion or otherwise deemed waived.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Interim Order in accordance with the Motion.

11.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim

Order shall be effective and enforceable immediately upon entry hereof.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

13.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

14.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion

on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2)

business days after the entry of this Order.

15.     Any party may move for modification of this Interim Order in accordance with

Local Rule 9013-5(e).

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief |

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## Exhibit B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:        (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

---

In re:

WEWORK INC., *et al.*,

      Debtors.[1]

Chapter 11

Case No. 23-19865 (JKS)

(Joint Administration Requested)

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO (A) MAINTAIN AND ADMINISTER THEIR
CUSTOMER PROGRAMS AND (B) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through seven (7), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) and Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) maintain and administer their Customer Programs and (ii) honor certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) and Granting Related Relief |

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue to administer the Customer Programs (including, but not limited to, those discussed in the Motion) currently in effect and honor any undisputed prepetition obligations related to the Customer Programs, in each case in the ordinary course of business, consistent with prepetition practices, and to modify, replace, or terminate any Customer Programs in the ordinary course of business.

3.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code;

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) and Granting Related Relief |

(i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

4.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made pursuant to the authority granted in this Final Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders.  To the extent there is any inconsistency

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) and Granting Related Relief |

between the terms of the Cash Collateral Orders and this Final Order, the terms of the Cash Collateral Orders shall control.

5.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

7.      Nothing contained in the Motion or this Final Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

9.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) and Granting Related Relief |

11.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

12.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.