**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:    (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al*., | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE**
**ENTERED INTO PREPETITION AND PAY RELATED PREPETITION**
**OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE**
**INSURANCE AND SURETY COVERAGE AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion (the "Motion"):[2]

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**Relief Requested**

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as

**Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing,

but not directing, the Debtors to (i) maintain insurance and surety coverage under the Insurance

Policies and the Surety Bonds (as applicable) (each as defined herein) entered into prepetition

and pay related prepetition obligations in the ordinary course of business and (ii) renew,

supplement, modify, or purchase insurance and surety coverage in the ordinary course of

business on a postpetition basis, and (b) granting related relief.  In addition, the Debtors request

that the Court schedule a final hearing twenty-eight (28) days after the commencement of these

chapter 11 cases to consider entry of the Final Order.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order*

*of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court's entering

a final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11

of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal

---

[2]   A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to
the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of
WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed
contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed
to them in the First Day Declaration.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the

Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### Background

5.     The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or

the "Company"), are the global leader in flexible workspace, integrating community, member

services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's

mission is to create a collaborative work environment where people and companies across a

variety of industries, from freelancers to Fortune 100 companies, come together to optimize

performance.  WeWork is publicly traded on the New York Stock Exchange and employs over

2,650 full-time and fifty part-time workers in the United States and abroad.  The Company

operates over 750 locations in thirty-seven countries and is among the top commercial real estate

lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the

fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced

these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and

position WeWork for sustainable, long-term growth.

6.     On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion

requesting procedural consolidation and joint administration of these chapter 11 cases pursuant

to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No request for the appointment of a trustee or examiner has been made in these chapter

11 cases, and no official committees have been appointed or designated.

## The Insurance Policies and Related Payment Obligations

7.      In the ordinary course of business, the Debtors maintain approximately 41 insurance policies (collectively, the "Insurance Policies") administered by various third-party insurance carriers (collectively, the "Insurance Carriers").  Generally, the Insurance Policies fall into the following categories:  auto, crime, flood, workers' compensation, property, terrorism, business travel accident, crime, cyber/errors and omissions, director and officer liability (including tail coverage), pollution, general and excess liability, and umbrella liability.[3]  As of the Petition Date, the Debtors owe approximately $15.4 million with respect to the Premiums (as defined herein) and related fees paid in connection with the Insurance Policies.

8.      A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[4]

9.       The Debtors' ability to maintain the Insurance Policies, to renew, supplement, and modify the same as needed, and to enter into new insurance policies in the ordinary course of business is essential to preserving the value of the Debtors' business, operations, and assets. Moreover, in many instances, insurance coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the requirements of the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors seek authorization to (i) maintain the Insurance Policies, (ii) pay related Premiums,

---

[3]     The Debtors do not seek authority to maintain workers' compensation coverage and to pay prepetition amounts related thereto under this Motion, but rather request such authority as part of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* (the "Wages Motion") filed contemporaneously herewith.

[4]     The descriptions of the Insurance Policies set forth in **Exhibit C** constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion.  Furthermore, the Debtors request relief with respect to Insurance Policies payable to all Insurance Carriers, regardless of whether such Insurance Carrier is specifically identified on **Exhibit C**.

Deductibles, SIRs, and Brokerage Fees (each as defined below) related thereto, (iii) renew, supplement, or modify the Insurance Policies as needed, and (iv) to enter into new insurance policies in the ordinary course of business.

### I.    Premium Payments.

10.    The Insurance Policies are one-to-six years in length and generally renew annually.  The aggregate annual premium obligations associated with the Insurance Policies (the "Premiums") is approximately $23.1 million, not including applicable taxes and surcharges. A portion of the Premiums are financed pursuant to two premium financing agreements (the "Financing Agreements").  Pursuant to the Financing Agreements, the Debtors are required to make aggregate monthly premium payments of approximately $510,881.

11.    As of the Petition Date, the Debtors owe approximately $15.4 million with respect to the Premiums and related fees, including Premiums paid pursuant to the Financing Agreements and Brokerage Fees (as defined herein).  The Debtors seek authority, but not direction, to pay any outstanding prepetition Premiums owed and to continue to honor their obligations under the Insurance Policies as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

### II.    Deductible Fees and SIRs.

12.    Pursuant to certain of the Insurance Policies, the Debtors are required to pay various deductibles or retention amounts (each, a "Deductible"), depending upon the type of claim and Insurance Policy involved.  Under such Insurance Policies, the Insurance Carriers may pay claimants and then invoice the Debtors for any Deductible.  In such situations, the Insurance Carriers may have prepetition claims against the Debtors.  The Debtors risk losing their Insurance Policies if they fail to make their Deductible payments, which would not only greatly

increase the risk related to the Debtors' operations but also may cause them to violate state laws that require them to maintain such policies.  To avoid this outcome, the Debtors seek authority, but not direction, to honor any amounts owed on account of Insurance Deductibles in the ordinary course of business.

