**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF
## INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
## DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
## COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
## EMPLOYEE BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion" ):[2]

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (i) authorizing the Debtors to (a) pay all prepetition wages, salaries, commissions, benefits, other compensation, and Reimbursable Expenses on account of the Compensation and Benefits (each as defined herein) in the ordinary course of business, and (b) continue to administer the Compensation and Benefits in the ordinary course of business; and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing twenty-eight (28) days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9013-1, and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.      The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork is publicly traded on the New York Stock Exchange and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

6.      On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Debtors' Workforce**

7.      As of the Petition Date, WeWork maintains a global workforce of approximately 2,700 employees spread across twenty-six countries and thirty legal entities, including 2,650 full-time employees and fifty part-time employees.  Debtor entities employ approximately 1,500 individuals, including approximately 1,440 employees working in the United States (the "U.S. Employees") and approximately sixty Employees working outside the United States (the "Non-U.S. Employees," and together with the U.S. Employees, the "Employees").[3]  None of the Employees are represented by a union or employed pursuant to a collective bargaining agreement.[4]

8.      WeWork's core mission is to create and deliver flexible work solutions, inspiring spaces, and first-class community experiences for its members, which would not be possible without the Employees.  The Employees perform a wide variety of corporate and other job functions, including, among other things, building operations, real estate, accounting and finance, tax, sales, marketing and communications, legal, information technology, human resources, and other office management functions.  Many Employees are intimately familiar with the Debtors' business, processes, properties, and systems, and possess unique technical and other skills and experience that are critical to the Debtors' business operations.  In addition to the Employees, the Debtors' workforce also includes approximately fifteen independent contractors (the "Independent Contractors"), who perform a variety of administrative functions from time to time.  Most Independent Contractors are paid directly by the Debtors or through payments to staffing agencies who then pay the Independent Contractors.  As part of this Motion, the Debtors seek

---

[3]    The Employees are spread across the United States and Canada.  For the avoidance of doubt, the relief sought under this Motion relates only to payments made to individuals who are employed by the Debtors.

[4]    Certain of the Debtors' foreign, non-Debtor affiliates employ individuals who are represented by a union.

authorization to honor amounts owed, both directly and to staffing agencies, on account of their

Independent Contractors and costs incidental to maintaining their Employees.  Without the

continued, uninterrupted services of the Employees and the Independent Contractors, the Debtors'

business operations would grind to a halt, materially impairing the administration of the Debtors'

estates to the detriment of all stakeholders.

9.      The overwhelming majority of the Employees and Independent Contractors rely on

their compensation and benefits to pay their (and their dependents') daily living expenses.  These

individuals would be unfairly harmed if the Debtors are not permitted to continue paying

compensation and providing health insurance and other benefits during these chapter 11 cases.

Consequently, the relief requested herein is just, necessary, and appropriate under the facts and

circumstances of these chapter 11 cases.

## Compensation and Benefits

10.      To minimize the personal hardship that Employees and Independent Contractors

could suffer if prepetition obligations related thereto remain unpaid during these chapter 11 cases,

the Debtors seek authority, but not direction, to:  (a) pay and honor, in the ordinary course of

business and consistent with prepetition practices, certain prepetition claims relating to, among

other things, Wage Obligations, Withholding Obligations, Reimbursable Expenses, Health and

Welfare Coverage and Benefits, the Workers' Compensation Program, the Retirement Plans, Paid

Leave Benefits, the Non-Insider Severance Program, the Non-Insider Retention Bonus Program,

the Non-Employee Director Compensation, Additional Benefits Programs, the Payroll Vendor

Obligations, and any other benefits that the Debtors have provided in the ordinary course (each as

defined herein, and collectively, the "Compensation and Benefits")[5] and (b) pay all costs related

---

[5]     The descriptions of the Compensation and Benefits set forth in this Motion constitute a summary only.  The actual
terms of the agreements, contracts, plans, programs, and manuals governing the Compensation and Benefits will

to or on account of the Compensation and Benefits in the ordinary course of business and consistent

with prepetition practices.

11.    Subject to the Court's approval, the Debtors intend to continue their prepetition

Compensation and Benefits in the ordinary course of business on a postpetition basis.  Out of an

abundance of caution, the Debtors request confirmation of their right to modify, change, and/or

discontinue any of their Compensation and Benefits and/or to implement new programs, policies,

and benefits in the Debtors' sole discretion and in the ordinary course during these chapter 11 cases

without the need for further Court approval, subject to applicable law.  The Debtors seek authority

to make the following payments related to prepetition amounts owed on account of the

Compensation and Benefits:

| RELIEF SOUGHT | AMOUNT REQUESTED |
|---|---|
| Wage Obligations | $1,300,000 |
| Withholding Obligations | $200,000 |
| Reimbursable Expenses | $100,000 |
| Health and Welfare Coverage Benefits | $500,000 |
| Workers' Compensation | $0 |
| Retirement Plans | $20,000 |
| Paid Leave Benefits | $2,800,000 |
| Non-Insider Severance Program | $800,000 |
| Non-Insider Retention Bonus Program[6] | $0 |
| Non-Employee Director Compensation[7] | $0 |
| Additional Benefits Programs | $100,000 |
| Payroll Vendors | $100,000 |
| **TOTAL** | $5,900,000 |

govern in the event of any inconsistency with the description in this Motion.  The Debtors request authority to honor obligations related to Compensation and Benefits in the ordinary course of business consistent with prepetition practices, regardless of whether the Debtors inadvertently failed to include a particular benefit or aspect of compensation in the defined term "Compensation and Benefits," and any such omitted benefit or aspect of compensation is hereby included in the defined term "Compensation and Benefits" as used herein and in the Interim Order and Final Order.

[6]    Relief pursuant to the Final Order only.  For the avoidance of doubt, the amounts under the Non-Insider Retention Bonus Program have not yet been earned.

[7]    Relief pursuant to the Final Order only.

12.     Apart from seventeen (17) former Employees who are entitled to payments under the Non-Insider Severance Program (as discussed below), the Debtors do not believe that amounts owed to any Employees on account of the Compensation and Benefits will exceed the statutory cap of $15,150 under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap").  For the avoidance of doubt, the Debtors do not seek authority to pay to any current or former Employee any amounts in excess of the statutory cap of the Priority Cap to the Interim Order.  The Debtors do, however, seek authority to pay amounts in excess of the Priority Cap solely pursuant to the Final Order, in the event that it is determined that payment of certain prepetition amounts owed on account of Compensation and Benefits, including certain payments under the Non-Insider Severance Program, are in excess of the Priority Cap.

I.      **Compensation, Withholding Obligations, and Reimbursable Expenses.**

A.      **Wage Obligations.**

13.     In the ordinary course of business, the Debtors incur obligations in account of Employee Compensation, the Staffing Agencies, Independent Contractors, and the Bonus Programs (each as defined below and collectively, the "Wage Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $1.3 million on account of accrued but unpaid Wage Obligations.

14.     Any loss of Wage Obligations would inflict substantial financial hardship on the Employees and Independent Contractors and could lead to significant headcount attrition. Considering the indispensable value the Employees and Independent Contractors provide to the Debtors' estates and the cost attendant to filling sudden vacancies, it is critical that the Debtors maintain their workforce during the pendency of these chapter 11 cases.  Accordingly, the Debtors request authority, but not direction, to pay prepetition amounts owed on account of the Wage

Obligations and to continue honoring the Wage Obligations in the ordinary course of business on a postpetition basis.

### 1. Employee Compensation.

15. In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, and similar obligations (the "Employee Compensation"). The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts and other electronic means or checks on a bi-weekly basis for U.S. Employees and Non-U.S. Employees. All Employee Compensation accrues on either a salaried or hourly basis with respect to base compensation and either a performance or achievement basis with respect to the Bonus Programs (as defined below) and is generally paid in arrears.

16. As of the Petition Date, the Debtors believe there are no prepetition amounts outstanding on account of accrued but unpaid Employee Compensation. The Debtors seek authority, but not direction, to pay any prepetition amounts owed on account of Employee Compensation and continue to satisfy any obligations that arise with respect thereto in the ordinary course of business on a postpetition basis and consistent with prepetition practices.

