**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>              Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY
PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN
VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS, (II) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY TO UNDISPUTED OBLIGATIONS ON
ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

TO:  THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (the "<u>Motion</u>"):[2]

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "<u>Interim Order</u>" and "<u>Final Order</u>"), (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendors Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims (each as defined herein); (b) granting administrative expense priority to all undisputed and unsatisfied obligations on account of goods ordered by or services provided to the Debtors prior to the date hereof that will not be delivered until after the Petition Date (as defined herein) and authorizing the Debtors to satisfy such obligations in the ordinary course of business; and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing twenty-eight (28) days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration.

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 9013-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork is publicly traded on the New York Stock Exchange and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

6.      On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

| Critical Vendors Categories | Estimated Prepetition Claim |
|---|---|
| Total Critical Vendor Claims | $21 million |
| Health and Safety Service Providers | $11 million |
| IT Service and Equipment Providers | $8 million |
| Member Experience Providers | $2 million |
| Foreign Vendor Claims | $2 million |
| 503(b)(9) Claims | $4 million |
| Lien Claims | $3 million |
| Total Critical Vendor Claims | $30 million |

## I.     Critical Vendor Claims.

7.     As described in further detail in the First Day Declaration, what sets WeWork apart from other providers in the industry is not only the true flexibility, the prime locations, and the unique design of its workspace, but also the member-first hospitality and exceptional community experience that it endeavors to provide to its members. Accordingly, the Debtors' ability to continue generating revenue and operating their businesses, and thus the success of these chapter 11 cases, fundamentally depends on the Debtors' ability to continue to provide the WeWork experience to which members are accustomed. At each of the nearly 600 locations that the Debtors directly operate in the United States and around the world, in the ordinary course of business, the Debtors obtain certain products and services from suppliers who are indispensable to the commercial viability of the Debtors' business enterprise (the "Critical Vendors"). These Critical Vendors include certain (a) providers of certain health and safety services such as building repair and maintenance and daily enhanced cleaning; (b) providers of certain IT services and equipment,

such as high-speed printing, network hardware and software, and business development and member service request management; and (c) providers of other goods and services essential to the WeWork member experience, including office stationery and consumables such as snacks, coffee, dairy products, condiments, and other consumable goods.

8.      Many Critical Vendors supply goods or provide services on an order-by-order basis pursuant to certain master service or supplier agreements.  If the Debtors are unable to pay prepetition claims held by the Critical Vendors and continue to pay amounts owed to the Critical Vendors as they come due in the ordinary course postpetition (collectively, the "Critical Vendor Claims"), the Critical Vendors may refuse to provide the goods and services the Debtors need to maintain ordinary course operations.  In addition, many Critical Vendors are logistically integrated with the Debtors' business enterprise.  Should the Debtors' business relationship with such Critical Vendors be disrupted, finding their replacement at each individual location would require significant effort, time, and expenses that the Debtors cannot afford and would distract from the Debtors' smooth transition into these chapter 11 cases.  Accordingly, paying the Critical Vendor Claims is essential for maintaining the going concern value of the Debtors' business and minimizing operational degradation as they work to effect a comprehensive reorganization of their business enterprise.

9.      In light of these concerns, the Debtors conducted a comprehensive analysis to ensure that the list of Critical Vendors is limited solely to those vendors without whose partnership the Debtors' business would be materially harmed to the detriment of all parties in interest. Specifically, prior to filing these chapter 11 cases, the Debtors and their advisors reviewed their accounts payable and vendor lists and consulted with the Debtors' purchasing and facility managers with a particular focus on the following criteria:

- whether certain specifications or contract requirements directly or indirectly prevent the Debtors from obtaining goods or services from alternative sources;

- whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms on short notice without causing significant disruption to the Debtors' business operation and customer service, and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to hold goods owned by the Debtors, or to refuse to ship inventory or to provide critical services on a postpetition basis;

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation;

- whether failure to pay a particular vendor could cause an inability to properly service the Debtors' customers and result in substantial revenue loss; and the health of each vendor relationship, the vendor's familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

