**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR**
**ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS**
**TO USE CASH COLLATERAL, (II) GRANTING**
**ADEQUATE PROTECTION TO THE PREPETITION**
**SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, (IV)**
**MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

TO:  THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):[2]

## <u>Introduction</u>

1.      Despite WeWork's continued growth in recent years and significant cost reduction, the Debtors have recently faced headwinds owing primarily to rising interest rates, changing commercial real estate landscape, a slower-than-expected return to the office, and customer attrition.  These challenges, among other things, have placed increasing pressure on the Debtors' business.  Accordingly, in the second half of 2023, the Debtors retained professionals Kirkland & Ellis LLP ("<u>Kirkland</u>"), PJT Partners LP ("<u>PJT</u>"), Hilco Real Estate, LLC ("<u>Hilco</u>"), Alvarez & Marsal North America LLC ("<u>A&M</u>"), and engaged various stakeholders across the Debtors' capital structure including an ad hoc group of noteholders (the "<u>Ad Hoc Group</u>") that represented approximately 62 percent of the Unsecured Notes outstanding at the time, SoftBank Vision Fund II-2 L.P. ("<u>SoftBank</u>"), and Cupar Grimmond, LLC ("<u>Cupar</u>," and collectively with the Ad Hoc Group and SoftBank, the  "<u>Consenting Stakeholders</u>") on the terms of a comprehensive restructuring transaction that would right-size the Debtors' balance sheet and position the Debtors for long-term success.

2.      Over the course of the last several weeks, the Debtors and the Consenting Stakeholders engaged in arm's-length, good faith negotiations and worked around the clock to document, among other things:  (i) a forbearance agreement, whereby the Consenting Stakeholders

---

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration, the proposed Interim Order, the Schmaltz Declaration, or the Sheaffer Declaration, as applicable.

agreed to forbear from exercising certain remedies following a payment event default under the notes indentures until November 6, 2023; (ii) a satisfaction and forbearance letter (the "Satisfaction Letter") pursuant to which (a) SoftBank agreed to repay and posted $873.9 million of cash collateral for the undrawn amounts under the LC Facility; (b) Goldman, Kroll, and certain other Issuing Banks, agreed to forbear the exercise of any rights or remedies against the Debtors with respect to the Debtors' cross default on the LC Facility while SoftBank's payment and cash collateralization was pending; and (iii) agreed to a restructuring support agreement (the "RSA"), and (iv) the terms upon which applicable stakeholders would agree to the Debtors' use of cash collateral in chapter 11 on a consensual basis. *See* Tolley Decl. ¶ 36. Taken together, these agreements extend the Debtors' liquidity runway to allow for an orderly chapter 11 filing, provide for a comprehensive financial and operational restructuring on an expedited timeline, obviate the requirement that the Debtors repay all outstanding balances under the LC Facility and cash collateralize 105 percent of all undrawn amounts under the LC Facility within five days, and authorize the Debtors to continue to use Cash Collateral on a consensual basis. Because of the swift and decisive action taken by the Debtors and their stakeholders in advance of the Petition Date, and because of the support of the Consenting Stakeholders, the Debtors do not require debtor-in-possession financing at the outset of these chapter 11 cases.

3.      As of the Petition Date, the Debtors estimate that they have approximately $164 million of cash on hand. *See* Schmaltz Decl. at ¶ 10. Prior to the Petition Date, the Debtors, in consultation with A&M, reviewed and analyzed their projected cash receipts and disbursements to determine their liquidity needs. *Id*. at ¶ 9. Using that information, the Debtors, with the assistance of A&M, prepared a budget outlining the Debtors' postpetition cash flow forecast over the first thirteen weeks of these chapter 11 cases. *Id*. The initial approved budget, a copy of which is attached to the proposed Interim Order as Exhibit 1 (the "Initial Budget") contains line

items for cash flows anticipated to be received and disbursed during such thirteen-week period, and includes all reasonable, necessary, and foreseeable expenses that the Debtors expect to incur as a result of the operation of their business during such time, as well as the projected costs of these chapter 11 cases. *Id*. at ¶ 10. Based on the Initial Budget, the Debtors project that their remaining cash balance at the end of the first four weeks of these chapter 11 cases will be approximately $106 million and their remaining cash balance at the end of the 13-week period will be approximately $45 million. *Id*. at ¶ 11. Accordingly, the Debtors believe that they will have sufficient liquidity to continue operating their business in the ordinary course, provided they are granted access to Cash Collateral. *Id*. at ¶ 11.

4.      Access to Cash Collateral during these chapter 11 cases is critical to satisfy payroll, pay landlords and vendors, support member programs, meet overhead obligations, and to make payments that are necessary for the continued management, operation, and preservation of the Debtors' business and international portfolio obligations. *See* Schmaltz Decl. at ¶ 10; Sheaffer Decl. at ¶ 9. Recognizing this, the Debtors immediately engaged with the Consenting Stakeholders on the consensual use of Cash Collateral as part of the discussions on a comprehensive restructuring transaction. Schmaltz Decl. at ¶ 12. As part of these negotiations, the Debtors and the Consenting Stakeholders discussed, among other things, a form of budget for the duration of the chapter 11 cases, an adequate protection package, and a restructuring timeline that would allow the Debtors to continue to use Cash Collateral while they work expeditiously to implement the transactions contemplated under the RSA.

5.      It was only after weeks of hard-fought, arm's-length negotiations that the Debtors reached an agreement with the Consenting Stakeholders concerning the consensual use of Cash Collateral. *Id*. Among other things, and subject to this Court's approval, the Debtors have agreed to provide the Prepetition Secured Parties with various forms of adequate protection to protect

4

against the postpetition diminution in value of their Prepetition Collateral, including Cash Collateral . Sheaffer Decl. at ¶ 11. Specifically, among other things, the Debtors have agreed to certain adequate protection liens, superpriority claims, payment of certain fees and expenses, and reporting, all in accordance with the Approved Budget. Schmaltz Decl. at ¶ 13; Sheaffer Decl. at ¶ 11. This adequate protection package was negotiated in good faith, at arm's-length, and is on market terms and consistent with the adequate protection packages in similar cases. Sheaffer Decl. at ¶ 10, 13.

6.      The proposed adequate protection package is fair and reasonable under the circumstances of these chapter 11 cases and ensures the Debtors are able to continue using the Cash Collateral for the benefit of all parties in interest and their estates. Sheaffer Decl. at ¶ 11. Thus, for the reasons set forth herein, the First Day Declaration, the Schmaltz Declaration, and the Sheaffer Declaration, the Debtors believe that the relief requested herein will maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders and is an exercise of the Debtors' sound business judgment.

7.      Without access to Cash Collateral, the Debtors will not have the liquidity necessary to continue operating during these chapter 11 cases. Schmaltz Decl. at ¶ 8; Sheaffer Decl. at ¶ 9. As a result, the Debtors would experience significant business disruption, would need to meaningfully curtail their operations, would face numerous other value-destructive consequences, and may irreparably harm the Debtors' business and longstanding member, landlord, and vendor relationships, among others. Schmaltz Decl. at ¶ 10. Accordingly, the Debtors respectfully request that the Court approve the relief requested herein and enter an interim order substantially in the form attached hereto as **<u>Exhibit A</u>** and a final order.

## Relief Requested

8.      The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A**, and a final order (the "Interim Order" and the "Final Order," respectively, and together, the "Orders"), (i) authorizing the Debtors to use Cash Collateral, (ii) granting adequate protection, solely to the extent provided in the Orders, to the Prepetition Secured Parties, (iii) scheduling a final hearing (the "Final Hearing") to consider approval of this Motion on a final basis, (iv) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms of the Orders, and (v) granting related relief.

9.      In support of this Motion, the Debtors respectively submit the *Declaration of Justin Schmaltz in Support of the Debtors' Motion for Entry of Interim and Final Orders* (*I*) *Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Schmaltz Declaration"), and the *Declaration of Paul Sheaffer in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Sheaffer Declaration") filed contemporaneously herewith.

## Jurisdiction and Venue

10.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.      The bases for the relief requested herein are sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-3 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

13.      The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork is publicly traded on the New York Stock Exchange and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs including New York City, London, Dublin, Boston, and Miami.  For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion.  The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

14.      On November 6, 2023, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to

Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### Concise Statement Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-3

15.    The below chart contains a summary of the material terms of the proposed use of Cash Collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b) and Local Rule 4001-3.[3]

| Summary of Material Terms | |
|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-3 | The Prepetition Secured Parties are the (i) Prepetition First Lien Secured Parties, (ii) Prepetition Second Lien Secured Parties, and (iii) Prepetition Third Lien Secured Parties. *See* Interim Order ¶ 6(b). |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) | The Debtors are hereby authorized, subject to the terms and conditions of the Interim Order (including the Carve out, the JPM Carve Out and compliance with the Approved Budget) during the period from the Petition Date through and including the Termination Date, and not beyond, to use the Cash Collateral for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof and (ii) satisfaction of Adequate Protection Obligations owed to the Prepetition Secured Parties, as provided herein; provided that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of the Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court; and (iii) to fund the Carve Out Reserves in accordance with the Interim Order. |
| **Budget and Variance Reporting** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-3 | The Debtors are permitted to use the Cash Collateral in accordance with the Initial Budget and any Approved Budget. The Debtors shall not, without the written consent of the Required Consenting AHG Noteholders and the SoftBank Parties make disbursements during any Reporting Period in an aggregate amount that would exceed the sum of the aggregate amount of the expenses set forth in the Approved Budget for such |

---

[3]    The summaries contained in this Motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this Motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.

| Summary of Material Terms | |
|---|---|
| | Reporting Period by more than twenty percent (20%) for the first two Variance Reports, and fifteen percent (15.0%) thereafter. *See* Interim Order ¶ 10(d). |
| **Termination Events** Bankruptcy Rule 4001(c)(l)(B) Local Rule 4001-3 | Authorization to use Cash Collateral is provided subject to termination events that are usual and customary for the provision of cash collateral. *See* Interim Order ¶ 11. |
| **Adequate Protection** Bankruptcy Rules 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii) Local Rule 4001-3 | The adequate protection provided to the Prepetition Secured Parties shall be in accordance with the terms of the Interim Order. *See* Interim Order ¶¶ J.3-5; Exhibit 2. |
| **Liens on Avoidance Actions** Local Rule 4001-3 | Proceeds from Avoidance Actions shall be subject to liens. *See* Interim Order ¶¶ J.3-5. |
| **Stipulation to Prepetition Liens and Claims** Bankruptcy Rule 4001(c)(1)(B)(iii) Local Rule 4001-3 | Subject to the Challenge Period, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree immediately upon entry of the Interim Order, to certain stipulations regarding the validity and extent of the Prepetition Secured Parties' claims and liens. *See* Interim Order Sec. G. |
| **Liens and Priorities** Bankruptcy Rule 4001(c)(1)(B)(iv) Local Rule 4001-3 | The Debtors provide liens as adequate protection for the Prepetition Secured Parties in accordance with the Interim Order and as summarized in Exhibit 2 thereto. *See* Interim Order ¶ J.3-5, Exhibit 2. |
| **Carve Out** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-3 | The Order provides a "Carve Out" of certain statutory fees and allowed professional fees of the Debtors pursuant to section 1103 of the Bankruptcy Code. *See* Interim Order ¶ J.8. |
| **Modification of Automatic Stay** Bankruptcy Rule 4001(c)(1)(B)(iv) | The stay under section 362 of the Bankruptcy Code is modified to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order and Final Order, if any. *See* Interim Order ¶ J.3-5. |
| **Challenge Period** Bankruptcy Rule 4001(c)(l)(B) Local Rule 4001-3 | The Challenge Period (as defined in the Interim Order) shall expire no later than (a) sixty (60) calendar days following the date of formation of a Committee (if appointed) and (b) seventy-five (75) calendar days following the Petition Date for parties in interest with requisite standing other than the Committee. *See* Interim Order ¶ J.20. |

| Summary of Material Terms | |
|---|---|
| **506(c) Waiver**<br>Bankruptcy Rule 4001(c)(l)(B)(x)<br><br>Local Rule 4001-3 | No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral (including the Cash Collateral) or Adequate Protection Collateral (except to the extent of the Carve Out) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Required Consenting AHG Noteholders and the SoftBank Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by the Required Consenting AHG Noteholders or the SoftBank Parties, and nothing contained in the Interim Order shall be deemed to be a consent by the Required Consenting AHG Noteholders or the SoftBank Parties, to any charge, lien, assessment or claim against the Prepetition Collateral (including the Cash Collateral) or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or otherwise.<br><br>*See* Interim Order ¶ J.14. |
| **Section 552(b) Waiver**<br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-3 | The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.<br><br>*See* Interim Order ¶ J.15 |

## I.    WeWork's Prepetition Capital Structure.

16.    As of the Petition Date, the Debtors have approximately $4.2 billion in aggregate outstanding principal and accrued interest for funded debt obligations, as reflected below.

| Funded Debt | Maturity | Approximate Principal | Approximate Accrued and Unpaid Interest, Make-Whole, and Fees | Approximate Outstanding Amount |
|---|---|---|---|---|
| **Senior LC Facility** | May 14, 2025 | $988.3 million[4] | $88.9 million | $1,077.2 million |
| **Junior LC Facility** | Mar. 7, 2025 | $470.0 million | $82.0 million | $552.0 million |
| **1L Notes (Series I)** | Aug. 15, 2027 | $525.0 million | $89.2 million | $614.2 million |
| **1L Notes (Series II)** | Aug. 15, 2027 | $306.3 million | $39.0 million | $345.2 million |
| **1L Notes (Series III)** | Aug. 15, 2027 | $181.3 million | $22.9 million | $204.1 million |

---

[4]    Amount is based on drawn amount funded by and undrawn amount cash collateralized by SoftBank pursuant to the Satisfaction Letter (as defined below).

| | | | | |
|---|---|---|---|---|
| **2L Notes** | Aug. 15, 2027 | $687.2 million | $45.8 million | $733.0 million |
| **2L Exchangeable Notes** | Aug. 15, 2027 | $187.5 million | $12.5 million | $200.0 million |
| **3L Notes** | Aug. 15, 2027 | $22.7 million | $1.6 million | $24.3 million |
| **3L Exchangeable Notes** | Aug. 15, 2027 | $269.6 million | $19.5 million | $289.1 million |
| *Total Secured Debt* | | *$3,637.8 million* | *$401.5 million* | *$4039.3 million[5]* |
| **7.875% Senior Notes** | May 1, 2025 | $163.5 million | $6.6 million | $170.1 million |
| **5.000% Senior Notes** | Jul. 10, 2025 | $9.3 million | $0.1 million | $9.5 million |
| *Total Funded Debt Obligations:* | | *$3,810.7 million* | *$408.2 million* | *$4,218.9 million* |

### A.    LC Facility.

17.    As of the Petition Date, Goldman Sachs International Bank ("<u>Goldman</u>"), OneIM Fund I LP ("<u>OneIM</u>"), and certain other financial institutions (collectively, the "<u>Issuing Banks</u>") have issued several letters of credit in two tranches on behalf of the Debtors pursuant to that certain Credit Agreement, dated as of December 27, 2019 (as amended, supplemented, or otherwise modified from time to time, the "<u>LC Facility Credit Agreement,</u>" and the facility issued thereunder, the "<u>LC Facility</u>"), by and among the Issuing Banks, WeWork Companies U.S.LLC (the "<u>WeWork LC Facility Obligor</u>"), SoftBank Vision Fund II-2 L.P. (the "<u>SVF Obligor,</u>" and jointly and severally liable on the LC Facility with the WeWork LC Facility Obligor, the "<u>Obligors</u>"), Goldman as the administrative and collateral agent for the senior tranche, Kroll Agency Services Limited ("<u>Kroll</u>") as the administrative agent for the junior tranche, and the other parties from time to time thereto.  The SVF Obligor is subrogated to the Issuing Banks' and other secured parties' rights against the WeWork LC Facility Obligor to the extent the SVF Obligor

---

[5]    Includes approximately $31.5 million in fees incurred in connection with certain prepetition transactions with respect to the LC Facility.

pays, reimburses, or cash collateralizes obligations under the LC Facility, and such payments, reimbursements, and cash collateral are not reimbursed by the WeWork LC Facility Obligor pursuant to that certain Amended and Restated Reimbursement Agreement, dated as of December 20, 2022 (as amended, supplemented, or otherwise modified from time to time, the "Prepetition Reimbursement Agreement") by and among the Obligors.

