| | |
|---|---|
| **KIRKLAND & ELLIS LLP** | **COLE SCHOTZ P.C.** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Michael D. Sirota, Esq. |
| Edward O. Sassower, P.C. | Warren A. Usatine, Esq. |
| Joshua A. Sussberg, P.C. (*pro hac vice* pending) | Felice R. Yudkin, Esq. |
| Steven N. Serajeddini, P.C. (*pro hac vice* pending) | Ryan T. Jareck, Esq. |
| Ciara Foster (*pro hac vice* pending) | Court Plaza North, 25 Main Street |
| 601 Lexington Avenue | Hackensack, New Jersey 07601 |
| New York, New York 10022 | Telephone:    (201) 489-3000 |
| Telephone:    (212) 446-4800 | msirota@coleschotz.com |
| Facsimile:    (212) 446-4900 | wusatine@coleschotz.com |
| edward.sassower@kirkland.com | fyudkin@coleschotz.com |
| joshua.sussberg@kirkland.com | rjareck@coleschotz.com |
| steven.serajeddini@kirkland.com | |
| ciara.foster@kirkland.com | |
| | |
| *Proposed Co-Counsel for Debtors and Debtors in Possession* | *Proposed Co-Counsel for Debtors and Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF JUSTIN SCHMALTZ IN SUPPORT
OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, (IV)
MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, Justin P. Schmaltz, hereby declare under penalty of perjury as follows:

1.    I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"). For the past three months, my team and I have been working closely with the Debtors on their

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

restructuring initiatives. As a result of my work with the Debtors, I am familiar with the Debtors day-to-day operations, business affairs, financial performance, and restructuring efforts.

2. I submit this declaration in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Motion").[2] Through the Motion, the Debtors seek, among other things, the consensual use of Cash Collateral and to provide adequate protection to the Prepetition Secured Parties. As discussed in greater detail below and in the Motion, the Debtors have an immediate need for the use of Cash Collateral.

3. All of the facts set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' operations and finances, (b) information learned from my review of relevant documents, (c) information supplied to me by members of the Debtors' management and their advisors, or (d) my opinion based on my experience, knowledge, and information concerning the Debtors' operations, financial affairs, and restructuring initiatives. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by A&M as a professional retained by the Debtors, subject to this Court's approval. I am authorized to submit this declaration on behalf of the Debtors, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion, First Day Declaration, or the *Declaration of Paul Sheaffer in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, (the "Sheaffer Declaration"), as applicable.

2

## Qualifications

4. A&M is a leading restructuring consulting firm with extensive experience providing high quality, specialized management and restructuring advisory services to debtors and distressed companies. Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services. A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including: developing or validating forecasts, business plans, and related assessments of strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. In addition, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications. A&M is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

5. I have over 20 years of experience providing financial and restructuring services and have held senior roles at financial advisory and investment management firms. In addition, I have served as Chief Restructuring Officer and financial advisor for several companies.

6. My experience spans multiple industries, including telecommunications, media, and technology managing teams that focus on restructuring and performance improvement. I provide a wide range of services to the companies I advise, and my expertise includes business improvement and turnarounds, restructurings, and successful bankruptcy reorganizations.

7. In August 2023, the Debtors retained A&M to assist with liquidity management, advise on strategic and business alternatives, and commence contingency preparations in the event that a chapter 11 filing became necessary. From the outset of A&M's retention, I have worked

closely with the Debtors' management team and other advisors to evaluate the Debtors' liquidity and cash needs in the event of a chapter 11 filing.

### The Debtors Have an Immediate Need for the Use of Cash Collateral

8. Based on the work that my team and I have performed, I believe that the Debtors require immediate access to the Cash Collateral. Access to the Cash Collateral is critical to ensure that the Debtors are able to (i) continue operating during these chapter 11 cases; (ii) preserve the value of their estates for the benefit of all parties in interest; and (iii) pursue the value-maximizing restructuring transactions contemplated by the Restructuring Support Agreement (the "RSA"). Based on the analysis the A&M team has performed, the Debtors will not have the liquidity necessary to continue operating during these chapter 11 cases without access to the Cash Collateral.

9. To determine their anticipated liquidity needs, the Debtors and A&M reviewed and analyzed projected cash receipts and disbursements. Using that analysis, A&M then prepared a budget outlining the Debtors' postpetition cash flow forecast over the first thirteen weeks of these chapter 11 cases (the "Initial Budget").[3] Based on my experience and extensive discussions with the Debtors' management team and advisors, I believe the Initial Budget presents a reasonable estimate of the Debtors' cash sources and needs during these chapter 11 cases.

10. As of the Petition Date, the Debtors have approximately $173 million of cash on hand. The Initial Budget contains line items for the cash flows anticipated to be received and disbursed during such thirteen-week period, and includes all reasonable, necessary, and foreseeable expenses that the Debtors expect to incur as a result of the operation of their business

---

[3] A copy of this budget, which is the "Initial Budget" under the terms of the proposed Interim Order, is attached to the proposed Interim Order, and to this declaration, as Exhibit 1.

