**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Joint Administration Requested) |

**DECLARATION OF PAUL SHEAFFER**
**IN SUPPORT OF DEBTORS' MOTION**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION**
**SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, (IV)**
**MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, Paul Sheaffer, hereby declare under penalty of perjury:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

1. I am a Partner in the Restructuring and Special Situations Group ("RSSG") at PJT Partners LP ("PJT"), a global investment banking firm listed on the New York Stock Exchange, with its principal offices at 280 Park Avenue, New York, New York 10017.

2. For the past two months, my team and I have worked with the Debtors on their restructuring initiatives. As such, I am generally familiar with the Debtors' day-to-day operations, business affairs, financial performance, and restructuring efforts.

3. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Cash Collateral Motion").[2] Through the Cash Collateral Motion, the Debtors seek, among other things, the consensual use of Cash Collateral and provision of adequate protection to the Prepetition Secured Parties. As explained in greater detail below and in the Cash Collateral Motion, the Debtors have an immediate need for the use of Cash Collateral, and the adequate protection package being provided to the Prepetition Secured Parties was negotiated in good faith and is, taken as a whole, reasonable.

4. All statements set forth in this Declaration are based on my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein have the meaning ascribed to them in the Cash Collateral Motion, the First Day Declaration, or the *Declaration of Justin Schmaltz in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, (the "Schmaltz Declaration"), as applicable.

documents, information supplied to me by members of the Debtors' management and their advisors, information that I have received from the employees of PJT working directly with me or under my supervision, direction, or control, or my opinions based on my experience, knowledge, and information concerning the Debtors' operations, financial affairs, and restructuring initiatives. I am not being compensated specifically for this testimony other than through payments received by PJT as a professional proposed to be retained by the Debtors. I am authorized to submit this Declaration on behalf of the Debtors, and, if called to testify as a witness, I could and would testify competently to the facts set forth herein.

### Qualifications

5.     PJT is a leading global financial advisory firm with more than 1,000 employees in eleven offices in the U.S., Europe, and Asia. The firm offers integrated advisory services for mergers and acquisitions, restructuring and special situations, and fund placement. PJT is an industry leader and has advised companies and creditors in all aspects of complex restructurings and bankruptcies. The firm has extensive experience providing financial advisory and investment banking services to financially distressed companies, including representing both debtors and lenders in the procurement and provision of post-petition financing. PJT is a registered broker-dealer with the United States Securities and Exchange Commission, is a member of the Securities Investor Protection Corporation, and is regulated by the Financial Industry Regulatory Authority.

6.     I have held several positions within RSSG, both before and after its spin-off from The Blackstone Group L.P. ("Blackstone"), including Associate, Vice President, Managing Director, and Partner. Before joining Blackstone in 2010, I was an associate for two years at Angelo, Gordon & Co., a privately held investment advisor dedicated to alternative investing, where I focused on private investments in distressed middle market companies. Previously, I

was an analyst at Blackstone in the Restructuring and Reorganization advisory group for three years. I hold a Bachelor of Science in Finance and a Masters in Accounting from Wake Forest University.

7. Collectively, I have over sixteen years of experience advising financially distressed companies and their stakeholders, and their creditors, in chapter 11 restructurings, out-of-court workouts, and other distressed transactions. The representative public transactions on which I have worked include, among others: Acosta Sales and Marketing; American Seafoods; AF Global; Avaya; Bally Total Fitness; Basic Energy; Catalina Marketing; Cengage Learning; Cumulus Media; Fieldwood Energy; Houghton Mifflin Harcourt; Intelsat S.A.; IPC Systems; Key Energy; Lee Enterprises; Magnetation; Milagro Oil and Gas; Relativity Media; Savers; Service King; Specialty Products Holding Corp.; Starry Group Holdings, Inc.; Stearns Holdings; Sungard Availability Systems; and United Road Services.

8. In September 2023, the Debtors retained PJT to advise on strategic and business alternatives and commence contingency preparations in the event that a chapter 11 filing became necessary. Since being retained, PJT has worked closely with the Debtors' management and external advisors to evaluate the Debtors' liquidity and cash needs in the event of a chapter 11 filing.

