**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Ciara Foster (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:       (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*



**Order Filed on November 8, 2023**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Joint Administration Requested) |

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**ORDER (I) AUTHORIZING THE APPOINTMENT OF EPIQ
CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

**DATED: November 8, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court

(Page | 3)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the appointment of Epiq Corporate Restructuring LLC ("Epiq") as claims and noticing agent ("Claims and Noticing Agent") effective as of the Petition Date, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Tran Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

1.    The Application is **GRANTED** to the extent set forth herein**.**

2.    The Debtors are authorized to retain Epiq as Claims and Noticing Agent, effective as to the Petition Date, pursuant to the terms of the Engagement Agreement, in the form attached hereto as **Exhibit 1**, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

3.    Any services Epiq will provide relating to the Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of their schedules of assets and liabilities and statements of financial affairs.

4.    Epiq shall serve as the custodian of Court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official Claims Registers for each of the Debtors and to provide the Clerk with a certified duplicate of any and all proofs of claim upon the request of the Clerk.

5.    Epiq is authorized and directed to provide public access to every proof of claim unless otherwise ordered by the Court and to obtain a post office box or address for the receipt of proofs of claim.

6.    Epiq is authorized to take such other action to comply with all the duties set forth in the Application.

7.    The Debtors are authorized to compensate Epiq in accordance with the terms of the Engagement Agreement, upon the receipt of reasonably detailed invoices setting forth the services

(Page | 5)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

provided by Epiq and the rates charged thereof and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the payment of compensation for services rendered and reimbursement of expenses incurred.

8.    Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, and counsel for any statutory committee appointed in these chapter 11 cases.

9.    Parties shall have seven (7) days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on Epiq, to the fees and expenses being requested by Epiq.  If an objection is interposed, the parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or Epiq's monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful.  If no objection has been raised, the Debtors are authorized to pay Epiq the full amount of the requested fees and expenses upon expiration of the ten (10)-day review period without further order of the Court.  If an objection has been raised, the Debtors may not pay the objected-to amount pending agreement of the parties entry of an order of this Court authorizing such payment. Notwithstanding anything to the contrary contained in the Engagement Agreement, no late charges shall accrue on any invoices.

(Page | 6)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.  Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and, thereafter, Epiq may hold its retainer during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Epiq under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement thereof are approved by the Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or actual fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity,

(Page | 7)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this Order.

14.     If, before the earlier of the entry of an order (i) confirming a chapter 11 plan in these chapter 11 cases (that determination having become final) or (ii) closing these chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtors shall not pay any such amounts to Epiq before the entry of an order of this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement and is not intended to limit the duration of the Debtors' obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

15.     In the event Epiq is unable to provide the services set out in this Order, Epiq shall immediately notify the Clerk and Debtors' counsel and, upon approval of the Court, shall cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

16.     The limitation of liability section in paragraph 8 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

(Page | 8)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

17.      Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 3.2 thereof, Epiq shall provide at least ten (10) days' notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases.

18.      Notwithstanding anything to the contrary contained in the Engagement Agreement, by this Order the Court is not authorizing Epiq to establish accounts with financial institutions in the name of and as agent for the Debtors.

19.      Notwithstanding anything to the contrary contained in the Engagement Agreement, termination of Epiq's retention shall only commence upon entry of an order by this Court terminating Epiq's retention.

20.      Notwithstanding anything to the contrary in the Engagement Agreement, in the event that any of these chapter 11 cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of Epiq.

21.      The Debtors may submit a separate retention application, pursuant to section 327(a) of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Epiq but that is not specifically authorized by this Order.

22.      Notwithstanding any term in the Engagement Agreement to the contrary (including with regard to paragraph 11.3 of the Engagement Agreement), the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

23.      Epiq shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.

(Page | 9)

| | |
|---|---|
| Debtors: | WeWork Inc., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

24.     In the event of any inconsistency between the Engagement Agreement and this Order, this Order shall govern.

25.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Application or otherwise deemed waived.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

27.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

28.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29.     The requirement set forth in 9013-1(a)(3) of the Local Rules that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

30.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

31.     A true copy of this Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

**Engagement Agreement**

# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly; provided, however, that Epiq will provide an estimated invoice prior to the closing of the transaction which shall be due and payable at closing.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2024.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule; provided, however, that Epiq employees shall not be required to travel in connection with this engagement and shall attend all meetings or hearings telephonically.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $40,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.    <u>Confidentiality.</u>

Client data provided to Epiq during the term of this Agreement in connection with the Services ("<u>Client Data</u>") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

## 5.    <u>Title to Property.</u>

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs,

systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.  Disposition of Data.

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7.  Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting

solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. **Limitation of Liability**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

## 9. **Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. **Confidential On-Line Workspace**



Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11.  <u>General</u>

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

<u>11.7</u>  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.



