**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER (I) AUTHORIZING THE**
**DEBTORS TO OBTAIN POSTPETITION**
**FINANCING, (II) GRANTING LIENS AND**
**PROVIDING CLAIMS WITH SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING**
**THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

TO:  THE HONORABLE JOHN K. SHERWOOD UNITED STATES BANKRUPTCY

JUDGE FOR THE DISTRICT OF NEW JERSEY

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017, and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion")[2] for the relief set forth herein.  In further support of this Motion, the Debtors respectfully state the following:

## Preliminary Statement

1.     This Motion requests approval of postpetition financing composed of:  (i) a senior secured, first priority cash collateralized debtor-in-possession "first out" letter of credit facility (the "DIP LC Facility"); and (ii) a senior secured, first priority debtor-in-possession "last out" term loan "C" facility (the "DIP Term Facility" together with the DIP LC Facility, the "DIP Facilities") in an amount not to exceed 105 percent of the lesser of (A) $650 million plus the certain Credit Exposure and (B) the USD equivalent of the aggregate face value of the undrawn and unexpired letters of credit issued under the Prepetition Credit Agreement plus certain Credit Exposure, the proceeds of which will fully cash collateralize letters of credit under the DIP LC Facility.

2.     It is critical that the Debtors maintain access to letters of credit ("LCs") during these chapter 11 cases.  A significant portion of the leases in the Debtors' and non-Debtors' real estate portfolio requires that such parties, in their capacities as tenants, provide LCs as security for the lease.  If the Debtors fail to maintain the LCs (including failing to replace the LCs in advance of an expiration date), the Debtors will likely be in default under such leases and a landlord would be able to draw in full under the applicable LCs.

---

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").  Capitalized terms used but not defined herein have the meaning ascribed to them in the Order, DIP Term Sheet, the Cash Collateral Motion, the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay and (V) Granting Related Relief* [Docket No. 103] (the "Cash Collateral Order"), or the First Day Declaration, as applicable.

3.      Prior to the Petition Date, the Debtors and its non-Debtor affiliates regularly renewed and issued LCs in the ordinary course of business.  In order to continue operating in the ordinary course of business and preserve optionality with respect to the Debtors' lease rationalization strategy, the Debtors require access to the DIP Facilities in order to be able to renew and issue LCs in support of the Debtors' lease obligations.  Absent access to the DIP Facilities, among other things, (i) existing undrawn LCs will mature without a replacement, forcing landlords to choose between losing such credit support or drawing on the expiring prepetition LCs (which would increase prepetition secured claims against the Debtors) unnecessarily; and (ii) the Debtors' lease rationalization strategy would be adversely impacted as landlords would likely be unwilling to engage with the Debtors absent some other form of security.

4.      Should this Court authorize the Debtors access to the DIP Facilities, the Debtors will use the proceeds of the DIP Term Loans funded by SVF to fund, in an aggregate amount equal to the amount of the DIP Term Facility, one or more interest-bearing DIP LC Loan Collateral Accounts established with a DIP LC Issuer.  The DIP LC Loan Collateral Accounts shall serve as cash collateral in support of the issuance of cash collateralized LCs under the DIP LC Facility for the sole benefit of the applicable DIP LC Lender, consistent with the structure of the prepetition LC Facility and subject to certain rights of the DIP Term Lender under the DIP Documents.  Once the DIP LC Loan Collateral Accounts are funded, the DIP LC issuers will issue (or be deemed to have issued), as directed, LCs that will support general third-party corporate obligations of the Debtors, and its non-Debtor affiliates, and its restricted subsidiaries in connection with the Debtors' lease portfolio strategy.

5.      Notably, the proposed DIP Facilities do not alter the rights of the prepetition, secured parties in collateral because all amounts owing by the Debtors under the DIP Facilities

will be secured by a perfected lien or as otherwise provided in the Order, on a *pari passu* basis with (i) the current, first-priority liens securing the Prepetition Credit Agreement and Secured Notes; and (ii) any liens securing adequate protection claims granted to the prepetition first lien secured parties under the Cash Collateral Order.

6.      Simply put, to preserve the value of the estates, the Debtors' (and its non-Debtor affiliates) *need timely access to* the LC support to be provided under the DIP Facilities.  There is approximately $52 million of LCs coming due by December 13, 2023, under the prepetition LC Facility and an additional approximately $78.3 million of LCs coming due by December 31, 2023. Failure to obtain access to the DIP Facilities at this critical juncture in these chapter 11 cases would lead to an onslaught of LC draws, among other things, which would be highly disruptive to the Debtors' operations and restructuring efforts.

7.      Recognizing that the Debtors could not continue on a path forward without the relief requested by this Motion, pursuant to the terms of the RSA, certain of the Debtors' secured lenders and Consenting Stakeholders agreed to provide material concessions at the outset of these chapter 11 cases to ensure the Debtors obtain the necessary LC support.

8.      After extensive consideration of various alternatives by the Debtors, in consultation with their advisors, including PJT Partners LP ("PJT"), the Debtors concluded that undertaking a formal DIP marketing process was not in the Debtors' best interest, given there is no viable, alternate provider for the DIP Facilities available in the time needed and the size necessary.  *First*, the DIP Facilities:  (i) leave DIP LC Claims *pari passu* with Prepetition First Lien Claims, with respect to the Debtor Collateral, as opposed to priming those Claims which is more typical in other DIP financings, (ii) provide interest and fees to DIP LC Issuers on reasonable terms, and (iii) interest and fees to SVF on reasonable terms and payable (consistent with terms of the RSA)

in the form of a New 1L Term Loan, as opposed to cash, so long as the RSA continues to remain

in effect. *Second*, because SVF fully cash collateralized the prepetition LC Facility prior to the

commencement of these chapter 11 cases and the DIP LC Issuers would not agree to provide the

Debtors with a DIP LC Facility unless it was fully cash collateralized, SVF remains the only viable

source of such cash collateral. *Finally*, while the Debtors are not seeking court approval for an

Exit LC Facility at this stage, the DIP LC Facility and the Exit LC Facility were negotiated

simultaneously as part of the RSA. Accordingly, entering into the DIP Facilities also ensures that

the Debtors will have a commitment from SVF—as provider of cash collateral and/or other

credit support—for an Exit LC Facility, a critical component of the Debtors' ongoing lease

portfolio optimization efforts.

9.       Overall, the DIP Facilities proposed herein are the product of extensive,

hard-fought pre-and-post petition negotiations between the Debtors, the DIP Secured Parties, and

other RSA parties resulting in a high degree of consensus across the Debtors' capital structure on

how to best preserve the Debtors' ongoing business and, in turn, preserve value for the Debtors'

estates. The terms of the DIP Facilities are reasonable under the circumstances, and access to the

proposed DIP Facilities will:  (i) ensure that the Debtors have sufficient funding to consummate

the restructuring plan contemplated by the RSA, (ii) provide the requisite LC capacity for the

Debtors and non-Debtors to issue and maintain standby LCs to support their third party obligations

during these chapter 11 cases, and (iii) send a clear message to the Debtors' stakeholders that the

Debtors' business is on the path to improved, sustainable results for the benefit of all creditors.

10.      Thus, for the reasons set forth herein, the Debtors believe that approval of the

DIP Facilities will maximize the value of the Debtors' estates for the benefit of all of the Debtors'

stakeholders and is an exercise of the Debtors' sound business judgment. Accordingly, the Debtors

respectfully request that the Court approve the relief requested herein and enter an order substantially in the form attached hereto as **Exhibit A** (the "Order").

## Jurisdiction and Venue

11.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

14.     The Debtors, together with their non-Debtor affiliates (collectively, "WeWork" or the "Company"), are the global leader in flexible workspace, integrating community, member services, and technology.  Founded in 2010 and headquartered in New York City, WeWork's mission is to create a collaborative work environment where people and companies across a variety of industries, from freelancers to Fortune 100 companies, come together to optimize performance. WeWork became a publicly traded company in 2021 and employs over 2,650 full-time and fifty part-time workers in the United States and abroad.  The Company operates over 750 locations in thirty-seven countries and is among the top commercial real estate lessors in business hubs

including New York City, London, Dublin, Boston, and Miami. For the fiscal year 2022, WeWork's revenue was approximately $3.25 billion. The Debtors commenced these chapter 11 cases to rationalize their lease portfolio, right-size their balance sheet, and position WeWork for sustainable, long-term growth.

15.    On November 6, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 8, 2023, the Court entered an order [Docket No. 87] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## **Relief Requested**

16.    The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

> (a)    the authorization for (x) WeWork Companies LLC, in its capacity as borrower (the "Borrower") to obtain postpetition financing as set forth in the DIP Documents (the "DIP Financing"), and (y) the Guarantors to guaranty the obligations of the Borrower in connection with the DIP Financing, including,[3] without limitation, all loans, advances, extensions of credit, letters of credit (including the DIP LCs), financial accommodations, reimbursement obligations, fees (including, without limitation, letters of credits fees, draw fees, fronting fees, unused facility fees, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, backstop fees, and/or professional fees), costs, expenses, other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute, due or payable under the DIP

---

[3]    The use of "include" or "including" herein is without limitation, whether or not stated.

Facilities (collectively, the "DIP Obligations"); the DIP Financing consisting of:

(i).    a senior secured, first priority cash collateralized debtor-in-possession "first out" letter of credit DIP LC Facility pursuant to the terms and conditions of that certain *Senior Secured Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "DIP Credit Agreement"), attached to the Order as Exhibit 1, by and among the Borrower, Goldman Sachs International Bank ("Goldman Sachs") as administrative agent for the DIP LC Facility (in such capacity, the "DIP Administrative Agent"), Goldman Sachs and JPMorgan Chase Bank, N.A. ("JPMorgan") as letter of credit issuers (in such capacities, the "DIP LC Issuers"), SoftBank Vision Fund II-2 L.P. (the "DIP Term Lender"), Goldman Sachs as collateral agent (the "DIP Shared Collateral Agent"), the DIP Term Lender or a financial institution or other person reasonably acceptable to it as the administrative agent in respect of the DIP Term Loan (the "DIP Term Agent," and together with the DIP Term Lender, the "DIP Term Secured Parties") and JPMorgan as additional collateral agent (in such capacity, the "Additional Collateral Agent" and, together with the DIP Shared Collateral Agent, collectively, the "DIP Collateral Agent," and, the DIP Collateral Agent together with the DIP Administrative Agent and the DIP Term Agent, collectively, the "DIP Agent," and the DIP Agent together with the DIP LC Issuers, the "DIP LC Secured Parties" and, the DIP LC Secured Parties together with the DIP Term Secured Parties, the "DIP Secured Parties") consistent with the term sheet attached as Exhibit B to this Motion (the "DIP Term Sheet") for the issuance of the DIP LCs;

(ii).    a senior secured, first priority debtor-in-possession "last out" term loan "C" DIP Term Facility in an aggregate principal amount not to exceed 105 percent of the lesser of (x)(A) $650 million plus (B) the Credit Exposure (as defined in the DIP Term Sheet or, upon entry thereto, the DIP Documents) attributable to $650 million of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement) constituting Continuing Letters of Credit issued under the Prepetition Credit Agreement on the Closing Date pursuant to clauses (ii) and (iii) of the definition thereof and (y)(A) the USD equivalent aggregate face amount of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement) constituting Continuing Letters of Credit issued under the Prepetition Credit Agreement on the Closing Date (this clause (y)(A), the "Prepetition Undrawn Amounts") plus (B) the Credit Exposure attributable to the Prepetition Undrawn Amounts pursuant

to clauses (ii) and (iii) of the definition of Credit Exposure in the DIP Term Sheet (the loans made thereunder, the "<u>DIP Term Loans</u>") to be made by the DIP Term Lender pursuant to the terms and conditions of the DIP Credit Agreement; and

(iii).    the Loan Parties' execution and delivery of the DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, and other Credit Documentation (as defined in the DIP Term Sheet or, upon entry thereto, the DIP Documents) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time and, collectively with the DIP Credit Agreement, the "<u>DIP Documents</u>") and performance of their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(b)    the authorization for the Loan Parties to draw the DIP Term Loan for the sole purpose of funding cash collateral accounts (the "<u>DIP LC Loan Collateral Accounts</u>" and, together with all cash, checks, or other assets deposited or held in or credited to such DIP LC Loan Collateral Accounts, all interest and other property received, receivable, or otherwise distributed or distributable in respect of, or in exchange for any of the foregoing, and all products and proceeds of any of the foregoing, collectively (including the DIP LC Loan Collateral Accounts), the "<u>DIP LC Loan Collateral</u>") at the DIP LC Issuers or affiliates or branches thereof and, upon the effective date of the DIP Credit Agreement, to use up to $1 million of other cash of the Loan Parties to prepay certain fee and expense obligations of the DIP LC Issuers and the DIP Agent (the "<u>Prefunded Amounts</u>").    The Prefunded Amounts shall be held in the name of, constitute property of (and be for the sole benefit of), the applicable DIP LC Issuer (or any of its affiliates or branches) or the DIP Agent for certain fees and expense obligations owed under the DIP LC Facility, and no other party shall have any rights with respect to the Prefunded Amounts, *provided*, that each DIP LC Issuer and the DIP Agent shall agree to refund to the Debtors any amounts remaining after the expiration or termination of the underlying fee and expense obligations covered by the Prefunded Amounts;

(c)    following the funding of the DIP LC Loan Collateral Accounts (and Prefunded Amounts, if necessary), request the issuance of certain DIP LCs and the deeming of certain existing letters of credit to be DIP LCs issued under the DIP LC Facility, in each case so long as the Minimum Cash Collateral Requirement (a as defined in the DIP Term Sheet or, upon entry thereto, the DIP Documents) would be satisfied on a *pro forma* basis after such issuance or deemed issuance and as otherwise set forth more fully herein; *provided*, that the deemed issuances of the DIP LCs shall be deemed

indefeasible and, in the case of the DIP LCs which continued under the DIP LC Facility, automatic upon entry of the Order;

(d)     the authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents and the Order, including, without limitation, the DIP LC Fees and Expenses, as such become earned, due, and payable to the extent provided in, and in accordance with, the DIP Documents and the Order;

(e)     the granting to the DIP LC Secured Parties of perfected first priority liens pursuant to section 364(c)(2) of the Bankruptcy Code and the Order in the DIP LC Loan Collateral; *provided*, *however*, that the liens on the DIP LC Loan Collateral shall be deemed assigned to the DIP Term Lender upon the occurrence of a Deemed Assignment;

(f)     the granting to the DIP Term Lender of a perfected first priority lien pursuant to section 364(c)(2) of the Bankruptcy Code in all of the Debtors' interest in the DIP LC Loan Collateral (including, for the avoidance of doubt, the Debtors' reversionary interest in the DIP LC Loan Collateral Accounts and the DIP LC Loan Collateral) but excluding, until the Deemed Assignment, any interests pledged pursuant to the foregoing clause (e);

(g)     subject and subordinate to the Carve Out and the JPM Carve Out (collectively, the "Carve Outs"), the granting to the DIP Secured Parties of allowed superpriority claims with respect to the DIP Obligations arising under the DIP LC Facility and any other DIP LC Fees and Expenses  only pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the Loan Parties;

(h)     subject to the Debtor Collateral Subordination Provisions (as defined in the DIP Term Sheet or, upon entry thereto, the DIP Documents) and subject and subordinate to the Carve Outs, and subject in all cases to such exclusions as are applicable to the Adequate Protection Liens, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that is *pari passu* with the First Lien Adequate Protection Liens;

(i)     (x) a waiver of the Debtors' right to surcharge the DIP LC Loan Collateral pursuant to section 506(c) of the Bankruptcy Code and (y) a forbearance by the Debtors (or any party acting on behalf of, or asserting the rights of, the Debtors) to exercise any rights related to or arising from any interests the Debtors may have (or purport to have) in the DIP LC Loan Collateral and/or the DIP Term Collateral unless otherwise expressly permitted or directed by the DIP Term Lender; *provided*, that neither the foregoing nor any other

provision hereof shall prohibit, limit, or restrict any rights the DIP Term Lender has with respect to the DIP LC Loan Collateral as set forth herein;

(j)     the vacation and modification of the automatic stay to the extent set forth herein and necessary to permit the Debtors and their affiliates and the DIP Secured Parties to implement and effectuate the terms and provisions of the Order and the DIP Documents, and to deliver any notices of termination described and as further set forth herein;

(k)    a waiver of the requirements of section 345(b) of the Bankruptcy Code any applicable guidelines of the U.S. Trustee with respect to the DIP LC Loan Collateral Accounts;

(l)    the execution and delivery of, and performance under, each of the DIP Documents;

(m)   the execution and delivery of, and performance under, one or more authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties and the applicable DIP Secured Parties under the DIP Credit Agreement may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and payment of amounts owed under the DIP Documents and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, or (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent, or waiver fee);

(n)    the non-refundable payment to the DIP Agent or the DIP Secured Parties, as the case may be, of all reasonable and documented fees payable under the DIP Documents, including, without limitation, letter of credit fees, draw fees, fronting fees, unused facility fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, and/or professional fees (which fees shall be irrevocable once paid in accordance with and subject to the terms of the DIP Documents and the Order, and shall be deemed to have been, approved upon entry of the Order, whether or not such fees arose before or after the Petition Date, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise) and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one

hand, and any of the DIP Agent and/or DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of the professionals retained by: (x) the DIP LC Secured Parties, including Milbank LLP, as counsel, and Gibbons P.C., as local legal counsel and (y) the DIP Term Lender, including Weil, Gotshal & Manges LLP as counsel, Houlihan Lokey, Inc. as financial advisor, and Wollmuth Maher & Deutsch LLP as local legal counsel (collectively, the "DIP LC Fees and Expenses" (which, for the avoidance of doubt, shall include the DIP Term Fees)), without the need to file retention motions or fee applications and consistent with the terms herein; and, so long as the RSA is effective as to the DIP Term Lender, the terms of the RSA;[4]

(o)     the performance of all other acts necessary, appropriate, and/or desirable under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims, and perfection of the DIP Liens as permitted herein and therein, in accordance with the terms of the DIP Documents; and

(p)     granting related relief.

**Concise Statement Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-3**

17.     The table below contains a summary of the material terms of the proposed DIP Facilities, together with references to the applicable sections of the DIP Documents or other relevant source documents, as required by Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-3.[5]

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| **Parties to the DIP Agreements**<br>Bankruptcy Rule 4001(c)(1)(B) | **Borrower**: WeWork Companies U.S. LLC.<br><br>**DIP Guarantors:** The same guarantors under the Prepetition Credit Agreement shall guarantee the obligations of the Borrower under the DIP Credit Agreement (the "WeWork Guarantors").<br><br>**Joint Lead Arrangers:** Goldman Sachs and JPMorgan. |

---

[4]     For the avoidance of doubt, any consent rights under the RSA or agreements or commitments by the DIP Term Lender under the RSA that are referred to in the Order shall cease to be operative if any such rights, agreements, or commitments cease to be binding under the RSA in accordance with the terms thereof.

[5]     The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced.  To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control.  Capitalized terms used in the following summary chart but not otherwise defined have the meanings ascribed to them in the DIP Documents or the Order, as applicable.

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | **DIP Administrative Agent:** Goldman Sachs. |
| | **DIP LC Issuers**: Goldman Sachs (or acting through an affiliate or branch thereof) and JPMorgan (or acting through an affiliate or branch thereof). |
| | **DIP Term Lender**: SVF, a limited partnership established in Jersey. |
| | **DIP Term Agent:**    SVF or another person reasonably acceptable to it as the administrative agent in respect of the DIP Term Facility (the "DIP Term Agent"). |
| | *See* Order ¶ (a)(i). |
| **Term**<br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B) | "Maturity Date" shall mean the earliest of: |
| | (a) the date that is 210 days after the Petition Date (the "Scheduled Maturity Date"); with such date subject to no more than a one (1)-month extension to the extent these chapter 11 cases are still proceeding on the final day of such 210-day period and subject to (a) either (i) the Court shall have confirmed the Plan or (ii) the Court shall have approved a disclosure statement and a confirmation hearing for the Plan shall be scheduled for a date that is before the end of the contemplated one month extension, (b) receipt of a request for an extension at least five (5) business days (or such shorter period as the DIP LC Issuers may agree) prior to the extension describing the circumstances for the extension, (c) the accuracy in all material respects (and in all respects if qualified by materiality) of all representations and warranties in the Operative Documents, (d) there being no default or event of default in existence at the time of, or immediately after giving effect to, such extension and (e) the Minimum Cash Collateral Requirement shall be satisfied after giving effect to such extension; |
| | (b) the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases (the "Plan"); |
| | (c) the consummation of a sale of all or substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code or otherwise; |
| | (d) the date of termination of the DIP LC Issuers' DIP Issuing Commitments and the acceleration of any obligations of the DIP Secured Parties under the Operative Documents (as defined below), in each case, under the DIP TLC Facility in accordance with the terms of the DIP TLC Facility credit agreement (the "DIP Facilities Agreement") and the other definitive documentation with respect to the DIP TLC Facility (collectively with the DIP TLC Facility Agreement and the related security documents, the "Operative Documents"); and |
| | (e) dismissal of these chapter 11 cases or conversion of any of these chapter 11 cases into a case under chapter 7 of the Bankruptcy Code. |
| | *See* DIP Term Sheet, "Availability and Maturity." |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| **Commitment**<br>Bankruptcy Rule 4001(c)(1)(B) | (a) **DIP Term Facility**: The DIP Term Facility shall consist of a senior secured, first priority debtor-in-possession "last out" term loan "C" facility in the amount of up to the DIP TLC Facility Amount.<br><br>(b) **DIP LC Facility**: The DIP LC Facility shall consist of a senior secured, first priority cash collateralized debtor-in-possession "first out" (with respect to the Debtor Collateral letter of credit facility. Each DIP LC Issuer shall commit, severally and not jointly, to issue (or roll, replace, reissue, amend, extend, renew or otherwise continue or cause to be rolled, replaced, reissued, amended, extended or continued) letters of credit, severally and not jointly, in an amount not to exceed 50 percent of the lesser of (x) $650 million (the "<u>Maximum DIP Issuing Commitments</u>") and (y) the Prepetition Undrawn Amounts certain terms and conditions, including reductions in the DIP LC Issuing Commitments from time to time and the Minimum Cash Collateral Requirement (such commitment, the "<u>DIP Issuing Commitments</u>") (the standby letters of credit issued under the DIP LC Facility, together with any existing letters of credit under the Prepetition Credit Agreement which are deemed to be issued under the DIP LC Facility, the "<u>DIP LCs</u>").<br><br>*See* Order ¶ (a)(i)-(ii); DIP Term Sheet, 'Type and Amount of Facility.' |
| **Conditions of Borrowing**<br>Bankruptcy Rule 4001(c)(1)(B) | The Order and DIP Documents include standard and customary conditions for extensions of credit, the satisfaction of which is a condition precedent to the obligations of the DIP Term Lender to provide the DIP Term Facility and availability under the DIP LC Facility.<br><br>*See* Order ¶ 2(b); DIP Term Sheet, Exhibit C. |
| **Interest Rates**<br>Bankruptcy Rule 4001(c)(1)(B) | The DIP Facilities shall bear interest as follows:<br><br>(a) Interest shall not be payable on any drawing paid under any Letter of Credit that is reimbursed with Cash Collateral. Otherwise, interest shall be payable on such drawing at a rate per annum equal to the ABR (as defined in the Prepetition Credit Agreement) from the date the drawing is paid until 12:00 noon (NY time) on the due date for reimbursement thereof. If payment is not made by the payment date, interest shall be payable at a rate per annum equal to the rate otherwise applicable thereto plus the Default Rate.<br><br>(b) **Default Rate**: 2.00 percent per annum above the rate otherwise applicable (or, in the event there is no applicable rate, 2.00 percent per annum in excess of the rate otherwise applicable to Letter of Credit drawings from time to time).<br><br>*See* DIP Term Sheet |
| **Use of DIP Facilities and Cash Collateral**<br>Bankruptcy Rule 4001(b)(l)(B)(ii) | The proceeds of DIP Term Loans will used by the Debtors to cash fund, in an aggregate amount equal to the DIP TLC Facility Amount, one or more interest-bearing cash collateral accounts established with a DIP LC Issuer which shall be in the name of the Borrower (each, a "<u>Cash Collateral Account</u>"); provided that (i) it is understood and agreed that any interest which accrues in a Cash Collateral Account shall be credited to such account as additional Cash Collateral until the DIP LC Date of Full Satisfaction, with any excess ("<u>Credited Interest</u>") at such time to be maintained in the applicable Cash Collateral Account and constitute Cash Collateral for all purposes under the Operative Documents (it being understood and agreed that the Credited Interest shall automatically upon the DIP LC Date of Full Satisfaction constitute part of the DIP TLC Lender Collateral Interest), (ii) there shall be a separate Cash Collateral Account for each currency in which DIP LCs are denominated for each DIP LC Issuer, (iii) each Cash Collateral Account shall be a blocked account of the Borrower in favor of one DIP LC |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | Issuer, for the sole benefit of such DIP LC Issuer, as to which none of the Borrower, the DIP Term Lender or any other person (other than the DIP Agent or the relevant DIP LC Issuer) shall have any right to withdraw amounts, draw checks or give other instructions or orders prior to the DIP LC Date of Full Satisfaction and (iv) on the Closing Date, the Minimum Cash Collateral Requirement shall be satisfied.<br><br>*See* DIP Term Sheet, Use of Proceeds. |
| **Liens on Avoidance Actions**<br>Local Rule 4001-3 | Proceeds from Avoidance Actions shall be subject to liens upon entry of the Order.<br><br>*See* Order ¶ 6. |
| **506(c) Waiver**<br>Bankruptcy Rule 4001(c)(1)(B)(x)<br><br>Local Rule 4001-3 | Subject to entry of the Order, no costs or expenses of administration which have been or may be incurred in these chapter 11 cases at any time shall be charged against or recovered from the DIP LC Loan Collateral or the DIP Term Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the applicable DIP Secured Parties, that holds a lien on the relevant assets, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties and nothing contained in the Order shall be deemed to be a consent by the DIP Secured Parties to any charge, lien, assessment or claim against the DIP LC Loan Collateral, the DIP Term Collateral, the Prepetition Collateral, or the Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or otherwise.<br><br>*See* Order ¶ 10. |
| **LC Conversion**<br>Local Rule 4001-2(a)(i)(E), 4001-3(b)(2)(D) and 4001(3)(c)(2) | Upon entry of the Order, certain of the outstanding LCs issued under the prepetition LC Facility will be deemed to be outstanding LCs issued under the DIP LC Facility and entitled to the rights and protections set forth in the Order.  Further, and unless otherwise agreed by the DIP Secured Parties, no DIP LC Issuer is permitted to deem, replace, reissue, amend, issue, increase or extend any DIP LC if, immediately after giving effect to such replacement, reissuance, issuance, amendment, increase or extension (i) the outstanding amount of the aggregate undrawn and unexpired DIP LCs issued by such DIP LC Issuer would exceed its DIP Issuing Commitment, (ii) the sum of the outstanding amount of the aggregate undrawn and unexpired amount of all outstanding LCs plus the aggregate amount of all unreimbursed disbursements in respect of DIP LCs would exceed the total DIP Issuing Commitments or (iii) the Minimum Cash Collateral Requirement is not satisfied.<br><br>*See* Order ¶ 8; DIP Term Sheet, Letters of Credit. |
| **Fees**<br>Bankruptcy Rule 4001(c)(1)(B) | **Closing Date and Structuring Fees**: The Borrower shall pay a closing date fee and structuring fee in an amount as set forth in the fee letter on the earlier of the Closing Date and the date of termination of the Commitment Letter by its terms.<br><br>**Letter of Credit Fee**: The Borrower shall pay a fee equal to 1.00 percent per annum on the average daily outstanding amount of DIP LC issued and outstanding under the DIP LC Facility of each DIP LC Issuer, payable quarterly in arrears; provided that if the average daily outstanding amount of DIP LCs issued and outstanding for any DIP LC Issuer is less than 85 percent of the DIP Issuing Commitments of such DIP LC Issuer, then the average daily outstanding amount shall be deemed to be 85 percent for such DIP LC Issuer.<br><br>**Unused Issuing Commitment Fees**: The Borrower shall pay a fee equal to 0.50 percent per annum on the average unused daily amount of the DIP Issuing Commitment of such DIP LC Issuer during the period for which payment is made, payable quarterly in arrears; |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | provided that if the average unused daily outstanding amount of DIP Issuing Commitments for any DIP LC Issuer is greater than 15 percent of the DIP Issuing Commitments of such DIP LC Issuer, then the average unused daily amount shall be deemed to be 15 percent for such DIP LC Issuer. |
| | **Fronting Fees**: The Borrower shall pay a fee equal to 0.125 percent per annum on the undrawn and unexpired amount of each DIP LC or such other fronting fees as otherwise agreed among the Debtor and the applicable DIP LC Issuers, payable quarterly in arrears to the applicable DIP LC Issuer for its own account. |
| | The DIP Term Lender shall be entitled to the payment of the fees contemplated to be paid to the SoftBank Parties (as defined in the RSA), with the priority applicable thereto, and as and when contemplated, by the RSA, which such fees may be further evidenced by a fee letter to be entered into between the DIP Term Lender and the Borrower. |
| | *See* Order ¶ 2(b)(iii). |
| **Reporting Obligations** Bankruptcy Rule 4001 (c)(1)(B) | So long as the DIP Term Loans remain outstanding, the Debtors shall provide copies of any Approved Budget, any Variance Report, and any other material financial reporting described in the Cash Collateral Order or the RSA to counsel to the DIP Secured Parties. *See* Order ¶ 13. |
| **Chapter 11 Milestones** Bankruptcy Rule 4001(c)(1)(B), 4001-3(c)(4) | The Debtors shall comply with the following Chapter 11 milestones which Milestones may be extended in writing by the DIP Agent, the DIP LC issuer and the DIP Term Lender in their sole and absolute discretion (the "Milestone"): (a) no later than 16 days after the Petition Date, the Debtors shall have filed a motion seeking approval of the DIP Facilities; and (b) No later than 35 calendar days after the Petition Date, the Bankruptcy Court shall enter the Order approving the DIP Facilities, in form and substance reasonably satisfactory to the DIP Agent, each DIP LC Issuer and the DIP Term Lender in their discretion as confirmed by the DIP Agent, each DIP LC Issuer and the DIP Term Lender in writing, which, among other things, shall provide for certain Required DIP Order Provisions as provided in the Order. *See* Order, ¶ 14; DIP Term Sheet 'Milestones'. |
| **Liens and Priorities** Bankruptcy Rules 4001(c)(l)(B)(i), 4001-3(c)(1) | *DIP LC Liens.* As security for the DIP LC Obligations, effective and automatically and properly perfected upon the date of the Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by any DIP Secured Party of, or over, any applicable collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and for the benefit of the DIP LC Issuers (collectively, the "DIP LC Liens"): *Liens on the DIP LC Loan Collateral.* Pursuant to section 364(c)(2) of the Bankruptcy Code and the Order, valid, binding, continuing, enforceable, fully-perfected, first priority senior security interests in and liens upon the DIP LC Loan Collateral whether existing on the Petition Date or thereafter acquired (the "DIP LC Cash Liens"). For the avoidance of doubt and subject to paragraph 7(b)(ii) of the Order, (x) no party other than the DIP LC Secured Parties, including, without limitation, any Prepetition Secured Party (in its capacity as such), shall have at any times any security interest or rights in the DIP LC Loan Collateral or the DIP LC Cash Liens and (y) unless otherwise agreed by the DIP LC Secured Parties, until a Deemed Assignment occurs, the DIP Term Collateral and the DIP |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | Term Collateral Lien shall not include any direct rights in the DIP LC Loan Collateral or the DIP LC Cash Liens.

*Liens on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve Outs, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all Unencumbered Property of the Loan Parties, which liens shall be *pari passu* with the First Lien Adequate Protection Liens.

*Liens Pari Passu with Certain Liens.*  Subject to the Carve Outs, the Debtor Collateral Subordination Provisions (as defined in the DIP Term Sheet), and any exclusions applicable to the Adequate Protection Liens, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that is *pari passu* with the First Lien Adequate Protection Liens.

*DIP Term Liens.*  As security for all amounts owing by the Loan Parties under the DIP Term Facility (the "DIP Term Obligations"), effective and automatically and properly perfected upon the date of the Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by the DIP Agent or the DIP Term Lender of, or over, any applicable collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Term Lender (collectively the "DIP Term Liens"):

*Liens on the DIP Term Loan Collateral.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority security interest in and lien (the "DIP Term Collateral Lien") upon all of the Debtor's interests in the DIP LC Loan Collateral (including, for the avoidance of doubt, the Debtors' reversionary interest in the DIP LC Loan Collateral and the DIP LC Loan Collateral Accounts) other than, unless and until a Deemed Assignment occurs, interests included in the DIP LC Cash Liens (such collateral, the "DIP Term Collateral").

*Deemed Assignment.*  Upon the date any DIP LC Loan Collateral is released by a DIP Agent pursuant to the terms of the DIP Document, then on such date, the DIP LC Cash Liens on such released DIP LC Loan Collateral shall be and shall be deemed automatically assigned, without further court approval or any consent of, or action by, any entity or person, to the DIP Term Lender, effective retroactively to the date of the Order (the "Cash Deemed Assignment").  Upon the DIP LC Date of Full Satisfaction, all remaining DIP LC Cash Liens on the DIP LC Loan Collateral shall be and shall be deemed automatically assigned, without further court approval or any consent of, or action by, any entity or person, to the DIP Term Lender, effective retroactively to the date of the Order (the "Complete Deemed Assignment" and together with the Cash Deemed Assignment, the "Deemed Assignment").  Upon consummation of a Deemed Assignment, to the extent a DIP LC Issuer is in possession of any DIP LC Loan Collateral, such DIP LC Issuer shall continue to hold such DIP LC Loan Collateral and otherwise be deemed to be holding the applicable DIP LC Loan Collateral for the sole and exclusive benefit of the DIP Term Lender.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit and provide for the consummation of any Deemed Assignment.

*Liens on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve Outs, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all Unencumbered Property of the Loan Parties, which lien shall be *pari passu* with the First Lien Adequate Protection Liens. |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | *Liens Pari Passu with Certain Liens*.  Subject to the Carve Outs and in all cases to certain exclusions to be mutually agreed (including the Debtor Collateral Subordination Provisions) pursuant to sections 364(i) and 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that is *pari passu* with the First Lien Adequate Protection Liens.  <br><br> *DIP Collateral Lien*.  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of the Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by the DIP Agent or any DIP Secured Party of, or over, any applicable collateral, valid, binding, continuing, enforceable, fully-perfected, first priority senior security interests in and liens upon the same assets of the Debtors that constitute the Prepetition Collateral (such collateral, and subject to the Carve Outs, the "<u>Debtor Collateral</u>") are hereby granted to the DIP Agent for the benefit of the DIP Secured Parties (the "<u>DIP Collateral Lien</u>" and, collectively with the DIP LC Liens and the DIP Term Liens, the "<u>DIP Liens</u>") and, subject to the Debtor Collateral Subordination Provisions, shall be *pari passu* with the Prepetition Liens and the First Lien Adequate Protection Liens.  <br><br> *See* Order, ¶ 7. |
| **Events of Default** <br> Bankruptcy Rules 4001(c)(l)(B), 4001-3(c)(3) | The DIP Credit Agreement shall contain events of default consistent with the Prepetition Credit Agreement with customary event of default triggers for similar debtor-in-possession financings limited to the following (subject to mutually agreeable grace periods as applicable): <br><br> (a)  a trustee or responsible officer shall have been appointed in one or more of the Chapter 11 Cases; <br><br> (b)  appointment of a responsible officer or examiner with enlarged powers relating to the operation of the business of any Debtor; <br><br> (c)  granting of relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $15,000,000; <br><br> (d)  entry of an order granting any superpriority claim which is senior to or *pari passu* with the DIP Agent or any DIP Secured Party's claims under the DIP Facilities (other than the Carve Out and/or the JPM Carve Out) without the prior consent of the DIP Agent and the DIP Secured Parties; <br><br> (e)  any Debtor shall have filed, proposed, or supported a plan of reorganization, plan of liquidation, or a motion seeking to approve a sale of any material portion of the Collateral, without prior consultation with the DIP Agent and the DIP Secured Parties; <br><br> (f)  (A) entry of an order staying, reversing, vacating or otherwise modifying, the DIP Facilities or the Order without the prior written consent of the DIP Agent, each DIP LC Issuer and the DIP Term Lender or (B) any appeal of the Order is taken or any motion under Bankruptcy Rule 9023 or 9024 is filed with respect to the Order, and such appeal or motion has not been dismissed or withdrawn with 22 days; |

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| | (g)  payment of, prepetition funded debt (other than as contemplated by the Cash Collateral Order or as ordered by the Bankruptcy Court) unless otherwise agreed by the DIP Agent, each DIP LC Issuer and the DIP Term Lender; |
| | (h)  cessation of liens or applicable priority of claims granted with respect to any of the Collateral securing the Debtors' obligations in respect of the DIP Facilities to be valid, perfected and enforceable in all respects with the priority described herein; and |
| | (i)  failure to comply with the Operative Documents, the Minimum Cash Collateral Requirement (subject to the terms hereunder) or any of the DIP Milestones. <br><br> See Order ¶ 17; DIP Term Sheet Events of Default. |
| **Waiver/Modification of the Automatic Stay** <br> Bankruptcy Rule 4001(c)(1)(B)(iv) | Pursuant to the Order, the automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement and effectuate the terms of the Order. <br><br> *See* Order ¶ 16(b). |
| **Indemnification** <br> Bankruptcy Rule 4001(c)(1)(B)(ix) | The Debtors will indemnify each of the DIP Agent and the DIP Secured Parties as provided in the Prepetition Credit Documents and the DIP Documents, as applicable.  The Debtors agree that no exception or defense in contract, law, or equity exists as of the date of the Order to any obligation set forth, in the DIP Documents, or in the Prepetition Credit Documents to indemnify and/or hold harmless the DIP Agent and DIP Secured Parties, as the case may be, and any such defenses are hereby waived, except to the extent it is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from gross negligence, actual fraud, or willful misconduct or breach of their obligations under the DIP Facilities. <br><br> *See* Order ¶ 20; DIP Term Sheet, Expenses and Indemnification. |

## The Debtors' Prepetition Capital Structure.

As of the Petition Date, the Debtors had approximately $4.2 billion in aggregate outstanding principal amount of funded debt obligations.[6]  The table below summarizes the Debtors' prepetition capital structure:

| Funded Debt | Maturity | Approximate Principal | Approximate Accrued and Unpaid Interest, Make-Whole, and Fees | Approximate Outstanding Amount |
|---|---|---|---|---|
| **Senior LC Facility** | March 14, 2025 | $988.3 million[7] | $88.9 million | $1,077.2 million |
| **Junior LC Facility** | Mar. 7, 2025 | $470.0 million | $82.0 million | $552.0 million |
| **1L Notes (Series I)** | Aug. 15, 2027 | $525.0 million | $89.2 million | $614.2 million |
| **1L Notes (Series II)** | Aug. 15, 2027 | $306.3 million | $39.0 million | $345.2 million |
| **1L Notes (Series III)** | Aug. 15, 2027 | $181.3 million | $22.9 million | $204.1 million |
| **2L Notes** | Aug. 15, 2027 | $687.2 million | $45.8 million | $733.0 million |
| **2L Exchangeable Notes** | Aug. 15, 2027 | $187.5 million | $12.5 million | $200.0 million |
| **3L Notes** | Aug. 15, 2027 | $22.7 million | $1.6 million | $24.3 million |
| **3L Exchangeable Notes** | Aug. 15, 2027 | $269.6 million | $19.5 million | $289.1 million |
| *Total Secured Debt* | | *$3,637.8 million* | *$401.5 million* | *$4039.3 million[8]* |
| **7.875% Senior Notes** | May 1, 2025 | $163.5 million | $6.6 million | $170.1 million |
| **5.000% Senior Notes** | Jul. 10, 2025 | $9.3 million | $0.1 million | $9.5 million |
| *Total Funded Debt Obligations:* | | *$3,810.7 million* | *$408.2 million* | *$4,218.9 million* |

---

[6]    A detailed description of the Debtors' prepetition capital structure is set forth in the First Day Declaration and the Cash Collateral Motion, as applicable.

[7]    Amount is based on drawn amount funded by and undrawn amount cash collateralized by SoftBank pursuant to the Satisfaction Letter (as defined in the Cash Collateral Order).

[8]    Includes approximately $31.5 million in fees incurred in connection with certain prepetition transactions with respect to the LC Facility.

## **The DIP Facilities**

**I.    The Debtors' Need for the Postpetition Financing Through the Proposed DIP Facilities.**

18.    The Debtors require immediate access to the DIP Facilities.  As described in the Cash Collateral Order, prior to the commencement of these chapter 11 cases, the SVF Obligor posted approximately $808.8 million of cash (the "Prepetition Cash Collateral") to accounts controlled by Goldman to secure obligations of the Debtors under the prepetition LC Facility.  The parties to the prepetition LC Facility have agreed to release to the SVF Obligor a portion of the Prepetition Cash Collateral to be used by the DIP Term Lender to fund the DIP Term Loans contemplated by the DIP Facilities.  The remainder of the Prepetition Cash Collateral will remain as security for those Letters of Credit that will remain outstanding under the prepetition LC Facility and are otherwise not backstopped by DIP LCs.  Further, nothing in the Order will prejudice any rights or claims of the SVF Obligor under the prepetition LC Facility with respect to the remaining Prepetition Cash Collateral, and such rights and claims will be treated in the same manner and priority as the Prepetition LC Facility Claims and 1L Notes Claims.

19.    The DIP Term Loans are intended to support the Credit Exposure of the DIP LC Issuers during the pendency of these chapter 11 cases.  On the effective date of a plan of reorganization of the Debtors, the claims of the DIP Term Secured Parties with respect to the DIP Term Obligations (the "DIP Term Lender Claims") shall be satisfied as follows:

20.    *First*, if, after the DIP LC Date of Full Satisfaction, any proceeds of the DIP Term Loans remain as DIP LC Loan Collateral in the DIP LC Loan Collateral Accounts, such proceeds shall be paid to the DIP Term Lender on account of the DIP Term Lender Claims.  The DIP Term Lender acknowledges that, so long as the RSA remains in effect, the DIP Term Lender has agreed to use all or a portion of such proceeds on the terms and conditions set forth in the RSA.

21.      *Second*, to the extent any portion of the DIP Term Lender Claims remains unsatisfied after the cash payment pursuant to the Order, any remaining portion of the DIP Term Lender Claims (*i.e.*, "Drawn DIP TLC Claims" as defined in the RSA) shall be satisfied in a manner satisfactory to the DIP Term Lender in its sole discretion or in cash; *provided*, that so long as the RSA remains in effect, the DIP Term Lender agrees the treatment of such Drawn DIP TLC Claims under the RSA shall be satisfactory.

22.      The LC structure under the DIP Facilities affords the Debtors and its non-Debtor affiliates sufficient LC capacity to continue their ordinary course operations and preserve value as they undertake efforts to rationalize their lease portfolio.  Critically, the LC construct under the DIP Facilities does not unfairly prejudice the Debtors' stakeholders and will not affect, restrict, or otherwise terminate any rights of any non-Debtors under any third-party agreements, including, but not limited to, any automatic renewal clauses in such agreements.  As discussed, the Debtors' and non-Debtors' ability to continue extending LCs during these chapter 11 cases is essential to the Debtors' continued operation and the preservation of their assets.  Accordingly, the Debtors' access to the proposed DIP Facilities, which has the support of a majority of the Debtors' key stakeholders, will enable the Debtors to continue operating in the ordinary course, and fulfill their obligations to such stakeholders, including their members and landlord counterparties through these chapter 11 cases.

23.      With a DIP agreement to minimize business disruption related to LC needs, the Debtors can better navigate these chapter 11 cases along a more clearly defined path in order to restore confidence in their business partnerships.  Indeed, obtaining access to the DIP Facilities will allow the Debtors to send a clear message to its members and landlord counterparties that the Debtors restructuring has clarity and a consensual path forward and provide confidence that lease

security can remain in place through and following the chapter 11 proceedings.  Accordingly, the proposed DIP Facilities will provide much needed stabilization to the Debtors' business operations.

      **A.**      <u>**Alternative Sources of Financing Are Not Available on Better Terms.**</u>

24.      Prior to the Petition Date, and as provided in greater detail in the First Day Declaration, PJT assisted the Debtors in its efforts to pursue multiple strategic and financing alternatives to improve the Debtors' financial position.  These alternatives included both in- and out-of-court transaction structures and involved outreach to certain of the Debtors' existing stakeholders and multiple third-party potential lenders and equity investors.  Despite significant efforts by the Debtors, PJT, and the Debtors' other advisors, the Debtors prepetition financing was not able to preserve the Debtors' businesses.

25.      In light of the Debtors' overleveraged capital structure, the Debtors and their advisors commenced discussions with the Debtors' stakeholders regarding the terms of a value-maximizing, comprehensive restructuring.  These discussions ultimately bore fruit, and prior to filing, culminated in a consensual deal memorialized through the RSA.  The RSA contemplates a commitment by certain of the SoftBank Parties to provide ongoing credit support in the form of cash to be used as collateral for a new LC Facility.  Accordingly, shortly after the Petition Date, the parties to the RSA reached consensus on the initial terms of the DIP Term Sheet, which communicated the willingness of the DIP Secured Parties to step in and fund the DIP Facilities.  As early investors from the near inception of the Debtors' business, the DIP Secured Parties have extensive knowledge of the Debtors' business and operations, which meant the Debtors and the

DIP Secured Parties were able to leverage this familiarity into a quick, but hard-fought, negotiation that resulted in the formation of the DIP Facilities.

26.     The terms of the DIP Facilities were subject to extensive negotiations between the Debtors, the DIP Secured Parties, and the parties to the RSA.  The Debtors, in consultation with their advisors, concluded that it was highly unlikely that any other party would be willing to extend DIP financing, let alone on terms more favorable than the DIP Secured Parties, and that conducting a marketing process on an expedited timeline would only waste critical administrative resources. The Debtors reached this conclusion, in part, because:  (i) the proposed DIP Facilities contain reasonable interest and fees to the DIP Secured Parties; (ii) the DIP Term Fees are payable in the form of a New 1L Term Loan instead of typically desired cash; (iii) the proposed DIP Facilities provides for DIP LC Claims that are *pari passu* with Prepetition 1L Claims on the Debtor Collateral that are *not* priming as is typically the case with DIP financings; (iv) the Debtors in consultation with their advisors determined that no other party was likely to provide the Debtors with the same or similar DIP Facilities without cash collateral and that SVF is the only likely source of such cash collateral; (v) the ability to renew LCs during these chapter 11 cases will assist in the Debtors' and non-Debtors' active negotiations with landlords and avoid unnecessary draws on LCs and the resulting creation of additional 1L claims through such draws; and (vi) the DIP Facilities and the Exit LC Facility are a critical dual package deal that allows the Debtors and non-Debtors to maintain control and issue LCs, including after emergence from these chapter 11 cases, for leases it has renegotiated and plans to assume (as well as for leases held by non-Debtors that are being renegotiated).

27.     The DIP Facilities as proposed will provide the Debtors with immediate access to liquidity to optimize their operations and continue to right-size their lease portfolio.  The inability

to access the DIP Facilities would irreparably hinder the Debtors' ability to proceed as a going concern. Accordingly, the DIP Facilities reflects the best, and only, postpetition financing available to the Debtors and is reasonable under the circumstances.

**B.      The DIP Facilities Are Necessary to Preserve the Value of the Debtors' Estates.**

28.      Absent the LC capacity to be provided by the DIP Facilities, the Debtors and its non-Debtor affiliates would be hamstrung from performing under their respective lease obligations, leading to widespread draws on the LCs. As a result, the Debtors would experience significant business disruption, would need to meaningfully curtail their operations, and would face numerous other value-destructive consequences. Without the DIP Facilities that will facilitate performance under the Debtors' and non-Debtors' leases, the Debtors' and non-Debtors' business and longstanding member relationships may be irreparably harmed. Further, allowing access to the DIP Facilities will allow the Debtors and non-Debtors to continue to optimize their operations and pursue a successful lease portfolio rationalization strategy. Consequently, the DIP Facilities are necessary to preserve the value of the Debtors' estates.

**Basis for Relief**

**I.      The Debtors Should Be Authorized to Obtain Postpetition Financing Through the DIP Documents.**

**A.      Entry into the DIP Documents Is an Exercise of the Debtors' Sound Business Judgment.**

29.      The Court should authorize the Debtors, as an exercise of their sound business judgment, to enter into the DIP Documents, and obtain access to the DIP Facilities. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below. Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and

policies underlying, the Bankruptcy Code.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R.

964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because

such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*,

457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business

judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34,

40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under

section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised

so long as the financing agreement does not contain terms that leverage the bankruptcy process

and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.").

30.     Specifically, to determine whether the business judgment standard is met, a court

need only "examine whether a reasonable business person would make a similar decision under

similar circumstances."  *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also*

*In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should

not second guess a debtor's business decision when that decision involves "a business judgment

made in good faith, upon a reasonable basis, and within the scope of the debtor's authority under

the [Bankruptcy] Code").

31.     Furthermore, in considering whether the terms of postpetition financing are fair and

reasonable, courts consider the terms in light of the relative circumstances of both the debtor and

the potential lender.  *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003)

(while many of the terms favored the DIP Lenders, "taken in context, and considering the relative

circumstances of the parties," the court found them to be reasonable); *see also Unsecured*

*Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil*

*Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into

"hard bargains" to acquire funds for its reorganization). The Court may also appropriately take

into consideration non-economic benefits to the Debtors offered by a proposed postpetition

facility. For example, in *In re ION Media Networks, Inc.*, the bankruptcy court for the Southern

District of New York held that:

> Although all parties, including the Debtors and the Committee, are
> naturally motivated to obtain financing on the best possible terms, a
> business decision to obtain credit from a particular lender is almost
> never based purely on economic terms. Relevant features of the
> financing must be evaluated, including non economic elements such
> as the timing and certainty of closing, the impact on creditor
> constituencies and the likelihood of a successful reorganization.
> This is particularly true in a bankruptcy setting where cooperation
> and establishing alliances with creditor groups can be a vital part of
> building support for a restructuring that ultimately may lead to a
> confirmable reorganization plan. That which helps foster consensus
> may be preferable to a notionally better transaction that carries the
> risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009).

32.    The Debtors' determination to move forward with the DIP Facilities is an exercise

of their sound business judgment. The DIP Facilities will allow the Debtors to access liquidity

sufficient for the issuance of standby letters of credit to support third party obligations of the

Debtors and any direct or indirect subsidiary of the Debtors. Further, access to the DIP Facilities

provides the Debtors and non-Debtors with letter of credit capacity that is critical to replace or

continue letters of credit that mature during these chapter 11 cases, and thus avoid unnecessary

draws on the LCs and the creation of additional 1L claims.

33.    The DIP Facilities are tailored to the Debtors' capital structure and unique

go-forward funding needs, and appropriately balance the interests of all stakeholders. The Debtors

negotiated the DIP Facilities and other DIP Documents with the DIP Secured Parties in good faith,

at arm's length, and with the assistance of their respective advisors, and the Debtors believe that

they have obtained the best financing available under the circumstances. Accordingly, entry into

and performance under the DIP Facilities is an exercise of the Debtors' sound business judgement and should be approved.

> **B.      The Debtors Should Be Authorized to Grant Liens and Superpriority Claims.**

34.      The Debtors propose to obtain necessary financing under the DIP Facilities by providing security interests and liens as set forth in the DIP Documents pursuant to section 364(c) of the Bankruptcy Code.  Specifically, the Debtors propose to provide to the DIP Secured Parties a postpetition security interest in and liens on the DIP LC Loan Collateral and the Debtor Collateral that are valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of the Order.

35.      The above-described liens are common features of postpetition financing facilities and were a necessary feature to provide security for the proposed financings.  Indeed, postpetition financing facilities approved in this Circuit and elsewhere routinely are secured by the proceeds of a debtor's unencumbered assets such as leaseholds that are subject to leases that prohibit the impositions of liens thereon.  *See, e.g.*, *In re Cyxtera Techs., Inc.*, No. 23-14854 (JKS) (Bankr. D.N.J. Jun. 7, 2023) (approving DIP liens on collateral including any leasehold interests or the proceeds thereof as permitted by applicable law)*; In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D. N.J. May 24, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13559 (VFP) (Bankr. D. N.J. Apr. 24, 2023) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (same); *In re Am. Apparel, LLC*, No. 16-12551 (Bankr. D. Del. Dec. 12, 2016) (same); *In re Vestis Retail Grp., LLC*, No. 16-10971 (Bankr. D. Del. Jun. 1, 2016) (same); *In re Quicksilver, Inc.*, No. 15-11880 (Bankr. D. Del. Oct. 28, 2015) (same).

36.      The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit

allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re*

*Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c)

of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit

cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is

entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look

to whether:

    a.    the debtor is unable to obtain unsecured credit under section 364(b) of the
            Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim;

    b.    the credit transaction is necessary to preserve the assets of the estate; and

    c.    the terms of the transaction are fair, reasonable, and adequate, given the
            circumstances of the debtor-borrower and proposed lenders.

*See In re Los Angeles Dodgers LLC*, 457 B.R. 308 (Bankr. D. Del. 2011); *See In re Ames Dep't*

*Stores*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393,

401–02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

    37.    As described above, due to the Debtors' existing secured financing arrangements,

it is highly unlikely that a third-party lender would be willing to provide postpetition DIP financing

on an unsecured, junior-lien or *pari passu* basis to the DIP Secured Parties. Therefore, the Debtors,

in consultation with their advisors, concluded that any workable financing would require the

support of, or be provided by, the DIP Secured Parties. Absent approval of the DIP Facilities, the

Debtors will have no clear path to emerge from these chapter 11 cases, and the value of the

Debtors' estates will be significantly impaired to the detriment to all stakeholders. The DIP

Facilities are the product of good-faith, arm's-length negotiations among the Debtors and DIP

Secured Parties. Given these circumstances, the Debtors believe that the terms of the

DIP Facilities, as set forth in the DIP Documents and the Order, are fair, reasonable, and adequate.

For these reasons, the Debtors submit that they have met the standard for obtaining postpetition financing under section 364(c) of the Bankruptcy Code.

38.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) of the Bankruptcy Code provides that a court "may authorize the obtaining of credit or the incurring of debt (i) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code; (ii) secured by a lien on property of the estate that is not otherwise subject to a lien; or (iii) secured by a junior lien on property of the estate that is subject to a lien."  As described above, the Debtors are unable to obtain unsecured credit. Therefore, approving a superpriority claim in favor of the DIP Secured Parties is reasonable and appropriate.

39.     Further, section 364(d) of the Bankruptcy Code provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien, after notice and a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."  11 U.S.C. § 364(d)(1).  The Debtors may incur "priming" liens under the DIP Facilities if either (i) the Prepetition Secured Parties have consented or (ii) Prepetition Secured Parties interest in collateral are adequately protected.  *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected.").

40.     Here, the applicable Prepetition Secured Parties are consenting to the priming DIP liens on the DIP LC Loan Collateral and the DIP Term Collateral, and the Debtors are not seeking

to grant priming DIP liens on a non-consensual basis.  Therefore, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is appropriate.

    **C.**    **No Comparable Alternative to the DIP Facilities Is Reasonably Available on More Favorable Overall Terms.**

    41.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).  Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

    42.    As noted above, the Debtors do not believe that a more favorable alternative DIP financing is reasonably available given the realities imposed by the Debtors' existing capital structure and financial circumstances.  Thus, the Debtors have determined that the DIP Facilities are the only viable postpetition financing option available to the Debtors.  Therefore, the Debtors submit that the requirement of section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtors is satisfied.

**D.      The Repayment Features of the DIP Facilities Are Appropriate.**

43.      Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease property, other than in the ordinary course of business, with court approval.  It is well settled in the Third Circuit that such transactions should be approved when they are supported by a sound business purpose.  *See In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986) (holding that in the Third Circuit, a debtor's use of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code should be approved if the debtor can demonstrate a sound business justification for the proposed transaction).   The business judgment rule shields a debtor's management from judicial second-guessing.  *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

44.      Here, the DIP Facilities contain a critical LC conversion feature.  Upon entry of the Order, certain of the outstanding LCs issued under the prepetition LC Facility will be deemed to be outstanding LCs issued under the DIP LC Facility and entitled to the rights and protections set forth in the Order.  Further, and unless otherwise agreed by the DIP Secured Parties, no DIP LC Issuer is permitted to deem, replace, reissue, amend, issue, increase or extend any DIP LC if, immediately after giving effect to such replacement, reissuance, issuance, amendment, increase or extension (i) the outstanding amount of the aggregate undrawn and unexpired DIP LCs issued by such DIP LC Issuer would exceed its DIP Issuing Commitment, (ii) the sum of the outstanding amount of the aggregate undrawn and unexpired amount of all outstanding LCs plus the aggregate amount of all unreimbursed disbursements in respect of DIP LCs would exceed the total DIP Issuing Commitments or (iii) the Minimum Cash Collateral Requirement is not satisfied.

45.     In the event that this Court considers the LC conversion feature a roll up,[9] the roll

up of funds is nonetheless a sound exercise of the Debtors' business judgment.  The LC conversion

feature of the DIP Facilities was a material component of the DIP Facilities and were required by

the DIP Secured Parties as a condition to their commitments to provide postpetition financing.

The DIP Secured Parties have agreed that the proceeds of the DIP Facilities may be used, in part,

to allow the Debtors to access liquidity to issue standby LCs to support third party obligations of

the Debtors and any direct or indirect subsidiary of the Debtors.  These commitments are critical

to the Debtors' ability to pursue a successful lease portfolio rationalization strategy and preserve

value of their estates for the benefit of all creditors.  This decision merits business judgement

deference.  Accordingly, given these circumstances, the repayment features are a sound exercise

of the Debtors' business judgment and should be approved.

## II.     The Debtors Should Be Authorized to Pay the Fees Required by the DIP Secured Parties Under the DIP Documents.

46.     Under the DIP Documents, the Debtors have agreed, subject to Court approval, to

pay certain fees to the DIP Agent and the DIP Secured Parties.  In particular, as noted above, the

Debtors have agreed to pay an Administration Fee, Closing Date Fee, Structuring Fee, Letter of

---

[9]     Repayment of prepetition debt (often referred to as a "roll up") is a common feature in debtor in possession financing arrangements.  Courts in this Circuit have approved a roll up of prepetition obligations on the first day of the case upon entry of a DIP order.  *See, e.g., See, e.g., In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6, 2023) (authorizing an approximately$200 million DIP financing that included a roll-up of up to $36 million in prepetition first lien term loans debt pursuant to interim order); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D. N.J. Apr. 24, 2023) (authorizing a $240 million DIP Facilities, including a roll up of approximately $200 million of prepetition principal, pursuant to an interim DIP order); *TPC Group Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del June 3, 2022) (authorizing a $323 million DIP Facilities, including a roll up of $59.3 million of prepetition principal, pursuant to an interim DIP order); *In re Bluestem Brands*, Case No. 20-10566 (MFW) (Bankr. D. Del Mar. 10, 2020) (authorizing a $125 million DIP Facilities, including a roll up of $45 million of prepetition principal, pursuant to an interim DIP order); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del March 10, 2020) (authorizing a $350 million DIP Facilities, including a roll up of $75 million of prepetition principal, pursuant to an interim DIP order).  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

Credit Fee, Unused Issuing Commitment Fee, and a Fronting Fee.  The Debtors have also agreed to pay certain fees to the DIP Term Lender pursuant to the terms of the RSA.

47.    Courts in this district and others have approved similar aggregates in fees in large chapter 11 cases.  *See, e.g., In re Rite Aid Corp.,* No. 23-18992 (MBK) (Bankr. D.N.J. Oct. 17, 2023) (approving 3.25 percent Letter of Credit Fees, 4.0 percent Upfront Fee of the DIP Term Loan Facility, 0.85 percent of aggregate amount of DIP Revolving Facility, and 1.00 percent of aggregate amount of the DIP FILO Facility); *In re Cyxtera Techs., Inc.*, No. 23-14854 (JKS) (Bankr. D.N.J. Jun. 7, 2023) (approving a backstop fee of 6 percent and a 3 percent commitment fee on New Money Loans); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. May 22, 2022) (approving a commitment fee of approximately 3.0 percent of the DIP loans, a backstop fee of approximately 2.0 percent of the DIP loans, and a fronting premium of approximately 0.50 percent of the DIP loans); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (approving a cash fee approximately 2.0 percent of the overall DIP Facilities); *In re PES Holdings LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 22, 2018) (same); *In re Toys "R" US, Inc.,* No. 17-34665 (KLP) (Bankr. E.D.Va. Sept. 19, 2017) (approving aggregate fees that were just less than 3.0 percent of the overall DIP Facilities).

48.    It is understood and agreed by all parties, that these fees are an integral component of the overall terms of the DIP Facilities, and were required by the DIP Secured Parties as consideration for the extension of postpetition financing.  Accordingly, the Court should authorize the Debtors to pay the fees provided under the DIP Documents in connection with entering into those agreements.

### III.    The DIP Lenders Should Be Deemed Good-Faith Lenders Under Section 364(e).

49.    Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the

authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

50. As explained herein, in the DIP Documents are the result of: (i) the Debtors' reasonable and informed determination that the DIP Secured Parties provided the best postpetition financing alternative available under the circumstances and (ii) extended arm's length, good-faith negotiations between the Debtors and the DIP Secured Parties. The Debtors submit that the terms and conditions of the DIP Documents are reasonable under the circumstances, and the proceeds of the DIP Facilities and the DIP LCs will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Documents other than as described herein. Accordingly, the Court should find that the DIP Secured Parties are a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

**IV.    The Automatic Stay Should Be Modified on a Limited Basis.**

51. The proposed Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Secured Parties to file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to validate and perfect the liens and security interests granted to them under the Order. The proposed Order further provides that the automatic stay is modified as necessary to (i) permit the Debtors to grant liens to the DIP Secured Parties and to incur all liabilities and obligations set forth

in the Order and (ii) permit and provide for the consummation of any Deemed Assignment. Finally, the proposed Order provides that, following the occurrence of an event of default and an appropriate opportunity for the Debtors to obtain appropriate relief from the Court, the automatic stay shall be vacated and modified to the extent necessary to permit the DIP Agent or other applicable DIP Secured Party to exercise all rights and remedies in accordance with the DIP Documents or applicable law.

52.     Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements and, in the Debtors' business judgment, are reasonable and fair under the circumstances of these chapter 11 cases. *See, e.g.*, *In re Rite Aid Corp.,* No. 23-18992 (MBK) (Bankr. D.N.J. Oct. 17, 2023) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Cyxtera Techs., Inc.*, No. 23-14854 (JKS) (Bankr. D.N.J. Jun. 7, 2023) (same); *In re David's Bridal, LLC* No. 23 – 13131 (CMG) (Bankr. D.N.J May 24, 2023) (same); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 24, 2023) (same); *In re Blackhawk Mining LLC,* No. 19-11595 (LSS) (Bankr. D. Del. July 23, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (modifying automatic stay as necessary to effectuate the terms of the order); *ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (same); *In re Charming Charlie, LLC*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 12, 2017) (same); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Dec. 15, 2015).

## **Request of Waiver of Stay**

53.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested

in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

### Waiver of Memorandum of Law

54.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### No Prior Request

55.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Reservation of Rights

56.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, another priority claim, or of a type otherwise specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption,

adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of

the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law,

statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are

valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity,

or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in

interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of

the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court

grants the relief sought herein, any payment made pursuant to the Court's order is not intended

and should not be construed as an admission as to the validity, priority, or amount of any particular

claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute

such claim.

## **<u>Notice</u>**

57.    The Debtors will provide notice of this Motion to the following parties or their

respective counsel:  (i) the U.S. Trustee for the District of New Jersey; (ii) the holders of the

thirty largest unsecured claims against the Debtors (on a consolidated basis); (iii) Davis Polk &

Wardwell LLP and Greenberg Traurig, LLP, as counsel to the Ad Hoc Group;

(iv) Weil, Gotshal & Manges LLP and Wollmuth Maher & Deutsch LLP, as counsel to SoftBank;

(v) Cooley LLP, as counsel to Cupar Grimmond, LLC; (vi) Milbank LLP, as counsel to the DIP

Agent and DIP LC Issuers; (vii) the agents under each of the Debtors' prepetition secured credit

facilities and counsel thereto; (viii) counsel to any statutory committee appointed in these chapter

11 cases; (ix) the office of the attorney general for each of the states in which the Debtors operate;

(x) the United States Attorney's Office for the District of New Jersey; (xi) the Securities and

Exchange Commission; (xii) the Internal Revenue Service; and (xiii) any party that has requested

notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or

further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 19, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:    (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster  (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## Exhibit A

**Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | |
| | (Jointly Administered) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is:  12 East 49th Street, 3rd Floor, New York, NY 10017, and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION
FINANCING, (II) GRANTING LIENS AND
PROVIDING CLAIMS WITH SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through forty-five (45), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Upon the motion (the "<u>DIP Motion</u>")[2] of WeWork Companies U.S. LLC (the "<u>Borrower</u>"), certain of its affiliated debtor subsidiaries (the "<u>Guarantors</u>" and, together with the Borrower, the "<u>Loan Parties</u>"), and the other above captioned debtors, each as a debtor and debtor-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (collectively, the "<u>Chapter 11 Cases</u>") and pursuant to sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "<u>Local Bankruptcy Rules</u>") promulgated by the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>"), seeking entry of an order (this "<u>DIP Order</u>") providing for, among other things:

(a)     the authorization for (x) the Borrower to obtain postpetition financing as set forth in the DIP Documents (the "<u>DIP Financing</u>"), and (y) the Guarantors to guaranty the obligations of the Borrower in connection with the DIP Financing, including,[3] without limitation, all loans, advances, extensions of credit, letters of credit (including the DIP LCs), financial accommodations, reimbursement obligations, fees (including, without limitation, letters of credits fees, draw fees, fronting fees, unused facility fees, servicing fees, audit fees, liquidator fees,

---

[2]     Capitalized terms used but not immediately defined herein shall have the meanings set forth in the DIP Motion, the Cash Collateral Order, or elsewhere in this DIP Order, as applicable.

[3]     The use of "include" or "including" herein is without limitation, whether or not stated.

| | |
|---|---|
| (Page \| 4) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, backstop fees, and/or professional fees), costs, expenses, other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute), and all other obligations due or payable under the DIP Facilities (collectively, the "DIP Obligations"); the DIP Financing consisting of:

    (i)      a senior secured, first priority cash collateralized debtor-in-possession "first out" letter of credit facility (the "DIP LC Facility") pursuant to the terms and conditions of that certain *Senior Secured Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "DIP Credit Agreement"), a copy of which is attached hereto as **Exhibit 1**, by and among the Borrower, Goldman Sachs International Bank ("Goldman Sachs") as administrative agent for the DIP LC Facility (in such capacity, the "DIP Administrative Agent"), Goldman Sachs and JPMorgan Chase Bank, N.A. ("JPMorgan") as letter of credit issuers (in such capacities, the "DIP LC Issuers"), SoftBank Vision Fund II-2 L.P. (the "DIP Term Lender"), Goldman Sachs as collateral agent (the "DIP Shared Collateral Agent"), the DIP Term Lender or a financial institution or other person reasonably acceptable to it as the administrative agent in respect of the DIP Term Loan (the "DIP Term Agent" and, together with the DIP Term Lender, the "DIP Term Secured Parties") and JPMorgan as additional collateral agent (in such capacity, the "Additional Collateral Agent" and, together with the DIP Shared Collateral Agent, collectively, the "DIP Collateral Agent" and, the DIP Collateral Agent together with the DIP Administrative Agent and the DIP Term Agent, collectively, the "DIP Agent" and, the DIP Agent together with the DIP LC Issuers, the "DIP LC Secured Parties" and, the DIP LC Secured Parties together with the DIP Term Secured Parties, the "DIP Secured Parties") consistent with the term sheet attached as Exhibit B to the DIP Motion (the "DIP Term Sheet") for the issuance of the DIP LCs;

    (ii)     a senior secured, first priority debtor-in-possession "last out" term loan "C" facility (the "DIP Term Facility" and, together with the

(Page | 5)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP LC Facility, the "<u>DIP Facilities</u>") in an aggregate principal amount not to exceed 105% of the lesser of (x)(A) $650 million plus (B) the Credit Exposure (as defined in the DIP Term Sheet, upon entry thereto, the DIP Documents) attributable to $650 million of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement[4]) constituting Continuing Letters of Credit issued under the Prepetition Credit Agreement on the Closing Date pursuant to clauses (ii) and (iii) of the definition thereof and (y)(A) the USD equivalent aggregate face amount of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement) constituting Continuing Letters of Credit issued under the Prepetition Credit Agreement on the Closing Date (this clause (y)(A), the "<u>Prepetition Undrawn Amounts</u>") plus (B) the Credit Exposure attributable to the Prepetition Undrawn Amounts pursuant to clauses (ii) and (iii) of the definition of Credit Exposure in the DIP Term Sheet (the loans made thereunder, the "<u>DIP Term Loans</u>") to be made by the DIP Term Lender pursuant to the terms and conditions of the DIP Credit Agreement; and

(iii)  the Loan Parties' execution and delivery of the DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, and other Credit Documentation (as defined in the DIP Term Sheet or, upon entry thereto, the DIP Documents) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time and, collectively with the DIP Credit Agreement, the "<u>DIP Documents</u>") and performance of their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(b)  the authorization for the Loan Parties to draw the DIP Term Loan for the sole purpose of funding cash collateral accounts (the "<u>DIP LC Loan Collateral Accounts</u>" and,

---

[4]  "<u>Prepetition Credit Agreement</u>" means, as it may be amended, supplemented, or otherwise modified from time to time, that certain Credit Agreement, dated as of December 27, 2019, by and among WeWork Companies U.S. LLC, SVF II, SVF II GP (Jersey Limited), and SB Global Advisors Limited, as obligors, the several issuing creditors and letter of credit participants from time to time party thereto, Goldman Sachs International Bank, as senior tranche administrative agent and shared collateral agent, Kroll Agency Services Limited, as junior tranche administrative agent, and the other parties thereto from time to time.

| | |
|---|---|
| (Page | 6) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

together with all cash, checks, or other assets deposited or held in or credited to such DIP LC Loan

Collateral Accounts, all interest and other property received, receivable, or otherwise distributed

or distributable in respect of, or in exchange for any of the foregoing, and all products and proceeds

of any of the foregoing, collectively (including the DIP LC Loan Collateral Accounts), the "DIP

LC Loan Collateral") at the DIP LC Issuers or affiliates or branches thereof and, upon the effective

date of the DIP Credit Agreement, to use up to $1 million of other cash of the Loan Parties to

prepay certain fee and expense obligations of the DIP LC Issuers and the DIP Agent (the

"Prefunded Amounts").[5]   The Prefunded Amounts shall be held in the name of, constitute property

of (and be for the sole benefit of), the applicable DIP LC Issuer (or any of its affiliates or branches)

or the DIP Agent for certain fees and expense obligations owed under the DIP LC Facility, and no

other party shall have any rights with respect to the Prefunded Amounts, *provided*, that each DIP

LC Issuer and the DIP Agent shall agree to refund to the Debtors any amounts remaining after the

expiration or termination of the underlying fee and expense obligations covered by the Prefunded

Amounts.

(c)    following the funding of the DIP LC Loan Collateral Accounts (and

Prefunded Amounts, if necessary), request the issuance of certain DIP LCs and the deeming of

certain existing letters of credit to be DIP LCs issued under the DIP LC Facility, in each case so

---

[5]    For the avoidance of doubt, (a) to the extent the DIP LC Loan Collateral is drawn by a DIP LC Issuer to reimburse a drawn DIP LC and subsequently returned, in whole or in part, by the applicable beneficiary of such DIP LC to the Debtors, the amount so returned shall be moved into DIP LC Loan Collateral Accounts and constitute DIP LC Loan Collateral, and not, for the avoidance of doubt, Prefunded Amounts and (b) Prefunded Amounts shall not constitute DIP Term Collateral or be subject to the security interest of the DIP Term Lender without the consent of the DIP LC Issuers, the Debtors, and the Required Consenting AHG Noteholders.

| (Page | 7) | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

long as the Minimum Cash Collateral Requirement (as defined in the DIP Term Sheet or, upon

entry thereto, the DIP Documents) would be satisfied on a *pro forma* basis after such issuance or

deemed issuance and as otherwise set forth more fully herein; *provided*, that the deemed issuances

of the DIP LCs shall be deemed indefeasible and, in the case of the DIP LCs which continued

under the DIP LC Facility, automatic upon entry of this DIP Order;

(d)    the authorization for the Debtors to pay the principal, interest, fees,

expenses, and other amounts payable under the DIP Documents and this DIP Order, including,

without limitation, the DIP LC Fees and Expenses (as defined herein), as such become earned,

due, and payable to the extent provided in, and in accordance with, the DIP Documents and this

DIP Order;

(e)    the granting to the DIP LC Secured Parties of perfected first priority liens

pursuant to section 364(c)(2) of the Bankruptcy Code and this DIP Order in the DIP LC Loan

Collateral; *provided*, *however*, that the liens on the DIP LC Loan Collateral shall be deemed

assigned to the DIP Term Lender upon the occurrence of a Deemed Assignment;

(f)    the granting to the DIP Term Lender of a perfected first priority lien

pursuant to section 364(c)(2) of the Bankruptcy Code in all of the Debtors' interest in the DIP LC

Loan Collateral (including, for the avoidance of doubt, the Debtors' reversionary interest in the

DIP LC Loan Collateral) but excluding, until the Deemed Assignment, any interests pledged

pursuant to the foregoing clause (e);

(g)    subject and subordinate to the Carve Out and the JPM Carve Out

(collectively, the "Carve Outs"), the granting to the DIP Secured Parties of allowed superpriority

(Page | 8)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

claims with respect to the DIP Obligations arising under the DIP LC Facility and any other DIP

LC Fees and Expenses only pursuant to section 364(c)(1) of the Bankruptcy Code payable from

and having recourse to all assets of the Loan Parties;

(h)    subject to the Debtor Collateral Subordination Provisions (as defined in the

DIP Term Sheet or, upon entry thereto, the DIP Documents) and subject and subordinate to the

Carve Outs, and subject in all cases to such exclusions as are applicable to the Adequate Protection

Liens, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari*

*passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that

is *pari passu* with the First Lien Adequate Protection Liens;

(i)    (x) a waiver of the Debtors' right to surcharge the DIP LC Loan Collateral

pursuant to section 506(c) of the Bankruptcy Code and (y) a forbearance by the Debtors (or any

party acting on behalf of, or asserting the rights of, the Debtors) to exercise any rights related to

or arising from any interests the Debtors may have (or purport to have) in the DIP LC Loan

Collateral and/or the DIP Term Collateral unless otherwise expressly permitted or directed by the

DIP Term Lender; *provided*, that neither the foregoing nor any other provision hereof shall prohibit,

limit, or restrict any rights the DIP Term Lender has with respect to the DIP LC Loan Collateral

as set forth herein;

(j)    the vacation and modification of the automatic stay to the extent set forth

herein and necessary to permit the Debtors and their affiliates and the DIP Secured Parties to

(Page | 9)

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

implement and effectuate the terms and provisions of this DIP Order and the DIP Documents, and to deliver any notices of termination described and as further set forth herein; and

(k)     a waiver of the requirements of section 345(b) of the Bankruptcy Code and any applicable guidelines of the U.S. Trustee with respect to the DIP LC Loan Collateral Accounts.

The Court having considered the relief requested in the DIP Motion, the exhibits attached thereto, the First Day Declaration, the DIP Documents, and the evidence submitted and arguments made at the Hearing held on December 6, 2023 (the "Hearing"); and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[6]

---

[6]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To

(Page | 10)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

A.      *Petition Date*.  On November 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.  On November 8, 2023, this Court entered an order approving the joint administration of the Chapter 11 Cases [Docket No. 87].

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002,

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(Page | 11)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

4001, 6004 and 9014, and Local Bankruptcy Rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4.

D.      *Committee Formation*.  On November 16, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.      *Notice*.  The Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the DIP Motion or the entry of this DIP Order shall be required.  The relief granted pursuant to this DIP Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.

F.      *Corporate Authority*.  Each Loan Party has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

G.      *Findings Regarding the DIP Financing*.

(a)      Good and sufficient cause has been shown for the entry of this DIP Order and for authorization of the Debtors to obtain financing pursuant to the DIP Credit Agreement.

(b)      The Debtors have a critical need for the DIP Financing in order to continue to, among other things, issue, maintain, roll, replace, reissue, amend, extend, renew, or otherwise continue letters of credit that support their obligations with respect to the Debtors' leases across

(Page | 12)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

the globe.  Access to DIP LCs and other financial accommodations provided herein and under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain unsecured and/or secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Secured Parties, the DIP Liens, the DIP Superpriority Claims, and the other protections under the terms and conditions set forth in this DIP Order and the DIP Documents, subject to the Carve Outs to the extent set forth herein.

(d)    Based on the DIP Motion and the record presented to the Court at the Hearing, the terms of the DIP Financing pursuant to this DIP Order and the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)    To the extent such consent is required, the Required Noteholder Secured Parties have consented to the Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this DIP Order and the DIP Documents.

(f)    The DIP Financing has been negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured Parties, with the assistance of their respective advisors, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or

(Page | 13)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

in connection with, the DIP Financing, the DIP LC Loan Collateral Accounts, and the DIP

Documents, including, without limitation, all DIP Term Loans made to the Loan Parties pursuant

to the DIP Documents, all DIP LCs issued or deemed issued pursuant to the DIP Documents, and

any other DIP Obligations, shall be deemed to have been extended by the DIP Secured Parties and

their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy

Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the

full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any

provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.  To the fullest

extent permitted by applicable law, the DIP Secured Parties and their counsel shall be exculpated

from any claim or cause of action in connection with any opinions provided, if any, in connection

with the DIP Documents.

(g)    The deemed issuance of certain DIP LCs under the DIP LC Facility, which

shall be automatic and take effect upon entry of this DIP Order, reflects the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties.  The DIP LC Facility (i) will

benefit the Debtors and their estates by enabling the Debtors to obtain urgently needed financing

critical to administering these Chapter 11 Cases and funding their operations and (ii) will enable

the Debtors to maintain outstanding letters of credit without interruption, which will provide

critical reassurance to the Debtors' commercial counterparties, thereby protecting the value of the

Debtors' estates.

(Page | 14)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(h)     Consummation of the DIP Financing, in accordance with this DIP Order and the DIP Documents, are in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

H.     *Relief Essential; Best Interest*.    The Hearing was held in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2).  Consummation of the DIP Financing in accordance with this DIP Order and the DIP Documents is in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

I.     *Immediate Entry*.    Sufficient cause exists for immediate entry of this DIP Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     *Financing Approved*.  The relief sought in the DIP Motion is granted, on a final basis, subject to the terms and conditions set forth in the DIP Documents and this DIP Order.  All objections to the DIP Motion or this DIP Order, to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.  This DIP Order shall become effective immediately upon its entry.

2.     *Authorization of the DIP Financing and the DIP Documents*.

(a)     The Loan Parties are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations in accordance with, and subject to the terms of this

(Page | 15)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP Order, the DIP Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith.  The Borrower is hereby authorized to borrow money, cause letters of credit (the "DIP LCs") to be issued, rolled, replaced, reissued, amended, extended, renewed, or otherwise continued by the DIP LC Issuers, and incur other financial accommodations pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guarantee the DIP Obligations, subject in each case to any limitations on borrowing under the DIP Documents.

(b)     In accordance with this DIP Order and without the need for further approval of this Court, each Debtor is authorized to perform all acts, to make, execute, and deliver all instruments, certificates, and agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees and expenses in connection with or that may be reasonably required, necessary, or desirable for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more authorizations, amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties and the applicable DIP Secured Parties under the DIP Credit Agreement may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and payment of amounts owed under the DIP Documents and any fees and other expenses (including attorneys', accountants', appraisers', and financial advisors' fees),

(Page | 16)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

that do not (x) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder or (y) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent, or waiver fee);

(iii)    the non-refundable payment to the DIP Agent or the DIP Secured Parties, as the case may be, of all reasonable and documented fees payable under the DIP Documents, including, without limitation, letter of credit fees, draw fees, fronting fees, unused facility fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, and/or professional fees (which fees shall be irrevocable once paid in accordance with and subject to the terms of the DIP Documents and this DIP Order, and shall be deemed to have been approved upon entry of this DIP Order, whether or not such fees arose before or after the Petition Date, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise) and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and any of the DIP Agent and/or DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of the professionals retained by: (x) the DIP LC Secured Parties, including Milbank LLP, as counsel, and Gibbons P.C., as local legal counsel and (y) the DIP Term Lender, including Weil, Gotshal & Manges LLP as counsel, Houlihan Lokey, Inc. as financial advisor, and Wollmuth Maher & Deutsch LLP as local legal counsel (collectively, the "DIP LC Fees and Expenses" (which, for the avoidance of doubt, shall include the DIP Term Fees)), without the need to file retention motions or fee applications and consistent with the terms herein; and, so long as the

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

RSA is effective as to the DIP Term Lender, the terms of the RSA;[7] and

    (iv)    the performance of all other acts necessary, appropriate, and/or desirable under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims, and perfection of the DIP Liens as permitted herein and therein, in accordance with the terms of the DIP Documents.

3.    *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding, and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party and its estate in accordance with the terms of the DIP Documents and this DIP Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other case or proceeding superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Secured Parties, in each case, under, or secured by, the DIP Documents or this DIP Order, including, without limitation, all principal, letter of credit reimbursement obligations, accrued interest, costs, fees, expenses and other amounts under the DIP Documents or this DIP Order.  The Loan Parties shall be jointly and severally liable for the DIP Obligations.  The ability to request the issuance of DIP LCs shall automatically cease

---

[7]    For the avoidance of doubt, any consent rights under the RSA or agreements or commitments by the DIP Term Lender under the RSA that are referred to in this DIP Order shall cease to be operative if any such rights, agreements, or commitments cease to be binding under the RSA in accordance with the terms thereof.

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

on the DIP Termination Date (as defined in the DIP Term Sheet or, upon entry thereto, the DIP

Documents). No claim, obligation, payment, transfer, or grant of collateral security hereunder or

under the DIP Documents (including any DIP Obligation, DIP Liens (as defined herein) or

Prefunded Amounts) shall be stayed, restrained, voidable, avoidable, or recoverable, under the

Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to

550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act,

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or

common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense,

or any other challenge under the Bankruptcy Code or any applicable law or regulation by any

person or entity.

4. *DIP LC Facility*. Pursuant to this DIP Order, certain existing letters of credit, as

agreed to among the Debtors, the DIP LC Issuers, the SoftBank Parties, the Consenting AHG

Noteholders, and Cupar, with an aggregate undrawn face amount of up to $650 million, are deemed

to have been issued under the DIP LC Facility as DIP LCs or backstopped with DIP LCs issued

under the DIP LC Facility (such existing letters of credit, either deemed to have been issued under

the DIP LC Facility or backstopped with DIP LCs, collectively, "**Continuing Letters of Credit**")

and deemed to constitute obligations of the Debtors under the DIP LC Facility (the "**DIP LC**

**Obligations**"), which, for the avoidance of doubt, include all fees, expenses, and other amounts

payable in respect of such existing letters of credit (including, without limitation, any accrued and

unpaid letter of credit fees, commitment fees, and/or fronting fees). The deemed issuance of such

(Page | 19)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP LCs under the DIP LC Facility as DIP LC Obligations as described in this paragraph 4 is indefeasible and is authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP LC Issuers to roll, replace, reissue, amend, extend, renew, or otherwise continue the existing letters of credit, in accordance with the DIP Documents and this DIP Order, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Secured Debt.

5.      *DIP LC Loan Collateral Accounts*.  The DIP Term Loan shall be funded directly into the DIP LC Loan Collateral Accounts, and such funding shall be absolute, indefeasible, and irrevocable, and shall not be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.  The DIP LC Loan Collateral is for the sole and exclusive benefit of the DIP LC Secured Parties unless and until a Deemed Assignment, at which time the DIP LC Loan Collateral will be for the sole and exclusive benefit of the DIP Term Lender (other than any interest a DIP LC Issuer or its applicable affiliate retains for the benefit of the DIP Term Lender or solely in its capacity as an account bank in the ordinary course of business).   For the avoidance of doubt, the DIP LC Loan Collateral may be returned to the DIP Term Lender in accordance with the terms of

(Page | 20)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

the DIP Documents, at which time no party will have any interest in such cash collateral other than

the DIP Term Lender.  Other than the DIP LC Secured Parties and, upon the Deemed Assignment ,

the DIP Term Lender, no party shall have any right to the DIP LC Loan Collateral (including, for

the avoidance of doubt, the DIP LC Loan Collateral Accounts).  The DIP LC Loan Collateral and

any Prefunded Amounts may be drawn by the applicable DIP LC Secured Parties or the DIP Agent,

on behalf of the DIP LC Secured Parties, to be applied to reimburse any draws under any DIP LC

or reimburse any other amounts payable to a DIP LC Secured Party under the terms of the DIP

Documents or this DIP Order, and any such draw, reimbursement, or payment shall be absolute,

indefeasible, and irrevocable, and shall not be stayed, restrained, voidable, avoidable, or

recoverable, under the Bankruptcy Code or under any applicable law (including under sections

502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform

Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance

Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment,

offset, recharacterization, subordination (whether equitable, contractual, or otherwise),

counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any

applicable law or regulation by any person or entity.  The stay imposed by section 362 of the

Bankruptcy Code is hereby modified to permit the DIP LC Loan Collateral and any Prefunded

Amounts to be so used and the Deemed Assignment to occur without further order of this Court

or notice to any party.  In no event shall the DIP LC Loan Collateral be subject to, or used as

collateral for, any carve out (including the Carve Outs), surcharge (including pursuant to section

506(c) of the Bankruptcy Code), or any other obligation, rights, or claim against any Debtor.  The

(Page | 21)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

requirements of section 345(b) of the Bankruptcy Code and any applicable guidelines of the U.S.

Trustee are waived with respect to the DIP LC Loan Collateral Accounts.

6.    *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code,

all of the DIP Obligations relating to the DIP LC Facility only and all obligations arising from fees

and expenses owed by the Loan Parties to the DIP Term Lender, including, without limitation, the

reasonable and documented fees and expenses of the professionals retained by the DIP Term

Lender (the "DIP Term Fees") shall constitute allowed superpriority administrative expense

claims against the Loan Parties (without the need to file any proof of claim) with priority over any

and all claims against the Loan Parties (but, for the avoidance of doubt, subject and subordinate to

the Carve Outs), now existing or hereafter arising, of any kind whatsoever, including, without

limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

Bankruptcy Code and any and all administrative expenses or other claims arising under sections

105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the

Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien

or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority

Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered

administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP

Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition

property of the Loan Parties and all proceeds thereof (excluding (x) the Carve Out Reserves and

amounts held therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548

and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

applicable state-law equivalents ("Avoidance Actions") but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise) in accordance with the DIP Credit Agreement and this DIP Order, subject only to the Carve Outs; *provided*, *however*, the DIP LC Loan Collateral and the DIP Term Collateral shall not be subject to the Carve Outs. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order, or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

7. *DIP Liens*.

(a) *DIP LC Liens*. As security for the DIP LC Obligations, effective and automatically and properly perfected upon the date of this DIP Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by any DIP Secured Party of, or over, any applicable collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and for the benefit of the DIP LC Issuers (collectively, the "DIP LC Liens"):

(i) *Liens on the DIP LC Loan Collateral*. Pursuant to section 364(c)(2) of the Bankruptcy Code and this DIP Order, valid, binding, continuing, enforceable, fully-perfected, first priority senior security interests in and liens upon the DIP LC Loan Collateral whether existing on the Petition Date or thereafter acquired (the "DIP LC Cash Liens"). For the avoidance of doubt and subject to paragraph 7(b)(ii) of this DIP Order, (x) no party other than the DIP LC Secured Parties, including, without limitation, any Prepetition Secured Party (in its capacity as such), shall have at any times any

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

security interest or rights in the DIP LC Loan Collateral or the DIP LC Cash Liens and (y) unless otherwise agreed by the DIP LC Secured Parties, until a Deemed Assignment occurs, the DIP Term Collateral and the DIP Term Collateral Lien shall not include any direct rights in the DIP LC Loan Collateral or the DIP LC Cash Liens.

(ii)    *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve Outs, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all Unencumbered Property, which liens shall be *pari passu* with the First Lien Adequate Protection Liens.

(iii)    *Liens Pari Passu with Certain Liens*.  Subject to the Carve Outs, the Debtor Collateral Subordination Provisions, and any exclusions applicable to the Adequate Protection Liens pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that is *pari passu* with the First Lien Adequate Protection Liens.

(b)    *DIP Term Liens*.  As security for all amounts owing by the Loan Parties under the DIP Term Facility (the "<u>DIP Term Obligations</u>"), effective and automatically and properly perfected upon the date of this DIP Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by the DIP Agent or the DIP Term Lender of, or over, any applicable collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Term Lender (collectively the "<u>DIP Term Liens</u>"):

(Page | 24)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(i)     *Liens on the DIP Term Collateral*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority security interest in and lien (the "DIP Term Collateral Lien") upon all of the Debtor's interests in the DIP LC Loan Collateral (including, for the avoidance of doubt, the Debtors' reversionary interest in the DIP LC Loan Collateral) other than, unless and until a Deemed Assignment occurs, interests included in the DIP LC Cash Liens (such collateral, the "DIP Term Collateral").  For the avoidance of doubt, no party other than the DIP Term Lender, including, without limitation, any Prepetition Secured Party (in its capacity as such), shall at any times have any security interest or rights in the DIP Term Collateral or the DIP Term Collateral Liens.

(ii)    *Deemed Assignment*.  Upon the date any DIP LC Loan Collateral is released by a DIP Agent pursuant to the terms of the DIP Document, then on such date, the DIP LC Cash Liens on such released DIP LC Loan Collateral shall be and shall be deemed automatically assigned, without further court approval or any consent of, or action by, any entity or person, to the DIP Term Lender, effective retroactively to the date of this DIP Order (the "Cash Deemed Assignment").  Upon the DIP LC Date of Full Satisfaction, all remaining DIP LC Cash Liens on the DIP LC Loan Collateral shall be and shall be deemed automatically assigned, without further court approval or any consent of, or action by, any entity or person, to the DIP Term Lender, effective retroactively to the date of this DIP Order (the "Complete Deemed Assignment" and, together with the Cash Deemed Assignment, the "Deemed Assignment").  Upon consummation of a Deemed Assignment, to the extent a DIP LC Issuer is in possession of any DIP LC Loan Collateral, such DIP LC Issuer shall continue to hold such DIP LC Loan Collateral and otherwise be deemed to be holding the applicable DIP LC Loan Collateral for the sole and exclusive benefit of the DIP Term Lender. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit and provide for the consummation of any Deemed Assignment.

(iii)   *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve Outs, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security

(Page | 25)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

interest in and lien upon all Unencumbered Property, which lien shall be *pari passu* with the First Lien Adequate Protection Liens.

(iv)     *Liens Pari Passu with Certain Liens.*  Subject to the Carve Outs and in all cases to certain exclusions to be mutually agreed (including the Debtor Collateral Subordination Provisions) pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon (x) all Debtor Collateral on a *pari passu* basis with the Prepetition First Priority Liens and (y) all Adequate Protection Collateral that is *pari passu* with the First Lien Adequate Protection Liens.

(c)     *DIP Collateral Liens.*  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this DIP Order and without the necessity of the execution, recordation, or filing by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods, or other similar documents, or the possession or control by the DIP Agent or any DIP Secured Party of, or over, any applicable collateral, valid, binding, continuing, enforceable, fully-perfected, first priority senior security interests in and liens upon the same assets of the Debtors that constitute the Prepetition Collateral (such collateral, and subject to the Carve Outs, the "Debtor Collateral") are hereby granted to the DIP Agent for the benefit of the DIP Secured Parties (the "DIP Collateral Liens" and, collectively with the DIP LC Liens and the DIP Term Liens, the "DIP Liens") and, subject to the Debtor Collateral Subordination Provisions, shall be *pari passu* with the Prepetition Liens and the First Lien Adequate Protection Liens.

(d)     For the avoidance of doubt, with respect to all Prepetition Collateral and Adequate Protection Collateral, the DIP LC Obligations and the DIP Term Obligations shall share

(Page | 26)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

in the same lien granted to the DIP Agent and, with respect to any proceeds from such Prepetition Collateral or Adequate Protection Collateral, the DIP LC Facility shall be a "first out" tranche and the DIP Term Facility shall be a "last out" tranche.

(e)     The "DIP LC Date of Full Satisfaction" means the date when (i) each DIP LC Issuer has confirmed in writing to the DIP Administrative Agent that all amounts due and payable to the DIP Agent and each DIP LC Issuer have been paid in full in cash, and (ii) unless otherwise agreed by a DIP LC Issuer in its sole discretion, such DIP LC Issuer shall have received, at the option of the Debtors, either (x) backstop letters of credit in form satisfactory to such DIP LC Issuer backstopping all Credit Exposure of such DIP LC Issuer in an amount that would otherwise satisfy the Minimum Cash Collateral Requirement or (y) cash collateral in an amount that would otherwise satisfy the Minimum Cash Collateral Requirement to be held in bank accounts in the name of such DIP LC Issuer (or its affiliates or branches thereof) for the purpose of cash collateralizing the Credit Exposure of such DIP LC Issuer in a manner consistent with the terms of the DIP Documents (which shall include an obligation to return excess cash after the final termination and/or expiration of all outstanding Letters of Credit).

(f)     The DIP Term Loans are intended to support the Credit Exposure of the DIP LC Issuers during the pendency of the Chapter 11 Cases.  On the effective date of a plan of reorganization of the Debtors, the claims of the DIP Term Secured Parties with respect to the DIP Term Obligations (the "DIP Term Lender Claims") shall be satisfied as follows:

(i)     first, if, after the DIP LC Date of Full Satisfaction, any proceeds of the DIP Term Loans remain as DIP LC Loan Collateral in the DIP LC Loan Collateral Accounts, such proceeds shall be paid to the DIP

(Page | 27)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Term Lender on account of the DIP Term Lender Claims. The DIP Term Lender acknowledges that, so long as the RSA remains in effect, the DIP Term Lender has agreed to use all or a portion of such proceeds on the terms and conditions set forth in the RSA.

(ii)   second, to the extent any portion of the DIP Term Lender Claims remains unsatisfied after the cash payment in the foregoing clause (i), any remaining portion of the DIP Term Lender Claims (*i.e.*, "Drawn DIP TLC Claims" as defined in the RSA) shall be satisfied in a manner satisfactory to the DIP Term Lender in its sole discretion or in cash; *provided*, that so long as the RSA remains in effect, the DIP Term Lender agrees the treatment of such Drawn DIP TLC Claims under the RSA shall be satisfactory.

8.      *Maintenance of Letters of Credit*. To the extent permitted by the DIP Documents, the Borrower is authorized to roll, replace, reissue, amend, extend, renew, or otherwise continue letters of credit issued or deemed issued under the DIP Documents, on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto on an uninterrupted basis, subject to any and all consent rights of the DIP Secured Parties set forth in the DIP Documents; *provided*, that with respect to any rolled, replaced, reissued, amended, extended, renewed, or otherwise continued DIP LCs, the face amount shall not be increased and the purpose, primary terms, and respective beneficiary shall not be altered (other than with respect to a name change or a successor legal entity resulting from an acquisition or merger), and no new letters of credit shall be issued under the DIP LC Facility except for "back-to-back" letters of credit or as otherwise may be necessary to facilitate any such rolling, replacement, reissuance, amendment, extension, or otherwise continuance pursuant to the terms thereof.

(Page | 28)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

9.    *Protection of DIP Secured Parties' Rights*.

(a)    Unless otherwise permitted by the DIP Secured Parties in writing (email being sufficient), there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following:

(i)    the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP LC Loan Collateral or DIP Term Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens or the DIP Superpriority Claims, except as expressly set forth in the Cash Collateral Order,[8] this DIP Order, or the DIP Documents;

(ii)    the use of the DIP LC Loan Collateral or DIP Term Collateral for any purpose other than as permitted in this DIP Order or the DIP Documents; or

(iii)    any modification of any of the DIP Agent's or DIP Secured Parties' rights under this DIP Order or the DIP Documents with respect to any DIP Obligations or other obligations or rights set forth thereunder.

(b)    Until the DIP Obligations have been indefeasibly paid in full in cash and the DIP LC Date of Full Satisfaction has occurred, the Debtors (and/or their legal and financial advisors in the case of clauses (ii) and (iii) below) shall:  (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the applicable DIP Secured Parties all such information and documents that any

---

[8]    "Cash Collateral Order" means the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay and (V) Granting Related Relief* [Docket No. 103] and any final order consistent with such interim order or otherwise in form and substance acceptable to the DIP Secured Parties.

| (Page | 29) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

or all of the Debtors are obligated (including upon reasonable request by such parties) to provide under the DIP Documents or the provisions of this DIP Order; and (iii) permit the DIP Secured Parties to consult with one or more of the Debtors' management (to be available at reasonable times and upon reasonable prior notice, which may be by email or telephone).

(c)    In no event shall the DIP Agent or DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP LC Loan Collateral or DIP Term Collateral, absent the express written consent of the DIP Administrative Agent and the DIP Term Lender (as applicable); *provided* that, notwithstanding anything to the contrary herein, it is understood and agreed that the DIP LC Issuers shall first (x) seek reimbursement for amounts drawn with respect to any DIP LC from the DIP LC Loan Collateral and Prefunded Amounts and (y) exercise rights and remedies against the DIP LC Loan Collateral and Prefunded Amounts before exercising rights and remedies against any other Debtor Collateral or otherwise asserting their superpriority administrative expense claim (other than for purposes of voting for or against a plan of reorganization that satisfies the RSA, so long as the RSA is effective as to the DIP Term Lender).

(d)    Unless otherwise directed by the DIP Term Lender, the Debtors (and/or any party acting on behalf of, or asserting the rights of, the Debtors) shall forbear from exercising any rights with respect to or arising from any interests the Debtors may have (or purport to have) in the DIP LC Loan Collateral and/or the DIP Term Collateral; *provided*, that neither the foregoing nor any other provision hereof shall prohibit, limit, or restrict any rights the DIP Term Lender has with respect to the DIP LC Loan Collateral as set forth herein.

(Page | 30)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(e)     No rights, protections or remedies of the DIP Agent or the DIP Secured Parties granted by the provisions of this DIP Order or any DIP Documents shall be limited, modified, or impaired in any way by the terms of any other order or stipulation, including any order related to the Loan Parties' continued use of cash collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral.*  No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP LC Loan Collateral or the DIP Term Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the applicable DIP Secured Parties and the DIP Term Lender, that holds a lien on the relevant asset, and no such consent shall be implied from any action, inaction, or acquiescence by the DIP Secured Parties and nothing contained in this DIP Order shall be deemed to be a consent by the DIP Secured Parties to any charge, lien, assessment or claim against the DIP LC Loan Collateral, the DIP Term Collateral, the Prepetition Collateral, or the Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent or any other DIP Secured Party pursuant to the provisions of this DIP Order (including the Prefunded Amounts) shall be irrevocably received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based

(Page | 31)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through, or on behalf of the Debtors.

12.     *Disposition of DIP LC Loan Collateral and DIP Term Collateral*.  The Debtors shall have no authority to, and shall not, sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP LC Loan Collateral or the DIP Term Collateral, or any interest therein, without the prior written consent (email to suffice) of (x) the DIP Administrative Agent and (y) the DIP Term Lender (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Secured Parties or from any order of this Court), except as otherwise expressly provided for in the DIP Documents.

13.     *Reporting Obligations*.  So long as the DIP Term Loans remain outstanding, the Debtors shall provide copies of any Approved Budget, any Variance Report, and any other material financial reporting described in the Cash Collateral Order or the RSA to counsel to the DIP Secured Parties.  Notwithstanding the foregoing, such reporting obligations shall not extend to any telephone conferences or earnings report calls.

14.     *Milestones*.  As a condition to the DIP Financing, the Debtors shall comply with the required milestones as set forth in the DIP Term Sheet (the "DIP Milestones").  Any DIP Milestone that would otherwise fall on a Saturday, Sunday, or federal holiday will be treated in accordance with Bankruptcy Rule 9006.  For the avoidance of doubt, the failure of the Debtors to comply with any of the DIP Milestones shall (a) constitute an Event of Default under (i) the DIP Credit Agreement (after giving effect to any applicable grace and/or cure periods thereunder) and (ii) this DIP Order (after giving effect to any applicable grace and/or cure periods under the DIP

(Page | 32)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Credit Agreement) and (b) permit the DIP Agent and/or the DIP Term Lender to exercise the rights

and remedies provided for in this DIP Order and the DIP Documents, subject the provisions of this

DIP Order.

15. *Payment of Fees and Expenses*. The Debtors are authorized and directed to pay the

DIP LC Fees and Expenses (including the DIP Term Fees), as provided in the DIP Documents.

All DIP LC Fees and Expenses shall not be subject to allowance or review by the Court.

Professionals for the DIP Secured Parties shall not be required to comply with the U.S. Trustee fee

guidelines, however any time that such professionals seek payment of reasonable and documented

fees and expenses from the Debtors, such payment (other than from the DIP LC Loan Collateral

or Prefunded Amounts) shall be subject to the terms and conditions (including the Review Period)

provided in the Cash Collateral Order. No attorney or advisor to the DIP Secured Parties shall be

required to file an application seeking compensation for services or reimbursement of expenses

with the Court.

16. *Perfection of DIP Liens*.

(a) Without in any way limiting the automatically effective perfection of the

DIP Liens granted pursuant to paragraph 7 hereof the DIP Agent and the DIP Secured Parties are

hereby authorized, but not required, to file or record (and to execute in the name of the Loan

Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent

permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices

of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or

securities, or take any other action in order to validate and perfect the liens and security interests

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

granted to them hereunder. Whether or not the DIP Agent or DIP Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this DIP Order. Upon the reasonable request of the DIP Agent or a DIP Secured Party, each of the Loan Parties, without any further consent of any party, is authorized and directed to take, execute, deliver, and file such instruments (in each case, without representation or warranty of any kind) to enable the applicable DIP Agent or DIP Secured Party to further validate, perfect, preserve, and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the date of this DIP Order.

(b)     Certified copies of this DIP Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this DIP Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent or DIP Secured Parties to take all actions, as applicable, referenced in this paragraph 16.

(Page | 34)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

17.     *Preservation of Rights Granted Under this DIP Order.*

(a)     Other than the Carve Outs and those liens or claims granted by the Cash Collateral Order (in each case, solely with respect to the Prepetition Collateral and Adequate Protection Collateral) and other claims and liens expressly granted by this DIP Order (or permitted under the DIP Credit Agreement), no claim or lien having a priority superior to or *pari passu* with those granted by this DIP Order to the DIP Agent and the DIP Secured Parties shall be granted or allowed while any of the DIP Obligations remain outstanding or the DIP LC Date of Full Satisfaction has not occurred, and the DIP Liens shall not be:

(i)     subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code;

(ii)     subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(iii)     subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties; or

(iv)     subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

The Debtors shall not seek, and it shall constitute an Event of Default under this DIP Order if any of the Loan Parties, without the prior written consent (email to suffice) of (x) the DIP Administrative Agent, at any time prior to the occurrence of the DIP LC Date of Full Satisfaction and (y) the DIP Term Lender, at any time prior to the indefeasible payment in full in cash of all

(Page | 35)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP Obligations, and no such consent shall be implied by any action, inaction, or acquiescence by any party, to seek, propose, support, or consent or if there is entered or confirmed (in each case, as applicable): (1) any modifications, amendments, or extensions of this DIP Order; (2) an order converting or dismissing any of the Chapter 11 Cases; (3) an order appointing a trustee or responsible officer in the Chapter 11 Cases; or (4) an appointment of a responsible officer or examiner with enlarged powers relating to the operation of the business of any Debtor (each, an "Event of Default").  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered: (A) the DIP Superpriority Claims and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this DIP Order until all DIP Obligations shall have been indefeasibly paid in full in cash and the DIP LC Date of Full Satisfaction has occurred, and such DIP Superpriority Claims and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest; (B) the other rights granted by this DIP Order shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this DIP Order.

(b)     Upon the occurrence and during the continuation of an Event of Default herein or under any of the DIP Documents, and following delivery of written notice (a "Termination Notice") (including by email) by the DIP Agent (acting at the direction of the applicable DIP Secured Party) or any DIP LC Issuers on not less than three (3) business days' notice (such three (3) business day period, the "DIP Agent Remedies Notice Period," which

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

period shall run concurrently with any other notice periods under the DIP Documents, so long as

notice has been given in accordance with this paragraph) to lead restructuring counsel to the DIP

Term Lender (Weil, Gotshal & Manges LLP), lead restructuring counsel to the DIP LC Secured

Parties (Milbank LLP), lead restructuring counsel to the Debtors (Kirkland & Ellis LLP), lead

restructuring counsel to the Ad Hoc Group (Davis Polk & Wardwell LLP), lead restructuring

counsel to Cupar Grimmond, LLC (Cooley LLP), counsel to JPM (Freshfields Bruckhaus

Deringer US LLP), the U.S. Trustee, and counsel to the Creditors' Committee (collectively,

the "Termination Notice Parties") the DIP Agent and each DIP LC Issuer may (and any automatic

stay otherwise applicable to the DIP Secured Parties, whether arising under sections 105 or 362

of the Bankruptcy Code or otherwise, but subject to the terms of this DIP Order (including this

paragraph), is hereby modified), without further notice to, hearing of, or order from this Court, to

the extent necessary to permit the applicable DIP Secured Parties to, unless the Court orders

otherwise (*provided*, that during the DIP Agent Remedies Notice Period, the Debtors and/or any

party in interest shall be entitled to seek an emergency hearing (with the DIP Agent and the DIP

Secured Parties consenting to such emergency hearing) with the Court for the purpose of

contesting whether, in fact, an Event of Default under the DIP Documents has occurred and is

continuing: (i)(x) terminate, reduce, or restrict any further DIP Issuing Commitment (as defined

in the DIP Term Sheet or, upon entry thereto, the DIP Documents) to the extent any such

commitment remains, (y) cause all applicable DIP Obligations to be immediately due and payable,

without presentment, demand, protest, or other notice of any kind, all of which are expressly

waived by the Loan Parties, and/or (z) terminate the applicable DIP Documents as to any future

(Page | 37)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

liability or obligation of the applicable DIP Secured Parties (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations); (ii) utilize the DIP LC Loan Collateral or DIP Term Collateral, as applicable, in accordance with the DIP Documents; (iii) exercise all rights and remedies with respect to the DIP LC Loan Collateral or DIP Term Collateral, as applicable, in accordance with the DIP Documents; and (iv) otherwise exercise all rights and remedies with respect to the DIP Term Collateral in accordance with the DIP Documents, as applicable; *provided*, *further* that irrespective of the DIP Agent Remedies Notice Period, nothing shall impair the ability of a DIP LC Secured Party to immediately (1) draw any DIP LC Loan Collateral and apply the same (or any Prefunded Amounts0 with respect to any drawn DIP LCs or DIP LC Fees and Expenses that are then owing or (2) decline to issue, amend, extend, renew, or reissue any DIP LC.

(c)     If any or all of the provisions of this DIP Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect: (i) the validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by each of the DIP Agent and the DIP Term Lender of the effective date of such reversal, modification, vacation, or stay; or (ii) the validity, priority, or enforceability of the DIP Liens.    Notwithstanding any such reversal, modification, vacation, or stay, the DIP Obligations incurred by the Loan Parties to any DIP Secured Parties prior to the actual receipt of written notice by the DIP Agent and the DIP Term Lender of the effective date of such reversal, modification, vacation, or stay shall be governed in all respects by the original provisions of this DIP Order, and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges,

(Page | 38)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

and benefits granted in section 364(e) of the Bankruptcy Code, this DIP Order, and the DIP

Documents.

(d)    The DIP Liens, the DIP Superpriority Claims, and all other rights and

remedies of the DIP Agent and the DIP Secured Parties granted by the provisions of this

DIP Order and the DIP Documents shall survive, and shall not be modified, impaired, or

discharged by the termination of this DIP Order or the DIP Documents or the entry of an order

(i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code,

(ii) dismissing any of the Chapter 11 Cases; or (iii) confirming a chapter 11 plan in any of the

Chapter 11 Cases.  The terms and provisions of this DIP Order and the DIP Documents shall

continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be

jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the

DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Agent and

the DIP Secured Parties granted by the provisions of this DIP Order and the DIP Documents shall

continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash or

the DIP LC Date of Full Satisfaction has occurred.

18.    *Limits to Lender Liability*.  Nothing in this DIP Order, the DIP Documents, or any

other documents related to these transactions shall in any way be construed or interpreted to impose

or allow the imposition upon the DIP Agent or any DIP Secured Party of any liability for any

claims arising from the prepetition or postpetition activities of the Debtors in the operation of their

business, or in connection with their restructuring efforts.  So long as not a result of their gross

negligence, bad faith, or willful misconduct (a) the DIP Agent and the DIP Secured Parties shall

(Page | 39)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP LC Loan

Collateral and DIP Term Collateral, as applicable, (ii) any loss or damage thereto occurring or

arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv)

any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person

and (b) all risk of loss, damage, or destruction of the DIP LC Loan Collateral and DIP Term

Collateral shall be borne by the Loan Parties.

19.     *Limitation of Liability.*  In determining to make any loan or other extension of credit

under the DIP Credit Agreement, issuing any DIP LC, or in exercising any rights or remedies as

and when permitted pursuant to this DIP Order or the DIP Documents, none of the DIP Agent or

the DIP Secured Parties shall: (a) be deemed to be in "control" of the operations or participating

in the management of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective

creditors, shareholders, or estates; and (c) be deemed to be acting as a "Responsible Person,"

"Owner," or "Operator" with respect to the operation or management of the Debtors, or otherwise

cause liability to arise to the federal or state government or the status of "responsible person" or

"managing agent" to exist under applicable law (as such terms or similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 42

U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  Furthermore, nothing

in this DIP Order shall in any way be construed or interpreted to impose or allow the imposition

upon any of the DIP Secured Parties of any liability for any claims arising from the prepetition or

postpetition activities of any of the Loan Parties and their respective affiliates (as defined in section

101(2) of the Bankruptcy Code).

(Page | 40)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

20.    *Indemnification*.  The Debtors will indemnify each of the DIP Agent and the DIP Secured Parties as provided in the Prepetition Credit Documents[9] and the DIP Documents, as applicable.  The Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this DIP Order to any obligation set forth, as the case may be, in this paragraph 20, in the DIP Documents, or in the Prepetition Credit Documents to indemnify and/or hold harmless the DIP Agent and DIP Secured Parties, as the case may be, and any such defenses are hereby waived, except to the extent it is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from gross negligence, actual fraud, or willful misconduct or breach of their obligations under the DIP Facilities.

21.    *Order Governs*.  In the event of any inconsistency, but solely to the extent of such inconsistency, between the provisions of this DIP Order, the DIP Documents, or any other order entered by this Court, the provisions of this DIP Order shall govern.  Except as expressly provided herein with respect to the incurrence of the DIP Facilities and the liens and claims associated therewith (to which the Required Secured Noteholders have consented along with the terms of this DIP Order), this DIP Order shall not abrogate, amend, waive, or otherwise modify the Cash Collateral Order, including any consents, approvals, or other rights set forth therein, and the grant of consent rights over the same matters to different parties in both this DIP Order and the Cash Collateral Order shall not be deemed an inconsistency.    In addition, for so long as the RSA is in

---

[9]    "<u>Prepetition Credit Documents</u>" means, collectively, the Prepetition Credit Agreement, the other Credit Documents (as defined in the Prepetition Credit Agreement), and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date.

(Page | 41)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

effect as to any party, neither the entry of this DIP Order nor the payment of any amounts under this DIP Order shall modify such party's rights or obligations under the RSA.

22. *Binding Effect; Successors and Assigns*. The DIP Documents and the provisions of this DIP Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Secured Parties, the Creditors' Committee, or any non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent and the DIP Secured Parties and the Debtors and their respective successors and assigns; *provided*, that the DIP Agent and the DIP Secured Parties shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

23. *Insurance*. To the extent that a Prepetition Secured Party is listed as loss payee under the Loan Parties' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies.

24. *Effectiveness*. This DIP Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules

| | |
|---|---|
| (Page \| 42) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

of Civil Procedure, this DIP Order shall be immediately effective and enforceable upon its entry

and there shall be no stay of execution or effectiveness of this DIP Order.

25.    *Release.*  Effective as of the date of entry of this DIP Order, each of the Debtors

and their estates, on its own behalf and on behalf of its and their respective past, present and future

predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted

by applicable law, absolutely and unconditionally release and forever discharge and acquit the DIP

Secured Parties and their respective subsidiaries, affiliates, equity interest holders, officers,

directors, managers, principals, employees, agents, financial advisors, attorneys, accountants,

investment bankers, consultants, representatives and other professionals and the respective

successors and assigns thereof, in each case in their respective capacity as such

(each, a "Representative" and, collectively, the "Representatives"), solely in their respective

capacities as such (collectively, the "Released Parties"), from any and all obligations and liabilities

to the Debtors (and their successors and assigns) and from any and all claims, counterclaims,

defenses, offsets, demands, debts, accounts, contracts, liabilities, responsibilities, disputes,

remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies,

proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgments of every type,

and causes of action of any kind, nature or description, whether matured or unmatured, known or

unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or

unsuspected, liquidated or unliquidated, fixed, contingent, pending or threatened, arising in law or

equity, upon contract or tort or under any state or federal or common law or statute or regulation

or otherwise (collectively, the "Released Claims"), *provided*, that the Released Claims are limited

(Page | 43)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

solely to those arising out of or related to (as applicable) the DIP Financing, the DIP Documents, the obligations owing and the financial obligations made or secured thereunder and the negotiation thereof and of the transactions and agreements reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time on or prior to the date of this DIP Order, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the DIP Liens, the DIP Obligations (and all related claims against any Debtors), and DIP Superpriority Claims.  The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective Representatives, successors, and assigns (including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code) and each of the Debtors' estates.

26.     *Modification of DIP Documents*.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Agent and/or the DIP Secured Parties providing for any consensual modifications to the DIP Documents or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this DIP Order, in each case consistent with the amendment provisions of the DIP Documents.

(Page | 44)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

27.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP Order.

28.     *Payments Held in Trust*.  Except as expressly permitted in this DIP Order or the DIP Documents, in the event that any person or entity (other than the DIP Agent or a DIP Secured Party) receives any payment on account of a security interest in DIP Loan LC Collateral or DIP Term Collateral, receives any DIP LC Loan Collateral or DIP Term Collateral or any proceeds of such collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents and the DIP LC Date of Full Satisfaction has occurred, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of collateral in trust for the benefit of the DIP Agent and the DIP Secured Party (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the applicable DIP Agent or DIP Secured Party, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this DIP Order.

29.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

30.     *No Third-Party Rights*.  Except as explicitly provided for herein, this DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

31.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this DIP Order.

(Page | 45)

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

32.    *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret, and enforce the provisions of this DIP Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

## **Exhibit 1**

**DIP Credit Agreement**

[*To Come*]

**<u>Exhibit B</u>**

**DIP Term Sheet**

Annex B

WEWORK COMPANIES U.S. LLC
Cash Collateralized DIP Letter of Credit Facility and Term Loan C Facility
Summary of Terms and Conditions[1]

Set forth below is a summary of the principal terms and conditions (this "DIP Term Sheet") for the DIP Facilities, as defined below.

1. PARTIES AND TRANSACTIONS

DIP TLC Facility:    A first priority debtor-in-possession "last out" term loan "C" facility (the "DIP TLC Facility", the loans thereunder, the "Term C Loans") to be provided by the DIP TLC Lender (as defined below) in an amount not to exceed 105% of the lesser of (x)(i) $650 million plus (ii) the Credit Exposure (as defined below) attributable to $650 million of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement) issued under the Prepetition Credit Agreement on the Closing Date pursuant to clauses (ii) and (iii) of the definition thereof and (y)(i) the USD equivalent aggregate face amount of undrawn and unexpired Letters of Credit (as defined in the Prepetition Credit Agreement) issued under the Prepetition Credit Agreement on the Closing Date (this clause (y)(i), the "Prepetition Undrawn Amounts") plus (ii) the Credit Exposure attributable to the Prepetition Undrawn Amounts pursuant to clauses (ii) and (iii) of the definition thereof (such lesser amount of clauses (x) and (y), the "DIP TLC Facility Amount") for the issuance of cash collateralized letters of credit under the DIP LC Facility (as defined below).

DIP LC Facility:    A first priority cash collateralized debtor-in-possession "first out" letter of credit facility (the "DIP LC Facility", together with the DIP TLC Facility, the "DIP Facilities"), to be provided by the DIP LC Issuers (as defined below) in order to (i) provide access to Letters of Credit for the Debtors (as defined below) and their operations and (ii) ensure that the Debtors have sufficient access to Letters of Credit.

Chapter 11 Cases:    The Chapter 11 cases commenced by WeWork Inc. and its debtor-affiliates in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on November 6, 2023 (the "Petition Date"), Case No. 23-19865 (JKS).

Restructuring Support Agreement:    A restructuring support agreement executed on the Petition Date between the Debtors, the DIP TLC Lender, and certain other prepetition secured parties (the "RSA").

Borrower:    WeWork Companies U.S. LLC (f/k/a WeWork Companies LLC) a Delaware limited liability company (the "WeWork Debtor"; together with the WeWork Guarantors (as defined below), the "Debtors").

---

[1]  *All capitalized terms used but not defined herein have the meanings given to them in the Commitment Letter to which this Exhibit is attached, including the other Exhibits thereto.  In the event any such capitalized term is subject to multiple and differing definitions, the appropriate meaning thereof in this Exhibit shall be determined by reference to the context in which it is used.*

| | |
|---|---|
| Guarantors: | With respect to the WeWork Debtor's subsidiaries, the same guarantors under the Prepetition Credit Agreement (as defined below) shall guarantee the obligations of the WeWork Debtor (the "<u>WeWork Guarantors</u>"); it being understood that in no event will WeWork Companies LLC become a WeWork Guarantor. |
| | If any subsidiaries of the WeWork Debtor are added as guarantors under any other secured debt of the WeWork Debtor or any of its subsidiaries, then such subsidiaries shall promptly become guarantors under the DIP Facilities. |
| Joint Lead Arrangers: | Goldman Sachs International Bank ("<u>Goldman Sachs</u>") and JPMorgan Chase Bank, N.A. ("<u>JPMorgan</u>") (in such capacity, the "<u>Joint Lead Arrangers</u>"). |
| DIP Agent: | Goldman Sachs (in such capacity, the "<u>DIP Agent</u>"). For the benefit of the DIP LC Issuers and DIP TLC Lender, and subject to the First Lien Pari Passu Intercreditor Agreement (as defined in the Cash Collateral Order), pursuant to which the DIP Agent shall be a Non-Controlling Authorized Representative (as defined in the First Lien Pari Passu Intercreditor Agreement), the DIP Agent shall act as the shared collateral agent with respect to the Debtor Collateral. |
| DIP LC Issuers: | Goldman Sachs (or acting through an affiliate or branch thereof) and JPMorgan (or acting through an affiliate or branch thereof) (collectively, the "<u>DIP LC Issuers</u>"); provided that each DIP LC Issuer (or affiliates thereof) shall act directly as its own collateral agent with respect to the portion of the Cash Collateral securing such LC Issuer's Credit Exposure and shall hold at all times all such Cash Collateral at bank accounts at such DIP LC Issuer (or affiliates and branches thereof) in a manner that satisfies the Minimum Cash Collateral Requirement; provided further that the WeWork Debtor, DIP TLC Lender, the DIP Agent and each DIP LC Issuer shall use commercially reasonable efforts to agree on an alternative collateral agency structure under which the DIP Secured Parties instruct the DIP Agent to designate each DIP LC Issuer as a sub-agent to hold Cash Collateral on behalf of the DIP Agent in bank accounts at such DIP LC Issuer and controlled by such DIP LC Issuer for the purposes of disbursements from such accounts pursuant to the terms hereunder. |
| DIP TLC Lender: | SoftBank Vision Fund II-2 L.P., a limited partnership established in Jersey ("<u>SVF</u>" or the "<u>DIP TLC Lender</u>").  The DIP TLC Lender shall appoint a financial institution or other person reasonably acceptable to the DIP TLC Lender to serve as the administrative agent (but not, for the avoidance of doubt, collateral agent) for the DIP TLC Facility and such administrative agent shall serve in an administrative capacity for the DIP TLC Facility in the same manner as the Junior Tranche Administrative Agent (as defined in the Prepetition Credit Agreement) did for the Junior L/C Tranche (as defined in the Prepetition Credit Agreement). |

| Prepetition Credit Agreement: | That certain Credit Agreement dated as of December 27, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement"), among SVF, the WeWork Debtor, the several banks and other financial institutions or entities from time to time parties thereto as letters of credit issuers, the several banks and other financial institutions or entities from time to time parties thereto as participants, Goldman Sachs International Bank, as senior tranche administrative agent (in such capacity, the "Prepetition Agent") and shared collateral agent (in such capacity, the "Prepetition Collateral Agent"), Kroll Agency Services Limited, as the junior tranche administrative agent, and the other parties thereto from time to time. |

## 2. TYPE AND AMOUNT OF FACILITY

DIP Facilities:

| Types and Amounts: | The DIP TLC Facility shall consist of a first priority debtor-in-possession "last out" term loan "C" facility in the amount of up to the DIP TLC Amount. |
| DIP Issuing Commitments: | The DIP LC Facility shall consist of a first priority cash collateralized debtor-in-possession "first out" (with respect to the WeWork Debtor Collateral (as defined below)) letter of credit facility.  Each DIP LC Issuer shall commit, severally and not jointly, to issue (or roll, replace, reissue, amend, extend, renew or otherwise continue or cause to be rolled, replaced, reissued, amended, extended or continued) letters of credit, severally and not jointly, in an amount not to exceed 50% of the lesser of (x) $650 million (the "Maximum DIP Issuing Commitments") and (y) the Prepetition Undrawn Amounts, subject to the terms and conditions hereof, including reductions in the DIP LC Issuing Commitments from time to time and the Minimum Cash Collateral Requirement (such commitment, the "DIP Issuing Commitments") (the standby letters of credit issued under the DIP LC Facility, together with any existing letters of credit under the Prepetition Credit Agreement which are deemed to be issued under the DIP LC Facility, the "Letters of Credit"). |
| Use of Proceeds: | The proceeds of Term C Loans will used by the Debtors to cash fund, in an aggregate amount equal to the DIP TLC Facility Amount, one or more interest-bearing cash collateral accounts established with a DIP LC Issuer which shall be in the name of the WeWork Debtor (each, a "Cash Collateral Account"); provided that (i) it is understood and agreed that any interest which accrues in a Cash Collateral Account shall be credited to such account as additional Cash Collateral until the DIP LC Date of Full Satisfaction (as defined below), with any excess ("Credited Interest") at such time to be maintained in the applicable Cash Collateral Account and constitute Cash Collateral for all purposes under the Operative Documents (it being understood and agreed that the Credited Interest shall automatically upon the DIP LC Date of Full Satisfaction constitute part of the DIP TLC Lender Collateral Interest), (ii) there shall be a separate Cash Collateral Account for each currency in which Letters |

of Credit are denominated for each LC Issuer, (iii) each Cash Collateral Account shall be a blocked account of the WeWork Debtor in favor of one DIP LC Issuer, for the sole benefit of such DIP LC Issuer, as to which none of the WeWork Debtor, the DIP TLC Lender or any other person (other than the DIP Agent or the relevant DIP LC Issuer) shall have any right to withdraw amounts, draw checks or give other instructions or orders prior to the DIP LC Date of Full Satisfaction and (iv) on the Closing Date, the Minimum Cash Collateral Requirement shall be satisfied.

Letters of Credit shall be available in US dollars, euros, pounds sterling, Canadian dollars, Australian dollars, Swedish krona, Singapore dollars and such other freely tradable currencies as the Debtors, the DIP Agent, the DIP TLC Lender and the applicable DIP LC Issuer shall agree (each such currency, an "Approved Currency"); provided that, for the avoidance of doubt, the availability of Letters of Credit under a new Approved Currency shall be subject to the Minimum Cash Collateral Requirement.

Cash Collateral:

As long as any Letter of Credit is outstanding or any DIP LC Issuer has any outstanding Credit Exposure, unless otherwise agreed by the DIP LC Issuers and the DIP TLC Lender, the WeWork Debtor shall cause the aggregate sum in the applicable currency on deposit in the applicable Cash Collateral Account at the applicable LC Issuer for such currency to be at least 105% of the Credit Exposure for Letters of Credit denominated in such currency and issued by such LC Issuer at such time (such sum, the "Minimum Cash Collateral Amount").

As used herein, "Credit Exposure" means, at any time, (i) the aggregate outstanding amounts available to be drawn under all Letters of Credit in each currency, plus (ii) the aggregate unreimbursed amount of all drawings (if any) and unpaid fees and expenses under any Letter of Credit that have not been fully reimbursed to the applicable DIP LC Issuer in each currency, plus (iii) estimated fees and expenses projected to accrue on all outstanding Letters of Credit issued by such DIP LC Issuer in each currency through to the anticipated maturity dates of such Letters of Credit, plus (iv) in the case of the Cash Collateral Accounts denominated in US Dollars for each LC Issuer, the estimated agency fees payable to the DIP Agent (if applicable) and other anticipated and applicable reimbursable, out of pocket expenses and indemnifiable liabilities of the DIP Agent and the applicable DIP LC Issuer, including, for the avoidance of doubt, a reasonable reserve for the reasonable and documented legal fees of outside counsel for the DIP LC Issuers and the DIP Agent, taken as a whole.

As used herein, the "Minimum Cash Collateral Requirement" shall mean at any time (1) the amount of cash deposited in or standing to the credit of each Cash Collateral Account for each Approved Currency shall be equal to or greater than the Minimum Cash Collateral Amount for such Cash Collateral Account for such Approved Currency and (2) each DIP LC Issuer, in its capacity as DIP LC Issuer, holds cash on deposit in or standing to the credit of

4

each Cash Collateral Account of such DIP LC Issuer in an amount sufficient to satisfy the requirement described under clause (1) above with respect to all Credit Exposure of such DIP LC Issuer.  A failure of the WeWork Debtor to maintain the Minimum Cash Collateral Amount in the applicable Cash Collateral Account after written notice (such notice, a "<u>Deficiency Notice</u>") from any DIP LC Issuer of a failure to do so shall, after giving effect to any Collateral Account Reallocation (as defined below) which may result in the Minimum Cash Collateral Requirement being satisfied, trigger an immediate event of default under the DIP LC Facility at the end of the third business day following the date of delivery of such Deficiency Notice.  Notwithstanding the foregoing, the parties hereto agree that the Minimum Cash Collateral Requirement may be satisfied with respect to Cash Collateral required to be posted for the amounts described in clause (iv) of the definition of "Credit Exposure" by way of the WeWork Debtor setting up and funding separate pledged cash collateral accounts with each DIP LC Issuer (such accounts, "<u>Additional Cash Collateral Accounts</u>") in a manner satisfactory to each DIP LC Issuer.  Cash deposited in or standing to the credit of each Additional Cash Collateral Account shall be considered part of the Cash Collateral for the purpose of calculating the Minimum Cash Collateral Requirement but shall not be subject to any liens granted to or priority claims in favor of the DIP TLC Lender (including pursuant to the Deemed Assignment).

Notwithstanding anything to the contrary contained herein, the Operative Documents shall include provisions to be mutually agreed as between the DIP Agent, the DIP TLC Lender, each DIP LC Issuer and the Debtors for reallocating of Cash Collateral as between different Cash Collateral Accounts at the same DIP LC Issuer and as between the two DIP LC Issuers in a manner to facilitate compliance with the Minimum Cash Collateral Requirement in the event the aggregate cash on deposit in or standing to the credit of, all Cash Collateral Accounts is sufficient to meet the Minimum Cash Collateral Requirement on an aggregate basis or at other times as agreed (such reallocation, the "<u>Collateral Account Reallocation</u>"), and if such aggregate amount held by each DIP LC Issuer is sufficient to meet the Minimum Cash Collateral Requirement on an aggregate basis with respect to such DIP LC Issuer, no Deficiency Notice may be given by such DIP LC Issuer and no Event of Default may occur with respect to such DIP LC Issuer as a result of any failure of any individual accounts at such DIP LC Issuer to satisfy the Minimum Cash Collateral Requirement.

From and after the Closing Date, each DIP LC Issuer shall have the right to apply proceeds on deposit in, or standing to the credit of, each Cash Collateral Account held at such DIP LC Issuer to make payments to, or for the account of, the DIP Agent and/or such DIP LC Issuers, as applicable, for the purposes of (i) satisfying any Letter of Credit draw requests and reimbursement obligations, (ii) payment of (x) any fees and reimbursable expenses related to the issuance, reimbursement or maintenance of the Letters of Credit and any additional costs fees and expenses reimbursable under the Operative

Documents, (y) any indemnifiable liabilities under the Operative Documents and (z) the fees payable under the Fee Letters and (iii) the payment of legal fees of Milbank LLP and Gibbons P.C. each as counsel to the DIP Agent and DIP LC Issuers, in each case, without the consent of the WeWork Debtor or any other person; provided that (1) the applicable DIP LC Issuer shall provide notice to the DIP TLC Lender and the WeWork Debtor of any payments made pursuant to the foregoing as soon as reasonably practicable, (2) amounts paid pursuant to clauses (ii) and (iii) shall only be made after invoices with respect thereto are validly issued and delivered to the DIP TLC Lender and WeWork Debtor and (3) any payments made pursuant to clause (i) or clause (ii) to the extent related to a LC disbursement can be made by the applicable DIP LC Issuer substantially concurrently with the funding of a draw to any beneficiary.

Notwithstanding the foregoing and solely with respect to Letters of Credit issued by JPMorgan in non-USD currencies, JPMorgan may elect to disburse cash from each applicable Cash Collateral Account in an amount equal to the Minimum Cash Collateral Amount from a JPMorgan Cash Collateral Account to JPMorgan for JPMorgan to hold in one or more bank accounts in the name of JPMorgan (or an affiliate or branch thereof) until the termination or expiration of all Credit Exposure with respect to such Letters of Credit.  Cash Collateral held in this manner (the "JPM Deemed Cash Collateral"). JPM Deemed Cash Collateral shall be held in JPMorgan's name but be treated for all purposes hereunder as Cash Collateral, including for purposes of disbursements and for Minimum Cash Collateral Requirement.  Upon the expiration or termination of all Letters of Credit backed by such JPM Deemed Cash Collateral in any currency (including upon the occurrence of the DIP LC Date of Full Satisfaction), JPMorgan shall remit any residual JPM Deemed Cash Collateral in such currency to the applicable Cash Collateral Account. For the avoidance of doubt, JPMorgan, the DIP Agent and the WeWork Debtor agree to use commercially reasonable efforts to find an alternative to JPM Deemed Cash Collateral that is satisfactory to JPMorgan and does not require JPMorgan to hold any Cash Collateral in the form of JPM Deemed Cash Collateral on or after the Closing Date.

| | |
|---|---|
| Letters of Credit: | The proceeds of the Term C Loans shall be available to support the issuance, via cash collateralization at the Minimum Cash Collateral Amount, of standby letters of credit, available in Approved Currencies, to support third party obligations of the WeWork Debtor and any direct or indirect subsidiary of the WeWork Debtor in an amount not to exceed the DIP Issuing Commitments or result in the Minimum Cash Collateral Requirement being not satisfied. |
| | Letters of Credit may be issued on the Closing Date in order to backstop or replace letters of credit outstanding under the Prepetition Credit Agreement on the Closing Date (including by "grandfathering" such letters of credit to constitute Letters of Credit). |

Letters of Credit under the DIP LC Facility shall be available for issuance by each DIP LC Issuer based on such DIP LC Issuers' DIP Issuing Commitments and compliance with the Minimum Cash Collateral Requirement, subject to the same terms and conditions as applicable under the Prepetition Credit Agreement, except as otherwise provided herein (including by modification to reflect the terms hereof) or as mutually agreed by the WeWork Debtor, the DIP TLC Lender and the DIP LC Issuers in the Operative Documents.

The face amount of Letters of Credit outstanding will reduce DIP Issuing Commitments under the DIP LC Facility on a dollar-for-dollar basis. Unless otherwise agreed by the DIP Secured Parties, no DIP LC Issuer shall be permitted to roll, replace, reissue, amend, issue, increase or extend any Letter of Credit if, immediately after giving effect to such roll, replacement, reissuance, issuance, amendment, increase or extension (i) the outstanding amount of the aggregate undrawn and unexpired Letters of Credit issued by such DIP LC Issuer would exceed its DIP Issuing Commitment, (ii) the sum of the outstanding amount of the aggregate undrawn and unexpired amount of all outstanding Letters of Credit plus the aggregate amount of all unreimbursed disbursements in respect of Letters of Credit would exceed the total DIP Issuing Commitments or (iii) the Minimum Cash Collateral Requirement is not satisfied.

Maturities for Letters of Credit will not exceed twelve months (unless otherwise approved by the applicable DIP LC Issuers and the DIP TLC Lender) and shall be renewable annually thereafter in a manner consistent with the Prepetition Credit Agreement; provided, however, that any standby letter of credit may provide for renewal (automatic or otherwise) thereof for additional periods of up to 12 months or such longer period of time as may be reasonably acceptable to the applicable DIP LC Issuer and the DIP TLC Lender.  No DIP LC Issuer shall be required to issue trade letters of credit unless otherwise agreed by such DIP LC Issuer, the DIP TLC Lender and the DIP Agent.

| | |
|---|---|
| Use of Letters of Credit: | The Letters of Credit shall be used to support general third party corporate obligations of the WeWork Debtor and its restricted subsidiaries; provided that Letters of Credit may not be issued directly to the Debtors or their respective affiliates as a beneficiary. |
| Availability and Maturity: | The full amount of Term C Loans must be drawn in a single drawing on the Closing Date. Amounts repaid or prepaid under the DIP TLC Facility may not be reborrowed.  The DIP TLC Facility shall mature and become due and payable immediately after the DIP LC Date of Full Satisfaction (unless otherwise agreed by the DIP TLC Lender (which agreement may not become effective prior to the DIP LC Date of Full Satisfaction)). |

Letters of Credit shall be available during the period commencing on the date of effectiveness of the DIP TLC Facility (the "Closing Date") (which for the avoidance of doubt, shall not occur prior to the entry

of the Final DIP Order (as defined below)) and ending on the earliest of (such earliest date, the "DIP LC Facility Termination Date"):

(a)    the date that is 210 days after the Petition Date (the "Scheduled Maturity Date"); with such date subject to no more than one (1)-month extension to the extent the Chapter 11 Cases are still proceeding on the final day of such 210-day period and subject to (a) either (i) the Bankruptcy Court shall have confirmed the Plan or (ii) the Bankruptcy Court shall have approved a disclosure statement and a confirmation hearing for the Plan shall be scheduled for a date that is before the end of the contemplated one month extension, (b) receipt of a request for an extension at least five (5) business days (or such shorter period as the DIP LC Issuers may agree) prior to the extension describing the circumstances for the extension, (c) the accuracy in all material respects (and in all respects if qualified by materiality) of all representations and warranties in the Operative Documents, (d) there being no default or event of default in existence at the time of, or immediately after giving effect to, such extension and (e) the Minimum Cash Collateral Requirement shall be satisfied after giving effect to such extension;

(b)    the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases (the "Plan");

(c)    the consummation of a sale of all or substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code or otherwise;

(d)    the date of termination of the DIP LC Issuers' DIP Issuing Commitments and the acceleration of any obligations of the DIP Secured Parties under the Operative Documents (as defined below), in each case, under the DIP TLC Facility in accordance with the terms of the DIP TLC Facility credit agreement (the "DIP Facilities Agreement") and the other definitive documentation with respect to the DIP TLC Facility (collectively with the DIP TLC Facility Agreement and the related security documents, the "Operative Documents"); and

(e)    dismissal of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases into a case under chapter 7 of the Bankruptcy Code.

Upon the occurrence of the DIP LC Facility Termination Date, unless otherwise agreed by each DIP LC Issuer in its sole discretion (1) all DIP LC Issuing Commitments shall immediately and automatically terminate, (2) all amounts due and payable to the DIP Agent and each DIP LC Issuer shall be paid in full in cash immediately and (3) at the option of the Debtor, each DIP LC Issuer shall, within two (2) business days, either (x) have received backstop letters of credit in form satisfactory to such DIP LC Issuer backstopping all Credit Exposure of such DIP LC Issuer in an amount that would otherwise satisfy the Minimum Cash Collateral Requirement or (y) transfer Cash Collateral in an amount that would

otherwise satisfy the Minimum Cash Collateral Requirement held by such DIP LC Issuer into bank accounts in the name of such DIP LC Issuer (or its affiliates or branches thereof) to continue to be held by such DIP LC Issuer (or its affiliates or branches thereof) as Cash Collateral for the purpose of cash collateralizing Credit Exposure of such DIP LC Issuer in a manner consistent with the terms hereof (which shall include an obligation to return excess cash after the final termination and/or expiration of all outstanding Letters of Credit) (the arrangements described in this clause (y), the "LC Issuer Cash Collateral Transfer Arrangement"); provided that if the DIP LC Date of Full Satisfaction does not occur within two business days after the DIP LC Facility Termination Date (or such later date as such DIP LC Issuer shall reasonably agree), each DIP LC Issuer shall be authorized under the Operative Documents to effectuate the LC Issuer Cash Collateral Transfer Arrangement and pursue other remedies under the Operative Documents immediately without the consent of the WeWork Debtor or the DIP TLC Lender. The date on which each DIP LC Issuer has confirmed in writing to the DIP Agent that the requirements under clauses (2) and (3) of the first sentence of this paragraph have been satisfied with respect to such DIP LC Issuer, the "DIP LC Date of Full Satisfaction").

## 3.  CERTAIN PAYMENT PROVISIONS

| | |
|---|---|
| Interest Rates: | As set forth on Annex I. |
| Mandatory Prepayments: | The Term C Loan will not be subject to any mandatory prepayments or amortization. |
| Reallocation: | If, as of the last business day of any fiscal quarter or any other time as mutually agreed by the WeWork Debtor and the applicable DIP LC Issuers, if the aggregate sum on deposit in any applicable Cash Collateral Account shall be greater than the Minimum Cash Collateral Amount for such Cash Collateral Account, the DIP Agent and the DIP LC Issuers shall reallocate any such excess sum to any other Cash Collateral Account pursuant to the Collateral Account Reallocation. |
| Voluntary Prepayments: | Voluntary prepayments of the Term C Loan shall not be permitted without the consent of the DIP LC Issuers, the DIP TLC Lender and, solely in the event such prepayment is for less than all of the outstanding obligations, the Required Consenting AHG Noteholders (as defined in the RSA). |

## 4. COLLATERAL ARRANGEMENTS

| | |
|---|---|
| Collateral: | As security for the full and punctual payment and performance when due of all obligations of the Debtors under the DIP LC Facility, the Debtors shall grant (a) to the DIP Agent and each DIP LC Issuer a first priority security interest in (i) each Cash Collateral Account and each Additional Cash Collateral Account; (ii) all cash, checks or |

9

other assets deposited or held in or credited to the Cash Collateral Accounts and Additional Cash Collateral Accounts, (iii) all interest and other property received, receivable or otherwise distributed or distributable in respect of, or in exchange for any of the foregoing and (iv) all products and proceeds of any of the foregoing (i)-(iv) (collectively, the "Cash Collateral") (such security interest, the "DIP Issuer Collateral Interest"), (b) to the DIP TLC Lender, a first priority security interest in all of the Debtor's interests in the Cash Collateral and each Cash Collateral Account (including, for the avoidance of doubt, the Debtor's reversionary interest in the Cash Collateral and each Cash Collateral Account) other than interests included in the DIP Issuer Collateral Interest (such interests contemplated by this clause (b), the "DIP TLC Lender Collateral Interest") and (c) to the DIP Agent, for the benefit of the DIP LC Issuers and the DIP TLC Lender (collectively with the DIP Agent, the "DIP Secured Parties"), a first priority security interest in the same assets of the Debtors that constitute the Prepetition Collateral (as defined below), in the case of this clause (c), subject to the Carve Out and the JPM Carve Out and in each case of clauses (a), (b) and (c), with the priority and subject to the limitations described below under "Priority and Ranking" (such collateral under this clause (c), the "Debtor Collateral" and, together with the Cash Collateral, the "Collateral"); provided that the ability in the Prepetition Credit Agreement to release Collateral shall be modified to be customary for similar fully cash collateralized debtor-in-possession financings and the Minimum Cash Collateral Requirement.  For the avoidance of doubt, (1) no prepetition secured party (in its capacity as such) shall have any security interest in or rights included in the DIP Issuer Collateral Interest or DIP TLC Lender Collateral Interest, (2) the DIP TLC Lender Collateral Interest shall not include any rights in the Cash Collateral or Cash Collateral Accounts until any Cash Collateral is released as Cash Collateral by the applicable DIP LC Issuer or upon the occurrence of the DIP LC Date of Full Satisfaction; provided that, upon release by the applicable DIP LC Issuer or the occurrence of the DIP LC Date of Full Satisfaction, the DIP Issuer Collateral Interest in the Cash Collateral and the Cash Collateral Accounts shall be deemed to automatically be assigned to the DIP TLC Lender and become part of the DIP TLC Lender Collateral Interest, with effect as of the date of the Final DIP Order (such assignment, the "Deemed Assignment") and (3) the DIP TLC Lender Collateral Interest does not and will not include any rights in Cash Collateral held in any Additional Cash Collateral Account.

With respect to the Debtor Collateral, the obligations under the DIP LC Facility and the DIP TLC Facility shall share in the same lien granted to the DIP Agent, subject to the Carve Out and the JPM Carve Out, and the limitations described below under "Priority and Ranking" but, as between the DIP LC Facility and the DIP TLC Facility only, the DIP LC Facility shall be a "first out" tranche with respect to any proceeds from such Debtor Collateral and the DIP TLC Facility shall be a "last out" tranche with respect to any proceeds from such Debtor Collateral.  The Operative Documents shall include additional subordination, turnover, standstill and other intercreditor

and applicable provisions relating to the relative priority of the DIP LC Facility and the DIP TLC Facility with respect to the Debtor Collateral substantially similar to the applicable provisions with respect to the relative priority and rights of the Senior L/C Tranche (as defined in the Prepetition Credit Agreement) and the Junior L/C Tranche (as defined in the Prepetition Credit Agreement), respectively, vis-à-vis the WeWork Collateral (as defined in the Prepetition Credit Agreement); provided that the Operative Documents shall include a prohibition on all payments of fees, interest and principal to the DIP TLC Lender under the DIP TLC Facility upon the occurrence and during the continuation of any default or event of default under the DIP Facilities (such provisions described in this paragraph, collectively the "<u>Debtor Collateral Subordination Provisions</u>").

Priority and Ranking:

(I) All amounts owing by the Debtors under the DIP LC Facility shall at all times:

(a)     pursuant to section 364(c)(2) of the Bankruptcy Code, and subject to the provisions of the Final DIP Order, be secured by a perfected first priority (but not subject to any other liens) lien on all Cash Collateral which lien shall be senior to any other liens or claims with respect to the Cash Collateral, including any adequate protection claims; and

(b)     pursuant to section 364(c)(1) of the Bankruptcy Code, shall be entitled to joint and several superpriority administrative expense claims status in the Chapter 11 Cases.

(II) All amounts owing by the Debtors under the DIP TLC Facility shall at all times, pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a perfected first priority (but not subject to any other liens) lien on all DIP TLC Lender Collateral Interest.

(III) Obligations arising for fees of the Debtors owed to the DIP TLC Lender shall, pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense claims status in the Chapter 11 Cases senior to any other claims with respect to the Debtor Collateral, including any adequate protection claims (for the avoidance of doubt, which shall be subject to the Carve Out and the JPM Carve Out in all respects).

(IV) Subject and subordinate to the Carve Out and the JPM Carve Out and subject to certain exclusions to be mutually agreed (including the Debtor Collateral Subordination Provisions), all amounts owing by the Debtors under the DIP Facilities shall at all times, pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, be secured by perfected liens on all Debtor Collateral that secures obligations under the Prepetition Credit Agreement ("<u>Prepetition Collateral</u>") on a *pari passu* basis with (a) the liens securing the Prepetition Credit Agreement and (b) any liens securing adequate protection claims granted to any prepetition first lien secured parties under the Cash Collateral Order.

11

(V) Subject and subordinate to the Carve Out and the JPM Carve Out (as defined in the Cash Collateral Order) solely in the case of all amounts owing by the Debtors to the DIP Agent, the DIP LC Issuers, and, solely with respect to fees covered by clause (III) above, the DIP TLC Lender under the DIP Facilities, secured by a lien on the Debtor Collateral (and for the avoidance of doubt, other than with respect to the Cash Collateral), such claims shall be senior to all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

(VI) All liens authorized and granted pursuant to the Final DIP Order, as applicable, in each case, entered by the Bankruptcy Court approving the DIP Facilities shall be deemed effective and perfected as of the Closing Date, and no further filing, notice or act will be required to effect such perfection. The DIP TLC Lender, DIP LC Issuers, or the DIP Agent, on behalf of the DIP Secured Parties, shall be permitted, but not required, to make any filings, deliver any notices or take any other acts as may be desirable under state law or other law in order to reflect the perfection and priority of the DIP Secured Parties' claims described herein.

(VII) Notwithstanding anything to the contrary herein, it is understood and agreed that the DIP LC Issuers shall first (x) seek reimbursement for amounts drawn with respect to any Letter of Credit from the Cash Collateral in the Cash Collateral Accounts and (y) exercise rights and remedies against the Cash Collateral before exercising rights and remedies against any other Collateral or otherwise asserting their superpriority administrative expense claim (other than for purposes of voting for or against a plan of reorganization that satisfies the RSA).

"Carve Out" shall have such meaning given to it in the Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief [*Docket No. 103*] (the "Cash Collateral Order") and/or any final order related thereto.

"JPM Carve Out" shall have such meaning given to it in the Cash Collateral Order.

CERTAIN CONDITIONS

| | |
|---|---|
| DIP Facilities Conditions: | The occurrence of the Closing Date is subject solely to the satisfaction (or waiver) of the conditions set forth on Exhibit C. |
| On-Going Conditions: | After the Closing Date, the issuance of each Letter of Credit (each, an "Extension of Credit") shall be conditioned upon (a) receipt of a customary request for the issuance of a Letter of Credit; (b) the accuracy in all material respects (and in all respects if qualified by materiality) of all representations and warranties in the Credit Documentation, (c) there being no default or event of default in existence at the time of, or immediately after giving effect to, such |

Extension of Credit and (d) the Minimum Cash Collateral Requirement shall be satisfied after giving effect to the issuance of such Letter of Credit.

**5. DOCUMENTATION**

Credit
Documentation:

The Operative Documents for the DIP Facilities shall initially be prepared by counsel to the DIP LC Issuers and shall be consistent with this DIP Term Sheet and shall: (i) unless otherwise agreed by the DIP Agent, the DIP TLC Lender, the DIP LC Issuers and the Debtors, be based upon the Prepetition Credit Agreement, with customary additional modifications reflecting (x) administrative, operational and agency requirements of the DIP Agent, (y) the Term C Loan and the terms set forth in this DIP Term Sheet, (z) removal of the SVF Obligor (as defined in the Prepetition Credit Agreement) as an obligor and remove all representations and warranties, covenants and events of default with respect thereto, (ii) to include a negative covenant applicable to the Debtors that (1) prohibits the granting of any liens on the Cash Collateral (other than the liens granted to the DIP Agent and DIP LC Issuers hereunder and customary non-consensual depositary liens), (2) caps total pari passu DIP financing secured by a lien on the Debtor Collateral to an amount to be agreed and (3) prohibits the incurrence of any other DIP financing that is secured by a lien more senior than the liens securing the DIP Facilities on the Debtor Collateral, other than the Carve Out and the JPM Carve Out, (iii) to include a negative covenant that there shall be a cap equal to the US Dollar equivalent of $135 million for Letters of Credit issued by each DIP LC Issuer that are issued in currencies other than US Dollars (the "<u>Foreign LC Sublimit</u>"); <u>provided</u> that compliance with the Foreign LC Sublimit shall be calculated as of the date of issuance, renewal, increase or extension of a non-USD Letter of Credit and no breach of the Foreign LC Sublimit shall occur solely as a result of the aggregate US Dollar amount of such non-US Dollar Letters of Credit exceeding such cap due to currency fluctuations occurring after the date of issuance, renewal, increase or extension, (iv) unless otherwise specified hereunder, includes provisions relating to the Cash Collateral to be mutually agreed between the DIP TLC Lender, the DIP LC Issuers, the Debtors and the DIP Agent, (v) includes the Debtor Collateral Subordination Provisions and (vi) unless otherwise described herein, includes standards, administrative requirements and processes, conditions precedent, deadline, qualifications, thresholds, exceptions, "baskets" and grace and cure periods consistent with the foregoing (together, the "<u>Documentation Principles</u>").

Representations and Warranties:

The Operative Documents will contain representations and warranties of the Debtors that are consistent with the Documentation Principles, with modifications customary for similar fully cash collateralized debtor-in-possession financings.

Reporting Requirements:

The Operative Documents will contain financial reporting requirements applicable to the Debtors that are consistent with the

Cash Collateral Order, with modifications customary for similar fully cash collateralized debtor-in-possession financings, including, without limitation, delivery of all budget, variance, and other material financial reporting delivered to any party pursuant to the RSA. Notwithstanding the foregoing, no telephone conferences or earnings report calls shall be required under the DIP TLC Facility.

**Affirmative Covenants:**

The Operative Documents will contain affirmative covenants applicable to the Debtors that (a) are consistent with the Documentation Principles, with modifications customary for similar fully cash collateralized debtor-in-possession financings or (b) required by the DIP Secured Parties and shall, in any event, include without limitation requiring (i) the delivery of all material pleadings, motions and other material documents filed with the Bankruptcy Court on behalf of the Debtors in the Chapter 11 Cases to the Joint Lead Arrangers and their counsel substantially concurrently with the filing thereof, (ii) compliance with the DIP Milestones in the administration of the Chapter 11 Cases and (iii) one or more members of the Debtors' senior management team to be available at reasonable times with reasonable frequency for discussion with the DIP Secured Parties upon reasonable prior notice (which may be by email or telephone).

**Negative Covenants:**

The Operative Documents will contain negative covenants applicable to the Debtors that are consistent with the Documentation Principles, with modifications customary for similar fully cash collateralized debtor-in-possession financings.

**Events of Default:**

The Operative Documents will contain events of default applicable to the Debtors that are consistent with the Documentation Principles, with modifications to include customary event of default triggers for similar fully cash collateralized debtor-in-possession financings (collectively, the "Events of Default") limited to the following (subject to mutually agreeable grace periods as applicable):

(i)    a trustee or responsible officer shall have been appointed in one or more of the Chapter 11 Cases;

(ii)    appointment of a responsible officer or examiner with enlarged powers relating to the operation of the business of any Debtor;

(iii)    granting of relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $15,000,000;

(iv)    entry of an order granting any superpriority claim which is senior to or pari passu with the DIP Agent's or any DIP Secured Party's claims under the DIP Facilities (other than the Carve Out and/or the JPM Carve Out) without the prior consent of the DIP Agent and the DIP Secured Parties;

14

(v) any Debtor shall have filed, proposed, or supported a plan of reorganization, plan of liquidation, or a motion seeking to approve a sale of any material portion of the Collateral, without prior consultation with the DIP Agent and the DIP Secured Parties;

(vi)　　(A) entry of an order staying, reversing, vacating or otherwise modifying, the DIP Facilities or the Final DIP Order without the prior written consent of the DIP Agent, each DIP LC Issuer and the DIP TLC Lender or (B) any appeal of the Final DIP Order is taken or any motion under Bankruptcy Rule 9023 or 9024 is filed with respect to the Final DIP Order, and such appeal or motion has not been dismissed or withdrawn with 22 days;

(vii)　　payment of, prepetition funded debt (other than as contemplated by the Cash Collateral Order or as ordered by the Bankruptcy Court) unless otherwise agreed by the DIP Agent, each DIP LC Issuer and the DIP TLC Lender;

(viii)　　cessation of liens or applicable priority of claims granted with respect to any of the Collateral securing the Debtors' obligations in respect of the DIP Facilities to be valid, perfected and enforceable in all respects with the priority described herein; and

(ix)　　failure to comply with the Operative Documents, the Minimum Cash Collateral Requirement (subject to the terms hereunder) or any of the DIP Milestones.

The Events of Default will be subject to customary materiality levels, default triggers, cure and grace periods and (where applicable) exceptions consistent with the Documentation Principles.

Remedies:　　Consistent with the Documentation Principles; _provided_ that the Operative Documents shall permit, each DIP LC Issuer to (1) declare any event of default by written notice to the DIP Agent and the WeWork Debtor, (2) concurrently with such written notice, accelerate and terminate DIP LC Issuing Commitments and declare the occurrence of the DIP LC Facility Termination Date and (3) immediately thereafter, take actions to effectuate a DIP LC Date of Full Satisfaction subject to the terms hereunder.

DIP Milestones:　　The Debtors shall comply with the following Chapter 11 milestones which Milestones may be extended in writing by the DIP Agent, the DIP LC Issuers and the DIP TLC Lender in their sole and absolute discretion (the "_Milestones_"):

(i)　　no later than 16 days after the Petition Date, the Debtors shall have filed a motion seeking approval of the DIP Facilities; and

(ii)　　no later than 35 calendar days after the Petition Date, the Bankruptcy Court

15

shall enter an order (the "Final DIP Order") approving the DIP Facilities, in form and substance reasonably satisfactory to the DIP Agent, each DIP LC Issuer and the DIP TLC Lender in their discretion as confirmed by the DIP Agent, each DIP LC Issuer and the DIP TLC Lender in writing, which, among other things, shall provide for the following (the "Required DIP Order Provisions"):

(A) the Cash Collateral Accounts are for the sole benefit of the DIP Secured Parties unless and until the Deemed Assignment, at which time they will be for the sole benefit of the DIP TLC Lender (other than any interest the DIP LC Issuer or its applicable affiliate retains for the benefit of the DIP TLC Lender or solely in its capacity as an account bank in the ordinary course of business);

(B) the Cash Collateral is for the sole benefit of the DIP Secured Parties unless and until (i) the Deemed Assignment or (ii) returned to the DIP TLC Lender in accordance with the terms of the Operative Documents;

(C) the Deemed Assignment shall be deemed to have occurred upon the date of entry of the Final DIP Order and otherwise occur automatically without any further consent of, or action by, any Person and, upon consummation of the Deemed Assignment, the applicable DIP LC Issuer shall be deemed to be holding the applicable Cash Collateral and the Cash Collateral Accounts solely for the benefit of the DIP TLC Lender;

(D) the DIP TLC Lender shall be granted the DIP TLC Lender Collateral Interest;

(E) No other party shall have any rights to the Cash Collateral or the Cash Collateral Accounts other than the DIP LC Collateral Interest and the DIP TLC Lender Collateral Interest;

(F) the Cash Collateral may be drawn by the applicable DIP LC Issuer

16

or the DIP Agent, on behalf of the DIP LC Issuers, to be applied to reimburse or pay any a DIP LC Issuer, and the Deemed Assignment shall be permitted to occur, and the automatic stay imposed by §362 of the Bankruptcy Code is hereby modified to permit such actions without further notice or court order;

(G) all reimbursements or payments from a Cash Collateral Account to the DIP LC Issuers (including but not limited to any reimbursement obligations, fees, expenses and interest, at any time, including but not limited to payments made in connection with the DIP LC Termination Date or DIP LC Date of Full Satisfaction) shall in each case be absolute, indefeasible, non-refundable, and not subject to challenge by any party for any reason;

(H) the Cash Collateral in the Cash Collateral Accounts shall be absolute, indefeasible, non-refundable, and not subject to challenge by any party for any reason;

(I) the Cash Collateral Accounts shall in no event be subject to any Carve Out or surcharge (including under section 506(c) of the Bankruptcy Code); and

(J) findings that the DIP Secured Parties have acted in good faith and that the DIP Facilities, the Letters of Credit, the Cash Collateral and the Cash Collateral Accounts shall entitled to the protections of section 364(e) of the Bankruptcy Code.

| | |
|---|---|
| Voting: | Consistent with the Documentation Principles; <u>provided</u> that the DIP LC Facility and the DIP TLC Facility shall vote as separate tranches and, in addition to any other required consents, (x) the consent of the DIP TLC Lender shall be required for any amendments, waivers or modifications relating to the DIP TLC Facility and (y) the consent of each DIP LC Issuer shall be required for any amendments, waivers or modifications relating to the DIP LC Facility. |
| Assignments and Participations: | Consistent with the Documentation Principles; <u>provided</u> that the consent of the DIP TLC Lender shall be required for any assignment of any DIP Issuing Commitments and no assignments of the Term C Loans shall be permitted at any time without the consent of the WeWork Debtor, the DIP Agent and the DIP LC Issuers. |

| | |
|---|---|
| Yield Protection: | Substantially the same as Prepetition Credit Agreement. |
| Tax Treatment: | The parties shall treat the Term C Loan as debt for U.S. federal income tax purposes and each of the parties hereto agrees to file all tax returns and reports consistent therewith and not take any action inconsistent with the foregoing except as required by a change in applicable tax law or pursuant to a final "determination" (as described in Section 1313(a) of the Code). |
| Expenses and Indemnification: | Substantially the same as Prepetition Credit Agreement except (i) in addition to the reimbursement and indemnification obligations of the Debtors to the DIP LC Issuers, the DIP TLC Lender shall be subject to customary lender indemnification obligations with respect to the DIP Agent, (ii) the DIP TLC Lender will be provided indemnity and expense reimbursement treatment from the Debtors in a manner consistent with that provided to the DIP LC Issuers and (iii) expenses shall include all reasonable and documented fees incurred by the DIP Agent and each DIP LC Issuer in connection with the Chapter 11 Cases. |
| Governing Law: | New York. |
| Counsel to the DIP Agent and the DIP LC Issuers: | Milbank LLP and Gibbons P.C. |
| Counsel to the DIP TLC Lender: | Weil, Gotshal and Manges, LLP and Wollmuth Maher & Deutsch LLP |