| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, New Jersey 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>        rswitkes@shermansilverstein.com<br><br>*Counsel to Kato International LLC* | **LAW OFFICES OF JACK J. ROSE PLLC**<br>Jack J. Rose (*pro hac vice* pending)<br>PO Box 366<br>Bronxville, New York 10708<br>Tel: (212) 655-3066<br>Email: jrose@jrlpllc.com<br><br><br><br><br><br><br>*Counsel to Kato International LLC* |
| In re:<br><br>WEWORK INC., *et. al.*,<br><br>                    Debtors. | Case No. 23-19865 (JKS)<br><br>Chapter 11<br><br>Honorable John K. Sherwood, U.S.B.J. |

**OBJECTION OF KATO INTERNATIONAL LLC TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
AND APPROVING PROCEDURES TO REJECT OR
ASSUME EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (II) GRANTING RELATED RELIEF**

Kato International LLC ("Kato"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the motion (the "Motion" and the procedures under the Motion are referred to as the "Proposed Procedures")[1] of WeWork Inc. and affiliated debtors (collectively, "WeWork" or the "Debtors") for entry of an Order (i) authorizing and approving procedures to reject or assume executory contracts and unexpired leases, and (ii) granting related relief.  Docket No. 12.  In connection therewith, Kato respectfully represents as follows:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3490911.1

**BACKGROUND**

1. Kato is the owner of a Class A Office Tower located at 12 East 49th Street, New York, NY, known as Tower 49 ("Tower 49") which is the location of WeWork's headquarters.

2. WeWork became a tenant in Tower 49 in July of 2016 when it initially entered into a lease for ten (10) floors.[2] Over time, the relationship between Kato and WeWork grew with WeWork eventually leasing a total of twenty (20) floors in Tower 49. Throughout periods of construction and repositioning, Kato and WeWork have worked together in a spirit of cooperation.

3. Reluctantly, today, Kato finds itself forced to request that this Court deny much of the relief sought by WeWork because it violates applicable law, is contrary to public policy and threatens to set dangerous precedents that strike at the very foundation of due process and fairness that underlies the bankruptcy process in the United States.

4. Rather, WeWork (represented by one of the largest law firms in the world) appears to be trying to play a game of "Gotcha" with unsuspecting mom and pop landlords in order to force them into what are effectively new leases that WeWork would otherwise be unable to obtain in any legal or consensual manner. Moreover, WeWork's attempted use of the "rocket docket" puts at risk the very integrity of this case and this Court. Nowhere under the Bankruptcy Code can a debtor unilaterally alter the provisions of a lease or executory contract; yet under the Motion, the Debtors grant themselves this power on an expedited basis without so much as a hearing.

5. Query: Is it any wonder the public questions the bankruptcy process? *See* Bankruptcy Vendors Under Fire for Mishandling Private Info, Bloomberg Law, March 3, 2023;

---

[2] The relationship between WeWork and Kato began pursuant to that certain Office Lease between Kato International LLC, Landlord, and 12 East 49th Street Tenant LLC, Tenant, dated July 29, 2016, as amended (the "Lease").

The Populist Backlash in Chapter 11, Brookings Institute, January 12, 2022; Bankruptcy Court Face Congressional Backlash Over Legal Releases, Wall Street Journal, August 10, 2021.

## OBJECTION

### Once A Lease Is Rejected
### WeWork Needs To Vacate The Building

6. Once WeWork specifies a Rejection Date, WeWork is required to vacate the premises. Under the current definition, WeWork can retain possession after the Rejection Date. Accordingly, Kato requests that WeWork be required to vacate the premises as an element of the conditions required for the Rejection Date to occur under the provisions of the proposed order at Section 2(d)(i) and (ii) unless otherwise agreed upon by the landlord and the Debtors. The case law is clear that a Debtor's rejection is not effective until the debtor vacates the premises. In *Adelphia Business Solutions v. Abnos,* 482 F.3d 602 (2d Cir. 2007), a case cited by the Debtors, in analyzing a request to grant rejection retroactively to the commencement of the case, the court examined the facts of the case and found where the debtor had the benefit of using the premises, the effective date of rejection should only occur once the debtor has surrendered the premises in a manner that allows a landlord to lease the premises to another party. *Adelphia Business Solutions v. Abnos,* 482 F.3d 602; *see also In re Manis Lumber Co.*, 430 B.R. 269, 280 (Bankr. N.D.Ga. 2009) (stating that prejudice to a landlord may occur if debtor in possession denies possession to landlord or otherwise impairs landlord's reletting efforts). Yet, as drafted, the Order submitted in the case before this Court appears to allow the Debtors to retain possession of the premises after the occurrence of the defined "Rejection Date" has occurred.

7. This inconsistency could be resolved by adding the word "vacate" to the definition of "Rejection Date" in Section 2(d)(i) and (ii).

**Clarification Is Needed As To
What is Meant By No Application of Security Deposits
To Avoid Destabilizing the Commercial Real Estate Markets**

8. Paragraph 2(h) of the proposed Order also causes a great deal of confusion. A restriction on the use of a cash deposits is understandable. However, Kato objects to the extent the procedures seek to interpose a restriction on the right of a landlord to draw upon a Letter of Credit and use the proceeds of such Letter of Credit.

9. Kato does not question that any collateral that secures a letter of credit is property of the Debtors' estates. However, under the law of this Circuit, a Letter of Credit and its proceeds remain outside the estate as they are obligations of third-party non-debtors. *See S-Trans Holding, Inc. v Protective Ins.*, 414 B.R. 28 (Bankr. Del. 2009); *In re Zenith Labs, Inc.*, 104 B.R. 667 (Bankr. N.J. 1989) (holding that the presentation of a letter of credit by the trustee on behalf of a series of bondholders did not violate the automatic stay because the Letter of Credit and the proceeds from it were not property of the estate under Section 541 of the Bankruptcy Code).

10. Thus, to the extent there is any confusion, the language of the proposed Order should be clarified to permit landlords to draw upon Letters of Credit freely since they are beyond the scope of this case and the jurisdiction of this Court. To hold otherwise will send shockwaves through the commercial real estate market and risk an overnight cessation of leasing activity at a time when the national economy is in an extremely fragile state.

**Abandoned Property**

11. To the extent WeWork is abandoning property that belongs to WeWork, we have no objection to this provision so long as they notice any creditor that may hold an interest in such property, the property is abandoned free of all liens, claims, interests and encumbrances, and the landlord's right to file a damages claim for breach of the lease provisions are preserved.

12. Kato objects to the extent WeWork proposes abandoning property of third parties, including property that may be inside WeWork cabinets or desks.

13. Our objection is based on the fact that WeWork is the only party that has knowledge of who owns such property. Moreover, given the nature of WeWork's business it is foreseeable that such property may include business records and that such business records may include personally identifiable information ("PII"), which must be safeguarded by WeWork.

14. In such cases, at a minimum, WeWork should be required to turn over the contact information for the member to the Landlord. Anything less risks jeopardizing exposure of PII and places a landlord in an untenable position. To place language in an Order exonerating WeWork and the landlord of liability does not diminish the responsibility that WeWork has to its members and their employees and customers. To the extent there is the risk that PII may be present in any abandoned property, WeWork and this Court have a moral, if not a legal duty, to take every possible step to assure that such information is not permitted to fall into the wrong hands.

**WeWork Cannot Unilaterally Rewrite A Contract**

15. In what may be the Debtors' most outlandish attempt to "ReWork" their leases, the Debtors have re-written the Bankruptcy Code to grant themselves the authority to re-write executory contracts, impose them upon third parties and do all this on shortened notice if there is no response and notwithstanding no authority for such action in the Bankruptcy Code, WeWork seeks to have this Court bestow upon them the power to impose new leases on their landlords.

16. Section 3.a.(vii) of the proposed Order provides, in describing what types of agreements the Debtors will assume -- "a description of any material amendments to the Contract made outside of the ordinary course of business, either by mutual agreement by the parties **or otherwise**".

5

17. There is only one problem. Nowhere in the Bankruptcy Code, the legislative history to Section 365 or any cases that we have found is there any authority for a debtor to have the power to assume an executory contract that is amended by an **"or otherwise"** provision.

18. While of course the Debtors may assume any agreement amended by mutual agreement, the bankruptcy code is clear, a debtor must assume an agreement in its entirety. In other words, a contract must be assumed "**cum onere**." Provisions may not be cherry picked nor may the debtor unilaterally amend a contract. *See In re Fleming Cos.*, 499 F.3d 300 (3d Cir. 2007) (holding "[t]he [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other." *In re Italian Cook Corp.*, 190 F.2d 994, 997 (3d Cir. 994, 997 (3d Cir. 1951). The *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." *United Air Lines, Inc. v. U.S. Bankr Trust Nat'l Nat'l Ass'n,* 346 B.R. 456, 468 n. 11 (Bankr. N.D. Ill. 2006)).

### Time To Respond To Rejection Notices Is Infinitesimally Too Short

19. Kato objects to the timing allowed for responses to Rejection Notices. The time permitted for a party to respond to a rejection notice is unreasonably short under the Proposed Procedures, potentially allowing as few as 5 business days to prepare an objection to a rejection notice (or taking into account the need for overnight delivery of physical packages 4.5 business days).

20. For example, if WeWork provides notice on a Friday night, the notice will be received by most creditors relying on overnight service on Monday, and in order to meet the response notice deadline, a response must be transmitted by next day courier by Friday of the same week. Of course, if this were a holiday week, it is likely that the office staff would not receive the

Rejection Notice until Tuesday and the scramble to respond would be even greater. All while having to sort through the up to 100 leases listed in a lease rejection notice. The result when considering the need to process physical transmission of next day service, allows at most 4.5 business days to review the necessary materials and prepare an objection to a rejection notice.

21. Debtors' counsel may claim that the respondent's counsel (a) will receive electronic notice; and (b) counsel can work through the weekend. First, not all landlords are represented by counsel, and it is unfair for WeWork to place that burden on small landlords. As it is for precisely this reason that WeWork is serving Rejection Notices by next day courier. As to having counsel work through the weekend, for a landlord that is just retaining counsel, the issue is not just having counsel work through the weekend, it is obtaining and organizing the information that is required, having access to the client's personnel, and understanding a course of dealing. As this Court is aware, there is more that goes into drafting a pleading than having a lawyer sit at a desk and dream up arguments. Lawyers need to consult with their client and clients need time to research issues.

22. While the Debtors, their lenders and the core creditors have spent months planning a bankruptcy in consultation with world-class legal and financial professionals, is it unreasonable to ask that the landlords who have served as the heart and soul of these companies' businesses to respond to motions in less than a week, landlords should be given twenty (20) days or at least ten (10) business days to respond to a rejection notice?

**Timing of Response to Assumption Notices**

23. We will not repeat our argument set forth above in respect of the timing relating to the time permitted for a party to respond to an assumption notice as being unreasonably short other than to note that the time to respond to an assumption notice directly parallels the timing of the rejection notice.

7

24. Accordingly, we request that the time to respond to an assumption notice also be extended to twenty (20) day or at a minimum ten (10) business days.

## RESERVATION OF RIGHTS AND JOINDER

25. Kato reserves all rights with respect to this Objection, including the right to amend and/or otherwise supplement this Objection prior to or at any hearing relating to the Motion.

26. To the extent consistent with the objections submitted herein, Kato joins in objections to the Motion filed by other landlords or parties to executory contracts.

## CONCLUSION

27. Based upon the foregoing, Kato respectfully requests that the Court deny the Motion.

Dated: November 21, 2023      /s/ Arthur J. Abramowitz
**SHERMAN, SILVERSTEIN,**
**KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email: aabramowitz@shermansilverstein.com
           rswitkes@shermansilverstein.com


**LAW OFFICES OF JACK J. ROSE PLLC**
Jack J. Rose (*pro hac vice* pending)
PO Box 366
Bronxville, New York 10708
Tel: (212) 655-3066
Email:jrose@jrlpllc.com

8

3490911.1