| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with **D.N.J. LBR 9004-1(b)**<br><br>Geoffrey E. Lynott<br>McCARTER & ENGLISH, LLP<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>Telephone: (973) 622-4444<br>E-mail: glynott@mccarter.com<br><br>and<br><br>Russell R. Johnson III (*pro hac vice* application to be submitted)<br>Law Firm of Russell R. Johnson III, PLC<br>2258 Wheatlands Drive<br>Manakin-Sabot, Virginia  23103<br>Telephone: (804) 749-8861<br>russell@russelljohnsonlawfirm.com<br><br>*Co-Counsel for Commonwealth Edison Company, Consolidated Edison Company of New York, Inc., The Potomac Electric Power Company, Georgia Power Company, NStar East Electric Company d/b/a Eversource and Florida Power & Light Company* | |
| In re:<br><br>WEWORK INC., *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Jointly Administered) |

**OBJECTION OF CERTAIN UTILITY COMPANIES
TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITINIG UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (III)
APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, (IV) AUTHORIZING CERTAIN FEE
<u>PAYMENTS TO THE UTILITY AGENT, AND (V) GRANTING RELATED RELIEF</u>**

Commonwealth Edison Company ("ComEd"), Consolidated Edison Company of New York, Inc. ("Con Ed"), The Potomac Electric Power Company ("Pepco"), Georgia Power Company ("Georgia Power"), NStar East Electric Company d/b/a Eversource ("NStar") and Florida Power & Light Company ("FPL") (collectively, the "Utilities"), hereby object to the *Debtors' Motion For Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, (IV) Authorizing Certain Fee Payments To the Utility Agent, and (V) Granting Related Relief* (the "Utility Motion")(Docket No. 11), and set forth the following:

## Introduction

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) of the Bankruptcy Code from modifying the amounts of the adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amounts of the adequate assurance of payment acceptable to the Debtors. This Court should not permit the Debtors to shift their clear statutory burden in this fashion.

Through the Utility Motion, the Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing approximately $1 million that is supposedly equal to at least fifty percent of the Debtors' historical monthly utility charges (the "Bank Account"). The Debtors propose that the Bank Account will contain the following amounts on behalf of the Utilities: (a) ComEd - $18,312; (b) Con Ed - $128,743; (c) Pepco - $2,305; (d) Georgia Power - $4,908; (e) NStar (Eversource)– $28,327; and (f) FPL - $8,044.

The Court should reject the Debtors' proposed Bank Account because: (1) The Utilities bill the Debtors on a monthly basis and provide the Debtors with generous payment terms pursuant to applicable state law, tariffs and/or regulations, such that a two-week account maintained by the Debtors is not sufficient in amount or in form to provide the Utilities with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) Even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for the Utilities, this Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

As discussed below, the Debtors filed a Lease Rejection Motion to reject 69 non-residential leases. The proposed lease rejection procedures do not require the Debtors to timely contact the applicable Utilities to terminate utility service to any Debtor premises listed in Schedule "1" to the proposed Lease Rejection Order as of the proposed lease rejection date. As such, there is no way for a Utility to know when the Debtors no longer require service at a location where the lease is rejected. Accordingly, the Debtors should be required to close their accounts with the Utilities when they no longer require utility service with respect to certain Debtor accounts.

The Utilities are seeking the following two-month cash deposits from the Debtors, which are amounts that they are authorized to obtain pursuant to applicable state law: (a) ComEd - $61,290; (b) Con Ed – To be supplemented; (c) Pepco - $21,100; (d) Georgia Power - $7,080; (e) NStar (Eversource) - $103,271; and (f) FPL - $30,521. Based on all of the foregoing, this Court should deny the Utility Motion as to the Utilities because the amounts of the Utilities' post-petition deposit requests are reasonable under the circumstances and should not be modified.

**Facts**

**Procedural Facts**

1. On November 6, 2023 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2. The Debtors' Chapter 11 bankruptcy cases are being jointly-administered.

**The Utility Motion**

3. On November 7, 2023, the Debtors filed the Utility Motion.

4. On November 8, 2023, the Court entered the *Interim Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, (IV) Authorizing Certain Fee Payments To the Utility Agent, and (V) Granting Related Relief* (the "Interim Utility Order")(Docket No. 99). The Utility Order provides that objections to the Utility Motion must be filed on or before November 29, 2023 at 4:00 p.m., with a final hearing on the Utility Motion to take place on December 6, 2023 at 11:00 a.m. Utility Order at ¶ 2.

5. The Debtors claim that on average, they pay approximately $1.95 million each month for utility services, calculated as a historical average payment for the 12-month period ending October 2023. Utility Motion at ¶ 12.

6. The Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is

the Bank Account containing approximately $1 million that is supposedly equal to at least fifty percent of the Debtors' historical monthly utility charges. Utility Motion at ¶ 14.

7. The Debtors refer to the proposed monies to be contained in the Bank Account as the "Adequate Assurance Deposit." Utility Motion at ¶ 14. Monies contained in an escrow account controlled by a customer of a utility such as the proposed Bank Account are not recognized as a "cash deposit" provided by a customer to a utility by any public utility commission. Additionally, Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated utility bank account. Simply put, the Debtors are not proposing to provide any of the Utilities with post-petition cash deposits as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

8. The proposed Bank Account is not acceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amounts of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amounts of the security sought by the Utilities under Section 366(c)(2).

9. The Debtors claim that "[t]o the best of the Debtors' knowledge, there are no defaults or arrearages with respect to undisputed invoices for prepetition Utility Services." Utility Motion at ¶ 12. However, Section 366(c)(3)(B)(ii) expressly provides that in making an adequate assurance of payment determination, a court may not consider a debtor's timely payment of prepetition utility charges.

10. The Debtors propose that monies contained in the Bank Account on behalf of a utility will be returned to the Debtors (i) at the earliest of the Debtors' termination of utility services from a utility provider if there are no outstanding disputes related to post-petition charges due, or

(ii) at the conclusion of the Debtors' Chapter 11 cases, if not applied earlier and subject to the Debtors' right to terminate or discontinue the applicable utility services. Utility Motion at ¶ 15. As the Utilities bill the Debtors in arrears, and the Utilities would likely provide post-petition utility goods/services to the Debtors through the effective date of any plan, any monies contained in the Bank Account should not be returned to the Debtors until the Debtors confirm that they have paid in full all of their post-petition utility expenses owed to the Utilities.

11. Although not requested in the Utility Motion, the Interim Utility Order provides that any payments authorized to be made pursuant to the Interim Utility Order must be in compliance with, and subject to, any interim or final orders authorizing the Debtors' use of cash collateral, and any budget or cash flow forecasts in connection therewith. Interim Utility Order at ¶ 18. It is not clear if the Debtors and the secured lenders are trying to subordinate all of the post-petition payments made to the Utilities to the secured lenders' liens. At a minimum, all post-petition payments made by the Debtors to the Utilities, including any post-petition security, should not be subordinated to the lenders' liens or subject to subsequent disgorgement by the secured lenders. If the Debtors want the Utilities to provide post-petition utility goods/services, then any and all post-petition payments made to the Utilities should be free and clear of any and all liens. Otherwise, all of the relief sought in the Utility Motion is effectively nothing more than a subterfuge.

12. The Interim Utility Order provides that the Debtors are required to ensure that the Bank Account is replenished by any amount disbursed from the Bank Account for the payment of delinquent post-petition charges. Interim Utility Order at ¶ 10. However, the Interim Utility Order does include a deadline for the Debtors to replenish the Bank Account after a disbursement.

6

13. The Utility Motion does not address why the Bank Account would be funded at supposedly two-weeks of utility charges for some of the Utilities (and not at all for other Utilities) when the Debtors know that the Utilities are required by applicable state laws, regulations and/or tariffs to bill the Debtors monthly. Moreover, the Debtors presumably want the Utilities to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Bank Account is relevant, which the Utilities dispute, the Debtors need to explain: (A) why they are only proposing to deposit two-week amounts for some of the Utilities; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for the Utilities' monthly bills even if the Bank Account contained funds on behalf of all of the Utilities.

14. The Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that the Bank Account, "in conjunction with the Debtors' cash flow from operations and ability to pay for future Utility Services in accordance with their prepetition practice," somehow constitutes sufficient adequate assurance to the Debtors' utility providers. Utility Motion at ¶ 16.

## The Debtors' Use of Cash Collateral

15. On November 7, 2023, the Debtors filed the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors To Use Cash Collateral, (II) Granting Adequate Protection To the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Cash Collateral Motion") (Docket No. 43).

16. On November 9, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors To Use Cash Collateral, (II) Granting Adequate Protection To the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay and (V) Granting Related Relief* (the "Interim Cash Collateral Order") (Docket No. 103).

17. The Interim Cash Collateral Order approved a carve-out for the payment of fees of the Debtors' professionals incurred prior to a Carve-Out Trigger Notice, plus an additional $20 million following delivery of a Carve-Out Trigger Notice (the "Carve-Out"). Interim Cash Collateral Order at pages 47-48.

18. Attached as Exhibit "1" to the Interim Cash Collateral Order is a 13-week initial budget through the week ending February 2, 2024 (the "Budget"). The Budget does not include any line-item for the payment of post-petition utility charges. As such, it is not apparent from the Budget whether sufficient funds have in fact been budgeted for the timely (and full) payment of the Debtors' post-petition utility charges.

### The Debtors' Critical Vendor Motion

19. On November 7, 2023, the Debtors filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority To Undisputed Obligations on Account of Outstanding Orders, and Granting Related Relief* (the "Critical Vendor Motion")(Docket No. 15). Through the Critical Vendor Motion, the Debtors sought authority to pay "Critical Vendor Claims" estimated to total $21 million. Critical Vendor Motion at ¶ 6.

20. On November 8, 2023, the Court entered the *Interim Order (I) Authorizing Debtors To Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants,*

*and Lien Claimants, (II) Granting Administrative Expense Priority To All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* (the "Interim Critical Vendor Order")(Docket No. 96). The Interim Critical Vendor Order authorized the Debtors to pay up to $12 million to pay (i) critical vendor claims, (ii) foreign vendor claims, (iii) 503(b)(9) claims, and (iv) lien claims. Interim Critical Vendor Order at ¶ 3.

21. The Debtors' claim in Paragraph 8 of the Utility Motion that "[u]ninterrupted Utility Services are essential to the Debtors' ongoing business operations." However, the Critical Vendor Motion does not reflect that the Debtors sought Court authority to pay prepetition domestic utility charges. However, the claims of "Foreign Vendors" sought to be paid through the Critical Vendor Motion include Foreign Vendors providing "building-level utilities."

## The Lease Rejection Motion

22. On November 7, 2023, the Debtors filed the *Debtors' Omnibus Motion Seeking Entry of An Order (I) Authorizing (A) the Rejection of Certain Unexpired Leases and (B) the Abandonment of Certain Personal Property, If Any, Each Effective As of the Rejection Date, and (II) Granting Related Relief* (the "Lease Rejection Motion")(Docket No. 14).

23. Through the Lease Rejection Motion, the Debtors seek Court approval to reject 69 leases set forth in Schedule "1" to the proposed *Order (I) Authorizing (A) the Rejection of Certain Unexpired Leases and (B) the Abandonment of Certain Personal Property, If Any, Each Effective as of the Rejection Date; and (II) Granting Related Relief* (the "Proposed Lease Rejection Order") as of the Petition Date for 68 leases and as of November 10, 2023 for one lease. The proposed lease rejection procedures do not require the Debtors to timely contact the applicable Utilities to terminate utility service to any Debtor premises listed in Schedule "1" to the Proposed Lease Rejection Order as of the proposed lease rejection date.

**Facts Regarding the Utilities**

24. Each of the Utilities provided the Debtors with prepetition utility goods and/or services, and have continued to provide the Debtors with utility goods and/or services since the Petition Date.

25. Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges. Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they must cure the arrearage within a certain period of time or service will be disconnected. Accordingly, under the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

26. To avoid the need to bring witnesses and have lengthy testimony regarding the Utilities' regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web-site links to the following tariffs and/or state laws, regulations and/or ordinances are as follows:

ComEd:
    Tariffs: https://www.comed.com/customer-service/rates-pricing/rates-information/Pages/current-rates.aspx
    Regulations: http://www.ilga.gov/commission/jcar/admincode/083/08300280sections.html

Con Ed:

> Electric - http://www.coned.com/rates/elec-sched1.asp
> Gas - http://www.coned.com/rates/gas_main.asp

Pepco:
> Maryland: https://www.pepco.com/MyAccount/MyBillUsage/Pages/Maryland.aspx
> District of Columbia:
> https://www.pepco.com/MyAccount/MyBillUsage/Pages/DC/CurrentTariffsDC.aspx

Georgia Power: https://www.georgiapower.com/business/prices-rates/business-tariffs.cshtml

NStar - East: https://www.eversource.com/content/general/about/about-us/doing-business-with-us/builders-contractors/interconnections/massachusetts-net-metering/massachusetts-tariffs-rules

FPL - http://www.fpl.com/customer/rates_and_bill/rules_tariffs.shtml

27. Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' estimated prepetition debt and post-petition deposit requests are as follows:

| **Utility** | **No. of Accounts** | **Estimated Prepet. Debt** | **Deposit Request** |
|---|---|---|---|
| ComEd | 27 | $11,990.88 | $61,290 (2-month) |
| Con Ed | | To be supplemented | To be supplemented (2-month) |
| Pepco | 2 | $15,401.20 | $21,100 (2-month) |
| Georgia Power | 1 | $9,020.28 | $7,080 (2-month) |
| NStar (Eversource) | 27 | $49,281.13 | $103,271 (2-month) |
| FPL | | To be supplemented | $30,521 (2-month) |

28. Pepco held a prepetition deposit in the amount of $100 that it recouped against the prepetition debt owing to Pepco from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code. No prepetition deposit amount remains after recoupment.

29. FPL held a prepetition deposit in the amount of $16,537 that it will recoup against the prepetition debt owing to FPL from the Debtors pursuant to Section 366(c)(4) of the

Bankruptcy Code. If any of the foregoing deposit remains after satisfying the prepetition debt, it can be moved toward the post-petition deposit.

## Legal Discussion

### A.    THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.

30.    Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

31.    As stated by the Supreme Court of the United States, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *See also Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re Lucre*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005). If a debtor believes the **<u>amount</u>** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **<u>amount</u>** of the utility's request under Section 366(c)(2).

32.    In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of

12

payment requested under Section 366(c)(2) to setting the form and the amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and should deny the Utility Motion as to the Utilities.

> **1. The Debtors' Proposed Bank Account Is Not Relevant, And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide the Utilities With Adequate Assurance of Payment.**

33. This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not even a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by the Utilities. Accordingly, the Utilities have no control over how long the Bank Account will remain in place.

2. To access the Bank Account, the Utilities have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

3. It is underfunded from the outset because the Utilities issue monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity or service.

4. The Debtors may close the Bank Account before all post-petition utility charges are paid in full.

34. Accordingly, the Court should not approve the Bank Account as adequate assurance as to the Utilities because the Bank Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an

otherwise unreliable form of adequate assurance.

> **2.  The Utility Motion Should Be Denied As To the Utilities Because the Debtors Have Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.**

35.  In the Utility Motion, the Debtors fail to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the plain requirements of Section 366(c) with respect to the Utilities.

> **B.  THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

36.  Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), holding that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

37. Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate-paying customers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

38. The Utilities bill the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. The Utilities then provide the Debtors with 20 to 30 days to pay the bill, the timing of which is set forth in applicable state laws, tariffs or regulations. Based on the foregoing state-mandated billing cycles, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, the Utilities still have potential exposure of approximately 60 or more days based on their billing cycles. Furthermore, the forms and amounts of the Utilities' adequate assurance requests are the forms and amounts that the applicable public service commissions, which are neutral third-party entities, permit the Utilities to request from their customers. The Utilities are not taking the position that the cash deposits that they are entitled to obtain under applicable state law are binding on this Court, but instead are introducing those forms and amounts as evidence of the forms and amounts that the applicable regulatory entity permit the Utilities to request from their customers.

39. In contrast, the Debtors failed to address in the Utility Motion why this Court should modify, if at all, the amounts of the Utilities' adequate assurance of payment requests, which is the Debtors' statutory burden. Instead, the Debtors merely asked this Court to approve the Adequate Assurance Account supposedly containing approximately two-weeks of the Debtors' utility charges. The Debtors did not provide an objective, much less an evidentiary, basis for their proposed adequate assurance in the form of the Bank Account. Moreover, in contrast to the improper treatment proposed to the Debtors' Utilities, the Debtors have made certain that supposed "critical vendors" and post-petition professionals are favored creditors over the Utilities by ensuring (i) the payment of critical vendors claims of up to $21 million, and that (ii) the post-petition bills/expenses of Debtors' counsel are paid, even in the event of a post-petition default on the use of DIP financing and cash collateral, by obtaining a $20 million professionals' carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default. Despite the fact that the Utilities continue to provide the Debtors with admittedly essential post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive the Utilities of any adequate assurance of payment for which they are entitled to for continuing to provide the Debtors with post-petition utility goods/services. Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

**WHEREFORE**, the Utilities respectfully request that this Court enter an order:

1. Denying the Utility Motion as to the Utilities;

2. Awarding the Utilities the post-petition adequate assurance of payments pursuant to Section 366 in the amount and form satisfactory to the Utilities, which is the form and amount requested herein; and

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: November 21, 2023

Respectfully Submitted,

**McCARTER & ENGLISH, LLP**

*/s/ Geoffrey E. Lynott*
Geoffrey E. Lynott
McCARTER & ENGLISH, LLP
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
E-mail: glynott@mccarter.com

-and-

Russell R. Johnson III (*pro hac vice* application to be submitted)
Virginia State Bar No. 31468
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Email: russell@russelljohnsonlawfirm.com

*Counsel for Commonwealth Edison Company, Consolidated Edison Company of New York, Inc., The Potomac Electric Power Company, Georgia Power Company and NStar East Electric Company d/b/a Eversource and Florida Power & Light Company*