McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Gary D. Bressler, Esq.
Michael R. Morano, Esq.
225 Liberty Street, 36th Floor
New York, NY  10281
Tel: (212) 483-9490
Fax: (212) 483-9129
*Counsel to U.S. Specialty Insurance Company*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **WEWORK INC.,** *et al.*, | : | **Case No. 23-19865 (JKS)** |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

---------------------------------------------------------------x

**U.S. SPECIALTY INSURANCE COMPANY'S LIMITED OBJECTION TO:**

A.  DEBTORS MOTION FOR ENTRY OF [INTERIM AND] FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAINN INSURANCE AND SURETY COVERGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGTIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE AND SURETY COVERAGE AND (II) GRANTING RELATED RELIEF [Doc. No. 7];

B.  DEBTOR'S MOTION FOR ENTRY OF [INTERIM AND] FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) [SCHEDULING A FINAL HEARING], (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF [Doc. No. 43];

C.  DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND ESTABLISHING PROCEDURES FOR THE DE MINIMIS ASSET TRANSACTIONS; (II) AUTHORIZING AND ESTABLISHING PROCEDURES FOR DE MINIMIS ASSET ABANDONMENT; (III) APPROVING THE FORM AND MANNER OF THE NOTICE OF DE MINIMIS ASSET TRANSACTIONS AND ABANDONMENT; AND (IV) GRANTING RELATED RELIEF [Doc. No. 142]; and

D.  DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III)

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor We Work Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY  10017 and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF [Doc. No. 186].**

U.S. Specialty Insurance Company ("Surety"), by and through their undersigned counsel, hereby submits this Limited Objection ("Limited Objection") to:

(A) *Debtors' Motion for Entry of [Interim and] Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief* [Doc. No. 7]("Surety Motion");

(B) *Debtors' Motion for Entry of [Interim and] Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) [Scheduling a final Hearing], (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Doc. No. 43]("Cash Collateral Motion");

(C) *Debtors' Motion for Entry of an Order (I) Authorizing and Establishing Procedures for the De Minimis Asset Transactions; (II) Authorizing and Establishing Procedures for De Minimis Asset Abandonment; (III) Approving the Form and Manner of the Notice of De Minimis Asset Transactions and Abandonment; and (IV) Granting Related Relief* [Doc. No. 142]("De Minimis Sale Motion"); and

(D) *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Doc. No. 186]("DIP Financing Motion"), and in support of its Limited Objection, states as follows:

**BACKGROUND**

1.   On November 7, 2023 ("Petition Date"), the Debtors filed petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Prior to the Petition Date the Surety issued and/or executed certain surety bonds and/or related instruments on behalf of one or more of the debtors and/or their non-debtor affiliate in connection with without limitation, the Debtors' business operations (collectively, the "Bonds"). (*See* Declaration of Frank M. Lanak dated November 28, 2023 at ¶ 3).

2.   Among the Bonds are lease security bonds, issued on behalf of an individual Debtor as principal and in favor of a landlord, whereby such landlord, as obligee, may draw down on the lease security bond in event of, for instance, default on the part of the principal as tenant. (*Id*. at ¶ 4).

3.   Currently, there are three active lease security bonds as follows:

A.   Bond No. 1000836522 issued on behalf of Debtor 500 11th Ave North Tenant LLC as principal in favor of Capitol View JV-E as obligee, with a penal sum, reduced by a rider, to $1,633,210.00;

B.   Bond No. 1000836525 issued on behalf of Debtor 2222 Ponce De Leon Blvd Tenant LLC as principal in favor of Girlada PB, LLC as obligee, with a penal sum, reduced by rider, to $1,113,592.00; and

C.   Bond No. 1000836535 issued on behalf of Debtor 830 NE Holladay Street Tenant LLC as principal in favor of AAT Lloyd District, LLC as obligee, with a penal sum of $2,341,715.00.

(*Id*. at ¶ 5).

4.  The Debtors' filed a list of what they contend to be active surety bonds at Doc. No. 7 (page 45 of 45), in which they listed Bond No. 1000836524 in favor of RED Development as Obligee with a penal sum of $2,000,000.00. To the contrary, the Surety issued Bond No. 1000836524 on behalf of Debtor 101 East Washington Street tenant LLC in favor of Block 23 Commercial, LLC (with a usual place of business at c/o RED Development, One East Washington Street, Suite 300, Phoenix, Arizona 85004), with a penal sum of $2,000,000.00. However, the penal sum of that bond was paid out in full in March of 2021, and is therefore, no longer active. (*Id*. at ¶ 6).[2]

5.  The active Bonds are, upon information and belief, currently in the aggregate amount (penal sum) of no less than $5,088,517.00. (*Id*. at ¶ 7).

6.  In connection with the Surety's issuance of the Bonds, including, but not limited to, those generally described above, WeWork Companies Inc. (unclear as to whether this entity is a Debtor or non-debtor), WeWork Companies LLC (it is believed that WeWork Companies LLC, listed as a non-debtor by the Debtors, no longer exists as an active company but is now known as "WeWork Companies U.S. LLC f/k/a WeWork Companies LLC", such that it is a Debtor), along with debtors 500 11th Ave North Tenant LLC, 830 NE Holladay Street Tenant LLC, 115 Broadway Q LLC, 2222 Ponce De Leon Blvd Tenant LLC, and 101 East Washington Street Tenant LLC, executed and delivered to the Surety, six General Agreement of Indemnity ("Indemnity Agreements" or "Indemnity Agreement"), in favor of the Surety, as indemnitee, dated on or about March 22, 2019, April 9, 2019, April 10, 2019, April 30, 2019, August 26, 2019, and March 10,

---

[2] The Debtors also names the surety as Tokio Marine HCC, which is incorrect. Tokio Marine HCC is the marketing name used to describe affiliated companies under the common ownership of HCC Insurance Holdings, Inc. Tokio Marine HCC's bonds are underwritten by, among others, U.S. Specialty Insurance Company. U.S. Specialty Insurance Company is the surety that issued the bonds. (*Id*. at fn 2).

4

2020. A true and correct redacted copy of each of the Indemnity Agreements is attached to the Declaration of Frank M. Lanak. (*Id*. at ¶ 8).

    7.     Paragraph one (1) of each Indemnity Agreement provide:

> **1. PREMIUMS & COLLATERAL FOR SURETYSHIP**- The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The Surety's election not to demand collateral at the inception of the suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

(*Id*. at ¶ 9).

    8.     Under paragraph two (2) of each Indemnity Agreement, the Indemnitors are obligated to, among other things:

> **2. INDEMNITY & COLLATERAL FOR CLAIM.** The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at all time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any

5

> BOND, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY's sole discretion, as collateral security to cover the liability.

(*Id*. at ¶ 10).

9. Therefore, the Indemnity Agreements creates, among other rights, contractual rights of indemnification and exoneration in favor of the Surety. (*Id*. at ¶ 11).

10. On or about February 20, 2020, Goldman Sachs International Bank, on behalf of WeWork Companies LLC as applicant, issued Irrevocable Letter of Credit Number 40000375 in the amount of $10,389,466.50 in favor of U.S. Specialty Insurance Company,, for itself, and on behalf of its parents, affiliates, and subsidiaries, which amount was reduced to $5,113,960.00 by way of amendment on or about September 13, 2023 ("ILOC"), which ILOC was issued to secure the Indemnitors' obligations under, without limitation, the Indemnity Agreements. (*Id*. at ¶ 12).

11. On or about November 15, 2020, the Surety notified Goldman Sachs International Bank that it was requesting a draw under the ILOC in the amount of $5,113,960.00, which draw was honored by Goldman Sachs International Bank. (*Id*. at ¶ 14).

12. On or about November 9, 2023, the Bankruptcy Court entered an *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay and (V) Granting Related Relief.* [Doc. No. 103]("Interim Cash Collateral Order" and corresponding final order "Final Cash Collateral Order"), which scheduled a final hearing for December 6, 2023.

13. On or about November 9, 2023, the bankruptcy Court entered an *Interim Order (I) Authorizing the Debtors to Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief* [Doc. No. 109]("Interim Surety Order", and corresponding final order "Final Surety Order"), which scheduled a final hearing for December 6, 2023.

## ARGUMENT

### I. LIMITED OBJECTION TO FINAL CASH COLLATERAL ORDER

1. Although a proposed Final Cash Collateral Order has not yet been filed with respect to the Cash Collateral Motion, the Surety proposes that any Final Cash Collateral Order include the following language or substantially similar language:

> Nothing in this Final Order, the Interim Order or any Motion shall in any way prime or affect the rights of U.S. Specialty Insurance Company, (collectively, the "Surety") as to: (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due any of the Debtors or any of their non-debtor affiliates in relation to contracts or obligations bonded by the Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates (collectively (a) to (c), the "Surety Assets"). Nothing in this Final Order shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates as to the Surety Assets or otherwise, including, but not limited to, the six General Agreements of Indemnity (the "Indemnity Agreements") executed on or about March 22, 2019, April 9, 2019, April 10, 2019, April 30, 2019, August 26, 2019 and March 10, 2020 by non-debtor WeWork Companies LLC, WeWork Companies Inc. and debtors 500 11th Ave North Tenant LLC, 101 East Washington Street Tenant LLC, 1115 Broadway Q LLC, 2222 Ponce DeLeon Blvd Tenant LLC, and 830 NE Holladay Street Tenant LLC. In addition, nothing in this Final Order, the Interim Order or any Motion shall prime or otherwise impact: (x) current or future setoff and/or recoupment

rights and/or the lien rights of the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any existing or future subrogation or other common law rights of the Surety. In addition, notwithstanding anything in this Final Order, the Interim Order or any Motion to the contrary, the rights of the Surety in connection with any letter of credit (and any amendment(s) or modification(s) thereto) relating to any of the Debtors or their non-debtor affiliates, including but not limited to that certain Irrevocable Letter of Credit and amendments thereto in favor of among others, the Surety, having an aggregate amount of credit of $5,113,960.00 (the "ILOCs"), and any and all proceeds thereof, shall not be affected or impaired, and neither the ILOCs nor an proceeds therefrom constitute property of the bankruptcy estate. To the extent that any Surety Assets are being held or will be held by or on behalf of any one or more of the Debtors or any of their non-debtor affiliates and are used as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of the use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date. In addition, notwithstanding anything in this Final Order, the Interim Order or any Motion to the contrary, the rights, claims, and defenses of the Debtors and any of their non-debtor affiliates, of any obligee on any bond issued by the Surety and of the Surety, including the Surety's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors or any of their non-debtor affiliates and of any successors in interest to any of the Debtors or any of their non-debtor affiliates and any creditors, to object to any such liens, claims and/or equitable subordination and other rights, are fully preserved. Nothing herein is an admission by the Surety or the Debtors or any of their non-debtor affiliates or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith.

## II.    LIMITED OBJECTION TO DIP FINANCING MOTION

14.    The Surety objects on a limited basis to the proposed DIP Financing Order [Doc. No. 186 beginning on p. 42 of 106], and approval of the DIP Facilities, to the extent that, among other things, the DIP Facilities contravenes the Surety's rights of equitable subrogation and/or provides priming liens on assets of the Debtors or any non-debtors, including without limitation, assets that may be subject to any liens or claims that may be asserted by beneficiaries of or obligees under any bonds issued by the Surety, including the Bonds, to which the Surety may be subrogated.

8

15. Section 364(d) of the Bankruptcy Code permits a DIP Lender to prime existing liens as follows:

> The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

16. Thus, appropriate language should be added to the DIP Final Order (as set forth below) to clarify that the lien, setoff and/or recoupment rights of the Surety and the beneficiaries/obligees relating to the Bonds are unaffected by the DIP Facility and any postpetition financing[3]. Furthermore, to the extent that the Debtors fail to comply with any of the obligations that relate to the Bonds, each and every beneficiary of and obligee under the applicable Bonds should be permitted to exercise its rights of setoff and/or recoupment, and, the Surety, to the extent that it steps into the shoes of any such beneficiary or obligee, should be permitted to assert such rights, by virtue of subrogation.

17. Indeed, the Surety has an equitable subrogation right that arises by common law to the extent that the Surety pays any claim under any of the bonds it has issued, including the Bonds. Courts have recognized that a surety, upon payment of bond claims, is subrogated to the rights of the principal on the bond and/or a beneficiary or obligee on the bond. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) ("there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right

---

[3] The Surety's postpetition rights, to the extent they exist, need to be protected as well as prepetition rights.

to be reimbursed"); *Henningsen v. United States Fid. & Guar. Co.*, 208 U.S. 404, 410 (1908) (holding surety has superior equity under the doctrine of subrogation in sums due under the contract after the surety made payments to beneficiaries/claimants under the bond where the bond principal failed to do so); *Prairie State Nat'l Bank v. United States*, 164 U.S. 227, 232-33 (1896) (holding surety had subrogation rights to contract funds after satisfying bonded obligations); *Ky. Cent. Ins. Co. v. Brown (In re Larbar Corp.)*, 177 F.3d 439, 443 (6th Cir. 1999) (noting "[t]he law is clear" that a surety's right to subrogation arises "when a [bond principal] defaults on its obligations and a surety completes the work called for by the contract and pays all of the related bills"); *Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) (noting that upon bond principal's default, the surety is subrogated to the obligee's right to pay beneficiaries under the bond (in this case, laborers and materialmen), and to apply earned but unpaid progress payments at the time of default to the cost of completion of bonded obligations); *Mendelsohn v. The Dormitory Authority of N.Y. (In re QC Piping Installations, Inc.)*, 225 B.R. 553, 562 (Bankr. E.D.N.Y. 1998) ("it is now irrefutable that a surety, after satisfying its obligations under either a payment or performance bond, is subrogated to the rights of the party he paid"); *John's Insulation, Inc. v. Hartford Accident & Indem. Co. (In re John's Insulation, Inc.)*, 221 B.R. 683, 688 (Bankr. E.D.N.Y. 1998) (noting that a surety, after completing a contract upon the default of the principal, is "subrogated to the rights of the principal, and has rights to the funds that are due and are to become due under a contract, including any undisbursed proceeds previously earned and any retainages held until contract completion").  In other words, the surety may step into the shoes of these entities and enforce the claims they may have against each other, or other third parties.

18.    Based upon the foregoing, the DIP Financing Order should be modified to include the following language, or substantially similar language, which has been entered in other cases in this and other jurisdictions to simply preserve the surety's interests:

> Nothing in this Order, any Motion or the DIP Facilities shall in any way prime or affect the rights of U.S. Specialty Insurance Company, (the "<u>Surety</u>") as to: (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due any of the Debtors or any of their non-debtor affiliates in relation to contracts or obligations bonded by the Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates (collectively (a) to (c), the "<u>Surety Assets</u>"). Nothing in this Order, any Motion or the DIP Facilities shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates as to the Surety Assets or otherwise, including, but not limited to, the six General Agreements of Indemnity (the "<u>Indemnity Agreements</u>") executed on or about March 22, 2019, April 9, 2019, April 10, 2019, April 30, 2019, August 26, 2019 and March 10, 2020 by non-debtor WeWork Companies LLC, WeWork Companies Inc. and Debtors 500 11th Ave North Tenant LLC, 101 East Washington Street Tenant LLC, 1115 Broadway Q LLC, 2222 Ponce DeLeon Blvd Tenant LLC, and 830 NE Holladay Street Tenant LLC. In addition, nothing in this Order, any Motion or the DIP Facilities shall prime or otherwise impact: (x) current or future setoff and/or recoupment rights and/or the lien rights of the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any existing or future subrogation or other common law rights of the Surety. In addition, notwithstanding anything in this Order, any Motion or the DIP Facilities to the contrary, the rights of the Surety in connection with any letter of credit (and any amendment(s) or modification(s) thereto) relating to any of the Debtors or their non-debtor affiliates, including but not limited to that certain Irrevocable Letter of Credit and amendments thereto in favor of among others, the Surety, having an aggregate amount of credit of $5,113,960.00 (the "ILOCs"), and any and all proceeds thereof, shall not be affected or impaired, and neither the ILOCs nor an proceeds therefrom constitute property of the bankruptcy estate. To the extent that any Surety Assets are being held or will be held by or on behalf of any one or more of the Debtors or any of their non-debtor affiliates and are used as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of the use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date. In addition, notwithstanding anything in this Order, any Motion or the DIP Facilities to the contrary, the rights, claims, and defenses of the Debtors and any of their non-debtor affiliates, of any obligee on any bond issued by the Surety and of the Surety, including the Surety's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors or any of their non-debtor affiliates and of any successors in

interest to any of the Debtors or any of their non-debtor affiliates and any creditors, to object to any such liens, claims and/or equitable subordination and other rights, are fully preserved. Nothing herein is an admission by the Surety or the Debtors or any of their non-debtor affiliates or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith.

### III.    LIMITED OBJECTION TO SURETY MOTION

19.    Although a proposed Final Surety Order has not yet been filed with respect to the Surety Motion, because paragraph 2 of each Indemnity Agreement provides in pertinent part: "The INDEMNITORS shall indemnify and save harmless the SURETY from and against any … expense, cost, attorney's fees and expenses … incurred by the SURETY … which SURETY shall at all time incur by reason of its execution of any Bond…[,]" the Surety proposes that any Final Surety Order include the following language or substantially similar language:

> Notwithstanding anything in the Interim Order or in this Final Order to the contrary, during the pendency of these cases the Debtors shall, to the extent consistent with their contractual obligations in connection with the Lease Security Bonds, Indemnity Agreements, collateral-related agreements or other similar instruments to U.S. Specialty Insurance Company ("USIC"), pay all postpetition costs and expenses including attorneys' fees incurred or to be incurred by USIC. The foregoing shall not prejudice USIC's rights, remedies, claims, and/or defenses, with respect to any prepetition obligations, and the Debtors reserve all rights, remedies, claims and/or defenses with respect to said prepetition obligations.

### IV.    LIMITED OBJECT TO DE MINIMIS SALE MOTION

A.    The De Minimis Sale Motion

20.    The Surety objects on a limited basis to the De Minimis Sale Motion and proposes to that the following should be included in any De Minimis Sale Order:

21.    The De Minimis Order should provide that none of the Surety's Bonds and/or any related agreements can be sold, assigned, or otherwise transferred pursuant to any De Minimis sale, unless upon the Surety's consent, in compliance with the terms of such bonds, any related agreements, and/or applicable non-bankruptcy law.

22. The De Minimis Sale Order should provide that counterparties to contracts being sold should be included as a "Sale Notice Party."

23. The De Minis Sale Order should provide that regardless of the dollar amount of sale, if a contract subject to a surety bond is to be sold, then both the counterparty and the surety should receive notice and be permitted an opportunity to object.

**RESERVATION OF RIGHTS**

24. The submission of this Limited Objection by the Surety is not intended as, and shall not be construed as: (a) the Surety's admission of any liability or waiver of any defenses or limitation of any rights of Surety with respect to any claims against any one or more of the Bonds or under any indemnity agreement in favor of the Surety, including the Indemnity Agreement; (b) the Surety's waiver or release of any right to exoneration it may have against anyone with respect to any of the Bonds; (c) the Surety's waiver or release of its right to be subrogated to the rights of one or more of the parties paid in connection with any of the Bonds; (d) an election of remedy; or (e) consent to the determination of any of the Debtors' liability to the Surety by any particular court, including, without limitation, the Bankruptcy Court.

25. The Surety reserves the rights to object and put forth any argument in relation to any motion being objected to herein proposed by the Debtors, and to raise any arguments by any other party in their objection(s) to any motion being objected to herein.

26. The Surety expressly reserves, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with its and any of the Debtors' or its affiliates' rights and obligations under the Indemnity Agreements, the Bonds, applicable law, or otherwise. Surety further reserves all rights to assert any and all such rights, claims, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without

13

limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

27. The Surety further reserves all of its rights to raise any issues contained in this Limited Objection and any other related issues in any procedurally appropriate contested matter and/or adversary proceeding, including, without limitation, (a) objections to confirmation of any plan; (b) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief; (c) or an objection to any subsequent motion seeking approval of an asset sale to any prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Surety respectfully requests that the foregoing Limited Objections be addressed in the Final Cash Collateral Order, the Final Surety Order, the DIP Financing Order and De Minimis Sale Order.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: November 29, 2023

/s/ *Gary D. Bressler*
Gary D. Bressler, Esq.
Michael R. Morano, Esq.
225 Liberty Street, 36th Floor
New York, NY 10281
Tel: (212) 483-9490
Fax: (212) 483-9129
gbressler@mdmc-law.com
mmorano@mdmc-law.com
(admitted pro hac vice)
*Counsel to U.S. Specialty Insurance Company*