McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Gary D. Bressler, Esq.
Michael R. Morano, Esq.
225 Liberty Street, 36th Floor
New York, NY 10281
Tel: (212) 483-9490
Fax: (212) 483-9129
*Counsel to U.S. Specialty Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **WEWORK INC.**, *et al.*, | : | **Case No. 23-19865 (JKS)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

**DECLARATION OF FRANK M. LANAK IN SUPPORT OF U.S. SPECIALTY INSURANCE COMPANY'S LIMITED OBJECTION TO:**

A. **DEBTORS MOTION FOR ENTRY OF [INTERIM AND] FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (a) MAINTIAN INSURANCE AND SURETY COVERGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGTIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURNACE AND SURETY COVERAGE AND (II) GRANTING RELATED RELIEF [Doc. No. 7];**

B. **DEBTOR'S MOTION FOR ENTRY OF [INTERIM AND] FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) [SCHEDULING A FINAL HEARING], (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF [Doc. No. 43];**

C. **DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND ESTABLISHING PROCEDURES FOR THE DE MINIMIS ASSET TRANSACTIONS; (II) AUTHORIZING AND ESTABLISHING PROCEDURES FOR DE MINIMIS ASSET ABANDONMENT; (III) APPROVING THE FORM AND MANNER OF THE NOTICE OF DE MINIMIS ASSET TRANSACTIONS AND ABANDONMENT; AND (IV) GRANTING RELATED RELIEF [Doc. No. 142]; and**

D. **DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III)**

---

[1]A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor We Work Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017 and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**
[Doc. No. 186].

I, FRANK M. LANAK, of full age, hereby declare as follows:

1.      I am a Vice President of U.S. Specialty Insurance Company ("USSIC" or the "Surety"). As such, I am fully familiar with the facts contained in this Declaration.

2.      I make this Declaration on behalf of USSIC's Limited Objection ("Limited Objection") to:

(A) *Debtors Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage Entered Into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage and (II) Granting Related Relief* [Doc. No. 7]("Surety Motion");

(B) *Debtors' Motion for Entry of [Interim and]Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) [Scheduling a final Hearing], (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Doc. No. 43]("Cash Collateral Motion");

(C) *Debtors' Motion for Entry of an Order (I) Authorizing and Establishing Procedures for the De Minimis Asset Transactions; (II) Authorizing and Establishing Procedures for De Minimis Asset Abandonment; (III) Approving the Form and Manner of the Notice of De Minimis Asset Transactions and Abandonment; and (IV) Granting Related Relief* [Doc. No. 142]("De Minimis Sale Motion"); and

(D) *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting*

2

*Related Relief* [Doc. No. 186]("DIP Financing Motion"). *for Order (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Granting Liens and Superpriority Claims, and (III) Granting Related Relief* ("DIP Financing Motion")[Docket No. 186].

3.     On November 7, 2023 ("Petition Date"), the Debtors filed petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Prior to the Petition Date, the Surety issued and/or executed certain surety bonds and/or related instruments on behalf of one or more of the debtors and/or their non-debtor affiliate in connection with without limitation, the Debtors' business operations (collectively, the "Bonds").

4.     Among the Bonds are lease security bonds, issued on behalf of an individual Debtor as principal and in favor of a landlord, whereby such landlord, as obligee, may draw down on the lease security bond in event of, for instance, default on the part of the principal as tenant.

5.     Currently, there are three active lease security bonds as follows:

  A.  Bond No. 1000836522 issued on behalf of Debtor 500 11th Ave North Tenant LLC as principal in favor of Capitol View JV-E as obligee, with a penal sum, reduced by a rider, to $1,633,210.00;

  B.  Bond No. 1000836525 issued on behalf of Debtor 2222 Ponce De Leon Blvd Tenant LLC as principal in favor of Girlada PB, LLC as obligee, with a penal sum, reduced by rider, to $1,113,592.00; and

  C.  Bond No. 1000836535 issued on behalf of Debtor 830 NE Holladay Street Tenant LLC as principal in favor of AAT Lloyd District, LLC as obligee, with a penal sum of $2,341,715.00.

3

6.    The Debtors' filed a list of what they contend to be active surety bonds at Doc. No. 7 (page 45 of 45), in which they listed Bond No. 1000836524 in favor of RED Development as Obligee with a penal sum of $2,000,000.00.    To the contrary, the Surety issued Bond No. 1000836524 on behalf of Debtor 101 East Washington Street tenant LLC in favor of Block 23 Commercial, LLC (with a usual place of business at c/o RED Development, One East Washington Street, Suite 300, Phoenix, Arizona 85004), with a penal sum of $2,000,000.00.    However, the penal sum of that bond was paid out in full in March of 2021, and is therefore, no longer active.[2]

7.    The active Bonds are, upon information and belief, currently in the aggregate amount (penal sum) of no less than $5,088,517.00.

8.    In connection with the Surety's issuance of the Bonds, including, but not limited to, those generally described above, WeWork Companies Inc. (unclear as to whether this entity is a Debtor or non-debtor), WeWork Companies LLC (it is believed that WeWork Companies LLC, listed as a non-debtor by the Debtors, no longer exists as an active company but is now known as "WeWork Companies U.S. LLC f/k/a WeWork Companies LLC", such that it is a Debtor), along with debtors 500 11th Ave North Tenant LLC, 830 NE Holladay Street Tenant LLC, 115 Broadway Q LLC, 2222 Ponce De Leon Blvd Tenant LLC,  and 101 East Washington Street Tenant LLC, executed and delivered to the Surety, six General Agreement of Indemnity ("Indemnity Agreements" or "Indemnity Agreement"), in favor of the Surety, as indemnitee, dated on or about March 22, 2019, April 9, 2019, April 10, 2019, April 30, 2019, August 26, 2019, and March 10, 2020.  A true and correct redacted copy of each of the Indemnity Agreements is attached hereto.

9.    Paragraph one (1) of each Indemnity Agreement provide:

---

[2] The Debtors also names the surety as Tokio Marine HCC, which is incorrect. Tokio Marine HCC is the marketing name used to describe affiliated companies under common ownership of HCC Insurance Holdings, Inc. Tokio Marine HCC's bonds are underwritten by, among others, U.S. Specialty Insurance Company. U.S. Specialty Insurance Company is the surety that issued the bonds.

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP-** The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The Surety's election not to demand collateral at the inception of the suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

10. Under paragraph two (2) of each Indemnity Agreement, the Indemnitors are obligated to, among other things:

2. **INDEMNITY & COLLATERAL FOR CLAIM.** The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at all time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any BOND, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the

SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY's sole discretion, as collateral security to cover the liability.

11.    Therefore, the Indemnity Agreements creates, among other rights, contractual rights of indemnification and exoneration in favor of the Surety.

12.    On or about February 20, 2020, Goldman Sachs International Bank, on behalf of WeWork Companies LLC as applicant, issued Irrevocable Letter of Credit Number 40000375 in the amount of $10,389,466.50 in favor of U.S. Specialty Insurance Company,, for itself, and on behalf of its parents, affiliates, and subsidiaries, which amount was reduced to $5,113,960.00 by way of amendment on or about September 13, 2023 ("ILOC"), which ILOC  was issued to secure the Indemnitors' obligations under, without limitation, the Indemnity Agreements.

13.    On or about November 15, 2020, the Surety notified Goldman Sachs International Bank that it was requesting a draw under the ILOC in the amount of $5,113,960.00, which draw was honored by Goldman Sachs International Bank.

[Remainder of page left blank, intentionally]

I declare under penalty of perjury that this Declaration is true and correct to the best of my

knowledge.

Executed on:  November 28, 2023

FRANK M. LANAK
Vice President
U.S. Specialty Insurance Company



TOKIO MARINE
HCC

## GENERAL AGREEMENT of INDEMNITY

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP-**The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2. **INDEMNITY & COLLATERAL FOR CLAIM-** The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

Page 1 of 5

3.  **EVENT OF DEFAULT**- As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

   A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;
   B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;
   C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;
   D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;
   E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4.  **OTHER INDEMNITY**- The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5.  **INVALIDITY**- In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6.  **SETTLEMENT**- SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7.  **DECLINE EXECUTION** - Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8.  **BOOKS AND RECORDS** – At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9.  **CHANGES, WAIVER OF NOTICE** - Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL** – The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3

WeWork-3/18                                        Page 2 of 5

and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

 "Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights

and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _22_ day of _March_, 2019.

WeWork Companies Inc.
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 80 State Street, Albany, NY 11207

Tax ID: ████████

Attest: _E. G. w_                    By: _____ (Seal)
Name, Title _Elvis Erazo_                Name, Title
_Assistant_                              _Peter Greenspan_
                                         _Assistant Secretary_

**CORPORATE ACKNOWLEDGMENT**

State of ___New York___

County of ___Kings___ ss:

On this ___22nd___ day of ___March___, 20 ___19___, before me personally came ___Peter Greenspan___ to me known, who being by me duly sworn, deposed and says that he/she is the ___Assistant Secretary___ of ___WeWork Companies Inc___, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019

_____
(Signature of Notary Public)

My commission expires ___4/20/19___


IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this __22__ day of ___March___, 2019.

500 11ᵗʰ Ave North Tenant LLC
(Full Name & Address of Indemnitor)

Address: 115 West 18ᵗʰ Street
New York, NY 10011

Tax ID: ██████████

By: _____ (Seal)
Name, Title
Name: Pamela Swidler
Title: Secretary

Attest: _____
Name, Title
Elmis Erazo
Assistant


## CORPORATE ACKNOWLEDGMENT

State of ___New York___

County of ___Kings___ ss:

On this ___22nd___ day of ___March___, 20 ___19___, before me personally came ___Pamela Swidler___ to me known, who being by me duly sworn, deposed and says that he/she is the ___Secretary___ of ___500 11ᵗʰ Avenue North Tenant LLC___, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019


**TOKIO MARINE**
**HCC**

## GENERAL AGREEMENT of INDEMNITY

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2. **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **EVENT OF DEFAULT-** As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

   A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;

   B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;

   C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;

   D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;

   E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4. **OTHER INDEMNITY-** The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5. **INVALIDITY-** In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6. **SETTLEMENT-** SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7. **DECLINE EXECUTION -** Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **BOOKS AND RECORDS –** At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9. **CHANGES, WAIVER OF NOTICE -** Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL –** The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3

and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

"Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights

WeWork-3/18                                    Page 3 of 5

and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this __9__ day of April, 2019.

WeWork Companies Inc.
_____
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 80 State Street, Albany, NY 11207

Tax ID: ███████████

By: _____ (Seal)
Name, Title
Peter Greenspon
Assistant Secretary

Attest: _____
Name, Title
Elmis Erazo
Administrative Assistant

**CORPORATE ACKNOWLEDGMENT**

State of _New York_

County of _New York-Kings_ ss:

On this ___9th___ day of ___April___, 20 _19_, before me personally came _Peter Greenspan_ to me known, who being by me duly sworn, deposed and says that he/she is the _Assistant Secretary_ of _WeWork Companies Inc._, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019

_____
(Signature of Notary Public)

My commission expires ___4/20/19___

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _9_ day of April, 2019.

101 East Washington Street Tenant LLC
(Full Name & Address of Indemnitor)

Address: 115 West 18th Street
New York, NY 10011

Tax ID: ████████

Attest: _____    By: _____ (Seal)
Name, Title                            Name, Title
Elmis Erazo                            Name: Pamela Swidler
Administrative Assistant               Title: Secretary

## CORPORATE ACKNOWLEDGMENT

State of _New York_

County of _Kings_ ss:

On this ___9th___ day of ___April___, 20 _19_, before me personally came _Pamela Swidler_ to me known, who being by me duly sworn, deposed and says that he/she is the _Secretary_ of _101 East Washington Street Tenant LLC_ the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019



## GENERAL AGREEMENT of INDEMNITY

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2. **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

Page 1 of 5

3. **EVENT OF DEFAULT**- As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

   A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;

   B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;

   C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;

   D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;

   E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4. **OTHER INDEMNITY**- The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5. **INVALIDITY**- In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6. **SETTLEMENT**- SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7. **DECLINE EXECUTION** - Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **BOOKS AND RECORDS** – At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9. **CHANGES, WAIVER OF NOTICE** - Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL** – The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3

and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

"Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights

Page 3 of 5

WeWork-3/18

and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal.*

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this 16ᵗʰ day of April, 2019.

WeWork Companies Inc.
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 80 State Street, Albany, NY 12207

Tax ID: ███████

By: _____ (Seal)
Name, Title
Peter Greenspan
Assistant secretary

Attest: _____
Name, Title
Elmis Ergzo
Admin Assistant

**CORPORATE ACKNOWLEDGMENT**

State of ___New York___

County of ___Kings___ _____ ss:

On this _10th_ day of ___April___, 20 _19_, before me personally came _Peter Greenspan_ to me known, who being by me duly sworn, deposed and says that he/she is the _Assistant Secretary_ of _WeWork Companies Inc_, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019

_____
(Signature of Notary Public)

My commission expires _4/20/19_

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _10th_ day of April, 2019.

_1115 Broadway Q LLC_
(Full Name & Address of Indemnitor)

Address:  115 West 18th Street
New York, NY 10011

Tax ID: ████████

By: _____ (Seal)
Name, Title
Name: Pamela Swidler.
Title: Secretary

Attest: _____
Name, Title
Elmis Erazo
Admin Assistant

## CORPORATE ACKNOWLEDGMENT

State of ___New York___

County of ___Kings___ _____ ss:

On this _10th_ day of ___April___, 20 _19_, before me personally came _Pamela Swidler_ to me known, who being by me duly sworn, deposed and says that he/she is the _Secretary_ of _1115 Broadway Q LLC_, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2019

4/20/19

WeWork-3/18



TOKIO MARINE
HCC

## <u>GENERAL AGREEMENT of INDEMNITY</u>

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2. **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **EVENT OF DEFAULT-** As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

    A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;

    B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;

    C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;

    D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;

    E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4. **OTHER INDEMNITY-** The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5. **INVALIDITY-** In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6. **SETTLEMENT-** SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7. **DECLINE EXECUTION -** Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **BOOKS AND RECORDS –** At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9. **CHANGES, WAIVER OF NOTICE -** Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL –** The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3

and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

"Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights

and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this <u>30</u> day of <u>April</u>, 2019.

WeWork Companies Inc.
_____
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 80 State Street, Albany, NY 11207

Tax ID: [redacted]

Attest: _____      By: _____ (Seal)
Name, Title                                                          Name, Title
Elmis Elvio                                                            Pete Greenspon
Admin. Assistant                                                   Assistant Secretary

**CORPORATE ACKNOWLEDGMENT**

State of _____ New York _____

County of _____ Kings _____ ss:

On this _____ 30th _____ day of _____ April _____, 20 19 _____, before me personally came _____ Peter Greenspan _____ to me known, who being by me duly sworn, deposed and says that he/she is the _____ Assistant Secretary _____ of _____ WeWork Companies Inc _____, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2023

_____
(Signature of Notary Public)

My commission expires 4/20/23

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this 30 day of April, 2019.

2222 Ponce De Leon Blvd Tenant LLC
(Full Name & Address of Indemnitor)

Address:  115 West 18th Street
New York, NY 10011

Tax ID: ████

Attest: _____
Name, Title
Elmis Erazo
Admin Assistant

By: _____ (Seal)
Name, Title
Name: Pamela Swidler
Title: Secretary

**CORPORATE ACKNOWLEDGMENT**

State of _____ New York _____

County of _____ King _____ ss:

On this _____ 30th _____ day of _____ April _____, 20 19 _____, before me personally came _____ Pamela Swidler _____ to me known, who being by me duly sworn, deposed and says that he/she is the _____ Secretary _____ of _____ 2222 Ponce de Leon Blvd Tenant LLC _____, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2023

WeWork-3/18    Page 5 of 5

 **TOKIO MARINE HCC**

Surety Group
8 Forest Park Drive, Farmington, Connecticut 06032

## GENERAL AGREEMENT of INDEMNITY

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1.  **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2.  **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **EVENT OF DEFAULT-** As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

   A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;

   B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;

   C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;

   D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;

   E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4. **OTHER INDEMNITY-** The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5. **INVALIDITY-** In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6. **SETTLEMENT-** SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7. **DECLINE EXECUTION -** Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **BOOKS AND RECORDS –** At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9. **CHANGES, WAIVER OF NOTICE -** Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL –** The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3

and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

"Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights

and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _26th_ day of August, 2019.

WeWork Companies LLC
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 251 Little Falls Drive, Wilmington, DE 19808

Tax ID: ▮▮▮▮▮▮▮

By: _____ (Seal)
      Name, Title

Attest: _____
      Name, Title
      Dominique Coleman, Paralegal

**CORPORATE ACKNOWLEDGMENT**

State of _New York_

County of _New York_ _____ ss:

    On this ___26___ day of ___August___ , 20 _19_ ,before me personally came _Peter Greenspan_ to me known, who being by me duly sworn, deposed and says that he/she is the _Assistant Secretary_ of _Wework companies LLC_ , the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

                    (Signature of Notary Public)

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2023

My commission expires _4/20/23_

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this____ day of <u>August</u>, 2019.

<u>830 NE Holladay Street Tenant LLC</u>
(Full Name & Address of Indemnitor)

Address:  115 West 18th Street
New York, NY 10011

Tax ID: ███████

By: _____ (Seal)
    Name, Title
    Name: Pamela Swidler
    Title: Secretary

Attest: _____
    Name, Title
    Dominique Coleman, Paralegal

## CORPORATE ACKNOWLEDGMENT

State of _New York_

County of _New York_ _____ ss:

    On this ___26___ day of ___August___ , 20 _19_ ,before me personally came _Pamela Swidler_ to me known, who being by me duly sworn, deposed and says that he/she is the _Secretary_ of _830 NE Holladay Street Tenant LLC_ , the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order. ]

KIMBERLY N SWEET
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SW6323580
Qualified in Kings County
My Commission Expires April 20, 2023

WeWork-3/18                 Page 5 of 5

 **TOKIO MARINE HCC**

Surety Group
801 S. Figueroa Street, Suite 700 Los Angeles, CA 90017

## GENERAL AGREEMENT of INDEMNITY

This General Agreement of Indemnity (the "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of U.S. Specialty Insurance Company, their respective direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, co-sureties, fronting companies, companies which any of them may procure to issue or deliver any Bonds for, on behalf of or at the request of any of the Indemnitors, and reinsurers, and the successors and assigns of each of them (individually and collectively, the "SURETY"), for the purpose of indemnifying the SURETY from any and all loss, cost and expense in connection with any and all surety bonds, undertakings, guarantees and/or contractual obligations previously or hereafter executed, issued, procured, delivered or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition or similar transaction, including any renewals, modifications and/or extensions thereof (each a "Bond" and collectively "Bonds"), for, on behalf of or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, affiliate, joint venture and/or other legal entity in which any of the INDEMNITORS has a substantial, material or beneficial interest; and/or any other party at the request of any of the INDEMNITORS (individually and collectively the "PRINCIPALS").

NOW THEREFORE, in consideration of the SURETY executing the Bonds, the INDEMNITORS agree that:

1. **PREMIUMS & COLLATERAL FOR SURETYSHIP**-The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITOR shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consent that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any other time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement. The SURETY shall have first priority security interests in and liens on any and all such collateral security and such collateral security shall not be subject to any security interest or lien of any other person or entity and no further actions shall be required of the SURETY or any other party in order to establish or perfect such security interests and liens.

2. **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITORS shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any other party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment (collectively, all such monetary obligations regardless of whether they arise before or after the date hereof), and to place the SURETY in funds to meet all of its liability under any Bond, immediately upon request and before the SURETY may be required to make any payment thereunder; a copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **EVENT OF DEFAULT-** As used in this Agreement, an Event of Default ("DEFAULT") means any one or more of the following:

   A. Any notice of default by an obligee on any Bond or Bonds due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any contract or obligations referred to in the Bonds, or any breach of the Bonds themselves, which notice of default SURETY believes is valid;

   B. Any failure, delay, refusal or inability of any PRINCIPAL to pay when due claims, bills or other indebtedness incurred in, or in connection with the performance of any contract for which the SURETY provided a Bond;

   C. The failure to perform, or comply with the terms, covenants or obligations in this Agreement;

   D. Any assignment by the PRINCIPALS or INDEMNITORS for the benefit of creditors, or upon any one or more of the PRINCIPALS' or INDEMNITORS' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether solvent or not;

   E. The occurrence of any event other than specified in A through D herein which, in the SURETY's good faith belief may expose SURETY to loss, cost, or expense.

4. **OTHER INDEMNITY-** The INDEMNITORS shall remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPALS and the INDEMNITORS, accepted or released other agreements of indemnity (including, but not limited to amendments to this Agreement adding or removing INDEMNITORS) or collateral in connection with the execution or procurement of said Bonds, from the PRINCIPALS or INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the PRINCIPALS and INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

5. **INVALIDITY-** In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

6. **SETTLEMENT-** SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS and PRINCIPALS.

7. **DECLINE EXECUTION -** Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **BOOKS AND RECORDS –** At any time during this Agreement and until such time as the liability of the SURETY under all Bonds is terminated and SURETY is fully reimbursed all amounts due under this Agreement, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPALS and INDEMNITORS wherever located, for the purpose of inspection, copying or reproduction.

9. **CHANGES, WAIVER OF NOTICE -** Assent by the SURETY to changes in any Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

10. **CHANGE OF CONTROL** – The INDEMNITORS shall provide written notice to SURETY prior to the occurrence of any of the following events: the Permitted Investors, taken together, shall cease to beneficially own (as defined in Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934 (the "Exchange Act")), directly or indirectly, securities having a majority of the ordinary voting power for the election of directors of the INDEMNITORS measured by voting power rather than number of shares (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested), unless the Permitted Investors, taken together, beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, (i) at least 35% (determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested) of the outstanding voting interests in the Capital Stock of the INDEMNITORS and (ii) more of the outstanding combined voting interests in the Capital Stock of the INDEMNITORS than any other Person or "group" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) determined on a fully diluted basis but not giving effect to contingent voting rights which have not vested.

As used in this paragraph 10:

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing, but excluding any debt securities convertible into any of the foregoing.

"Permitted Investors" means (a) Adam Neumann, Miguel McKelvey, Benchmark Capital Partners VII (AIV), L.P., DAG Holdings, We Holdings LLC (so long as the majority of the equity interests of We Holdings LLC are beneficially owned by persons who are otherwise Permitted Investors), JP Morgan Holdings, SoftBank Group Capital Limited, and SBWW Investments Limited, (b) any Affiliate of any such Person listed in clause (a), (c) any trust or partnership created solely for the benefit of any natural person listed in clause (a) and/or members of the family of any natural person listed in clause (a), and (d) any Person where the voting of shares of Capital Stock of the INDEMNITORS is controlled by any of the foregoing.

"Person" means an individual, partnership, corporation, limited liability company, business trust, unincorporated association, joint venture, governmental authority, or other entity of whatever nature.

11. **PERFECTION OF SECURITY INTEREST** – This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this Agreement describing specific items of collateral covered hereunder as shall be necessary. For the purposes of recording this Agreement a photocopy or electronic image of this Agreement acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original. While effective on the date of execution of this agreement, SURETY will file this agreement only if the INDEMNITOR is in DEFAULT.

12. **SPECIFIC PERFORMANCE** -- The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a final decree, order or judgment granting SURETY specific performance of the terms of such paragraph.

13. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon twenty days' written notice sent by registered mail to the SURETY at its home office at 8 Forest Park Dr., Farmington, CT 06032, but any such notice of termination shall not operate to modify, bar or discharge the INDEMNITOR as to the BONDS that may have been executed before the effective date of such written notice.

14. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

15. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights and liabilities of the parties determined in accordance with the laws of the State of New York. INDEMNITOR agrees that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

16. **JOINT/SEVERAL** - Each undersigned Indemnitor, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

17. **ATTORNEY-IN-FACT** – The INDEMNITORS hereby irrevocably nominate, constitute, designate and appoint SURETY or any person or persons designated by SURETY as attorney-in-fact with the right to exercise all of the rights assigned, transferred and set over to SURETY under the terms of this Agreement including but not limited to financing statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPALS or INDEMNITORS and to execute and deliver any and all instruments or documents deemed necessary or desirable by SURETY in order to i) vest in SURETY absolute title to any and all monies, property and rights hereby assigned; and ii) provide the protection and rights to SURETY contemplated by all of the provisions of this Agreement. INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY as such attorney-in-fact.

18. **CURRENCY** – All sums payable hereunder are expressed and payable in the currency of the United States of America. If recovery hereunder is made pursuant to a judgment and is stated in a currency other than United States of America dollars, payment owed hereunder shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the SURETY'S demand is made, the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

19. **FACSIMILE** – This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the Surety as an original, digital image, scan, or as a facsimile transmission.

20. **COUNTERPARTS** – This Agreement may be executed in any number of separate counterparts each of which, when executed and delivered to the other Party, shall be an original as against the Party whose signature appears on such counterpart, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _10_ day of _March_, 2019.

WeWork Companies LLC
(Full Name & Address of Indemnitor)

Address: c/o Corporation Services Company, 80 State Street, Albany, NY 11207

Tax ID: █████████

Attest: _Chandler Salisbury_
Name, Title
Chandler Salisbury,
Director, Corporate Finance.

By: _____ (Seal)
Name, Title

WeWork-3/18                    Page 4 of 5

**CORPORATE ACKNOWLEDGMENT**

State of _New York_

County of _New York_ ss:

On this _10_ day of _March_, 20 _20_, before me personally came _Jared DeMatteis_ to me known, who being by me duly sworn, deposed and says that he/she is the _Deputy Chief Legal Officer + Assistant Secretary_ of _WeWork Companies LLC_, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

REBECCA SCIABARASI
Notary Public, State of New York
Reg. No. 01SC6379256
Qualified in New York County
Commission Expires 08/13/2022

_Rebecca Sciabarasi_
(Signature of Notary Public)

My commission expires _8-13-2022_

IN WITNESS WHEREOF, INDEMNITORS have signed this Agreement this _10_ day of _March_, 2020.

_WeWork Companies LLC_
(Full Name & Address of Indemnitor)

Address:

Tax ID:

Attest: _____, NOTARY PUBLIC    By: _____ (Seal)
Name, Title                      Name, Title

AMANDA SHEPHERD
Notary Public, State of New York
No. 01SH6305503
Qualified in New York County
Commission Expires June 9, 2022

**CORPORATE ACKNOWLEDGMENT**

State of _New York_

County of _New York_ ss:

On this _10th_ day of _March_, 20 _20_, before me personally came _Edward Granaghan_ to me known, who being by me duly sworn, deposed and says that he/she is the _Assistant Treasurer_ of _WeWork Companies LLC_, the corporation described in and which executed the foregoing Agreement; that he/she knows the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/ her name thereto by like order.

WeWork-3/18                    Page 5 of 5