UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Peter J. D'Auria, Esq.
Fran B. Steele, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email: Peter.J.D'Auria@usdoj.gov
       Fran.B.Steele@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WeWork Inc., *et al.*,[1] | : | Case No. 23-19865(JKS) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hearing Date: December 6, 2023 at 11:00 a.m. |
| | : | |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND
PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE
STATUS, (III) MODIFYING THE AUTOMATIC STAY, AND
<u>(IV) GRANTING RELATED RELIEF</u>**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this limited objection (the "Limited Objection") to the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork.

*Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (the "Motion") (Dkt. 186), and respectfully states:

## PRELIMINARY STATEMENT

1. The Motion proposes that significant funds will be held in certain accounts without the protections of section 345(b) of the Bankruptcy Code. According to the Motion, the Debtors will borrow upwards of $650 million, and then deposit such funds into certain DIP LC Loan Collateral Accounts,[2] and the Debtors further seek a waiver of the requirements of section 345(b) regarding such accounts. The Motion does not detail exactly what amount of funds will be held in the DIP LC Loan Collateral Accounts, but it does state that proposed DIP Facilities could be as much as $650 million.

2. The Motion also states that the DIP LC Loan collateral Accounts will be one or more interest bearing account(s) established with a DIP LC Issuer, and that the DIP LC Issuers are Goldman Sachs and JPMorgan (or each acting through an affiliate or branch thereof). However, the Motion does not detail exactly what financial institution will ultimately hold such accounts, or what type off accounts they will be. In sum, the Court is being asked to approve a waiver of the requirements of section 345(b) without clear information provided as to what amount of funds are in question, where the funds will be held, or what type of account the funds will be held in.

3. By this Limited Objection, the U.S. Trustee does not object to the proposed financing being presented by the Motion. The U.S. Trustee objects to the request to waive the requirements of section 345(b) regarding any funds that get held on deposit on a going forward basis, and respectfully asserts that for the safety and benefit of the Debtors' estates any such funds must be held in an appropriately collateralized account.

---

[2] Any capitalized terms not defined herein shall have the definition set forth in the Motion.

**JURISDICTION, VENUE AND STANDING**

4. This Court has jurisdiction to hear and determine this Objection.

5. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

**FACTUAL BACKGROUND**

*General Case Background:*

7. On November 6, 2023 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

8. On November 7, 2023, the Debtors filed the *Declaration of David Tolley, Chief Executing Officer of WeWork, Inc., in Support of Chapter 11 Petitions and First Day Motions*. (the "Tolley Declaration") (Dkt. 21).

9. On November 8, 2023, the Court entered an Order directing that these cases be jointly administered. *See* Dkt. 87.

10. The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

11. No trustee or examiner has been appointed in these chapter 11 cases.

12. On November 16, 2023, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* Dkt. 150.

13. According to presentations made to this Court, the Debtors' global presence spans to six continents and thirty-seven countries, as "WeWork is one of the largest flexible space providers in the world, operating approximately 43.9 million rentable square feet globally, including 18.3 million rentable square feet in the United States and Canada as of December 2022." *Tolley Declaration* at ¶ 41. The Debtors' "customer base includes over 600,000 individuals and companies across six continents, from Fortune 500 companies to small startups." *Id.* at ¶ 32. At the center of the Debtors' operations is the rental of business office space. "The vast majority of WeWork's revenue still comes from its core, traditional "space as service" products, which offer members access to flexible workspace and related business amenities and services ("WeWork Private Workspace"). *Id*. at ¶ 33. The Debtors serve as landlords, renting commercial office space to their business customers. "Whether looking for a dedicated desk, a private office, or a fully customized floor, Member Companies can tailor their WeWork workspace to fit their evolving business needs." *Id*.

***The Motion:***

14. The Motion contemplates that the Debtors will borrow funds via the proposed DIP Term Loan, which will be used to fund certain cash collateral accounts, those being the DIP LC Loan Collateral Accounts. Liens against the DIP LC Loan Collateral are proposed to be granted to the DIP Agent, for its own benefit and for the benefit of the DIP LC Issuers. *See*, Proposed Order, ¶ 7(i). The Debtors' ability to sell, transfer, lease, encumber, or otherwise dispose of any

4

portion of the DIP LC Loan Collateral is limited, but the Debtors nonetheless appear to have a continuing interest in the DIP LC Loan Collateral. *See*, Proposed Order, ¶ 12.

15. As the Motion contemplates borrowing of upwards of $650 Million, significant amounts will be deposited into the DIP LC Loan Collateral Accounts. The proposed DIP Order seeks authorization to hold these funds without the protections of section 345(b), stating that "[t]he requirements of section 345(b) of the Bankruptcy Code and any applicable guidelines of the U.S. Trustee are waived with respect to the DIP LC Loan Collateral Accounts." *DIP Order*, at ¶ 5.

16. The Motion states that, should the Court authorize the Debtors to borrow under the DIP Term Facility, the Debtors will fund "one or more interest-bearing DIP LC Collateral Accounts established with a DIP LC Issuer." *Motion*, at ¶ 4. The DIP LC Issuers are Goldman Sachs and JPMorgan, or each acting through an affiliate or branch thereof. *See*, Motion, table located in ¶ 17. However, the Motion does not state at what financial institution(s) the DIP LC Loan Collateral Accounts will ultimately be established, how many such accounts there will be, or what type of accounts they will consist of.

## **OBJECTION**

*Statutory Framework:*

17. Section 345(b)[3] of the Bankruptcy Code imposes certain requirements as to where estate funds can be held in order to protect the funds for the benefit of all creditors. Unless a

---

[3] Bankruptcy Code § 345(b) provides that:

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

deposit or investment is insured or guaranteed by the United States (or a federal department, agency, or instrumentality) or backed by the full faith and credit of the United States, the trustee or debtor in possession must require from an entity with whom estates funds are deposited to post a bond in favor of the United States or, in the alternative, deposit securities of the type specified in section 9303 of title 31 of the United States Code as security for the investment or deposit. *See* 11 U.S.C. § 345(b).

18. Section 345(a) of the Bankruptcy Code requires the trustee or a debtor in possession to deposit or invest money of the estate so that it will result in the "maximum reasonable net return. . . [while] taking into account the safety of such deposit or investment." Section 345(b) requires that estate funds be deposited or invested to ensure that the funds are protected for the benefit of creditors. *See* 11 U.S.C. § 345(b). A court may waive the requirements of section 345(b) upon the showing of "cause." *Id*.

19. Generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security. To ensure that trustees and debtors in possession meet their

---

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

    (i) a proper accounting for all money so deposited or invested and for any return on such money;

    (ii) prompt repayment of such money and return; and

    (iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

6

responsibilities to safeguard funds in accordance with section 345, the United States Trustee monitors fiduciaries and depositories, and requires that chapter 11 estate assets be held in debtor-in-possession accounts at "authorized depositories," *i.e.*, those that have entered into a Uniform Depository Agreement ("UDA") with the U.S. Trustee. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), §§ 7-1.1 – 7-1.2.[4]

20.  The UDA between a depository and the U.S. Trustee requires the depository to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, § 7- 1.2.1. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7- 1.3.2.

21.  Pursuant to the U.S. Trustee's responsibilities under 11 U.S.C. § 345 and 28 U.S.C. § 586, the U.S. Trustee has entered into UDAs with multiple financial institutions. The UDA requires the signatory bank to collateralize or obtain a surety bond for all estate monies exceeding FDIC insurance limits, pursuant to section 345(b) of the Bankruptcy Code. The UDA also requires banks to provide the U.S. Trustee with reports of all accounts that a debtor maintains at the bank on a quarterly basis.

22.  The UDA also aims to safeguard estates monies on deposit at UDA banks if those banks encounter difficulties during a case. Specifically, the UDA makes all estate monies on deposit immediately due and payable if the depository bank fails, suspends active operations or becomes insolvent, or if a receiver, conservator or liquidator is appointed for the bank.

---

[4] Available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual

*Review of The Accounts in Question:*

23. The Motion proposes that the Debtors will borrow funds under the proposed DIP Facilities, and then deposit such funds into DIP LC Loan Collateral Accounts that will be established with the DIP LC Issuers, those issuers being Goldman Sachs and JPMorgan (or each acting through an affiliate or branch thereof). The Motion leaves open, as yet to be determined, how many accounts there will be by stating that such accounts will be "one or more interest-bearing DIP LC Loan Collateral Accounts established with a DIP LC Issuer." *Motion*, at ¶ 4.

24. Additionally, while the Motion states that the accounts in question will be "interest-bearing" accounts, there is no information provided as to what type of accounts they will be.

25. Moreover, it is not clear from the Motion, as presented, what amount of funds will be borrowed by the Debtors and then funded into the DIP LC Loan Collateral Accounts, as such amount(s) remain to be determined. *See*, Proposed Order at ¶ (a)(ii). However, it is clear that such amounts will be very significant, as $650 million is discussed in the proposed calculations. *Id*.

26. In sum, the Motion as presented, does not detail where the DIP LC Loan Collateral Accounts will ultimately be established, how many of them there will be, what types of accounts they will be, or the exact amount of funds the Debtor will deposit into such accounts.

*The Debtor Has Not Established Cause for Relief from 11 U.S.C. § 345(b):*

27. Section 345(b) provides that the Court may exercise its discretion to waive the requirements under 345(b), but only for cause. Here, the Motion before the Court fails to establish such cause.

28. As presented, the Motion does not provide critical information needed for the Court to determine whether such a waiver is justified. The Motion does not detail where the DIP LC Loan Collateral Accounts will ultimately be established, how many of them there will be, what

8

types of accounts they will be, or the exact amount of funds the Debtor will deposit into such accounts. The Motion seeks a waiver of the requirements under 345(b), without providing necessary detail as to what it is they are seeking a waiver for. Without all necessary information being made part of the record, the Court cannot decide whether there is cause for a waiver.

29. The purpose of section 345(b) is to protect funds of a bankruptcy estate from loss; that is a simple, yet profound purpose, contained in the Bankruptcy Code for the benefit of all creditors. The funds to be deposited into the DIP LC Loan Collateral Accounts are funds the Debtors are first borrowing as DIP Financing, and then depositing into such accounts. The Motion does not discuss how the funds held in the DIP LC Loan Collateral Accounts will be safeguarded in accordance with the intents and purposes of section 345(b) or will be otherwise protected from a risk of loss to the bankruptcy estate. Without establishing that such funds will be bonded, insured, or otherwise protected, such funds stand exposed to a risk of loss. The Debtors' bankruptcy estates should not shoulder that risk.

30. As outlined above, financial institutions that are a party to a UDA are required to provide the U.S. Trustee with reports of all accounts that a debtor maintains at the bank on a quarterly basis. JPMorgan is a party to a UDA, Goldman Sachs is not. Depending on what type of account is established with JPMorgan (or an affiliate or branch thereof), such account may or may not be in compliance with the UDA and able to be monitored by the U.S. Trustee. As Goldman Sachs is not a party to a UDA, any account information with Goldman Sachs will not be shared with the U.S. Trustee. As presented, the Motion leaves open the possibility that significant sums will be held in accounts that would continue without the necessary monitoring, oversight and ability to safeguard the funds.

31. The U.S. Trustee respectfully asserts that, as presented, the Motion does not establish cause to waive the requirements of section 345(b) for the contemplated DIP LC Loan Collateral Accounts.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion as presented and grant such other relief as the Court deems just and necessary.

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By:     */s/ Peter J. D'Auria*
         Peter J. D'Auria
         Trial Attorney

By:     */s/ Fran B. Steele*
         Fran B. Steele
         Trial Attorney

Dated: December 1, 2023