# **EXHIBIT 3**

**Form Purchase Order**

**CUSHMAN & WAKEFIELD**

*Purchase order invalid without accompanying terms and conditions*

| **VENDOR NO.  E05384** | | **PURCHASE ORDER NO : 563228** |
|---|---|---|
| **TO:** | **INVOICE TO:** | **SHIP TO:** |
| LU, SUSAN | CUSHMAN & WAKEFIELD, US INC. | WE-US-33000:MANHATTAN BEACH:MANHATTAN BEACH TOW:PRINCIPAL |
| 22 MCNISH WAY | AS PRINCIPAL FOR WEWORK, INC. | CUSHMAN & WAKEFIELD AS PRINCIPAL FOR WEWORK |
| WEST CALDWELL, NJ, 7006 | 575 MARYVILLE CENTRE DRIVE, SUITE 600 | 1240 ROSECRANS AVE #120 |
| UNITED STATES | ST. LOUIS, MO, 63141 | MANHATTAN BEACH, CA, 90266 |
| | UNITED STATES | UNITED STATES |
| | unknown@cushwake.com | |

| DATE ORDERED | DATE REQUIRED | GENERAL DESCRIPTION |
|---|---|---|
| 28-JUL-2023 | 28-JUL-2023 | test |

| QTY | DESCRIPTION | UNIT COST | AMOUNT |
|---|---|---|---|
| 1. | test | 6,000.00 | 6,000.00 |
| | | **TOTAL** | **6,000.00** |

| PROPERTY | ACCT NO | FIXED ASSET ID | AMOUNT |
|---|---|---|---|
| wewu100p | 63001600 | | 6,000.00 |
| | | **TOTAL** | **6,000.00** |

*THIS PURCHASE ORDER REQUIRES APPROVAL*

**APPROVALS**

| NAME | DATE | STATUS |
|---|---|---|
| | | Created By |

Printed on 28-Jul-23

Case 23-19865-JKS    Doc 351-3    Filed 12/06/23    Entered 12/06/23 15:55:34    Desc
Exhibit 3    Page 3 of 7    *Purchase order invalid without accompanying terms and conditions*

Page **2** of **6**

**CUSHMAN & WAKEFIELD**

**VENDOR NO.  E05384**                                                                                     **PURCHASE ORDER NO : 563228**

**VENDOR ACCEPTANCE AND APPROVAL**

*I HAVE READ AND AGREE TO THE ACCOMPANYING TERMS AND CONDITIONS*

NAME           _____

DATE           _____

SIGNATURE  _____

*Purchase order invalid without accompanying terms and conditions*

**VENDOR NO.  E05384**

**PURCHASE ORDER NO : 563228**

TERMS & CONDITIONS OF ORDER

Owner: WeWork, Inc.
Purchaser: Cushman & Wakefield U.S., Inc.
Vendor/Contractor: _____

Vendor/Contractor should DIRECT ALL PAYMENT INQUIRES TO
_WeWork.ap@cushwake.com

1. By signing this Purchase Order, Contractor agrees to the terms and conditions incorporated herein by reference.

2. ACCEPTANCE: Contractor's notification to Cushman & Wakefield of acceptance, commencement of work on the goods or services subject to this Purchase Order issued hereunder or shipment of such goods, whichever occurs first, shall be deemed an acceptance of this Purchase Order.  "Contract" shall mean a Purchase Order ("PO") issued by Cushman and Wakefield containing these Terms and Conditions, which shall include any additional written agreement which has been duly executed by the parties hereto. This Contract, and any documents referenced and incorporated herein, including all terms and conditions on the face of the PO, sets forth the entire agreement of the parties with respect to the subject matter contained herein. Unless the parties have previously executed a separate written Service Addendum for the Client Account, this Contract shall be deemed to cancel and supersede any prior agreements, written or oral between the parties. Any proposal of additional or different terms or any attempt by Contractor to vary in any degree any of the terms or conditions of this offer in Contractor's acceptance is hereby objected to and rejected, but such proposals shall not operate as a rejection of this offer unless such variances are in the terms of the description, quantity, price, or delivery schedule of the goods or services, but instead shall be deemed a material alternation thereof and this offer shall be deemed accepted by Contractor without such additional or different terms. If this Purchase Order shall be deemed an acceptance of a prior offer by Contractor, such acceptance is limited to the express terms and conditions set forth in the document. Additional or different terms or any attempt by Contractor to vary in any degree any of the terms and conditions of this Purchase Order shall be deemed material and are objected to and rejected, but this Purchase Order shall not operate as a rejection of the Contractor's offer unless it contains variances in terms of the description, quantity, price, or delivery schedule of the goods or services.

3. Submit your invoice with this Purchase Order number indicated thereon. AVOID PARTIAL INVOICES.  In a manner and form reasonably acceptable to Purchaser, Vendor/Contractor shall provide correct and complete invoices to Purchaser within fourteen (14) business days of completion of work or as otherwise agreed up in writing by the parties. Payment shall be due within ninety (90) days of the date of receipt of such invoice.  Purchaser shall not be liable for payment of any invoice amount for services or expenses not billed in a timely manner, and in no event for fees for services more than ninety (90) days after such is performed or incurred as the case may be.  Vendor/Contractor agrees that it will not be paid for the services until and unless Owner furnishes funds to Purchaser specifically designated for payment of the obligations due or to become due to Vendor/Contractor hereunder; in the event Owner shall fail or refuse for any reason whatsoever to provide Purchaser with funds sufficient to pay the compensation due to Vendor/Contractor hereunder, then Purchaser will not be able to make any payment of such compensation to Vendor/Contractor, and Vendor/Contractor shall have no claim for payment against Purchaser.  In the event that Owner becomes subject to a bankruptcy or insolvency proceeding and any fees and costs paid by Owner to Purchaser (which formed the basis of Purchaser paying Vendor/Contractor) are avoided and recovered pursuant to 11 U.S.C. Section 547, or similar state insolvency law, Vendor/Contractor shall be required to refund the fees and costs Vendor/Contractor received from Purchaser on account of such avoided transfer within 30 days after Purchaser provides Vendor/Contractor with proof of such payment by Purchaser to Owner's bankruptcy estate.  If an amount less than the full amount of the alleged preferential payment is avoided, such as by way of settlement or partial defense, Vendor/Contractor's refund obligations to Purchaser shall be limited to Vendor/Contractor's pro rata share of any such avoided transfer(s).

4. All prices include F.O.B. delivery to building, applicable taxes and insurance, supervision, overhead and profit, unless specifically stated otherwise on this Purchase Order.  Purchaser, on behalf of Owner, shall have no obligation to reimburse costs and expenses (if any) incurred by Vendor/Contractor in connection with this Purchase Order, unless such costs and expenses have been approved in written quote from Vendor/Contractor by Purchaser. All goods delivered must be signed for by the Owner representative of the building.

5. PREPAY ALL FREIGHT SHIPMENTS.

6. No orders are to be accepted unless in writing or confirmed in writing.  Purchaser, upon Owner's request or for any reason, may cancel or terminate this Purchase order upon written notice to Vendor/Contractor at any time, without cause or penalty and shall only be liable to Vendor/Contractor for prices, costs, expenses, and fees incurred for services rendered through the effective date of cancellation or termination.

7. The issuance of this Purchase Order does not obligate the Purchaser to accept subsequent orders or any changes in the performance of the work. No claim for any extra work by the Vendor/Contractor will be allowed except upon complete compliance with a subsequent approved Purchase Order from Purchaser.

8. The receipt of each order must be promptly acknowledged, and delivery or performance date must be stated in such acknowledgment. Orders not so acknowledged shall give Purchaser the right to cancel at its election.

9. Any Purchase Order not accepted must be marked as such and returned to the Purchaser within three (3) days after issuance of it.

10. Purchaser may assign this Purchase Order without approval of Vendor/Contractor, but Vendor/Contractor may not assign this Purchase Order or sub-contract any portion of the work without Purchaser's prior written approval. Owner is a third-party beneficiary of this Purchase Order.

11. Contents of each package must be stated on a packing slip enclosed therein.

12. All material to be furnished or work to be performed shall be done in accordance with the plans, specifications and conditions identified in any scope of work or exhibit hereunder, or otherwise required at the building and must (regardless of specifications) comply with all laws, ordinances, rules, regulations and requirements of Board of Underwriters, all Municipal and State Government authorities and Labor Unions having jurisdiction. Should there be any violations of the foregoing in any part of the materials or work to be furnished under this order, and the Vendor/Contractor on accepting this order does not call the attention of the Purchaser to this fact, then the Vendor/Contractor, at its own expense, will furnish all labor and materials to correct such violations.

13. The Vendor/Contractor agrees to repair, replace, or make good any damages, defects or faults resulting from defective work that may appear within one year after Purchaser's acceptance of the materials or work, or for the agreed period of warranty as may be defined in any signed Service Addendum. Written guarantees if requested are to be furnished by the Vendor/Contractor.  If defective work or material is installed or furnished and allowed to remain, the Purchaser is to be allowed the difference in value between cost of work installed and cost of work specified.

14. The Vendor/Contractor will furnish all labor, materials, tools, scaffolding, rigging, hoisting, etc., required to carry on the work in the best and most expeditious manner and protect its and other work, and will do all necessary cutting and patching and remove and replace any interfering work, for the proper installation of its work. Vendor/Contractor shall perform work so as not to unreasonably interfere with Purchaser or Owner's operation of the Property or business operations of any tenant or occupant of the buildings in which work is being performed. Vendor/Contractor agrees to perform work in a good, workmanlike and timely manner, using reasonable care and skill in conformity with this Purchase Order and the highest standards in Vendor/Contractor's industry, and as reasonably acceptable to Purchaser and Owner, in accordance with Owner's building operation rules and regulations Vendor/Contractor shall be solely responsible for penalties for, and costs of labor and material, to correct any work or services as a result of any breach of this Purchase Order or violation of any applicable laws.

15. The Vendor/Contractor will procure and pay for all necessary permits in conjunction with its work.

16. The Vendor/Contractor shall commence and complete work and materials at such times as are required by the Purchaser. Time is of the essence of this agreement. Unless the Vendor/Contractor notifies the Purchaser (in writing), no delay shall be

Printed on 28-Jul-23

**CUSHMAN & WAKEFIELD**

*Purchase order invalid without accompanying terms and conditions*

| VENDOR NO.  E05384 | PURCHASE ORDER NO : 563228 |

considered for an extension of time. If at any time, the Purchaser shall consider that proper progress is not being made, the Purchaser, upon three day's written notice by registered mail, shall have the right to employ proper and sufficient men and material to proceed with the work, and charge all costs incurred in this connection to the account of the Vendor/Contractor, in the meantime, stopping any further payments until the work is completed.

17. Contractor shall, throughout the Term of the Agreement, at its cost and expense, carry and from time to time renew, the insurance set forth below. Notwithstanding the foregoing, the provisions below may change subject to the requirements of each Owner. Any such changes will be set forth in the applicable Service Addendum.

(a) Commercial General Liability Insurance in the minimum amount of $5,000,000 per occurrence, $5,000,000 per location aggregate, which shall apply on a per project basis, including Bodily Injury and Personal Injury Coverage (False Arrest, Detention or Imprisonment, Malicious Prosecution, Libel, Slander, Defamation or violation of Right of Privacy, Wrongful Entry or Eviction or other Invasion or Right of Private Occupancy), broad form Property Damage (including broad form contractual liability coverage for Contractor's indemnification as provided for in the Agreement), Premises Operations, Products/Completed Operations Hazard, and Independent Contractors;

(b) Worker's Compensation Insurance in statutory amounts which shall contain a waiver of subrogation in favor of C&W and Owner;

(c) Employer's Liability Insurance in the minimum amount of $1,000,000;

(d) Commercial Automobile Liability Insurance covering owned, non-owned and hired automobiles, trucks and trailers used by Contractor in the minimum amount of $1,000,000 combined single limit for Bodily Injury and Property Damage;

(e) In the event that Contractor is to have access to, or is responsible for handling, C&W's or Owner's funds, Fidelity Bond coverage on a blanket basis covering Contractor and its personnel, in an amount of $5,000,000 or as C&W or Owner shall reasonably request, having such deductible as shall be determined from time to time by C&W or Owner, and naming C&W and Owner as a loss payee;

(f) Non-occupational and Disability Insurance, if required by the State where the Property is located;

(g) In the event that Contractor is to park motor vehicles as part of the Services herein, Garage Keepers Legal Liability Insurance in an amount of not less than $1,000,000, which insurance may be subject to a deductible provision not to exceed $250 per occurrence.

(h) In the event Contractor is to operate a parking garage as part of the Services herein, Garage Liability Insurance in an amount of not less than $1,000,000 combined single limit; and

(i) Umbrella Liability providing coverage excess of the required employer's liability, commercial general liability, and commercial automobile liability insurance policies in a minimum amount of $10,000,000 unless otherwise approved in writing by C&W or Owner.

(j) Professional Liability. If Contractor's provision of Services includes consultative, design, or development services, then Contractor will additionally maintain professional liability insurance, with coverage limits of US$5,000,000 per claim. The policy extends to civil liability arising from cyber risks incurred in the course of any professional business activities carried on by or on behalf of the Contractor. Such network security and privacy liability (cyber) policy may also be on a stand-alone basis.

(k) Cyber Liability Insurance with limits of at least $5,000,000 per claim covering network security, privacy liability, electronic media and data breach.

(l) Property insurance against risks of physical damage or loss to personal property belonging to Contractor and/or its employees in amounts sufficient to replace such personal property in the event of loss.

(m) Any other insurance required to be maintained during the performance of the services under this Agreement pursuant to the terms of any ground or other underlying lease(s) affecting the real property upon which the services are to be performed (it being understood that Contractor shall comply with the insurance requirements of any such ground or other underlying lease(s), including, without limitation, to the extent such requirements require greater coverage levels than expressly required herein).

All such insurance shall be issued by reputable insurance companies licensed to do business in the state where the Property is located, have a Best's rating of not less than A-/VII, and otherwise be satisfactory to C&W and Owner. All of such policies shall be on an "occurrence basis" (with the exception of Professional Liability), shall have commercially reasonable deductibles, and C&W (and C&W's subsidiaries and Affiliates who are performing services at the Property), Owner (and Owner's subsidiaries and affiliates) and any additional parties requested by C&W or Owner shall be named as additional insureds under Contractor's General Liability, Automobile Liability and Umbrella Liability insurance policies as follows: Cushman & Wakefield U.S. , Inc., and its affiliates, and the applicable Owner and Owner affiliates identified in the attached Service Addendum. The policies cannot contain any provision that would preclude coverage for suits/claims brought by an additional insured against a named insured.

Certificates in customary form, evidencing those premiums for the foregoing insurance have been paid, shall be delivered by Contractor to C&W simultaneously with Contractor's execution of the Master Agreement and prior to Contractor performing any Services hereunder. Within thirty (30) days prior to expiration of such insurance similar updated certificates shall be delivered by Contractor to C&W evidencing the renewal of such insurance, together with evidence of the payment of the premium. All certificates of insurance must contain a definite provision that if the policies of insurance evidenced by such certificates are canceled or changed during the periods of coverage as stated therein, in such a manner as to affect the coverage afforded by such policies, written notice will be mailed to C&W and Owner by certified mail and return receipt requested at least thirty (30) days prior to such cancellation or change.

Contractor shall procure an appropriate clause in, or endorsement on, each of its policies for fire or extended coverage insurance and on all other forms of property damage insurance covering the Contractor's personal property, materials or equipment whereby the insurer waives subrogation or consents to a waiver of the right of recovery against C&W (and C&W's subsidiaries and Affiliates who are performing services at the Property), Owner, and any additional parties requested by C&W or Owner, and having obtained such waiver of subrogation or waiver of the right of recovery, Contractor hereby agrees that it will not make any claim against or seek to recover from C&W (and C&W's subsidiaries and Affiliates who are performing services at the Property), Owner, and/or any additional parties requested by C&W or Owner, for any loss or damage to property or

*Purchase order invalid without accompanying terms and conditions*

**VENDOR NO.  E05384**   **PURCHASE ORDER NO : 563228**

damage to property of others or bodily injury or death arising from any risk or peril of the type covered or coverable by any insurance policy actually carried by or required to be carried by Contractor pursuant to the terms of the Agreement.

Contractor's Commercial General Liability, Automobile Liability and Umbrella Liability insurance policies shall be primary and noncontributory, and any such insurance maintained by C&W and/or Owner shall be secondary and non-contributory and excess over any applicable insurance required to be maintained by Contractor hereunder. Contractor shall be solely obligated, and C&W or Owner shall bear no obligation, for the payment of any deductibles, retentions, co-pays, or other charges applicable to any such insurance. Contractor's purchase and maintenance of the insurance required herein shall not limit or reduce Contractor's liability to C&W or Owner in connection with any work and any project, nor limit C&W's or Owner's rights and remedies against Contractor in any respect.

18. INDEMNIFICATION.
(a) Contractor shall, to the fullest extent permitted by law, indemnify and hold harmless C&W, its Owners and their respective subsidiaries, Affiliates, shareholders, directors, officers, partners and employees (the "**C&W Indemnitees**") from and against any and all liability, claims, demands, losses, damages, expenses (including attorneys' fees and investigation costs), payments, recoveries and judgments in connection therewith, to the extent directly or indirectly arising out, of or caused in any manner, in connection with the performance of the Services hereunder including by (i) any acts or omissions of Contractor, its Affiliates and Contractor Personnel; (ii) the performance or failure to perform any Services under the Agreement; (iii) the breach of any representation or warranty or covenant or condition set forth in the Agreement by Contractor, its Affiliates or Contractor Personnel; (iv) the use of any C&W's tools or equipment by Contractor, its Affiliates or Contractor Personnel;  (v) a breach of any obligation for which Contractor is responsible as employer or contractor of Contractor Personnel, including (as examples): (A) Contractor's employment of one or more of Contractor's employees; (B) any claim alleging that any of the C&W Indemnitees should be deemed the "employer" or "joint employer" of any Contractor Personnel, and (C) any claim by any member or former member of Contractor Personnel, alleging unfair dismissal, breach of contract, discrimination on the grounds of sex, race, disability, sexual orientation, religion or belief, age or equal pay; (vi) the violation of any applicable law, order, or regulation by Contractor, its Affiliates or Contractor Personnel; (vii) any claim arising from or relating to work-related injuries of Contractor or Contractor Personnel (including the employees, agents, subcontractors and suppliers of Contractor Personnel), or (viii) any property or injury to persons including death resulting therefrom.

(b) In addition, Contractor shall indemnify, hold harmless and defend, at its sole cost and expense, the C&W Indemnitees from any loss, damage, expense (including attorneys' fees and costs), payment, recovery and judgment arising out of any claim or threatened claim, alleging that any Services furnished hereunder infringe upon or violate a patent, copyright, trademark, trade secret or other proprietary right of any third party. C&W, at its sole cost and expense, shall have the right to be represented in any such action or proceeding by independent counsel of C&W's own choice.  Contractor's liability under this **subsection (b)** shall survive the expiration or termination of the Agreement, but this shall not be construed to mean that Contractor's liability does not survive as to other provisions of the Agreement.

(c) Contractor shall, at its own expense, defend any and all actions brought against C&W based upon any of the foregoing and shall pay all attorneys' fees and all other expenses, and promptly discharge any judgments, settlements or compromises arising therefrom.  No third-party claim or action may be settled or compromised by Contractor without C&W's prior written consent, unless the settlement or compromise includes a release of all claims against C&W and Owner as applicable by the party bringing the claim or action; and C&W will have the right at its sole expense to participate in the legal proceeding with counsel of its own choosing. C&W will assist and cooperate in the defense as reasonably requested by Contractor, at Contractor's expense.

(d) Contractor's liability under this **Section 21 (Indemnification)** shall survive the expiration or termination of the Agreement, but this shall not be construed to mean that Contractor's liability does not survive as to other provisions of the Agreement.

19. Vendor/Contractor agrees: (a) to comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor, including but not limited to (i) not discriminating against any employee or applicant for employment because of race, color, religion, national origin, or sex, AND (ii) taking affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, national origin, gender, age, disability, or sexual orientation, AND (iii) in all solicitations or advertisements for employees placed by or on behalf of Vendor/Contractor, stating that all qualified applicants will receive consideration for employment without regard to race, color, religion, national origin, gender, age, disability or sexual orientation, AND (iv) sending to each labor union or representative of workers with which Vendor/Contractor has a collective bargaining agreement or other contract or understanding, a notice to be provided by Purchaser advising the labor union or worker's representative of Vendor/Contractor's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and posting copies of the notice in conspicuous places available to employees and applicants for employment; and (b) to furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and to permit access to his books, records, and accounts by Purchaser and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

20. Vendor/Contractor agrees that if work performed or materials ordered are for a building in which any office of the United States of America is a tenant is located, and this Order is for an amount exceeding $2500.00, Vendor/Contractor shall permit the Controller General of the United States or his duly authorized representative to have access to, and the right to examine any directly pertinent books, documents, papers and records pertaining to this Order until the expiration of three years after final payment of any monies has been made pursuant to the provision of this Order.

21. The Vendor/Contractor shall, at its own expense, defend any and all legal actions (including the filing of any mechanic's liens) brought against the Owner and/or Purchaser in connection with this order and shall pay all attorneys' fees and all other expenses and promptly discharge any judgments resulting there from. Vendor/Contractor agrees that if any mechanic's lien is filed against any property served hereunder for work done, services claimed to have been rendered or materials claimed to have been furnished in connection with or pursuant to this Order, then Vendor/Contractor shall cause such mechanic's lien to be discharged within ten (10) days after filing, at contractor's expense.  If Vendor/Contractor fails to comply, the lien may be bonded or discharged by Purchaser or Owner at Vendor/Contractor's sole expense.

22. Vendor/Contractor promises and agrees to pay the taxes measured by the wages of its employees required by the Federal Social Security Act and any contributions required by any unemployment insurance laws and hereby accepts the exclusive liability for said taxes and contributions and agrees to indemnify and hold harmless the Owner and Purchaser from any responsibility for same. Personnel supplied by Vendor/Contractor will not for any purposes be deemed to be employees or agents of Purchaser or Owner and Vendor/Contractor assumes full responsibility for the acts and omissions for its suppliers, agents and employees while performing work under this Order and shall be solely responsible for their supervision and control.

23. Vendor/Contractor represents and warrants that all deliverables, software, data, materials and products developed under this Order by Vendor/Contractor, whether or not such Order is completed, are the exclusive property of Owner, unless such deliverable contains software or technology that is the property of a third party. Vendor/Contractor represents and warrants that Owner shall receive good and marketable title to all materials and products developed under this Order, free and clear of all liens, claims, encumbrances and security interest whatsoever of a third party, unless otherwise specified.

24.  Vendor/Contractor shall not use and shall prohibit all of its employees, subcontractors, and suppliers from using, Owner trade names, trademarks and logos. It is understood and agreed that money damages would not be a sufficient remedy

Printed on 28-Jul-23

*Purchase order invalid without accompanying terms and conditions*

| VENDOR NO.  E05384 | PURCHASE ORDER NO : 563228 |

for any breach of this paragraph and that Owner shall be entitled to equitable relief including injunction and specific performance as a remedy for any such breach.

25. Vendor/Contractor shall comply with all applicable federal, state and local laws, codes, ordinances, rules and legal requirements affecting any services provided pursuant to this Purchase Order.  This Purchase Order shall be governed in accordance with the laws of the state in which the building served is located. If, and while Vendor/Contractor and its employees are on Owner's premises in connection with the performance of any services, they shall comply with all of Purchaser's and Owner's directives, guidelines, procedures, rules, regulations and policies, including those concerning such matters as working hours (which will be established by Owner), and Owner's customary security measures. Vendor/Contractor agrees and represents that as the employer of its personnel, it will comply with all requirements of applicable tax and employment laws and with all immigration laws, rules, and regulations and will provide Owner and Purchaser only with personnel whose employment eligibility has been verified.

26. Nothing contained herein shall be deemed to create any association, partnership, joint venture or relationship of principal and agent or master and servant or employer and employee between the parties hereto or any affiliates or subsidiaries thereof.

27. Vendor/Contractor certifies that, and shall cause all of its suppliers, agents, employees and subcontractors to certify, that it complies with: (a) all applicable anti-bribery and corruption laws, rules, and regulations of the United States, European Union or any member state and any other similar laws in all applicable jurisdictions, including but not limited to the U.S. Foreign Corrupt Practices Act and the U.K. Bribery Act and all U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC") or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order 13224 Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism) or other governmental action and applicable international laws and regulations pertaining to the detection, prevention and reporting of potential money laundering and terrorist financing activities (collectively, "Anti-Corruption Laws").

28. The liability of Owner (including any assignee or successor of Owner) shall be limited to Owner's interest in the building.  Vendor/Contractor acknowledges and agrees that Purchaser is issuing this Purchase Order in its capacity as manager of the property for Owner and that Owner shall have no liability or obligation to Vendor/Contractor under this Agreement.

29. This Purchase Order shall include the Service Addendum attached hereto and made a part hereof as <u>Exhibit A</u>.