| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **KELLEY DRYE & WARREN LLP**<br>Robert L. LeHane, Esq.<br>Maeghan J. McLoughlin, Esq. (*pro hac vice* pending)<br>Connie Y. Choe, Esq.<br>3 World Trade Center<br>175 Greenwich Street<br>New York, NY 10007<br>Tel: (212) 808-7800<br>Fax: (212) 808-7897<br>Email: rlehane@kelleydrye.com<br>      mmcloughlin@kelleydrye.com<br>      cchoe@kelleydrye.com<br><br>-and-<br><br>One Jefferson Road, 2nd Floor<br>Parsippany, NJ 07054<br>Tel: (973) 503-5900<br><br>*Counsel for T-C 501 Boylston Street LLC, T-C 33 Arch Street LLC, and Teachers Insurance and Annuity Association for the Benefit of its Real Estate Account* | |
| In re:<br><br>WEWORK INC., *et. al*,<br><br>                    Debtors[1]. | Chapter 11<br><br>Case Number: 23-19865 (JKS)<br><br>(Jointly Administered) |

# OBJECTION OF NUVEEN REAL ESTATE LANDLORDS TO
# DEBTORS' DIP FINANCING MOTION AND CASH COLLATERAL MOTION

The Nuveen Real Estate ("Nuveen") affiliated landlords, T-C 501 Boylston Street LLC,

T-C 33 Arch Street LLC, and Teachers Insurance and Annuity Association of America for the

---

[1] The last four digits of the Debtor WeWork Inc.'s taxpayer identification number are 4904. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017, and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd., Beaverton, OR 97005.

Benefit of its Real Estate Account (each a "Landlord" and, collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, hereby submit this objection (the "Objection") to (A) *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (the "DIP Motion")[2]; and (B) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Cash Collateral Motion" and collectively, the "Motions").[3] In support of this Objection, the Landlords respectfully state as follows:

## PRELIMINARY STATEMENT

1. Although the Landlords are generally supportive of the Debtors' efforts to restructure their operations, the terms of the Final DIP Order and Final Cash Collateral Order must be rationalized to protect the Landlords' rights and interests. As drafted, the proposed orders shift the risk of administrative insolvency on landlords and the Debtors' unsecured creditors and grant an unnecessary and inappropriate roll-up of the lenders' pre-petition claims. The Landlords have been in discussions with the Debtors, lenders and issuers to resolve these issues consensually, but file this Objection because the parties are at an impasse.

2. As a threshold matter, any final order approving the DIP Facilities must not disturb the fundamental independence principle, which provides that the obligation of the issuer of a letter of credit to pay a Landlord-beneficiary is completely separate from any obligations the

---

[2] Docket No. 186.

[3] Docket No. 43.

2

Debtor-applicant and issuer may owe to each other. Letters of credit are not property of the estate and a beneficiary's right to draw on a letter of credit is not subject to the automatic stay. The proposed Final DIP Order, however, can be read to subvert these basic concepts by purporting to deem existing letters of credit to be obligations of the Debtors under the DIP Facilities and allowing the Debtors to amend such letters of credit.

3. The Debtors and their lenders have no have right to the undrawn letter of credit proceeds and the Final DIP Order should not alter or impair the nature of the existing letters of credit. In advance of filing this Objection, the Landlords proposed the following language, which was agreed to by the Debtors and their lenders in connection with the lease assumption and rejection procedures, and preserves the current relationship among the parties: "For the avoidance of doubt, nothing in this Order shall affect, modify, limit, or expand upon the rights of any party with respect to letters of credit or surety bonds securing an obligation under a lease." Similar clarifying language is appropriate in the Final DIP Order as well.

4. The various problems with the Motions are compounded by the failure of the lenders and Debtors to ensure that this case remains administratively solvent, including some mechanism to ensure the payment of November post-petition "stub" rent. The Landlords have been forced to bear the burden of maintaining the Debtors' premises where the Debtors have been operating without being paid millions of dollars in post-petition rent and related charges. Specifically, the rent and related charges for the Debtors' use of the Landlord's premises from the Petition Date, November 6, 2023, through November 30, 2023 totals approximately $1.8 million.

5. If the lenders want to reap the benefits of the chapter 11 process and expect waivers of the estates rights under sections 552 and 506(c) of the Bankruptcy Code, these post-petition administrative expenses must be included in the budget as adequate protection that these

3

costs will be paid or reserved for as required by section 363(e) of the Bankruptcy Code. The Debtors and their lenders should not be allowed to use the bankruptcy process to gain post-petition rent-free use of the leased premises, relegating the landlords to the position of involuntary, unsecured, interest-free lenders to these estates that take on all of the risk of administrative insolvency.

6.   Absent a consensual budget that addresses known and readily quantifiable administrative claims, the advance waiver of the Debtors' rights under sections 506(c) and 552(b) of the Bankruptcy Code is inappropriate and should not be approved. If the Court is inclined to grant such waivers, then the Landlords request that post-petition rent and charges be paid in the near term directly to the Landlords or that funds sufficient to cover the amounts due to all landlords in these cases be placed in escrow as adequate protection pursuant to sections 363(e) and 361 of the Bankruptcy Code and paid out to Landlords in reasonable installments between the entry of the final order and the Debtors emergence from Chapter 11.

7.   Lastly, the scope of the lenders' liens in the final orders must be subject to the lease terms, which restrict or prohibit the grant of liens directly on the Debtors' leasehold interests. As a result, the liens granted to the lenders should be limited to the proceeds of the sale or disposition of leases. The Debtors are seeking authorization to use their lenders' cash collateral and borrow money post-petition under section 364 of the Bankruptcy Code. There are no provisions of the Bankruptcy Code that render any provisions of non-residential real property leases unenforceable in the context of post-petition financing. In fact, section 365(d)(3) mandates that the Debtors timely perform all obligations under non-residential real property leases arising after the Petition Date.

8. Specifically, the final proviso in footnote 4 of the proposed orders that would preserve the lenders' purported "right" to argue that pursuant to some nebulous "applicable law," lease provisions restricting or prohibiting the tenant from placing a lien on its leasehold interest can be rendered unenforceable, and worse, that such declaratory relief should be available to the lenders via a simple motion on notice, should be deleted. The language ignores the clear language of Bankruptcy Code section 365(d)(3) and Bankruptcy Rule 7001, which requires the Debtors' post-petition compliance with lease terms and that an action seeking declaratory relief be commenced by way of adversary proceeding. To maintain the status quo and honor the bargained-for provisions of the Leases, the following language should be incorporated, and modified as appropriate, into the Final DIP Order and Final Cash Collateral Order.

> For the avoidance of doubt, notwithstanding the DIP Motion, this DIP Order, and any related documents, including but not limited to the DIP Documents, the Adequate Protection Collateral, DIP Collateral, DIP LC Loan Collateral, and DIP Term Collateral shall include, and Adequate Protection Liens, DIP LC Liens, DIP LC Cash Liens, DIP Term Liens, the DIP Term Collateral Lien, and DIP Collateral Liens shall attach to, (x) all proceeds of the Debtors' real property leases and (y) all leases that permit the attachment of such liens; provided, however, to the extent that a lease does not permit such attachment pursuant to its terms, the Adequate Protection Liens, DIP LC Liens, DIP LC Cash Liens, DIP Term Liens, the DIP Term Collateral Lien, and DIP Collateral Liens and any other liens and encumbrances authorized by this Order shall not attach to such lease, the leased premises, or the Debtors' interest in any such lease or premises.

9. The Landlords also request that the lenders' right to use and occupy the premises if the Debtors default be limited to as (i) permitted by applicable non-bankruptcy law; (ii) agreed to in writing by the applicable Landlord; or (iii) ordered by the Court on motion and notice appropriate under the circumstances. The Landlords, Debtors, and lenders negotiated acceptable language on this point in paragraph 12 of the Interim Cash Collateral Order, which the Landlords understand will be incorporated into the final orders.

**BACKGROUND**

10. The Landlords are the owners, affiliates, or managing agents of the owners of property located throughout the United States where the Debtors lease space pursuant to written leases (each, a "Lease," and collectively, the "Leases") for the locations listed on the attached Exhibit A (collectively, the "Leased Premises").

11. On November 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") with this Court. The Debtors also filed numerous "first day" motions, including the Cash Collateral Motion. Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**A.      The Cash Collateral Motion**

12. On November 9, 2023, the Court entered an order (the "Interim Cash Collateral Order")[4] approving the Cash Collateral Motion on an interim basis and scheduling a hearing for December 6, 2023, to consider entry of a final order (the "Final Cash Collateral Order") granting the Cash Collateral Motion. Following the interim hearing on the Cash Collateral Motion, counsel for the Landlords, along with others in the landlord community, reluctantly agreed to imperfect, non-binding language related to liens on leases in footnote 4 to paragraph 3 of the Interim Cash Collateral Order. While the language confirms that liens can only attach to proceeds of leases, and not the leases themselves, it also implies that applicable non-bankruptcy law exists that may allow imposing liens on leases. The troublesome caveat is set forth below in bold:

> For the avoidance of doubt, notwithstanding paragraph 16(c) herein, (i) the Adequate Protection Collateral shall include, and Adequate Protection Liens shall attach to (x) all proceeds of the Debtors' real property leases and (y) all leases that permit the attachment of such liens and (ii) to

---

[4]      Docket No. 103.

6

>   the extent that a lease does not permit such attachment pursuant to its terms, Adequate Protection Liens shall not attach to such leases **unless (x) applicable law permits such attachment notwithstanding any prohibition or limitation in such lease and (y) the permissibility of such attachment has been determined by the Court following notice and a hearing, and the Prepetition Secured Parties' and applicable landlords' rights are expressly hereby reserved with respect to arguments that may be made at such hearing.**

13. The Interim Cash Collateral Order also contained acceptable language related to the lenders' ability to enter the Leased Premises following a Termination Event (as defined in the Interim Cash Collateral Order) (¶ 12).

14. The Interim Cash Collateral Order approved, on an interim basis, the Debtors' DIP financing budget (the "Budget"). The Budget and the Motions do not indicate whether there will be funds left to pay administrative claims in these cases or, much less, make a distribution to general unsecured creditors.

15. Upon information and belief, the Debtors failed to pay November rent when it came due under the Leases, and have not paid any portion of the November post-petition rent. Exhibit A, attached hereto, includes a column listing the amount of Stub Rent due for each of the Leases, totaling approximately $1.8 million.

**B.     The DIP Motion**

16. On November 19, 2023, the Debtors filed the DIP Motion. The DIP Motion seeks approval of a letter of credit facility (the "LC Facility") and a term loan facility (the "Term Facility" and, together with the LC Facility, the "DIP Facilities") to fund the LC Facility. The Debtors are seeking entry of a final order (the "Final DIP Order" and together with the Final Cash Collateral Order, the "Final Orders") approving the DIP Facilities on an emergency basis. The Debtors submit that the relief is critical to the Debtors' ability to renew and issue letters of credit ("LCs") in the ordinary course to support their lease obligations because a significant portion of the leases in their portfolio require the Debtors, as tenants, to provide LCs as security for the leases.

7

17. Certain of the Landlords are beneficiaries of irrevocable standby letters of credit issued by third party banks (the "Landlord LCs"). In each Landlord LC, each issuer agrees to pay each Landlord's demand for payment on the terms and conditions set forth in the individual Landlord LCs. As is typical with LCs, the Debtors are applicants, but they are not party to the Landlord LCs and have no right to interfere or intervene in the issuer's payment to the Landlord-beneficiaries.

**OBJECTION**

A. **The Final DIP Order Distorts the Nature of the LCs**

18. The Final DIP Order may alter the nature of the LCs and disrupt the independence principle applicable to all letters of credit. The Final DIP Order contains at least four provisions that appear to contradict case law applicable to letters of credit. Specifically, the Final DIP Order indefeasibly: (1) allows the Debtors to cause the LCs to be issued, replaced, reissued, amended, extended, renewed, or otherwise continued[5]; (2) deems certain existing LCs to have been issued under the LC Facility[6]; (3) deems certain existing LCs to constitute obligations of the Debtors under the LC Facility, including all amounts payable under the existing LCs[7]; and (4) authorizes the Debtors to amend existing LCs and to take all action reasonably appropriate thereto.[8]

19. The Final DIP Order must preserve the independence principle applicable to letters of credit. The independence principle dictates that a letter of credit is an independent contractual obligation between the non-debtor issuer (*i.e.*, the applicable bank) to pay the non-

---

[5] Final DIP Order, ¶ 2(a).

[6] *Id.* ¶ 4.

[7] *Id.*

[8] *Id.* ¶ 8.

debtor beneficiary (*i.e.*, the Landlords) from its own assets. *Int'l Fin. Corp. v. Kaiser Grp. Int'l Inc. (In re Kaiser Grp. Int'l Inc.)*, 399 F.3d 558, 566 (3d Cir. 2005); *In re S-Tran Holdings, Inc.*, 414 B.R. 28, 34 (Bankr. D. Del. 2009) (finding that issuers of letters of credit utilize their own property to pay the proceeds of a letter of credit); *In re Oakwood Homes Corp.*, 342 B.R. 59, 67 (Bankr. D. Del. 2006) ("The relationship between each pair of parties involved in a letter of credit transaction is entirely independent."). Because the applicant (*i.e.*, the Debtors) is not party to letters of credit, the applicant has no authority to alter the issuer's obligation to make payment, to alter the terms of the letters of credit, or to otherwise disrupt the relationship between the issuer and the beneficiary.[9]

20. Due to the independent relationship between issuer and beneficiary, it is well-settled law in this Circuit and others that letters of credit and their proceeds are not property of the estate. *In re Kaiser Grp. Int'l Inc.*, 399 F.3d at 566; *In re Zenith Laboratories, Inc.*, 104 B.R. 667, 671 (Bankr. D.N.J. 1989); *Matter of Compton Corp.*, 831 F.2d 586, 589 (5th Cir. 1987). Similarly, because the issuer's payment is not a transfer of estate property, a beneficiary may draw on a letter of credit without being subject to the automatic stay. *In re Guy C. Long, Inc.*, 74 B.R. 939, 943-44 (Bankr. E.D. Pa. 1987) (citing cases). As a result, the issuer must pay the beneficiary when the beneficiary submits a payment request pursuant to the terms of the letter of credit, without regard to the debtor/applicant's insolvency.

---

[9] The issuer's obligation to pay the beneficiary from its own assets under a letter of credit is unaffected by the relationships between the beneficiary and the debtor/applicant and the issuer and the debtor/applicant. A letter of credit is composed of three independent contracts. (citing *Demczyk v. Mut. Life Ins. Co. (In re Graham Square)*, 126 F.3d 823, 827 (6th Cir. 1997)). The first contract is between the debtor and landlord. *Id.* The second contract is between the debtor and the issuing bank. *Id.* The third contract is between the issuing bank and the landlord. *Id.* (quoting *P.A. Bergner & Co. v. Bank One, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1114 (7th Cir. 1998)).

21. The Final DIP Order may upend these general principles by empowering the Debtors with authority that does not exist under the law. The LCs were issued by third party banks and are not property of the Debtors' estates. And while the Debtors' *reimbursement* obligations to the banks may be covered by the principles governing the LC Facility, the Debtors cannot unilaterally deem these LCs themselves to be obligations of the Debtors or deem the LCs to be issued under the LC Facility, nor can they amend the terms of the LCs to which no Debtor is a party.

22. The Landlords have raised these concerns with the Debtors and proposed revised language to paragraphs 2, 4, and 8 of the Final DIP Order, as reflected in **Exhibit B** hereto. The Landlords' proposed language allows the Debtors access to the DIP Facilities but protects the rights and interests of the issuers and beneficiaries that are parties to the LCs.

B. **The Budget Must Provide for Payment of Stub Rent**

23. The Landlords object to entry of the Final Orders or approval of any budget that fails to direct the Debtors to immediately pay or escrow stub rent to the affected Landlords. If the lenders want to reap the benefits of chapter 11, they must ensure administrative solvency by including these items in the Budget and promptly paying these claims. The Court should not permit the lenders to force the Landlords to fund the Debtors' operations without paying for the use and occupancy of the premises during the postpetition period or providing adequate protection that these costs will be paid.

(i) Absent Administrative Solvency, the Advance 506(c) and 552(b) Waivers are Inappropriate

24. The Budget fails to account for the payment of stub rent and, based on the Landlords' discussions with the Debtors, the Debtors and Lenders do not intend to pay the stub rent. The Debtors should not be authorized to use the Leased Premises for the lenders' direct post-

10

petition benefit, while the landlords unfairly bear the risk of non-payment of stub rent. This is contrary to the specific policy behind Section 365 of the Bankruptcy Code, which was crafted to protect landlords' ability to receive post-petition rent payments since they are required to allow the Debtors to continue to use their premises.

25. Absent a consensual budget that addresses known and readily quantifiable administrative claims, the advance waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code is inappropriate and should not be approved. Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"). Numerous courts in this Circuit have conditioned the section 506(c) waiver on payment of all administrative costs.[10]

---

[10] *See In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Sept. 3, 2019), Hr'g Tr. at 63:9-13 [Dkt. No 129] ("I would struggle to find a situation where I have approved a 506(c) waiver over a committee objection, and particularly in a situation where the pre-petition priority claims under 503(b)(9) for 21 vendors are not provided for"); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del. April 26, 2016), Hr'g Tr. at 194:10 to 195:16 [Docket No. 1463] ("observing that where a chapter 11 case is being run for the "benefit of the lenders," then "the lenders are going to have to pay the cost of that. And that includes all administrative [expenses]."); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Jun. 5, 2014), Hr'g Tr. at 212:8-22 [Dkt. No. 3927] (disapproving 506(c) waiver "based primarily . . . on the fact that it's not fully consensual"); *In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011), Hr'g Tr. at 23-25 [Docket No. 338] (refusing to approve financing for a sale process that would leave the estate administratively insolvent); *In re NEC Holdings Corp.*, Case No. 10-11890 (Bankr. D. Del. July, 13, 2010), Hr'g Tr. at 108:1-5 [Docket No. 224] ("I need some evidence that there's a probability that admin claims are going to be paid in full, including 503(b)(9) claims or I won't approve the financing."); *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. Mar. 20, 2007), Hr'g Tr. at 20-21 [Docket No. 346] (recognizing that 506(c) waivers require committee consent and stating, "if the Committee doesn't agree [to a waiver], it doesn't happen"); *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136 (BLS) (Bankr. D. Del. Oct. 17, 2008), Hr'g Tr. at 120:8-19 [Docket No. 282] ("I cannot recall a case

26. In a tenant-debtor context, courts may surcharge lenders for post-petition rents and storage charges as necessary and directly beneficial to the lender. *See In re Scopetta-Senra Partnership III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (determining that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); *see also In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987) (finding that landlord was entitled to payment from the bank for the use and occupancy of its premises for storage of wine pursuant to section 506(c)).

27. Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b). Working together, sections 506(c) and 552(b) are "designed to prevent a windfall to the secured creditor[.]" *Precision Steel Shearing, Inc. v. Fremont Fin. Corp.* (*In re Visual Indus., Inc.*), 57 F.3d 321, 325 (3d Cir. 1995).

28. As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holding*, the advance waivers of sections 506(c) and 552(b) sought by the Debtors and lenders should be denied. *In re Sports Authority Holdings*, Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26, 2016) [Docket No. 1415]. In that case, the debtors requested approval of a DIP facility that rolled up the entire prepetition secured debt, proposed to pay off the prepetition lenders immediately upon an expedited sale, granted the DIP lenders a surcharge waiver, and failed to

---

. . . where I have approved this kind of relief, that being liens on avoidance actions and a 506(c) waiver, over a committee objection.").

12

adequately fund administrative and priority claims, including rent and 503(b)(9) claims. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral.

*See* hearing transcript at 195:6-16.[11]

29. The Debtors have been using the Leased Premises for the direct benefit of the lenders since the Petition Date. The post-petition rent owed to Landlords is a reasonable and necessary cost for the preservation of the lenders' collateral. Without the ability to use the Leased Premises, the Debtors and the lenders would receive no payments from the Debtors' operations at the Leased Premises. Therefore, the lenders should be required to fund the expenses of those benefits rather than escape any responsibility for post-petition occupancy costs through waivers of the estate's rights under sections 506(c) and 552 of the Bankruptcy Code. *See Southwest Sec., FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691, 696 (5th Cir. 2015) ("a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost").

30. As a result, absent sufficient funding in a consensual budget that reserves funds for the payment of all stub rent and ensures (i) immediate payment to the Landlords or escrow of the Stub Rent, (ii) administrative solvency, and (iii) a controlled exit from these chapter 11 cases, the Debtors should not be allowed to waive their statutory ability to surcharge the lenders'

---

[11] The transcript will be produced upon request.

13

collateral and/or recover costs, including stub rent, as adequate protection or under the equities of the case.

        (ii)      The Landlords are Entitled to Adequate Protection For Stub Rent

31. Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during the debtor's bankruptcy proceedings who makes a request for adequate protection. Section 363(e) is straightforward and non-discretionary. If a creditor with an "interest" in property used by the Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see In re Worldcom, Inc.,* 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004); *see also In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("[s]ection 363(e) is not permissive or discretionary . . .").

32. The U.S. Supreme Court has held that the term "interest" "is the most general term that can be employed to denote a right, claim, title, or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983).

33. Section 363(e) is not limited to secured creditors. A landlord undeniably holds an interest in the property that it owns and leases to a debtor, as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the lease. *See In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent); *see also In re Ernst Home Center, Inc.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997) (held that real property lessors may request adequate protection under § 363(e) and noted that the right to payment under § 365(d)(3) would be hollow without a remedy); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994) (the enactment of § 365(d)(3) abrogated any argument against the entitlement of

14

a landlord to adequate protection); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (landlord's right to be kept current on post-petition obligations is entitled to adequate protection); *In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[s]ection 363(e) of the Bankruptcy Code reserves for bankruptcy courts the discretion to condition the time, place and manner of [store closing] sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations"). A landlord's interests in its lease and the premises it leases to a debtor are further evidenced by the allowance of landlords' stub rent claims in other cases pursuant to section 503(b) of the Bankruptcy Code. *See, e.g., In re Goody's Family Clothing Inc.*, 401 B.R. 656, 665 (D. Del. 2009) (affirming the allowance of stub rent claims under section 503(b)(1) of the Bankruptcy Code). Thus, with an interest in property being used by the Debtor(s), and the request made herein, the Landlords are entitled to receive adequate protection.

34. The plain language of section 361 of the Bankruptcy Code states that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property. Section 361(3) is also clear that adequate protection *may not* take the form of a deferred administrative claim. Under section 361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

35. The Landlords recognize that the Debtors or the lenders may not be willing to make immediate payment of stub rent. Although the Landlords are willing to work with the lenders to agree to an acceptable timeline that provides for payment of the stub rent in the short

term, the Debtors should be required to hold funds in escrow as adequate protection for the payment of stub rent, so the Landlords are not forced to bear the risk that they may never be paid if a plan is not confirmed or these cases are or become administratively insolvent.

### C. The Language Pertaining to Liens on Leases and the Lenders' Ability to Use and Occupy the Premises Must be Limited

36. The Landlords object: (1) to the attempt by the Debtors and lenders to render unenforceable any provisions in the Leases that restrict placing a lien directly on the Leases; and (2) any attempt to grant the lenders unrestricted rights of access to use and occupy the Leased Premises following a default under the DIP Facilities. Anti-lien provisions in leases are enforceable under state law, bargained for at arm's-length, and critical to a landlord's ability to prevent a tenant from encumbering its lease when the applicable landlord's mortgage or loan documents prohibit such liens. The Landlords do not, however, object to granting the lenders a lien on the proceeds of the sale of the Leases, which more than adequately protects the lenders' interests. The language below reflects a revision from the Interim Cash Collateral Order that allows the lenders a lien on the proceeds of the Debtors' leases, while ensuring that the lenders do not cloud title by placing a lien on the leases themselves.

For the avoidance of doubt, notwithstanding the DIP Motion, this DIP Order, and any related documents, including but not limited to the DIP Documents, the Adequate Protection Collateral, DIP Collateral, DIP LC Loan Collateral, and DIP Term Collateral shall include, and Adequate Protection Liens, DIP LC Liens, DIP LC Cash Liens, DIP Term Liens, the DIP Term Collateral Lien, and DIP Collateral Liens shall attach to, (x) all proceeds of the Debtors' real property leases and (y) all leases that permit the attachment of such liens; provided, however, to the extent that a lease does not permit such attachment pursuant to its terms, the Adequate Protection Liens, DIP LC Liens, DIP LC Cash Liens, DIP Term Liens, the DIP Term Collateral Lien, and DIP Collateral Liens and any other liens and encumbrances authorized by this Order shall not attach to such lease, the leased premises, or the Debtors' interest in any such lease or premises ~~unless (i) applicable law permits such attachment notwithstanding any prohibition or limitation in such lease, and (ii) the permissibility of such attachment has been determined by the Court following notice and a hearing, and the DIP Secured Parties' and applicable landlords' rights are expressly hereby reserved with respect to arguments that may be made at such hearing.~~.

37. There is no applicable law that permits attachment notwithstanding a prohibition in a lease. The Landlords should not be exposed to unknown or unfounded future litigation related to well-established law simply because the lenders' desire to preserve their rights on this issue.

38. Section 365 of the Bankruptcy Code mandates that the Debtors must "timely perform all of the obligations" under the Leases until such time that the Debtors assume or reject the Leases. 11 U.S.C. § 365(d)(3). The Debtors have neither assumed nor rejected any of the Leases and must comply with those Leases, including provisions prohibiting liens on such Leases. In addition, the imposition of direct liens on the Leases would run counter to the provisions in the Leases that subordinate the Leases and any related liens to any existing or potential liens granted by the Landlords against the Leased Premises.

39. With respect to accessing the Leased Premises, as drafted, in the event of default, the Final DIP Order allows the lenders to exercise all rights and remedies with respect to DIP Collateral. This broad language arguably grants the lenders the unfettered right, in the event of a default, to occupy and use the Leased Premises without performing the Debtors' obligations

17

under the Leases or providing the Landlords with adequate assurance of future performance as required in pursuant to section 365 of the Bankruptcy Code. The lenders are not the tenants under the Leases and do not have the right to use the Leased Premises to liquidate their collateral without complying with all of the obligations under the Leases, and the Debtors provide no authority that supports such a request.

40. Therefore, the Landlords respectfully request that the Final Orders contain the same limitations on access by the lenders that are contained in Paragraph 12 of the Interim Cash Collateral Order.

## JOINDER

41. The Landlords hereby join the objections to entry of the Final Orders by other landlords and the Official Committee of Unsecured Creditors to the extent that such objections are not inconsistent with the relief sought herein.

## CONCLUSION

**WHEREFORE**, the Landlords request that the Court (i) deny the DIP Motion unless the Final DIP Order is modified as requested herein; (ii) deny the Cash Collateral Motion unless the Final Cash Collateral Order and the Budget are modified as requested herein; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: December 7, 2023
Parsippany, New Jersey

**KELLEY DRYE & WARREN LLP**

By: *Robert L. LeHane*
Robert L. LeHane, Esq.
Maeghan J. McLoughlin, Esq. (*pro hac vice* pending)
Connie Y. Choe, Esq.
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:    (212) 808-7800
Fax:   (212) 808-7897
Email: rlehane@kelleydrye.com
mmcloughlin@kelleydrye.com
cchoe@kelleydrye.com

-and-

One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900

*Attorneys for T-C 501 Boylston Street LLC, T-C 33 Arch Street LLC, and Teachers Insurance and Annuity Association for the Benefit of its Real Estate Account*