| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GOULSTON & STORRS PC**<br>Douglas B. Rosner, Esq.<br>Brendan M. Gage, Esq.<br>400 Atlantic Avenue<br>Boston, MA 02110-3333<br>Telephone: (617) 482-1776<br>Fax: (617) 574-4112<br>Email: drosner@goulstonstorrs.com<br>       bgage@goulstonstorrs.com<br><br>- and -<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Telephone: (973) 230-2095<br>Fax: (973) 533-1112<br>Email: DStolz@genovaburns.com<br>       DClarke@genovaburns.com<br><br>*Counsel to Landlords Affiliated with Beacon Capital Partners LLC, Boston Properties, Inc., Columbia Property Trust, Manulife Investment Management (John Hancock Life Insurance Company), and WS Development* | |
| In re:<br><br>WEWORK INC., *et al.*,<br><br>       Debtors.[1] | Chapter 11<br><br>Case No. 23-19865 (JKS)<br><br>(Jointly Administered) |

**OBJECTION OF LANDLORDS AFFILIATED WITH BEACON CAPITAL PARTNERS, LLC, BOSTON PROPERTIES, INC., COLUMBIA PROPERTY TRUST, MANULIFE INVESTMENT MANAGEMENT (JOHN HANCOCK LIFE INSURANCE COMPANY), AND WS DEVELOPMENT, TO: (A) DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINANCING, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF; AND (B) ENTRY OF A FINAL ORDER ON DEBTORS' CASH COLLATERAL MOTION**

The landlords listed on **Schedule 1** attached hereto (collectively, the "Landlords", and each, a "Landlord"), through their undersigned counsel, respectfully submit this objection and reservation of rights (this "Objection")[2] with respect to: (a) the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 186] (the "DIP Motion") approving the DIP Facilities generally described in the term sheet attached to the DIP Motion; and (b) entry of a final order approving the Cash Collateral Motion (as defined in the DIP Motion, and together with the DIP Motion, the "Motions").[3]  To the extent the issues the Landlords raise in this Objection apply equally to the DIP Motion and to entry of a final order approving the Debtors' use of cash collateral, this Objection should be construed as an objection to both Motions.  In support of this Objection, the Landlords respectfully state as follows:

**OBJECTION**

1. The Court should reject the Debtors' attempt to hand control over the plan process to SoftBank Vision Fund II-2 L.P. ("SoftBank") a month into these Chapter 11 Cases and deny the DIP Motion as unnecessary.  To be clear, the purported LC "DIP Facilities" do not provide one penny of new money to the Debtors.  Instead, the DIP Motion appears to contemplate continuing existing LCs and providing enhanced protections to Softbank with respect to money it already

---

[2] Based upon the Committee's (and the Landlords') ongoing negotiations with the Debtors on the issues and concerns respectively raised, the Debtors consented to extend the Landlords' deadline to object to the relief requested in the DIP Motion through today, December 4, 2023, at 5:00 p.m. ET.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the DIP Motion.

2

deposited pre-petition with the third party LC issuing banks or their agents (collectively, the "LC Issuers") to collateralize the LCs. First, the DIP Facilities "roll" (convert) pre-petition LCs into post-petition financial accommodations that will continue to be fully collateralized by existing cash Softbank posted pre-petition in the amount of 105% of the lesser of $650 million and the amount of the existing undrawn LCs. Second, the DIP Facilities convert Sofbank's pre-petition claims arising from LC draws under the Debtors' pre-petition LC Facility into senior secured superiority administrative expense claims under the fiction that Softbank will be acting as a DIP lender. Softbank would be obtaining these enhanced benefits even though, as noted above, Softbank effectively guaranteed the undrawn LCs by fully collateralizing them pre-petition.[4] By giving Softbank the status of a DIP lender without having to put in any new money (and elevating Softbank's liens under the interim Cash Collateral Order into superpriority liens in the process), the Debtors and Softbank are attempting to foist upon all creditors the deal they struck with themselves under the RSA. If Softbank is successful in being anointed "DIP lender," then creditors may be prevented from challenging the value, characterization, and validity of at least $650 million of Softbank's pre-petition claims and liens (which will now be elevated to the status of debtor in possession super priority administrative expense claims). Further, this proposed structure will throw obstacles in the way of any attempt outside of the RSA to confirm a plan that would treat creditors more fairly.

2. Granting Softbank DIP lender status and protections based on pre-existing LC obligations is particularly unwarranted here where Softbank is co-liable with the Debtors on the

---

[4] *See e.g.*, DIP Motion ¶ 18 ("As described in the Cash Collateral Order, prior to the commencement of these chapter 11 cases, the SVF Obligor [(SoftBank Vision Fund II-2 L.P.)] posted approximately $808.8 million of cash (the "Pre-petition Cash Collateral") to accounts controlled by Goldman to secure obligations of the Debtors under the pre-petition LC Facility. The parties to the pre-petition LC Facility have agreed to release to the SVF Obligor [(SoftBank Vision Fund II-2 L.P.)] a portion of the Pre-petition Cash Collateral to be used by the DIP Term Lender [(SoftBank Vision Fund II-2 L.P.)] to fund the DIP Term Loans contemplated by the DIP Facilities.").

3

LC obligations and fully collateralized those obligations pre-bankruptcy. As the Debtors repeatedly concede in their own papers, Softbank is a *co-obligor* with the Debtors under the Debtors' pre-petition LC Facility.[5] They are neither an LC issuer nor a post-petition lender. Prior to the commencement of these cases, Softbank posted $808.8 million in cash to the account of Goldman Sachs, for itself as an LC Issuer and as agent for other LC Issuers to cover undrawn amounts under the existing LC Facility.[6] The Court should not elevate Softbank to a DIP lender for existing LCs when Softbank collateralized them in full pre-petition (presumably as a result of being a co-obligor with the Debtors).

3. Against this backdrop, the Debtors' unsubstantiated assertions[7] that the DIP Facilities are needed immediately to prevent harm to the estates as a result of a December "onslaught" of LC draws[8] ring hollow when any draws on LCs are fully collateralized with cash Softbank posted pre-bankruptcy. The LC Issuers have no exposure and are fully secured by the cash collateral Softbank already posted pre-petition. Granting or denying the DIP Motion will not change the fact that the LC Issuers are, and will continue to be, fully secured by the cash they or their agent is holding (and will continue to hold).

---

[5] *See, e.g.*, Cash Collateral Motion ¶ 17 [Dkt. No. 43] (describing Softbank as "jointly and severally liable on the LC Facility" with Debtor WeWork Companies U.S. LLC); ¶ 18 (explaining that Softbank secured its obligations under the LC Facility "by collaterally assigning its right to call up to approximately $2.5 billion in capital from [(SoftBank Group Corp.)]"); Declaration of David Tolley, Chief Executive Officer of WeWork Inc., in Support of Chapter 11 Petitions and First Day Motions [Dkt. No. 21] (the "Tolley Declaration") ¶¶ 45–6 (same).

[6] DIP Motion ¶ 18; Tolley Declaration ¶ 79 (noting how on November 6, 2023 Softbank "posted $808.8 million of cash collateral for the undrawn amounts under the LC Facility").

[7] The DIP Motion is unaccompanied by any professional declaration in support.

[8] DIP Motion ¶ 6 ("Failure to obtain access to the DIP Facilities at this critical juncture in these chapter 11 cases would lead to an onslaught of LC draws, among other things, which would be highly disruptive to the Debtors' operations and restructuring efforts."); ¶ 28 ("Absent the LC capacity to be provided by the DIP Facilities, the Debtors and its non-Debtor affiliates would be hamstrung from performing under their respective lease obligations, leading to widespread draws on the LCs.").

4.     The Landlords recognize that the Debtors and LC Issuers may need express authorization under section 364(d) of the Bankruptcy Code to permit the LC Issuers to replace LCs that cannot be renewed and will expire during the pendency of the Chapter 11 Cases, permit the LC Issuers to be paid their fees for issuing, replacing, or extending LCs, and authorize LC Issuers to reimburse themselves from the cash they are holding as collateral to the extent LCs may be drawn.  At most, however, the Court should tailor any DIP financing to allow the Debtors to replace such LCs by *granting the LC Issuers* (not Softbank) limited DIP lender protections, as appropriate. There is no need to grant gratuitously to Softbank the DIP lender protections being requested here. That relief will serve no purpose other than to permit Softbank to rollup its pre-petition claims and liens to achieve its desired outcome under the RSA.  Moreover, Softbank will receive a sufficient benefit by simply having the Court authorize the LC Issuers to replace or extend expiring LCs and to apply posted cash collateral they are holding in the event of future draws.  LC beneficiaries are unlikely to draw on LCs that are renewed, extended, or replaced until and unless a future rejection were to occur.  Thus, limited relief tailored to any concerns LC Issuers raise benefits Softbank by preserving the cash Softbank posted pre-petition, at least with respect to the go-forward leases.

5.     Further, despite the fact that Softbank is not advancing new money, the Debtors have agreed to give Softbank and the other DIP Secured Parties (who are 105% collateralized and thus already fully protected) a number of significant (and in the case of LC Issuers, unnecessary) concessions in the proposed DIP financing order.  These additional perks include, among other things, (i) granting Softbank superpriority liens on substantially all the estates' assets (including leasehold interests, avoidance actions, and the proceeds thereof) and superpriority administrative claims for pre-petition advances, (ii) paying millions in DIP facility related fees and expenses for no new credit, and (iii) waivers of the Debtors' state law marshaling rights, rights under section

5

552(b) of the Bankruptcy Code with respect to liens on post-petition proceeds, and rights under section 506(c) to surcharge collateral.

6. The Landlords specifically renew their objection to any grant of a lien or mortgage on any leasehold interest unless permitted under the applicable lease. At the First Day Hearing, the parties reached an interim compromise on the leasehold interest language for the purposes of the Interim Cash Collateral Order.[9] That language included a reference to any applicable law that might permit a lien on a leasehold interest even if not permitted under the applicable lease and invited endless litigation over the permissibility of leasehold attachments otherwise not permitted under the leases. However, that language is not appropriate for the DIP Order (or a final Cash Collateral Order). To the extent the reference to applicable law refers to section 9-408 of the Uniform Commercial Code (the "UCC"), which provides that restrictions on assignments in contracts do not impair the creation, attachment or perfection of security interests, that language does not apply to real property leases. The UCC expressly states that Article 9 does not apply to "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder. . ." (with exceptions that are not applicable here). *See* U.C.C. § 9–109(d)(11). *See also* U.C.C. § 2A–103(j) (definition of "lease" is limited to leases of goods). The lease terms should control whether the Debtors can grant liens on leasehold interests, consistent with section 365(d)(3) of the Bankruptcy Code (requiring the Debtors to "timely perform" all post-petition obligations under leases with the Landlords). *See* 11 U.S.C § 365(d)(3). Attaching liens on leases

---

[9] *See* Interim Cash Collateral Order ¶ 3(a) n.4 [Dkt. No. 103] (prohibiting attachment of Adequate Protection Liens on a real property lease to the extent that such lease does not permit such attachment " . . . unless (x) applicable law permits such attachment notwithstanding any prohibition or limitation in such lease and (y) the permissibility of such attachment has been determined by the Court following notice and a hearing . . . .").

where they are not permitted would be a breach of the lease and therefore a direct violation of section 365(d)(3).

7. Moreover, any order approving the DIP Motion (as well as any final Cash Collateral Order) should not contain a waiver of the estates' right to surcharge collateral under section 506(c) of the Bankruptcy Code. For many of the leases, the Debtors have neither paid nor budgeted for the payment of rent for the post-petition period November 6-30, 2023 ("November Stub Rent"). By deferring the payment of November Stub Rent, the Debtors and Softbank are effectively forcing the landlords to finance these cases. Ironically, while Softbank, the Debtors' controlling shareholder, is seeking fees, interest, and adequate protection liens and payments, and to be insulated from section 506(c) surcharges, all for extending no new credit under the DIP Motion, the landlords, who are being forced to finance these cases, are not being offered any adequate protection for the ongoing risk of nonpayment of the November Stub Rent. This is so even where the leases and leased premises are the backbone of the Debtors' go-forward business.

8. The Landlords recognize that the Court cannot force lenders to advance funds needed to pay the November Stub Rent administrative expense claim under section 503(b) of the Bankruptcy Code. However, the Court also does not have to grant a section 506(c) waiver without assurances that known and foreseeable administrative expense claims will be paid in these Chapter 11 Cases. November Stub Rent is a quantifiable and known administrative expense claim that should be paid and should not be the go-to source for the Debtors' operational liquidity.

9. Before granting any section 506(c) waiver, the Court should require evidence that there will be sufficient cash available to pay the known and reasonably foreseeable administrative expenses of the Debtors during the pendency of these Chapter 11 Cases, including the November Stub Rent. *See, e.g., In re Sports Authority Holdings, Inc.,* Case No. 16-10527 (MFW) (Bankr. D.

Del. Apr. 26 & May 3, 2016) (denying waiver of 506(c) surcharge rights unless final financing order provided for immediate payment of stub rent). *See also In re NEC Holdings Corp.*, Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010), Hr'g Tr. at 100:17–20 (secured creditors have "got to pay the freight, and . . . the freight is certainly an administratively solvent estate."); *In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011), Hr'g Tr. at 23:25–24:9 (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate.").[10]

10. Further, the Court should not grant a section 506(c) waiver and saddle the landlords in these cases with the risk of administrative insolvency by relegating them to the position of an involuntary, unsecured, post-petition, interest-free lender to the Debtors. Unlike other creditors, the landlords are not permitted to cease doing business with the Debtors in bankruptcy and must continue to permit them to use and occupy the leased premises until a lease is rejected. For this reason, the landlords in these cases are entitled to adequate protection under section 363(e) of the Bankruptcy Code to the extent the Debtors wish to defer payment of the November Stub Rent.[11] Entitlement to an allowed administrative expense claim is not adequate protection. *See* 11 U.S.C. §361(3). Adequate protection for deferred payment of November Stub Rent should include at the very least cash reserves designated for payment of November Stub Rent or an exception to any

---

[10] *See also In re Mach., Inc.*, 287 B.R. 755, 768 (Bankr. E.D. Mo. 2002) ("[B]oth [*Boatmen's* and *Hen House*] require[] a finding that the secured creditor does in fact impliedly consent when it agrees to the debtor's continued operation of its business." (citing *In re Hen House Interstate, Inc.*, 150 F.3d 868, 871–72 (8th Cir. 1998), *rev'd on other grounds*, 150 F.3d 868 (8th Cir.1998) (en banc) *aff'd*, 530 U.S. 1 (2000); *I.R.S. v. Boatmen's First Nat. Bank of Kansas City*, 5 F.3d 1157, 1159–60 (8th Cir. 1993), *overruled on other grounds by Hen House*, 177 F.3d 719 (8th Cir. 1999)).

[11] *See* 11 U.S.C. § 363(e) ("Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . . .").

8

section 506(c) waiver to allow the estates to charge the lenders' collateral for the amount of unpaid November Stub Rent.

11. Accordingly, for the reasons stated above, the DIP Motion should be denied and the Court should include similar landlord protections in any final order approving use of cash collateral.

### Reservation of Rights

12. The Landlords reserve their right to amend, modify, or supplement this Objection prior to the conclusion of any hearing on the DIP Motion and final use of cash collateral, including any adjourned hearing, and further reserve their right to assert additional objections at such hearing.

### Joinder

13. In addition to the foregoing, the Landlords join in any objections to the DIP Motion (and final approval of the Cash Collateral Motion) that may be filed by other parties in interest, including by other landlords and the Official Committee of Unsecured Creditors, to the extent such objections are consistent with the relief requested in this Objection.

[*remainder of page intentionally left blank*]

**WHEREFORE**, the Landlords respectfully request that the Court: (i) sustain this Objection and limit orders on the Motions consistent with this Objection; and (ii) grant to the Landlords such other and further relief as the Court deems just and appropriate.

Dated: December 7, 2023

**GENOVA BURNS LLC**

By: */s/ Donald W. Clarke*
GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax: (973) 533-1112
Email: DStolz@genovaburns.com
        DClarke@genovaburns.com

- and -

Douglas B. Rosner, Esq.
Brendan M. Gage, Esq.
**GOULSTON & STORRS PC**
400 Atlantic Avenue
Boston, MA 02110-3333
Telephone: (617) 482-1776
Fax: (617) 574-4112
Email: drosner@goulstonstorrs.com
        bgage@goulstonstorrs.com

*Counsel to Landlords Affiliated with Beacon Capital Partners LLC, Boston Properties, Inc., Columbia Property Trust, Manulife Investment Management (John Hancock Life Insurance Company), and WS Development*

## Schedule 1

### Landlords

1. BNY Tower Associates LLC
2. BCal 44 Montgomery Property LLC
3. BCal Gateway Property LLC
4. BCSP 330 North Wabash Property LLC
5. BCSP 515 North State Street LLC
6. BCSP Circa Property LLC
7. BXP Mission 535 LP
8. CCP/MS SSIII Denver Tabor Center 1 Property Owner, LLC
9. Columbia REIT-650 California LLC
10. CSHV-One American Center, LLC
11. Embarcadero Center Associates
12. Hancock REIT Sacramento LLC
13. John Hancock Life Insurance Company (U.S.A.)
14. Seaport B/C Retail Owner LLC
15. The Building at 575 Fifth Office Owner LLC
16. The Manufacturers Life Insurance Company
17. Transbay Tower LLC
18. Wells REIT II - 80 M Street, LLC