**PAUL HASTINGS LLP**
Kristopher M. Hansen, Esq. (admitted *pro hac vice*)
Frank A. Merola, Esq. (admitted *pro hac vice*)
Gabriel E. Sasson, Esq.
Emily L. Kuznick, Esq. (*pro hac vice* pending)
Matthew D. Friedrick, Esq. (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
krishansen@paulhastings.com
frankmerola@paulhastings.com
gabesasson@paulhastings.com
emilykuznick@paulhastings.com
matthewfriedrick@paulhastings.com

*Proposed Co-Counsel to the Official Committee of Unsecured Creditors*

**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq.
Tara J. Schellhorn, Esq.
Daniel A. Bloom, Esq.
Gregory S. Toma, Esq.
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com
dbloom@riker.com
gtoma@riker.com

*Proposed Co-Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., et al., | Case No. 23-19865 (JKS) |
| Debtors.[1] | Hon. John K. Sherwood |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT
IN RESPECT OF DEBTORS' DIP MOTION AND CASH COLLATERAL MOTION**

The Official Committee of Unsecured Creditors (the "Committee") of WeWork, Inc. and its affiliated debtors and debtors in possession (collectively, "WeWork" or the "Debtors"), under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), by and through its undersigned proposed counsel, hereby submits this statement (the "Statement") in respect of the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

LEGAL_US_E # 175119738.5

*Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 186] (the "DIP Motion") and the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 43] (the "Cash Collateral Motion" and together with the DIP Motion, the "Motions"). In connection therewith, the Committee respectfully states as follows:

## STATEMENT[2]

1. After extensive negotiations with the Debtors, SoftBank, the Ad Hoc Group and certain of the banks that issued the Debtors' letters of credit (the "Negotiating Parties"), the Committee reached agreement on the terms of the modified Proposed DIP Order and the modified Proposed Final Cash Collateral Order (the "DIP and CC Orders"). Based on the numerous concerns articulated by the Committee below as well as in the objections filed by many of the Debtors' landlords, who represent a large portion of the Debtors' unsecured creditors, the Committee's decision to support entry of the DIP and CC Orders was not made lightly. Indeed, while the Committee appreciates the concessions made by the Negotiating Parties, the Debtors' landlords and other general unsecured creditors still face uncertainty and risks that need to be monitored and addressed. The Committee also remains concerned about the Prepetition Secured Parties' ability to dictate important aspects of these cases and put themselves in a better position than other administrative creditors in the event that the cases take a turn for the worse.

---

[2] Any terms used, but not defined herein shall have the meaning ascribed to them in the Cash Collateral Motion, proposed final order approving the Cash Collateral Motion (the "Proposed Final Cash Collateral Order"), the DIP Motion, or the proposed order approving the DIP Motion (the "Proposed DIP Order", and together with the Proposed Final Cash Collateral Order, the "Proposed Orders"), as applicable.

Nonetheless, the Committee intends to continue working with the Debtors and all parties-in-interest, as it has since it was appointed, to address these concerns.

2. The Committee is a fiduciary with the current primary goals of (i) creating a financially stable reorganized WeWork, (ii) obtaining a meaningful recovery for unsecured creditors and (iii) driving a transparent and fair negotiating process between the Debtors and their landlords – the primary parties through whom much of the success or failure of these cases rests. As a result, the Committee believed that taking the significant (and in some cases, unprecedented) concessions it obtained from the Negotiating Parties in the DIP and CC Orders and advancing these cases to their next phase was preferable to litigating over every perceived lender overreach in the DIP and CC Orders.

3. The Committee is supportive of entry of the DIP and CC Orders but must underscore for the Court and the unsecured creditor community the context for its decision and major issues these cases face.

4. As the Debtors noted in their pleadings and first day declaration, their liquidity is tenuous. The Debtors' current cash collateral budget forecasts cash declining to $45 million by the week ending February 2, 2024 and that figure does <u>not</u> account for an approximate equal amount of unpaid stub rent that the Committee believes will be due to the Debtors' landlords in the form of administrative claims. The Committee tried to reverse this incongruity by negotiating for a stub rent protocol premised on potential new money DIP financing and asset sale proceeds, along with a carve out to the 506(c) waiver in the CC Order, but the Negotiating Parties would only agree to the protocol.[3] While not ideal, the Committee is optimistic that the stub rent protocol

---

[3] The Committee also attempted to avoid a dispute over the issue of whether a lien may be granted on a lease pursuant to the DIP and CC Orders by urging the Negotiating Parties to simply reserve their rights on the issue at the hearing to approve the DIP and CC Orders. The parties, however, required the inclusion of a lengthy footnote on the topic,

3

will protect landlords and will lead to the creation of a rapid and fair process to avoid costly and time-consuming litigation over the allowance and payment of stub rent claims.

5.  The Debtors, SoftBank and the Ad Hoc Group propose a plan that offers unsecured creditors no distribution and respects the form of prepetition transactions that granted SoftBank and the Ad Hoc Group the senior secured status that they use to claim ownership of the reorganized companies ahead of unsecured creditors. The additional concessions in the DIP and CC Orders obtained by the Committee will provide the Committee with the latitude necessary to investigate recent transactions that granted liens to SoftBank and the Second Lien Noteholders and to evaluate numerous other actions, with the goal of balancing the power dynamic in these cases and creating a pathway to improved unsecured creditor recoveries. The changes negotiated by the Committee to the DIP and CC Orders also limit the ability of the lenders to look to the proceeds of Avoidance Actions and commercial tort claims and enhance the Committee's ability to argue in the future to limit or eliminate Adequate Protection claims. Like the investigation rights, these changes help to provide a pathway to unsecured creditor recoveries and work to limit the ability of the lenders to drive these cases for their benefit and create greater risk for them in a meltdown scenario.

6.  As to the Debtors' long-term prospects, any hope for a stronger, healthier WeWork is inextricably tied to the support of its landlord community to renegotiate their leases. Simply put, without a successful lease negotiation process, there will be no successful reorganization. Indeed, the Debtors' own business plan shows the need for significant lease concessions to be achieved in short order. To date, however, landlords have reported to the Committee that the tone and structure of the lease negotiation process has been opaque and antagonistic, which will not

---

which the Committee views as a verbose reservation of rights and not something affecting substantive legal rights of the lenders or the landlords.

lead to a fruitful outcome. From the Committee's perspective, the lease negotiation process must be conducted in a cooperative manner that brings mutual integrity to the process in the hope of reaching deals that will advance these cases to a positive outcome. The Committee views itself as a bridge in this regard as the representative for all unsecured creditors.

7. To help moderate tension, advance discussions and provide appropriate diligence, the Committee expects the Debtors to host regular and direct meetings with the Committee and its members regarding the Debtors' business plan, the lease renegotiation strategy, near- and long-term financing, asset sales and likely sources of exit capital. The Committee also expects the Debtors and their advisors to provide ongoing, regular updates with respect to these items, and the Committee expects full cooperation with its investigation by the Debtors and their special committee, SoftBank and Ad Hoc Group. For its part, the Committee will facilitate regular, more communal meetings with the lessor community to help forge the kind of relationships that will be critical to achieving the goal of a healthy, reorganized WeWork.

## **CONCLUSION**

For the reasons stated above, the Committee respectfully requests that this Court approve the DIP Motion and Cash Collateral Motion in the form negotiated and agreed to by the Committee.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| December 10, 2023<br>Morristown, New Jersey | **RIKER DANZIG LLP**<br>By: /s/ *Joseph L. Schwartz*<br>Joseph L. Schwartz, Esq.<br>Tara J. Schellhorn, Esq.<br>Daniel A. Bloom, Esq.<br>Gregory S. Toma, Esq.<br>Headquarters Plaza, One Speedwell Avenue<br>Morristown, New Jersey 07962-1981<br>Telephone: (973) 538-0800<br>Facsimile: (973) 538-1984<br>jschwartz@riker.com<br>tschellhorn@riker.com<br>dbloom@riker.com<br>gtoma@riker.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br>Kristopher M. Hansen, Esq. (admitted *pro hac vice*)<br>Frank A. Merola, Esq. (admitted *pro hac vice*)<br>Gabriel E. Sasson, Esq.<br>Emily L. Kuznick, Esq. (*pro hac vice* pending)<br>Matthew D. Friedrick, Esq. (*pro hac vice* pending)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>krishansen@paulhastings.com<br>frankmerola@paulhastings.com<br>gabesasson@paulhastings.com<br>emilykuznick@paulhastings.com<br>matthewfriedrick@paulhastings.com<br><br>*Proposed Co-Counsel to the Official Committee of Unsecured Creditors* |