**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK, INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING OF FIRST AMENDED**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF WEWORK INC. AND ITS DEBTOR SUBSIDIARIES**

**PLEASE TAKE NOTICE** that on February 4, 2024, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of*

*Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1290] (the "Initial Plan").

**PLEASE TAKE FURTHER NOTICE** the Debtors hereby file the *First Amended Joint*

*Chapter 11 Plan of Reorganization of WeWork, Inc. and Its Debtor Subsidiaries* (the "Amended

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal
place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these
chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR
97005.

Plan"), attached hereto as **Exhibit A**.

   **PLEASE TAKE FURTHER NOTICE** that a comparison between the Initial Plan and

the Amended Plan is attached hereto as **Exhibit B**.

   **PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter

11 cases may be obtained free of charge by visiting the website of Epiq Corporate Restructuring,

LLC at https://dm.epiq11.com/WeWork.  You may also obtain copies of any pleadings by visiting

the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees

set forth therein.

*[Remainder of page intentionally left blank.]*

Dated: April 19, 2024

*/s/ Michael D. Sirota*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Edward O. Sassower, P.C. |
| Felice R. Yudkin, Esq. | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Ryan T. Jareck, Esq. | Steven N. Serajeddini, P.C. (admitted *pro hac vice*) |
| Court Plaza North, 25 Main Street | Ciara Foster (admitted *pro hac vice*) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| Telephone:  (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | Telephone:  (212) 446-4800 |
| wusatine@coleschotz.com | Facsimile:   (212) 446-4900 |
| fyudkin@coleschotz.com | edward.sassower@kirkland.com |
| rjareck@coleschotz.com | joshua.sussberg@kirkland.com |
| | steven.serajeddini@kirkland.com |
| | ciara.foster@kirkland.com |

*Co-Counsel for Debtors and*
*Debtors in Possession*                    *Co-Counsel for Debtors and*
                    *Debtors in Possession*

**Exhibit A**

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### FIRST AMENDED JOINT CHAPTER 11 PLAN
### OF REORGANIZATION OF WEWORK INC. AND ITS DEBTOR SUBSIDIARIES

| | |
|---|---|
| **KIRKLAND & ELLIS LLP** | **COLE SCHOTZ P.C.** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Michael D. Sirota, Esq. |
| Edward O. Sassower, P.C. | Warren A. Usatine, Esq. |
| Joshua A. Sussberg, P.C. (admitted *pro hac vice*) | Felice R. Yudkin, Esq. |
| Steven N. Serajeddini, P.C. (admitted *pro hac vice*) | Ryan T. Jareck, Esq. |
| Ciara Foster (admitted *pro hac vice*) | Court Plaza North, 25 Main Street |
| 601 Lexington Avenue | Hackensack, New Jersey 07601 |
| New York, New York 10022 | Telephone:    (201) 489-3000 |
| Telephone:    (212) 446-4800 | msirota@coleschotz.com |
| Facsimile:    (212) 446-4900 | wusatine@coleschotz.com |
| edward.sassower@kirkland.com | fyudkin@coleschotz.com |
| joshua.sussberg@kirkland.com | rjareck@coleschotz.com |
| steven.serajeddini@kirkland.com | |
| ciara.foster@kirkland.com | |
| | |
| *Co-Counsel for Debtors and* | *Co-Counsel for Debtors and* |
| *Debtors in Possession* | *Debtors in Possession* |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ........................................................................................................................... 1
    A.    Defined Terms ...................................................................................................... 1
    B.    Rules of Interpretation ....................................................................................... 26
    C.    Computation of Time ......................................................................................... 27
    D.    Governing Law .................................................................................................. 27
    E.    Reference to Monetary Figures .......................................................................... 28
    F.    Reference to the Debtors or the Reorganized Debtors ....................................... 28
    G.    Controlling Document ....................................................................................... 28
    H.    Consultation, Notice, Information, and Consent Rights. .................................... 28

ARTICLE II. ADMINISTRATIVE CLAIMS,  DIP ADMINISTRATIVE CLAIMS,  PRIORITY
CLAIMS, AND RESTRUCTURING EXPENSES ........................................................................... 28
    A.    Administrative Claims ....................................................................................... 28
    B.    DIP Administrative Claims ................................................................................ 30
    C.    Professional Fee Claims .................................................................................... 30
    D.    Priority Tax Claims ........................................................................................... 32
    E.    Payment of Statutory Fees and Reporting to the U.S. Trustee .......................... 32
    F.    Payment of Restructuring Expenses ................................................................... 32

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 32
    A.    Classification of Claims and Interests ............................................................... 32
    B.    Treatment of Claims and Interests .................................................................... 33
    C.    Special Provision Governing Unimpaired Claims ............................................. 38
    D.    Elimination of Vacant Classes .......................................................................... 39
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes ......................... 39
    F.    Intercompany Interests ...................................................................................... 39
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code ................................................................................................................... 39
    H.    Controversy Concerning Impairment ................................................................ 39
    I.    Subordinated Claims and Interests .................................................................... 39

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ................................................... 40
    A.    General Settlement of Claims and Interests ....................................................... 40
    B.    Restructuring Transactions ................................................................................ 40
    C.    Reorganized Debtors ......................................................................................... 41
    D.    Sources of Consideration for Plan Distributions ............................................... 41
    E.    Exemption from Registration Requirements and Certain DTC Matters. ............ 43
    F.    Corporate Existence ........................................................................................... 44
    G.    Vesting of Assets in the Reorganized Debtors ................................................... 45
    H.    Cancelation of Existing Securities and Agreements .......................................... 45
    I.    Corporate Action ............................................................................................... 46
    J.    New Corporate Governance Documents ........................................................... 47
    K.    Challenges ......................................................................................................... 47
    L.    Section 1146 Exemption .................................................................................... 47
    M.    [Management Incentive Plan] ............................................................................ 48
    N.    Employee and Retiree Benefits ......................................................................... 48
    O.    Preservation of Causes of Action ...................................................................... 48

ARTICLE V. [TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES] ............ 49
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases...................... 49
    B.    Indemnification Obligations ............................................................................................... 52
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 52
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................... 53
    E.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
        Leases................................................................................................................................. 55
    F.    Insurance Policies .............................................................................................................. 55
    G.    Reservation of Rights......................................................................................................... 55
    H.    Nonoccurrence of Effective Date....................................................................................... 56
    I.    Employee Compensation and Benefits .............................................................................. 56
    J.    Intellectual Property Licenses and Agreements................................................................. 57
    K.    Contracts and Leases Entered into after the Petition Date.................................................. 57

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...................................................... 57
    A.    Distributions on Account of Claims or Interests Allowed as of the Effective Date ......... 57
    B.    Disbursing Agent ............................................................................................................... 58
    C.    Rights and Powers of Disbursing Agent ........................................................................... 58
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................... 58
    E.    Manner of Payment............................................................................................................ 60
    F.    Indefeasible Distributions ................................................................................................. 60
    G.    Compliance with Tax Requirements.................................................................................. 60
    H.    Allocations ......................................................................................................................... 61
    I.    No Postpetition Interest on Claims .................................................................................... 61
    J.    Foreign Currency Exchange Rate ...................................................................................... 61
    K.    Preservation of Setoffs and Recoupment........................................................................... 61
    L.    Claims Paid or Payable by Third Parties .......................................................................... 62

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS ........................................................................................................................ 62
    A.    Disputed Claims Process ................................................................................................... 62
    B.    Allowance of Claims ......................................................................................................... 63
    C.    Claims Administration Responsibilities ........................................................................... 63
    D.    Estimation of Claims and Interests ................................................................................... 63
    E.    Disputed Claims Reserve................................................................................................... 64
    F.    Adjustment to Claims or Interests without Objection........................................................ 65
    G.    Time to File Objections to Claims...................................................................................... 65
    H.    Disallowance of Claims or Interests ................................................................................. 65
    I.    Amendments to Claims...................................................................................................... 65
    J.    No Distributions Pending Allowance ................................................................................ 65
    K.    Distributions After Allowance............................................................................................ 66
    L.    Single Satisfaction of Claims............................................................................................. 66

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS.............. 66
    A.    Discharge of Claims and Termination of Interests ............................................................ 66
    B.    Release of Liens................................................................................................................. 67
    C.    Releases by the Debtors..................................................................................................... 67
    D.    Releases by the Releasing Parties...................................................................................... 68
    E.    Exculpation ....................................................................................................................... 70
    F.    Injunction........................................................................................................................... 70
    G.    Gatekeeper Provision......................................................................................................... 72

H.      Protections Against Discriminatory Treatment ................................................. 72
I.      Document Retention ......................................................................................... 72
J.      Reimbursement or Contribution ...................................................................... 72

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ......................... 73
A.      Conditions Precedent to the Effective Date ................................................... 73
B.      Waiver of Conditions ...................................................................................... 74
C.      Effect of Failure of Conditions ...................................................................... 75
D.      Substantial Consummation ............................................................................. 75

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ..................... 75
A.      Modification and Amendments ....................................................................... 75
B.      Effect of Confirmation on Modifications ....................................................... 75
C.      Revocation or Withdrawal of Plan ................................................................. 75

ARTICLE XI. RETENTION OF JURISDICTION ................................................................. 76

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................ 78
A.      Immediate Binding Effect ............................................................................... 78
B.      Additional Documents ..................................................................................... 78
C.      Statutory Committee and Cessation of Fee and Expense Payment ................. 78
D.      Reservation of Rights ...................................................................................... 79
E.      Successors and Assigns ................................................................................... 79
F.      Notices ............................................................................................................ 79
G.      Term of Injunctions or Stays .......................................................................... 81
H.      Entire Agreement ............................................................................................ 81
I.      Plan Supplement ............................................................................................. 81
J.      Nonseverability of Plan Provisions ................................................................ 81
K.      Votes Solicited in Good Faith ........................................................................ 82
L.      Closing of Chapter 11 Cases .......................................................................... 82
M.      Waiver or Estoppel ......................................................................................... 82

**INTRODUCTION**

WeWork Inc. and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors") propose this joint chapter 11 plan of reorganization (together with any documents comprising the Plan Supplement, and as amended, supplemented, or otherwise modified from time to time, in accordance with the RSA, this "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A of this Plan. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. The classification of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein. This Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made, and Holders of Claims or Interests may refer, to the accompanying Disclosure Statement for a discussion on the Debtors' history, businesses, assets, operations, historical financial information, valuation, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING, WITHOUT LIMITATION, UNDER ARTICLE IV HEREOF) IN FULL.

THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF AN INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION. NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN, IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*.

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*1L Equity Distribution*" means the percentage of the Prepetition Secured Equity Distribution equal to (a)(i) Total 1L Claims *divided by* (ii) Total 1L Claims *plus* Adjusted 2L Notes Claims *multiplied by* (b)(i) 100.00% of the New Interests *minus* (ii) the Drawn DIP TLC Equity Distribution.

2.      "*1L Indenture*" means that certain First Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended by the First Supplemental Indenture, dated as of July 17, 2023, and the Second Supplemental Indenture, dated as of August 25, 2023, and as may be further amended, amended and restated,

1

or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

3.    "*1L Notes*" means, collectively, (a) the 1L Series 1 Notes, (b) the 1L Series 2 Notes, and (c) the 1L Series 3 Notes.

4.    "*1L Notes Claims*" means any Claims arising under the 1L Notes.

5.    "*1L Pari Passu Intercreditor Agreement*" means that certain Amended and Restated Pari Passu Intercreditor Agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

6.    "*1L Series 1 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series I, issued by the Issuers under the 1L Indenture.

7.    "*1L Series 1 Notes Claims*" means any Claims arising under the 1L Series 1 Notes.

8.    "*1L Series 2 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series II, issued by the Issuers under the 1L Indenture.

9.    "*1L Series 2 Notes Claims*" means any Claims arising under the 1L Series 2 Notes.

10.    "*1L Series 3 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series III, issued by the Issuers under the 1L Indenture.

11.    "*1L Series 3 Notes Claims*" means any Claims arising under the 1L Series 3 Notes.

12.    "*1L/2L/3L Intercreditor Agreement*" means that certain intercreditor agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

13.    "*2L Collateral Agency Agreement*" has the meaning ascribed to it in the Cash Collateral Orders.

14.    "*2L Equity Distribution*" means the percentage of the Prepetition Secured Equity Distribution equal to (a)(i) Adjusted 2L Notes Claims *divided by* (ii) Total 1L Claims plus Adjusted 2L Notes Claims *multiplied by* (b)(i) 100.00% of the New Interests *minus* (ii) the Drawn DIP TLC Equity Distribution.

15.    "*2L Exchangeable Indenture*" means that certain Second Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as may be amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

16.    "*2L Exchangeable Notes*" means those certain 11.00% Second Lien Exchangeable Senior Secured PIK Notes due 2027 issued by the Issuers under the 2L Exchangeable Indenture.

17.    "*2L Exchangeable Notes Claims*" means any Claims arising under the 2L Exchangeable Notes.

18.    "*2L Indenture*" means that certain Second Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as may be amended and restated, or otherwise supplemented from time to time), by and

among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

19. "*2L Notes*" means, collectively, the 2L Secured Notes and the 2L Exchangeable Notes.

20. "*2L Notes Claims*" means any Claims arising under the 2L Notes.

21. "*2L Secured Notes*" means those certain 11.00% Second Lien Senior Secured PIK Notes due 2027 issued by the Issuers under the 2L Indenture.

22. "*2L Secured Notes Claims*" means any Claims arising under the 2L Secured Notes.

23. "*3L Collateral Agency Agreement*" has the meaning ascribed to it in the Cash Collateral Orders.

24. "*3L Exchangeable Indenture*" means that certain Third Lien Exchangeable Senior Secured PIK Notes Indenture, dated May 5, 2023 (as may be amended, amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

25. "*3L Exchangeable Notes*" means those certain 12.00% Third Lien Exchangeable Senior Secured PIK Notes due 2027 issued by the Issuers under the 3L Exchangeable Indenture.

26. "*3L Indenture*" means that certain Third Lien Senior Secured PIK Notes Indenture, dated May 5, 2023 (as may be amended, amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, Delaware Trust Company (as successor to U.S. Bank Trust Company, National Association), as trustee, and U.S. Bank Trust Company, National Association, as collateral agent.

27. "*3L Notes*" means, collectively, the 3L Exchangeable Notes and the 3L Secured Notes.

28. "*3L Notes Claims*" means any Claims arising under the 3L Notes.

29. "*3L Secured Notes*" means those certain 12.00% Third Lien Senior Secured PIK Notes due 2027 issued by the Issuers under the 3L Indenture.

30. "*5.00% Unsecured Notes*" means those certain 5.00% Senior Notes due 2025, Series II, issued by the Issuers under the 5.00% Unsecured Notes Indenture.

31. "*5.00% Unsecured Notes Indenture*" means that certain Amended and Restated Senior Notes Indenture, dated as of December 16, 2021 (as it may be amended, supplemented, or otherwise modified from time to time), by and among the Issuers, the guarantors from time to time party thereto, and Computershare Trust Company, National Association (as successor to U.S. Bank Trust Company, National Association, as successor to U.S. Bank National Association, as successor to Wells Fargo Bank, National Association), as trustee.

32. "*7.875% Unsecured Notes*" means those certain 7.875% Senior Notes due 2025 issued by Issuers under the 7.875% Unsecured Notes Indenture.

33. "*7.875% Unsecured Notes Indenture*" means that certain Senior Notes Indenture, dated of April 30, 2018 (as it may be amended, supplemented, or otherwise modified from time to time), by and

among Issuers, the guarantors from time to time party thereto, and Computershare Trust Company, National Association (as successor to U.S. Bank Trust Company, National Association, as successor to U.S. Bank National Association, as successor to Wells Fargo Bank, National Association), as trustee.

34. "*Ad Hoc Group*" means the ad hoc group of Holders (or beneficial owners) of, or investment advisors, sub-advisors, or managers of discretionary accounts or funds that hold (or beneficially own), Secured Notes Claims, and that is represented by the Ad Hoc Group Professionals.

35. "*Ad Hoc Group Professionals*" means Davis Polk & Wardwell LLP, as counsel, Ducera Partners LLC, as financial advisor, Greenberg Traurig, LLP, as local co-counsel, Freshfields Bruckhaus Deringer LLP, as foreign co-counsel, and any other special or local counsel or advisors providing advice to the Ad Hoc Group in connection with the Restructuring Transactions.

36. "*Adjusted 2L Notes Claims*" means the total aggregate amount of 2L Notes Claims excluding, for the avoidance of doubt, any postpetition interest or fees, multiplied by 70.00%.

37. "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed DIP Administrative Claims; (c) Allowed Professional Fee Claims; (d) the Restructuring Expenses; (e) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (f) any adequate protection claims provided for in the Cash Collateral Orders.

38. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Effective Date for Administrative Claims other than Professional Fee Claims and (b) 45 days after the Effective Date for Professional Fee Claims.

39. "*Administrative Claims Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims required to File a Proof of Claim form, which shall be the first Business Day that is 60 days following the Effective Date; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

40. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor. "*Affiliated*" has a correlative meaning.

41. "*Agent*" means any collateral agent or trustee, administrative agent, lien agent, term agent, indenture trustee, or similar Entity under the Prepetition LC Credit Agreement, Indentures, DIP Documents, Exit LC Facility Documents, or similar agreements, including any successors thereto.

42. "*Agent Professionals*" means any counsel or advisors providing advice to the Agents in connection with the Restructuring Transactions.

43. "*Allowed*" means, with respect to a Claim or Interest, any Claim or Interest (or portion thereof) against any Debtor that, except as otherwise provided in this Plan: (a) is evidenced by a Proof of Claim or Proof of Interest or request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Claims Bar Date; (b) is not listed in the schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) is allowed, compromised, settled, or otherwise resolved pursuant to the terms of this Plan, in a Final

4

Order of the Bankruptcy Court, in any stipulation that is approved by a Final Order of the Bankruptcy Court, or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith.  For the avoidance of doubt, any Claim or Interest (or portion thereof), that has been disallowed pursuant to a Final Order shall not be an "Allowed" Claim; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if, and to the extent that, it is not Disputed and the period to object to such Claim or Interest has expired.  Any Claim that has been or is hereafter listed in the schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  Any Claim or Interest that has been or is hereafter categorized as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Proof of Interest, as applicable, is or has been timely Filed, is not considered Allowed, as set forth in this Plan and the Confirmation Order.  For the avoidance of doubt, a Proof of Claim or Proof of Interest Filed after the applicable Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*," "*Allowing*," and "*Allowance*" shall have correlative meanings.

44.    "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims and Causes of Action, or remedies that may be brought by, or on behalf of, the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar Law.

45.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

46.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey presiding over the Chapter 11 Cases, or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 151.

47.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

48.    "*Bar Date Order*" means any Final Order entered pursuant to the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code; (II) Establishing an Amended Schedules Bar Date, a Rejection Damages Bar Date, and a Stub Rent Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief* [Docket No. 1108] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

49.    "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York or country of Japan.

50.    "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

51.      "*Cash Collateral Documents*" means the Cash Collateral Orders, the Cash Collateral Motion, any collateral, security, or other documentation related thereto, and any budgets (including initial and subsequent budgets) related thereto, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

52.      "*Cash Collateral Final Order*" means the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 428], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

53.      "*Cash Collateral Interim Order*" means the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 103], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

54.      "*Cash Collateral Motion*" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Related Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 43], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

55.      "*Cash Collateral Orders*" means, collectively, the Cash Collateral Interim Order, the Cash Collateral Final Order, and any other orders entered in the Chapter 11 Cases authorizing the Debtors' use of cash collateral, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

56.      "*Cash Election*" means a pool of value including $[●] in Cash to be distributed in accordance with Article III.

57.      "*Causes of Action*" means, collectively, any and all claims, interests, controversies, actions, proceedings, reimbursement claims, contribution claims, recoupment rights, debts, third-party claims, indemnity claims, damages, remedies, causes of action, demands, rights, suits, obligations, liabilities, accounts, judgments, defenses, offsets, powers, privileges, licenses, franchises, Liens, guaranties, Avoidance Actions, agreements, counterclaims, and cross-claims, of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, whether arising before, on, or after the Petition Date, in tort, Law, equity, or otherwise pursuant to any theory of civil Law (whether local, state, or federal U.S. Law or non-U.S. Law). Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any Claim (whether under local, state, federal U.S. Law or non-U.S. civil Law) based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction Law, violation of local, state, or federal non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws and negligence; (c) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (d) claims  pursuant to section 362 or chapter 5 of the

6

Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

58.    "*Chapter 11 Cases*" means:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

59.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

60.    "*Claim Objection*" means an objection to the allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding omnibus claims objections.

61.    "*Claims Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases [Docket No. 91].

62.    "*Claims Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed, as established by:  (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

63.    "*Claims Register*" means the official register of Claims maintained by the Claims Agent or the clerk of the Bankruptcy Court.

64.    "*Class*" means a class of Claims or Interests as set forth in <u>Article III</u> of this Plan pursuant to section 1122(a) and 1123(a)(1) of the Bankruptcy Code.

65.    "*Combined Hearing*" means the combined hearing held by the Bankruptcy Court to consider Confirmation, pursuant to Bankruptcy Rules 3017 and 3020(b)(2) and sections 1125, 1128, and 1129 of the Bankruptcy Code, and final approval of the Disclosure Statement, as such hearing may be continued from time to time.

66.    "*Compensation and Benefits Programs*" means all employment, change-in-control agreements, and [severance agreements] and policies, and all employment, wages, compensation, and benefit plans and policies, staffing agencies and independent contractor obligations, workers' compensation programs, retirement plans, savings plans, bonus and incentive programs (whether cash or equity based), reimbursable expenses, paid leave benefits, retention programs, additional benefits programs (including any fringe benefits or perquisites), payroll vendor obligations, healthcare plans, disability plans, COBRA plans, severance benefit plans and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

67.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

68.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

69.     "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan and approving the Disclosure Statement on a final basis, pursuant to sections 1125 and 1129 of the Bankruptcy Code, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

70.     "*Consenting Stakeholders*" has the meaning set forth in the RSA.

71.     "*Consummation*" means the occurrence of the Effective Date.

72.     "*Controlled Subsidiary*" means any subsidiary controlled by the Debtors in a manner that allows the Debtors to legally control whether such subsidiary initiates an Insolvency Proceeding.

73.     "*Corporate Governance Term Sheet*" means that certain corporate governance term sheet, which shall be subject to the consent of Cupar, included in the Plan Supplement and setting forth the terms of the New Corporate Governance Documents as may be modified, supplemented, or amended in accordance with the terms hereof and thereof, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

74.     "*Court-Ordered Cure Obligation*" means, as determined and ordered by the Bankruptcy Court, any Cure Obligation with respect to any Executory Contract or Unexpired Lease that varies from the Cure Obligations set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases.

75.     "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 150] on November 16, 2023, as may be reconstituted from time to time.

76.     "*Creditors' Committee Member*" means each Entity that is a member of the Creditors' Committee.

77.     "*Cupar*" means Cupar Grimmond, LLC, a Delaware limited liability company.

78.     "*Cupar Professionals*" means Cooley LLP, as counsel, and Piper Sandler & Co., as financial advisor, and any other advisors providing advice in connection with the Restructuring Transactions and pursuant to an engagement letter approved by the Debtors in their discretion in consultation with the Required Consenting Stakeholders.

79.     "*Cure Claim*" means a monetary Claim based upon any Debtor's defaults under an Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is required to be cured pursuant to section 365 of the Bankruptcy Code.

80.     "*Cure Obligation*" means, collectively, all (a) Cure Claims and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

8

81.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") that have been issued at any time covering any of the Debtors' current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

82.     "*Debt Documents*" means, collectively, the Prepetition LC Facility Documents, the Notes, the Indentures, the 1L/2L/3L Intercreditor Agreement, the 1L Pari Passu Intercreditor Agreement, the 2L Collateral Agency Agreement, the 3L Collateral Agency Agreement, the Postpetition Financing Documents, and any other agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time).[2]

83.     "*Debtor Release*" means the release given by the Debtors to the Released Parties as set forth in Article VIII.C of this Plan.

84.     "*Definitive Chapter 11 Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement, effectuate, or that otherwise relate to, the Restructuring Transactions, including:  (a) the Postpetition Financing Documents; [(b) the Rights Offering Documents (if any);] (c) the Exit LC Facility Documents; (d) the Exit Equity Commitment Documents (d) the New Corporate Governance Documents; (e) any documents in connection with any First Day Pleadings or "second day" pleadings and all orders sought pursuant thereto (including the First Day Pleadings) and First Day Orders; (f) this Plan; (g) the Confirmation Order and any pleadings Filed by the Debtors in support of entry thereof; (h) the Disclosure Statement and Solicitation Materials (including any motion seeking either approval of the Disclosure Statement or combined or conditional approval of the Disclosure Statement and/or Plan); (i) the Disclosure Statement Order; (j) any "key employee" retention or incentive plan and any motion or order related thereto; (k) the Restructuring Transactions Exhibit and Ruling Request, if any; (l) the Plan Supplement; (m) any material agreements, settlements, motions, pleadings, briefs, applications, orders, and other filings with the Bankruptcy Court with respect to the rejection, assumption and/or assumption and assignment of Executory Contracts and/or Unexpired Leases; (n) if applicable, any sale order and any other motions, proposed orders, and definitive documentation, including any purchase agreement or procedures, related to the sale of all or substantially all of the assets of the Debtors taken as a whole; (o) any other material (with materiality determined in the reasonable discretion of the Debtors subject to the consent rights set forth in the RSA) agreements, settlements, applications, motions, pleadings, briefs, orders, and other filings with the Bankruptcy Court (including any documentation related to any equity or debt investment or offering with respect to any Debtors) that may be reasonably necessary or advisable to implement the Restructuring Transactions; and (p) any pleadings that impose or seek authority to impose sell-down orders or restrictions on the ability of the Consenting Stakeholders or other parties to trade any of the Debtors' securities, each of which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and may be modified, supplemented, or amended only in accordance with the RSA.

85.     "*Definitive Documents*" means, collectively, the Definitive Chapter 11 Documents and the Definitive Insolvency Documents, which shall be consistent in all respects with the RSA, including the consent rights set forth therein.

---

[2]     For the avoidance of doubt, "Exit LC Facility Documents" should not be considered "Debt Documents" for purposes of this definition.

86.     "*Definitive Insolvency Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Restructuring Transactions, in connection with any Insolvency Proceeding other than the Chapter 11 Cases, each of which shall be (except as otherwise set forth herein) subject to the consent rights set forth in the RSA, including: (a) a certified copy of the decision commencing such Insolvency Proceeding or any analogous procedure under applicable law; (b) where applicable, an order of the relevant court in which each Insolvency Proceeding has been filed, giving orders for directions with respect to, among other things (if applicable), the convening of creditor and/or member meetings to vote on the relevant Foreign Plan; (c) any Foreign Plan; (d) where applicable, an order of the relevant court in which each Insolvency Proceeding has been filed sanctioning the relevant Foreign Plan; and (e) any other material document, deed, agreement, Filing, notification, letter, or instrument necessary or desirable entered into by a Debtor or Consenting Stakeholder in connection with the relevant Foreign Plan or Insolvency Proceeding and referred to in (a) above (including, for the avoidance of doubt, documents described in the explanatory statement relevant to any Insolvency Proceeding); *provided* that each of the foregoing shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and may be modified, supplemented, or amended only in accordance with the RSA; *provided*, *further*, that notwithstanding the foregoing, any monthly or quarterly operating reports, retention applications, fee applications, fee statements, and declarations in support thereof or related thereto shall not constitute Definitive Documents.

87.     "*DIP Administrative Claim*" means a DIP TLC Fee Claim.

88.     "*DIP Agents*" means, collectively, the DIP LC/TLC Agent and the DIP New Money Agent (if any).

89.     "*DIP Agreements*" means, collectively, the DIP LC/TLC Credit Agreement and the DIP New Money Credit Agreement (if any).

90.     "*DIP Claim*" means, any and all Claims arising under the DIP Documents, including the DIP Administrative Claims, the Drawn DIP TLC Claims, and the Undrawn DIP TLC Claims.

91.     "*DIP Documents*" means, collectively, the DIP LC/TLC Documents, the DIP Order, and the DIP New Money Documents (if any).

92.     "*DIP Facilities*" means, collectively, the DIP LC Facility, the DIP TLC Facility, and the DIP New Money Facility (if any).

93.     "*DIP LC Facility*" means that certain senior secured, first priority cash collateralized debtor-in-possession "first out" letter of credit facility provided by the DIP LC Issuers in an aggregate amount not to exceed $650,000,000 on the terms of, and subject to the conditions set forth in, the DIP LC/TLC Credit Agreement and approved by the Bankruptcy Court pursuant to the DIP LC/TLC Order.

94.     "*DIP LC Issuers*" Goldman Sachs International Bank and JPMorgan Chase Bank, N.A.

95.     "*DIP LCs*" means the letters of credit issued, rolled, replaced, reissued, amended, extended, renewed, or otherwise continued by the DIP LC Issuers under the DIP LC Facility.

96.     "*DIP LC/TLC Agent*" means, collectively, pursuant to the DIP LC/TLC Credit Agreement, Goldman Sachs International Bank as senior LC facility administrative agent, shared collateral agent, and

additional collateral agent, JPMorgan as the additional collateral agent, SVF II as the junior TLC facility administrative agent, and any of their successors or assigns.

97.    "*DIP LC/TLC Credit Agreement*" means that certain senior secured debtor-in-possession credit agreement (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) entered into as of December 19, 2023, by and among WeWork Companies U.S. LLC, as borrower, Goldman Sachs International Bank, as senior LC facility administrative agent, shared collateral agent, issuing bank, additional collateral agent, sole structuring agent, joint lead arranger, joint bookrunner, JPMorgan, as issuing bank, additional collateral agent, joint lead arranger, joint bookrunner, SVF II as junior TLC facility lender and junior TLC facility administrative agent, SVF II GP (Jersey) Limited, as general partner of SVF II, and SB Global Advisors Limited, as manager of SVF II.

98.    "*DIP LC/TLC Documents*" means, collectively, the DIP LC/TLC Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, fee letters, and other Credit Documents (as defined in the DIP LC/TLC Credit Agreement) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time).

99.    "*DIP LC/TLC Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 427].

100.    "*DIP Lenders*" means, collectively, the DIP LC Issuers, the DIP TLC Lender, and the DIP New Money Lenders (if any).

101.    "*DIP New Money Agent*" means the Agent(s) (if any) in its capacity as such, under the DIP New Money Credit Agreement (if any).

102.    "*DIP New Money AHG Lenders*" those members of the Ad Hoc Group that are DIP New Money Lenders.

103.    "*DIP New Money Claim*" means any Claims (if any) on account of the Obligations (as defined in the DIP New Money Documents, and including any interest, premiums, fees, or other amounts owed thereunder) due or payable as of the Effective Date under the DIP Documents attributable to the DIP New Money Facility (if applicable).

104.    "*DIP New Money Credit Agreement*" means the debtor-in-possession credit agreement (if any), to be entered into, as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, as set forth in the Plan Supplement, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

105.    "*DIP New Money Documents*" means, collectively, the DIP New Money Credit Agreement (if any) and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, fee letters, and other Credit Documentation (as defined in the DIP New Money Order) (if any), to be entered into, and documents related thereto (as amended, amended and restated, supplemented, waived, and/or modified from time to time), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

106.    "*DIP New Money Facility*" means the facility (if any), to be entered into, provided by the DIP New Money Lenders on the terms of, and subject to the conditions set forth in, the DIP New Money Credit Agreement (if any) and the RSA and approved by the Bankruptcy Court pursuant to the DIP New Money Order (if any); *provided* that, to the extent that the opportunity to participate as DIP New Money Lenders is offered to a Class of Holders of Claims, such opportunity to participate shall be offered to the Holders of such Class on a Pro Rata basis.

107.    "*DIP New Money Lenders*" means the lender(s) (if any), each in its capacity as such, under the DIP New Money Facility, the identity of which shall be subject to the consent rights set forth in the RSA.

108.    "*DIP New Money Order*" means any interim order or Final Order entered by the Bankruptcy Court approving the DIP New Money Facility (if any), subject to the consent rights of the RSA, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

109.    "*DIP Orders*" means, collectively, the DIP LC/TLC Order and the DIP New Money Order (if any), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

110.    "*DIP TLC Claims*" means all Claims of the DIP TLC Lender arising under, derived from, or based upon the DIP LC/TLC Documents, including Claims for all Junior TLC Facility Credit Document Obligations (as defined in the DIP LC/TLC Credit Agreement), including, but not limited to, all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under the DIP LC/TLC Credit Agreement.

111.    "*DIP TLC Facility*" means that certain first priority debtor-in-possession "last out" term loan C facility provided by the DIP TLC Lender in an aggregate principal amount of $671,237,045.94 on the terms of, and subject to the conditions set forth in, the DIP LC/TLC Credit Agreement and approved by the Bankruptcy Court pursuant to the DIP LC/TLC Order.

112.    "*DIP TLC Fee Claims*" means any Claims arising from the fees and expenses owing to the DIP TLC Lender under the DIP TLC Facility, including reasonable and documented professionals' fees, which Claims are Allowed super-priority administrative expenses pursuant to the DIP LC/TLC Order.

113.    "*DIP TLC Fee Equity Distribution*" means the percentage of New Interests equal to the amount of DIP TLC Fee Claims *divided by* the sum of (i) DIP TLC Fee Claims and (ii) $1 billion.

114.    "*DIP TLC Lender*" means SVF II in its capacity as the junior TLC facility lender under the DIP TLC Facility.

115.    "*Disbursing Agent*" means, as applicable, the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or to facilitate distributions, allocations, and/or issuances in accordance with, and pursuant to, this Plan.

116.    "*Disclosure Statement*" means the disclosure statement relating to this Plan, as may be amended, supplemented, or modified from time to time, including all exhibits, schedules, appendices, related documents, ballots, notices, and procedures related to the solicitation of votes to accept or reject this Plan, in each case, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law,

to be approved pursuant to the Disclosure Statement Order, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

117.     "*Disclosure Statement Order*" means the order (and all exhibits thereto), entered by the Bankruptcy Court, conditionally approving the Disclosure Statement and the Solicitation Materials, and allowing solicitation of this Plan to commence, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

118.     "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof): (a) that is not Allowed; (b) that is not disallowed by this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

119.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, subject to the requirements of any Foreign Proceeding that satisfies the consent rights with respect thereto set forth in the RSA, upon which the Disbursing Agent shall, as soon as reasonably practicable after receipt thereof, make distributions to Holders of Allowed Claims and/or Allowed Interests (as and if applicable) entitled to receive distributions under this Plan.

120.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under this Plan, which date shall be the Confirmation Date, or such other date as agreed to by the Debtors, and the Required Consenting Stakeholders.  The Distribution Record Date shall not apply to Securities of the Debtors deposited with DTC or another similar securities depository, the Holders of which shall receive a distribution in accordance with Article VI of this Plan and, as applicable, the customary procedures of DTC or another similar securities depository.

121.     "*Drawn DIP TLC Claims*" means a portion of the DIP TLC Claims in an amount equal to the principal face amount due or payable under the DIP LC Facility attributable to DIP LCs that have been drawn prior to the Effective Date to the extent the beneficiary thereof has not returned the proceeds of such draw to an LC Cash Collateral Account (as defined in the DIP LC/TLC Credit Agreement) prior to the Effective Date.

122.     "*Drawn DIP TLC Equity Distribution*" means a percentage of the Prepetition Secured Equity Distribution equal to:  (i) the amount of Drawn DIP TLC Claims *divided by* the sum of Total 1L Claims, Drawn DIP TLC Claims, and Adjusted 2L Notes Claims and (ii) *multiplied by* 2.00.

123.     "*DTC*" means The Depository Trust Company, a New York corporation.

124.     "*Effective Date*" means the first Business Day after the Confirmation Order is entered on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of this Plan and (b) this Plan is declared effective by the Debtors.

125.     "*Emergence Awards*" means the awards that may be allocated on or prior to the Effective Date as emergence grants to retain and recruit individuals selected to serve in key senior management

13

positions on or after the Effective Date, subject to the terms and conditions, including, but not limited to, with respect to form, allocated percentage of the MIP, structure, and vesting, as more fully set forth in the Plan Supplement and subject to the consent rights set forth in the RSA.

126.  "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

127.  "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

128.  "*Equity Election*" means a pool of value equal to [●]% of the New Interests subject to dilution on account of the New Money Equity Distribution, the MIP, and the DIP TLC Fee Equity Distribution, to be distributed in accordance with Article III.

129.  "*Excess DIP TLC Claims*" means the portion of the DIP TLC Claims in an amount equal to the DIP TLC Claims *minus* the Drawn DIP TLC Claims *minus* the Rolled Undrawn DIP TLC Claims.

130.  "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; and (c) with respect to each of the foregoing Entities in clauses (a) through (b), each of the Related Parties of such Entity [(excluding [●])].[3]

131.  "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

132.  "*Existing Board Members*" means each member of the board of directors (or similar governing body, if applicable) of the Debtors who holds such position between the Petition Date and immediately prior to the Effective Date.

133.  ["*Exit Commitment Netting Transaction*" means the agreement pursuant to which (i) Cupar shall transfer New Interests constituting 3% of the New Interests on a post-dilution basis, and (ii) the SoftBank Parties shall transfer New Interests constituting 3% of the New Interests on a post-dilution basis, both to the DIP New Money AHG Lenders, which transfers shall be effectuated by the Debtors through distributions of New Interests to the DIP New Money AHG Lenders on the Effective Date; *provided, however*, that such agreement shall be subject to the Corporate Governance Term Sheet.]

134.  "*Exit Equity Commitment*" means the commitment of the DIP New Money Lenders (if any) to purchase the Exit New Money Shares in exchange for the Exit Equity Commitment Consideration.

135.  "*Exit Equity Commitment Documents*" means the material documents governing the Exit Equity Commitment (if any), Exit Equity Commitment Consideration (if any), and Exit New Money Shares (if any), and any motions filed or orders entered approving the entry into the transactions and documents relating thereto.

136.  "*Exit Equity Commitment Consideration*" means an amount of Cash equal to $[400] million.

137.  "*Exit Financing Documents*" means the Exit LC Facility Documents and Exit Equity Commitment Documents (if any).

---

[3]  For the avoidance of doubt, all exculpations remain subject to the ongoing investigation of the special committee of independent directors of the board.

138.    "*Exit LC Credit Agreement*" means the letter of credit agreement (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) to be provided on the Effective Date, as set forth in the Plan Supplement, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

139.    "*Exit LC Facility*" means the letter of credit facility, to be provided by the Exit LC Facility Lender and the Exit LC Facility Issuing Banks on the terms of, and subject to the conditions set forth in, the Exit LC Credit Agreement.

140.    "*Exit LC Facility Agents*" means, the Agent(s) in its capacity as such, under the Exit LC Credit Agreement.

141.    "*Exit LC Facility Documents*" means, collectively, the Exit LC Credit Agreement, collateral documents, mortgages, deeds of trust, Uniform Commercial Code statements, and other loan documents governing the Exit LC Facility, the material documents of which shall be included in the Plan Supplement, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

142.    "*Exit LC Facility Issuing Banks*" means the issuing banks, in their capacity as such under the Exit LC Facility.

143.    "*Exit LC Facility Lender*" means the lender(s), in its capacity as such, under the Exit LC Facility.

144.    "*Exit New Money Shares*" means 80% of the New Interests, subject to dilution on account of the New Money Equity Distribution (if any), the MIP, the Equity Election, and the DIP TLC Fee Equity Distribution.

145.    "*Extension Order*" means any Final Order entered by the Bankruptcy Court extending the time for performance under any deadlines by which the Debtors must assume or reject Unexpired Leases.

146.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

147.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

148.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken; or as to which, any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

149.    "*First Day Orders*" means, as applicable, any orders of the Bankruptcy Court with respect to the First Day Pleadings that has not been reversed, modified, or amended, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

150.    "*First Day Pleadings*" means the motions, declarations, pleadings and all other documents requesting certain emergency relief, or supporting the request for such relief, Filed by the Debtors on or around the Petition Date and heard at the "first day" hearing, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

151.    "*Foreign Plan*" means any voluntary plan, scheme, arrangement, or similar restructuring plan that is administered or implemented through a Foreign Proceeding.

152.    "*Foreign Proceeding*" means a "foreign main proceeding" or "foreign nonmain proceeding," as those terms are defined in section 1502 of the Bankruptcy Code, including any Insolvency Proceeding, to the extent applicable.

153.    "*General Unsecured Claim*" means any unsecured Claim against any of the Debtors, other than:    (a) an Administrative Claim;  (b) a Priority Tax Claim;  (c) an Other Priority Claim; (d) a Section 510(b) Claim; (e) an Intercompany Claim; (f) any Go-Forward Guaranty Claim; (g) any other Secured Claim; (h) an Unsecured Notes Claim; (i) any other Claim that is subordinated or entitled to priority under the Bankruptcy Code or any other Final Order of the Bankruptcy Court; or (j) any Claim paid in full prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court.  For the avoidance of doubt, General Unsecured Claims include (I) unsecured Claims resulting from the rejection of Executory Contracts and Unexpired Leases, (II) unsecured Claims resulting from litigation against one or more of the Debtors, and (III) unsecured Claims resulting from deficient collateral securing otherwise Secured Claims (if any).

154.    "*Go-Forward Guaranty Claims*" means the Claims of any creditor on account of the guaranty obligations of any of the Debtors that are necessary for the business operations of any of the Debtors, their Affiliates, or franchisees, which shall be set forth in an exhibit to the Plan Supplement, and which shall be Reinstated.

155.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

156.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

157.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

158.    "*Indentures*" means, collectively, the Secured Notes Indentures and the Unsecured Notes Indentures.

159.    "*Initial Consenting AHG Noteholders*" means those Consenting AHG Noteholders (as defined in the RSA) who executed the RSA.

160.    "*Insolvency Proceeding*" means any corporate action, legal proceeding, or other procedure or step (including commencing any Foreign Proceeding) taken in any jurisdiction in relation to:  (a) the suspension of payments, a moratorium of any indebtedness, winding-up, bankruptcy, liquidation,

dissolution, administration, receivership, administrative receivership, judicial composition, or reorganization (by way of voluntary arrangement, scheme, or otherwise) of any Debtor (or any of its Controlled Subsidiaries), including under the Bankruptcy Code or any Foreign Proceeding; (b) a composition, conciliation, compromise, or arrangement with the creditors generally of any Debtor (or any of its Controlled Subsidiaries) or an assignment by any Debtor (or any of its Controlled Subsidiaries) of its assets for the benefit of its creditors generally or any Debtor (or any of its Controlled Subsidiaries) becoming subject to a distribution of its assets; (c) the appointment of a liquidator, receiver, administrator, administrative receiver, compulsory manager, or other similar officer in respect of any Debtor (or any of its Controlled Subsidiaries) or any of its assets; (d) the enforcement of any security over any assets of any Debtor (or any of its Controlled Subsidiaries); (e) any request for recognition of a Foreign Proceeding such as under chapter 15 of the Bankruptcy Code; or (f) any procedure or step in any jurisdiction analogous to those set out in paragraphs (a) to (e) above.

161.    "*Intercompany Claim*" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor; *provided* that for the avoidance of doubt, any Claim held by any SoftBank Parties or their non-Debtor Affiliates against any Debtor or its non-SoftBank Party Affiliates, and any Claim held by any Debtor or its non-SoftBank Party Affiliates against any SoftBank Parties or their non-Debtor Affiliates, shall not be an Intercompany Claim.

162.    "*Intercompany Interest*" means any Interest in one Debtor or Affiliate of a Debtor held by another Debtor or Affiliate of a Debtor; *provided* that for the avoidance of doubt, any Interest held by any SoftBank Parties or their non-Debtor Affiliates in any Debtor or its non-SoftBank Party Affiliates, and any Interest held by any Debtor or its non-SoftBank Party Affiliates in any SoftBank Parties or their non-Debtor Affiliates, shall not be an Intercompany Interest.

163.    "*Interests*" means collectively, any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any shares (or any class thereof) of common stock or preferred stock, general or limited partnership interests, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, stock-settled restricted stock units, cash-settled restricted stock units, or other securities or agreements (including registration rights agreements) to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of common stock or preferred stock, general or limited partnership interests, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security), or any Claim against, or Interest in, the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

164.    "*IRS*" means the United States Internal Revenue Service.

165.    "*Issuers*" means, as applicable, WeWork Companies U.S. LLC, as successor to WeWork Companies LLC, WW Co-Obligor Inc., and any applicable successors thereto in their capacity as issuers under the relevant Indentures.

166.    "*Japan/India Sales*" means those certain transactions contemplated by the Debtors and/or their Affiliates involving certain business operations in Japan and India.

167.    "*JPMorgan*" means JPMorgan Chase Bank, N.A. and certain of its affiliates.

168.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

169.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, treaty, duty, requirement, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

170.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

171.    ["*MIP*" means an equity incentive plan, that will (i) reserve up to [●]% of the New Common Stock (determined on a fully diluted and fully distributed basis) for awards to management (the "Pool"), and (ii) provide for the grant as of the Effective Date of up to 100% of the Pool to members of management selected by the New Board in the form of restricted stock unit awards (or the equivalent) vesting in ratable annual installments on each of the first three anniversaries of the Effective Time, and (iii) include other terms and conditions determined by the New Board.   The amount of the Pool will not be subject to dilution from common stock issued to Softbank or its affiliates at or after the Emergence Date on account of the cash collateral assigned to the Debtors.]

172.    "*New Board*" means the new board of directors or managers of Reorganized WeWork or each of the Reorganized Debtors (if applicable and as the context requires)—selected in accordance with the terms of the Corporate Governance Term Sheet—the identities of which shall be identified in the Plan Supplement (if known at the time of its Filing).

173.    "*New Corporate Governance Documents*" means the form of documents providing for the corporate governance of the Reorganized Debtors, which may include any forms of certificate, articles of incorporation, bylaws, limited liability company agreement, partnership agreement, shareholders' agreement, and such other forms of applicable formation documents, organizational, and governance documents (if any) of the Reorganized Debtors, each of which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

174.    "*New Interests*" means the common stock (or other equity interests) of Reorganized WeWork to be issued on or after the Effective Date in accordance with this Plan.

175.    "*New Money Equity Distribution*" means, collectively, the percentage of New Interests that may be distributed on account of the Rights Offering Shares (if any) and other distributions of New Interests (if any) distributed on account of new money investment, which percentage shall be subject to the consent rights set forth in the RSA.

176.    "*New Stockholders Agreement*" means the definitive stockholders agreement or other applicable agreement (including all annexes, exhibits, and scheduled thereto) governing the New Interests, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

177.    "*Notes*" means, collectively, the Secured Notes and the Unsecured Notes.

178.    "*Notes Exchange Transactions*" means, collectively, the recapitalization transactions by and among, *inter alia*, the Debtors, the Ad Hoc Group, SoftBank, and Cupar, consummated in May 2023.

18

179. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

180. "*Other Secured Claim*" means any Secured Claim other than: (a) the Prepetition LC Facility Claims; (b) the Secured Notes Claims; (c) the Prepetition LC Subrogation Claims; or (d) the Priority Tax Claims (solely to the extent they are Secured Claims).

181. "*Parent Interests*" means, collectively, all Interests in WeWork Parent outstanding immediately prior to the Effective Date.

182. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

183. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

184. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities in accordance with this Plan.

185. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case subject to the consent rights set forth in the RSA and as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the RSA, the Bankruptcy Code, and the Bankruptcy Rules) that will be Filed by the Debtors with the Bankruptcy Court, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, which shall include: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the Exit LC Facility Documents; (e) the New Corporate Governance Documents; (f) any Ruling Request; (g) the Restructuring Transactions Exhibit (which, for the avoidance of doubt, shall remain subject to modification in accordance with the RSA until the Effective Date); (h) the Rights Offering Documents (if any); and (i) any other necessary documentation relating to the Restructuring Transactions, all of which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

186. "*Postpetition Financing Documents*" means, collectively, the DIP Documents and the Cash Collateral Documents.

187. "*Prepetition LC Credit Agreement*" means, as it may be amended, supplemented, or otherwise modified from time to time prior to the Petition Date, that certain credit agreement, dated as of December 27, 2019, by and among WeWork Companies U.S. LLC, as successor to WeWork Companies LLC, SVF II, as obligor, SVF II GP (Jersey Limited), acting in its capacity as general partner of SVF II and in its own corporate capacity, and SB Global Advisors Limited, acting in its capacity as manager of SVF II, and the several issuing creditors and letter of credit participants from time to time party thereto, Goldman Sachs International Bank, as senior tranche administrative agent and shared collateral agent, Kroll Agency Service Limited, as junior tranche administrative agent, and the parties thereto from time to time.

188. "*Prepetition LC Facility Claims*" means all Claims arising under the Prepetition LC Facility Documents, including the Prepetition LC Subrogation Claims or the Prepetition LC Reimbursement Claims, and all unpaid accrued and deferred fees and interest, including, without limitation, any upfront fees, running fees, administrative, and fronting fees (without double counting). For the avoidance of doubt, (a) any cash collateral posted but subsequently returned to the SoftBank Parties shall not give rise to a Prepetition LC Facility Claim, (b) any Holder of a Prepetition LC Facility Claim that is a Prepetition LC Reimbursement Claim which was converted or otherwise replaced with a Prepetition LC Subrogation Claim shall, with

respect to its Prepetition LC Reimbursement Claim, only be entitled to recover the amount of such Prepetition LC Reimbursement Claim that was not so converted or otherwise replaced, and (c) any Holder of a Prepetition LC Facility Claim that was converted or otherwise replaced with a DIP TLC Claim shall, with respect to its Prepetition LC Facility Claim, only be entitled to recover the amount of such Prepetition LC Facility Claim that was not so converted or otherwise replaced.

189.   "*Prepetition LC Facility Documents*" means the Prepetition LC Credit Agreement and related documents, including, without limitation, the Prepetition LC Reimbursement Agreement.

190.   "*Prepetition LC Reimbursement Agreement*" means that certain reimbursement agreement, dated as of December 20, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and among SVF II, SoftBank Group Corp., and WeWork Companies U.S. LLC, as successor to WeWork Companies LLC.

191.   "*Prepetition LC Reimbursement Claims*" means all claims arising under the Prepetition LC Reimbursement Agreement.

192.   "*Prepetition LC Subrogation Claims*" means claims for any and all Applicable Obligations (as defined in the Prepetition LC Credit Agreement) paid by SVF II, including, without limitation, the total amount required pursuant to the terms of the Prepetition LC Credit Agreement for SVF II to reimburse all drawn amounts under the Senior L/C Tranche and the Junior L/C Tranche (as both terms are defined in the Prepetition LC Credit Agreement) and to pay or cash collateralize all outstanding amounts under the Prepetition LC Credit Agreement (including, without limitation, any fees, interest, expenses, and other amounts thereunder).

193.   "*Prepetition Secured Equity Distribution*" means 100% of New Interests *minus* the Undiluted Exit New Money Shares (if any), subject to dilution on account of the New Money Equity Distribution, the MIP, the Equity Election, and the DIP TLC Fee Equity Distribution.

194.   "*Priority Tax Claim*" means (a) any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, or (b) any Secured Claim that, absent its secured status, would meet the description of a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, together with any related Secured Claim for penalties.

195.   "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under this Plan, unless otherwise indicated.

196.   "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or as of the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by Final Order pursuant to section 503(b)(4) of the Bankruptcy Code.

197.   "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C.3 of this Plan.

198.    "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

199.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the total estimated Professional Fee Amount.

200.    "*Proof of Claim*" means a proof of Claim against any of the Debtors Filed in the Chapter 11 Cases.

201.    "*Proof of Interest*" means a proof of Interest in any of the Debtors Filed in the Chapter 11 Cases.

202.    "*Registration Rights Agreement*" means the registration rights agreement pursuant to which each Holder of New Interests shall be entitled to registration rights with respect to its shares of New Interests to be entered into as of the Effective Date, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

203.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

204.    "*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former associated Entities, managed or advised Entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, investment or fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such Person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

205.    "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the DIP Lenders; (e) the Creditors' Committee; (f) each Creditors' Committee Member; (g) the Releasing Parties; (h) each Agent; (i) each Related Party of each such Entity in clause (a) through (i); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of this Plan; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is

not resolved before Confirmation[; *provided*, *further*, that notwithstanding the foregoing, [●] are not Released Parties.]⁴

206.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor, (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the DIP Lenders; (e) each Agent; (f) the Creditors' Committee; (g) each Creditors' Committee Member; (h) all Holders of Claims that vote to accept this Plan; (i) all Holders of Claims that are deemed to accept this Plan who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in this Plan; (j) all Holders of Claims that abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in this Plan; (k) all Holders of Claims or Interests that vote to reject this Plan or are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable ballot or notice of nonvoting status indicating that they opt not to grant the releases provided in this Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable law; *provided* that an Entity in clause (i) through clause (k) shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in Article VIII.D of this Plan; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is not resolved before Confirmation.

207.    "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under this Plan, on and after the Effective Date, or any successors or assigns thereto including by transfer, merger, consolidation, or otherwise, and including any new Entity established in connection with the implementation of the Restructuring Transactions, including, for the avoidance of doubt, Reorganized WeWork.

208.    "*Reorganized WeWork*" means, on and after the Effective Date, (a) a new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, directly or indirectly own and hold all or substantially all of the assets and/or stock of the Debtors, as applicable, in accordance with this Plan and the Plan Supplement, or any successor or assign thereto, including by transfer, merger, consolidation, sale, subscription or otherwise, and including any new Entity established in connection with the implementation of the Restructuring Transactions, (b) the WeWork Parent, or (c) another Reorganized Debtor, as applicable and in all cases in accordance with the RSA, this Plan, and the Plan Supplement.

209.    "*Required Consenting AHG Noteholders*" means, as of the relevant date, (a) at least 2 unaffiliated Initial Consenting AHG Noteholders, holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by the Initial Consenting AHG Noteholders, (b) if there are not at least 2 unaffiliated Initial Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by the Initial Consenting AHG Noteholders, then Initial Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by Initial Consenting AHG Noteholders, or (c) if there are no Initial Consenting AHG Noteholders party to the RSA, Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by Consenting AHG Noteholders (as defined in the RSA).

---

⁴ For the avoidance of doubt, all releases remain subject to the ongoing investigation of the special committee of independent directors of the board.

210.     "*Required Consenting Stakeholders*" means subject to the terms of the RSA, collectively, the SoftBank Parties, Cupar, and the Required Consenting AHG Noteholders; *provided* that to the extent any action, event, amendment, or waiver requiring consent or approval of the Required Consenting Stakeholders would materially, adversely, and disproportionately affect Cupar, the SoftBank Parties, the Required Consenting AHG Noteholders, and Cupar.

211.     "*Required Consenting Stakeholders' Advisors*" means the Ad Hoc Group Professionals, Cupar Professionals, and SoftBank Professionals.

212.     "*Required New Money DIP Lenders*" means the "Required Lenders" as defined in the DIP New Money Credit Agreement (as applicable, if any).

213.     "*Restructuring Expenses*" means the reasonable and documented fees and expenses of the Required Consenting Stakeholders' Advisors accrued since the inception of their respective engagements related to the Chapter 11 Cases or the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors.

214.     "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued or executed pursuant to this Plan, one or more intercompany mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, formations, dissolutions, or other corporate transactions described in, approved by, contemplated by, or undertaken to implement this Plan (including the Plan Supplement), the RSA, the Definitive Documents, including those described in Article IV.B hereof, in all cases, in accordance with the terms of the RSA.

215.     "*Restructuring Transactions Exhibit*" means the exhibit to the Plan Supplement that will set forth the material components of the transactions required to effectuate the Restructuring Transactions contemplated by the RSA and this Plan, including any "tax steps memo," or other document describing steps to be taken and the related tax considerations in connection with the Restructuring Transactions, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

216.     "*Retained Causes of Action*" means Causes of Action that shall vest in the Reorganized Debtors on the Effective Date, which, for the avoidance of doubt, shall not include any of the Causes of Action that are settled, released, or exculpated under this Plan.

217.     "*Revised Joint Administration Order*" means the revised *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1116].

218.     "*Rights Offering*" means the rights offering (if any) to purchase the Rights Offering Securities (if any) on the terms set forth in the Rights Offering Documents (if applicable).

219.     "*Rights Offering Documents*" means, collectively, the Rights Offering Procedures (if any), and any and all other agreements (including any backstop commitment agreement), documents, and instruments delivered or entered into in connection with the Rights Offering (if applicable), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

220.    "*Rights Offering Participants*" means the parties entitled to participate in the Rights Offering (if any) as set forth in the Rights Offering Documents (if any).

221.    "*Rights Offering Procedures*" means those certain rights offering procedures (if any) that are consistent in all material respects with the procedures set forth in any related backstop commitment agreement and applicable securities laws, as set forth in the Plan Supplement (if applicable), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

222.    "*Rights Offering Securities*" means the Rights Offering Shares (if any) and/or any other debt or equity Securities offered in connection with the Rights Offering.

223.    "*Rights Offering Shares*" means the New Interests (if any) in connection with the Rights Offering (if any) to the extent payable in Rights Offering Shares (if any).

224.    "*Rolled Undrawn DIP TLC Claims*" means a portion of the DIP TLC Claims in the amount required to cash collateralize (in accordance with the DIP LC/TLC Credit Agreement) the aggregate face amount of DIP LCs that are undrawn as of the Effective Date.

225.    "*RSA*" means that certain Restructuring Support Agreement, dated as of the Petition Date, by and among the Debtors and the Consenting Stakeholders, including all exhibits, schedules, and other attachments thereto, as such agreement may be amended, amended and restated, modified, or supplemented from time to time, solely in accordance with the terms thereof.

226.    "*Ruling Request*" means a request for one or more private letter rulings from the IRS (if any) pertaining to certain U.S. federal income tax matters relating to the Restructuring Transactions that is submitted to the IRS in accordance with Section 4.04. of the RSA.

227.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means any schedule (including any amendments, supplements, or modifications thereto) of the Debtors' good faith estimate of proposed Cure Obligations (if any) with respect to each of the Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan.

228.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan.

229.    "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action which shall be included in the Plan Supplement.

230.    "*SEC*" means the United States Securities and Exchange Commission.

231.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

232.    "*Secured Claim*" means a Claim that is:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the

24

Bankruptcy Code; or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured claim.

233.    "*Secured Notes*" means the 1L Notes, 2L Notes, and 3L Notes.

234.    "*Secured Notes Claims*" means any Claim arising under, derived from, based on, or related to the Secured Notes or Secured Notes Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, guarantees, and other charges arising thereunder or related thereto.

235.    "*Secured Notes Documents*" means, collectively, the Secured Indentures and all instruments, security agreements, collateral agreements, guaranty agreements, intercreditor agreements, pledges, and other documents with respect to the Secured Notes.

236.    "*Secured Notes Indentures*" means, collectively, the 1L Indenture, the 2L Indenture, the 2L Exchangeable Indenture, the 3L Indenture, and the 3L Exchangeable Indenture.

237.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local Law.

238.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

239.    "*SoftBank Parties*" means collectively SVF II, SVF II Aggregator, SVF II WW, and SVF II WW Holdings.

240.    "*SoftBank Professionals*" means Weil Gotshal & Manges LLP, as counsel, Houlihan Lokey Capital, Inc., as financial advisor, Wollmuth Maher & Deutsch LLP, as local co-counsel, and any other special or local counsel or advisors providing advice to the SoftBank Parties in connection with the Restructuring Transactions.

241.    "*Solicitation Materials*" means all materials provided in connection with the solicitation of votes on this Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

242.    "*Subscription Rights*" means the rights issued pursuant to the Rights Offering (if any) to purchase Rights Offering Securities (if any), on the terms set forth in the Rights Offering Documents (if any).

243.    "*SVF II*" means SoftBank Vision Fund II-2 L.P., a limited partnership established in Jersey, acting by its manager SB Global Advisers Limited, a limited company incorporated under the Laws of England and Wales.

244.    "*SVF II Aggregator*" means SVF II Aggregator (Jersey) L.P., a limited partnership established in Jersey, acting by its general partner, SVF II GP (Jersey) Limited, a Jersey private Company.

245.    "*SVF II WW*" means SVF II WW (DE) LLC, a Delaware limited liability company.

246.    "*SVF II WW Holdings*" means SVF II WW Holdings (Cayman) Limited, a Cayman Islands exempted Company.

247.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

248.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of this Plan.

249.    "*Total 1L Claims*" means the total aggregate amount of (a) Prepetition LC Facility Claims and (b) 1L Notes Claims, in each case, including, all postpetition interest and fees.

250.    "*Treasury Regulations*" means the regulations promulgated under the Internal Revenue Code by the United States Department of the Treasury.

251.    "*Unclaimed Distribution*" means any distribution under this Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check within 90 days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution within 90 days of receipt; (c) responded to, as applicable, the Debtors' or the Reorganized Debtors' requests for information necessary to facilitate a particular distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

252.    "*Undiluted Exit New Money Shares*" means 80% of the New Interests.

253.    "*Undrawn DIP TLC Claims*" means a portion of the DIP TLC Claims in an amount equal to Rolled Undrawn DIP TLC Claims *plus* the Excess DIP TLC Claims.

254.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

255.    "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

256.    "*Unsecured Notes*" means, collectively, the 5.00% Unsecured Notes, and the 7.875% Unsecured Notes.

257.    "*Unsecured Notes Claims*" means, collectively, any Claim on account of the Unsecured Notes.

258.    "*Unsecured Notes Indentures*" means, collectively, the 5.00% Unsecured Notes Indenture and the 7.875% Unsecured Notes Indenture.

259.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

260.    "*WeWork Parent*" means Debtor WeWork Inc., a public company incorporated under the Laws of Delaware.

B.    *Rules of Interpretation*.

For purposes of this plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed,

or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or the Confirmation Order, as applicable; (c) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (e) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (f) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, charters, bylaws, partnership agreements, limited liability company agreements, operating agreements, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable Law, including the Bankruptcy Code and the Bankruptcy Rules; (h) unless otherwise specified herein, any reference to "corporate action," "corporate structure," and other references to "corporate" and "corporation" will be deemed to include corporation, limited liability companies, partnerships, and analogous entities incorporated or formed under applicable Laws, as applicable; (i) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and for the avoidance of doubt, any variation of the word "include" is not limiting, and shall be deemed followed by the words "without limitation"; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (n) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (o) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (p) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (q) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective Person or Entity that have such consent, acceptance, or approval rights, including by electronic mail; and (r) all references herein to the RSA, Rights Offering, DIP New Money Facility, and Exit Equity Commitment, including any related defined terms (and any consent rights thereunder), shall be deemed to be followed by "if any," whether or not stated.

C.     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Subject to the requirements of the Restructuring Transactions Exhibit and any other Definitive Document, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.     *Governing Law.*

Except to the extent a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code or the Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and

27

obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of Laws principles; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York, shall be governed by the Laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*.

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*.

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document*.

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and any document included in the Plan Supplement, including the schedules or exhibits, the terms of the relevant provision in this Plan shall control (unless expressly stated otherwise in the applicable provision of the Plan Supplement; *provided* that that in the event of an inconsistency between this Plan and the Restructuring Transactions Exhibit, the Restructuring Transactions Exhibit shall control).  In the event of an inconsistency between the Confirmation Order and this Plan, including the Plan Supplement or the Restructuring Transactions Exhibit, the Confirmation Order shall control.

H.      *Consultation, Notice, Information, and Consent Rights*.

Notwithstanding anything herein to the contrary, all consultation, information, notice, and consent rights of the parties to the RSA, as applicable, and as respectively set forth therein, with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and the Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein until such time as the RSA is terminated in accordance with its terms.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS,
## DIP ADMINISTRATIVE CLAIMS,
## PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Administrative Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> hereof.

A.      *Administrative Claims*.

Except as otherwise provided under this Plan, and except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States

Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor(s) against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of such an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All Adequate Protection Obligations and Adequate Protection Claims (each as defined in the Cash Collateral Orders) including accrued or unpaid interest, as well as fees and expenses, including legal expenses, as of the Effective Date pursuant to the terms of the Cash Collateral Orders, will be indefeasibly paid by the Debtors in full in Cash or will be provided such other treatment acceptable to the Debtors and subject to the consent rights in the RSA without the need to File a request for payment of an Administrative Claim with the Bankruptcy Court on account of such Adequate Protection Obligations and Adequate Protection Claims.  The Debtors' obligation to pay such Adequate Protection Obligations and Adequate Protection Claims, to the extent not indefeasibly paid in full in Cash on the Effective Date, shall survive the Effective Date and shall not be released or discharged pursuant to this Plan or the Confirmation Order until indefeasibly paid in full in Cash.

Except as otherwise provided below in Article II, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims must do so by the Administrative Claims Bar Date.  Objections to such requests must be Filed and served on the requesting party and the Debtors (if the Debtors are not the objecting party) by the Administrative Claims Objection Bar Date. Holders of such Claims who do not File and serve such requests by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and any prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

**HOLDERS OF ADMINISTRATIVE CLAIMS FOR UNPAID INVOICES THAT ARISE IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESS AND WHICH ARE NOT DUE AND PAYABLE ON OR BEFORE THE EFFECTIVE DATE SHALL BE PAID IN THE ORDINARY COURSE OF BUSINESS IN ACCORDANCE WITH THE TERMS THEREOF AND NEED NOT FILE ADMINISTRATIVE CLAIMS.**

B.      *DIP Administrative Claims.*

The DIP Administrative Claims shall be deemed to be Allowed Claims in the full amount outstanding under the DIP Agreements as of the Effective Date (including any unpaid accrued interest and unpaid fees, expenses, and other obligations under the DIP Agreements as of the Effective Date). Except as otherwise expressly provided in the DIP Agreements, or the DIP Orders, upon the indefeasible payment or satisfaction in full of all Allowed DIP Claims, all commitments under the DIP Agreements shall terminate and all Liens and security interests granted to secure the DIP Claims shall be automatically terminated and of no further force and effect, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Except to the extent that a Holder of a DIP Administrative Claim agrees to less favorable treatment, on the Effective Date, in full satisfaction, settlement, discharge, and release of, and in exchange for, the DIP Administrative Claims, each Holder of an Allowed DIP Administrative Claim shall receive the following treatment:

1.      Each Holder of an Allowed DIP TLC Fee Claim shall receive its Pro Rata share of the DIP TLC Fee Equity Distribution.

2.      To the extent the Debtors enter into a DIP New Money Facility, the Debtors expect the provider of such DIP financing to seek superpriority, administrative expense status for its claim. The granting of any such superpriority, administrative status should be subject to the consent rights set forth in the RSA and, if agreed by such parties, each Holder of an Allowed DIP New Money Claim shall receive payment in full in Cash, or other treatment in a manner to be acceptable to the Debtors, the Required Consenting Stakeholders, and the requisite majority of DIP New Money Lenders pursuant to the terms of the DIP New Money Documents. Each Holder of 1L Series 1 Notes Claims and 2L Secured Notes Claims is expected to be offered the opportunity to participate in the DIP New Money Facility.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, the DIP Facilities, and the DIP Documents shall continue in full force and effect (other than, for the avoidance of doubt, any Liens or other security interests terminated pursuant to this Article II.B) after the Effective Date with respect to any contingent or unsatisfied obligations thereunder, as applicable, including, but not limited to, those provisions relating to the rights of the DIP Agents, and the DIP Lenders to expense reimbursement, indemnification, and any other similar obligations of the Debtors to the DIP Agents, and the DIP Lenders (which rights shall be fully enforceable against the Reorganized Debtors) and any provisions thereof that may survive termination or maturity of the DIP Facilities in accordance with the terms thereof.

C.      *Professional Fee Claims.*

1.      Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, Bankruptcy Rules, and Prior Bankruptcy Court orders. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows, including from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of this Plan.

30

2.       Professional Fee Escrow Account.

No later than the Effective Date, the Debtors incorporated in the U.S. shall, in consultation with the Required Consenting Stakeholders, establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders and any invoices for fees and expenses incurred after the Effective Date in connection with the final fee applications.  Such funds shall not be considered property of the Debtors' Estates.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than 5 days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or the Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional; *provided*, *however,* that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided, further,* that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.       Post-Effective Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Reorganized Debtors or, solely as it pertains to the final fee applications, the Creditors' Committee.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors and the Reorganized Debtors, as applicable, shall pay, within 10 Business Days after submission of a detailed invoice to the Debtors or the Reorganized Debtors, as applicable, such reasonable Claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtors, the Reorganized Debtors, or the Creditors' Committee, as applicable.  If the Debtors or the Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or the Reorganized Debtors, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

31

D.      *Priority Tax Claims*.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Statutory Fees and Reporting to the U.S. Trustee*.

All fees due and payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors, the Reorganized Debtors, or the Disbursing Agent (on behalf of the Reorganized Debtors), as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.   All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of title 28 of the United States Code, shall be paid by the Debtors or the Reorganized Debtors (or the Disbursing Agent on behalf of the Reorganized Debtors), as applicable, on the Effective Date. Following the Effective Date, the Reorganized Debtors (or the Disbursing Agent on behalf of the Reorganized Debtors) shall (a) pay such fees as such fees are assessed and come due for each quarter (including any fraction thereof) and (b) File quarterly reports in a form consistent with the Revised Joint Administration Order and reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

F.      *Payment of Restructuring Expenses*.

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with the terms of the RSA, the Cash Collateral Orders, or any other Final Order of the Bankruptcy Court) without any requirement to (1) File a fee application with the Bankruptcy Court, or (2) for review or approval by the Bankruptcy Court; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail (but without the need for itemized time detail) from the applicable Entity entitled to such Restructuring Expenses. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least 3 Business Days before the anticipated Effective Date; provided, however, that such estimates (and related invoices) shall not be considered an admission or limitation with respect to such Restructuring Expenses.  In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course [(but no sooner than within 5 Business Days of receipt of an invoice)], Restructuring Expenses related to implementation, Consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail (but without the need for itemized time detail) from the applicable Entity entitled to such Restructuring Expenses.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*.

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of

such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to this Plan is as set forth below.  This Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except as expressly set forth herein.  All of the potential Classes for the Debtors are set forth herein.  Voting tabulations for recording acceptances or rejections of this Plan shall be conducted on a Debtor-by-Debtor basis as set forth herein.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3A | Drawn DIP TLC Claims | Impaired | Entitled to Vote |
| Class 3B | Undrawn DIP TLC Claims | Impaired | Entitled to Vote |
| Class 4A | Prepetition LC Facility Claims | Impaired | Entitled to Vote |
| Class 4B | 1L Notes Claims | Impaired | Entitled to Vote |
| Class 5 | 2L Notes Claims | Impaired | Entitled to Vote |
| Class 6 | 3L Notes Claims | Impaired | Entitled to Vote / Deemed to Reject |
| Class 7 | Unsecured Notes Claims | Impaired | Deemed to Reject |
| Class 8 | General Unsecured Claims | Impaired | Deemed to Reject |
| Class 9 | Go-Forward Guaranty Claims | Unimpaired | Presumed to Accept |
| Class 10 | Intercompany Claims | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| Class 11 | Intercompany Interests | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| Class 12 | Parent Interests | Impaired | Deemed to Reject |
| Class 13 | Section 510(b) Claim | Impaired | Deemed to Reject |

B.      *Treatment of Claims and Interests*.

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, as applicable, except to the extent different treatment is agreed to in writing by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable, subject to the consent rights set forth in the RSA. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter.

33

1.     Class 1 – Other Secured Claims

    (a)     *Classification*:  Class 1 consists of all Allowed Other Secured Claims.

    (b)     *Treatment*:  In full and final satisfaction of such Allowed Other Secured Claims, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor (or Reorganized Debtor, as applicable) and subject to the consent rights set forth in the RSA:

        (i)     payment in full in Cash of its Allowed Other Secured Claim;

        (ii)     the collateral securing its Allowed Other Secured Claim;

        (iii)     Reinstatement of its Allowed Other Secured Claim; or

        (iv)     such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)     *Voting*:  Class 1 is Unimpaired under this Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2.     Class 2 – Other Priority Claims

    (a)     *Classification*:  Class 2 consists of all Allowed Other Priority Claims.

    (b)     *Treatment*:  In full and final satisfaction of such Allowed Other Priority Claims, each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor (or Reorganized Debtor, as applicable) and subject to the consent rights set forth in the RSA:

        (i)     payment in full in Cash of its Allowed Other Priority Claim; or

        (ii)     treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

    (c)     *Voting*:  Class 2 is Unimpaired under this Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3.     Class 3A – Drawn DIP TLC Claims

    (a)     *Classification*:  Class 3A consists of all Allowed Drawn DIP TLC Claims.

    (b)     *Allowance*:  The Drawn DIP TLC Claims shall be deemed to be Allowed Claims in the full amount of such Claims outstanding under the DIP LC/TLC Credit Agreement as of the Effective Date.

(c)  *Treatment*:  In full and final satisfaction of such Allowed Drawn DIP TLC Claims, the Holder of each Allowed Drawn DIP TLC Claim shall receive its Pro Rata share of the Drawn DIP TLC Equity Distribution.

(d)  *Voting*:  Class 3A is Impaired under this Plan.  Holders of Allowed Drawn DIP TLC Claims are entitled to vote to accept or reject this Plan.

4.  Class 3B – Undrawn DIP TLC Claims

(a)  *Classification*:  Class 3B consists of all Allowed Undrawn DIP TLC Claims.

(b)  *Allowance*:  The Undrawn DIP TLC Claims shall be deemed to be Allowed Claims in the full amount of such Claims outstanding under the DIP LC/TLC Credit Agreement as of the Effective Date.

(c)  *Treatment*:  In full and final satisfaction of such Allowed Undrawn DIP TLC Claims, each Allowed Undrawn DIP TLC Claim:  (i) in the case of an Excess DIP TLC Claim, shall be paid in full in cash in an amount equal to such Excess DIP TLC Claim from amounts remaining from the proceeds of the DIP TLC Facility (or, for the avoidance of doubt, interest accrued on the amounts funded pursuant to the DIP TLC Facility), which amounts shall be funded solely from amounts remaining in the DIP LC Loan Collateral Accounts (as defined in the DIP LC/TLC Order) after the funding of the SoftBank Parties' obligations to back the Exit LC Facility; and (ii) in the case of a Rolled Undrawn DIP TLC Claim, shall be converted into obligations under the Exit LC Facility on a dollar-for-dollar basis.

(d)  *Voting*:  Class 3B is Impaired under this Plan.  Holders of Allowed Undrawn DIP TLC Claims are entitled to vote to accept or reject this Plan.

5.  Class 4A – Prepetition LC Facility Claims

(a)  *Classification*:  Class 4A consists of all Allowed Prepetition LC Facility Claims.

(b)  *Allowance*:  The Prepetition LC Facility Claims, to the full extent set forth in the Prepetition LC Facility Documents, shall be Allowed.

(c)  *Treatment*:  In full and final satisfaction of such Allowed Prepetition LC Facility Claims, each Holder of Allowed Prepetition LC Facility Claims shall receive its Pro Rata share of the 1L Equity Distribution.

(d)  *Voting:*  Class 4A is Impaired under this Plan.  Holders of Allowed Prepetition LC Facility Claims are entitled to vote to accept or reject this Plan.

6.  Class 4B – 1L Notes Claims

(a)  *Classification*:  Class 4B consists of all Allowed 1L Notes Claims.

(b)  *Allowance*:  The 1L Notes Claims, to the full extent set forth in the applicable Secured Notes Documents, shall be Allowed.

35

(c) *Treatment*: In full and final satisfaction of such Allowed 1L Notes Claims, each Holder of Allowed 1L Notes Claims shall receive its Pro Rata share of the 1L Equity Distribution, subject to the Exit Commitment Netting Transaction.

(d) *Voting*: Class 4B is Impaired under this Plan. Holders of Allowed 1L Notes Claims are entitled to vote to accept or reject this Plan.

7. Class 5 – 2L Notes Claims

(a) *Classification:* Class 5 consists of all Allowed 2L Notes Claims.

(b) *Allowance*: The 2L Notes Claims, to the full extent set forth in the applicable Secured Notes Documents (excluding, for the avoidance of doubt, postpetition interest and fees), shall be Allowed.

(c) *Treatment*: In full and final satisfaction of such Allowed 2L Notes Claims, each Holder of an Allowed 2L Notes Claim shall receive its Pro Rata share of the 2L Equity Distribution.

(d) *Voting:* Class 5 is Impaired under this Plan. Holders of Allowed 2L Notes Claims are entitled to vote to accept or reject this Plan.

8. Class 6 – 3L Notes Claims

(a) *Classification*: Class 6 consists of all Allowed 3L Notes Claims.

(b) *Allowance*: The 3L Notes Claims, to the extent set forth in the applicable Secured Notes Documents (excluding, for the avoidance of doubt, postpetition interest and fees) shall be Allowed.

(c) *Treatment*: In full and final satisfaction of such Allowed 3L Notes Claims, each Allowed 3L Notes Claim shall be discharged and released, and each Holder of an Allowed 3L Notes Claim shall not receive or retain any distribution, property, or other value on account of such Allowed 3L Notes Claim; provided, however, that, to the extent the aggregate value of the Allowed 3L Notes Claims exceeds the value of the collateral securing such Claims and there are unencumbered assets held by the Debtor against which such Claims are Allowed, each Holder of an Allowed 3L Notes Claim shall receive on account of and in full and final satisfaction of such Allowed Claim, its Pro Rata share (together with each Holder of an Allowed Unsecured Notes Claim and an Allowed General Unsecured Claim against the applicable Debtor) of the liquidation value of the unencumbered assets held by the Debtor against which such Claim is allowed.

(d) *Voting*: Class 6 is Impaired under this Plan. Holders of Allowed 3L Notes Claims are either entitled to vote to accept or reject this Plan, or are not entitled to vote to accept or reject this Plan.

9. Class 7 – Unsecured Notes Claims

(a) *Classification:* Class 7 consists of all Allowed Unsecured Notes Claims

36

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Unsecured Notes Claim, each Holder of an Allowed Unsecured Notes Claim shall receive, at such Holder's election, such Holder's Pro Rata share of either (A) the Cash Election or (B) the Equity Election.

(c)     *Voting*:  Class 7 is Impaired under this Plan.  Holders of Allowed Unsecured Notes Claims are conclusively deemed to have rejected this Plan.  Therefore, Holders of Allowed Unsecured Notes Claims are not entitled to vote to accept or reject this Plan.

10.     Class 8 – General Unsecured Claims

(a)     *Classification:*  Class 8 consists of all Allowed General Unsecured Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, at such Holder's election, such Holder's Pro Rata share of either (A) the Cash Election or (B) the Equity Election;

(c)     *Voting:*  Class 8 is Impaired under this Plan.  Holders of Allowed General Unsecured Claims are conclusively deemed to have rejected this Plan.  Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject this Plan.

11.     Class 9 – Go-Forward Guaranty Claims

(a)     *Classification*:  Class 9 consists of all Allowed Go-Forward Guaranty Claims.

(b)     *Treatment*:  Each Allowed Go-Forward Guaranty Claim shall be Reinstated.

(c)     *Voting*:  Class 9 is Unimpaired under this Plan and Holders of Allowed Go-Forward Guaranty Obligations are conclusively deemed to have accepted this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

12.     Class 10 – Intercompany Claims

(a)     *Classification*:  Class 10 consists of all Allowed Intercompany Claims.

(b)     *Treatment*:    Each Allowed Intercompany Claim shall be (i) Reinstated, (ii) converted to equity, (iii) canceled, released, or discharged, or (iv) otherwise set off, settled, or distributed, at the option of the Debtors or the Reorganized Debtors, and subject to the consent rights set forth in the RSA, in each case in accordance with the Restructuring Transactions Exhibit.

(c)     *Voting*:  Class 10 is Unimpaired under this Plan if Reinstated or Impaired under this Plan if converted to equity, canceled, released, discharged, set off, settled, or distributed.  Holders of Intercompany Claims are conclusively deemed to have accepted or rejected this Plan.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

37

13. Class 11 – Intercompany Interests

    (a) *Classifications*: Class 11 consists of all Allowed Intercompany Interests.

    (b) *Treatment*: Each Allowed Intercompany Interest shall be (i) Reinstated, (ii) canceled, released, or discharged, or (iii) otherwise set off, settled, or distributed, at the option of the Debtors or the Reorganized Debtors, and subject to the consent rights set forth in the RSA, in each case in accordance with the Restructuring Transactions Exhibit.

    (c) *Voting*: Class 11 is Unimpaired under this Plan if Reinstated or Impaired under this Plan if canceled, released, discharged, set off, settled, or distributed. Holders of Intercompany Interests are conclusively deemed to have accepted or rejected this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

14. Class 12 – Parent Interests

    (a) *Classification:* Class 12 consists of all Allowed Parent Interests.

    (b) *Treatment*: Each Allowed Parent Interests, shall be canceled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Allowed Parent Interests shall not receive any distribution on account of such Interests, except as otherwise provided in the Restructuring Transactions Exhibit, and subject to the consent rights set forth in the RSA.

    (c) *Voting*: Class 12 is Impaired under this Plan. Holders of Interests in WeWork Parent are conclusively deemed to have rejected this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan, except as otherwise provided in the Restructuring Transactions Exhibit.

15. Class 13 – Section 510(b) Claims

    (a) *Classification:* Class 13 consists of all Allowed Section 510(b) Claims.

    (b) *Treatment*: All Allowed Section 510(b) Claims against any applicable Debtor shall be canceled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of such Section 510(b) Claims.

    (c) *Voting*: Class 13 is Impaired under this Plan. Holders of Allowed Section 510(b) Claims are conclusively deemed to have rejected this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

C. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan or the Plan Supplement, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under this Plan.

38

D.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in any amount greater than zero as of the date of the Combined Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote on this Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject this Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted this Plan.

F.    *Intercompany Interests.*

To the extent Reinstated under this Plan, (a) distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Interests, and in exchange for the Debtors' and the Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims, and (b) other than as described in the Restructuring Transactions Exhibit, all Intercompany Interests shall be owned on and after the Effective Date by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more Impaired Class of Claims.  In the event any Debtor does not have one or more Impaired Classes of Claims, all Classes of Claims against such Debtor are presumed to have accepted the Plan.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests.  The Debtors reserve the right to modify this Plan in accordance with Article X hereof and the terms of the RSA (including subject to the consent rights therein) to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests or reclassifying Claims to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.  For the avoidance of doubt, notwithstanding any of the foregoing, the Plan shall enforce all rights and subordination arising under any intercreditor agreements in accordance with section 510(a) of the Bankruptcy Code.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination,

section 510(b) of the Bankruptcy Code, or otherwise, including intercreditor agreements pursuant to section 510(a) of the Bankruptcy Code. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, subject to the consent rights set forth in the RSA, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

A.      *General Settlement of Claims and Interests*.

As discussed in further detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan. This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be, and shall be, final.

Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of its Affiliates, which Claims and Causes of Action (other than any such Claims and Causes of Action that are not released pursuant to Article VIII, including any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity) have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each Debtor Entity. This Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

B.      *Restructuring Transactions*.

On or before the Effective Date, or as soon as reasonably practicable thereafter, the applicable Debtors or the Reorganized Debtors, subject to the consent rights set forth in the RSA, shall consummate the Restructuring Transactions and take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan that are consistent with and pursuant to the terms and conditions of this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan, the RSA, and the Plan Supplement and that satisfy the requirements of applicable Law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the RSA, and the Plan Supplement and having other terms for which the applicable Entities may agree; (c) the execution, delivery, and Filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law, including any applicable New Corporate Governance Documents; (d) such other transactions and/or Bankruptcy Court filings that are required to

40

effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations or those conducted pursuant to the Restructuring Transactions Exhibit (including, for the avoidance of doubt, if so provided in the Restructuring Transactions Exhibit, all transactions necessary to provide for the sale/purchase of all or substantially all of the assets or Interests of any of the Debtors, which purchase may be structured as a taxable transaction for U.S. federal income tax purposes); (e) the execution, delivery, and Filing of the DIP New Money Documents; (f) the execution, delivery, and Filing of the Exit Financing Documents; (g) the implementation of the Rights Offering (if any) pursuant to the Rights Offering Documents (if any) and the issuance of Rights Offering Securities (if any) in connection therewith; and (h) the execution of the Exit Commitments Netting Transaction; (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law in connection with this Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan. On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors, as applicable, shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Restructuring Transactions.

C.       *Reorganized Debtors*.

On the Effective Date, in accordance with the terms of the RSA and the Corporate Governance Term Sheet, the New Board shall be appointed, and the Reorganized Debtors shall adopt the New Corporate Governance Documents. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan so long as such agreements, documents, instruments, and actions satisfy the requirements of the RSA. Cash payments to be made pursuant to this Plan will be made by the Debtors, the Reorganized Debtors, or the Disbursing Agent (as applicable). The Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Reorganized Debtors, as applicable, to satisfy their obligations under this Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

D.       *Sources of Consideration for Plan Distributions*.

The Debtors and the Reorganized Debtors shall fund distributions under this Plan, as applicable, with (a) the proceeds from the Exit Equity Commitment Consideration; (b) Cash or other proceeds from the sale of the Rights Offering Securities (if any, as applicable) in connection with the Rights Offering (if any); (c) the New Interests; (d) Cash or other proceeds from the sale of Estate property (if any); and (e) the Debtors' Cash on hand, as applicable. The issuance, distribution, or authorization, as applicable or as described in the Restructuring Transaction Exhibit, of certain Securities in connection with this Plan, including the New Interests will be exempt from SEC registration to the fullest extent permitted by Law, as more fully described in Article IV.E, below.

1.       Exit LC Facility.

On the Effective Date, if the Debtors and Required Consenting Stakeholder agree that entry into the Exit LC Facility is necessary and advisable, the Reorganized Debtors shall enter into such Exit LC Facility on the terms set forth in the applicable Exit LC Facility Documents.

41

To the extent not already approved, Confirmation shall be deemed approval of the Exit LC Facility and the Exit LC Facility Documents, as applicable, and all transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Debtors or the Reorganized Debtors (as applicable), without further notice to or order of the Bankruptcy Court, to enter into and execute the Exit LC Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit LC Facility.  Execution of the Exit LC Facility Documents by the Exit LC Facility Agents shall be deemed to bind all Exit LC Facility Lenders as if each such Exit LC Facility Lender had executed the applicable Exit LC Facility Documents with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit LC Facility Documents, to the extent applicable:  (i) shall be deemed to be granted; (ii) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit LC Facility Documents; (iii) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit LC Facility Documents; and (iv) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law.

To the extent applicable, the Reorganized Debtors, the applicable non-Debtor Affiliates, and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents, and to take any other actions necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such Filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be in accordance with the Exit LC Facility Documents and necessary under applicable Law to give notice of such Liens and security interests to third parties.

2.      Exit Equity Commitment.

If, in an exercise of their business judgment and subject to the consent rights set forth in the RSA, the Debtors determine that additional funding is necessary or desirable, and have entered into the Exit New Money Facility, the Debtors shall distribute the Exit New Money Shares on behalf of the Reorganized Debtors as set forth in this Plan and the Exit New Money Documents in exchange for the Exit Equity Commitment Consideration (if any).  The Exit Equity Commitment (if any) shall be made and consummated on the terms and conditions of, and in accordance with the Exit Equity Commitment Documents (if any).

The Exit New Money Shares (if any) shall be offered in the allocations specified in the Exit Equity Commitment Documents (if any) and this Plan.  Any Exit New Money Shares shall be subject to dilution on account of the MIP.

On the Effective Date, the rights and obligations of the Debtors under the Exit Equity Commitment Documents (if any) shall vest in the Reorganized Debtors, as applicable.  The proceeds of the Exit Equity Commitment Consideration (if any) shall be used by the Reorganized Debtors to repay the DIP New Money Facility (if applicable) and for other general corporate purposes.

42

3.      Rights Offering.

If the Debtors and the Required Consenting Stakeholders in good faith determine that additional funding is necessary or desirable, the Debtors shall distribute the Subscription Rights to the Rights Offering Participants on behalf of the Reorganized Debtors as set forth in this Plan and the Rights Offering Documents.  The Rights Offering (if any) shall be conducted and consummated on the terms and conditions of, and in accordance with the Rights Offering Documents (if any).

The Rights Offering Securities (if any) shall be offered in the allocations specified in the Rights Offering Documents (if any) and this Plan.  Any Rights Offering Securities shall be subject to dilution on account of the MIP.

On the Effective Date, the rights and obligations of the Debtors under the Rights Offering Documents (if any) shall vest in the Reorganized Debtors, as applicable.  The proceeds of the Rights Offering (if any) shall be used by the Reorganized Debtors for general corporate purposes.

4.      Subscription Rights and New Interests.

If the Debtors and the Required Consenting Stakeholders determine, in good faith, that additional funding is necessary or desirable, Reorganized WeWork shall be authorized to issue a certain number of shares of Rights Offering Securities to certain Holders of Claims pursuant to Articles II and III.  Such Rights Offering Securities (if any) shall be issued to applicable Holders of Claims, and/or Rights Offering Participants pursuant to the Rights Offering Documents (if any), and the New Corporate Governance Documents.  Reorganized WeWork shall issue all securities, instruments, certificates, and other documents required to be issued by it with respect to all such Rights Offering Securities (if any).  All such Subscription Rights and Rights Offering Securities (if any), and any other shares of New Interests issued pursuant to this Plan, shall be duly authorized, validly issued, fully paid, and non-assessable.

Each distribution and issuance referred to in this Article IV shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Corporate Governance Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance.  Any Entity's acceptance of New Interests and/or Rights Offering Securities (if any) shall be deemed as its agreement to the New Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.

E.      *Exemption from Registration Requirements and Certain DTC Matters.*

The Subscription Rights, the shares of the New Interests, or any other Securities, being issued, offered, or distributed under this Plan will be issued without registration under the Securities Act or any similar federal, state, or local Law in reliance upon section 1145 of the Bankruptcy Code to the maximum extent permitted by law.  To the extent the Subscription Rights, the New Interests, or any other Securities, cannot be issued, offered, or distributed in reliance upon section 1145 of the Bankruptcy Code, including with respect to an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code relating to the definition of underwriter in section 2(a)(11) of the Securities Act, they will be issued without registration under the Securities Act or similar Law in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act (or another applicable exemption from the registration requirements of the Securities Act).

Securities issued in reliance upon section 1145 of the Bankruptcy Code (to the fullest extent permitted and available) (a) are exempt from, among other things, the registration requirements of section 5

43

of the Securities Act and any other applicable Law requiring registration prior to the offering, issuance, distribution, or sale of Securities, to the maximum extent possible, (b) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (c) are freely tradeable and transferable by any holder thereof that, at the time of transfer, (i) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, (iii) has not acquired such Securities from an "affiliate" within one year of such transfer, and (iv) is not an Entity that is an "underwriter" (as defined in section 2(a)(11) of the Securities Act).  The offering, issuance, distribution, and sale of any securities in accordance with section 1145 of the Bankruptcy Code shall be made without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 1145(a) of the Bankruptcy Code.

The issuance of the New Interests or any other Securities shall not constitute an invitation or offer to sell, or the solicitation of an invitation or offer to buy, any securities in contravention of any applicable Law in any jurisdiction.  No action has been taken, nor will be taken, in any jurisdiction that would permit a public offering of any of the New Interests (other than securities issued pursuant to section 1145 of the Bankruptcy Code) in any jurisdiction where such action for that purpose is required.

Any shares of the New Interests, or any other Securities, issued in reliance upon the exemption from registration provided by section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act will be "restricted securities."  Such securities may not be resold, exchanged, assigned, or otherwise transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom and other applicable Law and subject to any restrictions in the New Corporate Governance Documents.  The offering, issuance, distribution, and sale of such securities shall be made without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Interests to be issued under this Plan through the facilities of DTC (or another similar depository), the Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order with respect to the treatment of the New Interests to be issued under this Plan under applicable securities Laws.  DTC (or another similar depository) shall be required to accept and conclusively rely upon this Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Interests to be issued under this Plan is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  Notwithstanding anything to the contrary in this Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including, for the avoidance of doubt, whether the New Interests to be issued under this Plan is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

It is not expected that any shares of the New Interests, or any other Securities, will be eligible for any depository services, including with respect to DTC, on or about the Effective Date.  Further, it is not intended that the New Interests will be listed on a national securities exchange (or a comparable non-U.S. securities exchange) on or about the Effective Date.

F.      *Corporate Existence*.

Except as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or any agreement, instrument, or other document incorporated therein, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is

incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under this Plan or otherwise, in each case, consistent with this Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite Filings, approvals, or consents required under applicable state, provincial, or federal Law). After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. After the Effective Date, one or more of the Reorganized Debtors may be disposed of, merged with another entity, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.        *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in this Plan, the Plan Supplement, or the Confirmation Order, each Reorganized Debtor may operate its businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

H.        *Cancelation of Existing Securities and Agreements.*

On the later of the Effective Date and the date on which distributions are made pursuant to this Plan (if not made on the Effective Date), except for the purpose of evidencing a right to a distribution under this Plan or as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or the Exit Financing Documents, or any agreement, instrument, or other document incorporated therein, all notes, Securities, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (collectively, the "Canceled Instruments"), shall be canceled and the rights of the Holders thereof and obligations of the Debtors (and, as applicable under bankruptcy and non-bankruptcy Law, of the non-Debtor Affiliates) thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no force and effect without any need for further action or approval of the Bankruptcy Court or for a Holder to take further action, and the Agents and Holders, as applicable, shall be discharged and released and shall not have any continuing duties or obligations thereunder. Holders of or parties to such Canceled Instruments will have no rights arising from or relating to such Canceled Instruments, or the cancelation thereof, except the rights provided for or reserved pursuant to this Plan, the Confirmation Order, or the Exit Financing Documents. Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Article VI hereof, to the extent canceled pursuant to this paragraph, the Debt Documents shall continue in effect solely to the extent necessary to: (a) permit Holders of Claims or Interests under the Debt Documents to receive and accept their respective Plan Distributions on account of such Claims or Interests, if any, subject to any applicable charging Liens; (b) permit the Disbursing Agent or other Agents, as applicable, to make Plan Distributions on account of the Allowed Claims under the Debt Documents, subject to any applicable charging Liens; (c) preserve any rights of each Agent (on its own behalf or on behalf of any applicable Holder) thereunder, respectively, to maintain, exercise, and enforce any applicable rights of indemnity, reimbursement, or contribution, or subrogation or any other claim or entitlement; (d) preserve any rights of each Agent (on its own behalf or on behalf of any applicable Holder) thereunder, respectively, to maintain, enforce, and exercise their respective liens, including any charging

45

liens, as applicable, under the terms of the applicable agreements, or any related or ancillary document, instrument, agreement, or principle of law, against any money or property distributed or allocable on account of such Claims or Interests, as applicable; and (e) preserve the rights of each Agent (on its own behalf or on behalf of any applicable Holder), to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including, but not limited to, enforcing any obligations owed to any such Agent (on its own behalf or on behalf of any applicable Holder), as applicable, under this Plan, the Plan Supplement, the Confirmation Order, or other document incorporated therein.  Except as provided in this Plan (including Article VI hereof), the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of this Plan, on the Effective Date, the Agents and each Holder, and their respective agents, successors, and assigns, shall be automatically and fully discharged and released of all of their duties and obligations associated with the Debt Documents, as applicable.

I.      *Corporate Action.*

On the Effective Date, or as soon as reasonably practicable thereafter, except as otherwise provided in this Plan, the Plan Supplement, or the Confirmation Order, all actions contemplated under the Confirmation Order, this Plan, and the Plan Supplement shall be deemed authorized and approved in all respects, including:  (a) adoption or assumption, as applicable, of the Compensation and Benefit Programs in accordance with the terms set forth herein, or in the Plan Supplement, as applicable; (b) discharge of the duties of, and the dissolution of, the then-existing board of directors of WeWork Parent and selection of the directors or managers, as applicable, and officers for the Reorganized Debtors, including the appointment of the New Board, which selection, appointment, and election shall be as determined in accordance with the Corporate Governance Term Sheet; (c) the issuance and distribution of the New Interests and any other Securities contemplated in this Plan, and the Plan Supplement; (d) implementation of the Restructuring Transactions, and performance of all actions and transactions contemplated hereby and thereby (including, for the avoidance of doubt, causing Reorganized WeWork to become the new holding company of the Reorganized Debtors on or prior to the Effective Date); (e) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date); (f) adoption, execution, delivery, and/or Filing of the New Corporate Governance Documents; (g) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (h) entry into the Exit LC Facility and the execution, delivery, and Filing of the Exit LC Facility Documents; (i) execution of the Exit Equity Commitment and the execution, delivery, and Filing of the Exit Equity Commitment Documents (j) adoption of the MIP by the New Board and issuance of any Emergence Awards (each if applicable); and (k) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions (whether before, on, or after the Effective Date).

Except as otherwise provided in this Plan or the Plan Supplement, all matters provided for in this Plan and the Plan Supplement involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with this Plan and the Plan Supplement shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equity holders, members, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.

On or, as applicable, prior to the Effective Date, except as otherwise provided in this Plan or the Plan Supplement, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Interests, the Exit Financing Documents, the New Corporate Governance Documents, the Plan Supplement,

any other Definitive Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing (to the extent not previously authorized by the Bankruptcy Court). The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy Law.

J.      *New Corporate Governance Documents*.

On or as soon as reasonably practicable after the Effective Date, except as otherwise provided in this Plan or the Plan Supplement and subject to local Law requirements, the New Corporate Governance Documents (which shall be consistent with the RSA, this Plan, and the Plan Supplement) shall be automatically adopted or amended in a manner consistent with the terms and conditions set forth in the Corporate Governance Term Sheet, which shall be reasonable and customary, and shall be acceptable to the Debtors, Cupar, and subject to the consent rights set forth in the RSA and shall supersede any existing organizational documents.  To the extent required under this Plan, the Plan Supplement, or applicable non-bankruptcy Law, each of the Reorganized Debtors will File its New Corporate Governance Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable Law of the respective state or country of organization.  The New Corporate Governance Documents will (a) authorize the issuance of the New Interests and (b) prohibit the issuance of non-voting equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

After the Effective Date, each Reorganized Debtor may amend and restate its respective New Corporate Governance Documents as permitted by Laws of the respective states, provinces, or countries of incorporation and the New Corporate Governance Documents.

On the Effective Date, Reorganized WeWork shall enter into and deliver the New Stockholders Agreement and the Registration Rights Agreement with respect to each Holder of New Interests, which shall become effective and be deemed binding in accordance with their terms and conditions upon the parties thereto without further notice to or order of the Bankruptcy Court, act, or action under applicable Law, regulation, order, or rule or the vote, consent, authorization, or approval of an Entity (other than the relevant consents required by any Definitive Document).  Holders of New Interests shall be deemed to have executed the New Stockholders Agreement and the Registration Rights Agreement and be parties thereto, without the need to deliver signature pages thereto.

K.      *Challenges*.

Effective upon entry of the Confirmation Order, all Challenges (as defined in Final Cash Collateral Order) shall be deemed withdrawn, settled, overruled, or otherwise resolved.

L.      *Section 1146 Exemption*.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable Law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Interests and the Exit LC Facility, (b) the Restructuring Transactions, (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (d) the making, assignment, or recording of any lease or sublease, (e) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit LC Facility, or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or

other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and upon entry of the Confirmation Order, the appropriate state or local government officials or agents shall forego the collection of any such tax or government assessment and accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing, other than in respect of any tax imposed under any foreign Law), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

M.      [*Management Incentive Plan*.]

[The MIP shall be established and reserved for grants to be made from time to time from such pool to employees (including officers), and directors of the Reorganized Debtors at the discretion of the New Board following the Effective Date.  The terms and conditions (including, without limitation, with respect to participants, allocation, timing, and the form and structure of the equity or equity-based awards) shall be determined at the discretion of the New Board after the Effective Date; *provided* that Emergence Awards may be allocated on or prior to the Effective Date as emergence grants to retain or recruit individuals selected to serve in key senior management positions on or after the Effective Date, subject to the terms and conditions, including, but not limited to, with respect to form, allocated percentage of the MIP, structure, and vesting, determined by, in each case, the Required Consenting Stakeholders.]

N.      *Employee and Retiree Benefits*.

Subject to the consent rights set forth in the RSA, and except as otherwise provided in this Article IV.N, all Compensation and Benefits Programs shall be assumed by the Reorganized Debtors [and the Reorganized Debtors shall be authorized to continue the Compensation and Benefits Programs and shall continue to honor the terms thereof]; *provided*, *however*, that in accordance with the New Corporate Governance Documents, the Reorganized Debtors may review, amend, terminate, or modify any of the foregoing programs in accordance with applicable Law and the terms of the applicable Compensation and Benefits Program.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

O.      *Preservation of Causes of Action*.

In accordance with section 1123(b) of the Bankruptcy Code, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of this Plan to the contrary, other than any Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

48

**The Reorganized Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Retained Causes of Action of the Debtors against it.  The Debtors and the Reorganized Debtors (as applicable) expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity (except as set forth in Article VIII.C).  Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor without the need for any objection or responsive pleading by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  The Reorganized Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or the Reorganized Debtors, as applicable, and the objecting party for 30 days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order (and for the avoidance of doubt, any Causes of Action on the Schedule of Retained Causes of Action shall not be expressly relinquished, exculpated, released, compromised, or settled in this Plan), the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtors through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in this Plan.

## ARTICLE V.
## [TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES]

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are Unexpired Leases of non-residential real property that are not expressly assumed as set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, which schedule shall be subject to the consent rights of the RSA; (3) have previously expired or terminated pursuant to their own terms or agreement of the parties thereto, forfeiture or by operation of law; (4) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (5) any obligations of WeWork Inc. arising under contracts or leases that are not assumed; or (6) are, as of the Effective Date, the subject of (a) a motion to reject that is pending or (b) an order of the Bankruptcy

49

Court that is not yet a Final Order. For the avoidance of doubt, the Unexpired Leases and Executory Contracts described in subsection (1) of this paragraph will be deemed rejected pursuant to section 365 of the Bankruptcy Code.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case, prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, as clarified by the Extension Order.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases (in each case, including with agreed modifications as applicable) as set forth in this Plan, or the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, in the Schedule of Rejected Executory Contracts and Unexpired Leases, or in the Schedule of Assumed Executory Contracts and Unexpired Leases (as applicable), assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date (unless approved by the Court pursuant to an early order). Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, the effective date of the rejection of any such Unexpired Lease shall be the later of (a) the date set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases (b) the date upon which the Debtors notify the affected landlord and such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that they have surrendered the premises and, as applicable, (i) turning over keys issued by the landlord, key codes, and/or security codes, if any, to the affected landlord or (ii) notifying such affected landlord or such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that the property has been surrendered, all WeWork-issued key cards have been disabled and, unless otherwise agreed as between the Debtors and the landlord, each affected landlord is authorized to disable all WeWork-issued key cards (including those of any members using the leased location) and the landlord may rekey the leased premises. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon assumption by the Debtors; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of this Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date in accordance with any applicable terms herein (including any consent rights set forth in the RSA), unless otherwise settled by the applicable Debtors and counterparties. Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases identified in this Article V.A and in the Plan Supplement at any time through and including 45 days after the Effective Date, subject to the consent rights set forth in the RSA.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other

50

interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, the transactions contemplated by this Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or any other transaction, event, or matter that would (a) result in a violation, breach or default under such Executory Contract or Unexpired Lease, (b) increase, accelerate or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under such Executory Contract or Unexpired Lease, or (c) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to the applicable Executory Contract or Unexpired Lease.  Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption or assumption and assignment thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.  To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party or parties to such Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in this Plan, after the Confirmation Date, an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date may not be assumed by the applicable Debtor(s) unless the applicable lessor or contract counterparty has (a) consented to such assumption, (b) objected to the rejection of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be rejected and should instead be assumed (and such objection remains outstanding), or (c) in the case of Unexpired Leases, consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's prior consent, the "Deferred Deadline"), in which case for purposes of clause (c) the applicable Debtor(s) shall have until the Deferred Deadline to assume such Unexpired Lease, subject to the applicable lessor's right to object to such assumption, or such Unexpired Lease shall be deemed rejected. For any Executory Contract or Unexpired Lease assumed pursuant to this paragraph, all Cure Obligations shall be satisfied on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to the Cure Obligation, such dispute shall be addressed in accordance with Article V.D.

For the avoidance of doubt, at any time prior to the applicable deadlines set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, and as the same may be extended, the Debtors may reject any Executory Contract or Unexpired Lease pursuant to a separate motion Filed with the Bankruptcy Court.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules require the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Combined Hearing (to the extent not resolved by the parties prior to the Combined Hearing).

If the effective date of any rejection of an Executory Contract or Unexpired Lease is after the Effective Date pursuant to the terms herein, the Reorganized Debtors shall serve a notice on the affected counterparty setting forth the deadline for Filing any Claims arising from such rejection.

B.        *Indemnification Obligations*.

All indemnification provisions, consistent with applicable Law, in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, restructuring advisors, and other professionals and/or agents or representatives of, or acting on behalf, of the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and subject to the consent rights set forth in the RSA, shall survive the effectiveness of this Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, as applicable, than those that existed prior to the Effective Date; *provided* that the Reorganized Debtors shall retain the ability not to indemnify former directors of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes intentional fraud, gross negligence, or willful misconduct (subject to the consent rights set forth in the RSA); *provided*, *further*, that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date.

C.        *Claims Based on Rejection of Executory Contracts or Unexpired Leases*.

Entry of the Confirmation Order shall constitute a Final Order approving the rejections, if any, of any Executory Contracts or Unexpired Leases on the Schedule of Rejected Executory Contracts and Unexpired Leases.  Any objection to the rejection of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before 10 days after the service of notice of rejection on the affected counterparty.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Claims Agent within 30 days after the later of (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection and (b) the effective date of such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**  For the avoidance of doubt, unless otherwise agreed, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Reorganized Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to (i) use or dispose of any property left on the premises in its sole and

52

absolute discretion without notice or liability to the Debtors or the Reorganized Debtors, as applicable, or any third party, and (ii) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by Filing a Claim in accordance with this Article V.C.  Claims arising from the rejection of any of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, satisfy all Cure Obligations relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan; *provided* that, if the effective date of such assumption occurs prior to the Effective Date, such payment shall be on the effective date of such assumption or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all objections to any Cure Obligations set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases must be Filed with the Bankruptcy Court on or before 14 days after the service of the Schedule of Assumed Executory Contracts and Unexpired Leases on affected counterparties.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure Obligations shall be deemed fully satisfied, released, and discharged upon satisfaction by the Debtors or the Reorganized Debtors of the applicable Cure Obligations; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from satisfying any Cure Obligations despite the failure of the relevant counterparty to File such request for satisfaction of such Cure Obligations.  The Reorganized Debtors also may settle Cure Obligations or disputes related thereto without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before 14 days after the service of notice of assumption on affected counterparties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment.

If there is any dispute regarding any Cure Obligations, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, then satisfaction of any Cure Obligations shall occur as soon as reasonably practicable after (a) entry of a Final Order resolving such dispute and approving such assumption (and, if applicable, assignment) or (b) as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  Any such disputes shall be scheduled for hearing upon request of the affected counterparty or the Debtors or the Reorganized Debtors, as applicable, at the earliest convenience of the Court; *provided* that no hearing will be scheduled on less than 10 days' notice to the affected counterparty and the Debtors or the Reorganized Debtors, as applicable, and that no such hearing shall be scheduled less than 30 days after the Effective Date unless agreed to between the Debtors or the Reorganized Debtors, as applicable, and the affected counterparty.

In the event of a Court-Ordered Cure Obligation, the Debtors shall have the right (subject to the consent rights set forth in the RSA) to (a) satisfy the Court-Ordered Cure Obligation as soon as reasonably practicable thereafter and assume such Executory Contract or Unexpired Lease in accordance with the terms herein or, (b) within 14 days of such determination, add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or

53

Unexpired Lease will be deemed rejected on the later of the (i) date of entry of the Court-Ordered Cure Obligation and, (ii) solely with respect to Unexpired Leases, the date upon which the Debtors notify the landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable, and in the case of an Unexpired Lease, the Debtors shall, pursuant to section 365(d)(4) of the Bankruptcy Code, immediately surrender the related premises to the lessor unless otherwise agreed with the applicable lessor, subject to the applicable counterparty's right to object to such rejection; *provided* that, after the deadline to assume an Executory Contract or Unexpired Lease set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, an Executory Contract or Unexpired Lease may only be added to the Schedule of Rejected Executory Contracts and Unexpired Leases if (1) the applicable counterparty consents to such rejection, (2) the applicable counterparty objected to the assumption or cure of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be assumed and should instead be rejected, including alleging an incurable default (and such objection remains outstanding), or (3) the court orders a Court-Ordered Cure Obligation.  Notwithstanding anything to the contrary herein, the Reorganized Debtors and the applicable counterparty shall be entitled to the full benefits of the Executory Contract or Unexpired Lease (including without limitation, any license thereunder) pending the resolution of any Cure Obligation dispute.

At least 7 days prior to the first day of the Combined Hearing, the Debtors shall provide for notices of proposed assumption or assumption and assignment and proposed Cure Obligations to be sent to applicable parties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment. Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption, upon the satisfaction of all applicable Cure Obligations.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (ii) the effective date of such assumption, or (iii) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that nothing herein shall affect the allowance of Claims or any Cure Obligation agreed to by the Debtors in any written agreement amending or modifying any Executory Contract or Unexpired Lease (subject to the consent rights set forth in the RSA) prior to assumption pursuant to this Plan or otherwise**.

Notwithstanding anything herein to the contrary, upon assumption of an Unexpired Lease, the Debtors or the Reorganized Debtors, as applicable, shall be obligated to pay or perform, unless waived or otherwise modified by any amendment to such Unexpired Lease mutually agreed to by the applicable landlord and Debtor(s), any accrued, but unbilled and not yet due to be paid or performed, obligations as of the applicable deadline to File objections or disputes to the Cure Obligations for such Unexpired Lease under such assumed Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, under the Unexpired Lease, regardless of whether such obligations arose before or after the Effective Date, when such obligations become due in the ordinary course; *provided* that all rights of the parties to any such assumed Unexpired Lease to dispute amounts asserted thereunder are fully preserved; *provided, further*, that nothing herein shall relieve the Debtors or the Reorganized Debtors, as applicable, from any amounts that come due between (a) the applicable deadline to File objections or disputes to the Cure Obligation for such Unexpired Lease and (b) the effective date of assumption for such Unexpired Lease.

E.       *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*.

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any applicable non-bankruptcy Law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.       *Insurance Policies*.

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under this Plan.  Unless otherwise provided in this Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in this Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be Filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect, on or after the Petition Date, with respect to conduct occurring prior to, on, or after the Petition Date, and all members, directors, managers, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such members, directors, managers, and officers remain in such positions after the Effective Date[; *provided*, *however*, that the Reorganized Debtors shall retain the ability to terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies for any Causes of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence, bad faith, or willful misconduct.]

G.       *Reservation of Rights*.

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, subject to the consent rights set forth in the RSA, or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.       *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.       *Employee Compensation and Benefits.*

1.       Compensation and Benefit Programs.

Subject to the RSA (including the consent rights set forth therein), and the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a)       all employee equity or equity-based incentive plans (and the awards granted thereunder), and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Parent Interests; *provided* that, notwithstanding the foregoing or anything to the contrary herein, the Debtors are authorized and directed to pay the Cash component of any bonus programs in accordance with the terms of such program (including, for the avoidance of doubt, the timing of any payments, which shall not be accelerated);

(b)       Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court;

(c)       any Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any Compensation and Benefits Program; and

(d)       any Compensation and Benefits Programs for the benefit of the Existing Board Members.

Any assumption of Compensation and Benefits Programs pursuant to the terms herein shall be deemed not to trigger (a) any applicable change of control, immediate vesting, or termination (including, in each case, any similar provisions therein) or (b) an event of "Good Reason" (or a term of like import), in each case as a result of the consummation of the Restructuring Transactions or any other transactions contemplated by this Plan.  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to this Plan other than those applicable immediately prior to such assumption.

2.       Workers' Compensation Programs.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (a) all applicable workers' compensation Laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or the Reorganized Debtors' defenses, Causes of Action, or other rights under applicable Law, including non-bankruptcy Law, with respect to any such contracts, agreements, policies, programs, and

56

plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state Law.

J.      *Intellectual Property Licenses and Agreements*.

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to this Plan and shall be assumed by the respective Debtors or Reorganized Debtors, as applicable, and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors as set forth in this Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

K.      *Contracts and Leases Entered into after the Petition Date*.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order, except as may be agreed to by the counterparties to such contracts and leases.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions on Account of Claims or Interests Allowed as of the Effective Date*.

Unless otherwise provided in this Plan, on or as soon as reasonably practicable after the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in this Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the foregoing, (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of this Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law

or in the ordinary course of business.  Thereafter, a Distribution Date shall occur no less frequently than once in every 180-day period, as necessary, in the discretion of the Reorganized Debtors.

B.      *Disbursing Agent*.

Except as otherwise set forth in this Plan or the Plan Supplement, all distributions under this Plan shall be made by the applicable Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties (unless otherwise ordered by the Bankruptcy Court).

C.      *Rights and Powers of Disbursing Agent*.

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business without any further notice to, or action, order, or approval of the Bankruptcy Court.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*.

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions is and shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Unless otherwise provided in a Final Order from the Bankruptcy Court, if a Claim, other than one based on a Security that is traded on a recognized securities exchange, is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General.

Except as otherwise provided herein or in the Plan Supplement, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests, as applicable, as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of, the date of any such distribution (to the extent such address is not available in the Debtors' records, such Holder must provide sufficient information to deliver the distribution); *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.          Minimum Distributions.

The Disbursing Agent shall not make any distributions to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest of Cash or otherwise where such distribution is valued, in the reasonable discretion of the applicable Disbursing Agent, at less than $250.  When any distribution pursuant to this Plan on account of an Allowed Claim or Allowed Interest, as applicable, would otherwise result in the issuance of a number of shares of the New Interests that is not a whole number, the actual distribution of shares of the New Interests shall be rounded as follows:  (a) fractions of one-half or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of the New Interests to be distributed under this Plan shall be adjusted as necessary to account for the foregoing rounding.  No fractional shares of the New Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  Each Allowed Claim or Interest to which these limitations apply shall be discharged pursuant to Article VIII.A of this Plan and its Holder shall be forever barred pursuant to Article VIII.A of this Plan from asserting that Claim against or Interest in the Reorganized Debtors or their property pursuant to Article VIII.A of this Plan.

Any amounts owed to a Holder of an Allowed Claim that is entitled to distributions in an amount less than $250 shall not receive distributions on account thereof, and each Claim shall be discharged pursuant to Article VIII.A of this Plan and its Holder is forever barred pursuant to Article VIII.A of this Plan from Asserting that Claim against the Reorganized Debtors or their property and such amount shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court).

4.          Undeliverable and Unclaimed Distributions.

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date without interest.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to this Article VI, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under this Plan that is an Unclaimed Distribution or remains undeliverable for a period of 90 days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such Unclaimed Distribution is comprised of the New Interests, such New Interests shall be canceled.  Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, released, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.  The Disbursing Agent shall adjust the distributions of the New Interests to reflect any such cancelation.

5.          Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.H hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such

59

surrendered certificate or instrument shall be canceled solely with respect to the Debtors, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan, charging Liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

E.      *Manner of Payment*.

Except as otherwise provided in this Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, all distributions of the New Interests to the Holders of the applicable Allowed Claims or Allowed Interests, in each case if any, under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or the Reorganized Debtors, as applicable.

All distributions of Cash to the Holders of the applicable Allowed Claims or Allowed Interests, in each case if any, under this Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

At the option of the applicable Disbursing Agent, any Cash payment to be made hereunder may be made by check, automated clearing house (ACH), or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Indefeasible Distributions*.

Except as otherwise provided in Article VI.L, any and all distributions made under this Plan shall be indefeasible and not subject to clawback or turnover provisions.

G.      *Compliance with Tax Requirements*.

In connection with this Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Disbursing Agent, and any other applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements; *provided* that any amounts withheld shall be deemed distributed to and received by the applicable recipient for all purposes under this Plan.  Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under this Plan shall deliver to the applicable Disbursing Agent or, if different, the applicable withholding agent, a properly completed and duly executed IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8 (including any supporting documentation) (as applicable).

H.    *Allocations.*

Distributions in respect of Allowed Claims shall be, with respect to each specific Claim, allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, this Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

J.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

K.    *Preservation of Setoffs and Recoupment.*

Except as expressly provided in this Plan or the Plan Supplement, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or their applicable successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or their applicable successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

Notwithstanding anything to the contrary herein, nothing in this Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, or any successors to the Debtors, under this Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Reorganized Debtors, or any successors of the Debtors.

61

L.      *Claims Paid or Payable by Third Parties*.

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors (as applicable) shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in this Plan or the Plan Supplement, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Disputed Claims Process*.

**The Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority (subject with respect to any Stub Rent Claims, to the consent rights as set forth in the Bar Date Order and the RSA, as applicable) to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan.  All Proofs of Claim required to be Filed by this Plan that are Filed after the date that they are required to be Filed pursuant to this Plan shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the**

62

**need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims.*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.  The Debtors, in their sole discretion, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under this Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

C.      *Claims Administration Responsibilities.*

With respect to all Classes of Claims and Interests, and except as otherwise specifically provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the sole authority (subject with respect to any Stub Rent Claims, to the consent rights set forth in the Bar Date Order and the RSA, as applicable) to: (a) File and prosecute Claim Objections; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise; (c) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  After the Effective Date, the Reorganized Debtors shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of this Plan.  For the avoidance of doubt, except as otherwise provided in this Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all the rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to <u>Article IV.N</u> of this Plan, unless such Causes of Action were released pursuant to <u>Article VIII</u> of this Plan.

D.      *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable Law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in this Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest and does not provide otherwise, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under this Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy

Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 7 days after the date on which such Claim or Interest is estimated. Each of the foregoing Claims and Interests and objection, estimation, and resolution procedures are cumulative, not exclusive of one another, and shall be consistent with any procedures set forth in the Bar Date Order and subject to the consent rights set forth in the RSA. Claims or Interest may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.      *Disputed Claims Reserve.*

On or before the Effective Date, the Reorganized Debtors incorporated in the U.S., subject to the consent rights set forth in the RSA, shall establish one or more reserves of the applicable consideration for any Claims against any Debtor that are Disputed Claims as of the Distribution Record Date other than General Unsecured Claims, which reserves shall be administered by the Disbursing Agent.

After the Effective Date, the applicable Disbursing Agent shall hold such consideration in such reserve(s) in trust for the benefit of such Disputed Claims as of the Distribution Record Date, that are ultimately determined to be Allowed after the Distribution Record Date. The Disbursing Agent shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III of this Plan solely to the extent of the amounts available in the applicable reserve(s).

Upon a Disputed Claim becoming disallowed by a Final Order or pursuant to Article VII.A, the applicable amount of the consideration that was in the disputed claims reserve on account of such Disputed Claim shall be canceled by the Reorganized Debtors or the applicable Disbursing Agent. The Disbursing Agent shall adjust the distributions of the consideration to reflect any such cancelation.

[The Debtors may take the position that grantor trust treatment applies in whole or in part to any assets held in a disputed claims reserve. To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations. Accordingly, subject to the immediately foregoing sentence, if such intended U.S. federal income tax treatment applied, then for U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as if such beneficiaries had received an interest in such account or fund's assets and then contributed such interests (in accordance with the Restructuring Transactions Exhibit) to such account or fund. Alternatively, any assets held in a disputed claim reserve may be subject to the tax rules that apply to "disputed ownership funds" under section 1.468B–9 of the Treasury Regulations.][5] To the extent such U.S. federal income tax treatment applies, any such assets will be subject to entity-level taxation, which will be borne by such disputed ownership funds and the Reorganized Debtors, shall be required to comply with the relevant rules. However, it is unclear whether these U.S. tax principles will apply to any such reserve and, as a result, the tax consequences of such reserve may vary.

---

[5]     Subject to ongoing review by all parties' tax teams pending finalization of the structure. This particular language is meant to cross-refer to Treasury Regulations Section 1.468B-1(k).

F.     *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged (including pursuant to this Plan) on the Claims Register by the Reorganized Debtors (without the Reorganized Debtors having to File an application, motion, complaint, objection, Claim Objection, or any other legal proceeding seeking to object to such Claim or Interest) and without any further notice to or action, order, or approval of the Bankruptcy Court.

G.     *Time to File Objections to Claims.*

Any objections to Claims or Interests shall be Filed on or before the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Bankruptcy Court upon a motion by the Debtors or the Reorganized Debtors, as applicable.

H.     *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if:  (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein or as agreed to by the Debtors or Reorganized Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such disallowed Claims shall not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order;** *provided, however***, that not less than 14 days' notice to any Holders of General Unsecured Claims affected by the foregoing in this paragraph shall be provided (which such notice may be served on the affected claimants and may be Filed on an aggregate basis consistent with Bankruptcy Rule 3007(d)).**

I.     *Amendments to Claims.*

Except as provided in this Plan or the Confirmation Order, on or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, as applicable, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable Law.

J.     *No Distributions Pending Allowance.*

Notwithstanding any other provision of this Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that, if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such

Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under this Plan as of such date, without any interest to be paid on account of such Claim or Interest.

L.      *Single Satisfaction of Claims.*

Holders of Allowed Claims or Allowed Interests may assert such Claims against or Interests in the Debtors obligated with respect to such Claims or Interests, and such Claims and Interests shall be entitled to share in the recovery provided for the applicable Claim against or Interest in the Debtors based upon the full Allowed amount of such Claims or Interests.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of any Allowed Claim or Allowed Interest exceed the amount of the Allowed Claim or Allowed Interest.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS[6]**

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan or the Plan Supplement, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted this Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination

---

[6]     For the avoidance of doubt, all releases remain subject to the ongoing investigation of the special committee of independent directors of the board.

of the discharge of all Claims (other than the Reinstated Claims), Interests (other than the Intercompany Interests that are Reinstated), and Causes of Action subject to the occurrence of the Effective Date.

B.      *Release of Liens*.

**Except as otherwise provided herein, in the Exit Financing Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, the DIP New Money Agents, the Exit LC Facility Agents, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.      *Releases by the Debtors*.

**Except as expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, finally, and forever released, waived, and discharged, to the fullest extent permissible under applicable Law, by each and all of the Debtors, and each of their respective current and former non-SoftBank Parties Affiliates, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action,**

67

remedies, and liabilities, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, fixed or contingent, liquidated or unliquidated, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or any other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Debt Documents and, the RSA, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Notes Exchange Transactions, the decision to File the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Transactions, and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable the Definitive Documents or any other contract instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the Restructuring Transactions, the pursuit of Confirmation and Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan as set forth in this Plan; or (b) any Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release; (g) essential to the Confirmation of this Plan; and (h) an exercise of the Debtors' business judgment.

D.      *Releases by the Releasing Parties*.

Effective as of the Effective Date, except as expressly set forth in this Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by

68

**this Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, this Plan, to the fullest extent permissible under applicable Law, each Releasing Party (other than the Debtors or the Reorganized Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the fullest extent permissible under applicable Law, each Debtor, Reorganized Debtor, and each other Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, fixed or contingent, liquidated or unliquidated, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors or their estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Debt Documents and the RSA, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Notes Exchange Transactions, the decision to File the Chapter 11 Cases, any intercompany transactions, and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Definitive Documents or any other contract instrument, release or other agreement or document created or entered into in connection with the Definitive Documents, or the Restructuring Transactions, the pursuit of Confirmation and Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising on or after the Effective Date of any party or Entity under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan as set forth in this Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section D, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the releases set forth in this Section D is:  (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released pursuant to this <u>Article VIII.D</u>; (e) in the best interests of the Debtors and their estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action of any kind whatsoever released pursuant to this <u>Article VIII.D</u>.**

E.      *Exculpation*.

**Except as otherwise specifically provided in this Plan or the Confirmation Order, and to the fullest extent permitted by law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any and all Claims, Interests, obligations, rights, suits, damages, or Causes of Action whether direct or derivative, for any claim related to any act or omission arising prior to the Effective Date, in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Disclosure Statement or this Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes for, or Confirmation of, this Plan, the funding of this Plan, the occurrence of the Effective Date, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with this Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, or upon any other act or omission, transaction, agreements, event, or other occurrence taking place on or before the Effective Date related to or relating to any of the foregoing (including, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan), except for Claims or Causes of Action related to any act or omission of an Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have, and upon Consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.  Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any Effective Date obligation under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

F.      *Injunction*.

**Upon entry of the Confirmation Order, except as otherwise expressly provided in this Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been extinguished, released, discharged, or are subject to exculpation, whether or not such Entities vote in favor of, against or abstain from voting on this Plan or are presumed to have accepted or deemed to have rejected this Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, Affiliates, and Related Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing, conducting, or continuing in any manner any action or other proceeding of any kind**

70

on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) except as otherwise provided under this Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation, or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, Cause of Action, liability or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Interests, or Causes of Action released or settled pursuant to this Plan; and (f) if such Entity (alone or together with a group of people that is treated as a single entity under the applicable rules) is a "50-percent shareholder" as defined under section 382(g)(4)(D) of the Tax Code with respect to any Debtor, claiming a worthless stock deduction for U.S. federal income tax purposes with respect to the Interests of WeWork Parent for any tax period of such Entity ending prior to the Effective Date.

Upon entry of the Confirmation Order, all Holders of Claims and Interests shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

With respect to Claims or Causes of Action that have not been released, discharged, or are not subject to exculpation, no Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, any Exculpated Party, or any Released Party that relates to any act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of, in whole or in part, the Chapter 11 Cases (including the Filing and administration thereof), the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the RSA, the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan, the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, any other in- or out-of-court restructuring efforts of the Debtors; any intercompany transactions, any Restructuring Transaction, the RSA, the formulation, preparation, dissemination, negotiation, or Filing of the RSA and the Definitive Documents, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, this Plan, or any of the other Definitive Documents, the Notes and the Indentures, the pursuit of Confirmation, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Exculpated Party on this Plan or the Confirmation Order in lieu of such legal opinion), without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or

71

**Cause of Action represents a colorable Claim and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action. To the extent the Bankruptcy Court may have jurisdiction over such colorable Claim or Cause of Action, the Bankruptcy Court shall have sole and exclusive jurisdiction to adjudicate such underlying Claim or Cause of Action should it permit such Claim or Cause of Action to proceed.**

G.      *Gatekeeper Provision.*

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Debtor, Reorganized Debtor, Exculpated Party, or Released Party and is not a Claim that the Debtors released under this Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (b) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

H.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

J.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (a) such Claim has been adjudicated as non-contingent or (b) the relevant Holder of a Claim has Filed a non-contingent Proof of

72

Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN**

A.     *Conditions Precedent to the Effective Date*.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied, subject to the consent rights set forth in the RSA, (and, solely with respect to Article IX.A.6 below as it pertains to the Agent Professionals, to the applicable Agents) or waived, subject to the consent rights set forth in the RSA (and, solely with respect to Article IX.A.6 below as it pertains to the Agent Professionals, the applicable Agents (or as otherwise indicated)), pursuant to the provisions of Article IX.B hereof:

1.     the Final Cash Collateral Order shall be consistent with the RSA in all respects (including the consent rights set forth therein) and shall not have been vacated, stayed, or modified without the prior written consent of the Required Consenting Stakeholders;

2.     the DIP LC/TLC Order shall be consistent with the RSA in all respects (including the consent rights set forth therein) and shall not have been vacated, stayed, or modified without the prior written consent of the Required Consenting Stakeholders;

3.     each document or agreement constituting a Definitive Document and all documents contemplated by the RSA shall have been executed and/or effectuated, in form and substance consistent with the RSA and subject to the consent rights set forth therein;

4.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan, and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

5.     all obligations of the Debtors and the DIP New Money Lenders under the Exit Equity Commitment Documents (if any), including those required to effectuate the Exit Equity Commitment,  shall have been satisfied in accordance with the terms thereof and this Plan;

6.     all obligations of the Debtors under the Rights Offering Documents (if any) shall have been satisfied;

7.     the Rights Offering (if any) shall have been fully consummated pursuant to the Rights Offering Procedures and the Rights Offering Documents and consistent in all material respects with this Plan and the RSA;

8.     the Exit Equity Commitment Documents (if applicable) shall have been duly executed and delivered by all Entities party thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Exit Equity Commitment Documents shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Equity Commitment Documents and the execution of the Exit Equity Commitment shall have occurred;

9.     the Exit LC Facility Documents shall have been duly executed and delivered by all Entities party thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Exit LC Facility Documents

73

shall have been satisfied or duly waived in writing in accordance with the terms of the Exit LC Facility Documents and the closing of the Exit LC Facility shall have occurred;

10. all fees, expenses, and premiums payable pursuant to the RSA, Plan, Definitive Documents, or pursuant to any order of the Bankruptcy Court shall have been paid by the Debtors or the Reorganized Debtors, as applicable, and the Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall have been paid in full in Cash on the Effective Date as set forth in Article II.F of this Plan;

11. all Allowed Professional Fee Claims required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses in full after the Effective Date have been placed in the professional fee escrow account as set forth in, and in accordance with, this Plan;

12. the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance consistent with the RSA and subject to the consent rights set forth therein, and such order shall have become a final and non-appealable order, which shall not have been stayed, reversed, vacated, amended, supplemented, or otherwise modified, unless waived by the Required Consenting Stakeholders;

13. the Debtors shall have otherwise substantially consummated the Restructuring Transactions, all transactions contemplated in the RSA (subject to, and in accordance with, the consent rights set forth therein), and all transactions contemplated by this Plan and in the Definitive Documents, in a manner consistent in all respects with this Plan, unless waived by the Required Consenting Stakeholders;

14. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (and any amendment(s) thereto) shall have been Filed and all documents therein shall continue to satisfy the RSA in all respects;

15. all financing necessary for this Plan shall have been obtained and any documents related thereto, without duplication of the conditions described otherwise in this Article IX.A, shall have been executed, delivered, and be in full force and effect (with all conditions precedent thereto, other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred, having been satisfied or waived), and subject to the consent rights set forth in the RSA; and

16. immediately prior to the Plan Effective Date, the Debtors shall possess no less than $300 million in cash (inclusive of Exit Equity Commitment but exclusive of any proceeds generated by the sales of WeWork India and Japan).

B.      *Waiver of Conditions*.

Except as otherwise specified in this Plan, and subject to the limitations contained in and other terms of the RSA, any one or more of the conditions to Consummation (or any component thereof) set forth in this Article IX  may be waived only if waived in writing (email being sufficient) by the Debtors and the Required Consenting Stakeholders without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

C.       *Effect of Failure of Conditions.*

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan, the Disclosure Statement, the RSA, or any other Definitive Document shall: (a) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, any Holders of Claims or Interests, or any other Entity; *provided* that all provisions of this Plan, the RSA, or any other Definitive Document that survive termination thereof shall remain in effect in accordance with the terms thereof.

D.       *Substantial Consummation.*

"Substantial Consummation" of this Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A.       *Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the RSA, the Debtors reserve the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that any such modification (whether material or immaterial) shall be acceptable in form and substance to the Required Consenting Stakeholders.  Subject to those restrictions on modifications set forth in this Plan, the RSA, the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

B.       *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.       *Revocation or Withdrawal of Plan.*

To the extent permitted by the RSA and subject to the consent rights therein, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then:  (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any claims by the Debtors, Claims or Interests, or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of such Debtor or any

75

other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to:  (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Obligations pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to Holders of Allowed Claims and Holders of Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

(e)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

(g)     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, or the Disclosure Statement, including the RSA;

76

(h)  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(i)  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

(j)  issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan, including any action that is intended or is reasonably likely to directly or indirectly prevent, impede, hinder, adversely affect, and/or delay any of the Restructuring Transactions, or any actions or efforts of the Debtors and Reorganized Debtors and/or their ability to consummate this Plan;

(k)  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the exculpations, discharges, injunctions, releases, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L hereof;

(m)  enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)  issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

(o)  determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the RSA;

(p)  enter an order or final decree concluding or closing the Chapter 11 Cases;

(q)  adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated therein;

(r)  consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(s)  determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(t)  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including

77

disputes arising under agreements, documents, or instruments executed in connection with this Plan;

(u)     hear and determine matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(v)     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof, whether occurring prior to or after the Effective Date;

(w)     enforce all orders previously entered by the Bankruptcy Court; and

(x)     hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Corporate Governance Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*.

Subject to Article IX.A hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have, accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

B.     *Additional Documents*.

On or before the Effective Date, and consistent in all respects with the terms of the RSA, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the RSA; *provided* that any and all such agreements and documents shall be in form and substance acceptable to the Debtors and subject to the consent rights set forth in the RSA.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C.     *Statutory Committee and Cessation of Fee and Expense Payment*.

On the Effective Date, the Creditors' Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with final fee applications of

Professionals for services rendered prior to the Effective Date.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee or any other statutory committees after the Effective Date.

D.      *Reservation of Rights.*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor, Consenting Stakeholder, Agent, or party under the DIP Facilities, as applicable, with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, or Agent, as applicable, with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

| If to the Debtors: | If to Counsel to the Debtors: |
|---|---|
| WeWork Inc.<br>12 East 49th Street, 3rd Floor<br>New York, NY 10017<br>Attention:  Pamela Swidler, Chief Legal Officer<br>Email address:  pamela.swidler@wework.com | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., Steven N. Serajeddini, P.C., Ciara Foster, Connor K. Casas<br>Email address:  edward.sassower@kirkland.com,<br>joshua.sussberg@kirkland.com,<br>steven.serajeddini@kirkland.com,<br>ciara.foster@kirkland.com,<br>connor.casas@kirkland.com<br><br>-and-<br><br>Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Ryan T. Jareck, Esq.<br>Email address:  msirota@coleschotz.com,<br>wusatine@coleschotz.com,<br>fyudkin@coleschotz.com, |

| | |
|---|---|
| | rjareck@coleschotz.com |
| **If to the U.S. Trustee:** | **If to Counsel to the DIP Agent:** |
| Office of The United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard, Suite 2100<br>Newark, NJ 07102<br>Attention:  Fran B. Steele, Esq., Peter J. D'Auria, Esq.<br>Email address:  Fran.B.Steele@usdoj.gov,<br>          Peter.J.D'Auria@usdoj.gov | Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001-2163<br>Attention: Brian Kinney, Michael Price, George Zhang<br>Email address:  bkinney@milbank.com,<br>          mprice@milbank.com,<br>          gzhang@milbank.com, |
| **If to Counsel to the Creditors' Committee:** | **If to Counsel to the SoftBank Parties:** |
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attention:  Gabe Sasson, Kris Hansen, Frank Merola, Matt Friedrick<br>Email address:  gabesasson@paulhastings.com,<br>          krishansen@paulhastings.com,<br>          frankmerola@paulhastings.com,<br>          matthewfriedrick@paulhastings.com | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attention:  Gabriel A. Morgan, Kevin H. Bostel, Eric L. Einhorn<br>Email address:  gabriel.morgan@weil.com,<br>          kevin.bostel@weil.com,<br>          eric.einhorn@weil.com<br><br> -and-<br><br>Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue, 25 Main Street<br>New York, NY 10110<br>Attention:  Paul R. DeFilippo, James N. Lawlor<br>Email address:  pdefilippo@wmd-law.com,<br>          jlawlor@wmd-law.com |
| **If to Counsel to the Ad Hoc Group:** | **If to Counsel to Cupar:** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention:  Eli J. Vonnegut; Natasha Tsiouris;<br>Jonah A. Peppiatt<br>Email address:  eli.vonnegut@davispolk.com,<br>          natasha.tsiouris@davispolk.com,<br>          jonah.peppiatt@davispolk.com<br><br>Greenberg Traurig, LLP<br>500 Campus Drive, Suite 400<br>Florham Park, NJ 07932<br>Attention:  Alan J. Brody<br>Email address:  brodya@gtlaw.com | Cooley LLP<br>1333 2nd Street, Suite 400<br>Santa Monica, CA 90401<br>Attention:  Tom Hopkins, Cullen D. Speckhart, Logan Tiari, Michael A. Klein<br>Email address:  thopkins@cooley.com,<br>          cspeckhart@cooley.com,<br>          ltiari@cooley.com,<br>          mklein@cooley.com |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, an Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Term of Injunctions or Stays*.

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**Notwithstanding anything to the contrary herein (except with respect to indemnification obligations under assumed Unexpired Leases, which shall remain Unimpaired), the automatic stay imposed by section 362 of the Bankruptcy Code and the injunctions set forth in <u>Article VIII.F</u> of this Plan shall remain applicable to Claims that have the benefit of an applicable insurance policy arising prior to the Effective Date up to the amount of the applicable SIR or deductible, which Claims shall be treated as General Unsecured Claims.**

H.      *Entire Agreement*.

Except as otherwise indicated, and without limiting the effectiveness of the RSA, this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

I.      *Plan Supplement*.

All exhibits and documents included in the Plan Supplement are an integral part of this Plan and are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/WeWork or the Bankruptcy Court's website at https://www.njb.uscourts.gov/.

J.      *Nonseverability of Plan Provisions*.

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration shall be consistent with the RSA and subject to the consent rights set forth therein.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is:

(a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the Debtors' or the Reorganized Debtors' consent, as applicable (but subject to the terms of the RSA); and (c) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith*.

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan and any previous plan, and, therefore, no such parties nor individuals nor the Reorganized Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

L.      *Closing of Chapter 11 Cases*.

On and after the Effective Date, the Debtors or the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case(s) listed in the Restructuring Transactions Exhibit as having those Chapter 11 Case(s) remain open following the Effective Date (as the Debtors may determine subject to the consent rights set forth therein), and all contested matters relating to any of the Debtors, including Claim Objections and any adversary proceedings, shall be administered and heard in the Chapter 11 Case(s) of such Debtor(s), irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all distributions have been made in accordance with this Plan, the Reorganized Debtors shall seek authority to close any remaining Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

M.      *Waiver or Estoppel*.

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

82

Dated:  April 19, 2024

**WEWORK INC.**

on behalf of itself and all other Debtors

/s/  David Tolley
David Tolley
Chief Executive Officer

83

**Exhibit B**

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al*., | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### FIRST AMENDED JOINT CHAPTER 11 PLAN
### OF REORGANIZATION
### OF WEWORK INC. AND ITS DEBTOR SUBSIDIARIES

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...................................................................................................................1
    A.      Defined Terms ..................................................................................................1
    B.      Rules of Interpretation .................................................................................276
    C.      Computation of Time ...................................................................................287
    D.      Governing Law ...........................................................................................287
    E.      Reference to Monetary Figures ...................................................................28
    F.      Reference to the Debtors or the Reorganized Debtors ...............................28
    G.      Controlling Document ..................................................................................28
    H.      Consultation, Notice, Information, and Consent Rights. .............................28

ARTICLE II. ADMINISTRATIVE CLAIMS,  DIP ADMINISTRATIVE CLAIMS,  PRIORITY
CLAIMS, AND RESTRUCTURING EXPENSES ...................................................................298
    A.      Administrative Claims .................................................................................298
    B.      DIP Administrative Claims .........................................................................30
    C.      Professional Fee Claims ..............................................................................310
    D.      Priority Tax Claims .....................................................................................32
    E.      Payment of Statutory Fees and Reporting to the U.S. Trustee ...................32
    F.      Payment of Restructuring Expenses ...........................................................32

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...........332
    A.      Classification of Claims and Interests ........................................................332
    B.      Treatment of Claims and Interests ..............................................................343
    C.      Special Provision Governing Unimpaired Claims ......................................398
    D.      Elimination of Vacant Classes ....................................................................39
    E.      Voting Classes, Presumed Acceptance by Non-Voting Classes .................39
    F.      Intercompany Interests ................................................................................39
    G.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
            Code ............................................................................................................4039
    H.      Controversy Concerning Impairment ..........................................................4039
    I.      Subordinated Claims and Interests ..............................................................4039

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ......................................40
    A.      General Settlement of Claims and Interests ................................................40
    B.      Restructuring Transactions ..........................................................................410
    C.      Reorganized Debtors ...................................................................................41
    D.      Sources of Consideration for Plan Distributions .........................................421
    E.      Exemption from Registration Requirements and Certain DTC Matters. .....43
    F.      Corporate Existence .....................................................................................454
    G.      Vesting of Assets in the Reorganized Debtors ............................................45
    H.      Cancelation of Existing Securities and Agreements ....................................45
    I.      Corporate Action .........................................................................................46
    J.      New Corporate Governance Documents ......................................................47
    K.      Challenges. ...................................................................................................47
    L.      Section 1146 Exemption ..............................................................................487
    M.      [Management Incentive Plan] .......................................................................48
    N.      Employee and Retiree Benefits ....................................................................48
    O.      Preservation of Causes of Action ................................................................498

ARTICLE V. [TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES] ____ 5049
    A.   Assumption and Rejection of Executory Contracts and Unexpired Leases _____ 5049
    B.   Indemnification Obligations _____ 52
    C.   Claims Based on Rejection of Executory Contracts or Unexpired Leases _____ 52
    D.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases _____ 53
    E.   Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
        Leases _____ 55
    F.   Insurance Policies _____ 55
    G.   Reservation of Rights _____ 565
    H.   Nonoccurrence of Effective Date _____ 56
    I.   Employee Compensation and Benefits _____ 56
    J.   Intellectual Property Licenses and Agreements _____ 57
    K.   Contracts and Leases Entered into after the Petition Date _____ 57

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS _____ 57
    A.   Distributions on Account of Claims or Interests Allowed as of the Effective Date ____ 57
    B.   Disbursing Agent _____ 58
    C.   Rights and Powers of Disbursing Agent _____ 58
    D.   Delivery of Distributions and Undeliverable or Unclaimed Distributions _____ 58
    E.   Manner of Payment _____ 60
    F.   Indefeasible Distributions _____ 60
    G.   Compliance with Tax Requirements _____ 60
    H.   Allocations _____ 61
    I.   No Postpetition Interest on Claims _____ 61
    J.   Foreign Currency Exchange Rate _____ 61
    K.   Preservation of Setoffs and Recoupment _____ 61
    L.   Claims Paid or Payable by Third Parties _____ 62

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS _____ 632
    A.   Disputed Claims Process _____ 632
    B.   Allowance of Claims _____ 63
    C.   Claims Administration Responsibilities _____ 63
    D.   Estimation of Claims and Interests _____ 643
    E.   Disputed Claims Reserve _____ 64
    F.   Adjustment to Claims or Interests without Objection _____ 65
    G.   Time to File Objections to Claims _____ 65
    H.   Disallowance of Claims or Interests _____ 65
    I.   Amendments to Claims _____ 665
    J.   No Distributions Pending Allowance _____ 665
    K.   Distributions After Allowance. _____ 66
    L.   Single Satisfaction of Claims _____ 66

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ____ 66
    A.   Discharge of Claims and Termination of Interests _____ 66
    B.   Release of Liens _____ 67
    C.   Releases by the Debtors _____ 687
    D.   Releases by the Releasing Parties _____ 698
    E.   Exculpation _____ 70
    F.   Injunction _____ 710

G.      Gatekeeper Provision ........................................................................... 72
H.      Protections Against Discriminatory Treatment .................................... 72
I.      Document Retention .............................................................................. 73̶2̲
J.      Reimbursement or Contribution ........................................................... 73̶2̲

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ................. 73
A.      Conditions Precedent to the Effective Date ......................................... 73
B.      Waiver of Conditions ........................................................................... 75̶4̲
C.      Effect of Failure of Conditions ............................................................ 75
D.      Substantial Consummation ................................................................... 75

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ............. 75
A.      Modification and Amendments ............................................................. 75
B.      Effect of Confirmation on Modifications ............................................. 75
C.      Revocation or Withdrawal of Plan ....................................................... 76̶5̲

ARTICLE XI. RETENTION OF JURISDICTION ..................................................................... 76

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................... 78
A.      Immediate Binding Effect .................................................................... 78
B.      Additional Documents .......................................................................... 78
C.      Statutory Committee and Cessation of Fee and Expense Payment ...... 79̶8̲
D.      Reservation of Rights ........................................................................... 79
E.      Successors and Assigns ........................................................................ 79
F.      Notices .................................................................................................. 79
G.      Term of Injunctions or Stays ............................................................... 81
H.      Entire Agreement ................................................................................. 81
I.      Plan Supplement ................................................................................... 81
J.      Nonseverability of Plan Provisions ...................................................... 81
K.      Votes Solicited in Good Faith .............................................................. 82
L.      Closing of Chapter 11 Cases ............................................................... 82
M.      Waiver or Estoppel .............................................................................. 82

**INTRODUCTION**

WeWork Inc. and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors") propose this joint chapter 11 plan of reorganization (together with any documents comprising the Plan Supplement, and as amended, supplemented, or otherwise modified from time to time, in accordance with the RSA, this "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A of this Plan.  Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor.  The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  The classification of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein.  This Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made, and Holders of Claims or Interests may refer, to the accompanying Disclosure Statement for a discussion on the Debtors' history, businesses, assets, operations, historical financial information, valuation, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING, WITHOUT LIMITATION, UNDER ARTICLE IV HEREOF) IN FULL.

THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF AN INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION.  NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN, IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*.

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*1L Equity Distribution*" means the percentage of ~~New Interests~~the Prepetition Secured Equity Distribution equal to (a)(i) Total 1L Claims *divided by* (ii) Total 1L Claims *plus* Adjusted 2L Notes Claims *multiplied by* (b)(i) 100.00% of the New Interests *minus* (ii) the Drawn DIP TLC Equity Distribution~~, such percentage subject to dilution by the MIP and the New LC Equity Allocation~~.

2.      "*1L Indenture*" means that certain First Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as amended by the First Supplemental Indenture, dated as of July 17, 2023, and the Second Supplemental Indenture, dated as of August 25, 2023, and as may be further amended, amended

1

and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

3.    "*1L Notes*" means, collectively, (a) the 1L Series 1 Notes, (b) the 1L Series 2 Notes, and (c) the 1L Series 3 Notes.

4.    "*1L Notes Claims*" means any Claims arising under the 1L Notes.

5.    "*1L Pari Passu Intercreditor Agreement*" means that certain Amended and Restated Pari Passu Intercreditor Agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

6.    "*1L Series 1 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series I, issued by the Issuers under the 1L Indenture.

7.    "*1L Series 1 Notes Claims*" means any Claims arising under the 1L Series 1 Notes.

8.    "*1L Series 2 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series II, issued by the Issuers under the 1L Indenture.

9.    "*1L Series 2 Notes Claims*" means any Claims arising under the 1L Series 2 Notes.

10.   "*1L Series 3 Notes*" means those certain 15.00% First Lien Senior Secured PIK Notes due 2027, Series III, issued by the Issuers under the 1L Indenture.

11.   "*1L Series 3 Notes Claims*" means any Claims arising under the 1L Series 3 Notes.

12.   "*1L/2L/3L Intercreditor Agreement*" means that certain intercreditor agreement, dated as of May 5, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

13.   "*2L Collateral Agency Agreement*" has the meaning ascribed to it in the Cash Collateral Orders.

14.   "*2L Equity Distribution*" means the percentage of ~~New Interests~~the Prepetition Secured Equity Distribution equal to (a)(i) Adjusted 2L Notes Claims *divided by* (ii) Total 1L Claims plus Adjusted 2L Notes Claims *multiplied by* (b)(i) 100.00% of the New Interests *minus* (ii) the Drawn DIP TLC Equity Distribution~~, such percentage subject to dilution by the MIP and the New LC Equity Allocation~~.

15.   "*2L Exchangeable Indenture*" means that certain Second Lien Exchangeable Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as may be amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

16.   "*2L Exchangeable Notes*" means those certain 11.00% Second Lien Exchangeable Senior Secured PIK Notes due 2027 issued by the Issuers under the 2L Exchangeable Indenture.

17.   "*2L Exchangeable Notes Claims*" means any Claims arising under the 2L Exchangeable Notes.

18.　　"*2L Indenture*" means that certain Second Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as may be amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

19.　　"*2L Notes*" means, collectively, the 2L Secured Notes and the 2L Exchangeable Notes.

20.　　"*2L Notes Claims*" means any Claims arising under the 2L Notes.

21.　　"*2L Secured Notes*" means those certain 11.00% Second Lien Senior Secured PIK Notes due 2027 issued by the Issuers under the 2L Indenture.

22.　　"*2L Secured Notes Claims*" means any Claims arising under the 2L Secured Notes.

23.　　"*3L Collateral Agency Agreement*" has the meaning ascribed to it in the Cash Collateral Orders.

24.　　"*3L Exchangeable Indenture*" means that certain Third Lien Exchangeable Senior Secured PIK Notes Indenture, dated May 5, 2023 (as may be amended, amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, and U.S. Bank Trust Company, National Association, as trustee and as collateral agent.

25.　　"*3L Exchangeable Notes*" means those certain 12.00% Third Lien Exchangeable Senior Secured PIK Notes due 2027 issued by the Issuers under the 3L Exchangeable Indenture.

26.　　"*3L Indenture*" means that certain Third Lien Senior Secured PIK Notes Indenture, dated May 5, 2023 (as may be amended, amended and restated, or otherwise supplemented from time to time), by and among the Issuers, the guarantors party thereto from time to time, Delaware Trust Company (as successor to U.S. Bank Trust Company, National Association), as trustee, and U.S. Bank Trust Company, National Association, as collateral agent.

27.　　"*3L Notes*" means, collectively, the 3L Exchangeable Notes and the 3L Secured Notes.

28.　　"*3L Notes Claims*" means any Claims arising under the 3L Notes.

29.　　"*3L Secured Notes*" means those certain 12.00% Third Lien Senior Secured PIK Notes due 2027 issued by the Issuers under the 3L Indenture.

30.　　"*5.00% Unsecured Notes*" means those certain 5.00% Senior Notes due 2025, Series II, issued by the Issuers under the 5.00% Unsecured Notes Indenture.

31.　　"*5.00% Unsecured Notes Indenture*" means that certain Amended and Restated Senior Notes Indenture, dated as of December 16, 2021 (as it may be amended, supplemented, or otherwise modified from time to time), by and among the Issuers, the guarantors from time to time party thereto, and Computershare Trust Company, National Association (as successor to U.S. Bank Trust Company, National Association, as successor to U.S. Bank National Association, as successor to Wells Fargo Bank, National Association), as trustee.

32.　　"*7.875% Unsecured Notes*" means those certain 7.875% Senior Notes due 2025 issued by Issuers under the 7.875% Unsecured Notes Indenture.

33.     "*7.875% Unsecured Notes Indenture*" means that certain Senior Notes Indenture, dated of April 30, 2018 (as it may be amended, supplemented, or otherwise modified from time to time), by and among Issuers, the guarantors from time to time party thereto, and Computershare Trust Company, National Association (as successor to U.S. Bank Trust Company, National Association, as successor to U.S. Bank National Association, as successor to Wells Fargo Bank, National Association), as trustee.

34.     "*Ad Hoc Group*" means the ad hoc group of Holders (or beneficial owners) of, or investment advisors, sub-advisors, or managers of discretionary accounts or funds that hold (or beneficially own), Secured Notes Claims, and that is represented by the Ad Hoc Group Professionals.

35.     "*Ad Hoc Group Professionals*" means Davis Polk & Wardwell LLP, as counsel, Ducera Partners LLC, as financial advisor, Greenberg Traurig, LLP, as local co-counsel, Freshfields Bruckhaus Deringer LLP, as foreign co-counsel, and any other special or local counsel or advisors providing advice to the Ad Hoc Group in connection with the Restructuring Transactions.

36.     "*Adjusted 2L Notes Claims*" means the total aggregate amount of 2L Notes Claims excluding, for the avoidance of doubt, any postpetition interest or fees, multiplied by 70.00%.

37.     "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed DIP Administrative Claims; (c) Allowed Professional Fee Claims; (d) the Restructuring Expenses; (e) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (f) any adequate protection claims provided for in the Cash Collateral Orders.

38.     "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Effective Date for Administrative Claims other than Professional Fee Claims and (b) 45 days after the Effective Date for Professional Fee Claims.

39.     "*Administrative Claims Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims required to File a Proof of Claim form, which shall be the first Business Day that is 60 days following the Effective Date; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

40.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.  "*Affiliated*" has a correlative meaning.

41.     "*Agent*" means any collateral agent or trustee, administrative agent, lien agent, term agent, indenture trustee, or similar Entity under the Prepetition LC Credit Agreement, Indentures, DIP Documents, Exit LC Facility Documents, or similar agreements, including any successors thereto.

42.     "*Agent Professionals*" means any counsel or advisors providing advice to the Agents in connection with the Restructuring Transactions.

43.     "*Allowed*" means, with respect to a Claim or Interest, any Claim or Interest (or portion thereof) against any Debtor that, except as otherwise provided in this Plan:  (a) is evidenced by a Proof of Claim or Proof of Interest or request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Claims Bar Date; (b) is not listed in the schedules as contingent, unliquidated,

or disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) is allowed, compromised, settled, or otherwise resolved pursuant to the terms of this Plan, in a Final Order of the Bankruptcy Court, in any stipulation that is approved by a Final Order of the Bankruptcy Court, or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith. For the avoidance of doubt, any Claim or Interest (or portion thereof), that has been disallowed pursuant to a Final Order shall not be an "Allowed" Claim; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if, and to the extent that, it is not Disputed and the period to object to such Claim or Interest has expired. Any Claim that has been or is hereafter listed in the schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. Any Claim or Interest that has been or is hereafter categorized as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Proof of Interest, as applicable, is or has been timely Filed, is not considered Allowed, as set forth in this Plan and the Confirmation Order. For the avoidance of doubt, a Proof of Claim or Proof of Interest Filed after the applicable Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "*Allow*," "*Allowing*," and "*Allowance*" shall have correlative meanings.

44.    "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims and Causes of Action, or remedies that may be brought by, or on behalf of, the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar Law.

45.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

46.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey presiding over the Chapter 11 Cases, or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 151.

47.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

48.    "*Bar Date Order*" means any Final Order entered pursuant to the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code; (II) Establishing an Amended Schedules Bar Date, a Rejection Damages Bar Date, and a Stub Rent Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief* [Docket No. 1108] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

49.     "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York or country of Japan.

50.     "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

51.     "*Cash Collateral Documents*" means the Cash Collateral Orders, the Cash Collateral Motion, any collateral, security, or other documentation related thereto, and any budgets (including initial and subsequent budgets) related thereto, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

52.     "*Cash Collateral Final Order*" means the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 428], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

53.     "*Cash Collateral Interim Order*" means the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 103], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

54.     "*Cash Collateral Motion*" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Related Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 43], which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

55.     "*Cash Collateral Orders*" means, collectively, the Cash Collateral Interim Order, the Cash Collateral Final Order, and any other orders entered in the Chapter 11 Cases authorizing the Debtors' use of cash collateral, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

56.     "*Cash Election*" means a pool of value including $[●] in Cash to be distributed in accordance with Article III.

57.     ~~56.~~ "*Causes of Action*" means, collectively, any and all claims, interests, controversies, actions, proceedings, reimbursement claims, contribution claims, recoupment rights, debts, third-party claims, indemnity claims, damages, remedies, causes of action, demands, rights, suits, obligations, liabilities, accounts, judgments, defenses, offsets, powers, privileges, licenses, franchises, Liens, guaranties, Avoidance Actions, agreements, counterclaims, and cross-claims, of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, whether arising before, on, or after

the Petition Date, in tort, Law, equity, or otherwise pursuant to any theory of civil Law (whether local, state, or federal U.S. Law or non-U.S. Law).  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any Claim (whether under local, state, federal U.S. Law or non-U.S. civil Law) based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction Law, violation of local, state, or federal non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws and negligence; (c) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

58.    57. "*Chapter 11 Cases*" means:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

59.    58. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

60.    59. "*Claim Objection*" means an objection to the allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding omnibus claims objections.

61.    60. "*Claims Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases [Docket No. 91].

62.    61. "*Claims Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed, as established by:  (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

63.    62. "*Claims Register*" means the official register of Claims maintained by the Claims Agent or the clerk of the Bankruptcy Court.

64.    63. "*Class*" means a class of Claims or Interests as set forth in Article III of this Plan pursuant to section 1122(a) and 1123(a)(1) of the Bankruptcy Code.

65.    "*Combined Hearing*" means the combined hearing held by the Bankruptcy Court to consider Confirmation, pursuant to Bankruptcy Rules 3017 and 3020(b)(2) and sections 1125, 1128, and 1129 of the Bankruptcy Code, and final approval of the Disclosure Statement, as such hearing may be continued from time to time.

66.    64. "*Compensation and Benefits Programs*" means all employment, change-in-control agreements, and [severance agreements] and policies, and all employment, wages, compensation, and benefit plans and policies, staffing agencies and independent contractor obligations, workers' compensation programs, retirement plans, savings plans, bonus and incentive programs (whether cash or equity based), reimbursable expenses, paid leave benefits, retention programs, additional benefits programs (including any fringe benefits or perquisites), payroll vendor obligations, healthcare plans, disability plans, COBRA plans, severance benefit plans and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and

7

non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

67.    65. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

68.    66. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

67. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

69.    68. "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan and approving the Disclosure Statement on a final basis, pursuant to sections 1125 and 1129 of the Bankruptcy Code, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

70.    69. "*Consenting Stakeholders*" has the meaning set forth in the RSA.

71.    70. "*Consummation*" means the occurrence of the Effective Date.

72.    71. "*Controlled Subsidiary*" means any subsidiary controlled by the Debtors in a manner that allows the Debtors to legally control whether such subsidiary initiates an Insolvency Proceeding.

73.    72. "*Corporate Governance Term Sheet*" means that certain corporate governance term sheet, which shall be subject to the consent of Cupar, included in the Plan Supplement and setting forth the terms of the New Corporate Governance Documents as may be modified, supplemented, or amended in accordance with the terms hereof and thereof, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

74.    73. "*Court-Ordered Cure Obligation*" means, as determined and ordered by the Bankruptcy Court, any Cure Obligation with respect to any Executory Contract or Unexpired Lease that varies from the Cure Obligations set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases.

75.    74. "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 150] on November 16, 2023, as may be reconstituted from time to time.

76.    75. "*Creditors' Committee Member*" means each Entity that is a member of the Creditors' Committee.

77.    76. "*Cupar*" means Cupar Grimmond, LLC, a Delaware limited liability company.

78.    77. "*Cupar Professionals*" means Cooley LLP, as counsel, and Piper Sandler & Co., as financial advisor, and any other advisors providing advice in connection with the Restructuring

8

Transactions and pursuant to an engagement letter approved by the Debtors in their discretion in consultation with the Required Consenting Stakeholders.

79.    78. "*Cure Claim*" means a monetary Claim based upon any Debtor's defaults under an Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is required to be cured pursuant to section 365 of the Bankruptcy Code.

80.    79. "*Cure Obligation*" means, collectively, all (a) Cure Claims and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

81.    80. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") that have been issued at any time covering any of the Debtors' current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

82.    81. "*Debt Documents*" means, collectively, the Prepetition LC Facility Documents, the Notes, the Indentures, the 1L/2L/3L Intercreditor Agreement, the 1L Pari Passu Intercreditor Agreement, the 2L Collateral Agency Agreement, the 3L Collateral Agency Agreement, the Postpetition Financing Documents, and any other agreements, instruments, pledge agreements, intercreditor agreements, guarantees, fee letters, control agreements, and other ancillary documents related thereto (including any security agreements, intellectual property security agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time).[2]

83.    82. "*Debtor Release*" means the release given by the Debtors to the Released Parties as set forth in Article VIII.C of this Plan.

84.    83. "*Definitive Chapter 11 Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement, effectuate, or that otherwise relate to, the Restructuring Transactions, including:  (a) the Postpetition Financing Documents; [(b) the Rights Offering Documents (if any);] (c) the Exit LC Facility Documents; (d) the Exit Equity Commitment Documents (d) the New Corporate Governance Documents; (e) any documents in connection with any First Day Pleadings or "second day" pleadings and all orders sought pursuant thereto (including the First Day Pleadings) and First Day Orders; (f) this Plan; (g) the Confirmation Order and any pleadings Filed by the Debtors in support of entry thereof; (h) the Disclosure Statement and Solicitation Materials (including any motion seeking either approval of the Disclosure Statement or combined or conditional approval of the Disclosure Statement and/or Plan); (i) the Disclosure Statement Order; (j) any "key employee" retention or incentive plan and any motion or order related thereto; (k) the Restructuring Transactions Exhibit and Ruling Request, if any; (l) the Plan Supplement; (m) any material agreements, settlements, motions, pleadings, briefs, applications, orders, and other filings with the Bankruptcy Court with respect to the rejection, assumption and/or assumption and assignment of Executory Contracts and/or Unexpired Leases; (n) if applicable, any sale order and any other motions, proposed orders, and definitive documentation, including any purchase agreement or procedures, related

---

[2]    For the avoidance of doubt, "Exit LC Facility Documents" should not be considered "Debt Documents" for purposes of this definition.

to the sale of all or substantially all of the assets of the Debtors taken as a whole; (o) any other material (with materiality determined in the reasonable discretion of the Debtors ~~with~~subject to the consent ~~of counsel to the Consenting Stakeholders, such consent not to be unreasonably withheld or delayed~~rights set forth in the RSA) agreements, settlements, applications, motions, pleadings, briefs, orders, and other filings with the Bankruptcy Court (including any documentation related to any equity or debt investment or offering with respect to any Debtors) that may be reasonably necessary or advisable to implement the Restructuring Transactions; and (p) any pleadings that impose or seek authority to impose sell-down orders or restrictions on the ability of the Consenting Stakeholders or other parties to trade any of the Debtors' securities, each of which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and may be modified, supplemented, or amended only in accordance with the RSA.

85.    ~~84.~~ "*Definitive Documents*" means, collectively, the Definitive Chapter 11 Documents and the Definitive Insolvency Documents, which shall be consistent in all respects with the RSA, including the consent rights set forth therein.

86.    ~~85.~~ "*Definitive Insolvency Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Restructuring Transactions, in connection with any Insolvency Proceeding other than the Chapter 11 Cases, each of which shall be (except as otherwise set forth herein) ~~in form and substance acceptable to the Debtors and the Required Consenting Stakeholders~~subject to the consent rights set forth in the RSA, including: (a) a certified copy of the decision commencing such Insolvency Proceeding or any analogous procedure under applicable law; (b) where applicable, an order of the relevant court in which each Insolvency Proceeding has been filed, giving orders for directions with respect to, among other things (if applicable), the convening of creditor and/or member meetings to vote on the relevant Foreign Plan; (c) any Foreign Plan; (d) where applicable, an order of the relevant court in which each Insolvency Proceeding has been filed sanctioning the relevant Foreign Plan; and (e) any other material document, deed, agreement, Filing, notification, letter, or instrument necessary or desirable entered into by a Debtor or Consenting Stakeholder in connection with the relevant Foreign Plan or Insolvency Proceeding and referred to in (a) above (including, for the avoidance of doubt, documents described in the explanatory statement relevant to any Insolvency Proceeding); *provided* that each of the foregoing shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and may be modified, supplemented, or amended only in accordance with the RSA; *provided*, *further*, that notwithstanding the foregoing, any monthly or quarterly operating reports, retention applications, fee applications, fee statements, and declarations in support thereof or related thereto shall not constitute Definitive Documents.

87.    ~~86.~~ "*DIP Administrative Claim*" means a DIP TLC Fee Claim.

88.    ~~87.~~ "*DIP Agents*" means, collectively, the DIP LC/TLC Agent[ and the DIP New Money Agent (if any)].

89.    ~~88.~~ "*DIP Agreements*" means, collectively, the DIP LC/TLC Credit Agreement[ and the DIP New Money Credit Agreement (if any)].

90.    ~~89.~~ "*DIP Claim*" means, any and all Claims arising under the DIP Documents, including the DIP Administrative Claims, the Drawn DIP TLC Claims, and the Undrawn DIP TLC Claims.

10

91.   90. "*DIP Documents*" means, collectively, the DIP LC/TLC Documents, the DIP Order[, and the DIP New Money Documents (if any)].

92.   91. "*DIP Facilities*" means, collectively, the DIP LC Facility, the DIP TLC Facility[, and the DIP New Money Facility (if any)].

93.   92. "*DIP LC Facility*" means that certain senior secured, first priority cash collateralized debtor-in-possession "first out" letter of credit facility provided by the DIP LC Issuers in an aggregate amount not to exceed $650,000,000 on the terms of, and subject to the conditions set forth in, the DIP LC/TLC Credit Agreement and approved by the Bankruptcy Court pursuant to the DIP LC/TLC Order.

94.   93. "*DIP LC Issuers*" Goldman Sachs International Bank and JPMorgan Chase Bank, N.A.

95.   94. "*DIP LCs*" means the letters of credit issued, rolled, replaced, reissued, amended, extended, renewed, or otherwise continued by the DIP LC Issuers under the DIP LC Facility.

96.   95. "*DIP LC/TLC Agent*" means, collectively, pursuant to the DIP LC/TLC Credit Agreement, Goldman Sachs International Bank as senior LC facility administrative agent, shared collateral agent, and additional collateral agent, JPMorgan as the additional collateral agent, SVF II as the junior TLC facility administrative agent, and any of their successors or assigns.

97.   96. "*DIP LC/TLC Credit Agreement*" means that certain senior secured debtor-in-possession credit agreement (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) entered into as of December 19, 2023, by and among WeWork Companies U.S. LLC, as borrower, Goldman Sachs International Bank, as senior LC facility administrative agent, shared collateral agent, issuing bank, additional collateral agent, sole structuring agent, joint lead arranger, joint bookrunner, JPMorgan, as issuing bank, additional collateral agent, joint lead arranger, joint bookrunner, SVF II as junior TLC facility lender and junior TLC facility administrative agent, SVF II GP (Jersey) Limited, as general partner of SVF II, and SB Global Advisors Limited, as manager of SVF II.

98.   97. "*DIP LC/TLC Documents*" means, collectively, the DIP LC/TLC Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, fee letters, and other Credit Documents (as defined in the DIP LC/TLC Credit Agreement) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time).

99.   98. "*DIP LC/TLC Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 427].

100.   99. "*DIP Lenders*" means, collectively, the DIP LC Issuers, the DIP TLC Lender[, and the DIP New Money Lenders (if any)].

101.   100. ["*DIP New Money Agent*" means the Agent(s) (if any) in its capacity as such, under the DIP New Money Credit Agreement (if any).]

102.   "*DIP New Money AHG Lenders*" those members of the Ad Hoc Group that are DIP New Money Lenders.

103.   101. ["*DIP New Money Claim*" means any Claims (if any) on account of the Obligations (as defined in the DIP New Money Documents, and including any interest, premiums, fees, or other amounts owed thereunder) due or payable as of the Effective Date under the DIP Documents attributable to the DIP New Money Facility (if applicable).]

104.   102. ["*DIP New Money Credit Agreement*" means the debtor-in-possession credit agreement (if any), to be entered into, as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, as set forth in the Plan Supplement, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

105.   103. ["*DIP New Money Documents*" means, collectively, the DIP New Money Credit Agreement (if any) and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, fee letters, and other Credit Documentation (as defined in the DIP New Money Order) (if any), to be entered into, and documents related thereto (as amended, amended and restated, supplemented, waived, and/or modified from time to time), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

106.   104. ["*DIP New Money Facility*" means the facility (if any), to be entered into, provided by the DIP New Money Lenders on the terms of, and subject to the conditions set forth in, the DIP New Money Credit Agreement (if any) and the RSA and approved by the Bankruptcy Court pursuant to the DIP New Money Order (if any); *provided* that, to the extent that the opportunity to participate as DIP New Money Lenders is offered to a Class of Holders of Claims, such opportunity to participate shall be offered to the Holders of such Class on a Pro Rata basis.]

107.   105. ["*DIP New Money Lenders*" means the lender(s) (if any), each in its capacity as such, under the DIP New Money Facility, the identity of which shall be acceptable to the Required Consenting Stakeholders.]subject to the consent rights set forth in the RSA.

108.   106. ["*DIP New Money Order*" means any interim order or Final Order entered by the Bankruptcy Court approving the DIP New Money Facility (if any), which shall be acceptable to the Required Consenting Stakeholderssubject to the consent rights of the RSA, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

109.   107. "*DIP Orders*" means, collectively, the DIP LC/TLC Order[ and the DIP New Money Order (if any)], which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

110.   108. "*DIP TLC Claims*" means all Claims of the DIP TLC Lender arising under, derived from, or based upon the DIP LC/TLC Documents, including Claims for all Junior TLC Facility Credit Document Obligations (as defined in the DIP LC/TLC Credit Agreement), including, but not limited to, all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under the DIP LC/TLC Credit Agreement.

111.   109. "*DIP TLC Facility*" means that certain first priority debtor-in-possession "last out" term loan C facility provided by the DIP TLC Lender in an aggregate principal amount of

$671,237,045.94 on the terms of, and subject to the conditions set forth in, the DIP LC/TLC Credit Agreement and approved by the Bankruptcy Court pursuant to the DIP LC/TLC Order.

112.    110. "*DIP TLC Fee Claims*" means any Claims arising from the fees and expenses owing to the DIP TLC Lender under the DIP TLC Facility, including reasonable and documented professionals' fees, which Claims are Allowed super-priority administrative expenses pursuant to the DIP LC/TLC Order.

113.    "*DIP TLC Fee Equity Distribution*" means the percentage of New Interests equal to the amount of DIP TLC Fee Claims *divided by* the sum of (i) DIP TLC Fee Claims and (ii) $1 billion.

114.    111. "*DIP TLC Lender*" means SVF II in its capacity as the junior TLC facility lender under the DIP TLC Facility.

115.    112. "*Disbursing Agent*" means, as applicable, the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or to facilitate distributions, allocations, and/or issuances in accordance with, and pursuant to, this Plan.

116.    113. "*Disclosure Statement*" means the disclosure statement relating to this Plan, as may be amended, supplemented, or modified from time to time, including all exhibits, schedules, appendices, related documents, ballots, notices, and procedures related to the solicitation of votes to accept or reject this Plan, in each case, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law, to be approved pursuant to the Disclosure Statement Order, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

117.    114. "*Disclosure Statement Order*" means the order (and all exhibits thereto), entered by the Bankruptcy Court, conditionally approving the Disclosure Statement and the Solicitation Materials, and allowing solicitation of this Plan to commence, including any Final Order related thereto, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

118.    115. "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof): (a) that is not Allowed; (b) that is not disallowed by this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

119.    116. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, subject to the requirements of any Foreign Proceeding that satisfies the consent rights with respect thereto set forth in the RSA, upon which the Disbursing Agent shall, as soon as reasonably practicable after receipt thereof, make distributions to Holders of Allowed Claims and/or Allowed Interests (as and if applicable) entitled to receive distributions under this Plan.

120.    117. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under this Plan, which date shall be the Confirmation Date, or such other date as agreed to by the Debtors,

and the Required Consenting Stakeholders.  The Distribution Record Date shall not apply to Securities of the Debtors deposited with DTC or another similar securities depository, the Holders of which shall receive a distribution in accordance with Article VI of this Plan and, as applicable, the customary procedures of DTC or another similar securities depository.

121.   118. "*Drawn DIP TLC Claims*" means a portion of the DIP TLC Claims in an amount equal to the principal face amount due or payable under the DIP LC Facility attributable to DIP LCs that have been drawn prior to the Effective Date to the extent the beneficiary thereof has not returned the proceeds of such draw to an LC Cash Collateral Account (as defined in the DIP LC/TLC Credit Agreement) prior to the Effective Date.

122.   119. "*Drawn DIP TLC Equity Distribution*" means a percentage of New Intereststhe Prepetition Secured Equity Distribution equal to:  (i) the amount of Equitized Drawn DIP TLC Claims *divided by* the sum of Total 1L Claims, Equitized Drawn DIP TLC Claims, and Adjusted 2L Notes Claims and (ii) *multiplied by* 2.00, such percentage subject to dilution by the MIP and the New LC Equity Allocation.

123.   120. "*DTC*" means The Depository Trust Company, a New York corporation.

124.   121. "*Effective Date*" means the first Business Day after the Confirmation Order is entered on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of this Plan and (b) this Plan is declared effective by the Debtors.

125.   122. "*Emergence Awards*" means the awards that may be allocated on or prior to the Effective Date as emergence grants to retain and recruit individuals selected to serve in key senior management positions on or after the Effective Date, subject to the terms and conditions, including, but not limited to, with respect to form, allocated percentage of the MIP, structure, and vesting, as more fully set forth in the Plan Supplement and subject to the consent of the Required Consenting Stakeholdersrights set forth in the RSA.

126.   123. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

124. ["*Equitized Drawn DIP TLC Claim*" means an amount of Drawn DIP TLC Claims equal to the total amount of Drawn DIP TLC Claims *minus* the Rolled Drawn DIP TLC Claims.]

127.   125. "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

128.   "*Equity Election*" means a pool of value equal to [●]% of the New Interests subject to dilution on account of the New Money Equity Distribution, the MIP, and the DIP TLC Fee Equity Distribution, to be distributed in accordance with Article III.

129.   126. ["*Excess DIP TLC Claims*" means the portion of the DIP TLC Claims in an amount equal to (a) the DIP TLC Claims *minus* (b) the Drawn DIP TLC Claims *minus* (c) the Rolled Undrawn DIP TLC Claims.]

130.   ~~127.~~ "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; and (c) with respect to each of the foregoing Entities in clauses (a) through (b), each of the Related Parties of such Entity [(excluding [●])].[3]

131.   ~~128.~~ "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

132.   ~~129.~~ "*Existing Board Members*" means each member of the board of directors (or similar governing body, if applicable) of the Debtors who holds such position between the Petition Date and immediately prior to the Effective Date.

133.   ~~130.~~ [*"Exit ~~Facilities~~* ~~means, collectively, the Exit LC Facility[, the Exit New Money Facility (if any),] and the Exit TLC Facility.~~ *Commitment Netting Transaction*" means the agreement pursuant to which (i) Cupar shall transfer New Interests constituting 3% of the New Interests on a post-dilution basis, and (ii) the SoftBank Parties shall transfer New Interests constituting 3% of the New Interests on a post-dilution basis, both to the DIP New Money AHG Lenders, which transfers shall be effectuated by the Debtors through distributions of New Interests to the DIP New Money AHG Lenders on the Effective Date; *provided, however*, that such agreement shall be subject to the Corporate Governance Term Sheet.]

134.   ~~131.~~ "*Exit ~~Facility Agents~~* ~~means, collectively, the Exit LC Facility Agent[,~~ *Equity Commitment*" means the commitment of the DIP New Money Lenders (if any) to purchase the Exit New Money ~~Facility Agent (if any),] and~~ Shares in exchange for the Exit ~~TLC Facility Agent~~ Equity Commitment Consideration.

135.   ~~132.~~ "*Exit ~~Facility~~ Equity Commitment Documents*" means~~, collectively, the Exit LC Facility Documents, the Exit New Money Facility Documents (if any), and the Exit TLC Facility Documents, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA; *provided* that, for the avoidance of doubt, it is understood and agreed that one set of Exit Facility Documents may evidence multiple Exit Facilities.~~ the material documents governing the Exit Equity Commitment (if any), Exit Equity Commitment Consideration (if any), and Exit New Money Shares (if any), and any motions filed or orders entered approving the entry into the transactions and documents relating thereto.

136.   "*Exit Equity Commitment Consideration*" means an amount of Cash equal to $[400] million.

137.   ~~133.~~ "*Exit ~~Facility Lenders~~ Financing Documents*" means~~, collectively,~~ the Exit LC Facility ~~Lender[, the Exit New Money Facility Lender (if any)], the Exit LC Facility Issuing Banks, and the Exit TLC Facility Lender~~ Documents and Exit Equity Commitment Documents (if any).

138.   ~~134.~~ "*Exit LC Credit Agreement*" means the letter of credit agreement (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) to be provided on the Effective Date, as set forth in the Plan Supplement, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the

---

[3] For the avoidance of doubt, all exculpations remain subject to the ongoing investigation of the special committee of independent directors of the board.

consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

139. 135. "*Exit LC Facility*" means the letter of credit facility, to be provided by the Exit LC Facility Lender and the Exit LC Facility Issuing Banks on the terms of, and subject to the conditions set forth in, the Exit LC Credit Agreement.

140. 136. "*Exit LC Facility Agents*" means, the Agent(s) in its capacity as such, under the Exit LC Credit Agreement.

141. 137. "*Exit LC Facility Documents*" means, collectively, the Exit LC Credit Agreement, collateral documents, mortgages, deeds of trust, Uniform Commercial Code statements, and other loan documents governing the Exit LC Facility, the material documents of which shall be included in the Plan Supplement, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

142. 138. "*Exit LC Facility Issuing Banks*" means the issuing banks, in their capacity as such under the Exit LC Facility.

143. 139. "*Exit LC Facility Lender*" means the lender(s), in its capacity as such, under the Exit LC Facility.

140. ["*Exit New Money Credit Agreement*" means the credit agreement (if any) (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time) to be provided by the Exit New Money Facility Lender on the Effective Date, as set forth in the Plan Supplement, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

141. ["*Exit New Money Facility*" means the facility to be provided by the Exit New Money Facility Lender (if any) on the terms of, and subject to the conditions set forth in, the Exit New Money Credit Agreement.]

142. ["*Exit New Money Facility Agent*" the Agent(s) (if any), in its capacity as such, under the Exit New Money Credit Agreement.]

143. ["*Exit New Money Facility Documents*" means, collectively, the Exit New Money Credit Agreement (if any), collateral documents, mortgages, deeds of trust, Uniform Commercial Code statements, and other loan documents governing the Exit New Money Facility, the material documents of which shall be included in the Plan Supplement, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

144. ["*Exit New Money Facility Lender*" means the lender(s) (if any), in its capacity as such, under the Exit New Money Facility.]*Shares*" means 80% of the New Interests, subject to dilution on account of the New Money Equity Distribution (if any), the MIP, the Equity Election, and the DIP TLC Fee Equity Distribution.

145. "*Exit TLC Credit Agreement*" means the term loan C credit agreement, to be entered into, in an amount not to exceed [the amount of Rolled Drawn DIP TLC Claims], *plus* the amount of DIP TLC

16

~~Fee Claims, to be entered into on the Effective Date on the following terms and conditions: (i) 8.5% fixed rate cash interest, paid quarterly; (ii) 4 year tenor; (iii) no call protection; (iv) free transferability but must be sold in its entirety; (v) customary covenants; (vi) first lien claim on all assets, ranking *pari passu* with the Exit LC Facility (including *pari passu* at each guarantor entity); and (vii) such other terms and conditions as are agreed by the Required Consenting Stakeholders, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.~~

~~146. "*Exit TLC Facility*" means the term loan facility to be provided by the Exit TLC Facility Lender on the terms of, and subject to the conditions set forth in, the Exit TLC Credit Agreement.~~

~~147. "*Exit TLC Facility Agent*" means, the Agent(s) in its capacity as such, under the Exit TLC Credit Agreement.~~

~~148. "*Exit TLC Facility Documents*" means, collectively, the Exit TLC Credit Agreement, collateral documents, mortgages, deeds of trust, Uniform Commercial Code statements, and other loan documents governing the Exit TLC Facility, the material documents of which shall be included in the Plan Supplement, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.~~

~~149. "*Exit TLC Facility Lender*" means the Softbank Parties and such other institutions and Entities that may, from time to time, become lenders under the Exit TLC Facility in their capacity as lenders under the Exit TLC Facility.~~

145. ~~150.~~ "*Extension Order*" means any Final Order entered by the Bankruptcy Court extending the time for performance under any deadlines by which the Debtors must assume or reject Unexpired Leases.

146. ~~151.~~ "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

147. ~~152.~~ "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

148. ~~153.~~ "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken; or as to which, any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

149. ~~154.~~ "*First Day Orders*" means, as applicable, any orders of the Bankruptcy Court with respect to the First Day Pleadings that has not been reversed, modified, or amended, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including

17

the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

150.    155. "*First Day Pleadings*" means the motions, declarations, pleadings and all other documents requesting certain emergency relief, or supporting the request for such relief, Filed by the Debtors on or around the Petition Date and heard at the "first day" hearing, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

151.    156. "*Foreign Plan*" means any voluntary plan, scheme, arrangement, or similar restructuring plan that is administered or implemented through a Foreign Proceeding.

152.    157. "*Foreign Proceeding*" means a "foreign main proceeding" or "foreign nonmain proceeding," as those terms are defined in section 1502 of the Bankruptcy Code, including any Insolvency Proceeding, to the extent applicable.

153.    158. "*General Unsecured Claim*" means any unsecured Claim against any of the Debtors, other than:    (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Section 510(b) Claim; (e) an Intercompany Claim; (f) any Go-Forward Guaranty Claim; (g) any other Secured Claim; (g) (h) an Unsecured Notes Claim; (h) (i) any other Claim that is subordinated or entitled to priority under the Bankruptcy Code or any other Final Order of the Bankruptcy Court; or (i) (j) any Claim paid in full prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court.  For the avoidance of doubt, General Unsecured Claims include (I) unsecured Claims resulting from the rejection of Executory Contracts and Unexpired Leases, (II) unsecured Claims resulting from litigation against one or more of the Debtors, and (III) unsecured Claims resulting from deficient collateral securing otherwise Secured Claims (if any).

154.    "*Go-Forward Guaranty Claims*" means the Claims of any creditor on account of the guaranty obligations of any of the Debtors that are necessary for the business operations of any of the Debtors, their Affiliates, or franchisees, which shall be set forth in an exhibit to the Plan Supplement, and which shall be Reinstated.

155.    159. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

156.    160. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

157.    161. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

158.    162. "*Indentures*" means, collectively, the Secured Notes Indentures and the Unsecured Notes Indentures.

159.    163. "*Initial Consenting AHG Noteholders*" means those Consenting AHG Noteholders (as defined in the RSA) who executed the RSA.

160.    164. "*Insolvency Proceeding*" means any corporate action, legal proceeding, or other procedure or step (including commencing any Foreign Proceeding) taken in any jurisdiction in relation to: (a) the suspension of payments, a moratorium of any indebtedness, winding-up, bankruptcy, liquidation,

18

dissolution, administration, receivership, administrative receivership, judicial composition, or reorganization (by way of voluntary arrangement, scheme, or otherwise) of any Debtor (or any of its Controlled Subsidiaries), including under the Bankruptcy Code or any Foreign Proceeding; (b) a composition, conciliation, compromise, or arrangement with the creditors generally of any Debtor (or any of its Controlled Subsidiaries) or an assignment by any Debtor (or any of its Controlled Subsidiaries) of its assets for the benefit of its creditors generally or any Debtor (or any of its Controlled Subsidiaries) becoming subject to a distribution of its assets; (c) the appointment of a liquidator, receiver, administrator, administrative receiver, compulsory manager, or other similar officer in respect of any Debtor (or any of its Controlled Subsidiaries) or any of its assets; (d) the enforcement of any security over any assets of any Debtor (or any of its Controlled Subsidiaries); (e) any request for recognition of a Foreign Proceeding such as under chapter 15 of the Bankruptcy Code; or (f) any procedure or step in any jurisdiction analogous to those set out in paragraphs (a) to (e) above.

161.   165. "*Intercompany Claim*" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor; *provided* that for the avoidance of doubt, any Claim held by any SoftBank Parties or their non-Debtor Affiliates against any Debtor or its non-SoftBank Party Affiliates, and any Claim held by any Debtor or its non-SoftBank Party Affiliates against any SoftBank Parties or their non-Debtor Affiliates, shall not be an Intercompany Claim.

162.   166. "*Intercompany Interest*" means any Interest in one Debtor or Affiliate of a Debtor held by another Debtor or Affiliate of a Debtor; *provided* that for the avoidance of doubt, any Interest held by any SoftBank Parties or their non-Debtor Affiliates in any Debtor or its non-SoftBank Party Affiliates, and any Interest held by any Debtor or its non-SoftBank Party Affiliates in any SoftBank Parties or their non-Debtor Affiliates, shall not be an Intercompany Interest.

163.   167. "*Interests*" means collectively, any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any shares (or any class thereof) of common stock or preferred stock, general or limited partnership interests, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, stock-settled restricted stock units, cash-settled restricted stock units, or other securities or agreements (including registration rights agreements) to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of common stock or preferred stock, general or limited partnership interests, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security), or any Claim against, or Interest in, the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

164.   168. "*IRS*" means the United States Internal Revenue Service.

165.   169. "*Issuers*" means, as applicable, WeWork Companies U.S. LLC, as successor to WeWork Companies LLC, WW Co-Obligor Inc., and any applicable successors thereto in their capacity as issuers under the relevant Indentures.

166.   "*Japan/India Sales*" means those certain transactions contemplated by the Debtors and/or their Affiliates involving certain business operations in Japan and India.

167.   170. "*JPMorgan*" means JPMorgan Chase Bank, N.A. and certain of its affiliates.

168.   ~~171.~~ "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

169.   ~~172.~~ "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, treaty, duty, requirement, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

170.   ~~173.~~ "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

171.   ~~174.~~ ["*MIP*" means an equity incentive plan, ~~as approved by the New Board, becoming effective on or after the Effective Date, providing for the issuance, from time to time, of equity and equity-based awards with respect to the New Interests, as approved by the New Board.~~that will (i) reserve up to [●]% of the New Common Stock (determined on a fully diluted and fully distributed basis) for awards to management (the "Pool"), and (ii) provide for the grant as of the Effective Date of up to 100% of the Pool to members of management selected by the New Board in the form of restricted stock unit awards (or the equivalent) vesting in ratable annual installments on each of the first three anniversaries of the Effective Time, and (iii) include other terms and conditions determined by the New Board.  The amount of the Pool will not be subject to dilution from common stock issued to Softbank or its affiliates at or after the Emergence Date on account of the cash collateral assigned to the Debtors.]

172.   ~~175.~~ "*New Board*" means the new board of directors or managers of Reorganized WeWork or each of the Reorganized Debtors (if applicable and as the context requires)—selected in accordance with the terms of the Corporate Governance Term Sheet—the identities of which shall be identified in the Plan Supplement (if known at the time of its Filing).

173.   ~~176.~~ "*New Corporate Governance Documents*" means the form of documents providing for the corporate governance of the Reorganized Debtors, which may include any forms of certificate, articles of incorporation, bylaws, limited liability company agreement, partnership agreement, shareholders' agreement, and such other forms of applicable formation documents, organizational, and governance documents (if any) of the Reorganized Debtors, each of which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

174.   ~~177.~~ "*New Interests*" means the common stock (or other equity interests) of Reorganized WeWork to be issued on or after the Effective Date in accordance with this Plan.

~~178. "*New LC Equity Allocation*" means New Interests equal to 1.25% of the total New Interests.~~

175.   ~~179.~~ ["*New Money Equity Distribution*" means, collectively, the percentage of New Interests that may be distributed on account of the Rights Offering Shares (if any) and other distributions of New Interests (if any) distributed on account of new money investment ~~with the consent of the Required Consenting Stakeholders~~, which percentage shall be subject to the consent ~~of the Required Consenting Stakeholders.]~~rights set forth in the RSA.

176.   ~~180.~~ "*New Stockholders Agreement*" means the definitive stockholders agreement or other applicable agreement (including all annexes, exhibits, and scheduled thereto) governing the New Interests, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

177.    181. "*Notes*" means, collectively, the Secured Notes and the Unsecured Notes.

178.    182. "*Notes Exchange Transactions*" means, collectively, the recapitalization transactions by and among, *inter alia*, the Debtors, the Ad Hoc Group, SoftBank, and Cupar, consummated in May 2023.

179.    183. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

180.    184. "*Other Secured Claim*" means any Secured Claim other than:  (a) the Prepetition LC Facility Claims; (b) the Secured Notes Claims; (c) the Prepetition LC Subrogation Claims; or (d) the Priority Tax Claims (solely to the extent they are Secured Claims).

181.    185. "*Parent Interests*" means, collectively, all Interests in WeWork Parent outstanding immediately prior to the Effective Date.

182.    186. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

183.    187. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

184.    188. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities in accordance with this Plan.

185.    189. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case acceptable to the Required Consenting Stakeholders subject to the consent rights set forth in the RSA and as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the RSA, the Bankruptcy Code, and the Bankruptcy Rules) that will be Filed by the Debtors with the Bankruptcy Court, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, which shall include: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the Exit LC Facility Documents; (e) the New Corporate Governance Documents; (f) any Ruling Request; (g) the Restructuring Transactions Exhibit (which, for the avoidance of doubt, shall remain subject to modification in accordance with the RSA until the Effective Date); (h) the Rights Offering Documents (if any); and (i) any other necessary documentation relating to the Restructuring Transactions, all of which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

186.    190. "*Postpetition Financing Documents*" means, collectively, the DIP Documents and the Cash Collateral Documents.

191. "*Postpetition Lenders*" means, collectively, the DIP Lenders and the Exit Facility Lenders.

187.    192. "*Prepetition LC Credit Agreement*" means, as it may be amended, supplemented, or otherwise modified from time to time prior to the Petition Date, that certain credit agreement, dated as of December 27, 2019, by and among WeWork Companies U.S. LLC, as successor to WeWork Companies LLC, SVF II, as obligor, SVF II GP (Jersey Limited), acting in its capacity as general partner of SVF II and in its own corporate capacity, and SB Global Advisors Limited, acting in its capacity as manager of SVF II, and the several issuing creditors and letter of credit participants from time to time party thereto,

21

Goldman Sachs International Bank, as senior tranche administrative agent and shared collateral agent, Kroll Agency Service Limited, as junior tranche administrative agent, and the parties thereto from time to time.

188. 193. "*Prepetition LC Facility Claims*" means all Claims arising under the Prepetition LC Facility Documents, including the Prepetition LC Subrogation Claims or the Prepetition LC Reimbursement Claims, and all unpaid accrued and deferred fees and interest, including, without limitation, any upfront fees, running fees, administrative, and fronting fees (without double counting).  For the avoidance of doubt, (a) any cash collateral posted but subsequently returned to the SoftBank Parties shall not give rise to a Prepetition LC Facility Claim, (b) any Holder of a Prepetition LC Facility Claim that is a Prepetition LC Reimbursement Claim which was converted or otherwise replaced with a Prepetition LC Subrogation Claim shall, with respect to its Prepetition LC Reimbursement Claim, only be entitled to recover the amount of such Prepetition LC Reimbursement Claim that was not so converted or otherwise replaced, and (c) any Holder of a Prepetition LC Facility Claim that was converted or otherwise replaced with a DIP TLC Claim shall, with respect to its Prepetition LC Facility Claim, only be entitled to recover the amount of such Prepetition LC Facility Claim that was not so converted or otherwise replaced.

189. 194. "*Prepetition LC Facility Documents*" means the Prepetition LC Credit Agreement and related documents, including, without limitation, the Prepetition LC Reimbursement Agreement.

190. 195. "*Prepetition LC Reimbursement Agreement*" means that certain reimbursement agreement, dated as of December 20, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and among SVF II, SoftBank Group Corp., and WeWork Companies U.S. LLC, as successor to WeWork Companies LLC.

191. 196. "*Prepetition LC Reimbursement Claims*" means all claims arising under the Prepetition LC Reimbursement Agreement.

192. 197. "*Prepetition LC Subrogation Claims*" means claims for any and all Applicable Obligations (as defined in the Prepetition LC Credit Agreement) paid by SVF II, including, without limitation, the total amount required pursuant to the terms of the Prepetition LC Credit Agreement for SVF II to reimburse all drawn amounts under the Senior L/C Tranche and the Junior L/C Tranche (as both terms are defined in the Prepetition LC Credit Agreement) and to pay or cash collateralize all outstanding amounts under the Prepetition LC Credit Agreement (including, without limitation, any fees, interest, expenses, and other amounts thereunder).

193. "*Prepetition Secured Equity Distribution*" means 100% of New Interests *minus* the Undiluted Exit New Money Shares (if any), subject to dilution on account of the New Money Equity Distribution, the MIP, the Equity Election, and the DIP TLC Fee Equity Distribution.

194. 198. "*Priority Tax Claim*" means (a) any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, or (b) any Secured Claim that, absent its secured status, would meet the description of a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, together with any related Secured Claim for penalties.

195. 199. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under this Plan, unless otherwise indicated.

196.   200. "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or as of the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by Final Order pursuant to section 503(b)(4) of the Bankruptcy Code.

197.   201. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C.3 of this Plan.

198.   202. "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

199.   203. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the total estimated Professional Fee Amount.

200.   204. "*Proof of Claim*" means a proof of Claim against any of the Debtors Filed in the Chapter 11 Cases.

201.   205. "*Proof of Interest*" means a proof of Interest in any of the Debtors Filed in the Chapter 11 Cases.

202.   206. "*Registration Rights Agreement*" means the registration rights agreement pursuant to which each Holder of New Interests shall be entitled to registration rights with respect to its shares of New Interests to be entered into as of the Effective Date, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

203.   207. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

204.   208. "*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former associated Entities, managed or advised Entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, investment or fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, consultants, other representatives, restructuring

23

advisors, and other professionals and advisors, and any such Person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

205.   ~~209.~~ "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) the ~~Postpetition~~DIP Lenders; (e) the Creditors' Committee; (f) each Creditors' Committee Member; (g) the Releasing Parties; (h) each Agent; (i) each Related Party of each such Entity in clause (a) through (i); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of this Plan; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is not resolved before Confirmation[; *provided*, *further*, that notwithstanding the foregoing, [●] are not Released Parties.]4

206.   ~~210.~~ "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor, (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the ~~Postpetition~~DIP Lenders; (e) each Agent; (f) the Creditors' Committee; (g) each Creditors' Committee Member; (h) all Holders of Claims that vote to accept this Plan; (i) all Holders of Claims that are deemed to accept this Plan who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in this Plan; (j) all Holders of Claims that abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in this Plan; (k) all Holders of Claims or Interests that vote to reject this Plan or are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable ballot or notice of nonvoting status indicating that they opt not to grant the releases provided in this Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable law; *provided* that an Entity in clause (i) through clause (k) shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of this Plan; or (y) timely objects to the releases contained in Article VIII.D of this Plan and such objection is not resolved before Confirmation.

207.   ~~211.~~ "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under this Plan, on and after the Effective Date, or any successors or assigns thereto including by transfer, merger, consolidation, or otherwise, and including any new Entity established in connection with the implementation of the Restructuring Transactions, including, for the avoidance of doubt, Reorganized WeWork.

208.   ~~212.~~ "*Reorganized WeWork*" means, on and after the Effective Date, (a) a new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, directly or indirectly own and hold all or substantially all of the assets and/or stock of the Debtors, as applicable, in accordance with this Plan and the Plan Supplement, or any successor or assign thereto, including by transfer, merger, consolidation, sale, subscription or otherwise, and including any new Entity established in connection with the implementation of the Restructuring Transactions, (b) the WeWork Parent, or (c) another Reorganized Debtor, as applicable <ins>and</ins> in all cases in accordance with the RSA, this Plan, and the Plan Supplement.

209.   ~~213.~~ "*Required Consenting AHG Noteholders*" means, as of the relevant date, (a) at least 2 unaffiliated Initial Consenting AHG Noteholders, holding at least 50.00% of the aggregate outstanding

---

4   For the avoidance of doubt, all releases remain subject to the ongoing investigation of the special committee of independent directors of the board.

principal amount of Secured Notes Claims that are held by the Initial Consenting AHG Noteholders, (b) if there are not at least 2 unaffiliated Initial Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by the Initial Consenting AHG Noteholders, then Initial Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by Initial Consenting AHG Noteholders, or (c) if there are no Initial Consenting AHG Noteholders party to the RSA, Consenting AHG Noteholders holding at least 50.00% of the aggregate outstanding principal amount of Secured Notes Claims that are held by Consenting AHG Noteholders (as defined in the RSA).

210.  214. "*Required Consenting Stakeholders*" means subject to the terms of the RSA, collectively, the SoftBank Parties, Cupar, and the Required Consenting AHG Noteholders; *provided* that to the extent any action, event, amendment, or waiver requiring consent or approval of the Required Consenting Stakeholders would materially, adversely, and disproportionately affect Cupar, the SoftBank Parties, the Required Consenting AHG Noteholders, and Cupar.

211.  215. "*Required Consenting Stakeholders' Advisors*" means the Ad Hoc Group Professionals, Cupar Professionals, and SoftBank Professionals.

212.  216. ["*Required New Money DIP Lenders*" means the "Required Lenders" as defined in the DIP New Money Credit Agreement (as applicable, if any).]

213.  217. "*Restructuring Expenses*" means the reasonable and documented fees and expenses of the Required Consenting Stakeholders' Advisors accrued since the inception of their respective engagements related to the Chapter 11 Cases or the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors.

214.  218. "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued or executed pursuant to this Plan, one or more intercompany mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, formations, dissolutions, or other corporate transactions described in, approved by, contemplated by, or undertaken to implement this Plan (including the Plan Supplement), the RSA, the Definitive Documents, including those described in Article IV.B hereof, in all cases, in accordance with the terms of the RSA.

215.  219. "*Restructuring Transactions Exhibit*" means the exhibit to the Plan Supplement that will set forth the material components of the transactions required to effectuate the Restructuring Transactions contemplated by the RSA and this Plan, including any "tax steps memo," or other document describing steps to be taken and the related tax considerations in connection with the Restructuring Transactions, which shall constitute a "Definitive Document" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

216.  220. "*Retained Causes of Action*" means Causes of Action that shall vest in the Reorganized Debtors on the Effective Date, which, for the avoidance of doubt, shall not include any of the Causes of Action that are settled, released, or exculpated under this Plan.

217.  221. "*Revised Joint Administration Order*" means the revised *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1116].

25

218.   222. ["*Rights Offering*" means the rights offering (if any) to purchase the Rights Offering Securities (if any) on the terms set forth in the Rights Offering Documents (if applicable).]

219.   223. ["*Rights Offering Documents*" means, collectively, the Rights Offering Procedures (if any), and any and all other agreements (including any backstop commitment agreement), documents, and instruments delivered or entered into in connection with the Rights Offering (if applicable), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

220.   224. ["*Rights Offering Participants*" means the parties entitled to participate in the Rights Offering (if any) as set forth in the Rights Offering Documents (if any).]

221.   225. ["*Rights Offering Procedures*" means those certain rights offering procedures (if any) that are consistent in all material respects with the procedures set forth in any related backstop commitment agreement and applicable securities laws, as set forth in the Plan Supplement (if applicable), which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.]

222.   226. ["*Rights Offering Securities*" means the Rights Offering Shares (if any) and/or any other debt or equity Securities offered in connection with the Rights Offering.]

223.   227. ["*Rights Offering Shares*" means the New Interests (if any) in connection with the Rights Offering (if any) to the extent payable in Rights Offering Shares (if any).]

228. ["*Rolled Drawn DIP TLC Claims*" means the initial Drawn DIP TLC up to an aggregate amount not to exceed $100 million.]

224.   229. ["*Rolled Undrawn DIP TLC Claims*" means a portion of the DIP TLC Claims in the amount required to cash collateralize (in accordance with the DIP LC/TLC Credit Agreement) the aggregate face amount of DIP LCs that are undrawn as of the Effective Date.]

225.   230. "*RSA*" means that certain Restructuring Support Agreement, dated as of the Petition Date, by and among the Debtors and the Consenting Stakeholders, including all exhibits, schedules, and other attachments thereto, as such agreement may be amended, amended and restated, modified, or supplemented from time to time, solely in accordance with the terms thereof.

226.   231. "*Ruling Request*" means a request for one or more private letter rulings from the IRS (if any) pertaining to certain U.S. federal income tax matters relating to the Restructuring Transactions that is submitted to the IRS in accordance with Section 4.04. of the RSA.

227.   232. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means any schedule (including any amendments, supplements, or modifications thereto) of the Debtors' good faith estimate of proposed Cure Obligations (if any) with respect to each of the Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan.

228.   233. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan.

26

229.   234. "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action which shall be included in the Plan Supplement.

230.   235. "*SEC*" means the United States Securities and Exchange Commission.

231.   236. "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

232.   237. "*Secured Claim*" means a Claim that is:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured claim.

233.   238. "*Secured Notes*" means the 1L Notes, 2L Notes, and 3L Notes.

234.   239. "*Secured Notes Claims*" means any Claim arising under, derived from, based on, or related to the Secured Notes or Secured Notes Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, guarantees, and other charges arising thereunder or related thereto.

235.   240. "*Secured Notes Documents*" means, collectively, the Secured Indentures and all instruments, security agreements, collateral agreements, guaranty agreements, intercreditor agreements, pledges, and other documents with respect to the Secured Notes.

236.   241. "*Secured Notes Indentures*" means, collectively, the 1L Indenture, the 2L Indenture, the 2L Exchangeable Indenture, the 3L Indenture, and the 3L Exchangeable Indenture.

237.   242. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local Law.

238.   243. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

239.   244. "*SoftBank Parties*" means collectively SVF II, SVF II Aggregator, SVF II WW, and SVF II WW Holdings.

240.   245. "*SoftBank Professionals*" means Weil Gotshal & Manges LLP, as counsel, Houlihan Lokey Capital, Inc., as financial advisor, Wollmuth Maher & Deutsch LLP, as local co-counsel, and any other special or local counsel or advisors providing advice to the SoftBank Parties in connection with the Restructuring Transactions.

241.   246. "*Solicitation Materials*" means all materials provided in connection with the solicitation of votes on this Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code, which shall constitute "Definitive Documents" under, and be subject to and consistent in all respects with, the RSA, including the consent rights set forth therein, and as may be modified, supplemented, or amended in accordance with the RSA.

27

242.   247. "*Subscription Rights*" means the rights issued pursuant to the Rights Offering (if any) to purchase Rights Offering Securities (if any), on the terms set forth in the Rights Offering Documents (if any).

243.   248. "*SVF II*" means SoftBank Vision Fund II-2 L.P., a limited partnership established in Jersey, acting by its manager SB Global Advisers Limited, a limited company incorporated under the Laws of England and Wales.

244.   249. "*SVF II Aggregator*" means SVF II Aggregator (Jersey) L.P., a limited partnership established in Jersey, acting by its general partner, SVF II GP (Jersey) Limited, a Jersey private Company.

245.   250. "*SVF II WW*" means SVF II WW (DE) LLC, a Delaware limited liability company.

246.   251. "*SVF II WW Holdings*" means SVF II WW Holdings (Cayman) Limited, a Cayman Islands exempted Company.

247.   252. "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

248.   253. "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of this Plan.

249.   254. "*Total 1L Claims*" means the total aggregate amount of (a) Prepetition LC Facility Claims and (b) 1L Notes Claims, in each case, including, all postpetition interest and fees.

250.   255. "*Treasury Regulations*" means the regulations promulgated under the Internal Revenue Code by the United States Department of the Treasury.

251.   256. "*Unclaimed Distribution*" means any distribution under this Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check within 90 days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution within 90 days of receipt; (c) responded to, as applicable, the Debtors' or the Reorganized Debtors' requests for information necessary to facilitate a particular distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

252.   "*Undiluted Exit New Money Shares*" means 80% of the New Interests.

253.   257. "*Undrawn DIP TLC Claims*" means a portion of the DIP TLC Claims in an amount equal to Rolled Undrawn DIP TLC Claims *plus* the Excess DIP TLC Claims.

254.   258. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

255.   259. "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

256.   260. "*Unsecured Notes*" means, collectively, the 5.00% Unsecured Notes, and the 7.875% Unsecured Notes.

28

257.    ~~261.~~ "*Unsecured Notes Claims*" means, collectively, any Claim on account of the Unsecured Notes.

258.    ~~262.~~ "*Unsecured Notes Indentures*" means, collectively, the 5.00% Unsecured Notes Indenture and the 7.875% Unsecured Notes Indenture.

259.    ~~263.~~ "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

260.    ~~264.~~ "*WeWork Parent*" means Debtor WeWork Inc., a public company incorporated under the Laws of Delaware.

B.    *Rules of Interpretation*.

For purposes of this plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or the Confirmation Order, as applicable; (c) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (e) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (f) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, charters, bylaws, partnership agreements, limited liability company agreements, operating agreements, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable Law, including the Bankruptcy Code and the Bankruptcy Rules; (h) unless otherwise specified herein, any reference to "corporate action," "corporate structure," and other references to "corporate" and "corporation" will be deemed to include corporation, limited liability companies, partnerships, and analogous entities incorporated or formed under applicable Laws, as applicable; (i) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and for the avoidance of doubt, any variation of the word "include" is not limiting, and shall be deemed followed by the words "without limitation"; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (n) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (o) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (p) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (q) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective

29

Person or Entity that have such consent, acceptance, or approval rights, including by electronic mail; and (r) all references herein to the RSA, Rights Offering, DIP New Money Facility, and Exit New Money FacilityEquity Commitment, including any related defined terms (and any consent rights thereunder), shall be deemed to be followed by "if any," whether or not stated.

C.      *Computation of Time*.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Subject to the requirements of the Restructuring Transactions Exhibit and any other Definitive Document, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*.

Except to the extent a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code or the Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of Laws principles; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York, shall be governed by the Laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*.

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*.

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document*.

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and any document included in the Plan Supplement, including the schedules or exhibits, the terms of the relevant provision in this Plan shall control (unless expressly stated otherwise in the applicable provision of the Plan Supplement; *provided* that that in the event of an inconsistency between this Plan and the Restructuring Transactions Exhibit, the Restructuring Transactions Exhibit shall control). In the event of an inconsistency between the Confirmation Order and this Plan, including the Plan Supplement or the Restructuring Transactions Exhibit, the Confirmation Order shall control.

H.      *Consultation, Notice, Information, and Consent Rights*.

Notwithstanding anything herein to the contrary, all consultation, information, notice, and consent rights of the parties to the RSA, as applicable, and as respectively set forth therein, with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and the Definitive

30

Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein until such time as the RSA is terminated in accordance with its terms.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS,**
**DIP ADMINISTRATIVE CLAIMS,**
**PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Administrative Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims*.

Except as otherwise provided under this Plan, and except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor(s) against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of such an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All Adequate Protection Obligations and Adequate Protection Claims (each as defined in the Cash Collateral Orders) including accrued or unpaid interest, as well as fees and expenses, including legal expenses, as of the Effective Date pursuant to the terms of the Cash Collateral Orders, will be indefeasibly paid by the Debtors in full in Cash or will be provided such other treatment acceptable to the Debtors and ~~the Required Consenting Stakeholders~~subject to the consent rights in the RSA without the need to File a request for payment of an Administrative Claim with the Bankruptcy Court on account of such Adequate Protection Obligations and Adequate Protection Claims.  The Debtors' obligation to pay such Adequate Protection Obligations and Adequate Protection Claims, to the extent not indefeasibly paid in full in Cash on the Effective Date, shall survive the Effective Date and shall not be released or discharged pursuant to this Plan or the Confirmation Order until indefeasibly paid in full in Cash.

Except as otherwise provided below in Article II, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims must do so by the Administrative Claims Bar Date.  Objections to such requests must be Filed and served on the requesting

31

party and the Debtors (if the Debtors are not the objecting party) by the Administrative Claims Objection Bar Date.  Holders of such Claims who do not File and serve such requests by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than 60 days after the Effective Date.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and any prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

**HOLDERS OF ADMINISTRATIVE CLAIMS FOR UNPAID INVOICES THAT ARISE IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESS AND WHICH ARE NOT DUE AND PAYABLE ON OR BEFORE THE EFFECTIVE DATE SHALL BE PAID IN THE ORDINARY COURSE OF BUSINESS IN ACCORDANCE WITH THE TERMS THEREOF AND NEED NOT FILE ADMINISTRATIVE CLAIMS.**

B.      *DIP Administrative Claims*.

The DIP Administrative Claims shall be deemed to be Allowed Claims in the full amount outstanding under the DIP Agreements as of the Effective Date (including any unpaid accrued interest and unpaid fees, expenses, and other obligations under the DIP Agreements as of the Effective Date).  Except as otherwise expressly provided in the DIP Agreements, or the DIP Orders, upon the indefeasible payment or satisfaction in full of all Allowed DIP Claims, all commitments under the DIP Agreements shall terminate and all Liens and security interests granted to secure the DIP Claims shall be automatically terminated and of no further force and effect, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Except to the extent that a Holder of a DIP Administrative Claim agrees to less favorable treatment, on the Effective Date, in full satisfaction, settlement, discharge, and release of, and in exchange for, the DIP Administrative Claims, each Holder of an Allowed DIP Administrative Claim shall receive the following treatment:

1.      Each Holder of an Allowed DIP TLC Fee Claim shall receive its Pro Rata share of the ~~loans under the Exit TLC Facility on a dollar-for-dollar basis~~DIP TLC Fee Equity Distribution.

2.      ~~[~~To the extent the Debtors enter into a ~~[~~DIP New Money Facility~~]~~, the Debtors expect the provider of such DIP financing to seek superpriority, administrative expense status for its claim.  The granting of any such superpriority, administrative status should be subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA and, if agreed by such parties, each Holder of an Allowed ~~[~~DIP New Money Claim~~]~~ shall receive payment in full in Cash, or other treatment in a manner to be acceptable to the Debtors, the Required Consenting Stakeholders, and the requisite majority of DIP New Money Lenders pursuant to the terms of the DIP New Money Documents.~~]~~ Each Holder of 1L Series 1 Notes Claims and 2L Secured Notes Claims is expected to be offered the opportunity to participate in the DIP New Money Facility.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, the DIP Facilities, and the DIP Documents shall continue in full force and effect (other than, for the avoidance of doubt, any Liens or other security interests terminated pursuant to this Article II.B) after the Effective Date with respect to any contingent or unsatisfied obligations thereunder, as applicable, including, but not limited to, those provisions relating to the rights of the DIP Agents, and the DIP Lenders to expense

reimbursement, indemnification, and any other similar obligations of the Debtors to the DIP Agents, and the DIP Lenders (which rights shall be fully enforceable against the Reorganized Debtors) and any provisions thereof that may survive termination or maturity of the DIP Facilities in accordance with the terms thereof.

C.      *Professional Fee Claims*.

      1.      Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, Bankruptcy Rules, and Prior Bankruptcy Court orders.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows, including from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of this Plan.

      2.      Professional Fee Escrow Account.

No later than the Effective Date, the Debtors incorporated in the U.S. shall, in consultation with the Required Consenting Stakeholders, establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders and any invoices for fees and expenses incurred after the Effective Date in connection with the final fee applications.  Such funds shall not be considered property of the Debtors' Estates.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than 5 days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or the Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional; *provided, however,* that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided, further,* that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are

33

Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.      Post-Effective Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Reorganized Debtors or, solely as it pertains to the final fee applications, the Creditors' Committee.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors and the Reorganized Debtors, as applicable, shall pay, within 10 Business Days after submission of a detailed invoice to the Debtors or the Reorganized Debtors, as applicable, such reasonable Claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtors, the Reorganized Debtors, or the Creditors' Committee, as applicable.  If the Debtors or the Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or the Reorganized Debtors, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

D.      *Priority Tax Claims*.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Statutory Fees and Reporting to the U.S. Trustee*.

All fees due and payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors, the Reorganized Debtors, or the Disbursing Agent (on behalf of the Reorganized Debtors), as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of title 28 of the United States Code, shall be paid by the Debtors or the Reorganized Debtors (or the Disbursing Agent on behalf of the Reorganized Debtors), as applicable, on the Effective Date.  Following the Effective Date, the Reorganized Debtors (or the Disbursing Agent on behalf of the Reorganized Debtors) shall (a) pay such fees as such fees are assessed and come due for each quarter (including any fraction thereof) and (b) File quarterly reports in a form consistent with the Revised Joint Administration Order and reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

F.      *Payment of Restructuring Expenses*.

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter

(to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with the terms of the RSA, the Cash Collateral Orders, or any other Final Order of the Bankruptcy Court) without any requirement to (1) File a fee application with the Bankruptcy Court, or (2) for review or approval by the Bankruptcy Court; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail (but without the need for itemized time detail) from the applicable Entity entitled to such Restructuring Expenses.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least 3 Business Days before the anticipated Effective Date; provided, however, that such estimates (and related invoices) shall not be considered an admission or limitation with respect to such Restructuring Expenses. In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course [(but no sooner than within 5 Business Days of receipt of an invoice)], Restructuring Expenses related to implementation, Consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail (but without the need for itemized time detail) from the applicable Entity entitled to such Restructuring Expenses.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*.

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to this Plan is as set forth below.  This Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except as expressly set forth herein. All of the potential Classes for the Debtors are set forth herein.  Voting tabulations for recording acceptances or rejections of this Plan shall be conducted on a Debtor-by-Debtor basis as set forth herein.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3A | Drawn DIP TLC Claims | Impaired | Entitled to Vote |
| Class 3B | Undrawn DIP TLC Claims | Impaired | Entitled to Vote |
| Class 4A | Prepetition LC Facility Claims | Impaired | Entitled to Vote |
| Class 4B | 1L Notes Claims | Impaired | Entitled to Vote |
| Class 5 | 2L Notes Claims | Impaired | Entitled to Vote |

35

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 6 | 3L Notes Claims | Impaired | Entitled to Vote / Deemed to Reject |
| Class 7 | Unsecured Notes Claims | Impaired | ~~Entitled to Vote /~~ Deemed to Reject |
| Class 8 | General Unsecured Claims | Impaired | ~~Entitled to Vote /~~ Deemed to Reject |
| Class 9 | Go-Forward Guaranty Claims | Unimpaired | Presumed to Accept |
| Class ~~9~~10 | Intercompany Claims | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| Class 1~~0~~1 | Intercompany Interests | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| Class 1~~1~~2 | Parent Interests | Impaired | Deemed to Reject |
| Class 1~~2~~3 | Section 510(b) Claim | Impaired | Deemed to Reject |

B.      *Treatment of Claims and Interests*.

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, as applicable, except to the extent different treatment is agreed to in writing by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable, ~~with~~subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter.

1.      Class 1 – Other Secured Claims

(a)     *Classification*:  Class 1 consists of all Allowed Other Secured Claims.

(b)     *Treatment*:  In full and final satisfaction of such Allowed Other Secured Claims, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor (or Reorganized Debtor, as applicable) and ~~with~~subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA:

(i)      payment in full in Cash of its Allowed Other Secured Claim;

(ii)     the collateral securing its Allowed Other Secured Claim;

(iii)    Reinstatement of its Allowed Other Secured Claim; or

(iv)     such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class 1 is Unimpaired under this Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to

36

section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Allowed Other Priority Claims.

(b)    *Treatment*:  In full and final satisfaction of such Allowed Other Priority Claims, each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor (or Reorganized Debtor, as applicable) and ~~with~~subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA:

(i)    payment in full in Cash of its Allowed Other Priority Claim; or

(ii)    treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*:  Class 2 is Unimpaired under this Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3.    Class 3A – Drawn DIP TLC Claims

(a)    *Classification*:  Class 3A consists of all Allowed Drawn DIP TLC Claims.

(b)    *Allowance*:  The Drawn DIP TLC Claims shall be deemed to be Allowed Claims in the full amount of such Claims outstanding under the DIP LC/TLC Credit Agreement as of the Effective Date.

(c)    *Treatment*:  In full and final satisfaction of such Allowed Drawn DIP TLC Claims, the Holder of each Allowed Drawn DIP TLC Claim shall receive ~~(i) in the case of the Rolled Drawn DIP TLC Claim, loans under the Exit TLC Facility on a dollar-for-dollar basis, and (ii) in the case of an Equitized Drawn DIP TLC Claim,~~ its Pro Rata share of the Drawn DIP TLC Equity Distribution.

(d)    *Voting*:  Class 3A is Impaired under this Plan.  Holders of Allowed Drawn DIP TLC Claims are entitled to vote to accept or reject this Plan.

4.    Class 3B – Undrawn DIP TLC Claims

(a)    *Classification*:  Class 3B consists of all Allowed Undrawn DIP TLC Claims.

(b)    *Allowance*:  The Undrawn DIP TLC Claims shall be deemed to be Allowed Claims in the full amount of such Claims outstanding under the DIP LC/TLC Credit Agreement as of the Effective Date.

(c)    *Treatment*:  In full and final satisfaction of such Allowed Undrawn DIP TLC Claims, each Allowed Undrawn DIP TLC Claim:  (i) in the case of an Excess DIP TLC Claim, shall be paid in full in cash in an amount equal to such Excess DIP TLC Claim from amounts remaining from the proceeds of the DIP TLC Facility (or, for the avoidance of doubt, interest accrued on the amounts funded pursuant

37

to the DIP TLC Facility), which amounts shall be funded solely from amounts remaining in the DIP LC Loan Collateral Accounts (as defined in the DIP LC/TLC Order) after the funding of the SoftBank Parties' obligations to back the Exit LC Facility; and (ii) in the case of a Rolled Undrawn DIP TLC Claim, shall ~~(A)~~ be converted into obligations under the Exit LC Facility on a dollar-for-dollar basis~~, and (B) receive its Pro Rata share of the New LC Equity Allocation~~.

(d)   *Voting*:  Class 3B is Impaired under this Plan.  Holders of Allowed Undrawn DIP TLC Claims are entitled to vote to accept or reject this Plan.

5.   Class 4A – Prepetition LC Facility Claims

(a)   *Classification*:  Class 4A consists of all Allowed Prepetition LC Facility Claims.

(b)   *Allowance*:  The Prepetition LC Facility Claims, to the full extent set forth in the Prepetition LC Facility Documents, shall be Allowed.

(c)   *Treatment*:  In full and final satisfaction of such Allowed Prepetition LC Facility Claims, each Holder of Allowed Prepetition LC Facility Claims shall receive its Pro Rata share of the 1L Equity Distribution.

(d)   *Voting:*  Class 4A is Impaired under this Plan.  Holders of Allowed Prepetition LC Facility Claims are entitled to vote to accept or reject this Plan.

6.   Class 4B – 1L Notes Claims

(a)   *Classification*:  Class 4B consists of all Allowed 1L Notes Claims.

(b)   *Allowance*:  The 1L Notes Claims, to the full extent set forth in the applicable Secured Notes Documents, shall be Allowed.

(c)   *Treatment*:  In full and final satisfaction of such Allowed 1L Notes Claims, each Holder of Allowed 1L Notes Claims shall receive its Pro Rata share of the 1L Equity Distribution, subject to the Exit Commitment Netting Transaction.

(d)   *Voting*:  Class 4B is Impaired under this Plan.  Holders of Allowed 1L Notes Claims are entitled to vote to accept or reject this Plan.

7.   Class 5 – 2L Notes Claims

(a)   *Classification:*  Class 5 consists of all Allowed 2L Notes Claims.

(b)   *Allowance*:  The 2L Notes Claims, to the full extent set forth in the applicable Secured Notes Documents (excluding, for the avoidance of doubt, postpetition interest and fees), shall be Allowed.

(c)   *Treatment*:  In full and final satisfaction of such Allowed 2L Notes Claims, each Holder of an Allowed 2L Notes Claim shall receive its Pro Rata share of the 2L Equity Distribution.

(d) *Voting:*  Class 5 is Impaired under this Plan.  Holders of Allowed 2L Notes Claims are entitled to vote to accept or reject this Plan.

8. Class 6 – 3L Notes Claims

    (a) *Classification*:  Class 6 consists of all Allowed 3L Notes Claims.

    (b) *Allowance*:   The 3L Notes Claims, [to the extent set forth in the applicable Secured Notes Documents (excluding, for the avoidance of doubt, postpetition interest and fees)] shall be Allowed.

    (c) *Treatment*:  In full and final satisfaction of such Allowed 3L Notes Claims, each Allowed 3L Notes Claim shall be discharged and released, and each Holder of an Allowed 3L Notes Claim shall not receive or retain any distribution, property, or other value on account of such Allowed 3L Notes Claim; provided, however, that, to the extent the aggregate value of the Allowed 3L Notes Claims exceeds the value of the collateral securing such Claims and there are unencumbered assets held by the Debtor against which such Claims are Allowed, each Holder of an Allowed 3L Notes Claim shall receive on account of ~~an~~and in full and final satisfaction of such Allowed Claim, its Pro Rata share (together with each Holder of an Allowed Unsecured Notes Claim and an Allowed General Unsecured Claim against the applicable Debtor) of the liquidation value of the unencumbered assets held by the Debtor against which such Claim is allowed.

    (d) *Voting*:  Class 6 is Impaired under this Plan.  Holders of Allowed 3L Notes Claims are either entitled to vote to accept or reject this Plan, or are not entitled to vote to accept or reject this Plan.

9. [Class 7 – Unsecured Notes Claims]

    (a) *Classification:*  Class 7 consists of all Allowed Unsecured Notes Claims

    ~~(b) *Treatment*:   In full and final satisfaction of such Allowed Unsecured Notes Claim, each Allowed Unsecured Notes Claim shall be discharged and released, and each Holder of an Allowed Unsecured Notes Claim shall not receive or retain any distribution, property, or other value on account of such Allowed Unsecured Notes Claim; *provided*, *however*, that, to the extent there are unencumbered assets held by the Debtor against which an Unsecured Notes Claim is Allowed, each Holder of such Allowed Claim shall receive, on account of and in full and final satisfaction of such Allowed Claim its Pro Rata share (together with each Holder of an Allowed 3L Notes Claim and an Allowed General Unsecured Claim against the applicable Debtor) of the liquidation value of the unencumbered assets held by the Debtor against which such Claim is Allowed.~~

    (b) *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Unsecured Notes Claim, each Holder of an Allowed Unsecured Notes Claim shall receive, at such Holder's election, such Holder's Pro Rata share of either (A) the Cash Election or (B) the Equity Election.

(c)   *Voting*:  Class 7 is Impaired under this Plan.  Holders of Allowed Unsecured Notes Claims are ~~either~~ ~~entitled to vote to accept or~~conclusively deemed to have rejected this Plan~~, or~~.  Therefore, Holders of Allowed Unsecured Notes Claims are not entitled to vote to accept or reject this Plan.

10.   [Class 8 – General Unsecured Claims]

(a)   *Classification:*  Class 8 consists of all Allowed General Unsecured Claims.

(b) ~~*Treatment*:  In full and final satisfaction of such Allowed General Unsecured Claim, Allowed General Unsecured Claim shall be discharged and released, and each Holder of an Allowed General Unsecured Claim shall not receive or retain any distribution, property, or other value on account of such Allowed General Unsecured Claim, *provided*, *however*, that, to the extent there are unencumbered assets held by the Debtor against which a General Unsecured Claim is Allowed, each Holder of an Allowed Claim shall receive, on account of and in full satisfaction of such Allowed Claim, its Pro Rata share (together with each Holder of an Allowed 3L Notes Claim and an Allowed Unsecured Notes Claim against the applicable Debtor) of the liquidation value of the unencumbered assets held by the Debtor against which such Claim is Allowed.~~

(b)   *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, at such Holder's election, such Holder's Pro Rata share of either (A) the Cash Election or (B) the Equity Election;

(c)   *Voting:*  Class 8 is Impaired under this Plan.  Holders of Allowed General Unsecured Claims are ~~either entitled to vote to accept or~~conclusively deemed to have rejected this Plan~~, or~~.  Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject this Plan.

11.   Class 9 – Go-Forward Guaranty Claims

(a)   *Classification*:  Class 9 consists of all Allowed Go-Forward Guaranty Claims.

(b)   *Treatment*:  Each Allowed Go-Forward Guaranty Claim shall be Reinstated.

(c)   *Voting*:  Class 9 is Unimpaired under this Plan and Holders of Allowed Go-Forward Guaranty Obligations are conclusively deemed to have accepted this Plan.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

12.   ~~11.  [~~Class ~~9~~10 – Intercompany Claims]

(a)   *Classification*:  Class ~~9~~10 consists of all Allowed Intercompany Claims.

(b)   *Treatment*:   Each Allowed Intercompany Claim shall be (i) Reinstated, (ii) converted to equity, (iii) canceled, released, or discharged, or (iv) otherwise set off, settled, or distributed, at the option of the Debtors or the Reorganized Debtors, and ~~with~~subject to the ~~reasonable~~ consent ~~of the Required Consenting~~

40

~~Stakeholders~~<u>rights set forth in the RSA</u>, in each case in accordance with the Restructuring Transactions Exhibit.

(c)     *Voting*:  Class ~~9~~<u>10</u> is Unimpaired under this Plan if Reinstated or Impaired under this Plan if converted to equity, canceled, released, discharged, set off, settled, or distributed.  Holders of Intercompany Claims are conclusively deemed to have accepted or rejected this Plan.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

13.     ~~12.~~ Class 1~~0~~<u>1</u> – Intercompany Interests

(a)     *Classifications*:  Class 1~~0~~<u>1</u> consists of all Allowed Intercompany Interests.

(b)     *Treatment*:   Each Allowed Intercompany Interest shall be (i) Reinstated, (ii) canceled, released, or discharged, or (iii) otherwise set off, settled, or distributed, at the option of the Debtors or the Reorganized Debtors, and ~~with~~<u>subject to</u> the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~<u>rights set forth in the RSA</u>, in each case in accordance with the Restructuring Transactions Exhibit.

(c)     *Voting*:  Class 1~~0~~<u>1</u> is Unimpaired under this Plan if Reinstated or Impaired under this Plan if canceled, released, discharged, set off, settled, or distributed.  Holders of Intercompany Interests are conclusively deemed to have accepted or rejected this Plan.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

14.     ~~13.~~ Class 1~~1~~<u>2</u> – Parent Interests

(a)     *Classification:*  Class 1~~1~~<u>2</u> consists of all Allowed Parent Interests.

(b)     *Treatment*:   Each Allowed Parent Interests, shall be canceled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Allowed Parent Interests shall not receive any distribution on account of such Interests, except as otherwise provided in the Restructuring Transactions Exhibit, ~~with the reasonable~~<u>and subject to the</u> consent ~~of the Required Consenting Stakeholders~~<u>rights set forth in the RSA</u>.

(c)     *Voting*:  Class 1~~1~~<u>2</u> is Impaired under this Plan.  Holders of Interests in WeWork Parent are conclusively deemed to have rejected this Plan.  Therefore, such Holders are not entitled to vote to accept or reject this Plan, except as otherwise provided in the Restructuring Transactions Exhibit.

15.     ~~14.~~ Class 1~~2~~<u>3</u> – Section 510(b) Claims

(a)     *Classification:*  Class 1~~2~~<u>3</u> consists of all Allowed Section 510(b) Claims.

(b)     *Treatment*:  All Allowed Section 510(b) Claims against any applicable Debtor shall be canceled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of such Section 510(b) Claims.

(c)     *Voting*:   Class 1~~2~~3 is Impaired under this Plan.   Holders of Allowed Section 510(b) Claims are conclusively deemed to have rejected this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

C.     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan or the Plan Supplement, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under this Plan.

D.     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in any amount greater than zero as of the date of the ~~Confirmation~~Combined Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote on this Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject this Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted this Plan.

F.     *Intercompany Interests.*

To the extent Reinstated under this Plan, (a) distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Interests, and in exchange for the Debtors' and the Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims, and (b) other than as described in the Restructuring Transactions Exhibit, all Intercompany Interests shall be owned on and after the Effective Date by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

G.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more Impaired Class of Claims.  In the event any Debtor does not have one or more Impaired Classes of Claims, all Classes of Claims against such Debtor are presumed to have accepted the Plan.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests.  The Debtors reserve the right to modify this Plan in accordance with Article X hereof and the terms of the RSA~~, with~~ (including subject to the consent ~~of the Required Consenting Stakeholders,~~rights therein) to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests or reclassifying Claims to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.  For the avoidance of doubt, notwithstanding any of the

42

foregoing, the Plan shall enforce all rights and subordination arising under any intercreditor agreements in accordance with section 510(a) of the Bankruptcy Code.

H.      *Controversy Concerning Impairment*.

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims and Interests*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including intercreditor agreements pursuant to section 510(a) of the Bankruptcy Code.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, subject to the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A.      *General Settlement of Claims and Interests*.

As discussed in further detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan.  This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be, and shall be, final.

Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of its Affiliates, which Claims and Causes of Action (other than any such Claims and Causes of Action that are not released pursuant to Article VIII, including any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity) have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each Debtor Entity.  This Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

B.      *Restructuring Transactions*.

On or before the Effective Date, or as soon as reasonably practicable thereafter, the applicable Debtors or the Reorganized Debtors, ~~with~~subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA, shall consummate the Restructuring Transactions and take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan that are consistent with and pursuant to the terms and conditions of this Plan, including:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan, the RSA, and the Plan Supplement and that satisfy the requirements of applicable Law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the RSA, and the Plan Supplement and having other terms for which the applicable Entities may agree; (c) the execution, delivery, and Filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law, including any applicable New Corporate Governance Documents; (d) such other transactions and/or Bankruptcy Court filings that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations or those conducted pursuant to the Restructuring Transactions Exhibit (including, for the avoidance of doubt, if so provided in the Restructuring Transactions Exhibit, all transactions necessary to provide for the sale/purchase of all or substantially all of the assets or Interests of any of the Debtors, which purchase may be structured as a taxable transaction for U.S. federal income tax purposes); (e) the execution, delivery, and Filing of the ~~Exit Facility~~DIP New Money Documents; (f) the execution, delivery, and Filing of the Exit Financing Documents; (g) the implementation of the Rights Offering (if any) pursuant to the Rights Offering Documents (if any) and the issuance of Rights Offering Securities (if any) in connection therewith; and ~~(g)~~ (h) the execution of the Exit Commitments Netting Transaction; (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law in connection with this Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors, as applicable, shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Restructuring Transactions.

C.      *Reorganized Debtors*.

On the Effective Date, in accordance with the terms of the RSA and the Corporate Governance Term Sheet, the New Board shall be appointed, and the Reorganized Debtors shall adopt the New Corporate Governance Documents.  The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan so long as such agreements, documents, instruments, and actions satisfy the requirements of the RSA.  Cash payments to be made pursuant to this Plan will be made by the Debtors, the Reorganized Debtors, or the Disbursing Agent (as applicable).  The Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Reorganized Debtors, as applicable, to satisfy their obligations under this Plan.  Except as set forth herein, any changes in intercompany account

balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

D.      *Sources of Consideration for Plan Distributions*.

The Debtors and the Reorganized Debtors shall fund distributions under this Plan, as applicable, with (a) the proceeds from the Exit ~~Facilities; [~~Equity Commitment Consideration; (b) Cash or other proceeds from the sale of the Rights Offering Securities (if any, as applicable) in connection with the Rights Offering (if any);~~]~~ (c) the New Interests; (d) Cash or other proceeds from the sale of Estate property (if any); and (e) the Debtors' Cash on hand, as applicable.  The issuance, distribution, or authorization, as applicable or as described in the Restructuring Transaction Exhibit, of certain Securities in connection with this Plan, including the New Interests will be exempt from SEC registration to the fullest extent permitted by Law, as more fully described in Article IV.E, below.

1.      Exit LC Facilit~~ies~~y.

On the Effective Date, if the Debtors and Required Consenting Stakeholder agree that entry into the Exit LC Facilit~~ies~~y is necessary and advisable, the Reorganized Debtors shall enter into such Exit LC Facilit~~ies~~y on the terms set forth in the applicable Exit LC Facility Documents.

To the extent not already approved, Confirmation shall be deemed approval of the Exit LC Facilit~~ies~~y and the Exit LC Facility Documents, as applicable, and all transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Debtors or the Reorganized Debtors (as applicable), without further notice to or order of the Bankruptcy Court, to enter into and execute the Exit LC Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit LC Facilit~~ies~~y.  Execution of the Exit LC Facility Documents by the Exit LC Facility Agents shall be deemed to bind all Exit LC Facility Lenders as if each such Exit LC Facility Lender~~s~~ had executed the applicable Exit LC Facility Documents with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit LC Facility Documents, to the extent applicable:  (i) shall be deemed to be granted; (ii) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit LC Facility Documents; (iii) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit LC Facility Documents; and (iv) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law.

To the extent applicable, the Reorganized Debtors, the applicable non-Debtor Affiliates, and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents, and to take any other actions necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such Filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be in accordance with the Exit LC

Facility Documents and necessary under applicable Law to give notice of such Liens and security interests to third parties.

2.     Exit Equity Commitment.

If, in an exercise of their business judgment and subject to the consent rights set forth in the RSA, the Debtors determine that additional funding is necessary or desirable, and have entered into the Exit New Money Facility, the Debtors shall distribute the Exit New Money Shares on behalf of the Reorganized Debtors as set forth in this Plan and the Exit New Money Documents in exchange for the Exit Equity Commitment Consideration (if any).  The Exit Equity Commitment (if any) shall be made and consummated on the terms and conditions of, and in accordance with the Exit Equity Commitment Documents (if any).

The Exit New Money Shares (if any) shall be offered in the allocations specified in the Exit Equity Commitment Documents (if any) and this Plan.  Any Exit New Money Shares shall be subject to dilution on account of the MIP.

On the Effective Date, the rights and obligations of the Debtors under the Exit Equity Commitment Documents (if any) shall vest in the Reorganized Debtors, as applicable.  The proceeds of the Exit Equity Commitment Consideration (if any) shall be used by the Reorganized Debtors to repay the DIP New Money Facility (if applicable) and for other general corporate purposes.

3.     2. Rights Offering.

If the Debtors and the Required Consenting Stakeholders in good faith determine that additional funding is necessary or desirable, the Debtors shall distribute the Subscription Rights to the Rights Offering Participants on behalf of the Reorganized Debtors as set forth in this Plan and the Rights Offering Documents.  The Rights Offering (if any) shall be conducted and consummated on the terms and conditions of, and in accordance with the Rights Offering Documents (if any).

The Rights Offering Securities (if any) shall be offered in the allocations specified in the Rights Offering Documents (if any) and this Plan.  [Any Rights Offering Securities shall be subject to dilution on account of the MIP and the New LC Equity Allocation.].

On the Effective Date, the rights and obligations of the Debtors under the Rights Offering Documents (if any) shall vest in the Reorganized Debtors, as applicable.  The proceeds of the Rights Offering (if any) shall be used by the Reorganized Debtors for general corporate purposes.

4.     3. [Subscription Rights and New Interests.]

If the Debtors and the Required Consenting Stakeholders determine, in good faith, that additional funding is necessary or desirable, Reorganized WeWork shall be authorized to issue a certain number of shares of Rights Offering Securities to certain Holders of Claims pursuant to Articles II and III.  Such Rights Offering Securities (if any) shall be issued to applicable Holders of Claims, and/or [Rights Offering Participants]– pursuant to the Rights Offering Documents (if any), and the New Corporate Governance Documents.  Reorganized WeWork shall issue all securities, instruments, certificates, and other documents required to be issued by it with respect to all such Rights Offering Securities (if any). All such Subscription Rights and Rights Offering Securities (if any), and any other shares of New Interests issued pursuant to this Plan, shall be duly authorized, validly issued, fully paid, and non-assessable.

Each distribution and issuance referred to in this Article IV shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Corporate Governance Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Interests and/or Rights Offering Securities (if any) shall be deemed as its agreement to the New Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.

E.      *Exemption from Registration Requirements and Certain DTC Matters.*

The [Subscription Rights, the] shares of the New Interests, or any other Securities, being issued, offered, or distributed under this Plan will be issued without registration under the Securities Act or any similar federal, state, or local Law in reliance upon section 1145 of the Bankruptcy Code to the maximum extent permitted by law. To the extent [the Subscription Rights,] the New Interests, or any other Securities, cannot be issued, offered, or distributed in reliance upon section 1145 of the Bankruptcy Code, including with respect to an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code relating to the definition of underwriter in section 2(a)(11) of the Securities Act, they will be issued without registration under the Securities Act or similar Law in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act (or another applicable exemption from the registration requirements of the Securities Act).

Securities issued in reliance upon section 1145 of the Bankruptcy Code (to the fullest extent permitted and available) (a) are exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable Law requiring registration prior to the offering, issuance, distribution, or sale of Securities, to the maximum extent possible, (b) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (c) are freely tradeable and transferable by any holder thereof that, at the time of transfer, (i) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, (iii) has not acquired such Securities from an "affiliate" within one year of such transfer, and (iv) is not an Entity that is an "underwriter" (as defined in section 2(a)(11) of the Securities Act). The offering, issuance, distribution, and sale of any securities in accordance with section 1145 of the Bankruptcy Code shall be made without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 1145(a) of the Bankruptcy Code.

The issuance of the New Interests or any other Securities shall not constitute an invitation or offer to sell, or the solicitation of an invitation or offer to buy, any securities in contravention of any applicable Law in any jurisdiction. No action has been taken, nor will be taken, in any jurisdiction that would permit a public offering of any of the New Interests (other than securities issued pursuant to section 1145 of the Bankruptcy Code) in any jurisdiction where such action for that purpose is required.

Any shares of the New Interests, or any other Securities, issued in reliance upon the exemption from registration provided by section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act will be "restricted securities." Such securities may not be resold, exchanged, assigned, or otherwise transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom and other applicable Law and subject to any restrictions in the New Corporate Governance Documents. The offering, issuance, distribution, and sale of such securities shall be made without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Interests to be issued under this Plan through the facilities of DTC (or another similar depository), the Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order with respect to the treatment of the New Interests to be issued under this Plan under applicable securities Laws.   DTC (or another similar depository) shall be required to accept and conclusively rely upon this Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Interests to be issued under this Plan is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.   Notwithstanding anything to the contrary in this Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including, for the avoidance of doubt, whether the New Interests to be issued under this Plan is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

It is not expected that any shares of the New Interests, or any other Securities, will be eligible for any depository services, including with respect to DTC, on or about the Effective Date.   Further, it is not intended that the New Interests will be listed on a national securities exchange (or a comparable non-U.S. securities exchange) on or about the Effective Date.

F.      *Corporate Existence.*

Except as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or any agreement, instrument, or other document incorporated therein, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under this Plan or otherwise, in each case, consistent with this Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite Filings, approvals, or consents required under applicable state, provincial, or federal Law).   After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.   After the Effective Date, one or more of the Reorganized Debtors may be disposed of, merged with another entity, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.   On and after the Effective Date, except as otherwise provided in this Plan, the Plan Supplement, or the Confirmation Order, each Reorganized Debtor may operate its businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

H.       *Cancelation of Existing Securities and Agreements*.

On the later of the Effective Date and the date on which distributions are made pursuant to this Plan (if not made on the Effective Date), except for the purpose of evidencing a right to a distribution under this Plan or as otherwise provided in this Plan, the Plan Supplement, the Confirmation Order, or the Exit ~~Facilities~~Financing Documents, or any agreement, instrument, or other document incorporated therein, all notes, Securities, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (collectively, the "Canceled Instruments"), shall be canceled and the rights of the Holders thereof and obligations of the Debtors (and, as applicable under bankruptcy and non-bankruptcy Law, of the non-Debtor Affiliates) thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no force and effect without any need for further action or approval of the Bankruptcy Court or for a Holder to take further action, and the Agents and Holders, as applicable, shall be discharged and released and shall not have any continuing duties or obligations thereunder.  Holders of or parties to such Canceled Instruments will have no rights arising from or relating to such Canceled Instruments, or the cancelation thereof, except the rights provided for or reserved pursuant to this Plan, the Confirmation Order, or the Exit ~~Facilities~~Financing Documents. Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Article VI hereof, to the extent canceled pursuant to this paragraph, the Debt Documents shall continue in effect solely to the extent necessary to:  (a) permit Holders of Claims or Interests under the Debt Documents to receive and accept their respective Plan Distributions on account of such Claims or Interests, if any, subject to any applicable charging Liens; (b) permit the Disbursing Agent or other Agents, as applicable, to make Plan Distributions on account of the Allowed Claims under the Debt Documents, subject to any applicable charging Liens; (c) preserve any rights of each Agent (on its own behalf or on behalf of any applicable Holder) thereunder, respectively, to maintain, exercise, and enforce any applicable rights of indemnity, reimbursement, or contribution, or subrogation or any other claim or entitlement; (d) preserve any rights of each Agent (on its own behalf or on behalf of any applicable Holder) thereunder, respectively, to maintain, enforce, and exercise their respective liens, including any charging liens, as applicable, under the terms of the applicable agreements, or any related or ancillary document, instrument, agreement, or principle of law, against any money or property distributed or allocable on account of such Claims or Interests, as applicable; and (e) preserve the rights of each Agent (on its own behalf or on behalf of any applicable Holder), to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including, but not limited to, enforcing any obligations owed to any such Agent (on its own behalf or on behalf of any applicable Holder), as applicable, under this Plan, the Plan Supplement, the Confirmation Order, or other document incorporated therein.  Except as provided in this Plan (including Article VI hereof), the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of this Plan, on the Effective Date, the Agents and each Holder, and their respective agents, successors, and assigns, shall be automatically and fully discharged and released of all of their duties and obligations associated with the Debt Documents, as applicable.

I.       *Corporate Action*.

On the Effective Date, or as soon as reasonably practicable thereafter, except as otherwise provided in this Plan, the Plan Supplement, or the Confirmation Order, all actions contemplated under the Confirmation Order, this Plan, and the Plan Supplement shall be deemed authorized and approved in all respects, including:  (a) adoption or assumption, as applicable, of the Compensation and Benefit Programs in accordance with the terms set forth herein, or in the Plan Supplement, as applicable; (b) discharge of the duties of, and the dissolution of, the then-existing board of directors of WeWork Parent and selection of the directors or managers, as applicable, and officers for the Reorganized Debtors, including the appointment of the New Board, which selection, appointment, and election shall be as determined in accordance with the Corporate Governance Term Sheet; (c) the issuance and distribution of the New Interests and any other Securities contemplated in this Plan, and the Plan Supplement; (d) implementation

of the Restructuring Transactions, and performance of all actions and transactions contemplated hereby and thereby (including, for the avoidance of doubt, causing Reorganized WeWork to become the new holding company of the Reorganized Debtors on or prior to the Effective Date); (e) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date); (f) adoption, execution, delivery, and/or Filing of the New Corporate Governance Documents; (g) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (h) entry into the Exit LC Facilit~~ies~~y and the execution, delivery, and Filing of the Exit LC Facility Documents; (i) execution of the Exit Equity Commitment and the execution, delivery, and Filing of the Exit Equity Commitment Documents (j) adoption of the MIP by the New Board and issuance of any Emergence Awards (each if applicable); and ~~(j)~~ (k) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions (whether before, on, or after the Effective Date).

Except as otherwise provided in this Plan or the Plan Supplement, all matters provided for in this Plan and the Plan Supplement involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with this Plan and the Plan Supplement shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equity holders, members, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.

On or, as applicable, prior to the Effective Date, except as otherwise provided in this Plan or the Plan Supplement, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Interests, the Exit ~~Facility~~Financing Documents, the New Corporate Governance Documents, the Plan Supplement, any other Definitive Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing (to the extent not previously authorized by the Bankruptcy Court). The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy Law.

J.      *New Corporate Governance Documents*.

On or as soon as reasonably practicable after the Effective Date, except as otherwise provided in this Plan or the Plan Supplement and subject to local Law requirements, the New Corporate Governance Documents (which shall be consistent with the RSA, this Plan, and the Plan Supplement) shall be automatically adopted or amended in a manner consistent with the terms and conditions set forth in the Corporate Governance Term Sheet, which shall be reasonable and customary, and shall be acceptable to the Debtors ~~and Required Consenting Stakeholders~~, Cupar, and subject to the consent rights set forth in the RSA and shall supersede any existing organizational documents. To the extent required under this Plan, the Plan Supplement, or applicable non-bankruptcy Law, each of the Reorganized Debtors will File its New Corporate Governance Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable Law of the respective state or country of organization. The New Corporate Governance Documents will (a) authorize the issuance of the New Interests and (b) prohibit the issuance of non-voting equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

~~The New Board will be composed of 7 directors, including (a) 3 members appointed by the SoftBank Parties, (b) 2 members to be appointed by the Required Consenting AHG Noteholders, (c) 1~~

50

~~independent member appointed as set forth in the Corporate Governance Term Sheet~~, and (d) the Chief Executive Officer.

After the Effective Date, each Reorganized Debtor may amend and restate its respective New Corporate Governance Documents as permitted by Laws of the respective states, provinces, or countries of incorporation and the New Corporate Governance Documents.

On the Effective Date, Reorganized WeWork shall enter into and deliver the New Stockholders Agreement and the Registration Rights Agreement with respect to each Holder of New Interests, which shall become effective and be deemed binding in accordance with their terms and conditions upon the parties thereto without further notice to or order of the Bankruptcy Court, act, or action under applicable Law, regulation, order, or rule or the vote, consent, authorization, or approval of an Entity (other than the relevant consents required by any Definitive Document).  Holders of New Interests shall be deemed to have executed the New Stockholders Agreement and the Registration Rights Agreement and be parties thereto, without the need to deliver signature pages thereto.

K.    *Challenges*.

Effective upon entry of the Confirmation Order, all Challenges (as defined in Final Cash Collateral Order) shall be deemed withdrawn, settled, overruled, or otherwise resolved.

L.    *Section 1146 Exemption*.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable Law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Interests and the Exit LC Facilit~~ies~~y, (b) the Restructuring Transactions, (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (d) the making, assignment, or recording of any lease or sublease, (e) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit LC Facilit~~ies~~y, or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and upon entry of the Confirmation Order, the appropriate state or local government officials or agents shall forego the collection of any such tax or government assessment and accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing, other than in respect of any tax imposed under any foreign Law), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

51

M.      [*Management Incentive Plan*.]

[The MIP shall be established and reserved for grants to be made from time to time from such pool to employees (including officers), and directors of the Reorganized Debtors at the discretion of the New Board following the Effective Date.  The terms and conditions (including, without limitation, with respect to participants, allocation, timing, and the form and structure of the equity or equity-based awards) shall be determined at the discretion of the New Board after the Effective Date; *provided* that Emergence Awards may be allocated on or prior to the Effective Date as emergence grants to retain or recruit individuals selected to serve in key senior management positions on or after the Effective Date, subject to the terms and conditions, including, but not limited to, with respect to form, allocated percentage of the MIP, structure, and vesting, determined by, in each case, the Required Consenting Stakeholders.]

N.      *Employee and Retiree Benefits*.

Subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA, and except as otherwise provided in this Article IV.N, all Compensation and Benefits Programs shall be assumed by the Reorganized Debtors [and the Reorganized Debtors shall be authorized to continue the Compensation and Benefits Programs and shall continue to honor the terms thereof]; *provided*, *however*, that in accordance with the New Corporate Governance Documents, the Reorganized Debtors may review, amend, terminate, or modify any of the foregoing programs in accordance with applicable Law and the terms of the applicable Compensation and Benefits Program.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

O.      *Preservation of Causes of Action*.

In accordance with section 1123(b) of the Bankruptcy Code, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of this Plan to the contrary, other than any Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

**The Reorganized Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Retained Causes of Action of the Debtors against it.  The Debtors and the Reorganized Debtors (as applicable) expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity (except as set forth in Article VIII.C).  Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor without the need for any objection or responsive pleading by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  The Reorganized Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy

52

Court.  If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or the Reorganized Debtors, as applicable, and the objecting party for 30 days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order (and for the avoidance of doubt, any Causes of Action on the Schedule of Retained Causes of Action shall not be expressly relinquished, exculpated, released, compromised, or settled in this Plan), the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtors through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in this Plan.

### ARTICLE V.
### [TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES]

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*.

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are Unexpired Leases of non-residential real property that are not expressly assumed as set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, which schedule shall be reasonably acceptable to the Required Consenting Stakeholders subject to the consent rights of the RSA; (3) have previously expired or terminated pursuant to their own terms or agreement of the parties thereto, forfeiture or by operation of law; (4) have been previously assumed or rejected by the Debtors pursuant to a Final Order; or (5) any obligations of WeWork Inc. arising under contracts or leases that are not assumed; or (6) are, as of the Effective Date, the subject of (a) a motion to reject that is pending or (b) an order of the Bankruptcy Court that is not yet a Final Order.  For the avoidance of doubt, the Unexpired Leases and Executory Contracts described in subsection (1) of this paragraph will be deemed rejected pursuant to section 365 of the Bankruptcy Code.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case, prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, as clarified by the Extension Order.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases

(in each case, including with agreed modifications as applicable) as set forth in this Plan, or the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, in the Schedule of Rejected Executory Contracts and Unexpired Leases, or in the Schedule of Assumed Executory Contracts and Unexpired Leases (as applicable), assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date (unless approved by the Court pursuant to an early order). Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, the effective date of the rejection of any such Unexpired Lease shall be the later of (a) the date set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases (b) the date upon which the Debtors notify the affected landlord and such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that they have surrendered the premises and, as applicable, (i) turning over keys issued by the landlord, key codes, and/or security codes, if any, to the affected landlord or (ii) notifying such affected landlord or such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that the property has been surrendered, all WeWork-issued key cards have been disabled and, unless otherwise agreed as between the Debtors and the landlord, each affected landlord is authorized to disable all WeWork-issued key cards (including those of any members using the leased location) and the landlord may rekey the leased premises.  Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon assumption by the Debtors; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of this Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date in accordance with any applicable terms herein (including any consent rights set forth in the RSA), unless otherwise settled by the applicable Debtors and counterparties.  Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases identified in this <u>Article V.A</u> and in the Plan Supplement at any time through and including 45 days after the Effective Date, ~~with~~<u>subject to</u> the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~<u>rights set forth in the RSA</u>.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, the transactions contemplated by this Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or any other transaction, event, or matter that would (a) result in a violation, breach or default under such Executory Contract or Unexpired Lease, (b) increase, accelerate or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under such Executory Contract or Unexpired Lease, or (c) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the

Reorganized Debtors pursuant to the applicable Executory Contract or Unexpired Lease.  Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption or assumption and assignment thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.  To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party or parties to such Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in this Plan, after the Confirmation Date, an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date may not be assumed by the applicable Debtor(s) unless the applicable lessor or contract counterparty has (a) consented to such assumption, (b) objected to the rejection of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be rejected and should instead be assumed (and such objection remains outstanding), or (c) in the case of Unexpired Leases, consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's prior consent, the "Deferred Deadline"), in which case for purposes of clause (c) the applicable Debtor(s) shall have until the Deferred Deadline to assume such Unexpired Lease, subject to the applicable lessor's right to object to such assumption, or such Unexpired Lease shall be deemed rejected.  For any Executory Contract or Unexpired Lease assumed pursuant to this paragraph, all Cure Obligations shall be satisfied on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to the Cure Obligation, such dispute shall be addressed in accordance with Article V.D.

For the avoidance of doubt, at any time prior to the applicable deadlines set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, and as the same may be extended, the Debtors may reject any Executory Contract or Unexpired Lease pursuant to a separate motion Filed with the Bankruptcy Court.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules require the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the ~~Confirmation~~Combined Hearing (to the extent not resolved by the parties prior to the ~~Confirmation~~Combined Hearing).

If the effective date of any rejection of an Executory Contract or Unexpired Lease is after the Effective Date pursuant to the terms herein, the Reorganized Debtors shall serve a notice on the affected counterparty setting forth the deadline for Filing any Claims arising from such rejection.

B.       *Indemnification Obligations*.

All indemnification provisions, consistent with applicable Law, in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, restructuring advisors, and other professionals and/or agents or representatives of, or acting on behalf, of the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and subject to the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA, shall survive the effectiveness of this Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, as applicable, than those that existed prior to the Effective Date; *provided* that the Reorganized Debtors shall retain the ability not to indemnify former directors of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes intentional fraud, gross negligence, or willful misconduct (subject to the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA); *provided*, *further*, that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date.

C.       *Claims Based on Rejection of Executory Contracts or Unexpired Leases*.

Entry of the Confirmation Order shall constitute a Final Order approving the rejections, if any, of any Executory Contracts or Unexpired Leases on the Schedule of Rejected Executory Contracts and Unexpired Leases.  Any objection to the rejection of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before 10 days after the service of notice of rejection on the affected counterparty.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Claims Agent within 30 days after the later of (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection and (b) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**  For the avoidance of doubt, unless otherwise agreed, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Reorganized Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to (i) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Reorganized Debtors, as applicable, or any third party, and (ii) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by Filing a Claim in accordance with this Article V.C.  Claims arising from the rejection of any of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

56

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, satisfy all Cure Obligations relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan; *provided* that, if the effective date of such assumption occurs prior to the Effective Date, such payment shall be on the effective date of such assumption or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all objections to any Cure Obligations set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases must be Filed with the Bankruptcy Court on or before 14 days after the service of the Schedule of Assumed Executory Contracts and Unexpired Leases on affected counterparties.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure Obligations shall be deemed fully satisfied, released, and discharged upon satisfaction by the Debtors or the Reorganized Debtors of the applicable Cure Obligations; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from satisfying any Cure Obligations despite the failure of the relevant counterparty to File such request for satisfaction of such Cure Obligations.  The Reorganized Debtors also may settle Cure Obligations or disputes related thereto without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before 14 days after the service of notice of assumption on affected counterparties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment.

If there is any dispute regarding any Cure Obligations, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, then satisfaction of any Cure Obligations shall occur as soon as reasonably practicable after (a) entry of a Final Order resolving such dispute and approving such assumption (and, if applicable, assignment) or (b) as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  Any such disputes shall be scheduled for hearing upon request of the affected counterparty or the Debtors or the Reorganized Debtors, as applicable, at the earliest convenience of the Court; *provided* that no hearing will be scheduled on less than 10 days' notice to the affected counterparty and the Debtors or the Reorganized Debtors, as applicable, and that no such hearing shall be scheduled less than 30 days after the Effective Date unless agreed to between the Debtors or the Reorganized Debtors, as applicable, and the affected counterparty.

In the event of a Court-Ordered Cure Obligation, the Debtors shall have the right (~~with~~subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA) to (a) satisfy the Court-Ordered Cure Obligation as soon as reasonably practicable thereafter and assume such Executory Contract or Unexpired Lease in accordance with the terms herein or, (b) within 14 days of such determination, add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected on the later of the (i) date of entry of the Court-Ordered Cure Obligation and, (ii) solely with respect to Unexpired Leases, the date upon which the Debtors notify the landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable, and in the case of an Unexpired Lease, the Debtors shall, pursuant to

section 365(d)(4) of the Bankruptcy Code, immediately surrender the related premises to the lessor unless otherwise agreed with the applicable lessor, subject to the applicable counterparty's right to object to such rejection; *provided* that, after the deadline to assume an Executory Contract or Unexpired Lease set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, an Executory Contract or Unexpired Lease may only be added to the Schedule of Rejected Executory Contracts and Unexpired Leases if (1) the applicable counterparty consents to such rejection, (2) the applicable counterparty objected to the assumption or cure of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be assumed and should instead be rejected, including alleging an incurable default (and such objection remains outstanding), or (3) the court orders a Court-Ordered Cure Obligation.  Notwithstanding anything to the contrary herein, the Reorganized Debtors and the applicable counterparty shall be entitled to the full benefits of the Executory Contract or Unexpired Lease (including without limitation, any license thereunder) pending the resolution of any Cure Obligation dispute.

At least 7 days prior to the first day of the ~~Confirmation~~Combined Hearing, the Debtors shall provide for notices of proposed assumption or assumption and assignment and proposed Cure Obligations to be sent to applicable parties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment.  Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption, upon the satisfaction of all applicable Cure Obligations.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (ii) the effective date of such assumption, or (iii) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that nothing herein shall affect the allowance of Claims or any Cure Obligation agreed to by the Debtors in any written agreement amending or modifying any Executory Contract or Unexpired Lease (subject to the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA) prior to assumption pursuant to this Plan or otherwise**.

Notwithstanding anything herein to the contrary, upon assumption of an Unexpired Lease, the Debtors or the Reorganized Debtors, as applicable, shall be obligated to pay or perform, unless waived or otherwise modified by any amendment to such Unexpired Lease mutually agreed to by the applicable landlord and Debtor(s), any accrued, but unbilled and not yet due to be paid or performed, obligations as of the applicable deadline to File objections or disputes to the Cure Obligations for such Unexpired Lease under such assumed Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, under the Unexpired Lease, regardless of whether such obligations arose before or after the Effective Date, when such obligations become due in the ordinary course; *provided* that all rights of the parties to any such assumed Unexpired Lease to dispute amounts asserted thereunder are fully preserved; *provided, further*, that nothing herein shall relieve the Debtors or the Reorganized Debtors, as applicable, from any amounts that come due between (a) the applicable deadline to File objections or disputes to the Cure Obligation for such Unexpired Lease and (b) the effective date of assumption for such Unexpired Lease.

E.      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*.

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any applicable non-bankruptcy Law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.      *Insurance Policies*.

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under this Plan.  Unless otherwise provided in this Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in this Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be Filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect, on or after the Petition Date, with respect to conduct occurring prior to, on, or after the Petition Date, and all members, directors, managers, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such members, directors, managers, and officers remain in such positions after the Effective Date[; *provided*, *however*, that the Reorganized Debtors shall retain the ability to terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies for any Causes of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence, bad faith, or willful misconduct.]

G.      *Reservation of Rights*.

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, subject to the consent rights ~~of~~set forth in the ~~Required Consenting Stakeholders~~RSA, or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.      *Nonoccurrence of Effective Date*.

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Employee Compensation and Benefits*.

1.      Compensation and Benefit Programs.

Subject to the ~~reasonable consent of the Required Consenting Stakeholders, the RSA~~RSA (including the consent rights set forth therein), and the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a)      all employee equity or equity-based incentive plans (and the awards granted thereunder), and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Parent Interests; *provided* that, notwithstanding the foregoing or anything to the contrary herein, the Debtors are authorized and directed to pay the Cash component of any bonus programs in accordance with the terms of such program (including, for the avoidance of doubt, the timing of any payments, which shall not be accelerated);

(b)      Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court;

(c)      any Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any Compensation and Benefits Program; and

(d)      any Compensation and Benefits Programs for the benefit of the Existing Board Members.

Any assumption of Compensation and Benefits Programs pursuant to the terms herein shall be deemed not to trigger (a) any applicable change of control, immediate vesting, or termination (including, in each case, any similar provisions therein) or (b) an event of "Good Reason" (or a term of like import), in each case as a result of the consummation of the Restructuring Transactions or any other transactions contemplated by this Plan.  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to this Plan other than those applicable immediately prior to such assumption.

2.      Workers' Compensation Programs.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (a) all applicable workers' compensation Laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or the Reorganized Debtors' defenses, Causes of Action, or other rights under applicable Law, including non-bankruptcy Law, with respect to any such

contracts, agreements, policies, programs, and plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state Law.

J.       *Intellectual Property Licenses and Agreements*.

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to this Plan and shall be assumed by the respective Debtors or Reorganized Debtors, as applicable, and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors as set forth in this Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

K.       *Contracts and Leases Entered into after the Petition Date*.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order, except as may be agreed to by the counterparties to such contracts and leases.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.       *Distributions on Account of Claims or Interests Allowed as of the Effective Date*.

Unless otherwise provided in this Plan, on or as soon as reasonably practicable after the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in this Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the foregoing, (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of this Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement

61

between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.  Thereafter, a Distribution Date shall occur no less frequently than once in every 180-day period, as necessary, in the discretion of the Reorganized Debtors.

B.      *Disbursing Agent.*

Except as otherwise set forth in this Plan or the Plan Supplement, all distributions under this Plan shall be made by the applicable Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties (unless otherwise ordered by the Bankruptcy Court).

C.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business without any further notice to, or action, order, or approval of the Bankruptcy Court.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions is and shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Unless otherwise provided in a Final Order from the Bankruptcy Court, if a Claim, other than one based on a Security that is traded on a recognized securities exchange, is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General.

Except as otherwise provided herein or in the Plan Supplement, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests, as applicable, as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of, the date of any such distribution (to the extent such address is not available in the Debtors' records, such Holder must

provide sufficient information to deliver the distribution); *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.      Minimum Distributions.

The Disbursing Agent shall not make any distributions to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest of Cash or otherwise where such distribution is valued, in the reasonable discretion of the applicable Disbursing Agent, at less than $250. When any distribution pursuant to this Plan on account of an Allowed Claim or Allowed Interest, as applicable, would otherwise result in the issuance of a number of shares of the New Interests that is not a whole number, the actual distribution of shares of the New Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of the New Interests to be distributed under this Plan shall be adjusted as necessary to account for the foregoing rounding. No fractional shares of the New Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. Each Allowed Claim or Interest to which these limitations apply shall be discharged pursuant to Article VIII.A of this Plan and its Holder shall be forever barred pursuant to Article VIII.A of this Plan from asserting that Claim against or Interest in the Reorganized Debtors or their property pursuant to Article VIII.A of this Plan.

Any amounts owed to a Holder of an Allowed Claim that is entitled to distributions in an amount less than $250 shall not receive distributions on account thereof, and each Claim shall be discharged pursuant to Article VIII.A of this Plan and its Holder is forever barred pursuant to Article VIII.A of this Plan from Asserting that Claim against the Reorganized Debtors or their property and such amount shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court).

4.      Undeliverable and Unclaimed Distributions.

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date without interest. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to this Article VI, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under this Plan that is an Unclaimed Distribution or remains undeliverable for a period of 90 days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such Unclaimed Distribution is comprised of the New Interests, such New Interests shall be canceled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, released, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. The Disbursing Agent shall adjust the distributions of the New Interests to reflect any such cancelation.

63

5.        Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.H hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such surrendered certificate or instrument shall be canceled solely with respect to the Debtors, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan, charging Liens, priority of payment, and indemnification rights.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

E.        *Manner of Payment*.

Except as otherwise provided in this Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, all distributions of the New Interests to the Holders of the applicable Allowed Claims or Allowed Interests, in each case if any, under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or the Reorganized Debtors, as applicable.

All distributions of Cash to the Holders of the applicable Allowed Claims or Allowed Interests, in each case if any, under this Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

At the option of the applicable Disbursing Agent, any Cash payment to be made hereunder may be made by check, automated clearing house (ACH), or wire transfer or as otherwise required or provided in applicable agreements.

F.        *Indefeasible Distributions*.

Except as otherwise provided in Article VI.L, any and all distributions made under this Plan shall be indefeasible and not subject to clawback or turnover provisions.

G.        *Compliance with Tax Requirements*.

In connection with this Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Disbursing Agent, and any other applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements; *provided* that any amounts withheld shall be deemed distributed to and received by the applicable recipient for all purposes under this Plan.  Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under this Plan shall deliver to the applicable Disbursing Agent or, if different, the applicable withholding agent, a properly

64

completed and duly executed IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8 (including any supporting documentation) (as applicable).

H.   *Allocations.*

Distributions in respect of Allowed Claims shall be, with respect to each specific Claim, allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.   *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, this Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

J.   *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

K.   *Preservation of Setoffs and Recoupment.*

Except as expressly provided in this Plan or the Plan Supplement, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or their applicable successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or their applicable successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

Notwithstanding anything to the contrary herein, nothing in this Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, or any successors to the Debtors, under this Plan, (ii) assertion of rights of setoff or recoupment, if any, in

connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Reorganized Debtors, or any successors of the Debtors.

L.      *Claims Paid or Payable by Third Parties*.

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors (as applicable) shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in this Plan or the Plan Supplement, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Disputed Claims Process*.

**The Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority (subject with respect to any Stub Rent Claims, to the consent rights ~~of the Required Consenting Stakeholders~~as set forth in the Bar Date Order and the RSA, as applicable) to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) file, settle, compromise, withdraw, or**

**litigate to judgment any objections to Claims as permitted under this Plan. All Proofs of Claim required to be Filed by this Plan that are Filed after the date that they are required to be Filed pursuant to this Plan shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims*.

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date. The Debtors, in their sole discretion, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under this Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

C.      *Claims Administration Responsibilities*.

With respect to all Classes of Claims and Interests, and except as otherwise specifically provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the sole authority (subject with respect to any Stub Rent Claims, to the consent rights ~~of the Required Consenting Stakeholders~~ set forth in the Bar Date Order and the RSA, as applicable) to: (a) File and prosecute Claim Objections; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise; (c) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Reorganized Debtors shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of this Plan. For the avoidance of doubt, except as otherwise provided in this Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all the rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Article IV.N of this Plan, unless such Causes of Action were released pursuant to Article VIII of this Plan.

D.      *Estimation of Claims and Interests*.

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable Law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in this Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest and does not provide otherwise, such

67

estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under this Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 7 days after the date on which such Claim or Interest is estimated.   Each of the foregoing Claims and Interests and objection, estimation, and resolution procedures are cumulative, not exclusive of one another, and shall be consistent with any procedures set forth in the Bar Date Order and subject to the consent rights set forth in the RSA.  Claims or Interest may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.      *Disputed Claims Reserve.*

On or before the Effective Date, the Reorganized Debtors incorporated in the U.S., subject to the consent ~~of the Required Consenting Stakeholders~~rights set forth in the RSA, shall establish one or more reserves of the applicable consideration for any Claims against any Debtor that are Disputed Claims as of the Distribution Record Date other than General Unsecured Claims, which reserves shall be administered by the Disbursing Agent.

After the Effective Date, the applicable Disbursing Agent shall hold such consideration in such reserve(s) in trust for the benefit of such Disputed Claims as of the Distribution Record Date, that are ultimately determined to be Allowed after the Distribution Record Date.  The Disbursing Agent shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III of this Plan solely to the extent of the amounts available in the applicable reserve(s).

Upon a Disputed Claim becoming disallowed by a Final Order or pursuant to Article VII.A, the applicable amount of the consideration that was in the disputed claims reserve on account of such Disputed Claim shall be canceled by the Reorganized Debtors or the applicable Disbursing Agent.  The Disbursing Agent shall adjust the distributions of the consideration to reflect any such cancelation.

[The Debtors may take the position that grantor trust treatment applies in whole or in part to any assets held in a disputed claims reserve.  To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations. Accordingly, subject to the immediately foregoing sentence, if such intended U.S. federal income tax treatment applied, then for U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as if such beneficiaries had received an interest in such account or fund's assets and then contributed such interests (in accordance with the Restructuring Transactions Exhibit) to such account or fund.  Alternatively, any assets held in a disputed claim reserve may be subject to the tax rules that apply to "disputed ownership funds" under section 1.468B–9 of the Treasury Regulations.][5]  To the extent such

---

[5]   Subject to ongoing review by all parties' tax teams pending finalization of the structure.  This particular language is meant to cross-refer to Treasury Regulations Section 1.468B-1(k).

U.S. federal income tax treatment applies, any such assets will be subject to entity-level taxation, which will be borne by such disputed ownership funds and the Reorganized Debtors, shall be required to comply with the relevant rules.  However, it is unclear whether these U.S. tax principles will apply to any such reserve and, as a result, the tax consequences of such reserve may vary.

F.       *Adjustment to Claims or Interests without Objection*.

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged (including pursuant to this Plan) on the Claims Register by the Reorganized Debtors (without the Reorganized Debtors having to File an application, motion, complaint, objection, Claim Objection, or any other legal proceeding seeking to object to such Claim or Interest) and without any further notice to or action, order, or approval of the Bankruptcy Court.

G.       *Time to File Objections to Claims*.

Any objections to Claims or Interests shall be Filed on or before the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Bankruptcy Court upon a motion by the Debtors or the Reorganized Debtors, as applicable.

H.       *Disallowance of Claims or Interests*.

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein or as agreed to by the Debtors or Reorganized Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such disallowed Claims shall not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order; *provided, however*, that not less than 14 days' notice to any Holders of General Unsecured Claims affected by the foregoing in this paragraph shall be provided (which such notice may be served on the affected claimants and may be Filed on an aggregate basis consistent with Bankruptcy Rule 3007(d)).**

I.       *Amendments to Claims*.

Except as provided in this Plan or the Confirmation Order, on or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, as applicable, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable Law.

J.       *No Distributions Pending Allowance*.

Notwithstanding any other provision of this Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that, if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

K.       *Distributions After Allowance*.

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under this Plan as of such date, without any interest to be paid on account of such Claim or Interest.

L.       *Single Satisfaction of Claims*.

Holders of Allowed Claims or Allowed Interests may assert such Claims against or Interests in the Debtors obligated with respect to such Claims or Interests, and such Claims and Interests shall be entitled to share in the recovery provided for the applicable Claim against or Interest in the Debtors based upon the full Allowed amount of such Claims or Interests.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of any Allowed Claim or Allowed Interest exceed the amount of the Allowed Claim or Allowed Interest.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS[6]**

A.       *Discharge of Claims and Termination of Interests*.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan or the Plan Supplement, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date,

---

[6]   For the avoidance of doubt, all releases remain subject to the ongoing investigation of the special committee of independent directors of the board.

70

and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted this Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims), Interests (other than the Intercompany Interests that are Reinstated), and Causes of Action subject to the occurrence of the Effective Date.

B.      *Release of Liens*.

**Except as otherwise provided herein, in the Exit ~~LC Facility Documents, Exit TLC Facility~~Financing Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, the DIP New Money Agents, the Exit LC Facility Agents, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.      *Releases by the Debtors*.

**Except as expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and**

implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, finally, and forever released, waived, and discharged, to the fullest extent permissible under applicable Law, by each and all of the Debtors, and each of their respective current and former non-SoftBank Parties Affiliates, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, fixed or contingent, liquidated or unliquidated, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or any other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Debt Documents and, the RSA, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Notes Exchange Transactions, the decision to File the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Transactions, and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable the Definitive Documents or any other contract instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the Restructuring Transactions, the pursuit of Confirmation and Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan as set forth in this Plan; or (b) any Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and

**made after due notice and opportunity for hearing; (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release; (g) essential to the Confirmation of this Plan; and (h) an exercise of the Debtors' business judgment.**

D.      *Releases by the Releasing Parties.*

**Effective as of the Effective Date, except as expressly set forth in this Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by this Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, this Plan, to the fullest extent permissible under applicable Law, each Releasing Party (other than the Debtors or the Reorganized Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the fullest extent permissible under applicable Law, each Debtor, Reorganized Debtor, and each other Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, fixed or contingent, liquidated or unliquidated, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors or their estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Debt Documents and the RSA, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Notes Exchange Transactions, the decision to File the Chapter 11 Cases, any intercompany transactions, and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Definitive Documents or any other contract instrument, release or other agreement or document created or entered into in connection with the Definitive Documents, or the Restructuring Transactions, the pursuit of Confirmation and Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising on or after the Effective Date of any party or Entity under this Plan, any Restructuring Transaction, or any document,**

73

instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan as set forth in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section D, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the releases set forth in this Section D is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released pursuant to this Article VIII.D; (e) in the best interests of the Debtors and their estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action of any kind whatsoever released pursuant to this Article VIII.D.

E.      *Exculpation*.

Except as otherwise specifically provided in this Plan or the Confirmation Order, and to the fullest extent permitted by law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any and all Claims, Interests, obligations, rights, suits, damages, or Causes of Action whether direct or derivative, for any claim related to any act or omission arising prior to the Effective Date, in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, consummation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Disclosure Statement or this Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes for, or Confirmation of, this Plan, the funding of this Plan, the occurrence of the Effective Date, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with this Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, or upon any other act or omission, transaction, agreements, event, or other occurrence taking place on or before the Effective Date related to or relating to any of the foregoing (including, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan), except for Claims or Causes of Action related to any act or omission of an Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have, and upon Consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.  Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any Effective Date obligation under this Plan or any

74

**document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

F.      *Injunction.*

**Upon entry of the Confirmation Order, except as otherwise expressly provided in this Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been extinguished, released, discharged, or are subject to exculpation, whether or not such Entities vote in favor of, against or abstain from voting on this Plan or are presumed to have accepted or deemed to have rejected this Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, Affiliates, and Related Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) except as otherwise provided under this Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation, or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, Cause of Action, liability or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Interests, or Causes of Action released or settled pursuant to this Plan; and (f) if such Entity (alone or together with a group of people that is treated as a single entity under the applicable rules) is a "50-percent shareholder" as defined under section 382(g)(4)(D) of the Tax Code with respect to any Debtor, claiming a worthless stock deduction for U.S. federal income tax purposes with respect to the Interests of WeWork Parent for any tax period of such Entity ending prior to the Effective Date.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.**

**With respect to Claims or Causes of Action that have not been released, discharged, or are not subject to exculpation, no Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, any Exculpated Party, or any Released Party that relates to any act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of, in whole or in part, the Chapter 11 Cases**

**(including the Filing and administration thereof), the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale, exchange, issuance, termination, repayment, extension, amendment, or rescission of any debt instrument or Security of the Debtors or the Reorganized Debtors, the RSA, the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan, the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, any other in- or out-of-court restructuring efforts of the Debtors; any intercompany transactions, any Restructuring Transaction, the RSA, the formulation, preparation, dissemination, negotiation, or Filing of the RSA and the Definitive Documents, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, this Plan, or any of the other Definitive Documents, the Notes and the Indentures, the pursuit of Confirmation, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Exculpated Party on this Plan or the Confirmation Order in lieu of such legal opinion), without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action.  To the extent the Bankruptcy Court may have jurisdiction over such colorable Claim or Cause of Action, the Bankruptcy Court shall have sole and exclusive jurisdiction to adjudicate such underlying Claim or Cause of Action should it permit such Claim or Cause of Action to proceed.**

G.      *Gatekeeper Provision.*

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Debtor, Reorganized Debtor, Exculpated Party, or Released Party and is not a Claim that the Debtors released under this Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (b) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

H.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely

because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.        *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

J.        *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (a) such Claim has been adjudicated as non-contingent or (b) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN**

A.        *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied, ~~in a manner acceptable to the Required Consenting Stakeholders~~subject to the consent rights set forth in the RSA, (and, solely with respect to Article IX.A.6 below as it pertains to the Agent Professionals, to the applicable Agents) or waived, ~~with~~subject to the ~~prior written~~ consent ~~(email being sufficient) of the Required Consenting Stakeholders~~rights set forth in the RSA (and, solely with respect to Article IX.A.6 below as it pertains to the Agent Professionals, the applicable Agents (or as otherwise indicated)), pursuant to the provisions of Article IX.B hereof:

~~1. the RSA shall remain in full force and effect, all conditions shall have been satisfied or waived thereunder (other than any conditions related to the occurrence of the Effective Date), and there shall be no breach thereunder that, after the expiration of any applicable notice or any cure period, would give rise to a right to terminate the RSA;~~

1.        ~~2.~~ the Final Cash Collateral Order shall be consistent with the RSA in all respects (including the consent rights set forth therein) and shall not have been vacated, stayed, or modified without the prior written consent of the Required Consenting Stakeholders;

2.        ~~3.~~ the DIP LC/TLC Order shall be consistent with the RSA in all respects (including the consent rights set forth therein) and shall not have been vacated, stayed, or modified without the prior written consent of the Required Consenting Stakeholders;

3.        ~~4.~~ each document or agreement constituting a Definitive Document and all documents contemplated by the RSA shall have been executed and/or effectuated, in

form and substance consistent with the RSA and ~~acceptable to the Required Consenting Stakeholders~~<ins>subject to the consent rights set forth therein</ins>;

4. ~~5.~~ the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan, and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

5.      6. [all obligations of the Debtors ~~under~~and the DIP New Money Lenders under the Exit Equity Commitment Documents (if any), including those required to effectuate the Exit Equity Commitment, shall have been satisfied in accordance with the terms thereof and this Plan;]

6.      7. all obligations of the Debtors under the Rights Offering Documents (if any) shall have been satisfied~~.~~;

7.      8. [the Rights Offering (if any) shall have been fully consummated pursuant to the Rights Offering Procedures and the Rights Offering Documents and consistent in all material respects with this Plan and the RSA;]

8.      the Exit Equity Commitment Documents (if applicable) shall have been duly executed and delivered by all Entities party thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Exit Equity Commitment Documents shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Equity Commitment Documents and the execution of the Exit Equity Commitment shall have occurred;

9.      [the Exit LC Facility Documents shall have been duly executed and delivered by all Entities party thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Exit LC Facility Documents shall have been satisfied or duly waived in writing in accordance with the terms of the Exit LC Facility Documents and the closing of the Exit LC Facilit~~ies~~y shall have occurred;]

10.     all fees, expenses, and premiums payable pursuant to the RSA, Plan, Definitive Documents, or pursuant to any order of the Bankruptcy Court shall have been paid by the Debtors or the Reorganized Debtors, as applicable, and the Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall have been paid in full in Cash on the Effective Date as set forth in Article II.F of this Plan;

11.     all Allowed Professional Fee Claims required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses in full after the Effective Date have been placed in the professional fee escrow account as set forth in, and in accordance with, this Plan;

12.     the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance consistent with the RSA and ~~acceptable to the Required Consenting Stakeholders~~subject to the consent rights set forth therein, and such order shall have become a final and non-appealable order, which shall not have been stayed, reversed, vacated, amended, supplemented, or otherwise modified, unless waived by the Required Consenting Stakeholders;

13.     the Debtors shall have otherwise substantially consummated the Restructuring Transactions, all transactions contemplated in the RSA (subject to, and in accordance with, the consent rights set forth therein), and all transactions contemplated by this Plan and in the Definitive Documents, in a manner consistent in all respects with this Plan, unless waived by the Required Consenting Stakeholders;

14. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (and any amendment(s) thereto) shall have been Filed and all documents therein shall continue to satisfy the RSA in all respects; ~~and~~

15. all financing necessary for this Plan shall have been obtained and any documents related thereto, without duplication of the conditions described otherwise in this Article IX.A, shall have been executed, delivered, and be in full force and effect (with all conditions precedent thereto, other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred, having been satisfied or waived), and ~~shall be in a form and substance acceptable to the Required Consenting Stakeholders.~~subject to the consent rights set forth in the RSA; and

16. immediately prior to the Plan Effective Date, the Debtors shall possess no less than $300 million in cash (inclusive of Exit Equity Commitment but exclusive of any proceeds generated by the sales of WeWork India and Japan).

B. *Waiver of Conditions*.

Except as otherwise specified in this Plan, and subject to the limitations contained in and other terms of the RSA, any one or more of the conditions to Consummation (or any component thereof) set forth in this Article IX  may be waived only if waived in writing (email being sufficient) by the Debtors and the Required Consenting Stakeholders without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

C. *Effect of Failure of Conditions*.

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan, the Disclosure Statement, the RSA, or any other Definitive Document shall: (a) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, any Holders of Claims or Interests, or any other Entity; *provided* that all provisions of this Plan, the RSA, or any other Definitive Document that survive termination thereof shall remain in effect in accordance with the terms thereof.

D. *Substantial Consummation*.

"Substantial Consummation" of this Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A. *Modification and Amendments*.

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the RSA, the Debtors reserve the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that any such modification (whether material or immaterial) shall be acceptable in form and substance to the Required Consenting Stakeholders.  Subject to those restrictions on modifications set forth in this Plan, the RSA, the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of

the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

B.      *Effect of Confirmation on Modifications*.

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*.

To the extent permitted by the RSA and subject to the consent rights therein, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any claims by the Debtors, Claims or Interests, or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Obligations

pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to Holders of Allowed Claims and Holders of Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

(e)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

(g)     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, or the Disclosure Statement, including the RSA;

(h)     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(i)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

(j)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan, including any action that is intended or is reasonably likely to directly or indirectly prevent, impede, hinder, adversely affect, and/or delay any of the Restructuring Transactions, or any actions or efforts of the Debtors and Reorganized Debtors and/or their ability to consummate this Plan;

(k)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the exculpations, discharges, injunctions, releases, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L hereof;

(m)   enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

(o)   determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the RSA;

(p)   enter an order or final decree concluding or closing the Chapter 11 Cases;

(q)   adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated therein;

(r)   consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(s)   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(t)   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

(u)   hear and determine matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(v)   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof, whether occurring prior to or after the Effective Date;

(w)   enforce all orders previously entered by the Bankruptcy Court; and

(x)   hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Corporate Governance Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*.

Subject to Article IX.A hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have, accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

B.      *Additional Documents*.

On or before the Effective Date, and consistent in all respects with the terms of the RSA, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the RSA; *provided* that any and all such agreements and documents shall be in form and substance acceptable to the Debtors and ~~the Required Consenting Stakeholders~~subject to the consent rights set forth in the RSA.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C.      *Statutory Committee and Cessation of Fee and Expense Payment*.

On the Effective Date, the Creditors' Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee or any other statutory committees after the Effective Date.

D.      *Reservation of Rights*.

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor, Consenting Stakeholder, Agent, or party under the DIP Facilities, as applicable, with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, or Agent, as applicable, with respect to the Holders of Claims or Interests prior to the Effective Date.

E.       *Successors and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.       *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

| **If to the Debtors:** | **If to Counsel to the Debtors:** |
|---|---|
| WeWork Inc.<br>12 East 49th Street, 3rd Floor<br>New York, NY 10017<br>Attention:  Pamela Swidler, Chief Legal Officer<br>Email address:  pamela.swidler@wework.com | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., Steven N. Serajeddini, P.C., Ciara Foster, Connor K. Casas<br>Email address:  edward.sassower@kirkland.com, joshua.sussberg@kirkland.com, steven.serajeddini@kirkland.com, ciara.foster@kirkland.com, connor.casas@kirkland.com<br><br>-and-<br><br>Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Ryan T. Jareck, Esq.<br>Email address:  msirota@coleschotz.com, wusatine@coleschotz.com, fyudkin@coleschotz.com, rjareck@coleschotz.com |
| **If to the U.S. Trustee:** | **If to Counsel to the DIP Agent:** |
| Office of The United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard, Suite 2100<br>Newark, NJ 07102<br>Attention:  Fran B. Steele, Esq., Peter J. D'Auria, Esq.<br>Email address:  Fran.B.Steele@usdoj.gov, Peter.J.D'Auria@usdoj.gov | Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001-2163<br>Attention: Brian Kinney, Michael Price, George Zhang<br>Email address:  bkinney@milbank.com, mprice@milbank.com, gzhang@milbank.com, |
| **If to Counsel to the Creditors' Committee:** | **If to Counsel to the SoftBank Parties:** |

| | |
|---|---|
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attention:  Gabe Sasson, Kris Hansen, Frank Merola, Matt Friedrick<br>Email address:  gabesasson@paulhastings.com, krishansen@paulhastings.com, frankmerola@paulhastings.com, matthewfriedrick@paulhastings.com | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attention:  Gabriel A. Morgan, Kevin H. Bostel, Eric L. Einhorn<br>Email address:  gabriel.morgan@weil.com, kevin.bostel@weil.com, eric.einhorn@weil.com<br><br>-and-<br><br>Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue, 25 Main Street<br>New York, NY 10110<br>Attention:  Paul R. DeFilippo, James N. Lawlor<br>Email address:  pdefilippo@wmd-law.com, jlawlor@wmd-law.com |
| **If to Counsel to the Ad Hoc Group:** | **If to Counsel to Cupar:** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention:  Eli J. Vonnegut; Natasha Tsiouris; Jonah A. Peppiatt<br>Email address:  eli.vonnegut@davispolk.com, natasha.tsiouris@davispolk.com, jonah.peppiatt@davispolk.com<br><br>Greenberg Traurig, LLP<br>500 Campus Drive, Suite 400<br>Florham Park, NJ 07932<br>Attention:  Alan J. Brody<br>Email address:  brodya@gtlaw.com | Cooley LLP<br>1333 2nd Street, Suite 400<br>Santa Monica, CA 90401<br>Attention:  Tom Hopkins, Cullen D. Speckhart, Logan Tiari, Michael A. Klein<br>Email address:  thopkins@cooley.com, cspeckhart@cooley.com, ltiari@cooley.com, mklein@cooley.com |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, an Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Term of Injunctions or Stays*.

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until**

**the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**Notwithstanding anything to the contrary herein (except with respect to indemnification obligations under assumed Unexpired Leases, which shall remain Unimpaired), the automatic stay imposed by section 362 of the Bankruptcy Code and the injunctions set forth in <u>Article VIII.F</u> of this Plan shall remain applicable to Claims that have the benefit of an applicable insurance policy arising prior to the Effective Date up to the amount of the applicable SIR or deductible, which Claims shall be treated as General Unsecured Claims.**

H.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the RSA, this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

I.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are an integral part of this Plan and are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/WeWork or the Bankruptcy Court's website at https://www.njb. uscourts.gov/.

J.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration shall be consistent with the RSA and ~~be in form and substance acceptable to the Required Consenting Stakeholders~~<u>subject to the consent rights set forth therein</u>.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the Debtors' or the Reorganized Debtors' consent, as applicable (but subject to the terms of the RSA); and (c) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and

attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan and any previous plan, and, therefore, no such parties nor individuals nor the Reorganized Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

L.       *Closing of Chapter 11 Cases.*

On and after the Effective Date, the Debtors or the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case(s) listed in the Restructuring Transactions Exhibit as having those Chapter 11 Case(s) remain open following the Effective Date (as the Debtors may determine ~~with~~subject to the ~~reasonable~~ consent ~~of the Required Consenting Stakeholders~~rights set forth therein), and all contested matters relating to any of the Debtors, including Claim Objections and any adversary proceedings, shall be administered and heard in the Chapter 11 Case(s) of such Debtor(s), irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all distributions have been made in accordance with this Plan, the Reorganized Debtors shall seek authority to close any remaining Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: ~~February 4~~April 19, 2024

**WeWork Inc.**

on behalf of itself and all other Debtors


/s/ David Tolley
David Tolley
Chief Executive Officer