**SQUIRE PATTON BOGGS (US) LLP**
Mark C. Errico, Esq.
382 Springfield Ave., Suite 300
Summit, NJ 07901
Telephone: (973) 848-5600
Facsimile: (973) 848-5601
Email:  mark.errico@squirepb.com

Jeffrey N. Rothleder (admitted *pro hac vice*)
2500 M Street NW
Washington DC 20037
Telephone (202) 457-6000
Facsimile: (202) 457-6315
Email:  jeffrey.rothleder@squirepb.com

Peter R. Morrison (admitted *pro hac vice*)
1000 Key Tower
127 Public Square
Cleveland, OH 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
Email:  peter.morrison@squirepb.com


*ATTORNEYS FOR CSC DELAWARE TRUST COMPANY,
AS SUCCESSOR INDENTURE TRUSTEE*

| | |
|---|---|
| In re:<br><br>WEWORK INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 23-19865 (JKS)<br><br>(Jointly Administered) |

---

[1] The last four digits of the Debtor WeWork Inc.'s taxpayer identification number are 4904. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017, and the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**LIMITED OBJECTION OF CSC DELAWARE TRUST COMPANY, AS INDENTURE TRUSTEE, AND JOINDER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

CSC Delaware Trust Company,[2] as successor indenture trustee for the 12.000% Third Lien Senior Secured PIK Notes Due 2027 ("Delaware Trust" or the "3L Trustee"), by and through its undersigned counsel, hereby files this limited objection and joinder to (the "Objection and Joinder") the *Objection of the Official Committee of Unsecured Creditors to Debtors' Amended Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection therewith, (IV) Scheduling Certain Dates with Respect thereto, and (V) Granting Related Relief* [Docket No. 1751] (the "Committee Objection"), filed by the Official Committee of Unsecured Creditors (the "Committee") in opposition to the *Debtors' Amended Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1687] (the "Conditional Approval Motion").[3] In support hereof, Delaware Trust respectfully states as follows:

---

[2] In March 2024, Delaware Trust Company changed its name to CSC Delaware Trust Company.

[3] Capitalized terms used but not defined in this Objection and Joinder have the meanings given in the 3L Indenture (defined below), the Conditional Approval Motion, or the Amended Plan (defined below), as applicable.

**PRELIMINARY STATEMENT**

1. The Amended Plan and Amended Disclosure Statement are fundamentally flawed, incomplete and, as a result, this Court should not conditionally approve the Amended Disclosure Statement or permit solicitation of the Amended Plan until the Debtor resolves such flaws and provides missing material information such as the terms of the financing and equity distributions. To allow the Debtors to solicit votes on the flawed, incomplete Amended Plan and proceed to confirmation on the proposed prejudicial schedule will only further entrench the parties and erode the estates' already limited resources. Rather, as discussed in greater detail in the Committee objection, this Court should not permit the Debtors to move forward with the confirmation process until the Debtors, the Committee, and the other parties-in-interest, including the 3L Trustee, agree on terms of a consensual plan that provides for a return of value to all creditor constituents and satisfies the Debtors' obligations under their various debt documents, including the 3L Indenture. A global settlement in these cases is within reach; however, the Debtors will stall progress by forcing this proposed confirmation schedule.

2. Without a consensual process, the Amended Disclosure Statement as well as the proposed Amended Plan cannot be approved because those documents fail to, among other things, provide for (i) satisfaction of the Debtors' obligations under the 3L Indenture, including payment of the 3L Trustee's outstanding fees and costs, (ii) similar treatment of similarly situated creditors, and (iii) an adequate time for the solicitation materials to be delivered to the beneficial holders of the 3L Notes (defined below). Without resolution of these issues and those outlined in the Committee objection, this Court should not conditionally approve the Amended Disclosure Statement and require the Debtors to continue work in good faith with the Committee on a consensual plan that can this Court can confirm. To do otherwise risks expending valuable limited resources on solicitation of an unconfirmable plan and ultimately conversion of these

cases, a result that will benefit no one.

## BACKGROUND

**A.    The 3L Notes**

### *i.    Issuance of the Notes*

3.      On or about May 5, 2023, WeWork Companies LLC and WW Co-Obligor Inc. (collectively, the "Issuers") issued their 12.000% Third Lien Senior Secured PIK Notes Due 2027 (the "3L Notes") in the principal amount of $22,653,750, pursuant to the Third Lien Senior Secured PIK Notes Indenture, dated as of May 5, 2023 (as supplemented, modified or amended from time to time, the "3L Indenture"), by and among WeWork Companies U.S. LLC (f/k/a WeWork Companies LLC), as issuer, WW Co-Obligor, Inc., as co-obligor (together with WeWork Companies U.S. LLC, the "Companies"), the guarantor parties thereto (collectively, the "Guarantors"), and Delaware Trust, as successor trustee to U.S. Bank Trust Company, National Association.

4.      As of the Petition Date (as defined below), the 3L Notes were outstanding in the principal amount of $22,653,750, plus interest, fees, and costs. On March 7 2024, the 3L Trustee filed a proof of claim in the amount of $24,247,063.75, which is comprised of principal and interest [Claim No. 10543] (the "Proof of Claim"). The Proof of Claim also asserted an unliquidated claim for outstanding fees and costs owed to the 3L Trustee and its counsel.

### *ii.    Covenants and Obligations of Companies and the Guarantors Under the Indenture*

5.      Upon the issuance of the 3L Notes, the Companies and the Guarantors, all of whom are Debtors, agreed to numerous covenants and obligations in the 3L Indenture. Relevant hereto, the Debtors agreed to "pay, or cause to be paid, the principal of, premium, if any, and interest on, the [3L Notes] on the dates and in the manner provided in the [3L] Notes." *See* 3L

4

Indenture, § 4.01(a).

6. Additionally, the Companies and the Guarantors agreed to, jointly and severally, pay to the 3L Trustee from time to time such compensation for its services as trustee as well as to reimburse the 3L Trustee promptly for all reasonable and documented disbursements, advances and expenses incurred, including "the reasonable and documented compensation, disbursements and expenses of the Trustee's agents and counsel . . . ." *See* 3L Indenture, §§ 7.06 (a)-(b). In addition, the Companies and the Guarantors agreed to indemnify and hold harmless the 3L Trustee and its officers, directors, employees and agents (including counsel) from and against, "any and all loss, damage, claims, liability or expense (including reasonable and documented attorneys' fees and expenses and court costs) . . . ." *See id.* at §§ 7.06 (a)-(b).

7. Further, the Company and the Guarantors agreed in the 3L Indenture that "[w]hen the Trustee incurs expenses or renders services after an Event of Default specified in Section 6.01(a)(8) occurs, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any Bankruptcy Law." *Id*. at § 7.06(e). An Event of Default specified in Section 6.01(a)(8) occurred on the Petition Date. *See id.* at § 6.01(a)(8) (specifying an Event of Default upon the commencement of a voluntary bankruptcy case).

B. **Bankruptcy Cases**

8. On November 6, 2023 (the "Petition Date"), the Companies, the Guarantors and certain of their affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned cases in the United States Bankruptcy Court for the District of New Jersey (the "Court").

5

9. On December 11, 2023, the Court entered the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 428] (the "Final Cash Collateral Order") pursuant to which the Court, in accordance with the Debtors' stipulations, found, *inter alia*, that the Companies and the Guarantors were liable to the 3L Trustee for the Notes in the amount of $22,653,750, plus all "accrued and unpaid interest, any defaulted interest, any fees, expenses and disbursements ***(including attorneys' fees, accountant fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements, indemnification obligations***, and other charges, amounts, and costs of whatever nature) . . . ." *See* Final Cash Collateral Order, ¶¶ V(b), 21 (emphasis added).

C. **Amended Plan and Amended Disclosure Statement**

10. On April 19, 2024, the Debtors filed the Conditional Approval Motion and the following day the Debtors filed the *First Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and its Debtor Subsidiaries* [Docket No. 1690] (the "Amended Plan") and *First Amended Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and its Debtor Subsidiaries* [Docket No. 1691] (the "Amended Disclosure Statement").

11. Under the Amended Plan, the 3L Notes Claims are classified in Class 6 and the proposed treatment provides that holders of such claims shall not receive or retain any distribution unless the "aggregate value of the Allowed 3L Notes Claims exceeds the value of the collateral securing such Claims and there are unencumbered assets held by the Debtor against which such Claims are Allowed . . . ." *See* Amended Plan Art. III.B.6.

12. While the Amended Plan does not clearly provide for a recovery for the 3L Note

6

Claims, which claims the Debtors assert are effectively unsecured, the Amended Plan, without explanation, provide for holders of similarly situated unsecured claims, such as the Unsecured Notes Claims and General Unsecured Claims, to receive a recovery in the form of a pro rata share of either (a) the Cash Election or the (b) Equity Election.  *See* Amened Plan Art. III.B.8-10.

13.     The Amended Plan also does not provide for the payment of the fees and costs of the 3L Trustee, which, as discussed above and in the Proof of Claim, are separate obligations of the Debtors.  Indeed, while the Amended Plan contemplates payment of trustee's fees and expenses for the 1L Notes and the 2L Notes, no such payment is contemplated for the similarly situated 3L Trustee or the Unsecured Notes Trustee.  The Amended Disclosure Statement is curiously silent on the Debtors' reasons or rationale for the disparate treatment and blatant disregard of the Debtors' obligations to satisfy, in full, the 3L Trustee's fees and expenses.

14.     Notwithstanding these deficiencies, pursuant to the Conditional Approval Motion, the Debtors seek, on an expedited basis, the entry of an order that, *inter alia*, (i) conditionally approves the adequacy of the information contained in the Amended Disclosure Statement, (ii) approves the proposed solicitation and voting procedures (the "Solicitation Procedures"), (iii) sets the proposed schedule for confirmation of the Amended Plan; and (iv) schedules a combined hearing to consider confirmation of the Amended Plan and final approval of the Amended Disclosure Statement on May 30, 2024.

## OBJECTION AND JOINDER

15.     The 3L Trustee hereby joins in the objections set forth in the Committee Objection and incorporates such objections fully herein.  Additionally, the 3L Trustee specifically raises the objections set forth herein to the relief sought in the Conditional Approval Motion and reserves all rights to modify, amend or supplement these objections based on further filings of the Debtors,

or other parties, or to raise all such objections, issues or concerns at any hearing on final approval of any disclosure statement filed by the Debtors or confirmation of any plan proposed by the Debtors.

### A. The Amended Disclosure Statement Does not Contain Adequate Information in its Current Form

16. A disclosure statement must contain "adequate information" regarding a plan before it may be sent to creditors for the purpose of soliciting votes to accept or reject the plan. *See* 11 U.S.C. § 1125(b). The information must be of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor typical of the holders of claims or interests in the case to make an informed judgment about the plan. *See* 11 U.S.C. § 1125(a).

17. In determining whether the information in a disclosure statement is adequate, a bankruptcy court "shall consider the complexity of the case, the benefit of additional information, and the cost of providing additional information. . ." 11 U.S.C. § 1125(a). The determination of what constitutes adequate information is made on a case by case basis. *See In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. N.J. 2022) quoting *In re Lower Bucks Hosp.*, 488 B.R. 303, 317 (Bankr. E.D. Pa. 2013).

18. The burden is on the plan proponent to prove that a disclosure statement is adequate. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). "[D]isclosure requirements are crucial to effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81

F.3d 355, 362 (3d Cir. 1996). The Debtors fail to meet their burden.

19. As it relates to holders of 3L Note Claims, the Amended Disclosure Statement is deficient for many reasons including that it is silent regarding the Debtors' obligations to the 3L Trustee under the 3L Indenture and the reasoning for that election. Similarly, the document contains no discussion regarding the Debtors' blatant disregard of its obligations to pay, as an administrative expense, the fees and costs of the 3L Trustee; an obligation that the Debtors reaffirmed and stipulated to in the Final Cash Collateral Order. *See* Final Cash Collateral Order, ¶¶ V(b), 21. If the Debtors fail to satisfy their obligations to the 3L Trustee, including their indemnification obligation, there could be further litigation and disputes that could jeopardize the Debtors' confirmation process since these indemnification obligations survive satisfaction and discharge of the Indenture. *See id*. at 7.06(c). Yet no such disclosure is made in the Amended Disclosure Statement. Thus, it is important for the Amended Disclosure Statement and the Amended Plan to properly address such issues, and without the foregoing information, the Amended Disclosure Statement does not contain adequate information and fails to meet the approval standards under section 1125 of the Bankruptcy Code.

### B. Solicitation Procedures Jeopardize Parties' Due Process Rights

20. Assuming the Amended Disclosure Statement is adequate, which it is not, the Solicitation Procedures proposed by the Debtors are highly prejudicial to holders of public debt and jeopardize parties' due process rights. Specifically, those procedures provide insufficient time for a fulsome solicitation of public debt holders, such as the holders of the 3L Notes Claims. Under the proposed Solicitation Procedures, the Debtors seek to distribute solicitation materials within five (5) business days after entry of an order granting the relief sought in the Conditional Approval Motion and to establish May 24, 2024, as the deadline for voting on the Amended Plan.

*See* Conditional Approval Motion, ¶ 19. The hearing on the Conditional Approval Motion is scheduled to start on April 29, 2024, meaning that solicitation materials could be distributed as late as May 6, 2024, thereby providing **only approximately seventeen (17) days to vote on the Amended Plan**.

21. As the Debtors well know, publicly traded debt, such as the 3L Notes, is generally held in three layers of ownership, meaning that the beneficial owners of the debt are not readily identifiable or the direct recipients of solicitation materials. Instead, the materials must be transmitted to DTC, and then from DTC to its participants and ultimately to the beneficial owners, which are the only parties entitled to vote on or opt-out of the proposed releases in the Amended Plan. Neither the registered holder nor the record holder of the debt has an economic or voting interest. *See In re Pioneer Finance Corp.*, 246 B.R. 626, 633 (Bankr. D. Nev. 2000) (denying confirmation where pre-petition solicitation materials only were sent to record-holders, not beneficial owners); *see*, *also*, *In re Southland Corp.*, 124 B.R. 211, 227 (Bankr. N.D. Tex. 1991) (finding that beneficial owners, not record-holders, are the proper entities to vote to accept or reject a debtor's plan). This a cumbersome and multistep process. What the Debtors propose is extremely tight for public debt voting (or submitting opt-out elections) and all but ensures that beneficial holders of 3L Notes, and the various other notes at issue in these Chapter 11 Cases, will not have a sufficient opportunity to timely review the solicitation materials and return a ballot or opt-out form in a timely manner. This is improper and prejudicial gamesmanship and should not be permitted.

22. In order to correct this deficiency in the Solicitation Procedures, the 3L Trustee requests that the deadline for voting on the Amended Plan be scheduled for no earlier than 45 days after the date solicitation materials are distributed to claim holders.

### C. The Amended Plan Cannot Be Confirmed As Proposed

23. Moreover, aside from the issues discussed above, the Debtors seek conditional approval of the Amended Disclosure Statement for purposes of soliciting votes on the Amended Plan which (a) proposes improper disparate treatment of similarly situated creditors; and (b) ignores the Debtors' obligations under the 3L Indenture. The 3L Trustee believes these fundamental problems should be brought to the attention of the Court, as well as to claim holders when considering whether to accept or reject the Amended Plan.[4]

24. The Debtors have consistently stated almost all creditors are unsecured creditors. Yet, the Debtors have proposed in the Amended Plan to treat the 3L Notes Claims differently from those of the Unsecured Notes Claims and the General Unsecured Claims. Specifically, the Debtors now provide a recovery to the Unsecured Claims and General Unsecured Claims in the form of a pro rata share of either (a) the Cash Election or (b) the Equity Election. *See* Amended Plan, Art III.B.8 and 9. Yet, without explanation, the same treatment is not being provided to the similarly situated 3L Notes Claims. This is impermissible disparate treatment under Section 1129(b) of the Bankruptcy Code and such a flawed plan should not be solicited.

25. In addition, and as discussed above, the Amended Plan disregards the 3L Trustee's contractual right to payment, ignores the 3L Indenture's distribution mechanics, and overlooks surviving obligations under the 3L Notes and 3L Indenture (*i.e.*, surviving indemnification obligations). The Debtors are capable of resolving these issues now so that they can solicit a confirmable plan. Without addressing these issues, the Court should not permit the Debtors to advance in their confirmation process.

---

[4] The 3L Trustee raises these confirmation issues for informational purposes and reserves the right to fully brief these issues at the appropriate time.

## **RESERVATION OF RIGHTS**

26.     This Objection and Joinder is submitted without prejudice to, and with a full reservation of, the 3L Trustee's rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this Objection and Joinder, to raise additional objections and to introduce evidence at any hearing relating to the Amended Plan, and without in any way limiting any other of the 3L Trustee's rights to further object to the Amended Disclosure Statement, the Amended Plan, or any other documents or pleadings filed in these cases, on any grounds, as may be appropriate.

**WHEREFORE**, the 3L Trustee respectfully requests that the Court deny conditional approval of the Amended Disclosure Statement and the proposed Solicitation Procedures absent inclusion of modifications that adequately address the issues and concerns raised herein and in the Committee Objection, and grant such other and further relief as the Court may deem just and proper.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: April 26, 2024 | **SQUIRE PATTON BOGGS (US) LLP** |
| | */s/ Mark C. Errico* |
| | Mark C. Errico, Esq. |
| | 382 Springfield Ave., Suite 300 |
| | Summit, NJ 07901 |
| | Telephone: (973) 848-5600 |
| | Facsimile: (973) 848-5601 |
| | Email: mark.errico@squirepb.com |
| | |
| | Jeffrey N. Rothleder (admitted *pro hac vice*) |
| | 2500 M Street NW |
| | Washington DC 20037 |
| | Telephone (202) 457-6000 |
| | Facsimile: (202) 457-6315 |
| | Email: jeffrey.rothleder@squirepb.com |
| | |
| | Peter R. Morrison (admitted *pro hac vice*) |
| | 1000 Key Tower |
| | 127 Public Square |
| | Cleveland, OH 44114 |
| | Telephone: (216) 479-8500 |
| | Facsimile: (216) 479-8780 |
| | Email: peter.morrison@squirepb.com |
| | |
| | *Attorneys for CSC Delaware Trust Company as Indenture Trustee* |