| | |
|---|---|
| **KIRKLAND & ELLIS LLP** | **COLE SCHOTZ P.C.** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Michael D. Sirota, Esq. |
| Edward O. Sassower, P.C. | Warren A. Usatine, Esq. |
| Joshua A. Sussberg, P.C. (admitted *pro hac vice*) | Felice R. Yudkin, Esq. |
| Steven N. Serajeddini, P.C. (admitted *pro hac vice*) | Ryan T. Jareck, Esq. |
| Ciara Foster (admitted *pro hac vice*) | Court Plaza North, 25 Main Street |
| 601 Lexington Avenue | Hackensack, New Jersey 07601 |
| New York, New York 10022 | Telephone: (201) 489-3000 |
| Telephone: (212) 446-4800 | msirota@coleschotz.com |
| Facsimile: (212) 446-4900 | wusatine@coleschotz.com |
| edward.sassower@kirkland.com | fyudkin@coleschotz.com |
| joshua.sussberg@kirkland.com | rjareck@coleschotz.com |
| steven.serajeddini@kirkland.com | |
| ciara.foster@kirkland.com | |

*Co-Counsel for Debtors and*        *Co-Counsel for Debtors and*
*Debtors in Possession*                *Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

# NOTICE OF FILING OF
# PROPOSED FINAL ORDER
# (I) AUTHORIZING THE DEBTORS
# TO OBTAIN NEW POSTPETITION
# FINANCING, (II) GRANTING LIENS
# AND PROVIDING CLAIMS WITH SUPERPRIORITY
# ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING
# THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**PLEASE TAKE NOTICE** that on May 1, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 1804] (the "DIP New Money Motion").

**PLEASE TAKE FURTHER NOTICE** that on May 8, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 1883] (the "DIP New Money Interim Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a proposed *Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, attached hereto as **Exhibit A** (the "Proposed DIP New Money Final Order").

**PLEASE TAKE FURTHER NOTICE** that a comparison against the previously entered DIP New Money Interim Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the DIP New Money Final Order will be held on **May 30, 2024, at 10:00 a.m., prevailing Eastern Time**, or as soon therefore as counsel may be heard, before the Honorable John K. Sherwood, United States Bankruptcy Judge, in Courtroom 3D of the United States Bankruptcy Court for the District of New Jersey (the "Courtroom"), 50 Walnut Street, Newark, NJ 07102.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Epiq Corporate Restructuring, LLC at https://dm.epiq11.com/WeWork.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: May 24, 2024

/s/  Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:   (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## <u>EXHIBIT A</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | |
| | (Jointly Administered) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

**FINAL ORDER
(I) AUTHORIZING
THE DEBTORS TO OBTAIN
NEWPOSTPETITION FINANCING, (II) GRANTING
LIENS AND PROVIDING CLAIMS SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through sixty-eight (68), is

**ORDERED**.

(Page | 3)

| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Upon the motion (the "DIP New Money Motion")[2] of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (collectively, the "Chapter 11 Cases") for entry of an interim order (as entered at Docket No. 1883, together with all annexes and exhibits hereto, the "DIP New Money Interim Order") and this final order (this "DIP New Money Final Order," and together with the DIP New Money Interim Order, the "DIP New Money Orders"); and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules") promulgated by the United States Bankruptcy Court for the District of New Jersey (the "Court"), seeking, among other things:

(a)     the authorization for (x) the Borrower (collectively with the Guarantors, the "Loan Parties") to obtain postpetition financing as set forth in the DIP New Money Documents (as defined below) (collectively, the "DIP New Money Financing"), and (y) the Guarantors to guarantee the obligations of the Borrower in connection with the DIP New Money Financing, including,[3] without limitation, all loans, advances, extensions of credit, financial accommodations,

---

[2]     Capitalized terms used but not defined herein shall have the meanings set forth in the DIP New Money Motion, the DIP New Money Documents, the DIP LC Order, or the Final Cash Collateral Order, as applicable.

[3]     The use of "include" or "including" herein is without limitation, whether or not stated.

3

(Page | 4)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

reimbursement obligations, fees, and premiums (including, without limitation, commitment fees or premiums, ticking fees, administrative agent's or collateral agent's fees, professional fees, and any other fees or premiums payable pursuant to the DIP New Money Documents (as defined below)), costs, expenses, other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute), and all other obligations due or payable under the DIP New Money Financing (collectively, the "DIP New Money Obligations"), pursuant to superpriority, senior secured, and priming debtor-in-possession term loan credit facilities in the aggregate principal amount not to exceed $450 million (plus accrued interest and any other amounts provided for under the DIP New Money Interim Facility) (the commitments in respect thereof, the "DIP New Money Commitments," and such loans, the "DIP New Money Loans"), consisting of:

    i.    up to $50 million in term loans (the "DIP New Money Interim Facility") made available as soon as practicable upon entry of the DIP New Money Interim Order and the satisfaction of the other conditions precedent in the applicable DIP New Money Documents, pursuant to the terms and conditions of that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Interim Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Interim DIP New Money Credit Agreement"); and

    ii.    up to $400 million (plus accrued interest and any other amounts provided for under the DIP New Money Interim Facility) to be made available on or immediately prior to the Effective Date (as defined in the Plan) and upon satisfaction of the other conditions precedent in the applicable DIP New Money Documents and to be equitized into the common stock of the reorganized Debtors pursuant to the Plan (the "DIP New Money Exit Facility" and, together with the DIP New Money Interim Facility, the "DIP New Money Facilities"), pursuant to the terms and conditions of that certain *Senior Secured Superpriority*

4

| | |
|---|---|
| (Page \| 5) | |
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

*Debtor-in-Possession Exit Term Loan Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Exit DIP New Money Credit Agreement," and together with the Interim DIP New Money Credit Agreement, the "DIP New Money Credit Agreements"), forms of which were attached to the DIP New Money Interim Order as Exhibit 3(i) and Exhibit 3(ii), respectively, each by and among the Borrower, as borrower, the several financial institutions or other entities from time to time party thereto as "Lenders" (the "DIP New Money Lenders"), Acquiom Agency Services LLC and Seaport Loan Products LLC, each as co-administrative agent (in such capacity, together with its successors and permitted assigns, each a "DIP New Money Co-Administrative Agent" and together the "DIP New Money Co-Administrative Agents") and Acquiom Agency Services LLC, as collateral agent (in such capacity, together with its successors and permitted assigns, the "DIP New Money Collateral Agent;" and together with the DIP New Money Co-Administrative Agents, the "DIP New Money Agents" and, collectively with the DIP New Money Lenders, the "DIP New Money Secured Parties"), of which 25% shall be committed by the Tranche A Initial Commitment Parties (as defined in the Amended RSA) with participation offered to all holders of 1L Series 1 Notes and 2L Notes (the "Tranche A DIP Term Loans") and 75% shall be committed by Cupar Grimmond, LLC ("Cupar", and together with the Tranche A Initial Commitment Parties, the "DIP New Money Initial Commitment Parties") (the "Tranche B DIP Term Loans"), which DIP New Money Facilities shall include an initial commitment premium payable to each of the DIP New Money Initial Commitment Parties, (the "DIP New Money Initial Commitment Premium")[4] equal to such DIP New Money Initial Commitment Party's pro rata share of 12.5% of the aggregate amount of the DIP New Money Initial Commitments under the Exit DIP New Money Facility (each as defined in the Amended RSA), fully earned on the Closing Date and payable to the DIP New Money Initial Commitment Parties on the Effective Date as set forth in the DIP New Money Documents (as defined below);

---

[4]  For the avoidance of doubt, the DIP New Money Initial Commitment Premium shall only be due and owing to each respective DIP New Money Initial Commitment Party, as applicable, after entry of this DIP New Money Final Order and on the Effective Date (as defined in the Plan).

(Page | 6)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(b)      the authorization for the Loan Parties to execute and deliver the DIP New Money Credit Agreements and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, and other loan documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time and, collectively with the DIP New Money Credit Agreements, the "DIP New Money Documents") and performance of their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP New Money Documents;

(c)      the authorization for the Debtors to pay the principal, interest, fees, premiums, expenses, including the DIP New Money Initial Commitment Premium[5] and other amounts payable under the DIP New Money Documents, the DIP New Money Orders, and the Final Cash Collateral Order (as defined below) as such become earned, due, and payable to the extent provided in, and in accordance with, the DIP New Money Documents and the DIP New Money Orders;

(d)      (i) subject and subordinate to, in the following order, (A) the Carve Out (as defined below) and the JPM Carve Out (collectively, the "Carve Outs") and (B) the Canadian Carve-Out,[6] and (ii) on a *pari passu* basis with the DIP Term Fees (as defined in the DIP LC Order), the granting to the DIP New Money Secured Parties of allowed superpriority administrative

---

[5]    For the avoidance of doubt, the DIP New Money Initial Commitment Premium shall only be due and owing to each respective DIP New Money Initial Commitment Party, as applicable, after entry of this DIP New Money Final Order and on the Effective Date (as defined in the Plan).

[6]    The term "Canadian Carve-Out" means all amounts due in respect of the Canadian Priority Amounts (as defined in the DIP New Money Documents).

| (Page \| 7) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP New Money Obligations;

(e)      subject and subordinate to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, the granting to the DIP New Money Collateral Agent for the benefit of the DIP New Money Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all DIP New Money Collateral (as defined below), including, without limitation, all Cash Collateral, any Avoidance Proceeds, and the Sales Proceeds DIP New Money Collateral (as defined below), in each case with the relative priorities set forth on **Exhibit 1** hereto; *provided, however*, neither the DIP New Money Collateral nor the Cash Collateral shall include any interest (however formulated) in (i) the DIP LC Loan Collateral Accounts (as defined in the DIP LC Order) and amounts held therein (including, for the avoidance of doubt, after giving effect to any Deemed Assignment (as defined in the DIP LC Order)), (ii) the DIP LC Loan Collateral (as defined in the DIP LC Order) (including, for the avoidance of doubt, after giving effect to any Deemed Assignment), or (iii) the DIP Term Collateral (as defined in the DIP LC Order) (including, for the avoidance of doubt, after giving effect to any Deemed Assignment), or (iv) any cash or money that constitutes (or is deemed to constitute) DIP LC Loan Collateral and/or DIP Term Collateral, as applicable, as a result of the application of Sections 2.4(e) and (g) of that certain Senior Secured Debtor-in-Possession Credit Agreement, dated as of December 19, 2023 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP LC Facility Credit Agreement")

| (Page | 8) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

among WeWork Companies U.S. LLC, a Delaware limited liability company, Goldman Sachs International Bank and JPMorgan Chase Bank, N.A., each as Issuing Banks (as defined therein), Softbank Vision Fund II-2 L.P., a limited partnership established in Jersey with registration number 2995, whose registered office is at 47 Esplanade, St Helier, Jersey, JE1 0BD (the "Partnership") acting by the Manager (as defined below) (the Partnership, acting by the Manager or the Jersey General Partner (as defined below) in its capacity as general partner, as the case may be, the "Junior TLC Facility Lender"), Goldman Sachs International Bank, as the senior LC facility administrative agent, shared collateral agent and an additional collateral agent, JPMorgan Chase Bank, N.A. as an additional collateral agent, and Softbank Vision Fund II-2 L.P., as the junior TLC facility administrative agent (the "Junior TLC Facility Administrative Agent"), SVF II GP (Jersey) Limited, a private limited company incorporated in Jersey with registration number 129289, whose registered office is at 47 Esplanade, St Helier, Jersey, JE1 0BD in its capacity as general partner of the Partnership and in its own corporate capacity (the "Jersey General Partner"), and SB Global Advisers Limited, an England and Wales limited company with registered number 13552691, whose registered office is at 69 Grosvenor Street, London W1K 3JP, United Kingdom in its capacity as manager of the Partnership (the foregoing clauses (i) through (iv) collectively referred to as the "DIP LC Facility Specified Collateral").

(f)    the authorization for the DIP New Money Agents, on behalf of the DIP New Money Secured Parties and acting at the direction of the "Required Lenders" as defined in the DIP New Money Credit Agreements (the "Required Lenders"), to take all commercially reasonable actions to implement and effectuate the terms of the DIP New Money Orders;

8

(Page | 9)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(g)     the waiver of the Debtors' right to surcharge the DIP New Money Collateral pursuant to section 506(c) of the Bankruptcy Code;

(h)     the waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP New Money Collateral for the benefit of any party other than the DIP New Money Secured Parties;

(i)     the authorization for the Debtors to use proceeds of the DIP New Money Facilities and all other DIP New Money Collateral solely in accordance with the DIP New Money Orders and the DIP New Money Documents;

(j)     the vacation and modification of the automatic stay (the "Automatic Stay") of section 362(a) of the Bankruptcy Code to the extent set forth herein and necessary to permit the Debtors and their affiliates and the DIP New Money Secured Parties to implement and effectuate the terms and provisions of the DIP New Money Orders and the DIP New Money Documents, and to deliver any notices of termination described here and as further set forth herein; and

(k)     the waiver of any applicable stay (including under Bankruptcy Rule 6004) and the immediate effectiveness of the DIP New Money Orders.

The Court having considered the relief requested in the DIP New Money Motion, the DIP New Money Documents, and the evidence submitted and arguments made at the hearing held on May 7, 2024 (the "Interim Hearing") and the final hearing held on May 30, 2024 (the "Final Hearing" and together with the Interim Hearing, the "Hearings"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been held and concluded; and

(Page | 10)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

all objections, if any, to the relief requested in the DIP New Money Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the relief requested in the DIP New Money Motion is necessary to avoid irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP New Money Credit Agreements and other DIP New Money Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[7]

A.    *Petition Date.*  On November 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.  On November 8, 2023, this Court entered an order approving the joint administration of the Chapter 11 Cases [Docket No. 87].

B.    *Debtors in Possession.*  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and

---

[7]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(Page | 11)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      *Jurisdiction and Venue.* This Court has core jurisdiction over the Chapter 11 Cases, the DIP New Money Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). Consideration of the DIP New Money Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the DIP New Money Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Bankruptcy Rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4.

D.      *Committee Formation.* On November 16, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.      *DIP LC Order.* On December 11, 2023, the Court entered the *Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with*

11

(Page | 12)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

*Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 427] (as may be amended, the "DIP LC Order").

F.      *Final Cash Collateral Order.*  On December 11, 2023, the Court entered the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 428] (the "Final Cash Collateral Order").

G.      *Notice.*  The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the DIP New Money Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the DIP New Money Motion or the entry of this DIP New Money Final Order shall be required.

H.      *Corporate Authority.*  Each Loan Party has all requisite corporate power and authority to execute and deliver the DIP New Money Documents to which it is a party and to perform its obligations thereunder.

I.      *Findings Regarding the DIP Financing.*

(a)      Good and sufficient cause has been shown for the entry of this DIP New Money Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP New Money Credit Agreements.

(b)      The Debtors have a critical need for the DIP New Money Financing in order to permit the Debtors to, among other things, continue supporting business operations, continue satisfying payments to vendors, landlords, and other constituencies, and continue funding expenses

Case 23-19865-JKS    Doc 1993    Filed 05/24/24    Entered 05/24/24 17:11:30    Desc Main
Document    Page 18 of 157

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(including, without limitation, payment of administrative expenses and other exit costs) of these Chapter 11 Cases.  The Debtors' access to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP New Money Documents is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization of the Debtors.  Absent access to the DIP New Money Financing, harm to the Debtors and their estates would be inevitable.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP New Money Secured Parties under the DIP New Money Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain unsecured and/or secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP New Money Secured Parties, the DIP New Money Liens (as defined below), the DIP New Money Superpriority Claims (each as defined below), and the other protections under the terms and conditions set forth in the DIP New Money Orders and the DIP New Money Documents, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, to the extent set forth herein.

(d)    Based on the DIP New Money Motion and the record presented to the Court at the Hearings, the terms of the DIP New Money Financing pursuant to this DIP New Money Final Order and the DIP New Money Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(Page | 14)

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(e)     The Required Noteholder Secured Parties (as defined in the Final Cash Collateral Order), the SoftBank Parties (as defined in the Plan), Cupar, the DIP Term Secured Parties (as defined in the DIP LC Order) and the DIP LC Secured Parties (as defined in the DIP LC Order) have consented to (i) the Loan Parties' incurrence of the DIP New Money Liens subject to the terms and conditions of the DIP New Money Orders, (ii) the Loan Parties' incurrence of the DIP New Money Obligations, solely as set forth in the DIP New Money Documents, (iii) the Loan Parties' entry into the DIP New Money Documents in accordance with and subject to the terms and conditions in the DIP New Money Orders and the DIP New Money Documents, and (iv) the Debtors' continued use of the Cash Collateral exclusively on and subject to the terms and conditions set forth in the Final Cash Collateral Order, as modified by the DIP New Money Orders.

(f)     The DIP New Money Financing has been negotiated in good faith and at arm's length among the Loan Parties, the DIP New Money Secured Parties, the DIP Term Secured Parties, and the DIP LC Secured Parties, with the assistance of their respective advisors, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP New Money Financing and the DIP New Money Documents, including, without limitation, all DIP New Money Loans made to and guarantees issued by the Loan Parties pursuant to the DIP New Money Documents and any other DIP New Money Obligations, shall be deemed to have been extended by the DIP New Money Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP New Money Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of

14

(Page | 15)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

section 364(e) of the Bankruptcy Code in the event that the DIP New Money Interim Order or this DIP New Money Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise. The DIP New Money Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP New Money Facilities, including in respect of the granting of the DIP New Money Liens, any challenges or objections to the DIP New Money Facilities, the DIP New Money Documents, and all other documents related to any and all transactions contemplated by the foregoing. To the fullest extent permitted by applicable law, the DIP New Money Secured Parties and their respective counsel shall be released and exculpated from any claim or cause of action in connection with any opinions provided, if any, in connection with the DIP New Money Documents.

J.      *Investigation Budget.* As of the date hereof, the Creditors' Committee has exhausted the $300,000 aggregate cap set forth in the Final Cash Collateral Order for use of Cash Collateral to investigate potential Challenges.

K.      *Adequate Protection for the Prepetition Secured Parties.* Upon the funding of the DIP New Money Obligations, the Prepetition Secured Parties' (as defined in the Final Cash Collateral Order) interest in the Prepetition Collateral (as defined in the Final Cash Collateral Order) will be diminished by the priming of the Prepetition Liens (as defined in the Final Cash Collateral Order) by the DIP New Money Liens and the incurrence of the DIP New Money Obligations secured by such DIP New Money Liens. Accordingly, the Adequate Protection

(Page | 16)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Claims (as defined in the Final Cash Collateral Order) held by each Prepetition Agent (as defined in the Final Cash Collateral Order) for the benefit of the applicable Prepetition Secured Parties are hereby deemed to have increased by an amount equal to the amount of DIP New Money Obligations outstanding as of the applicable date of determination, subject to any subsequent increase in value that may occur. All parties-in-interest's rights are reserved in respect of any such increase in the Adequate Protection Claims, the impact of the DIP New Money Obligations on the Prepetition Secured Parties' interest in the Prepetition Collateral, and whether such obligations have increased the value of the Prepetition Collateral.

L. *Relief Essential; Best Interest.* The Final Hearing was held in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2). Consummation of the DIP New Money Financing in accordance with the DIP New Money Orders and the DIP New Money Documents is in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

M. *Immediate Entry.* Sufficient cause exists for immediate entry of this DIP New Money Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP New Money Motion, and the record before the Court with respect to the DIP New Money Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Financing Approved.* The relief sought in the DIP New Money Motion is granted on a final basis, subject to the terms and conditions set forth in the DIP New Money Documents and this DIP New Money Final Order. All objections to the DIP New Money Motion or this

16

(Page | 17)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits. This DIP New Money Final Order shall become effective immediately upon its entry.

2.    *Authorization of the DIP New Money Financing and the DIP New Money Documents.*

(a)    The Loan Parties were, by the DIP New Money Interim Order, and hereby are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations in accordance with, and subject to the terms of this DIP New Money Final Order, the DIP New Money Documents[8] and such other and further acts as may be necessary, appropriate, or desirable in connection therewith. The Borrower was, by the DIP New Money Interim Order, and hereby is authorized to borrow money pursuant to the DIP New Money Credit Agreements, and the Guarantors were, by the DIP New Money Interim Order, and hereby are authorized to guarantee the DIP New Money Obligations, and the proceeds of such borrowings may be used for any purposes permitted under the DIP New Money Documents (subject to and in accordance with the limitations set forth in the DIP New Money Documents, including compliance with the Approved Budget (as defined below)).

(b)    In accordance with this DIP New Money Final Order and without the need for further approval of this Court, each Debtor was, by the DIP New Money Interim Order, and hereby is authorized to, and to cause each of its subsidiaries to, perform all acts, to make, execute,

---

[8]    For the avoidance of doubt, confirmation of the Plan is and shall remain a condition precedent to the effectiveness of the DIP New Money Exit Facility.

| | |
|---|---|
| (Page | 18) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

and deliver all instruments, certificates, and agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees and expenses in connection with or that may be reasonably required, necessary, or desirable for the Loan Parties' performance of their obligations under or related to the DIP New Money Financing, including, without limitation:

i.   the execution and delivery of, and performance under, each of the DIP New Money Documents;

ii.  the execution and delivery of, and performance under, one or more authorizations, amendments, waivers, consents, or other modifications to and under the DIP New Money Documents, in each case, in such form as the Loan Parties and the DIP New Money Agents (acting in accordance with the terms of the DIP New Money Credit Agreements and at the direction of the Required Lenders) may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and payment of amounts owed under the DIP New Money Documents and any fees and other expenses (including attorneys', accountants', appraisers', and financial advisors' fees), that do not (x) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (y) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, extension, consent, or waiver fee) or (z) purport to include any portion of the DIP LC Facility Specified Collateral in the "DIP New Money Collateral" and/or "Cash Collateral";

iii. the non-refundable payment to the DIP New Money Agents and the DIP New Money Lenders of all reasonable and documented fees, discounts and premiums payable under the DIP New Money Documents, whether paid pursuant to the DIP New Money Interim Order or this DIP New Money Final Order, including, without limitation, ticking fees, premiums (including a make-whole premium upon repayment or prepayment, and the DIP New Money Initial Commitment Premium (payable to the DIP New Money Initial Commitment Parties on the Effective Date as set forth in the DIP New Money Documents)),

18

(Page | 19)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

amendment fees, extension fees, early termination fees, servicing fees, audit fees, liquidator fees, structuring fees or premiums, administrative agent's or collateral agent's fees, upfront fees or discounts, closing fees or premiums, commitment fees or premiums, exit fees, closing date fees, original issue discount fees or discounts, prepayment fees or premiums, indemnities, and/or professional fees (which fees were and shall be irrevocable once paid in accordance with and subject to the terms of the DIP New Money Documents and the DIP New Money Interim Order or this DIP New Money Final Order, as applicable, whether or not such fees, discounts, or premiums arose before or after the Petition Date, and were and shall be deemed to have been approved upon entry of the DIP New Money Interim Order or this DIP New Money Final Order, as applicable, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise) and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP New Money Credit Agreements (and in any separate letter agreements between any or all Loan Parties, on the one hand, and any of the DIP New Money Agents and/or DIP New Money Lenders, on the other, in connection with the DIP New Money Financing) and the costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of the professionals retained by: (w) the DIP New Money Agents, including Seward & Kissel LLP as counsel to the DIP New Money Agents, (x) certain DIP New Money Lender(s), including (i) Davis Polk & Wardwell LLP as counsel, Ducera Partners LLC as financial advisor, Greenberg Traurig, LLP as local legal counsel, and Freshfields Bruckhaus Deringer LLP, as UK counsel to the Ad Hoc Group and (ii) Cooley LLP as counsel, Bird & Bird (Netherlands) LLP as Dutch counsel, Appleby (Cayman) Ltd., as Cayman counsel, and Piper Sandler & Co. as financial advisor to Cupar (collectively, the "<u>DIP New Money Fees and Expenses</u>"), without the need to file retention motions or fee applications and consistent with the terms herein; and

iv.    the performance of all other acts necessary, appropriate, and/or desirable under or in connection with the DIP New Money Documents, including the granting of the DIP New Money Liens and the DIP New Money Superiority Claims, and perfection of the DIP New Money

(Page | 20)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Liens as permitted herein and therein, in accordance with the terms of the DIP New Money Documents.

(c)      For the avoidance of doubt, except as expressly provided herein, nothing in the DIP New Money Orders shall affect, modify, limit, or expand upon the rights of any party with respect to (i) letters of credit or surety bonds securing an obligation under a Debtor lease, or (ii) the DIP LC Order.

3.      *DIP New Money Obligations*.  Upon execution and delivery of the DIP New Money Documents, the DIP New Money Documents constituted (and, as of the date of the entry of this DIP New Money Final Order, continue to constitute) legal, valid, binding, and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party and its estate in accordance with the terms of the DIP New Money Documents and DIP New Money Orders, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other case or proceeding superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon execution and delivery of the DIP New Money Documents, the DIP New Money Obligations included (and, as of the date of the entry of this DIP New Money Final Order, continue to include) all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP New Money Secured Parties, in each case, under, or secured by, the DIP New Money Documents or the DIP New Money Orders, including, without limitation, all principal, accrued interest, costs, fees, premiums, expenses, indemnities, and other amounts under the DIP New

(Page | 21)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Money Documents or the DIP New Money Orders. The Loan Parties shall be jointly and severally liable for all DIP New Money Obligations. No claim, obligation, payment, transfer, or grant of collateral security hereunder or under the DIP New Money Documents (including any DIP New Money Obligations or DIP New Money Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.       *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP New Money Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties (but such DIP New Money Obligations are (i) subject and subordinate to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and (ii) *pari passu* with the DIP Term Fees (as defined in the DIP LC Order)), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the

21

(Page | 22)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Bankruptcy Code (including the Adequate Protection Obligations as defined in the Final Cash Collateral Order), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "<u>DIP New Money Superpriority Claims</u>") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP New Money Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Loan Parties and all proceeds thereof (excluding (w) the Carve Out Reserves (as defined below) and amounts held therein, (x) any Avoidance Actions (but the DIP New Money Superpriority Claims shall be payable from any Avoidance Proceeds), (y) all and/or any portion of the DIP LC Facility Specified Collateral, and (z) the Sales Proceeds DIP New Money Collateral), in accordance with the DIP New Money Credit Agreements and the DIP New Money Orders, which DIP New Money Superpriority Claims shall be (1) subject only to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and (2) *pari passu* in terms of claims priority with the DIP Term Fees (as defined in the DIP LC Order).  All DIP New Money Obligations, including, without limitation, the DIP New Money Superpriority Claims, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP New Money Interim Order or this DIP New Money Final Order, or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

5.     *DIP New Money Liens*.  As security for the DIP New Money Obligations, effective and automatically and properly perfected upon the date of the DIP New Money Interim Order and without the necessity of the execution, recordation, or filing by the Loan Parties or any of the

(Page | 23)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filings or other similar documents, notation of certificates of title for titled goods, or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP New Money Collateral Agent of, or over, any DIP New Money Collateral, without any further action by the DIP New Money Agents or the DIP New Money Lenders, the following security interests and liens were, by the DIP New Money Interim Order, and are hereby granted to the DIP New Money Collateral Agent for the benefit of the DIP New Money Secured Parties (collectively, the "<u>DIP New Money Liens</u>"), on all property identified in clauses (i) through (iii) below and all other "Collateral" (as defined in the DIP New Money Credit Agreements) (collectively, the "<u>DIP New Money Collateral</u>");[9] *provided* that, notwithstanding anything in the DIP New Money Interim Order or this DIP New Money Final Order to the contrary, the DIP New Money Liens shall be (x) subject and junior to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, in all respects, (y) in each case in accordance with the priorities set forth in **Exhibit 1** hereto, and (z) with respect to DIP New Money Liens securing obligations under the DIP New Money Exit Facility:

> i.   *Priming Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, valid, binding, continuing, enforceable, fully-perfected, superpriority priming security interests in and liens

---

[9]   For the avoidance of doubt, notwithstanding the DIP New Money Motion or DIP New Money Orders, the DIP New Money Collateral shall include, and the DIP New Money Liens shall attach to, (x) all proceeds of all of the Debtors' real property leases and (y) all leases that permit the attachment of such liens; *provided*, *however*, to the extent that a lease does not permit attachment of a lien to such lease itself or to the leased premises pursuant to its terms, the DIP New Money Liens shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable; *provided*, *further*, the DIP New Money Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

23

| (Page \| 24) | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

upon all Prepetition Collateral (for the avoidance of doubt, other than the DIP LC Facility Specified Collateral) that is subject to the DIP LC Liens (as defined in the DIP LC Order), the DIP Term Liens (as defined in the DIP LC Order), the Adequate Protection Liens (as defined in the Final Cash Collateral Order) and/or the Prepetition Liens, as applicable (such property, collectively, the "<u>DIP New Money Primed Collateral</u>,"[10] and such liens granted pursuant to this clause (i), the "<u>DIP New Money Priming Liens</u>"), which shall prime in all respects, the DIP LC Liens (other than, for the avoidance of doubt, the DIP LC Liens on the DIP LC Facility Specified Collateral), the DIP Term Liens (as defined in the DIP LC Order) (other than, for the avoidance of doubt, the DIP Term Liens (as defined in the DIP LC Order) on the DIP LC Facility Specified Collateral), the Adequate Protection Liens and/or the Prepetition Liens, as applicable. To the extent any DIP New Money Primed Collateral is subject to any valid, perfected, and non-avoidable Other Senior Liens (as defined in the DIP LC Order) in existence immediately prior to the Petition Date, the DIP New Money Priming Liens shall be immediately junior and subordinate to such valid, perfected, and non-avoidable Other Senior Liens solely with respect to such property, but senior to all other liens (including the DIP LC Liens (other than, for the avoidance of doubt, the DIP LC Liens (as defined in the DIP LC Order) on the DIP LC Facility Specified Collateral), the DIP Term Liens (other than, for the avoidance of doubt, the DIP Term Liens on the DIP LC Facility Specified Collateral), the Adequate Protection Liens and/or the Prepetition Liens, as applicable) on such property.

ii.  *Liens on Unencumbered Property of non-Prepetition Guarantors*. Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Loan Parties[11] (other than the Prepetition Guarantors), whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to (A) a valid, perfected and non-avoidable lien or (B) a valid and non-avoidable lien in existence as of the Petition Date that is perfected

---

[10]  For the avoidance of doubt, the DIP New Money Primed Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

[11]  For the avoidance of doubt, such first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Loan Parties shall not include the DIP LC Facility Specified Collateral.

(Page | 25)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and the proceeds, products, rents, and profits thereof (the "Unencumbered Property"). Unencumbered Property includes, without limitation, any and all unencumbered cash of the Loan Parties (other than the Prepetition Guarantors) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, claims and causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, joint ventures and other entities, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (excluding any Avoidance Actions, but for the avoidance of doubt, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, including any Avoidance Proceeds).

iii.   *Liens on Deposit Accounts Containing Certain Sales Proceeds as DIP New Money Collateral.* Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and liens upon all accounts of Debtors organized under the laws of any State of the United States into which any net proceeds from a Permitted Asset Sale (as defined in the New Money DIP Documents) is deposited (but for the avoidance of doubt, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out) (collectively, the "Sales Proceeds DIP New Money Collateral").[12]

---

[12]   For the avoidance of doubt, the Sale Proceeds DIP New Money Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

(Page | 26)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

6.    *Carve Out.*

(a)    As of the date of the entry of this DIP New Money Final Order and until the date that the DIP New Money Obligations have been repaid in full and discharged in accordance with the terms of the DIP New Money Documents, paragraph 8 of the Final Cash Collateral Order is superseded and replaced in its entirety with this paragraph 6 and is null and void until such time the DIP New Money Obligations have been repaid in full and discharged, in which case the Carve Out of the Final Cash Collateral Order shall be reinstated and be the operative Carve Out.[13]

(b)    As used in this DIP New Money Final Order, the "Carve Out" means the sum of (i) all fees of each Debtor required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (in each case, other than any restructuring, sale, success, capital raising or other transaction fee of any investment bankers or

---

[13]    For the avoidance of doubt, and other than with respect to the JPM Carve Out, there shall only be one operative "Carve Out" at all times.

26

| | |
|---|---|
| (Page | 27) | |
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

financial advisors; *provided, however*, for the avoidance of doubt, that any monthly fees of any investment bankers or financial advisors shall be included to the extent such fees are incurred) at any time before or on the first business day following delivery by the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $20 million incurred after the first business day following delivery by the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to the non-directing DIP New Money Lenders, the Debtors, their lead restructuring counsel (Kirkland & Ellis LLP), the U.S. Trustee, the Ad Hoc Group and its lead counsel (Davis Polk & Wardwell LLP), counsel to the First Lien Notes Indenture Trustee (Kelley Drye & Warren LLP), the SoftBank Parties and their lead counsel (Weil, Gotshal & Manges LLP), Cupar and its lead counsel (Cooley LLP), the Creditors' Committee (Paul Hastings LLP), and counsel to JPM (Freshfields Bruckhaus Deringer US LLP), which notice may be delivered upon termination of the Debtors' right to use Cash Collateral pursuant to the Final Cash Collateral Order by the Prepetition

27

(Page | 28)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Secured Parties or following the occurrence and during the continuation of an Event of Default (as defined below) and acceleration of the DIP New Money Obligations under the DIP New Money Facilities, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)    *Carve Out Reserves*.  On the day on which a Carve Out Trigger Notice is given by the DIP New Money Agents to the Debtors with a copy to counsel to the Creditors' Committee and counsel to JPM (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account with the DIP New Money Collateral Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP New Money Agents for the benefit of the DIP New Money Secured Parties,

28

| (Page \| 29) | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

unless the DIP New Money Obligations have been indefeasibly paid in full, in cash, and all DIP New Money Commitments have been terminated, in which case any such excess shall be used to pay the Controlling Authorized Representative (as defined in the Final Cash Collateral Order) for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Debt (as defined in the Final Cash Collateral Order) has been indefeasibly paid in full, in which case any such excess shall be paid to the Debtors' other creditors in accordance with their respective rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP New Money Agents for the benefit of the DIP New Money Secured Parties, unless the DIP New Money Obligations have been indefeasibly paid in full, in cash, and all DIP New Money Commitments have been terminated, in which case any such excess shall be used to pay the Controlling Authorized Representative for the benefit of Prepetition Secured Parties, unless the Prepetition Secured Debt has been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' other creditors in accordance with their respective rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the DIP New Money Documents, the Final Cash Collateral Order, the DIP LC Order, or DIP New Money Orders, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 6, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the

29

(Page | 30)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

applicable amount set forth in this paragraph 6, prior to making any payments to the DIP New Money Agents or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the DIP New Money Documents, the Final Cash Collateral Order, the DIP LC Order, or the DIP New Money Orders, following delivery of a Carve Out Trigger Notice, the DIP New Money Agents or the Debtors' creditors shall not sweep or foreclose on cash (including (i) Cash Collateral and (ii) cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded and JPM (or its counsel) has confirmed in writing (email to suffice) that no JPM Intraday Exposure (as defined in the Final Cash Collateral Order) is outstanding, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP New Money Agents for application in accordance with the DIP New Money Documents; *provided, that,* nothing in the foregoing shall be deemed to limit, in any respect, the ability of the DIP LC Secured Parties (as defined in the DIP LC Order) and the DIP Term Secured Parties (as defined in the DIP LC Order) to exercise rights and remedies with respect to the DIP LC Facility Specified Collateral (including, for the avoidance of doubt, sweeping any cash which constitutes DIP LC Facility Specified Collateral). Further, notwithstanding anything to the contrary in the DIP New Money Orders, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP New Money Loans, an advance or extension of credit under the Prepetition Secured Debt Documents, or increase or reduce the DIP New Money Obligations or the obligations under the Prepetition Secured Debt Documents, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way

(Page | 31)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

shall the Initial Budget (as defined below), Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in the DIP New Money Orders, the DIP New Money Facilities, the DIP LC Order, the Final Cash Collateral Order, or in any Prepetition Secured Debt Documents, or any DIP New Money Documents, the Carve Outs shall be senior to all liens and claims securing the DIP New Money Collateral, the Prepetition Collateral, the Adequate Protection Liens, the 507(b) Claims, the JPM Carve Out, the Canadian Carve-Out, and any and all other forms of adequate protection, liens, or claims securing the DIP New Money Obligations or the Prepetition Secured Debt; *provided*, for the avoidance of doubt, none of the foregoing shall include the DIP LC Facility Specified Collateral.

(d)      *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)      *No Direct Obligation To Pay Allowed Professional Fees*. None of the DIP New Money Agents, the DIP New Money Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the DIP New Money Orders or otherwise shall be construed to obligate the DIP New Money Agents, the DIP New Money Lenders, or the Prepetition Secured

31

(Page | 32)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person

or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)      *Payment of Carve Out on or After the Termination Declaration Date*.  Any

payment or reimbursement made on or after the occurrence of the Termination Declaration Date

in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a

dollar for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the

DIP New Money Obligations secured by the DIP New Money Collateral and shall be otherwise

entitled to the protections granted under DIP New Money Orders, the DIP New Money Documents,

the Bankruptcy Code, and applicable law.

7.      *Protection of DIP New Money Secured Parties' Rights*.

(a)      So long as there are any DIP New Money Obligations outstanding or the

DIP New Money Lenders have any outstanding DIP New Money Commitments under the DIP

New Money Documents, the Prepetition Secured Parties, the DIP LC Secured Parties (as defined

in the DIP LC Order) and the DIP Term Secured Parties (as defined in the DIP LC Order) shall

(i) have no right to and take no action to foreclose upon, or recover in connection with, the liens

on any Prepetition Collateral or DIP New Money Collateral granted thereto pursuant to the

Prepetition Debt Documents, the DIP LC Order, or DIP New Money Orders or otherwise seek to

exercise or enforce any rights or remedies against the DIP New Money Collateral, including in

connection with the Adequate Protection Liens, as applicable; *provided* that, notwithstanding

anything to the contrary in the DIP New Money Orders, (i) this clause shall not limit the ability of

the DIP LC Secured Parties (as defined in the DIP LC Order), and/or the DIP Term Secured Parties

| (Page \| 33) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(as defined in the DIP LC Order) to exercise rights and remedies with respect to their security interest in the DIP LC Facility Specified Collateral; (ii) the DIP LC Secured Parties (as defined in the DIP LC Order), the DIP Term Secured Parties (as defined in the DIP LC Order), and the Prepetition Secured Parties shall be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP New Money Collateral (but not any proceeds of such transfer, disposition, or sale to the extent remaining after payment in cash in full of the DIP New Money Obligations and termination of the DIP New Money Commitments), to the extent the transfer, disposition, sale or release is authorized under the DIP New Money Documents; (iii) the DIP New Money Secured Parties may file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP New Money Collateral as is necessary to give effect to DIP New Money Orders and as may be required by applicable state law or foreign law; and (iv) the Prepetition Secured Parties, the DIP LC Secured Parties (as defined in the DIP LC Order), and/or the DIP Term Secured Parties (as defined in the DIP LC Order) shall deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP New Money Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP New Money Collateral subject to any ordinary course sale or Court-approved disposition. For the avoidance of doubt, this paragraph 7(a) (other than the proviso to clause (i) above) shall not apply to the DIP LC Facility Specified Collateral.

(Page | 34)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(b)     To the extent any Prepetition Secured Party, any DIP LC Secured Party (as defined in the DIP LC Order), and/or any DIP Term Secured Party (as defined in the DIP LC Order) has possession of any Prepetition Collateral or DIP New Money Collateral or has control with respect to any Prepetition Collateral or DIP New Money Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP New Money Collateral, then such Prepetition Secured Party, DIP LC Secured Party (as defined in the DIP LC Order), and/or DIP Term Secured Party (as defined in the DIP LC Order) shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP New Money Secured Parties, and such Prepetition Secured Party, DIP LC Secured Party (as defined in the DIP LC Order), and/or DIP Term Secured Party (as defined in the DIP LC Order), as applicable, shall comply with the instructions of the DIP New Money Collateral Agent, acting on behalf of the DIP New Money Secured Parties and at the direction of the Required Lenders, with respect to such notation or the exercise of such control or possession.  For the avoidance of doubt, this paragraph 7(b) shall not apply to the DIP LC Facility Specified Collateral.

(c)     Any proceeds of Prepetition Collateral received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Agents, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP New Money Agents for the benefit of the DIP New Money Secured Parties in the same form as received, with any necessary endorsements.  The DIP New Money Agents were, by the DIP New Money Interim Order, and are

34

(Page | 35)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

hereby authorized (without obligation) to make any such endorsements as agent for the Prepetition

Agents or any such Prepetition Secured Parties.  This authorization is coupled with an interest and

is irrevocable.

(d)     No rights, protections or remedies of the DIP New Money Secured Parties

granted by the provisions of the DIP New Money Orders or the DIP New Money Documents shall

be limited, modified or impaired in any way by:  (i) any actual or purported withdrawal of the

consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or

purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms

of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the

provision of adequate protection to any party.

(e)     Until the DIP New Money Obligations have been indefeasibly paid in full

or otherwise satisfied in full in accordance with the DIP New Money Documents and/or the DIP

New Money Commitments have been terminated, the Debtors (and/or their legal and financial

advisors in the case of clauses (ii) and (iii) below) shall, in accordance with and in addition to any

additional rights of DIP New Money Secured Parties and/or the Required Lenders under the DIP

New Money Documents:  (i) maintain books, records, and accounts to the extent and as required

by the DIP New Money Documents; (ii) reasonably cooperate with, consult with, and provide to

the applicable DIP New Money Secured Parties and counsel to the Creditors' Committee all such

information and documents that any or all of the Debtors are obligated (including upon reasonable

request by such parties) to provide under the DIP New Money Documents or the provisions of the

DIP New Money Orders; and (iii) permit the DIP New Money Secured Parties to consult with one

(Page | 36)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

or more of the Debtors' management (to be available at reasonable times and upon reasonable prior notice, which may be by email or telephone).

8.      *Limitation on Charging Expenses Against Collateral*.  No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP New Money Collateral (including Cash Collateral), or, for the avoidance of doubt, DIP LC Facility Specified Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of, with respect to the DIP New Money Collateral (including Cash Collateral), the DIP New Money Collateral Agent (acting at the direction of the Required Lenders), and with respect to the DIP LC Facility Specified Collateral, the SoftBank Parties, and no such consent shall be implied from any action, inaction, or acquiescence by the DIP New Money Secured Parties and nothing contained in the DIP New Money Orders shall be deemed to be a consent by the DIP New Money Secured Parties to any charge, lien, assessment or claim in favor of any party other than the DIP New Money Secured Parties against the DIP New Money Collateral, DIP LC Facility Specified Collateral, the Prepetition Collateral, or the Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or otherwise.

9.      *No Marshaling*.  In no event shall the DIP New Money Agents or the DIP New Money Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP New Money Collateral or the DIP New Money Obligations.

(Page | 37)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

10.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP New Money Agents or any other DIP New Money Secured Party pursuant to the provisions of the DIP New Money Orders shall be irrevocably received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through, or on behalf of the Debtors.

11.     *Disposition of DIP New Money Collateral*.  The Debtors shall have no authority to, and shall not, sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP New Money Collateral, or any interest therein, without the prior written consent (email to suffice) of the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP New Money Secured Parties or from any order of this Court), except as otherwise expressly provided for in the DIP New Money Documents.

12.     *Reporting Obligations*.  So long as the DIP New Money Loans remain outstanding, the Debtors shall provide copies of any Approved Budget, any Variance Report (as defined in the Final Cash Collateral Order), and any other material report (including, without limitation, any other material financial reporting) described in this the DIP New Money Orders, the DIP New Money Credit Agreements, the Final Cash Collateral Order and/or the Amended RSA[14] to (i) the

---

[14]     "Amended RSA" refers to that certain Amended and Restated Restructuring Support Agreement, dated as of May 5, 2024, by and among the Debtors, the Ad Hoc Group, the SoftBank Parties, Cupar and certain other holders of Series I First Lien Notes and Second Lien Notes.

| Debtors: | WEWORK INC., *et al.* |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Secured Parties that have signed a confidentiality agreement with the Debtors and/or their non-Debtor affiliates and their advisors and (ii) counsel to the Creditors' Committee. Notwithstanding the foregoing, such reporting obligations shall not extend to any telephone conferences or earnings report calls.

(a)     *Budgets and Periodic Reporting.*  The use of DIP New Money Loans in the Chapter 11 Cases shall be limited in accordance with the initial budget approved by the Required Lenders[15] attached to the DIP New Money Interim Order as <u>Exhibit 1</u> (the "<u>Initial Budget</u>" and any other budget subsequently approved by the Required Lenders an "<u>Approved Budget</u>").  Any budget and/or reporting that satisfies the obligations under section 6.12 of the DIP New Money Credit Agreements shall be deemed to satisfy the obligations under paragraphs 10(a) and 10(b) of the Final Cash Collateral Order.

(b)     *Variance Reporting*.  Any reporting that satisfies the obligations under section 7.4 of the DIP New Money Credit Agreements shall be deemed to satisfy the obligations under paragraphs 10(c) and 10(d) of the Final Cash Collateral Order.

---

[15]  For the avoidance of doubt, any and all approvals over the Initial Budget and Approved Budget shall be subject to the consent of the SoftBank Parties as set forth in the Final Cash Collateral Order.  Moreover, any and all reporting obligations in this paragraph 12 shall be subject to the SoftBank Parties' rights to receive such reporting as set forth in the Final Cash Collateral Order.

(Page | 39)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

13.    *Payment of Fees and Expenses*.

(a)    The Debtors were, by the DIP New Money Interim Order, and hereby are authorized and directed to pay the DIP New Money Fees and Expenses (which, for the avoidance of doubt, shall include the DIP New Money Initial Commitment Premium), as provided in the DIP New Money Documents.  All DIP New Money Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP New Money Agents and professionals for the DIP New Money Lenders shall not be required to comply with the U.S. Trustee fee guidelines; *provided*, *however*, any time that such professionals seek payment of reasonable and documented fees and expenses from the Debtors, such payment shall be subject to the terms and conditions (including the Review Period) provided in the Final Cash Collateral Order; provided, that any payments required to be made in advance of the closing of the DIP New Money Facilities, including those required to be made pursuant to section 5.1(f) of the DIP New Money Credit Agreements shall not be subject to the terms and conditions provided in the Final Cash Collateral Order, including the Review Period (as defined in the Final Cash Collateral Order).  No attorney or advisor to the DIP New Money Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(b)    The Debtors were by the Final Cash Collateral Order and the DIP New Money Interim Order and, by this DIP New Money Final Order, are hereby authorized to and shall pay the First Lien Adequate Protection Fees and Expenses (as defined in the Final Cash Collateral Order).  Subject to the review procedures set forth in this paragraph 13(b), payment of all First Lien Adequate Protection Fees and Expenses (as defined in the Final Cash Collateral Order) shall

(Page | 40)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

not be subject to allowance or review by the Court.  The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraph 3(c) of the Final Cash Collateral Order (collectively, the "Noteholder Professionals" and, each, a "Noteholder Professional") no later than the third business day of the following week after delivery by the applicable Noteholder Professional, or counsel representing the applicable Prepetition Secured Party (as defined in the Final Cash Collateral Order) of an email notice stating that the ten day review period (the "Review Period") with respect to each of the invoices therefor (or any portion thereof) (the "Invoiced Fees") passed without objection after the receipt by counsel for the Debtors, counsel for the Committee, and the U.S. Trustee of such invoices.  Invoiced Fees shall be in the form of an invoice summary for reasonable and documented professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to (a) the attorney-client privilege; (b) any work product doctrine; (c) privilege or protection; (d) common interest doctrine privilege or protection; (e) any other evidentiary privilege or protection recognized under applicable law; (f) or any other confidential information, and the provision of such invoices shall not constitute any waiver of (a) the attorney-client privilege; (b) work product doctrine; (c) privilege or protection; (d) common interest doctrine privilege or protection; (e) or any other evidentiary privilege; (f) or protection recognized under applicable law.  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees

40

(Page | 41)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party, the Ad Hoc Group, and the SoftBank Parties, in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days prior written notice to the submitting party, the Ad Hoc Group, the SoftBank Parties, and Cupar, of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

14.     *Perfection of DIP New Money Liens*.

(a)     Without in any way limiting the automatically valid effective perfection of the DIP New Money Liens granted in the DIP New Money Orders, the DIP New Money Agents and the DIP New Money Lenders were, by the DIP New Money Interim Order, and are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, trademark filings, copyright filings, mortgages, control agreements, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith in a manner not inconsistent herewith or take any other action in order to document, validate, and perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). Whether or not the DIP New Money Secured Parties take such Perfection Actions, such liens and security interests were deemed valid, automatically perfected,

41

(Page | 42)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of the DIP New Money Interim Order.  Each of the Loan Parties, without any further consent of any party, was, by the DIP New Money Interim Order, and is authorized and directed to take, execute, deliver, and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP New Money Secured Parties to further validate, perfect, preserve, and enforce the DIP New Money Liens in all jurisdictions required under the DIP New Money Credit Agreements, including all local law documentation therefor determined to be reasonably necessary by the Required Lenders.  All such documents will be deemed to have been recorded and filed as of the date of the DIP New Money Interim Order.

(b)      Certified copies of the DIP New Money Interim Order or this DIP New Money Final Order may, in the discretion of the DIP New Money Collateral Agent (acting at the direction of the Required Lenders), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices were, by the DIP New Money Interim Order, and are hereby authorized and directed to accept such certified copy of the DIP New Money Interim Order or this DIP New Money Final Order for filing and/or recording, as applicable.  The Automatic Stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP New Money Secured Parties to take all actions, as applicable, referenced in this paragraph 14.

(c)      Any provision of any lease or other license, contract or other agreement (other than a non-residential real property lease) that requires (i) the consent or approval of one or

42

(Page | 43)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

more of the other parties, or (ii) the payment of any fees or obligations, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such interest, or the proceeds thereof, or other collateral related thereto solely in connection with the granting of the DIP New Money Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provisions shall have no force and effect with respect to the granting of the DIP New Money Liens on such interest or the proceeds of any assignment, and/or sale.

15.   *Termination*.

(a)   Without prejudicing the rights of the Softbank Parties and the DIP LC Secured Parties under the DIP LC Facility Credit Agreement, the entry of the DIP New Money Interim Order or this DIP New Money Final Order shall neither constitute an Event of Default with respect to the DIP LC Facility pursuant to paragraph 17 of the DIP LC Order, nor shall it terminate the use of Cash Collateral pursuant to paragraph 11 of the Final Cash Collateral Order.

(b)   The Automatic Stay is hereby modified to the extent necessary to permit the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to take any or all of the following actions, at the same or different times, in each case without further order of or application to the Court: (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any remaining undrawn DIP New Money Commitments, (B) all outstanding DIP New Money Obligations (including any applicable make-whole premiums) to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, notwithstanding anything herein or in any DIP New Money

43

(Page | 44)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Document to the contrary, (C) the default rate under the DIP New Money Documents to be applicable to all outstanding DIP New Money Obligations, and (D) the termination of the applicable DIP New Money Documents as to any future liability or obligation of the DIP New Money Agents and the applicable DIP New Money Lenders with respect to the DIP New Money Commitments thereunder (but, for the avoidance of doubt, without affecting any of the DIP New Money Liens or the DIP New Money Obligations), and (ii) upon the occurrence and during the continuation of an Event of Default, deliver written notice (a "Termination Notice") (including by email) by the DIP New Money Collateral Agent (acting at the direction Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to lead restructuring counsel to the Debtors (Kirkland & Ellis LLP), lead restructuring counsel to the SoftBank Parties (Weil, Gotshal & Manges LLP), lead restructuring counsel to the DIP LC Secured Parties (Milbank LLP), lead restructuring counsel to the Ad Hoc Group and certain DIP New Money Lenders (Davis Polk & Wardwell LLP), lead restructuring counsel to Cupar (Cooley LLP), counsel to JPM (Freshfields Bruckhaus Deringer US LLP), counsel to the First Lien Notes Indenture Trustee (Kelley Drye & Warren LLP), the U.S. Trustee, and counsel to the Creditors' Committee (Paul Hastings LLP) (collectively, the "Termination Notice Parties"), and the passage of not less than five (5) business days' notice (such five (5) business day period, which may be extended by the Court based on the Court's availability, the "DIP New Money Agent Remedies Notice Period," which period shall run concurrently with any other notice periods under the DIP New Money Documents, so long as notice has been given in accordance with this paragraph) without (x) the cure of the Event(s) of Default alleged in the Termination Notice by the Debtors in accordance

44

(Page | 45)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

with their ability (if any) to cure such Event(s) of Default under the DIP New Money Documents or the waiver of such Event(s) of Default by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements), (y) a ruling by the Court prior to the end of the DIP New Money Agent Remedies Notice Period that an Event of Default has not in fact occurred, or (z) agreement by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to extend the DIP New Money Agent Remedies Notice Period, without further notice to, hearing of, or order from this Court, (A) immediately terminate and/or revoke the Debtors' right under the DIP New Money Orders and any DIP New Money Documents to use any Cash Collateral constituting DIP New Money Collateral (subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and related provisions); *provided* that, upon such termination or revocation by the DIP New Money Collateral Agent, any consent of the Prepetition Secured Parties to the Debtors' use of Cash Collateral shall be deemed withdrawn, and (B) exercise all rights and remedies available under applicable law whether or not the maturity of any of the DIP New Money Obligations shall have been accelerated.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(c)      During the DIP New Money Agent Remedies Notice Period, the Debtors shall be permitted to cure any Events of Default (to the extent curable under the terms of the DIP New Money Documents) outstanding at such time and are permitted to use the DIP New Money Loans solely to:  (a) pay payroll and other critical administrative expenses to keep the business of

45

(Page | 46)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

the Debtors operating, strictly in accordance with the Approved Budget (without any Permitted Variance (as defined in the Final Cash Collateral Order)), or as otherwise agreed by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements), (b) fund the Carve Out Reserves, and (c) seek an emergency hearing (with the DIP New Money Agents deemed to have consented to such emergency hearing) before the Court solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing.  Except as set forth in this the DIP New Money Orders, the Debtors hereby waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP New Money Secured Parties set forth in the DIP New Money Orders or the other DIP New Money Documents.

16.     *Preservation of Rights Granted Under this DIP New Money Final Order.*

(a)     Other than (v) the Carve Outs, (w) the Canadian Carve-Out, (x) the DIP Term Fees (as defined in the DIP LC Order) (with respect to claims only), (y) those liens on, or claims granted on behalf of, the DIP LC Facility Specified Collateral and (z) any other claims and liens expressly granted by this DIP New Money Final Order (or permitted under the DIP New Money Credit Agreements), no claim or lien having a priority superior to or *pari passu* with those granted by the DIP New Money Orders to the DIP New Money Secured Parties shall be granted or allowed while any of the DIP New Money Obligations remain outstanding, and the DIP New Money Liens shall not be:

46

(Page | 47)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

i.  subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code;

ii.  subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

iii.  subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties; or

iv.  subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)    Subject to paragraph 15 hereof, upon the occurrence and continuance of (x) any Event of Default (as defined in the DIP New Money Credit Agreements) or (y) any violation of any of the terms of this DIP New Money Final Order (each an "Event of Default" ), after notice by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) in writing to the non-directing DIP New Money Lenders and their respective counsel, the Borrower and counsel to the Borrower, the U.S. Trustee, counsel to the SoftBank Parties, and counsel to the Creditors Committee, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP New Money Credit Agreements.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered:  (a) the DIP New Money Superpriority Claims and the DIP New Money Liens granted pursuant to this DIP New Money Final Order shall continue in full force and

(Page | 48)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

effect and shall maintain their priorities as provided in this DIP New Money Final Order until all DIP New Money Obligations shall have been indefeasibly paid in full, and such DIP New Money Superpriority Claims and DIP New Money Liens shall, notwithstanding such dismissal, remain binding on all parties in interest; (b) the other rights granted by this DIP New Money Final Order shall not be affected; and (c) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph 16 and otherwise in this DIP New Money Final Order.

(c)    Notwithstanding anything to the contrary herein, the DIP New Money Secured Parties and Prepetition Secured Parties may only enter upon a leased premises of the Debtors following an Event of Default in accordance with (i) a separate written agreement among the DIP New Money Secured Parties or Prepetition Secured Lenders and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP New Money Secured Parties or Prepetition Secured Lenders under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice to and an opportunity to be heard for the applicable landlord for the leased premises.

(d)    If any or all of the provisions of this DIP New Money Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect:  (i) the validity, priority, or enforceability of any DIP New Money Obligations incurred prior to the actual receipt of written notice by the DIP New Money Agents of the effective date of such reversal, modification, vacation, or stay; or (ii) the validity, priority, or enforceability of the

48

(Page | 49)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Liens granted under this DIP New Money Final Order.  Notwithstanding any such reversal, modification, vacation, or stay, the DIP New Money Obligations or the DIP New Money Liens incurred by the Loan Parties to any DIP New Money Secured Parties pursuant to this DIP New Money Final Order prior to the actual receipt of written notice by the DIP New Money Agents of the effective date of such reversal, modification, vacation, or stay shall be governed in all respects by the original provisions of this DIP New Money Final Order, and the DIP New Money Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted in section 363(m) and section 364(e) of the Bankruptcy Code, as applicable, this DIP New Money Final Order, and the DIP New Money Documents.

(e)     Subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and on a *pari passu* basis (with respect to claims only) with the DIP Term Fees (as defined in the DIP LC Order), unless and until all DIP New Money Obligations are indefeasibly paid in full or otherwise satisfied in full in accordance with the DIP New Money Documents, the Debtors and any other party irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (i) without the prior written consent of the DIP New Money Collateral Agent (at the direction of the Required Lenders) or counsel to the Required Lenders (email shall suffice) (x) any modification, stay, vacatur, or amendment of this DIP New Money Final Order or the DIP New Money Documents, (y) a claim having recourse to the DIP New Money Collateral or the DIP New Money Secured Parties, under section 506(c) or otherwise, *pari passu* with or senior to the DIP New Money Superpriority Claims (or the liens and security interests secured such claims and obligations), or (z) any other order allowing use of the Cash Collateral that is inconsistent with this

49

(Page | 50)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Final Order or the DIP New Money Documents; (ii) any lien on any of the DIP

New Money Collateral with priority equal or superior to the DIP New Money Liens except as

specifically provided in this DIP New Money Final Order or the DIP New Money Documents;

(iii) the use of Cash Collateral for any purpose other than as permitted in this DIP New Money

Final Order; (iv) an order converting or dismissing any of these Chapter 11 Cases; (v) an order

appointing a chapter 11 trustee in any of these Chapter 11 Cases; or (vi) an order appointing an

examiner with expanded powers in any of these Chapter 11 Cases.

(f)     Except as expressly provided in this DIP New Money Final Order or the

DIP New Money Documents, the DIP New Money Liens, the DIP New Money Superpriority

Claims, and all other rights and remedies of the DIP New Money Agents and the DIP New Money

Secured Parties granted by the provisions of this DIP New Money Final Order and the DIP New

Money Documents, as applicable, shall survive, and shall not be modified, impaired, or discharged

by the termination of this DIP New Money Final Order or the DIP New Money Documents or

(a) the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the

Bankruptcy Code; (ii) dismissing any of the Chapter 11 Cases or terminating the joint

administration of these Chapter 11 Cases; (iii) approving the sale of any DIP New Money

Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by

the DIP New Money Documents); or (iv) confirming a chapter 11 plan in any of the Chapter 11

Cases; or (b) by any other act or omission; and, pursuant to section 1141(d)(4) of the Bankruptcy

Code, the Loan Parties have waived any discharge as to any DIP New Money Obligations.  The

terms and provisions of this DIP New Money Final Order and the DIP New Money Documents

(Page | 51)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease

to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and

the DIP New Money Liens, the DIP New Money Superpriority Claims, and all other rights and

remedies of the DIP New Money Secured Parties granted by the provisions of this DIP New Money

Final Order and the DIP New Money Documents, as applicable, shall continue in full force and

effect until the DIP New Money Obligations are indefeasibly paid in full or otherwise satisfied in

accordance with the terms of the DIP New Money Documents and as set forth herein, and the DIP

New Money Commitments have been terminated.

17.    *Limitation on Use of DIP New Money Financing Proceeds and Collateral.*

Notwithstanding any other provision of this DIP New Money Final Order, or any other order

entered by the Court, none of the DIP New Money Loans, the DIP New Money Collateral

(including Cash Collateral), and the Debtor Collateral (as defined in the DIP LC Order) may be

used directly or indirectly, including without limitation through reimbursement of professional

fees of any non-Debtor party, in connection with (a) the actual or threatened investigation,

initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation

(i) against any of the DIP New Money Secured Parties, the DIP LC Secured Parties (as defined in

the DIP LC Order), or the Prepetition Secured Parties, or each of the foregoing's respective

predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, (ii) challenging

the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim

or offset with respect to the DIP New Money Obligations, the DIP Obligations (as defined in the

DIP LC Order), or the Prepetition Secured Debt, and/or the liens, claims, rights, or security

| Debtors: | WEWORK INC., *et al*. |
|---|---|
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

interests granted under the DIP New Money Orders, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order, or the Prepetition Secured Debt Documents, or (iii) in connection with any other Challenges, including, in the case of each (i) and (iii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) to attempt or to prevent, hinder, or otherwise delay or interfere with the DIP New Money Secured Parties', the DIP LC Secured Parties' (as defined in the DIP LC Order) and/or the Prepetition Secured Parties' enforcement or realization on the DIP New Money Obligations, the DIP New Money Collateral, the DIP Obligations (as defined in the DIP LC Order), the DIP LC Facility Specified Collateral, the Debtor Collateral (as defined in the DIP LC Order), Prepetition Secured Debt, Prepetition Collateral, Adequate Protection Obligations or the Adequate Protection Collateral, and the liens, claims and rights granted to such parties under the DIP New Money Orders, the DIP LC Order and/or the Final Cash Collateral Order, each in accordance with the DIP New Money Orders, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order and/or the Prepetition Secured Debt Documents; (c) to attempt or to modify any of the rights and remedies granted to the DIP New Money Secured Parties, any of the DIP LC Secured Parties (as defined in the DIP LC Order), and/or any of the Prepetition Secured Parties under the DIP New Money Orders, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order and/or the Prepetition Secured Debt Documents, as applicable, other than in accordance with the DIP New Money Orders; (d) (i) to attempt or to apply

(Page | 53)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

to the Court for authority to approve superpriority claims or grant liens (other than the liens and

claims granted hereunder or under the DIP LC Order (and/or the DIP Documents (as defined in

the DIP LC Order)) (as in effect on the date hereof) or permitted pursuant to the DIP New Money

Documents) or security interests in the DIP New Money Collateral or any portion thereof that are

senior to, or on parity with, the DIP New Money Liens or the DIP New Money Superpriority

Claims, or any other relief the granting of which would violate the DIP New Money Credit

Agreements or the DIP New Money Orders, (ii) attempts to apply to the Court for authority to

approve superpriority claims or grant liens (other than the liens and claims granted hereunder or

permitted pursuant to the DIP New Money Documents) or security interests in the DIP LC Facility

Specified Collateral, and/or the Debtor Collateral (as defined in the DIP LC Order) or any portion

thereof that are senior to, or on parity with, the DIP Obligations (as defined in the DIP LC Order),

or (iii) attempts to apply to the Court for authority to approve superpriority claims or grant liens

(other than the liens and claims granted hereunder or permitted pursuant to the DIP New Money

Documents) or security interests in the Adequate Protection Collateral or any portion thereof that

are senior to, or on parity with, the Adequate Protection Obligations or Prepetition Secured Debt;

or (e) attempts to pay or to seek to pay any amount on account of any claims arising prior to the

Petition Date unless such payments are approved or authorized by the Court, agreed to in writing

by the Required Lenders, expressly permitted under this DIP New Money Final Order or the DIP

New Money Documents (including the Approved Budget), or required by the DIP LC Order as in

effect on the date hereof, in each case unless all the DIP New Money Obligations, the DIP

Obligations (as defined in the DIP LC Order), the Adequate Protection Obligations and the

(Page | 54)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Prepetition Secured Debt have been refinanced, paid in full in cash, or otherwise satisfied in a manner acceptable to the DIP New Money Secured Parties, the DIP LC Secured Parties, and the Prepetition Secured Parties, as applicable. For the avoidance of doubt, this paragraph 17 shall not limit the Debtors' or the Creditors' Committee's rights to use DIP New Money Collateral (including Cash Collateral) to contest that an Event of Default has occurred hereunder pursuant to and consistent with paragraph 15 of this DIP New Money Final Order. Any payment by the Debtors of fees and expenses of the Committee Professionals incurred in connection with its investigation of the liens and claims of, and any claims against, the Prepetition Secured Parties in excess of the $300,000 budget set forth in the Final Cash Collateral Order shall be approved and made pursuant to a separate Court order. Notwithstanding the foregoing, nothing in this paragraph 17 shall limit the Committee's allowable fees and expenses incurred in connection with the Chapter 11 Cases or limit the amount of allowed claims entitled to administrative expense priority under any chapter 11 plan, subject to the right of parties in interest to object to such fees.

18. *Exculpation.* Nothing in the DIP New Money Orders, the DIP New Money Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon any DIP New Money Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. The DIP New Money Secured Parties shall not, in any way or manner, be liable or responsible for (1) the safekeeping of the DIP New Money Collateral, (2) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (3) any diminution in the value thereof, or (4) any act or default of any

| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage, or destruction of the DIP New Money Collateral shall be borne by the Loan Parties.

19. *Limitation of Liability*. In determining to make any loan or other extension of credit under the DIP New Money Documents, to permit the use of the DIP New Money Collateral or in exercising any rights or remedies as and when permitted pursuant to the DIP New Money Orders or the DIP New Money Documents, none of the DIP New Money Secured Parties shall: (a) be deemed to be in "control" of the operations or participating in the management of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates; or (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with respect to the operation or management of the Debtors, or otherwise cause liability to arise to the federal or state government or the status of "responsible person" or "managing agent" to exist under applicable law (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute). Furthermore, nothing in the DIP New Money Interim Order or this DIP New Money Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP New Money Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

20. *Indemnification*. Without limitation to any other right to indemnification, the Debtors shall indemnify each of the DIP New Money Secured Parties in accordance with the terms and conditions of the DIP New Money Credit Agreements. Except as otherwise provided in the

(Page | 56)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

DIP New Money Credit Agreements, the Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this DIP New Money Final Order to any obligation set forth, as the case may be, in this paragraph 20, in paragraph 20 of the DIP New Money Interim Order, in the DIP New Money Documents, or in the Prepetition Credit Documents to indemnify and/or hold harmless the DIP New Money Secured Parties, as the case may be, and any such defenses are hereby waived, except to the extent it is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from gross negligence, actual fraud, or willful misconduct or breach of their obligations under the DIP New Money Facilities.

21.     *U.S. Specialty Insurance Company.*   Nothing in this DIP New Money Final Order, the DIP New Money Motion, the DIP New Money Facilities, the DIP LC Order or the Final Cash Collateral Order or any related documents including any loan documents (the "Defined Documents") shall in any way prime or affect the rights of U.S. Specialty Insurance Company, (the "Surety") as to:  (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due to any of the Debtors or any of their non-debtor affiliates in relation to contracts or obligations bonded by the Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit (and the proceeds thereof) or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates (collectively (a) to (c), the "USIC Surety Assets").  Nothing in the Defined Documents shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or

56

(Page | 57)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

involving the Surety and any of the Debtors or any of their non-debtor affiliates as to the USIC

Surety Assets or otherwise, including, but not limited to, the six General Agreements of Indemnity

(the "Indemnity Agreements") executed on or about March 22, 2019, April 9, 2019, April 10, 2019,

April 30, 2019, August 26, 2019, and March 10, 2020, by non-debtor WeWork Companies LLC,

WeWork Companies Inc. and debtors 500 11th Ave North Tenant LLC, 101 East Washington

Street Tenant LLC, 1115 Broadway Q LLC, 2222 Ponce DeLeon Blvd Tenant LLC, and 830 NE

Holladay Street Tenant LLC.   In addition, nothing in the Defined Documents shall prime or

otherwise impact:  (x) current or future setoff and/or recoupment rights and/or the lien rights of

the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any

existing or future subrogation or other common law rights of the Surety.   In addition,

notwithstanding anything in the Defined Documents to the contrary, the rights of the Surety in

connection with any letter of credit (and any amendment(s) or modification(s) thereto) relating to

any of the Debtors or their non-debtor affiliates, including but not limited to that certain Irrevocable

Letter of Credit and amendments thereto in favor of among others, the Surety, having had an

aggregate amount of credit of $5,113,960.00 (the "USIC ILOCs"), and the proceeds thereof, which

proceeds were received by the Surety pursuant to a draw on the USIC ILOCs and thereafter

reduced by $1,633,210.00 by way of payment of a claim on a bond, resulting in current cash being

held by the Surety in the amount of $3,480,750.00, such proceeds shall not be affected or impaired,

and neither the USIC ILOCs nor any proceeds therefrom constitute property of the bankruptcy

estate.   To the extent that any USIC Surety Assets are being held or will be held by or on behalf

of any one or more of the Debtors or any of their non-debtor affiliates and are used as part of cash

57

(Page | 58)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of the use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date.  In addition, notwithstanding anything in the Defined Documents to the contrary, the rights, claims, and defenses of the Debtors and any of their non-debtor affiliates, of any obligee on any bond issued by the Surety and of the Surety, including the Surety's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors or any of their non-debtor affiliates and of any successors in interest to any of the Debtors or any of their non-debtor affiliates and any creditors, to object to any such liens, claims and/or equitable subordination and other rights, are fully preserved.  Nothing herein is an admission by the Surety or the Debtors or any of their non-debtor affiliates or a determination by the Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith. The Surety is not a gratuitous bailee nor is required to hold funds in trust for the benefit of any party, such that paragraph 7(b) and 7(c) of this DIP New Money Final Order does not apply to the Surety and neither does any other similar provision provided anywhere in the Defined Documents.

22.    *Philadelphia Indemnity Insurance Company Reservation of Rights*.  Nothing in this DIP New Money Final Order shall in any way prime or affect the rights of Philadelphia Indemnity Insurance Company ("PIIC") as to:  (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due to any of the Debtors in relation to contracts or obligations bonded

(Page | 59)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

by PIIC; (b) any substitutions or replacements of such funds including accretions to and interest earned on such funds; or (c) any letter of credit or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving PIIC and any of the Debtors (collectively (a) to (c), the "PIIC Surety Assets").  Nothing in this DIP New Money Final Order shall affect the rights of PIIC under any current or future indemnity, collateral trust, or related agreements between or involving PIIC and any of the Debtors as to the PIIC Surety Assets or otherwise.  In addition, nothing in this DIP New Money Final Order shall prime or otherwise impact: (x) current or future setoff and/or recoupment rights and/or the lien rights of PIIC or of any party to whose rights PIIC has or may become subrogated; and/or (y) any existing or future subrogation or other common law rights of PIIC.  In addition, notwithstanding anything in this DIP New Money Final Order to the contrary, the rights of PIIC in connection with any letter of credit (and any amendment(s) or modification(s) thereto, the "PIIC ILOCs") relating to any of the Debtors and any and all proceeds thereof, shall not be affected or impaired.  In addition, notwithstanding anything in this DIP New Money Final Order to the contrary, the rights, claims, and defenses of the Debtors, of any obligee on any bond issued by PIIC and of PIIC, including PIIC's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors and of any successors in interest to any of the Debtors and any creditors to object to any such liens, claims, and/or equitable subordination and other rights are fully preserved. Nothing herein is an admission by PIIC, the Debtors, or any of their non-debtor affiliates or a determination by the Court, regarding any claims under any bonds, and PIIC and the Debtors reserve any and all rights, remedies, and defenses in connection therewith.

59

(Page | 60)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

23.     *Chubb Reservation of Rights*.  For the avoidance of doubt, (i) the Debtors shall not grant liens and/or security interests in (a) any property (including premium or cash collateral) received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers, "Chubb") or (b) any insurance policy issued by Chubb to any other party or any rights, claims, interests or proceeds related thereto; (ii) the proceeds of any insurance policy issued by Chubb shall only be considered to be collateral of the DIP New Money Secured Parties to the extent such proceeds are paid to the Debtors pursuant to the terms of any such applicable insurance policy; and (iii) nothing, including the DIP New Money Documents, DIP New Money Interim Order, and/or this DIP New Money Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

24.     *Texas Taxing Authorities*.  Notwithstanding any other provisions in the DIP New Money Orders, any statutory liens on account of ad valorem taxes (the "Tax Liens") held by the Texas Taxing Authorities that constitute Other Senior Liens (as defined in the Final Cash Collateral Order), including liens for post-petition taxes, shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and, under applicable non-bankruptcy law, are granted priority over a prior perfected security interest or lien, and all parties' rights to object to the priority, validity, amount, enforceability, perfection and extent of the Tax Liens are fully preserved.[16]

---

[16]  The "Texas Taxing Authorities" are Dallas County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, City of Richardson, Montgomery

(Page | 61)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

25.    *No Requirement to File Proofs of Claim.*  The DIP New Money Secured Parties shall not be required to file proofs of claim with respect to their DIP New Money Obligations under the DIP New Money Documents, and the evidence presented with the DIP New Money Motion and the record established at the Hearings are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, secured status, and priority.

26.    *Credit Bidding.*  The DIP New Money Collateral Agent (directly or via one or more acquisition vehicles), at the direction of the Required Lenders, shall have the right to credit bid, in accordance with the applicable DIP New Money Documents, any or all of the DIP New Money Obligations in any sale of the DIP New Money Collateral outside the ordinary course of business without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363 or 1123(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and the DIP New Money Collateral Agent (or any related acquisition vehicle, as applicable) shall be deemed a qualified bidder (or such analogous term or capacity) in connection with any such sale.

27.    *Stub Rent Reserve.*  Upon the closing of the DIP New Money Financing, the Debtors shall hold at all times, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, an amount of cash no less than $20 million (the "Stub Rent Liquidity Covenant") on account of payment of estimated allowed Stub Rent (as defined in the Final Cash

---

County, Tarrant County, Plano Independent School District, Highland Park Independent School District, Dallas County Utility and Reclamation District, Woodlands Road Utility District, Montgomery County Municipal District 67, and Harris County Improvement District #01.

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Collateral Order) claims; *provided that* the cash balance in the account that holds the Stub Rent Liquidity Covenant shall not fall below $20 million; *provided further* that this paragraph 26 will supersede in all respects paragraph 27 of the Final Cash Collateral Order, including any requirement to deposit any amount in consideration of payment of Stub Rent claims in a segregated account.

28.    *Order Governs*.  In the event of any inconsistency, but solely to the extent of such inconsistency, between the provisions of the DIP New Money Interim Order, this DIP New Money Final Order, the DIP New Money Documents, or any other order entered by this Court (for the avoidance of doubt, including, without limitation, the Final Cash Collateral Order and the DIP LC Order), the provisions of this DIP New Money Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this DIP New Money Final Order, including, without limitation, the Approved Budget.  Except as expressly provided herein with respect to the incurrence of the DIP New Money Facilities and the liens and claims associated therewith (to  which the DIP Term Secured Parties, the DIP LC Secured Parties, and the Required Noteholder Secured Parties have consented along with the terms of this DIP New Money Final Order), this DIP New Money Final Order shall not in any way abrogate, amend, waive, or otherwise modify the Final Cash Collateral Order or the DIP LC Order, including any consents, approvals, or other rights set forth therein, and the grant of consent rights over the same matters to different parties in both this DIP New Money Final Order and the Final Cash Collateral Order and/or the DIP LC

(Page | 63)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Order shall not be deemed an inconsistency.  In addition, for so long as the Amended RSA is in effect as to any party, neither the entry of this DIP New Money Final Order nor the payment of any amounts under this DIP New Money Final Order shall modify such party's rights or obligations under the Amended RSA.[17]

29.     *Binding Effect; Successors and Assigns*.  The DIP New Money Documents and the provisions of this DIP New Money Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP New Money Secured Parties, the Creditors' Committee, or any non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP New Money Secured Parties and the Debtors and their respective successors and assigns; *provided*, that the DIP New Money Secured Parties shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

---

[17]   For the avoidance of doubt, any consent rights under the Amended RSA or agreements or commitments by any DIP New Money Lender under the Amended RSA that are referred to in this DIP New Money Final Order shall cease to be operative if any such rights, agreements, or commitments cease to be binding under the Amended RSA in accordance with the terms thereof.

(Page | 64)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

30.     *Insurance*.  To the extent that a Prepetition Secured Party is listed as loss payee under the Loan Parties' insurance policies, the DIP New Money Collateral Agent is also deemed to be the loss payee under such insurance policies.

31.     *Effectiveness*.  This DIP New Money Final Order shall constitute findings of fact and conclusions of law and shall take effect as of the date of entry of this DIP New Money Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP New Money Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP New Money Final Order.

32.     *Release*.  Each of the Debtors and their estates, on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted by applicable law, (a) reaffirms the releases granted pursuant to paragraph 31 of the DIP New Money Interim Order, and (b) absolutely and unconditionally release and forever discharge and acquit the DIP New Money Secured Parties and their respective subsidiaries, affiliates, equity interest holders, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof (each, a "Representative" and, collectively, the "Representatives"), in each case in their respective capacity as such (collectively, the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims,

64

(Page | 65)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

counterclaims, defenses, offsets, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgments of every type, and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, fixed, contingent, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal or common law or statute or regulation or otherwise (collectively, the "Released Claims"), *provided*, that the Released Claims are limited solely to those arising out of or related to (as applicable) the DIP New Money Financing, the DIP New Money Documents, the obligations owing and the financial obligations made or secured thereunder and the negotiation thereof and of the transactions and agreements reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time on or prior to the date of this DIP New Money Final Order, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the DIP New Money Liens, the DIP New Money Obligations (and all related claims against any Debtors), and DIP New Money Superpriority Claims.  The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their

(Page | 66)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

respective Representatives, successors, and assigns (including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code) and each of the Debtors' estates.

33.     *Modification of DIP New Money Documents*.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP New Money Agents and/or the other DIP New Money Secured Parties providing for any consensual modifications to the DIP New Money Documents or of any other modifications to the DIP New Money Documents necessary to conform the terms of the DIP New Money Documents to this DIP New Money Final Order, in each case consistent with the amendment provisions of the DIP New Money Documents. The Debtors shall provide five (5) days' notice to counsel to the Creditors' Committee of any material modifications to the DIP New Money Documents, and the Creditors' Committee may file an objection with the Court within such five (5) day period and seek a hearing on shortened notice; in addition, any material amendment to the DIP New Money Documents shall require the reasonable consent of the Required Consenting Stakeholders[18] prior to any such amendment.

34.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP New Money Final Order.

---

[18]   "Required Consenting Stakeholders" shall have the meaning ascribed to it in the Amended RSA.

(Page | 67)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

35.     *Payments Held in Trust*.  Except as expressly permitted in this DIP New Money Final Order or the DIP New Money Documents, in the event that any person or entity (other than the DIP New Money Secured Parties) receives any payment on account of a security interest in the DIP New Money Collateral, receives any DIP New Money Collateral or any proceeds of such collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full of all DIP New Money Obligations under the DIP New Money Documents and termination of all DIP New Money Commitments, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of collateral in trust for the benefit of the DIP New Money Secured Parties and shall immediately turn over such proceeds to the DIP New Money Agents, or as otherwise instructed by this Court, for application in accordance with the DIP New Money Documents and this DIP New Money Final Order.

36.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP New Money Motion.

37.     *No Third-Party Rights*.  Except as explicitly provided for herein, this DIP New Money Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

38.     *Necessary Action*.  The Debtors and the DIP New Money Secured Parties are authorized to take all such actions as are necessary or appropriate to implement the terms of this DIP New Money Final Order.  In addition, the Automatic Stay imposed pursuant to section 362 of the Bankruptcy Code is modified to permit affiliates of the Debtors who are not debtors in these

67

(Page | 68)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Chapter 11 Cases to take all actions as are necessary or appropriate to implement the terms of this

DIP New Money Final Order.

39.     *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret,

and enforce the provisions of this DIP New Money Final Order, and this retention of jurisdiction

shall survive the confirmation and consummation of any chapter 11 plan for any one or more of

the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order

confirming any such chapter 11 plan.

40.     *Sales Proceeds.*  The Debtors shall deposit, and shall cause any of their non-Debtor

affiliates who receive the Sale Proceeds to deposit, any and all Sales Proceeds into an account (i) in

the name of a Debtor entity which is incorporated or organized under the laws of the United States,

any state thereof or the District of Columbia, and (ii) maintained in the United States, and shall

hold or cause the applicable Debtor entity to hold all such proceeds in such account until applied

in a manner permitted by an Approved Budget.

41.     *Challenge Period.*  Upon entry of this DIP New Money Final Order and an order

by the Court confirming any plan of reorganization proposed by the Debtors, the releases and

stipulations as set forth in the Final Cash Collateral Order shall be binding on all parties in interest.

**<u>Exhibit 1</u>**[1]

**Lien Priorities**

| | Prefunded Amounts | DIP LC Loan Collateral (other than Prefunded Amounts) | | DIP Term Collateral | DIP New Money Primed Collateral (other than Prepetition Collateral and Assets Subject to Other Senior Liens) | Prepetition Collateral | Assets Subject to Other Senior Liens | Unencumbered Property | Sales Proceeds DIP New Money Collateral |
|---|---|---|---|---|---|---|---|---|---|
| 1st | DIP LC Obligations | Until the occurrence of a Deemed Assignment, DIP LC Obligations | Upon and after the occurrence of a Deemed Assignment, DIP Term Obligations | DIP Term Obligations | DIP New Money Liens | Other Senior Liens | Other Senior Liens | DIP New Money Liens | DIP New Money Liens |

---

[1]  Prefunded Amounts, DIP LC Loan Collateral, DIP Term Collateral, Deemed Assignment, DIP LC Obligations and DIP Term Obligations (each as defined in the DIP LC Order) used in this <u>Exhibit 1</u> shall have the meaning as set forth in the DIP LC Order.

DIP New Money Primed Collateral, Unencumbered Property, Sales Proceeds DIP New Money Collateral and DIP New Money Liens used in this <u>Exhibit 1</u> shall have the meaning as set forth in this DIP New Money Final Order.

First Lien Adequate Protection Liens, Second Lien Adequate Protection Liens, Third Lien Adequate Protection Liens, Prepetition First Priority Liens, Prepetition Second Priority Liens, Prepetition Third Priority Liens, Prepetition Collateral and Other Senior Liens used in this <u>Exhibit 1</u> shall have the meaning as set forth in the Final Cash Collateral Order.

| | Prefunded Amounts | DIP LC Loan Collateral (other than Prefunded Amounts) | DIP Term Collateral | DIP New Money Primed Collateral (other than Prepetition Collateral and Assets Subject to Other Senior Liens) | | Prepetition Collateral | | Assets Subject to Other Senior Liens | | Unencumbered Property | | Sales Proceeds DIP New Money Collateral | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2nd | | | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | DIP New Money Liens | | DIP New Money Liens | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations last out | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term |
| 3rd | | | | Second Lien Adequate Protection Liens | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | Prepetition First Priority Liens | | Prepetition First Priority Liens | |
| 4th | | | | Third Lien Adequate Protection Liens | | Prepetition First Priority Liens | | Second Lien Adequate Protection Liens | | Second Lien Adequate Protection Liens | | Second Lien Adequate Protection Liens | |
| 5th | | | | | | Second Lien Adequate Protection Liens | | Third Lien Adequate Protection Liens | | Prepetition Second Priority Liens | | Prepetition Second Priority Liens | |
| 6th | | | | | | Prepetition Second Priority Liens | | | | | | | |
| 7th | | | | | | Third Lien Adequate Protection Liens | | | | | | | |
| 8th | | | | | | Prepetition Third Priority Liens | | | | | | | |

**<u>EXHIBIT B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com


**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

In re:                                      Chapter 11

WEWORK INC., *et al*.,                      Case No. 23-19865 (JKS)

     Debtors.[1]

                                     (Jointly Administered)

## ~~INTERIM~~FINAL ORDER
## (I) AUTHORIZING
## THE DEBTORS TO OBTAIN ~~NEW~~
## NEW POSTPETITION FINANCING, (II) GRANTING LIENS AND
## PROVIDING CLAIMS SUPERPRIORITY
## ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING
## THE AUTOMATIC STAY,
## AND (IV) ~~SCHEDULING A FINAL HEARING, AND (V)~~ GRANTING RELATED
## RELIEF

The relief set forth on the following pages, numbered three (3) through sixty-~~nine~~eight

(6~~9~~8), is **ORDERED**.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork. The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

(Page | 3)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Upon the motion (the "DIP New Money Motion")[2] of ~~WeWork Inc. (the "Borrower") and its affiliated~~the debtors and debtors-in-possession (collectively, the "Debtors" ~~and, together with certain of their non debtor subsidiaries, the "Guarantors" and, collectively with the Borrower, the "Loan Parties"~~) in the above-captioned cases (collectively, the "Chapter 11 Cases") for entry of an interim order (as entered at Docket No. 1883, together with all annexes and exhibits hereto, ~~this~~the "DIP New Money Interim Order") and ~~a~~this final order (~~the~~this "DIP New Money Final Order," and together with the DIP New Money Interim Order, the "DIP New Money Orders"); and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules") promulgated by the United States Bankruptcy Court for the District of New Jersey (the "Court"), seeking, among other things:

(a)    the authorization for (x) the Borrower (collectively with the Guarantors, the "Loan Parties") to obtain postpetition financing as set forth in the DIP New Money Documents (as defined below) (collectively, the "DIP New Money Financing"), and (y) the Guarantors to guarantee the obligations of the Borrower in connection with the DIP New Money

---

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the DIP New Money Motion, the DIP New Money Documents, the DIP LC Order, or the Final Cash Collateral Order, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Financing, including,[3] without limitation, all loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees, and premiums (including, without limitation, commitment fees or premiums, ticking fees, administrative agent's or collateral agent's fees, professional fees, and any other fees or premiums payable pursuant to the DIP New Money Documents (as defined below)), costs, expenses, other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute), and all other obligations due or payable under the DIP New Money Financing (collectively, the "<u>DIP New Money Obligations</u>"), pursuant to superpriority, senior secured, and priming debtor-in-possession term loan credit facilities in the aggregate principal amount not to exceed $450 million (plus accrued interest and any other amounts provided for under the DIP New Money Interim Facility) (the commitments in respect thereof, the "<u>DIP New Money Commitments</u>," and such loans, the "<u>DIP New Money Loans</u>"), consisting of:

      i.    up to $50 million in term loans (the "<u>DIP New Money Interim Facility</u>") ~~to be~~made available as soon as practicable upon entry of ~~this~~the DIP New Money Interim Order and the satisfaction of the other conditions precedent in the applicable DIP New Money Documents, pursuant to the terms and conditions of that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Interim Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "<u>Interim DIP New Money Credit Agreement</u>"); and

     ii.   ~~subject to entry of the DIP New Money Final Order,~~ up to $400 million (plus accrued interest and any other amounts provided for under the DIP New Money Interim Facility) to be made available on or immediately prior to the Effective Date (as defined in the Plan) and

---

[3]    The use of "include" or "including" herein is without limitation, whether or not stated.

(Page | 5)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

upon satisfaction of the other conditions precedent in the applicable DIP New Money Documents and to be equitized into the common stock of the reorganized Debtors pursuant to the Plan (the "DIP New Money Exit Facility" and, together with the DIP New Money Interim Facility, the "DIP New Money Facilities"), pursuant to the terms and conditions of that certain *Senior Secured Superpriority Debtor-in-Possession Exit Term Loan Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Exit DIP New Money Credit Agreement," and together with the Interim DIP New Money Credit Agreement, the "DIP New Money Credit Agreements"), forms of which ~~are~~were attached ~~hereto~~to the DIP New Money Interim Order as Exhibit 3(i) and Exhibit 3(ii), respectively, by and among the Borrower, as borrower, the several financial institutions or other entities from time to time party thereto as "Lenders" (the "DIP New Money Lenders"), Acquiom Agency Services LLC and Seaport Loan Products LLC, each as co-administrative agent (in such capacity, together with its successors and permitted assigns, each a "DIP New Money Co-Administrative Agent" and together the "DIP New Money Co-Administrative Agents") and Acquiom Agency Services LLC, as collateral agent (in such capacity, together with its successors and permitted assigns, the "DIP New Money Collateral Agent;" and together with the DIP New Money Co-Administrative Agents, the "DIP New Money Agents" and, collectively with the DIP New Money Lenders, the "DIP New Money Secured Parties"), of which 25% shall be committed by the Tranche A Initial Commitment Parties (as defined in the Amended RSA) with participation offered to all holders of 1L Series 1 Notes and 2L Notes (the "Tranche A DIP Term Loans") and 75% shall be committed by Cupar Grimmond, LLC ("Cupar", and together with the Tranche A Initial Commitment Parties, the "DIP New Money Initial Commitment Parties") (the "Tranche B DIP Term Loans"), which DIP New Money Facilities shall include an initial commitment premium payable to each of the DIP New Money Initial Commitment Parties, (the "DIP New Money Initial Commitment Premium")[4] equal to such DIP New Money Initial Commitment Party's pro rata share of 12.5% of the aggregate amount of the DIP New Money Initial Commitments under the Exit DIP New

---

[4] For the avoidance of doubt, the DIP New Money Initial Commitment Premium shall only be due and owing to each respective DIP New Money Initial Commitment Party, as applicable, after entry of this DIP New Money Final Order and on the Effective Date (as defined in the Plan).

(Page | 6)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Money Facility (each as defined in the Amended RSA), fully earned on the Closing Date and payable to the DIP New Money Initial Commitment Parties on the Effective Date as set forth in the DIP New Money Documents (as defined below); ~~*provided, however*, that each DIP New Money Lender's (and any Joining DIP New Money Lender's, as applicable) commitment allocation with respect to the DIP New Money Exit Facility shall be equal to such DIP New Money Lender's (or such Joining DIP New Money Lender's, as applicable) *pro rata* share of the original principal amount of the DIP New Money Loans outstanding under the DIP New Money Interim Facility immediately prior to entry into the DIP New Money Exit Facility;~~

(b)      the authorization for the Loan Parties to execute and deliver the DIP New Money Credit Agreements and any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, and other loan documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time and, collectively with the DIP New Money Credit Agreements, the "DIP New Money Documents") and performance of their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP New Money Documents;

(c)      the authorization for the Debtors to pay the principal, interest, fees, premiums, expenses, including the DIP New Money Initial Commitment Premium[45] and other amounts payable under the DIP New Money Documents, ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, and the Final Cash Collateral Order (as defined below) as such become earned, due, and

---

[45]   For the avoidance of doubt, the DIP New Money Initial Commitment Premium shall only be due and owing to each respective DIP New Money ~~Lender~~Initial Commitment Party, as applicable, after entry of ~~the~~this DIP New Money Final Order and on the Effective Date (as defined in the Plan).

(Page | 7)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

payable to the extent provided in, and in accordance with, the DIP New Money Documents and

~~this~~the DIP New Money ~~Interim~~ Order~~s~~;

(d)       (i) subject and subordinate to, in the following order, (A) the Carve Out (as defined below) and the JPM Carve Out (collectively, the "Carve Outs") and (B) the Canadian Carve-Out[5],[6] and (ii) on a *pari passu* basis with the DIP Term Fees (as defined in the DIP LC Order), the granting to the DIP New Money Secured Parties of allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP New Money Obligations;

(e)       subject and subordinate to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, the granting to the DIP New Money Collateral Agent for the benefit of the DIP New Money Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all DIP New Money Collateral (as defined below), including, without limitation, all Cash Collateral, any Avoidance Proceeds ~~(subject to entry of the Final Order)~~, and the Sales Proceeds DIP New Money Collateral (as defined below), in each case with the relative priorities set forth on **Exhibit ~~2~~1** hereto; *provided, however*, neither the DIP New Money Collateral nor the Cash Collateral shall include

---

[5]  ~~The term "Canadian Carve-Out" means all amounts due in respect of the Canadian Priority Amounts (as defined in the DIP New Money Documents).~~

[6]  The term "Canadian Carve-Out" means all amounts due in respect of the Canadian Priority Amounts (as defined in the DIP New Money Documents).

7

(Page | 8)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

any interest (however formulated) in (i) the DIP LC Loan Collateral Accounts (as defined in the DIP LC Order) and amounts held therein (including, for the avoidance of doubt, after giving effect to any Deemed Assignment (as defined in the DIP LC Order)), (ii) the DIP LC Loan Collateral (as defined in the DIP LC Order) (including, for the avoidance of doubt, after giving effect to any Deemed Assignment), or (iii) the DIP Term Collateral (as defined in the DIP LC Order) (including, for the avoidance of doubt, after giving effect to any Deemed Assignment), or (iv) any cash or money that constitutes (or is deemed to constitute) DIP LC Loan Collateral and/or DIP Term Collateral, as applicable, as a result of the application of Sections 2.4(e) and (g) of that certain Senior Secured Debtor-in-Possession Credit Agreement, dated as of December 19, 2023 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP LC Facility Credit Agreement") among WeWork Companies U.S. LLC, a Delaware limited liability company, Goldman Sachs International Bank and JPMorgan Chase Bank, N.A., each as Issuing Banks (as defined therein), Softbank Vision Fund II-2 L.P., a limited partnership established in Jersey with registration number 2995, whose registered office is at 47 Esplanade, St Helier, Jersey, JE1 0BD (the "Partnership") acting by the Manager (as defined below) (the Partnership, acting by the Manager or the Jersey General Partner (as defined below) in its capacity as general partner, as the case may be, the "Junior TLC Facility Lender"), Goldman Sachs International Bank, as the senior LC facility administrative agent, shared collateral agent and an additional collateral agent, JPMorgan Chase Bank, N.A. as an additional collateral agent, and Softbank Vision Fund II-2 L.P., as the junior TLC facility administrative

(Page | 9)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

agent (the "Junior TLC Facility Administrative Agent"), SVF II GP (Jersey) Limited, a private limited company incorporated in Jersey with registration number 129289, whose registered office is at 47 Esplanade, St Helier, Jersey, JE1 0BD in its capacity as general partner of the Partnership and in its own corporate capacity (the "Jersey General Partner"), and SB Global Advisers Limited, an England and Wales limited company with registered number 13552691, whose registered office is at 69 Grosvenor Street, London W1K 3JP, United Kingdom in its capacity as manager of the Partnership (the foregoing clauses (i) through (iv) collectively referred to as the "DIP LC Facility Specified Collateral").

(f)     the authorization for the DIP New Money Agents, on behalf of the DIP New Money Secured Parties and acting at the direction of the "Required Lenders" as defined in the DIP New Money Credit Agreements (the "Required Lenders"), to take all commercially reasonable actions to implement and effectuate the terms of ~~this~~the DIP New Money ~~Interim~~ Order~~s~~;

(g)     the waiver of the Debtors' right to surcharge the DIP New Money Collateral pursuant to section 506(c) of the Bankruptcy Code;

(h)     the waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP New Money Collateral for the benefit of any party other than the DIP New Money Secured Parties;

9

(Page | 10)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(i)    the authorization for the Debtors to use proceeds of the DIP New Money Facilities and all other DIP New Money Collateral solely in accordance with ~~this~~the DIP New Money ~~Interim~~ Orders and the DIP New Money Documents;

(j)    the vacation and modification of the automatic stay (the "Automatic Stay") of section 362(a) of the Bankruptcy Code to the extent set forth herein and necessary to permit the Debtors and their affiliates and the DIP New Money Secured Parties to implement and effectuate the terms and provisions of ~~this~~the DIP New Money ~~Interim~~ Orders and the DIP New Money Documents, and to deliver any notices of termination described here and as further set forth herein; and

(k)    the waiver of any applicable stay (including under Bankruptcy Rule 6004) and the immediate effectiveness of ~~this~~the DIP New Money ~~Interim~~ Orders~~; and~~.

~~(l) scheduling of a final hearing to consider the relief requested herein on a final basis.~~

The Court having considered the relief requested in the DIP New Money Motion, the DIP New Money Documents, and the evidence submitted and arguments made at the ~~H~~hearing held on May 7, 2024 (the "~~Hearing~~Interim Hearing") and the final hearing held on May 30, 2024 (the "Final Hearing" and together with the Interim Hearing, the "Hearings"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP New Money Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the

| (Page \| 11) | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

relief requested in the DIP New Money Motion is necessary to avoid irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP New Money Credit Agreements and other DIP New Money Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[67]**

A.    *Petition Date.*  On November 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.  On November 8, 2023, this Court entered an order approving the joint administration of the Chapter 11 Cases [Docket No. 87].

B.    *Debtors in Possession.*  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107

---

[67]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(Page | 12)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C. *Jurisdiction and Venue.* This Court has core jurisdiction over the Chapter 11 Cases, the DIP New Money Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). Consideration of the DIP New Money Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the DIP New Money Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Bankruptcy Rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4.

D. *Committee Formation.* On November 16, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E. *DIP LC Order.* On December 11, 2023, the Court entered the *Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing*

12

(Page | 13)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

*Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 427] (as may be amended, the "DIP LC Order").

F.    *Final Cash Collateral Order.*  On December 11, 2023, the Court entered the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 428] (the "Final Cash Collateral Order").

G.    *Notice.*  The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the DIP New Money Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the DIP New Money Motion or the entry of this DIP New Money ~~Interim~~Final Order shall be required. ~~The relief granted pursuant to this DIP New Money Interim Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.~~

H.    *Corporate Authority.*  Each Loan Party has all requisite corporate power and authority to execute and deliver the DIP New Money Documents to which it is a party and to perform its obligations thereunder. ~~*The relief granted pursuant to this DIP New Money Interim Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.*~~

13

(Page | 14)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

I.       *Findings Regarding the DIP Financing.*

(a)       Good and sufficient cause has been shown for the entry of this DIP New Money ~~Interim~~Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP New Money Credit Agreements.

(b)       The Debtors have a critical need for the DIP New Money Financing in order to permit the Debtors to, among other things, continue supporting business operations, continue satisfying payments to vendors, landlords, and other constituencies, and continue funding expenses (including, without limitation, payment of administrative expenses and other exit costs) of these Chapter 11 Cases.  The Debtors' access to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP New Money Documents is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization of the Debtors.  Absent access to the DIP New Money Financing, harm to the Debtors and their estates would be inevitable.

(c)       The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP New Money Secured Parties under the DIP New Money Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain unsecured and/or secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP New Money Secured Parties, the DIP New Money Liens (as defined below), the DIP New Money Superpriority Claims (each as

14

(Page | 15)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

defined below), and the other protections under the terms and conditions set forth in ~~this~~the DIP New Money ~~Interim~~ Orders and the DIP New Money Documents, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, to the extent set forth herein.

(d)     Based on the DIP New Money Motion and the record presented to the Court at the Hearings, the terms of the DIP New Money Financing pursuant to this DIP New Money ~~Interim~~Final Order and the DIP New Money Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)     The Required Noteholder Secured Parties (as defined in the Final Cash Collateral Order), the SoftBank Parties (as defined in the Plan), Cupar, the DIP Term Secured Parties (as defined in the DIP LC Order) and the DIP LC Secured Parties (as defined in the DIP LC Order) have consented to (i) the Loan Parties' incurrence of the DIP New Money Liens subject to the terms and conditions of ~~this~~the DIP New Money ~~Interim~~ Orders, (ii) the Loan Parties' incurrence of the DIP New Money Obligations, solely as set forth in the DIP New Money Documents, (iii) the Loan Parties' entry into the DIP New Money Documents in accordance with and subject to the terms and conditions in ~~this~~the DIP New Money ~~Interim~~ Orders and the DIP New Money Documents, and (iv) the Debtors' continued use of the Cash Collateral exclusively on and subject to the terms and conditions set forth in the Final Cash Collateral Order, as modified by ~~this~~the DIP New Money ~~Interim~~ Orders.

15

(Page | 16)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(f)    The DIP New Money Financing has been negotiated in good faith and at arm's length among the Loan Parties, the DIP New Money Secured Parties, the DIP Term Secured Parties, and the DIP LC Secured Parties, with the assistance of their respective advisors, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP New Money Financing and the DIP New Money Documents, including, without limitation, all DIP New Money Loans made to and guarantees issued by the Loan Parties pursuant to the DIP New Money Documents and any other DIP New Money Obligations, shall be deemed to have been extended by the DIP New Money Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP New Money Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.  The DIP New Money Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP New Money Facilities, including in respect of the granting of the DIP New Money Liens, any challenges or objections to the DIP New Money Facilities, the DIP New Money Documents, and all other documents related to any and all transactions contemplated by the foregoing.  To the

16

(Page | 17)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

fullest extent permitted by applicable law, the DIP New Money Secured Parties and their respective counsel shall be released and exculpated from any claim or cause of action in connection with any opinions provided, if any, in connection with the DIP New Money Documents.

~~(g)    Consummation of the DIP New Money Financing, in accordance with this DIP New Money Interim Order and the DIP New Money Documents, is in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.~~

J.        *Investigation Budget.*    As of the date hereof, the Creditors' Committee has exhausted the $300,000 aggregate cap set forth in the Final Cash Collateral Order for use of Cash Collateral to investigate potential Challenges.

K.        *Adequate Protection for the Prepetition Secured Parties.*    Upon the funding of the DIP New Money Obligations, the Prepetition Secured Parties' (as defined in the Final Cash Collateral Order) interest in the Prepetition Collateral (as defined in the Final Cash Collateral Order) will be diminished by the priming of the Prepetition Liens (as defined in the Final Cash Collateral Order) by the DIP New Money Liens and the incurrence of the DIP New Money Obligations secured by such DIP New Money Liens.    Accordingly, the Adequate Protection Claims (as defined in the Final Cash Collateral Order) held by each Prepetition Agent (as defined in the Final Cash Collateral Order) for the benefit of the applicable Prepetition Secured Parties are hereby deemed to have increased by an amount equal to the amount of DIP New Money Obligations outstanding as of the applicable date of determination, subject to any subsequent increase in value that may occur.    All parties-in-interest's rights are reserved in respect of any

(Page | 18)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

such increase in the Adequate Protection Claims, the impact of the DIP New Money Obligations on the Prepetition Secured Parties' interest in the Prepetition Collateral, and whether such obligations have increased the value of the Prepetition Collateral.

L.    *Relief Essential; Best Interest.*  The Final Hearing was held in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2).  Consummation of the DIP New Money Financing in accordance with ~~*this*~~the DIP New Money ~~*Interim*~~ Orders and the DIP New Money Documents is in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

M.    *Immediate Entry.*  Sufficient cause exists for immediate entry of this DIP New Money ~~*Interim*~~Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP New Money Motion, and the record before the Court with respect to the DIP New Money Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Financing Approved.*  The relief sought in the DIP New Money Motion is granted~~,~~ on ~~an interim~~a final basis, subject to the terms and conditions set forth in the DIP New Money Documents and this DIP New Money ~~Interim~~Final Order.  All objections to the DIP New Money Motion or this DIP New Money ~~Interim~~Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits.  This DIP New Money ~~Interim~~Final Order shall become effective immediately upon its entry.

(Page | 19)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

2.    *Authorization of the DIP New Money Financing and the DIP New Money Documents.*

(a)    The Loan Parties ~~are hereby~~were, by the DIP New Money Interim Order, and hereby are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations in accordance with, and subject to the terms of this DIP New Money ~~Interim~~Final Order, the DIP New Money Documents[78] and such other and further acts as may be necessary, appropriate, or desirable in connection therewith.  The Borrower ~~is hereby~~was, by the DIP New Money Interim Order, and hereby is authorized to borrow money pursuant to the DIP New Money Credit Agreements, and the Guarantors ~~are hereby~~were, by the DIP New Money Interim Order, and hereby are authorized to guarantee the DIP New Money Obligations, and the proceeds of such borrowings may be used for any purposes permitted under the DIP New Money Documents (subject to and in accordance with the limitations set forth in the DIP New Money Documents, including compliance with the Approved Budget (as defined below)).

(b)    In accordance with this DIP New Money ~~Interim~~Final Order and without the need for further approval of this Court, each Debtor was, by the DIP New Money Interim Order, and hereby is authorized to, and to cause each of its subsidiaries to, perform all acts, to make, execute, and deliver all instruments, certificates, and agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages,

---

[78]   For the avoidance of doubt, confirmation of the Plan is and shall remain a condition precedent to the effectiveness of the DIP New Money Exit Facility.

(Page | 20)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

and financing statements), and to pay all fees and expenses in connection with or that may be reasonably required, necessary, or desirable for the Loan Parties' performance of their obligations under or related to the DIP New Money Financing, including, without limitation:

    i.    the execution and delivery of, and performance under, each of the DIP New Money Documents;

    ii.    the execution and delivery of, and performance under, one or more authorizations, amendments, waivers, consents, or other modifications to and under the DIP New Money Documents, in each case, in such form as the Loan Parties and the DIP New Money Agents (acting in accordance with the terms of the DIP New Money Credit Agreements and at the direction of the Required Lenders) may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and payment of amounts owed under the DIP New Money Documents and any fees and other expenses (including attorneys', accountants', appraisers', and financial advisors' fees), that do not (x) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (y) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, extension, consent, or waiver fee) or (z) purport to include any portion of the DIP LC Facility Specified Collateral in the "DIP New Money Collateral" and/or "Cash Collateral";

    iii.    the non-refundable payment to the DIP New Money Agents and the DIP New Money Lenders of all reasonable and documented fees, discounts and premiums payable under the DIP New Money Documents, whether paid pursuant to the DIP New Money Interim Order or this DIP New Money Final Order, including, without limitation, ticking fees, premiums (including a make-whole premium upon repayment or prepayment, and the DIP New Money Initial Commitment Premium (payable to the DIP New Money Initial Commitment Parties on the Effective Date as set forth in the DIP New Money Documents)), amendment fees, extension fees, early termination fees, servicing fees, audit fees, liquidator fees, structuring fees or premiums, administrative agent's or collateral agent's fees, upfront fees or discounts, closing fees or premiums, commitment fees

20

(Page | 21)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

or premiums, exit fees, closing date fees, original issue discount fees or discounts, prepayment fees or premiums, indemnities, and/or professional fees (which fees were and shall be irrevocable once paid in accordance with and subject to the terms of the DIP New Money Documents and ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order, as applicable, whether or not such fees, discounts, or premiums arose before or after the Petition Date, and were and shall be deemed to have been approved upon entry of ~~this~~the DIP New Money Interim Order, or this DIP New Money Final Order, as applicable, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise) and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP New Money Credit Agreements (and in any separate letter agreements between any or all Loan Parties, on the one hand, and any of the DIP New Money Agents and/or DIP New Money Lenders, on the other, in connection with the DIP New Money Financing) and the costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of the professionals retained by: (w) the DIP New Money Agents, including Seward & Kissel LLP as counsel to the DIP New Money Agents, (x) certain DIP New Money Lender(s), including (i) Davis Polk & Wardwell LLP as counsel, Ducera Partners LLC as financial advisor, Greenberg Traurig, LLP as local legal counsel, and Freshfields Bruckhaus Deringer LLP, as UK counsel to the Ad Hoc Group and (ii) Cooley LLP as counsel, Bird & Bird (Netherlands) LLP as Dutch counsel, Appleby (Cayman) Ltd., as Cayman counsel, and Piper Sandler & Co. as financial advisor to Cupar (collectively, the "DIP New Money Fees and Expenses"), without the need to file retention motions or fee applications and consistent with the terms herein; and

iv.    the performance of all other acts necessary, appropriate, and/or desirable under or in connection with the DIP New Money Documents, including the granting of the DIP New Money Liens and the DIP New Money Superpriority Claims, and perfection of the DIP New Money

(Page | 22)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Liens as permitted herein and therein, in accordance with the terms of the DIP New Money Documents.

(c)    For the avoidance of doubt, except as expressly provided herein, nothing in ~~this~~the DIP New Money ~~Interim~~ Orders shall affect, modify, limit, or expand upon the rights of any party with respect to (i) letters of credit or surety bonds securing an obligation under a Debtor lease, or (ii) the DIP LC Order.

3.    *DIP New Money Obligations*.  ~~Subject to entry of the DIP New Money Final Order with respect to obligation on account of the DIP New Money Exit Facility, u~~Upon execution and delivery of the DIP New Money Documents, the DIP New Money Documents ~~shall~~ constituted (and, as of the date of the entry of this DIP New Money Final Order, continue to constitute) legal, valid, binding, and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party and its estate in accordance with the terms of the DIP New Money Documents and ~~this~~ DIP New Money ~~Interim~~ Orders, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other case or proceeding superseding or related to any of the foregoing (collectively, the "Successor Cases"). ~~Subject to entry of the DIP New Money Final Order with respect to obligations on account of the DIP New Money Exit Facility, u~~Upon execution and delivery of the DIP New Money Documents, the DIP New Money Obligations ~~will~~included (and, as of the date of the entry of this DIP New Money Final Order, continue to include) all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to

22

(Page | 23)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

any of the DIP New Money Secured Parties, in each case, under, or secured by, the DIP New Money Documents or ~~this~~the DIP New Money ~~Interim~~ Order*s*, including, without limitation, all principal, accrued interest, costs, fees, premiums, expenses, indemnities*,* and other amounts under the DIP New Money Documents or ~~this~~the DIP New Money ~~Interim~~ Order*s*.  The Loan Parties shall be jointly and severally liable for all DIP New Money Obligations.  No claim, obligation, payment, transfer, or grant of collateral security hereunder or under the DIP New Money Documents (including any DIP New Money Obligations or DIP New Money Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.     *DIP Superpriority Claims*.  ~~Subject to entry of the DIP New Money Final Order with respect to claims arising out of the DIP New Money Exit Facility, p~~Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP New Money Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims

(Page | 24)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

against the Loan Parties (but such DIP New Money Obligations are (i) subject and subordinate to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and (ii) *pari passu* with the DIP Term Fees (as defined in the DIP LC Order)), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations as defined in the Final Cash Collateral Order), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP New Money Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP New Money Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Loan Parties and all proceeds thereof (excluding (w) the Carve Out Reserves (as defined below) and amounts held therein, (x) any Avoidance Actions (but ~~subject to entry of the Final Order~~ the DIP New Money Superpriority Claims shall be payable from any Avoidance Proceeds), (y) all and/or any portion of the DIP LC Facility Specified Collateral, and (z) the Sales Proceeds DIP New Money Collateral), in accordance with the DIP New Money Credit Agreements and ~~this~~the DIP New Money ~~Interim~~ Order,s which DIP New Money Superpriority Claims shall be (1) subject only to, in the following order, (A) the Carve Outs and (B) the

24

(Page | 25)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Canadian Carve-Out, and (2) *pari passu* in terms of claims priority with the DIP Term Fees (as defined in the DIP LC Order). All DIP New Money Obligations, including, without limitation, the DIP New Money Superpriority Claims, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order, or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

5.      *DIP New Money Liens*. As security for the DIP New Money Obligations, effective and automatically and properly perfected upon the date of ~~this~~the DIP New Money Interim Order and without the necessity of the execution, recordation, or filing by the Loan Parties or any of the DIP New Money Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filings or other similar documents, notation of certificates of title for titled goods, or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP New Money Collateral Agent of, or over, any DIP New Money Collateral, without any further action by the DIP New Money Agents or the DIP New Money Lenders, the following security interests and liens were, by the DIP New Money Interim Order, and are hereby granted to the DIP New Money Collateral Agent for the benefit of the DIP New Money Secured Parties (collectively, the "DIP New Money Liens"), on all property identified in clauses (i) through (iii) below and all other "Collateral" (as defined in the DIP New Money Credit Agreements) (collectively, the "DIP New Money Collateral");[89] *provided* that, notwithstanding anything ~~herein~~in the DIP New Money

---

[89]   For the avoidance of doubt, notwithstanding the DIP New Money Motion or ~~this~~ DIP New Money ~~Interim~~ Order~~s~~, the DIP New Money Collateral shall include, and the DIP New Money Liens shall attach to, (x) all

(Page | 26)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Interim Order or this DIP New Money Final Order to the contrary ~~herein~~, the DIP New Money

Liens shall be (x) subject and junior to, in the following order, (A) the Carve Outs and (B) the

Canadian Carve-Out, in all respects, (y) in each case in accordance with the priorities set forth in

**Exhibit 21** hereto, and (z) with respect to DIP New Money Liens securing obligations under the

DIP New Money Exit Facility ~~, subject to entry of the DIP New Money Final Order~~:

      i.   *Priming Liens.* Pursuant to section 364(d)(1) of the Bankruptcy Code, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, valid, binding, continuing, enforceable, fully-perfected, superpriority priming security interests in and liens upon all Prepetition Collateral (for the avoidance of doubt, other than the DIP LC Facility Specified Collateral) that is subject to the DIP LC Liens (as defined in the DIP LC Order), the DIP Term Liens (as defined in the DIP LC Order), the Adequate Protection Liens (as defined in the Final Cash Collateral Order) and/or the Prepetition Liens, as applicable (such property, collectively, the "DIP New Money Primed Collateral,"[910] and such liens granted pursuant to this clause (i), the "DIP New Money Priming Liens") which shall prime in all respects, the DIP LC Liens (other than, for the avoidance of doubt, the DIP LC Liens on the DIP LC Facility Specified Collateral), DIP Term Liens (as defined in the DIP LC Order) (other than, for the avoidance of doubt, the DIP Term Liens (as defined in the DIP LC Order) on the DIP LC Facility Specified Collateral), the Adequate Protection Liens and/or the Prepetition Liens, as applicable. To the extent any DIP New Money Primed Collateral is subject to any valid, perfected, and non-avoidable Other Senior Liens (as defined in the DIP LC Order) in existence immediately prior to the Petition Date, the DIP New Money Priming Liens shall be immediately junior and

---

Orders, the DIP New Money Collateral shall include, and the DIP New Money Liens shall attach to, (x) all proceeds of all of the Debtors' real property leases and (y) all leases that permit the attachment of such liens; *provided*, *however*, to the extent that a lease does not permit attachment of a lien to such lease itself or to the leased premises pursuant to its terms, the DIP New Money Liens shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable; *provided*, *further*, the DIP New Money Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

[910] For the avoidance of doubt, the DIP New Money Primed Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

(Page | 27)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

subordinate to such valid, perfected, and non-avoidable Other Senior Liens solely with respect to such property, but senior to all other liens (including the DIP LC Liens (other than, for the avoidance of doubt, the DIP LC Liens (as defined in the DIP LC Order) on the DIP LC Facility Specified Collateral), the DIP Term Liens (other than, for the avoidance of doubt, the DIP Term Liens on the DIP LC Facility Specified Collateral), the Adequate Protection Liens and/or the Prepetition Liens, as applicable) on such property.

ii.     *Liens on Unencumbered Property of non-Prepetition Guarantors.* Pursuant to section 364(c)(2) of the Bankruptcy Code, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Loan Parties[10][11] (other than the Prepetition Guarantors), whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to (A) a valid, perfected and non-avoidable lien or (B) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and the proceeds, products, rents, and profits thereof (the "Unencumbered Property").    Unencumbered Property includes, without limitation, any and all unencumbered cash of the Loan Parties (other than the Prepetition Guarantors) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, claims and causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, joint ventures and other entities, wherever located, intercompany loans and notes, servicing rights,

---

[10][11] For the avoidance of doubt, such first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Loan Parties shall not include the DIP LC Facility Specified Collateral.

27

(Page | 28)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

swap and hedge proceeds and termination payments, and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (excluding any Avoidance Actions, but for the avoidance of doubt, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, including~~, subject to entry of the Final Order,~~ any Avoidance Proceeds).

      iii.    *Liens on Deposit Accounts Containing Certain Sales Proceeds as DIP New Money Collateral*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and liens upon all accounts of Debtors organized under the laws of any State of the United States into which any net proceeds from a Permitted Asset Sale (as defined in the New Money DIP Documents) is deposited (but for the avoidance of doubt, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out) (collectively, the "Sales Proceeds DIP New Money Collateral"~~11~~).[12]

6.    *Carve Out.*

    (a)    As of the date of the entry of this DIP New Money ~~Interim~~Final Order and until the date that the DIP New Money Obligations have been repaid in full and discharged in accordance with the terms of the DIP New Money Documents, paragraph 8 of the Final Cash Collateral Order is superseded and replaced in its entirety with this paragraph 6 and is null and void until such time the DIP New Money Obligations have been repaid in full and discharged, in

---

~~11. For the avoidance of doubt, the Sale Proceeds DIP New Money Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.~~

[12] For the avoidance of doubt, the Sale Proceeds DIP New Money Collateral shall not include all or any portion of the DIP LC Facility Specified Collateral.

(Page | 29)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

which case the Carve Out of the Final Cash Collateral Order shall be reinstated and be the operative Carve Out.~~12~~13

(b)     As used in this DIP New Money ~~Interim~~Final Order, the "Carve Out" means the sum of (i) all fees of each Debtor required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (in each case, other than any restructuring, sale, success, capital raising or other transaction fee of any investment bankers or financial advisors; *provided, however*, for the avoidance of doubt, that any monthly fees of any investment bankers or financial advisors shall be included to the extent such fees are incurred) at any time before or on the first business day following delivery by the DIP New Money Agents (acting at the direction of the Required

---

~~12~~13 For the avoidance of doubt, and other than with respect to the JPM Carve Out, there shall only be one operative "Carve Out" at all times.

29

(Page | 30)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Lenders, in accordance with the terms of the DIP New Money Credit Agreements) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $20 million incurred after the first business day following delivery by the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to the non-directing DIP New Money Lenders, the Debtors, their lead restructuring counsel (Kirkland & Ellis LLP), the U.S. Trustee, the Ad Hoc Group and its lead counsel (Davis Polk & Wardwell LLP), counsel to the First Lien Notes Indenture Trustee (Kelley Drye & Warren LLP), the SoftBank Parties and their lead counsel (Weil, Gotshal & Manges LLP), Cupar and its lead counsel (Cooley LLP), the Creditors' Committee (Paul Hastings LLP), and counsel to JPM (Freshfields Bruckhaus Deringer US LLP), which notice may be delivered upon termination of the Debtors' right to use Cash Collateral pursuant to the Final Cash Collateral Order by the Prepetition Secured Parties or following the occurrence and during the continuation of an Event of Default (as defined below) and acceleration of the DIP New Money Obligations

| | |
|---|---|
| (Page \| 31) | |
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

under the DIP New Money Facilities, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)    *Carve Out Reserves*.  On the day on which a Carve Out Trigger Notice is given by the DIP New Money Agents to the Debtors with a copy to counsel to the Creditors' Committee and counsel to JPM (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account with the DIP New Money Collateral Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP New Money Agents for the benefit of the DIP New

(Page | 32)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Money Secured Parties, unless the DIP New Money Obligations have been indefeasibly paid in full, in cash, and all DIP New Money Commitments have been terminated, in which case any such excess shall be used to pay the Controlling Authorized Representative (as defined in the Final Cash Collateral Order) for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Debt (as defined in the Final Cash Collateral Order) has been indefeasibly paid in full, in which case any such excess shall be paid to the Debtors' other creditors in accordance with their respective rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP New Money Agents for the benefit of the DIP New Money Secured Parties, unless the DIP New Money Obligations have been indefeasibly paid in full, in cash, and all DIP New Money Commitments have been terminated, in which case any such excess shall be used to pay the Controlling Authorized Representative for the benefit of Prepetition Secured Parties, unless the Prepetition Secured Debt has been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' other creditors in accordance with their respective rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the DIP New Money Documents, the Final Cash Collateral Order, the DIP LC Order, or ~~this~~ DIP New Money ~~Interim~~ Order~~s~~, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 6, then, any excess funds in one of the

(Page | 33)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 6, prior to making any payments to the DIP New Money Agents or the Prepetition Secured Parties, as applicable.  Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the DIP New Money Documents, the Final Cash Collateral Order, the DIP LC Order, or ~~this~~the DIP New Money ~~Interim~~ Order<u>s</u>, following delivery of a Carve Out Trigger Notice, the DIP New Money Agents or the Debtors' creditors shall not sweep or foreclose on cash (including (i) Cash Collateral and (ii) cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded and JPM (or its counsel) has confirmed in writing (email to suffice) that no JPM Intraday Exposure (as defined in the Final Cash Collateral Order) is outstanding, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP New Money Agents for application in accordance with the DIP New Money Documents; *provided, that,* nothing in the foregoing shall be deemed to limit, in any respect, the ability of the DIP LC Secured Parties (as defined in the DIP LC Order) and the DIP Term Secured Parties (as defined in the DIP LC Order) to exercise rights and remedies with respect to the DIP LC Facility Specified Collateral (including, for the avoidance of doubt, sweeping any cash which constitutes DIP LC Facility Specified Collateral).  Further, notwithstanding anything to the contrary in ~~this~~the DIP New Money ~~Interim~~ Order<u>s</u>, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP New Money Loans, an advance or extension of

33

(Page | 34)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

credit under the Prepetition Secured Debt Documents, or increase or reduce the DIP New Money Obligations or the obligations under the Prepetition Secured Debt Documents, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget (as defined below), Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, the DIP New Money Facilities, the DIP LC Order, the Final Cash Collateral Order, or in any Prepetition Secured Debt Documents, or any DIP New Money Documents, the Carve Outs shall be senior to all liens and claims securing the DIP New Money Collateral, the Prepetition Collateral, the Adequate Protection Liens, the 507(b) Claims, the JPM Carve Out, the Canadian Carve-Out, and any and all other forms of adequate protection, liens, or claims securing the DIP New Money Obligations or the Prepetition Secured Debt; *provided*, for the avoidance of doubt, none of the foregoing shall include the DIP LC Facility Specified Collateral.

(d)      *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(Page | 35)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(e)      *No Direct Obligation To Pay Allowed Professional Fees*.  None of the DIP New Money Agents, the DIP New Money Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any ~~s~~Successor ~~c~~Cases under any chapter of the Bankruptcy Code.  Nothing in ~~this~~the DIP New Money ~~Interim~~ Orders or otherwise shall be construed to obligate the DIP New Money Agents, the DIP New Money Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)      *Payment of Carve Out on or After the Termination Declaration Date*. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP New Money Obligations secured by the DIP New Money Collateral and shall be otherwise entitled to the protections granted under ~~this~~ DIP New Money ~~Interim~~ Orders, the DIP New Money Documents, the Bankruptcy Code, and applicable law.

7.      *Protection of DIP New Money Secured Parties' Rights*.

(a)      So long as there are any DIP New Money Obligations outstanding or the DIP New Money Lenders have any outstanding DIP New Money Commitments under the DIP New Money Documents, the Prepetition Secured Parties, the DIP LC Secured Parties (as defined

35

(Page | 36)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

in the DIP LC Order) and the DIP Term Secured Parties (as defined in the DIP LC Order) shall

(i) have no right to and take no action to foreclose upon, or recover in connection with, the liens

on any Prepetition Collateral or DIP New Money Collateral granted thereto pursuant to the

Prepetition Debt Documents, the DIP LC Order, or ~~this~~ DIP New Money ~~Interim~~ Order<u>s</u> or

otherwise seek to exercise or enforce any rights or remedies against the DIP New Money

Collateral, including in connection with the Adequate Protection Liens, as applicable; *provided*

that, notwithstanding anything to the contrary in ~~this~~<u>the</u> DIP New Money ~~Interim~~ Order<u>s</u>, (i) this

clause shall not limit the ability of the DIP LC Secured Parties (as defined in the DIP LC Order),

and/or the DIP Term Secured Parties (as defined in the DIP LC Order) to exercise rights and

remedies with respect to their security interest in the DIP LC Facility Specified Collateral;

(ii) the DIP LC Secured Parties (as defined in the DIP LC Order), the DIP Term Secured Parties

(as defined in the DIP LC Order), and the Prepetition Secured Parties shall be deemed to have

consented to any transfer, disposition or sale of, or release of liens on, the DIP New Money

Collateral (but not any proceeds of such transfer, disposition, or sale to the extent remaining after

payment in cash in full of the DIP New Money Obligations and termination of the DIP New

Money Commitments), to the extent the transfer, disposition, sale or release is authorized under

the DIP New Money Documents; (iii) the DIP New Money Secured Parties may file any further

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments, or otherwise take any action to perfect its security interests in the DIP New Money

Collateral as is necessary to give effect to ~~this~~ DIP New Money ~~Interim~~ Order<u>s</u> and as may be

(Page | 37)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

required by applicable state law or foreign law; and (iv) the Prepetition Secured Parties, the DIP

LC Secured Parties (as defined in the DIP LC Order), and/or the DIP Term Secured Parties (as

defined in the DIP LC Order) shall deliver or cause to be delivered, at the Loan Parties' cost and

expense, any termination statements, releases and/or assignments in favor of the DIP New

Money Secured Parties or other documents necessary to effectuate and/or evidence the release,

termination and/or assignment of liens on any portion of the DIP New Money Collateral subject

to any ordinary course sale or Court-approved disposition.  For the avoidance of doubt, this

paragraph 7(a) (other than the proviso to clause (i) above) shall not apply to the DIP LC Facility

Specified Collateral.

       (b)     To the extent any Prepetition Secured Party, any DIP LC Secured Party (as

defined in the DIP LC Order), and/or any DIP Term Secured Party (as defined in the DIP LC

Order) has possession of any Prepetition Collateral or DIP New Money Collateral or has control

with respect to any Prepetition Collateral or DIP New Money Collateral, or has been noted as

secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP

New Money Collateral, then such Prepetition Secured Party, DIP LC Secured Party (as defined

in the DIP LC Order), and/or DIP Term Secured Party (as defined in the DIP LC Order) shall be

deemed to maintain such possession or notation or exercise such control as a gratuitous bailee

and/or gratuitous agent for perfection for the benefit of the DIP New Money Secured Parties, and

such Prepetition Secured Party, DIP LC Secured Party (as defined in the DIP LC Order), and/or

DIP Term Secured Party (as defined in the DIP LC Order), as applicable, shall comply with the

(Page | 38)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

instructions of the DIP New Money Collateral Agent, acting on behalf of the DIP New Money Secured Parties and at the direction of the Required Lenders, with respect to such notation or the exercise of such control or possession.  For the avoidance of doubt, this paragraph 7(b) shall not apply to the DIP LC Facility Specified Collateral.

(c)     Any proceeds of Prepetition Collateral received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Agents, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP New Money Agents for the benefit of the DIP New Money Secured Parties in the same form as received, with any necessary endorsements.  The DIP New Money Agents were, by the DIP New Money Interim Order, and are hereby authorized (without obligation) to make any such endorsements as agent for the Prepetition Agents or any such Prepetition Secured Parties.  This authorization is coupled with an interest and is irrevocable.

(d)     No rights, protections or remedies of the DIP New Money Secured Parties granted by the provisions of ~~this~~the DIP New Money ~~Interim~~ Order~~s~~ or the DIP New Money Documents shall be limited, modified or impaired in any way by:  (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral;  or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

(Page | 39)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(e)  Until the DIP New Money Obligations have been indefeasibly paid in full or otherwise satisfied in full in accordance with the DIP New Money Documents and/or the DIP New Money Commitments have been terminated, the Debtors (and/or their legal and financial advisors in the case of clauses (ii) and (iii) below) shall, in accordance with and in addition to any additional rights of DIP New Money Secured Parties and/or the Required Lenders under the DIP New Money Documents:  (i) maintain books, records, and accounts to the extent and as required by the DIP New Money Documents; (ii) reasonably cooperate with, consult with, and provide to the applicable DIP New Money Secured Parties and counsel to the Creditors' Committee all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by such parties) to provide under the DIP New Money Documents or the provisions of ~~this~~the DIP New Money ~~Interim~~ Order~~s~~; and (iii) permit the DIP New Money Secured Parties to consult with one or more of the Debtors' management (to be available at reasonable times and upon reasonable prior notice, which may be by email or telephone).

8.  *Limitation on Charging Expenses Against Collateral.*  No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP New Money Collateral (including Cash Collateral), or, for the avoidance of doubt, DIP LC Facility Specified Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of, with

(Page | 40)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

respect to the DIP New Money Collateral (including Cash Collateral), the DIP New Money

Collateral Agent (acting at the direction of the Required Lenders), and with respect to the DIP

LC Facility Specified Collateral, the SoftBank Parties, and no such consent shall be implied from

any action, inaction, or acquiescence by the DIP New Money Secured Parties and nothing

contained in ~~this~~the DIP New Money ~~Interim~~ Order~~s~~ shall be deemed to be a consent by the DIP

New Money Secured Parties to any charge, lien, assessment or claim in favor of any party other

than the DIP New Money Secured Parties against the DIP New Money Collateral, DIP LC

Facility Specified Collateral, the Prepetition Collateral, or the Adequate Protection Collateral

under section 506(c) of the Bankruptcy Code or otherwise.

9.      *No Marshaling*.  In no event shall the DIP New Money Agents or the DIP New

Money Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with

respect to the DIP New Money Collateral or the DIP New Money Obligations.

10.      *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP

New Money Agents or any other DIP New Money Secured Party pursuant to the provisions of

~~this~~the DIP New Money ~~Interim~~ Order~~s~~ shall be irrevocably received free and clear of any claim,

charge, assessment, or other liability, including, without limitation, any such claim or charge

arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether

asserted or assessed by, through, or on behalf of the Debtors.

11.      *Disposition of DIP New Money Collateral*.  The Debtors shall have no authority

to, and shall not, sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP

40

(Page | 41)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

New Money Collateral, or any interest therein, without the prior written consent (email to suffice) of the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP New Money Secured Parties or from any order of this Court), except as otherwise expressly provided for in the DIP New Money Documents.

12.    *Reporting Obligations*.    So long as the DIP New Money Loans remain outstanding, the Debtors shall provide copies of any Approved Budget, any Variance Report (as defined in the Final Cash Collateral Order), and any other material report (including, without limitation, any other material financial reporting) described in this the DIP New Money ~~Interim~~ Orders, the DIP New Money Credit Agreements, the Final Cash Collateral Order and/or the Amended RSA~~13~~14 to (i) the DIP New Money Secured Parties that have signed a confidentiality agreement with the Debtors and/or their non-Debtor affiliates and their advisors and (ii) counsel to the Creditors' Committee.  Notwithstanding the foregoing, such reporting obligations shall not extend to any telephone conferences or earnings report calls.

(a)    *Budgets and Periodic Reporting*.  The use of DIP New Money Loans in the Chapter 11 Cases shall be limited in accordance with the initial budget approved by the Required Lenders~~14~~15 attached ~~hereto~~to the DIP New Money Interim Order as Exhibit 1 (the

---

1314   "Amended RSA" refers to that certain Amended and Restated Restructuring Support Agreement, dated as of May 5, 2024, by and among the Debtors, the Ad Hoc Group, the SoftBank Parties, ~~and~~ Cupar and certain other holders of Series I First Lien Notes and Second Lien Notes.

1415   For the avoidance of doubt, any and all approvals over the Initial Budget and Approved Budget shall be subject to the consent of the SoftBank Parties as set forth in the Final Cash Collateral Order.  Moreover, any and all reporting obligations in this paragraph 12 shall be subject to the SoftBank Parties' rights to receive such reporting as set forth in the Final Cash Collateral Order.

(Page | 42)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

"Initial Budget" and any other budget subsequently approved by the Required Lenders an "Approved Budget"). Any budget and/or reporting that satisfies the obligations under section 6.12 of the DIP New Money Credit Agreements shall be deemed to satisfy the obligations under paragraphs 10(a) and 10(b) of the Final Cash Collateral Order.

(b)     *Variance Reporting*. Any reporting that satisfies the obligations under section 7.4 of the DIP New Money Credit Agreements shall be deemed to satisfy the obligations under paragraphs 10(c) and 10(d) of the Final Cash Collateral Order.

(Page | 43)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

13.  *Payment of Fees and Expenses*.

(a)     The Debtors were, by the DIP New Money Interim Order, and hereby are authorized and directed to pay the DIP New Money Fees and Expenses (which, for the avoidance of doubt, shall include the DIP New Money Initial Commitment Premium), as provided in the DIP New Money Documents.  All DIP New Money Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP New Money Agents and professionals for the DIP New Money Lenders shall not be required to comply with the U.S. Trustee fee guidelines; *provided*, *however*, any time that such professionals seek payment of reasonable and documented fees and expenses from the Debtors, such payment shall be subject to the terms and conditions (including the Review Period) provided in the Final Cash Collateral Order; provided, that any payments required to be made in advance of the closing of the DIP New Money Facilities, including those required to be made pursuant to section 5.1(f) of the DIP New Money Credit Agreements shall not be subject to the terms and conditions provided in the Final Cash Collateral Order, including the Review Period (as defined in the Final Cash Collateral Order).  No attorney or advisor to the DIP New Money Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(b)     The Debtors were by the Final Cash Collateral Order and the DIP New Money Interim Order and, by this DIP New Money ~~Interim~~Final Order, are hereby authorized to and shall pay the First Lien Adequate Protection Fees and Expenses (as defined in the Final Cash Collateral Order).  Subject to the review procedures set forth in this paragraph 13(b), payment of

43

(Page | 44)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

all First Lien Adequate Protection Fees and Expenses (as defined in the Final Cash Collateral Order) shall not be subject to allowance or review by the Court.  The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraph 3(c) of the Final Cash Collateral Order (collectively, the "Noteholder Professionals" and, each, a "Noteholder Professional") no later than the third business day of the following week after delivery by the applicable Noteholder Professional, or counsel representing the applicable Prepetition Secured Party (as defined in the Final Cash Collateral Order) of an email notice stating that the ten day review period (the "Review Period") with respect to each of the invoices therefor (or any portion thereof) (the "Invoiced Fees") passed without objection after the receipt by counsel for the Debtors, counsel for the Committee, and the U.S. Trustee of such invoices.  Invoiced Fees shall be in the form of an invoice summary for reasonable and documented professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to (a) the attorney-client privilege; (b) any work product doctrine; (c) privilege or protection; (d) common interest doctrine privilege or protection; (e) any other evidentiary privilege or protection recognized under applicable law; (f) or any other confidential information, and the provision of such invoices shall not constitute any waiver of (a) the attorney-client privilege; (b) work product doctrine; (c) privilege or protection; (d) common

44

(Page | 45)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

interest doctrine privilege or protection; (e) or any other evidentiary privilege; (f) or protection recognized under applicable law.  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party, the Ad Hoc Group, and the SoftBank Parties, in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days prior written notice to the submitting party, the Ad Hoc Group, ~~and~~ the SoftBank Parties, and Cupar, of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

14.     *Perfection of DIP New Money Liens*.

(a)     Without in any way limiting the automatically valid effective perfection of the DIP New Money Liens granted in ~~this~~the DIP New Money ~~Interim~~ Orders, the DIP New Money Agents and the DIP New Money Lenders were, by the DIP New Money Interim Order, and are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, trademark filings, copyright filings, mortgages, control agreements, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into intercreditor agreements, or to subordinate existing liens and

(Page | 46)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

any other similar action or action in connection therewith in a manner not inconsistent herewith or take any other action in order to document, validate, and perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). Whether or not the DIP New Money Secured Parties take such Perfection Actions, such liens and security interests ~~shall be~~were deemed valid, automatically perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of ~~this~~the DIP New Money Interim Order. Each of the Loan Parties, without any further consent of any party, was, by the DIP New Money Interim Order, and is authorized and directed to take, execute, deliver, and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP New Money Secured Parties to further validate, perfect, preserve, and enforce the DIP New Money Liens in all jurisdictions required under the DIP New Money Credit Agreements, including all local law documentation therefor determined to be reasonably necessary by the Required Lenders. All such documents will be deemed to have been recorded and filed as of the date of ~~this~~the DIP New Money Interim Order.

(b)    Certified copies of ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order may, in the discretion of the DIP New Money Collateral Agent (acting at the direction of the Required Lenders), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices were, by the DIP New Money Interim Order, and are hereby authorized and directed to accept such certified copy of ~~this~~the DIP New Money Interim Order or

46

(Page | 47)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

this DIP New Money Final Order for filing and/or recording, as applicable. The Automatic Stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP New Money Secured Parties to take all actions, as applicable, referenced in this paragraph 14.

(c)     Any provision of any lease or other license, contract or other agreement (other than a non-residential real property lease) that requires (i) the consent or approval of one or more of the other parties, or (ii) the payment of any fees or obligations, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such interest, or the proceeds thereof, or other collateral related thereto solely in connection with the granting of the DIP New Money Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provisions shall have no force and effect with respect to the granting of the DIP New Money Liens on such interest or the proceeds of any assignment, and/or sale.

15.     *Termination*.

(a)     Without prejudicing the rights of the Softbank Parties and the DIP LC Secured Parties under the DIP LC Facility Credit Agreement, the entry of ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order shall neither constitute an Event of Default with respect to the DIP LC Facility pursuant to paragraph 17 of the DIP LC Order, nor shall it terminate the use of Cash Collateral pursuant to paragraph 11 of the Final Cash Collateral Order.

47

(Page | 48)

| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

(b)     The Automatic Stay is hereby modified to the extent necessary to permit the DIP New Money Agents (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to take any or all of the following actions, at the same or different times, in each case without further order of or application to the Court: (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any remaining undrawn DIP New Money Commitments, (B) all outstanding DIP New Money Obligations (including any applicable make-whole premiums) to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, notwithstanding anything herein or in any DIP New Money Document to the contrary, (C) the default rate under the DIP New Money Documents to be applicable to all outstanding DIP New Money Obligations, and (D) the termination of the applicable DIP New Money Documents as to any future liability or obligation of the DIP New Money Agents and the applicable DIP New Money Lenders with respect to the DIP New Money Commitments thereunder (but, for the avoidance of doubt, without affecting any of the DIP New Money Liens or the DIP New Money Obligations), and (ii) upon the occurrence and during the continuation of an Event of Default, deliver written notice (a "Termination Notice") (including by email) by the DIP New Money Collateral Agent (acting at the direction Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to lead restructuring counsel to the Debtors (Kirkland & Ellis LLP), lead restructuring counsel to the SoftBank Parties (Weil, Gotshal & Manges LLP), lead restructuring

48

(Page | 49)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

counsel to the DIP LC Secured Parties (Milbank LLP), lead restructuring counsel to the Ad Hoc Group and certain DIP New Money Lenders (Davis Polk & Wardwell LLP), lead restructuring counsel to Cupar (Cooley LLP), counsel to JPM (Freshfields Bruckhaus Deringer US LLP), counsel to the First Lien Notes Indenture Trustee (Kelley Drye & Warren LLP), the U.S. Trustee, and counsel to the Creditors' Committee (Paul Hastings LLP) (collectively, the "Termination Notice Parties"), and the passage of not less than five (5) business days' notice (such five (5) business day period, which may be extended by the Court based on the Court's availability, the "DIP New Money Agent Remedies Notice Period," which period shall run concurrently with any other notice periods under the DIP New Money Documents, so long as notice has been given in accordance with this paragraph) without (x) the cure of the Event(s) of Default alleged in the Termination Notice by the Debtors in accordance with their ability (if any) to cure such Event(s) of Default under the DIP New Money Documents or the waiver of such Event(s) of Default by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements), (y) a ruling by the Court prior to the end of the DIP New Money Agent Remedies Notice Period that an Event of Default has not in fact occurred, or (z) agreement by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) to extend the DIP New Money Agent Remedies Notice Period, without further notice to, hearing of, or order from this Court, (A) immediately terminate and/or revoke the Debtors' right under ~~this~~the DIP New Money ~~Interim~~ Orders and any DIP New Money

49

(Page | 50)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Documents to use any Cash Collateral constituting DIP New Money Collateral (subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and related provisions); *provided* that, upon such termination or revocation by the DIP New Money Collateral Agent, any consent of the Prepetition Secured Parties to the Debtors' use of Cash Collateral shall be deemed withdrawn, and (B) exercise all rights and remedies available under applicable law whether or not the maturity of any of the DIP New Money Obligations shall have been accelerated.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

       (c)      During the DIP New Money Agent Remedies Notice Period, the Debtors shall be permitted to cure any Events of Default (to the extent curable under the terms of the DIP New Money Documents) outstanding at such time and are permitted to use the DIP New Money Loans solely to:  (a) pay payroll and other critical administrative expenses to keep the business of the Debtors operating, strictly in accordance with the Approved Budget (without any Permitted Variance (as defined in the Final Cash Collateral Order)), or as otherwise agreed by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements), (b) fund the Carve Out Reserves, and (c) seek an emergency hearing (with the DIP New Money Agents deemed to have consented to such emergency hearing) before the Court solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing.  Except as set forth in this the DIP New Money ~~Interim~~ Orders, the Debtors hereby waive their right to seek relief under the Bankruptcy Code,

(Page | 51)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP New Money Secured Parties set forth in ~~this~~the DIP New Money ~~Interim~~ Order~~s~~ or the other DIP New Money Documents.

16.     *Preservation of Rights Granted Under this DIP New Money ~~Interim~~Final Order.*

(a)     Other than (v) the Carve Outs, (w) the Canadian Carve-Out, (x) the DIP Term Fees (as defined in the DIP LC Order) (with respect to claims only), (y) those liens on, or claims granted on behalf of, the DIP LC Facility Specified Collateral and (z) any other claims and liens expressly granted by this DIP New Money ~~Interim~~Final Order (or permitted under the DIP New Money Credit Agreements), no claim or lien having a priority superior to or *pari passu* with those granted by ~~this~~the DIP New Money ~~Interim~~ Order~~s~~ to the DIP New Money Secured Parties shall be granted or allowed while any of the DIP New Money Obligations remain outstanding, and the DIP New Money Liens shall not be:

    i.    subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code;

    ii.    subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

    iii.    subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties; or

(Page | 52)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

iv.   subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)   Subject to paragraph 15 hereof, upon the occurrence and continuance of (x) any Event of Default (as defined in the DIP New Money Credit Agreements) or (y) any violation of any of the terms of this DIP New Money ~~Interim~~Final Order (each an "Event of Default" ), after notice by the DIP New Money Collateral Agent (acting at the direction of the Required Lenders, in accordance with the terms of the DIP New Money Credit Agreements) in writing to the non-directing DIP New Money Lenders and their respective counsel, the Borrower and counsel to the Borrower, the U.S. Trustee, counsel to the SoftBank Parties, and counsel to the Creditors Committee, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP New Money Credit Agreements.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered:  (a) the DIP New Money Superpriority Claims and the DIP New Money Liens granted pursuant to this DIP New Money ~~Interim~~Final Order shall continue in full force and effect and shall maintain their priorities as provided in this DIP New Money ~~Interim~~Final Order until all DIP New Money Obligations shall have been indefeasibly paid in full, and such DIP New Money Superpriority Claims and DIP New Money Liens shall, notwithstanding such dismissal, remain binding on all parties in interest; (b) the other rights granted by this DIP New Money ~~Interim~~Final Order shall not be affected; and (c) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims,

52

(Page | 53)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

liens, and security interests referred to in this paragraph 16 and otherwise in this DIP New Money ~~Interim~~Final Order.

(c)     Notwithstanding anything to the contrary herein, the DIP New Money Secured Parties and Prepetition Secured Parties may only enter upon a leased premises of the Debtors following an Event of Default in accordance with (i) a separate written agreement among the DIP New Money Secured Parties or Prepetition Secured Lenders and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP New Money Secured Parties or Prepetition Secured Lenders under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice to and an opportunity to be heard for the applicable landlord for the leased premises.

(d)     If any or all of the provisions of this DIP New Money ~~Interim~~Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect:  (i) the validity, priority, or enforceability of any DIP New Money Obligations incurred prior to the actual receipt of written notice by the DIP New Money Agents of the effective date of such reversal, modification, vacation, or stay; or (ii) the validity, priority, or enforceability of the DIP New Money Liens granted under this DIP New Money ~~Interim~~Final Order.  Notwithstanding any such reversal, modification, vacation, or stay, the DIP New Money Obligations or the DIP New Money Liens incurred by the Loan Parties to any DIP New Money Secured Parties pursuant to this DIP New Money ~~Interim~~Final Order prior to the actual receipt of

(Page | 54)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

written notice by the DIP New Money Agents of the effective date of such reversal, modification, vacation, or stay shall be governed in all respects by the original provisions of this DIP New Money ~~Interim~~Final Order, and the DIP New Money Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted in section 363(m) and section 364(e) of the Bankruptcy Code, as applicable, this DIP New Money ~~Interim~~Final Order, and the DIP New Money Documents.

(e)    Subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, and on a *pari passu* basis (with respect to claims only) with the DIP Term Fees (as defined in the DIP LC Order), unless and until all DIP New Money Obligations are indefeasibly paid in full or otherwise satisfied in full in accordance with the DIP New Money Documents, the Debtors and any other party irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (i) without the prior written consent of the DIP New Money Collateral Agent (at the direction of the Required Lenders) or counsel to the Required Lenders (email shall suffice) (x) any modification, stay, vacatur, or amendment of this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents, (y) a claim having recourse to the DIP New Money Collateral or the DIP New Money Secured Parties, under section 506(c) or otherwise, *pari passu* with or senior to the DIP New Money Superpriority Claims (or the liens and security interests secured such claims and obligations), or (z) any other order allowing use of the Cash Collateral that is inconsistent with this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents; (ii) any lien on any of the DIP New Money Collateral with priority

54

(Page | 55)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

equal or superior to the DIP New Money Liens except as specifically provided in this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents; (iii) the use of Cash Collateral for any purpose other than as permitted in this DIP New Money ~~Interim~~Final Order; (iv) an order converting or dismissing any of these Chapter 11 Cases; (v) an order appointing a chapter 11 trustee in any of these Chapter 11 Cases; or (vi) an order appointing an examiner with expanded powers in any of these Chapter 11 Cases.

(f)     Except as expressly provided in this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents, the DIP New Money Liens, the DIP New Money Superpriority Claims, and all other rights and remedies of the DIP New Money Agents and the DIP New Money Secured Parties granted by the provisions of this DIP New Money ~~Interim~~Final Order and the DIP New Money Documents, as applicable, shall survive, and shall not be modified, impaired, or discharged by the termination of this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents or (a) the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases; (iii) approving the sale of any DIP New Money Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP New Money Documents); or (iv) confirming a chapter 11 plan in any of the Chapter 11 Cases; or (b) by any other act or omission; and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any DIP New Money Obligations.   The terms and provisions of this DIP New Money

55

(Page | 56)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

~~Interim~~Final Order and the DIP New Money Documents shall continue in these Chapter 11

Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in

any superseding chapter 7 cases under the Bankruptcy Code, and the DIP New Money Liens, the

DIP New Money Superpriority Claims, and all other rights and remedies of the DIP New Money

Secured Parties granted by the provisions of this DIP New Money ~~Interim~~Final Order and the

DIP New Money Documents, as applicable, shall continue in full force and effect until the DIP

New Money Obligations are indefeasibly paid in full or otherwise satisfied in accordance with

the terms of the DIP New Money Documents and as set forth herein, and the DIP New Money

Commitments have been terminated.

17.     *Limitation on Use of DIP New Money Financing Proceeds and Collateral.*

Notwithstanding any other provision of this DIP New Money ~~Interim~~Final Order, or any other

order entered by the Court, none of the DIP New Money Loans, the DIP New Money Collateral

(including Cash Collateral), and the Debtor Collateral (as defined in the DIP LC Order) may be

used directly or indirectly, including without limitation through reimbursement of professional

fees of any non-Debtor party, in connection with (a) the actual or threatened investigation,

initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation

(i) against any of the DIP New Money Secured Parties, the DIP LC Secured Parties (as defined in

the DIP LC Order), or the Prepetition Secured Parties, or each of the foregoing's respective

predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, (ii)

challenging the amount, validity, perfection, priority or enforceability of or asserting any defense,

56

(Page | 57)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

counterclaim or offset with respect to the DIP New Money Obligations, the DIP Obligations (as defined in the DIP LC Order), or the Prepetition Secured Debt, and/or the liens, claims, rights, or security interests granted under ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order, or the Prepetition Secured Debt Documents, or (iii) in connection with any other Challenges, including, in the case of each (i) and (iii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) to attempt or to prevent, hinder, or otherwise delay or interfere with the DIP New Money Secured Parties', the DIP LC Secured Parties' (as defined in the DIP LC Order) and/or the Prepetition Secured Parties' enforcement or realization on the DIP New Money Obligations, the DIP New Money Collateral, the DIP Obligations (as defined in the DIP LC Order), the DIP LC Facility Specified Collateral, the Debtor Collateral (as defined in the DIP LC Order), Prepetition Secured Debt, Prepetition Collateral, Adequate Protection Obligations or the Adequate Protection Collateral, and the liens, claims and rights granted to such parties under ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, the DIP LC Order and/or the Final Cash Collateral Order, each in accordance with ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order and/or the Prepetition Secured Debt Documents; (c) to attempt or to modify any of the rights and remedies granted to the DIP New Money Secured Parties, any of the DIP LC Secured Parties (as defined in the DIP LC Order),

(Page | 58)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

and/or any of the Prepetition Secured Parties under ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, the DIP New Money Documents, the DIP LC Order, the DIP Documents (as defined in the DIP LC Order), the Final Cash Collateral Order and/or the Prepetition Secured Debt Documents, as applicable, other than in accordance with ~~this~~the DIP New Money ~~Interim~~ Order~~s~~; (d) (i) to attempt or to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims granted hereunder or under the DIP LC Order (and/or the DIP Documents (as defined in the DIP LC Order)) (as in effect on the date hereof) or permitted pursuant to the DIP New Money Documents) or security interests in the DIP New Money Collateral or any portion thereof that are senior to, or on parity with, the DIP New Money Liens or the DIP New Money Superpriority Claims, or any other relief the granting of which would violate the DIP New Money Credit Agreements or ~~this~~the DIP New Money ~~Interim~~ Order~~s~~, (ii) attempts to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims granted hereunder or permitted pursuant to the DIP New Money Documents) or security interests in the DIP LC Facility Specified Collateral, and/or the Debtor Collateral (as defined in the DIP LC Order) or any portion thereof that are senior to, or on parity with, the DIP Obligations (as defined in the DIP LC Order), or (iii) attempts to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims granted hereunder or permitted pursuant to the DIP New Money Documents) or security interests in the Adequate Protection Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Obligations or Prepetition Secured Debt; or (e) attempts to pay or to

58

(Page | 59)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the Required Lenders, expressly permitted under this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents (including the Approved Budget), or required by the DIP LC Order as in effect on the date hereof, in each case unless all the DIP New Money Obligations, the DIP Obligations (as defined in the DIP LC Order), the Adequate Protection Obligations and the Prepetition Secured Debt have been refinanced, paid in full in cash, or otherwise satisfied in a manner acceptable to the DIP New Money Secured Parties, the DIP LC Secured Parties, and the Prepetition Secured Parties, as applicable.  For the avoidance of doubt, this paragraph 17 shall not limit the Debtors' or the Creditors' Committee's rights to use DIP New Money Collateral (including Cash Collateral) to contest that an Event of Default has occurred hereunder pursuant to and consistent with paragraph 15 of this DIP New Money ~~Interim~~Final Order.  Any payment by the Debtors of fees and expenses of the Committee~~'s~~ ~~p~~Professionals incurred in connection with its investigation of the liens and claims of, and any claims against, the Prepetition Secured Parties in excess of the $300,000 budget set forth in the Final Cash Collateral Order shall be approved and made pursuant to a separate Court order.  Notwithstanding the foregoing, nothing in this paragraph 17 shall limit the Committee's allowable fees and expenses incurred in connection with the Chapter 11 Cases or limit the amount of allowed claims entitled to administrative expense priority under any chapter 11 plan, subject to the right of parties in interest to object to such fees.

(Page | 60)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

18.     *Exculpation*.  Nothing in ~~this~~the DIP New Money ~~Interim~~ Order*s*, the DIP New Money Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon any DIP New Money Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  The DIP New Money Secured Parties shall not, in any way or manner, be liable or responsible for (1) the safekeeping of the DIP New Money Collateral, (2) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (3) any diminution in the value thereof, or (4) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage, or destruction of the DIP New Money Collateral shall be borne by the Loan Parties.

19.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP New Money Documents, to permit the use of the DIP New Money Collateral or in exercising any rights or remedies as and when permitted pursuant to ~~this~~the DIP New Money ~~Interim~~ Order*s* or the DIP New Money Documents, none of the DIP New Money Secured Parties shall: (a) be deemed to be in "control" of the operations or participating in the management of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates; or (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with respect to the operation or management of the Debtors, or otherwise cause liability to arise to the federal or state government or the status of "responsible person" or

60

(Page | 61)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

"managing agent" to exist under applicable law (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in ~~this~~the DIP New Money Interim Order or this DIP New Money Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP New Money Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

20.    *Indemnification*.  Without limitation to any other right to indemnification, the Debtors shall indemnify each of the DIP New Money Secured Parties in accordance with the terms and conditions of the DIP New Money Credit Agreements.  Except as otherwise provided in the DIP New Money Credit Agreements, the Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this DIP New Money ~~Interim~~Final Order to any obligation set forth, as the case may be, in this paragraph 20, in paragraph 20 of the DIP New Money Interim Order, in the DIP New Money Documents, or in the Prepetition Credit Documents to indemnify and/or hold harmless the DIP New Money Secured Parties, as the case may be, and any such defenses are hereby waived, except to the extent it is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from gross negligence, actual fraud, or willful misconduct or breach of their obligations under the DIP New Money Facilities.

(Page | 62)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

21. *U.S. Specialty Insurance Company.* Nothing in this DIP New Money ~~Interim~~Final Order, the DIP New Money Motion, the DIP New Money ~~Interim~~ Facility~~ies~~, the DIP LC Order or the Final Cash Collateral Order or any related documents including any loan documents (the "Defined Documents") shall in any way prime or affect the rights of U.S. Specialty Insurance Company, (the "Surety") as to: (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due to any of the Debtors or any of their non-debtor affiliates in relation to contracts or obligations bonded by the Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit (and the proceeds thereof) or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates (collectively (a) to (c), the "USIC Surety Assets"). Nothing in the Defined Documents shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or involving the Surety and any of the Debtors or any of their non-debtor affiliates as to the USIC Surety Assets or otherwise, including, but not limited to, the six General Agreements of Indemnity (the "Indemnity Agreements") executed on or about March 22, 2019, April 9, 2019, April 10, 2019, April 30, 2019, August 26, 2019, and March 10, 2020, by non-debtor WeWork Companies LLC, WeWork Companies Inc. and debtors 500 11th Ave North Tenant LLC, 101 East Washington Street Tenant LLC, 1115 Broadway Q LLC, 2222 Ponce DeLeon Blvd Tenant LLC, and 830 NE Holladay Street Tenant LLC. In addition, nothing

62

(Page | 63)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

in the Defined Documents shall prime or otherwise impact: (x) current or future setoff and/or recoupment rights and/or the lien rights of the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any existing or future subrogation or other common law rights of the Surety. In addition, notwithstanding anything in the Defined Documents to the contrary, the rights of the Surety in connection with any letter of credit (and any amendment(s) or modification(s) thereto) relating to any of the Debtors or their non-debtor affiliates, including but not limited to that certain Irrevocable Letter of Credit and amendments thereto in favor of among others, the Surety, having had an aggregate amount of credit of $5,113,960.00 (the "USIC ILOCs"), and the proceeds thereof, which proceeds were received by the Surety pursuant to a draw on the USIC ILOCs and thereafter reduced by $1,633,210.00 by way of payment of a claim on a bond, resulting in current cash being held by the Surety in the amount of $3,480,750.00, such proceeds shall not be affected or impaired, and neither the USIC ILOCs nor any proceeds therefrom constitute property of the bankruptcy estate. To the extent that any USIC Surety Assets are being held or will be held by or on behalf of any one or more of the Debtors or any of their non-debtor affiliates and are used as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of the use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date. In addition, notwithstanding anything in the Defined Documents to the contrary, the rights, claims, and defenses of the Debtors and any of their non-debtor affiliates, of any

63

(Page | 64)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

obligee on any bond issued by the Surety and of the Surety, including the Surety's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors or any of their non-debtor affiliates and of any successors in interest to any of the Debtors or any of their non-debtor affiliates and any creditors, to object to any such liens, claims and/or equitable subordination and other rights, are fully preserved.  Nothing herein is an admission by the Surety or the Debtors or any of their non-debtor affiliates or a determination by the ~~Bankruptcy~~ Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith.  The Surety is not a gratuitous bailee nor is required to hold funds in trust for the benefit of any party, such that paragraph 7(b) and 7(c) of this DIP New Money ~~Interim~~Final Order does not apply to the Surety and neither does any other similar provision provided anywhere in the Defined Documents.

22.    *Philadelphia Indemnity Insurance Company Reservation of Rights*.  Nothing in this DIP New Money ~~Interim~~Final Order shall in any way prime or affect the rights of Philadelphia Indemnity Insurance Company ("PIIC") as to:  (a) any funds it is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including, but not limited to, any proceeds due or to become due to any of the Debtors in relation to contracts or obligations bonded by PIIC; (b) any substitutions or replacements of such funds including accretions to and interest earned on such funds; or (c) any letter of credit or cash collateral related to any indemnity, collateral trust, bond or agreements between or involving

64

(Page | 65)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~<u>Final</u> Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

PIIC and any of the Debtors (collectively (a) to (c), the "<u>PIIC Surety Assets</u>").  Nothing in this DIP New Money ~~Interim~~<u>Final</u> Order shall affect the rights of PIIC under any current or future indemnity, collateral trust, or related agreements between or involving PIIC and any of the Debtors as to the PIIC Surety Assets or otherwise.  In addition, nothing in this DIP New Money ~~Interim~~<u>Final</u> Order shall prime or otherwise impact: (x) current or future setoff and/or recoupment rights and/or the lien rights of PIIC or of any party to whose rights PIIC has or may become subrogated; and/or (y) any existing or future subrogation or other common law rights of PIIC.  In addition, notwithstanding anything in this DIP New Money ~~Interim~~<u>Final</u> Order to the contrary, the rights of PIIC in connection with any letter of credit (and any amendment(s) or modification(s) thereto, the "<u>PIIC ILOC</u>s") relating to any of the Debtors and any and all proceeds thereof, shall not be affected or impaired.  In addition, notwithstanding anything in this DIP New Money ~~Interim~~<u>Final</u> Order to the contrary, the rights, claims, and defenses of the Debtors, of any obligee on any bond issued by PIIC and of PIIC, including PIIC's and any obligee's rights under any properly perfected liens and/or claims and/or claim for equitable rights of subrogation, and rights of the Debtors and of any successors in interest to any of the Debtors and any creditors to object to any such liens, claims, and/or equitable subordination and other rights are fully preserved.  Nothing herein is an admission by PIIC, the Debtors, or any of their non-debtor affiliates or a determination by the ~~Bankruptcy~~ Court, regarding any claims under any bonds, and PIIC and the Debtors reserve any and all rights, remedies, and defenses in connection therewith.

(Page | 66)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

23.    *Chubb Reservation of Rights*.  For the avoidance of doubt, (i) the Debtors shall not grant liens and/or security interests in (a) any property (including premium or cash collateral) received and/or held by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers, "Chubb") or (b) any insurance policy issued by Chubb to any other party or any rights, claims, interests or proceeds related thereto; (ii) the proceeds of any insurance policy issued by Chubb shall only be considered to be collateral of the DIP New Money Secured Parties to the extent such proceeds are paid to the Debtors pursuant to the terms of any such applicable insurance policy; and (iii) nothing, including the DIP New Money Documents, DIP New Money Interim Order, and/or this DIP New Money ~~Interim~~Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

24.    *Texas Taxing Authorities*.  Notwithstanding any other provisions in the DIP New Money Orders, any statutory liens on account of ad valorem taxes (the "Tax Liens") held by the Texas Taxing Authorities that constitute Other Senior Liens (as defined in the Final Cash Collateral Order), including liens for post-petition taxes, shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and, under applicable non-bankruptcy law, are granted priority over a prior perfected security interest or lien, and all parties' rights to object to the priority, validity, amount, enforceability, perfection and extent of the Tax Liens are fully preserved.[16]

[16] The "Texas Taxing Authorities" are Dallas County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, City of Richardson, Montgomery

(Page | 67)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

25.    ~~24.~~ *No Requirement to File Proofs of Claim*.  The DIP New Money Secured Parties shall not be required to file proofs of claim with respect to their DIP New Money Obligations under the DIP New Money Documents, and the evidence presented with the DIP New Money Motion and the record established at the Hearings are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, secured status, and priority.

26.    ~~25.~~ *Credit Bidding*.  The DIP New Money Collateral Agent (directly or via one or more acquisition vehicles), at the direction of the Required Lenders, shall have the right to credit bid, in accordance with the applicable DIP New Money Documents, any or all of the DIP New Money Obligations in any sale of the DIP New Money Collateral outside the ordinary course of business without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363 or 1123(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and the DIP New Money Collateral Agent (or any related acquisition vehicle, as applicable) shall be deemed a qualified bidder (or such analogous term or capacity) in connection with any such sale.

27.    ~~26.~~ *Stub Rent Reserve*.  Upon the closing of the DIP New Money Financing, the Debtors shall hold at all times, subject to, in the following order, (A) the Carve Outs and (B) the Canadian Carve-Out, an amount of cash no less than $20 million (the "Stub Rent Liquidity

---

Houston Independent School District, Irving Independent School District, City of Richardson, Montgomery County, Tarrant County, Plano Independent School District, Highland Park Independent School District, Dallas County Utility and Reclamation District, Woodlands Road Utility District, Montgomery County Municipal District 67, and Harris County Improvement District #01.

(Page | 68)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Covenant") on account of payment of estimated allowed Stub Rent (as defined in the Final Cash Collateral Order) claims; *provided that* the cash balance in the account that holds the Stub Rent Liquidity Covenant shall not fall below $20 million; *provided further* that this paragraph 26 will supersede in all respects paragraph 27 of the Final Cash Collateral Order, including any requirement to deposit any amount in consideration of payment of Stub Rent claims in a segregated account.

28. ~~27.~~ *Order Governs*.  In the event of any inconsistency, but solely to the extent of such inconsistency, between the provisions of ~~this~~the DIP New Money Interim Order, this DIP New Money Final Order, the DIP New Money Documents, or any other order entered by this Court (for the avoidance of doubt, including, without limitation, the Final Cash Collateral Order and the DIP LC Order), the provisions of this DIP New Money ~~Interim~~Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this DIP New Money ~~Interim~~Final Order, including, without limitation, the Approved Budget.  Except as expressly provided herein with respect to the incurrence of the DIP New Money Facilities and the liens and claims associated therewith (to  which the DIP Term Secured Parties, the DIP LC Secured Parties, and the Required Noteholder Secured Parties have consented along with the terms of this DIP New Money ~~Interim~~Final Order), this DIP New Money ~~Interim~~Final Order shall not in any way abrogate, amend, waive, or otherwise modify the Final Cash Collateral Order or the DIP LC

(Page | 69)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Order, including any consents, approvals, or other rights set forth therein, and the grant of

consent rights over the same matters to different parties in both this DIP New Money

~~Interim~~Final Order and the Final Cash Collateral Order and/or the DIP LC Order shall not be

deemed an inconsistency.  In addition, for so long as the Amended RSA is in effect as to any

party, neither the entry of this DIP New Money ~~Interim~~Final Order nor the payment of any

amounts under this DIP New Money ~~Interim~~Final Order shall modify such party's rights or

obligations under the Amended RSA.[1517]

29. ~~28.~~ *Binding Effect; Successors and Assigns*.  The DIP New Money Documents

and the provisions of this DIP New Money ~~Interim~~Final Order, including all findings herein,

shall be binding upon all parties in interest in these Chapter 11 Cases, including, without

limitation, the DIP New Money Secured Parties, the Creditors' Committee, or any non-statutory

committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective

successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or

elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of

the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the

Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the

benefit of the DIP New Money Secured Parties and the Debtors and their respective successors

and assigns; *provided*, that the DIP New Money Secured Parties shall have no obligation to

---

[1517] For the avoidance of doubt, any consent rights under the Amended RSA or agreements or commitments by any DIP New Money Lender under the Amended RSA that are referred to in this DIP New Money ~~Interim~~Final Order shall cease to be operative if any such rights, agreements, or commitments cease to be binding under the Amended RSA in accordance with the terms thereof.

(Page | 70)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

30. ~~29.~~*Insurance*.  To the extent that a Prepetition Secured Party is listed as loss payee under the Loan Parties' insurance policies, the DIP New Money Collateral Agent is also deemed to be the loss payee under such insurance policies.

31. ~~30.~~*Effectiveness*.  This DIP New Money ~~Interim~~Final Order shall constitute findings of fact and conclusions of law and shall take effect as of the date of entry of this DIP New Money ~~Interim~~Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP New Money ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP New Money ~~Interim~~Final Order.

32. ~~31.~~*Release*.  ~~Effective as of the date of entry of this DIP New Money Interim Order, each of~~Each of the Debtors and their estates, on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted by applicable law, (a) reaffirms the releases granted pursuant to paragraph 31 of the DIP New Money Interim Order, and (b) absolutely and unconditionally release and forever discharge and acquit the DIP New Money Secured Parties and their respective subsidiaries, affiliates, equity interest holders, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers,

70

(Page | 71)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

consultants, representatives and other professionals and the respective successors and assigns thereof (each, a "Representative" and, collectively, the "Representatives"), in each case in their respective capacity as such (collectively, the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, defenses, offsets, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgments of every type, and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, fixed, contingent, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal or common law or statute or regulation or otherwise (collectively, the "Released Claims"), *provided*, that the Released Claims are limited solely to those arising out of or related to (as applicable) the DIP New Money Financing, the DIP New Money Documents, the obligations owing and the financial obligations made or secured thereunder and the negotiation thereof and of the transactions and agreements reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time on or prior to the date of this DIP New Money ~~Interim~~Final Order, including, without limitation, (a) any so-called "lender liability" or equitable

(Page | 72)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

subordination claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the DIP New Money Liens, the DIP New Money Obligations (and all related claims against any Debtors), and DIP New Money Superpriority Claims. The Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective Representatives, successors, and assigns (including, without limitation, any trustee or other representative appointed in these Chapter 11 Cases, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code) and each of the Debtors' estates.

33.    ~~32.~~  *Modification of DIP New Money Documents*.   The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP New Money Agents and/or the other DIP New Money Secured Parties providing for any consensual modifications to the DIP New Money Documents or of any other modifications to the DIP New Money Documents necessary to conform the terms of the DIP New Money Documents to this DIP New Money ~~Interim~~Final Order, in each case consistent with the amendment provisions of the DIP New Money Documents. The Debtors shall provide five (5) days' notice to counsel to the Creditors' Committee of any material modifications to the DIP New Money Documents, and the Creditors' Committee may file an objection with the Court within such five (5) day period and seek a hearing on shortened notice; in addition, any material amendment to the DIP New Money Documents shall require the reasonable consent of the Required Consenting

(Page | 73)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

Stakeholders[~~16~~18] prior to any such amendment.

34. ~~33.~~ *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP New Money ~~Interim~~Final Order.

35. ~~34.~~ *Payments Held in Trust*.  Except as expressly permitted in this DIP New Money ~~Interim~~Final Order or the DIP New Money Documents, in the event that any person or entity (other than the DIP New Money Secured Parties) receives any payment on account of a security interest in the DIP New Money Collateral, receives any DIP New Money Collateral or any proceeds of such collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full of all DIP New Money Obligations under the DIP New Money Documents and termination of all DIP New Money Commitments, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of collateral in trust for the benefit of the DIP New Money Secured Parties and shall immediately turn over such proceeds to the DIP New Money Agents, or as otherwise instructed by this Court, for application in accordance with the DIP New Money Documents and this DIP New Money ~~Interim~~Final Order.

36. ~~35.~~ *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP New Money Motion.

---

[~~16~~18] "Required Consenting Stakeholders" shall have the meaning ascribed to it in the Amended RSA.

(Page | 74)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al.* |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

37.    ~~36.~~ *No Third-Party Rights*.  Except as explicitly provided for herein, this DIP New Money ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

38.    ~~37.~~ *Necessary Action*.  The Debtors and the DIP New Money Secured Parties are authorized to take all such actions as are necessary or appropriate to implement the terms of this DIP New Money ~~Interim~~Final Order.  In addition, the Automatic Stay imposed pursuant to section 362 of the Bankruptcy Code is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 Cases to take all actions as are necessary or appropriate to implement the terms of this DIP New Money ~~Interim~~Final Order.

39.    ~~38.~~ *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret, and enforce the provisions of this DIP New Money ~~Interim~~Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

40.    ~~39.~~ *Sales Proceeds*.  The Debtors shall deposit, and shall cause any of their non-Debtor affiliates who receive the Sale Proceeds to deposit, any and all Sales Proceeds into an account (i) in the name of a Debtor entity which is incorporated or organized under the laws of the United States, any state thereof or the District of Columbia, and (ii) maintained in the United States, and shall hold or cause the applicable Debtor entity to hold all such proceeds in such account until applied in a manner permitted by an Approved Budget.

74

(Page | 75)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

41. ~~40.~~ *Challenge Period.* ~~Nothing herein modifies, amends or limits the Challenge Period or any party's rights in respect thereof,~~Upon entry of this DIP New Money Final Order and an order by the Court confirming any plan of reorganization proposed by the Debtors, the releases and stipulations as set forth in ~~paragraph 21 of~~ the Final Cash Collateral Order ~~and paragraph 27 of the DIP LC Order, as may be amended by the *Stipulation to Extend the Challenge Period By and Among the Consent Parties and the Committee* [Docket No. 1233], the *Stipulation to Further Extend the Challenge Period By and Among the Consent Parties and the Committee* [Docket No. 1407] and any other agreements among the Committee, the SoftBank Parties and the Required Consenting AHG Noteholders to extend the Challenge Period.~~shall be binding on all parties in interest.

~~41. *Final Hearing.* The Final Hearing is scheduled for May 30, 2024 at 10:00 a.m., prevailing Eastern Time, before this Court.~~

~~42. *Objections.* Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) the Debtors; (b) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, (Attn.: Steven N. Serajeddini, P.C., Ciara Foster); (c) co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601 (Attn.: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Ryan T. Jareck, Esq.); (d) Canadian co-counsel to the Debtors, Goodmans LLP, 333 Bay Street, Toronto, Canada, M5H 2S7 (Attn: Brendan D. O'Neill, Esq., Joseph Pasquariello, Esq., and Andrew Harmes, Esq.); (e) counsel to the Canadian Information Officer, Osler, Hoskin & Harcourt LLP, 100 King Street West, 1 First Canadian Place, Suite 6200, P.O. Box 50, Toronto, Canada, M5X 1B8 (Attn: Tracy Sandler, Esq. and Martino Calvaruso, Esq.); (f) counsel to the Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn.: Eli J. Vonnegut,~~

75

(Page | 76)

| | |
|---|---|
| Debtors: | WEWORK INC., *et al*. |
| Case No. | 23-19865 (JKS) |
| Caption of Order: | ~~Interim~~Final Order (I) Authorizing the Debtors to Obtain New Postpetition Financing, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief |

~~Esq., Natasha Tsiouris, Esq. and Jonah A. Peppiatt, Esq.) and Greenberg Traurig, LLP, 500 Campus Drive, Florham Park, New Jersey 07932 (Attn.: Alan J. Brody, Esq.); (g) counsel to the SoftBank Parties, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn.:  Gabriel A. Morgan, Kevin H. Bostel, and Eric L. Einhorn) and Wollmuth Maher & Deutsch LLP, 500 5th Avenue, New York, New York 10110 (Attn: James N. Lawlor, Paul R. DeFilippo, Steven S. Fitzgerald, and Joseph F. Pacelli); (h) counsel to Cupar Grimmond, LLC, Cooley LLP, 1333 2nd Street, Suite 400, Santa Monica, CA 90401 (Attn: Tom Hopkins and Logan Tiari) and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein and Lauren A. Reichardt); (i) counsel to the DIP New Money Agents, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004 (Attn: Gregg S. Bateman); and (j) counsel to the Committee, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 (Attn: Gabe Sasson and Frank Merola), in each case to allow actual receipt by the foregoing no later than May 23, 2024, at 4:00 p.m., prevailing Eastern Time.~~

**Exhibit 1**

**Initial Budget**

**Exhibit 2**[1]

**Lien Priorities**

| | Prefunded Amounts | DIP LC Loan Collateral (other than Prefunded Amounts) | DIP Term Collateral | DIP New Money Primed Collateral (other than Prepetition Collateral and Assets Subject to Other Senior Liens) | Prepetition Collateral | Assets Subject to Other Senior Liens | Unencumbered Property | Sales Proceeds DIP New Money Collateral |
|---|---|---|---|---|---|---|---|---|
| 1st | DIP LC Obligations | Until the occurrence of a Deemed Assignment, DIP LC | Upon and after the occurrence of a Deemed Assignment, DIP Term Obligations | DIP Term Obligations | DIP New Money Liens | Other Senior Liens | Other Senior Liens | DIP New Money Liens | DIP New Money Liens |

---

[1] Prefunded Amounts, DIP LC Loan Collateral, DIP Term Collateral, Deemed Assignment, DIP LC Obligations and DIP Term Obligations (each as defined in the DIP LC Order) used in this Exhibit ~~2~~1 shall have the meaning as set forth in the DIP LC Order.

DIP New Money Primed Collateral, Unencumbered Property, Sales Proceeds DIP New Money Collateral and DIP New Money Liens used in this Exhibit ~~2~~1 shall have the meaning as set forth in this DIP New Money ~~Interim~~Final Order.

First Lien Adequate Protection Liens, Second Lien Adequate Protection Liens, Third Lien Adequate Protection Liens, Prepetition First Priority Liens, Prepetition Second Priority Liens, Prepetition Third Priority Liens, Prepetition Collateral and Other Senior Liens used in this Exhibit ~~2~~1 shall have the meaning as set forth in the Final Cash Collateral Order.

| | Prefunded Amounts | DIP LC Loan Collateral (other than Prefunded Amounts) | DIP Term Collateral | DIP New Money Primed Collateral (other than Prepetition Collateral and Assets Subject to Other Senior Liens) | | Prepetition Collateral | | Assets Subject to Other Senior Liens | | Unencumbered Property | | Sales Proceeds DIP New Money Collateral | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Obligations | | | | | | | | | | | |
| 2nd | | | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | DIP New Money Liens | | DIP New Money Liens | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations last out | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term |
| 3rd | | | | Second Lien Adequate Protection Liens | | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | First Lien Adequate Protection Liens | DIP LC Obligations (first out) & DIP Term Obligations (last out) | Prepetition First Priority Liens | | Prepetition First Priority Liens | |
| 4th | | | | Third Lien Adequate Protection Liens | | Prepetition First Priority Liens | | Second Lien Adequate Protection Liens | | Second Lien Adequate Protection Liens | | Second Lien Adequate Protection Liens | |
| 5th | | | | | | Second Lien Adequate Protection Liens | | Third Lien Adequate Protection Liens | | Prepetition Second Priority Liens | | Prepetition Second Priority Liens | |
| 6th | | | | | | Prepetition Second Priority Liens | | | | | | | |
| 7th | | | | | | Third Lien Adequate Protection Liens | | | | | | | |
| 8th | | | | | | Prepetition Third Priority Liens | | | | | | | |

**Exhibit 3(i)**

**Interim DIP New Money Credit Agreement**

*[Different first page link-to-previous setting changed from on in original to off in modified.]*

**Exhibit 3(ii)**

**Exit DIP New Money Credit Agreement**