13.    Alternatively, certain of the Debtors' policies use a self-insured retention (collectively, the "SIRs").  If a claim is made under these policies, the Debtors make payments to the applicable Insurance Carrier up to the limit of the SIR (the "SIR Fees"), and once the aggregate value of such claims reaches the SIR amount under the applicable Insurance Policy, the Insurance Carrier will cover remaining costs up to a predetermined liability limit.  The amount of the SIR Fees ranges from $10,000 to $1,500,000.

14.    From November 2018, the Debtors entered into an alternative arrangement with Insurance Carriers Sompo America Insurance Company and Endurance Assurance Corporation (the "Sompo Program," the Insurance Carriers thereunder, the "Sompo Insurance Carriers," and the Insurance Policies included therein, the "Sompo Insurance Policies").  The Sompo Program is governed by a payment and security agreement (the "Sompo Agreement") between the Sompo Insurance Carriers and the Debtors and acts as a guaranteed cost program that provides payment assurance to the Insurance Carriers and more predictable cash flows in connection with the Insurance Policies to the Debtors.  The Sompo Program requires the Debtors to prefund a working fund (the "Working Fund") in an amount equal to the Sompo Insurance Carriers' estimation of the Debtors' aggregate payment obligations, not to exceed the aggregate Deductibles and/or SIRs in the following year, under the Sompo Insurance Policies.  Each year, the Debtors and Sompo Insurance Carriers amend the Sompo Agreement to add or remove Sompo Insurance Policies and adjust the amount of the Working Fund.  The current Sompo

Program is governed by the 2022 Sompo Agreement, which contains two Sompo Insurance Policies.

15.    The Debtors' payment obligations under each Sompo Agreement are calculated 36 months after the Sompo Insurance Policies therein expire, and the Sompo Insurance Carriers then apply a loss development factor to such payment obligations (the "Adjusted Payment Obligations").  If the Adjusted Payment Obligations are less than the aggregate stop loss provided in the Sompo Agreement, the Debtors will receive a return from the Working Fund.  If the Adjusted Payment Obligations exceed the aggregate stop loss, the Debtors have no obligation to reimburse the Sompo Insurance Carriers.  As of the Petition Date, the Debtors are entitled to a refund of approximately $6.1 million from the Working Fund, with approximately $500,000 due to be paid to the Debtors in November 2023.

16.    Additionally, as of the Petition Date, the Debtors estimate that there are approximately $2.35 million in accrued but unpaid amounts pursuant to the Deductibles and SIRs (not including the Deductibles and SIRs under the Sompo Insurance Policies).  To ensure continued coverage, the Debtors seek authority to (i) honor all such prepetition amounts due and owing pursuant to the Deductibles and the SIRs, (ii) continue to honor their obligations under the Deductibles or SIRs in the ordinary course of business on a postpetition basis, and (iii) continue to honor their obligations under the Sompo Agreement in the ordinary course of business on a postpetition basis.

### III.    Insurance Brokerage Fees.

17.    The Debtors obtain their Insurance Policies through their insurance brokers, Marsh USA Inc. and Rampart Insurance Services, and their various affiliates (the "Insurance Brokers").  The Insurance Brokers assist the Debtors in obtaining comprehensive insurance

coverage and evaluating benefit plan offerings and advise the Debtors with respect to accounting and actuarial methodology.  They also advise the Debtors on the negotiation of the Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates.

18.    The Insurance Brokers collect fees and/or commission payments for services rendered (the "Brokerage Fees") assisting the Debtors in obtaining the Insurance Policies.  The Brokerage Fees are included in the Premiums that the Debtors pay in the ordinary course of business.  As of the Petition Date, the Debtors estimate they do not owe any amount on account of prepetition obligations associated with the Insurance Policies outside of the Premiums. Nevertheless, out of the abundance of caution, the Debtors seek authority, but not direction, to pay any outstanding prepetition Brokerage Fees (if any) and to continue to pay Brokerage Fees as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

**The Debtors' Surety Bond Program**

19.    In the ordinary course of business, the Debtors are required to provide surety bonds (the "Surety Bonds") to certain third parties to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program").  A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as **Exhibit D**.[5]

20.    The Debtors currently maintain twenty-five Surety Bonds, in the aggregate amount of approximately $66.4 million, consisting of three mechanic lien bonds and twenty-two lease security bonds (the "Lease Security Bonds") in the United States and Canada.

---

[5]    The descriptions of the Surety Bonds set forth in this Motion constitute a summary only.  The actual terms of the Surety Bonds and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request authority to honor obligations and renew all surety bonds, as applicable, regardless of whether the Debtors inadvertently fail to include a particular surety bond on **Exhibit D**.

21.     When a party that transacts with the Debtors requests a bond and the Debtors determine that they have better operational uses for cash and do not wish to provide such cash and/or cash equivalents necessary to satisfy such request, they may obtain a surety bond from a surety (the "Surety").   In such situations, sureties provide, upfront, the full amount of the requested cash and cash equivalents to the requesting party on behalf of the Debtors, in exchange for a fee from the Debtors and an amount of collateral to secure the bond issuance on the Debtors' behalf.  The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from an obligee (such as a landlord) to a surety.

22.     Among the Surety Bonds, all twenty-two of the Lease Security Bonds are supported by the Debtors' LC Facility.  In the event that a landlord draws on a Lease Security Bond, instead of seeking reimbursement from the Debtors, the Surety may draw funds on a corresponding letter of credit under the LC Facility for the amount that it paid to the landlord under the Surety Bond Program.  The Debtors have not obtained any additional Lease Security Bonds since June 2023, and they do not currently plan to obtain any in the future.

23.     To preserve estate value during these chapter 11 cases, the Debtors must maintain the existing Surety Bond Program, including paying bond premiums and related fees as they come due, providing the Sureties with necessary collateral, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements, as appropriate, in connection with the Surety Bond Program.  Failing to provide, maintain, or timely replace their Surety Bonds may prevent the Debtors from complying with their lease obligations and consequently prevent them from undertaking essential functions, such as operating its lease portfolio and providing flexible workspace services.

24.    The premiums for the Surety Bonds (the "Surety Premiums") are generally determined on an annual basis and are paid by the Debtors when the bonds are issued and upon renewal.  The aggregate annual premium for the Surety Bonds currently maintained by the Debtors is approximately $410,000.  As of the Petition Date, the Debtors owe approximately $205,000 with respect to the Surety Premiums and related fees.

25.    In addition, Sureties often require the Debtors to sign an agreement promising to pay the surety in the event the bond is called.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal (the Debtors).  To that end, the Debtors are party to indemnity agreements (each an "Indemnity Agreement," and collectively, the "Indemnity Agreements") with certain of the Sureties that set forth each Surety's rights to recover from the Debtors.  Pursuant to the Indemnity Agreements, the Debtors agree to indemnify the relevant Surety from any loss, charge, claim, demand, cost, liability, or expense that such Surety may incur on account of the issuance of any bonds on behalf of the Debtors.  Additionally, each Indemnity Agreement allows the applicable Surety to request collateral from the Debtors from time-to-time.

26.    The Debtors obtain their Surety Bonds through Marsh USA Inc. (the "Surety Bond Broker," together with the Insurance Brokers, the "Brokers").  The Surety Bond Broker is paid a commission for their services (the "Surety Brokerage Fees") related to surety bond coverage in connection with the Debtors' Surety Bond Program, which is payable as part of the premiums paid on the Surety Bond Program.  As of the Petition Date, the Debtors estimate they do not owe any amount on account of prepetition obligations associated with the Surety Bond Program outside of the Surety Premiums.

27.     To continue their business operations during these chapter 11 cases, the Debtors must be able to provide financial assurance to landlords, contract counterparties, and other third parties.  As explained above, the Debtors do not currently plan to provide any additional Lease Security Bonds.  Nevertheless, out of an abundance of caution, the Debtors seek authorization, but not direction, to maintain the existing Surety Bond Program, including the Lease Security Bonds, including, without limitation:  (i) pay any outstanding prepetition Surety Premiums owed and to continue to honor their obligations under the Surety Bond Program as they come due in the ordinary course of business on a postpetition basis consistent with past practice; (ii) renewing or potentially acquiring additional bonding capacity, as necessary, in the ordinary course of business; (iii) requesting releases from duplicate bonding obligations; (iv) cancelling, revising, and/or supplementing Surety Bonds; (v) paying Surety Brokerage Fees as they come due; (vi) providing collateral and complying with collateral and indemnity requirements in the ordinary course of business; (vii) replacing the Surety Bond Broker as may be necessary; and (viii) executing other agreements in connection with the Surety Bond Program.

## Basis for Relief

**I.     Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Guidelines.**

28.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee Guidelines.  Accordingly, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all

obligations related to the Insurance Policies and the Surety Bond Program (as applicable) and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety Bond Program as needed, in their business judgment, without further order of the Court.

## II.    The Debtors Should Be Authorized to Satisfy Prepetition Obligations Required under the Insurance Policies and Surety Bond Program and to Continue Honoring Such Obligations Postpetition.

29.    The relief requested herein is essential to the Debtors' continuation of ordinary course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code.   Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.   *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a [b]ankruptcy [c]ourt to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).   In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

30.    Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  The Debtors' obligations on account of the Insurance Policies and the Surety Bond Program are incurred in the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code.  In the alternative, "[t]he [debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).   This provision grants a court broad

flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *The Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

31.    Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, pursuant to the doctrine of necessity. 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. at 824–25 (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–

76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least

one court has recognized that there are instances when a debtor's fiduciary duty "can only be

fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002).  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy

Code, this Court may grant the relief requested herein.

32.    The doctrine of necessity is satisfied here.  The nature of the Debtors' business

and these chapter 11 cases render it essential for the Debtors to maintain their Insurance Policies,

Financing Agreements, and Surety Bond Program (as applicable) on an ongoing and

uninterrupted basis.  The non-payment of any Premiums, Deductibles, SIRs, Brokerage Fees, or

related fees under the Insurance Policies, Financing Agreements, or Surety Bonds (as applicable)

could result in one or more of the Insurance Carriers or Sureties terminating or declining to

renew the Insurance Policies or Surety Bonds or refusing to enter into new insurance policies or

surety bonds with the Debtors.  If any of the Insurance Policies or Surety Bonds lapse without

renewal, the Debtors could be exposed to substantial liability or property damages, to the

detriment of all parties in interest.

33.    Any interruption in insurance coverage or lapse in maintenance of a Surety Bond

would expose the Debtors to a number of risks, including:  (i) the possible incurrence of direct

liability for the payment of claims that otherwise would have been covered by the Insurance

Policies or Surety Bonds; (ii) the possible incurrence of material costs and other losses that

otherwise would have been reimbursed; (iii) the possible inability to obtain similar insurance

coverage or surety bonds on terms as equally favorable as the present coverage; and (iv) the

possible incurrence of higher costs for re-establishing lapsed Insurance Policies or obtaining new

insurance coverage or surety bonds.  In short, failure to maintain the Insurance Policies and any

Surety Bonds could have a detrimental impact on the Debtors' business and the value of their estates.

34.     Furthermore, the continued retention of the Brokers allows the Debtors and their employees to focus on their core operational matters.  The Debtors are not well-suited to bring the services provided by the Brokers in-house.  If the Debtors fail to make timely payments to the Brokers, the Debtors may lose access to the Brokers' valuable services, disrupting management to the detriment of all stakeholders.  Accordingly, the requirements of section 363(b) of the Bankruptcy Code are satisfied.

35.     Here, the Debtors seek to continue, amend, supplement, and extend their existing Insurance Policies, Financing Agreements, and Surety Bond Program, and purchase new Insurance Policies and Surety Bonds in the ordinary course of business.  As noted above, continuation of the Insurance Policies, the Financing Agreements, the Surety Bond Program, and the Indemnity Agreements is essential to continuing uninterrupted operations during these chapter 11 cases and preserving the value of the Debtors' business, properties, and assets of the estates.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by crime, natural disaster, accidents, or other unforeseen events.  Moreover, in some cases, maintenance of insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business.

36.      Courts in this district and other jurisdictions have granted relief similar to the

relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re*

*Rite Aid Corporation, Inc.*, No. 23-18993 (Bankr. D.N.J. Oct. 18, 2023) (authorizing debtors to

continue their insurance policies and surety bond program on an interim basis); *In re Cyxtera*

*Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (authorizing debtors to continue

their insurance policies and surety bond program on a final basis); *In re Bed Bath & Beyond Inc.,*

No. 23-13359 (VFP) (Bankr. D.N.J. May 17, 2023) (same); *In re BlockFi Inc*, No. 22-19361

(MBK) (Bankr. D.N.J. Jan. 17, 2023) (same); *In re David's Bridal, LLC* No. 23-13131 (CMG)

(Bankr. D.N.J. Apr. 17, 2023) (same).[6]

## Processing of Checks and Electronic Fund Transfers Should be Authorized

37.      The Debtors have sufficient funds to pay the amounts described in this Motion in

the ordinary course of business by virtue of expected cash flows from ongoing business

operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash

management system, the Debtors can readily identify checks or wire transfer requests as relating

to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors

believe that checks or wire transfer requests, other than those relating to authorized payments,

will not be honored inadvertently.  Therefore, the Debtors request that the Court authorize all

applicable financial institutions, when requested by the Debtors, to receive, process, honor, and

pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

38.      Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one

(21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request made to the Debtors' proposed counsel.

irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. The Debtors' ability to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business is vital to a smooth transition into chapter 11. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### **Request of Waiver of Stay**

39.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Furthermore, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### **Waiver of Memorandum of Law**

40.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### **Reservation of Rights**

41.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the

amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or of a type otherwise specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **No Prior Request**

42.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

43.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group; (d) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank; (e) Cooley LLP, as counsel to Cupar Grimmond, LLC; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Securities and Exchange Commission; (j) the Internal Revenue Service; (k) the Insurance Carriers; (l) the Sureties (as applicable); and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 6, 2023

/s/ *Michael D. Sirota*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Edward O. Sassower, P.C. |
| Felice R. Yudkin, Esq. | Joshua A. Sussberg, P.C (*pro hac vice* pending) |
| Ryan T. Jareck, Esq. | Steven N. Serajeddini, P.C. (*pro hac vice* pending) |
| Court Plaza North, 25 Main Street | Ciara Foster (*pro hac vice* pending) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| Telephone:    (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | Telephone:    (212) 446-4800 |
| wusatine@coleschotz.com | Facsimile:    (212) 446-4900 |
| fyudkin@coleschotz.com | edward.sassower@kirkland.com |
| rjareck@coleschotz.com | joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |
| | ciara.foster@kirkland.com |
| | |
| *Proposed Co-Counsel for Debtors and* | *Proposed Co-Counsel for Debtors and* |
| *Debtors in Possession* | *Debtors in Possession* |

<u>**Exhibit A**</u>

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing the Debtors to (a) maintain coverage under the Insurance Policies and the Surety Bonds (as applicable) and pay related prepetition obligations and (b) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course of business, (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on **_____, 2023, at _____ (Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before **_____, 2023, at 4:00 p.m. (Eastern Time)**. If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, to continue and maintain the Insurance Policies, including, but not limited to, the Insurance Policies identified on Exhibit C to the Motion, and, in their sole discretion, pay any related prepetition or postpetition amounts or obligations thereto in the ordinary course of business, and consistent with prepetition practice, including, but not limited to, Premiums, Deductibles, SIRs, Brokerage Fees, and any other related expenses. The Debtors shall serve a copy of the Motion and this Interim Order on each Insurance Carrier listed on Exhibit C to the Motion within two (2) business days after the date this Interim Order is entered.

4.      The Debtors are authorized, but not directed, to honor the terms of the Financing Agreements and pay Premiums thereunder, in the ordinary course of their business and consistent with past practices.

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

5.      The Debtors are authorized, but not directed, to continue and maintain their Surety Bond Program as applicable, including, in their sole discretion:  (i) maintaining new Surety Bonds and paying any related prepetition and postpetition amounts or obligations thereto in the ordinary course of business, and consistent with prepetition practice, including, but not limited to, Surety Premiums, Surety Brokerage Fees, and any other related expenses; (ii) entering into or acquiring additional bonding capacity, as necessary, in the ordinary course of business, and consistent with prepetition practice; (iii) requesting releases from duplicate bonding obligations; (iv) cancelling, revising, and/or supplementing the Surety Bonds; (v) renewing, supplementing, and/or cancelling letters of credit or other forms of collateral as may be necessary; (vi) providing collateral and complying with collateral and indemnity requirements in the ordinary course of business; (vii) replacing the Surety Bond Broker as may be necessary; and (viii) executing other agreements in connection with the Surety Bond Program, each in the ordinary course of their business and consistent with past practices to the extent the Debtors determine that such action is in the best interest of their estates.

6.      The Debtors are authorized, but not directed, in their sole discretion, to renew, amend, supplement, extend, or purchase existing or additional insurance policies and surety bonds in the ordinary course of business, and consistent with prepetition practice on a postpetition basis, as well as replace any of the Brokers as may be necessary.

7.  To the extent the Debtors subsequently become aware of additional Insurance Policies or Surety Bonds that have not previously been disclosed, or to the extent the Debtors enter into material new Insurance Policies or Surety Programs or renew any material Insurance

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Policies and Surety Bonds, the Debtors shall disclose these policies and programs to the U.S. Trustee, the professional advisors to any statutory committees appointed in these chapter 11 cases, the Ad Hoc Group, and SoftBank.

8.      The Debtors are authorized, but not directed, to honor any amounts owed on account of any Insurance Policy Audits that take place in the ordinary course of business, and consistent with prepetition practice.

9.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

10.      To the extent that any Insurance Policies or Surety Bonds or any related obligation, contract, or agreement are deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Interim Order nor any payments made in accordance with this Interim Order shall constitute the postpetition assumption of any such Insurance Policies or Surety Bonds or any related obligation, contract, or agreement pursuant to section 365 of the Bankruptcy Code.

11.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

12.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order is intended as or shall be construed or deemed to be: (i) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (vii) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (viii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (ix) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (x) a waiver of the obligation of any party in interest to file a proof of claim; or (xi) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

lease. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

13. Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made pursuant to the authority granted in this Interim Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders. To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Interim Order, the terms of the Cash Collateral Orders shall control.

14. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

15.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

16.    The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

17.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

18.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

20.    The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Interim Order.

21.    Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

22.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:       (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE AND SURETY COVERAGE
ENTERED INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE
INSURANCE AND SURETY COVERAGE, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (i) authorizing the Debtors to (a) maintain coverage under the Insurance Policies and the Surety Bonds (as applicable) and pay related prepetition obligations and (b) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course of business and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue and maintain the Insurance Policies, including, but not limited to, the Insurance Policies identified on Exhibit C to the Motion, and, in their sole discretion, pay any related prepetition or postpetition amounts or obligations thereto in the ordinary course of business, and consistent with prepetition practice, including, but not limited to, the Premiums, Deductibles, SIRs, Brokerage Fees, and any other related expenses.  The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier listed on Exhibit C to the Motion within two (2) business days after the date this Final Order is entered.

3.      The Debtors are authorized, but not directed, to honor the terms of the Financing Agreement and pay Premiums thereunder, in the ordinary course of their business and consistent with past practices.

4.      The Debtors are authorized, but not directed, to continue and maintain their Surety Bond Program as applicable, including, in their sole discretion:  (i) maintaining new Surety Bonds and paying any related prepetition and postpetition amounts or obligations thereto in the ordinary course of business, and consistent with prepetition practice, including, but not limited to, Surety Premiums, Surety Brokerage Fees, and any other related expenses; (ii) entering into or acquiring additional bonding capacity, as necessary, in the ordinary course of business, and consistent with prepetition practice; (iii) requesting releases from duplicate bonding obligations;

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

(iv) cancelling, revising, and/or supplementing the Surety Bonds; (v) renewing, supplementing, and/or cancelling letters of credit or other forms of collateral as may be necessary; (vi) providing collateral and complying with collateral and indemnity requirements in the ordinary course of business; (vii) replacing the Surety Bond Broker as may be necessary; and (viii) executing other agreements in connection with the Surety Bond Program, each in the ordinary course of their business and consistent with past practices to the extent the Debtors determine that such action is in the best interest of their estates.

5.      The Debtors are authorized, but not directed, in their sole discretion, to renew, amend, supplement, extend, or purchase existing or additional insurance policies and surety bonds in the ordinary course of business, and consistent with prepetition practice on a postpetition basis, as well as replace any of the Brokers as may be necessary.

6. To the extent the Debtors subsequently become aware of additional Insurance Policies or Surety Bonds that have not previously been disclosed, or to the extent the Debtors enter into material new Insurance Policies or Surety Programs or renew any material Insurance Policies and Surety Bonds, the Debtors shall disclose these policies and programs to the U.S. Trustee, the professional advisors to any statutory committees appointed in these chapter 11 cases, the Ad Hoc Group, and SoftBank.

7.      The Debtors are authorized, but not directed, to honor any amounts owed on account of any Insurance Policy Audits that take place in the ordinary course of business, and consistent with prepetition practice.

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

8.      Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

9.      To the extent that any Insurance Policies or Surety Bonds or any related obligation, contract, or agreement are deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Final Order nor any payments made in accordance with this Final Order shall constitute the postpetition assumption of any such Insurance Policies or Surety Bonds or any related obligation, contract, or agreement pursuant to section 365 of the Bankruptcy Code.

10.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

11.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order is intended as or shall be construed or deemed to be:  (i) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (vii) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (viii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (ix) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (x) a waiver of the obligation of any party in interest to file a proof of claim; or (xi) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

12.    Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made pursuant to the authority granted in this Final Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

*Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders. To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Final Order, the terms of the Cash Collateral Orders shall control.

13. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

14. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

15. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

16. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (II) Granting Related Relief |

17.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **Exhibit C**

**Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Premium Amount |
|---|---|---|---|---|
| D&O Liability - Run-Off (Primary) | Illinois National Ins Co. / AIG | 014202043 | 5/21/2020 - 5/21/2026 | $        378,266 |
| D&O Liability - Run-Off (Excess) | Zurich American Insurance Co. | DOC054273800 | 5/21/2020 - 5/21/2026 | $        290,000 |
| D&O Liability - Run-Off (Excess) | Continental Casualty Co. | 652109935 | 5/21/2020 - 5/21/2026 | $        280,000 |
| D&O Liability - Run-Off (Excess) | Zurich American Insurance Co. | DOC014926101 | 5/21/2020 - 5/21/2026 | $        230,000 |
| D&O Liability - Run-Off (Excess) | Westchester Fire Ins Co. / ACE | G27983558004 | 5/21/2020 - 5/21/2026 | $        210,000 |
| D&O Liability - Run-Off (Excess) | National Casualty Co. | XMO1908841 | 5/21/2020 - 5/21/2026 | $        200,000 |
| D&O Liability - Run-Off (Excess) | Argonaut Insurance Co. | MLX76017384 | 5/21/2020 - 5/21/2026 | $        190,000 |
| D&O Liability - Run-Off (Excess) | U.S. Specialty Insurance Co. | 14MGU19A46715 | 5/21/2020 - 5/21/2026 | $        186,000 |
| D&O Liability - Run-Off (Excess) | QBE Insurance Co. | 100007331 | 5/21/2020 - 5/21/2026 | $        180,000 |
| D&O Liability - Run-Off (Excess) | Beazley Insurance Co. | V23653190201 | 5/21/2020 - 5/21/2026 | $        178,000 |
| D&O Liability - Run-Off (Excess) | RSUI Indemnity Co. | NHS681591 | 5/21/2020 - 5/21/2026 | $        170,000 |
| D&O Liability - Run-Off (Excess) | Underwriters at Lloyd's | IFP000039001 | 5/21/2020 - 5/21/2026 | $        168,000 |
| D&O Liability - Run-Off (Excess) | Canopius Insurance Services | EXNCUA1005400 | 5/21/2020 - 5/21/2026 | $        158,000 |
| D&O Liability - Run-Off (Excess) | RLI Insurance co. | EPG0027368 | 5/21/2020 - 5/21/2026 | $        130,000 |
| D&O Liability - Run-Off (Excess) | Allianz Global US Risk Ins Co | USF00143019 | 5/21/2020 - 5/21/2026 | $        150,000 |
| D&O Liability - Go-Forward (Primary) | U.S. Specialty Insurance Company | 14-MGU-23-A56496 | 5/21/2023 - 5/21/2024 | $     1,700,000 |
| D&O Liability - Go-Forward (Excess) | Continental Casualty Company | 652432155 | 5/21/2023 - 5/21/2024 | $     1,075,000 |
| D&O Liability - Go-Forward (Excess) | Berkley Insurance Company | BPRO8093909 | 5/21/2023 - 5/21/2024 | $        806,500 |
| D&O Liability - Go-Forward (Excess) | Endurance American Insurance Company | DOX30037875300 | 5/21/2023 - 5/21/2024 | $        604,500 |
| D&O Liability - Go-Forward (Excess) | XL Specialty Insurance Company | ELU189978-23 | 5/21/2023 - 5/21/2024 | $        450,000 |
| D&O Liability - ERP (Run-Off) | National Union Fire Is Co. / AIG | 01-420-13-06 | 5/21/2020 - 5/21/2026 | $        124,000 |
| Cyber / E&O (Primary) | AIG Specialty Insurance Company | 02-834-88-70 | 3/12/2023 - 3/12/2024 | $        494,968 |
| Cyber / E&O (Excess) | Arch Specialty Insurance Co. | NPL0066239-02 | 3/12/2023 - 3/12/2024 | $        395,975 |
| Cyber / E&O (Excess) | Beazley Insurance Co. | V317C2230201 | 3/12/2023 - 3/12/2024 | $        275,483 |
| Cyber / E&O (Excess) | Greenwich Insurance Company | MTE903537105 | 3/12/2023 - 3/12/2024 | $        234,160 |
| Workers Compensation & Employers Liability | AIU Insurance Company / AIG | Policy Number Pending (expired policy number 15203241) | 11/1/2023 - 11/1/2024 | $        643,736 |
| Workers Compensation & Employers Liability | AIG Property Casualty Company | Policy Number Pending (expired policy number | 11/1/2023 - 11/1/2024 | |

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Premium Amount |
|---|---|---|---|---|
| | | 15203242) | | |
| Pollution Liability | Illinois Union Insurance Co. | ISPILLSB7XJO001 | 3/10/2021 - 3/10/2024 | $ 162,956 |
| Errors & Omissions (Tail) | Hiscox Insurance Co. | ANE144964720 | 5/30/2021 - 5/30/2024 | $ 398,666 |
| Crime | National Union Fire Ins Co. / AIG | 02-582-31-93 | 2/28/2023 - 2/28/2024 | $ 12,897 |
| Property | Sompo America Insurance Company | Policy Number Pending (expired policy number FTMS1037L0) | 11/1/2023 - 11/1/2024 | $ 8,500,181 |
| General Liability Liability | Endurance Assurance Corp. | Policy Number Pending (expired policy number GGR10013937504) | 11/1/2023 - 11/1/2024 | $ 2,347,653 |
| Auto Liability | Sompo America Insurance Company | Policy Number Pending (expired policy number GAR30026635500) | 11/1/2023 - 11/1/2024 | $ 5,000 |
| Umbrella Liability | Endurance Assurance Corp. | Policy Number Pending (expired policy number GUR30000832304) | 11/1/2023 - 11/1/2024 | |
| Excess Liability | Federal Insurance Co./Chubb | Policy Number Pending (expired policy number 9364-22-00) | 11/1/2023 - 11/1/2024 | $ 1,355,368 |
| Excess Liability | Continental Insurance Company | Policy Number Pending (expired policy number 7034510720) | 11/1/2023 - 11/1/2024 | |
| Flood Liability | American Bankers Ins Co. of Florida | 8705745678 | 3/24/2023 - 3/24/2024 | $ 988 |
| Crime | National Union Fire Ins Co/AIG | 02-707-06-24 | 2/21/2023 - 2/21/2024 | $ 10,788 |
| Travel Accident / Travel Inconvenience | Zurich American Insurance Company | GTU8563730 / GTP5563974 | 7/14/2023 - 7/14/2026 | $ 68,991 |
| Terrorism | Chubb European Group SE | Policy Number Pending (expired policy number B0509BOWTN2250685) | 11/1/2023 - 11/1/2024 | $ 320,000 |
| Casualty | Royal & Sun Alliance Insurance Company Of Canada | Policy Number Pending (expired policy number COM 061663368) | 11/1/2023 - 11/1/2024 | $ 8,032 |
| Property | Royal & Sun Alliance Insurance Company Of Canada | Policy Number Pending (expired policy number COM0 61765413) | 11/1/2023 - 11/1/2024 | $ 53,485 |

## Exhibit D

**Surety Bond Program**

| Surety | Bond No. | Obligee | Expiration Date | Bond Amount | Bond Description |
|---|---|---|---|---|---|
| Philadelphia | PB02096600003 | TSSP, LLC | 6/13/2024 | $8,000,000 | Lease Security Bond |
| Chubb | K15375553 | Sunset North, LLC | 3/31/2024 | $7,500,000 | Lease Security Bond |
| Aspen | 612408783 | VGB 990 AOA LLC | 7/15/2024 | $6,651,851 | Lease Security Bond |
| Nationwide | SNN4013124 | MA-100 Summer Street Owner, LLC | 6/12/2024 | $4,400,925 | Lease Security Bond |
| Chubb | K13519900 | 1711 Rhode Island Owner LLC | 2/12/2024 | $4,000,000 | Lease Security Bond |
| Chubb | K13519535 | 575 Lex Property Owner, L.L.C. | 10/3/2024 | $3,951,079 | Lease Security Bond |
| Chubb | K13519729 | GW Property Services LLC | 12/18/2023 | $3,000,000 | Lease Security Bond |
| Tokio Marine HCC | 1000836526 | AAT LLOYD DISTRICT, LLC | 6/17/2024 | $2,341,715 | Lease Security Bond |
| Chubb | K15375425 | AG-EREP East Kennedy Owner, LLC | 3/21/2024 | $1,983,900 | Lease Security Bond |
| Chubb | K13519067 | 729 Washington Property Owner LLC | 2/20/2024 | $3,081,192 | Lease Security Bond |
| Tokio Marine HCC | 1000836522 | Capitol View | 3/27/2024 | $2,449,815 | Lease Security Bond |
| Chubb | K13519651 | BCSP Circa Property LLC c/o Beacon Capital Partners LLC | 11/8/2023 | $1,500,000 | Lease Security Bond |
| Tokio Marine HCC | 1000836525 | Giralda PB, LLC | 5/1/2024 | $1,617,524 | Lease Security Bond |
| Chubb | K13519304 | Madison Centre, LLC | 7/13/2024 | $1,062,935 | Lease Security Bond |
| Chubb | K13519882 | 1389 Peachtree Street, LP | 2/7/2024 | $1,024,531 | Lease Security Bond |
| Philadelphia | PB02096600004 | KBSIII Legacy Town Center, LLC | 7/19/2024 | $2,000,000 | Lease Security Bond |
| Argo | SUR0029008 | 601 Metropolitan Square LLC | 8/13/2024 | $1,000,000 | Lease Security Bond |
| Chubb | K15375450 | 881 Peachtree Street, LLC | 3/29/2024 | $1,314,738 | Lease Security Bond |
| Argo | SUR0029014 | CRP/MI West Loop Owner, LLC | 8/26/2024 | $600,000 | Lease Security Bond |
| Chubb | K13519894 | T-C 4th & Madison LLC | 2/7/2024 | $3,686,492 | Lease Security Bond |
| Tokio Marine HCC | 1000836524 | RED Development | 4/12/2024 | $2,000,000 | Lease Security Bond |
| Chubb | 8252-37-49 | AB Metro Properties Ltd. and Station Square 4670 Assembly Limited Partnership | 3/8/2024 | $2,573,548 | Lease Security Bond |
| Federal Insurance Company | K4165479A | Mikoma Electric LLC | 1/5/2024 | $141,147 | Mechanic Lien Bond |
| Federal Insurance Company | K41662499 | Wasserstein Enterprises LLC | 4/12/2024 | $67,155 | Mechanic Lien Bond |
| Federal Insurance Company | K41708797 | Wasserstein Enterprises LLC | 5/10/2024 | $416,715 | Mechanic Lien Bond |