### 2. Staffing Agencies and Independent Contractors.

17. In the ordinary course of business, the Debtors incur payment obligations to their Staffing Agencies that assist the Debtors in retention of certain Employees (the "Staffing Agencies" and the Debtors' obligations thereto, the "Staffing Agency Obligations"), and Independent Contractors for services rendered to the Debtors (the "Independent Contractor Obligations"). The Staffing Agency Obligations and Independent Contractors are paid through the Debtors' accounts payable system following submission of a documented and supported invoice. Amount and frequency of payment to the Staffing Agencies and Independent Contractors depends on the type of services they provide, but on average, the Debtors spend approximately

$10,000 per month on account of Independent Contractor Obligations and approximately $63,000 per month on account of Staffing Agency Obligations. As of the Petition Date, the Debtors estimate that they owe approximately $25,000 and $174,000 in accrued but unpaid Independent Contractor Obligations and Staffing Agency Obligations, respectively.

18.     The Debtors believe that continuing to pay their Staffing Agencies and Independent Contractors is critical to maintaining and administering their estates. The Staffing Agencies and Independent Contractors perform critical administrative services that support the Debtors' Employees and operations. The Debtors seek authority, but not direction, to pay all prepetition amounts owed on account of Independent Contractor Obligations and Staffing Agency Obligations and continue honoring Independent Contractor Obligations and Staffing Agency Obligations in the ordinary course of business, and consistent with prepetition practices, on a postpetition basis.

### 3.     The Bonus Programs.

19.     In the ordinary course of business, the Debtors offer their Employees several bonus programs to ensure Employees feel valued and are performing at their maximum potential: (i) the Annual Cash Bonus Program, (ii) the Sales Incentive Program, (iii) the Additional Bonus Programs, and (iv) the Legacy Equity Incentive Program (each as defined herein, and collectively, the "Bonus Programs"). As of the Petition Date, the Debtors estimate that they owe approximately $1.1 million on account of the Bonus Programs. The Bonus Programs are critical not only to maintaining employee morale and loyalty, but also minimizing attrition and operational disruption as the Debtors transition into chapter 11. Accordingly, the Debtors request authority, but not direction, to pay any prepetition amounts owed on account of the Bonus Programs and to continue meeting their obligations in connection with the Bonus Programs in the ordinary course of business, and consistent with prepetition practices, on a postpetition basis.

20.     ***The Annual Cash Bonus Program.***  In the ordinary course of business, the Debtors offer a cash bonus plan to certain eligible non-insider Employees with an annual target bonus based on job level that is, for the current fiscal year, paid out in quarterly installments, with the amount of each quarterly installment based on such Employees' and the Company's performance (the "Annual Cash Bonus Program").  Payments under the Annual Cash Bonus Program are conditioned on the applicable Employee's being both employed (without having received notice of termination) and in good standing on the applicable payment date.  An Employee who gives or receives notice of termination prior to the applicable payment date forfeits all rights to future payment under the Annual Cash Bonus Program.  Furthermore, the Annual Cash Bonus Plan's quarterly installments are guaranteed (subject to the aforementioned conditions), meaning that eligible Employees will receive 100 percent of their applicable bonus amount determined by the Company in any given quarter.  Bonus payments made to Employees under the Annual Cash Bonus Program are typically lower in relation to their base compensation than bonus payments made to sales department employees under the separate Sales Incentive Program because bonus payments under the Sales Incentive Program are more directly based on individual and team achievement of sales metrics and sales department Employees typically expect their bonus payments to comprise a larger percentage of their overall bonus.

21.     As of the Petition Date, the Debtors do not believe that there are any prepetition amounts due and owing on account of the Annual Cash Bonus Program.  Nevertheless, out of an abundance of caution, the Debtors seek authority, but not direction, to pay prepetition amounts owed on account of the Annual Cash Bonus Program and to continue meeting their obligations under the Annual Cash Bonus Program on a postpetition basis in the ordinary course of business

and consistent with prepetition practices.  For the avoidance of doubt, the relief sought with respect
to the Annual Cash Bonus Program does not include payment to any insider.

22.      ***The Sales Incentive Program.***  Many Employees in WeWork's sales department
are also eligible for bonus payments to incentivize individual and/or team achievement of sales
targets (the "Sales Incentive Program").  Sales teams participating in the Sales Incentive Program
include the Company's Leasing, Accounts, WeWork All Access, Inside Sales, Business
Development, WeWork Workplace, and Brand and Event Partnerships divisions
(each a "Participating Sales Team").

23.      In general, the bonus amounts paid to the eligible Employee are based on
achievement of sales metrics established each year by WeWork's senior sales leadership team.
Each Participating Sales Team has different sales metrics that are set in accordance with
WeWork's company-wide financial targets and business goals and are often based on the annual
contract value of any given sale, so amounts paid out vary across Participating Sales Teams.
Eighty percent of eligible Employees' annualized target bonus payments under the Sales Incentive
Plan is based on individual and/or team achievement of sales metrics with the remaining twenty
percent based on company-wide performance.  Employees on a Participating Sales Team must be
employed (without having received notice of termination) and in good standing on the applicable
payment date in order to receive payment under the Sales Incentive Program, with such payment
pro-rated to the extent that the Employee began employment or participation in the Sales Incentive
Plan after the beginning of the corresponding quarter.

24.      Typically, bonus payments under the Sales Incentive Program are earned at the end
of a target period (generally monthly or quarterly).  Within six-to-eight weeks following the
completion of the applicable target period, the Debtors reconcile the performance data of every

11

Participating Sales Team, determine the amount of bonus payments, and disburse the applicable amounts to the Employees.

25.     As of the Petition Date, the Debtors believe there are approximately $1.1 million in prepetition amounts outstanding on account of the Sales Incentive Program.[8]  The Debtors seek authority to continue to pay any prepetition amounts outstanding on account of the Sales Incentive Program and to continue meeting their obligations in connection with the Sales Incentive Program on a postpetition basis in the ordinary course of business and consistent with prepetition practices. The Debtors believe that most if not all amounts owed to any Employees on account of the Sales Incentive Program do not exceed the Priority Cap.  The Debtors do, however, seek authority to pay amounts owed under the Sales Incentive Program in excess of the Priority Cap solely pursuant to the Final Order.  For the avoidance of doubt, the relief sought with respect to the Sales Incentive Program does not include payment to any insider.

26.     ***The Additional Bonus Programs.***  In the ordinary course of business, the Debtors maintain and administer the WeCap Bonus Program for nine Employees who perform daily functions for non-Debtor WeWork Capital Advisors LLC.  While such Employees render services to a non-Debtor subsidiary of Debtor WeWork Companies U.S. LLC, they are employed and paid by Debtor WeWork Management LLC.  Under the WeCap Bonus Program, in the beginning of each year, the Debtors determine the annual target bonus payment for each eligible Employee. Employees who meet or exceed their overall performance expectation become eligible for a cash bonus according to a pre-set formula.

27.     Several other categories of the Debtors' Employees responsible for building operations at locations acquired in connection with the Company's purchase of Common Desk in

---

[8]     The bonus amounts earned for the month preceding the Petition Date are yet to be determined.

January 2022 are eligible for discretionary annual or quarterly bonuses that vary from three percent to fifteen percent of such Employee's then-current quarterly base pay rate (the "Common Desk Bonus Program" and to together with the WeCap Bonus Program, the "Additional Bonus Programs").  Similar to the other Bonus Programs, Employees eligible for the Additional Bonus Programs must be employed (without having given or received notice of termination), and in good standing on the applicable payment date in order to receive payment under the Additional Bonus Programs.  Employees who participate in the Additional Bonus Programs are not eligible to participate in the Annual Cash Bonus and Sales Incentive Bonus Programs.

28.    As of the Petition Date, the Debtors do not believe there are any prepetition amounts outstanding on account of the Additional Bonus Programs.  Nevertheless, out of an abundance of caution, the Debtors seek authority, but not direction, to satisfy any prepetition obligations on account of the Additional Bonus Programs and to continue meeting their obligations under the Additional Bonus Programs in the ordinary course of business on a postpetition basis.  For the avoidance of doubt, the relief sought with respect to the Additional Bonus Programs does not include payment to any insider.

29.    ***The Legacy Equity Incentive Program.***  Historically, the Debtors maintained the Legacy Equity Incentive Program for certain Employees.  Under the Legacy Equity Incentive Program, certain Employees were eligible for certain stock-based awards, including stock options and restricted stock units (collectively, the "RSUs").  The terms of the program outlined that the number of awarded RSUs and the vesting schedule were determined at the Debtors' discretion on a case-by-case basis for each individual eligible Employee according to a preset formula.  In 2023, the Annual Cash Bonus Program replaced the Legacy Equity Incentive Program.

30.     As of the Petition Date, approximately 158,245 outstanding RSUs and 505 stock options that may vest postpetition.  As of the Petition Date, the Debtors do not believe they owe any amounts on account of the Legacy Equity Incentive Program.  Nevertheless, out of an abundance of caution, the Debtors seek authority, but not direction, to satisfy any prepetition obligations on account of the Legacy Equity Incentive Program and to continue meeting their obligations under the Legacy Equity Incentive Program in the ordinary course of business on a postpetition basis.

**B.      Withholding Obligations.**

31.     In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions and Employer Payroll Taxes (each as defined below and collectively, the "Withholding Obligations").  In the United States, the Debtors accumulate a monthly average of approximately $7.2 million in Withholding Obligations on account of federal, state, and local income taxes, employee benefits elections and garnishments, and employer taxes.  The Debtors have similar obligations to foreign taxing authorities for Non-U.S. Employees under the laws of Canada.  For example, the Debtors are obliged to withhold and remit federal, province, and city tax to appropriate federal, state, or local taxing authorities.  On average, the Debtors withhold and subsequently remit approximately $300,000 per month on account of Withholding Obligations in Canada.  As of the Petition Date, the Debtors believe there are approximately $200,000 in prepetition amounts withheld but not yet remitted on account of the Withholding Obligations.

32.     The Debtors request authority, but not direction, to pay any prepetition amounts outstanding on account of the Withholding Obligations and to continue meeting their obligations with respect thereto in the ordinary course of business on a postpetition basis and consistent with prepetition practices.

## 1.    Deduction Obligations.

33.    During each applicable payroll period, the Debtors routinely deduct certain amounts from U.S.-based Employees' paychecks, including garnishments and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein.  Such deductions include (i) an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, legally ordered deductions, miscellaneous deductions; and (ii) amounts the Debtors are required by applicable statutory authority to pay on account of U.S. Social Security and income taxes for remittance to the appropriate federal, state, and local taxing authorities (the "U.S. Deductions").  In Canada, the Debtors routinely deduct certain amounts from Non-U.S.-based Employees' paychecks, including garnishments and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain Employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, retirement contributions and miscellaneous deductions (the "Foreign Deductions", and together with the U.S. Deductions, the "Payroll Deductions").

34.    On average, the Debtors withhold and remit approximately $5.2 million per month on account of U.S. Deductions and approximately $200,000 per month on account of Foreign Deductions and forward the withheld amounts to various third-party recipients.  The Debtors retain only those Payroll Deductions related to the Employees' share of health care benefits and insurance premiums.  As of the Petition Date, the Debtors believe there are approximately $100,000 in prepetition amounts withheld but not yet remitted on account of U.S. Deduction Obligations and no prepetition amounts outstanding on account of Foreign Deductions.  The Debtors seek authority, but not direction, to pay any prepetition obligations outstanding with respect to the Payroll Deductions and to continue honoring their obligations related thereto in the ordinary course of business on a postpetition basis and consistent with prepetition practices.

## 2.    Employer Payroll Taxes.

35.    The Debtors pay employee payroll taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance, Social Security and Medicare taxes, and other foreign social insurance contributions (the "Employer Payroll Taxes").  The Employer Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by such taxing authorities.  As of the Petition Date, the Debtors believe there are approximately $100,000 in prepetition amounts outstanding on account of U.S. Employer Payroll Taxes and no prepetition amounts outstanding on account of foreign Employer Payroll Taxes.  Accordingly, the Debtors request authority, but not direction, to pay any prepetition obligations on account of the Employer Payroll Taxes and continue to honor their obligations with respect thereto in the ordinary course of business on a postpetition basis and consistent with prepetition practices.

## C.    Reimbursable Expenses.

36.    Prior to the Petition Date and in the ordinary course of business, the Debtors reimburse certain Employees for certain expenses incurred on behalf of the Debtors within the scope of their employment (the "Reimbursable Expenses").[9]  Reimbursable Expenses include, among other expenses, certain necessary business expenses incurred as a direct consequence of Employees' job duties, such as work travel, lodging, and meals.  Employees who pay for their own

---

[9]    For the avoidance of doubt, the Debtors also provide certain Employees with credit cards to cover travel and related expenses.  The Debtors do not seek authority to maintain the credit cards or to pay prepetition amounts related thereto under this Motion, but rather request such authority as part of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Debtor Bank Accounts, Business Forms, and Books and Records; (II) Authorizing the Debtors to Continue to Perform Intercompany Transactions; (III) Waiving Certain U.S. Trustee Requirements, and (IV) Granting Related Relief* filed contemporaneously herewith.

Reimbursable Expenses up front are responsible for maintaining and submitting verifying documentation for reimbursement to the Debtors through the WorkDay platform. Once the Debtors have determined that the charges are for valid reimbursable business expenses, the Debtors reimburse the submitting Employees. The Debtors incur a monthly average of approximately $48,000 in Reimbursable Expenses and estimate that, as of the Petition Date, approximately $66,000 is due and owing on account of Reimbursable Expenses.

37.    The Debtors' inability to reimburse Employees for the Reimbursable Expenses may be in conflict with certain applicable employment laws, and also would also impose an undue hardship on Employees who incurred the Reimbursable Expenses as business expenses on the Debtors' behalf or otherwise, and with the understanding that such expenses would be reimbursed. In order to preserve Employee morale and loyalty, the Debtors request that the Court authorize, but not direct, the Debtors to honor accrued and unpaid Reimbursable Expenses as of the Petition Date, and continue to meet their obligations in connection with Reimbursable Expenses in the ordinary course on a postpetition basis and consistent with prepetition practices.

## II.    Health and Welfare Coverage and Benefits.

38.    The Debtors offer their Employees the ability to participate in a number of health, insurance, and benefits programs, including, among others, U.S. Medical and Prescription Coverage, Foreign Sponsored Health Plans, FSAs, HSAs, Life Insurance Coverage, Dental Insurance Coverage, Vision Insurance Coverage, and the Employee Disability Program (each as defined herein, and along with the COBRA Benefits (as defined below), the "Health and Welfare Coverage Benefits"). The Debtors also subsidize or continue to provide certain benefits to certain former Employees after their termination, retirement, or disability leave, including, without limitation, benefits provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA Benefits").

39.    The Debtors' Health and Welfare Coverage and Benefits include:

- U.S. Medical and Prescription Coverage:  The Debtors provide eligible U.S. Employees with medical and prescription coverage programs ("U.S. Medical and Prescription Coverage") through self-funded plans administered by Aetna.  Under the Aetna plan, U.S. Employees may choose from one of two options with a fixed premium: (i) the "Point of Service" plan, which gives participating Employees flexibility by allowing them to visit any doctor in- or out-of-network in exchange for a low deductible and out-of-pocket maximum; and (ii) the "High Deductible Health Plan," which has lower Employee contribution requirements but results in a higher deductible and out-of-pocket maximum.  Only the Employees participating in the High Deductible Health Plan are eligible for HSAs, as described below. Temporary Employees who have worked at least ninety days consecutively and part-time Employees who have worked an average of thirty hours per week in a twelve-month measurement period are eligible to participate only in Aetna's Point of Service plan.  For both plans, the Debtors cover an average of approximately seventy-four percent of the cost of premiums while the Employees cover the remaining twenty-six percent.  Legal spouses, domestic partners, and dependent children are eligible dependents and can be additionally covered.  Approximately ninety-four percent of U.S. Employees enroll in U.S. Medical and Prescription Coverage.  Under the agreement with Aetna, the Debtors are self-insured up to $350,000 dollars per insured individual (the "Stop Loss Limit").  The Debtors cover their Employees' medical expenses up to the Stop Loss Limit, and Aetna covers the excess.  The monthly cost of the U.S. Medical and Prescription Coverage for administration fees and premiums to the Debtors is approximately $170,000.  As of the Petition Date, the Debtors estimate they owe approximately $170,000 on account of accrued but unpaid obligations in connection with U.S. Medical and Prescription Coverage.

  As self-insured medical plan providers under the Aetna Plan, the Debtors pay medical claims under the plans as they become due on a weekly basis.  Employee contributions are deducted directly from the respective Employee's paychecks and are held by the Debtors to fund a portion of the payment of U.S. Medical and Prescription claims.  The Debtors pay approximately $1.6 million per month on account of U.S. Medical and Prescription Coverage claims.

- Foreign Sponsored Health Plans:  The Non-U.S. Employees are generally offered similar medical and prescription coverage under either Debtor-sponsored programs (the "Foreign Sponsored Health Plans") or government-sponsored programs. Approximately sixty Non-U.S. Employees are enrolled in Foreign Sponsored Health Plans, which are administered by various third-party providers, including Equitable Life of Canada ("Equitable Life").  The Foreign Sponsored Health Plans include coverage for, among other things, hospital visits, general health care, prescription drugs, and dental.  The monthly cost of the Foreign Sponsored Health Plans to the Debtors is approximately $16,300 for Equitable Life.  As of the Petition Date, the Debtors estimate that they do not owe any prepetition amounts on account of obligations under the Foreign Sponsored Health Plans.

18

- <u>Flexible Spending Accounts and Health Savings Accounts</u>:  The Debtors provide U.S. Employees with the opportunity to contribute to a dependent care flexible spending account (the "<u>FSA</u>") administrated by Health Equity and a health savings account (the "<u>HSA</u>"), administered by Fidelity.  The FSAs and the HSAs allow U.S. Employees voluntarily to set aside pre-tax funds to pay for eligible health and welfare expenses.  For the 2023 calendar year, each eligible U.S. Employee can contribute up to $5,000 to an FSA depending on such U.S. Employee's marital status and up to $7,750 to an HSA depending on such U.S. Employee's age and familial status, and immediately draw on contributions to pay for eligible child and dependent care and health care expenses.  The Debtors do not contribute directly to the FSAs but do contribute to U.S. Employee HSAs based on the type of Medical and Prescription Coverage the U.S. Employee is enrolled in and whether the coverage includes spouses and/or dependents.    The Debtors contribute approximately $18,000 each month to U.S. Employee HSAs.  Additionally, the Debtors pay a quarterly administration fee of approximately $1,800 to Fidelity on account of the HSAs.    The Debtors pay a monthly administration fee of approximately $3,000 to Health Equity on account of both the FSAs and Commuter Transit Accounts (*i.e.*, a pre-tax account to help pay for public transit and/or parking).  As of the Petition Date, the Debtors do not believe they owe any amounts on account of unpaid HSA contributions, while they believe that approximately $2,100 remains outstanding on account of unpaid HSA fees.  In addition, as of the Petition Date, the Debtors estimate they owe approximately $3,000 on account of unpaid FSA fees.

- <u>Life Insurance Coverage</u>:  The Debtors provide (i) basic life and accidental death and dismemberment insurance (at an amount calculated based on a percentage of the Employee's annual earnings, up to a fixed maximum amount); (ii) long- and short-term disability insurance to all active Employees who are working thirty or more hours per week; and (iii) supplemental, spousal, and child life products offered on a voluntary, Employee-paid basis ("<u>U.S. Life Insurance Coverage</u>"), administered by First Unum Life Insurance Company (the "<u>Unum</u>").  Certain Non-U.S. Employees are provided different Life and Insurance Coverage depending on the jurisdiction in which they sit.  Life plans for Non-U.S. Employees are administered by Equitable Life of Canada (the "<u>Foreign Life Insurance Coverage</u>," and, together with the U.S. Life Insurance Coverage, the "<u>Life Insurance Coverage</u>").  As of the Petition Date, retiring Employees of the Debtors are generally not provided Foreign Life Insurance Coverage.

  The average monthly cost of the Life Insurance Coverage to the Debtors is approximately $97,000, excluding voluntary products.  As of the Petition Date, the Debtors estimate they owe approximately $97,000 on account of unpaid Life Insurance Coverage.

- <u>U.S. Dental Insurance Coverage</u>:  The Debtors offer eligible U.S. Employees basic and enhanced dental plans administered by Aetna ("<u>Dental Insurance Coverage</u>").  The dental plans provide for both in- and out-of-network coverage.  Approximately thirty-six percent of the dental premiums are employer-paid.  The average monthly

cost of the Dental Insurance Coverage to the Debtors is approximately $4,200. As of the Petition Date, the Debtors estimate they owe approximately $4,200 on account of unpaid Dental Insurance Coverage.

The dental plan is self-insured, and as such, the Debtors pay dental claims of Employees covered by the dental plan as they become due weekly. Employee contributions to the dental plans are deducted directly from the respective Employee's paychecks and are held by the Debtors to fund a portion of the payment of dental claims. The Debtors pay approximately $103,000 per month on account of dental claims in the United States.

- <u>U.S. Vision Insurance Coverage</u>:  The Debtors offer vision insurance plans provided by Aetna ("<u>Vision Insurance Coverage</u>").  The vision plans provide for both in- and out-of-network coverage. The Debtors provide 100 percent of Vision Insurance Coverage.  The average monthly cost of the Vision Insurance Coverage to the Debtors is approximately $900.  As of the Petition Date, the Debtors estimate that they owe approximately $900 on account of unpaid Vision Insurance Coverage.

  The vision plan is self-insured, and as such, the Debtors pay vision claims of Employees covered by the vision plan as they become due weekly.  Employee contributions to the vision plans are deducted directly from the respective Employee's paychecks and are held by the Debtors to fund a portion of the payment of vision claims.  The Debtors pay approximately $12,000 per month on account of vision claims in the United States.

- <u>Employee Long-Term/Short-Term Disability Program</u>:  The Debtors also provide long-term and short-term disability benefits (the "<u>U.S. Employee Disability Program</u>") to U.S. Employees through Unum.  The U.S. Employee Disability Program is designed to offer resources such as short-term disability payment during parental leave, hospitalization, illness, and/or injury.  Upon an Employee's application for short-term disability payment, Unum makes certain determinations regarding eligibility and the amount of benefits.  The type of disability benefits available to Non-U.S. Employees varies by geographic region (the "<u>Foreign Employee Disability Program</u>" and, together with the U.S. Disability Benefits, the "<u>Employee Disability Program</u>").  For example, in Canada, the Debtors also provide long-term and short-term disability benefits to Non-U.S. Employees through Equitable Life.

  The average monthly cost of the Employee Disability Program to the Debtors is approximately $167,000.  As of the Petition Date, the Debtors estimate that approximately $167,000 is due and owing on account of the Employee Disability Program.

- <u>COBRA</u>:  The Debtors are required to offer certain of their former U.S. Employees COBRA Benefits following termination of employment. The Cobra Benefits allow former Employees of the Debtors to continue using the U.S. Medical and

Prescription Coverage, Dental Insurance Coverage, Vision Insurance Coverage for up to eighteen, and occasionally thirty-six, months following termination of employment. The Debtors' COBRA Eligible Employees are typically responsible for paying all costs associated with COBRA Benefits except with respect to those former Employees whose COBRA Benefits are consideration under a severance agreement. In such instances where COBRA Benefits are included in a severance agreement, the Debtors pay for up to eighteen months of COBRA Benefits. The Debtors contribute payments to the COBRA Benefits as part of their bi-weekly payments under the Non-Insider Severance Program (as defined herein). As of the Petition Date, the Debtors believe there are $10,100 in prepetition amounts outstanding on account of COBRA Benefits. Nevertheless, out of an abundance of caution, the Debtors request authority, but not direction, to pay any prepetition amounts outstanding on account of the COBRA Benefits and continue to honor their obligations in connection with the COBRA Benefits postpetition in the ordinary course of business consistent with past practices.

- COBRA is self-insured, and as such, the Debtors pay COBRA claims of Employees covered by COBRA as they become due weekly. The Debtors pay approximately $123,000 per month on account of COBRA claims in the United States. Employee contributions to COBRA are deducted directly from the respective Employee's paychecks and are held by the Debtors to fund the payment of COBRA claims.

40. The Debtors incur a monthly average of approximately $500,000 on account of the Health and Welfare Coverage and Benefits. As of the Petition Date, the Debtors estimate they owe approximately $500,000 on account of unpaid Health and Welfare Coverage and Benefits. As discussed above, failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the Debtors' workforce. Accordingly, the Debtors request authority, but not direction, to continue to pay all prepetition amounts owed in connection with the Health and Welfare Coverage and Benefits and to continue meeting their obligations in connection therewith on a postpetition basis in the ordinary course of business and consistent with prepetition practices.

### III.    Workers' Compensation.[10]

41.    In the ordinary course of business, the Debtors maintain three workers' compensation insurance policies in accordance with applicable requirements in the United States and equivalent coverages in foreign jurisdictions in which the Debtors operate as required by local laws.  Employees in the United States and Canada are entitled to participate in the Workers' Compensation Programs (as defined below).

42.    The Debtors maintain workers' compensation insurance for their U.S. Employees at the statutorily required level for each state in which they have Employees (collectively, and as described herein, the "U.S. Workers' Compensation Program").    The U.S. Workers' Compensation Program does not entail additional discretionary workers' compensation insurance. On average, the Debtors pay approximately $494,000 in annual plan premium payments for the U.S. Workers' Compensation Program.    As part of the Workers' Compensation Program, the Debtors maintain a workers' compensation insurance policy with American International Group, Inc. ("AIG," and such policy, the "U.S. Workers' Compensation Insurance Policy").

43.    The Debtors also maintain Workers' Compensation Programs for Non-U.S. Employees located in Canada (the "Foreign Workers' Compensation Programs" and, together with the U.S. Workers' Compensation Program, the "Workers' Compensation Programs").  The Foreign Workers' Compensation Programs are administered by Insurance Company of the State of Pennsylvania.  On average, the Debtors pay approximately $15,000 in annual premium payments for the Foreign Workers' Compensation Programs.

---

[10]    In addition to the U.S. Workers' Compensation Insurance Policy (as defined below), the Debtors maintain numerous other insurance policies, which are described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations, (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief*, filed contemporaneously herewith and incorporated herein by reference.

44.     Applicable state and foreign law require the Debtors to maintain the Workers' Compensation Programs.  If the Debtors fail to maintain the Workers' Compensation Programs, state and foreign laws may prohibit the Debtors from operating in the U.S. and applicable foreign jurisdictions.  Payment of all obligations related to the Workers' Compensation Programs is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.[11]

45.     The Debtors must continue claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[12]  Currently there is one active open claim under the Workers' Compensation Program.  To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with such claims.  This requested modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

46.     Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences

---

[11]   The Workers' Compensation Program is subject to regular audits (the "Workers' Compensation Audits"), which may result in an adjustment of the premiums owed.  Prior to the Petition Date, AIG commenced a Workers' Compensation Audit.  AIG's Workers' Compensation Audit is ongoing, and the Debtors reserve all rights in connection therewith.  As a result, the aggregate amount of the Debtors' obligations arising from the Workers' Compensation Audits is not known at this time.  Out of an abundance of caution, the Debtors seek authority, but not direction, to honor any amounts owed on account of any premium adjustments resulting from AIG's Workers' Compensation Audit in the ordinary course of business on a postpetition basis and consistent with prepetition practices.

[12]   The Debtors' Workers' Compensation Program may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any necessary modifications thereto.

23

that potentially could disrupt the reorganization process.  As of the Petition Date, the Debtors do not believe that there are any prepetition amounts outstanding on account of accrued but unpaid Workers' Compensation Program obligations (subject to a potential premium adjustment that may become due and owing on account of the AIG Worker's Compensation Audit).  Nevertheless, out of an abundance of caution, the Debtors request authority, but not direction, to (a) pay prepetition amounts due on account of the Workers' Compensation Program, (b) continue to meet their obligations under the Workers' Compensation Program in the ordinary course of business, and consistent with prepetition practices, on a postpetition basis, and (c) to the extent applicable, modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

## IV.    Retirement Plans

### A.    The 401(k) Plan.

47.    As of the Petition Date, the Debtors maintain a retirement savings plan for the benefit of their U.S. Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan").  The 401(k) Plan is administered by Fidelity Investments ("Fidelity") and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.  The Debtors do not provide a 401(k) match program but the U.S. Employees are permitted to contribute to their old 401(k) accounts and open new 401(k) accounts with Fidelity.  Fidelity administers and maintains the Debtors' Employees 401(k) accounts for a quarterly administrative fee in the amount of $15,000.  The Debtors estimate that, as of the Petition Date, approximately $15,000 is due and owing on account of such fees.  The Debtors seek authority to continue offering the 401(k) Plan and pay related fees on a postpetition basis in the ordinary course of business and consistent with prepetition practices.

###### B.      Foreign Retirement Plans.

48.      As of the Petition Date, the Debtors maintain certain retirement plans for their Non-U.S. Employees (the "Foreign Retirement Plans," and together with the 401(k) Plan, the "Retirement Plans").  Non-U.S. Employees located in Canada are able to participate in a registered retirement savings plan (the "RRSP") with Desjardins.  Under the RRSP, which is administered by Desjardins, the Debtors match 100 percent of a participating Non-U.S. Employee's contribution up to a maximum of $3,500 of such Non-U.S. Employee's contribution to the RRSP.  Desjardins administers and maintains the Debtors' Employees RRSP accounts for a quarterly administrative fee in the amount of $5,000.

49.      As of the Petition Date, the Debtors estimate they have accrued approximately $5,000 on account of the Foreign Retirement Plans.  The Debtors seek authorization to continue to satisfy amounts incurred on account of the Foreign Retirement Plans (including any prepetition amounts that may be outstanding) in the ordinary course of business, and consistent with prepetition practices, on a postpetition basis.

### V.      Paid Leave Benefits.

50.      The Debtors provide paid time off to certain eligible Employees (the "Paid Leave Benefits").  The Debtors' Paid Leave Benefits program consists of paid time off ("PTO"), paid sick time ("PST"), and paid parental leave.[13]  In addition, the Debtors provide paid bereavement leave and voting leave.  Family and Medical Leave Act leave, military leave, safety leave, and jury duty leave (except as required by applicable state law) are not included in the Paid Leave Benefits program.  When an Employee elects to use Paid Leave Benefits, that Employee is paid his or her

---

[13]    Part-time Employees are not eligible for PTO but are eligible for PST; temporary Employees are not eligible for PTO and are only eligible for PST to the extent required under applicable law; and only regular, U.S. Employees who have been employed by WeWork for three continuous months are eligible for parental leave.

regular hourly or salaried rate. Paid Leave Benefits accrue differently depending on the type of benefit considered. For example, PTO accrues for twenty days per year during the Employee's first three calendar years of employment, and twenty-three days per year thereafter, irrespective of the class of worker (e.g., hourly or salaried). Upon an Employee's termination, the Debtor pays out accrued and unused PTO consistent with applicable law and Company policy. PST is accrued at the rate of 80 hours per year, irrespective of the class of worker (e.g., hourly or salaried) and is not paid out upon termination of employment. Paid parental leave is provided for sixteen weeks for eligible employees of Debtors, is not paid out upon termination of employment if unused, and, in jurisdictions where an Employee is simultaneously eligible to receive government-provided pay, reduced such that the two sources of remuneration (i.e., from the Debtors and from the government) amount to only 100 percent of the Employee's base compensation rate.

51.    The Debtors believe that the continuation of the Paid Leave Benefits program in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Furthermore, many, if not all, Employees have come to depend on the Paid Leave Benefits. As of the Petition Date, the Debtors estimate that they owe approximately $2.8 million on account of accrued but unpaid Paid Leave Benefits. The Debtors request authority, but not direction, to pay any prepetition amounts owed on account of Paid Leave Benefits and to continue paying amounts owed on account of Paid Leave Benefits in the ordinary course of business, and consistent with prepetition practices, on a postpetition basis.

## VI.    Non-Insider Severance Program.

52.    In the ordinary course of business, the Debtors maintain a severance program for the benefit of certain non-insider Employees (the "Non-Insider Severance Program"). Under the Non-Insider Severance Program, certain Employees may be eligible for payment of severance if their employment is terminated due to not-for-cause, employer-initiated termination and they first

sign a fulsome release of claims agreement in favor of the Company.  Most severance payments
(the "Non-Insider Severance Benefits") vary based on the length of the Employee's affiliation with
the Debtors based on length of service, subject to a maximum accrual period of twenty-six weeks
of base pay for eligible Employees who have been employed by WeWork for nine or more years.
Non-Insider Severance Benefits are paid in installments in accordance with the regular payroll
practices of the Company (but no less frequently than monthly) and will commence within sixty
days following the Employee's employment termination date.  Additionally, a number of
higher-level, non-insider Employees negotiate individualized severance terms as part of their
employment contract, and as a result, the Debtors' severance obligations may vary for such
Employees when compared to the generalized terms of the Non-Insider Severance Program for
other Employees.

53.    The Debtors' maintenance of the Non-Insider Severance Program and payment of
Non-Insider Severance Benefits are critical to maintaining Employee morale and loyalty.  Failure
to maintain the Non-Insider Severance Program would result in increased instability in the
Debtors' workforce, which would undermine the Debtors' ability to strengthen their financial and
operational foundation, generate growth, and position themselves for long-term success.

54.    As of the Petition Date, the Debtors believe that thirty-three Employees are entitled
to Non-Insider Severance Benefits totaling approximately $800,000, including amounts owed to
individual holders of claims with respect to such Non-Insider Severance Benefits in excess of the
Priority Cap.

55.    The Debtors also seek authority, but not direction, to pay prepetition amounts owed
on account of the Non-Insider Severance Benefits and to continue the Non-Insider Severance
Program on a postpetition basis in the ordinary course of business and consistent with their

prepetition practices.  For the avoidance of doubt, the Debtors do not seek authority to pay any Non-Insider Severance Benefits in excess of the Priority Cap pursuant to the Interim Order.  The Debtors do, however, seek authority to pay amounts under Non-Insider Severance Benefits in excess of the Priority Cap pursuant solely to the Final Order.

**VII.    Non-Insider Retention Bonus Program (Final Order Only).**

56.    Prior to the Petition Date, the Debtors implemented a retention bonus program to retain approximately forty-four non-insider Employees (the "Non-Insider Retention Bonus Program").  The Non-Insider Retention Bonus Program is crucial to retaining the Debtors' valuable Employees.  Under the Non-Insider Retention Bonus Program, bonuses are paid out each quarter (each, a "Retention Period") with postpetition payments coming due in February, 2024, May 2024, and August 2024.  Under the Non-Insider Retention Bonus Program, each participant must remain employed through the applicable Retention Period.  If an eligible non-Insider Employee is terminated for any reason other than death or disability or for cause, such Employee is entitled to receive a *pro rata* portion of the bonus for the Retention Period that the termination occurred.  An Employee who resigns voluntarily or is terminated by the Debtors for cause prior to any vesting will not be eligible to receive any retention payments for such Retention Period.

57.    As of the Petition Date, the Debtors do not believe that there are any prepetition amounts due and owing on account of the Non-Insider Retention Bonus Program. The Debtors estimate that the total amount that will come due under the Non-Insider Retention Bonus Program after the Petition Date and during the pendency of these chapter 11 cases is approximately $3.5 million.  Out of an abundance of caution, the Debtors seek authority, but not direction, pursuant to the Final Order only, to pay prepetition amounts on account of the Non-Insider Retention Bonus Program and to continue the Non-Insider Retention Bonus Program on a postpetition basis in the ordinary course of business.  For the avoidance of doubt, the relief sought

with respect to the Non-Insider Retention Bonus Program does not include payment of any obligations to any insider, and the Debtors will not make any non-ordinary course bonus or incentive payments to any insiders without further order of the Court.

## VIII.    Non-Employee Director Compensation (Final Order Only).

58.    As of the Petition Date, the Debtors WeWork Inc.'s board of directors (the "Board") includes six non-Employee individuals who serve as directors (the "Directors") for WeWork Inc.  Each of the non-Employee Directors receive $285,000 per year as a base plus any of the following amounts, as applicable:  (i) $70,000 per year for serving as Independent Chair, (ii) $30,000 per year for serving as Audit Committee Chair, (iii) $15,000 per year for serving as an Audit Committee Member, (iv) $25,000 per year for serving as Compensation Committee Chair, (v) $12,500 per year for serving as a Compensation Committee Member, (vi) $15,000 per year for serving as Nominating & Corporate Governance Committee Chair, *and* (vii) $7,500 per year for serving as a Nominating & Corporate Governance Committee Member.   All of the foregoing amounts (the "Director Payments") are paid monthly in advance in cash and prorated for partial service.

59.    Additionally, the Disinterested Directors receive an average monthly retainer of approximately $16,667, which is paid monthly in advance and prorated for partial service (the "Disinterested Director Retainer Fees").  Non-Employee Directors are also entitled to expense reimbursement for certain reimbursable expenses (the "Director Reimbursable Expenses," and together with the Disinterested Directors Retainer Fees and the Director Payments, the "Director Compensation").

60.    As of the Petition Date, the Debtors do not believe they owe any amounts on account of Director Compensation and believe that they are authorized to pay any postpetition Director Compensation in the ordinary course.  Nevertheless, out of an abundance of caution, the

Debtors seek authority to continue paying any prepetition amounts outstanding on account of the Director Compensation and to continue meeting their obligations in connection with the Director Compensation on a postpetition basis in the ordinary course of business.

## IX.   Additional Benefit Programs.

61.    In addition to the foregoing, the Debtors offer Employees the opportunity to participate in a range of ancillary benefits (the "Additional Benefit Programs").  The Additional Benefit Programs includes (a) planned and unplanned hospital stay coverage; (b) serious illness or condition coverage; (c) identity theft protection; (d) family, wills, and estates attorney services; (e) mental health counselling; (f) child and elderly care; (g) pet insurance; (h) milk delivery services for breastfeeding mothers; (i) student loans assistance; (j) business travel insurance; (k) transgender benefits, including prescription and surgeries coverage; (*l*) employee referral program; (m) barista cash and credit card tips; (n) corporate relocation; and (o) an employee referral program.  The aggregate cost of the Additional Benefit Programs is approximately $110,000 on a monthly basis.

62.    As of the Petition Date, the Debtors believe there are approximately $80,000 in prepetition amounts outstanding on account of the Additional Benefit Programs.  The Debtors request authority, but not direction, to continue to pay any prepetition amounts outstanding on account of the Additional Benefit Programs and to continue honoring their obligations in connection therewith on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

## X.   Payroll Vendor Obligations.

63.    In the ordinary course of business, the Debtors contract with several third-party professional employee organizations that handle human resources-related administrative functions, including payroll processing, withholding, remittance, reporting of payroll taxes, and

payment to partner staffing companies. For example, the Debtors utilize Alight Solutions ("Alight"), CloudPay, ADP International Services BV ("ADP"), and Workday, Inc. ("Workday," and together with Alight, CloudPay, and ADP, the "Payroll Vendors," and the obligations the Debtors owe thereto, the "Payroll Vendor Obligations") to administer payroll and several other employee related benefits programs. Among other things, the Payroll Vendors calculate gross-to-net wages and tax obligations and also provide payroll tax filing and human capital management services for the Debtors and, in the case of Workday, provide certain services related to administering the Compensation and Benefits, including, among other things, benefits pay and module services. The Debtors incur a monthly average of approximately $105,000 on account of payroll processing and application hosting services provided by the Payroll Vendor. As of the Petition Date, the Debtors estimate they owe approximately $58,000 on account of Payroll Vendor Obligations.

64. The Debtors' relationships with the Payroll Vendors allow the Debtors to realize substantial cost savings with respect to the administration of the Compensation and Benefits by not having to employ additional human resources professionals. In addition to saving costs, third party intermediaries like the Payroll Vendors enable the Debtors to administer payroll and benefit programs internationally, assist with labor and tax regulatory compliances, and otherwise effectively and efficiently administer the Compensation and Benefits. The Debtors therefore seek authority, but not direction, to pay any Payroll Vendor Obligations outstanding as of the Petition Date and to continue to pay Payroll Vendors on a postpetition basis as they come due, in the ordinary course of business and consistent with their prepetition practices.

**Basis for Relief**

I.     **Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and
       Benefits Obligations.**

     A.     **Certain of the Compensation and Benefits Are Entitled to Priority Treatment.**

     65.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the

Compensation and Benefits to priority treatment.  As priority claims, the Debtors are required to

pay these claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring

payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and

507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation,

severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit

plan).  To the extent that an Employee receives no more than $15,150 on account of claims entitled

to priority, the relief sought with respect to compensation only affects the timing of payments to

Employees and does not have any material negative impact on recoveries for general unsecured

creditors.  *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("The

need to pay [employee wage] claims in an ordinary course of business time frame is simple

common sense.  Employees are more likely to stay in place and to refrain from actions which could

be detrimental to the case and/or the estate if their pay and benefits remain intact and

uninterrupted.").  To the extent an Employee is owed more than $15,150 on account of certain

Compensation and Benefits, the full payment of such obligations in the ordinary course is

warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity.  As such,

these claims would be entitled to payment in full under any plan.

     66.    As set forth above, the Debtors have also incurred prepetition obligations to pay

severance to non-insider employees.  The Debtors anticipate paying approximately $800,000 in

severance obligations on an interim basis.  Courts in this circuit have recognized that "[w]age

priority has been a feature of the bankruptcy law since 1898." *See, e.g.*, *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (citing 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 507.05[1] (15th ed. 2005)).  Its purpose is to "alleviate hardship on workers . . . who may have no other source of income . . . ." *Id.* (citing Collier on Bankruptcy ¶ 507.05[1]).  This priority extends to certain other "benefits that are considered akin to compensation, such as vacation, *severance* and sick leave pay." *Id.* (emphasis added); *see also In re Landamerica Fin. Grp., Inc.*, 435 B.R. 343, 351 (Bankr. E.D. Va. 2010) (quoting *In re Landmark Land Company*, 136 B.R. 410, 413 (S.D.S.C. 1992)) (noting that "severance pay is designed to compensate employees for the economic disruption and readjustment that follows termination") (granting priority status to severance claims up to the statutory cap).  Courts in this district and elsewhere have approved the payment of pre-petition severance obligations as part of requested first day relief. *See In re Rite Aid Corporation, et al.*, No. 23-18993 (MBK) (D.N.J. Oct. 18, 2023) (authorizing the debtors to honor and pay pre-petition obligations including severance benefits); *In re Cyxtera Technologies, Inc., et al.*, No. 23-14853 (JKS) (D.N.J. June 29, 2023) (same); *In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Jan 15, 2021) (same); *In re Modell's Sporting Goods, Inc.*, et al., No. 20-14179 (VFP) (same) (Bankr. D.N.J. Mar. 13, 2020) (same); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. July 15, 2020) (same); *In re Big Village Holding LLC, et. al*, No. 23-10176 (CTG) (Bankr. D. Del. Feb. 9, 2023); *In re Agway Farm & Home Supply, LLC*, No. 22-10602 (JKS) (Bankr. D. Del. July 7, 2022).

67.    The Debtors' Employees and Independent Contractors are essential to the Debtors' business, and payment of the Compensation and Benefits at this time is necessary to avoid potential material disruption to the Debtors' ordinary-course operations.  Finding, attracting, and training

new qualified talent would be extremely difficult absent the relief requested herein. Such recruitment efforts would most likely require, among other things, higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

### B. Payment of Certain Compensation and Benefits Is Required by Law.

68.    As discussed above, the Debtors seek authority, but not direction, to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages. Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Furthermore, federal and state laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors should be authorized to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998). The Debtors therefore request that the Court recognize that the Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

69.      Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

70.      The Debtors, therefore, request that the Court recognize that the Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize, but not direct, the Debtors to transmit such monies to the proper parties in the ordinary course of business.

## II.    Payment of the Compensation and Benefits Is Warranted Under Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

71.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, bankruptcy courts require only that a debtor show a sound business purpose to justify the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr.  E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (quoting *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr.  E.D. Va. 1995)).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*,

60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

72.     Additionally, section 105(a) of the Bankruptcy Code further provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, including authorizing payments on account of the Compensation and Benefits pursuant to the doctrine of necessity. 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code, and supports the relief requested herein. *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of [prepetition] claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

73.     The doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also*

*In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of [prepetition] claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain [prepetition] claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the [c]hapter 11 process."); *In re Chateaugay Corp.*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

74.    Payment of the Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Compensation and Benefits. Additionally, continuing ordinary course benefits will help boost Employee retention and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

75.    Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the Compensation and Benefits owed to the Employees, the Debtors may experience Employee turnover and instability at this critical time in these chapter 11 cases. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant

efforts—which efforts may not be successful given the overhang of these chapter 11 cases.
Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario.
The Debtors therefore believe that payment of the prepetition obligations with respect to
Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve
value and will give the Debtors the greatest likelihood of retention of their Employees as the
Debtors seek to operate their businesses in these chapter 11 cases.

76.     Courts in this district have granted similar relief to that requested in this Motion in
previous chapter 11 cases.  *See*, *e.g.*, *Rite Aid Corporation, et al.*, No. 23-18993 (MBK) (Bankr.
D.N.J. Oct. 18, 2023) (authorizing the debtors to (a) pay prepetition employee wages, salaries, and
other compensation, and reimbursable expenses, and (b) continue employee benefits programs on
a final basis); *In re Cyxtera Tech., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same);
*In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. May 18, 2023) (same);
*In re David's Bridal, LLC*, No.23-13131 (CMG) (Bankr. D.N.J. Apr. 17, 2023) (same);
*In re Block Fi, Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023) (same); *In re Nat'l Realty*
*Inv. Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. Jan. 3, 2023) (same); *In re Alliant Tech.,*
*L.L.C.*, No. 21-19748 (JKS) (Bankr. D.N.J. Jan. 25, 2022) (same); *In re Christopher & Banks*
*Corp.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same).[14]   Accordingly, the Debtors
respectfully request that the Court authorize the Debtors to pay prepetition amounts outstanding
on account of Compensation and Benefits, and to continue their prepetition Compensation and
Benefits in the ordinary course of business on a postpetition basis.

---

[14]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request to the Debtors' proposed counsel.

III.   **Approval and Continuation of the Non-Insider Retention Bonus Program Are Justified by the Facts and Circumstances of these Chapter 11 Cases and Should Be Approved.**

77.   The Debtors believe they have authority to continue the Non-Insider Retention Bonus Program as it is an ordinary course continuation of the Debtors' prepetition practices authorized by section 363(c) of the Bankruptcy Code and constitutes a sound exercise of the Debtors' business judgment. *See, e.g.*, *In re Dana Corp.*, 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006); *In re Glob. Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007). However, out of an abundance of caution, the Debtors further submit that the Non-Insider Retention Bonus Program complies with the requirements of sections 503(b) and (c) of the Bankruptcy Code. Accordingly, for the reasons more fully set forth below, payments under the Non-Insider Retention Bonus Program are justified by the facts and circumstances of the Debtors' chapter 11 cases and should be approved.

78.   Furthermore, the Debtors respectfully submit that the provisions otherwise applicable to retention programs pursuant to section 503(c)(1) of the Bankruptcy Code are inapplicable here because no Insiders will participate in the proposed Non-Insider Retention Bonus Program.

A.   **The Non-Insider Retention Bonus Program Is a Valid Exercise of the Debtors' Business Judgment and Is Justified by the Facts and Circumstances of these Chapter 11 Cases.**

79.   The standard for determining if the Non-Insider Retention Bonus Program does not run afoul of section 503(c)(3) of the Bankruptcy Code's requirement that such contemplated payments be justified by the facts and circumstances of the case is essentially the same business judgment standard articulated under section 363(b) of the Bankruptcy Code. *See In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business

judgment standard under section 363(b).").  Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case.  11 U.S.C. § 503(c)(3).

80.     Here, the business justification supporting the Non-Insider Retention Bonus Program is clear—the Debtors require the key, non-Insider Employees' specific knowledge and skill sets to preserve and maximize stakeholder value.  The Non-Insider Retention Bonus Program Employees are intimately familiar with the Debtors' operations, and many have skills that are unique and difficult to replace.  Without the Non-Insider Retention Bonus Program, the Debtors risk the departure of many of their most crucial Employees.  Such departures would likely cause a substantial disruption to the efficiency and future growth of the Debtors' operations, reducing profits and revenues to the detriment of all parties in interest.  Moreover, it is the Debtors' reasonable belief that the cost of the Non-Insider Retention Bonus Program is less than the cost of recruiting and training replacement Employees to oversee the Debtors' business and operations. Retaining Employees through the Non-Insider Retention Bonus Program will accordingly maintain stability and allow the Debtors to focus their efforts on reorganizing as effectively as possible.  Overall, the Debtors believe that the Non-Insider Retention Bonus Program is vital to retaining Employees and protecting the enterprise value associated therewith.

81.     Because implementing the Non-Insider Retention Bonus Program will motivate the Debtors' Employees to the benefit of all parties in interest, the Non-Insider Retention Bonus Program reflects a sound exercise of the Debtors' business judgment and is justified by the facts and circumstances of these chapter 11 cases.  *See, e.g.*, *In re Glob. Home Prods., LLC*, 369 B.R. at 784 ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); *In re Mesa Air Grp., Inc.*, WL 3810899, at *4 (Bankr.

S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).    Accordingly, to the extent necessary, the Non-Insider Retention Bonus Program satisfies section 503(c)(3) of the Bankruptcy Code.

IV.    **A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.**

82.    Section 362(a) of the Bankruptcy Code operates to stay:

"the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . ."

11 U.S.C. § 362(a)(1).

83.    Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).  Cause exists here to modify the automatic stay to permit the Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial wellbeing and morale of the Employees and lead to the departure of certain Employees.  In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Workers' Compensation Program to proceed.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

84.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations

and anticipated access to cash collateral and debtor-in-possession financing.  In addition, under the

Debtors' existing cash management system, the Debtors can readily identify checks or wire

transfer requests as relating to any authorized payment in respect of the relief requested herein.

Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to

authorized payments, will not be honored inadvertently.   Therefore, the Debtors respectfully

request that the Court authorize all applicable financial institutions, when requested by the Debtors,

to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the

relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

85.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one

days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into

chapter 11 is critical to the viability of their operations and that any delay in granting the relief

requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the

failure to receive the requested relief during the first twenty-one days of these chapter 11 cases

would severely disrupt the Debtors' operations at this critical juncture.  The requested relief is

necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing

value of their operations, and maximize the value of their estates for the benefit of all stakeholders.

Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of

Bankruptcy Rule 6003 to support the relief requested herein.

### Request of Waiver of Stay

86.     To the extent that the relief sought in the Motion constitutes a use of property under

section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under

Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find

that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

87.    The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

88.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or of a type otherwise specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief

requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

89.    No prior request for the relief sought in this Motion has been made to this or any other court.

## Notice

90.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group; (d) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank; (e) Cooley LLP, as counsel to Cupar Grimmond, LLC; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Securities and Exchange Commission; (j) the Internal Revenue Service; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 7, 2023
/s/ *Michael D. Sirota*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Edward O. Sassower, P.C. |
| Felice R. Yudkin, Esq. | Joshua A. Sussberg, P.C (*pro hac vice* pending) |
| Ryan T. Jareck, Esq. | Steven N. Serajeddini, P.C. (*pro hac vice* pending) |
| Court Plaza North, 25 Main Street | Ciara Foster (*pro hac vice* pending) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| Telephone:    (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | Telephone:    (212) 446-4800 |
| wusatine@coleschotz.com | Facsimile:    (212) 446-4900 |
| fyudkin@coleschotz.com | edward.sassower@kirkland.com |
| rjareck@coleschotz.com | joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |
| | ciara.foster@kirkland.com |
| | |
| *Proposed Co-Counsel for Debtors and Debtors in Possession* | *Proposed Co-Counsel for Debtors and Debtors in Possession* |

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**INTERIM ORDER (I) AUTHORIZING
THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ten (10), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing the Debtors to (a) pay undisputed prepetition wages, salaries, other compensation, and reimbursable expenses and (b) continue employee benefits programs, in each case in the ordinary course of business, and consistent with prepetition practices, including payment of certain undisputed prepetition obligations related thereto, (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, **2023, at** _____

**(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be

actually received by the Debtors' proposed counsel on or before _____, **2023,**

**at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an

order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are hereby authorized, but not directed, to:  (a) continue, modify,

change, and/or discontinue the Compensation and Benefits in the ordinary course of business, in

accordance with the Debtors' prepetition policies and practices, in their sole discretion, without

the need for further Court approval, subject to applicable law and the terms of this Interim Order;

(b) honor and pay any prepetition amounts outstanding under or related to the Compensation and

Benefits as and when such obligations are due, in their business judgment during these chapter 11

cases and without the need for further Court approval, subject to applicable law and the terms of

this Interim Order; *provided* that the Debtors will not pay any outstanding prepetition or

postpetition claims with respect to the Reimbursable Expenses in advance of the date they come

due; *provided further* that payments on account of Bonus Programs shall not be made or authorized

by this Interim Order and shall be made or authorized pursuant to the entry of a final order; and

(c) pay in the ordinary course of business any costs and expenses incidental to payment of the

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Compensation and Benefits obligations, including the Payroll Vendor Obligations, and all reasonable administrative and processing costs.

4.    Nothing herein shall be deemed to authorize the payment of any prepetition amounts to any Employee in excess of the Priority Cap, except upon further order of this Court.

5.    Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified solely to the extent necessary to allow Employees to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed. The Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business, consistent with prepetition practices, including, for the avoidance of doubt, any amounts that become due and owing on account of a Workers' Compensation Audit, if any. The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

6.    Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee if applicable nonbankruptcy law requires such payment.

7.    Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

8.    Pending entry of the Final Order, the Debtors shall not pay and nothing herein shall be deemed to authorize the payment of any prepetition amounts owed on account of the Non-

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Insider Retention Bonus Program and the Non-Employee Director Compensation, except upon further order of this Court.

9.       The Debtors are authorized, but not directed, to continue to honor their Payroll Vendor Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business, consistent with prepetition practices.

10.       The Debtors are authorized to forward any unpaid amounts on account of Payroll Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities, as applicable, in the ordinary course of business, consistent with prepetition practices.

11.       The Debtors shall not make any non-ordinary course payments, including any non-ordinary course bonus, incentive, or severance payments to any insider (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court; *provided* that, for the avoidance of doubt, nothing in the Motion or this Interim Order shall be construed as approving any payment pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section 503(c) of the Bankruptcy Code; *provided, further*, that nothing herein shall prejudice the Debtors' ability to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.  Nothing in the Motion or this Interim Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to the Interim Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

12.       The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

to receive, process, honor, and pay all such checks and electronic payment requests when presented

for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

designation of any particular check or electronic payment request as approved by this

Interim Order.

13.    Notwithstanding the relief granted in this Interim Order and any actions taken

pursuant to such relief, nothing in this Interim Order is intended as or shall be construed or deemed

to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular

claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law;

(b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim

on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication,

admission, or finding that any particular claim is an administrative expense claim, other priority

claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order

granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or

reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an

admission as to the validity, priority, enforceability, or perfection of any lien on, security interest

in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the

Debtors', or any other party in interest's, claims, causes of action, or other rights under the

Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection

of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code;

(i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise)

that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all

(Page | 8)

| Debtors: | WeWork Inc., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

14.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made pursuant to the authority granted in this Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders.  To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Order, the terms of the Cash Collateral Orders shall control.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

15.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

17.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

19.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 10)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

22.      The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two business days after the entry of this Interim Order.

23.      Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

24.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:       (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (i) authorizing the Debtors to (a) pay undisputed prepetition wages, salaries, other compensation, and reimbursable expenses and (b) continue employee benefits programs, in each case in the ordinary course of business and consistent with prepetition practices, including payment of certain undisputed prepetition obligations related thereto, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

of the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor **IT IS HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    The Debtors are hereby authorized, but not directed, to:  (a) continue, modify, change, and/or discontinue the Compensation and Benefits in the ordinary course of business, in accordance with the Debtors' prepetition policies and practices, in their sole discretion, without the need for further Court approval, subject to applicable law and the terms of this Final Order; (b) honor and pay any prepetition amounts outstanding under or related to the Compensation and Benefits as and when such obligations are due, in their business judgment during these chapter 11 cases and without the need for further Court approval, subject to applicable law and the terms of this Final Order; *provided* that the Debtors will not pay any outstanding prepetition or postpetition claims with respect to the Reimbursable Expenses in advance of the date they come due; and (c) pay in the ordinary course of business any costs and expenses incidental to payment of the Compensation and Benefits obligations, including the Payroll Vendor Obligations, and all administrative and processing costs.

3.    Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified solely to the extent necessary to allow Employees to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed.  The Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business, consistent with prepetition practices, including, for the avoidance of doubt, any amounts

| (Page | 5) | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

that become due and owing on account of a Workers' Compensation Audit, if any. The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

4.      The Debtors are authorized, but not directed, to continue to honor their Payroll Vendor Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.

5.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

6.      The Debtors are authorized, but not directed, to continue to make payments under the Non-Insider Retention Bonus Program and the Non-Employee Director Compensation on a postpetition basis in the ordinary course of business and consistent with their prepetition practices without further order of this Court.

7.      The Debtors are authorized, but not directed, to pay and honor all claims and obligations, if any, whether arising prepetition or postpetition, on account of the Sales Incentive Program without further order of this Court.

8.      Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee, if applicable nonbankruptcy law requires such payment.

9.      The Debtors are authorized to pay prepetition amounts on account of the Bonus Programs and to continue the Bonus Programs on a postpetition basis in the ordinary course of business.

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

10.     The Debtors are authorized to forward any unpaid amounts on account of Payroll Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities, as applicable, in the ordinary course of business, consistent with prepetition practices.

11.     The Debtors shall not make any non-ordinary course payments, including any non-ordinary course bonus, incentive, or severance payments to any insider (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court; *provided* that, for the avoidance of doubt, nothing in the Motion or this Final Order shall be construed as approving any payment pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section 503(c) of the Bankruptcy Code; *provided, further*, that nothing herein shall prejudice the Debtors' ability to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.  Nothing in the Motion or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to the Final Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

13.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order is intended as or shall be construed or deemed

(Page | 7)

| Debtors: | WeWork Inc., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority,

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

14.    Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made pursuant to the authority granted in this Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders.  To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Order, the terms of the Cash Collateral Orders shall control.

15.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

16.    Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

18.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.