10.    The selected Critical Vendors generally fall into the following categories:

### 1.    Health and Safety Service Providers.

11.    The Debtors operate hundreds of locations that require a high standard of cleanliness to minimize health and safety risk and to comply with various regulatory requirements. The Debtors rely on certain health and safety and building management service providers (the "Health and Safety Service Providers") to ensure that all locations are, above all else, a safe and healthy environment for the Debtors' members.  Specifically, the Health and Safety Service Providers provide, among other things, critical repair and maintenance, building securities, building access control, cleaning and janitorial services that often require prompt attention on short notice, pest control, vertical transportation and lift maintenance, fire and life safety maintenance repairs, and inspection services, all to ensure that the locations are regulatorily compliant and to avoid diminishing or disrupting members' experience.  For uniformity and administrative efficiency, the Debtors often utilize single Health and Safety Service Providers across numerous locations in the United States.  For example, a single Health and Safety Provider may provide repair and maintenance services at hundreds of locations in the United States.  Once integrated into the Debtors' ordinary course operations, a Health and Safety Service Provider becomes an indispensable part of the Debtors' business enterprise given the administrative burden it would take to find a substitute provider at each individual location on short notice, the significant time any substitute vendor will likely need to be integrated with the Debtors' operation, and the strong likelihood of disrupting member experience during the interim.  Any delay or interruption to the services provided by the Health and Safety Service Providers may lead to monetary or non-monetary sanctions from regulatory agencies and major disruptions to member experience and the day-to-day operation of the Debtors' business.

12.     As of the Petition Date, the Debtors estimate that there is an aggregate of approximately $11 million in prepetition amounts outstanding on account of prepetition services provided by the Health and Safety Service Providers.

**2.      IT Service and Equipment Providers.**

13.     Flexible workspace is at the core of the WeWork member experience.  To ensure each location has enough flexibility to accommodate members' needs, the Debtors partner with certain IT service and equipment providers (the "IT Service and Equipment Providers") to provide certain IT equipment and services either on a term-by-term basis or on demand.  For example, the Debtors partner with IT Service and Equipment Providers where the latter (a) provide cloud computing capacity to support the operation of the Debtors' proprietary software, (b) deliver, install, and/or maintain certain essential IT equipment such as Internet and video hardware on an order-by-order basis, (c) provide engineers, technicians, and other support personnel to support the development of the Debtors' technology projects on demand, or (d) provide license for administrative and management software essential to the Debtors' business operation.  IT Service and Equipment Providers are often the exclusive supplier or licensor of certain hardware, software, and services for the Debtors.  Should the Debtors' business relationship with them be discontinued, finding a substitute provider for and integrating it with the Debtors' operation will be administratively burdensome, time-consuming, expensive, and will significantly interfere with member experience.  Some IT Service and Equipment Providers have been so integrated into the Debtors' operation due to the Debtors' use of their hardware, software, or services that replacing them on short notice amidst an in-court reorganization would be impractical, if not entirely impossible.

14.     As of the Petition Date, the Debtors estimate that there is an aggregate of approximately $8 million in prepetition amounts outstanding on account of equipment, supplies, and services provided by the IT Service and Equipment Providers prepetition.

### 3.     Member Experience Providers.

15.     In addition to the Health and Safety Service Providers and the IT Service and Equipment Providers, the Debtors also partner with certain other Critical Vendors to provide various office supplies and amenities that are integral to the WeWork member experience (collectively, the "Member Experience Providers").  For example, the Debtors work with Member Experience Providers to provide stationery products, office supplies, coffee, dairy products, drinks, condiments, and other consumables across hundreds of locations in the United States alone.  These are amenities that members have paid for and expected to receive as an essential part of WeWork's core space-as-a-service offering, and their absence may lead to member dissatisfaction and attrition, thereby jeopardizing the Debtors' primary source of revenue at a time when they simply cannot afford it.  In addition, like other Critical Vendors, many Member Experience Providers are logistically integrated with the Debtors' operation across numerous occasions.  Therefore, like other Critical Vendors, replacing Member Experience Providers at each individual location would be administratively burdensome, time-consuming, and expensive and would significantly interfere with member experience.

16.     As of the Petition Date, the Debtors estimate that they owe an aggregate of approximately $2 million on account of supplies and services provided by the Member Experience Providers prepetition, and an aggregate of approximately $21 million on account of prepetition goods provided and/or services rendered by all three categories of Critical Vendors.

17.     For the foregoing reasons, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments on account of the prepetition Critical Vendor Claims solely to the extent necessary to ensure that a particular Critical Vendor continues to provide goods and services essential to the Debtors' commercial operations and reorganization efforts.

## II.     Foreign Vendor Claims.

18.     The continual operation of the Debtors' business entails transacting with certain foreign vendors, including foreign utility providers (collectively, the "Foreign Vendors").  The Foreign Vendors provide, among other things, critical goods and services including building-level utilities, cleaning services, and maintenance and repairs at the Debtors' foreign Facilities.  As of the Petition Date, the Debtors estimate that there is approximately $2 million in aggregate amounts outstanding on account of prepetition goods provided and/or services rendered by the Debtors' Foreign Vendors (the "Foreign Vendor Claims").

19.     Based on the reactions of foreign suppliers in other chapter 11 cases, the Debtors believe there is a significant and material risk that a Foreign Vendor may stop providing services, including utilities, to the Debtors on a timely basis and/or completely sever its business relationship with the Debtors.  Foreign suppliers and vendors are often unfamiliar with the chapter 11 process and react skeptically to various debtor protections.  Upon nonpayment of certain Foreign Vendor Claims, Foreign Vendors may take other harmful actions short of severing their relations with the Debtors, including refusing to supply goods or services or cutting off utility services to the detriment of members and the Debtors' ongoing business operation at foreign locations.  Providing uninterrupted services for the Debtors' foreign-based members is critical to the Debtors' businesses and cash flows, and the Debtors cannot afford any delays or interruptions of this kind.

20.     For the foregoing reasons, the Debtors seek entry of the Interim Order and Final

Order granting them authority to make payments, in their sole discretion and business judgment,

on account of the Foreign Vendor Claims.

### III.     503(b)(9) Claims.

21.     Pursuant to section 503(b)(9) of the Bankruptcy Code, claims arising from the value

of any goods received by the Debtors within the twenty days before the Petition Date in the

ordinary course of business (the "503(b)(9) Claims") are entitled to administrative expense

priority.  11 U.S.C. § 503(b)(9).  In the twenty days prior to the Petition Date, the Debtors received

large volumes of coffee, dairy products, condiments, and other consumables from certain vendors

(collectively, the "503(b)(9) Claimants") on a rolling basis to satisfy their customers' demands.

22.     The vast majority of the 503(b)(9) Claimants are also Critical Vendors or Lien

Claimants (as defined herein).  The Debtors' relationships with these vendors, and with many other

503(b)(9) Claimants, are not governed by long-term contracts.  Rather, the Debtors obtain goods

from such claimants on an order-by-order basis pursuant to the terms of those certain master

agreements.  As a result, a 503(b)(9) Claimant may refuse to supply new orders if the Debtors do

not pay the 503(b)(9) Claims.  Such refusal would negatively affect the Debtors' estates, as the

Debtors' business is dependent on the steady flow of goods and supplies essential to the WeWork

member experience.

23.     The Debtors also believe that certain 503(b)(9) Claimants could demand payment

in cash on delivery—further exacerbating the Debtors' liquidity.  The Debtors believe that, as of

the Petition Date, they owe approximately $4 million on account of goods delivered within the

twenty days immediately preceding the Petition Date, approximately $3 million of which may

become due within the first twenty-one days of these chapter 11 cases and the value of which may

be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code. *See* 11 U.S.C. § 503(b)(9).

24.     For the foregoing reasons, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments, in their sole discretion and business judgment, on account of the undisputed 503(b)(9) Claims. Importantly, the Debtors do not seek to accelerate or modify existing payment terms with respect to the 503(b)(9) Claims. Rather, the Debtors will pay the 503(b)(9) Claims only as they come due in the ordinary course of business.

**IV.    Lien Claims.**

25.     The Debtors routinely transact business with a number of third parties who may assert various statutory liens (the "Lien Claimants"), including mechanics' liens, against the Debtors and their property if the Debtors fail to pay for the services rendered. The Lien Claimants primarily consist of companies providing construction and build-out services on the Debtors' locations across the United States and Canada.

26.     In the ordinary course of business, the Debtors incur obligations (the "Lien Claims") to the Lien Claimants for design and construction services and the delivery and installation of furniture, fixtures, and equipment. Also, to maintain efficient operations, the Debtors employ a network of providers that warehouse and transport goods to their various locations. Under the laws of most states, these servicers or carriers will, in certain circumstances, have a lien on the goods in their possession that secures the charges or expenses the Debtors incurred in connection with the transportation of goods or the supply of labor.[3] As of the Petition

---

[3]   For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2005).

Date, the Debtors estimate that there is approximately $3 million in aggregate amounts outstanding on account of the Lien Claims.

27.     If amounts owed to the Lien Claimants are not paid, certain of the Lien Claimants may be able to assert and perfect mechanics' or other liens against certain of the Debtors' goods or property, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code. To the extent any Lien Claimant has already perfected a lien on any of the Debtors' or their customers' property or, in the Debtors' estimation, could assert and perfect a lien on any such property, it is imperative that the Debtors be authorized to pay such Lien Claimants, regardless of whether their claims arose prior to or after the Petition Date. Such payment will secure the release of any such liens and ensure the Debtors' continued, uninterrupted access to the goods and services provided by the Lien Claimants.

28.     Moreover, the value of the assets in the possession of the Lien Claimants generally exceeds the value of their respective prepetition claims. The Lien Claimants' refusal to deliver or return the Debtors' goods due to nonpayment would severely disrupt the Debtors' operations and could potentially cost the Debtors a substantial amount of revenue and future business. The Debtors' ability to maintain access to materials, goods, equipment, and installation services is critical to the continued viability of the Debtors' business operations.

29.     For the foregoing reasons, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments, in their sole discretion and business judgment, on account of any Lien Claims outstanding as of the Petition Date and continue to make such payments on a postpetition basis in the ordinary course of business.

**V.     Customary Trade Terms.**

30.     Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims only to the extent necessary

to preserve their business. To that end, in return for paying such claims either in full or in part, the Debtors propose, in their discretion, that they be authorized to require the Critical Vendors, the Foreign Vendors, the 503(b)(9) Claimants, and the Lien Claimants, as applicable, to provide favorable trade terms for the postpetition procurement of goods and services.

31.    Specifically, the Debtors seek the authority, but not direction, to condition payment of the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims upon such claimant's agreement to continue—or resume—supplying such products and services to the Debtors in accordance with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed to by the Debtors in their discretion and reasonable business judgment (the "Customary Trade Terms"). The Debtors reserve the right to require, at their discretion, that the Customary Trade Terms condition to payment be made in writing.

32.    In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance, and such supplier or vendor will be required to repay the Debtors such postpetition payments to the extent

they exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## VI.    Outstanding Orders.

33.    Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Orders").  In the mistaken belief that they would be general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially disrupting the Debtors' ongoing business operations and requiring the Debtors to expend substantial time and effort in issuing such substitute orders.  As set forth in greater detail below, the Debtors request that the Court confirm the administrative expense priority of the Outstanding Orders and authorize the Debtors to pay any amounts due on account of Outstanding Orders as they come due in the ordinary course of business.

### Basis for Relief

## I.    The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

34.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary to protect and preserve the estate.  *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175

(Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

35. Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

36. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its equitable power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

37. Indeed, the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). There, the Third Circuit held that

16

a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

38.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . ." *Id.*

39.     The Debtors have a sound business purpose for the relief requested herein. The authority to honor unpaid, prepetition Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims in the initial days of these chapter 11 cases, without disrupting the Debtors' operations, will maintain the integrity of the Debtors' supply chain, facilitate the Debtors'

operation of their premises and services to customers, and allow the Debtors to administer these chapter 11 cases efficiently.

40. The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants. Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into chapter 11 with minimal disruption to their operations. As such, the Debtors believe the relief sought in this Motion will not burden the Debtors but will help them maximize the value of their estates. Accordingly, for the reasons set forth herein, the Court should authorize the Debtors to satisfy the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims.

## II. The Court Should Authorize the Payment of the Critical Vendor Claims and the Foreign Vendor Claims.

41. Allowing the Debtors to pay the Critical Vendor Claims and the Foreign Vendor Claims pursuant to all or some of the above-referenced Bankruptcy Code provisions is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to preserve any going-concern value and maximize creditor recovery—thereby increasing prospects for a successful reorganization—courts in this circuit and others regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (authorizing the debtors to pay prepetition claims of critical vendors on an interim basis); *In re Cyxtera Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J.

June 29, 2023) (authorizing the debtors to pay critical vendor claims on a final basis); *In re David's Bridal LLC,* No. 23-13131 (CMG) (Bankr. D.N.J. May 18, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. Apr. 24, 2023) (same); *In re BlockFi Inc*., No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023) (same).[4]

42.     Additionally, if the Debtors do not pay certain of the Foreign Vendor Claims, certain Foreign Vendors may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims.  The Foreign Vendors may take other precipitous action against the Debtors based on the incorrect belief they are not bound by the automatic stay.  As a result, the Debtors would be unable to procure necessary services that support the core functions of their business, potentially damaging the Debtors' relationships with members irreparably.  Courts in this circuit and others routinely grant authorization for debtors to pay claims owing to foreign entities against which the automatic stay cannot be enforced readily in the United States and as to which it would be unduly time-consuming and expensive to seek enforcement of an order of the bankruptcy court in the creditor's home country.  *See, e.g.*, *In re Cyxtera Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (authorizing the debtors to pay certain prepetition foreign vendor claims on a final basis); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re Bluestem Brands, Inc.,* No. 20-10566 (MFW) (Bankr. D. Del. Mar. 30, 2020) (same); *In re Akorn, INC.*, No. 20-11177 (KBO) (Bankr. D. Del. Jun. 11, 2020) (same); *In re Dura Automotives Systems, LLC,* No. 19-12378 (KBO) (Bankr. D. Del. Nov. 19, 2019) (same).[5]

---

[4]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

[5]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

43.    The Debtors depend on the provision of services by the Critical Vendors and the Foreign Vendors.  Ensuring these Critical Vendors and Foreign Vendors continue to provide services is therefore vital to the success of these chapter 11 cases and the ability of the Debtors to maximize any going-concern value.  Accordingly, for the reasons set forth herein, the Court should authorize the Debtors to satisfy the Critical Vendor Claims and Foreign Vendor Claims.

## III.    The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

44.    Section 503(b)(9) of the Bankruptcy Code provides administrative priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  The 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan.  Moreover, the timing of such payments lies squarely within the Court's discretion.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").  The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates.  Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to the goods necessary to maintain the Debtors' operations and maximize the value of the Debtors' estates.

45.    Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors believe

they may pay administrative claims incurred in the ordinary course of business in accordance with their reasonable business judgment.  *See, e.g.*, Transcript of Hearing held on October 31, 2006, at 49, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 6, 2006) ("THE COURT: I think arguably the debtor could pay its 503(b)(9) claimants without court approval.").  Again, the timing of such payments lies squarely within the Court's discretion.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3.

46.    For these reasons, courts have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business.  *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (authorizing the debtors to pay 503(b)(9) claims on an interim basis); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6, 2023) (authorizing the debtors to pay 503(b)(9) claims on a final basis); *In re David's Bridal LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. May 18, 2023) (same); *In re SiO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 11, 2021) (same).[6]  Accordingly, for the reasons set forth herein, the Court should authorize the Debtors to satisfy the 503(b)(9) Claims.

## IV.    The Court Should Authorize the Payment of Lien Claims.

47.    Under applicable non-bankruptcy law and notwithstanding the automatic stay under section 362 of the Bankruptcy Code, certain Lien Claimants may be entitled to assert certain possessory liens on the Debtors' goods or equipment in their possession in an attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

expressly excluded from the automatic stay.[7]  11 U.S.C. § 362(b)(3).  As a result, the Debtors anticipate that certain Lien Claimants may assert or perfect liens, refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent that certain Lien Claimants have possession of the Debtors' inventory, mere possession or retention would disrupt the Debtors' operations.

48.    Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of their valid possessory lien to the extent the Debtors use or sell the estate property against which a Lien Claim is asserted.  Given that the value of such property generally far exceeds the value of the related Lien Claim, paying the Lien Claims will not harm—and, in fact, will benefit—creditors, facilitate the use and/or sale of property that could be subject to any Lien Claims, preserve the going-concern value of the Debtors' business, and enable the Debtors to smoothly transition into chapter 11.

49.    For these reasons, courts in this jurisdiction and others have authorized the payment of prepetition lien claims under similar circumstances in recent chapter 11 cases.  *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (authorizing the debtors to pay certain lien claims on an interim basis); *In re Cyxtera Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (authorizing the debtors to pay certain lien claims on a final basis); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 31, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re David's Bridal LLC,* No. 23-13131 (CMG) (Bankr. D.N.J. April 17, 2023) (authorizing the debtors to pay

---

[7]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

lien claimants on an interim basis).[8]  Accordingly, for the reasons set forth herein, the Court should

authorize the Debtors to satisfy the Lien Claims.

**V.      The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims is Authorized.**

50.     Pursuant to section 503(b)(1) of the Bankruptcy Code, claims that arise in

connection with the postpetition delivery of goods and services, including goods ordered

prepetition, are entitled to administrative expense priority because they benefit the estate

postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and

expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*,

43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered

postpetition are entitled to administrative priority).  Thus, granting the relief sought herein with

respect to the Outstanding Orders will not afford such claimants any greater priority than they

otherwise would have absent such relief and will not prejudice any other party in interest.

51.     Absent such relief, however, the Debtors may be required to expend substantial

time and effort reissuing the Outstanding Orders to assure certain suppliers that their corresponding

claims will be afforded administrative expense priority.  The attendant disruption and delay to the

continuous and timely flow of critical materials and other goods to the Debtors would force the

Debtors to potentially halt operations, disrupt the Debtors' business, and lead to a loss of revenue,

all to the detriment of the Debtors and their creditors.

52.     Indeed, courts in this circuit and others have routinely granted the type of relief

requested herein.  *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18,

2023) (granting administrative expense priority to undisputed obligations on account of

---

[8]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request of the Debtors' proposed counsel.

outstanding orders on an interim basis); *In re Cyxtera Techs., Inc.,* No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (granting administrative expense priority to undisputed obligations on account of outstanding orders on a final basis); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 31, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re Carestream Health, Inc.,* No. 22-10778 (JKS) (Bankr. D. Del. Sep. 22, 2022) (same).[9]  Accordingly, for the reasons set forth herein, the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

## **The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

53.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders and is vital to a smooth transition into chapter 11.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

---

[9]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**Request of Waiver of Stay**

54.    To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

**Waiver of Memorandum of Law**

55.    The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**Reservation of Rights**

56.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or of a type otherwise specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any

lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Prior Request

57.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Notice

58.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group; (d) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank; (e) Cooley LLP, as counsel to Cupar Grimmond, LLC; (f) the agents under each of the Debtors'

prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Securities and Exchange Commission; (j) the Internal Revenue Service; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors request that the Court interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 7, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

## <u>Exhibit A</u>

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:        (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

|  |  |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Joint Administration Requested) |

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY
PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN
VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS, (II) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON
ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through eleven

(11), is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Upon the *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendors Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims, (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business, (c) scheduling a hearing to consider approval of the Motion on a final basis, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on **[●], 2023, at [TIME] (Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before **[●], 2023, at 4:00 p.m. (Eastern Time)**. If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, in their sole discretion, in an amount not to exceed $12 million prior to entry of the Final Order, to honor, pay all or part of, and otherwise satisfy and discharge, on a case-by-case basis:  (i) the Critical Vendor Claims; (ii) the Foreign Vendors Claims; (iii) the 503(b)(9) Claims; and (iv) the Lien Claims, each on an interim basis without further order of the Court.

4.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code;

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

*provided*, however, that the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

5.      The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

6.      As a condition to receiving payment hereunder, the Debtors at their discretion may require, by written agreement (email being sufficient), such parties to continue supplying goods or services to the Debtors in accordance with Customary Trade Terms. The Debtors reserve the right to require more favorable trade terms with any party as a condition to payment of any prepetition claim.

7.      If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' reasonable discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8.    Any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets and properties, and the assets and properties of their estates. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant with a copy of this Interim Order (unless previously provided to such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant).

9.    Nothing herein shall impair or prejudice the Debtors' ability to contest, in their reasonable discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority of such claims.

10.    Notwithstanding the foregoing, prior to entry of an order granting the relief requested in the Motion on a final basis, the Debtors are not authorized to pay any prepetition

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

amounts on account of Critical Vendors Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims before the applicable due dates of such claims.

11.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek

(Page | 8)

| Debtors: | WeWork Inc., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

12.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made pursuant to the authority granted in this Interim Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "Cash Collateral Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders. To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Interim Order, the terms of the Cash Collateral Orders shall control.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

13.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or the advisors to any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or any affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by, the U.S. Trustee and the advisors to any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to a payment, the Debtors shall not make such payment without further order of this court.

14.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

15.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

(Page | 10)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

16.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any official committee appointed in these chapter 11 cases every thirty days beginning upon entry of this Interim Order.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

19.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 11)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

22.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Interim Order.

23.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

| | |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>            Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY
PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN
VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS, (II) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON
ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ten (10), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Upon the *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendors Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims, (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business, (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to honor, pay all or part of, and otherwise satisfy and discharge, on a case-by-case basis; (i) the Critical Vendor Claims (ii) the Foreign Vendors Claims; (iii) the 503(b)(9) Claims; and (iv) the Lien Claims, each on a final basis without further order of the Court.

3.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code; provided however that the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

4.      The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

5.      As a condition to receiving payment hereunder, the Debtors at their discretion may require, by written agreement (email being sufficient), such parties to continue supplying goods or

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

services to the Debtors in accordance with Customary Trade Terms. The Debtors reserve the right to require more favorable trade terms with any party as a condition to payment of any prepetition claim.

6.      If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' reasonable discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

7.      Any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims of any type, kind, or priority (including any reclamation claim), against

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

the Debtors, their assets and properties, and the assets and properties of their estates. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant with a copy of this Final Order (unless previously provided to such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant).

8.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their reasonable discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority of such claims.

9.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

10.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made pursuant to the authority granted in this Final Order shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash*

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

*Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed substantially contemporaneously herewith (the "<u>Cash Collateral Orders</u>"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Orders. To the extent there is any inconsistency between the terms of the Cash Collateral Orders and this Final Order, the terms of the Cash Collateral Orders shall control.

11. Nothing herein shall impair or prejudice the rights of the U.S. Trustee or the advisors to any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or any affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by, the U.S. Trustee and the advisors to any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to a payment, the Debtors shall not make such payment without further order of this court.

12. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

13.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

14.    The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any official committee appointed in these chapter 11 cases every thirty days beginning upon entry of this Final Order.

15.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

16.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

17.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 10)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

18.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

19.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.