18.   The obligations under the LC Facility and certain cash management and swap/derivative obligations provided by parties to the LC Facility (or their affiliates) are secured by the assets and equity interests of certain Debtor entities.  The SVF Obligor has also secured such obligations by collaterally assigning its right to call up to approximately $2.5 billion in capital from SoftBank.

19.   As of the Petition Date, and in connection with the Satisfaction Letter executed by the WeWork LC Facility Obligor, the SVF Obligor, Goldman, Kroll, and certain of the Issuing Banks including Goldman and OneIM, the SVF Obligor reimbursed approximately $179.5 million for the senior tranche of the LC Facility and approximately $542.6 million for the junior tranche of the LC Facility, posted approximately $808.8 million of cash collateral for the undrawn senior tranche of the LC Facility, and paid approximately $50.6 million for various fees and expenses under the LC Facility Credit Agreement.  As of the Petition Date and pursuant to the Prepetition Reimbursement Agreement, the WeWork LC Facility Obligor's total indebtedness to the SVF Obligor in its capacity as subrogee under the LC Facility with respect to such reimbursement, cash collateral, and other payments is not less than approximately $1.6 billion.

**B.    1L Notes.**

20.    Pursuant to that certain First Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, supplemented or otherwise modified from time to time, the "1L Notes Indenture"), by and among WeWork Companies U.S. LLC and WW Co-Obligor Inc. as the co-

issuers (the "Notes Issuers"), the guarantors party thereto (the "Notes Guarantors"), and U.S. Bank Trust Company, National Association, as trustee and collateral agent, the Company issued $1,012,500,000 in aggregate principal amount of 1L Notes. The Notes Guarantors unconditionally and irrevocably guaranteed the obligations of the Note Issuers with respect to the 1L Notes.

21.    Pursuant to the 1L Notes Indenture, the 1L Notes were originally issued with a face value of $1,012,500,000, comprising: (i) $525,000,000 in aggregate principal amount of 15.00% First Lien Senior Secured PIK Notes due 2027, Series I (the "Series I 1L Notes"), (ii) $306,250,000 in aggregate principal amount of 15.00% First Lien Senior Secured PIK Notes due 2027, Series II (the "Series II 1L Notes"), and (iii) $181,250,000 in aggregate principal amount of 15.00% First Lien Senior Secured PIK Notes due 2027, Series III (the "Series III 1L Notes," and, together with the Series II 1L Notes, the "1L Delayed Draw Notes" and, collectively with the Series I 1L Notes and the Series II 1L Notes, the "1L Notes").

22.    In connection with the Notes Exchange Transactions, the Series I 1L Notes were issued and sold to the New Money Participants as a requirement to be able to exchange their Unsecured Notes into 2L Notes. The Series I 1L Notes were backstopped by an ad hoc group of noteholders (the "Ad Hoc Group") that represented approximately 62 percent of the Unsecured Notes outstanding at the time. The Series II 1L Notes were issued to SVF II, initially in the form of an undrawn delayed draw commitment, following the redemption of the $300 million in aggregate principal amount of Secured Notes due 2025 held by an affiliate of SoftBank (the "SoftBank Secured Notes") that were outstanding at the time in connection with the Notes Exchange Transactions. The Company drew on the $300 million delayed draw commitment of Series II 1L Notes on July 17, 2023, and August 25, 2023, and issued an additional $6.25 million of Series II 1L Notes as a commitment fee on account of the delayed draw commitment. The Series III 1L Notes were issued to Cupar in connection with its $175 million delayed draw

commitment.   The Company similarly exercised its delay-draw option and drew on the commitment on July 17, 2023, and August 25, 2023, and issued $6.25 million of Series III 1L Notes as a commitment fee on account of the delayed draw commitment.  As of the Petition Date, the Debtors are liable for approximately $1,012,500,000 in outstanding aggregate principal amount of the 1L Notes, plus approximately $151.1 million on account of accrued and unpaid interest plus all other fees and expenses (including make-whole premiums) on account of the 1L Notes.

     C.    **2L Notes.**

    23.    Pursuant to that certain Second Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, supplemented, or otherwise modified from time to time, the "2L  Notes Indenture"), by and among the Note Issuers, the Notes Guarantors, and U.S. Bank Trust Company, National Association, as trustee and collateral agent, the Company issued $687,212,250 in aggregate principal amount of 11.00% Second Lien Senior Secured PIK Notes due 2027  (the "2L Notes") to the New Money Participants in connection with the Notes Exchange Transactions.  The Notes Guarantors unconditionally and irrevocably guaranteed the obligations of the Note Issuers with respect to the 2L Notes.

    24.    In connection with the Notes Exchange Transactions, New Money Participants were entitled to receive in exchange for $1,000 in principal amount of Unsecured Notes being exchanged (i) $750 in principal amount of new 2L Notes, and (ii) a number of WeWork's Common Shares equal to $150, calculated at $0.9236 per share (the "Equity Exchange Price")[6]  As of the Petition Date, the Debtors are liable for approximately $687,212,250 in outstanding aggregate

---

[6]   The Equity Exchange Price was determined, prior to the Reverse Stock Split, based on the twenty-day volume weighted average price of WeWork's Common Shares during the period starting ten trading days prior to the commencement of the Exchange Offers and ending ten trading days after the commencement of the Exchange Offers.

principal amount of the 2L Notes, plus approximately $45.8 million on account of accrued and unpaid interest plus all other fees and expenses (including make-whole premiums) on account of the 2L Notes.

### D.    2L Exchangeable Notes.

25.    Pursuant to that certain Second Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, supplemented, or otherwise modified from time to time, the "2L Exchangeable Notes Indenture"), by and among the Note Issuers, the Notes Guarantors, and U.S. Bank Trust Company, National Association, as trustee and collateral agent, the Company issued $187,500,000 in aggregate principal amount of 11.00% Second Lien Senior Secured PIK Exchangeable Notes due 2027 (the "2L Exchangeable Notes") to an affiliate of SoftBank in connection with the Notes Exchange Transactions.    The Notes Guarantors unconditionally and irrevocably guaranteed the obligations of the Note Issuers with respect to the 2L Exchangeable Notes.

26.    Pursuant to the 2L Exchangeable Notes Indenture, the 2L Exchangeable Notes are exchangeable for WeWork's Common Shares at a share price that was initially set at 130 percent of the Equity Exchange Price either (i) voluntarily by the holder at any time or (ii) mandatorily by the Company after November 5, 2024, if certain conditions are met.

27.    In connection with the Notes Exchange Transactions, an affiliate of SoftBank was entitled to exchange $250,000,000 in aggregate principal amount of SoftBank Unsecured Notes into (i) $187,500,000 in aggregate principal amount of 2L Exchangeable Notes and (ii) a number of WeWork's Common Shares equal to $150 per $1,000 of SoftBank Unsecured Notes being exchanged, calculated at the Equity Exchange Price.  As of the Petition Date, the Debtors are liable for approximately $187,500,000 in outstanding aggregate principal amount, plus approximately

$12.5 million on account of accrued and unpaid interest plus all other fees and expenses on account of the 2L Exchangeable Notes.

      **E.**     **3L Notes.**

     28.    Pursuant to that certain Third Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, supplemented, or otherwise modified from time to time, the "3L Notes Indenture"), by and among the Note Issuers, the Notes Guarantors, and U.S. Bank Trust Company, National Association, as trustee and collateral agent, the Company issued $22,653,750 in aggregate principal amount of 12.00% Third Lien Senior Secured PIK Notes due 2027 (the "3L Notes") in connection with the Notes Exchange Transactions. The Notes Guarantors unconditionally and irrevocably guaranteed the obligations of the Note Issuers with respect to the 3L Notes.

     29.    In connection with the Notes Exchange Transactions, Non-New Money Participants were entitled to receive in exchange for every $1,000 in principal amount of Unsecured Notes being exchanged, (i) (a) $750 in principal amount of 3L Notes, and (b) a number of WeWork's Common Shares equal to $150, calculated at the Equity Exchange Price, or (ii) a number of WeWork's Common Shares equal to $900, calculated at the Equity Exchange Price. As of the Petition Date, the Debtors are liable for approximately $22,653,750 in outstanding aggregate principal amount, plus approximately $1.6 million on account of accrued and unpaid interest plus all other fees and expenses (including make-whole premiums) on account of the 3L Notes.

      **F.**     **3L Exchangeable Notes.**

     30.    Pursuant to that certain Third Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, supplemented, or otherwise modified from time to time, the "3L Exchangeable Notes Indenture"), by and among the Note Issuers, the Notes

Guarantors, and U.S. Bank Trust Company, National Association, as trustee and collateral agent, the Company issued $269,625,000 in aggregate principal amount of 12.00% Third Lien Senior Secured PIK Exchangeable Notes due 2027 (the "3L Exchangeable Notes," and together with the 1L Notes, the 2L Notes, the 2L Exchangeable Notes, and the 3L Notes, the "Secured Notes") to an affiliate of SoftBank in connection with the Notes Exchange Transactions.

31.      The Notes Guarantors unconditionally and irrevocably guaranteed the obligations of the Note Issuers with respect to the 3L Exchangeable Notes.  Pursuant to the 3L Exchangeable Notes Indenture, the 3L Exchangeable Notes are exchangeable for WeWork's Common Shares at a share price that was initially set at 130 percent of the Equity Exchange Price either (i) voluntarily by the holder at any time or (ii) mandatorily by the Company after November 5, 2024, if certain conditions are met.

32.      In connection with the Notes Exchange Transactions, an affiliate of SoftBank was entitled to exchange $359,500,000 in aggregate principal amount of SoftBank Unsecured Notes into (i) $269,625,000 in aggregate principal amount of 3L Exchangeable Notes and (ii) a number of WeWork's Common Shares equal to $150 per $1,000 of SoftBank Unsecured Notes being exchanged, calculated at the Equity Exchange Price.  As of the Petition Date, the Debtors are liable for approximately $269,625,000 in outstanding aggregate principal amount, plus approximately $19.5 million on account of accrued and unpaid interest plus all other fees and expenses (including make-whole premiums) on account of the 3L Exchangeable Notes.

### G.    Unsecured Notes.

33.      Holders of the 7.875% Senior Notes due 2025 (the "7.875% Senior Notes") and the 5.000% Senior Notes due 2025, Series II (the "5.000% Senior Notes" and together with the 7.875%  Senior Notes, the "Unsecured Notes") who did not participate in the Notes Exchange Transactions continue to hold Unsecured Notes.  As of the Petition Date, the Debtors are liable for

approximately $164 million in outstanding aggregate principal amount, plus approximately

$6.6 million on account of accrued and unpaid interest, plus all other fees and expenses on account

of the 7.875% Senior Notes, and approximately $9.3 million in outstanding aggregate principal

amount, plus approximately $123,000 on account of accrued and unpaid interest, plus all other

fees and expenses on account of the 5.000% Senior Notes.

### H.    Equity.

34.    WeWork Inc.'s certificate of incorporation authorizes the Board to issue

4,874,958,334 shares of Class A common stock, par value $0.0001 per share (the "Common

Shares"), 25,041,666 shares of Class C common stock, par value $0.0001 per share, and 100

million shares of preferred stock ("Preferred Shares").    Approximately 52.83 million Common

Shares and approximately 497,000 shares of Class C common stock are outstanding as of the

Petition Date.[7]    The Common Shares trade on the New York Stock Exchange under the ticker

symbol "WE."  To date, WeWork has not issued any Preferred Shares.

### Basis for Relief

### II.    The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.

35.    Section 363 of the Bankruptcy Code governs the Debtors' use of property of their

estates, including Cash Collateral.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor

may use cash collateral where "(A) each entity that has an interest in such cash collateral consents;

or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with

the  provisions  of  this  section."    11  U.S.C.  362(c)(2).    To  the  extent  consent  is  required,

---

[7]    This outstanding number of shares reflects a 1-for-40 reverse stock split (the "Reverse Stock Split") of WeWork's outstanding shares of Class A common stock and Class C common stock, effective on September 1, 2023, that was approved by the Board and within the ratio range authorized by WeWork's shareholders at the June 2023 annual meeting.  No other references to the number of shares in this declaration reflect the Reverse Stock Split.

the Prepetition Secured Parties have, or shall be deemed to have, consented to the Debtors' use of the Cash Collateral, subject to the terms and limitations set forth in the Orders.

36.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

37.     As set forth in the Interim Order and described above, the Debtors propose to provide the Prepetition Secured Parties with a variety of forms of adequate protection to protect against the postpetition diminution in value of their Prepetition Collateral, including Cash Collateral.

38.     The Debtors respectfully submit that the proposed adequate protection is sufficient to protect the Prepetition Secured Parties from any diminution in value to the Prepetition Collateral during the interim period.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of

the" use of collateral in determining sufficiency of adequate protection); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).   The importance and appropriateness of allowing debtors to use cash collateral and granting adequate protection to prepetition secured parties in large chapter 11 cases has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein.   *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D. N.J. Oct. 16, 2023) (authorizing debtors to use cash collateral and granting adequate protection in the form of, among other things, replacement liens on prepetition collateral, superpriority administrative claims pursuant to section 507(b), and fees and expenses); *In re Cyxtera Techs., Inc.*, No. 23-14854 (JKS) (Bankr. D.N.J. Jun. 7, 2023) (same); *Bed Bath & Beyond, Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 24, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. Apr. 17, 2023) (same).

39.     In light of the foregoing, the Debtors submit that the proposed adequate protection they are providing to the Prepetition Secured Parties is appropriate.   First, it is necessary to protect the Prepetition Secured Parties against any diminution in value.   Second, it is fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and their estates.

### III.   Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

40.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.   Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtors' proposed

use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

41.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash. The Debtors will use Cash Collateral to, among other things, satisfy payroll, pay landlords and vendors, support member programs, meet overhead obligations, and to make payments that are necessary for the continued management, operation, and preservation of the Debtors' business and international portfolio obligations. As of the Petition Date, the Debtors have approximately $164 million of cash on hand. Absent Cash Collateral, the Debtors will be unable to continue to operate their business in the near term, or otherwise fund these chapter 11 cases. If that were to occur, the Debtors would suffer immediate and irreparable harm to their business reputation and relationships with employees, vendors, landlords and members. Schmaltz Decl. at ¶ 10. In short, the Debtors' use of Cash Collateral is vital to preserve and maximize the value of their estates. Schmaltz Decl. at ¶ 10, 14.

42.     The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in this Motion and in the proposed Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediately access Cash Collateral on an interim basis.

IV.    **The Automatic Stay Should Be Modified on a Limited Basis.**

43.    The proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, to incur all liabilities and obligations to the Prepetition Secured Parties under the Interim Order, and, subject to the Carve Out, to make certain payments to Prepetition Secured Parties.

44.    The Debtors have determined, in an exercise of their business judgment, that such stay modification is appropriate under the circumstances, in the context of a negotiated, consensual cash collateral order.  Further, stay modifications of this kind are ordinary, and are reasonable and fair under the circumstances of these chapter 11 cases.  Courts in this district and others have granted similar relief in other recent chapter 11 cases.  *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D. N.J. Oct. 16, 2023) (modifying the automatic stay as necessary to effectuate the terms of the order) *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. May 24, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 24, 2023) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 23, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (same); *In re Charming Charlie, LLC*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 12, 2017) (same).

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

45.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting

the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Authorization of the use of Cash Collateral and the postpetition use of letters of credit is vital to a smooth transition into chapter 11. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request of Waiver of Stay

46.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

47.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

48.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any

particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or of a type otherwise specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

49.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

50.    The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the U.S. Trustee for the District of New Jersey; (ii) the holders of

the  thirty largest unsecured claims against the Debtors (on a consolidated basis); (iii) Davis Polk

& Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group;

(iv) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank;

(v) Cooley LLP, as counsel to Cupar Grimmond, LLC; (vi) the agents under each of the Debtors'

prepetition secured credit facilities and counsel thereto; (vii) the office of the attorney general for

each of the states in which the Debtors operate; (viii) the United States Attorney's Office for

the  District of New Jersey; (ix) the Securities and Exchange Commission; (x) the Internal Revenue

Service; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light

of the nature of the relief requested, no other or further notice need be given.

*Remainder of page intentionally left blank*

**WHEREFORE**, the Debtors respectfully request that the Court enter an interim order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 7, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is:  12 East 49th Street, 3rd Floor, New York, NY 10017, and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**INTERIM ORDER (I) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION
TO THE PREPETITION SECURED PARTIES,
(III) SCHEDULING A FINAL HEARING, (IV) MODIFYING
THE AUTOMATIC STAY AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through eighty-one (82), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 503, 506(c), 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-3 and 9013-5 of the Local Rules (the "Local Bankruptcy Rules") for the United States Bankruptcy Court for the District of New Jersey (the "Court"), seeking entry of this interim order (the "Interim Order"), among other things:

(i)   subject to the restrictions set forth in this Interim Order, authorizing the Debtors to use the Cash Collateral of the Prepetition Secured Parties under the applicable Prepetition Secured Debt Documents and provide adequate protection to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code for any diminution in value of their respective interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay or the Debtors' use, sale or lease of the Prepetition Collateral (including the Cash Collateral), including, subject to entry of a Final Order, granting adequate protection claims with recourse to and liens on all estate assets including Avoidance Proceeds;

(ii)   authorizing the Debtors to waive: (a) the Debtors' right to surcharge the Prepetition Collateral or the Adequate Protection Collateral (each as defined herein) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(iii)   approving certain stipulations and releases by the Debtors as set forth herein;

(iv)   vacating and/or modifying the automatic stay to the extent set forth herein to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Interim Order and the

---

[2] Capitalized terms used but not immediately defined herein shall have the meanings set forth in the Motion or elsewhere in this Interim Order, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Final Order and to deliver any notices of termination described herein and as further set forth herein;

(v)    waiving the equitable doctrine of "marshaling" and any other similar doctrine with respect to any of the Prepetition Collateral (including the Cash Collateral) and Adequate Protection Collateral for the benefit of any party other than the Prepetition Secured Parties;

(vi)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

(vii)    scheduling a final hearing (the "Final Hearing") to consider final approval of the use of Cash Collateral and other provisions set forth in this Interim Order pursuant to a proposed final order , which order may also be the final debtor in possession financing order in accordance with the terms of the Restructuring Support Agreement (the "Final Order").

The Court having considered the interim relief requested in the Motion, the Schmaltz Declaration, the Sheaffer Declaration, the First Day Declaration, and the evidence submitted and arguments made by the Debtors at the interim hearing held on November 8, 2023 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001 and all applicable Local Bankruptcy Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled on the merits by the Court; and the Court having noted the appearances of all parties in interest; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing

(Page | 5)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

that no other or further notice of the Motion need be given; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date.**  On November 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.  On [●], 2023, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B.    **Debtors in Possession.**  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. [●]].  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    **Jurisdiction and Venue.**  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2023 (Simandle, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(Page | 6)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

The predicates for relief sought herein are section 105, 361, 362, 363, 503, 506, 507, 552 of the Bankruptcy Code and Rules 2002, 4001, 6003, 6004, and 9014 of the Bankruptcy Rules.  Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      **D.**    **Committee Formation.**  As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

      **E.**    **Notice.**  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim Order is required.

      **F.**    **Cash Collateral.**  All of the Prepetition Guarantors' cash, cash equivalents, negotiable instruments, investment property, and securities constitute Cash Collateral (as defined below) including cash and other amounts on deposit or maintained in any account or accounts by the Prepetition Guarantors, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, existing as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(Page | 7)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

G.      **Debtors' Stipulations.**  Subject to the limitations contained in paragraph 20 hereof, the Debtors admit, stipulate and agree to the following (collectively, the "Debtors' Stipulations"):

1.      *The Credit Agreement*

(a)      As of the Petition Date, Goldman Sachs International Bank, OneIM Fund I LP, and certain other financial institutions have issued several letters of credit on behalf of the Debtors pursuant to that certain Credit Agreement, dated as of December 27, 2019 (as amended by the First Amendment, dated as of February 10, 2020, the Second Amendment to the Credit Agreement and First Amendment to the Security Agreement, dated as of April 1, 2020, the Third Amendment to the Credit Agreement, dated as of December 6, 2021, the Fourth Amendment to the Credit Agreement, dated as of May 10, 2022, the Fifth Amendment to the Credit Agreement, dated as of December 20, 2022, the Sixth Amendment to the Credit Agreement, dated as of February 15, 2023, and the Seventh Amendment to the Credit Agreement, dated as of September 13, 2023, and as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Credit Agreement," collectively and with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Reimbursement Agreement (as defined in the Credit Agreement) (the "Reimbursement Agreement"), each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "Credit Agreement Documents") by and among (a) WeWork Companies LLC, as WeWork Obligor (the "WeWork Credit Agreement Obligor"), (b) SoftBank Vision Fund II-2 L.P., as SVF Obligor (the "SVF Obligor," and together with the WeWork Credit Agreement Obligor, the "Credit Agreement Obligors"), (c) SVF II GP (Jersey)

(Page | 8)

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Limited, as the Jersey General Partner, (d) SB Global Advisers Limited, as the Manager, (e) the

Issuing Creditors (as defined in the Credit Agreement) from time to time party thereto, (f) the L/C

Participants (as defined in the Credit Agreement) from time to time party thereto, (g) Goldman

Sachs International Bank ("GSIB"), in its capacity as Senior Tranche Administrative Agent and

Shared Collateral Agent (each as defined in the Credit Agreement, and in its capacity as Shared

Collateral Agent, the "Credit Agreement Shared Collateral Agent") and (h) Kroll Agency Services

Limited, as Junior Tranche Administrative Agent (as defined in the Credit Agreement) (together

with the Credit Agreement Shared Collateral Agent, the Issuing Creditors, the L/C Participants

and the parties listed in clauses (d) through (g) of the definition of "Secured Parties" in the Credit

Agreement, the "Credit Agreement Secured Parties"), the Issuing Creditors and L/C Participants

agreed to provide, as applicable, Senior L/C Tranche and Junior L/C Tranche (each as defined in

the Credit Agreement) letter of credit facilities for the support of the WeWork Credit Agreement

Obligor or its subsidiaries' obligations (the "Credit Agreement L/C Facilities") in an aggregate

amount not to exceed the Total Commitment (as defined in the Credit Agreement). Pursuant to

Section 2.14(c) of the Credit Agreement, to the extent the SVF Obligor satisfies any portion of the

Applicable Obligations (as defined in the Credit Agreement), the SVF Obligor shall be subrogated

to all rights and liens of the Credit Agreement Secured Parties to the extent of such payment.

(b)    As more fully set forth in the Credit Agreement, prior to the Petition Date,

(i) the WeWork Obligor Parties (as defined in the Credit Agreement) granted to the each of the

Senior Tranche Administrative Agent and Junior Tranche Administrative Agent, for the benefit of

itself and the Credit Agreement Secured Parties, a first priority interest in and continuing lien

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(the "Credit Agreement WeWork Liens") on the Shared Collateral (which constitutes substantially all of the WeWork Obligor Parties' assets and property) (as defined the First Lien Pari Passu Intercreditor Agreement (as defined herein), the "Prepetition Collateral"), and (ii) the WeWork Credit Agreement Obligor and the SVF Obligor granted to the Senior Tranche Administrative Agent, for the benefit of the Senior Tranche Issuing Creditors (as defined in the Credit Agreement), a first priority interest in and continuing lien (the "Credit Agreement Cash Collateral Liens," and together with the Credit Agreement WeWork Liens, the "Credit Agreement Liens") on the Senior L/C Tranche Cash Collateral (as defined the Credit Agreement, and together with the Prepetition Collateral, the "Credit Agreement Collateral"). Certain cash management and swap/derivative obligations provided by parties to the Credit Agreement (or their affiliates) are also secured by the Prepetition Collateral.

(c)     As of the Petition Date, the WeWork Credit Agreement Obligor was justly and lawfully indebted and liable to the SVF Obligor in its capacity as subrogee in accordance with the terms of the Credit Agreement Documents, without defense, counterclaim or offset of any kind, (i) in respect of Junior Tranche Obligations (as defined in the Credit Agreement), in aggregate principal amount of not less than $552,041,850.74, (ii) in respect of Senior Tranche Obligations (as defined in the Credit Agreement), as limited to amounts drawn on all outstanding Letters of Credit, in aggregate principal amount of not less than $179,487,697.05, and (iii) in respect of Senior Tranche Obligations (as defined in the Credit Agreement, other than amounts specified in clause (ii) above), as limited to amounts undrawn and unexpired on all outstanding Letters of Credit, in aggregate principal amount of not less than $808,841,264.74 (the foregoing clauses

(Page | 10)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(i) through (iii), collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements, which as of the Petition Date, totaled not less than $1,629,284,222.30), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Credit Agreement Obligors' obligations pursuant to the Credit Agreement and the Credit Agreement Documents, the "Credit Agreement Debt").

2.     ***First Lien Notes Indenture***

(a)     Pursuant to that certain First Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as supplemented by that certain First Supplemental Indenture, dated as of July 17, 2023, and that certain Second Supplemental Indenture, dated as of August 25, 2023, and as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "First Lien Notes Indenture," collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "First Lien Notes Documents," and together with the Credit Agreement Documents, the "Prepetition First Lien Debt Documents") by and among (a) WeWork Companies LLC (a wholly owned subsidiary of WeWork Inc.), as the Company and issuer (in its capacity as such, the "First Lien Notes Issuer"), (b) WW Co-Obligor Inc., as Co-Obligor, (c) the Guarantors party thereto (as defined in the First Lien Notes Indenture, and, together with the Co-Obligor, the "First Lien Notes

(Page | 11)

| Debtors: | WEWORK INC., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Guarantors") and (d) U.S. Bank Trust Company, National Association, as trustee and collateral

agent (in such capacities, the "First Lien Notes Indenture Trustee," and together with the Credit

Agreement Shared Collateral Agent, the "Prepetition First Lien Agents"), the First Lien Notes

Issuer incurred indebtedness to the Holders (as defined in the First Lien Notes Indenture, the "First

Lien Noteholders," and together with the First Lien Notes Indenture Trustee, the "First Lien Notes

Secured Parties," and the First Lien Notes Secured Parties, together with the Credit Agreement

Secured Parties, the "Prepetition First Lien Secured Parties") of, as applicable, (i) 15.000% First

Lien Senior Secured PIK Notes due 2027, Series I (the "Series I First Lien Notes"), (ii) 15.000%

First Lien Senior Secured PIK Notes due 2027, Series II (the "Series II First Lien Notes") and

(iii) 15.000% First Lien Senior Secured PIK Notes due 2027, Series III (the "Series III First Lien

Notes," and together with the Series I First Lien Notes and the Series II First Lien Notes, the "First

Lien Notes").

(b)     Pursuant to the First Lien Notes Indenture, the (i) Series I First Lien Notes

were originally issued in an aggregate principal amount $525,000,000, (ii) Series II First Lien

Notes were agreed to be issued in an aggregate principal amount $306,250,000 and (iii) Series III

First Lien Notes were agreed to be issued in an aggregate principal amount $181,250,000.  As of

the Petition Date, (i) the aggregate principal amount of Series I First Lien Notes outstanding under

the First Lien Notes Indenture was $525,000,000, (ii) the aggregate principal amount of Series II

First Lien Notes outstanding under the First Lien Notes Indenture was $306,250,000 and (iii) the

aggregate principal amount of Series III First Lien Notes outstanding under the First Lien Notes

Indenture was $181,250,000 (collectively, together with accrued and unpaid interest, any defaulted

(Page | 12)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the First Lien Notes Issuer's and the First Lien Notes Guarantors' obligations pursuant to the First Lien Notes and the First Lien Notes Documents, the "First Lien Notes Debt," and together with the Credit Agreement Debt, the "Prepetition First Lien Debt"), which First Lien Notes Debt has been guaranteed by the First Lien Notes Guarantors.

(c)     As more fully set forth in the First Lien Notes Documents, prior to the Petition Date, the First Lien Notes Issuer and the First Lien Notes Guarantors granted to the First Lien Notes Indenture Trustee, for the benefit of itself and the First Lien Noteholders, a first priority security interest in and continuing lien (the "First Lien Notes Liens," and together with the Credit Agreement Liens, the "Prepetition First Priority Liens") on the Prepetition Collateral, which term, for the avoidance of doubt, shall exclude all cash posted by the SVF Obligor in respect of any cash collateralized Letters of Credit, L/C Exposure or mandatory cash collateral, in each case, as required under Sections 2.4, 2.8, 2.13, 2.15, 3.1, 3.9 and 11.2 of the Credit Agreement and the last paragraph of Section 11.1 of the Credit Agreement.

3.     ***Second Lien Notes Indenture***

(a)     Pursuant to that certain Second Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Second Lien Notes Indenture," collectively and with

(Page | 13)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "Second Lien Notes Documents") by and among (a) WeWork Companies LLC (a wholly owned subsidiary of WeWork Inc.), as the Company and issuer (in its capacity as such, the "Second Lien Notes Issuer"), (b) WW Co-Obligor Inc., as Co-Obligor, (c) the Guarantors party thereto (as defined in the Second Lien Notes Indenture, and, together with the Co-Obligor, the "Second Lien Notes Guarantors") and (d) U.S. Bank Trust Company, National Association, as trustee and collateral agent (in such capacities, the "Second Lien Notes Indenture Trustee"), the Second Lien Notes Issuer incurred indebtedness to the Holders (as defined in the Second Lien Notes Indenture, the "Second Lien Noteholders," and together with the Second Lien Notes Indenture Trustee, the "Second Lien Notes Secured Parties") of 11.000% Second Lien Senior Secured PIK Notes due 2027 (the "Second Lien Notes").

(b)     Pursuant to the Second Lien Notes Indenture, the Second Lien Notes were originally issued with a face value of $687,212,250. As of the Petition Date, the aggregate principal amount outstanding under the Second Lien Notes Indenture was $687,212,250 (collectively, together with accrued and unpaid interest, any defaulted interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Second Lien Notes Issuer's and the Second Lien Notes Guarantors' obligations pursuant to the Second Lien Notes

(Page | 14)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

and the Second Lien Notes Documents, the "Second Lien Notes Debt"), which Second Lien Notes Debt has been guaranteed by the Second Lien Notes Guarantors.

(c)    As more fully set forth in the Second Lien Notes Documents, prior to the Petition Date, the Second Lien Notes Issuer and the Second Lien Notes Guarantors granted to the Second Lien Notes Indenture Trustee, for the benefit of itself and the Second Lien Noteholders, a second priority security interest in and continuing lien (the "Second Lien Notes Liens") on the Prepetition Collateral.

4.    ***Second Lien Exchangeable Notes Indenture***

(a)    Pursuant to that certain Second Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Second Lien Exchangeable Notes Indenture," collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "Second Lien Exchangeable Notes Documents," and together with the Second Lien Notes Documents, the "Prepetition Second Lien Notes and Exchangeable Notes Documents") by and among (a) WeWork Companies LLC (a wholly owned subsidiary of WeWork Inc.), as the Company and issuer (in its capacity as such, the "Second Lien Exchangeable Notes Issuer"), (b) WW Co-Obligor Inc., as Co-Obligor, (c) WeWork Inc., (d) the Guarantors party thereto (as defined in the Second Lien Exchangeable Notes Indenture, and, together with WeWork Inc. and the Co-Obligor, the "Second Lien Exchangeable Notes Guarantors") and (e) U.S. Bank Trust Company, National Association, as trustee and

(Page | 15)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

collateral agent (in such capacities, the "Second Lien Exchangeable Notes Indenture Trustee," and

together with the Second Lien Notes Indenture Trustee, the "Prepetition Second Lien Agents"),

the Second Lien Exchangeable Notes Issuer incurred indebtedness to the Holders (as defined in

the Second Lien Exchangeable Notes Indenture, the "Second Lien Exchangeable Noteholders,"

and together with the Second Lien Exchangeable Notes Indenture Trustee, the "Second Lien

Exchangeable Notes Secured Parties," and the Second Lien Exchangeable Notes Secured Parties

together with the Second Lien Notes Secured Parties, the "Prepetition Second Lien Secured

Parties") of 11.000% Second Lien Exchangeable Senior Secured PIK Notes due 2027 (the "Second

Lien Exchangeable Notes").

(b)      Pursuant to the Second Lien Exchangeable Notes Indenture, the Second

Lien Exchangeable Notes were originally issued with a face value of $187,500,000. As of the

Petition Date, the aggregate principal amount outstanding under the Second Lien Exchangeable

Notes Indenture was $187,500,000 (collectively, together with accrued and unpaid interest, any

defaulted interest, any fees, expenses and disbursements (including attorneys' fees, accountants'

fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and

disbursements), indemnification obligations, and other charges, amounts, and costs of whatever

nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or

chargeable in respect of any of the Second Lien Exchangeable Notes Issuer's and the Second Lien

Exchangeable Notes Guarantors' obligations pursuant to the Second Lien Exchangeable Notes and

the Second Lien Exchangeable Notes Documents, the "Second Lien Exchangeable Notes Debt,"

and together with the Second Lien Notes Debt, the "Prepetition Second Lien Debt"), which Second

(Page | 16)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Lien Exchangeable Notes Debt has been guaranteed by the Second Lien Exchangeable Notes Guarantors.

(c)    As more fully set forth in the Second Lien Exchangeable Notes Documents, prior to the Petition Date, the Second Lien Exchangeable Notes Issuer and the Second Lien Exchangeable Notes Guarantors granted to the Second Lien Exchangeable Notes Indenture Trustee, for the benefit of itself and the Second Lien Exchangeable Noteholders, a second priority security interest in and continuing lien (the "Second Lien Exchangeable Notes Liens," and together with the Second Lien Notes Liens, the "Prepetition Second Priority Liens") on the Prepetition Collateral.

5.    ***Third Lien Notes Indenture***

(a)    Pursuant to that certain Third Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Third Lien Notes Indenture," collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "Third Lien Notes Documents") by and among (a) WeWork Companies LLC (a wholly owned subsidiary of WeWork Inc.), as the Company and issuer (in its capacity as such, the "Third Lien Notes Issuer"), (b) WW Co-Obligor Inc., as Co-Obligor, (c) the Guarantors party thereto (as defined in the Third Lien Notes Indenture, and, together with the Co-Obligor, the "Third Lien Notes Guarantors") and (d) U.S. Bank Trust Company, National Association, as trustee and collateral agent (in such capacities, the "Third Lien Notes Indenture Trustee"), the Third Lien

(Page | 17)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Notes Issuer incurred indebtedness to the Holders (as defined in the Third Lien Notes Indenture, the "Third Lien Noteholders," and together with the Third Lien Notes Indenture Trustee, the "Third Lien Notes Secured Parties") of 12.000% Third Lien Senior Secured PIK Notes due 2027 (the "Third Lien Notes").

(b)    Pursuant to the Third Lien Notes Indenture, the Third Lien Notes were originally issued with a face value of $22,653,750. As of the Petition Date, the aggregate principal amount outstanding under the Third Lien Notes Indenture was $22,653,750 (collectively, together with accrued and unpaid interest, any defaulted interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Third Lien Notes Issuer's and the Third Lien Notes Guarantors' obligations pursuant to the Third Lien Notes and the Third Lien Notes Documents, the "Third Lien Notes Debt"), which Third Lien Notes Debt has been guaranteed by the Third Lien Notes Guarantors.

(c)    As more fully set forth in the Third Lien Notes Documents, prior to the Petition Date, the Third Lien Notes Issuer and the Third Lien Notes Guarantors granted to the Third Lien Notes Indenture Trustee, for the benefit of itself and the Third Lien Noteholders, a third priority security interest in and continuing lien (the "Third Lien Notes Liens") on the Prepetition Collateral.

(Page | 18)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

6.    ***Third Lien Exchangeable Notes Indenture***

(a)    Pursuant to that certain Third Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Third Lien Exchangeable Notes Indenture," collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "Third Lien Exchangeable Notes Documents," and together with the Third Lien Notes Documents, the "Third Lien Notes and Exchangeable Notes Documents," and the Third Lien Notes and Exchangeable Notes Documents together with the Prepetition First Lien Debt Documents and the Prepetition Second Lien Notes and Exchangeable Notes Documents, the "Prepetition Secured Debt Documents") by and among (a) WeWork Companies LLC (a wholly owned subsidiary of WeWork Inc.), as the Company and issuer (in its capacity as such, the "Third Lien Exchangeable Notes Issuer," and together with the First Lien Notes Issuer, Second Lien Notes Issuer, Second Lien Exchangeable Notes Issuer, Third Lien Notes Issuer, and Third Lien Exchangeable Notes Issuer, the "Notes Issuers"), (b) WW Co-Obligor Inc., as Co-Obligor, (c) WeWork Inc., (d) the Guarantors party thereto (as defined in the Third Lien Exchangeable Notes Indenture, and, together with WeWork Inc. and the Co-Obligor, the "Third Lien Exchangeable Notes Guarantors," and, together with the First Lien Notes Guarantors, Second Lien Notes Guarantors, Second Lien Exchangeable Notes Guarantors, and Third Lien Notes Guarantors, the "Prepetition Guarantors") and (e) U.S. Bank Trust Company, National Association, as trustee and collateral agent (in such capacities, the "Third Lien Exchangeable

| (Page \| 19) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Notes Indenture Trustee," and together with the Third Lien Notes Indenture Trustee, the "Prepetition Third Lien Agents," and the Prepetition Third Lien Agents together with the Prepetition First Lien Agents and the Prepetition Second Lien Agents, the "Prepetition Agents"), the Third Lien Exchangeable Notes Issuer incurred indebtedness to the Holders (as defined in the Third Lien Exchangeable Notes Indenture, the "Third Lien Exchangeable Noteholders," and together with the Third Lien Exchangeable Notes Indenture Trustee, the "Third Lien Exchangeable Notes Secured Parties," and the Third Lien Exchangeable Notes Secured Parties together with the Third Lien Notes Secured Parties, the "Prepetition Third Lien Secured Parties," and the Prepetition Third Lien Secured Parties together with the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties, the "Prepetition Secured Parties") of 12.000% Third Lien Exchangeable Senior Secured PIK Notes due 2027 (the "Third Lien Exchangeable Notes").

(b)     Pursuant to the Third Lien Exchangeable Notes Indenture, the Third Lien Exchangeable Notes were originally issued with a face value of $269,625,000.  As of the Petition Date, the aggregate principal amount outstanding under the Third Lien Exchangeable Notes Indenture was $269,625,000 (collectively, together with accrued and unpaid interest, any defaulted interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Third Lien Exchangeable Notes Issuer's and the Third Lien Exchangeable Notes Guarantors' obligations pursuant to the Third Lien Exchangeable Notes and the Third Lien

(Page | 20)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Exchangeable Notes Documents, the "Third Lien Exchangeable Notes Debt," and together with the Third Lien Notes Debt, the "Prepetition Third Lien Debt," and the Prepetition Third Lien Debt together with the Prepetition First Lien Debt and the Prepetition Second Lien Debt, the "Prepetition Secured Debt"), which Third Lien Exchangeable Notes Debt has been guaranteed by the Third Lien Exchangeable Notes Guarantors.

(c)     As more fully set forth in the Third Lien Exchangeable Notes Documents, prior to the Petition Date, the Third Lien Exchangeable Notes Issuer and the Third Lien Exchangeable Notes Guarantors granted to the Third Lien Exchangeable Notes Indenture Trustee, for the benefit of itself and the Third Lien Exchangeable Noteholders, a third priority security interest in and continuing lien (the "Third Lien Exchangeable Notes Liens," and together with the Third Lien Notes Liens, the "Prepetition Third Priority Liens," and the Prepetition Third Priority Liens together with the Prepetition First Priority Liens, and the Prepetition Second Priority Liens, the "Prepetition Liens") on the Prepetition Collateral.

7.     ***The 1L/2L/3L Intercreditor Agreement***

WeWork Companies LLC, the Grantors from time to time party thereto, the Credit Agreement Shared Collateral Agent, U.S. Bank Trust Company, National Association as Authorized Representative for the First Lien Notes Secured Parties (the "First Lien Notes Collateral Agent"), U.S. Bank Trust Company, National Association as Authorized Representative for the Second Priority Lien Secured Parties the First Lien Notes Indenture Trustee, U.S. Bank Trust Company, National Association as Authorized Representative for the Second Priority Lien Secured Parties (as defined therein, the "Second Priority Lien Collateral Agent") and U.S. Bank

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Trust Company, National Association as Authorized Representative for the Third Priority Lien

Secured Parties (as defined therein, the "Third Priority Lien Collateral Agent") are party to that

certain Intercreditor Agreement, dated as of May 5, 2023 (as amended, restated, amended and

restated, supplemented, or otherwise modified from time to time prior to the Petition Date,

the "1L/2L/3L Intercreditor Agreement"), which sets forth the relative lien priorities and other

rights and remedies of the First Priority Lien Secured Parties, the Second Priority Lien Secured

Parties and the Third Priority Lien Secured Parties (each as defined in the 1L/2L/3L Intercreditor

Agreement). The 1L/2L/3L Intercreditor Agreement is binding and enforceable against the parties

thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or

modified by the terms of this Interim Order, unless expressly set forth herein.

8.      ***The First Lien Pari Passu Intercreditor Agreement***

WeWork Companies LLC, the Grantors from time to time party thereto, the Credit

Agreement Shared Collateral Agent and the First Lien Notes Indenture Trustee are party to that

certain Amended and Restated *Pari Passu* Intercreditor Agreement, dated as of May 5, 2023 (as

amended, restated, amended and restated, supplemented, or otherwise modified from time to time

prior to the Petition Date, the "First Lien *Pari Passu* Intercreditor Agreement"), which sets forth

(i) the terms and conditions governing the appointment and rights of the Controlling Authorized

Representative (the "Controlling Authorized Representative") to act on behalf of the Pari Passu

Secured Parties (as defined in the First Lien *Pari Passu* Intercreditor Agreement) to exercise

certain rights and powers, including for purposes of acquiring, holding and enforcing any and all

Liens on the Collateral granted under any of the *Pari Passu* Security Documents (each as defined

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

in the First Lien *Pari Passu* Intercreditor Agreement) and other Prepetition First Lien Secured Parties with respect to, among other things, the Shared Collateral (as defined in the First Lien *Pari Passu* Intercreditor Agreement) and (ii) along with the 1L/2L/3L Intercreditor Agreement, the relative lien priorities and other rights and remedies of the *Pari Passu* Secured Parties. The First Lien *Pari Passu* Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein. As of the Petition Date, the First Lien Notes Collateral Agent is the Controlling Authorized Representative under the First Lien *Pari Passu* Intercreditor Agreement, and pursuant to the terms thereof, which terms shall control with respect to all directions provided to the Controlling Authorized Representative pursuant to this Interim Order, shall act at the direction of the Required Noteholder Secured Parties (as defined in the First Lien *Pari Passu* Intercreditor Agreement, the "Required Noteholder Secured Parties").

9.     ***The Second Lien Collateral Agency Agreement***

WeWork Companies LLC, the Grantors from time to time party thereto, the Second Lien Notes Indenture Trustee and the Second Lien Exchangeable Notes Indenture Trustee are party to that certain Second Lien Collateral Agency Agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Second Lien Collateral Agency Agreement"), which sets forth (i) the terms and conditions governing appointment and rights of the Second Priority Lien Collateral Agent (as defined below) to act on behalf of the Prepetition Second Lien Secured Parties to enforce the Parity

| (Page \| 23) | |
| --- | --- |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Lien Security Documents (as defined in the Second Lien Collateral Agency Agreement) and (ii) along with the 1L/2L/3L Intercreditor Agreement, the relative lien priorities and other rights and remedies of the Prepetition Second Lien Secured Parties.  The Second Lien Collateral Agency Agreement is binding and enforceable against the parties thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

10.     ***The Third Lien Collateral Agency Agreement***

WeWork Companies LLC, the Grantors from time to time party thereto, the Third Lien Notes Indenture Trustee and the Third Lien Exchangeable Notes Indenture Trustee are party to that certain Third Lien Collateral Agency Agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Third Lien Collateral Agency Agreement," and together with the 1L/2L/3L Intercreditor Agreement, the First Lien *Pari Passu* Intercreditor Agreement and the Second Lien Collateral Agency Agreement, the "Intercreditor Agreements") which sets forth (i) the terms and conditions governing appointment and rights of the Third Priority Lien Collateral Agent (as defined below) to act on behalf of the Prepetition Third Lien Secured Parties to enforce the Parity Lien Security Documents (as defined in the Third Lien Collateral Agency Agreement) and (ii) along with the 1L/2L/3L Intercreditor Agreement, the relative lien priorities and other rights and remedies of the Prepetition Third Lien Secured Parties.  The Third Lien Collateral Agency Agreement is binding and enforceable against the parties thereto in accordance with its terms and

(Page | 24)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

11.   ***Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Debt.***

(a)   The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) (i) the Prepetition First Priority Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition Secured Debt Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date and that are not subject to reduction, disallowance, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, the "Permitted Prior Liens"), (ii) the Prepetition Second Priority Liens were subject only to the Prepetition First Priority Liens and the Permitted Prior Liens and senior in priority over any and all other liens on the Prepetition Collateral and (iii) the Prepetition Third Priority Liens were subject only to the Prepetition First Priority Liens, the Prepetition Second Priority Liens and the Permitted Prior Liens and senior in priority over any and all other liens on the Prepetition Collateral; (c) the Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Secured Debt Documents and there exists no basis upon which the Debtors or their subsidiaries can properly challenge or avoid the validity,

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

enforceability, priority, or perfection of the Prepetition Secured Debt or the Prepetition Liens;

(d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind

or nature to any of the Prepetition Liens or the Prepetition Secured Debt exist, and no portion of

the Prepetition Liens or the Prepetition Secured Debt is subject to any challenge or defense,

including attachment, avoidance, disallowance, disgorgement, impairment, reduction,

recharacterization, recovery or subordination (equitable or otherwise) pursuant to the Bankruptcy

Code or applicable non-bankruptcy law (foreign or domestic); (e) the Debtors and their estates

have no claims, objections, challenges, causes of action and/or choses in action, including

avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or

actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their

respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees

arising out of, based upon or related to the Prepetition Secured Debt Documents or Prepetition

Secured Debt; (f) the Debtors waive, discharge, and release any right to challenge any of the

Prepetition Secured Debt, the priority of the Debtors' obligations thereunder, and the validity,

extent, and priority of the liens securing the Prepetition Secured Debt (whether arising from

subrogation, reimbursement, or otherwise, including the validity or enforceability of any claim of

the SVF Obligor who has subrogated to the rights of the Credit Agreement Secured Parties under

the Credit Agreement); and (g) all of the Prepetition Guarantors' cash, cash equivalents, negotiable

instruments, investment property, and securities constitute Cash Collateral of the Prepetition

Secured Parties, and any amounts generated by the collection of accounts receivable or other

disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, wherever

(Page | 26)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

located, is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code.  The Debtors continue to collect cash, rents, income, offspring, products, proceeds and profits generated from the Cash Collateral, all of which constitute Prepetition Collateral subject to the Prepetition Liens.  All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, shall be used and/or applied in accordance with the terms and conditions of this Interim Order and the Prepetition Secured Debt Documents, and for no other purpose.

(b)    As of the Petition Date, JP Morgan Bank Luxembourg S.A. ("JPM") and WeWork Interco LLC are party to that certain Pooling Agreement, dated as of October 25, 2019 (as amended, supplemented or otherwise modified from time to time, the "Cash Pooling Agreement"), which sets forth certain pooling and overdraft arrangements with respect to certain of the Debtors' and their non-Debtor affiliates' accounts.  Any obligations the Debtors, as applicable, may have with respect to the Cash Pooling Agreement are secured by the Credit Agreement WeWork Liens as referenced above.  For the avoidance of doubt, this Interim Order shall not modify or otherwise affect the rights and obligations of the Debtors under the Cash Pooling Agreement, including with respect to the Intraday Limit of $35 million (and the Debtors' owed and outstanding settlement obligations related thereto, the "Intraday Limit").  For the avoidance of doubt, this Interim Order shall not modify or otherwise affect the rights and obligations of the Debtors under their contractual agreements with JPM including with respect to the Intraday Limit of $35 million.

(Page | 27)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(c)     The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Prepetition Secured Debt Documents (as applicable) that is subject to the Prepetition Secured Parties' valid and perfected security interests.

(d)     The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations that constitute Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code.   Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as the Petition Date, including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the Prepetition Collateral constitutes Cash Collateral of the Prepetition Secured Parties' valid and perfected security interests.

12.     ***Intercreditor Agreements***.

Pursuant to Section 510 of the Bankruptcy Code, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the other Prepetition Secured Debt Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims granted or amounts payable in respect thereof by the Debtors under this Interim Order or otherwise) and the exercise of any such

(Page | 28)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

rights and remedies and (iii) shall not be deemed to be amended, altered or modified by the terms of this Interim Order, unless expressly set forth herein.

13. ***No Claims or Causes of Action***.

The Debtors stipulate that no claims or causes of action exist against, or with respect to, any of the Prepetition Secured Parties and each of their respective Representatives under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date.

14. ***No Control.***

The Debtors stipulate that none of the Prepetition Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Interim Order, the Prepetition Secured Debt or Prepetition Secured Debt Documents.

15. ***Releases***.

Subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted by applicable law, absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties and their respective Representatives (as defined herein) (collectively, the

(Page | 29)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

"Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, defenses, offsets, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgments of every type, and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, fixed, contingent, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal or common law or statute or regulation or otherwise, arising out of or related to (as applicable) the Prepetition Secured Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens.  The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective representatives,

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

successors, and assigns, and on each of the Debtors' estates and all entities and persons, including any creditors of the Debtors, and each of their respective representatives, successors, and assigns, including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code.  For the avoidance of doubt, nothing in this paragraph shall in any way limit or release the obligations of the Prepetition Secured Parties under this order, if any.

### H.      Findings Regarding the Use of Cash Collateral.

(a)      This Court concludes that good cause has been shown for entry of this Interim Order and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.  Without receiving the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.

(b)      The Debtors have an immediate and critical need to use Cash Collateral, on an interim basis and in accordance with the Approved Budget (as defined below), in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with landlords, contract counterparties, vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, and fund expenses of these Chapter 11 Cases.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition

(Page | 31)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and their successful reorganization. The Debtors do not have sufficient sources of working capital and financing to operate their business in the ordinary course of business or to maintain their properties without the use of Cash Collateral. Absent the ability to use Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

(c)    The Controlling Authorized Representative on behalf of the Prepetition Secured Parties has consented to the Debtors' use of the Cash Collateral exclusively on and subject to the terms and conditions set forth herein and for the limited duration of such use provided for herein.

(d)    Based on the Motion, the First Day Declaration, the Schmaltz Declaration, the Sheaffer Declaration, and the record presented to the Court at the Interim Hearing, the terms of the Adequate Protection Obligations and the terms on which the Debtors may continue to use the Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and provide the Debtors with reasonably equivalent value and fair consideration.

(e)    The Prepetition Secured Parties and the Debtors have acted in good faith regarding the Debtors' continued use of the Cash Collateral to fund the administration of the Debtors' estates and the continued operation of their businesses (including the incurrence, granting and payment of, and performance under the Adequate Protection Obligations and the granting of

(Page | 32)

| Debtors: | WEWORK INC., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

the Adequate Protection Liens), in accordance with the terms hereof.  The Debtors, through that

certain Restructuring Support Agreement dated as of November 6, 2023, by and among the

Debtors, the SoftBank Parties, Cupar, and the Consenting AHG Noteholders (as defined therein)

(the "Restructuring Support Agreement" has received the necessary consents from the Prepetition

Secured Parties to the Debtors' proposed use of Cash Collateral, until the Termination Date (as

defined below)).  The Prepetition Secured Parties (and the successors and assigns thereof) shall be

entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code, to the extent

such sections apply, in the event that this Interim Order or any provision hereof is vacated, reversed

or modified, on appeal or otherwise.

(f)    The Prepetition Secured Parties are entitled to the adequate protection

provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362,

and 363 of the Bankruptcy Code.  The adequate protection provided to the Prepetition Secured

Parties in this Interim Order for any diminution in the value of the Prepetition Secured Parties'

interest in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date,

if any, for any reason provided for under the Bankruptcy Code, including, without limitation, the

imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, is consistent

with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties'

interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the

Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges

contained herein are necessary in order to (i) protect the Prepetition Secured Parties from the

postpetition diminution of their respective interests in the value of the Prepetition Collateral and

(Page | 33)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(ii) obtain the foregoing consents and agreements, and (x) are fair and reasonable, (y) reflect the Debtors' prudent exercise of business judgment and (z) constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral.

(g)    Nothing in this Interim Order shall (x) be construed as consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(h)    The Debtors stipulate and the Court finds that each of the Prepetition Secured Parties and the Prepetition Agents shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties and the Prepetition Agents with respect to proceeds, product, offspring or profits with respect to any of the Prepetition Collateral.

(i)    The Debtors have prepared and delivered to the Prepetition First Lien Secured Parties an Initial Budget.  The Initial Budget reflects, among other things, the Debtors' anticipated sources and uses of cash for each calendar week, in form and substance satisfactory to each of the Required Consenting AHG Noteholders and the SoftBank Parties.  The Initial Budget may be modified, amended and updated from time to time in accordance with the terms of this

(Page | 34)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Interim Order and solely to the extent in form and substance satisfactory to each of the Required

Consenting AHG Noteholders and the SoftBank Parties.  In providing their consent to the use of

the Debtors' Cash Collateral, the Prepetition Secured Parties are relying, in part, upon the Debtors'

agreement to comply with the Approved Budget and this Interim Order.

    **I.**    **Permitted Prior Liens; Continuation of Prepetition Liens.**  Nothing herein shall

constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior,

enforceable, prior, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights

of any party-in-interest, including, but not limited to the Debtors, the Prepetition Agents, the other

Prepetition Secured Parties and the Committee, if any, in each case to the extent such party has

standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or

extent of any alleged Permitted Prior Lien and/or security interests.  The right of a seller of goods

to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien

and is expressly subject to the Prepetition Liens.  The Prepetition Liens of each of the Prepetition

Secured Parties are continuing liens and the respective Prepetition Collateral of each such

Prepetition Secured Party is and will continue to be encumbered by such liens in light of the

integrated nature of the respective Prepetition Secured Debt Documents applicable to each such

Prepetition Secured Party.

    **J.**    **Immediate Entry.**  The Debtors have requested immediate entry of this Interim

Order pursuant to Bankruptcy Rules 4001(b)(2) and the Local Bankruptcy Rules.  Absent granting

the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably

harmed.  Permitting the use of Cash Collateral, in accordance with this Interim Order is therefore

(Page | 35)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

necessary, essential, and appropriate for the management and preservation of the Debtors' estates and in the best interests of the Debtors' estates and is consistent with the Debtors' exercise of their fiduciary duties. Sufficient cause therefore exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Approved*. The Motion is granted, the incurrence and granting of the Adequate Protection Obligations is authorized and approved and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

2.    *Use of Cash Collateral*. The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order (including the Carve out, the JPM Carve Out and compliance with the Approved Budget) during the period from the Petition Date through and including the Termination Date, and not beyond, to use the Cash Collateral for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof and (ii) satisfaction of Adequate Protection Obligations owed to the Prepetition Secured Parties, as provided herein; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter

(Page | 36)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court; and (iii) to fund the Carve Out Reserves in accordance with this Interim Order. All of the liens of the Prepetition Secured Parties on such Cash Collateral shall be deemed to extend to such cash irrespective of the accounts in which it is held.

3.    *Adequate Protection of Prepetition First Lien Secured Parties*. The Prepetition First Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, to the extent of the aggregate diminution in the value of the Prepetition First Lien Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from (a) the sale, lease or use by the Debtors of the Prepetition Collateral, including Cash Collateral, (b) the payment of any amounts under the Carve Out or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "First Lien Adequate Protection Claims"). In consideration of the foregoing, the Prepetition First Lien Agents for the benefit of the Prepetition First Lien Secured Parties, are hereby granted the following (collectively, the "First Lien Adequate Protection Obligations"):

(a)    First Lien Adequate Protection Liens. The Prepetition First Lien Agents, for themselves and for the benefit of the applicable Prepetition First Lien Secured Parties, are

(Page | 37)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition First Lien Secured Party Adequate Protection Claim, a valid, perfected security interest in and lien upon all of the following (all property identified in clauses (i), (ii), and (iii) below being collectively referred to as the "Adequate Protection Collateral"), subject only to (a) the Carve Out (as defined below), (b) the JPM Carve Out, (c) the Permitted Prior Liens and (d) in each case in accordance with the priorities set forth in the Intercreditor Agreements and **Exhibit 2** (all such liens and security interests, the "First Lien Adequate Protection Liens"):

> (i) *First Priority Liens on Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Prepetition Guarantors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and the proceeds, products, rents, and profits thereof (the "Unencumbered Property"). Unencumbered Property includes, without limitation, any and all unencumbered cash of the Prepetition Guarantors (whether maintained with any of the Prepetition Agents or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, claims and causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock

(Page | 38)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

or other equity interests of subsidiaries, joint ventures and other entities, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("Avoidance Actions"), but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds"). The foregoing shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would not be enforceable pursuant to applicable law, but shall include the proceeds thereof, which Adequate Protection liens are granted thereupon.

(ii) *Liens Junior to Certain Other Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor that is not Prepetition Collateral but is subject to either (i) valid perfected and non-avoidable liens in existence immediately prior to the Petition Date (other than the Prepetition Liens) or (ii) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (any such liens described in the foregoing clauses (i) and (ii), the "Other Senior Liens"), and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, which security interest and lien shall be junior and subordinate to any such valid, perfected, and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date.

(iii) *Liens Senior to Prepetition Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable priming replacement lien on, and security interest in, all prepetition and postpetition property of the Debtors that is of the same nature, scope, and type as the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that the First Lien Adequate Protection Liens set forth in this paragraph (iii) shall be senior to the

(Page | 39)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Prepetition Liens but junior to valid, perfected and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date that are permitted under the Prepetition Secured Debt Documents to be senior to the Prepetition Liens.

(b)     First Lien 507(b) Claims. The Prepetition First Lien Agents, for themselves and for the benefit of the other Prepetition First Lien Secured Parties, are hereby granted, subject to the Carve Out, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code in the amount of the First Lien Adequate Protection Claims with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "First Lien 507(b) Claims"), which administrative claims shall have recourse to and be payable from (i) all prepetition and postpetition property of the Debtors, and (ii) the proceeds of the Avoidance Actions. The First Lien 507(b) Claims shall be subject and subordinate only to the Carve Out and the JPM Carve Out.

(c)     First Lien Secured Parties Fees and Expenses.  As further adequate protection, the Debtors are authorized and required to pay, in accordance with the terms of paragraph 18 of this Interim Order, all reasonable and documented fees and expenses of the Prepetition First Lien Secured Parties pursuant to the First Lien Notes Documents or Credit Agreement Documents, whether incurred before or after the Petition Date, including, but not limited to, (i) the reasonable and documented fees and out-of-pocket expenses of Davis Polk & Wardwell LLP ("Davis Polk") as counsel, Greenberg Traurig, LLP as New Jersey counsel, Freshfields Bruckhaus Deringer LLP, as UK counsel and Ducera Partners LLC as financial advisors to the Ad Hoc Noteholder Group (as defined in the Restructuring Support Agreement, the

(Page | 40)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

"Ad Hoc Group"), (ii) the reasonable and documented fees and out-of-pocket expenses of Weil,

Gotshal & Manges LLP ("Weil") as counsel, Houlihan Lokey, Inc. as financial advisor, and

Wollmuth Maher & Deutsch LLP ("Wollmuth Maher") as New Jersey counsel to the SoftBank

Parties, (iii) the reasonable and documented fees and out-of-pocket expenses of Cooley LLP

("Cooley") as counsel and Piper Sandler & Co. ("PSC") as financial advisor to Cupar, (iv) the

reasonable a documented fees and out-of-pocket expenses of Milbank LLP as counsel to the Credit

Agreement Shared Collateral Agent and (v) the reasonable and documented fees and out-of-pocket

expenses of U.S. Bank Trust Company, National Association ("U.S. Bank"), including without

limitation the reasonable and documented fees and out-of-pocket expenses of Kelley Drye &

Warren LLP ("Kelley Drye"), U.S. Bank's outside counsel, in U.S. Bank's respective capacities

as (a) First Lien Notes Indenture Trustee, (b) First Lien Notes Collateral Agent, and (c) Controlling

Authorized Representative, including, without limitation, fees and expenses incurred in connection

with (x) the execution and delivery by U.S. Bank of any instrument of resignation and replacement,

if any, with respect to any series of notes or (y) any other capacity of U.S. Bank described in this

Interim Order, plus, with respect to each clause (i), (ii), (iii), (iv) and (v) above, one specialist

counsel and one local counsel in each applicable field or jurisdiction and for each of the Ad Hoc

Group and the SoftBank Parties, and, in the case of an actual conflict of interest, one additional

specialist or local counsel to all such affected persons (collectively, the "First Lien Adequate

Protection Fees and Expenses"), in each case subject to the review procedures set forth in

paragraph 18 of this Interim Order. None of the First Lien Adequate Protection Fees and Expenses

shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d) <u>First Lien Secured Parties Financial Reporting</u>. The applicable Debtors shall provide any reporting described in this Interim Order, and shall provide each of the Credit Agreement Shared Collateral Agent, the Ad Hoc Group, the SoftBank Parties, Cupar Grimmond, LLC ("<u>Cupar</u>"), JPM, the Controlling Authorized Representative (with copies to Kelley Drye) and the U.S. Trustee with copies of all Approved Budgets.

4. *Adequate Protection of Prepetition Second Lien Secured Parties*. The Prepetition Second Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of the diminution in the value of the Prepetition Second Lien Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from (a) the sale, lease or use by the Debtors of the Prepetition Collateral, including Cash Collateral, (b) the payment of any amounts under the Carve Out or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "<u>Second Lien Adequate Protection Claims</u>"). In consideration of the foregoing, the Second Priority Lien Collateral Agent, for the benefit of the Prepetition Second Lien Secured Parties, is hereby granted the following (collectively, the "<u>Second Lien Adequate Protection Obligations</u>"):

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

    (a)    <u>Second Lien Adequate Protection Liens</u>.    The Second Priority Lien Collateral Agent, for itself and for the benefit of the other Prepetition Second Lien Secured Parties, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Second Lien Adequate Protection Claim (which, for the avoidance of doubt, is directly junior to the First Lien Adequate Protection Claim), a valid, perfected replacement security interest in and lien upon all of the Adequate Protection Collateral, subject only to (i) the Carve Out, (ii) the JPM Carve Out, (iii) the Permitted Prior Liens, (iv) the First Lien Adequate Protection Liens, and (v) in each case in accordance with the priorities set forth in the Intercreditor Agreements and **Exhibit 2** (all such liens and security interests, the "<u>Second Lien Adequate Protection Liens</u>"):

    (i)    *Second Priority Liens on Unencumbered Property*:  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior security interest in and lien upon all Unencumbered Property with the priority set forth in **Exhibit 2**.

    (ii)    *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon the property described in section 3(a)(ii) with the priority set forth in **Exhibit 2**.

    (iii)    *Liens Senior to Prepetition Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable priming lien on, and security interest in the property described in section 3(a)(iii) with the priority set forth in **Exhibit 2**.

    (b)    <u>Second Lien 507(b) Claims</u>. The Second Priority Lien Collateral Agent, for itself and for the benefit of the other Prepetition Second Lien Secured Parties, is hereby granted,

(Page | 43)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

subject to the Carve Out and the First Lien 507(b) Claim, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Second Lien Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Second Lien 507(b) Claims" (which, for the avoidance of doubt, is directly junior to the First Lien 507(b) Claim)), which administrative claim shall have recourse to and be payable from (i) all prepetition and postpetition property of the Debtors, and (ii) the proceeds of the Avoidance Actions. The Second Lien 507(b) Claims shall be subject and subordinate to the Carve Out, the First Lien 507(b) Claims, and the JPM Carve Out.

5. *Adequate Protection of Prepetition Third Lien Secured Parties.* The Prepetition Third Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of the diminution in the value of the Prepetition Third Lien Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the (a) sale, lease or use by the Debtors of the Prepetition Collateral, including Cash Collateral, (b) the payment of any amounts under the Carve Out or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Third Lien Adequate Protection Claims," and together with the First Lien Adequate Protection Claims and the Second Lien Adequate

(Page | 44)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Protection Claims, the "<u>Adequate Protection Claims</u>").  In consideration of the foregoing, Third Priority Lien Collateral Agent, for the benefit of the Prepetition Third Lien Secured Parties, is hereby granted the following (collectively, the "<u>Third Lien Adequate Protection Obligations</u>," and together with the First Lien Adequate Protection Obligations and the Second Lien Adequate Protection Obligations, the "<u>Adequate Protection Obligations</u>"):

        (a)       <u>Third Lien Adequate Protection Liens</u>.     The Third Priority Lien Collateral Agent, for itself and for the benefit of the other Prepetition Third Lien Secured Parties, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Third Lien Adequate Protection Claim (which, for the avoidance of doubt, is directly junior to the Second Lien Adequate Protection Claim), a valid, perfected replacement security interest in and lien upon all of the Adequate Protection Collateral, subject only to (i) the Carve Out, (ii) the JPM Carve Out, (iii) the Permitted Prior Liens, (iv) the First Lien Adequate Protection Liens, (v) the Second Lien Adequate Protection Liens, and (vi) in each case in accordance with the priorities set forth in the Intercreditor Agreements and **Exhibit 2** (all such liens and security interests, the "<u>Third Lien Adequate Protection Liens</u>," and together with the First Lien Adequate Protection Liens and the Second Lien Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"):

        (i)     *Third Priority Liens on Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior security interest in and lien upon all Unencumbered Property with the priority set forth in **Exhibit 2**.

(Page | 45)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(ii)  *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon the property described in section 3(a)(ii) with the priority set forth in **Exhibit 2**.

(iii)  *Liens Senior to Prepetition Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable priming lien on, and security interest in the property described in section 3(a)(iii) with the priority set forth in **Exhibit 2**.

(b)  Third Lien 507(b) Claims.  The Third Priority Lien Collateral Agent, for itself and for the benefit of the other Prepetition Third Lien Secured Parties, is hereby granted, subject to the Carve Out, the First Lien 507(b) Claim, and the Second Lien 507(b) Claim, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Third Lien Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Third Lien 507(b) Claims" (which, for the avoidance of doubt, is directly junior to the Second Lien 507(b) Claim), and together with the First Lien 507(b) Claims and the Second Lien 507(b) Claim, the "507(b) Claims"), which administrative claim shall have recourse to and be payable from all (i) prepetition and postpetition property of the Debtors, and (ii) the proceeds of the Avoidance Actions.  The Third Lien 507(b) Claims shall be subject and subordinate to the Carve Out, the JPM Intraday Exposure, the First Lien 507(b), and the Second Lien 507(b) Claims.

6.  *Status of Adequate Protection Liens*.  Subject to the Carve Out and the JPM Carve Out, and in each case in accordance with the priorities set forth in the Intercreditor Agreements and **Exhibit 2**, the Adequate Protection Liens shall not be (i) subject or subordinate to or made

(Page | 46)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

*pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof.

7.        *Adequate Protection Obligations Binding*.  Upon entry of this Interim Order, the Adequate Protection Obligations shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and its estate in accordance with the terms of this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

8.        *Carve Out.*

(a)        As used in this Interim Order, the "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the

(Page | 47)

| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (in each case, other than any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors); *provided* however, for the avoidance of doubt, that any monthly fees of any investment bankers or financial advisors shall be included) at any time before or on the first business day following delivery by the Required Consenting AHG Noteholders or the SoftBank Parties of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $20 million incurred after the first business day following delivery by the Required Consenting AHG Noteholders or the SoftBank Parties of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").

(b)     For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Required Consenting AHG Noteholders or the SoftBank Parties, to the Debtors, their lead restructuring counsel (Kirkland & Ellis LLP), the U.S. Trustee and lead counsel to the Committee (to the extent one has been appointed), which notice may be delivered following the occurrence and during the continuation

(Page | 48)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

of a Termination Event and upon termination of the Debtors' right to use Cash Collateral, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     *Carve Out Reserves*.  On the day on which a Carve Out Trigger Notice is given by the Required Consenting AHG Noteholders or the SoftBank Parties to the Debtors with a copy to counsel to the Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Controlling Authorized Representative for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Debt has been indefeasibly paid in full, in cash, in which case any such excess shall be

(Page | 49)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations

set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out

Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been

reduced to zero, to pay the Controlling Authorized Representative for the benefit of Prepetition

Secured Parties, unless the Prepetition Secured Debt has been indefeasibly paid in full, in cash, in

which case any such excess shall be paid to the Debtors' creditors in accordance with their

respective rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary

in the Prepetition Secured Debt Documents or this Interim Order, if either of the Carve Out

Reserves is not funded in full in the amounts set forth in this paragraph 8, then, any excess funds

in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-

Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the

applicable amount set forth in this paragraph 8, prior to making any payments to any of the

Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition

Secured Debt Documents or this Interim Order, following delivery of a Carve Out Trigger Notice,

the Controlling Authorized Representative shall not sweep or foreclose on cash (including cash

received as a result of any sale or other disposition of any assets) of the Debtors until the Carve

Out Reserves have been fully funded, but shall have a security interest in any residual interest in

the Carve Out Reserves, with any excess paid to the Controlling Authorized Representative for

application in accordance with the Prepetition Secured Debt Documents.  Further, notwithstanding

anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve

(Page | 50)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Out Reserves shall not constitute an advance or extension of credit under any of the Prepetition Secured Debt Documents or increase, or reduce the obligations under the Prepetition Secured Debt Documents, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Prepetition Secured Debt Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, the 507(b) Claims and the JPM Intraday Exposure, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Debt.

(d)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    *No Direct Obligation to Pay Allowed Professional Fees*.  None of the Prepetition Agents, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Agents, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse

(Page | 51)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out On or After the Termination Declaration Date.*  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

9.     *JPM Carve Out.*

(a)     As used in this Interim Order, the "JPM Intraday Exposure" means any obligations of the Company owed and outstanding to JPM on account of overdraft or other amounts owing to JPM arising out of the ordinary course operation of the Company's cash management system, whether or not consistent with past practice.  For the avoidance of doubt, subject only to the Carve Out, any claim held by JPM arising from or on account of the JPM Intraday Exposure, shall be senior to any and all liens and claims, regardless of priority and regardless of whether such liens and claims arose prior to or after the Petition Date; *provided* that any recovery against the Debtors on account arising from this paragraph the "JPM Carve Out") shall not exceed the applicable JPM Intraday Exposure.

(b)     The Debtors shall maintain an aggregate cash balance no less than the Minimum Liquidity Requirement as of the end of each business day in all domestic and international accounts held at JPM, unless mutually agreed between JPM and the Debtors.  In the event the Debtors do not meet the Minimum Liquidity Requirement, unless otherwise agreed to with JPM, the Debtors shall not have access to any overdraft amounts or transfers and JPM shall

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

not have any obligation to honor any such overdraft amounts or transfers, until such time as the

Debtors satisfy such requirement or such earlier time agreed by JPM.

(c)    "Minimum Liquidity Requirement" means an amount equal to:
(i) $20 million *plus* (ii) the applicable Intraday Limit *plus* (iii) the amount of professional fees for

the applicable Reporting Period in the then-Approved Budget.

10.    *Budget Maintenance and Compliance.*

(a)    The use of Cash Collateral and Prepetition Collateral pursuant to this

Interim Order shall be limited in accordance with the Initial Approved Budget attached hereto as

**Exhibit 1** (the "Initial Budget"), and as updated in accordance with the provisions of this Interim

Order (each such update, an "Updated Budget" and with the Initial Budget, a "Budget," and any

other budget subsequently approved by the Required Consenting AHG Noteholders and the

SoftBank Parties, an "Approved Budget").  The Initial Budget has been approved by the Required

Consenting AHG Noteholders and the SoftBank Parties for the period starting with the Petition

Date is attached hereto as **Exhibit 1**.

(b)    *Updated Budgets and Periodic Reporting.*  The Debtors shall furnish to the

Ad Hoc Group, the Controlling Authorized Representative (with copies to Kelley Drye) and the

SoftBank Parties the following:  no later than every fourth Thursday (but if such Thursday is not

a business day, the next business day), beginning with Thursday, November 30, 2023, a rolling

updated 13-week cash flow forecast and budget (which shall, for the avoidance of doubt, be in the

same form, and contain all of the same line items, as the Initial Budget) setting forth all projected

cash receipts and expenditures on a line item and aggregate weekly basis for the next 13-week

(Page | 53)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

period for review by the Ad Hoc Group and the SoftBank Parties. Such Updated Budget may become an Approved Budget with the prior written consent of the Required Consenting AHG Noteholders and the SoftBank Parties (email being sufficient); *provided*, *however*, that approval of any update to an Approved Budget then in effect shall be limited to only the subsequent four week period and that no approval of the Required Consenting AHG Noteholders or the SoftBank Parties, shall be required with respect to any proposed update to the Approved Budget to the extent the previously approved line items therein remain unchanged for the same period set forth in the Approved Budget then in effect. Upon and subject to the approval of any such Updated Budget by the Required Consenting AHG Noteholders and the SoftBank Parties, such Updated Budget shall constitute the then-Approved Budget; *provided*, however, that in the event the Required Consenting AHG Noteholders, the SoftBank Parties, and the Debtors are unable to reach agreement regarding an Updated Budget, the Approved Budget most recently in effect shall remain the Approved Budget. Each Budget delivered pursuant to this paragraph shall be accompanied by such supporting documentation as reasonably requested by the Required Consenting AHG Noteholders, the SoftBank Parties, or Cupar. Each Budget shall be prepared in good faith based upon assumptions that the Debtors believe to be reasonable. So long as the Debtors' right to use Cash Collateral pursuant to this Interim Order has not terminated, the Debtors shall provide copies of any Approved Budget to counsel for the Softbank Parties, Cupar and the Committee, if any.

(c)    *Variance Reporting.*  By not later than Thursday, November 16 (the "Initial Reporting Date"), and on each Thursday thereafter (or, if such Thursday is not a business day, then the immediately succeeding business day) (the "Reporting Date" and each four-week period, a

(Page | 54)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

"Reporting Period"), the Debtors shall deliver to the Required Consenting AHG Noteholders, the SoftBank Parties, Cupar, the Controlling Authorized Representative (with copies to Kelley Drye) and JPM a variance report (each, a "Variance Report") setting forth the incremental disbursement (excluding any First Lien Adequate Protection Fees and Expenses) variance for the immediately preceding Reporting Period and the cumulative disbursement (excluding any First Lien Adequate Protection Fees and Expenses) variance from the Petition Date to the date of the then most recently ended Reporting Period, comparing actual cumulative and incremental cash receipts and disbursements to the amounts of the cumulative and incremental cash receipts and disbursements projected in the Approved Budget.  The Variance Report shall include the percentage and amount by which the actual incremental and cumulative receipts and disbursements differed from the incremental and cumulative receipts and disbursements set forth in the Approved Budget (x) for such Reporting Period and (y) on a cumulative basis from the Petition Date to the end of the then-most recent Reporting Period.  Any material variance shall be accompanied by a qualitative explanation.

(d)     *Permitted Variances*.  The Debtors shall not, without the written consent of the Required Consenting AHG Noteholders and the SoftBank Parties (which may be delivered via email by counsel), make disbursements during any Reporting Period in an aggregate amount that would exceed the sum of the aggregate amount of the expenses set forth in the Approved Budget for such Reporting Period by more than twenty percent (20%) for the first two Variance Reports, and fifteen percent (15.0%) thereafter (the "Permitted Variances").  For the avoidance of doubt, for the interim period between delivery of an Updated Budget and until such Updated Budget

(Page | 55)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

becomes an Approved Budget, any amounts unused by the Debtors for a particular Reporting Period with respect to the previous Approved Budget for such period (including any amounts corresponding to Permitted Variances) may be carried forward to subsequent Reporting Periods.

11.     *Termination*.  The Debtors' authorization to use Cash Collateral hereunder shall automatically terminate (the date of any such termination, the "Termination Date") immediately without further notice or court proceeding five (5) business days (any such five-business day period of time, the "Default Notice Period") following the delivery of a written notice (any such notice, a "Default Notice") by the Required Consenting AHG Noteholders or the SoftBank Parties, in consultation with Cupar (solely to the extent reasonably practicable under the circumstances in the judgment of the Required Consenting AHG Noteholders and Softbank Parties) to the Debtors, Debtors' counsel, the U.S. Trustee, the Prepetition Agents and counsel to the Committee (if any) following the occurrence of any of the events set forth below (any such event, a "Termination Event") unless:  (i) such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause, (ii) such occurrence is waived by the Required Consenting AHG Noteholders or the SoftBank Parties, as applicable), in each case, in consultation with Cupar (solely to the extent reasonably practicable under the circumstances in the judgment of the Required Consenting AHG Noteholders and Softbank Parties), or (iii) the Court rules that a Termination Event has not in fact occurred or has extended the Default Notice Period; *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Interim Order (the events set forth in clauses (a) through (u) below (are collectively referred to herein as the "Termination Events"):

(Page | 56)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(a)     The Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order (without the prior written consent of the Required Consenting AHG Noteholders and the SoftBank Parties), (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;

(b)     the failure of the Debtors to comply with any of the Milestones (as defined in the Restructuring Term Sheet (as defined in the Restructuring Support Agreement)) unless such Milestone is extended with the written consent of the Required Consenting AHG Noteholders and the SoftBank Parties;

(c)     An order shall be entered avoiding, disgorging, or requiring repayment of any payment or reimbursement made by the Debtors to the Prepetition Secured Parties, in each case, unless such payment or reimbursement are either voluntarily reduced by such Prepetition Secured Party, the Required Consenting AHG Noteholders and the SoftBank Parties, or disallowed by the Court;

(d)     the Bankruptcy Court enters an order (or the Debtors seek an order) invalidating, disallowing, subordinating, recharacterizing, or limiting, as applicable, any of the Prepetition Secured Debt, the liens securing the Prepetition Secured Debt, or the adequate protection liens granted in any Cash Collateral Order or the DIP TLC Orders, or any official committee or other person obtains standing to pursue any Challenge;

(e)     the Bankruptcy Court grants relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $5,000,000 or to permit other actions that would have a material adverse effect on the Debtors without the written consent of the Required Consenting AHG Noteholders and the SoftBank Parties;

(f)     the Debtors lose the exclusive right to file and solicit acceptances of a chapter 11 plan;

(Page | 57)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(g)     any of the Debtors (i) files any motion seeking to avoid, disallow, subordinate, or recharacterize any Prepetition Secured Debt, or any lien or interest held by any Prepetition Secured Parties arising under or relating to the Prepetition Secured Debt Documents or (ii) supports any application, adversary proceeding, or cause of action filed by a third party against a Prepetition Secured Party, or consents to the standing of any such third party to bring such application, adversary proceeding, or cause of action against a Prepetition Secured Party, including, without limitation, any application, adversary proceeding, or cause of action referred to in the immediately preceding sub-clause (i);

(h)     other than the Chapter 11 Cases and any foreign insolvency proceedings that are consented to by Required Consenting AHG Noteholders and the SoftBank Parties, if any Debtor (i) voluntarily commences any case or files any petition seeking bankruptcy, winding up, dissolution, liquidation, administration, moratorium, receivership, reorganization, or other relief under any federal, state, or foreign bankruptcy, insolvency, administrative receivership, or similar law now or hereafter in effect, except as contemplated by the Restructuring Support Agreement, (ii) consents to the institution of, or fails to contest in a timely and appropriate manner, any involuntary proceeding or petition described in the preceding subsection (i), (iii) applies for or consents to the appointment of a receiver, administrator, administrative receiver, trustee, custodian, sequestrator, conservator, or similar official with respect to any Debtor or for a substantial part of such Debtor's assets, (iv) makes a general assignment or arrangement for the benefit of creditors, or (v) takes any corporate action for the purpose of authorizing any of the foregoing;

(i)     any Debtor grants any liens or security interest, or encumbrance other than: (i) those existing immediately prior to the date hereof, (ii) those permitted pursuant to the DIP TLC Facility (as defined in the Restructuring Support Agreement), or (iii) those granted under or permitted by any order authorizing the DIP TLC Facility;

(j)     any Debtor (i) consummating or entering into a definitive agreement evidencing, or filing one or more motion or application seeking authority to consummate or enter into, any merger, consolidation, disposition of material assets, acquisition or sale of material assets, or similar transaction, (ii) making any material investments, (iii) paying any dividend, or (iv) incurring any indebtedness for borrowed money, in each case (x) outside the ordinary course of business, (y) in excess of $10,000,000 in the aggregate, or (z) other than as contemplated by this Agreement and the Restructuring Transactions, unless the SoftBank Parties and the Required Consenting AHG Noteholders have provided prior written consent (email to suffice);

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(k)     The entry of an order other than the Interim Order or the Final Order in any of the Chapter 11 Cases authorizing the use of Cash Collateral or granting adequate protection to any party with respect to the Prepetition Collateral without the consent of the Required Consenting AHG Noteholders and the Softbank Parties (email to suffice);

(l)     This Interim Order or Final Order ceases to be in full force and effect for any reason or an order shall be entered (or the Debtors seek an order) reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order and the Final Order without the written consent of the Required Consenting AHG Noteholders, or the SoftBank Parties, as applicable;

(m)     The Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Secured Parties relating to the Prepetition Secured Debt, including, without limitation, with respect to the Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order, subject in all respects to the investigation by the independent directors of the Debtors;

(n)     The entry of an order in the Chapter 11 Cases charging any of the Adequate Protection Collateral of the Prepetition Secured Parties (each as defined in the Interim Cash Collateral Order) under sections 506(c) or 552(b) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order (or any order requiring any of the Prepetition Secured Parties to be subject to the equitable doctrine of "marshaling");

(o)     Failure of the Debtors to make any payment under this Interim Order to any of the Prepetition Secured Parties as and when due;

(p)     The expenditure by any of the Debtors of Cash Collateral other than in accordance with the Approved Budget or in amounts that exceed the Permitted Variance, or the failure to provide any of the reports and other information as reasonably required by paragraph titled "Budget Maintenance and Compliance" of this Interim Order;

(q)     Failure of the Debtors to: (i) comply with any provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order to be complied with;

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(r)     The entry of any post-petition judgment against any Debtor in excess of $20,000,000 and such judgment is afforded any lien or claim priority status upon any assets of the Debtors or allowed to proceed against a Debtor by any court of competent jurisdiction;

(s)     The payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by any of the Prepetition Secured Parties, other than in accordance with the Approved Budget or as otherwise permitted by an order entered in the Chapter 11 Cases or as otherwise authorized by the Required Consenting AHG Noteholders or the SoftBank Parties, or as otherwise permitted pursuant to the Restructuring Support Agreement, as applicable;

(t)     the entry of any order authorizing the use of debtor-in-possession financing that is not acceptable to Required Consenting AHG Noteholders and the Softbank Parties; and

(u)     Any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute a Termination Event.

12.     *Remedies upon the Termination Date.*  Upon the occurrence of the Termination Date, (a) the Debtors' authorization to use Cash Collateral hereunder shall automatically terminate (subject only to the Carve Out) immediately without further notice or court proceeding, (b) the Carve out Trigger Notice shall be delivered and the Carve out Reserves shall be funded as set forth in this Interim Order; (c) (subject to the Carve Out and the JPM Carve Out), the Adequate Protection Obligations, if any, shall become immediately due and payable, and (d) the Prepetition Agents and the Prepetition Secured Parties may, subject to the terms of all applicable Intercreditor Agreements, exercise the rights and remedies available under the Prepetition Secured Debt Documents, this Interim Order or applicable law (subject only to the Carve Out and the JPM Carve Out), including without limitation, foreclosing upon and selling all or a portion of the Prepetition

(Page | 60)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions, provided that during the Default Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect. The rights of the Debtors to oppose any relief requested by the Prepetition Agents and Prepetition Secured Parties are fully reserved, and the parties hereby consent to the setting of an expedited hearing. If the Debtors request an emergency hearing to consider relief from the automatic stay or any other appropriate relief in connection with delivery of the Default Notice within the Default Notice Period but such hearing is scheduled for a later date by the Court (not requested by the Debtors), the Default Notice Period shall be automatically extended to the date of such hearing.  For the avoidance of doubt, any such emergency hearing shall be limited to consideration of whether such Termination Event validly occurred, whether a Default Notice was properly provided, or whether a Termination Event has been cured or waived in accordance with this Interim Order.  Any delay or failure of the Prepetition Agents or Prepetition Secured Parties to exercise rights under the Prepetition Secured Debt Documents or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  At the end of the Default Notice Period, the automatic stay shall be and hereby is, without the necessity for further order, terminated and vacated with respect to all collateral of the Prepetition Secured Parties.

(Page | 61)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

13.     *No Marshaling*.  Without limiting the Debtors' rights under this Interim Order, the Prepetition Secured Parties shall be entitled to apply the payments or proceeds of the Prepetition Collateral (including the Cash Collateral) and Adequate Protection Collateral in accordance with the provisions of the Prepetition Secured Debt Documents and this Interim Order, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral (including the Cash Collateral) or Adequate Protection Collateral or otherwise.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Termination Date.

14.     *Limitation on Charging Expenses Against Collateral*.  No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral (including the Cash Collateral) or Adequate Protection Collateral (except to the extent of the Carve Out) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Required Consenting AHG Noteholders and the SoftBank Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by the Required Consenting AHG Noteholders or the SoftBank Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the Required Consenting AHG Noteholders or the SoftBank Parties, to any charge, lien, assessment or claim against the Prepetition Collateral (including the

(Page | 62)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Cash Collateral) or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or otherwise.

15.    *Bankruptcy Code Section 552(b).*  In light of, among other things, the agreement of the Prepetition Secured Parties to allow the Debtors to use Cash Collateral on the terms set forth herein, (i) the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

16.    *Perfection of Adequate Protection Liens.*

(a)    Without in any way limiting the automatically valid effective perfection of the Adequate Protection Liens granted in this Interim Order, the Prepetition Agents, as applicable, are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, copyright filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to document, validate, and perfect the liens and security interests granted to them hereunder.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens

(Page | 63)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

and security interests granted to them hereunder, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of this Interim Order. Upon the request of any Prepetition Agent each of the Prepetition Secured Parties and the Debtors, without any further consent of any party, is authorized to take, execute, deliver, and file such actions, instruments, and agreements (in the case of the Prepetition Secured Parties, without representation or warranty of any kind) to enable the Prepetition Agents to further validate, perfect, preserve and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b) A certified copy of this Interim Order may, in the discretion of the Prepetition Agents, each acting on its own behalf or as directed by the applicable Prepetition Secured Parties be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable; *provided, however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Interim Order. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit each of the Prepetition Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c) Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties, or (ii) the payment

| Debtors: | WEWORK INC., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

of any fees or obligations, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto in connection with the granting of the Adequate Protection Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provisions shall have no force and effect with respect to the granting of the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment, and/or sale thereof by any Debtor in accordance with the terms of this Interim Order.

17.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Subject to the Carve Out and the JPM Carve Out, other than as set forth in this Interim Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest granted in any of these Chapter 11 Cases or arising after the Petition Date, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(b)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the 507(b) Claims and the Adequate Protection Liens, and the other administrative claims granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such 507(b) Claims and Adequate Protection Liens, and the other administrative claims granted pursuant to this Interim Order shall,

(Page | 65)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any diminution in value of their interests in the Prepetition Collateral during these Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any diminution in value of their respective interests in the Prepetition Collateral, including the Cash Collateral.  The Prepetition Secured Parties shall be deemed to have requested adequate protection and shall not be required to file a motion or seek other relief from the Court as a condition of obtaining the rights granted herein under Section 507(b).

(d)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Adequate Protection Obligations incurred by the Debtors to the

(Page | 66)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and section 364(e), as applicable of the Bankruptcy Code and this Interim Order with respect to all uses of Cash Collateral and the Adequate Protection Obligations.

(e)     Subject to the Carve Out, unless and until all Prepetition Secured Debt and Adequate Protection Obligations are indefeasibly paid in full, in cash, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (i) except as permitted by the Prepetition Secured Parties, (x) any modification, stay, vacatur, or amendment of this Interim Order, (y) a priority claim against the Prepetition Collateral, including Cash Collateral or the Prepetition Secured Parties, under 506(c) or otherwise, for any administrative expense, secured claim or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of these Chapter 11 Cases, *pari passu* with or senior to the Adequate Protection Claims and the Prepetition Secured Debt (or the liens and security interests secured such claims and obligations), or (z) any other order allowing use of the Cash Collateral; (ii) any lien on any of the Prepetition Collateral with priority equal or superior to the Adequate Protection Liens or the Prepetition Liens, as the case may be; (iii) the use of Cash Collateral for any purpose other than as permitted in this Interim Order; (iv) an order converting or dismissing any of these Chapter 11 Cases; (v) an order appointing a chapter

(Page | 67)

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

11 trustee in any of these Chapter 11 Cases; or (vi) an order appointing an examiner with expanded powers in any of these Chapter 11 Cases.

(f)    Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the Adequate Protection Claims and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Adequate Protection Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Obligations and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein.

18.    *Payment of Fees and Expenses*.  The Debtors are authorized to and shall pay the First Lien Adequate Protection Fees and Expenses.  Subject to the review procedures set forth in this paragraph 18, payment of all First Lien Adequate Protection Fees and Expenses shall not be

(Page | 68)
Debtors:                WEWORK INC., *et al*.
Case No.                23-19865 (JKS)
Caption of Order:       Interim Order (I) Authorizing The Debtors To Use Cash Collateral,
                        (II) Granting Adequate Protection, (III) Scheduling A Final Hearing,
                        (IV) Modifying The Automatic Stay, and (V) Granting Related Relief

subject to allowance or review by the Court.  The Debtors shall pay the reasonable and documented

professional fees, expenses, and disbursements of professionals to the extent provided for in

paragraphs 3(c) of this Interim Order (collectively, the "Noteholder Professionals" and, each,

a "Noteholder Professional") no later than the third business day of the following week after

delivery by the applicable Noteholder Professional, or counsel representing the applicable

Prepetition Secured Party of an email notice stating that the five business day review period (the

"Review Period") with respect to each of the invoices therefor (or any portion thereof)

(the "Invoiced Fees") passed without objection after the receipt by counsel for the Debtors, counsel

for the Committee, and the U.S. Trustee of such invoices.   Invoiced Fees shall be in the form of

an invoice summary for reasonable and documented professional fees and categorized expenses

incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be

required to contain time entries, but shall include a general, brief description of the nature of the

matters for which services were performed, and which may be redacted or modified to the extent

necessary to delete any information subject to the attorney-client privilege, any work product

doctrine, privilege or protection, common interest doctrine privilege or protection, any other

evidentiary privilege or protection recognized under applicable law, or any other confidential

information, and the provision of such invoices shall not constitute any waiver of the attorney-

client privilege, work product doctrine, privilege or protection, common interest doctrine privilege

or protection, or any other evidentiary privilege or protection recognized under applicable law.

The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the

Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the

(Page | 69)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Committee, or the U.S. Trustee notifies the submitting party, the Ad Hoc Group, and the SoftBank Parties, in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days prior written notice to the submitting party, the Ad Hoc Group, and the SoftBank Parties, of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

19.     *Payments Free and Clear.* Subject to entry of the Final Order (except with respect to payments of interest, fees, expenses and disbursements set forth in paragraph 3(c) of this Interim Order made between now and the entry of the Final Order), any and all payments or proceeds remitted to the Prepetition Agents on behalf of the applicable Prepetition Secured Parties, pursuant to the provisions of this Interim Order, the Final Order (if and when entered), any subsequent order of the Court or the Prepetition Secured Debt Documents, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or 552(b) of the Bankruptcy Code (subject to the entry of the Final Order approving the waiver of the Debtors' rights under section 506(c) and section 552(b) of the Bankruptcy Code), whether asserted or assessed by, through or on behalf of the Debtors, and solely in the case of payments made or proceeds remitted after the delivery of a Carve Out Trigger Notice, subject to the Carve Out in all respects. If it is subsequently determined, upon a duly filed notice, after notice and a hearing, that such fees and expenses were not payable under section 506 of the

(Page | 70)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Bankruptcy Code, such amounts will instead be deemed recharacterized as repayments of principal in reduction of the applicable obligations.

20.    *Effect of Stipulations on Third Parties*.    The Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order, shall be binding upon the Debtors, their estates, their affiliates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.    The Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, a Committee, if any, unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period, the chapter 7 trustee in such Successor Case), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) (x) with respect to parties in interest with requisite standing other than the Committee, the earlier of an order confirming a chapter 11 plan and 75 calendar days after the Petition Date and (y) with respect to the Committee, 60 calendar days after the appointment of the Committee, if any, and (ii) any such later date as has been agreed to, in writing, by the Required Consenting AHG Noteholders and the SoftBank Parties (the time period established by the foregoing clauses (i) and (ii), as the same may be extended as provided for herein, shall be referred to as the "Challenge Period," and termination of such Challenge Period, the "Challenge Period Termination Date"), (A) objecting to or challenging the

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

amount, validity, perfection, enforceability, priority or extent of any of the Credit Agreement Debt, First Lien Notes Debt, Prepetition Second Lien Debt or the Prepetition Third Lien Debt (as applicable) or the Credit Agreement Liens, the First Lien Notes Liens, Prepetition Second Priority Liens or Prepetition Third Priority Liens (as applicable), or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Secured Debt Documents, Prepetition Secured Debt, Prepetition Liens or Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter;[4] *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not

---

[4] If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected.

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Committee (if any); (b) the obligations of the applicable loan or notes parties under the Prepetition Secured Debt Documents including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except under the Intercreditor Agreements), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except under the Intercreditor Agreements), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity; and (d) Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim,

(Page | 73)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Secured Debt Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) (a) in their entirety on any person or entity that did not file a timely Challenge and (b) on any person or entity that did file a timely Challenge, except to the extent that (x) such stipulations, admissions, agreements and releases were expressly challenged in such person or entity's timely filed Challenge and (y) such Challenge was upheld as set forth in a final, non-appealable order of a court of competent jurisdiction.  The Challenge Period may be extended only (i) with the written consent of the Debtors, the Required Consenting AHG Noteholders, and the SoftBank Parties (provided, however, any extension of the Challenge Period relating to (i) Challenges with respect to the Credit Agreement shall require the written consent of the SoftBank Parties only and (ii) Challenges with respect to the First Lien Notes Indenture or the Second Lien Notes Indenture shall require the written consent of the Required Consenting AHG

(Page | 74)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Noteholders only) (email being sufficient) or (ii) by order of the Court for good cause shown. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, if any, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to Prepetition Secured Debt Documents, Prepetition Secured Debt or Prepetition Liens. The failure of any party in interest, including the Committee, if any, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph or to require or permit an extension of the Challenge Period Termination Date.

21. *Limitation on Use of Cash Collateral.* Notwithstanding any other provision of this Interim Order or any other order entered by the Court, neither the Prepetition Collateral (including the Cash Collateral) nor Adequate Protection Collateral nor any portion of the Carve Out may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the actual or threatened investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties, or each of the foregoing's respective predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the Prepetition Secured Parties in the Prepetition Secured Debt, and/or the liens, claims, rights, or security interests granted under this Interim Order,

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

the Final Order, the Prepetition Secured Debt Documents including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided* that, notwithstanding anything to the contrary herein, the Debtors and the Committee, if any, may use Cash Collateral and/or the proceeds of the Adequate Protection Collateral to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of no more than $70,000; (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties', enforcement or realization on the Prepetition Secured Debt, Prepetition Collateral, Adequate Protection Obligations or Adequate Protection Collateral, and the liens, claims and rights granted to such parties under this Interim Order or the Final Order, each in accordance with the Prepetition Secured Debt Documents or this Interim Order; (c) attempts to seek to modify any of the rights and remedies granted to any of the Prepetition Secured Parties under this Interim Order or the Prepetition Secured Debt Documents, as applicable; (d) attempts to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Adequate Protection Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Obligations or Prepetition Secured Debt; or (e) attempts to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required Consenting AHG Noteholders and the SoftBank Parties or expressly permitted under this Interim Order (including the Initial Budget), in each case unless all the Adequate Protection Obligations granted to the

(Page | 76)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

Prepetition Secured Parties under this Interim Order and the Prepetition Secured Debt have been refinanced or paid in full in cash.

22.    *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and any other order entered by this Court, the provisions of this Interim Order shall govern unless such other order expressly provides that it controls over this Interim Order.  In the event of any inconsistency between the provisions of this Interim Order and the Intercreditor Agreements, the provisions of the Intercreditor Agreements shall govern unless this Interim Order expressly provides that it controls over the Intercreditor Agreements.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order, including, without limitation, the approved Initial Budget.

23.    *Limitation of Liability*.  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, none of the Prepetition Secured Parties or the Prepetition Agents shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any other federal or

| | |
|---|---|
| (Page \| 77) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

24.   *Binding Effect; Successors and Assigns*.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Committee (if any), the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of the Cash Collateral by any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

25.   *Master Proof of Claim*.  None of the Prepetition Agents shall be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of themselves or the Prepetition Secured Parties for payment of the Prepetition Secured Debt

(Page | 78)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

arising under the Prepetition Secured Debt Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Secured Debt Documents. The statements of claim in respect of the such indebtedness set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the Prepetition Agents is authorized, but not directed or required, to file in the case of Debtor WeWork Inc., a master proof of claim on behalf of the its respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Secured Debt Documents and hereunder (each, a "Master Proof of Claim") against each of the Debtors. Upon the filing of a Master Proof of Claim by any of the Prepetition Agents, such entity shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Secured Debt Documents, and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this

(Page | 79)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

26.    *Intercreditor Agreements*.  Nothing in this Interim Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreements.  The rights of the Prepetition Agents and the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreements.

27.    *Credit Bidding*.  Subject to the lien priorities set forth herein, each or all of the Prepetition Secured Parties shall have the right to credit bid up to the full amount of the applicable Prepetition Secured Debt in any sale of their Prepetition Collateral, on which they have Prepetition Liens or Adequate Protection Liens, in each case, subject to any successful Challenge, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

28.    *Maintenance of Collateral*.  The Debtors shall comply with the covenants contained in the Prepetition Secured Debt Documents regarding the maintenance and insurance of the Prepetition Collateral except as otherwise provided herein.

(Page | 80)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

29.     *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

30.     *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

31.     *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

32.     *No Third Party Rights.*  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

33.     *Necessary Action.*  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

34.     *Retention of Jurisdiction.*  The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

(Page | 81)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

35.    *Final Hearing*.  The Final Hearing is scheduled for [November [●]], 2023 at [●] a.m., prevailing Eastern Time before this Court.

36.    *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) the Debtors; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, (Attn.: Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., Steven N. Serajeddini, P.C., Ciara Foster); (c) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn.: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Ryan T. Jareck, Esq.); (d) counsel to the Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn.: Eli J. Vonnegut, Esq., Natasha Tsiouris, Esq. and Jonah A. Peppiatt, Esq.) and Greenberg Traurig, LLP, 500 Campus Drive, Florham Park, New Jersey 07932 (Attn.: Alan J. Brody, Esq.); (e) counsel to SoftBank, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn.: Gary T. Holtzer, Gabriel A. Morgan, Kevin H. Bostel, and Eric L. Einhorn) and Wollmuth Maher & Deutsch LLP, 500 5th Avenue, New York, New York 10110 (Attn: Paul R. DeFilippo, Steven S. Fitzgerald, and Joseph F. Pacelli); (f) counsel to Cupar Grimmond, LLC, Cooley LLP, 1333 2nd Street, Suite 400, Santa Monica, CA 90401 (Attn: Tom Hopkins and Logan Tiari and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein); and (g) counsel to U.S. Bank Trust Company, National Association, Kelley Drye & Warren LLP, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007 (Attn: James S. Carr and Kristin S. Elliott);

| (Page \| 82) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Interim Order (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief |

(h) counsel to the Committee, in each case to allow actual receipt by the foregoing no later than [November [●]], 2023 at 4:00 p.m., prevailing Eastern Time.

s

37.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or such Committee's counsel, if the same shall have been appointed.

38.     Notwithstanding anything to the contrary herein or in any Prepetition Secured Debt Document, the Prepetition Secured Parties shall not be required to lend in excess of their commitments under the Prepetition Secured Debt Documents.

39.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

## Exhibit 1

**Initial Budget**

**WeWork Inc.**
Cash Collateral Budget
*(USD in millions)*

| Week Ending: | 10-Nov | 17-Nov | 24-Nov | 1-Dec | 8-Dec | 15-Dec | 22-Dec | 29-Dec | 5-Jan | 12-Jan | 19-Jan | 26-Jan | 2-Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Total Receipts** | $23 | $11 | $13 | $18 | $59 | $12 | $8 | $13 | $62 | $13 | $9 | $10 | $35 | $283 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Rent | (17) | - | - | (54) | (24) | - | - | - | (78) | - | - | - | (43) | (217) |
| OpEx & Payroll and Related | (10) | (9) | (19) | (10) | (16) | (18) | (14) | (7) | (14) | (15) | (13) | (7) | (16) | (167) |
| **Operating Disbursements** | **($27)** | **($9)** | **($19)** | **($64)** | **($41)** | **($18)** | **($14)** | **($7)** | **($92)** | **($15)** | **($13)** | **($7)** | **($60)** | **($384)** |
| **Operating Cash Flow** | **($4)** | **$1** | **($7)** | **($47)** | **$18** | **($5)** | **($6)** | **$6** | **($31)** | **($2)** | **($4)** | **$3** | **($25)** | **($101)** |
| Professional Fees[1] | - | - | - | (1) | (1) | (0) | (3) | - | (9) | (3) | - | - | - | (17) |
| Other Restructuring Costs | (1) | - | - | - | - | - | - | - | - | - | - | - | - | (1) |
| **Total Adjustments** | **($1)** | **-** | **-** | **($1)** | **($1)** | **($0)** | **($3)** | **-** | **($9)** | **($3)** | **-** | **-** | **-** | **($18)** |
| **Net Cash Flow** | **($5)** | **$1** | **($7)** | **($47)** | **$17** | **($6)** | **($9)** | **$6** | **($40)** | **($5)** | **($4)** | **$3** | **($25)** | **($119)** |
| Beginning Cash | $164 | $159 | $160 | $154 | $106 | $124 | $118 | $109 | $115 | $75 | $71 | $66 | $69 | $164 |
| Net Cash Flow | (5) | 1 | (7) | (47) | 17 | (6) | (9) | 6 | (40) | (5) | (4) | 3 | (25) | (119) |
| Intercompany Receipts / (Disbursements) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash** | **$159** | **$160** | **$154** | **$106** | **$124** | **$118** | **$109** | **$115** | **$75** | **$71** | **$66** | **$69** | **$45** | **$45** |

(1) Includes US Trustee fees

**Exhibit 2**

**Lien Priorities**

|  | **Unencumbered Property** | **Prepetition Collateral** | **Assets Subject to Other Senior Liens** |
|---|---|---|---|
| 1st | First Lien Adequate Protection Liens | Other Senior Liens | Other Senior Liens |
| 2nd | Second Lien Adequate Protection Liens | First Lien Adequate Protection Liens | First Lien Adequate Protection Liens |
| 3rd | Third Lien Adequate Protection Liens | Prepetition First Priority Liens | Second Lien Adequate Protection Liens |
| 4th | | Second Lien Adequate Protection Liens | Third Lien Adequate Protection Liens |
| 5th | | Prepetition Second Priority Liens | |
| 6th | | Third Lien Adequate Protection Liens | |
| 7th | | Prepetition Third Priority Liens | |