4

during such time, as well as the projected costs of these chapter 11 cases. Specifically, the Debtors will need access to Cash Collateral to satisfy payroll, pay landlords and vendors, support member programs, meet overhead obligations, and to make payments that are necessary for the continued management, operation, and preservation of the Debtors' business and international portfolio obligations. I believe the Debtors' ability to satisfy these expenses as they become due is essential to the Debtors' continued operations and the preservation of their estates. Without access to Cash Collateral, the Debtors would need to meaningfully curtail their operations, which would materially damage the Debtors' business reputation and relationships with employees, vendors, landlords, and members. As a result, the Debtors and their estates would suffer immediate and irreparable harm to the detriment of all stakeholders.

11. Based on the Initial Budget, the Debtors' project that their remaining cash balance at the end of the first four weeks of these chapter 11 cases will be approximately $106 million and their remaining cash balance at the end of the 13-week period will be approximately $45 million. Accordingly, the Initial Budget establishes that, subject to the continued access to Cash Collateral, the Debtors will have sufficient cash on hand to operate their business in the ordinary course.

12. Recognizing the Debtors' need to access Cash Collateral, over the past several weeks the Debtors and their advisors engaged in negotiations with an ad hoc group of noteholders (the "Ad Hoc Group"). As part of these negotiations, the Debtors, the Ad Hoc Group, SoftBank Vision Fund II-2 L.P. ("SoftBank"), and Cupar Grimmond, LLC ("Cupar") (the "Consenting Stakeholders") discussed a budget, an adequate protection package, and a restructuring timeline that would allow the Debtors to continue to use Cash Collateral while they work expeditiously to implement the transactions contemplated under the RSA. Ultimately, on November 6, 2023,

5

the Debtors and the Consenting Stakeholders entered into the RSA and agreed to the terms in which the Debtors will use cash collateral during these chapter 11 cases.

13. The agreed to adequate protection package includes, among other things, budget and variance reporting obligations and the payment of certain fees and expenses, as applicable. I believe that these forms of adequate protection are appropriate under the circumstances and will contribute to adequately protecting the Consenting Stakeholders against any actual diminution in value of their interest in the Cash Collateral. I believe the reporting obligations are typical for chapter 11 debtors using cash collateral, are not unduly burdensome under the circumstances, and that the payment of certain fees are routinely granted as forms of adequate protection.

14. Because the Debtors' access to Cash Collateral is critical to the Debtors' continued business operations and the success of these chapter 11 cases, I believe the relief requested in the Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates and should be approved by this Court.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 7, 2023              /s/ *Justin Schmaltz*
                                            Name:  Justin Schmaltz
                                            Title:   Managing Director
                                            Alvarez & Marsal North America, LLC

## Exhibit 1

## Initial Budget

(USD in millions)

| | Week Ending: | 10-Nov | 17-Nov | 24-Nov | 1-Dec | 8-Dec | 15-Dec | 22-Dec | 29-Dec | 5-Jan | 12-Jan | 19-Jan | 26-Jan | 2-Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Total Receipts** | | $23 | $11 | $13 | $18 | $59 | $12 | $8 | $13 | $62 | $13 | $9 | $10 | $35 | $283 |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Rent | | (17) | - | - | (54) | (24) | - | - | - | (78) | - | - | - | (43) | (217) |
| OpEx & Payroll and Related | | (10) | (9) | (19) | (10) | (16) | (18) | (14) | (7) | (14) | (15) | (13) | (7) | (16) | (167) |
| **Operating Disbursements** | | ($27) | ($9) | ($19) | ($64) | ($41) | ($18) | ($14) | ($7) | ($92) | ($15) | ($13) | ($7) | ($60) | ($384) |
| **Operating Cash Flow** | | ($4) | $1 | ($7) | ($47) | $18 | ($5) | ($6) | $6 | ($31) | ($2) | ($4) | $3 | ($25) | ($101) |
| Professional Fees[1] | | - | - | - | (1) | (1) | (0) | (3) | - | (9) | (3) | - | - | - | (17) |
| Other Restructuring Costs | | (1) | - | - | - | - | - | - | - | - | - | - | - | - | (1) |
| **Total Adjustments** | | ($1) | - | - | ($1) | ($1) | ($0) | ($3) | - | ($9) | ($3) | - | - | - | ($18) |
| **Net Cash Flow** | | ($5) | $1 | ($7) | ($47) | $17 | ($6) | ($9) | $6 | ($40) | ($5) | ($4) | $3 | ($25) | ($119) |
| Beginning Cash | | $164 | $159 | $160 | $154 | $106 | $124 | $118 | $109 | $115 | $75 | $71 | $66 | $69 | $164 |
| Net Cash Flow | | (5) | 1 | (7) | (47) | 17 | (6) | (9) | 6 | (40) | (5) | (4) | 3 | (25) | (119) |
| Intercompany Receipts / (Disbursements) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash** | | $159 | $160 | $154 | $106 | $124 | $118 | $109 | $115 | $75 | $71 | $66 | $69 | $45 | $45 |

(1) Includes US Trustee fees