**The Debtors' Prepetition Indebtedness and Cash on Hand**

9. As discussed in the Cash Collateral Motion and the First Day Declaration, as of the Petition Date, the Debtors had nearly $4.2 billion in total outstanding funded debt obligations, and approximately $173 million of cash on hand. My understanding is that the Debtors use cash on hand and cash flow from operations to fund their working-capital needs, capital expenditures, rent payments, and for other general corporate purposes. During these chapter 11 cases, the Debtors will need liquidity to satisfy payroll, pay landlords and vendors,

4

support member programs, meet overhead obligations, and make payments that are necessary for the continued management, operation, and preservation of the Debtors' businesses and international portfolio obligations. The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their business during the pendency of these chapter 11 cases. In short, without access to the continued use of Cash Collateral, the Debtors are not anticipated to have the liquidity necessary to operate their business in the near term or during these chapter 11 cases.

10. Against that backdrop, the Debtors and the Consenting Stakeholders commenced arm's-length, good faith negotiations and worked around the clock to develop, among other things, the Initial Budget and agree to an adequate protection package to enable the Debtors to use the lenders' Cash Collateral. Over the course of the last several weeks, beginning on October 12, 2023, after hard-fought negotiations and the exchange of numerous drafts, the Debtors reached an agreement with the Consenting Stakeholders regarding the consensual use of Cash Collateral and the adequate protection package on the terms set forth in the proposed Interim Order.

**The Adequate Protection, Taken as a Whole, is Fair and Reasonable**

11. It is my understanding that the Debtors propose to provide the Prepetition Secured Parties with various forms of adequate protection to protect against the postpetition diminution in value of their Prepetition Collateral, including Cash Collateral. It is my understanding that, among other things, the Debtors have agreed to provide, subject to this Court's approval, certain adequate protection liens, superpriority claims, payment of certain fees and expenses, and reporting, all in accordance with the Initial Budget (together, the "Adequate Protection"). The proposed Adequate Protection, taken as a whole, is fair and reasonable under the circumstances

of these chapter 11 cases and ensures the Debtors are able to continue using the Cash Collateral for the benefit of all parties in interest and the Debtors' estates.

12. Specifically, the Debtors propose to provide the Prepetition Secured Parties, as applicable, with the following Adequate Protection package:

    a. *First*, the Debtors will provide to the Prepetition Secured Parties, subject to the Carve Out and the JPM Intraday Limit Reimbursement Obligations, the Adequate Protection Liens on unencumbered property of the existing guarantors, prepetition property, and Senior Liens, as applicable, as security for their interests in all Prepetition Collateral, including Cash Collateral as outlined in Exhibit 2 of the proposed Interim Order; and

    b. *Second*, as additional adequate protection, among other things, the Debtors will comply with monthly budget reporting and variance testing obligations, pay certain professional fees, and shall continue to provide financial and other reporting substantially in compliance with the Credit Agreement Documents and the First Lien Notes Documents as further described in the proposed Interim Order.

13. I believe that this Adequate Protection package, taken as a whole, is on market terms, appropriate under the circumstances, and consistent with the terms of adequate protection granted in other similar cases. Specifically, I believe the Adequate Protection Liens are appropriate as they preserve the prepetition priority of claims with respect to the Prepetition Collateral. I also believe that the reporting requirements are reasonable under the circumstances as they are, other than with respect to the monthly budget reporting and weekly variance testing, consistent with the Debtors' prepetition practices and not unduly burdensome on the Debtors. Additionally, while the Debtors have agreed to pay such professional fees as part of the Adequate Protection package, the Debtors would likely have to pay such professional fees in connection with any consensual restructuring (and it is my understanding that the Debtors have agreed to do the same in connection with entering into the Restructuring Support Agreement). In other words, the payment of the professional fees in connection with the consensual use of Cash Collateral is not expected to result in any incremental costs to the Debtors' estates.

14. Based on my extensive experience facilitating similar restructuring transactions, the terms on which Adequate Protection is being provided by the Debtors, taken as a whole, are both reasonable and consistent with the terms of adequate protection granted in other similar cases. The Adequate Protection package is therefore appropriate under the circumstances.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 7, 2023                    PJT PARTNERS LP

                                           /s/ *Paul Sheaffer*
                                           Name:  Paul Sheaffer
                                           Title:  Partner