11.8   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9   All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.   The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>
> > Epiq Corporate Restructuring, LLC
> > 777 Third Avenue, 12th Floor
> > New York, New York 10017
> > Attn:  Brad Tuttle
>
> If to Client:
>
> > WeWork Inc.
> > 75 Rockefeller Plaza
> > New York, NY 10019
> > Attn: Andre Fernandez
>
> With a copy to:
>
> > Kirkland & Ellis LLP
> > 601 Lexington Avenue
> > New York, NY 10022
> > Attn:  Alborz Tolou , Esq.

11.11  Invoices sent to Client should be delivered to the following address:

> > WeWork Inc.
> > 75 Rockefeller Plaza
> > New York, NY 10019
> > Attn: Andre Fernandez
>
> Email:        andre.fernandez@wework.com

11.12   The "Effective Date" of this Agreement is March 9, 2023.

DocuSign Envelope ID: B9307BA4-16DA-4679-AEE4-4AB47F4ABD2A

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:    Senior Managing Director and GM

**CLIENT: WEWORK INC.**

By: _____
Name:  Andre Fernandez
Title:    Chief Financial Officer

*[Signature Page to Epiq Standard Services Agreement]*

# SERVICES SCHEDULE

## Exchange Offer with Rights Offering

➢ Epiq would provide the following exchange agent and subscription agent services in connection with the exchange offer / rights offering event:

- Review the exchange offer / rights offering memorandum for all procedural and timing aspects.

- Confer with DTC about whether the ATOP system can be used or if they have any comments or concerns. (DTC often has constructive feedback after the confidential review of documents relating to an offer that may have special features.)

- Presuming DTC agrees, establish the offer on DTC's ATOP platform, act as ATOP agent for the offer, and coordinate the transaction with DTC on all exchange aspects other than the receipt of funding; or if DTC does not permit the use of their ATOP system for the transaction, facilitate manual processing through Deposit or Withdrawal at Custodian ("DWAC") withdrawals and deposits, although this is not recommended.

- Coordinate the distribution of exchange offer documents to beneficial owners by forwarding the appropriate documents to the reorganization departments of the banks and brokerage firms holding the securities (or their agent), who in turn will contact their beneficial owners.

- Receive a list of backstop parties, generate a unique "backstop party code" for each, and prepare a notice for each backstop party reflecting the relevant backstop party code and related instructions.

- Establish a subscription account to receive rights offering payments from non-backstop parties.

- If needed, establish an escrow account to receive payments from backstop parties.

- Coordinate the DTC eligibility of new first lien notes and new second lien notes with the cooperation of the indenture trustee.

- In connection with the common stock to be distributed, to the extent an Accredited Investor CUSIP can be made DTC eligible, assist with that eligibility process with the cooperation of the transfer agent; or, if not eligible, collect and tabulate registration details from all exchanging holders in the format required by the transfer agent.

- Following any early deadline and expiration, prepare formal reporting of results – and track required funding by exchanging non-backstop holders participating in the rights offering exchange event, and prepare reports for the company's financial advisors regarding (i) tenders by backstop parties; and (ii) overall results, to be used in the preparation of backstop party funding notices.

8

- In the unlikely event DTC does not agree to make the ATOP system available for the offer, arrange for the DWAC withdrawal of any exchanged notes and the corresponding DWAC deposit of the first lien notes and second lien notes via DWAC deposit.

- Receive information from the financial advisors to utilize in the preparation of backstop party funding notices and prepare such notices for distribution to the backstop parties.

- Prepare the exchange entitlement spreadsheet for DTC based upon transaction details and DTC requirements for review and approval by the company's financial advisors and then DTC.

- If applicable, prepare the upload file of registered holders of restricted stock for the transfer agent.

- Undertake such other duties as may be agreed upon between Epiq and Client.

*Additional services, only if applicable*

**Call Center**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):
  - Create frequently asked questions, call scripts, escalation procedures and call log formats.
  - Record automated messaging.
  - Train Call Center staff.
  - Maintain and transmit call log to Client and advisors.

**Schedules/ Statement Preparation**

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):
  - Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
  - Create and maintain databases for maintenance and formatting of Schedules and Statements data.
  - Coordinate collection of data from Client and advisors.
  - Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**Claims Management**

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims

and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

<u>**Noticing**</u>

➢ Prepare and serve required notices in the potential Chapter 11 case, including:

- Notice of the commencement of the potential Chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of the potential Chapter 11 case.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## **Miscellaneous**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

# PRICING SCHEDULE

## SOLICITATION/ EXCHANGE/ SUBSCRIPTION AGENT HOURLY RATES

| Title | Rates |
|---|---|
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $215.00 |

## EXCHANGE/ SUBSCRIPTON AGENT FEE

| | |
|---|---|
| Exchange/ Subscription Agent Fee (Standard Epiq Agent fee for events such as exchange offer, tender offer, consent, election, subscription, mandatory exchange, distribution, or other special event) | $75,000.00 |

## SUBSCRIPTION BANK ACCOUNT

$10,000 to establish account plus hourly charges to administer

## OTHER RATES; ONLY IF APPLICABLE

### *Other Hourly Rates*

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $35.00 – $55.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $165.00 – $195.00 |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

\* Quoted at time of request for high volume blasts to all creditors

| | |
|---|---|
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |