**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:    (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING FIRST AMENDED PLAN**
**SUPPLEMENT FOR THE THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION OF WEWORK INC. AND ITS DEBTOR SUBSIDIARIES**

    **PLEASE TAKE NOTICE THAT** on April 29, 2024, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. 1787] (the "Disclosure Statement Order"):  (a) authorizing WeWork Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1816]; (b) conditionally approving the *Third Amended Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1818] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

PLEASE TAKE FURTHER NOTICE THAT on May 17, 2024, the Debtors filed the *Notice of Filing Plan Supplement for the Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1954] (the "Plan Supplement").

PLEASE TAKE FURTHER NOTICE THAT on May 23, 2024, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries (Technical Modifications)* [Docket No. 1982] (as amended, supplemented, or otherwise modified from time to time, the "Plan"). [2]

PLEASE TAKE FURTHER NOTICE THAT the Debtors hereby file this amendment to the Plan Supplement (this "First Amended Plan Supplement") in support of the Plan.

PLEASE TAKE FURTHER NOTICE THAT the First Amended Plan Supplement includes current drafts of the following documents (certain of which remain subject to ongoing negotiations pursuant to the terms of the Plan):

| | |
|---|---|
| **Exhibit A** | Schedule of Retained Causes of Action |
| **Exhibit B** | Draft Schedule of Assumed and Rejected Executory Contracts and Unexpired Leases |
| **Exhibit B-1** | Draft Schedule of Rejected Executory Contracts and Unexpired Leases |
| **Exhibit B-1a** | Redline to Previously Filed Draft Schedule of Rejected Executory Contracts and Unexpired Leases |
| **Exhibit B-2** | Draft Schedule of Assumed Executory Contracts and Unexpired Leases |
| **Exhibit B-2a** | Redline to Previously Filed Draft Schedule of Assumed Executory Contracts and Unexpired Leases |
| **Exhibit D** | Forms of the New Corporate Governance Documents |
| **Exhibit D-2** | Form of the New Certificate of Incorporation |
| **Exhibit D-3** | Form of the New Bylaws |
| **Exhibit D-5** | Form of the Registration Rights Agreement |
| **Exhibit D-6** | List of New Board Members |
| **Exhibit G** | Schedule of Go-Forward Guaranty Claims |
| **Exhibit H** | UCC Settlement Trust Documents |
| **Exhibit H-1** | UCC Settlement Trust Agreement |
| **Exhibit H-1a** | Redline to Previously Filed UCC Settlement Trust Agreement |

PLEASE TAKE FURTHER NOTICE that the Debtors reserve all rights, with the consultation or consent of any applicable counterparties to the extent required under the Plan, to alter, amend, modify, or supplement the First Amended Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan. The final version of any such document may contain material differences from the version filed herewith. For the avoidance of doubt, the parties thereto have not consented to such document as being in final form and reserve all rights in that regard.

PLEASE TAKE FURTHER NOTICE that the documents contained in the First Amended Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the First Amended Plan Supplement, as may be altered, amended, modified, or supplemented, will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

     **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider confirmation of the Plan will commence on **May 30, 2024, at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable John K. Sherwood, United States Bankruptcy Judge, in Courtroom 3D of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, NJ 07102.

     **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **May 28, 2024, at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**:  (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically (x) by attorneys who regularly practice before the Bankruptcy Court in accordance with the *General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents* dated March 27, 2002 (the "General Order") and the *Commentary Supplementing Administrative Procedures* dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and (y) by all other parties-in-interest, if not otherwise filed with the Clerk of the Bankruptcy Court electronically, via hard copy, and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline:

| Debtors |
|---|
| **WeWork Inc.**<br>c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005 |

| Counsel for the Debtors | |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Steven N. Serajeddini, P.C., Ciara Foster, Oliver Paré<br><br>-and-<br><br>333West Wolf Point Plaza<br>Chicago, IL 60654<br>Attn:  Connor Casas | **Cole Schotz, P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn:  Michael D. Sirota, Esq.; Warren A. Usatine, Esq.; Felice R. Yudkin, Esq.; Ryan T. Jareck, Esq. |

| Counsel to the Committee |
|---|
| **Paul Hastings LLP**<br>200 Park Avenue<br>New York, NY 10166,<br>Attn:  Kris Hansen and Gabe Sasson |

| Counsel to the Special Committee of the board of directors of WeWork Inc. |
|---|
| **Munger, Tolles & Olson LLP**<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, California 90071-1560<br>Attn:  Thomas Walper and Seth Goldman |

| *Counsel to Cupar Grimmond, LLC* |
|---|
| **Cooley LLP**<br>55 Hudson Yards<br>New York, NY 10001<br>Attn:  Michael Klein and Lauren A. Reichardt |
| *Counsel to SoftBank Parties* |
| **Weil, Gotshal & Manges LLP**<br>767 5th Ave<br>New York, New York 10153,<br>Attn:  Gabriel A. Morgan, Kevin H. Bostel, and Eric L. Einhorn<br><br>-and-<br><br>**Wollmuth Maher & Deutsch LLP**<br>500 5th Avenue<br>New York, New York 10110,<br>Attn:  Paul R. DeFilippo, James N. Lawlor, Steven S. Fitzgerald, and Joseph F. Pacelli |
| *Counsel to the Ad Hoc Group* |
| **Davis Polk & Wardwell LLP**<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Eli J. Vonnegut, Esq.; Natasha Tsiouris, Esq.; and Jonah A. Peppiatt, Esq.<br><br>-and-<br><br>**Greenberg Traurig, LLP**<br>500 Campus Drive<br>Florham Park, New Jersey 10017<br>Attn: Alan J. Brody, Esq. |
| *United States Trustee* |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Fran Steele and Peter D'Auria |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Epiq Corporate Restructuring, LLC, the Debtors' claims, noticing and solicitation agent in the chapter 11 cases (the "Solicitation Agent") by: (a) visiting the Debtors' restructuring website https://dm.epiq11.com/WeWork; (b) writing to the Solicitation Agent at WeWork Inc. Ballot Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005; (c) emailing the Solicitation Agent at WeWorkInfo@epiqglobal.com (with "In re WeWork Inc. - Solicitation Inquiry" in the subject line); or (d) calling the Solicitation Agent at (877) 959-5845 (U.S./Canada, toll free) or +1 (503) 852-9067 (international).  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free at the Debtors' restructuring website, https://dm.epiq11.com/WeWork, or the Bankruptcy Court's website, https://www.njb.uscourts.gov, in accordance with the procedures and fees set forth therein.

Dated: May 26, 2024

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:   (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com
ciara.foster@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Ryan T. Jareck, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:   (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
rjareck@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WEWORK INC., *et al.*, | Case No. 23-19865 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**FIRST AMENDED PLAN SUPPLEMENT**
**FOR THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF WEWORK INC. AND ITS DEBTOR SUBSIDIARIES**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd. Beaverton, OR 97005.

## Table of Contents

**Exhibit A**       Schedule of Retained Causes of Action
**Exhibit B**       Draft Schedule of Assumed and Rejected Executory Contracts and Unexpired Leases
**Exhibit B-1**     Draft Schedule of Rejected Executory Contracts and Unexpired Leases
**Exhibit B-1a**    Redline to Previously Filed Draft Schedule of Rejected Executory Contracts and Unexpired Leases
**Exhibit B-2**     Draft Schedule of Assumed Executory Contracts and Unexpired Leases
**Exhibit B-2a**    Redline to Previously Filed Draft Schedule of Assumed Executory Contracts and Unexpired Leases
**Exhibit D**       Forms of the New Corporate Governance Documents
**Exhibit D-2**     Form of the New Certificate of Incorporation
**Exhibit D-3**     Form of the New Bylaws
**Exhibit D-5**     Form of the Registration Rights Agreement
**Exhibit D-6**     List of New Board Members
**Exhibit G**       Schedule of Go-Forward Guaranty Claims
**Exhibit H**       UCC Settlement Trust Documents
**Exhibit H-1**     UCC Settlement Trust Agreement
**Exhibit H-1a**    Redline to Previously Filed UCC Settlement Trust Agreement

Certain documents or portions thereof contained in the Plan Supplement[6] remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained in the Plan, at any time before the Effective Date of the Plan to the extent permitted under the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth in the Plan in full.

---

[6] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

## Exhibit A

### Schedule of Retained Causes of Action

Certain documents, or portions thereof, contained or to be contained in this **Exhibit A** and the Plan Supplement remain subject to continued review and comment by the Debtors and the Consenting Stakeholders in accordance with the consent rights set forth in the Plan and that certain Amended and Restated Restructuring Support Agreement dates as of May 5, 2024, by and among the Debtors and the Consenting Stakeholders (the "RSA"). The respective rights of the Debtors and the Consenting Stakeholders are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court and no consent of the Required Consenting Stakeholders has been given or shall be presumed or deemed to have been given by the Required Consenting Stakeholders as a result of or in connection with the filing of this **Exhibit A**; *provided* that if any document in this First Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

Article IV.O of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of this Plan to the contrary, other than any Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

**The Reorganized Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Retained Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors (as applicable) expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity (except as set forth in Article VIII.C). Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before 30 days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor without the need for any objection or responsive pleading by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. The Reorganized Debtors may**

settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or the Reorganized Debtors, as applicable, and the objecting party for 30 days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order (and for the avoidance of doubt, any Causes of Action on the Schedule of Retained Causes of Action shall not be expressly relinquished, exculpated, released, compromised, or settled in this Plan), the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtors through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in this Plan.

Notwithstanding and without limiting the generality of <u>Article IV.O</u> of the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action that are not expressly released or settled under the Plan (including pursuant to <u>Article VIII</u> and <u>Article IV.O</u> thereof), including the following types of claims:

**1.      Claims Related to Insurance Policies**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this First Amended Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

## 2.    Claims Related to Taxing Authorities

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or the Reorganized Debtors, regardless of whether such Entity is specifically identified in the Plan.

## 3.    Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in the Plan, this First Amended Plan Supplement, or any amendments thereto.

## 4.    Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, regardless of whether such Entity is expressly identified in the Plan, this First Amended Plan Supplement, or any amendments thereto.  Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to such Entities.

## 5.    Claims Related to Contracts and Leases

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve Causes of Action based in whole or in part upon any and all contracts and leases, joint operating agreements, and similar instruments, to which any of the Debtors or Reorganized Debtors is a party or pursuant to which any of the Debtors or the Reorganized Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, this First Amended Plan Supplement, or any amendments thereto), including, without limitation, all contracts and leases that are deemed assumed pursuant to the Plan or were previously assumed by the Debtors.  The claims and Causes of Action reserved include Causes of Action against landlords, vendors, suppliers of goods and services, customers, members, or any other parties:  (a) for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual, or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including

mechanics', artisans', materialmens', possessory, or statutory liens held by any one or more of the Debtors and the Reorganized Debtors, as applicable; (f) arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods; (g) for counter-claims and defenses related to any contractual obligations; (h) for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; and (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims.  For the avoidance of doubt, the Debtors and the Reorganized Debtors, as applicable, expressly reserve the right to offset any such claims or Causes of Action against the applicable member's or any other party's service retainer, as applicable.

**6.      Claims Related to Deposits, Adequate Assurance, and Other Collateral Postings**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all postings of a security deposits, letters of credit, surety bonds, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, surety bonds, letters of credit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is specifically identified in the Plan.[1]

**7.      Claims Related to Liens**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action based in whole or in part on any and all liens regardless of whether such liens are specifically identified in the Plan.

---

[1]    For the avoidance of doubt, the Debtors reserve all rights with respect to any deposit provided in accordance with the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, (IV) Authorizing Fee Payments to the Utility Agent, and (V) Granting Related Relief* [Docket No. 336] or otherwise provided as "adequate assurance of payment" (as that term is used by Section 366 of the Bankruptcy Code).

## Claims Related to Insurance Policies

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| D&O Liability - Run-Off (Primary) | Illinois National Ins Co. / AIG<br>1271 Avenue of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 014202043 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Zurich American Insurance Co.<br>1299 Zurich Way<br>Schaumburg, IL 60196 United States | DOC054273800 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Continental Casualty Co.<br>125 Broad Street, 8th Floor<br>New York, NY 10004 United States | 652109935 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Zurich American Insurance Co.<br>1299 Zurich Way<br>Schaumburg, IL 60196 United States | DOC014926101 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Westchester Fire Ins Co. / ACE<br>436 Walnut Street<br>Philadelphia, PA 19106 United States | G27983558004 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | National Casualty Co.<br>18700 North Hayden Road, Ste 150<br>Scottsdale, AZ 85255 United States | XMO1908841 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Argonaut Insurance Co.<br>10101 Reunion Pl , Ste 500<br>San Antonio, TX 78216 United States | MLX76017384 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | U.S. Specialty Insurance Co.<br>c/o: Tokio Marine HCC - D&O Group, 8 Forest Park Drive<br>Farmington, CT 6032 United States | 14MGU19A46715 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | QBE Insurance Co.<br>55 Water Street<br>New York, NY 10041 United States | 100007331 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Beazley Insurance Co.<br>30 Batterson Park Road<br>Farmington, CT 6032 United States | V23653190201 | 5/21/2020 - 5/21/2026 |

**Claims Related to Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| D&O Liability - Run-Off (Excess) | RSUI Indemnity Co.<br>945 East Paces Ferry Road NE, Ste. 1800<br>Atlanta, GA 30326 United States | NHS681591 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Underwriters at Lloyd's<br>One Lime Street , EC3M 7HA<br>London,   United Kingdom | IFP000039001 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Canopius Insurance Services<br>200 South Wacker Drive, Ste 950<br>Chicago, IL 60606 United States | EXNCUA1005400 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | RLI Insurance co.<br>9025 N LINDBERGH DR<br>PEORIA, IL 61615 United States | EPG0027368 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Run-Off (Excess) | Allianz Global US Risk Ins Co<br>225 W. Washington Street, Ste. 1800<br>Chicago, IL 60606 United States | USF00143019 | 5/21/2020 - 5/21/2026 |
| D&O Liability - Go-Forward (Primary) | U.S. Specialty Insurance Company<br>c/o: Tokio Marine HCC - D&O Group, 8 Forest Park Drive<br>Farmington, CT 06032 United States | 14-MGU-23-A56496 | 5/21/2023 - 5/21/2024 |
| D&O Liability - Go-Forward (Excess) | Continental Casualty Company<br>125 Broad Street, 8th Floor<br>New York, NY 10004 United States | 652432155 | 5/21/2023 - 5/21/2024 |
| D&O Liability - Go-Forward (Excess) | Berkley Insurance Company<br>757 Third Avenue, 10th Floor<br>New York, NY 10017 United States | BPRO8093909 | 5/21/2023 - 5/21/2024 |
| D&O Liability - Go-Forward (Excess) | Endurance American Insurance Company<br>1221 Avenue of the Americas<br>New York, NY 10020 United States | DOX30037875300 | 5/21/2023 - 5/21/2024 |
| D&O Liability - Go-Forward (Excess) | XL Specialty Insurance Company<br>100 Constitution Plaza, 17th Floor<br>Hartford, CT 06103 United States | ELU189978-23 | 5/21/2023 - 5/21/2024 |

**Claims Related to Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| D&O Liability - ERP (Run-Off) | National Union Fire Is Co. / AIG<br>1271 Avenue of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 01-420-13-06 | 5/21/2020 - 5/21/2026 |
| Cyber / E&O (Primary) | AIG Specialty Insurance Company<br>1271 Avenue of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 02-834-88-70 | 3/12/2023 - 3/12/2024 |
| Cyber / E&O (Excess) | Arch Specialty Insurance Co.<br>2345 Grand Blvd., Suite 900<br>Kansas City, MO 64108 United States | NPL0066239-02 | 3/12/2023 - 3/12/2024 |
| Cyber / E&O (Excess) | Beazley Insurance Co.<br>30 Batterson Park Road<br>Farmington, CT 6032 United States | V317C2230201 | 3/12/2023 - 3/12/2024 |
| Cyber / E&O (Excess) | Greenwich Insurance Company<br>87 Greenwich Avenue, P.O. Box 1675<br>Greenwich, CT 06830 United States | MTE903537105 | 3/12/2023 - 3/12/2024 |
| Workers Compensation & Employers Liability | AIU Insurance Company / AIG<br>1271 Ave of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 15203241 | 12/27/2022 - 11/1/2023 |
| Workers Compensation & Employers Liability | AIG Property Casualty Company<br>1271 Ave of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 15203242 | 12/27/2022 - 11/1/2023 |
| Workers Compensation & Employers Liability | Sompo America Insurance Company<br>1221 Avenue of the Americas<br>New York, NY 10022 United States | WCNS1425Z0 | 11/1/2023 - 11/1/2024 |
| Pollution Liability | Illinois Union Insurance Co.<br>303 W. Erie St., Ste 310<br>Chicago, IL 60654 United States | ISPILLSB7XJO001 | 3/10/2021 - 3/10/2024 |
| Errors & Omissions (Tail) | Hiscox Insurance Co.<br>520 Madison Avenue, 32nd Floor<br>New York, NY 10022 United States | ANE144964720 | 5/30/2021 - 5/30/2024 |

**Claims Related to Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| Crime | National Union Fire Ins Co. / AIG<br>1271 Avenue of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 02-582-31-93 | 2/28/2023 - 2/28/2024 |
| Property | Sompo America Insurance Company<br>Attn: Legal Department, 1221 Avenue of the Americas<br>New York, NY 10022 United States | FTMS1037L0 | 11/1/2022 - 11/1/2023 |
| Property | Sompo America Insurance Company<br>Attn: Legal Department, 1221 Avenue of the Americas<br>New York, NY 10022 United States | FTMS1037L0 | 11/1/2023-11/1/2024 |
| General Liability | Endurance Assurance Corp.<br>1221 Avenue of the Americas<br>New York, NY 10020-1304 United States | GGR10013937504 | 11/1/2022 - 11/1/2023 |
| General Liability | Endurance Assurance Corp.<br>1221 Avenue of the Americas<br>New York, NY 10020-1304 United States | GGR10013937505 | 11/1/2023-11/1/2024 |
| Auto Liability | Sompo America Insurance Company<br>Attn: Legal Department, 1221 Avenue of the Americas<br>New York, NY 10022 United States | GAR30026635500 | 11/1/2022 - 11/1/2023 |
| Auto Liability | Sompo America Insurance Company<br>Attn: Legal Department, 1221 Avenue of the Americas<br>New York, NY 10022 United States | GAR30026635501 | 11/1/2023-11/1/2024 |
| Umbrella Liability | Endurance Assurance Corp.<br>1221 Avenue of the Americas<br>New York, NY 10020-1304 United States | GUR30000832304 | 11/1/2022 - 11/1/2023 |
| Umbrella Liability | Endurance Assurance Corp.<br>1221 Avenue of the Americas<br>New York, NY 10020-1304 United States | GUR30000832305 | 11/1/2023-11/1/2024 |

**Claims Related to Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| Excess Liability | Federal Insurance Co./Chubb<br>202B Hall's Mill Road<br>Whitehouse Station, NJ 08889 United States | 9364-22-00 | 11/1/2022 - 11/1/2023 |
| Excess Liability | Federal Insurance Co./Chubb<br>202B Hall's Mill Road<br>Whitehouse Station, NJ 08889 United States | 9364-22-00 | 11/1/2023-11/1/2024 |
| Excess Liability | Continental Insurance Company<br>151 N. Franklin Street<br>Chicago, IL 60606 United States | 7034510720 | 11/1/2022 - 11/1/2023 |
| Excess Liability | Continental Insurance Company<br>151 N. Franklin Street<br>Chicago, IL 60606 United States | 7034510720 | 11/1/2023-11/1/2024 |
| Flood Liability | American Bankers Ins Co. of Florida<br>11222 Quail Roost Drive<br>Miami, FL 33157-6596 United States | 8705745678 | 3/24/2023 - 3/24/2024 |
| Crime | National Union Fire Ins Co. / AIG<br>1271 Avenue of the Americas, Floor 37<br>New York, NY 10020-1304 United States | 02-707-06-24 | 2/21/2023 - 2/21/2024 |
| Travel Accident / Travel Inconvenience | Zurich American Insurance Co.<br>1299 Zurich Way<br>Schaumburg, IL 60196 United States | GTU8563730 /<br>GTP5563974 | 7/14/2023 - 7/14/2026 |
| Terrorism | Chubb European Group SE<br>Marsh Limited<br>Victoria House<br>Queens Road<br>Norwich,  NR 1 3QQ United Kingdom | B0509BOWTN2250685 | 11/1/2022 - 11/1/2023 |
| Terrorism | Chubb European Group SE<br>Marsh Limited<br>Victoria House<br>Queens Road<br>Norwich,  NR 1 3QQ United Kingdom | B0509BOWTN2250685 | 11/1/2023-11/1/2024 |

**Claims Related to Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term |
|---|---|---|---|
| Casualty | Royal & Sun Alliance Insurance Company Of Canada<br>700 University Ave., Ste 1500A<br>Toronto, ON M5G 0A1 Canada | COM 061663368 | 11/1/2022 - 11/1/2023 |
| Casualty | Intact Insurance Company<br>700 University Ave., Ste 1500A<br>Toronto, ON M5G 0A1 Canada | RSL663368 | 11/1/2023-11/1/2024 |
| Property | Royal & Sun Alliance Insurance Company Of Canada<br>700 University Ave., Ste 1500A<br>Toronto, ON M5G 0A1 Canada | COM0 61765413 | 11/1/2022-11/1/2023 |
| Property | Intact Insurance Company<br>700 University Ave., Ste 1500A<br>Toronto, ON M5G 0A1 Canada | RSL765413 | 11/1/2023 - 11/1/2024 |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Alameda County Assessment Appeals Board<br>224 W. Winton Ave.<br>Room 169<br>Hayward, CA  94544<br>United States | Regulatory And Other Taxes And Fees |
| Alameda County Tax Collector<br>Attn: Treasurer Tax-Collector<br>1221 Oak Street<br>Room 131<br>Oakland, CA  94612<br>United States | Property Tax |
| Arizona Department Of Revenue<br>Attn: Arizona Department Of Revenue<br>P.O. Box 29079<br>Phoenix, AZ  85038<br>United States | Income / Franchise Taxes<br>Regulatory And Other Taxes And Fees |
| Arlington County Treasurer<br>Attn: Ellen M. Bozman Government Center<br>2100 Clarendon Blvd.<br>Arlington, VA  22201<br>United States | Property Taxes |
| AZ Privilege Use Return Tpt-2<br>1600 West Monroe Street<br>Phoenix, AZ  85007<br>United States | Sales And Use Tax |
| Boulder County Treasurer<br>Attn: Treasurer'S Office<br>Po Box 471<br>Boulder, CO  80306<br>United States | Property Taxes |
| CA St Loc Dist Sales Use Cdtfa- 401-A<br>Attn: California Department Of Tax And Fee Administration<br>P.O. Box 942879<br>Sacramento, CA  94279<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Calgary<br>The City Of Calgary<br>Tax Receivable #8044<br>P.O. Box 2405, Station M<br>Calgary, AB  T2P 3L9<br>Canada | Value Added Taxes |
| California Department Of Tax And Fee Administration<br>485 Lexington Avenue, Suite 400<br>New York, NY  10017-5146<br>United States | Sales And Use Tax |
| Canada Revenue Agency<br>9755 King George Boulevard<br>Surrey, BC  V3T 5E1<br>Canada | Regulatory And Other Taxes And Fees |
| CCSF<br>Attn: Assessment Appeals Board, City Hall, Room 405<br>#1 Dr. Carlton B. Goodlett Place<br>San Francisco, CA  94102-4697<br>United States | Regulatory And Other Taxes And Fees |
| Chicago Department Of Finance - Tax Division<br>333 S. State Street<br>Room 300<br>Chicago, IL  60604<br>United States | Sales And Use Tax |
| City And County Of Denver<br>Attn: City And County Of Denver<br>Department Of Finance, Treasury Division<br>Po Box 660860<br>Dallas, TX  75266-0860<br>United States | Property Taxes<br>Sales And Use Tax |
| City Of Atlanta<br>Attn: Department Of Finance, Office Of Revenue<br>55 Trinity Avenue, Sw<br>Suite 1350<br>Atlanta, GA  30303<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| City Of Bellevue<br>Attn: City Of Bellevue - Tax Division<br>450 110Th Ave Ne<br>Bellevue, WA  98004<br>United States | Sales And Use Tax |
| City Of Berkeley<br>2180 Milvia Street<br>3Rd Floor<br>Berkeley, CA  94704<br>United States | Regulatory And Other Taxes And Fees |
| City Of Beverly Hills<br>455 North Rexford Drive<br>Beverly Hills, CA  90210<br>United States | Regulatory And Other Taxes And Fees |
| City Of Boston<br>1 City Hall Square<br>Window M-30<br>Boston, MA  02201-2004<br>United States | Regulatory And Other Taxes And Fees |
| City Of Burbank<br>301 E. Olive Avenue<br>Burbank, CA  91502<br>United States | Regulatory And Other Taxes And Fees |
| City Of Cambridge<br>795 Massachusetts Ave.<br>Cambridge, MA  2139<br>United States | Property Taxes |
| City Of Chicago<br>333 S. State Street<br>Room 300<br>Chicago, IL  60604<br>United States | Regulatory And Other Taxes And Fees |
| City Of Coral Gables<br>427 Biltmore Way<br>2Nd Floor<br>Coral Gables, FL  33134<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| City Of Costa Mesa<br>77 Fair Drive<br>Costa Mesa, CA  92626<br>United States | Regulatory And Other Taxes And Fees |
| City Of Culver City<br>9770 Culver Boulevard<br>1St Floor<br>Culver City, CA  90232<br>United States | Regulatory And Other Taxes And Fees |
| City Of Decatur<br>P.O. Box 220<br>Decatur, GA  30031<br>United States | Property Taxes<br>Regulatory And Other Taxes And Fees |
| City Of Detroit<br>Attn: Detroit Taxpayer Service Center<br>Coleman A. Young Municipal Center 2 Woodward Avenue<br>Ste 130<br>Detroit, MI  48226<br>United States | Property Taxes |
| City Of El Segundo<br>350 Main Street<br>El Segundo, CA  90245<br>United States | Regulatory And Other Taxes And Fees |
| City Of Emeryville<br>1333 Park Avenue<br>Emeryville, CA  94608<br>United States | Regulatory And Other Taxes And Fees |
| City Of Glendale<br>633 E. Broadway<br>Glendale, CA  91206<br>United States | Regulatory And Other Taxes And Fees |
| City Of Houston<br>C/O Linebarger Goggan Blair & Sampson<br>Po Box 3064<br>Houston, TX  77253-3064<br>United States | Property Taxes |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| City Of Kansas City<br>Attn: City Hall<br>414 E. 12Th St<br>2Nd Floor<br>Kansas City, MO  64106<br>United States | Regulatory And Other Taxes And Fees |
| City Of Manhattan Beach<br>1400 Highland Avenue In Manhattan Beach<br>Manhattan Beach, CA  90226<br>United States | Regulatory And Other Taxes And Fees |
| City Of Miami<br>Attn: Customer Service Section<br>444 S.W. 2Nd Avenue, 6Th Floor<br>6Th Floor<br>Miami, FL  33130<br>United States | Regulatory And Other Taxes And Fees |
| City Of Miami Beach<br>1700 Convention Center Drive<br>Miami Beach, FL  33139<br>United States | Regulatory And Other Taxes And Fees |
| City Of Mountain View<br>Attn: City Of Mountain View<br>Finance & Administrative Services Department, Attn<br>Business License<br>Po Box 7540<br>Mountain View, CA  94039-7540<br>United States | Regulatory And Other Taxes And Fees |
| City Of Oakland<br>Attn: Business Tax Office<br>250 Frank H. Ogawa Plaza<br>Suite 1320<br>Oakland, CA  94612<br>United States | Regulatory And Other Taxes And Fees |
| City Of Pasadena<br>Attn: Business License Section<br>100 North Garfield Ave.<br>Pasadena, CA  91101<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| City Of Philadelphia<br>Attn: Philadelphia Dept. Of Revenue<br>P.O. Box 1660<br>Philadelphia, PA  19105-1660<br>United States | Income / Franchise Taxes |
| City Of Portland<br>Attn: Revenue Division Customer Service Center<br>111 Sw Columbia Street<br>Suite 600<br>Portland, OR  97201<br>United States | Income / Franchise Taxes |
| City Of Sacramento<br>P.O. Box 508<br>Sacramento, CA  95812-0508<br>United States | Property Tax<br>Regulatory And Other Taxes And Fees |
| City Of Saint Louis<br>1200 Market<br>Room 110<br>St. Louis, MO  63103<br>United States | Regulatory And Other Taxes And Fees |
| City Of Sandy Springs<br>1 Galambos Way<br>Sandy Springs, GA  30328<br>United States | Regulatory And Other Taxes And Fees |
| City Of Seattle<br>700 Fifth Ave<br>4Th Floor<br>Seattle, WA  98104<br>United States | Sales And Use Tax |
| City Of Seattle Business Licensing And Tax Administration<br>Attn: City Of Seattle Business Licensing And Tax Administration<br>P.O. Box 34214<br>Seattle, WA  98124-4214<br>United States | Regulatory And Other Taxes And Fees |
| City Of West Hollywood<br>8300 Santa Monica Blvd<br>West Hollywood, CA  90069<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Clark County<br>Attn: Office Of The County Treasurer<br>500 S Grand Central Pkwy<br>Box 551220<br>Las Vegas, NV  89155-1220<br>United States | Property Tax<br>Regulatory And Other Taxes And Fees |
| Clark County, NV<br>Office Of The County Treasurer<br>500 S Grand Central Pkwy<br>1St Floor<br>Las Vegas, NV  89106<br>United States | Regulatory And Other Taxes And Fees |
| CO Retail Sales Tax Return Dr0100<br>Attn: Colorado Department Of Revenue Section<br>P.O. Box 17087<br>Denver, CO  80217-0087<br>United States | Sales And Use Tax |
| CO Retailers Use Tax Return Dr0173<br>Attn: Colorado Department Of Revenue Section<br>P.O. Box 17087<br>Denver, CO  80217-0087<br>United States | Sales And Use Tax |
| CO-Boulder Sales Use Tax Return<br>1136 Alpine Avenue<br>Boulder, CO  80304<br>United States | Sales And Use Tax |
| CO-Denver Occupancy Tax<br>201 W. Colfax Ave.<br>Department 1009<br>Denver, CO  80202<br>United States | Sales And Use Tax |
| Collin County Tax Assessor-Collector<br>Attn: Administration Building<br>2300 Bloomdale Rd.<br>Mckinney, TX  75071<br>United States | Property Taxes |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Colorado Department Of Revenue<br>Attn: Colorado Department Of Revenue Section<br>P.O. Box 17087<br>Denver, CO  80217-0087<br>United States | Sales And Use Tax |
| Contra Costa County Tax Collector<br>Attn: Contra Costa County Treasurer-Tax Collector'S Office<br>P. O. Box 631<br>Martinez, CA  94553-0063<br>United States | Property Tax |
| Coral Gables<br>Attn: Coral Gables City Hall<br>405 Biltmore Way<br>Coral Gables, FL  33134<br>United States | Regulatory And Other Taxes And Fees |
| County Of Fairfax<br>12000 Government Center Parkway<br>Suite 223<br>Fairfax, VA  22035<br>United States | Property Tax<br>Regulatory And Other Taxes And Fees |
| Dallas County Tax Assessor / Collector<br>500 Elm Street<br>Ste 3300<br>Dallas, TX  75202<br>United States | Property Taxes |
| Dallas County Utility And Reclamation District<br>P.O. Box 140035<br>Irving, TX  75014-0035<br>United States | Property Taxes |
| Davidson County Clerk<br>Attn: Davidson County Clerk Mailing Address<br>P.O. Box 196333<br>Nashville, TN  37219-6333<br>United States | Property Taxes |
| DC Department Of Regulatory<br>1100 4Th St Sw<br>Washington Dc, DC  20024<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| DC Sales Use Tax Return Fr-800 M<br>1101 4Th Street, Sw<br>Ste 270 West<br>Washington Dc, DC  20024<br>United States | Sales And Use Tax |
| Dekalb County Tax Commissioner<br>Attn: Dekalb County Tax Commissioner<br>Property Tax Division<br>P.O. Box 117545<br>Atlanta, GA  30368-7545<br>United States | Property Taxes |
| Department Of Code Compliance Services<br>Attn: Consumer Health Division<br>7901 Goforth Rd<br>Dallas, TX  75238<br>United States | Regulatory And Other Taxes And Fees |
| Department Of The Treasury - IRS<br>Po Box 7346<br>Philadelphia, PA  19101-7346<br>United States | Regulatory And Other Taxes And Fees |
| District Of Columbia<br>1101 4Th Street<br>Sw<br>Suite 270 West<br>Washington Dc, DC  20024<br>United States | Regulatory And Other Taxes And Fees |
| District Of Columbia Office Of Tax And Revenue<br>1101 4Th St<br>Sw #270<br>Washington Dc, DC  20024<br>United States | Income / Franchise Taxes<br>Property Taxes |
| District Of Columbia Treasurer<br>1101 4Th Street, Sw<br>Ste 270 West<br>Washington Dc, DC  20024<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Durham County Tax Collector<br>201 East Main Street<br>3Rd Floor<br>Administration Building Ii<br>Durham, NC  27701<br>United States | Property Taxes |
| Dutch Tax Authority<br>Tax Administration/Department Of International Issues<br>Kloosterweg 22<br>Po Box 2865<br>Dj  Heerlen,   6401<br>Netherlands | Regulatory And Other Taxes And Fees |
| FL Sales Use Tax Return Dr-15<br>Attn: Florida Department Of Revenue<br>5050 W Tennessee Street Tallahassee<br>Tallahassee, FL  32399-0120<br>United States | Sales And Use Tax |
| Florida Department Of Revenue<br>5050 West Tennessee Street<br>Tallahassee, FL  32399<br>United States | Penalties And Interest |
| Forsyth<br>1092 Tribble Gap Road<br>Cumming, GA  30040<br>United States | Regulatory And Other Taxes And Fees |
| Forsyth County Office Of Tax Commissioner<br>1092 Tribble Gap Rd<br>Cumming, GA  30040<br>United States | Property Taxes |
| Franchise Tax Board - State Of California<br>Attn: Franchise Tax Board<br>Po Box 942857<br>Sacramento, CA  94257- 0500<br>United States | Income / Franchise Taxes |
| Fulton County Tax Commissioner<br>141 Pryor Street<br>Sw<br>Atlanta, GA  30303<br>United States | Property Taxes |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| GA Sales Use Tax Report St-3<br>Attn: Georgia Dept. Of Revenue<br>Po Box 105408<br>Atlanta, GA  30348-5408<br>United States | Sales And Use Tax |
| Gregory F.X. Daly Collector Of Revenue (Personal Property Tax, City Of St. Louis)<br>Attn: City Of St. Louis<br>City Hall<br>1200 Market Street<br>Saint Louis, MO  63103<br>United States | Property Taxes |
| Harris County Tax Office<br>Attn: Ann Harris Bennett Tax Assessor-Collector<br>P.O. Box 4663<br>Houston, TX  77210-4663<br>United States | Property Taxes |
| Highland Park Independent School District<br>C/O Perdue Brandon Fielder, Et Al<br>Attn Eboney Cobb<br>500 E Border St, Ste 640<br>Arlington, TX  76010<br>United States | Property Taxes |
| Hillsborough County<br>Po Box 30012<br>Tampa, FL  33630-3012<br>United States | Regulatory And Other Taxes And Fees |
| Hillsborough County Tax Collector<br>Attn: Nancy C. Millan, Tax Collector<br>P.O. Box 30012<br>Tampa, FL  33630-3012<br>United States | Property Taxes |
| IL Sales Use Tax Return E911 St-1<br>Po Box 19035<br>Springfield, IL<br>United States | Sales And Use Tax |
| Illinois Department Of Employment Security<br>33 S State St, 10Th Fl<br>Chicago, IL  60603 | Penalties And Interest |

**Claims Related to Tax Obligations**

| Taxing Authority | Type |
|---|---|
| Internal Revenue Service<br>Internal Revenue Service<br>Department Of The Treasury<br>Ogden, UT  84201<br>United States | Regulatory And Other Taxes And Fees |
| Irving Isd Tax Assessor - Collector<br>Attn: Irving Independent School District - Tax Office<br>P. O. Box 152021<br>Irving, Texas 75015, TX  75015<br>United States | Property Tax<br>Regulatory And Other Taxes And Fees |
| Jackson County Courthouse<br>Attn: Jackson County Courthouse<br>415 E 12Th Street<br>Kansas City, MO  64106<br>United States | Property Taxes |
| King County Treasury<br>Attn: King County Treasury Operations, King Street Center<br>201 S. Jackson St, Suite 710<br>Ste 710<br>Seattle, WA  98104<br>United States | Property Taxes |
| Lehi City<br>153 North 100 East<br>Lehi, UT  84043<br>United States | Regulatory And Other Taxes And Fees |
| Long Beach<br>100 Civic Center Drive<br>Newport Beach, CA  92660<br>United States | Regulatory And Other Taxes And Fees |
| Los Angeles County Tax Collector<br>Attn: Los Angeles County Tax Collector, Kenneth Hahn Hall Of Administration<br>225 North Hill Street<br>Room 137<br>Los Angeles, CA  90012<br>United States | Property Taxes<br>Regulatory And Other Taxes And Fees |
| Louisiana Workforce Commission<br>1001 N 23Rd St, 1St Fl<br>Baton Rouge, LA  70802 | Penalties And Interest |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| MA Sales Use Tax Return St-9<br>Attn: Executive Office For Administration And Finance<br>100 Cambridge Street<br>Boston, MA  02204<br>United States | Sales And Use Tax |
| Maricopa County Treasurer<br>301 West Jefferson St., Suite 100<br>Ste 100<br>Phoenix, AZ  85003<br>United States | Property Taxes |
| Marin County Central Collections<br>Attn: Central Collections<br>County Of Marin Civic Center – Room 217<br>P.O. Box 4220<br>San Rafael, CA  94913-4220<br>United States | Regulatory And Other Taxes And Fees |
| Maryland State Department Of Assessments And Taxation<br>Attn: Department Of Assessments And Taxation<br>301 W. Preston Street<br>Room 801<br>Baltimore, MD  21201-2395<br>United States | Property Taxes |
| MD Sales And Use Tax Return Form 202<br>Attn: Revenue Administration Division, Taxpayer Service Division<br>110 Carroll Street<br>Annapolis, MD  21411-0001<br>United States | Sales And Use Tax |
| Mecklenburg County Tax Collector<br>Attn: Valerie C. Woodard Center<br>3205 Freedom Dr.<br>Ste 3000<br>Charlotte, NC  28208<br>United States | Property Taxes |
| MI Sales Use Withholding 5080 (The 20Th)<br>Attn: Michigan Department Of Treasury<br>P.O. Box 30059<br>Lansing, MI  48909<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Miami Dade<br>Attn: Business Tax<br>200 Nw 2Nd Avenue<br>Miami, FL  33128<br>United States | Regulatory And Other Taxes And Fees |
| Miami-Dade County - State Of Florida<br>111 Nw 1St Street<br>Miami, FL  33128<br>United States | Property Taxes |
| Minnesota Department Of Revenue<br>Attn: Minnesota Revenue<br>600 N. Robert St.<br>St. Paul, MN  55146<br>United States | Income / Franchise Taxes |
| MN Sales Use Tax Return St-1<br>Attn: Minnesota Revenue<br>600 N. Robert St.<br>St. Paul, MN  55146<br>United States | Sales And Use Tax |
| MO Consumers Use Tax Return 53-C<br>Attn: Harry S Truman State Office Building<br>301 West High Street<br>Jefferson City, MO  65101<br>United States | Sales And Use Tax |
| Montgomery County<br>C/O Linebarger Goggan Blair & Sampson<br>Po Box 3064<br>Houston, TX  77253-3064<br>United States | Commercial Rent<br>Regulatory And Other Taxes And Fees |
| Montgomery County Tax Assessor - Collector<br>Attn: Montgomery County Tax Office<br>400 N. San Jacinto<br>Conroe, TX  77301-2823<br>United States | Property Taxes |
| Montreal, Quebec<br>305 René-Lévesque Boulevard West<br>Montréal, QC  H2Z 1A6<br>Canada | Value Added Taxes |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Multnomah County Tax Collector<br>Attn: Multnomah Building<br>501 Se Hawthorne Blvd.<br>Ste 175<br>Portland, OR  97214<br>United States | Property Taxes |
| NC Sales And Use Tax Return E-500<br>Attn: Bankruptcy Unit<br>Po Box 1168<br>Raleigh, NC  27602-1168<br>United States | Sales And Use Tax |
| New Jersey Division Of Taxation<br>Attn: Nj Division Of Taxation<br>Po Box 248<br>Trenton, NJ  08646-0248<br>United States | Income / Franchise Taxes |
| New York State Department Of Taxation And Finance<br>Audit Division, Floor 4<br>15 Metrotech Center<br>Brooklyn, NY  11201-3826<br>United States | Penalties And Interest |
| Newport Beach<br>100 Civic Center Drive<br>Newport Beach, CA  92660<br>United States | Regulatory And Other Taxes And Fees |
| NJ Sales Use Tax Return St-50 (Q) St-51 (M)<br>Attn: Nj Division Of Taxation Bankruptcy Section<br>Po Box 245<br>Trenton, NJ  08695-0245<br>United States | Sales And Use Tax |
| North Carolina Department Of Revenue<br>Attn: North Carolina Department Of Revenue<br>Post Office Box 25000<br>Raleigh, NC  27640-0640<br>United States | Income / Franchise Taxes |
| NV Combined Sales Use Tax Return St-18<br>1550 College Parkway<br>Ste 115<br>Carson City, NV  89706<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| NYC Department Of Finance<br>375 Pearl Street<br>New York, NY  10038<br>United States | Commercial Rent Tax |
| NYS Department Of Taxation And Finance<br>Attn: State Campus Bldg 9<br>Albany, NY  12227<br>United States | Income / Franchise Taxes<br>Sales And Use Tax |
| NYS Sales Tax Processing<br>Attn: New York State Dept Of Taxation And Finance, Bankruptcy Section<br>Po Box 5300<br>Albany, NY  12205-0300<br>United States | Sales And Use Tax |
| Office Of Assessor County Of Alameda<br>Attn: Administration Building, Room 145<br>1221 Oak Street<br>Oakland, CA  94612-4288<br>United States | Personal Property Tax |
| Office Of The Assessor County Of Los Angeles<br>500 W Temple St<br>Los Angeles, CA  90012-2770<br>United States | Personal Property Tax |
| Office Of The Assessor County Of Santa Clara<br>Country Government Center, East Wing<br>70 West Hedding Street, 5Th Floor<br>San Jose, CA  95110-1771<br>United States | Personal Property Tax |
| OH Universal Use Tax Return Uut-1<br>Attn: Ohio Department Of Taxation<br>4485 Northland Ridge Blvd.<br>Columbus, OH  43229<br>United States | Sales And Use Tax |
| OH Ust-1 Sales<br>Attn: Ohio Department Of Taxation<br>4485 Northland Ridge Blvd.<br>Columbus, OH  43229<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Ohio Department Of Taxation<br>Attn Bankruptcy Division<br>Po Box 530<br>Columbus, OH  43216<br>United States | Commercial Rent<br>Regulatory And Other Taxes And Fees |
| Orange County Treasurer - Tax Collector<br>Attn: County Of Orange<br>Attn: Treasurer-Tax Collector<br>P.O. Box 4515<br>Santa Ana, CA  92702-4515<br>United States | Penalties And Interest<br>Property Tax |
| Oregon Department Of Revenue<br>Attn: Oregon Department Of Revenue<br>Po Box 14790<br>Salem, OR  97309-0470<br>United States | Income / Franchise Taxes |
| PA Sales Use Hotel Tax Pa-3<br>Attn: Pa Department Of Revenue<br>Po Box 280905<br>Harrisburg, PA  17128-0905<br>United States | Sales And Use Tax |
| Palo Alto<br>250 Hamilton Ave<br>4Th Floor<br>Palo Alto, CA  94301<br>United States | Regulatory And Other Taxes And Fees |
| Plano Independent School District<br>C/O Perdue Brandon Fielder, Et Al<br>Attn Linda D Reece<br>1919 S Shiloh Rd, Ste 640, Lb 40<br>Garland, TX  75042<br>United States | Personal Property Tax |
| Prince George's County, MD<br>Wayne K. Curry Administration Building<br>1301 Mccormick Drive<br>Largo, MD  20774<br>United States | Property Taxes |

**Claims Related to Tax Obligations**

| Taxing Authority | Type |
|---|---|
| Revenue Division - Metro Shs Tax<br>Attn: Revenue Division Customer Service Center<br>111 Sw Columbia Street<br>Ste 600<br>Portland, OR  97201<br>United States | Income / Franchise Taxes |
| Salt Lake City Corporation<br>2001 S State Street<br>Ste N1-200<br>Po Box 144575<br>Salt Lake City, UT  84114-4575<br>United States | Regulatory And Other Taxes And Fees |
| Salt Lake County Assessor's Office<br>Attn: Salt Lake County Government Center<br>2001 South State Street<br>N2-600<br>Salt Lake City, UT  84190<br>United States | Property Taxes |
| San Diego County Assessor<br>Business Division - Attn: Mail Audit Program<br>9226 Clairemont Mesa Blvd<br>San Diego, CA  92123-1211<br>United States | Personal Property Tax |
| San Diego County Treasurer-Tax Collector<br>Attn: Dan Mcallister<br>Treasurer-Tax Collector, San Diego County Admin.<br>Center<br>1600 Pacific Hwy, Room 162<br>San Diego, CA  92101<br>United States | Property Tax |
| San Francisco - Office Of The Assessor<br>1155 Market Street, 5Th Floor<br>San Francisco, CA  94103<br>United States | Personal Property Tax |
| San Francisco Treasurer & Tax Collector<br>Attn: San Francisco Tax Collector<br>P.O. Box 7426<br>San Francisco, CA  94120<br>United States | Property Taxes<br>Commercial Rent<br>Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| San Jose<br>200 E. Santa Clara St.<br>San Jose, CA  95113<br>United States | Regulatory And Other Taxes And Fees |
| San Mateo County Tax Collector<br>555 County Center<br>Floor 1<br>Redwood City, CA  94063<br>United States | Property Tax<br>Regulatory And Other Taxes And Fees |
| San Ramon<br>7000 Bollinger Canyon Rd,<br>San Ramon, CA  94583<br>United States | Regulatory And Other Taxes And Fees |
| Santa Clara County Department Of Tax And Collections<br>Attn: Tax And Collections<br>110 West Tasman Drive<br>San Jose, CA  95134-1700<br>United States | Property Tax |
| Santa Monica Finance Department<br>Attn: Finance Department<br>1685 Main Street<br>Mail Stop 09<br>Santa Monica, CA  90401<br>United States | Regulatory And Other Taxes And Fees |
| State Of Delaware<br>Attn: The Delaware Department Of State<br>Division Of Corporations<br>Po Box 898<br>Dover, DE  19903<br>United States | Income / Franchise Taxes |
| State Of Illinois Department Of Revenue<br>Po Box 19013<br>Springfield, IL  62794-9013<br>United States | Sales And Use Tax |
| State Of Nevada Department Of Taxation<br>700 E Warm Springs Rd, Ste 200<br>Las Vegas, LV  89119<br>United States | Regulatory And Other Taxes And Fees |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| State Of Ohio<br>Attn: Ohio Department Of Taxation<br>P.O. Box 182101<br>Columbus, OH  43218-2101<br>United States | Income / Franchise Taxes |
| State Of Washington Department Of Revenue<br>8008 Ne Fourth Plain Blvd., Suite 320<br>Attn: Audit Division<br>Vancouver, WA  98662-7251<br>United States | Regulatory And Other Taxes And Fees |
| Tampa Business License Tax Division<br>Attn: Business Tax Division<br>Po Box 31047<br>Tampa, FL  33631-3047<br>United States | Regulatory And Other Taxes And Fees |
| Tennessee Department Of Revenue<br>Attn: Tennessee Department Of Revenue<br>Andrew Jackson Building<br>500 Deaderick Street<br>Nashville, TN  37242<br>United States | Income / Franchise Taxes<br>Regulatory And Other Taxes And Fees |
| Texas Comptroller Of Public Accounts<br>475 Park Avenue South, 19Th Floor<br>New York, NY  10016<br>United States | Income / Franchise Taxes & Sales And Use Tax |
| The City Of Calgary<br>Po Box 2100, Stn M<br>Calgary, AB<br>Canada | Regulatory And Other Taxes And Fees |
| The Commonwealth Of Massachusetts<br>Attn: Department Of Revenue<br>Po Box 7000<br>Boston, MA  2204<br>United States | Property Taxes |
| The Marin County Tax Collector<br>P.O. Box 4220<br>San Rafael, CA  94913-4220<br>United States | Property Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| TN Sales Use Tax Return Rvr0000201<br>Attn: Tennessee Department Of Revenue, Andrew Jackson Building<br>500 Deaderick Street<br>Nashville, TN  37424<br>United States | Sales And Use Tax |
| Toronto<br>5100 Yonge St.<br>Toronto, ON  M2N 5V7<br>Canada | Value Added Taxes |
| Travis County Tax Office<br>P.O. Box 149328<br>Austin, TX  78714-9328<br>United States | Property Taxes |
| Treasurer, Arlington County<br>2100 Clarendon Blvd<br>Ste 215<br>Arlington, VA  22201<br>United States | Regulatory And Other Taxes And Fees |
| TX Sales Use Tax Return 01-114<br>Attn: Texas Comptroller Of Public Accounts, Lyndon B. Johnson State Office Building<br>111 East 17Th Street<br>Austin, TX  78774<br>United States | Sales And Use Tax |
| UT Sales And Use Tax Return Tc- 62M<br>Attn: Utah State Tax Commission<br>210 North 1950 West<br>Salt Lake City, UT  84134<br>United States | Sales And Use Tax |
| Utah County Assessor's Office<br>Attn: Utah County Treasurer<br>100 E Center Street<br>Suite 1200<br>Provo, UT  84606<br>United States | Property Taxes |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| Utah State Tax Commission<br>Attn: Utah State Tax Commission<br>210 North 1950 West<br>Salt Lake City, UT  84134-0260<br>United States | Income / Franchise Taxes |
| VA Dealers Sales Use Tax St-9<br>Attn: Virginia Tax, Office Of Customer Services<br>P.O. Box 1115<br>Richmond, VA  23218-1115<br>United States | Sales And Use Tax |
| Vancouver<br>Ministry Of Finance<br>Po Box 9435 Stn Prov Govt<br>Victoria, BC  V8W 9V3<br>Canada | Value Added Taxes |
| Ville De Montreal Service Des Finances<br>C.P. 11043, Succursale Centre- Ville<br>Montreal, QC  H3C 4X8<br>Canada | Regulatory And Other Taxes And Fees |
| Virginia Department Of Taxation<br>Attn: Virginia Tax<br>Office Of Customer Services<br>P.O. Box 1115<br>Richmond, VA  23218-1115<br>United States | Penalties And Interest |
| WA Combined Annual Excise Tax Return<br>Attn: Bankruptcy Unit<br>2101 4Th Ave<br>Suite 1400<br>Seattle, WA  98121<br>United States | Sales And Use Tax |
| WA Combined Monthly Excise Tax 2406M<br>Attn: Bankruptcy Unit<br>2101 4Th Ave<br>Suite 1400<br>Seattle, WA  98121<br>United States | Sales And Use Tax |

## Claims Related to Tax Obligations

| Taxing Authority | Type |
|---|---|
| WA Combined Quarterly Excise Tax 2406Q<br>Attn: Bankruptcy Unit<br>2101 4Th Ave<br>Suite 1400<br>Seattle, WA  98121<br>United States | Sales And Use Tax |
| WA-City Of Seattle B&O Tax<br>Attn: Bankruptcy Unit<br>2101 4Th Ave<br>Suite 1400<br>Seattle, WA  98121<br>United States | Sales And Use Tax |
| Wake County Tax Administration<br>P.O. Box 2331<br>Raleigh, NC  27602<br>United States | Property Taxes |
| Tarrant County Tax Assessor-Collector<br>Attn: Tarrant County Tax Office<br>Po Box 961018<br>Fort Worth, TX  76161-0018<br>United States | Property Taxes |
| The Woodlands Road Utility District # 1<br>C/O Angela K Randermann<br>1235 North Loop W, Ste 600<br>Houston, TX  77008<br>United States | Regulatory And Other Taxes And Fees |

**Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions**

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| 12 EAST 49TH STREET TENANT LLC | 12 EAST 49TH STREET TENANT, LLC V. COGNOVI LABS, INC. | JAMS ARB. NO. 5425001127 | JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS) | MEMBER RELATED DISPUTES |
| 1814 FRANKLIN ST Q LLC | 1814 FRANKLIN INVESTORS, LLC V. 1814 FRANKLIN ST Q LLC; WEWORK COMPANIES LLC | 23CV031818 | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ALMEDA | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 1814 FRANKLIN INVESTORS, LLC V. 1814 FRANKLIN ST Q LLC; WEWORK COMPANIES LLC | 23CV031818 | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ALMEDA | LANDLORD DISPUTE |
| 200 PORTLAND TENANT LLC | 200 PORTLAND TENANT LLC; WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC. V. 200 PORTLAND STREET, LLC | 2384CV02095 | SUPERIOR COURT, COMMONWEALTH OF MASSACHUSETTS, SUFFOLK COUNTY | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 200 PORTLAND TENANT LLC; WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC. V. 200 PORTLAND STREET, LLC | 2384CV02095 | SUPERIOR COURT, COMMONWEALTH OF MASSACHUSETTS, SUFFOLK COUNTY | LANDLORD DISPUTE |
| 2420 17TH STREET TENANT LLC | 2420 17TH STREET LLC V. WEWORK COMPANIES LLC; 2420 17TH STREET TENANT LLC | 2023CV32094 | DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 2420 17TH STREET LLC V. WEWORK COMPANIES LLC; 2420 17TH STREET TENANT LLC | 2023CV32094 | DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO | LANDLORD DISPUTE |
| THE WE COMPANY MANAGEMENT HOLDINGS L.P. | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| THE WE COMPANY MANAGEMENT LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| THE WE COMPANY MC LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WE WORK MANAGEMENT LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK 261 MADISON LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK INC. | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WW BUILDCO LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WW HOLDCO LLC | 260-261 MADISON AVENUE LLC V. WEWORK 261 MADISON LLC, WEWORK INC.,  WW HOLDCO LLC, THE WE COMPANY MC LLC,  THE WE COMPANY MANAGEMENT HOLDINGS L.P.,  WEWORK COMPANIES LLC, THE WE COMPANY  MANAGEMENT LLC, WE WORK MANAGEMENT LLC,  WW BUILDCO LLC, AND ADAM NEUMANN, | 654806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| 33 IRVING TENANT LLC | 33 IRVING TENANT LLC V. VANT AI | JAMS ARB. NO. 5425000698 | JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS) | MEMBER RELATED DISPUTES |
| 400 CALIFORNIA STREET TENANT LLC | 400 CALIFORNIA, LLC V. 400 CALIFORNIA STREET TENANT LLC; WEWORK COMPANIES, LLC; DOES 1 THROUGH 10 | CGC-23-609792 | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO | LANDLORD DISPUTE |

**Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions**

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| WEWORK COMPANIES U.S. LLC | 400 CALIFORNIA, LLC V. 400 CALIFORNIA STREET TENANT LLC; WEWORK COMPANIES, LLC; DOES 1 THROUGH 10 | CGC-23-609792 | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO | LANDLORD DISPUTE |
| 400 CONCAR DRIVE TENANT LLC | 400 CONCAR DRIVE TENANT LLC; WEWORK COMPANIES LLC V. 2000 SIERRA POINT PARKWAY LLC; DIAMOND MARINA LLC; AND DIAMOND MARINA II LLC | 23-CIV-05022 | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 400 CONCAR DRIVE TENANT LLC; WEWORK COMPANIES LLC V. 2000 SIERRA POINT PARKWAY LLC; DIAMOND MARINA LLC; AND DIAMOND MARINA II LLC | 23-CIV-05022 | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | LANDLORD DISPUTE |
| 4041 MACARTHUR BOULEVARD TENANT LLC | 4041 MACARTHUR BOULEVARD TENANT LLC V. BASTION COLLECTIVE, LLC; BASTION RARE, LLC; BASTION ELEVATE LLC; AND BASTION DB5 LLC | JAMS ARB. NO. 1425034837 | JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS) | MEMBER RELATED DISPUTES |
| 415 MISSION STREET TENANT LLC | 415 MISSION STREET TENANT, LLC V. SL SFT, LLC D/B/A "SMARTLABS;" SMARTLABS HOLDINGS, LLC; AND SMARTLABS CORPORATE, LLC | JAMS ARB. NO. 5425001291 | JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS) | MEMBER RELATED DISPUTES |
| 448 NORTH LASALLE STREET TENANT LLC | 448 NORTH LASALLE, LLC V. 448 NORTH LASALLE STREET TENANT LLC, WEWORK COMPANIES LLC, AND UNKNOWN OCCUPANTS | 20231716553 | CIRCUIT COURT OF COOK COUNTY, FIRST MUNICIPAL DISTRICT, STATE OF ILLINOIS | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | 448 NORTH LASALLE, LLC V. 448 NORTH LASALLE STREET TENANT LLC, WEWORK COMPANIES LLC, AND UNKNOWN OCCUPANTS | 20231716553 | CIRCUIT COURT OF COOK COUNTY, FIRST MUNICIPAL DISTRICT, STATE OF ILLINOIS | LANDLORD DISPUTE |
| 8687 MELROSE AVENUE TENANT LLC | 8687 MELROSE AVE TENANT LLC V. ICON MEDIA, LLC | 22STCP00274 | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES  (SACRAMENTO) | MEMBER RELATED DISPUTES |
| 511 W 25TH STREET TENANT LLC | AL 511 WEST 25TH STREET OWNER, LLC C/O L&L HOLDING COMPANY V. 511 W 25TH STREET TENANT LLC, XYZ CORP - UNDERTENANT | LT-310587-23/NY | NYC HOUSING COURT | LANDLORD DISPUTE |
| 609 GREENWICH STREET TENANT LLC | ALEJANDRO JIMENEZ V. LF GREENWICH, LLC, LF EAST 21 PROPERTY CO., LLC, CENTAUR PROPERTIES, LLC., CENTAUR PROPERTY MANAGEMENT LLC, 609 GREENWICH STREET TENANT LLC, WEWORK COMPANIES, INC.; 3P ELITE GLASS INSTALLATION, LLC; ERA CONSTRUCTION, LLC, COMPANION CASE #158206 AGAINST BUILD BY WE LLC | 151063/2019 AND 158206/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | ALEJANDRO JIMENEZ V. LF GREENWICH, LLC, LF EAST 21 PROPERTY CO., LLC, CENTAUR PROPERTIES, LLC., CENTAUR PROPERTY MANAGEMENT LLC, 609 GREENWICH STREET TENANT LLC, WEWORK COMPANIES, INC.; 3P ELITE GLASS INSTALLATION, LLC; ERA CONSTRUCTION, LLC, COMPANION CASE #158206 AGAINST BUILD BY WE LLC | 151063/2019 AND 158206/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | ALEJANDRO JIMENEZ V. LF GREENWICH, LLC, LF EAST 21 PROPERTY CO., LLC, CENTAUR PROPERTIES, LLC., CENTAUR PROPERTY MANAGEMENT LLC, 609 GREENWICH STREET TENANT LLC, WEWORK COMPANIES, INC.; 3P ELITE GLASS INSTALLATION, LLC; ERA CONSTRUCTION, LLC, COMPANION CASE #158206 AGAINST BUILD BY WE LLC | 151063/2019 AND 158206/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| 35-37 36TH STREET TENANT LLC | ALEX OLIVERA ARTEAGA V. EIB STUDIO SQUARE LLC, 35-37 36TH STREET TENANT, LLC, JULIAN SPRINKLER CORP., MITIE PLUMBING & HEATING CORP. | 800572/2023E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WE WORK MANAGEMENT LLC | ALEXANDRIA FITZGERALD V. WE WORK MANAGEMENT LLC AND DAVID STILES | 153618/2022 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | EMPLOYEE RELATED DISPUTES |
| WE WORK MANAGEMENT LLC | ALEXANDRIA FITZGERALD V. WE WORK MANAGEMENT LLC AND DAVID STILES | 2023-03009 | SUPREME COURT OF THE STATE OF NEW YORK, APPELLATE DIVISION, FIRST DEPARTMENT | EMPLOYEE RELATED DISPUTES |
| 1440 BROADWAY TENANT LLC | ARLIN G. SANCHEZ MONTILLA, BERSI RODRIGUEZ V. 1440 BROADWAY (NY) OWNER LC, VISAAR CORP.; 3P 1440 BROADWAY TENANT, LLC | 813198/2021E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | AUDIT - COMMERCIAL RENT TAX (6/1/2018 – 5/31/2020) | AUDIT | NYC DEPARTMENT OF FINANCE | AUDIT |
| 1448 NW MARKET STREET TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 2031 3RD AVE TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 400 LINCOLN SQUARE TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 501 EASTLAKE TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 800 BELLEVUE WAY TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 925 4TH AVENUE TENANT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| WE WORK MANAGEMENT LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| WW 107 SPRING STREET LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| WW 1601 FIFTH AVENUE LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| WW 500 YALE LLC | AUDIT - EXCISE TAX (1/1/17 – 6/30/2021) | AUDIT | STATE OF WASHINGTON DEPARTMENT OF REVENUE | AUDIT |
| 10000 WASHINGTON BOULEVARD TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| 12130 MILLENNIUM DRIVE TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| 2201 BROADWAY TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF ASSESSOR COUNTY OF ALAMEDA | AUDIT |
| 8910 UNIVERSITY CENTER LANE TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | SAN DIEGO COUNTY ASSESSOR | AUDIT |
| WEWORK LA LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |

Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| WW 312 ARIZONA LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| WW 520 BROADWAY LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| WW 535 MISSION LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | SAN FRANCISCO - OFFICE OF THE ASSESSOR | AUDIT |
| WW 555 WEST 5TH STREET LLC | AUDIT - PERSONAL PROPERTY TAX (2020 - 2023) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| WEWORK INC. | AUDIT - PERSONAL PROPERTY TAX (2021-2022) | AUDIT | GOVERNMENT OF THE DISTRICT OF COLUMBIA OFFICE OF TAX AND REVENUE | AUDIT |
| 10250 CONSTELLATION TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2022) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| 3000 OLYM BOULEVARD TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2022) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| 611 NORTH BRAND BOULEVARD TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2022) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| 8687 MELROSE AVENUE TENANT LLC | AUDIT - PERSONAL PROPERTY TAX (2022) | AUDIT | OFFICE OF THE ASSESSOR COUNTY OF LOS ANGELES | AUDIT |
| WEWORK 25 TAYLOR LLC | AUDIT - SALES AND USE TAX (1/1/2019 – 6/30/2022) | AUDIT | CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION | AUDIT |
| WEWORK LA LLC | AUDIT - SALES AND USE TAX (1/1/2019 – 6/30/2022) | AUDIT | CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION | AUDIT |
| 11801 DOMAIN BLVD TENANT LLC | AUDIT - SALES AND USE TAX (1/1/2020 - 12/31/2022) | AUDIT | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | AUDIT |
| LEGACY TENANT LLC | AUDIT - SALES AND USE TAX (1/1/2020 - 12/31/2022) | AUDIT | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | AUDIT |
| WW 600 CONGRESS LLC | AUDIT - SALES AND USE TAX (1/1/2020 - 12/31/2022) | AUDIT | TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | AUDIT |
| WE WORK MANAGEMENT LLC | AUDIT - SALES AND USE TAX (10/1/2019 – 9/30/2022) | AUDIT | CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION | AUDIT |
| 315 W 36TH STREET TENANT LLC | AUDIT - SALES AND USE TAX (12/1/2019 - 8/31/2022) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 524 BROADWAY TENANT LLC | AUDIT - SALES AND USE TAX (12/1/2019 - 8/31/2022) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 117 NE 1ST AVE TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-2/28/2022) | AUDIT | FLORIDA DEPARTMENT OF REVENUE | AUDIT |
| 2222 PONCE DE LEON BLVD TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-2/28/2022) | AUDIT | FLORIDA DEPARTMENT OF REVENUE | AUDIT |
| 429 LENOX AVE TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-2/28/2022) | AUDIT | FLORIDA DEPARTMENT OF REVENUE | AUDIT |
| 78 SW 7TH STREET TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-2/28/2022) | AUDIT | FLORIDA DEPARTMENT OF REVENUE | AUDIT |
| 130 5TH AVENUE TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 1410 BROADWAY TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 160 VARICK STREET TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 25 WEST 45TH STREET HQ LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 414 WEST 14TH STREET HQ LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 44 EAST 30TH STREET HQ LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 575 LEXINGTON AVENUE TENANT LLC | AUDIT - SALES AND USE TAX (3/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 44 WALL STREET HQ LLC | AUDIT - SALES AND USE TAX (6/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 460 PARK AVE SOUTH TENANT LLC | AUDIT - SALES AND USE TAX (6/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 511 W 25TH STREET TENANT LLC | AUDIT - SALES AND USE TAX (6/1/2019-8/31/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| WEWORK 156 2ND LLC | AUDIT - SALES AND USE TAX (7/1/2020 – 12/31/2022) | AUDIT | CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION | AUDIT |
| 135 MADISON AVE TENANT LLC | AUDIT - SALES AND USE TAX (9/1/2018-2/28/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 18 WEST 18TH STREET TENANT LLC | AUDIT - SALES AND USE TAX (9/1/2018-2/28/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| 500 7TH AVENUE TENANT LLC | AUDIT - SALES AND USE TAX (9/1/2018-2/28/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |

**Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions**

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| 750 LEXINGTON AVENUE TENANT LLC | AUDIT - SALES AND USE TAX (9/1/2018-2/28/2023) | AUDIT | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | AUDIT |
| WEWORK COMPANIES U.S. LLC | BISERA NIKOCEVIC V. TRINITY CENTRE LLC, WEWORK COMPANIES INC., RBC CAPITAL MARKETS, LLC D/B/A RBC WEALTH MANAGEMENT; 3P ABM ONSITE SERVICES, INC. | 158033/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WE WORK MANAGEMENT LLC | BOBAK EMAMIAN V. WEWORK COMPANIES, INC. | JAMS CASE NO. 1425034452 | JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS) | EMPLOYEE RELATED DISPUTES |
| WE WORK MANAGEMENT LLC | BRITTNEY SMITH V. WE WORK MANAGEMENT LLC | 31C-2023-00346 | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (TX) | EMPLOYEE RELATED DISPUTES |
| WE WORK MANAGEMENT LLC | BRITTNEY SMITH V. WE WORK MANAGEMENT LLC | 1A23418 | TEXAS WORKFORCE COMMISSION CIVIL RIGHTS DIVISION | EMPLOYEE RELATED DISPUTES |
| 540 BROADWAY Q LLC | BROADWAY CONTINENTAL CORP. V. 540 BROADWAY Q LLC & WEWORK COMPANIES LLC | 655442/2023 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | BROADWAY CONTINENTAL CORP. V. 540 BROADWAY Q LLC & WEWORK COMPANIES LLC | 655442/2023 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | BUTRIM HOTI V. TRINITY HUDSON HOLDINGS, LLC, REMAINDERMAN 205 HUDSON LLC, WEWORK COMPANIES INC., UA BUILDERS CORP, OTEK BUILDERS, LLC | 22357/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | CARLOS RUIZ JR, JAMIYLA RUIZ V. WASSERSTEIN ENTERPRISES L.L.C., NEWMARK & COMPANY REAL ESTATE, INC., SW REALTY MANAGEMENT, INC., METROPOLITAN ARTS & ANTIQUES PAVILION LTD. 3P WEWORK COMPANIES INC., UNITED ALLIANCE ENTERPRISES LLC, BLACK BULL BUILDERS, LLC, WW 115 W 18TH STREET, LLC | 25145/2017E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WW 115 W 18TH STREET LLC | CARLOS RUIZ JR, JAMIYLA RUIZ V. WASSERSTEIN ENTERPRISES L.L.C., NEWMARK & COMPANY REAL ESTATE, INC., SW REALTY MANAGEMENT, INC., METROPOLITAN ARTS & ANTIQUES PAVILION LTD. 3P WEWORK COMPANIES INC., UNITED ALLIANCE ENTERPRISES LLC, BLACK BULL BUILDERS, LLC, WW 115 W 18TH STREET, LLC | 25145/2017E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| 125 S CLARK STREET TENANT LLC | CR-CHICAGO 125 SOUTH CLARK STREET LLC V. 125 S CLARK STREET TENANT, LLC; WEWORK COMPANIES, LLC | 2023L008970 | STATE COURT OF ILLINOIS, CIRCUIT COURT, COOK COUNTY | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | CR-CHICAGO 125 SOUTH CLARK STREET LLC V. 125 S CLARK STREET TENANT, LLC; WEWORK COMPANIES, LLC | 2023L008970 | STATE COURT OF ILLINOIS, CIRCUIT COURT, COOK COUNTY | LANDLORD DISPUTE |
| 750 LEXINGTON AVENUE TENANT LLC | DOUGLAS AVELLANEDA V. SIEGEL FAMILY ASSOCIATES, LLC, OTEK BUILDERS, LLC, THREE PARK AVENUE BUILDING CORP., WEWORK COMPANIES, INC., INTERNATIONAL PLAZA ASSOCIATES L.P., 750 LEXINGTON AVENUE TENANT LLC, MIKOMA ELECTRIC LLC | 33918/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | DOUGLAS AVELLANEDA V. SIEGEL FAMILY ASSOCIATES, LLC, OTEK BUILDERS, LLC, THREE PARK AVENUE BUILDING CORP., WEWORK COMPANIES, INC., INTERNATIONAL PLAZA ASSOCIATES L.P., 750 LEXINGTON AVENUE TENANT LLC, MIKOMA ELECTRIC LLC | 33918/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | DOUGLAS CHERTOK V. SRS ACQUIOM; ACQUIOM FINANCIAL, LLC, SRS ACQUIOM HOLDINGS LLC; SRS ACQUIOM HOLDINGS, INC, WEWORK COMPANIES LLC, WEWORK INC. | 23-CV-60821 | UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA | BREACH OF CONTRACT |
| WEWORK INC. | DOUGLAS CHERTOK V. SRS ACQUIOM; ACQUIOM FINANCIAL, LLC, SRS ACQUIOM HOLDINGS LLC; SRS ACQUIOM HOLDINGS, INC, WEWORK COMPANIES LLC, WEWORK INC. | 23-CV-60821 | UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA | BREACH OF CONTRACT |
| 20 W KINZIE TENANT LLC | DP LEASEHOLD (ILLINOIS), LLC V. 20 W KINZIE TENANT LLC AND WEWORK COMPANIES LLC | 2023L09921 | CIRCUIT COURT OF COOK COUNTY, ILLINOIS, COUNTY DEPARTMENT, LAW DIVISION | BREACH OF CONTRACT |
| WEWORK COMPANIES U.S. LLC | DP LEASEHOLD (ILLINOIS), LLC V. 20 W KINZIE TENANT LLC AND WEWORK COMPANIES LLC | 2023L09921 | CIRCUIT COURT OF COOK COUNTY, ILLINOIS, COUNTY DEPARTMENT, LAW DIVISION | BREACH OF CONTRACT |
| 311 W 43RD STREET TENANT LLC | DWF V. 311 43RD, LLC V. 311 W 43RD STREET TENANT, LLC; WEWORK COMPANIES LLC | 654451/2023 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | DWF V. 311 43RD, LLC V. 311 W 43RD STREET TENANT, LLC; WEWORK COMPANIES LLC | 654451/2023 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| 130 W 42ND STREET TENANT LLC | EMMANUEL LOPEZ VERAS V. RYAN L.L.C., 130 W 42 OPCO LLC, 130 W 42ND STREET TENANT LLC, BLACK BULL BUILDERS, LLC, M. CARY, INC., IGON CONSTRUCTION & MAINTENANCE INC, NUCOR CONSTRUCTION CORP., OTEK BUILDERS, LLC | 33421/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK INC. | ERNST & YOUNG (PAYMENT DISPUTE) | N/A | N/A | THREATENED LITIGATION |
| WEWORK COMPANIES U.S. LLC | EXPRESS, LLC, V. WEWORK COMPANIES, INC., WW BUILDCO, LLC, RINNOVO CONSTRUCTION, LLC, VANQUISH GROUP, INC., NYC BUILDING SERVICES, INC; 3P 490 FULTON OWNER LLC, 490 LOWER UNIT LP, CBRE GROUP INC. | 528858/2022 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | GENERAL LIABILITY |

4 of 7

Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| WW BUILDCO LLC | EXPRESS, LLC, V. WEWORK COMPANIES, INC., WW BUILDCO, LLC, RINNOVO CONSTRUCTION, LLC, VANQUISH GROUP, INC., NYC BUILDING SERVICES, INC; 3P 490 FULTON OWNER LLC, 490 LOWER UNIT LP, CBRE GROUP INC. | 528858/2022 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | GENERAL LIABILITY |
| WEWORK COMPANIES U.S. LLC | FELIX RONALDO MORAGA V. BROOKLYN NAVY YARD DEVELOPMENT CORPORATION, GMC LANDLORD, LLC, GMC MASTER TENANT, LLC, BROOKLYN URBAN RETAIL PARTNERS, LLC, GILBANE BUILDING COMPANY, BENCHMARK BUILDERS, INC., WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC, S&E BRIDGE & SCAFFOLD LLC AND WW BROOKLYN NAVY YARD LLC, BNY TOWER ASSOCIATES LLC, BP NAVY YARD MEMBER LLC, BOSTON PROPERTIES LIMITED PARTNERSHIP, RBNY MEMBER LLC | 515705/2019 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | PERSONAL INJURY |
| WW BROOKLYN NAVY YARD LLC | FELIX RONALDO MORAGA V. BROOKLYN NAVY YARD DEVELOPMENT CORPORATION, GMC LANDLORD, LLC, GMC MASTER TENANT, LLC, BROOKLYN URBAN RETAIL PARTNERS, LLC, GILBANE BUILDING COMPANY, BENCHMARK BUILDERS, INC., WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC, S&E BRIDGE & SCAFFOLD LLC AND WW BROOKLYN NAVY YARD LLC, BNY TOWER ASSOCIATES LLC, BP NAVY YARD MEMBER LLC, BOSTON PROPERTIES LIMITED PARTNERSHIP, RBNY MEMBER LLC | 515705/2019 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | FERNANDO TIBURCIO V. WALSAM TWENTY-NINE COMPANY, BUILD BY WE, LLC, WEWORK CONSTRUCTION, LLC; 3P BESTMARK NATIONAL LLC | 23740/2019E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| 21 PENN PLAZA TENANT LLC | FINTAN MCKENNA V. TEACHERS INSURANCE AND ANNUITY ASSOC. OF AMERICA FOR THE BENEFIT OF ITS REAL ESTATE ACCOUNT, WEWORK REAL ESTATE LLC, WEWORK CONSTRUCTION LLC, WEWORK COMPANIES INC, OC DEVELOPMENT MANAGEMENT, 21 PENN PLAZA TENANT LLC; 3P ANDREW JAMES INTERIORS, INC. | 161091/2019 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | FINTAN MCKENNA V. TEACHERS INSURANCE AND ANNUITY ASSOC. OF AMERICA FOR THE BENEFIT OF ITS REAL ESTATE ACCOUNT, WEWORK REAL ESTATE LLC, WEWORK CONSTRUCTION LLC, WEWORK COMPANIES INC, OC DEVELOPMENT MANAGEMENT, 21 PENN PLAZA TENANT LLC; 3P ANDREW JAMES INTERIORS, INC. | 161091/2019 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | FINTAN MCKENNA V. TEACHERS INSURANCE AND ANNUITY ASSOC. OF AMERICA FOR THE BENEFIT OF ITS REAL ESTATE ACCOUNT, WEWORK REAL ESTATE LLC, WEWORK CONSTRUCTION LLC, WEWORK COMPANIES INC, OC DEVELOPMENT MANAGEMENT, 21 PENN PLAZA TENANT LLC; 3P ANDREW JAMES INTERIORS, INC. | 161091/2019 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK REAL ESTATE LLC | FINTAN MCKENNA V. TEACHERS INSURANCE AND ANNUITY ASSOC. OF AMERICA FOR THE BENEFIT OF ITS REAL ESTATE ACCOUNT, WEWORK REAL ESTATE LLC, WEWORK CONSTRUCTION LLC, WEWORK COMPANIES INC, OC DEVELOPMENT MANAGEMENT, 21 PENN PLAZA TENANT LLC; 3P ANDREW JAMES INTERIORS, INC. | 161091/2019 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | FREDDY ALVAREZ V. ARCHSTONE BUILDERS LLC, AMAZON.COM SERVICES LLC, WEWORK COMPANIES INC., WW PROJECT SWIFT DEVELOPMENT LLC, SPRING SCAFFOLDING LLC; 3P NORDEST SERVICES LLC, SPRING SCAFFOLDING LLC | 715626/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WW PROJECT SWIFT DEVELOPMENT LLC | FREDDY ALVAREZ V. ARCHSTONE BUILDERS LLC, AMAZON.COM SERVICES LLC, WEWORK COMPANIES INC., WW PROJECT SWIFT DEVELOPMENT LLC, SPRING SCAFFOLDING LLC; 3P NORDEST SERVICES LLC, SPRING SCAFFOLDING LLC | 715626/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| 130 5TH AVENUE TENANT LLC | GENRY JAROL GIL CASTRO V. ROC-FIFTH AVENUE ASSOCIATES, LLC, WEWORK CONSTRUCTION LLC, BUILD BY WE LLC, 130 FIFTH AVENUE TENANT, LLC; 3P R-BEN WOODWORKING CORP. | 506511/2019 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | GENRY JAROL GIL CASTRO V. ROC-FIFTH AVENUE ASSOCIATES, LLC, WEWORK CONSTRUCTION LLC, BUILD BY WE LLC, 130 FIFTH AVENUE TENANT, LLC; 3P R-BEN WOODWORKING CORP. | 506511/2019 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | PERSONAL INJURY |
| ONE GOTHAM CENTER TENANT LLC | GEORGE ADAMS V. LIC SITE B-1 OWNER, L.L.C, ONE GOTHAM CENTER TENANT LLC, STEINWAY MOVING AND STORAGE, INC., 3P GUARDIAN SERVICES INDUSTRIES INC. | 804035/2021E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| POWERED BY WE LLC | HECTOR VILLEGAS V. SAFDI PLAZA PROPERTY LLC, 10 JAY MASTER TENANT LLC, QWEST CONTRACTING CORP., RENT THE RUNWAY, INC., POWERED BY WE LLC, ALSO KNOWN AS WEWORK; 3P POWER BY WE LLC., TRITECH ELECTRICAL & DATA INC. | 160258/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | HERALD SQUARE OWNER LLC V. WEWORK COMPANIES LLC | INDEX NO. 655455/2023 | SUPREME COURT, NEW YORK COUNTY | LANDLORD DISPUTE |
| WEWORK INC. | HORACIO LUCIANO ALONSO CORTES V. WASSERSTEIN ENTERPRISES L.L.C., ABS PARTNERS REAL ESTATE LLC, WEWORK INC., JC ELITE CONSTRUCTION SERVICES, LLC | 704302/2022 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| 31 ST JAMES AVE TENANT LLC | HUGO TORRES V. OMV PARK SQUARE LLC, CAPITAL PROPERTIES SERVICES LLC, WEWORK COMPANIES INC., 31 ST JAMES AVE TENANT LLC, OMV ASSOCIATES LPS; 3P THE BEST WALLCOVERING CORP. | 703127/2018 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |

5 of 7

Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| WEWORK COMPANIES U.S. LLC | HUGO TORRES V. OMV PARK SQUARE LLC, CAPITAL PROPERTIES SERVICES LLC, WEWORK COMPANIES INC., 31 ST JAMES AVE TENANT LLC, OMV ASSOCIATES LPS; 3P THE BEST WALLCOVERING CORP. | 703127/2018 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| 4041 MACARTHUR BOULEVARD TENANT LLC | IN RE RESERVE TECH INC. | 8:23-BK-11603 | CALIFORNIA CENTRAL BANKRUPTCY COURT | MEMBER RELATED DISPUTES |
| WEWORK COMPANIES U.S. LLC | INDIGO GROUP INC.; CTO REALTY GROWTH, INC.; CT021 ACQUISITIONS II LLC V. 7300 NORTH COLLIN PARKWAY TENANT, LLC AND WEWORK COMPANIES, LLC | CAUSE NO. 429-06254-2023 | DISTRICT COURT OF TEXAS, COLLIN COUNTY | LANDLORD DISPUTE |
| WE WORK MANAGEMENT LLC | JAMES WONHOF V. WE WORK MANAGEMENT LLC | 32A-2023-00407 | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (CO) | EMPLOYEE RELATED DISPUTES |
| WE WORK MANAGEMENT LLC | JAMES WONHOF V. WE WORK MANAGEMENT LLC | R2300018451 | COLORADO CIVIL RIGHTS DIVISION | EMPLOYEE RELATED DISPUTES |
| WW BUILDCO LLC | JOHN WALSH V. TGA 730 THIRD AVENUE OWNER LLC, TIAA-CREF INVESTMENT MANAGEMENT, LLC, NUVEEN, LLC, TURNER CONSTRUCTION COMPANY, WW BUILDCO LLC | 158560/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| 315 W 36TH STREET TENANT LLC | JOSE BARCIA V. 36 LLC., WALTER & SAMUELS, INCORPORATED, UA CONSTRUCTION CORPORATION, UA BUILDERS GROUP, UA BUILDERS CORP.; 3P 315 W 36TH STREET TENANT LLC, PRECISE SKILLED CARPENTRY, LLC, SNC CONTRACTORS, INC | 152726/2018 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | JOSE LOPEZ LOJA V. 85 BROAD STREET PROPERTY OWNER LLC, 85 BROAD PROPCO LLC, BUILD BY WE LLC; 3P QCC MAINTENANCE INC., 85 BROAD TENANT LLC | 715791/2018 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WW 85 BROAD LLC | JOSE LOPEZ LOJA V. 85 BROAD STREET PROPERTY OWNER LLC, 85 BROAD PROPCO LLC, BUILD BY WE LLC; 3P QCC MAINTENANCE INC., 85 BROAD TENANT LLC | 715791/2018 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | JOSE POLANCO V. RYAN L.L.C., U.A. CONSTRUCTION CORPORATION, WEWORK COMPANIES INC.; 3P USIS ELECTRIC, INC. | 511525/2019 | SUPREME COURT OF THE STATE OF NEW YORK, KINGS COUNTY | PERSONAL INJURY |
| 18191 VON KARMAN AVENUE TENANT LLC | LAKESHORE LAND LESSEE PT LLC V. 18191 VON KARMAN AVENUE TENANT LLC; WEWORK COMPANIES LLC | 30-2023-01343929-CU-BC-CJC | SUPERIOR COURT OF THE STATE OF CALIFORNIA, ORANGE COUNTY | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | LAKESHORE LAND LESSEE PT LLC V. 18191 VON KARMAN AVENUE TENANT LLC; WEWORK COMPANIES LLC | 30-2023-01343929-CU-BC-CJC | SUPERIOR COURT OF THE STATE OF CALIFORNIA, ORANGE COUNTY | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | LEMODE PLUMBING & HEATING CORP -AGAINST- WEWORK COMPANIES LLC | CC-060159-22/QU | CIVIL COURT OF THE CITY OF NEW YORK | BREACH OF CONTRACT |
| WEWORK CANADA LP ULC | LIBERTY MARKET BUILDING INC. V. WEWORK CANADA LP ULC AND WEWORK COMPANIES LLC | CV-23-00706594-0000 | ONTARIO SUPERIOR COURT OF JUSTICE | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | LIBERTY MARKET BUILDING INC. V. WEWORK CANADA LP ULC AND WEWORK COMPANIES LLC | CV-23-00706594-0000 | ONTARIO SUPERIOR COURT OF JUSTICE | LANDLORD DISPUTE |
| WW PROJECT SWIFT DEVELOPMENT LLC | LUIS ENRIQUE PONCE CANELAS V. AMAZON.COM SERVICES LLC, WW PROJECT SWIFT DEVELOPMENT LLC, ARCHSTONE BUILDERS LLC, INFINITE CONSULTING CORP., U.S. CONCRETE INC., FERRARA BROS., LLC; 3P CAPSTONE CONTRACTING CORP., ALBA SERVICES, INC., NORDEST SERVICES LLC, WSP USA BUILDING, INC. | 156501/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | MARIA LOURDES PEREZ V WEWORK COMPANIES INC., WEWORK SPACE SERVICES, LC, CIO TERRACES, LLC, JONES LANG LASALLE AMERICAS, INC., JONES LANG LASALLE SERVICES, INC., JONES LANG LASALLE - TEXAS, INC., JONES LANG LASALLE - CENTRAL TEXAS, JONES LAND LASALLE BROKERAGE, INC. | CC-23-00728-A | DALLAS COUNTY COURT | PERSONAL INJURY |
| WEWORK SPACE SERVICES LLC | MARIA LOURDES PEREZ V WEWORK COMPANIES INC., WEWORK SPACE SERVICES, LC, CIO TERRACES, LLC, JONES LANG LASALLE AMERICAS, INC., JONES LANG LASALLE SERVICES, INC., JONES LANG LASALLE - TEXAS, INC., JONES LANG LASALLE - CENTRAL TEXAS, JONES LAND LASALLE BROKERAGE, INC. | CC-23-00728-A | DALLAS COUNTY COURT | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | MCP HUB I PROPERTY, LLC V. WEWORK COMPANIES LLC | 23CV32853 | DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO | LANDLORD DISPUTE |
| POWERED BY WE LLC | MICHAEL MILLER V. TGA 730 THIRD AVENUE OWNERS LLC, STRUCTURE TONE LLC, SIEMENS INDUSTRY INC., ADMORE AIR CONDITIONING CORP., WW BUILD CO., LLC, WE WORK CONSTRUCTION LLC, POWERED BY WE LLC, JACOBSON & COMPANY, INC.; 3P JACOBSON & COMPANY, INC., T.R. RICOTTA ELECTRIC, INC. | 706452/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WEWORK CONSTRUCTION LLC | MICHAEL MILLER V. TGA 730 THIRD AVENUE OWNERS LLC, STRUCTURE TONE LLC, SIEMENS INDUSTRY INC., ADMORE AIR CONDITIONING CORP., WW BUILD CO., LLC, WE WORK CONSTRUCTION LLC, POWERED BY WE LLC, JACOBSON & COMPANY, INC.; 3P JACOBSON & COMPANY, INC., T.R. RICOTTA ELECTRIC, INC. | 706452/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |

6 of 7

**Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation, Possible Litigation, and Administrative Actions**

| Debtor | Case Title | Case Number | Court or Agency | Nature of Case |
|---|---|---|---|---|
| WW BUILDCO LLC | MICHAEL MILLER V. TGA 730 THIRD AVENUE OWNERS LLC, STRUCTURE TONE LLC, SIEMENS INDUSTRY INC., ADMORE AIR CONDITIONING CORP., WW BUILD CO., LLC, WE WORK CONSTRUCTION LLC, POWERED BY WE LLC, JACOBSON & COMPANY, INC.; 3P JACOBSON & COMPANY, INC., T.R. RICOTTA ELECTRIC, INC. | 706452/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | MIKIE VALDEZ V. TIAA REALTY, LLC, TIAA REALTY, INC., WEWORK COMPANIES, INC., JC ELITE CONSTRUCTION SERVICES, LLC; 3P USIS ELECTRIC, INC., FREEDOM ELECTRICAL & DATA INC. | 30015/2019E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | PARKMERCED INVESTORS, LLC V. WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC. | 652094/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | BREACH OF CONTRACT |
| WEWORK INC. | REGULATORY NOTICE | N/A | UNITED STATES ATTORNEY GENERAL, SOUTHERN DISTRICT OF NEW YORK | REGULATORY |
| WW PROJECT SWIFT DEVELOPMENT LLC | RICARDO SOLORZANO V. AMAZON.COM SERVICES LLC, 424 FIFTH AVENUE LLC, ARCHSTONE BUILDERS LLC, WW PROJECT SWIFT DEVELOPMENT, LLC; 3P CAPSTONE CONTRACTING CORP., APLITE INDUSTRIES INC. | 714806/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS | PERSONAL INJURY |
| WEWORK COMPANIES U.S. LLC | ROBERT HALL V. WEWORK | 2023-4814 | SUPERIOR COURT OF THE DISTRICT OF COLUMBIA | MEMBER RELATED DISPUTES |
| WEWORK INC. | ROBERT HALL V. WEWORK | 2023-4814 | SUPERIOR COURT OF THE DISTRICT OF COLUMBIA | MEMBER RELATED DISPUTES |
| WEWORK COMPANIES U.S. LLC | SONLLY ARREDONDO V. WASSERSTEIN ENTERPRISES L.L.C., OTEK BUILDERS LLC, WW 115 W 18TH STREET LLC, WE WORK COMPANIES INC | 23131/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WW 115 W 18TH STREET LLC | SONLLY ARREDONDO V. WASSERSTEIN ENTERPRISES L.L.C., OTEK BUILDERS LLC, WW 115 W 18TH STREET LLC, WE WORK COMPANIES INC | 23131/2018E | SUPREME COURT OF THE STATE OF NEW YORK, BRONX COUNTY | PERSONAL INJURY |
| WEWORK INC. | THE LAW OFFICES OF MICHAEL S. LAMONSOFF V. WEWORK INC. | 653057/2022 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | MEMBER RELATED DISPUTES |
| WEWORK CONSTRUCTION LLC | THIRTEENTH FLOOR GROUP LLC, SUSAN C WARNOCK, ROBERT D BECKER V. VANDERGRAND PROPERTIES CO., LP, THE WE COMPANY, WEWORK COMPANIES, INC.,WEWORK REAL ESTATE, LLC, WEWORK CONSTRUCTION LLC | 154990/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | GENERAL LIABILITY |
| 3365 PIEDMONT ROAD TENANT LLC | TPL PROPERTY OWNER, L.P. V. 3365 PIEDMONT ROAD TENANT LLC; WEWORK INC.; WEWORK COMPANIES LLC | 23-C-05521-S3 | STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | TPL PROPERTY OWNER, L.P. V. 3365 PIEDMONT ROAD TENANT LLC; WEWORK INC.; WEWORK COMPANIES LLC | 23-C-05521-S3 | STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA | LANDLORD DISPUTE |
| WEWORK INC. | TPL PROPERTY OWNER, L.P. V. 3365 PIEDMONT ROAD TENANT LLC; WEWORK INC.; WEWORK COMPANIES LLC | 23-C-05521-S3 | STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA | LANDLORD DISPUTE |
| WEWORK 25 TAYLOR LLC | WARHORSE GOLDEN GATE, LLC V. WEWORK COMPANIES INC, AND WEWORK 25 TAYLOR LLC | 653197/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK 25 TAYLOR LLC | WARHORSE GOLDEN GATE, LLC V. WEWORK COMPANIES INC, AND WEWORK 25 TAYLOR LLC | 2023-02940 | NEW YORK SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | WARHORSE GOLDEN GATE, LLC V. WEWORK COMPANIES INC, AND WEWORK 25 TAYLOR LLC | 653197/2021 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | LANDLORD DISPUTE |
| WEWORK COMPANIES U.S. LLC | WARHORSE GOLDEN GATE, LLC V. WEWORK COMPANIES INC, AND WEWORK 25 TAYLOR LLC | 2023-02940 | NEW YORK SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT | LANDLORD DISPUTE |
| WEWORK CANADA LP ULC | WEWORK CANADA LP ULC V. QUADZ INC. | CASE NO. 27404/PDP | ARBITRATION UNDER RULES OF INTERNATIONAL CHAMBER OF COMMERCE (ICC) | MEMBER RELATED DISPUTES |
| WEWORK COMPANIES U.S. LLC | WEWORK COMPANIES LLC, AS SUCCESSOR IN INTEREST TO WEWORK COMPANIES INC. V. PARKMERCED HOLDINGS SUBSIDIARY LLC, PARKMERCED INVESTORS, LLC, AND "JOHN DOES" #1 THROUGH #10. | 651708/2020 | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK | EXCLUSIVITY FEE DISPUTE |

7 of 7

**<u>Exhibit B</u>**

**Draft Schedule of Assumed and Rejected Executory Contracts and Unexpired Leases**

Certain documents, or portions thereof, contained in this **<u>Exhibit B</u>** and the Plan Supplement remain subject to continued review and comment by the Debtors and the Consenting Stakeholders.  For the avoidance of doubt, the inclusion or exclusion of an Executory Contract or Unexpired Lease on the schedules that were approved for assumption or rejection by prior order of the Court, or that is listed on a pending assumption or rejection notice that has not yet been approved, is without prejudice to and does not affect such entered order or pending notice.  The rights of the Debtors are expressly reserved, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court; *provided* that if any document in this First Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

The schedule contained in this **Exhibit B**, including the "Cure Amounts" listed therein, remains subject to ongoing negotiations among the Debtors and certain interested parties in accordance with the Plan.[1]  The Debtors reserve all rights, to the extent required under the Plan, to amend, revise, or supplement this **Exhibit B**, including any "Cure Amount" listed therein, at any time in accordance with the terms of the Plan.  A proposed Cure Amount of "TBD" indicates that the applicable Cure Amount is subject to ongoing negotiations between the Debtors and the applicable counterparty.  For the avoidance of doubt, executory contracts and unexpired leases that have previously been assumed or rejected pursuant to a prior order of the Bankruptcy Court are not included in **Exhibit B**, and nothing in this First Amended Plan Supplement alters, amends, or otherwise affects any such prior assumption or rejection.

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code,[2] other than those that:  (1) are Unexpired Leases of non-residential real property that are not expressly set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases and assumed by the deadline set forth in section 365(d)(4) or any applicable Extension Order; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, which schedule shall be subject to the consent of the Required Consenting Stakeholders; (3) have previously expired or terminated pursuant to their own terms or agreement of the parties thereto, forfeiture or by operation of law; (4) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (5) any obligations of WeWork Inc. arising under contracts or leases that are not assumed; or (6) are, as of the Effective Date, the subject of (a) a motion to reject that is pending or (b) an order of the Bankruptcy Court that is not yet a Final Order.  For the avoidance of doubt, the Unexpired Leases and Executory Contracts described in subsection (1) of this paragraph will be deemed rejected pursuant to section 365 of the Bankruptcy Code.[3]

For the avoidance of doubt and notwithstanding anything to the contrary in the Plan, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case, prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, as clarified by the Extension Order.

---

[1]  The foregoing is not intended to enjoin, restrain, limit, impair, or impose any additional procedural prerequisites to the exercise of setoff or recoupment by landlords after the Effective Date under assumed Unexpired Leases pursuant to the terms of such Unexpired Leases and applicable law.

[2]  For the avoidance of doubt, unless otherwise set forth herein, all of the Debtors' Membership Agreements (as defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief* [Docket No. 6]) are assumed.

[3]  For the avoidance of doubt, the "Sell-Out Right" arising under and as defined in that certain Shareholders' Agreement by and among LATAM CO B.V., WeWork Companies (International) B.V., and SLA WW Holdco LLC, dated as of September 1, 2021 (as amended, modified, or supplemented from time to time), and any claims or causes of action related thereto, are cancelled, released, discharged, and extinguished pursuant to the Plan (including Article III and Article VIII of the Plan).

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases (in each case, including with agreed modifications as applicable) as set forth in the Plan, or the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in the Plan, in the Schedule of Rejected Executory Contracts and Unexpired Leases, or in the Schedule of Assumed Executory Contracts and Unexpired Leases (as applicable), assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date (unless approved by the Court pursuant to an earlier order). Notwithstanding anything in the Plan to the contrary, with respect to any Unexpired Lease that is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, the effective date of the rejection of any such Unexpired Lease shall be the later of (a) the date set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases (b) the date upon which the Debtors notify the affected landlord and such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that they have surrendered the premises and, as applicable, (i) turning over keys issued by the landlord, key codes, and/or security codes, if any, to the affected landlord or (ii) notifying such affected landlord or such landlord's counsel (if known to Debtors' counsel) in writing (email being sufficient) that the property has been surrendered, all WeWork-issued key cards have been disabled and, unless otherwise agreed as between the Debtors and the landlord, each affected landlord is authorized to disable all WeWork-issued key cards (including those of any members using the leased location) and the landlord may rekey the leased premises. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon assumption by the Debtors; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of the Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date in accordance with any applicable terms in the Plan, unless otherwise settled by the applicable Debtors and counterparties. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases identified in Article V.A of the Plan and in the Plan Supplement at any time through and including 45 days after the Effective Date, subject to the consent of the Required Consenting Stakeholders.

Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the

prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (a) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (b) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Reorganized Debtors under such Executory Contract or Unexpired Lease, or (c) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to the applicable Executory Contract or Unexpired Lease.  Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption or assumption and assignment thereof (subject to the other provisions of Article V.A of the Plan) shall be deemed satisfied by Confirmation.  To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party or parties to such Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, after the Confirmation Date, an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date may not be assumed by the applicable Debtor(s) unless the applicable lessor or contract counterparty has (a) consented to such assumption, (b) objected to the rejection of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be rejected and should instead be assumed (and such objection remains outstanding), or (c) in the case of Unexpired Leases, consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's prior consent, the "Deferred Deadline"), in which case for purposes of clause (c) the applicable Debtor(s) shall have until the Deferred Deadline to assume such Unexpired Lease, subject to the applicable lessor's right to object to such assumption, or such Unexpired Lease shall be deemed rejected.  For any Executory Contract or Unexpired Lease assumed pursuant to this paragraph, all Cure Obligations shall be satisfied on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to the Cure Obligation, in which case such dispute shall be addressed in accordance with Article V.D.

For the avoidance of doubt, at any time prior to the applicable deadlines set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, and as the same may be extended, the Debtors may reject any Executory Contract or Unexpired Lease pursuant to a separate motion Filed with the Bankruptcy Court.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an

election, either through the Filing of a motion or identification in the Plan Supplement, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Combined Hearing (to the extent not resolved by the parties prior to the Combined Hearing).

If the effective date of any rejection of an Executory Contract or Unexpired Lease is after the Effective Date pursuant to the terms in the Plan, the Reorganized Debtors shall serve a notice on the affected counterparty setting forth the deadline for Filing any Claims arising from such rejection.

Further, for the avoidance of doubt, the inclusion of an Executory Contract and/or Unexpired Lease on this **Exhibit B** does not constitute an admission as to the executory or non-executory nature of such Executory Contract or Unexpired Lease or as to the existence or validity of any Claims held by the counterparty or counterparties to such Executory Contract or Unexpired Lease.

## Exhibit B-1

**Draft Schedule of Rejected
Executory Contracts and Unexpired Leases**

**Schedule of Rejected Non-Lease Executory Contracts**

| # | Debtor Legal Entity | Contract to be Rejected[1] | Rejection Counterparty | Counterparty Address | Scheduled Rejection Date |
|---|---|---|---|---|---|
| 1 | We Work Management LLC | Services Agreement | 1Life Healthcare Inc | ATTN: Legal Department, One Embarcadero, 19th Floor, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| 2 | WeWork Services LLC | Services Agreement | 1Life Healthcare, Inc. | 115 W. 18th Street, 4th Floor, New York, NY 10011, UNITED STATES | 11/7/2023 |
| 3 | We Work Management LLC | Marketing Agreement | 1Life Healthcare, Inc. | One Embarcadero Center, 19th Floor, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| 4 | Common Desk Operations LLC | Unexpired Lease | 3200 East Camelback Road, LP | Attn: Charles Jerkovich, 51 W 3rd St, Suite 105, Tempe, AZ 85281 | TBD |
| 5 | We Work Management LLC, et. al. | Omnibus Agreement | Adam Neumann, et. al. | Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi and Jeramy D. Webb | 11/7/2023 |
| 6 | WeWork Companies U.S. LLC | Amended and Restated Indemnification Agreement | Adam Neumann, et. al. | Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi and Jeramy D. Webb | 11/7/2023 |
| 7 | Common Desk Operations LLC | Unexpired Lease | ADMIRAL 2R  ACQUISITIONS LLC | Attn: Andrew Stone, 52 Vanderbilt Avenue, Suite 1000, New York, NY 10017 | TBD |
| 8 | We Work Management LLC | Master Service Agreement | Andrade Cleaning Services | 6214 Ocean Jasper Dr., Bakersfield, CA 93313, UNITED STATES | 11/7/2023 |
| 9 | Common Desk Operations LLC | Unexpired Lease | AP The Hill Owner, LLC | 8041 Walnut Hill Lane, Dallas, TX, 75231 United States | TBD |
| 10 | WW BuildCo LLC | Construction Agreement | Apex Facility Resources, Inc. | 20219 87th Avenue S, Kent, WA 98031, UNITED STATES | 11/7/2023 |
| 11 | We Work Management LLC | Consulting Agreement | Arcgate | G1-11, I.T. Park, M.I.A., Rajasthan, INDIA | 11/7/2023 |
| 12 | We Work Management LLC | Purchase and Sale Agreement | Avalara, Inc. | 255 South King Street, Suite 1200, Seattle, WA 98104 | 4/25/2024 |
| 13 | WeWork Canada LP ULC | Services Agreement | Beer Worx Inc | 5826 Burbank Road, SE Calgary, AB T2H 1Z3, CANADA | 11/7/2023 |
| 14 | We Work Management LLC | Services Agreement | Burpy, Inc | 20115 Falcon Chase Court, Spring, TX 77379, UNITED STATES | 11/7/2023 |
| 15 | We Work Management LLC | Master Service Agreement | Cafe Novo Coffee Roasters Llc | Attn: Jake Brodsky, Co-Founder & President, 3008 Larimer Street, Denver, CO 80205, UNITED STATES | 11/7/2023 |
| 16 | We Work Management LLC | Services Agreement | Compass Group USA, INC. | 2400 Yorkmont Road, Charlotte, NC 28217, UNITED STATES | 6/10/2024 |
| 17 | WeWork Companies U.S. LLC | Services Agreement | Conductor Founders Inc. (DBA Conductor LLC) | 2 Park Avenue, 15th Floor, New York, NY 10016, UNITED STATES | 5/10/2024 |
| 18 | We Work Management LLC | Subscription Agreement and Order Form | Conductor Founders Inc. (DBA Conductor LLC) | 2 Park Avenue, 15th Floor, New York, NY 10016, UNITED STATES | 5/10/2024 |
| 19 | The We Company MC LLC | Amended and Restated Asset Purchase Agreement | Core Fabrication Corp. | 500 Old Country Road, Garden City, New York 11530 | 11/7/2023 |
| 20 | We Work Management LLC | Master Service Agreement | Core Fabrication Corp. | 500 Old Country Road, Garden City, New York 11530 | 11/7/2023 |
| 21 | The We Company MC LLC | Assignment and Assumption Agreement | Core Fabrication Corp. | 500 Old Country Road, Garden City, New York 11530 | 11/7/2023 |
| 22 | The We Company MC LLC | Assignment of Specified Agreements and Intellectual Property Agreement | Core Fabrication Corp. | 500 Old Country Road, Garden City, New York 11530 | 11/7/2023 |
| 23 | The We Company MC LLC | Security Agreement | Core Fabrication Corp. | 500 Old Country Road, Garden City, New York 11530 | 11/7/2023 |
| 24 | Common Desk Operations LLC | Unexpired Lease | Crabtree Terrace Holdings, LLC | Attn:  Brian Adams, 1201 Wilson Blvd, Suite 2310, Arlington, VA  22209 | TBD |
| 25 | We Work Management LLC | Services Agreement | Craft Beer Cellar | Attn: Suzanne Schalow, 51 Leonard Street, Belmont, MA 02478, UNITED STATES | 11/7/2023 |
| 26 | We Work Management LLC | Services Agreement | Data2Logistics, LLC | 12631 Westlinks Drive, Fort Myers, FL 33913-8627, UNITED STATES | 11/7/2023 |
| 27 | 110 Wall Manager LLC | Master Service Agreement | Delta Connects, Inc. | 10 Centre Drive, Monroe, NJ 08831, UNITED STATES | 11/7/2023 |
| 28 | We Work Management LLC | Service Order (1/1/2021 through 12/31/2022) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| 29 | We Work Management LLC | Service Order for Corporate Phone Lines (6/1/2023 through 5/31/2026) | Dialpad, Inc. | 3001 Bishop Drive, Suite 400A, San Ramon, CA 94583 | 6/10/2024 |
| 30 | Common Desk Operations LLC | Unexpired Lease | EaDo Common Desk LLC | Attn: Matt Donowho, Member and Manager, 2118 Lamar Street, Suite 105, Houston, TX 77003 | TBD |
| 31 | Common Desk Operations LLC | Unexpired Lease | East End CD, LLC | C/O SLI Capital, Attn: Bryan Kane, 4242 Six Forks Road, Suite 820, Raleigh, NC 27609 | TBD |
| 32 | We Work Management LLC | Settlement Agreement and Release | Elite Glass Fabrication LLC | 10 Basin Drive, Suite 120, Kearny, NJ 07032 | 11/7/2023 |
| 33 | We Work Management LLC | Consulting Agreement | Enterprise Engineering, Inc. | 1 State Street Plaza, 10th Floor, New York, NY 10004, UNITED STATES | 11/7/2023 |
| 34 | We Work Management LLC | Professional Services Statement of Work | Experian Marketing Solutions, LLC | 475 Anton Blvd, Costa Mesa, CA 92626 | 11/7/2023 |
| 35 | We Work Management LLC | Order Form and Change Order | Experian Marketing Solutions, LLC | 475 Anton Blvd, Costa Mesa, CA 92626 | 11/7/2023 |
| 36 | We Work Management LLC | Sponsorship Agreement | Haiti Coffee Co | Attn: David Pierre-Louis, Director of Operations, 420 S. Massachusetts St, Seattle, WA 98134, UNITED STATES | 11/7/2023 |
| 37 | We Work Management LLC | Master Service Agreement | Haiti Coffee Co | Attn: David Pierre-Louis, Director of Operations, 420 S. Massachusetts St, Seattle, WA 98134, UNITED STATES | 11/7/2023 |

| # | Debtor Legal Entity | Contract to be Rejected[1] | Rejection Counterparty | Counterparty Address | Scheduled Rejection Date |
|---|---|---|---|---|---|
| 38 | Common Desk Operations LLC | Unexpired Lease | Hall 3201 Coworking LLC | Attn: Larry Harris, 2323 Ross Avenue, Suite 200, Dallas, TX 75201 | TBD |
| 39 | We Work Management LLC | Master Service Agreement | Harvard Maintenance Inc | Attn: Jim Postelnick, General Manager, 135 S LaSalle St, Suite 2650, Chicago, IL 60603, UNITED STATES | 11/7/2023 |
| 40 | WeWork Canada LP ULC | Services Agreement | Hoochy 'Booch Kombucha Inc. | 400 Industrial Avenue, Vancouver, BC V6A 2P3, CANADA | 11/7/2023 |
| 41 | WeWork Companies U.S. LLC | Consulting Agreement | Inbar Edut | inbaredut@gmail.com | 11/7/2023 |
| 42 | We Work Management LLC | Consulting Agreement | Inbar Edut | inbaredut@gmail.com | 11/7/2023 |
| 43 | We Work Management LLC | Consulting Agreement | Inbar Edut | inbaredut@gmail.com | 11/7/2023 |
| 44 | 3003 Woodbridge Ave Tenant LLC | Assignment and Assumption of Lease with Consent | Iron Mountain Data Centers, LLC | One Federal Street, 7th Floor, Boston, MA 02110 | 11/7/2023 |
| 45 | 3003 Woodbridge Ave Tenant LLC | Office / Warehouse Lease | Iron Mountain Data Centers, LLC | One Federal Street, 7th Floor, Boston, MA 02110 | 11/7/2023 |
| 46 | We Work Management LLC | Purchase and Sale Agreement | Jumio Corporation | 395 Page Mill Road, suite 150, palo alto, CA 94306, UNITED STATES | 11/7/2023 |
| 47 | We Work Management LLC | Services Agreement | Jumio Corporation | 268 Lambert Avenue, Palo Alto, CA 94306, UNITED STATES | 11/7/2023 |
| 48 | We Work Management LLC | Consulting Agreement | KBA Lease Services, Inc. | 1000 U.S. Highway 9, Woodbridge, NJ 07095, UNITED STATES | 11/7/2023 |
| 49 | We Work Management LLC | Master Service Agreement | King Draft Inc. | Attn: Alvis Salvador, President, 85-21 60th Drive, #2, Middle Village, NY 11379, UNITED STATES | 11/7/2023 |
| 50 | We Work Management LLC | Consulting Agreement | Lagarsoft SRL | Juan M. Espinosa 1386, Montevideo, URUGUAY | 11/7/2023 |
| 51 | WeWork Companies U.S. LLC | Letter Agreement | Lincoln Partners Advisors LLC | 110 North Wacker Drive, Floor 51, Chicago, IL 60606, UNITED STATES | 11/7/2023 |
| 52 | We Work Management LLC | Order Form - Standard SPP (Start Date of 1/1/24) | Mapbox, Inc. | 1133 15th St NW, Suite 825, Washington DC, 20005 | 4/1/2024 |
| 53 | We Work Management LLC | Service Contractor Agreement | Metropolitan Cleaning, LLC | 142 W 75th Street; 15th Floor; New York, NY 10019; Attn: Kyle Bunce | 4/18/2023 |
| 54 | 49 West 27th Street HQ LLC | Master Service Agreement | Narrow Security Inc | 469 Seventh Ave, STE 1248, New York, NY 10018, UNITED STATES | 11/7/2023 |
| 55 | We Work Management LLC | Statement of Work (BYOD Service) | Nfinity Electronic | 3312 Rosedale St, Ste 202C, Gig Harbor, WA 98335, UNITED STATES | 11/7/2023 |
| 56 | We Work Management LLC | Services Agreement | Nurturing Expressions, LLC | 14900 Interurban Ave S, Ste 201, Tukwila, WA 98168, UNITED STATES | 11/7/2023 |
| 57 | We Work Management LLC | Master Service Agreement | Pacific Coast Fruit Company | Attn: Mark Brooks, Food Service and Business Development Manager, 7250 S 228th Street, Kent, WA 98032 | 11/7/2023 |
| 58 | We Work Management LLC | Services Agreement | Professional Marketing Services Inc | 300 Long Beach Blvd, Suite 6, Long Beach, CA 90801, UNITED STATES | 6/10/2024 |
| 59 | We Work Management LLC | Master Service Agreement | Professional Marketing Services Inc | Attn: Erica Sylvia, Customer Manager, 300 Long Beach Boulevard, Stratford, CT 06615, UNITED STATES | 6/10/2024 |
| 60 | We Work Management LLC | Services Agreement | REALTIMEBOARD INC | ATTN: Legal Department, 201 Spear Street, Suite 1100, San Francisco, CA 94105, UNITED STATES | 4/30/2024 |
| 61 | 45 West 18th Street Tenant LLC | General Obligations Agreement | RXR 620 TENANT LLC | 28 LIBERTY STREET, NEW YORK, NY, 10005 | 4/11/2024 |
| 62 | We Work Management LLC | Statement of Work for Implementation Services of Tableau Online | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd Floor, San Francisco, CA 94105, UNITED STATES | 11/7/2023 |
| 63 | We Work Management LLC | Statement of Work #001-2021 | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd Floor, San Francisco, CA 94105, UNITED STATES | 11/7/2023 |
| 64 | We Work Management LLC | Marketing Agreement | Tampon Tribe | 929 Colorado Avenue, Santa Monica, CA 90401, UNITED STATES | 11/7/2023 |
| 65 | We Work Management LLC | Pricing Agreement | Tampon Tribe | ATTN: Jennifer Eden, 929 Colorado Avenue, Santa Monica, CA 90401, UNITED STATES | 11/7/2023 |
| 66 | WW BuildCo LLC | Master Service Agreement | TeamLINX LLP | 9900 E. 51st Avenue, Denver, CO 80238, UNITED STATES | 11/7/2023 |
| 67 | WeWork Companies U.S. LLC | Purchase and Sale Agreement for RIA Checkpoint | Thomson Reuters (Tax and Accounting) Inc | 2395 Midway Rd., Carrollton, TX 75006, UNITED STATES | 11/7/2023 |
| 68 | We Work Management LLC | Order Form Q-01089803 | Thomson Reuters (Tax and Accounting) Inc | 2395 Midway Rd., Carrollton, TX 75006, UNITED STATES | 11/7/2023 |
| 69 | We Work Management LLC | Master Service Agreement | Tower Cleaning Plus (dba Tower Water) | ATTN: Thomas Hardy, Director of Operations, 5 Shirey Avenue, Somerset, NJ 08873, UNITED STATES | 11/7/2023 |
| 70 | Common Desk Operations LLC | Vendor Supply Agreements | TXU Energy Retail Company LLC | 6555 Sierra Drive 1-W-1, Irving, TX 75039, UNITED STATES | 11/7/2023 |
| 71 | Common Desk West 7th, LLC | Vendor Supply Agreements | TXU Energy Retail Company LLC | 6555 Sierra Drive 1-W-1, Irving, TX 75039, UNITED STATES | 11/7/2023 |
| 72 | We Work Management LLC | Master Service Agreement | Universal Protection Service LP ( DBA  Allied Universal Security Services) | Attn: Edward Childress, Branch Manager, 9570 SW Barbur Blvd, Suite 212, Portland, OR 97219, UNITED STATES | 11/7/2023 |
| 73 | WW BuildCo LLC | Consulting Agreement | VIRSIG LLC | 48-02 25th Avenue, #305, Astoria, NY 11103, UNITED STATES | 11/7/2023 |
| 74 | We Work Management LLC | Data Processing Agreement | VIRSIG LLC | 95 Seaview Blvd, Suite 201, Port Washington, NY 11050, UNITED STATES | 11/7/2023 |
| 75 | We Work Management LLC | Purchase and Sale Agreement | VIRSIG LLC | 95 Seaview Blvd, Suite 201, Port Washington, NY 11050, UNITED STATES | 11/7/2023 |

| # | Debtor Legal Entity | Contract to be Rejected[1] | Rejection Counterparty | Counterparty Address | Scheduled Rejection Date |
|---|---|---|---|---|---|
| 76 | We Work Management LLC | Rental Agreement | Wizard Studios North Inc | 305 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |
| 77 | WeWork Companies U.S. LLC | Master Service Agreement | Wizard Studios North, Inc. | Attn: Matthew Saravay, President, 205 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |
| 78 | We Work Management LLC | Services Agreement | Wizard Studios North, Inc. | 305 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |

1. Unless otherwise indicated, any active related amendments or addendums, as well as any outstanding orders governed by the contracts listed, are also deemed to be rejected

**DRAFT - Schedule of Rejected Unexpired Leases**

| # | Title/Description of Lease | Debtor Legal Entity | Property Address | Landlord / Counterparty | Landlord / Counterparty Address | Scheduled Rejection Date | Abandoned Personal Property | Third Party Secured Interest |
|---|---|---|---|---|---|---|---|---|
| 1 | Unexpired Lease | One Gotham Center Tenant LLC | 28-07 Jackson Ave Long Island City, NY 11101 | LIC Site B-1 Owner, L.L.C. | 45 Rockefeller Plaza, New York, NY, 10111 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 2 | Unexpired Lease | 725 Ponce De Leon Ave NE Tenant LLC | 725 Ponce De Leon Ave NE Atlanta, GA 30306 | Cousins 725 Ponce LLC | PO Box 198349, Atlanta, GA, 30384-8349 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 3 | Unexpired Lease | 500 11th Ave North Tenant LLC | 500 11th Ave North Floor 4 Nashville, TN 37203 | Capitol View JV-E, a Tennessee general partnership | 720 East Wisconsin Avenue Milwaukee, WI 53202 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 4 | Unexpired Lease | WW 210 N Green LLC | 220 N Green St Chicago, IL 60607 | Pea Green Owner LLC | 20 N Michigan Ave, Suite 400, Chicago, IL, 60602 | TBD | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 5 | Unexpired Lease | WeWork Canada LP ULC | 595 Burrard Street Suite 1600 Vancouver, BC V7X 1L3 | BH Centre Head Corp. | 3110 - 1055 Dunsmuir Street, PO Box 49305, Vancouver, British Columbia, V7X 1L3 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 6 | Unexpired Lease | 609 Greenwich Street Tenant LLC | 609 Greenwich Street New York, NY 10017 | LF Greenwich LLC | 580 Fifth Avenue, 32nd Floor, New York, NY, 10036 | TBD | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |

## **Exhibit B-1a**

**Redline to Previously Filed Draft Schedule of
Rejected Executory Contracts and Unexpired Leases**

**Schedule of Rejected Non-Lease Executory Contracts**

| # | Debtor Legal Entity | Contract to be Rejected[1] | Rejection Counterparty | Counterparty Address | Scheduled Rejection Date |
|---|---|---|---|---|---|
| 1 | We Work Management LLC | Services Agreement | 1Life Healthcare Inc | ATTN: Legal Department, One Embarcadero, 19th Floor, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| 2 | WeWork Services LLC | Services Agreement | 1Life Healthcare, Inc. | 115 W. 18th Street, 4th Floor, New York, NY 10011, UNITED STATES | 11/7/2023 |
| 3 | We Work Management LLC | Marketing Agreement | 1Life Healthcare, Inc. | One Embarcadero Center, 19th Floor, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| 4 | Common Desk Operations LLC | Unexpired Lease | 3200 East Camelback Road, LP | Attn: Charles Jerkovich, 51 W 3rd St, Suite 105, Tempe, AZ 85281 | TBD |
| 5 | We Work Management LLC, et al. | Omnibus Agreement | Adam Neumann, et. al. | Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi and Jeramy D. Webb | 11/7/2023 |
| 6 | WeWork Companies U.S. LLC | Amended and Restated Indemnification Agreement | Adam Neumann, et. al. | Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi and Jeramy D. Webb | 11/7/2023 |
| 7 | Common Desk Operations LLC | Unexpired Lease | ADMIRAL 2R ACQUISITIONS LLC | Attn: Andrew Stone, 52 Vanderbilt Avenue, Suite 1000, New York, NY 10017 | TBD |
| 8 | We Work Management LLC | Master Service Agreement | Andrade Cleaning Services | 6214 Ocean Jasper Dr., Bakersfield, CA 93313, UNITED STATES | 11/7/2023 |
| 9 | Common Desk Operations LLC | Unexpired Lease | AP The Hill Owner, LLC | 8041 Walnut Hill Lane, Dallas, TX, 75231 United States | TBD |
| 10 | WW BuildCo LLC | Construction Agreement | Apex Facility Resources, Inc. | 20219 87th Avenue S, Kent, WA 98031, UNITED STATES | 11/7/2023 |
| 11 | We Work Management LLC | Consulting Agreement | Arcgate | G1-11, I.T. Park, M.I.A., Rajasthan, INDIA | 11/7/2023 |
| 12 | We Work Management LLC | Purchase and Sale Agreement | Avalara, Inc. | 255 South King Street, Suite 1200, Seattle, WA 98104 | 4/25/2024 |
| 13 | WeWork Canada LP ULC | Services Agreement | Beer Worx Inc | 5826 Burbank Road, SE Calgary, AB T2H 1Z3, CANADA | 11/7/2023 |
| 14 | We Work Management LLC | Services Agreement | Burpy, Inc | 20115 Falcon Chase Court, Spring, TX 77379, UNITED STATES | 11/7/2023 |
| 15 | We Work Management LLC | Master Service Agreement | Cafe Novo Coffee Roasters Llc | Attn: Jake Brodsky, Co-Founder & President, 3008 Larimer Street, Denver, CO 80205, UNITED STATES | 11/7/2023 |
| 16 | We Work Management LLC | Services Agreement | Compass Group USA, INC. | 2400 Yorkmont Road, Charlotte, NC 28217, UNITED STATES | 6/10/2024 |
| 17 | WeWork Companies U.S. LLC | Services Agreement | Conductor Founders Inc. (DBA Conductor LLC) | 2 Park Avenue, 15th Floor, New York, NY 10016, UNITED STATES | 5/10/2024 |
| 18 | We Work Management LLC | Subscription Agreement and Order Form | Conductor Founders Inc. (DBA Conductor LLC) | 2 Park Avenue, 15th Floor, New York, NY 10016, UNITED STATES | 5/10/2024 |
| **19** | **The We Company MC LLC** | **Amended and Restated Asset Purchase Agreement** | **Core Fabrication Corp.** | **500 Old Country Road, Garden City, New York 11530** | **11/7/2023** |
| **20** | **We Work Management LLC** | **Master Service Agreement** | **Core Fabrication Corp.** | **500 Old Country Road, Garden City, New York 11530** | **11/7/2023** |
| **21** | **The We Company MC LLC** | **Assignment and Assumption Agreement** | **Core Fabrication Corp.** | **500 Old Country Road, Garden City, New York 11530** | **11/7/2023** |
| **22** | **The We Company MC LLC** | **Assignment of Specified Agreements and Intellectual Property Agreement** | **Core Fabrication Corp.** | **500 Old Country Road, Garden City, New York 11530** | **11/7/2023** |
| **23** | **The We Company MC LLC** | **Security Agreement** | **Core Fabrication Corp.** | **500 Old Country Road, Garden City, New York 11530** | **11/7/2023** |
| ~~19~~ 24 | Common Desk Operations LLC | Unexpired Lease | Crabtree Terrace Holdings, LLC | Attn: Brian Adams, 1201 Wilson Blvd, Suite 2310, Arlington, VA 22209 | TBD |
| ~~20~~ 25 | We Work Management LLC | Services Agreement | Craft Beer Cellar | Attn: Suzanne Schalow, 51 Leonard Street, Belmont, MA 02478, UNITED STATES | 11/7/2023 |
| ~~21~~ 26 | We Work Management LLC | Services Agreement | Data2Logistics, LLC | 12631 Westlinks Drive, Fort Myers, FL 33913-8627, UNITED STATES | 11/7/2023 |
| ~~22~~ 27 | 110 Wall Manager LLC | Master Service Agreement | Delta Connects, Inc. | 10 Centre Drive, Monroe, NJ 08831, UNITED STATES | 11/7/2023 |
| ~~23~~ 28 | We Work Management LLC | Service Order (1/1/2021 through 12/31/2022) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | 11/7/2023 |
| ~~24~~ 29 | We Work Management LLC | Service Order for Corporate Phone Lines (6/1/2023 through 5/31/2026) | Dialpad, Inc. | 3001 Bishop Drive, Suite 400A, San Ramon, CA 94583 | 6/10/2024 |
| ~~25~~ 30 | Common Desk Operations LLC | Unexpired Lease | EaDo Common Desk LLC | Attn: Matt Donowho, Member and Manager, 2118 Lamar Street, Suite 105, Houston, TX 77003 | TBD |
| ~~26~~ 31 | Common Desk Operations LLC | Unexpired Lease | East End CD, LLC | C/O SLI Capital, Attn: Bryan Kane, 4242 Six Forks Road, Suite 820, Raleigh, NC 27609 | TBD |
| **32** | **We Work Management LLC** | **Settlement Agreement and Release** | **Elite Glass Fabrication LLC** | **10 Basin Drive, Suite 120, Kearny, NJ 07032** | **11/7/2023** |
| ~~27~~ 33 | We Work Management LLC | Consulting Agreement | Enterprise Engineering, Inc. | 1 State Street Plaza, 10th Floor, New York, NY 10004, UNITED STATES | 11/7/2023 |
| ~~28~~ 34 | We Work Management LLC | Professional Services Statement of Work | Experian Marketing Solutions, LLC | 475 Anton Blvd, Costa Mesa, CA 92626 | 11/7/2023 |
| ~~29~~ 35 | We Work Management LLC | Order Form and Change Order | Experian Marketing Solutions, LLC | 475 Anton Blvd, Costa Mesa, CA 92626 | 11/7/2023 |
| ~~30~~ 36 | We Work Management LLC | Sponsorship Agreement | Haiti Coffee Co | Attn: David Pierre-Louis, Director of Operations, 420 S. Massachusetts St, Seattle, WA 98134, UNITED STATES | 11/7/2023 |
| ~~31~~ 37 | We Work Management LLC | Master Service Agreement | Haiti Coffee Co | Attn: David Pierre-Louis, Director of Operations, 420 S. Massachusetts St, Seattle, WA 98134, UNITED STATES | 11/7/2023 |
| ~~32~~ | Common Desk Operations LLC | Unexpired Lease | Hall 3201 Coworking LLC | Attn: Larry Harris, 2323 Ross Avenue, Suite 200, Dallas, TX | TBD |

| # | Entity | Agreement | Counterparty | Address | Date |
|---|---|---|---|---|---|
| | | | | 75201 | |
| 33 | We Work Management LLC | Master Service Agreement | Harvard Maintenance Inc | Attn: Jim Postelnick, General Manager, 135 S LaSalle St, Suite 2650, Chicago, IL 60603, UNITED STATES | 11/7/2023 |
| 34 | WeWork Canada LP ULC | Services Agreement | Hoochy 'Booch Kombucha Inc. | 400 Industrial Avenue, Vancouver, BC V6A 2P3, CANADA | 11/7/2023 |
| 35 | WeWork Companies U.S. LLC | Consulting Agreement | Inbar Edut | inbaredut@gmail.com | 11/7/2023 |
| **42** | **We Work Management LLC** | **Consulting Agreement** | **Inbar Edut** | **inbaredut@gmail.com** | **11/7/2023** |
| 36 | We Work Management LLC | Consulting Agreement | Inbar Edut | inbaredut@gmail.com | 11/7/2023 |
| **44** | **3003 Woodbridge Ave Tenant LLC** | **Assignment and Assumption of Lease with Consent** | **Iron Mountain Data Centers, LLC** | **One Federal Street, 7th Floor, Boston, MA 02110** | **11/7/2023** |
| **45** | **3003 Woodbridge Ave Tenant LLC** | **Office / Warehouse Lease** | **Iron Mountain Data Centers, LLC** | **One Federal Street, 7th Floor, Boston, MA 02110** | **11/7/2023** |
| ~~37~~ | ~~We Work Management LLC~~ | ~~Consulting Agreement~~ | ~~Inbar Edut~~ | ~~inbaredut@gmail.com~~ | ~~11/7/2023~~ |
| 38 | We Work Management LLC | Purchase and Sale Agreement | Jumio Corporation | 395 Page Mill Road, suite 150, palo alto, CA 94306, UNITED STATES | 11/7/2023 |
| 39 | We Work Management LLC | Services Agreement | Jumio Corporation | 268 Lambert Avenue, Palo Alto, CA 94306, UNITED STATES | 11/7/2023 |
| 40 | We Work Management LLC | Consulting Agreement | KBA Lease Services, Inc. | 1000 U.S. Highway 9, Woodbridge, NJ 07095, UNITED STATES | 11/7/2023 |
| 41 | We Work Management LLC | Master Service Agreement | King Draft Inc. | Attn: Alvis Salvador, President, 85-21 60th Drive, #2, Middle Village, NY 11379, UNITED STATES | 11/7/2023 |
| 42 | We Work Management LLC | Consulting Agreement | Lagarsoft SRL | Juan M. Espinosa 1386, Montevideo, URUGUAY | 11/7/2023 |
| 43 | WeWork Companies U.S. LLC | Letter Agreement | Lincoln Partners Advisors LLC | 110 North Wacker Drive, Floor 51, Chicago, IL 60606, UNITED STATES | 11/7/2023 |
| 44 | We Work Management LLC | Order Form - Standard SPP (Start Date of 1/1/24) | Mapbox, Inc. | 1133 15th St NW, Suite 825, Washington DC, 20005 | 4/1/2024 |
| 45 | We Work Management LLC | Service Contractor Agreement | Metropolitan Cleaning, LLC | 142 W 57th Street; 15th Floor; New York, NY 10019; Attn: Kyle Bunce | 4/18/2023 |
| 46 | 49 West 27th Street HQ LLC | Master Service Agreement | Narrow Security Inc | 469 Seventh Ave, STE 1248, New York, NY 10018, UNITED STATES | 11/7/2023 |
| 47 | We Work Management LLC | Statement of Work (BYOD Service) | Nfinity Global Inc. | 3312 Rosedale St, Ste 202C, Gig Harbor, WA 98335, UNITED STATES | 11/7/2023 |
| 48 | We Work Management LLC | Master Service Agreement | Nurturing Expressions, LLC | 14900 Interurban Ave S, Ste 201, Tukwila, WA 98168, UNITED STATES | 11/7/2023 |
| 49 | We Work Management LLC | Master Service Agreement | Pacific Coast Fruit Company | Attn: Mark Brooks, Food Service and Business Development Manager, 7250 S 228th Street, Kent, WA 98032 | 11/7/2023 |
| 50 | We Work Management LLC | Services Agreement | Professional Marketing Services Inc | 300 Long Beach Blvd, Suite 6, Long Beach, CA 90801, UNITED STATES | 6/10/2024 |
| 51 | We Work Management LLC | Master Service Agreement | Professional Marketing Services Inc | Attn: Erica Sylvia, Customer Manager, 300 Long Beach Boulevard, Stratford, CT 06615, UNITED STATES | 6/10/2024 |
| 52 | We Work Management LLC | Services Agreement | REALTIMEBOARD INC | ATTN: Legal Department, 201 Spear Street, Suite 1100, San Francisco, CA 94105, UNITED STATES | 4/30/2024 |
| 53 | 45 West 18th Street Tenant LLC | General Obligations Agreement | RXR 620 TENANT LLC | 28 LIBERTY STREET, NEW YORK, NY, 10005 | **4/11/2024** |
| 54 | We Work Management LLC | Statement of Work for Implementation Services of Tableau Online | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd Floor, San Francisco, CA 94105, UNITED STATES | 11/7/2023 |
| 55 | We Work Management LLC | Statement of Work #001-2021 | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd Floor, San Francisco, CA 94105, UNITED STATES | 11/7/2023 |
| 56 | We Work Management LLC | Marketing Agreement | Tampon Tribe | 929 Colorado Avenue, Santa Monica, CA 90401, UNITED STATES | 11/7/2023 |
| 57 | We Work Management LLC | Pricing Agreement | Tampon Tribe | ATTN: Jennifer Eden, 929 Colorado Avenue, Santa Monica, CA 90401, UNITED STATES | 11/7/2023 |
| 58 | WW BuildCo LLC | Master Service Agreement | TeamLINX LLP | 9900 E. 51st Avenue, Denver, CO 80238, UNITED STATES | 11/7/2023 |
| 59 | WeWork Companies U.S. LLC | Purchase and Sale Agreement for RIA Checkpoint | Thomson Reuters (Tax and Accounting) Inc | 2395 Midway Rd., Carrollton, TX 75006, UNITED STATES | 11/7/2023 |
| 60 | We Work Management LLC | Order Form Q-01089803 | Thomson Reuters (Tax and Accounting) Inc | 2395 Midway Rd., Carrollton, TX 75006, UNITED STATES | 11/7/2023 |
| 61 | We Work Management LLC | Master Service Agreement | Tower Cleaning Plus (dba Tower Water) | ATTN: Thomas Hardy, Director of Operations, 5 Shirey Avenue, Somerset, NJ 08873, UNITED STATES | 11/7/2023 |
| 62 | Common Desk Operations LLC | Vendor Supply Agreements | TXU Energy Retail Company LLC | 6555 Sierra Drive 1-W-1, Irving, TX 75039, UNITED STATES | 11/7/2023 |
| 63 | Common Desk West 7th, LLC | Vendor Supply Agreements | TXU Energy Retail Company LLC | 6555 Sierra Drive 1-W-1, Irving, TX 75039, UNITED STATES | 11/7/2023 |
| 64 | We Work Management LLC | Master Service Agreement | Universal Protection Service LP ( DBA Allied Universal Security Services) | Attn: Edward Childress, Branch Manager, 9570 SW Barbur Blvd, Suite 212, Portland, OR 97219, UNITED STATES | 11/7/2023 |

| 65 | WW BuildCo LLC | Consulting Agreement | VIRSIG LLC | 48-02 25th Avenue, #305, Astoria, NY 11103, UNITED STATES | 11/7/2023 |
| 73 | | | | | |
| 66 | We Work Management LLC | Data Processing Agreement | VIRSIG LLC | 95 Seaview Blvd, Suite 201, Port Washington, NY 11050, UNITED STATES | 11/7/2023 |
| 74 | | | | | |
| 67 | We Work Management LLC | Purchase and Sale Agreement | VIRSIG LLC | 95 Seaview Blvd, Suite 201, Port Washington, NY 11050, UNITED STATES | 11/7/2023 |
| 75 | | | | | |
| 68 | We Work Management LLC | Rental Agreement | Wizard Studios North Inc | 305 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |
| 76 | | | | | |
| 69 | WeWork Companies U.S. LLC | Master Service Agreement | Wizard Studios North, Inc. | Attn: Matthew Saravay, President, 205 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |
| 77 | | | | | |
| 70 | We Work Management LLC | Services Agreement | Wizard Studios North, Inc. | 305 Ten Eyck Street, Brooklyn, NY 11206, UNITED STATES | 11/7/2023 |
| 78 | | | | | |

1. Unless otherwise indicated, any active related amendments or addendums, as well as any outstanding orders governed by the contracts listed, are also deemed to be rejected

**DRAFT - Schedule of Rejected Unexpired Leases**

| # | Title/Description of Lease | Debtor Legal Entity | Property Address | Landlord / Counterparty | Landlord / Counterparty Address | Scheduled Rejection Date | Abandoned Personal Property | Third Party Secured Interest |
|---|---|---|---|---|---|---|---|---|
| 1 | Unexpired Lease | One Gotham Center Tenant LLC | 28-07 Jackson Ave Long Island City, NY 11101 | LIC Site B-1 Owner, L.L.C. | 45 Rockefeller Plaza, New York, NY, 10111 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 2 | Unexpired Lease | 725 Ponce De Leon Ave NE Tenant LLC | 725 Ponce De Leon Ave NE Atlanta, GA 30306 | Cousins 725 Ponce LLC | PO Box 198349, Atlanta, GA, 30384-8349 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 3 | Unexpired Lease | 500 11th Ave North Tenant LLC | 500 11th Ave North Floor 4 Nashville, TN 37203 | Capitol View JV-E, a Tennessee general partnership | 720 East Wisconsin Avenue Milwaukee, WI 53202 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 4 | Unexpired Lease | WW 210 N Green LLC | 220 N Green St Chicago, IL 60607 | Pea Green Owner LLC | 20 N Michigan Ave, Suite 400, Chicago, IL, 60602 | TBD | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 5 | Unexpired Lease | WeWork Canada LP ULC | 595 Burrard Street Suite 1600 Vancouver, BC V7X 1L3 | BH Centre Head Corp. | 3110 - 1055 Dunsmuir Street, PO Box 49305, Vancouver, British Columbia, V7X 1L3 | 5/31/2024 | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |
| 6 | Unexpired Lease | 609 Greenwich Street Tenant LLC | 609 Greenwich Street New York, NY 10017 | LF Greenwich LLC | 580 Fifth Avenue, 32nd Floor, New York, NY, 10036 | TBD | Miscellaneous Furniture, Fixtures and/or Equipment | Holders of the Company's secured funded debt |

## **Exhibit B-2**

**Draft Schedule of Assumed
Executory Contracts and Unexpired Leases**

**Schedule of Assumed Non-Lease Executory Contracts**

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 1 | Common Desk Operations LLC | Unexpired Lease | 14555 Coworking, LLC | Attn: Manager, 16400 Dallas Parkway, Suite 150, Dallas, TX 75248 | None | $0.00 |
| 2 | Common Desk Operations LLC | Unexpired Lease | 226 N Front Street, LLC | C/O East West Partners, Attn: Lucien Ellison, 1450 Environ Way, Chapel Hill, NC 27517 | None | $0.00 |
| 3 | Common Desk Operations LLC | Unexpired Lease | 2500 Citywest TRS, LLC | Attn: Property Manager, 2500 CityWest Boulevard, Houston, TX 77042 | None | $0.00 |
| 4 | Common Desk Operations LLC | Unexpired Lease | 300 East Davis Owner, LLC | Attn: Daniel Doyon, 5540 Centerview Drive, Suite 204, Raleigh, NC 27606 | None | $0.00 |
| 5 | TBD (Common Desk) | Unexpired Lease | 3400 North Central Expressway Operator LLC | c/o Transwestern, 1900 West Loop South, Suite 1300, Houston, Texas 77027 | None | $0.00 |
| 6 | TBD (Common Desk) | Unexpired Lease | 650 Main Building LLC | 1980 Post Oak Blvd., Suite 1900, Houston, Texas 77056 Attn: Brandon Campbell | None | $0.00 |
| 7 | Common Desk Operations LLC | Unexpired Lease | 7801 Burnet Road LP | TBD | None | $0.00 |
| 8 | We Work Management LLC | Software Services Rider | 84codes AB | Torsgatan 26, Stockholm, SWEDEN | None | $0.00 |
| 9 | WeWork Canada LP ULC | Management Services Agreement for Place Ville Marie | 9145-4090 Quebec Inc., PVM Foncia II Inc., and PVM Foncia III Inc. | Edifice Jacques-Parizeau, 1001, Victoria Square, Suite C-500, in the City of Montréal, Province of Québec, H2Z 2B5 | None | $0.00 |
| 10 | We Work Management LLC | Statement of Work | Accenture International Limited | Attention: Director of Legal Services, 1 Grand Canal Square, Grand Canal Harbou, Dublin 2, IRELAND | None | $0.00 |
| 11 | WeWork Companies U.S. LLC | Consulting Agreement | Accenture LLP | 161 North Clark Street, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 12 | We Work Management LLC | Consulting Agreement | Accenture LLP | 161 North Clark Street, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 13 | We Work Management LLC | Master Service Agreement | Activaire LLC | 190 N 10th St, Suite 304, Brooklyn, NY 11211, UNITED STATES | Price reduction | $0.00 |
| 14 | Common Desk Operations LLC | Unexpired Lease | Admiral 2R Acquisitions LLC | Attn: Andrew Stone, 52 Vanderbilt Avenue, Suite 1000, New York, NY 10017 | None | $0.00 |
| 15 | We Work Management LLC | Services Agreement | ADP, INC. | One ADP Boulevard, Roseland, NJ 07068, UNITED STATES | None | $320.49 |
| 16 | 148 Lafayette Street Tenant LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 17 | WW 1875 Connecticut LLC | Services Agreement | Adyen NV | Simon Carmiggeltrstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 18 | WeWork Companies U.S. LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, 1011 DJ, Amsterdam, NETHERLANDS | None | $0.00 |
| 19 | 902 Broadway Tenant LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 20 | We Work Management LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, 1011 DJ, Amsterdam, NETHERLANDS | None | $0.00 |
| 21 | WW 745 Atlantic LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 22 | We Work Management LLC | Staffing Services Agreement | Aerotek Inc. | 7301 Parkway Drive South, Hanover, MD 21076 | None | $0.00 |
| 23 | WeWork Companies U.S. LLC | Master Service Agreement | Aetna Life Insurance Company | 151 Farmington Ave, Hartford, CT 06156, UNITED STATES | None | $0.00 |
| 24 | We Work Management LLC | Business Responsibility Agreement | Aetna Life Insurance Company | Aetna Life Insurance Company - Aetna Privacy Office, 151 Farmington Ave, RE6A, Hartford, CT 06156, UNITED STATES | None | $0.00 |
| 25 | We Work Management LLC | Services Agreement | AgileBits, Inc. | ATTN: Jeff Shiner, 317 Adelaide St W, Suite 910, Toronto, ON M5V 1P9, CANADA | None | $0.00 |
| 26 | We Work Management LLC | Services Agreement | Algolia, Inc | 301 Howard St., Ste. 300, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 27 | We Work Management LLC | Software Lease/License Agreement | Algolia, Inc | 589 Howard Street, Suite 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 28 | We Work Management LLC | Services Agreement | Alight Solutions LLC | ATTN: General Counsel, 4 Overlook Point, Lincolnshire, IL 60069, UNITED STATES | None | $118.06 |
| 29 | We Work Management LLC | Master Goods and Services Agreement | Allset Inc. | 1070 Main St W, Unit 2B, Hamilton, Ontario | None | $0.00 |
| 30 | We Work Management LLC | License Agreement | Alteryx, Inc. | ATTN: General Counsel, 3345 Michelson Drive, Suite 400, Irvine, CA 92612, UNITED STATES | None | $0.00 |
| 31 | We Work Management LLC | Purchase and Sale Agreement | Alteryx, Inc. | 17200 Laguna Canyon Road, Irvine, CA 92618, UNITED STATES | None | $0.00 |
| 32 | We Work Management LLC | Pricing Agreement | Amazon Web Services, Inc. | PO BOX 84023, Seattle, WA 98124-8423, UNITED STATES | None | $299,146.39 |
| 33 | We Work Management LLC | Marketing Agreement | Amazon Web Services, Inc. | PO BOX 81226, Seattle, WA 98108, UNITED STATES | None | $0.00 |
| 34 | WeWork Companies U.S. LLC | Services Agreement | American Express Travel Related Services Company Inc | 20022 North 31st Avenue, Mail Code AZ-08-03-11, Phoeniz, AZ 85207, UNITED STATES | None | $0.00 |
| 35 | We Work Management LLC | License Agreement | American Red Cross (US Only) | ATTN: Office of the General Counsel, 431 18th Street, Washington, DC 20006, UNITED STATES | None | $0.00 |
| 36 | We Work Management LLC | Services Agreement | American Red Cross (US Only) | 25688 Network Place, Chicago, IL 60673, UNITED STATES | None | $0.00 |
| 37 | We Work Management LLC | Services Agreement | Amplitude, Inc. | 631 Howard Street, Floor 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 38 | We Work Management LLC | Purchase and Sale Agreement | Amplitude, Inc. | 631 Howard Street, Floor 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 39 | WW BuildCo LLC | Master Service Agreement | Anixter Inc. | Attn: Peter Ferrell, 2301 Patriot Boulevard, Glenview, IL 60026, UNITED STATES | None | $0.00 |
| 40 | We Work Management LLC | Services Agreement | Anixter Inc. | 7 Santa Fe Way, East Windsor, NJ 08512, UNITED STATES | None | $0.00 |
| 41 | The We Company Management LLC | Purchase and Sale Agreement | Anixter Inc. | 7 Santa Fe Way, East Windsor, NJ 08512, UNITED STATES | None | $0.00 |
| 42 | We Work Management LLC | Software Lease/License Agreement | Anybill Financial Services Inc | 800 Maine Ave NE, Washington, DC 20024, UNITED STATES | None | $1,340.20 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 43 | We Work Management LLC | Statement of Work | Aon Consulting, Inc. | 200 East Randolph Street 10th Floor Chicago, IL 60601, United States | None | $0.00 |
| 44 | We Work Management LLC | Services Agreement | Aon Consulting, Inc. | 200 East Randolph Street 10th Floor Chicago, IL 60601, United States | None | $0.00 |
| 45 | We Work Management LLC | Software Lease/License Agreement | APEX Analytix, LLC | 1501 Highwoods Boulevard, Suite 200, Greensboro, NC 27410, UNITED STATES | Reduced volume | $0.00 |
| 46 | We Work Management LLC | Services Agreement | APEX Analytix, LLC | 1501 Highwoods Boulevard, Suite 200, Greensboro, NC 27410, UNITED STATES | Reduced volume | $0.00 |
| 47 | We Work Management LLC | Software Lease/License Agreement | AppsFlyer, Inc. | 100 First Street, Suite 2500, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 48 | WeWork Companies U.S. LLC | Master Service Agreement | ARAG Insurance Company and/or ARAG Services LLC | ATTN: Legal Department, 500 Grand Avenue, Suite 100, Des Moines, IA 50309, UNITED STATES | None | $0.00 |
| 49 | We Work Management LLC | Purchase Order | Articulate Global, Inc. | 244 5th Avenue, Suite 2960, New York, NY 10001 | None | $0.00 |
| 50 | We Work Management LLC | Software Lease/License Agreement | Atlan Inc. | ATTN: Prukalpa Sankar, 831 N Tatnall Street, Suite M #171, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 51 | We Work Management LLC | Purchase and Sale Agreement | Atlan Inc. | 1209 Orange Street, Wilmington City, DE 19801, UNITED STATES | None | $0.00 |
| 52 | We Work Management LLC | Subscription Agreement and Software Subscription Services Rider | AuditBoard, Inc. | 12800 Center Court Drive South, Suite 100, Cerritos, CA 90703, UNITED STATES | None | $4,539.77 |
| 53 | WeWork Companies U.S. LLC | Services Agreement | BDO USA, LLP | 130 E Randolph St, #2800, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 54 | WeWork Companies U.S. LLC | Consulting Agreement | BDO USA, LLP | 622 Third Ave, Suite 3100, New York, NY 10017, UNITED STATES | None | $0.00 |
| 55 | WeWork Companies U.S. LLC | Consulting Agreement | BDO USA, LLP | 622 Third Ave, Suite 3100, New York, NY 10017, UNITED STATES | None | $0.00 |
| 56 | WeWork Companies U.S. LLC | Services Agreement | Beacon Hill Staffing Group | Box 846193, Boston, MA 02284, UNITED STATES | None | $0.00 |
| 57 | We Work Management LLC | Services Agreement | Beacon Hill Staffing Group | Box 846193, Boston, MA 02284, UNITED STATES | None | $0.00 |
| 58 | We Work Management LLC | Services Agreement and Statement of Work | Bell Techlogix, Inc. | 4400 W. 96th Street, Indianapolis, IN 46268, UNITED STATES | None | $92,407.20 |
| 59 | We Work Management LLC | Services Agreement | BigMarker.com LLC | 223 West Erie Street, Chicago, IL 60654, UNITED STATES | None | $0.00 |
| 60 | WeWork Companies U.S. LLC | Data Protection Agreement | BITLY INC | 139 Fifth Avenue, Floor 5, New York, NY 10010, UNITED STATES | None | $0.00 |
| 61 | We Work Management LLC | Purchase and Sale Agreement | BlackLine Systems, Inc. | 21300 Victory Blvd, 12th Floor, Woodland Hills, CA 91367, UNITED STATES | None | $0.00 |
| 62 | Common Desk West 7th, LLC | Unexpired Lease | Block Younger, LLC | 14643 Dallas Parkway, Suite 950, Dallas, TX, 75354 | None | $0.00 |
| 63 | WeWork Companies U.S. LLC | Master Goods and Services Agreement | BluCar LLC (DBA Commutifi) | 1111 Pearl St, #200, Boulder, CO 80302, UNITED STATES | None | $135,709.05 |
| 64 | We Work Management LLC | Master Goods and Services Agreement | BluCar LLC (DBA Commutifi) | 1111 Pearl St, #200, Boulder, CO 80302, UNITED STATES | None | $0.00 |
| 65 | We Work Management LLC | Collaboration Agreement | BluCar LLC (DBA Commutifi) | Attn: Rich Schmelzer, CEO, PO Box 1170, Boulder, CO 80306, UNITED STATES | None | $0.00 |
| 66 | We Work Management LLC | Services Agreement | BluCar LLC (DBA Commutifi) | Attn: Rich Schmelzer, PO BOX 1170, Boulder, CO 80306, UNITED STATES | None | $0.00 |
| 67 | We Work Management LLC | Services Agreement | braXos Security Software LLC | 8000 Walton Parkway, Ste 238, New Albany, OH 43054, UNITED STATES | None | $21,350.00 |
| 68 | We Work Management LLC | Statement of Work | braXos Security Software LLC | P.O. Box 1013, New Albany, OH 43054, UNITED STATES | None | $0.00 |
| 69 | We Work Management LLC | Care Advantage Agreement Amendment and Renewal | Bright Horizons Children's Centers LLC (DBA Bright Horizons) | 2 Wells Ave, Newton, MA 02459 USA | None | $0.00 |
| 70 | WW Onsite Services LLC | WW Onsite Services LLC | Broadway Clifton Property LLC | C/O CEDARst Companies, Attn: Emilia Merchen, 1020 W. Lawrence Avenue Suite 300, Chicago, IL 60640 | None | $0.00 |
| 71 | We Work Management LLC | Services Agreement | BROWSERSTACK INC | 4512 Legacy Dr, Ste 100, Plano, TX 75024, UNITED STATES | None | $0.00 |
| 72 | We Work Management LLC | Purchase Agreement | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 73 | We Work Management LLC | Renewal Agreement | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 74 | We Work Management LLC | Software Subscription Services Rider | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 75 | We Work Management LLC | Collaboration Agreement | Captivate LLC | 501 7th Avenue, Suite 210, New York, NY 10018, UNITED STATES | None | $55,516.15 |
| 76 | We Work Management LLC | Consulting Agreement | CASCADE INSIGHTS, LLC | 18165 S Brookstone Dr., Dr. Oregon City, OR 97045, UNITED STATES | None | $0.00 |
| 77 | We Work Management LLC | Master Service Agreement | Cimplifi, a division of System One Holdings, LLC | Attn: Trish Anderson, 210 Sixth Avenue, Suite 3100, Pittsburgh, PA 15222, UNITED STATES | None | $43,760.75 |
| 78 | We Work Management LLC | Software Lease/License Agreement | Circle Internet Services, Inc. (DBA CircleCI) | 201 Spear St, 12th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 79 | We Work Management LLC | Renewal Order Form | Circle Internet Services, Inc. (DBA CircleCI) | 201 Spear Street, 12th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 80 | We Work Management LLC | Master Subscription Agreement | Cision US Inc. | 300 S Riverside Plaza, Chicago, IL 60606 | None | $0.00 |
| 81 | Common Desk Operations LLC | Services Agreement | CIT SOLUTIONS | 6317 Rollins Rd, Granbury, TX 76049, UNITED STATES | None | $530.43 |
| 82 | WW BuildCo LLC | Construction Agreement | CITY CONSTRUCTION GROUP, INC. | 2727 SW 26th Ave, Miami, FL 33133, UNITED STATES | None | $0.00 |
| 83 | We Work Management LLC | Software Lease/License Agreement | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 84 | We Work Management LLC | Subscription Agreement | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 85 | We Work Management LLC | Software Services Rider | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 86 | We Work Management LLC | License Agreement | Coda Project Inc | 444 Castro Street, Suite 1200, Mountain View, CA 94041, UNITED STATES | None | $0.00 |
| 87 | We Work Management LLC | Product and Service Agreement | Coda Project Inc | 444 Castro Street, Suite 1200, Mountain View, CA 94041, UNITED STATES | None | $0.00 |
| 88 | We Work Management LLC | Consulting Agreement | COGNIZANT TECHNOLOGY SOLUTIONS US CORPORATION. | 211 Quality Circle, College Station, TX 77845, UNITED STATES | None | $0.00 |
| 89 | We Work Management LLC | Statement of Work | COGNIZANT TECHNOLOGY SOLUTIONS US CORPORATION. | 211 Quality Circle, College Station, TX 77845, UNITED STATES | None | $0.00 |
| 90 | WeWork Companies U.S. LLC | Consulting Agreement | Collaborative Solutions, LLC | 11190 Sunrise Valley Drive, Suite 110, Reston, VA 20191, UNITED STATES | None | $9,090.00 |
| 91 | We Work Management LLC | Consulting Agreement | Collaborative Solutions, LLC | 11190 Sunrise Valley Drive, Suite 110, Reston, VA 20191, UNITED STATES | None | $0.00 |
| 92 | We Work Management LLC | Order Form | CompStak Inc | 675 6th Avenue, Fourth Floor, New York, NY 10011, UNITED STATES | None | $0.00 |
| 93 | We Work Management LLC | Purchase and Sale Agreement | CompStak Inc | 36 Cooper Square, 6th Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 94 | We Work Management LLC | Subscription Agreement | CompStak Inc | 36 Cooper Square, Sixth Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 95 | We Work Management LLC | Purchase and Sale Agreement | Confluent, Inc. | 899 WEST EVELYN AVENUE, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $0.00 |
| 96 | We Work Management LLC | Software Lease/License Agreement | Content Square, Inc. | 368 9th Avenue, Floor 11, New York, NY 10011, UNITED STATES | None | $0.00 |
| 97 | We Work Management LLC | Services Agreement | Contentful, Inc. | 101 Montgomery Street, Suite 2050, San Francisco, CA 94105, UNITED STATES | None | $20,963.02 |
| 98 | WW BuildCo LLC | Master Service Agreement | CONVERGINT TECHNOLOGIES LLC | One Commerce Drive, Schaumburg, IL 60173, UNITED STATES | None | |
| 99 | We Work Management LLC | Subscription Agreement | Corrigo Incorporated | Attn: JLLT Counsel, 200 E Randolph, Chicago, IL 60601, UNITED STATES | None | $86,319.61 |
| 100 | Common Desk Operations LLC | Unexpired Lease | Crescent Ross Avenue Investors LLC | 2001 Ross Avenue, Suite 5411, Dallas, TX 75201 | None | $0.00 |
| 101 | Common Desk Operations LLC | Unexpired Lease | Crimson/RELP/Springwoods Parcel 1A, LLC | Attn: Property Manager, 1401 Lake Plaza Drive, Suite 200, Spring, TX 77389 | None | $0.00 |
| 102 | 110 Wall Manager LLC | Master Service Agreement | Croker Fire Drill Corporation | 235 Brooksite Drive, Hauppauge, NY 11788, UNITED STATES | None | $0.00 |
| 103 | We Work Management LLC | License Agreement | Crown Castle Fiber LLC | ATTN: Deputy General Counsel - Fiber, 55 Broad St, New York, NY 10004, UNITED STATES | None | $0.00 |
| 104 | 429 Lenox Ave Tenant LLC | Purchase and Sale Agreement | Crown Castle Fiber LLC | 8020 Katy Freeway, Houston, TX 77204, UNITED STATES | None | $0.00 |
| 105 | WeWork Inc. | Lease Administration Agreement | Cushman & Wakefield, U.S. Inc. | 225 W Wacker Drive, Suite 3000, Chicago, IL 60606, UNITED STATES | None | $0.00 |
| 106 | WeWork Inc. | Amended and Restated Schedule for Technology Systems and Resources | Cushman & Wakefield, U.S. Inc. | 225 W Wacker Drive, Suite 3000, Chicago, IL 60606, UNITED STATES | Revised schedule pursuant to larger contract amendment | $0.00 |
| 107 | We Work Management LLC | Software Services Rider | Darwin Technologies Limited | 1 Tower Place West, Tower Place, London, United Kingdom, EC3R 5BU | None | $0.00 |
| 108 | We Work Management LLC | Master Professional Services Agreement | Darwin Technologies Limited | 1 Tower Place West, Tower Place, London, United Kingdom, EC3R 5BU | None | $0.00 |
| 109 | We Work Management LLC | Software Lease/License Agreement | Data Theorem, Inc. | 532 Emerson St, Palo Alto, CA 94301, UNITED STATES | None | $0.00 |
| 110 | We Work Management LLC | Software Lease/License Agreement | Datadog, Inc. | 620 8th Ave, Fl 145, New York, NY 10018, UNITED STATES | None | $1,115.46 |
| 111 | WeWork Companies U.S. LLC | Statement of Work | Datasite LLC | 733 S. Marquette Ave, Minneapolis, MN 55402 | None | $0.00 |
| 112 | We Work Management LLC | Services Agreement | Dealpath, Inc | 300 California Street, Suite 200, San Francisco, CA 94104, UNITED STATES | None | $0.00 |
| 113 | We Work Management LLC | Engagement Letter | Debevoise & Plimpton LLP | 919 Third Avenue, New York, NY, 10022 | None | $33,919.50 |
| 114 | We Work Management LLC | Service Orders (6/1/2023 through 5/31/2026) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | None | $261,004.00 |
| 115 | We Work Management LLC | Service Order (7/28/2023 through 5/31/2026) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | None | $0.00 |
| 116 | We Work Management LLC | Services Agreement | Diligent Corporation | 1111 19th St NW, 8th Floor, Washington, DC 20036 | None | $0.00 |
| 117 | We Work Management LLC | Subscription Agreement | Docker, Inc. | 3790 El Camino Real, #1052, Palo Alto, CA 94306, UNITED STATES | None | $0.00 |
| 118 | Common Desk Operations LLC | Purchase and Sale Agreement | Docusign, Inc. | 221 Main St, Suite 1000, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 119 | We Work Management LLC | Purchase and Sale Agreement | Docusign, Inc. | 221 Main St, Suite 1000, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 120 | WW BuildCo LLC | Construction Agreement | DPR Construction | 1450 Veterans Blvd, Redwood City, CA 94063, UNITED STATES | None | $0.00 |
| 121 | We Work Management LLC | Business Responsibility Agreement | Dropbox Inc | Attn: Legal Department, P.O. Box 77767, San Francisco, CA 94107, UNITED STATES | None | $0.00 |
| 122 | WeWork Canada GP ULC | Master Service Agreement | East Van Vinyl | 34 East 6th Avenue, Vancouver, BC V5T 1J4, CANADA | None | $6,749.03 |
| 123 | We Work Management LLC | Services Agreement | Edicom Corp | One Whitehall Street, 14th Floor, New York, NY 10004, UNITED STATES | None | $0.00 |
| 124 | We Work Management LLC | Product and Service Agreement | Edicom Corp | One Whitehall Street, 14th Floor, New York, NY 10004, UNITED STATES | None | $0.00 |
| 125 | We Work Management LLC | Master Service Agreement | Empire Office, Inc. | Attn: Jocelyn Corrigan, Executive VP, 105 Madison Avenue, 15th Floor, New York, NY 10016, UNITED STATES | None | $4,472.77 |
| 126 | We Work Management LLC | Temporary Staffing Services Agreement | Encore Nationwide, INC. | 2447 Pacific Coast Highway, 2nd Floor, Suite 261, Hermosa Beach, CA, 90254 | None | $0.00 |
| 127 | Common Desk Operations LLC | Unexpired Lease | Energy Square Meadows TRS I, LLC | GlenStar Texas Asset Management, Attn: Property Manager, 6688 N. Central Expressway, Suite 350, Dallas, TX 75206 | None | $0.00 |
| 128 | We Work Management LLC | Software Lease/License Agreement | Engie Insight Services Inc. | 1313 N. Atlantic Street, Suite 5000, Spokane, WA 99201, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 129 | We Work Management LLC | Services Agreement | Engie Insight Services Inc. | 1313 N. Atlantic Street, Suite 5000, Spokane, CA 99201, UNITED STATES | None | $0.00 |
| 130 | We Work Management LLC | Sales Agreement and Outstanding Orders | ENGIE Resources LLC | 1360 Post Oak Blvd., Suite 400, Houston, TX 77056, UNITED STATES | None | $0.00 |
| 131 | WeWork Companies U.S. LLC | Consulting Agreement | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $37,732.50 |
| 132 | We Work Management LLC | Statement of Work | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 133 | We Work Management LLC | Consulting Agreement | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 134 | We Work Management LLC | Consulting Agreement | Eriksen Translations Inc | 50 Court Street, Suite 700, Brooklyn, NY 11201, UNITED STATES | None | $9,455.27 |
| 135 | WeWork Companies U.S. LLC | Consulting Agreement | Ernst & Young LLP | 5 Times Square, 14h Floor, New York, NY 10036, UNITED STATES | None | $0.00 |
| 136 | We Work Management LLC | Services Agreement | EVIDENT ID | 2810 N CHURCH ST, STE 95997, WILMINGTON, DE 19802, UNITED STATES | None | $1,346.40 |
| 137 | We Work Management LLC | Statement of Work | Exiger Canada, Inc. | 1095 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $13,625.00 |
| 138 | We Work Management LLC | Services Agreement | Exiger Canada, Inc. | ATTN: Ron Collins, COO and CFO, 1095 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 139 | We Work Management LLC | Master Service Agreement | expoIT LLC | Attn: Katerina Kubec, Director of Sales/Service, 22 Manchester Road, Unit 7, Derry, NH 03038, UNITED STATES | None | $21,961.50 |
| 140 | We Work Management LLC | Order Form | Fastly, Inc. | P.O. Box 78266 San Francisco, CA 94107 | None | $7,443.34 |
| 141 | We Work Management LLC | Service Agreement | Fidelity Workplace Services LLC | 245 Summer St Boston, MA, 02210-1133, United States | None | $0.00 |
| 142 | We Work Management LLC | Purchase and Sale Agreement | Figma, Inc. | 760 Market St, Floor 10, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 143 | We Work Management LLC | Life Insurance Policy | First Unum Life Insurance Company | 1225 Franklin Avenue Suite 250. Garden City, NY 11530 | None | $0.00 |
| 144 | We Work Management LLC | Purchase and Sale Agreement | FiveTran, Inc. | 405 14th Street, Suite 1100, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 145 | We Work Management LLC | Software Lease/License Agreement | Fivetran, Inc. | 405 14th Street, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 146 | We Work Management LLC | Services Agreement | Fivetran, Inc. | 405 14th Street, Suite 1050, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 147 | WeWork Services LLC | Referral Agreement | Formagrid, Inc (DBA Airtable) | ATTN: Andrew Ofstad, 49 Powell St, Floor 2, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 148 | 1400 Lavaca Street Tenant LLC | Rental Agreement | Formagrid, Inc (DBA Airtable) | ATTN: Andrew Ofstad, 49 Powell St, Floor 2, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 149 | WeWork Companies U.S. LLC | Master Service Agreement | Formstack, LLC | Attn: VP of Finance, 11671 Lantern Rd., Suite 300, Fishers, IN 46038, UNITED STATES | None | $382.47 |
| 150 | We Work Management LLC | Master Service Agreement | Formstack, LLC | Attn: VP of Finance, 11671 Lantern Rd., Suite 300, Fishers, IN 46038, UNITED STATES | None | $0.00 |
| 151 | We Work Management LLC | Services Agreement | Frame.io | 22 Cortland St, Floor 31, New York, NY 10007, UNITED STATES | None | $0.00 |
| 152 | We Work Management LLC | Services Agreement | GIACT Systems, LLC | P. O. BOX 411162, BOSTON, MA 02241, UNITED STATES | None | $28,079.00 |
| 153 | WW BuildCo LLC | Services Agreement | Gilbane Building Company | 7 Jackson Walkway, Providence, RI 02903, UNITED STATES | None | $0.00 |
| 154 | We Work Management LLC | Purchase Order Letter | Glimmer Technologies Inc. | 1412 Broadway, 21st Floor, New York, NY 10018 | None | $0.00 |
| 155 | Common Desk Operations LLC | Unexpired Lease | GPV Shared Office LLC | Attn: Managing Director, 5601 Granite Parkway, Suite 800, Plano, TX 75024 | None | $0.00 |
| 156 | Common Desk Operations LLC | Unexpired Lease | GPV SharedOffice, LLC | Attn: Director of Finance, 5601 Granite Parkway, Suite 800, Plano, TX 75024 | None | $0.00 |
| 157 | We Work Management LLC | Master Service Agreement | Granite Telecommunications LLC | 100 Newport Avenue Ext., Quincy, MA 02171, UNITED STATES | None | $0.00 |
| 158 | We Work Management LLC | Master Service Agreement | Green 2 Green Corp (DBA Plant Shed New York Flowers) | Attn: Antonio Roche, Executive Director of Sales, 723 Amsterdam Ave, New York, NY 10025, UNITED STATES | None | $31,975.74 |
| 159 | We Work Management LLC | Order Form | Greenhouse Software, Inc | 18 W 18th Street, 11th Floor, New York, NY 10011 | None | $36,182.89 |
| 160 | We Work Management LLC | Statement of Work | Greenhouse Software, Inc | 18 W 18th Street, 11th Floor, New York, NY 10011 | None | $0.00 |
| 161 | Common Desk Operations LLC | Unexpired Lease | GTT Commons LP | C/O David Kahn, 804 Congress Ave., Suite 300, Austin, TX 78701 | None | $0.00 |
| 162 | We Work Management LLC | Software Lease/License Agreement | Herrmann International, Inc. | PO BOX 389, FOREST CITY, NC 28043, UNITED STATES | None | $0.00 |
| 163 | We Work Management LLC | Master Service Agreement | Hill Mechanical Services | Attn: Jared Schreiber, Junior Account Executive, 11405 Gage Avenue, Franklin Park, IL 61031, UNITED STATES | None | $0.00 |
| 164 | We Work Management LLC | Services Agreement | HireRight LLC | ATTN: Legal Department, 5151 California Avenue, Irvine, CA 92617, UNITED STATES | None | $6,487.49 |
| 165 | We Work Management LLC | Software Lease/License Agreement | Hoxhunt Oy | PORKKALANKATU 3, UUSIMAA, HELSINKI, FINLAND | None | $0.00 |
| 166 | We Work Management LLC | Sponsorship Agreement | HP Inc. | 1501 Page Mill Road, Palo Alto, CA 94304, UNITED STATES | Reduced volume and price | $22,338.76 |
| 167 | We Work Management LLC | Master Service Agreement | HP Inc. | Attn: General Counsel, 1501 Page Mill Road, Palo Alto, CA 94304, UNITED STATES | Reduced volume and price | $0.00 |
| 168 | We Work Management LLC | Service Agreement | InfoArmor Inc. (DBA Allstate Identity Protection) | 7001 N. Scottsdale Road, Suite 2020, Scottsdale, AZ 85253 | None | $0.00 |
| 169 | We Work Management LLC | Consulting Agreement | Innova Solutions, Inc. | 4633 Old Ironsides Drive, Suite 320, Santa Clara, CA 95054, UNITED STATES | None | $42,068.40 |
| 170 | WW BuildCo LLC | Services Agreement | Integrity Networks, Inc. | 2220 Lind Ave SW, Suite 106, Renton, WA 98057, UNITED STATES | None | $10,357.96 |
| 171 | We Work Management LLC | Statement of Work | InterWorks Inc | 1425 S Sangre Road, Stillwater, OK 74074, UNITED STATES | None | $249.88 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 172 | We Work Management LLC | Master Service Agreement | InterWorks Inc | 1425 S Sangre Road, Stillwater, OK 74074, UNITED STATES | None | $0.00 |
| 173 | Common Desk Operations LLC | Unexpired Lease | ION Houston LLC | Attn: Kurt D. Nondorf, Jackson Walker LLP, 1401 McKinney Suite 1900, Houston, TX 77010 | None | $0.00 |
| 174 | WeWork Companies U.S. LLC | Master Service Agreement | Iron Mountain, Inc. (DBA Iron Mountain Data Centers LLC) | 3003 Woodbridge Avenue, Edison, NJ 08837, UNITED STATES | None | $2,714.22 |
| 175 | We Work Management LLC | Master Service Agreement | Iron Mountain, Inc. (DBA Iron Mountain Data Centers LLC) | 3003 Woodbridge Avenue, Edison, NJ 08837, UNITED STATES | None | $0.00 |
| 176 | We Work Management LLC | Services Agreement | Jellyfish US Limited | 250 South President St, Suite 10, Baltimore, MD 21202, UNITED STATES | None | $16,145.23 |
| 177 | We Work Management LLC | Pricing Agreement | JetBrains Americas Inc. | 989 East Hillsdale Blvd, Suite 200, Foster City, CA 94404, UNITED STATES | None | $0.00 |
| 178 | WeWork Companies U.S. LLC | Master Service Agreement | JPMorgan Chase Bank, N.A. | ATTN: Legal Department, 14221 Dallas Parkway, Dallas, TX 75254, UNITED STATES | None | $0.00 |
| 179 | We Work Management LLC | Purchase and Sale Agreement | Kaltura, Inc. | 860 Broadway, 3rd Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 180 | We Work Management LLC | Consulting Agreement | KBA Lease Services, Inc. | 1000 U.S. Highway 9, Woodbridge, NJ 07095, UNITED STATES | None | $0.00 |
| 181 | We Work Management LLC | Master Service Agreement | Labor Law Compliance Center, LLC | Attn: Donny Butts, Customer Service Director, 23855 Gosling Road, Spring, TX 77389, UNITED STATES | None | $0.00 |
| 182 | WeWork Companies U.S. LLC | Consulting Agreement | Language Line Services, Inc. (DBA LanguageLine Solutions) | P.O. BOX 202564, Dallas, TX 75320-2564, UNITED STATES | None | $1,572.12 |
| 183 | We Work Management LLC | Consulting Agreement | Language Line Services, Inc. (DBA LanguageLine Solutions) | P.O. BOX 202564, Dallas, TX 75320-2564, UNITED STATES | None | $0.00 |
| 184 | WeWork Companies U.S. LLC | Staffing Agreement | LaSalle Staffing, Inc. dba LaSalle Network, Inc. | 200 N LaSalle, Suite 2500, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 185 | We Work Management LLC | Staffing Agreement | LaSalle Staffing, Inc. dba LaSalle Network, Inc. | 200 N LaSalle, Suite 2500, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 186 | We Work Management LLC | Software Lease/License Agreement | Leandata, Inc | 1175 Sonora Ct, Sunnyvale, CA 94087, UNITED STATES | None | $0.00 |
| 187 | WeWork Companies U.S. LLC | Engagement Letter | Leason Ellis LLP | 1 Barker Avenue, White Plains, NY 10601 | None | $1,109.00 |
| 188 | We Work Management LLC | Order Form | LinkedIn Corporation | 1000 West Maude, Sunnyvale, CA 94085, UNITED STATES | None | $0.00 |
| 189 | We Work Management LLC | License Agreement | Litmus Software, Inc. | 675 Massachusetts Ave, 10 Floor, Cambridge, MA 02139, UNITED STATES | None | $0.00 |
| 190 | We Work Management LLC | Master Service Agreement | LiveRamp, Inc. | 225 Bush Street, 17th FL, San Francisco, CA 94104, UNITED STATES | None | $6,369.19 |
| 191 | We Work Management LLC | Knowledge Services Agreement and Statement of Work | LRN Corporation | 41 Madison Avenue, 30th Floor, New York, NY 10010 | None | $0.00 |
| 192 | We Work Management LLC | Pricing Agreement | Lucid Software Inc. | Attn: Jordan Bauer, 10355 S Jordan Gateway, Suite 300, South Jordan, UT 84095, UNITED STATES | None | $0.00 |
| 193 | We Work Management LLC | Consulting Agreement | Lumi Consulting Group, Inc. | 3549 North University Ave, STE 325, Provo, UT 84604, UNITED STATES | None | $86,328.00 |
| 194 | We Work Management LLC | Services Rider (Start Date of 5/1/24) | Mapbox, Inc. | 1133 15th St NW, Suite 825, Washington DC, 20005 | Contract term | $0.00 |
| 195 | We Work Management LLC | Master Service Agreement | MarkMonitor Inc | 50 CALIFORNIA ST, SUITE 200, San Francisco, CA 92111, UNITED STATES | None | $3,173.00 |
| 196 | We Work Management LLC | Master Client Service Agreement | Marsh USA Inc. | 1166 Avenue of the Americas New York, NY 10036 United States | None | $0.00 |
| 197 | We Work Management LLC | Services Agreement | Matterport, Inc. | 352 E Java Dr, Sunnyvale, CA 94089, UNITED STATES | None | $0.00 |
| 198 | WW BuildCo LLC | Master Service Agreement | Maxus Group,Inc | 346 Seventh Avenue, Suite 401, New York, NY 10001, UNITED STATES | None | $126,938.95 |
| 199 | We Work Management LLC | Consulting Agreement | Megaport | 6790 Embarcadero Ln, #100, Carsbad, CA 92011, UNITED STATES | None | $6,176.44 |
| 200 | We Work Management LLC | Statement of Work | Mercer Health and Benefits LLC | 1166 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 201 | We Work Management LLC | License Agreement | Mersive Technologies, Inc. | ATTN: Chief Executive Officer, 2399 Blake Street, Suite 150, Denver, CO 80205, UNITED STATES | None | $0.00 |
| 202 | We Work Management LLC | Pricing Agreement | Mersive Technologies, Inc. | ATTN: Rick Emery, 2399 Blake Street, Suite 160, Denver, CO 80205, UNITED STATES | None | $0.00 |
| 203 | We Work Management LLC | Enterprise Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 204 | We Work Management LLC | Partnership/JV Agreements | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 205 | We Work Management LLC | Enterprise Enrollment Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 206 | We Work Management LLC | License Agreement | Microsoft Corporation | 6800 Sierra Center Parkway, Dept. 551, Volume Licensing, Reno, NV 89511, UNITED STATES | Reduced volume | $0.00 |
| 207 | We Work Management LLC | Sponsorship Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 208 | We Work Management LLC | Services Agreement | Microsol Resources | 214 West 29th Street, New York, NY 10001, UNITED STATES | None | $0.00 |
| 209 | We Work Management LLC | Services Agreement | Milk Stork, Inc. | 2085 E. Bayshore, #50656, Palo Alto, CA 94303, UNITED STATES | None | $0.00 |
| 210 | We Work Management LLC | Statement of Work | Milk Stork, Inc. | 2085 E. Bayshore, #50656, Palo Alto, CA 94303, UNITED STATES | None | $0.00 |
| 211 | WeWork Companies U.S. LLC | Consulting Agreement | MindStream Analytics, LLC | 745 Atlantic Avenue, Boston, MA 02111, UNITED STATES | None | $0.00 |
| 212 | We Work Management LLC | Consulting Agreement | MindStream Analytics, LLC | 745 Atlantic avenue, Boston, MA 02111, UNITED STATES | None | $0.00 |
| 213 | We Work Management LLC | Master Service Agreement | MindStream Analytics, LLC | 1021 E Lincolnway, #264, Cheyenne, WY 82001, UNITED STATES | None | $0.00 |
| 214 | We Work Management LLC | Services Agreement | MindTickle, Inc. | ATTN: President, 55 2nd Street, Suite 550, San Francisco, CA 94105, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 215 | We Work Management LLC | Purchase and Sale Agreement | MindTickle, Inc. | 535 Mission St, 14th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 216 | We Work Management LLC | Master Service Agreement | Mitratech Holdings, Inc. | 5001 Plaza on the Lake, Suite 111, Austin, TX 78746, UNITED STATES | None | $0.00 |
| 217 | We Work Management LLC | Software Lease/License Agreement | Mitratech Holdings, Inc. | 5001 Plaza on Lake, Austin, TX 78746, UNITED STATES | None | $0.00 |
| 218 | We Work Management LLC | Service Agreement and Sales Order | Monday.com Ltd | 6 Yitzhak Sadeh St., Tel-Aviv, Israel, 6777506 | Contract term | $8,053.55 |
| 219 | We Work Management LLC | Master Service Agreement | Moravia IT , LLC | ATTN: Tatiana Cicuto, Program Manager, 222 E Thousand Oaks Blvd, Suite 202, Thousand Oaks, CA 91360 | None | $0.00 |
| 220 | WeWork Companies U.S. LLC | Statement of Work | Moss Adams LLP | 999 Third Avenue, Suite 2800, Seattle, WA 98104, UNITED STATES | None | $0.00 |
| 221 | We Work Management LLC | Services Agreement | Moss Adams LLP | 999 Third Avenue, Suite 2800, Seattle, WA 98104, UNITED STATES | None | $0.00 |
| 222 | WW BuildCo LLC | Consulting Agreement | Murtaza & Khokar Engineering Consultants, PLLC | 120 West 31st Street, 7th Floor, New York, NY 10001, UNITED STATES | None | $11,700.00 |
| 223 | We Work Management LLC | Purchase and Sale Agreement | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $85,406.85 |
| 224 | We Work Management LLC | Software Lease/License Agreement | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $0.00 |
| 225 | We Work Management LLC | Data License | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $0.00 |
| 226 | WeWork Companies U.S. LLC | Consulting Agreement | NaTakallam LLC | 2 Columbus Ave, Apt 24 A, New York, NY 10023, UNITED STATES | None | $0.00 |
| 227 | We Work Management LLC | Consulting Agreement | NaTakallam LLC | 2 Columbus Ave, Apt 24 A, New York, NY 10023, UNITED STATES | None | $0.00 |
| 228 | WW BuildCo LLC | Consulting Agreement | Ncircle Tech Private Limited | Unit 2, Office No. 3, 4th Floor, Building no. IT7, Qubix SZ, Blue Ridge, Hinjewadim Phase 1, Pune, INDIA | None | $36,437.20 |
| 229 | We Work Management LLC | Master Service Agreement | NCS Moving Services | 1517 63rd St, Emeryville, CA 94608, UNITED STATES | None | $0.00 |
| 230 | We Work Management LLC | Services Agreement | Negotiatus Corp. | ATTN: Zach Garippa, 260 W 39th Street, Floor 15, New York, NY 10018, UNITED STATES | None | $11,716.32 |
| 231 | We Work Management LLC | Order Form | Negotiatus Corp. | 260 W. 39th Street, Floor 15, New York, NY 10018, UNITED STATES | None | $0.00 |
| 232 | We Work Management LLC | Master Service Agreement | NetDocuments Software, Inc. | 2500 West Executive Parkway, Suite 350, Lehi, UT 84043, UNITED STATES | None | $12,855.80 |
| 233 | We Work Management LLC | Master Service Agreement | NetDocuments Software, Inc. | 2500 West Executive Parkway, Suite 350, Lehi, UT 84043, UNITED STATES | None | $0.00 |
| 234 | WW BuildCo LLC | Master Service Agreement | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $18,740.98 |
| 235 | We Work Management LLC | Master Service Agreement | New York Security Solutions, Inc | ATTN: Gregory Keeling, 16238 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 236 | WW BuildCo LLC | Services Order | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 237 | We Work Management LLC | Software Lease/License Agreement | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 238 | We Work Management LLC | Services Order | New York Security Solutions, Inc | Attn: Jill Guerra, 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 239 | We Work Management LLC | Consulting Agreement | Nfinity Global Inc. | 3312 Rosedale St, Ste 202C, Gig Harbor, WA 98335, UNITED STATES | None | $198,366.00 |
| 240 | WeWork Services LLC | Services Agreement | OANDA Business Information and Services Inc. | Attn: Iain McNicoll, Solutions for Business Customer Support, 185 Berry Street, Suite 4700, San Francisco, CA 94107 | None | $0.00 |
| 241 | We Work Management LLC | Software Lease/License Agreement | OfficeRND | 84 ECCLESTON SQUARE, London, UNITED KINGDOM | None | $2,277.00 |
| 242 | We Work Management LLC | Subscription Agreement | OKTA, Inc | Attn: Rick Delgado, 100 1st Street, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 243 | We Work Management LLC | License Agreement | One Clipboard, Inc. (DBA Splash) | 233 BROADWAY, 28TH FLOOR, NEW YORK, NY 10279, UNITED STATES | None | $0.00 |
| 244 | We Work Management LLC | Statement of Work | One Clipboard, Inc. (DBA Splash) | 233 BROADWAY, 28TH FLOOR, NEW YORK, NY 10279, UNITED STATES | None | $0.00 |
| 245 | We Work Management LLC | Services Agreement | One Clipboard, Inc. (DBA Splash) | 122 W 26th St, New York, NY 10001, UNITED STATES | None | $0.00 |
| 246 | We Work Management LLC | Renewal Order Form Q-376620 | OneTrust LLC | 1200 Abernathy Rd, NE Bldg 600, Atlanta, GA 30328 | None | $0.00 |
| 247 | We Work Management LLC | Renewal Order Form Q-379136 | OneTrust LLC | 1200 Abernathy Rd, NE Bldg 600, Atlanta, GA 30328 | None | $0.00 |
| 248 | We Work Management LLC | Services Agreement | Oomnitza Inc. | ATTN: Amanda Groppetti, 548 Market St, Suite 18912, San Francisco, CA 94104-5401, UNITED STATES | None | $0.00 |
| 249 | We Work Management LLC | Purchase and Sale Agreement | Oomnitza Inc. | 548 Market St, Suite 18912, San Francisco, CA, 94104, UNITED STATES | None | $0.00 |
| 250 | WW BuildCo LLC | Master Service Agreement | Operational Technology Integrators | 1200 Concord Avenue, Suite 255, Concord, CA 94520, UNITED STATES | None | $8,718.58 |
| 251 | We Work Management LLC | Ordering Document | Oracle America, Inc. | 500 Oracle Parkway, Redwood Shores, CA 94065 | None | $11,197.56 |
| 252 | We Work Management LLC | Letter Agreement | Orasi Software, Inc. | ATTN: Zack Okerblad, 114 Townpark Drive, Suite 400, Kennesaw, GA 30144, UNITED STATES | None | $0.00 |
| 253 | We Work Management LLC | Purchase and Sale Agreement | Orasi Software, inc. | 114 Townpark Drive, Suite 400, Kennesaw, GA 30144, UNITED STATES | None | $0.00 |
| 254 | We Work Management LLC | Software Lease/License Agreement | Packagex, Inc. | 500 7th Avenue, New York, NY 10018, UNITED STATES | None | $114,912.29 |
| 255 | We Work Management LLC | Data Processing Agreement | PagerDuty, Inc | 600 Townsend St, #200, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 256 | We Work Management LLC | Master Subscription Agreement | Palantir Technologies Inc. | 1555 Blake Street, Suite 250, Denver, Colorado 80202 | None | $0.00 |
| 257 | We Work Management LLC | Consulting Agreement and Statement of Work | Paradigm Strategy Inc. | 3000 El Camino Real, STE 4-200, Palo Alto, CA 94306 | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 258 | We Work Management LLC | Subscription Agreement and Outstanding Orders | PitchBook Data Inc. | 901 Fifth Avenue, Suite 1200, Seattle, WA 98164, UNITED STATES | None | $0.00 |
| 259 | WeWork Inc. | Master Service Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 260 | We Work Management LLC | Master Service Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 261 | We Work Management LLC | Purchase and Sale Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 262 | Common Desk Operations LLC | Unexpired Lease | Post Coworking Tenant, LLC | C/O Lovett Commercial, Attn: Kirby Liu, 1520 Oliver Street, Houston, TX 77007 | None | $0.00 |
| 263 | We Work Management LLC | Services Agreement | Practising Law Institute | 1177 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 264 | We Work Management LLC | Subscription Agreement | Precision Computer Services, Inc. | 175 Constitution Blvd. S, Shelton, CT 06464, UNITED STATES | None | $0.00 |
| 265 | We Work Management LLC | Master Service Agreement | Precision Computer Services, Inc. | 175 Constitution Blvd. S, Shelton, CT 06464, UNITED STATES | None | $0.00 |
| 266 | We Work Management LLC | Services Agreement | Presidio Networked Solutions Group LLC | Presidio Networked Solutions Group LLC, One Penn Plaza, Suite 2832, New York, NY 10199, UNITED STATES | None | $472,405.90 |
| 267 | WW BuildCo LLC | Master Service Agreement | Presidio Networked Solutions Group LLC | Attn: Aaron Lovejoy, Senior Account Executive, 110 Parkway Drive South, Hauppauge, NY 11788, UNITED STATES | None | $0.00 |
| 268 | We Work Management LLC | Software Lease/License Agreement | Procore Technologies, Inc. | 6309 Carpinteria Avenue, Carpinteria, CA 93013, UNITED STATES | None | $0.00 |
| 269 | We Work Management LLC | Purchase and Sale Agreement | Procore Technologies, Inc. | 6309 Carpinteria Avenue, Carpinteria, CA 93013, UNITED STATES | None | $0.00 |
| 270 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | PSPIB Longhorns REIT LLC, et. al. | PSP Investments, 1250 Boulevard René-Levesque West, Suite 1400, Montreal, Quebec H3B 5E9 Canada | None | $0.00 |
| 271 | We Work Management LLC | Master Service Agreement | Rauch-Milliken International, Inc. | ATTN: Van A. Meador Jr, Director of Operations, 4400 Trenton St #A, Metaire, LA 70006, UNITED STATES | None | $8,443.50 |
| 272 | WeWork Canada GP ULC | Services Agreement | Redpath Relocations Inc | #101, 7 Burbridge St, Coquitlam, BC V3K7B2, CANADA | None | $21,530.96 |
| 273 | We Work Management LLC | Data Processing Agreement | Relx Inc (Dba Lexisnexis) | 1801 Varsity Drive, Raleigh, NC 27606, UNITED STATES | None | $0.00 |
| 274 | We Work Management LLC | Pricing Agreement | Relx Inc (Dba Lexisnexis) | 1801 Varsity Drive, Raleigh, NC 27606, UNITED STATES | None | $0.00 |
| 275 | We Work Management LLC | Services Agreement | Restaurant Associates, Inc. | Attn: Dick Cattani, CEO Premier Catering Division, 132 West 31st Street, 6th Floor, New York, NY 10001, UNITED STATES | None | $6,965.47 |
| 276 | WW BuildCo LLC | Consulting Agreement | Rizzo Group | 1333 Broadway, Suite 500, New York, NY 10018, UNITED STATES | None | $0.00 |
| 277 | We Work Management LLC | Staffing Agreement | Robert Half Management Resources | 125 Park Avenue, 4th Floor, New York, NY 10017, UNITED STATES | None | $0.00 |
| 278 | We Work Management LLC | Services Agreement | Rollbar, Inc. | 665 3rd Street, #150, San Francisco, CA 94107, UNITED STATES | None | $0.00 |
| 279 | We Work Management LLC | Staffing Agreement | ROUTERATI INC. | 500 7th Ave, 8th Floor, New York, NY 10018, UNITED STATES | None | $0.00 |
| 280 | We Work Management LLC | Consulting Agreement | RSM US LLP | One South Wacker Drive, Suite 800, Chicago, IL 60606, UNITED STATES | None | $0.00 |
| 281 | We Work Management LLC | BetterCloud Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd, Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $14,946.06 |
| 282 | We Work Management LLC | Chrome Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd., Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 283 | We Work Management LLC | Google Workspace Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd., Suite 720, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 284 | We Work Management LLC | Master Service Agreement | SADA Systems, Inc. | 5250 Lankershim Blvd., Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 285 | WW Onsite Services LLC | Network Monitoring & Support Order | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 286 | We Work Management LLC | Order Form for Tableau Cloud | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | Revised scope and payment terms | $0.00 |
| 287 | We Work Management LLC | Professional Services Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 288 | We Work Management LLC | Co-Marketing Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 289 | We Work Management LLC | Order Form Q-08568461 | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | Revised scope and payment terms | $0.00 |
| 290 | We Work Management LLC | Sponsorship Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 291 | We Work Management LLC | Software Lease/License Agreement | Saleslsoft, Inc. | Attn: Kyle Porter, CEO, 1180 Peachtree Street NW, Suite 600, Atlanta, GA 30309, UNITED STATES | None | $0.00 |
| 292 | We Work Management LLC | Subscription Agreement | Saleslsoft, Inc. | Attn: Kyle Porter, CEO, 1180 Peachtree Street NW, Suite 600, Atlanta, GA 30309, UNITED STATES | None | $0.00 |
| 293 | We Work Management LLC | Master Service Agreement | Sam Tell and Son Inc | ATTN: Marc Tell, CEO, 300 Smith Street, Farming Dale, NY 11735, UNITED STATES | None | $0.00 |
| 294 | We Work Management LLC | Subscription Agreement | Segment.io. Inc. | 101 15th Street, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 295 | WeWork Services LLC | Referral Agreement | SendGrid, Inc. | ATTN: Jennifer Litroja, 1801 California Street, Suite 500, Denver, CO 80202, UNITED STATES | None | $0.00 |
| 296 | Common Desk Operations LLC | Services Agreement | SERVICE FIRST CLEANING LLC | 1408 N. Riverfront Blvd, Suite 207, Dallas, TX 75207, UNITED STATES | None | $611.61 |
| 297 | WW BuildCo LLC | Construction Agreement | SERVPRO of North West Manhattan- Disaster Recovery Team | 112 Mott Street, Oceanside, NY 11572, UNITED STATES | None | $89,316.01 |
| 298 | WW BuildCo LLC | Master Service Agreement | SHI International Corp | ATTN: Jaci Brennan, 290 Davidson Ave, Somerset, NJ 08873, UNITED STATES | None | $0.00 |
| 299 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | Signal Media Intelligence Inc. | 1209 Orange Street, New Castle County, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 300 | We Work Management LLC | Subscription Agreement | Simon Data Inc | 821 Broadway, New York, NY 10003, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 301 | We Work Management LLC | Software Lease/License Agreement | Simon Data Inc | 821 Broadway, Suite 400, New York, NY 10003, UNITED STATES | None | $0.00 |
| 302 | We Work Management LLC | Software Lease/License Agreement | SimpleLegal, Inc. | 144 S WHISMAN RD, SUITE #F, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $17,858.00 |
| 303 | We Work Management LLC | Order Form | SimpleLegal, Inc. | 144 S WHISMAN RD, SUITE #F, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $0.00 |
| 304 | WeWork Companies U.S. LLC | Engagement Letter | Simpson Thacher & Bartlett LLP | 425 Lexington Avenue, New York, NY 10017 | None | $17,537.50 |
| 305 | WeWork Companies U.S. LLC | Engagement Letter | Smart & Biggar LP | 55 Metcalfe Street, Suite 1000, Ottawa ON, K1P 6L5 Canada | None | $514.41 |
| 306 | We Work Management LLC | Software Subscription Agreement | Smartling Inc | 1375 Broadway, 14th Floor, New York, NY 10018, UNITED STATES | Revised pricing and payment terms | $0.00 |
| 307 | We Work Management LLC | Service Schedule Agreement | Smartling Inc | 1375 Broadway, 14th Floor, New York, NY 10018, UNITED STATES | Revised pricing and payment terms | $0.00 |
| 308 | We Work Management LLC | Software Lease/License Agreement | Snowflake Inc. | P.O. BOX 734951, DALLAS, TX 75373-4951, UNITED STATES | None | $49,529.20 |
| 309 | We Work Management LLC | Subscription Agreement | SocialSign.in, Inc | 248 Route 25A, Suite 24, East Setauket, NY 11733, UNITED STATES | None | $357.93 |
| 310 | We Work Management LLC | Master Service Agreement | SocialSign.in, Inc | 248 Route 25A, Suite 24, East Setauket, NY 11733, UNITED STATES | None | $0.00 |
| 311 | We Work Management LLC | Assignment and Assumption | SoftServe, Inc. | 12800 University Drive, Suite 410, Fort Myers, FL 33907, UNITED STATES | None | $199,346.73 |
| 312 | We Work Management LLC | Purchase and Sale Agreement | Specialty Lighting Group, LLC | 74 PICKERING STREET, PORTLAND, CT 06480, UNITED STATES | None | $0.00 |
| 313 | WW BuildCo LLC | Master Service Agreement | Spectrum Technologies, a Division of J&M Brown Company Inc | ATTN: Terry Kilduff, 267 Amory St, Jamaica Plain, MA 02130, UNITED STATES | None | $0.00 |
| 314 | We Work Management LLC | Purchase and Sale Agreement | Sprout Social, Inc. | 131 S. Dearborn St., Suite 700, Chicago, IL 60603, UNITED STATES | None | $0.00 |
| 315 | We Work Management LLC | Software Lease/License Agreement | Sprout Social, Inc. | 131 S, Dearborn St., Suite 700, Chicago, IL 60603, UNITED STATES | None | $0.00 |
| 316 | WeWork Companies U.S. LLC | Staffing Agreement | Staffed Inc. | 379 West Broadway, 4th Floor, New York, NY 10012, UNITED STATES | None | $0.00 |
| 317 | We Work Management LLC | Services Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 318 | We Work Management LLC | Master Service Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 319 | We Work Management LLC | Product and Service Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 320 | We Work Management LLC | Services Agreement | Stormloop Technologies LLC | 507 Green Hill, Berwyn, PA 19312, UNITED STATES | None | $0.00 |
| 321 | We Work Management LLC | Services Agreement | Stripe Payments Australia Pty Ltd. | Level 7, 222 Exhibition Street, Melbourne, VIC, AUSTRALIA | None | $0.00 |
| 322 | We Work Management LLC | Services Agreement | Stripe Payments Canada Ltd. | 1200 Waterfront Centre, 200 Burrad Street, Vancouver, BC 7X 1T2, CANADA | None | $0.00 |
| 323 | We Work Management LLC | Services Agreement | Stripe Payments Singapore Pte. Ltd. | 8 Marina Boulevard, Singapore, SINGAPORE | None | $0.00 |
| 324 | We Work Management LLC | Services Agreement | Stripe, Inc. | 510 Townsend Street, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 325 | We Work Management LLC | Consulting Agreement | Studio Rodrigo LLC | 573 Sackett Street, Brooklyn, NY 11217, UNITED STATES | None | $0.00 |
| 326 | WeWork Companies U.S. LLC | Master Service Agreement | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 327 | We Work Management LLC | Master Service Agreement | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 328 | We Work Management LLC | Statement of Work | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 329 | WW BuildCo LLC | Consulting Agreement | Syska Hennessy Group Inc | 1515 Broadway, New York, NY 10036, UNITED STATES | None | $0.00 |
| 330 | TBD (Common Desk) | Unexpired Lease | TBD | TBD | None | $0.00 |
| 331 | WeWork Companies U.S. LLC | Consulting Agreement | Tevora Business Solutions, Inc. | One Spectrum Pointe Drive, Suite 200, Lake Forest, CA 92630, UNITED STATES | None | $24,174.64 |
| 332 | We Work Management LLC | Consulting Agreement | Tevora Business Solutions, Inc. | One Spectrum Pointe Drive, Suite 200, Lake Forest, CA 92630, UNITED STATES | None | $0.00 |
| 333 | WeWork Canada GP ULC | Pricing Agreement | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603 Stm, Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 334 | WeWork Canada GP ULC | Insurance Policies | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603, Stn. Waterloo, Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 335 | We Work Management LLC | Insurance Policies | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603, Stn. Waterloo, Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 336 | We Work Management LLC | Services Agreement | The Printing House Limited | 1403 Bathurst Street, Toronto, ON M5R 3H8, CANADA | None | $39.07 |
| 337 | We Work Management LLC | Order Form for West Proflex | Thomson Reuters (DBA West Publishing Corporation) | 610 Opperman Drive, P.O. BOX 64833, St. Paul, MN 55164, UNITED STATES | None | $0.00 |
| 338 | We Work Management LLC | Services Agreement | Thomson Reuters (DBA West Publishing Corporation) | 610 Opperman Drive, P.O. BOX 64833, St. Paul, MN 55164, UNITED STATES | None | $0.00 |
| 339 | TBD (Common Desk) | Unexpired Lease | TPP EPA, LLC | c/o Entrada Development, LLC, 11075 Santa Monica Blvd., Suite 250, Los Angeles, California 90025, Attn: Reuben Berman | None | $0.00 |
| 340 | We Work Management LLC | Software Lease/License Agreement | TRACER LABS, INC. | 10 Hudson Yards, 25th Floor, New York, NY 10001, UNITED STATES | None | $4,166.53 |
| 341 | We Work Management LLC | Consulting Agreement | Traxion Group, Inc | 1826 N Lincoln Park, West Suite 1, Chicago, IL 60614, UNITED STATES | None | $12,000.00 |
| 342 | We Work Management LLC | License Agreement | Trimble Inc (DBA SketchUp) | 935 Stewart Drive, Sunnyvale, CA 94085, UNITED STATES | None | $0.00 |
| 343 | We Work Management LLC | Services Agreement | TripActions Inc (DBA Navan) | 490 Sherman Ave, Palo Alto, CA 94306, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 344 | We Work Management LLC | Purchase and Sale Agreement | Tripleseat Software LLC | 300 Baker Ave, Concord, MA 07120, UNITED STATES | None | $107.38 |
| 345 | We Work Management LLC | Software License/License Agreement | Tripleseat Software LLC | 300 Baker Ave, Concord, MA 07120, UNITED STATES | None | $0.00 |
| 346 | WW BuildCo LLC | Construction Agreement | Turner Construction Company | 875 Hudson Street, New York, NY 10014, UNITED STATES | None | $0.00 |
| 347 | We Work Management LLC | Order Form (Sendgrid) | Twilio Inc. | 101 Spear Street, 1st Floor, San Francisco, CA, 94105 | None | $0.00 |
| 348 | We Work Management LLC | Order Form (Segment) | Twilio Inc. | 101 Spear Street, 1st Floor, San Francisco, CA, 94105 | None | $0.00 |
| 349 | We Work Management LLC | Software Lease/License Agreement | UiPath, Inc | 90th Park Ave, 20th Floor, New York, NY 10016, UNITED STATES | None | $0.00 |
| 350 | We Work Management LLC | Master Service Agreement and Oustanding Orders | Unbabel Inc | 345 California Street, Suite 600 & 700, San Francisco, CA 94104, UNITED STATES | None | $0.00 |
| 351 | We Work Management LLC | Software Lease/License Agreement | Unbabel Inc | 399 Fremont Street, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 352 | We Work Management LLC | Contractor Agreement | Unity Building Services, Inc. | 379 Fifth Avenue, 2nd Floor, New York, NY 10016, UNITED STATES | None | $200,000.00 |
| 353 | We Work Management LLC | Services Agreement | Universal Smart Cards Inc | 4445 Eastgate Mall, Suite 200, San Diego, CA 92121, UNITED STATES | None | $11,831.65 |
| 354 | We Work Management LLC | Leave Administration Agreement | Unum Group | Attn: Absence Management Center, 1 Fountain Square, Chattanooga, Tennessee 37402, United States | None | $0.00 |
| 355 | We Work Management LLC | Data Processing Agreement | Upflex, Inc. | 833 Broadway, 2nd Floor, New York, NY 10003, UNITED STATES | None | $65,823.00 |
| 356 | We Work Management LLC | Services Agreement | Upflex, Inc. | 833 Broadway, 2nd Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 357 | We Work Management LLC | Subscription Agreement | Urban Airship, Inc (DBA Airship) | 1225 West burnside St., Suit 401, Portland, OR 97209, UNITED STATES | None | $10,618.70 |
| 358 | WeWork Canada GP ULC | Construction Agreement | Urban Outline Building Group Ltd. | 2 Bloor Street East, Suite 3500, Toronto, ON M4W 1A8, CANADA | None | $64,328.00 |
| 359 | We Work Management LLC | Software Lease/License Agreement | Valimail, Inc. | 1942 Broadway, Ste 314C, Boulder, CO 80302, UNITED STATES | None | $0.00 |
| 360 | We Work Management LLC | Subscription Agreement | VANTA INC | 369 Hayes St., San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 361 | We Work Management LLC | Network Transfer Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY 10001, UNITED STATES | None | $14,366.73 |
| 362 | WeWork Companies U.S. LLC | Consulting Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY 10001, UNITED STATES | None | $0.00 |
| 363 | We Work Management LLC | Consulting Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY 10001, UNITED STATES | None | $0.00 |
| 364 | WeWork Companies U.S. LLC | Data Protection Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 365 | We Work Management LLC | License Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 366 | We Work Management LLC | Data Protection Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 367 | We Work Management LLC | Subscription Agreement | VIRTRU CORPORATION | 1808 Florida Avenue N.W., Washington, DC 20009, UNITED STATES | None | $0.00 |
| 368 | We Work Management LLC | Software Lease/License Agreement | VIRTRU CORPORATION | 1801 Pennsylvania Ave NW, 5th Floor, Washington, DC 20006, UNITED STATES | None | $0.00 |
| 369 | WeWork Companies U.S. LLC | Consulting Agreement | VoconDesign Inc. | 3142 Prospect Avenue E., Cleveland, OH 44115, UNITED STATES | None | $0.00 |
| 370 | WW BuildCo LLC | Consulting Agreement | VoconDesign Inc. | 3142 Prospect Avenue E., Cleveland, OH 44115, UNITED STATES | None | $0.00 |
| 371 | WW BuildCo LLC | Services Agreement | Wachter Inc | 16001 W 99th St, Lenexa, KS 66219, UNITED STATES | None | $11,081.10 |
| 372 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | Waller Creek Holdings LP, et. al. | Ivanhoe Holdings U.S. Inc., 1001, Square Victoria, C-500, Montréal, Québec, Canada, H2Z 2B5 | None | $0.00 |
| 373 | We Work Management LLC | Software Lease/License Agreement | WHISTIC, INC | 1982 W Pleasant Grove Blvd, Suite H, Pleasant Grove, UT 84062, UNITED STATES | None | $0.00 |
| 374 | WW BuildCo LLC | Consulting Agreement | Wise One Solutions LLC | 1020 Bonner Bussells Drive, Southport, NC 28561, UNITED STATES | None | $2,458.78 |
| 375 | We Work Management LLC | Master Service Agreement | Wisetek Solutions, Inc. | ATTN: Gary McCarthy, Director of Sales Operations, 3200 Hubbard Road, Hyattsville, MD 20785, UNITED STATES | None | $0.00 |
| 376 | WeWork Companies U.S. LLC | Consulting Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 377 | We Work Management LLC | Consulting Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 378 | We Work Management LLC | Assignment and Assumption Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 379 | We Work Management LLC | Purchase and Sale Agreement | Workday, Inc. | 6110 Stoneridge Mall Road, Pleasanton, CA 94068, UNITED STATES | Revised scope and payment terms | $0.00 |
| 380 | We Work Management LLC | Subscription Agreement | Workday, Inc. | 6110 Stoneridge Mall  Road,, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 381 | We Work Management LLC | Statement of Work | Workday, Inc. | 6230 Stoneridge Mall Road, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 382 | We Work Management LLC | Services Agreement | Workday, Inc. | 6230 Stoneridge Mall Road, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 383 | We Work Management LLC | Services Agreement | Workiva, Inc. | 2900 University Boulevard, Ames, IA 50010, UNITED STATES | Revised scope | $0.00 |
| 384 | We Work Management LLC | Employee Benefit Agreement | Workplace Options LLC | 2912 Highwoods Blvd, Suite 100, Raleight, NC 27604, UNITED STATES | None | $0.00 |
| 385 | We Work Management LLC | Assignment and Assumption Agreement | Yardi Systems, Inc | 430 S. Fairview Ave, Santa Barbara, CA 93117, UNITED STATES | None | $1,065,882.17 |
| 386 | WeWork Companies U.S. LLC | Master Relationship Agreement | Yardi Systems, Inc. | 430 South Fairview Avenue, Goleta, CA 93117, UNITED STATES | None | $0.00 |

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 387 | WeWork Companies U.S. LLC | Joint Venture Agreement | Yardi Systems, Inc. | Attn: Arnold Brier, General Counsel, 430 S. Fairview Ave., Santa Barbara, CA 93117, UNITED STATES | None | $0.00 |
| 388 | We Work Management LLC | Operating Agreement | Yardi Systems, Inc. | 430 S. Fairview Ave., Santa Barbara, CA 93117, UNITED STATES | None | $0.00 |
| 389 | WeWork Companies U.S. LLC | Subscription Agreement | Yext Inc | 1 Madison Avenue, 5th Floor, New York, NY 10010, UNITED STATES | None | $0.00 |
| 390 | We Work Management LLC | Subscription Agreement | Yext Inc | 61 9th Avenue, New York, NY 10011, UNITED STATES | None | $0.00 |
| 391 | We Work Management LLC | Software Lease/License Agreement | Zebrafish Labs Inc. | 423 Tehama Street, Floor 1, San Francisco, CA 94103, UNITED STATES | None | $481.00 |
| 392 | We Work Management LLC | Services Agreement | Zebrafish Labs Inc. | 423 Tehama Street, Floor 1, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 393 | We Work Management LLC | Subscription Agreement | Zoom Video Communications Inc | 55 Almaden Boulevard, Suite 600, San Jose, CA 95113, UNITED STATES | None | $3,794.59 |
| 394 | WeWork Companies U.S. LLC | Software Lease/License Agreement | ZoomInfo Technologies LLC | 805 Broadway Street, Suite 900, Vancouver, WA 98660, UNITED STATES | None | $0.00 |
| 395 | We Work Management LLC | Software Lease/License Agreement | ZoomInfo Technologies LLC | 805 Broadway Street, Suite 900, Vancouver, WA 98660, UNITED STATES | None | $0.00 |

1. Unless otherwise indicated, any active related amendments or addendums, as well as any outstanding orders governed by the contracts listed, are also deemed to be assumed

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 1 | Unexpired Lease | 625 W. Adams, LLC | 9830 Colonnade Boulevard, Suite 600, San Antonio, TX, 78230-2239 | 625 West Adams Street Floor 19 Chicago, IL 60661 | 625 West Adams Street Tenant LLC | Reduce term, convert to gross lease, add revenue share, | $400,000.00 at a later date | 5/9/2024 |
| 2 | Unexpired Lease | 1900 McKinney Harwood LLC | 2001 Ross Avenue, Suite 3400, Dallas, TX, 75201 | 1920 McKinney Ave Dallas, TX 75201 | 1920 McKinney Ave Tenant LLC | Reduce term, reduce premises, reduce rent, reduce security deposit, add revenue share | $184,966.86 at a later date | 5/13/2024 |
| 3 | Unexpired Lease | 600 B Street San Diego Owner, LLC | 1999 Avenue of the Stars, Ste 3425, Los Angeles, CA, 90067 | 600 B St San Diego, CA 92101 | 600 B Street Tenant LLC | Reduce premises, reduce rent, reduce guaranty | $1,526,726.00 at a later date | 5/14/2024 |
| 4 | Unexpired Lease | 1450 Broadway, LLC | 1450 Broadway, 17th Floor, New York, NY, 10018 | 1450 Broadway New York, NY 10018 | 1450 Broadway Tenant LLC | Reduce term, reduce rent, reduce premises, add profit share, amend guaranty, amend guaranty burndown | $0 | 5/14/2024 |
| 5 | Unexpired Lease | 222 Broadway Owner, LLC | 142 West, 57th Street, New York, NY, 10019 | 222 Broadway New York, NY 10038 | WW 222 Broadway LLC | None | $2,117,807 | TBD |
| 6 | Unexpired Lease | KS SP Nominee Inc., ARI SP Nominee Inc., KS SP | 1 York Street, Suite 1100, Toronto, Ontario, M5J 0B6 | 40 King Street West Toronto, ON M5H 3Y2 | WeWork Canada LP ULC | None | $227,902 | TBD |
| 7 | Unexpired Lease | DTS Office Holdings, LLC | 10801 West Charleston Blvd., Suite 300, Las Vegas, NV, 89135 | 10845 Griffith Peak Drive Las Vegas, NV 89135 | 10845 Griffith Peak Drive Tenant LLC | None | $206,729 | TBD |
| 8 | Unexpired Lease | Wynwood DS, LLC | 310 NW 26th Street, Suite B, Miami, FL, 33127 | 360 NW 27th Street Miami, FL 33127 | 360 NW 27th Street Tenant LLC | None | $143,088 | TBD |
| 9 | Unexpired Lease | Bellevue Place Office, LLC | Post Office Box 908, Bellevue, WA, 98009 | 800 Bellevue Way NE Bellevue, WA 98004 | 800 Bellevue Way Tenant LLC | None | $135,225 | TBD |
| 10 | Unexpired Lease | McGavock Pike Partners, GP | PO Box 60865, Nashville, TN, 37206 | 901 Woodland Street Nashville, TN 37206 | 901 Woodland St Tenant LLC | None | $84,103 | TBD |
| 11 | Unexpired Lease | Seaport B/C Retail Owner LLC | 33 Boylston Street, Suite 3000, Chestnut Hill, MA, 02467 | 77 Sleeper Street Boston, MA 02210 | 77 Sleeper Street Tenant LLC | None | $6,104 | 5/17/2024 |
| 12 | Unexpired Lease | GSJC Master Lessee, L.L.C | 200 West Street, New York, NY, 10282-2198 | 30 Hudson St Jersey City, NJ 07302 | 30 Hudson Street Tenant LLC | None | $72,448 | TBD |
| 13 | Unexpired Lease | Onni Brand Limited Partnership | 1010 Seymour Street, Suite 200, Vancouver, BC, V6B 3M6 | 611 North Brand Boulevard WeWork - Suite 1300 Glendale, CA 91203 | 611 North Brand Boulevard Tenant LLC | None | $206,572 | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 14 | Unexpired Lease | Fairway East Kennedy Owner, LLC | 800 N. Magnolia Avenue, Suite 1625, Orlando, FL, 32803 | 501 East Kennedy Boulevard Suite 1400 Tampa, FL 33602 | 501 East Kennedy Boulevard Tenant LLC | None | $214,249 | TBD |
| 15 | Unexpired Lease | Cousins Railyard LP | 500 East Morehead Street, Suite 200, Charlotte, NC, 28202 | 1422 S Tryon Street Suite 300 Charlotte, NC 28203 | South Tryon Street Tenant LLC | None | $152,764 | TBD |
| 16 | Unexpired Lease | Quarry Oaks Owner LP | 201 W. 5th Street, Suite 1200, Austin, TX, 78701 | 10900 Stonelake Boulevard Austin, TX 78759 | 10900 Stonelake Boulevard Tenant LLC | None | $181,686 | TBD |
| 17 | Unexpired Lease | Giralda PB LLC | 2222 Ponce de Leon, Blvd, Coral Gables, FL, 33134 | 2222 Ponce De Leon Blvd Miami, FL 33134 | 2222 Ponce De Leon Blvd Tenant LLC | None | $41,680 | TBD |
| 18 | Unexpired Lease | Giralda Complex LLC | 299 Alhambra Circle, Suite 512, Coral Gables, FL, 33134 | 255 Giralda Avenue Coral Gables, FL 33134 | 255 Giralda Avenue Tenant LLC | None | $0 | TBD |
| 19 | Unexpired Lease | W-SF Goldfinger Owner VIII, L.L.C. | 917 West Washington Blvd, Suite 308, Chicago, IL, 60607 | 167 North Green Street Floor 4 Chicago, IL 60607 | 167 N Green Street Tenant LLC | None | $325,858 | TBD |
| 20 | Unexpired Lease | LS2 Office, LLC | PO Box 908, Bellevue, WA, 98009 | 400 Bellevue Way NE Bellevue, WA 98004 | 400 Lincoln Square Tenant LLC | None | $373,300 | TBD |
| 21 | Unexpired Lease | Cordova II Equities Inc. | 300 - 1030 West Georgia Street, Vancouver, British Columbia, V6E 2Y3 | 333 Seymour Street Vancouver, BC V6B 5A7 | WeWork Canada LP ULC | None | $30,966 | TBD |
| 22 | Unexpired Sublease | Salesforce.com, Inc | One Market, 3rd Floor, San Francisco, CA, 94105 | 333 Seymour Street Vancouver, BC V6B 5A7 | WeWork Canada LP ULC | None | $0 | TBD |
| 23 | Unexpired Lease | Domain Northside Office Property Owner, LP | 1819 Wazee Street, Denver, CO, 80202 | 11801 Domain Blvd WeWork 3rd Floor Austin, TX 78758 | 11801 Domain Blvd Tenant LLC | None | $295,514 | TBD |
| 24 | Unexpired Lease | US VI 2 Brickell, LLC | 11605 North Community House Road, Suite 600, Charlotte, NC, 28277 | 78 SW 7th Street Miami, FL 33130 | 78 SW 7th Street Tenant LLC | None | $412,835 | TBD |
| 25 | Unexpired Lease | The Building at 575 Fifth Office Owner LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 575 5th Ave New York, NY 10017 | 575 5th Avenue Tenant LLC | Reduce premises, reduce term for part of premises, reduce rent, convert to gross lease, add profit share, reduce guaranty, amend guaranty burndown | $0 | 5/16/2024 |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 26 | Unexpired Lease | 500-512 Seventh Avenue Limited Partnership | 512 Seventh Avenue, 16th floor, New York, NY, 10018 | 500 7th Avenue New York, NY 10018 | 500 7th Avenue Tenant LLC | TBD | TBD | TBD |
| 27 | Unexpired Lease | BNY Tower Associates LLC | 345 Park Avenue, 33rd Floor, New York, NY, 10154 | 63 Flushing Avenue Brooklyn, NY 11205 | WW Brooklyn Navy Yard LLC | TBD | TBD | TBD |
| 28 | Unexpired Lease | 1701 Rhode Island Inc. | 1030 15th Street NW, Suite 250 West, Washington, DC, 20005 | 1701 Rhode Island Avenue Northwest Washington, DC 20036 | 1701 Rhode Island Avenue Northwest Tenant LLC | TBD | TBD | TBD |
| 29 | Unexpired Lease | 79 Madison LLC | 1114 Avenue of the Americas, 11th Floor, New York, NY, 10036 | 27 E 28th St New York, NY 10016 | WW 79 Madison LLC | TBD | TBD | TBD |
| 30 | Unexpired Lease | Three Galleria Office Buildings, LLC | One Riverway, Suite 100, Houston, TX, 77056 | 2700 Post Oak Blvd Houston, TX 77056 | 2700 Post Oak Blvd. Tenant LLC | Reduce premises, reduce rent, convert to gross lease, reduce guaranty, amend guaranty burndown | $618,042.92 at a later date | 5/18/2024 |
| 31 | Unexpired Lease | 11 Park Place LLC | 1114 Avenue of the Americas, 11th Floor, New York, NY, 10036 | 11 Park Pl New York, NY 10007 | 11 Park Pl Tenant LLC | TBD | TBD | TBD |
| 32 | Unexpired Lease | CSHV 615 College. LLC | PO Box 102151, Pasadena, CA, 91030-1030 | 615 S. College Street WeWork Floor 10 Charlotte, NC 28202 | 615 S. Tenant LLC | Reduce premises, reduce term, reduce rent, convert to gross lease, amend guaranty burndown | $0 | 5/17/2024 |
| 33 | Unexpired Lease | 460 Park Avenue South Associates LLC | 3 Columbus Circle, Suite 2300, New York, NY, 10019 | 460 Park Avenue South New York, NY 10016 | 460 Park Ave South Tenant LLC | TBD | TBD | TBD |
| 34 | Unexpired Lease | CIO Terraces, LLC | Suite 32 10-666 Burrard Street, Vancouver, BC, V6C 2x8 | 5960 Berkshire Lane Floor 6 Dallas, TX 75225 | 5960 Berkshire Lane Tenant LLC | Reduce premises, reduce parking, reduce rent | $42,462.37 at a later date | 5/24/2024 |
| 35 | Unexpired Lease | SRI Eleven Minneapolis 225 LLC | Dept CH 10971, Palatine, IL, 60055-0971 | 225 South 6th Street Suite 3900 Minneapolis, MN 55402 | 225 South 6th St Tenant LLC | Reduce premises, reduce term, reduce rent, reduce guaranty, amend guaranty burndown, convert to gross lease, later convert to modified net lease, add revenue shareReduce premises, reduce guaranty, reduce term, convert to gross lease, add revenue share | $260,899.54 at a later date | 5/17/2024 |
| 36 | Unexpired Lease | Dream Office LP | 30 Adelaide Street East, Suite 301, State Street Financial Centre, Toronto, Ontario, M5C 3H1 | 357 Bay Street Toronto, ON M5H 4A6 | WeWork Canada LP ULC | TBD | TBD | TBD |

DRAFT - Schedule of Assumed Unexpired Leases

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 37 | Unexpired Lease | Embarcadero Center Associates | Lobby Level, Suite One, San Franscisco, CA, 94111 | 2 Embarcadero Center San Francisco, CA 94111 | 2 Embarcadero Center Tenant LLC | TBD | TBD | TBD |
| 38 | Unexpired Lease | SOF-XI PCT Single Tower Owner, L.L.C. | 100 Pine Street, Suite 3000, San Francisco, CA, 94111 | 222 Pacific Coast Highway El Segundo, CA 90245 | 222 North Sepulveda Tenant LLC | TBD | TBD | TBD |
| 39 | Unexpired Storage Lease | SOF-XI PCT Single Tower Owner, L.L.C. | 100 Pine Street, Suite 3000, San Francisco, CA, 94111 | 222 Pacific Coast Highway El Segundo, CA 90245 | 222 North Sepulveda Tenant LLC | TBD | TBD | TBD |
| 40 | Unexpired Lease | NW 524 Soho LLC | 1819 Wazee Street, Denver, CO, 80202 | 524 Broadway New York, NY 10012 | 524 Broadway Tenant LLC | Reduce premises, reduce rent, convert to gross lease, add profit share, all furniture remaining in surrender premises deemed abandoned and transferred to landlord | $505,682.20 at a later date | 5/23/2024 |
| 41 | Unexpired Lease | AG-LC Warner Center Phase IV Owner, L.P. | 2000 Avenue of the Stars, Suite 1020, Los Angeles, CA, 90067 | 21255 Burbank Boulevard Suite 120 Los Angeles, CA 91367 | 21255 Burbank Boulevard Tenant LLC | Reduce premises, reduce term, reduce rent, convert to gross lease, add revenue share, amend guaranty burndown | $206,824.71 | 5/20/2024 |
| 42 | Unexpired Lease | Wells REIT II - 80 M Street, LLC | 701 Pennsylvania Avenue, NW, Suite 560, Washington, DC, 20004 | 80 M Street SE Washington, DC 20003 | 80 M Street SE Tenant LLC | Reduce term, reduce rent, reduce guaranty, add revenue share, add rent credit | $0 | 5/24/2024 |
| 43 | Unexpired Lease | AG Redstone Owner, L.P | 150 Paularino, Suite D182, Costa Mesa, CA, 92626 | 4041 Macarthur Boulevard Suite 400 Newport Beach, CA 92660 | 4041 Macarthur Boulevard Tenant LLC | TBD | TBD | TBD |
| 44 | Unexpired Lease | BCSP 515 North State Street LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 515 N State St Chicago, IL 60654 | 515 N State Street Tenant LLC | TBD | TBD | TBD |
| 45 | Unexpired Lease | 1201 TAB Owner, LLC | 1201 Third Avenue, Suite 520, Seattle, WA, 98101 | 1201 3rd Avenue Suite 2200 Seattle, WA 98101 | 1201 3rd Avenue Tenant LLC | TBD | TBD | TBD |
| 46 | Unexpired Lease | Trinity Centre LLC | 115 Broadway, Suite 1705, New York, NY, 10006 | 5th Floor 115 Broadway New York, NY 10006 | 115 Broadway Tenant LLC | Reduce premises, reduce rent, reduce guaranty, eliminate guaranty burndown | $632,023.84 at a later date | 5/20/2024 |
| 47 | Unexpired Lease | 400 Spectrum Holdings LLC | 550 Newport Centre Drive, Newport Beach, CA, 92660 | 400 Spectrum Center Drive Irvine, CA 92618 | 400 Spectrum Center Drive Tenant LLC | Reduce term, reduce rent, add revenue share, terminate guaranty, amend letter of credit and burndown | $254,507.61 at a later date and $1,790.11 at a later date | 5/22/2024 |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 48 | Unexpired Lease | BCal Gateway Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 460 West 50 North Salt Lake City, UT 84101 | 460 West 50 North Tenant LLC | Amend base rent, convert to gross lease, add revenue share, reduce letter of credit, amend letter of credit burndown, reduce guaranty, amend guaranty burndown | $0 | 5/22/2024 |
| 49 | Unexpired Lease | KBSIII Legacy Town Center, LLC | 5801 Tennyson Parkway, Suite 110, Plano, TX, 75024 | 6900 Dallas Parkway Floor 3 Plano, TX 75024 | 6900 North Dallas Parkway Tenant LLC | TBD | TBD | TBD |
| 50 | Unexpired Lease | CV Latitude 34, LLC | 601 South. Figueroa Street, Suite 3600, Los Angeles, CA, 90017 | 12130 Millennium Drive Suite 300 Los Angeles, CA 90094 | 12130 Millennium Drive Tenant LLC | Reduce term, reduce rent, reduce guaranty, amend letter of credit burn down | $86,247.90 at a later date and $1,798,212.12 at a later date | 5/24/2024 |
| 51 | Unexpired Lease | LORE BCA 2120 L.P. (DBA Lionstone Investment | 712 Main Street, Suite 2500, Houston, TX, 77002 | 2015 Shattuck Square Berkeley, CA 94704 | WW 2015 Shattuck LLC | TBD | TBD | TBD |
| 52 | Unexpired Lease | 177 Colorado Owner LLC | 3953 Maple Avenue, Suite 300, Dallas, TX, 75219 | 177 E Colorado Blvd Pasadena, CA 91105 | 177 E Colorado Blvd Tenant LLC | TBD | TBD | TBD |
| 53 | Unexpired Lease | MSI Holyoke LLC | 316 Occidental Avenue S, Ste. 500, Seattle, WA, 98104 | 107 Spring St Seattle, WA 98104 | WW 107 Spring Street LLC | Reduce rent, add revenue share, amend guaranty | $136,609.48 at a later date | 5/17/2024 |
| 54 | Unexpired Lease | 200 Portland Street, LLC | 65 Franklin Street, Boston, MA, 02110 | 200 Portland Street Boston, MA 02114 | 200 Portland Tenant LLC | Reduce term, reduce rent, add revenue share, reduce guaranty, amend guaranty burndown | $420,000 at a later date | 5/21/2024 |
| 55 | Unexpired Lease | AMCO 120 West Trinity | 3344 Peachtree Road, N.E., Suite 1800, Atlanta, GA, 30326 | 120 West Trinity Place Decatur, GA 30030 | 120 West Trinity Place Tenant LLC | TBD | TBD | TBD |
| 56 | Unexpired Lease | CA 5-15 West 125th LLC | 1412 Broadway, New York, NY, 10018 | 5 W 125th St New York, NY 10027 | WW 5 W 125th Street LLC | TBD | TBD | TBD |
| 57 | Unexpired Lease | 255 South King Street Limited Partnership | 270 South Hanford Street, Suite 100, Seattle, WA, 98134 | 255 S King St Ste 800 Seattle, WA 98104 | 255 S King St Tenant LLC | TBD | TBD | TBD |
| 58 | Unexpired Lease | Transbay Tower LLC | Four Embarcadero Center, Lobby Level, Suite One, San Francisco, CA, 94111 | Mission Street San Francisco, CA 94105 | 415 Mission Street Tenant LLC | TBD | TBD | TBD |
| 59 | Unexpired Lease | Esplanade Owner LLC | 535 Madison Avenue, New York, NY, 10022 | 2425 East Camelback Road Phoenix, AZ 85016 | 2425 East Camelback Road Tenant LLC | Reduce term, reduce premises, reduce rent, add revenue share | $0 | 5/22/2024 |
| 60 | Unexpired Lease | Columbia REIT - 650 California, LLC | 221 Main Street, Suite 100, San Francisco, CA, 94105 | 650 California Street San Francisco, CA 94108 | 650 California Street Tenant LLC | Reduce premises, reduce rent, reduce guaranty, add revenue share | $0 | 5/24/2024 |

DRAFT - Schedule of Assumed Unexpired Leases

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 61 | Unexpired Lease | BCSP 330 North Wabash Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 330 North Wabash Avenue Chicago, IL 60601 | 330 North Wabash Tenant LLC | Reduce term, reduce rent, convert to gross lease, add revenue share, reduce guaranty, reduce letter of credit, amend letter of credit burndown | $0 | 5/22/2024 |
| 62 | Unexpired Storage Lease | BCSP 330 North Wabash Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 330 North Wabash Avenue Chicago, IL 60601 | 330 North Wabash Tenant LLC | TBD | TBD | TBD |
| 63 | Unexpired Lease | 520 Broadway Owner, LLC | PO Box 102327, Pasadena, CA, 91189-2327 | 520 Broadway, Suite 200 Santa Monica, CA 90401 | WW 520 Broadway LLC | Extend term, reduce rent, add revenue share | $558,567.14 at a later date | 5/17/2024 |
| 64 | Unexpired Lease | CIO Bloc 83, LLC | 666 Burrard Street, Suite 3210, Vancouver, British Columbia, V6C 2X8 | 1 Glenwood Avenue Raleigh, NC 27603 | 1 Glenwood Ave Tenant LLC | Reduce premises, reduce rent, reduce parking | $57,250.39 at a later date and $246,017.66 at a later date | 5/24/2024 |
| 65 | Unexpired Lease | 200 Spectrum Center Drive LLC | 550 Newport Center Drive, Newport Beach, CA, 92660 | 200 Spectrum Center Drive Irvine, CA 92618 | 200 Spectrum Center Drive Tenant LLC | Reduce term, reduce rent, add revenue share, amend letter of credit and burndown, amend guaranty | $231,247.47 at a later date and $4,056.29 at a later date | 5/22/2024 |
| 66 | Unexpired Lease | SVF Criterion Santa Monica Corporation | 515 South Flower Street, 49th Floor, Los Angeles, CA, 90071 | 312 Arizona Ave Santa Monica, CA 90401 | WW 312 Arizona LLC | Reduce rent, reduce guaranty | $470,728.98 at a later date | 5/24/2024 |
| 67 | Unexpired Lease | Societe Immobiliere Camont Inc | 1001, Victoria Square, Suite C-500, Montreal, Quebec, H2Z 2B5 | 455 Rue Saint-Antoine Ouest Montreal, QC H2Z 1J1 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 68 | Unexpired Lease | NP 18th & Chet, LLC | 9225 Lake Hefner Parkway, Suite 200, Oklahoma, OK, 73120 | 820 18th Avenue South Nashville, TN 37203 | 820 18th Ave South Tenant LLC | TBD | TBD | TBD |
| 69 | Unexpired Lease | GW Property Services LLC | 1099 18th Street, Suite 2900, Denver, CO, 80202 | 2727 East 2nd Avenue Denver, CO 80206 | 205 North Detroit Street Tenant LLC | TBD | TBD | TBD |
| 70 | Unexpired Lease | Legacy West Investors, LP | 2001 Ross Avenue, Suite 3400, Dallas, TX, 75201 | WeWork 7700 Windrose Ave Suite G300 Plano, TX 75024 | Legacy Tenant LLC | Reduce term, reduce rent, add revenue share | $0 | 5/22/2024 |
| 71 | Unexpired Lease | MCMIF Crossroads Holdco, LLC | 425 Market Street, Suite 1050, San Francisco, CA 94105 | 1825 South Grant Street San Mateo, CA 94402 | 1825 South Grant Street Tenant LLC | Reduce term, reduce rent, convert to gross lease, add profit share, eliminate letter of credit burn down, amend guaranty | $721.65 at a later date | 5/24/2024 |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 72 | Unexpired Lease | Epic Lafayette Street LLC | 15 Watts Street, 5th Floor, New York, NY, 10013 | 148 Lafayette St, 3rd floor New York, NY 10013 | 148 Lafayette Street Tenant LLC | TBD | TBD | TBD |
| 73 | Unexpired Lease | BCAL 44 Montgomery Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 44 Montgomery Street San Francisco, CA 94104 | 44 Montgomery Street Tenant LLC | TBD | TBD | TBD |
| 74 | Unexpired Lease | AB Metro Properties Ltd | 550 Burrad Street, Suite 300, Vancouver, British Columbia, V6C 2B5 | 6060 Silver Drive 3rd-Floor Burnaby, BC V5H 0H5 | WeWork Canada LP ULC | Reduce term, reduce premises, reduce rent, add revenue share, amend guaranty burn down | $0 | 5/21/2024 |
| 75 | Unexpired Lease | Park Place Associates | 3197 Park Blvd, Palo Alto, CA, 94306 | 3101 Park Boulevard Palo Alto, CA 94306 | 3101 Park Boulevard Tenant LLC | Reduce rent, reduce guaranty, add profit share, amend letter of credit burn down | $364,714.36 at a later date | 5/24/2024 |
| 76 | Unexpired Lease | BCSP Circa Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 1615 Platte Street Denver, CO 80202 | 1615 Platte Street Tenant LLC | Reduce rent, add revenue share, amend guaranty, amend guaranty burndown | $142,947 at a later date | 5/17/2024 |
| 77 | Unexpired Lease | BCSP 8 600 Property, L.P. | 200 State Street, 5th Floor, Boston, MA, 02109 | 600 Congress Ave Austin, TX 78701 | WW 600 Congress LLC | Reduce base rent, convert to gross lease, revenue share | $75,306.74 at a later date | 5/24/2024 |
| 78 | Unexpired Lease | 575 Lex Property Owner, L.L.C. | 245 Park Avenue, 24th Floor, New York, NY, 10167 | 575 Lexington Avenue 14th floor New York, NY 10022 | 575 Lexington Avenue Tenant LLC | TBD | TBD | TBD |
| 79 | Unexpired Lease | BXP Mission 535 LP | Four Embarcadero Center Lobby Level, Suite One, San Francisco, CA, 94111 | 535 Mission St San Francisco, CA 94105 | WW 535 Mission LLC | TBD | TBD | TBD |
| 80 | Unexpired Lease | 1460 Leasehold Swighm LLC | 30 West 26th Street, 8th Floor, New York, NY, 10010 | 1460 Broadway New York, NY 10036 | 1460 Broadway Tenant LLC | Reduce rent, convert to gross lease, add profit share, reduce letter of credit, reduce guaranty | $911,568.38 at a later date | 5/22/2024 |
| 81 | Unexpired Lease | TYH Development Company LLC | 2000 Tower Oaks, Boulevard, 8th Floor, Rockville, MD, 20852 | 1775 Tysons Blvd Tysons, VA 22102 | 1775 Tysons Boulevard Tenant LLC | TBD | TBD | TBD |
| 82 | Unexpired Lease | 221 W. 6th Street (TX) Owner, LLC | Building Management Office, 221 W. 6th Street, Suite B-300, Austin, TX, 78701 | 221 West 6th Street 5th Floor Austin, TX 78701 | 221 6th Street Tenant LLC | Reduce term | $0 | 5/17/2024 |
| 83 | Unexpired Storage Lease | Sixth Street Tower, LLC | 201 W. Fifth Street, Suite 1200, Austin, TX, 78701 | 221 West 6th Street 5th Floor Austin, TX 78701 | 221 6th Street Tenant LLC | None | $0 | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 84 | Unexpired Lease | BDN 1900 Market Owner LLC | 2929 Arch Street, Suite 1800, Philadelphia, PA, 19104 | 1900 Market Street Suite 800 Philadelphia, PA 19103 | 1900 Market Street Tenant LLC | Extend term, reduce rent, reset base year for operating expenses | $188,901 at a later date | 5/17/2024 |
| 85 | Unexpired Lease | Ivanhoé Cambridge Inc. - PVM | 11742 Access via QUAI 1, Montreal, Quebec, H3B 3Y1 | 3 Place Ville Marie Montreal, QC H3B 2E3 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 86 | Unexpired Lease | CCP/MS SSIII Denver Tabor Center 1 Property O | 200 State Street, 5th Floor, Boston, MA, 02109 | 1200 17th Street Floor 27 Denver, CO 80202 | 1200 17th Street Tenant LLC | Reduce rent, convert to gross lease, reduce premises, option to further reduce premises, reduce guaranty | $0 | 5/22/2024 |
| 87 | Unexpired Lease | 85 Broad Street Property Owner LLC | 3 Bryant Park, 24th Floor, New York, NY, 10036 | 85 BROAD ST FL 18th New York, NY 10004-2783 | WW 85 BROAD LLC | TBD | TBD | TBD |
| 88 | Unexpired Sublease | LPQ 85 Broad, Inc | 50 Broad Street, 12th Floor, New York, NY, 10004 | 85 BROAD ST FL 18th New York, NY 10004-2783 | WW 85 BROAD LLC | TBD | TBD | TBD |
| 89 | Unexpired Lease | 1001 Dominion Square Management Inc. | 1010 St. Ctherine St. West, Suite 1200, Montreal, Quebec, H3B 3S3 | 1010 Rue Sainte-Catherine Ouest Montréal, QC H3G 1R3 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 90 | Unexpired Lease | 120 East 16th Street Co. LLC | 125 Park Avenue South, New York, NY, 10017 | 33 Irving Pl New York, NY 10003 | 33 Irving Tenant LLC | Reduce rent | $669,591.91 at a later date | 5/22/2024 |
| 91 | Unexpired Lease | Resnick Seaport LLC | 110 East 59th Street, 34th Floor, New York, NY, 10022-1379 | 199 Water Street New York, NY 10038 | 199 Water Street Tenant LLC | TBD | TBD | TBD |
| 92 | Unexpired Lease | 58508 Alberta Ltd. | 335 - 8th Avenue S.W., Calgary, Alberta, T2P 1C9 | 700 2 Street Southwest Calgary, AB T2P 0X1 | 700 2 Street Southwest Tenant LP | Reduce term, reduce rent, add revenue share, reduce guaranty, amend guaranty burndown | $271,893.94 CAD at a later date | 5/23/2024 |
| 93 | Unexpired Storage Lease (4103) | 58508 Alberta Ltd. | 335 - 8th Avenue S.W., Suite 900, Calgary, Alberta, T2P 1C9 | 700 2 Street Southwest Calgary, AB T2P 0X1 | 700 2 Street Southwest Tenant LP | None | None | 5/27/2024 |
| 94 | Unexpired Storage Lease (4114) | 58508 Alberta Ltd. | 335 - 8th Avenue S.W., Suite 900, Calgary, Alberta, T2P 1C9 | 700 2 Street Southwest Calgary, AB T2P 0X1 | 700 2 Street Southwest Tenant LP | None | None | 5/27/2024 |
| 95 | Unexpired Lease | College Park Coworking, LLC | 4750 Owing Mills Boulevard, Owing Mills, MD, 21117 | 7761 Greenhouse Rd. College Park, MD 20740 | 7761 Greenhouse Rd Tenant LLC | TBD | TBD | TBD |
| 96 | Unexpired Lease | 2000 Sierra Point Parkway LLC, Diamond Marina LLC and Diamond Marina II LLC | 450 Concar Drive, Suite 100, San Mateo, CA, 94402 | 400 Concar Drive San Mateo, CA 94402 | 400 Concar Drive Tenant LLC | TBD | TBD | TBD |

**<u>Exhibit B-2a</u>**

**Redline to Previously Filed Draft Schedule of
Assumed Executory Contracts and Unexpired Leases**

**Schedule of Assumed Non-Lease Executory Contracts**

| # | Debtor Legal Entity | Contract to be Assumed[1] | Assumption Counterparty | Counterparty Address | Amendments to Contract | Cure Amount |
|---|---|---|---|---|---|---|
| 1 | Common Desk Operations LLC | Unexpired Lease | 14555 Coworking, LLC | Attn: Manager, 16400 Dallas Parkway, Suite 150, Dallas, TX 75248 | None | $0.00 |
| 2 | Common Desk Operations LLC | Unexpired Lease | 226 N Front Street, LLC | C/O East West Partners, Attn: Lucien Ellison, 1450 Environ Way, Chapel Hill, NC 27517 | None | $0.00 |
| 3 | Common Desk Operations LLC | Unexpired Lease | 2500 Citywest TRS, LLC | Attn: Property Manager, 2500 CityWest Boulevard, Houston, TX 77042 | None | $0.00 |
| 4 | Common Desk Operations LLC | Unexpired Lease | 300 East Davis Owner, LLC | Attn: Daniel Doyon, 5540 Centerview Drive, Suite 204, Raleigh, NC 27606 | None | $0.00 |
| 5 | TBD (Common Desk) | Unexpired Lease | 3400 North Central Expressway Operator LLC | c/o Transwestern, 1900 West Loop South, Suite 1300, Houston, Texas 77027 | None | $0.00 |
| 6 | TBD (Common Desk) | Unexpired Lease | 650 Main Building LLC | 1980 Post Oak Blvd., Suite 1900, Houston, Texas 77056 Attn: Brandon Campbell | None | $0.00 |
| 7 | Common Desk Operations LLC | Unexpired Lease | 7801 Burnet Road LP | TBD | None | $0.00 |
| 8 | We Work Management LLC | Software Services Rider | 84codes AB | Torsgatan 26, Stockholm, SWEDEN | None | $0.00 |
| 9 | WeWork Canada LP ULC | Management Services Agreement for 1 Place Ville Marie | 9145-4090 Quebec Inc., PVM Foncia II Inc., and PVM Foncia III Inc. | Edifice Jacques-Parizeau, 1001, Victoria Square, Suite C-500, in the City of Montréal, Province of Québec, H2Z 2B5 | None | $0.00 |
| 10 | We Work Management LLC | Statement of Work | Accenture International Limited | Attention: Director of Legal Services, 1 Grand Canal Square, Grand Canal Harbou, Dublin 2, IRELAND | None | $0.00 |
| 11 | WeWork Companies U.S. LLC | Consulting Agreement | Accenture LLP | 161 North Clark Street, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 12 | We Work Management LLC | Consulting Agreement | Accenture LLP | 161 North Clark Street, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 13 | We Work Management LLC | Master Service Agreement | Activaire LLC | 190 N 10th St, Suite 304, Brooklyn, NY 11211, UNITED STATES | Price reduction | $0.00 |
| 14 | Common Desk Operations LLC | Unexpired Lease | Admiral 2R Acquisitions LLC | Attn: Andrew Stone, 52 Vanderbilt Avenue, Suite 1000, New York, NY 10017 | None | $0.00 |
| 15 | We Work Management LLC | Services Agreement | ADP, INC. | One ADP Boulevard, Roseland, NJ 07068, UNITED STATES | None | $320.49 |
| 16 | 148 Lafayette Street Tenant LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 17 | WW 1875 Connecticut LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 18 | WeWork Companies U.S. LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, 1011 DJ, Amsterdam, NETHERLANDS | None | $0.00 |
| 19 | 902 Broadway Tenant LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 20 | We Work Management LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, 1011 DJ, Amsterdam, NETHERLANDS | None | $0.00 |
| 21 | WW 745 Atlantic LLC | Services Agreement | Adyen NV | Simon Carmiggelstraat 6-50, Amsterdam, NETHERLANDS | None | $0.00 |
| 22 | We Work Management LLC | Staffing Services Agreement | Aerotek Inc. | 7301 Parkway Drive South, Hanover, MD 21076 | None | $0.00 |
| 23 | WeWork Companies U.S. LLC | Master Service Agreement | Aetna Life Insurance Company | 151 Farmington Ave, Hartford, CT 06156, UNITED STATES | None | $0.00 |
| 24 | We Work Management LLC | Business Responsibility Agreement | Aetna Life Insurance Company | Aetna Life Insurance Company - Aetna Privacy Office, 151 Farmington Ave, RE6A, Hartford, CT 06156, UNITED STATES | None | $0.00 |
| 25 | We Work Management LLC | Services Agreement | AgileBits, Inc. | ATTN: Jeff Shiner, 317 Adelaide St W, Suite 910, Toronto, ON M5V 1P9, CANADA | None | $0.00 |
| 26 | We Work Management LLC | Services Agreement | Algolia, Inc | 301 Howard St., Ste. 300, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 27 | We Work Management LLC | Software Lease/License Agreement | Algolia, Inc | 589 Howard Street, Suite 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 28 | We Work Management LLC | Services Agreement | Alight Solutions LLC | ATTN: General Counsel, 4 Overlook Point, Lincolnshire, IL 60069, UNITED STATES | None | $118.06 |
| 29 | We Work Management LLC | Master Goods and Services Agreement | Allset Inc. | 1070 Main St W, Unit 2B, Hamilton, Ontario | None | $0.00 |
| 30 | We Work Management LLC | License Agreement | Alteryx, Inc. | ATTN: General Counsel, 3345 Michelson Drive, Suite 400, Irvine, CA 92612, UNITED STATES | None | $0.00 |
| 31 | We Work Management LLC | Purchase and Sale Agreement | Alteryx, Inc. | 17200 Laguna Canyon Road, Irvine, CA 92618, UNITED STATES | None | $0.00 |
| 32 | We Work Management LLC | Pricing Agreement | Amazon Web Services, Inc. | PO BOX 84023, Seattle, WA 98124-8423, UNITED STATES | None | $299,146.39 |
| 33 | We Work Management LLC | Marketing Agreement | Amazon Web Services, Inc. | PO BOX 81226, Seattle, WA 98108, UNITED STATES | None | $0.00 |
| 34 | WeWork Companies U.S. LLC | Services Agreement | American Express Travel Related Services Company Inc | 20022 North 31st Avenue, Mail Code AZ-08-03-11, Phoenix, AZ 85207, UNITED STATES | None | $0.00 |
| 35 | We Work Management LLC | License Agreement | American Red Cross (US Only) | ATTN: Office of the General Counsel, 431 18th Street, Washington, DC 20006, UNITED STATES | None | $0.00 |
| 36 | We Work Management LLC | Services Agreement | American Red Cross (US Only) | 25688 Network Place, Chicago, IL 60673, UNITED STATES | None | $0.00 |
| 37 | We Work Management LLC | Services Agreement | Amplitude, Inc. | 631 Howard Street, Floor 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 38 | We Work Management LLC | Purchase and Sale Agreement | Amplitude, Inc. | 631 Howard Street, Floor 5, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 39 | WW BuildCo LLC | Master Service Agreement | Anixter Inc. | Attn: Peter Ferrell, 2301 Patriot Boulevard, Glenview, IL 60026, UNITED STATES | None | $0.00 |
| 40 | We Work Management LLC | Services Agreement | Anixter Inc. | 7 Santa Fe Way, East Windsor, NJ 08512, UNITED STATES | None | $0.00 |
| 41 | The We Company Management | Purchase and Sale Agreement | Anixter Inc. | 7 Santa Fe Way, East Windsor, NJ 08512, UNITED STATES | None | $0.00 |
| 42 | We Work Management LLC | Software Lease/License Agreement | Anybill Financial Services Inc | 800 Maine Ave NE, Washington, DC 20024, UNITED STATES | None | $1,340.20 |
| 43 | We Work Management LLC | Statement of Work | Aon Consulting, Inc. | 200 East Randolph Street 10th Floor Chicago, IL 60601, United States | None | $0.00 |

| # | Entity | Agreement Type | Counterparty | Address | Note | Amount |
|---|--------|----------------|--------------|---------|------|--------|
| 44 | We Work Management LLC | Services Agreement | Aon Consulting, Inc. | 200 East Randolph Street 10th Floor Chicago, IL 60601, United States | None | $0.00 |
| 45 | We Work Management LLC | Software Lease/License Agreement | APEX Analytix, LLC | 1501 Highwoods Boulevard, Suite 200, Greensboro, NC 27410, UNITED STATES | Reduced volume | $0.00 |
| 46 | We Work Management LLC | Services Agreement | APEX Analytix, LLC | 1501 Highwoods Boulevard, Suite 200, Greensboro, NC 27410, UNITED STATES | Reduced volume | $0.00 |
| 47 | We Work Management LLC | Software Lease/License Agreement | AppsFlyer, Inc. | 100 First Street, Suite 2500, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 48 | WeWork Companies U.S. LLC | Master Service Agreement | ARAG Insurance Company and/or ARAG Services LLC | ATTN: Legal Department, 500 Grand Avenue, Suite 100, Des Moines, IA 50309, UNITED STATES | None | $0.00 |
| 49 | We Work Management LLC | Purchase Order | Articulate Global, Inc. | 244 5th Avenue, Suite 2960, New York, NY 10001 | None | $0.00 |
| 50 | We Work Management LLC | Software Lease/License Agreement | Atlan Inc. | ATTN: Prukalpa Sankar, 831 N Tatnall Street, Suite M #171, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 51 | We Work Management LLC | Purchase and Sale Agreement | Atlan Inc. | 1209 Orange Street, Wilmington City, DE 19801, UNITED STATES | None | $0.00 |
| 52 | We Work Management LLC | Subscription Agreement and Software Subscription Services Rider | AuditBoard, Inc. | 12800 Center Court Drive South, Suite 100, Cerritos, CA 90703, UNITED STATES | None | $4,539.77 |
| 53 | WeWork Companies U.S. LLC | Services Agreement | BDO USA, LLP | 130 E Randolph St, #2800, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 54 | WeWork Companies U.S. LLC | Consulting Agreement | BDO USA, LLP | 622 Third Ave, Suite 3100, New York, NY 10017, UNITED STATES | None | $0.00 |
| 55 | We Work Management LLC | Consulting Agreement | BDO USA, LLP | 622 Third Ave, Suite 3100, New York, NY 10017, UNITED STATES | None | $0.00 |
| 56 | WeWork Companies U.S. LLC | Services Agreement | Beacon Hill Staffing Group | Box 846193, Boston, MA 02284, UNITED STATES | None | $0.00 |
| 57 | We Work Management LLC | Services Agreement | Beacon Hill Staffing Group | Box 846193, Boston, MA 02284, UNITED STATES | None | $0.00 |
| 58 | We Work Management LLC | Services Agreement and Statement of Work | Bell Techlogix, Inc. | 4400 W. 96th Street, Indianapolis, IN 46268, UNITED STATES | None | $92,407.20 |
| 59 | We Work Management LLC | Services Agreement | BigMarker.com LLC | 223 West Erie Street, Chicago, IL 60654, UNITED STATES | None | $0.00 |
| 60 | WeWork Companies U.S. LLC | Data Protection Agreement | BITLY INC | 139 Fifth Avenue, Floor 5, New York, NY 10010, UNITED STATES | None | $0.00 |
| 61 | We Work Management LLC | Purchase and Sale Agreement | BlackLine Systems, Inc | 21300 Victory Blvd, 12th Floor, Woodland Hills, CA 91367, UNITED STATES | None | $0.00 |
| 62 | Common Desk West 7th, LLC | Unexpired Lease | Block Younger, LLC | 14643 Dallas Parkway, Suite 950, Dallas, TX, 75354 | None | $0.00 |
| 63 | WeWork Companies U.S. LLC | Master Goods and Services Agreement | BluCar LLC (DBA Commutifi) | 1111 Pearl St, #200, Boulder, CO 80302, UNITED STATES | None | $135,709.05 |
| 64 | We Work Management LLC | Master Goods and Services Agreement | BluCar LLC (DBA Commutifi) | 1111 Pearl St, #200, Boulder, CO 80302, UNITED STATES | None | $0.00 |
| 65 | We Work Management LLC | Collaboration Agreement | BluCar LLC (DBA Commutifi) | Attn: Rich Schmelzer, CEO, PO Box 1170, Boulder, CO 80306, UNITED STATES | None | $0.00 |
| 66 | We Work Management LLC | Services Agreement | BluCar LLC (DBA Commutifi) | Attn: Rich Schmelzer, PO BOX 1170, Boulder, CO 80306, UNITED STATES | None | $0.00 |
| 67 | We Work Management LLC | Services Agreement | braXos Security Software LLC | 8000 Walton Parkway, Ste 238, New Albany, OH 43054, UNITED STATES | None | $21,350.00 |
| 68 | We Work Management LLC | Statement of Work | braXos Security Software LLC | P.O. Box 1013, New Albany, OH 43054, UNITED STATES | None | $0.00 |
| 69 | We Work Management LLC | Care Advantage Agreement Amendment and Renewal | Bright Horizons Children's Centers LLC (DBA Bright Horizons) | 2 Wells Ave, Newton, MA 02459 USA | None | $0.00 |
| 70 | WW Onsite Services LLC | WW Onsite Services LLC | Broadway Clifton Property LLC | C/O CEDARst Companies, Attn: Emilia Merchen, 1020 W. Lawrence Avenue Suite 300, Chicago, IL 60640 | None | $0.00 |
| 71 | We Work Management LLC | Services Agreement | BROWSERSTACK INC | 4512 Legacy Dr, Ste 100, Plano, TX 75024, UNITED STATES | None | $0.00 |
| 72 | We Work Management LLC | Purchase Agreement | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 73 | We Work Management LLC | Renewal Agreement | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 74 | We Work Management LLC | Software Subscription Services Rider | Bynder LLC | 24 Farnsworth St., Boston, MA 02210, UNITED STATES | None | $0.00 |
| 75 | We Work Management LLC | Collaboration Agreement | Captivate LLC | 501 7th Avenue, Suite 210, New York, NY 10018, UNITED STATES | None | $55,516.15 |
| 76 | We Work Management LLC | Consulting Agreement | CASCADE INSIGHTS, LLC | 18165 S Brookstone Dr., Dr. Oregon City, OR 97045, UNITED STATES | None | $0.00 |
| 77 | We Work Management LLC | Master Service Agreement | Cimplifi, a division of System One Holdings, LLC | Attn: Trish Anderson, 210 Sixth Avenue, Suite 3100, Pittsburgh, PA 15222, UNITED STATES | None | $43,760.75 |
| 78 | We Work Management LLC | Software Lease/License Agreement | Circle Internet Services, Inc. (DBA CircleCI) | 201 Spear St, 12th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 79 | We Work Management LLC | Renewal Order Form | Circle Internet Services, Inc. (DBA CircleCI) | 201 Spear Street, 12th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 80 | We Work Management LLC | Master Subscription Agreement | Cision US Inc. | 300 S Riverside Plaza, Chicago, IL 60606 | None | $0.00 |
| 81 | Common Desk Operations LLC | Services Agreement | CIT SOLUTIONS | 6317 Rollins Rd, Granbury, TX 76049, UNITED STATES | None | $530.43 |
| 82 | WW BuildCo LLC | Construction Agreement | CITY CONSTRUCTION GROUP, INC. | 2727 SW 26th Ave, Miami, FL 33133, UNITED STATES | None | $0.00 |
| 83 | We Work Management LLC | Software Lease/License Agreement | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 84 | We Work Management LLC | Subscription Agreement | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 85 | We Work Management LLC | Software Services Rider | CloudPlus, Inc. (DBA CloudApp) | 431 Tehama St., San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 86 | We Work Management LLC | License Agreement | Coda Project Inc | 444 Castro Street, Suite 1200, Mountain View, CA 94041, UNITED STATES | None | $0.00 |
| 87 | We Work Management LLC | Product and Service Agreement | Coda Project Inc | 444 Castro Street, Suite 1200, Mountain View, CA 94041, UNITED STATES | None | $0.00 |
| 88 | We Work Management LLC | Consulting Agreement | COGNIZANT TECHNOLOGY SOLUTIONS US CORPORATION. | 211 Quality Circle, College Station, TX 77845, UNITED STATES | None | $0.00 |
| 89 | We Work Management LLC | Statement of Work | COGNIZANT TECHNOLOGY | 211 Quality Circle, College Station, TX 77845, UNITED | None | $0.00 |

| | | SOLUTIONS US CORPORATION. | STATES | | |
|---|---|---|---|---|---|
| 90 | WeWork Companies U.S. LLC | Consulting Agreement | Collaborative Solutions, LLC | 11190 Sunrise Valley Drive, Suite 110, Reston, VA 20191, UNITED STATES | None | $9,090.00 |
| 91 | We Work Management LLC | Consulting Agreement | Collaborative Solutions, LLC | 11190 Sunrise Valley Drive, Suite 110, Reston, VA 20191, UNITED STATES | None | $0.00 |
| 92 | We Work Management LLC | Order Form | CompStak Inc | 675 6th Avenue, Fourth Floor, New York, NY 10011, UNITED STATES | None | $0.00 |
| 93 | We Work Management LLC | Purchase and Sale Agreement | CompStak Inc | 36 Cooper Square, 6th Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 94 | We Work Management LLC | Subscription Agreement | CompStak Inc | 36 Cooper Square, Sixth Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 95 | We Work Management LLC | Purchase and Sale Agreement | Confluent, Inc. | 899 WEST EVELYN AVENUE, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $0.00 |
| 96 | We Work Management LLC | Software Lease/License Agreement | Content Square, Inc. | 368 9th Avenue, Floor 11, New York, NY 10011, UNITED STATES | None | $0.00 |
| 97 | We Work Management LLC | Services Agreement | Contentful, Inc. | 101 Montgomery Street, Suite 2050, San Francisco, CA 94103, UNITED STATES | None | $20,963.02 |
| 98 | WW BuildCo LLC | Master Service Agreement | CONVERGINT TECHNOLOGIES LLC | One Commerce Drive, Schaumburg, IL 60173, UNITED STATES | None | $0.00 |
| 99 | We Work Management LLC | Subscription Agreement | Corrigo Incorporated | Attn: JLLT Counsel, 200 E Randolph, Chicago, IL 60601, UNITED STATES | None | $86,319.61 |
| 100 | Common Desk Operations LLC | Unexpired Lease | Crescent Ross Avenue Investors LLC | 2001 Ross Avenue, Suite 5411, Dallas, TX 75201 | None | $0.00 |
| 101 | Common Desk Operations LLC | Unexpired Lease | Crimson/RELP/Springwoods Parcel 1A, LLC | Attn: Property Manager, 1401 Lake Plaza Drive, Suite 200, Spring, TX 77389 | None | $0.00 |
| 102 | 110 Wall Manager LLC | Master Service Agreement | Croker Fire Drill Corporation | 235 Brooksite Drive, Hauppauge, NY 11788, UNITED STATES | None | $0.00 |
| 103 | We Work Management LLC | License Agreement | Crown Castle Fiber LLC | ATTN: Deputy General Counsel - Fiber, 55 Broad St, New York, NY 10004, UNITED STATES | None | $0.00 |
| 104 | 429 Lenox Ave Tenant LLC | Purchase and Sale Agreement | Crown Castle Fiber LLC | 8020 Katy Freeway, Houston, TX 77024, UNITED STATES | None | $0.00 |
| 105 | WeWork Inc. | Lease Administration Agreement | Cushman & Wakefield, U.S. Inc. | 225 W Wacker Drive, Suite 3000, Chicago, IL 60606, UNITED STATES | None | $0.00 |
| 106 | WeWork Inc. | Amended and Restated Schedule for Technology Systems and Resources | Cushman & Wakefield, U.S. Inc. | 225 W Wacker Drive, Suite 3000, Chicago, IL 60606, UNITED STATES | Revised schedule pursuant to larger contract amendment | $0.00 |
| 107 | We Work Management LLC | Software Services Rider | Darwin Technologies Limited | 1 Tower Place West, Tower Place, London, United Kingdom, EC3R 5BU | None | $0.00 |
| 108 | We Work Management LLC | Master Professional Services Agreement | Darwin Technologies Limited | 1 Tower Place West, Tower Place, London, United Kingdom, EC3R 5BU | None | $0.00 |
| 109 | We Work Management LLC | Software Lease/License Agreement | Data Theorem, Inc. | 532 Emerson St, Palo Alto, CA 94301, UNITED STATES | None | $0.00 |
| 110 | We Work Management LLC | Software Lease/License Agreement | Datadog, Inc. | 620 8th Ave, Fl 145, New York, NY 10018, UNITED STATES | None | $1,115.46 |
| 111 | WeWork Companies U.S. LLC | Statement of Work | Datasite LLC | 733 S. Marquette Ave, Minneapolis, MN 55402 | None | $0.00 |
| 112 | We Work Management LLC | Services Agreement | Dealpath, Inc | 300 California Street, Suite 200, San Francisco, CA 94104, UNITED STATES | None | $0.00 |
| 113 | We Work Management LLC | Engagement Letter | Debevoise & Plimpton LLP | 919 Third Avenue, New York, NY, 10022 | None | $33,919.50 |
| 114 | We Work Management LLC | Service Orders (6/1/2023 through 5/31/2026) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | None | $261,004.00 |
| 115 | We Work Management LLC | Service Order (7/28/2023 through 5/31/2026) | Dialpad, Inc. | 100 California Street, Suite 500, San Francisco, CA 94111, UNITED STATES | None | $0.00 |
| 116 | We Work Management LLC | Services Agreement | Diligent Corporation | 1111 19th St NW, 8th Floor, Washington, DC 20036 | None | $0.00 |
| 117 | We Work Management LLC | Subscription Agreement | Docker, Inc. | 3790 El Camino Real, #1052, Palo Alto, CA 94306, UNITED STATES | None | $0.00 |
| 118 | Common Desk Operations LLC | Purchase and Sale Agreement | Docusign, Inc. | 221 Main St, Suite 1000, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 119 | We Work Management LLC | Purchase and Sale Agreement | Docusign, Inc. | 221 Main St, Suite 1000, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 120 | WW BuildCo LLC | Construction Agreement | DPR Construction | 1450 Veterans Blvd, Redwood City, CA 94063, UNITED STATES | None | $0.00 |
| 121 | We Work Management LLC | Business Responsibility Agreement | Dropbox Inc | Attn: Legal Department, P.O. Box 77767, San Francisco, CA 94107, UNITED STATES | None | $0.00 |
| 122 | WeWork Canada GP ULC | Master Service Agreement | East Van Vinyl | 34 East 6th Avenue, Vancouver, BC V5T 1J4, CANADA | None | $6,749.03 |
| 123 | We Work Management LLC | Services Agreement | Edicom Corp | One Whitehall Street, 14th Floor, New York, NY 10004, UNITED STATES | None | $0.00 |
| 124 | We Work Management LLC | Product and Service Agreement | Edicom Corp | One Whitehall Street, 14th Floor, New York, NY 10004, UNITED STATES | None | $0.00 |
| 125 | We Work Management LLC | Master Service Agreement | Empire Office, Inc. | Attn: Jocelyn Corrigan, Executive VP, 105 Madison Avenue, 15th Floor, New York, NY 10016, UNITED STATES | None | $4,472.77 |
| 126 | We Work Management LLC | Temporary Staffing Services Agreement | Encore Nationwide, INC. | 2447 Pacific Coast Highway, 2nd Floor, Suite 261, Hermosa Beach, CA, 90254 | None | $0.00 |
| 127 | Common Desk Operations LLC | Unexpired Lease | Energy Square Meadows TRS I, LLC | GlenStar Texas Asset Management, Attn: Property Manager, 6688 N. Central Expressway, Suite 350, Dallas, TX 75206 | None | $0.00 |
| 128 | We Work Management LLC | Software Lease/License Agreement | Engie Insight Services Inc. | 1313 N. Atlantic Street, Suite 5000, Spokane, WA 99201, UNITED STATES | None | $0.00 |
| 129 | We Work Management LLC | Services Agreement | Engie Insight Services Inc. | 1313 N. Atlantic Street, Suite 5000, Spokane, CA 99201, UNITED STATES | None | $0.00 |
| 130 | We Work Management LLC | Sales Agreement and Outstanding Orders | ENGIE Resources LLC | 1360 Post Oak Blvd., Suite 400, Houston, TX 77056, UNITED STATES | None | $0.00 |
| 131 | WeWork Companies U.S. LLC | Consulting Agreement | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $37,732.50 |
| 132 | We Work Management LLC | Statement of Work | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 133 | We Work Management LLC | Consulting Agreement | Enzigma LLC | 1201 N Orange St, Suite 7403, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 134 | We Work Management LLC | Consulting Agreement | Eriksen Translations Inc | 50 Court Street, Suite 700, Brooklyn, NY 11201, UNITED STATES | None | $9,455.27 |

| | | | | | |
|---|---|---|---|---|---|
| 135 | WeWork Companies U.S. LLC | Consulting Agreement | Ernst & Young LLP | 5 Times Square, 14th Floor, New York, NY 10036, UNITED STATES | None | $0.00 |
| 136 | We Work Management LLC | Services Agreement | EVIDENT ID | 2810 N CHURCH ST, STE 95997, WILMINGTON, DE 19802, UNITED STATES | None | $1,346.40 |
| 137 | We Work Management LLC | Statement of Work | Exiger Canada, Inc. | 1095 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $13,625.00 |
| 138 | We Work Management LLC | Services Agreement | Exiger Canada, Inc. | ATTN: Ron Collins, COO and CFO, 1095 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 139 | We Work Management LLC | Master Service Agreement | expoIT LLC | Attn: Katerina Kubec, Director of Sales/Service, 22 Manchester Road, Unit 7, Derry, NH 03038, UNITED STATES | None | $21,961.50 |
| 140 | We Work Management LLC | Order Form | Fastly, Inc. | P.O. Box 78266 San Francisco, CA 94107 | None | $7,443.34 |
| 141 | We Work Management LLC | Service Agreement | Fidelity Workplace Services LLC | 245 Summer St Boston, MA, 02110-1133, United States | None | $0.00 |
| 142 | We Work Management LLC | Purchase and Sale Agreement | Figma, Inc. | 760 Market St, Floor 10, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 143 | We Work Management LLC | Life Insurance Policy | First Unum Life Insurance Company | 1225 Franklin Avenue Suite 250. Garden City, NY 11530 | None | $0.00 |
| 144 | We Work Management LLC | Purchase and Sale Agreement | FiveTran, Inc. | 405 14th Street, Suite 1100, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 145 | We Work Management LLC | Software Lease/License Agreement | Fivetran, Inc. | 405 14th Street, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 146 | We Work Management LLC | Services Agreement | Fivetran, Inc. | 405 14th Street, Suite 1050, Oakland, CA 94612, UNITED STATES | None | $0.00 |
| 147 | We Work Services LLC | Referral Agreement | Formagrid, Inc (DBA Airtable) | ATTN: Andrew Ofstad, 49 Powell St, Floor 2, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 148 | 1400 Lavaca Street Tenant LLC | Rental Agreement | Formagrid, Inc (DBA Airtable) | ATTN: Andrew Ofstad, 49 Powell St, Floor 2, San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 149 | WeWork Companies U.S. LLC | Master Service Agreement | Formstack, LLC | Attn: VP of Finance, 11671 Lantern Rd., Suite 300, Fishers, IN 46038, UNITED STATES | None | $382.47 |
| 150 | We Work Management LLC | Master Service Agreement | Formstack, LLC | Attn: VP of Finance, 11671 Lantern Rd., Suite 300, Fishers, IN 46038, UNITED STATES | None | $0.00 |
| 151 | We Work Management LLC | Services Agreement | Frame.io | 22 Cortland St, Floor 31, New York, NY 10007, UNITED STATES | None | $0.00 |
| 152 | We Work Management LLC | Services Agreement | GIACT Systems, LLC | P.        O. BOX 411162, BOSTON, MA 02241, UNITED STATES | None | $28,079.00 |
| 153 | WW BuildCo LLC | Services Agreement | Gilbane Building Company | 7 Jackson Walkway, Providence, RI 02903, UNITED STATES | None | $0.00 |
| 154 | We Work Management LLC | Purchase Order Letter | Glimmer Technologies Inc. | 1412 Broadway, 21st Floor, New York, NY 10018 | None | $0.00 |
| 155 | Common Desk Operations LLC | Unexpired Lease | GPV Shared Office LLC | Attn: Managing Director, 5601 Granite Parkway, Suite 800, Plano, TX 75024 | None | $0.00 |
| 156 | Common Desk Operations LLC | Unexpired Lease | GPV Shared Office, LLC | Attn: Director of Finance, 5601 Granite Parkway, Suite 800, Plano, TX 75024 | None | $0.00 |
| 157 | We Work Management LLC | Master Service Agreement | Granite Telecommunications LLC | 100 Newport Avenue Ext., Quincy, MA 02171, UNITED STATES | None | $0.00 |
| 158 | We Work Management LLC | Master Service Agreement | Green 2 Green Corp (DBA Plant Shed New York Flowers) | Attn: Antonio Roche, Executive Director of Sales, 723 Amsterdam Ave, New York, NY 10025, UNITED STATES | None | $31,975.74 |
| 159 | We Work Management LLC | Order Form | Greenhouse Software, Inc | 18 W 18th Street, 11th Floor, New York, NY 10011 | None | $36,182.89 |
| 160 | We Work Management LLC | Statement of Work | Greenhouse Software, Inc | 18 W 18th Street, 11th Floor, New York, NY 10011 | None | $0.00 |
| 161 | Common Desk Operations LLC | Unexpired Lease | GTT Commons LP | C/O David Kahn, 804 Congress Ave., Suite 300, Austin, TX 78701 | None | $0.00 |
| 162 | We Work Management LLC | Software Lease/License Agreement | Herrmann International, Inc. | PO BOX 389, FOREST CITY, NC 28043, UNITED STATES | None | $0.00 |
| 163 | We Work Management LLC | Master Service Agreement | Hill Mechanical Services | Attn: Jared Schreiber, Junior Account Executive, 11405 Gage Avenue, Franklin Park, IL 61031, UNITED STATES | None | $0.00 |
| 164 | We Work Management LLC | Services Agreement | HireRight LLC | ATTN: Legal Department, 5151 California Avenue, Irvine, CA 92617, UNITED STATES | None | $6,487.49 |
| 165 | We Work Management LLC | Software Lease/License Agreement | Hoxhunt Oy | PORKKALANKATU 3, UUSIMAA, HELSINKI, FINLAND | None | $0.00 |
| 166 | We Work Management LLC | Sponsorship Agreement | HP Inc. | 1501 Page Mill Road, Palo Alto, CA 94304, UNITED STATES | Reduced volume and price | $22,338.76 |
| 167 | We Work Management LLC | Master Service Agreement | HP Inc. | Attn: General Counsel, 1501 Page Mill Road, Palo Alto, CA 94304, UNITED STATES | Reduced volume and price | $0.00 |
| 168 | We Work Management LLC | Service Agreement | InfoArmor Inc. (DBA Allstate Identity Protection) | 7001 N. Scottsdale Road, Suite 2020, Scottsdale, AZ 85253 | None | $0.00 |
| 169 | We Work Management LLC | Consulting Agreement | Innova Solutions, Inc. | 4633 Old Ironsides Drive, Suite 320, Santa Clara, CA 95054, UNITED STATES | None | $42,068.40 |
| 170 | WW BuildCo LLC | Services Agreement | Integrity Networks, Inc. | 2220 Lind Ave SW, Suite 106, Renton, WA 98057, UNITED STATES | None | $10,357.96 |
| 171 | We Work Management LLC | Statement of Work | InterWorks Inc | 1425 S Sangre Road, Stillwater, OK 74074, UNITED STATES | None | $249.88 |
| 172 | We Work Management LLC | Master Service Agreement | InterWorks Inc | 1425 S Sangre Road, Stillwater, OK 74074, UNITED STATES | None | $0.00 |
| 173 | Common Desk Operations LLC | Unexpired Lease | ION Houston LLC | Attn: Kurt D. Nordorf, Jackson Walker LLP, 1401 McKinney Suite 1900, Houston, TX 77010 | None | $0.00 |
| 174 | WeWork Companies U.S. LLC | Master Service Agreement | Iron Mountain, Inc. (DBA Iron Mountain Data Centers LLC) | 3003 Woodbridge Avenue, Edison, NJ 08837, UNITED STATES | None | $2,714.22 |
| 175 | We Work Management LLC | Master Service Agreement | Iron Mountain, Inc. (DBA Iron Mountain Data Centers LLC) | 3003 Woodbridge Avenue, Edison, NJ 08837, UNITED STATES | None | $0.00 |
| 176 | We Work Management LLC | Services Agreement | Jellyfish US Limited | 250 South President St, Suite 10, Baltimore, MD 21202, UNITED STATES | None | $16,145.23 |
| 177 | We Work Management LLC | Pricing Agreement | JetBrains Americas Inc. | 989 East Hillsdale Blvd, Suite 200, Foster City, CA 94404, UNITED STATES | None | $0.00 |
| 178 | WeWork Companies U.S. LLC | Master Service Agreement | JPMorgan Chase Bank, N.A. | ATTN: Legal Department, 14221 Dallas Parkway, Dallas, TX 75254, UNITED STATES | None | $0.00 |
| 179 | We Work Management LLC | Purchase and Sale Agreement | Kaltura, Inc. | 860 Broadway, 3rd Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 180 | We Work Management LLC | Consulting Agreement | KBA Lease Services, Inc. | 1000 U.S. Highway 9, Woodbridge, NJ 07095, UNITED | None | $0.00 |

| | | | | STATES | | |
|---|---|---|---|---|---|---|
| 181 | We Work Management LLC | Master Service Agreement | Labor Law Compliance Center, LLC | Attn: Donny Butts, Customer Service Director, 23855 Gosling Road, Spring, TX 77389, UNITED STATES | None | $0.00 |
| 182 | WeWork Companies U.S. LLC | Consulting Agreement | Language Line Services, Inc. (DBA LanguageLine Solutions) | P.O. BOX 202564, Dallas, TX 75320-2564, UNITED STATES | None | $1,572.12 |
| 183 | We Work Management LLC | Consulting Agreement | Language Line Services, Inc. (DBA LanguageLine Solutions) | P.O. BOX 202564, Dallas, TX 75320-2564, UNITED STATES | None | $0.00 |
| 184 | WeWork Companies U.S. LLC | Staffing Agreement | LaSalle Staffing, Inc. dba LaSalle Network, Inc. | 200 N LaSalle, Suite 2500, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 185 | We Work Management LLC | Staffing Agreement | LaSalle Staffing, Inc. dba LaSalle Network, Inc. | 200 N LaSalle, Suite 2500, Chicago, IL 60601, UNITED STATES | None | $0.00 |
| 186 | We Work Management LLC | Software Lease/License Agreement | Leandata, Inc | 1175 Sonora Ct, Sunnyvale, CA 94087, UNITED STATES | None | $0.00 |
| 187 | WeWork Companies U.S. LLC | Engagement Letter | Leason Ellis LLP | 1 Barker Avenue, White Plains, NY 10601 | None | $1,109.00 |
| 188 | We Work Management LLC | Order Form | LinkedIn Corporation | 1000 West Maude, Sunnyvale, CA 94085, UNITED STATES | None | $0.00 |
| 189 | We Work Management LLC | License Agreement | Litmus Software, Inc. | 675 Massachusetts Ave, 10 Floor, Cambridge, MA 02139, UNITED STATES | None | $0.00 |
| 190 | We Work Management LLC | Master Service Agreement | LiveRamp, Inc. | 225 Bush Street, 17th FL, San Francisco, CA 94104, UNITED STATES | None | $6,369.19 |
| 191 | We Work Management LLC | Knowledge Services Agreement and Statement of Work | LRN Corporation | 41 Madison Avenue, 30th Floor, New York, NY 10010 | None | $0.00 |
| 192 | We Work Management LLC | Pricing Agreement | Lucid Software Inc. | Attn: Jordan Bauer, 10355 S Jordan Gateway, Suite 300, South Jordan, UT 84095, UNITED STATES | None | $0.00 |
| 193 | We Work Management LLC | Consulting Agreement | Lumi Consulting Group, Inc. | 3549 North University Ave, STE 325, Provo, UT 84604, UNITED STATES | None | $86,328.00 |
| 194 | We Work Management LLC | Services Rider (Start Date of 5/1/24) | Mapbox, Inc. | 1133 15th St NW, Suite 825, Washington DC, 20005 | Contract term | $0.00 |
| 195 | We Work Management LLC | Master Service Agreement | MarkMonitor Inc | 50 CALIFORNIA ST, SUITE 200, San Francisco, CA 92111, UNITED STATES | None | $3,173.00 |
| 196 | We Work Management LLC | Master Client Service Agreement | Marsh USA Inc. | 1166 Avenue of the Americas New York, NY 10036 United States | None | $0.00 |
| 197 | We Work Management LLC | Services Agreement | Matterport, Inc. | 352 E Java Dr, Sunnyvale, CA 94089, UNITED STATES | None | $0.00 |
| 198 | WW BuildCo LLC | Master Service Agreement | Maxus Group,Inc | 346 Seventh Avenue, Suite 401, New York, NY 10001, UNITED STATES | None | $126,938.95 |
| 199 | We Work Management LLC | Consulting Agreement | Megaport | 6790 Embarcadero Ln, #100, Carsbad, CA 92011, UNITED STATES | None | $6,176.44 |
| 200 | We Work Management LLC | Statement of Work | Mercer Health and Benefits LLC | 1166 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 201 | We Work Management LLC | License Agreement | Mersive Technologies, Inc. | ATTN: Chief Executive Officer, 2399 Blake Street, Suite 150, Denver, CO 80205, UNITED STATES | None | $0.00 |
| 202 | We Work Management LLC | Pricing Agreement | Mersive Technologies, Inc. | ATTN: Rick Emery, 2399 Blake Street, Suite 160, Denver, CO 80205, UNITED STATES | None | $0.00 |
| 203 | We Work Management LLC | Enterprise Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 204 | We Work Management LLC | Partnership/JV Agreements | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 205 | We Work Management LLC | Enterprise Enrollment Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 206 | We Work Management LLC | License Agreement | Microsoft Corporation | 6800 Sierra Center Parkway, Dept. 551, Volume Licensing, Reno, NV 89511, UNITED STATES | Reduced volume | $0.00 |
| 207 | We Work Management LLC | Sponsorship Agreement | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, UNITED STATES | Reduced volume | $0.00 |
| 208 | We Work Management LLC | Services Agreement | Microsol Resources | 214 West 29th Street, New York, NY 10001, UNITED STATES | None | $0.00 |
| 209 | We Work Management LLC | Services Agreement | Milk Stork, Inc. | 2085 E. Bayshore, #50656, Palo Alto, CA 94303, UNITED STATES | None | $0.00 |
| 210 | We Work Management LLC | Statement of Work | Milk Stork, Inc. | 2085 E. Bayshore, #50656, Palo Alto, CA 94303, UNITED STATES | None | $0.00 |
| 211 | WeWork Companies U.S. LLC | Consulting Agreement | MindStream Analytics, LLC | 745 Atlantic Avenue, Boston, MA 02111, UNITED STATES | None | $0.00 |
| 212 | We Work Management LLC | Consulting Agreement | MindStream Analytics, LLC | 745 Atlantic Avenue, Boston, MA 02111, UNITED STATES | None | $0.00 |
| 213 | We Work Management LLC | Master Service Agreement | MindStream Analytics, LLC | 1021 E Lincolnway, #264, Cheyenne, WY 82001, UNITED STATES | None | $0.00 |
| 214 | We Work Management LLC | Services Agreement | MindTickle, Inc. | ATTN: President, 55 2nd Street, Suite 550, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 215 | We Work Management LLC | Purchase and Sale Agreement | MindTickle, Inc. | 535 Mission St, 14th Floor, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 216 | We Work Management LLC | Master Service Agreement | Mitratech Holdings, Inc. | 5001 Plaza on the Lake, Suite 111, Austin, TX 78746, UNITED STATES | None | $0.00 |
| 217 | We Work Management LLC | Software Lease/License Agreement | Mitratech Holdings, Inc. | 5001 Plaza on Lake, Austin, TX 78746, UNITED STATES | None | $0.00 |
| 218 | We Work Management LLC | Service Agreement and Sales Order | Monday.com Ltd | 6 Yitzhak Sadeh St., Tel-Aviv, Israel, 6777506 | Contract term | $8,053.55 |
| 219 | We Work Management LLC | Master Service Agreement | Moravia IT , LLC | ATTN: Tatiana Cicuto, Program Manager, 222 E Thousand Oaks Blvd, Suite 202, Thousand Oaks, CA 91360 | None | $0.00 |
| 220 | WeWork Companies U.S. LLC | Statement of Work | Moss Adams LLP | 999 Third Avenue, Suite 2800, Seattle, WA 98104, UNITED STATES | None | $0.00 |
| 221 | We Work Management LLC | Services Agreement | Moss Adams LLP | 999 Third Avenue, Suite 2800, Seattle, WA 98104, UNITED STATES | None | $0.00 |
| 222 | WW BuildCo LLC | Consulting Agreement | Murtaza & Khokar Engineering Consultants, PLLC | 120 West 31st Street, 7th Floor, New York, NY 10001, UNITED STATES | None | $11,700.00 |
| 223 | We Work Management LLC | Purchase and Sale Agreement | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $85,406.85 |
| 224 | We Work Management LLC | Software Lease/License Agreement | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $0.00 |
| 225 | We Work Management LLC | Data License | Myriad360, LLC | 199 Water Street, 34th Floor, New York, NY 10038, UNITED STATES | None | $0.00 |

| 226 | WeWork Companies U.S. LLC | Consulting Agreement | NaTakallam LLC | 2 Columbus Ave, Apt 24 A, New York, NY, 10023, UNITED STATES | None | $0.00 |
|---|---|---|---|---|---|---|
| 227 | We Work Management LLC | Consulting Agreement | NaTakallam LLC | 2 Columbus Ave, Apt 24 A, New York, NY 10023, UNITED STATES | None | $0.00 |
| 228 | WW BuildCo LLC | Consulting Agreement | Ncircle Tech Private Limited | Unit 2, Office No. 3, 4th Floor, Building no. IT7, Qubix SZ, Blue Ridge, Hinjewadim Phase 1, Pune, INDIA | None | $36,437.20 |
| 229 | We Work Management LLC | Master Service Agreement | NCS Moving Services | 1517 63rd St, Emeryville, CA 94608, UNITED STATES | None | $0.00 |
| 230 | We Work Management LLC | Services Agreement | Negotiatus Corp. | ATTN: Zach Garippa, 260 W 39th Street, Floor 15, New York, NY 10018, UNITED STATES | None | $11,716.32 |
| 231 | We Work Management LLC | Order Form | Negotiatus Corp. | 260 W. 39th Street, Floor 15, New York, NY 10018, UNITED STATES | None | $0.00 |
| 232 | We Work Management LLC | Master Service Agreement | NetDocuments Software, Inc. | 2500 West Executive Parkway, Suite 350, Lehi, UT 84043, UNITED STATES | None | $12,855.80 |
| 233 | We Work Management LLC | Master Service Agreement | NetDocuments Software, Inc. | 2500 West Executive Parkway, Suite 350, Lehi, UT 84043, UNITED STATES | None | $0.00 |
| 234 | WW BuildCo LLC | Master Service Agreement | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $18,740.98 |
| 235 | We Work Management LLC | Master Service Agreement | New York Security Solutions, Inc | ATTN: Gregory Keeling, 16238 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 236 | WW BuildCo LLC | Services Order | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 237 | We Work Management LLC | Software Lease/License Agreement | New York Security Solutions, Inc | 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 238 | We Work Management LLC | Services Order | New York Security Solutions, Inc | Attn: Jill Guerra, 162-38 Pidgeon Meadow Road, Flushing, NY 11358, UNITED STATES | None | $0.00 |
| 239 | We Work Management LLC | Consulting Agreement | Nfinity Global Inc. | 3312 Rosedale St, Ste 202C, Gig Harbor, WA 98335, UNITED STATES | None | $198,366.00 |
| 240 | WeWork Services LLC | Services Agreement | OANDA Business Information and Services Inc. | Attn: Iain McNicoll, Solutions for Business Customer Support, 185 Berry Street, Suite 4700, San Francisco, CA 94107 | None | $0.00 |
| 241 | We Work Management LLC | Software Lease/License Agreement | OfficeRND | 84 ECCLESTON SQUARE, London, UNITED KINGDOM | None | $2,277.00 |
| 242 | We Work Management LLC | Subscription Agreement | OKTA, Inc | Attn: Rick Delgado, 100 1st Street, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 243 | We Work Management LLC | License Agreement | One Clipboard, Inc. (DBA Splash) | 233 BROADWAY, 28TH FLOOR, NEW YORK, NY 10279, UNITED STATES | None | $0.00 |
| 244 | We Work Management LLC | Statement of Work | One Clipboard, Inc. (DBA Splash) | 233 BROADWAY, 28TH FLOOR, NEW YORK, NY 10279, UNITED STATES | None | $0.00 |
| 245 | We Work Management LLC | Services Agreement | One Clipboard, Inc. (DBA Splash) | 122 W 26th St, New York, NY 10001, UNITED STATES | None | $0.00 |
| 246 | We Work Management LLC | Renewal Order Form Q-376620 | OneTrust LLC | 1200 Abernathy Rd, NE Bldg 600, Atlanta, GA 30328 | None | $0.00 |
| 247 | We Work Management LLC | Renewal Order Form Q-379136 | OneTrust LLC | 1200 Abernathy Rd, NE Bldg 600, Atlanta, GA 30328 | None | $0.00 |
| 248 | We Work Management LLC | Services Agreement | Oomnitza Inc. | ATTN: Amanda Groppetti, 548 Market St, Suite 18912, San Francisco, CA 94104-5401, UNITED STATES | None | $0.00 |
| 249 | We Work Management LLC | Purchase and Sale Agreement | Oomnitza Inc. | 548 Market St, Suite 18912, San Francisco, CA, CA 94104, UNITED STATES | None | $0.00 |
| 250 | WW BuildCo LLC | Master Service Agreement | Operational Technology Integrators | 1200 Concord Avenue, Suite 255, Concord, CA 94520, UNITED STATES | None | $8,718.58 |
| 251 | We Work Management LLC | Ordering Document | Oracle America, Inc. | 500 Oracle Parkway, Redwood Shores, CA 94065 | None | $11,197.56 |
| 252 | We Work Management LLC | Letter Agreement | Orasi Software, Inc. | ATTN: Zack Okerblad, 114 Townpark Drive, Suite 400, Kennesaw, GA 30144, UNITED STATES | None | $0.00 |
| 253 | We Work Management LLC | Purchase and Sale Agreement | Orasi Software, inc. | 114 Townpark Drive, Suite 400, Kennesaw, GA 30144, UNITED STATES | None | $0.00 |
| 254 | We Work Management LLC | Software Lease/License Agreement | Packagex, Inc. | 500 7th Avenue, New York, NY 10018, UNITED STATES | None | $114,912.29 |
| 255 | We Work Management LLC | Data Processing Agreement | PagerDuty, Inc | 600 Townsend St, #200, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 256 | We Work Management LLC | Master Subscription Agreement | Palantir Technologies Inc. | 1555 Blake Street, Suite 250, Denver, Colorado 80202 | None | $0.00 |
| 257 | We Work Management LLC | Consulting Agreement and Statement of Work | Paradigm Strategy Inc. | 3000 El Camino Real, STE 4-200, Palo Alto, CA 94306 | None | $0.00 |
| 258 | We Work Management LLC | Subscription Agreement and Outstanding Orders | PitchBook Data Inc. | 901 Fifth Avenue, Suite 1200, Seattle, WA 98164, UNITED STATES | None | $0.00 |
| 259 | WeWork Inc. | Master Service Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 260 | We Work Management LLC | Master Service Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 261 | We Work Management LLC | Purchase and Sale Agreement | Poppulo Inc | 1601 Trapelo Road, Waltham, MA 02451, UNITED STATES | None | $0.00 |
| 262 | Common Desk Operations LLC | Unexpired Lease | Post Coworking Tenant, LLC | C/O Lovett Commercial, Attn: Kirby Liu, 1520 Oliver Street, Houston, TX 77007 | | $0.00 |
| 263 | We Work Management LLC | Services Agreement | Practising Law Institute | 1177 Avenue of the Americas, New York, NY 10036, UNITED STATES | None | $0.00 |
| 264 | We Work Management LLC | Subscription Agreement | Precision Computer Services, Inc. | 175 Constitution Blvd. S, Shelton, CT 06464, UNITED STATES | None | $0.00 |
| 265 | We Work Management LLC | Master Service Agreement | Precision Computer Services, Inc. | 175 Constitution Blvd. S, Shelton, CT 06464, UNITED STATES | None | $0.00 |
| 266 | We Work Management LLC | Services Agreement | Presidio Networked Solutions Group LLC | Presidio Networked Solutions Group LLC, One Penn Plaza, Suite 2832, New York, NY 10199, UNITED STATES | None | $472,405.90 |
| 267 | WW BuildCo LLC | Master Service Agreement | Presidio Networked Solutions Group LLC | Attn: Aaron Lovejoy, Senior Account Executive, 110 Parkway Drive South, Hauppauge, NY 11788, UNITED STATES | None | $0.00 |
| 268 | We Work Management LLC | Software Lease/License Agreement | Procore Technologies, Inc. | 6309 Carpinteria Avenue, Carpinteria, CA 93013, UNITED STATES | None | $0.00 |
| 269 | We Work Management LLC | Purchase and Sale Agreement | Procore Technologies, Inc. | 6309 Carpinteria Avenue, Carpinteria, CA 93013, UNITED STATES | None | $0.00 |
| 270 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | PSPIB Longhorn REIT LLC, et. al. | PSP Investments, 1250 Boulevard René-Levesque West, Suite 1400, Montreal, Quebec H3B 5E9 Canada | None | $0.00 |
| 271 | We Work Management LLC | Master Service Agreement | Rauch-Milliken International, Inc. | ATTN: Van A. Meador Jr, Director of Operations, 4400 | None | $8,443.50 |

| | | | Trenton St #A, Metaire, LA 70006, UNITED STATES | | |
|---|---|---|---|---|---|
| 272 | WeWork Canada GP ULC | Services Agreement | Redpath Relocations Inc | #101, 7 Burbridge St, Coquitlam, BC V3K7B2, CANADA | None | $21,530.96 |
| 273 | We Work Management LLC | Data Processing Agreement | Relx Inc (Dba Lexisnexis) | 1801 Varsity Drive, Raleigh, NC 27606, UNITED STATES | None | $0.00 |
| 274 | We Work Management LLC | Pricing Agreement | Relx Inc (Dba Lexisnexis) | 1801 Varsity Drive, Raleigh, NC 27606, UNITED STATES | None | $0.00 |
| 275 | We Work Management LLC | Services Agreement | Restaurant Associates, Inc. | Attn: Dick Cattani, CEO Premier Catering Division, 132 West 31st Street, 6th Floor, New York, NY 10001, UNITED STATES | None | $6,965.47 |
| 276 | WW BuildCo LLC | Consulting Agreement | Rizzo Group | 1333 Broadway, Suite 500, New York, NY 10018, UNITED STATES | None | $0.00 |
| 277 | We Work Management LLC | Staffing Agreement | Robert Half Management Resources | 125 Park Avenue, 4th Floor, New York, NY 10017, UNITED STATES | None | $0.00 |
| 278 | We Work Management LLC | Services Agreement | Rollbar, Inc. | 665 3rd Street, #150, San Francisco, CA 94107, UNITED STATES | None | $0.00 |
| 279 | We Work Management LLC | Staffing Agreement | ROUTERATI INC. | 500 7th Ave, 8th Floor, New York, NY 10018, UNITED STATES | None | $0.00 |
| 280 | We Work Management LLC | Consulting Agreement | RSM US LLP | One South Wacker Drive, Suite 800, Chicago, IL 60606, UNITED STATES | None | $0.00 |
| 281 | We Work Management LLC | BetterCloud Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd, Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $14,946.06 |
| 282 | We Work Management LLC | Chrome Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd., Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 283 | We Work Management LLC | Google Workspace Ordering Document | Sada Systems, Inc. | 5250 Lankershim Blvd., Suite 720, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 284 | We Work Management LLC | Master Service Agreement | SADA Systems, Inc. | 5250 Lankershim Blvd., Suite 620, North Hollywood, CA 91601, UNITED STATES | None | $0.00 |
| 285 | WW Onsite Services LLC | Network Monitoring & Support Order | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 286 | We Work Management LLC | Order Form for Tableau Cloud | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | Revised scope and payment terms | $0.00 |
| 287 | We Work Management LLC | Professional Services Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 288 | We Work Management LLC | Co-Marketing Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 289 | We Work Management LLC | Order Form Q-08568461 | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | Revised scope and payment terms | $0.00 |
| 290 | We Work Management LLC | Sponsorship Agreement | Salesforce.Com, Inc. | Salesforce Tower, 415 Mission Street, 3rd FL, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 291 | We Work Management LLC | Software Lease/License Agreement | Salsoft, Inc. | Attn: Kyle Porter, CEO, 1180 Peachtree Street NW, Suite 600, Atlanta, GA 30309, UNITED STATES | None | $0.00 |
| 292 | We Work Management LLC | Subscription Agreement | Salsoft, Inc. | Attn: Kyle Porter, CEO, 1180 Peachtree Street NW, Suite 600, Atlanta, GA 30309, UNITED STATES | None | $0.00 |
| 293 | We Work Management LLC | Master Service Agreement | Sam Tell And Son Inc | ATTN: Marc Tell, CEO, 300 Smith Street, Farming Dale, NY 11735, UNITED STATES | None | $0.00 |
| 294 | We Work Management LLC | Subscription Agreement | Segment.io, Inc. | 101 15th Street, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 295 | WeWork Services LLC | Referral Agreement | SendGrid, Inc | ATTN: Jennifer Litroja, 1801 California Street, Suite 500, Denver, CO 80202, UNITED STATES | None | $0.00 |
| 296 | Common Desk Operations LLC | Services Agreement | SERVICE FIRST CLEANING LLC | 1408 N. Riverfront Blvd, Suite 207, Dallas, TX 75207, UNITED STATES | None | $611.61 |
| 297 | WW BuildCo LLC | Construction Agreement | SERVPRO of North West Manhattan-Disaster Recovery Team | 112 Mott Street, Oceanside, NY 11572, UNITED STATES | None | $89,316.01 |
| 298 | WW BuildCo LLC | Master Service Agreement | SHI International Corp | ATTN: Jaci Brennan, 290 Davidson Ave, Somerset, NJ 08873, UNITED STATES | None | $0.00 |
| 299 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | Signal Media Intelligence Inc. | 1209 Orange Street, New Castle County, Wilmington, DE 19801, UNITED STATES | None | $0.00 |
| 300 | We Work Management LLC | Subscription Agreement | Simon Data Inc | 821 Broadway, New York, NY 10003, UNITED STATES | None | $0.00 |
| 301 | We Work Management LLC | Software Lease/License Agreement | Simon Data Inc | 821 Broadway, Suite 400, New York, NY 10003, UNITED STATES | None | $0.00 |
| 302 | We Work Management LLC | Software Lease/License Agreement | SimpleLegal, Inc. | 144 S WHISMAN RD, SUITE #F, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $17,858.00 |
| 303 | We Work Management LLC | Order Form | SimpleLegal, Inc. | 144 S WHISMAN RD, SUITE #F, MOUNTAIN VIEW, CA 94041, UNITED STATES | None | $0.00 |
| 304 | WeWork Companies U.S. LLC | Engagement Letter | Simpson Thacher & Bartlett LLP | 425 Lexington Avenue, New York, NY 10017 | None | $17,537.50 |
| 305 | WeWork Companies U.S. LLC | Engagement Letter | Smart & Biggar LP | 55 Metcalfe Street, Suite 1000, Ottawa ON, K1P 6L5 Canada | None | $514.41 |
| 306 | We Work Management LLC | Software Subscription Agreement | Smartling Inc | 1375 Broadway, 14th Floor, New York, NY 10018, UNITED STATES | Revised pricing and payment terms | $0.00 |
| 307 | We Work Management LLC | Service Schedule Agreement | Smartling Inc | 1375 Broadway, 14th Floor, New York, NY 10018, UNITED STATES | Revised pricing and payment terms | $0.00 |
| 308 | We Work Management LLC | Software Lease/License Agreement | SnowFlake Inc. | P.O. BOX 734951, DALLAS, TX 75373-4951, UNITED STATES | None | $49,529.20 |
| 309 | We Work Management LLC | Subscription Agreement | SocialSign.in, Inc | 248 Route 25A, Suite 24, East Setauket, NY 11733, UNITED STATES | None | $357.93 |
| 310 | We Work Management LLC | Master Service Agreement | SocialSign.in, Inc | 248 Route 25A, Suite 24, East Setauket, NY 11733, UNITED STATES | None | $0.00 |
| 311 | We Work Management LLC | Assignment and Assumption | SoftServe, Inc. | 12800 University Drive, Suite 410, Fort Myers, FL 33907, UNITED STATES | None | $199,346.73 |
| 312 | We Work Management LLC | Purchase and Sale Agreement | Specialty Lighting Group, LLC | 74 PICKERING STREET, PORTLAND, CT 06480, UNITED STATES | None | $0.00 |
| 313 | WW BuildCo LLC | Master Service Agreement | Spectrum Technologies, a Division of J&M Brown Company Inc | ATTN: Terry Kilduff, 267 Amory St, Jamaica Plain, MA 02130, UNITED STATES | None | $0.00 |
| 314 | We Work Management LLC | Purchase and Sale Agreement | Sprout Social, Inc. | 131 S, Dearborn St., Suite 700, Chicago, IL 60603, UNITED STATES | None | $0.00 |
| 315 | We Work Management LLC | Software Lease/License Agreement | Sprout Social, Inc. | 131 S, Dearborn St., Suite 700, Chicago, IL 60603, UNITED STATES | None | $0.00 |
| 316 | WeWork Companies U.S. LLC | Staffing Agreement | Staffed Inc. | 379 West Broadway, 4th Floor, New York, NY 10012, UNITED STATES | None | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| 317 | We Work Management LLC | Services Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 318 | We Work Management LLC | Master Service Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 319 | We Work Management LLC | Product and Service Agreement | Staples, Inc. (DBA Staples Contract & Commercial LLC) | 500 Staples Drive, Farmingham, MA 01702, UNITED STATES | None | $0.00 |
| 320 | We Work Management LLC | Services Agreement | Stormloop Technologies LLC | 507 Green Hill, Berwyn, PA 19312, UNITED STATES | None | $0.00 |
| 321 | We Work Management LLC | Services Agreement | Stripe Payments Australia Pty Ltd. | Level 7, 222 Exhibition Street, Melbourne, VIC, AUSTRALIA | None | $0.00 |
| 322 | We Work Management LLC | Services Agreement | Stripe Payments Canada Ltd. | 1200 Waterfront Centre, 200 Burrad Street, Vancouver, BC 7X 1T2, CANADA | None | $0.00 |
| 323 | We Work Management LLC | Services Agreement | Stripe Payments Singapore Pte. Ltd. | 8 Marina Boulevard, Singapore, SINGAPORE | None | $0.00 |
| 324 | We Work Management LLC | Services Agreement | Stripe, Inc. | 510 Townsend Street, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 325 | We Work Management LLC | Consulting Agreement | Studio Rodrigo LLC | 573 Sackett Street, Brooklyn, NY 11217, UNITED STATES | None | $0.00 |
| 326 | WeWork Companies U.S. LLC | Master Service Agreement | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 327 | We Work Management LLC | Master Service Agreement | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 328 | We Work Management LLC | Statement of Work | Symphony Talent, LLC | 19 West 34th Street, Suite 1000, New York, NY 10001, UNITED STATES | None | $0.00 |
| 329 | WW BuildCo LLC | Consulting Agreement | Syska Hennessy Group Inc | 1515 Broadway, New York, NY 10036, UNITED STATES | None | $0.00 |
| 330 | TBD (Common Desk) | Unexpired Lease | TBD | TBD | None | $0.00 |
| 331 | WeWork Companies U.S. LLC | Consulting Agreement | Tevora Business Solutions, Inc. | One Spectrum Pointe Drive, Suite 200, Lake Forest, CA 92630, UNITED STATES | None | $24,174.64 |
| 332 | We Work Management LLC | Consulting Agreement | Tevora Business Solutions, Inc. | One Spectrum Pointe Drive, Suite 200, Lake Forest, CA 92630, UNITED STATES | None | $0.00 |
| 333 | WeWork Canada GP ULC | Pricing Agreement | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603 Stm, Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 334 | WeWork Canada GP ULC | Insurance Policies | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603, Stn. Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 335 | We Work Management LLC | Insurance Policies | The Equitable Life Insurance Company of Canada | One Westmount Road North, P.O. Box 1603, Stn. Waterloo, ON N2J 4C7, CANADA | None | $0.00 |
| 336 | We Work Management LLC | Services Agreement | The Printing House Limited | 1403 Bathurst Street, Toronto, ON M5R 3H8, CANADA | None | $39.07 |
| 337 | We Work Management LLC | Order Form for West Proflex | Thomson Reuters (DBA West Publishing Corporation) | 610 Opperman Drive, P.O. BOX 64833, St. Paul, MN 55164, UNITED STATES | None | $0.00 |
| 338 | We Work Management LLC | Services Agreement | Thomson Reuters (DBA West Publishing Corporation) | 610 Opperman Drive, P.O. BOX 64833, St. Paul, MN 55164, UNITED STATES | None | $0.00 |
| 339 | TBD (Common Desk) | Unexpired Lease | TPP EPA, LLC | c/o Entrada Development, LLC, 11075 Santa Monica Blvd., Suite 250, Los Angeles, California 90025, Attn: Reuben Berman | None | $0.00 |
| 340 | We Work Management LLC | Software Lease/License Agreement | TRACER LABS, INC. | 10 Hudson Yards, 25th Floor, New York, NY 10001, UNITED STATES | None | $4,166.53 |
| 341 | We Work Management LLC | Consulting Agreement | Traxion Group, Inc | 1826 N Lincoln Park, West Suite 1, Chicago, IL 60614, UNITED STATES | None | $12,000.00 |
| 342 | We Work Management LLC | License Agreement | Trimble Inc (DBA SketchUp) | 935 Stewart Drive, Sunnyvale, CA 94085, UNITED STATES | None | $0.00 |
| 343 | We Work Management LLC | Services Agreement | TripActions Inc (DBA Navan) | 490 Sherman Ave, Palo Alto, CA 94306, UNITED STATES | None | $0.00 |
| 344 | We Work Management LLC | Purchase and Sale Agreement | Tripleseat Software LLC | 300 Baker Ave, Concord, MA 07120, UNITED STATES | None | $107.38 |
| 345 | We Work Management LLC | Software Lease/License Agreement | Tripleseat Software LLC | 300 Baker Ave, Concord, MA 07120, UNITED STATES | None | $0.00 |
| 346 | WW BuildCo LLC | Construction Agreement | Turner Construction Company | 875 Hudson Street, New York, NY 10014, UNITED STATES | None | $0.00 |
| 347 | We Work Management LLC | Order Form (Sendgrid) | Twilio Inc. | 101 Spear Street, 1st Floor, San Francisco, CA, 94105 | None | $0.00 |
| 348 | We Work Management LLC | Order Form (Segment) | Twilio Inc. | 101 Spear Street, 1st Floor, San Francisco, CA, 94105 | None | $0.00 |
| 349 | We Work Management LLC | Software Lease/License Agreement | UiPath, Inc | 90th Park Ave, 20th Floor, New York, NY 10016, UNITED STATES | None | $0.00 |
| 350 | We Work Management LLC | Master Service Agreement and Oustanding Orders | Unbabel Inc | 345 California Street, Suite 600 & 700, San Francisco, CA 94104, UNITED STATES | None | $0.00 |
| 351 | We Work Management LLC | Software Lease/License Agreement | Unbabel Inc | 399 Fremont Street, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 352 | We Work Management LLC | Contractor Agreement | Unity Building Services, Inc. | 379 Fifth Avenue, 2nd Floor, New York, NY 10016, UNITED STATES | None | $200,000.00 |
| 353 | We Work Management LLC | Services Agreement | Universal Smart Cards Inc | 4445 Eastgate Mall, Suite 200, San Diego, CA 92121, UNITED STATES | None | $11,831.65 |
| 354 | We Work Management LLC | Leave Administration Agreement | Unum Group | Attn: Absence Management Center, 1 Fountain Square, Chattanooga, Tennessee 37402, United States | None | $0.00 |
| 355 | We Work Management LLC | Data Processing Agreement | Upflex, Inc. | 833 Broadway, 2nd Floor, New York, NY 10003, UNITED STATES | None | $65,823.00 |
| 356 | We Work Management LLC | Services Agreement | Upflex, Inc. | 833 Broadway, 2nd Floor, New York, NY 10003, UNITED STATES | None | $0.00 |
| 357 | We Work Management LLC | Subscription Agreement | Urban Airship, Inc (DBA Airship) | 1225 West burnside St., Suit 401, Portland, OR 97209, UNITED STATES | None | $10,618.70 |
| 358 | WeWork Canada GP ULC | Construction Agreement | Urban Outline Building Group Ltd. | 2 Bloor Street East, Suite 3500, Toronto, ON M4W 1A8, CANADA | None | $64,328.00 |
| 359 | We Work Management LLC | Software Lease/License Agreement | Valimail, Inc. | 1942 Broadway, Ste 314C, Boulder, CO 80302, UNITED STATES | None | $0.00 |
| 360 | We Work Management LLC | Subscription Agreement | VANTA INC | 369 Hayes St., San Francisco, CA 94102, UNITED STATES | None | $0.00 |
| 361 | We Work Management LLC | Network Transfer Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY | None | $14,366.73 |

| | | | | 10001, UNITED STATES | | |
|---|---|---|---|---|---|---|
| 362 | WeWork Companies U.S. LLC | Consulting Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY 10001, UNITED STATES | None | $0.00 |
| 363 | We Work Management LLC | Consulting Agreement | VaynerMedia, LLC | 10 HUDSON YARDS, 25TH FLOOR, NEW YORK, NY 10001, UNITED STATES | None | $0.00 |
| 364 | WeWork Companies U.S. LLC | Data Protection Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 365 | We Work Management LLC | License Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 366 | We Work Management LLC | Data Protection Agreement | Vertis.ai Inc | 18911 CYRIL PL, SARATOGA, CA 95070-3503, UNITED STATES | None | $0.00 |
| 367 | We Work Management LLC | Subscription Agreement | VIRTRU CORPORATION | 1808 Florida Ave N.W., Washington, DC 20009, UNITED STATES | None | $0.00 |
| 368 | We Work Management LLC | Software Lease/License Agreement | VIRTRU CORPORATION | 1801 Pennsylvania Ave NW, 5th Floor, Washington, DC 20006, UNITED STATES | None | $0.00 |
| 369 | WeWork Companies U.S. LLC | Consulting Agreement | VoconDesign Inc. | 3142 Prospect Avenue E., Cleveland, OH 44115, UNITED STATES | None | $0.00 |
| 370 | WW BuildCo LLC | Consulting Agreement | VoconDesign Inc. | 3142 Prospect Avenue E., Cleveland, OH 44115, UNITED STATES | None | $0.00 |
| 371 | WW BuildCo LLC | Services Agreement | Wachter Inc | 16001 W 99th St, Lenexa, KS 66219, UNITED STATES | None | $11,081.10 |
| 372 | WeWork Companies U.S. LLC | Purchase and Sale Agreement | Waller Creek Holdings LP, et. al. | Ivanhoe Holdings U.S. Inc., 1001, Square Victoria, C-500, Montréal, Québec, Canada, H2Z 2B5 | None | $0.00 |
| 373 | We Work Management LLC | Software Lease/License Agreement | WHISTIC, INC | 1982 W Pleasant Grove Blvd, Suite H, Pleasant Grove, UT 84062, UNITED STATES | None | $0.00 |
| 374 | WW BuildCo LLC | Consulting Agreement | Wise One Solutions LLC | 1020 Bonner Bussells Drive, Southport, NC 28561, UNITED STATES | None | $2,458.78 |
| 375 | We Work Management LLC | Master Service Agreement | Wisetek Solutions, Inc. | ATTN: Gary McCarthy, Director of Sales Operations, 3200 Hubbard Road, Hyattsville, MD 20785, UNITED STATES | None | $0.00 |
| 376 | WeWork Companies U.S. LLC | Consulting Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 377 | We Work Management LLC | Consulting Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 378 | We Work Management LLC | Assignment and Assumption Agreement | Wizeline, Inc | 201 Mission St, Suite 1200, San Francisco, CA 94105, UNITED STATES | None | $0.00 |
| 379 | We Work Management LLC | Purchase and Sale Agreement | Workday, Inc. | 6110 Stoneridge Mall Road, Pleasanton, CA 94068, UNITED STATES | Revised scope and payment terms | $0.00 |
| 380 | We Work Management LLC | Subscription Agreement | Workday, Inc. | 6110 Stoneridge Mall Road, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 381 | We Work Management LLC | Statement of Work | Workday, Inc. | 6230 Stoneridge Mall Road, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 382 | We Work Management LLC | Services Agreement | Workday, Inc. | 6230 Stoneridge Mall Road, Pleasanton, CA 94588, UNITED STATES | Revised scope and payment terms | $0.00 |
| 383 | We Work Management LLC | Services Agreement | Workiva, Inc. | 2900 University Boulevard, Ames, IA 50010, UNITED STATES | Revised scope | $0.00 |
| 384 | We Work Management LLC | Employee Benefit Agreement | Workplace Options LLC | 2912 Highwoods Blvd, Suite 100, Raleight, NC 27604, UNITED STATES | None | $0.00 |
| 385 | We Work Management LLC | Assignment and Assumption Agreement | Yardi Systems, Inc | 430 S. Fairview Ave, Santa Barbara, CA 93117, UNITED STATES | None | ~~TBD~~$1,065,882.17 |
| 386 | WeWork Companies U.S. LLC | Master Relationship Agreement | Yardi Systems, Inc. | 430 South Fairview Avenue, Goleta, CA 93117, UNITED STATES | None | $0.00 |
| 387 | WeWork Companies U.S. LLC | Joint Venture Agreement | Yardi Systems, Inc. | Attn: Arnold Brier, General Counsel, 430 S. Fairview Ave., Santa Barbara, CA 93117, UNITED STATES | None | $0.00 |
| 388 | We Work Management LLC | Operating Agreement | Yardi Systems, Inc. | 430 S. Fairview Ave., Santa Barbara, CA 93117, UNITED STATES | None | $0.00 |
| 389 | WeWork Companies U.S. LLC | Subscription Agreement | Yext Inc | 1 Madison Avenue, 5th Floor, New York, NY 10010, UNITED STATES | None | $0.00 |
| 390 | We Work Management LLC | Subscription Agreement | Yext Inc | 61 9th Avenue, New York, NY 10011, UNITED STATES | None | $0.00 |
| 391 | We Work Management LLC | Software Lease/License Agreement | Zebrafish Labs Inc. | 423 Tehama Street, Floor 1, San Francisco, CA 94103, UNITED STATES | None | $481.00 |
| 392 | We Work Management LLC | Services Agreement | Zebrafish Labs Inc. | 423 Tehama Street, Floor 1, San Francisco, CA 94103, UNITED STATES | None | $0.00 |
| 393 | We Work Management LLC | Subscription Agreement | Zoom Video Communications Inc | 55 Almaden Boulevard, Suite 600, San Jose, CA 95113, UNITED STATES | None | $3,794.59 |
| 394 | We Work Management LLC | Software Lease/License Agreement | ZoomInfo Technologies LLC | 805 Broadway Street, Suite 900, Vancouver, WA 98660, UNITED STATES | None | $0.00 |
| 395 | We Work Management LLC | Software Lease/License Agreement | ZoomInfo Technologies LLC | 805 Broadway Street, Suite 900, Vancouver, WA 98660, UNITED STATES | None | $0.00 |

1.      Unless otherwise indicated, any active related amendments or addendums, as well as any outstanding orders governed by the contracts listed, are also deemed to be assumed

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Contract to be Assumed | Assumption Counterparty | Counterparty Address | Address of the Leased Location | Debtor Legal Entity | Amendments to Contract | Cure Amount 2 | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 1 | Unexpired Lease | 625 W. Adams, LLC | 9830 Colonnade Boulevard, Suite 600, San Antonio, TX, 78230-2239 | 625 West Adams Street Floor 19 Chicago, IL 60661 | 625 West Adams Street Tenant LLC | Reduce term, convert to gross lease, add revenue share, | $400,000.00 at a later date | 5/9/2024 |
| 2 | Unexpired Lease | 1900 McKinney Harwood LLC | 2001 Ross Avenue, Suite 3400, Dallas, TX, 75201 | 1920 McKinney Ave Dallas, TX 75201 | 1920 McKinney Ave Tenant LLC | Reduce term, reduce premises, reduce rent, reduce security deposit, add revenue share | $184,966.86 at a later date | 5/13/2024 |
| 3 | Unexpired Lease | 600 B Street San Diego Owner, LLC | 1999 Avenue of the Stars, Ste 3425, Los Angeles, CA, 90067 | 600 B St San Diego, CA 92101 | 600 B Street Tenant LLC | Reduce premises, reduce rent, reduce guaranty | $1,526,726.00 at a later date | 5/14/2024 |
| 4 | Unexpired Lease | 1450 Broadway, LLC | 1450 Broadway, 17th Floor, New York, NY, 10018 | 1450 Broadway New York, NY 10018 | 1450 Broadway Tenant LLC | Reduce term, reduce rent, reduce premises, add profit share, amend guaranty, amend guaranty burndown | $0 | 5/14/2024 |
| 5 | Unexpired Lease | 222 Broadway Owner, LLC | 142 West, 57th Street, New York, NY, 10019 | 222 Broadway New York, NY 10038 | WW 222 Broadway LLC | None | $2,117,807 | TBD |
| 6 | Unexpired Lease | KS SP Nominee Inc., ARI SP Nominee Inc., KS S | 1 York Street, Suite 1100, Toronto, Ontario, M5J 0B6 | 40 King Street West Toronto, ON M5H 3Y2 | WeWork Canada LP ULC | None | $227,902 | TBD |
| 7 | Unexpired Lease | DTS Office Holdings, LLC | 10801 West Charleston Blvd., Suite 300, Las Vegas, NV, 89135 | 10845 Griffith Peak Drive Las Vegas, NV 89135 | 10845 Griffith Peak Drive Tenant LLC | None | $206,729 | TBD |
| 8 | Unexpired Lease | Wynwood DS, LLC | 310 NW 26th Street, Suite B, Miami, FL, 33127 | 360 NW 27th Street Miami, FL 33127 | 360 NW 27th Street Tenant LLC | None | $143,088 | TBD |
| 9 | Unexpired Lease | Bellevue Place Office, LLC | Post Office Box 908, Bellevue, WA, 98009 | 800 Bellevue Way NE Bellevue, WA 98004 | 800 Bellevue Way Tenant LLC | None | $135,225 | TBD |
| 10 | Unexpired Lease | McGavock Pike Partners, GP | PO Box 60865, Nashville, TN, 37206 | 901 Woodland Street Nashville, TN 37206 | 901 Woodland St Tenant LLC | None | $84,103 | TBD |
| 11 | Unexpired Lease | Seaport B/C Retail Owner LLC | 33 Boylston Street, Suite 3000, Chestnut Hill, MA, 02467 | 77 Sleeper Street Boston, MA 02210 | 77 Sleeper Street Tenant LLC | None | $6,104 | ~~TBD~~5/17/2024 |
| 12 | Unexpired Lease | GSJC Master Lessee, L.L.C | 200 West Street, New York, NY, 10282-2198 | 30 Hudson St Jersey City, NJ 07302 | 30 Hudson Street Tenant LLC | None | $72,448 | TBD |
| 13 | Unexpired Lease | Onni Brand Limited Partnership | 1010 Seymour Street, Suite 200, Vancouver, BC, V6B 3M6 | 611 North Brand Boulevard WeWork - Suite 1300 Glendale, CA 91203 | 611 North Brand Boulevard Tenant LLC | None | $206,572 | TBD |
| 14 | Unexpired Lease | Fairway East Kennedy Owner, LLC | 800 N. Magnolia Avenue, Suite 1625, Orlando, FL, 32803 | 501 East Kennedy Boulevard Suite 1400 Tampa, FL 33602 | 501 East Kennedy Boulevard Tenant LLC | None | $214,249 | TBD |
| 15 | Unexpired Lease | Cousins Railyard LP | 500 East Morehead Street, Suite 200, | ~~501 Boylston~~1422 S | South Tryon Street | None | $152,764 | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| | | | | | Tenant LLC | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Charlotte, NC, 28202 | **Tryon** Street **Suite 300** ~~Boston, MA 02116~~**Charlotte, NC 28203** | Tenant LLC | | | |
| 16 | Unexpired Lease | Quarry Oaks Owner LP | 201 W. 5th Street, Suite 1200, Austin, TX, 78701 | 10900 Stonelake Boulevard Austin, TX 78759 | 10900 Stonelake Boulevard Tenant LLC | None | $181,686 | TBD |
| 17 | Unexpired Lease | Giralda PB LLC | 2222 Ponce de Leon, Blvd, Coral Gables, FL, 33134 | 2222 Ponce De Leon Blvd Miami, FL 33134 | 2222 Ponce De Leon Blvd Tenant LLC | None | $41,680 | TBD |
| 18 | Unexpired Lease | Giralda Complex LLC | 299 Alhambra Circle, Suite 512, Coral Gables, FL, 33134 | 255 Giralda Avenue Coral Gables, FL 33134 | 255 Giralda Avenue Tenant LLC | None | $0 | TBD |
| 19 | Unexpired Lease | W-SF Goldfinger Owner VIII, L.L.C. | 917 West Washington Blvd, Suite 308, Chicago, IL, 60607 | 167 North Green Street Floor 4 Chicago, IL 60607 | 167 N Green Street Tenant LLC | None | $325,858 | TBD |
| 20 | Unexpired Lease | LS2 Office, LLC | PO Box 908, Bellevue, WA, 98009 | 400 Bellevue Way NE Bellevue, WA 98004 | 400 Lincoln Square Tenant LLC | None | $373,300 | TBD |
| 21 | Unexpired Lease | Cordova II Equities Inc. | 300 - 1030 West Georgia Street, Vancouver, British Columbia, V6E 2Y3 | 333 Seymour Street Vancouver, BC V6B 5A7 | WeWork Canada LP ULC | None | $30,966 | TBD |
| 22 | Unexpired Sublease | Salesforce.com, Inc | One Market, 3rd Floor, San Francisco, CA, 94105 | 333 Seymour Street Vancouver, BC V6B 5A7 | WeWork Canada LP ULC | None | $0 | TBD |
| 23 | Unexpired Lease | Domain Northside Office Property Owner, LP | 1819 Wazee Street, Denver, CO, 80202 | 11801 Domain Blvd WeWork 3rd Floor Austin, TX 78758 | 11801 Domain Blvd Tenant LLC | None | $295,514 | TBD |
| 24 | Unexpired Lease | US VI 2 Brickell, LLC | 11605 North Community House Road, Suite 600, Charlotte, NC, 28277 | 78 SW 7th Street Miami, FL 33130 | 78 SW 7th Street Tenant LLC | None | $412,835 | TBD |
| 25 | Unexpired Lease | The Building at 575 Fifth Office Owner LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 575 5th Ave New York, NY 10017 | 575 5th Avenue Tenant LLC | Reduce premises, reduce ~~guaranty~~**term for part of premises, reduce rent**, convert to gross lease, add profit share**, reduce guaranty, amend guaranty burndown** | $0 | ~~5/17/2024~~**5/16/2024** |
| 26 | Unexpired Lease | 500-512 Seventh Avenue Limited Partnership | 512 Seventh Avenue, 16th floor, New York, NY, 10018 | 500 7th Avenue New York, NY 10018 | 500 7th Avenue Tenant LLC | TBD | TBD | TBD |
| 27 | Unexpired Lease | BNY Tower Associates LLC | 345 Park Avenue, 33rd Floor, New York, NY, 10154 | 63 Flushing Avenue Brooklyn, NY 11205 | WW Brooklyn Navy Yard LLC | TBD | TBD | TBD |
| 28 | Unexpired Lease | 1701 Rhode Island Inc. | 1030 15th Street NW, Suite 250 West, Washington, DC, 20005 | 1701 Rhode Island Avenue Northwest Washington, DC 20036 | 1701 Rhode Island Avenue Northwest Tenant LLC | TBD | TBD | TBD |
| 29 | Unexpired Lease | 79 Madison LLC | 1114 Avenue of the Americas, 11th Floor, | 27 E 28th St New York, NY 10016 | WW 79 Madison LLC | TBD | TBD | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Type | Counterparty | Address | Property Address | Tenant | Modifications | Amount | Date |
|---|------|--------------|---------|------------------|--------|---------------|--------|------|
| | | | New York, NY, 10036 | | | | | |
| 30 | Unexpired Lease | Three Galleria Office Buildings, LLC | One Riverway, Suite 100, Houston, TX, 77056 | 2700 Post Oak Blvd Houston, TX 77056 | 2700 Post Oak Blvd. Tenant LLC | ~~TBD~~ **Reduce premises, reduce rent, convert to gross lease, reduce guaranty, amend guaranty burndown** | ~~TBD~~ **$618,042.92 at a later date** | ~~TBD~~**5/18/2024** |
| 31 | Unexpired Lease | 11 Park Place LLC | 1114 Avenue of the Americas, 11th Floor, New York, NY 10036 | 11 Park Pl New York, NY 10007 | 11 Park Pl Tenant LLC | TBD | TBD | TBD |
| 32 | Unexpired Lease | CSHV 615 College. LLC | PO Box 102151, Pasadena, CA, 91030-1030 | 615 S. College Street WeWork Floor 10 Charlotte, NC 28202 | 615 S. Tenant LLC | Reduce premises, reduce term, reduce rent, convert to gross lease, amend guaranty burndown | $0 | 5/17/2024 |
| 33 | Unexpired Lease | 460 Park Avenue South Associates LLC | 3 Columbus Circle, Suite 2300, New York, NY, 10019 | 460 Park Avenue South New York, NY 10016 | 460 Park Ave South Tenant LLC | TBD | TBD | TBD |
| 34 | Unexpired Lease | CIO Terraces, LLC | Suite 32 10-666 Burrard Street, Vancouver, BC, V6C 2x8 | 5960 Berkshire Lane Floor 6 Dallas, TX 75225 | 5960 Berkshire Lane Tenant LLC | ~~TBD~~**Reduce premises, reduce parking, reduce rent** | ~~TBD~~**$42,462.37 at a later date** | ~~TBD~~**5/24/2024** |
| 35 | Unexpired Lease | SRI Eleven Minneapolis 225 LLC | Dept CH 10971, Palatine, IL, 60055-0971 | 225 South 6th Street Suite 3900 Minneapolis, MN 55402 | 225 South 6th St Tenant LLC | Reduce premises, **reduce term, reduce rent, reduce guaranty, amend guaranty burndown, convert to gross lease, later convert to modified net lease, add revenue share~~Reduce premises,~~** reduce guaranty, reduce term, convert to gross lease, add revenue share | $260,899.54 at a later date | 5/17/2024 |
| ~~36~~ | ~~Unexpired Storage Lease (B107)~~ | ~~SRI Eleven Minneapolis 225 LLC~~ | ~~Dept CH 10971, Palatine, IL, 60055-0971~~ | ~~225 South 6th Street Suite 3900 Minneapolis, MN 55402~~ | ~~225 South 6th St Tenant LLC~~ | ~~None~~ | ~~$0~~ | ~~5/17/2024~~ |
| ~~37~~ | ~~Unexpired Storage Lease (B134)~~ | ~~SRI Eleven Minneapolis 225 LLC~~ | ~~225 South Sixth Street, Suite 250, Minneapolis, MN, 55402~~ | ~~225 South 6th Street Suite 3900 Minneapolis, MN 55402~~ | ~~225 South 6th St Tenant LLC~~ | ~~None~~ | ~~$0~~ | ~~5/17/2024~~ |
| ~~38~~ | ~~Unexpired Storage Lease (B178)~~ | ~~SRI Eleven Minneapolis 225 LLC~~ | ~~Dept CH 10971, Palatine, IL, 60055-0971~~ | ~~225 South 6th Street Suite 3900 Minneapolis, MN 55402~~ | ~~225 South 6th St Tenant LLC~~ | ~~None~~ | ~~$0~~ | ~~5/17/2024~~ |
| ~~39~~ **36** | Unexpired Lease | Dream Office LP | 30 Adelaide Street East, Suite 301, State Street Financial Centre, Toronto, Ontario, M5C 3H1 | 357 Bay Street Toronto, ON M5H 4A6 | WeWork Canada LP ULC | TBD | TBD | TBD |
| ~~40~~ **37** | Unexpired Lease | Embarcadero Center Associates | Lobby Level, Suite One, San Francisco, CA, 94111 | 2 Embarcadero Center San Francisco, CA 94111 | 2 Embarcadero Center Tenant LLC | TBD | TBD | TBD |
| ~~41~~ **38** | Unexpired Lease | SOF-XI PCT Single Tower Owner, L.L.C. | 100 Pine Street, Suite 3000, San Francisco, CA, 94111 | 222 Pacific Coast Highway El Segundo, CA 90245 | 222 North Sepulveda Tenant LLC | TBD | TBD | TBD |
| ~~42~~ | Unexpired Storage Lease | SOF-XI PCT Single Tower Owner, L.L.C. | 100 Pine Street, Suite | 222 Pacific Coast | 222 North Sepulveda | TBD | TBD | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3 9 | | | 3000, San Francisco, CA, 94111 | Highway El Segundo, CA 90245 | Tenant LLC | | | |
| ~~43~~ 4 0 | Unexpired Lease | NW 524 Soho LLC | 1819 Wazee Street, Denver, CO, 80202 | 524 Broadway New York, NY 10012 | 524 Broadway Tenant LLC | ~~TBD~~Reduce premises, reduce rent, convert to gross lease, add profit share, all furniture remaining in surrender premises deemed abandoned and transferred to landlord | ~~TBD~~$505,682.20 at a later date | ~~TBD~~5/23/2024 |
| ~~44~~ 4 1 | Unexpired Lease | AG-LC Warner Center Phase IV Owner, L.P. | 2000 Avenue of the Stars, Suite 1020, Los Angeles, CA, 90067 | 21255 Burbank Boulevard Suite 120 Los Angeles, CA 91367 | 21255 Burbank Boulevard Tenant LLC | ~~TBD~~Reduce premises, reduce term, reduce rent, convert to gross lease, add revenue share, amend guaranty burndown | ~~TBD~~$206,824.71 | ~~TBD~~5/20/2024 |
| ~~45~~ 4 2 | Unexpired Lease | Wells REIT II - 80 M Street, LLC | 701 Pennsylvania Avenue, NW, Suite 560, Washington, DC, 20004 | 80 M Street SE Washington, DC 20003 | 80 M Street SE Tenant LLC | ~~TBD~~ Reduce term, reduce rent, reduce guaranty, add revenue share, add rent credit | ~~TBD~~$0 | ~~TBD~~5/24/2024 |
| ~~46~~ 4 3 | Unexpired Lease | AG Redstone Owner, L.P | 150 Paularino, Suite D182, Costa Mesa, CA, 92626 | 4041 Macarthur Boulevard Suite 400 Newport Beach, CA 92660 | 4041 Macarthur Boulevard Tenant LLC | TBD | TBD | TBD |
| ~~47~~ 4 4 | Unexpired Lease | BCSP 515 North State Street LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 515 N State St Chicago, IL 60654 | 515 N State Street Tenant LLC | TBD | TBD | TBD |
| ~~48~~ 4 5 | Unexpired Lease | 1201 TAB Owner, LLC | 1201 Third Avenue, Suite 520, Seattle, WA, 98101 | 1201 3rd Avenue Suite 2200 Seattle, WA 98101 | 1201 3rd Avenue Tenant LLC | TBD | TBD | TBD |
| ~~49~~ 4 6 | Unexpired Lease | Trinity Centre LLC | 115 Broadway, Suite 1705, New York, NY, 10006 | 5th Floor 115 Broadway New York, NY 10006 | 115 Broadway Tenant LLC | ~~TBD~~Reduce premises, reduce rent, reduce guaranty, eliminate guaranty burndown | ~~TBD~~$632,023.84 at a later date | ~~TBD~~5/20/2024 |
| ~~50~~ 4 7 | Unexpired Lease | 400 Spectrum Holdings LLC | 550 Newport Centre Drive, Newport Beach, CA, 92660 | 400 Spectrum Center Drive Irvine, CA 92618 | 400 Spectrum Center Drive Tenant LLC | ~~TBD~~Reduce term, reduce rent, add revenue share, terminate guaranty, amend letter of credit and burndown | ~~TBD~~$254,507.61 at a later date and $1,790.11 at a later date | ~~TBD~~5/22/2024 |
| ~~51~~ 4 8 | Unexpired Lease | BCal Gateway Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 460 West 50 North Salt Lake City, UT 84101 | 460 West 50 North Tenant LLC | ~~TBD~~Amend base rent, convert to gross lease, add revenue share, reduce letter of credit, amend letter of credit burndown, reduce guaranty, amend guaranty burndown | ~~TBD~~$0 | ~~TBD~~5/22/2024 |
| ~~52~~ 4 9 | Unexpired Lease | KBSIII Legacy Town Center, LLC | 5801 Tennyson Parkway, Suite 110, Plano, TX, 75024 | 6900 Dallas Parkway Floor 3 Plano, TX 75024 | 6900 North Dallas Parkway Tenant LLC | TBD | TBD | TBD |
| ~~53~~ 5 0 | Unexpired Lease | CV Latitude 34, LLC | 601 South. Figueroa Street, Suite 3600, Los Angeles, CA, 90017 | 12130 Millennium Drive Suite 300 Los Angeles, CA 90094 | 12130 Millennium Drive Tenant LLC | ~~TBD~~Reduce term, reduce rent, reduce guaranty, amend letter of credit burn down | ~~TBD~~ $86,247.90 at a later date and $1,798,212.12 at a later date | ~~TBD~~5/24/2024 |
| ~~54~~ 5 1 | Unexpired Lease | LORE BCA 2120 L.P. (DBA Lionstone Investmen | 712 Main Street, Suite 2500, Houston, TX, | 2015 Shattuck Square Berkeley, CA 94704 | WW 2015 Shattuck LLC | TBD | TBD | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | 77002 | | | | |
| 552 | Unexpired Lease | 177 Colorado Owner LLC | 3953 Maple Avenue, Suite 300, Dallas, TX, 75219 | 177 E Colorado Blvd Pasadena, CA 91105 | 177 E Colorado Blvd Tenant LLC | TBD | TBD | TBD |
| 553 | Unexpired Lease | MSI Holyoke LLC | 316 Occidental Avenue S, Ste. 500, Seattle, WA, 98104 | 107 Spring St Seattle, WA 98104 | WW 107 Spring Street LLC | Reduce rent, add revenue share, amend guaranty | $136,609.48 at a later date | 5/17/2024 |
| 554 | Unexpired Lease | 200 Portland Street, LLC | 65 Franklin Street, Boston, MA, 02110 | 200 Portland Street Boston, MA 02114 | 200 Portland Tenant LLC | ~~TBD~~ **Reduce term, reduce rent, add revenue share, reduce guaranty, amend guaranty burndown** | ~~TBD~~ **$420,000 at a later date** | ~~TBD~~ **5/21/2024** |
| 555 | Unexpired Lease | AMCO 120 West Trinity | 3344 Peachtree Road, N.E., Suite 1800, Atlanta, GA, 30326 | 120 West Trinity Place Decatur, GA 30030 | 120 West Trinity Place Tenant LLC | TBD | TBD | TBD |
| 556 | Unexpired Lease | CA 5-15 West 125th LLC | 1412 Broadway, New York, NY, 10018 | 5 W 125th St New York, NY 10027 | WW 5 W 125th Street LLC | TBD | TBD | TBD |
| 557 | Unexpired Lease | 255 South King Street Limited Partnership | 270 South Hanford Street, Suite 100, Seattle, WA, 98134 | 255 S King St Ste 800 Seattle, WA 98104 | 255 S King St Tenant LLC | TBD | TBD | TBD |
| 558 | Unexpired Lease | Transbay Tower LLC | Four Embarcadero Center, Lobby Level, Suite One, San Francisco, CA, 94111 | Mission Street San Francisco, CA 94105 | 415 Mission Street Tenant LLC | TBD | TBD | TBD |
| 559 | Unexpired Lease | Esplanade Owner LLC | 535 Madison Avenue, New York, NY, 10022 | 2425 East Camelback Road Phoenix, AZ 85016 | 2425 East Camelback Road Tenant LLC | ~~TBD~~ **Reduce term, reduce premises, reduce rent, add revenue share** | ~~TBD~~ **$0** | ~~TBD~~ **5/22/2024** |
| 560 | Unexpired Lease | Columbia REIT - 650 California, LLC | 221 Main Street, Suite 100, San Francisco, CA, 94105 | 650 California Street San Francisco, CA 94108 | 650 California Street Tenant LLC | ~~TBD~~ **Reduce premises, reduce rent, reduce guaranty, add revenue share** | ~~TBD~~ **$0** | ~~TBD~~ **5/24/2024** |
| 561 | Unexpired Lease | BCSP 330 North Wabash Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 330 North Wabash Avenue Chicago, IL 60601 | 330 North Wabash Tenant LLC | ~~TBD~~ **Reduce term, reduce rent, convert to gross lease, add revenue share, reduce guaranty, reduce letter of credit, amend letter of credit burndown** | ~~TBD~~ **$0** | ~~TBD~~ **5/22/2024** |
| 562 | Unexpired Storage Lease | BCSP 330 North Wabash Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 330 North Wabash Avenue Chicago, IL 60601 | 330 North Wabash Tenant LLC | TBD | TBD | TBD |
| 563 | Unexpired Lease | 520 Broadway Owner, LLC | PO Box 102327, Pasadena, CA, 91189-2327 | 520 Broadway, Suite 200 Santa Monica, CA 90401 | WW 520 Broadway LLC | ~~TBD~~ **Extend term, reduce rent, add revenue share** | ~~TBD~~ **$558,567.14 at a later date** | ~~TBD~~ **5/17/2024** |
| 564 | Unexpired Lease | CIO Bloc 83, LLC | 666 Burrard Street, Suite 3210, Vancouver, British Columbia, V6C 2X8 | 1 Glenwood Avenue Raleigh, NC 27603 | 1 Glenwood Ave Tenant LLC | ~~TBD~~ **Reduce premises, reduce rent, reduce parking** | ~~TBD~~ **$57,250.39 at a later date and $246,017.66 at a later date** | ~~TBD~~ **5/24/2024** |
| 565 | Unexpired Lease | 200 Spectrum Center Drive LLC | 550 Newport Center Drive, Newport Beach, CA, 92660 | 200 Spectrum Center Drive Irvine, CA 92618 | 200 Spectrum Center Drive Tenant LLC | ~~TBD~~ **Reduce term, reduce rent, add revenue share, amend letter of credit and burndown, amend guaranty** | ~~TBD~~ **$231,247.47 at a later date and $4,056.29 at a later date** | ~~TBD~~ **5/22/2024** |

**DRAFT - Schedule of Assumed Unexpired Leases**

| # | Type | Counterparty | Landlord Address | Property Address | Tenant | Modifications | Cure Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 69 66 | Unexpired Lease | SVF Criterion Santa Monica Corporation | 515 South Flower Street, 49th Floor, Los Angeles, CA, 90071 | 312 Arizona Ave Santa Monica, CA 90401 | WW 312 Arizona LLC | TBD Reduce rent, reduce guaranty | TBD $470,728.98 at a later date | TBD 5/24/2024 |
| 70 67 | Unexpired Lease | Societe Immobiliere Camont Inc | 1001, Victoria Square, Suite C-500, Montreal, Quebec, H2Z 2B5 | 455 Rue Saint-Antoine Ouest Montreal, QC H2Z 1J1 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 71 68 | Unexpired Lease | NP 18th & Chet, LLC | 9225 Lake Hefner Parkway, Suite 200, Oklahoma City, OK, 73120 | 820 18th Avenue South Nashville, TN 37203 | 820 18th Ave South Tenant LLC | TBD | TBD | TBD |
| 72 69 | Unexpired Lease | GW Property Services LLC | 1099 18th Street, Suite 2900, Denver, CO 80202 | 2727 East 2nd Avenue Denver, CO 80206 | 205 North Detroit Street Tenant LLC | TBD | TBD | TBD |
| 73 70 | Unexpired Lease | Legacy West Investors, LP | 2001 Ross Avenue, Suite 3400, Dallas, TX, 75201 | WeWork 7700 Windrose Ave Suite G300 Plano, TX 75024 | Legacy Tenant LLC | TBD Reduce term, reduce rent, add revenue share | TBD $0 | TBD 5/22/2024 |
| 74 71 | Unexpired Lease | BCSP MCMIF Crossroads Property Holdco, LLC | 200 State 425 Market Street, 5th Floor, Boston, MA, 02109, Suite 1050, San Francisco, CA 94105 | 1825 South Grant Street San Mateo, CA 94402 | 1825 South Grant Street Tenant LLC | TBD Reduce term, reduce rent, convert to gross lease, add profit share, eliminate letter of credit burn down, amend guaranty | TBD $721.65 at a later date | TBD 5/24/2024 |
| 75 72 | Unexpired Lease | Epic Lafayette Street LLC | 15 Watts Street, 5th Floor, New York, NY, 10013 | 148 Lafayette St, 3rd floor New York, NY 10013 | 148 Lafayette Street Tenant LLC | TBD | TBD | TBD |
| 76 73 | Unexpired Lease | BCAL 44 Montgomery Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 44 Montgomery Street San Francisco, CA 94104 | 44 Montgomery Street Tenant LLC | TBD | TBD | TBD |
| 77 74 | Unexpired Lease | AB Metro Properties Ltd | 550 Burrard Street, Suite 300, Vancouver, British Columbia, V6C 2B5 | 6060 Silver Drive 3rd-Floor Burnaby, BC V5H 0H5 | WeWork Canada LP ULC | TBD Reduce term, reduce premises, reduce rent, add revenue share, amend guaranty burn down | TBD $0 | TBD 5/21/2024 |
| 78 75 | Unexpired Lease | Park Place Associates | 3197 Park Blvd, Palo Alto, CA, 94306 | 3101 Park Boulevard Palo Alto, CA 94306 | 3101 Park Boulevard Tenant LLC | TBD Reduce rent, reduce guaranty, add profit share, amend letter of credit burn down | TBD $364,714.36 at a later date | TBD 5/24/2024 |
| 79 76 | Unexpired Lease | BCSP Circa Property LLC | 200 State Street, 5th Floor, Boston, MA, 02109 | 1615 Platte Street Denver, CO 80202 | 1615 Platte Street Tenant LLC | Reduce rent, add revenue share, amend guaranty, amend guaranty burndown | $142,947 at a later date | TBD 5/17/2024 |
| 80 77 | Unexpired Lease | BCSP 8 600 Property, L.P. | 200 State Street, 5th Floor, Boston, MA, 02109 | 600 Congress Ave Austin, TX 78701 | WW 600 Congress LLC | TBD Reduce base rent, convert to gross lease, revenue share | TBD $75,306.74 at a later date | TBD 5/24/2024 |
| 81 78 | Unexpired Lease | 575 Lex Property Owner, L.L.C. | 245 Park Avenue, 24th Floor, New York, NY, 10167 | 575 Lexington Avenue 14th floor New York, NY 10022 | 575 Lexington Avenue Tenant LLC | TBD | TBD | TBD |
| 82 79 | Unexpired Lease | BXP Mission 535 LP | Four Embarcadero Center Lobby Level, | 535 Mission St San Francisco, CA 94105 | WW 535 Mission LLC | TBD | TBD | TBD |

**DRAFT - Schedule of Assumed Unexpired Leases**

|  |  |  |  | Suite One, San Francisco, CA, 94111 |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| 83 880 | Unexpired Lease | 1460 Leasehold Swighm LLC | 30 West 26th Street, 8th Floor, New York, NY, 10010 | 1460 Broadway New York, NY 10036 | 1460 Broadway Tenant LLC | ~~TBD~~ Reduce rent, convert to gross lease, add profit share, reduce letter of credit, reduce guaranty | ~~TBD~~ $911,568.38 at a later date | ~~TBD~~ 5/22/2024 |
| 84 881 | Unexpired Lease | TYH Development Company LLC | 2000 Tower Oaks, Boulevard, 8th Floor, Rockville, MD, 20852 | 1775 Tysons Blvd Tysons, VA 22102 | 1775 Tysons Boulevard Tenant LLC | TBD | TBD | TBD |
| 85 882 | Unexpired Lease | 221 W. 6th Street (TX) Owner, LLC | Building Management Office, 221 W. 6th Street, Suite B-300, Austin, TX, 78701 | 221 West 6th Street 5th Floor Austin, TX 78701 | 221 6th Street Tenant LLC | Reduce term | $0 | 5/17/2024 |
| 86 883 | Unexpired Storage Lease | Sixth Street Tower, LLC | 201 W. Fifth Street, Suite 1200, Austin, TX, 78701 | 221 West 6th Street 5th Floor Austin, TX 78701 | 221 6th Street Tenant LLC | None | $0 | ~~5/17/2024~~ TBD |
| 87 884 | Unexpired Lease | BDN 1900 Market Owner LLC | 2929 Arch Street, Suite 1800, Philadelphia, PA, 19104 | 1900 Market Street Suite 800 Philadelphia, PA 19103 | 1900 Market Street Tenant LLC | Extend term, reduce rent, reset base year for operating expenses | $188,901 at a later date | 5/17/2024 |
| 88 885 | Unexpired Lease | Ivanhoé Cambridge Inc. - PVM | 11742 Access via QUAI 1, Montreal, Quebec, H3B 3Y1 | 3 Place Ville Marie Montreal, QC H3B 2E3 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 89 886 | Unexpired Lease | CCP/MS SSIII Denver Tabor Center 1 Property O | 200 State Street, 5th Floor, Boston, MA, 02109 | 1200 17th Street Floor 27 Denver, CO 80202 | 1200 17th Street Tenant LLC | ~~TBD~~ Reduce rent, convert to gross lease, reduce premises, option to further reduce premises, reduce guaranty | ~~TBD~~ $0 | ~~TBD~~ 5/22/2024 |
| 90 887 | Unexpired Lease | 85 Broad Street Property Owner LLC | 3 Bryant Park, 24th Floor, New York, NY, 10036 | 85 BROAD ST FL 18th New York, NY 10004-2783 | WW 85 BROAD LLC | TBD | TBD | TBD |
| 91 888 | Unexpired Sublease | LPQ 85 Broad, Inc | 50 Broad Street, 12th Floor, New York, NY, 10004 | 85 BROAD ST FL 18th New York, NY 10004-2783 | WW 85 BROAD LLC | TBD | TBD | TBD |
| 92 889 | Unexpired Lease | 1001 Dominion Square Management Inc. | 1010 St. Ctherine St. West, Suite 1200, Montreal, Quebec, H3B 3S3 | 1010 Rue Sainte-Catherine Ouest Montréal, QC H3G 1R3 | WeWork Canada LP ULC | TBD | TBD | TBD |
| 93 890 | Unexpired Lease | 120 East 16th Street Co. LLC | 125 Park Avenue South, New York, NY, 10017 | 33 Irving Pl New York, NY 10003 | 33 Irving Tenant LLC | ~~TBD~~ Reduce rent | ~~TBD~~ $669,591.91 at a later date | ~~TBD~~ 5/22/2024 |
| 94 891 | Unexpired Lease | Resnick Seaport LLC | 110 East 59th Street, 34th Floor, New York, NY, 10022-1379 | 199 Water Street New York, NY 10038 | 199 Water Street Tenant LLC | TBD | TBD | TBD |
| **92** | **Unexpired Lease** | **58508 Alberta Ltd.** | **335 - 8th Avenue S.W., Calgary, Alberta, T2P 1C9** | **700 2 Street Southwest Calgary, AB T2P 0X1** | **700 2 Street Southwest Tenant LP** | **Reduce term, reduce rent, add revenue share, reduce guaranty, amend guaranty burndown** | **$271,893.94 CAD at a later date** | **5/23/2024** |
| **93** | **Unexpired Storage Lease (4103)** | **58508 Alberta Ltd.** | **335 - 8th Avenue S.W., Suite 900, Calgary, Alberta, T2P 1C9** | **700 2 Street Southwest Calgary, AB T2P 0X1** | **700 2 Street Southwest Tenant LP** | **None** | **None** | **5/27/2024** |
| **94** | **Unexpired Storage Lease (4114)** | **58508 Alberta Ltd.** | **335 - 8th Avenue S.W.,** | **700 2 Street Southwest** | **700 2 Street** | **None** | **None** | **5/27/2024** |

**DRAFT - Schedule of Assumed Unexpired Leases**

| | | | Suite 900, Calgary, Alberta, T2P 1C9 | Calgary, AB T2P 0X1 | Southwest Tenant LP | | | |
|---|---|---|---|---|---|---|---|---|
| 95 | Unexpired Lease | 58508 Alberta Ltd College Park Coworking, LLC | 335 - 8th Avenue S.W., Calgary, Alberta, T2P 1C94750 Owing Mills Boulevard, Owing Mills, MD, 21117 | 700 2 Street Southwest Calgary, AB T2P 0X17761 Greenhouse Rd. College Park, MD 20740 | 700 2 Street Southwest7761 Greenhouse Rd Tenant LPLLC | TBD | TBD | TBD |
| 96 | Unexpired Storage Lease | 58508 Alberta Ltd 2000 Sierra Point Parkway LLC, Diamond Marina LLC and Diamond Marina II LLC | 335 - 8th Avenue S.W., Suite 900, Calgary, Alberta, T2P 1C9450 Concar Drive, Suite 100, San Mateo, CA, 94402 | 700 2 Street Southwest Calgary, AB T2P 0X1400 Concar Drive San Mateo, CA 94402 | 700 2 Street Southwest400 Concar Drive Tenant LPLLC | TBD | TBD | TBD |

## **Exhibit D**

**Forms of the New Corporate Governance Documents**

Certain documents, or portions thereof, contained in this **Exhibit D** and the Plan Supplement remain subject to continued review and comment by the Debtors and the Consenting Stakeholders in accordance with the consent rights set forth in the Plan and the RSA. The respective rights of the Debtors and the Consenting Stakeholders are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court, and no consent of the Required Consenting Stakeholders has been given or shall be presumed or deemed to have been given by the Required Consenting Stakeholders as a result of or in connection with the filing of this **Exhibit D**; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

**<u>Exhibit D-2</u>**

**Form of the New Certificate of Incorporation**

**AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**
**OF**
**[WEWORK INC.]**[1]

---

Pursuant to Section 303 of the
General Corporation Law of the State of Delaware

---

[WeWork Inc.] (the "Corporation"), a corporation organized and existing under the General Corporation Law of the State of Delaware (as it now exists or may hereinafter be amended and supplemented, the "DGCL"), does hereby certify as follows:

1.      The name of the Corporation is [WeWork Inc.] [The Corporation was originally incorporated under the name "BowX Acquisition Corp." by the filing of its Certificate of Incorporation with the office of the Secretary of State of the State of Delaware (the "Delaware Secretary") on May 19, 2020 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "Original Certificate of Incorporation")].[2]

2.      On November 6, 2023, the Corporation and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 (the "Chapter 11 Cases") of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). This Amended and Restated Certificate of Incorporation was duly adopted without the need for the approval of the board of directors or the stockholders of the Corporation in accordance with Section 303 of the DGCL pursuant to and in accordance with the Joint Chapter 11 Plan of Reorganization of WeWork Inc. and its Debtor Subsidiaries, as confirmed on [●], 2024 by order of the Bankruptcy Court in the Chapter 11 Cases jointly administered under the caption *In re: WeWork Inc., et al.,* Case No. 23-19865 (JKS). Provision for amending and restating the Corporation's Original Certificate of Incorporation is contained in the order of the Bankruptcy Court having jurisdiction under the Bankruptcy Code for the reorganization of the Corporation.

3.      The text of the Original Certificate of Incorporation is hereby amended and restated in its entirety as follows:

**ARTICLE I.**
**Name**

The name of the corporation is WeWork Inc. (the "Corporation").

**ARTICLE II.**
**Offices and Records**

---

[1] THIS DRAFT IS SUBJECT TO CONTINUING DUE DILIGENCE AND THE PARTIES' CONTINUING REVIEW AND COMMENT IN ALL RESPECTS. THIS DRAFT IS NOT INTENDED NOR SHALL IT BE DEEMED TO CREATE A LEGALLY BINDING OR ENFORCEABLE AGREEMENT OF ANY TYPE OR NATURE UNLESS AND UNTIL FINALIZED AND AGREED UPON BY CUPAR AND EACH OF THE OTHER PARTIES.

In addition, this draft is subject to the review and comment by Potter Anderson, Delaware counsel to Cupar, in all respects.

[2] Note to Draft: To be updated depending on final structure.

The address of the registered office of the Corporation in the State of Delaware is [251 Little Falls Drive, in the City of Wilmington, County of New Castle, Delaware 19808, and the name of its registered agent at such address is Corporation Service Company]. The books of the Corporation may be kept (subject to any provision of applicable law) outside of the State of Delaware at such place or places or in such manner or manners as may be designated from time to time by the Board of Directors of the Corporation (the "Board") or as provided in the Corporation's Amended and Restated Bylaws (as amended, restated, supplemented or otherwise modified from time to time, the "Bylaws").

**ARTICLE III.**
**Purpose**

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware (as it now exists or may hereafter be amended and supplemented, the "DGCL").

**ARTICLE IV.**
**Capital Stock**

(A)    Authorized Capital Stock. The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is [●] shares of capital stock, which will be divided into the following classes: (i) [●] shares will be of a class designated Common Stock, par value $0.0001 per share ("Common Stock"), and (ii) [●] shares will be of a class designated Preferred Stock, par value $0.0001 per share ("Preferred Stock").

Except as otherwise provided in this Article IV, or any amendments thereto, all shares of Common Stock shall be identical and shall entitle the holders thereof to the same rights and privileges.

Subject to terms of the Stockholders Agreement (as defined below), the rights and preferences of the shares of Common Stock and Preferred Stock may be set forth in this Amended and Restated Certificate of Incorporation (as amended, restated, supplemented or otherwise modified from time to time, the "Certificate of Incorporation") or one or more certificates of designations filed with the Secretary of State of the State of Delaware from time to time in accordance with the DGCL and this Certificate of Incorporation. The number of authorized shares of Common Stock or Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) from time to time by the affirmative vote of the holders of at least a majority of the voting power of the Corporation's then outstanding shares of capital stock entitled to vote thereon, voting together as a single class, irrespective of the provisions of Section 242(b)(2) of the DGCL (or any successor provision thereto), and no vote of the holders of shares of Common Stock or Preferred Stock voting separately as a class or series shall be required therefor unless a vote of any such holder is required pursuant to this Certificate of Incorporation (including any certificate of designation relating to any series of Preferred Stock).

(B)    Common Stock. Subject to the rights of holders of any series of Preferred Stock then outstanding, the voting powers, designations, preferences and relative, participating, optional or other special rights and such qualifications, limitations or restrictions of Common Stock, in addition to those set forth elsewhere herein or in the Stockholders Agreement, are as follows:

(1)    *Voting Rights.* Each holder of shares of Common Stock, as such, shall be entitled to vote at all meetings of the stockholders and to cast one vote for each outstanding share of Common Stock held of record by such holder on all matters on which stockholders are entitled to vote generally; provided, however, that, to the fullest extent permitted by law and except as otherwise required by law, holders of shares of Common Stock, as such, shall not be entitled to vote on any amendment to this Certificate of Incorporation (including any certificate of designation relating to any series of Preferred Stock) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Incorporation, any certificate of designation relating to any series of Preferred Stock or the DGCL. There shall be no cumulative voting.

(2)    *Dividends and Distributions.* Subject to applicable law and the preferences or prior rights of the holders of any shares of Preferred Stock at the time outstanding having a preference over or prior rights as to

dividends or other distributions, the holders of shares of Common Stock, as such, shall be entitled to receive, when, as and if declared by the Board (subject to the Stockholders Agreement), out of the assets of the Corporation legally available therefor, such dividends and other distributions as may be declared from time to time by the Board and shall share equally on a per share basis in all such dividends and other distributions.

(3)     *Liquidation*. In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, after payment or provision for payment of the Corporation's debts and any other payments required by law, including without limitation the payment of expenses relating to any liquidation, dissolution or winding up of the Corporation, and subject to the right, if any, of the holders of any outstanding series of Preferred Stock or any class or series of stock having a preference over or the right to participate with the Common Stock as to distributions upon dissolution or liquidation or winding up of the Corporation, the funds and assets of the Corporation that may be legally distributed to the Corporation's stockholders shall be distributed among the holders of the then outstanding Common Stock *pro rata* in accordance with the number of shares of Common Stock held by each such holder. Subject to the rights of the holders of any series of Preferred Stock then outstanding and to the other provisions of this Certificate of Incorporation (including any certificate of designation relating to any series of Preferred Stock), a merger or consolidation of the Corporation with or into any other corporation or other entity, or a sale or conveyance of all or any part of the assets of the Corporation shall not be deemed to be a voluntary or involuntary liquidation or dissolution or winding up of the Corporation within the meaning of this Article IV, Section (B)(3).

(C)     Preferred Stock. Subject to the terms of the Stockholders Agreement, the Board is hereby expressly authorized to provide for the issuance from time to time of all or any authorized but unissued shares of Preferred Stock in one or more series, and to fix for each such series the voting powers, full or limited, or no voting powers, and such designations, preferences, and relative, participating or optional rights or other special rights and such qualifications, limitations or restrictions thereof, as shall be stated and expressed in the resolution or resolutions adopted by the Board providing for the issuance of such series, including, without limitation, the authority to provide:

(1)     the number of authorized shares in such series, and the distinctive designation of such series;

(2)     the dividend rate (or method of determining such rate) on the shares of such series, whether dividends shall be cumulative and, if so, from which date or dates, and the relative preferences or rights of priority, if any, of payment of dividends on shares of such series;

(3)     whether such series shall have voting rights, in addition to the voting rights provided by applicable law, and, if so, the number of votes per share and the terms and conditions of such voting rights;

(4)     whether such series shall have conversion privileges with respect to shares of any other class or classes of capital stock or any other series of any class of capital stock and, if so, the terms and conditions of conversion, including provision for adjustment of the conversion rate upon such events as the Board shall determine;

(5)     whether the shares of such series shall be redeemable and, if so, the terms and conditions of such redemption, including the relative preferences or rights of priority, if any, of redemption, the date or dates upon or after which they shall be redeemable and the amount per share payable in case of redemption, which amount may vary under different conditions and at different redemption dates;

(6)     whether such series shall have a sinking fund for the redemption or purchase of shares of such series, and, if so, the terms and amount of such sinking fund;

(7)     the rights of the shares of such series in the event of a voluntary or involuntary liquidation, dissolution or winding up of the Corporation, and the relative preferences or rights of priority, if any, of payment of shares of such series;

(8)     the conditions or restrictions with respect to the issuance of, payment of dividends upon, or the making of other distributions to, or the acquisition or redemption of, shares ranking junior to the Preferred Stock or to such series thereof with respect to dividends or distribution of assets upon liquidation; and

(9)    any other designations, powers, preferences, rights, qualifications, limitations, and restrictions of such series.

Subject to the provisions of this Article IV and to the terms of the Stockholders Agreement, shares of one or more series of Preferred Stock may be authorized or issued from time to time as shall be determined by and for such consideration as shall be fixed by the Board in an aggregate amount not exceeding the total number of shares of Preferred Stock authorized by this Certificate of Incorporation. The powers, designations, preferences and relative, participating, optional and other special rights of the shares of each series of Preferred Stock, and the qualifications, limitations or restrictions thereof, if any, may differ from those of any and all other series at any time outstanding.

Unless otherwise provided in the resolution or resolutions providing for the issuance of such series of Preferred Stock (including in any certificate of designation relating to any series of Preferred Stock), shares of Preferred Stock, regardless of series, which shall be issued and thereafter acquired by the Corporation through purchase, redemption, exchange, conversion or otherwise shall return to the status of authorized but unissued shares of Preferred Stock, without designation as to series of Preferred Stock, and the Corporation shall have the right to reissue such shares.

(D)    <u>Limitation on Issuance of Non-Voting Equity Securities</u>. Notwithstanding anything contained in this Certificate of Incorporation, the Bylaws or the Stockholders Agreement to the contrary, pursuant to Section 1123(a)(6) of the United States Bankruptcy Code, 11 U.S.C. § 1123 (as in effect and as may be amended, supplemented or eliminated in accordance with applicable law from time to time, "<u>Section 1123(a)(6)</u>"), the Corporation shall not issue any nonvoting equity securities (which shall not be deemed to include any warrants or options or similar interests to purchase equity of the Corporation); <u>provided</u>, <u>however</u>, that the foregoing restriction (i) shall have no further force and effect beyond that required by Section 1123(a)(6), (ii) shall have such force and effect, if any, only for so long as such Section 1123(a)(6) is in effect and applicable to the Corporation and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect. The prohibition on the issuance of nonvoting equity securities is included in this Certificate of Incorporation in compliance with Section 1123(a)(6).

(E)    <u>Stockholders Agreement</u>. To the fullest extent permitted by law, each holder of shares of Common Stock and/or Preferred Stock shall be subject to, shall be required to enter into, shall be deemed to have entered into, and shall be deemed to be bound by, that certain Stockholders Agreement, dated on or around [●], 2024, by and among the Corporation and the stockholders of the Corporation (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Stockholders Agreement</u>"), regardless of whether any such holder has executed any of the Stockholders Agreement, and the Stockholders Agreement shall be deemed to be a valid, binding and enforceable obligation of each such holder (including any obligation set forth therein to waive or refrain from exercising any appraisal, dissenters or similar rights), even if such holder has not actually executed and delivered a counterpart signature page to any of the Stockholders Agreement. In addition to any other vote of stockholders of the Corporation or Board approval that may be required by law or by the provisions of this Certificate of Incorporation, so long as the Stockholders Agreement is in effect, whether or not specifically provided for in this Certificate of Incorporation, neither the Corporation nor any of its subsidiaries nor the Board shall take any action that under the terms of the Stockholders Agreement first requires a vote, consent or approval from one or more holders of shares of Common Stock and/or members of the Board to be obtained, without first obtaining such required vote, consent or approval. Until such time as no longer required pursuant to the terms of the Stockholders Agreement, the Corporation shall not issue any shares of Common Stock or Preferred Stock (including on exercise of any purchase, exchange or conversion right in any option, warrant or other convertible security) to, and no stockholder of the Corporation shall transfer any shares of Common Stock or Preferred Stock (whether by sale, gift, inheritance or other transfer or through the exercise or conversion of warrants, options or other convertible securities, by operation of law or otherwise) to, any person who does not as a precondition to such issuance or transfer execute and deliver a joinder to the Stockholders Agreement in compliance with the terms thereof (unless such person is already a party thereto), and any such proposed issuance or transfer in violation hereof or thereof shall be null and void *ab initio*. If any provisions of this Article IV or the application thereof to any person or circumstance is held invalid or unenforceable to any extent, the remainder of the provisions of Article IV and the application of such provisions to other persons and circumstances shall not be affected thereby and such provisions shall be enforced to the greatest extent permitted by law. The Secretary of the Corporation shall maintain a copy of the Stockholder Agreement at the principal place of business of the Corporation

and the Corporation will furnish without charge to each holder of record of shares of Common Stock and/or Preferred Stock a copy of the Stockholders Agreement upon written request to the Corporation at its principal place of business.

(F)      <u>Transfers of Capital Stock</u>. The Corporation shall not record upon its books any sale or other transfer, assignment or other disposition of shares of Common Stock, Preferred Stock or other securities except in accordance with the applicable provisions of this Certificate of Incorporation, the Bylaws and the Stockholders Agreement. Any purported sale, transfer, assignment or other disposition of shares of Common Stock, Preferred Stock or other securities in violation of such provisions shall be void *ab initio* and shall not be recognized by the Corporation for any purpose.

## ARTICLE V.
### Board of Directors

The business and affairs of the Corporation shall be managed by or under the direction of the Board as provided in the Bylaws and the Stockholders Agreement. The number of directors of the Corporation shall be as fixed by, or in the manner provided in, the Bylaws and the Stockholders Agreement.

Each director shall be entitled to one vote on each matter presented to the Board; <u>provided</u>, <u>however</u>, that, so long as certain holders of shares of Common Stock are entitled to designate a director pursuant to the Stockholders Agreement, the affirmative vote of the designated directors, to the extent required by the Stockholders Agreement, shall be required for the authorization by the Board of any of the matters set forth in the Stockholders Agreement.

## ARTICLE VI.
### Stockholder Action

(A)      <u>Election of Directors</u>. The holders of the shares of Common Stock shall have the right and power to elect all directors of the Corporation by vote of holders of a plurality of the votes cast of the shares of Common Stock present in person or represented by proxy at any meeting at which a quorum is present called for the purpose of electing directors; <u>provided</u>, <u>however</u>, that the holders of shares of Common Stock shall be required to vote their shares of Common Stock to elect as directors those individuals that are designated in accordance with the terms of the Stockholders Agreement. Elections of directors need not be by written ballot except and to the extent provided in the Bylaws.

(B)      <u>Advance Notice</u>. Advance notice of nominations for the election of directors or proposals or other business to be considered by stockholders, which are made by any stockholder of the Corporation, shall be given in the manner and to the extent provided in the Bylaws.

(C)      <u>Stockholder Action</u>. Any action required or permitted to be taken by the stockholders of the Corporation may be effected (i) at a duly called annual or special meeting of stockholders of the Corporation or (ii) by written consent of such stockholders in lieu of a meeting of stockholders without prior notice and without a vote.

Notwithstanding the foregoing, any action required or permitted to be taken by the holders of Preferred Stock, voting separately as a series or separately as a class with one or more other such series, may be taken without a meeting, without prior notice and without a vote, to the extent expressly so provided by the applicable certificate of designation relating to such series of Preferred Stock.

## ARTICLE VII.
### Limitation of Director and Officer Liability

To the fullest extent permitted by the DGCL, as the same exists or may hereafter be amended, a director or officer of the Corporation shall not be personally liable either to the Corporation or to any of its stockholders for monetary damages for breach of fiduciary duty as a director or officer (as applicable). If the DGCL hereafter is amended to further eliminate or limit the liability of a director or officer, then a director or officer of the Corporation, in addition to the circumstances in which a director or officer is not personally liable as set forth in the preceding sentence, shall not be liable to the fullest extent permitted by the amended DGCL.

Any amendment, repeal or elimination of the foregoing provisions of this Article VII will be prospective only and shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of, or increase the liability of any director or officer of the Corporation with respect to any acts or omissions of such director or officer occurring prior to, such amendment, repeal or elimination.

## ARTICLE VIII.
## Indemnification

(A)    <u>Definitions</u>. For purposes of this Article VIII, the following terms shall have the meanings set forth below:

(1)    "<u>Action</u>" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative.

(2)    "<u>Indemnified Party</u>" means any person who is or was a party or is threatened to be made a party to any Action by reason of the fact that such person is or was a Director or executive officer (for the purposes of this Article VIII, "executive officers" has the meaning defined in Rule 3b-7 promulgated under the 1934 Act) of the Corporation (which shall include actions taken in connection with or relating to the incorporation of the Corporation) or, while a Director or executive officer of the Corporation, is or was serving at the request of the Corporation as a Director, executive officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise, including any employee benefit plan of the Corporation.

(3)    "<u>Director</u>" means any director of the Board.

(B)    <u>Indemnification</u>. The Corporation, as the indemnitor of first resort, shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any Indemnified Party against any and all liability and loss suffered and expenses (including attorneys' fees), judgements, fines (including ERISA excise taxes or penalties) and amounts paid in settlement reasonably incurred by such Indemnified Party. Notwithstanding the preceding sentence or any other provision of this Certificate of Incorporation or the Bylaws, except as provided in <u>Part (E)</u> of this Article VIII, the Corporation shall not be obligated pursuant to terms of these this Certificate of Incorporation:

(1)    <u>Excluded Acts or Omissions</u>. To indemnify any Indemnified Party hereunder for acts, omissions or transactions for which the Indemnified Party is prohibited from receiving indemnification under this Certificate of Incorporation or applicable law; <u>provided</u>, <u>however</u>, that notwithstanding any limitation set forth in this <u>Part (B) Section (1)</u> of this Article VIII regarding the Corporation's obligation to provide indemnification, any Indemnified Party shall be entitled under, and pursuant to the terms of, <u>Part (D)</u> of this Article VIII to receive expenses payable in advance hereunder with respect to any such Action unless and until a court having jurisdiction over the Action shall have made a final judicial determination (as to which all rights of appeal therefrom have been exhausted or lapsed) that the Indemnified Party has engaged in acts, omissions or transactions for which the Indemnified Party is prohibited from receiving indemnification under this Certificate of Incorporation or applicable law.

(2)    <u>Claims Initiated by Indemnitee</u>. To indemnify or pay expenses in advance pursuant to <u>Part (D)</u> of this Article VIII to any Indemnified Party with respect to Actions initiated or brought voluntarily by the Indemnified Party and not by way of defense, counterclaim or crossclaim, except (i) with respect to actions or proceedings brought to establish or enforce a right to indemnification and the payment of expenses in advance pursuant to <u>Part (D)</u> of this Article VIII under this Certificate of Incorporation or any other agreement or insurance policy or under this Certificate of Incorporation or the Bylaws nor or hereafter in effect relating to Actions, (ii) with respect to any other such Action initiated or brought voluntarily by the Indemnified Party and not by way of defense, counterclaim or crossclaim, if the Board has approved the initiation or bringing of such Action, or (iii) as otherwise required under Section 145 of the DGCL.

(3)    <u>Illegal Remuneration</u>. To indemnify any Indemnified Party in respect to remuneration paid to the Indemnified Party if it shall be determined by final judgment or final adjudication that such remuneration was in violation of law.

6

(3)     <u>Illegal Remuneration</u>. To indemnify any Indemnified Party in respect to remuneration paid to the Indemnified Party if it shall be determined by final judgment or final adjudication that such remuneration was in violation of law.

(4)     <u>Unauthorized Settlement</u>. To indemnify any Indemnified Party for any amounts paid in settlement of any action or claim without the Corporation's written consent.

(C)     <u>Determination</u>. Any indemnification under this Article VIII (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that the indemnification of Indemnified Party is proper in the circumstances because such Indemnified Party has met the applicable standard of conduct set forth in subsections (a) and (b) of section 145 of the DGCL, as the case may be; <u>provided</u>, that the termination of any Action, shall not, of itself, create a presumption that the Indemnified Party did not act in good faith and in a manner which the Indemnified Party reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the Indemnified Party's conduct was unlawful. Such determination shall be made, with respect to an Indemnified Party who is a Director or officer at the time of such determination, (a) by a majority vote of the Directors who are not parties to such Action, even though less than a quorum, or (b) by a committee of such Directors designated by a majority vote of such Directors, even though less than a quorum, or (c) if there are no such Directors, or if such Directors so direct, by independent legal counsel in a written opinion or (d) by the holders of a majority of the total voting power of the outstanding shares of capital stock of the Corporation entitled to vote in the election of Directors, voting together as a single class. Such determination shall be made, with respect to former Directors or officers, by any person or persons having the authority to act on the matter on behalf of the Corporation. To the extent, however, that a present or former Indemnified Party of the Corporation has been successful on the merits or otherwise in defense of any Action or in defense of any claim, issue or matter therein, such Indemnified Party shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such Indemnified Party in connection therewith, without the necessity of authorization in the specific case. For purposes of any determination under this <u>Part (C)</u> of Article VIII, a person shall be deemed to have acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, or, with respect to any criminal action or proceeding, to have had no reasonable cause to believe such person's conduct was unlawful, if such person's action is based on the records or books of account of the Corporation or another enterprise, or on information supplied to such person by the officers of the Corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the Corporation or another enterprise or on information or records given or reports made to the Corporation or another enterprise by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Corporation or another enterprise. The provisions of the preceding sentence shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth in subsections (a) and (b) of section 145 of the DGCL, as the case may be.

(D)     <u>Expenses Payable in Advance</u>. Expenses, including without limitation attorneys' fees, incurred by an Indemnified Party in defending any Action shall be paid by the Corporation in advance of the final disposition of such Action upon receipt of an undertaking by or on behalf of such Indemnified Party to repay such amount if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified by the Corporation as authorized in this Article VIII.

(E)     <u>Claim</u>. If a claim for indemnification under this Article VIII (following the final disposition of such proceeding) is not paid in full within sixty (60) days after the Corporation has received a claim therefor by the Indemnified Party, or if a claim for any advancement of expenses under this Article VIII is not paid in full within thirty (30) days after the Corporation has received a statement or statements requesting such amounts to be advanced, the Indemnified Party shall thereupon (but not before) be entitled to file suit to recover the unpaid amount of such claim. If successful in whole or in part, the Indemnified Party shall be entitled to be paid the expense of prosecuting such claim to the fullest extent permitted by law. In any such action, the Corporation shall have the burden of proving that the Indemnified Party is not entitled to the requested indemnification or advancement of expenses under applicable law.

(F)     <u>Non-Exclusivity of Rights; Survival</u>. The rights conferred on any Indemnified Party by this Article VIII are not exclusive of other rights arising under the Bylaws, the Stockholders Agreement, any other agreement, vote of directors or stockholders or otherwise. The rights conferred on any Indemnified Party by this this Article VIII

shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a Director or officer and shall inure to the benefit of the heirs, executors and administrators of such a person. Any amendment, repeal or elimination of the foregoing provisions of this Article VIII will be prospective only and shall not adversely affect any right or protection of an Indemnified Party existing at the time of, or increase the liability of any Indemnified Party with respect to any acts or omissions of such Indemnified Party occurring prior to, such amendment, repeal or elimination.

## ARTICLE IX.
## Corporate Opportunities

The Corporation hereby renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, any Excluded Opportunity. An "Excluded Opportunity" is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which otherwise comes into the possession of (i) any director of the Corporation who is designated by any Stockholder and is not an employee of the Corporation or any of its subsidiaries, or (ii) any holder of shares of Common Stock and/or Preferred Stock or any partner, member, director, stockholder, employee, affiliate or agent of any such holder, other than someone who is an officer or employee of the Corporation or any of its subsidiaries (collectively, the persons referred to in clauses (i) and (ii) are "Covered Persons"), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a director of the Corporation while such Covered Person is performing services in such capacity; provided, that, such matter, transaction or interest shall not be deemed to belong to the Corporation if it is a matter, transaction or interest that the Corporation is not financially able or contractually permitted or legally able to undertake, or that is, from its nature, not in the line of the Corporation's business or is of no practical advantage to it or that is one in which the Corporation has no interest or reasonable expectancy. Furthermore, it shall not be deemed a breach of any fiduciary or other duties, if any, whether express or implied, for any Covered Person to engage in a business opportunity in preference or to the exclusion of the Corporation, and such Covered Person shall have no obligation to (a) disclose to the Corporation or any of its subsidiaries any information related to its business or opportunities, (b) disclose to the Corporation or the Board any confidential information regarding any corporate opportunity or other potential investment in such Covered Person's possession even if it is material and relevant to the Corporation and/or the Board, (c) present business opportunities to the Corporation, (d) refrain from engaging in any line of business or (e) refrain from investing in or doing business with any person. Any person or entity purchasing or otherwise acquiring or holding any interest in shares of the capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article IX.  Notwithstanding the foregoing, a corporate opportunity offered to (i) the Board or (ii) any person who is a member of the Board (but only to the extent such opportunity is expressly offered to such person solely in such person's capacity as member of the Board) will belong, in each case, to the Corporation.

Any amendment, repeal, modification or elimination of the foregoing provisions of this Article IX shall only be prospective and shall not affect the rights under this Article IX in effect at the time of the occurrence of any actions or omissions to act giving rise to liability.

## ARTICLE X.
## Business Combinations

The Corporation hereby elects not to be governed by, or subject to, Section 203 of the DGCL.

## ARTICLE XI.
## Amendment of Certificate of Incorporation

In furtherance and not in limitation of the powers conferred by applicable law, but subject to the provisions of the Stockholders Agreement, the Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed in this Certificate of Incorporation, the Stockholders Agreement or the DGCL, and all rights herein conferred upon stockholders are granted subject to such reservation. Notwithstanding the foregoing and any other provision of this Certificate of Incorporation

and in addition to any other vote that may be required by applicable law, the affirmative vote of the holders of at least sixty-six and two-thirds percent (66-2/3%) of the voting power of the Corporation's issued and outstanding shares of capital stock entitled to vote generally in the election of directors[3], voting together as a single class, shall be required to amend, alter, change or repeal any provision of this Certificate of Incorporation (other than pursuant to a certificate of correction filed with the Delaware Secretary of State in accordance with Section 103 of the DGCL); <u>provided</u>, that any amendment, alteration, change or repeal of any provision of the Certificate of Incorporation (i) that is, by its terms or effect, material, disproportionate, and adverse to a specific stockholder or group of stockholders, will also require the affirmative vote of such stockholder or group of stockholders holding a majority of shares held by such group of stockholders or (ii) that would, by its terms or effect, impact any rights or obligations of any of the AHG Stockholders (as defined in the Stockholders Agreement) under Section 2.9, Section 3.1, Section 3.2, Section 3.3, Section 3.4, Section 3.5, Section 3.6, Section 4.2, Section 4.3, Section 4.4, Article 5, Article 6, Article 7, Article 8 and Section 10.1(e) of the Stockholders Agreement will also require the consent of the AHG Director (as defined in the Stockholders Agreement) for so long as the AHG Approval Right (as defined in the Stockholders Agreement) is in effect.

Notwithstanding the foregoing, except as required by law and subject to the Stockholders Agreement, holders of Common Stock shall not be entitled to vote on any amendment to this Certificate of Incorporation (including any certificate of designation relating to any series of Preferred Stock) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Incorporation (including any certificate of designation relating to any series of Preferred Stock) or pursuant to the DGCL.

## ARTICLE XII.
### Inconsistent Provisions

To the fullest extent permitted by law, if there is any conflict between the provisions of the Stockholders Agreement, on one hand, and this Certificate of Incorporation or the Bylaws, on the other hand, the provisions of the Stockholders Agreement will prevail unless such prevalence would be in contravention of the requirements of the DGCL or applicable law.

## ARTICLE XIII.
### Forum Selection

Unless the Corporation (through the approval of the Board) consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware (or, if and only if the Court of Chancery of the State of Delaware lacks subject matter jurisdiction, any state court located within the State of Delaware or, if and only if all such state courts lack subject matter jurisdiction, the federal district court for the District of Delaware) and any appellate court therefrom shall, to the fullest extent permitted by law, be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of duty (including any fiduciary duty) by, or other wrongdoing by, any current or former director, officer, agent or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the DGCL or this Certificate of Incorporation or the Bylaws, (iv) any action asserting a claim against the Corporation or any current or former director, officer, employee, agent or stockholder of the Corporation arising out of or relating to any provision of the DGCL, this Certificate of Incorporation or the Bylaws, (v) any action to interpret, apply, enforce or determine the validity of this Certificate of Incorporation or the Bylaws, (vi) any action asserting a claim against the Corporation, its current or former directors, officers, agents or employees governed by the internal affairs doctrine or that otherwise relates to the internal affairs of the Corporation or (vii) any action asserting an "internal corporate claim" as that term is defined in Section 115 of the DGCL, except for, as to each of (i) through (vii) above, any claim as to which the Court of Chancery determines that there is an

---

[3] <u>Note to Draft</u>: Under review given that the equity in respect of the Exit LC Facility will be issued at emergence and held in escrow. Consider whether changes are necessary to the Restated Certificate or confirm that escrow arrangements will require that the Escrow Agent (or holder of the shares) vote all escrow shares in the same proportion that the number of shares of all other stockholders are voted.

indispensable party not subject to the jurisdiction of the Court of Chancery (and the indispensable party does not consent to the personal jurisdiction of the Court of Chancery within ten (10) days following such determination), which is vested in the exclusive jurisdiction of a court or forum other than the Court of Chancery, or for which the Court of Chancery does not have subject matter jurisdiction. Any person or entity purchasing or otherwise acquiring or holding any interest in shares of capital stock of the Corporation shall be deemed to have notice of and to have consented to the personal jurisdiction of the state and federal courts located within the State of Delaware. Unless the Corporation (through approval of the Board) consents in writing to the selection of an alternative forum, the federal district courts of the United States of America, to the fullest extent permitted by law, shall be the sole and exclusive forum for the resolution of any action asserting a cause of action arising under the U.S. Securities Act of 1933, as amended.

## ARTICLE XIV.
### Miscellaneous

If any provision or provisions of this Certificate of Incorporation shall be held to be invalid, illegal or unenforceable as applied to any circumstance for any reason whatsoever: (i) the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Certificate of Incorporation (including, without limitation, each portion of any paragraph of this Certificate of Incorporation containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) shall not, to the fullest extent permitted by applicable law, in any way be affected or impaired thereby and (ii) to the fullest extent permitted by applicable law, the provisions of this Certificate of Incorporation (including, without limitation, each such portion of any paragraph of this Certificate of Incorporation containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to permit the Corporation to protect its directors, officers, employees and agents from personal liability in respect of their good faith service to or for the benefit of the Corporation to the fullest extent permitted by law.

* * *

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed on its behalf on [●], 2024.

[**WEWORK INC.**][4]

By: _____

---

[4] <u>Note to Draft</u>: A&R Charter should be signed by a person so authorized to do so under the Confirmation Order.

## Exhibit D-3

**Form of the New Bylaws**

*Draft 5.26.24*

**AMENDED AND RESTATED**

**BYLAWS**

**OF**

[**WEWORK INC.**]

**A DELAWARE CORPORATION**

**EFFECTIVE [●], 2024**

# TABLE OF CONTENTS

**Page**

**ARTICLE I OFFICES** ...............................................................................................................1

    1.1    Principal Executive Office ........................................................................................1

    1.2    Registered Office ......................................................................................................1

    1.3    Other Offices ............................................................................................................1

**ARTICLE II STOCKHOLDERS MEETINGS** ........................................................................1

    2.1    Place of Meetings .....................................................................................................1

    2.2    Annual Meetings .......................................................................................................1

    2.3    Special Meetings .......................................................................................................2

    2.4    Notice .......................................................................................................................2

    2.5    Adjournments ...........................................................................................................2

    2.6    Quorum .....................................................................................................................2

    2.7    Voting .......................................................................................................................3

    2.8    Participation at Stockholders Meetings by Remote Communications .....................3

    2.9    Proxies .....................................................................................................................3

    2.10    Record Date .............................................................................................................3

    2.11    Stockholders List .....................................................................................................4

    2.12    Conduct of Meetings ...............................................................................................4

    2.13    Inspectors of Election ..............................................................................................5

    2.14    Advance Notice of Stockholder Business and Director Nominations ......................5

    2.15    Action Without Meeting ..........................................................................................8

**ARTICLE III DIRECTORS** .....................................................................................................9

    3.1    Powers and Duties ...................................................................................................9

    3.2    Number and Qualifications ......................................................................................9

    3.3    Election and Term of Office ....................................................................................9

    3.4    Resignation and Removal of Directors ...................................................................9

    3.5    Vacancies ...............................................................................................................10

    3.6    Regular Meetings ...................................................................................................10

    3.7    Special Meetings ....................................................................................................10

    3.8    Organization ...........................................................................................................10

    3.9    Meetings by Means of Conference Telephone ......................................................10

    3.10    Action of the Board by Written Consent ..............................................................10

    3.11    Expense Reimbursement and Compensation .........................................................11

    3.12    Chairperson and Vice Chairperson of the Board ..................................................11

    3.13    Committees .............................................................................................................11

**ARTICLE IV OFFICERS** ...................................................................................................11

    4.1    General ..............................................................................................................11

    4.2    Appointment and Term .....................................................................................11

    4.3    Resignations .....................................................................................................12

    4.4    Vacancies .........................................................................................................12

    4.5    Compensation ...................................................................................................12

    4.6    Chief Executive Officer ...................................................................................12

    4.7    President ...........................................................................................................12

    4.8    Vice Presidents .................................................................................................12

    4.9    Chief Financial Officer ....................................................................................12

    4.10   Secretary ..........................................................................................................12

    4.11   Treasurer ..........................................................................................................12

    4.12   Other Officers ..................................................................................................13

    4.13   Corporate Contracts and Instruments; How Executed .....................................13

    4.14   Action with Respect to Securities of Other Entities ........................................13

**ARTICLE V STOCK** ......................................................................................................13

    5.1    Certificates .......................................................................................................13

    5.2    Transfers ...........................................................................................................13

    5.3    Right of First Refusal ......................................................................................13

    5.4    Lost, Stolen or Destroyed Certificates.. ..........................................................15

    5.5    Record Owners .................................................................................................16

**ARTICLE VI NOTICES** .................................................................................................16

    6.1    Notices .............................................................................................................16

    6.2    Waivers of Notice ............................................................................................16

**ARTICLE VII INDEMNIFICATION AND ADVANCEMENT OF EXPENSES** ............16

    7.1    Definitions........................................................................................................16

    7.2    Indemnification ................................................................................................17

    7.3    Determination ...................................................................................................17

    7.4    Expenses Payable in Advance ..........................................................................18

    7.5    Claim ................................................................................................................18

    7.6    Non-Exclusivity of Rights; Survival ...............................................................18

**ARTICLE VIII GENERAL PROVISIONS** ....................................................................18

    8.1    Fiscal Year .......................................................................................................18

    8.2    Corporate Seal ..................................................................................................18

    8.3    Maintenance and Inspection of Records ..........................................................18

| | | | |
|---|---|---|---|
| 8.4 | Reliance upon Books, Reports and Records | ................................................... | 19 |
| 8.5 | Dividends | ................................................... | 19 |
| 8.6 | Emergency Bylaws | ................................................... | 19 |
| 8.7 | Interpretation | ................................................... | 19 |
| 8.8 | Conflicts | ................................................... | 19 |
| **ARTICLE IX AMENDMENTS** | | ................................................... | 19 |
| 9.1 | Amendments | ................................................... | 19 |

## AMENDED AND RESTATED BYLAWS[1]

## OF

## [WEWORK INC.]

## ARTICLE I
## OFFICES

     1.1    <u>Principal Executive Office</u>. The principal executive office of [WeWork Inc.] (the "<u>Corporation</u>") shall be at such place established by the Board of Directors of the Corporation (the "<u>Board</u>") in its discretion. The Board shall have full power and authority to change the location of the principal executive office.

     1.2    <u>Registered Office</u>. The registered office of the Corporation shall be as set forth in the Corporation's [Third] Amended and Restated Certificate of Incorporation, dated as of [●], 2024 (as amended, restated, supplemented or otherwise modified from time to time, including any certificate of designations relating to any outstanding series of preferred stock, the "<u>Certificate of Incorporation</u>").

     1.3    <u>Other Offices</u>. The Corporation may also have offices at such other places, both within and without the State of Delaware, as the Board may from time to time determine.

## ARTICLE II
## STOCKHOLDERS MEETINGS

     2.1    <u>Place of Meetings</u>. Meetings of stockholders may be held (a) at any place within or outside the State of Delaware designated by the Board or, in the case of a special meeting called at the request of the stockholders holding the requisite percentage of shares of stock, the stockholders that requested such meeting to be called as set forth in the written request therefor, or (b) if the Board is authorized to designate the place of a meeting of stockholders, and the Board so determines, solely by means of remote communication.  Any stockholder participating in a meeting by remote communication is deemed to be present in person at the meeting.  In the absence of any such designation by the Board or such stockholders, stockholder meetings shall be held at the principal place of business of the Corporation.

     2.2    <u>Annual Meetings</u>. An annual meeting of stockholders of the Corporation for the election of directors and for transacting any other business properly brought before the meeting pursuant to these Amended and Restated Bylaws (as amended, restated, supplemented or otherwise modified from time to time, these "<u>Bylaws</u>") shall be held on such date and at such time as the Board shall designate.  At any such annual meeting, the stockholders entitled to vote thereon shall elect directors of the Corporation in accordance with the provisions of the Certificate of Incorporation [and the Stockholders Agreement, dated as of [●], 2024, among the Corporation and the stockholders of the Corporation (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Stockholders Agreement</u>")], and shall transact such other business as may properly come before the meeting pursuant to these Bylaws; <u>provided</u>, <u>however</u>, that no annual meeting of stockholders need be held if directors are elected by written consent of the stockholders entitled to vote thereon in lieu of an annual meeting, in accordance with Section 211 of the General Corporation Law of the State of Delaware (the "<u>DGCL</u>").

---

[1] THIS DRAFT IS SUBJECT TO CONTINUING DUE DILIGENCE AND THE PARTIES' CONTINUING REVIEW AND COMMENT IN ALL RESPECTS. THIS DRAFT IS NOT INTENDED NOR SHALL IT BE DEEMED TO CREATE A LEGALLY BINDING OR ENFORCEABLE AGREEMENT OF ANY TYPE OR NATURE UNLESS AND UNTIL FINALIZED AND AGREED UPON BY CUPAR AND EACH OF THE OTHER PARTIES.

In addition, this draft is subject to the review and comment by Potter Anderson, Delaware counsel to Cupar, in all respects.

2.3     <u>Special Meetings</u>. Unless otherwise required by law or by the Certificate of Incorporation, special meetings of the stockholders, for the transaction of such business as may properly come before the meeting, may be called by the Secretary of the Corporation only (i) at the request of the Board or the Chairperson of the Board or (ii) upon the written request received by the Secretary of the Corporation at the principle place of business of the Corporation by or on behalf of the holder or holders of record of Outstanding Shares (as defined below) representing collectively not less than a majority of the total voting power of the Outstanding Shares, voting together as a single class, and entitled to vote at such meeting. The Corporation may postpone, reschedule or cancel any previously scheduled special meeting of stockholders called by the Board or the Chairperson of the Board. "<u>Outstanding Shares</u>" means, as of such time of determination, the then issued and outstanding shares of Common Stock and all of the other shares, interests, rights, participations or other equivalents (however designated) of capital stock of the Corporation, collectively; <u>provided</u>, <u>that</u>, Outstanding Shares shall exclude (a) any and all Shares held by the Corporation in treasury and (b) any and all Shares held in escrow or which are otherwise subject to any escrow obligation or condition, in each case, pursuant to, or as expressly contemplated by, the [==Exit LC Facility==] and the transactions contemplated thereunder.

2.4     <u>Notice</u>. Except as otherwise provided by law, the Certificate of Incorporation or these Bylaws, notice, given in accordance with Section 232 the DGCL, of each meeting of stockholders will be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting as of the record date for determining the stockholders entitled to notice of such meeting, such notice to specify the place, if any, date and hour, in the case of special meetings, the purpose or purposes of the meeting, the record date for determining the stockholders entitled to vote at the meeting (if such date is different from the record date for stockholders entitled to notice of the meeting), and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at any such meeting.  Notice of the time, place, if any, and purpose of any meeting of stockholders may be waived in writing, signed by the person entitled to notice thereof or by electronic transmission by such person, either before or after such meeting, and will be waived by any stockholder by such stockholder's attendance thereat in person, by remote communication, if applicable, or by proxy, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Any stockholder so waiving notice of such meeting will be bound by the proceedings of any such meeting in all respects as if due notice thereof had been given.

2.5     <u>Adjournments</u>. Any meeting of stockholders, annual or special, whether or not a quorum is present, may be adjourned from time to time for any reason by either the Chairperson of the meeting, or the vote of the holders of a majority in voting power of the Outstanding Shares entitled to vote thereon, present in person or represented by proxy. Notwithstanding the provisions in <u>Section 2.4</u>, notice need not be given of any such adjourned meeting if the time, place, if any, and date of the meeting and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting and the record date for determining the stockholders entitled to vote at the meeting (if such date is different from the record date for determining stockholders entitled to notice of the meeting) are (a) announced at the meeting at which the adjournment is taken (b) displayed, during the time scheduled for the meeting, on the same electronic network used to enable stockholders and proxy holders to participate in the meeting by means of remote communication or (c) set forth in the notice of meeting of stockholders; <u>provided</u>, <u>however</u>, that if the date of any adjourned meeting is more than thirty (30) days after the date for which the meeting was originally called, notice of the adjourned meeting shall be given in conformity with <u>Section 2.4</u>. If after the adjournment a new record date for determination of stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix as the record date for determining stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote at the adjourned meeting, and shall give notice of the adjourned meeting to each stockholder of record as of the record date so fixed for notice of such adjourned meeting. At such adjourned meeting, any business may be transacted that might have been transacted at the original meeting if such meeting had been held as originally called.

2.6     <u>Quorum</u>. At all meetings of stockholders, except as otherwise provided by the DGCL, the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws, the presence, in person, by remote communication, if applicable, or by proxy duly authorized, of the holders of a majority of the Outstanding Shares entitled to vote will constitute a quorum for the transaction of business.  In the absence of a quorum, any meeting of stockholders may be adjourned, from time to time, in accordance with Section 2.5 hereof, but no other business will be transacted at such meeting.  The stockholders present at a duly called or convened meeting, at which a quorum is present, may continue

to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

        2.7    <u>Voting</u>.

        (a)    Unless otherwise required by the Certificate of Incorporation, these Bylaws, the Stockholders Agreement, or any law or regulation applicable to the Corporation or its securities, each stockholder entitled to vote at any meeting of stockholders shall be entitled to one (1) vote for each share of capital stock held by such stockholder which has voting power on all matters submitted to a vote of stockholders of the Corporation.

        (b)    Except as otherwise provided by the DGCL, the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws, in all matters other than the election of directors, the affirmative vote of a majority of voting power of the Outstanding Shares present and cast in person, by remote communication, if applicable, or represented by proxy duly authorized at the meeting and entitled to vote generally on the subject matter will be the act of the stockholders. Except as otherwise provided by the DGCL, the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws, directors will be elected by a plurality of the votes of the voting power of the Outstanding Shares present and cast in person, by remote communication, if applicable, or represented by proxy duly authorized at the meeting and entitled to vote generally on the election of directors. Where a separate vote by a class or classes or series is required, except as otherwise provided by the DGCL, the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws, a majority of the voting power of the Outstanding Shares of such class or classes or series, present in person, by remote communication, if applicable, or represented by proxy duly authorized, will constitute a quorum entitled to take action with respect to that vote on that matter. Except as otherwise provided by the DGCL, the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws, the affirmative vote of the majority (plurality, in the case of the election of directors) of voting power of the Outstanding Shares of such class or classes or series present in person, by remote communication, if applicable, or represented by proxy at the meeting will be the act of such class or classes or series.

        2.8    <u>Participation at Stockholders Meetings by Remote Communications</u>. In respect of any meeting of stockholders with respect to which the Board is authorized to designate the place of such meeting of stockholders, the Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication in accordance with Section 211(a)(2) of the DGCL or any successor provision. If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication, (a) participate in a meeting of stockholders, and (b) be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by remote communication; *provided*, that (x) the Corporation shall implement reasonable measures to verify that each person deemed present and entitled to vote at the meeting by means of remote communication is a stockholder or proxyholder, (y) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (z) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such vote or other action shall be maintained by the Corporation.

        2.9    <u>Proxies</u>. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, which proxy shall be in a form permitted by the DGCL, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. A duly executed proxy shall be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A stockholder may revoke any proxy which is not irrevocable by attending the meeting and voting in person or by delivering an instrument in writing stating that the proxy is revoked or by filing another proxy bearing a later date with the Secretary of the Corporation.

        2.10    <u>Record Date</u>.

        (a)    In order that the Corporation may determine the stockholders entitled to notice of any meeting of the stockholders or any adjournment thereof, the Board may fix a record date for the determination of the

stockholders entitled to notice of any meeting or adjournment thereof. The record date so fixed shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting. If the Board so fixes a date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of and to vote at a meeting of the stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of the stockholders shall apply to any adjournment of the meeting unless the Board fixes a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case the Board shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance herewith at the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled (i) to consent to corporate action without a meeting in accordance with Section 228 of the DGCL and Section 2.15 of these Bylaws, (ii) to receive payment of any dividend or other distribution or allotment of any rights, or (iii) to exercise rights in respect of any change, conversion or exchange of stock or in respect of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than sixty (60) days prior to such action. If no such record date is fixed, the record date for determining the stockholders for any such purpose shall be at the close of business on the date on which the Board adopts the resolution relating thereto.

2.11    <u>Stockholders List</u>. A complete list of the stockholders entitled to vote at any meeting of stockholders, arranged in alphabetical order and showing the address of each stockholder, and the number of shares registered in the name of each stockholder, shall be prepared by the Corporation no later than the tenth (10th) day before such meeting of stockholders; <u>provided</u>, <u>however</u>, that if the record date for determining the stockholders entitled to vote is less than ten (10) days before the date of the meeting, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date. Such list shall be open to examination by any stockholder, for any purpose germane to the meeting, for a period of at least ten (10) days ending on the day before the meeting date, on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or during ordinary business hours, at the principal place of business of the corporation. Except as otherwise provided by law, the stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this <u>Section 2.11</u> or to vote in person or by proxy at any meeting of stockholders.

2.12    <u>Conduct of Meetings</u>.

(a)     The meetings of the stockholders shall be presided over by the Chairperson of the Board, or if he is not present, by the Chief Executive Officer, or if neither the Chairperson of the Board nor Chief Executive Officer is present, by a Chairperson elected at the meeting by the holders of a majority in voting power of the Outstanding Shares entitled to vote thereon, present in person or represented by proxy.

(b)     The date and time of the opening and closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the Chairperson of the meeting. The Board shall be entitled to make such rules and regulations for the conduct of any meeting of the stockholders as it shall deem appropriate. Except to the extent inconsistent with such rules and regulations as adopted by the Board, the Chairperson of the meeting shall have the right and authority to convene and in good faith to postpone, recess and/or adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such Chairperson, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Board or prescribed by the Chairperson of the meeting, may include, without limitation, and to the extent permitted by applicable law, the following: (i) the establishment of an agenda or order of business for the meeting; (ii) the determination of when the polls shall open and close for any given matter to be voted on at the meeting; (iii) rules and procedures for maintaining order at the meeting and the safety of those present (including, without limitation, rules and procedures for removal of disruptive persons from the meeting); (iv) limitations on attendance at, or participation in, the meeting to stockholders entitled to vote at the meeting, their duly authorized and constituted proxies or such other persons as the Chairperson of the meeting shall determine; (v) restrictions on entry

*Draft 5.26.24*

to the meeting after the time fixed for the commencement thereof; and (vi) limitations on the time allotted to questions or comments by participants.

(c)    The Chairperson at any meeting of stockholders, in addition to making any other determinations that may be appropriate to the conduct of the meeting, shall, if the facts warrant, determine and declare to the meeting that a matter or business was not properly brought before the meeting and if such Chairperson of the meeting should so determine, such Chairperson shall so declare to the meeting and any such matter or business not properly brought before the meeting shall not be transacted or considered. The Chairperson of the meeting shall conduct each such meeting in a businesslike and fair manner, but shall not be obligated to follow any technical, formal or parliamentary rules or principles of procedure, unless and to the extent determined otherwise by the Board.

2.13    <u>Inspectors of Election</u>. In advance of any meeting of the stockholders, if required by law, the Board shall appoint one (1) or more inspectors of election to act at the meeting and any postponement or adjournment thereof. One (1) or more other persons may be designated as alternate inspectors to replace any inspector who fails to act. If no inspector or alternate is able to act at a meeting of the stockholders, the Chairperson of the meeting shall appoint one or more inspectors to act at the meeting. No Director or nominee for the office of Director shall be appointed as an inspector. Each inspector, before entering upon the discharge of the duties of inspector, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of such inspector's ability. The duties of the inspector shall include those prescribed by law and shall also include, but not be limited to, (a) determining the shares represented at the meeting and the validity of proxies and ballots, (b) counting all votes, ballots or consents, (c) hearing and determining all questions in any way arising in connection with the right to vote, and (d) certifying its determination of the number of shares represented at the meeting and its count of all votes, ballots or consents. The certification and report prepared by the inspector shall specify such other information as may be required by law.

2.14    <u>Advance Notice of Stockholder Business and Director Nominations</u>.

(a)    <u>Annual Meetings of Stockholders</u>.

(i)    Nominations of persons for election to the Board and the proposal of other business to be considered by the stockholders may be made at an annual meeting of stockholders only (A) pursuant to the Corporation's notice of meeting (or any supplement thereto) delivered pursuant to <u>Section 2.4</u> and <u>Article VI</u> hereof, (B) by or at the direction of the Board or any duly authorized committee thereof, or (C) by any stockholder of the Corporation who (1) is a stockholder of record at the time of delivery by the stockholder of the notice provided for in <u>Section 2.14(a)(2)</u> to the Secretary of the Corporation, (2) who is entitled to vote at the meeting and upon such election or other business, and (3) who complies with the notice procedures set forth in <u>Section 2.14(a)(2)</u>; clause (iii) shall be the exclusive means for a stockholder to make nominations or submit other business and included in the Corporation's notice of meeting) before an annual meeting of stockholders. Notwithstanding the foregoing, if a stockholder is entitled to vote only for a specific class or category of Directors at a meeting of the stockholders, such stockholder's right to nominate one or more individuals for the election of a Director at the meeting shall be limited to such class or category of Directors.

(ii)    Without qualification, for any nominations or other business to be properly brought before an annual meeting of stockholders by a stockholder pursuant to clause (iii) of <u>Section 2.14(a)(1)</u>, the stockholder must have given timely notice thereof, in proper written form as provided in <u>Section 2.14(c)</u>, to the Secretary of the Corporation and any such proposed business (other than nominations of persons for the election to the Board) must constitute a proper matter for stockholder action under the DGCL. To be timely, such a stockholder's notice shall be delivered to the Secretary at the principal executive office of the Corporation not later than the close of business on the ninetieth (90th) day nor earlier than the close of business on the one hundred twentieth (120th) day prior to the first anniversary date of the preceding year's annual meeting; <u>provided</u>, <u>however</u>, that in the event that the date of the annual meeting is more than thirty (30) days before or more than sixty (60) days after such anniversary date, notice by the stockholder must be so delivered not earlier than the close of business on the one hundred twentieth (120th) day prior to such annual meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such annual meeting or the tenth (10th) day following the day on which public announcement of the date of such meeting is first made by the Corporation. In no event will the public announcement of an adjourned or postponed annual meeting of stockholders commence a new time period (or extend any time period) for the giving of

a stockholder's notice as described above. Notwithstanding any provision to the contrary in this <u>Section 2.14(a)</u>, for the first annual meeting of the stockholders after the effective date of these Bylaws, to be timely, a stockholder's notice shall be delivered to the Secretary at the principal executive office of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day prior to the scheduled dated of such annual meeting and not later than the close of business on the later of the ninetieth (90th) day prior to the scheduled dated of such annual meeting or the tenth (10th) day following the day on which public announcement of the date of such meeting is first made by the Corporation.

(iii)        Notwithstanding anything in the second sentence of <u>Section 2.14(a)(2)</u> to the contrary, in the event that the number of Directors to be elected to the Board at an annual meeting is increased effective after the time period for which nominations would otherwise be due under <u>Section 2.14(a)(2)</u> and there is no public announcement by the Corporation naming the nominees for the new positions created by such increase at least one hundred (100) days prior to the first anniversary of the preceding year's annual meeting, a stockholder's notice required by this <u>Section 2.14</u> shall also be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to the Secretary at the principal executive office of the Corporation not later than the close of business on the tenth (10th) day following the day on which such public announcement is first made by the Corporation.

(b)        <u>Special Meetings of Stockholders.</u> Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting delivered pursuant to <u>Section 2.4</u> and <u>Article VI</u> hereof. Nominations of persons for election to the Board may be made at a special meeting of stockholders at which Directors are to be elected pursuant to the Corporation's notice of meeting (1) by or at the direction of the Board or any duly authorized committee thereof or (2) provided that the Board has determined that Directors shall be elected at such meeting, by any stockholder of the Corporation who (x) is a stockholder of record at the time of delivery by the stockholder of the notice provided for in this <u>Section 2.14(b)</u> to the Secretary of the Corporation, (y) who is entitled to vote at the meeting and upon such election, and (z) who complies with the notice procedures set forth in this <u>Section 2.14(b)</u>. In the event the Corporation calls a special meeting of stockholders for the purpose of electing one (1) or more Directors to the Board, any such stockholder entitled to vote in such election of Directors may nominate a person or persons for election to such position(s) as specified in the Corporation's notice of meeting, if the stockholder's notice, in proper written form as set forth in <u>Section 2.14(c)</u>, shall be delivered to the Secretary at the principal executive office of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day prior to such special meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such special meeting or the tenth (10th) day following the day on which public announcement is first made of the date of the special meeting and of the nominees proposed by the Board to be elected at such meeting. In no event shall the public announcement of an adjournment or postponement of a special meeting commence a new time period (or extend any time period) for the giving of a stockholder's notice as described above. Notwithstanding the foregoing, if a stockholder is entitled to vote only for a specific class or category of Directors at a special meeting of the stockholders, such stockholder's right to nominate one (1) or more individuals for the election of a Director at the meeting shall be limited to such class or category of Directors.

(c)        <u>Form of Notice.</u> To be in proper written form, such stockholder's notice to the Secretary (whether pursuant to <u>Section 2.14(a)(2)</u>, <u>Section 2.14(a)(3)</u>, or <u>Section 2.14(b)</u>) must set forth:

(i)        as to each person, if any, whom the stockholder proposes to nominate for election or re-election as a Director (A) all information relating to such person that is required to be disclosed in solicitations of proxies for election of Directors in an election contest, and (B) such person's written consent to being named in the proxy statement as a nominee and to serving as a Director if elected;

(ii)        as to any other business (other than the nomination of persons for election as Directors) that the stockholder desires to bring before the meeting, (A) a brief description of the business proposed to be brought before the meeting, (B) the text of the proposal or business (including the text of any resolutions proposed for consideration and, in the event that such business includes a proposal to amend these Bylaws, the language of the proposed amendment), (C) the reasons why the stockholder favors the proposal, (iv) the reasons for conducting such business at the meeting, and (D) any material interest in such business of such stockholder and the beneficial owner, if any, on whose behalf the proposal is made; and

(iii)    as to the stockholder giving the notice and the beneficial owner, if any, on whose behalf the nomination or proposal is made (A) the name and address of such stockholder, as they appear on the Corporation's books, and of such beneficial owner, (B) the class or series and number of shares of the Corporation's capital stock that are, directly or indirectly, owned beneficially and of record by such stockholder and by such beneficial owner, (C) a description of any agreement, arrangement or understanding with respect to the nomination or proposal between or among such stockholder and/or such beneficial owner, any of their respective affiliates or associates, and any others acting in concert with any of the foregoing, including, in the case of a nomination, the nominee, (D) a description of any agreement, arrangement or understanding (including any derivative or short positions, profit interests, options, warrants, convertible securities, stock appreciation or similar rights, hedging transactions, and borrowed or loaned shares) that has been entered into as of the date of the stockholder's notice by, or on behalf of, such stockholder and such beneficial owner, whether or not such instrument or right shall be subject to settlement in underlying shares of capital stock of the Corporation, the effect or intent of which is to mitigate loss to, manage risk or benefit of share price changes for, or increase or decrease the voting power of such stockholder or such beneficial owner with respect to shares of capital stock of the Corporation, (v) a representation that the stockholder is a holder of record of stock of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such business or nomination, (vi) a representation whether the stockholder or the beneficial owner, if any, intends or is part of a group which intends (A) to deliver a proxy statement and/or form of proxy to holders of at least the percentage of the Corporation's Outstanding Shares required to approve or adopt the proposal or elect the nominee and/or (B) otherwise to solicit proxies or votes from stockholders in support of such proposal or nomination, and (vii) any other information relating to such stockholder and beneficial owner, if any, required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for, as applicable, the proposal and/or for the election of Directors in an election contest pursuant to and in accordance with Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.

(d)    <u>General</u>.

(i)    The Corporation may require any proposed nominee for election or re-election as a Director to furnish such other information, in addition to the information set forth in the stockholder's notice delivered pursuant to this <u>Section 2.14</u>, as it may reasonably require to determine the eligibility of such proposed nominee to serve as a Director of the Corporation and whether such nominee qualifies as an "independent Director" or "audit committee financial expert" under applicable law, securities exchange rules or regulations, or any publicly-disclosed corporate governance guideline or committee charter of the Corporation.

(ii)    Only such persons who are nominated in accordance with the procedures set forth in this <u>Section 2.14</u> shall be eligible to be elected at an annual or special meeting of stockholders of the Corporation to serve as Directors, and only such business as shall have been brought before the meeting in accordance with the procedures set forth in this <u>Section 2.14</u> shall be conducted at a meeting of stockholders. Except as otherwise provided by law, the Chairperson of the meeting shall have the power and duty to (A) determine whether a nomination or any business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with the procedures set forth in this <u>Section 2.14</u> (including whether the stockholder or beneficial owner, if any, on whose behalf the nomination or proposal is made or solicited (or is part of a group which solicited) or did not so solicit, as the case may be, proxies or votes in support of such stockholder's nominee or proposal in compliance with such stockholder's representation as required by <u>Section 2.14(c)(3)(vi)</u>), and, (B) if any proposed nomination or business was not made or proposed in compliance with this <u>Section 2.14</u>, to declare that such nomination shall be disregarded or that such proposed business shall not be transacted. Notwithstanding the foregoing provisions of this <u>Section 2.14</u>, unless otherwise required by law, if the stockholder who has delivered a notice pursuant to this <u>Section 2.14</u> (or a qualified representative of such stockholder) does not appear at the annual or special meeting of stockholders of the Corporation to present a nomination or proposed business, such nomination shall be disregarded and such proposed business shall not be transacted, notwithstanding that proxies in respect of such vote may have been received by the Corporation. To be considered a "qualified representative" of the stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or by telegram, cablegram or other means of electronic transmission that is deemed valid in accordance with <u>Section 2.9</u> hereof delivered by such stockholder to act for such stockholder as proxy at the meeting of stockholders, and such person must produce such writing or telegram, cablegram or electronic transmission, or a reliable reproduction of the writing or telegram, cablegram or electronic transmission, at the meeting of stockholders.

(iii)    For purposes of this Section 2.14, "public announcement" shall mean disclosure in either (a) press release reported by the Dow Jones News Service, Associated Press or comparable national news service or (b) posted to the Corporation's website (which may be non-public) to which the Corporation's stockholders and beneficial owners that certify that they are beneficial owners of the Corporation's capital stock have access.

(e)    Submission of Questionnaire, Representation and Agreement. Subject to Section 2.14(f), to be eligible to be a nominee for election or re-election as a Director of the Corporation, the candidate for nomination must deliver (in accordance with the time periods prescribed for delivery of notice under Section 2.14(a)(2) or Section 2.14(b), as applicable) to the Secretary at the principal executive office of the Corporation (1) a completed written questionnaire (in a form provided by the Corporation) with respect to the background, qualifications, stock ownership and independence of such person and the background of any other person or entity on whose behalf the nomination is being made (which questionnaire shall be provided by the Secretary upon written request) and (2) a written representation and agreement (in the form provided by the Secretary upon written request) that such person (A) is not and, if elected as a Director during his or her term of office, will not become a party to (x) any agreement, arrangement or understanding with, and has not given any commitment or assurance to, any person or entity as to how such person, if elected as a Director of the Corporation, will act or vote on any issue or question in his or her capacity as a Director (a "Voting Commitment") that has not been disclosed to the Corporation or (y) any Voting Commitment that could limit or interfere with such person's ability to comply, if elected as a Director of the Corporation, with such person's fiduciary duties under applicable law, (B) is not and will not become a party to any agreement, arrangement or understanding with any person or entity other than the Corporation with respect to any direct or indirect compensation, reimbursement or indemnification in connection with service or action as a Director of the Corporation that has not been disclosed to the Corporation, and (C) in such person's individual capacity and on behalf of any person or entity on whose behalf the nomination is being made, would be in compliance, if elected as a Director of the Corporation, and will comply with all applicable publicly disclosed corporate governance, conflict of interest, confidentiality and stock ownership and trading policies and guidelines of the Corporation (and, if requested by any candidate for nomination, the Secretary of the Corporation shall provide to such candidate for nomination all such policies and guidelines then in effect).

(f)    Non-Applicability to Stockholders Agreement. Notwithstanding any other provision of this Section 2.14, so long as the Stockholders Agreement shall remain in effect and applicable to the nomination of persons for election to the Board, the election of nominees to the Board or the proposal of other business to be considered by the stockholders, the nomination of such persons, the election of such nominees and the proposal of such business shall be made in accordance with the Stockholders Agreement, and nothing in this Section 2.14 shall be deemed to apply to or constrain the rights of any party to the Stockholders Agreement (including, for the avoidance of doubt, the CEO Director, AHG Director, SoftBank Director, and Cupar Director(s) (as defined in the Stockholders Agreement)).

2.15    Action Without Meeting.

(a)    Unless otherwise provided in the Certificate of Incorporation or the Stockholders Agreement, any action required by the DGCL to be taken at any annual or special meeting of the stockholders, or any action that may be taken at any annual or special meeting of the stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents setting forth the action so taken, will be signed by the holders of Outstanding Shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

(b)    A consent must be set forth in writing or in an electronic transmission. No consent will be effective to take the corporate action referred to therein unless consents signed by a sufficient number of stockholders to take action are delivered to the corporation in the manner required by the DGCL within sixty (60) days of the first date on which a consent is so delivered to the corporation. All references to a consent in this Section 2.15 mean a consent permitted by Section 228 of the DGCL.

(c)    If an action by consent is taken by stockholders by less than unanimous consent, prompt notice of the taking of the action by consent will be given to those stockholders as of the record date for the action by consent who have not consented and who would have been entitled to notice of the meeting if the action had been taken at a meeting and the record date for the notice of the meeting were the record date for the action by consent. If the action to which the stockholders consented is such as would have required the filing of a certificate under any

section of the DGCL if such action had been voted on by stockholders at a meeting thereof, then the certificate filed under such section must state, in lieu of any statement required by such section concerning any vote of stockholders, that consent has been given in accordance with Section 228 of the DGCL.

(d)    A consent permitted by this <u>Section 2.15</u> shall be delivered: (A) to the principal place of business of the corporation; (B) to an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded; (C) to the registered office of the corporation in the State of Delaware by hand or by certified or registered mail, return receipt requested; (D) subject to the next sentence, in accordance with Section 116 of the DGCL to an information processing system, if any, designated by the Corporation for receiving such consents; or (E) when delivered in such other manner that complies with the DGCL. In the case of delivery pursuant to the foregoing clause (D), such consent must set forth or be delivered with information that enables the corporation to determine the date of delivery of such consent and the identity of the person giving such consent, and, if such consent is given by a person authorized to act for a stockholder or member as proxy, such consent must comply with the applicable provisions of Section 212(c)(2) & (3) of the DGCL. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing. A consent may be documented and signed in accordance with Section 116 of the DGCL, and when so documented or signed shall be deemed to be in writing for purposes of the DGCL; <u>provided</u>, that if such consent is delivered pursuant to clause (i), (ii) or (iii) of subsection (d)(1) of Section 228 of the DGCL, such consent must be reproduced and delivered in paper form.

### ARTICLE III
### DIRECTORS

3.1    <u>Powers and Duties</u>. Subject to the provisions of the DGCL and to any limitations in the Certificate of Incorporation, the Stockholders Agreement, or these Bylaws relating to action required to be approved by the stockholders, the business and affairs of the Corporation shall be managed, and all corporate powers shall be exercised, by or under the direction and control of the Board. The Board may delegate the management of the day-to-day operation of the business of the Corporation; <u>provided</u>, that the business and affairs of the Corporation shall remain under the ultimate direction and control of the Board and subject to the Stockholders Agreement.

3.2    <u>Number and Qualifications</u>. So long as the Stockholders Agreement shall remain in effect and applicable to the number of members of the Board (each, a "<u>Director</u>"), the Board shall consist of the number of Directors set forth in the Stockholders Agreement. At such time as the Stockholders Agreement shall have ceased to be in effect, the Board shall consist of two (2) or more Directors, the exact number of which shall be fixed from time to time by resolution of the Board. Unless otherwise required by law or the Certificate of Incorporation, Directors need not be stockholders of the Corporation or residents of Delaware. No reduction of the authorized number of Directors shall have the effect of removing any Director before that Director's term of office expires.

3.3    <u>Election and Term of Office</u>. So long as the Stockholders Agreement shall remain in effect and applicable thereto, the election of Directors shall be subject to the Stockholders Agreement. The Directors shall be elected at each annual meeting of stockholders but if any such annual meeting is not held or the Directors are not elected thereat, the Directors may be elected at any special meeting of stockholders held for that purpose. Each Director shall hold office until his or her successor shall have been elected and shall qualify or until he or she shall resign or shall have been removed in the manner provided in the Stockholders Agreement and/or these Bylaws, as applicable.

3.4    <u>Resignation and Removal of Directors</u>.

(a)    Any Director of the Corporation may resign from the Board or any committee thereof at any time, by giving notice in writing or by electronic transmission to the Chairperson of the Board, the President or the Secretary of the Corporation and, in the case of a committee, to the Chairperson of such committee, if there be one. Such resignation shall take effect at the time therein specified or, if no time is specified, immediately. Unless otherwise specified in such notice, the acceptance of such resignation shall not be necessary to make it effective.

(b)    So long as the Stockholders Agreement shall remain in effect and applicable thereto, the removal of Directors shall be subject to the Stockholders Agreement. At such time as the Stockholders Agreement

shall have ceased to be in effect or does not apply to a specific removal, any Director or the entire Board may be removed from office at any time, either with or without cause, only by the affirmative vote of the holders of at least a majority of the total voting power of the Outstanding Shares entitled to vote in the election of Directors, voting together as a single class, except as otherwise required by law or the Certificate of Incorporation. Any Director serving on a committee of the Board may be removed from such committee at any time by the Board.

        3.5    <u>Vacancies</u>. So long as the Stockholders Agreement shall remain in effect and applicable to the filling of a vacancy on the Board by reason of the incapacity, death, removal or resignation of a Director, such vacancy shall be filled by the person or entity entitled to appoint the replacement Director in accordance with the Stockholders Agreement. At such time as the Stockholders Agreement shall have ceased to be in effect or does not apply to a specific vacancy pursuant to Section 2.4 of the Stockholders Agreement or as otherwise set forth therein, any vacancy on the Board, by reason of incapacity, death, removal, resignation, or otherwise, and any newly created directorship that results from an increase in the number of Directors, shall be filled only by the affirmative vote or consent of a majority of the Board then in office, even if less than a quorum, or by a sole remaining Director and not by any other person or persons except as otherwise required by law or the Certificate of Incorporation. Any Director elected in accordance with the preceding sentence shall hold office until his or her successor shall have been elected and shall qualify or until he or she shall resign or shall have been removed in the manner provided in these Bylaws.

        3.6    <u>Regular Meetings</u>. Regular meetings of the Board shall be held at such place or places, on such date or dates and at such time or times, as shall have been established by the Board and publicized among all Directors; <u>provided</u>, that the Board shall meet on a quarterly basis at minimum. A notice of each regular meeting shall not be required to the extent the place, date and time of such meeting shall have been established by the Board and publicized among all Directors.

        3.7    <u>Special Meetings</u>. Special meetings of the Board for any purpose or purposes may be called at any time by the Chairperson of the Board, if any, ==or any three (3) Directors then in office==. Notice of the time and place of all special meetings of the Board will be orally or in writing, by telephone, including a voice messaging system or other system or technology designed to record and communicate messages, or by electronic mail or other means of electronic transmission, during normal business hours, at least 48 hours before the date and time of the meeting. If notice is sent by mail, it will be sent by first class US mail, postage prepaid at least three days before the date of the meeting, addressed to the applicable Director at his or her residence or usual place of business ("<u>Mail Notice</u>"). Notwithstanding anything in these Bylaws to the contrary, Mail Notice shall be insufficient and ineffective for any special meeting of the Board called by only three (3) Directors then in office. Notice of any meeting may be waived in writing or by electronic transmission at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. A notice of special meeting need not state the purpose of such meeting, and, unless indicated in the notice thereof, any and all business may be transacted at a special meeting.

        3.8    <u>Organization</u>. Meetings of the Board shall be presided over by the Chairperson of the Board, or in his or her absence by the Vice Chairperson of the Board, if any, or in his or her absence by the Chief Executive Officer, if any, if such person is a member of the Board, or in the absence of any such person, by a chairperson chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairperson of the meeting may appoint any person to act as secretary of the meeting.

        3.9    <u>Meetings by Means of Conference Telephone</u>. Members of the Board, or any committee thereof, may participate in a meeting of the Board or such committee by means of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting through the use of such equipment shall constitute presence in person at such meeting.

        3.10    <u>Action of the Board by Written Consent</u>. Unless otherwise provided in the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all of the members of the Board or such committee, as the case may be, consent thereto in writing or by electronic transmission. After an action is taken, the consent or consents relating thereto shall be filed with the minutes of proceedings of the Board or such committee. Such filing shall be in

paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

3.11    Expense Reimbursement and Compensation. Directors and members of committees may receive such compensation, if any, for their services and such reimbursement of expenses as may be fixed or determined by resolution of the Board. This Section 3.11 shall not be construed to preclude any Director from serving the Corporation in any other capacity as an officer, agent, employee or otherwise and receiving compensation for those services.

3.12    Chairperson and Vice Chairperson of the Board. The Corporation shall have a Chairperson of the Board and, at its discretion, a Vice Chairperson of the Board. The Chairperson of the Board shall preside at all meetings of the stockholders and of the Board and shall exercise and perform such other powers and duties as may be from time to time assigned to him or her by the Board or as may be prescribed by these Bylaws. The Chairperson and Vice Chairperson (if any) of the Board shall be elected by a majority of the Board. If there is no Chief Executive Officer and no President, then the Chairperson of the Board will also serve as the chief executive officer of the corporation (including for purposes of any reference to Chief Executive Officer in these Bylaws) and will have the powers and duties prescribed in Section 4.6, unless the Board otherwise provides.

3.13    Committees.

(a)    The Board may, by resolution, designate from among its members one (1) or more committees, each such committee to consist of one (1) or more of the Directors of the Corporation. The Board may designate one (1) or more Directors as alternate members of any committee to replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not he, she or they constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board establishing such committee, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; provided, however, that no such committee shall have the power or authority in reference to the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter (other than the election or removal of Directors) expressly required by the DGCL to be submitted to stockholders for approval, or (b) adopting, amending or repealing any bylaw of the Corporation. All committees of the Board shall keep minutes of their meetings and shall report their proceedings to the Board when requested or required by the Board.

(b)    Any committee of the Board may adopt such rules and regulations not inconsistent with the provisions of law, the Certificate of Incorporation, these Bylaws, or the Stockholders Agreement for the conduct of its meetings as such committee may deem proper. In the absence of such rules each committee shall conduct its business in the same manner as the Board of Directors conducts its business pursuant to Article III of these Bylaws.

## ARTICLE IV
## OFFICERS

4.1    General. The officers of the Corporation shall be chosen by the Board and shall include (a) a President, and (b) a Secretary. The Board, in its discretion, may also appoint such additional officers as the Board may deem necessary or desirable, including a Chief Executive Officer, Chief Financial Officer, one (1) or more Vice Presidents, one (1) or more Assistant Secretaries, a Treasurer and one (1) or more Assistant Treasurers, each of whom shall hold office for such period, have such authority and perform such duties as the Board may from time to time determine. Subject to applicable law, the Board may delegate to any officer of this Corporation or any committee of the Board the power to appoint, remove and prescribe the term and duties of any officer provided for in this Section 4.1. Any number of offices may be held by the same person, unless otherwise provided by the Certificate of Incorporation or these Bylaws.

4.2    Appointment and Term. Each officer shall serve at the pleasure of the Board and shall hold office until such officer's successor has been appointed, or until such officer's earlier death, resignation or removal. Any officer may be removed, either with or without cause, by the Board or by any officer upon whom such power of removal may be conferred by the Board.

4.3     Resignations. An officer may resign from his or her position at any time, by giving notice in writing or electronic transmission to the Corporation. Such resignation shall be without prejudice to any rights, if any, the Corporation may have under any contract to which the officer is a party. Such resignation shall take effect at the time therein specified, or, if no time is specified, immediately; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

4.4     Vacancies. A vacancy in any office because of death, resignation, removal or otherwise shall be filled by the Board in the manner prescribed in these Bylaws for election or appointment to such office.

4.5     Compensation. The Board shall fix, or may appoint a committee to fix, the compensation of all officers of the Corporation appointed by the Board. Subject to applicable law, the Board may authorize any officer upon whom the power to appoint officers may have been conferred pursuant to Section 4.1 to fix the compensation of such officers.

4.6     Chief Executive Officer. The Chief Executive Officer, if any, shall have general supervision, direction and control of the business and affairs of the Corporation and shall be responsible for corporate policy and strategy. The Chief Executive Officer shall, if present and in the absence of the Chairperson of the Board, preside at meetings of the stockholders and (if a Director) at all meetings of the Board.

4.7     President. The President of this Corporation shall have the general powers and duties of management usually vested in the office of president and general manager of a corporation and shall have such other authority and shall perform such other duties as may from time to time be assigned to him or her by the Board or Chief Executive Officer, if any. In the absence or disability of the Chief Executive Officer or if the office of Chief Executive Officer is vacant, the President will preside at all meetings of the stockholders and (if a Director) at all meetings of the Board, unless the Chairperson of the Board has been appointed and is present.  If the office of Chief Executive Officer is vacant, the President will be the chief executive officer of the corporation (including for purposes of any reference to Chief Executive Officer in these Bylaws) and will, subject to the control of the Board, have general supervision, direction and control of the business and officers of the corporation.

4.8     Vice Presidents. A Vice President, if any, shall have such powers and duties as shall be prescribed by his or her superior officer, the President or the Chief Executive Officer, if any. A Vice President shall, when requested, counsel with and advise the other officers of the Corporation and shall perform such other duties as the President, the Chief Executive Officer, if any, or as the Board may from time to time determine.

4.9     Chief Financial Officer. The Chief Financial Officer, if any, shall exercise all the powers and perform the duties of the office of the chief financial officer and in general have overall supervision of the financial operations of the Corporation. The Chief Financial Officer shall, when requested, counsel with and advise the other officers of the Corporation and shall perform such other duties as the President or the Chief Executive Officer, if any, or as the Board may from time to time determine.

4.10     Secretary. The powers and duties of the Secretary are: (a) to act as Secretary at all meetings of the Board, of the committees of the Board and of the stockholders and to record the proceedings of such meetings in a book or books to be kept for that purpose; (b) to see that all notices required to be given by the Corporation are duly given and served; (c) to act as custodian of the seal of the Corporation and affix the seal or cause it to be affixed to all certificates of stock of the Corporation and to all documents, the execution of which on behalf of the Corporation under its seal is duly authorized in accordance with the provisions of these Bylaws; (d) to have charge of the books, records and papers of the Corporation and see that the reports, statements and other documents required by law to be kept and filed are properly kept and filed; and (e) to perform all of the duties incident to the office of Secretary. The Secretary shall, when requested, counsel with and advise the other officers of the Corporation and shall perform such other duties as the President, the Chief Executive Officer, if any, or as the Board may from time to time determine.

4.11     Treasurer. The Treasurer, if any, shall supervise and be responsible for all the funds and securities of the Corporation, the deposit of all moneys and other valuables to the credit of the Corporation in depositories of the Corporation, borrowings and compliance with the provisions of all indentures, agreements and instruments governing such borrowings to which the Corporation is a party, the disbursement of funds of the Corporation and the investment of its funds, and in general shall perform all of the duties incident to the office of the Treasurer. The Treasurer shall,

when requested, counsel with and advise the other officers of the Corporation and shall perform such other duties as the President, the Chief Executive Officer, if any, or as the Board may from time to time determine.

4.12    <u>Other Officers</u>. Such other officers as the Board may choose shall perform such duties and have such powers as from time to time may be assigned to them by the Board which shall not be inconsistent with these Bylaws and, to the extent not so stated, as generally pertain to their respective offices, subject to the control of the Board. The Board may require any officer, agent or employee to give a security for the faithful performance of his or her duties. The Board may delegate to any other officer of the Corporation the power to choose such other officers and to prescribe their respective duties and powers.

4.13    <u>Corporate Contracts and Instruments; How Executed</u>. The Board may authorize any officer or officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the Corporation. Such authority may be general or confined to specific instances.

4.14    <u>Action with Respect to Securities of Other Entities</u>. The President, the Chief Executive Officer, if any, or any other officer of the Corporation authorized by the Board is authorized to vote, represent, and exercise on behalf of the Corporation all rights incident to any and all shares or equity interests of any other corporation or entity or corporations or entities standing in the name of the Corporation. The authority herein granted may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by the person having such authority.

**ARTICLE V**
**STOCK**

5.1    <u>Certificates</u>. The shares of the Corporation may, but need not be, represented by certificates. Every holder of capital stock shall be entitled, upon written request, to have a certificate signed by, or in the name of, the Corporation by any 2 authorized officers of the Corporation, representing the number of shares registered in such holder's name. Any or all of the signatures on the certificate may be a facsimile signature. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issuance.

5.2    <u>Transfers</u>. Subject to compliance with and except as otherwise provided by the Certificate of Incorporation, these Bylaws and the Stockholders Agreement, shares of stock of the Corporation shall be transferable upon the Corporation's books by the holders thereof, in person or by their duly authorized attorneys or legal representatives, upon surrender to the Corporation of the certificate or certificates representing such shares endorsed by the appropriate person or persons (or, with respect to uncertificated shares, by delivery of duly executed instructions or in any other manner permitted by applicable law). Certificates representing such shares, if any, shall be cancelled and new certificates, if the shares are to be certificated, shall thereupon be issued. Shares of capital stock of the Corporation that are not represented by a certificate shall be transferred in accordance with applicable law. A record shall be made of each transfer. Whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer if, when the certificates are presented, both the transferor and transferee request the Corporation to do so. The Board shall have power and authority to make such rules and regulations as it may deem necessary or proper concerning the issue, transfer and registration of certificates for shares of stock of the Corporation.

5.3    <u>Right of First Refusal</u>. No stockholder will sell, transfer, convey, assign, pledge, hypothecate, loan, or otherwise dispose of or encumber, or enter into any contract to sell, any shares of stock of the Corporation or any Interest therein, whether, directly or indirectly, voluntarily or by operation of law, by gift or otherwise (a "<u>Transfer</u>"), unless such Transfer meets the requirements set forth in this <u>Section 5.3</u>, in addition to any other restrictions or requirements set forth under applicable law or these Bylaws:

(a)    If the stockholder desires to Transfer any of the stockholder's shares of stock, then the stockholder must first give written notice thereof to the Corporation.  The notice must name the proposed transferee and state the number of shares to be transferred, the proposed consideration, and all other terms and conditions of the proposed transfer.

(b)      For thirty (30) days following receipt of such notice, the Corporation has the option to purchase up to all the shares specified in the notice at the price and upon the terms set forth in such notice.  In the event of a gift, property settlement or other Transfer in which the proposed transferee is not paying the full price for the shares, and that is not otherwise exempted from the provisions of this Section 5.3, the price will be deemed to be the fair market value of the stock at such time as determined in good faith by the Board.  In the event the Corporation elects to purchase all of the shares or a lesser portion of the shares, it will give written notice to the transferring stockholder of its election and settlement for said shares will be made as provided below in Section 5.3(d).

(c)      The Corporation may assign its rights hereunder.

(d)      In the event the Corporation and/or its assignee(s) elect to acquire any of the shares of the transferring stockholder as specified in said transferring stockholder's notice, the Secretary of the Corporation will so notify the transferring stockholder and settlement thereof will be made in cash within thirty (30) days after the Secretary of the Corporation receives said transferring stockholder's notice; provided, that if the terms of payment set forth in said transferring stockholder's notice were other than cash against delivery, the Corporation and/or its assignee(s) will pay for said shares on the same terms and conditions set forth in said transferring stockholder's notice.

(e)      In the event the Corporation and/or its assignees(s) do not elect to acquire all of the shares specified in the transferring stockholder's notice, said transferring stockholder may, subject to the Corporation's approval and all other restrictions on Transfer located in Section 5.2 of these Bylaws, within the sixty (60) day period following the expiration or waiver of the option rights granted to the Corporation and/or its assignees(s) herein, Transfer the shares specified in said transferring stockholder's notice that were not acquired by the Corporation and/or its assignees(s) as specified in said transferring stockholder's notice.  All shares so sold by said transferring stockholder will continue to be subject to the provisions of this Section 5.3 in the same manner as before said Transfer.

(f)      "Interest" means any legal or beneficial right or interest in the stock of the Corporation, including without limitation rights to vote (including depositing any shares of stock into a voting trust) or to receive or participate in dividends or other income with respect thereto.

(g)      Anything to the contrary contained herein notwithstanding, the following transactions are exempt from the right of first refusal contained in this Section 5.3:

(i)      A stockholder's Transfer of any or all shares held either during such stockholder's lifetime or on death by will or intestacy to such stockholder's immediate family or to any custodian or trustee for the account of such stockholder or such stockholder's immediate family or to any limited partnership or limited liability company of which the stockholder, members of such stockholder's immediate family or any trust for the account of such stockholder or such stockholder's immediate family will be the general or limited partner(s) of such partnership or the controlling member(s) of such limited liability company. "Immediate family" as used herein means spouse, life partner or similar statutorily-recognized domestic partner, lineal descendant, father, mother, brother, or sister of the stockholder making such Transfer;

(ii)      A stockholder's bona fide pledge or mortgage of any shares with a commercial lending institution, provided, that any subsequent Transfer of said shares by said institution will be conducted in the manner set forth in this Section 5.3;

(iii)      A stockholder's Transfer of any or all of such stockholder's shares to the Corporation or to any other stockholder of the Corporation;

(iv)      A stockholder's Transfer of any or all of such stockholder's shares to a person who, at the time of such Transfer, is an officer or director of the Corporation;

(v)      A corporate stockholder's Transfer of any or all of its shares pursuant to and in accordance with the terms of any merger, consolidation, conversion, domestication, reclassification of shares or capital reorganization of the corporate stockholder, or pursuant to a sale of all or substantially all of the stock or assets of a corporate stockholder;

(vi)    A stockholder's Transfer of shares of Preferred Stock of the Corporation (or any shares of Common Stock issued upon conversion thereof);

(vii)    A corporate stockholder's Transfer of any or all of its shares to any or all of its stockholders, members, partners, or other equity holders, or any of its Affiliates. "Affiliates" as used herein means, with respect to any stockholder, any other stockholder who directly or indirectly, controls, is controlled by or is under common control with such stockholder, including, without limitation, any general partner, managing member, officer, director or trustee of such stockholder, or any venture capital fund or registered investment company now or hereafter existing which is controlled by one (1) or more general partners, managing members or investment advisers of, or shares the same management company or investment adviser with, such stockholder; or

(viii)    A Transfer by a stockholder that is a limited or general partnership to any or all of its partners or former partners in accordance with partnership interests.

In any such case, the transferee, assignee, or other recipient will receive and hold such stock subject to the provisions of this Section 5.3 and any other restrictions set forth in these Bylaws, and there will be no further Transfer of such stock except in accord with this Section 5.3 and the other provisions of these Bylaws.

(h)    The provisions of this Section 5.3 may be waived with respect to any Transfer either by the Corporation, upon duly authorized action of its Board, or by the stockholders, upon the express written consent of the owners of a majority of the voting power of the Outstanding Shares (excluding the votes represented by those shares to be transferred by the transferring stockholder).

(i)    Any Transfer, or purported Transfer, of securities of the Corporation will be null and void unless the terms, conditions, and provisions of this Section 5.3 are strictly observed and followed.

(j)    The foregoing right of first refusal will terminate upon the date securities of the Corporation are first offered to the public pursuant to a registration statement filed with, and declared effective by, the SEC under the Securities Act of 1933, as amended.

(k)    The certificates representing shares of Common Stock of the Corporation that are subject to the right of first refusal contained in this Section 5.3 will bear on their face the following legend so long as the foregoing right of first refusal remains in effect:

"THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A RIGHT OF FIRST REFUSAL OPTION IN FAVOR OF THE CORPORATION AND/OR ITS ASSIGNEE(S), AS PROVIDED IN THE BYLAWS OF THE CORPORATION."

(l)    To the extent this Section 5.3 conflicts with the Stockholders Agreement or any other written agreement(s) between the Corporation and the stockholder attempting to Transfer shares, such agreement(s) will control. For the avoidance of doubt, any Company right of first refusal right satisfied or waived in such written agreement(s) and any proposed Transfer of shares that is exempt from any Company right of first refusal right under such agreement(s) shall, in each case, be deemed to satisfy the provisions of this Section 5.3.

5.4    Lost, Stolen or Destroyed Certificates. The Corporation may direct a new certificate or uncertificated shares be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed. When authorizing such issuance of a new certificate or uncertificated shares, the Corporation may, in its discretion, require the owner of such lost, stolen or destroyed certificate to give the Corporation a bond (or other adequate security) in such sum as it may direct as indemnity against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate or the issuance of such new certificate or uncertificated shares. The Board may adopt such other provisions and restrictions with reference to lost certificates, not inconsistent with applicable law, as it shall in its discretion deem appropriate.

5.5     <u>Record Owners</u>. The Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise required by law.

**ARTICLE VI**
**NOTICES**

6.1     <u>Notices</u>.

(a)     Whenever notice is required by law, the Certificate of Incorporation or these Bylaws, to be given to any Director, member of a committee or stockholder, such notice shall be in writing (including electronic mail as permitted in these Bylaws) and shall be deemed effectively given upon the earlier of actual receipt or (i) personal delivery to the party to be notified; (ii) when sent, if sent by electronic mail during the recipient's normal business hours, and if not sent during normal business hours, then on the recipient's next business day; (iii) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) one business day after the business day of deposit with a nationally recognized overnight courier, freight prepaid, specifying next-day delivery, with written verification of receipt Notice given by electronic mail in accordance with these Bylaws and applicable law shall not require consent of the stockholder.

(b)     Notice to a stockholder given by a form of electronic transmission in accordance with these Bylaws shall be deemed given: (i) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice; (ii) if by electronic mail, when directed to such stockholder's electronic mail address unless the stockholder has notified the corporation in writing or by electronic transmission of an objection to receiving notice by electronic mail or such notice is otherwise prohibited by applicable law; (iii) if by a posting on an electronic network, together with separate notice to the stockholder of such specific posting, upon the later of such posting and the giving of such separate notice; and (iv) if by another form of electronic transmission, when directed to the stockholder. For purposes of these Bylaws, "electronic transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

(c)     Any notice to stockholders given by the Corporation may be given by a single written notice to stockholders who share an address if consented to by the stockholders at such address to whom such notice is given. Any such consent shall be revocable by the stockholders by written notice to the Corporation. Any stockholder who fails to object in writing to the Corporation, within sixty (60) days of having been given written notice by the Corporation of its intention to send the single notice as set forth in this <u>Section 6.1(c)</u> shall be deemed to have consented to receiving such single written notice.

6.2     <u>Waivers of Notice</u>. Whenever any notice is required by applicable law, the Certificate of Incorporation or these Bylaws, to be given to any Director, member of a committee or stockholder, a waiver thereof in writing, signed by the person or persons entitled to notice, or a waiver thereof given by electronic transmission by the person or persons entitled to notice, in each case, whether before or after the time stated therein, shall be deemed equivalent thereto. Attendance of a person at a meeting, present in person or represented by proxy, shall constitute a waiver of notice of such meeting, except where the person attends the meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any annual or special meeting of stockholders or any regular or special meeting of the Directors or members of a committee of Directors need be specified in any written waiver of notice unless so required by law, the Certificate of Incorporation or these Bylaws.

**ARTICLE VII**
**INDEMNIFICATION AND ADVANCEMENT OF EXPENSES**

7.1     <u>Definitions</u>. For purposes of this <u>Article VII</u>, the following terms shall have the meanings set forth below:

(a)    "<u>Action</u>" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative.

(b)    "<u>Indemnified Party</u>" means any person who is or was a party or is threatened to be made a party to any Action by reason of the fact that such person is or was a Director or executive officer (for the purposes of this <u>Article VII</u>, "executive officers" has the meaning defined in Rule 3b-7 promulgated under the 1934 Act) of the Corporation (which shall include actions taken in connection with or relating to the incorporation of the Corporation) or, while a Director or executive officer of the Corporation, is or was serving at the request of the Corporation as a Director, executive officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise, including any employee benefit plan of the Corporation.

7.2    <u>Indemnification</u>. The Corporation, as the indemnitor of first resort, shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any Indemnified Party against any and all liability and loss suffered and expenses (including attorneys' fees), judgements, fines (including ERISA excise taxes or penalties) and amounts paid in settlement reasonably incurred by such Indemnified Party. Notwithstanding the preceding sentence or any other provision of these Bylaws, except as provided in <u>Section 7.5</u>, the Corporation shall not be obligated pursuant to terms of these Bylaws:

(a)    <u>Excluded Acts or Omissions</u>. To indemnify any Indemnified Party hereunder for acts, omissions or transactions for which the Indemnified Party is prohibited from receiving indemnification under these Bylaws or applicable law; <u>provided</u>, <u>however</u>, that notwithstanding any limitation set forth in this <u>Section 7.2(a)</u> of this <u>Article VII</u> regarding the Corporation's obligation to provide indemnification, any Indemnified Party shall be entitled under, and pursuant to the terms of, <u>Section 7.4</u> of this <u>Article VII</u> to receive expenses payable in advance hereunder with respect to any such Action unless and until a court having jurisdiction over the Action shall have made a final judicial determination (as to which all rights of appeal therefrom have been exhausted or lapsed) that the Indemnified Party has engaged in acts, omissions or transactions for which the Indemnified Party is prohibited from receiving indemnification under these Bylaws or applicable law.

(b)    <u>Claims Initiated by Indemnitee</u>. To indemnify or pay expenses in advance pursuant to <u>Section 7.4</u> of this <u>Article VII</u> to any Indemnified Party with respect to Actions initiated or brought voluntarily by the Indemnified Party and not by way of defense, counterclaim or crossclaim, except (i) with respect to actions or proceedings brought to establish or enforce a right to indemnification and the payment of expenses in advance pursuant to <u>Section 7.4</u> of this <u>Article VII</u> under these Bylaws or any other agreement or insurance policy or under the Certificate of Incorporation or these Bylaws nor or hereafter in effect relating to Actions, (ii) with respect to any other such Action initiated or brought voluntarily by the Indemnified Party and not by way of defense, counterclaim or crossclaim, if the Board has approved the initiation or bringing of such Action, or (iii) as otherwise required under Section 145 of the DGCL.

(c)    <u>Illegal Remuneration</u>. To indemnify any Indemnified Party in respect to remuneration paid to the Indemnified Party if it shall be determined by final judgment or final adjudication that such remuneration was in violation of law.

(d)    <u>Unauthorized Settlement</u>. To indemnify any Indemnified Party for any amounts paid in settlement of any action or claim without the Corporation's written consent.

7.3    <u>Determination</u>. Any indemnification under this <u>Article VII</u> (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that the indemnification of Indemnified Party is proper in the circumstances because such Indemnified Party has met the applicable standard of conduct set forth in subsections (a) and (b) of section 145 of the DGCL, as the case may be; <u>provided</u>, that the termination of any Action, shall not, of itself, create a presumption that the Indemnified Party did not act in good faith and in a manner which the Indemnified Party reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the Indemnified Party's conduct was unlawful. Such determination shall be made, with respect to an Indemnified Party who is a Director or officer at the time of such determination, (a) by a majority vote of the Directors who are not parties to such Action, even though less than a quorum, or (b) by a committee of such Directors designated by a majority vote of such Directors, even though less than a quorum, or (c) if there are no such Directors, or if such Directors so direct, by independent legal

counsel in a written opinion or (d) by the holders of a majority of the total voting power of the Outstanding Shares entitled to vote in the election of Directors, voting together as a single class. Such determination shall be made, with respect to former Directors or officers, by any person or persons having the authority to act on the matter on behalf of the Corporation. To the extent, however, that a present or former Indemnified Party of the Corporation has been successful on the merits or otherwise in defense of any Action or in defense of any claim, issue or matter therein, such Indemnified Party shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such Indemnified Party in connection therewith, without the necessity of authorization in the specific case. For purposes of any determination under this Section 7.3, a person shall be deemed to have acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, or, with respect to any criminal action or proceeding, to have had no reasonable cause to believe such person's conduct was unlawful, if such person's action is based on the records or books of account of the Corporation or another enterprise, or on information supplied to such person by the officers of the Corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the Corporation or another enterprise or on information or records given or reports made to the Corporation or another enterprise by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Corporation or another enterprise. The provisions of the preceding sentence shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth in subsections (a) and (b) of section 145 of the DGCL, as the case may be.

7.4     Expenses Payable in Advance. Expenses, including without limitation attorneys' fees, incurred by an Indemnified Party in defending any Action shall be paid by the Corporation in advance of the final disposition of such Action upon receipt of an undertaking by or on behalf of such Indemnified Party to repay such amount if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified by the Corporation as authorized in this Article VII.

7.5     Claim. If a claim for indemnification under this Article VII (following the final disposition of such proceeding) is not paid in full within sixty (60) days after the Corporation has received a claim therefor by the Indemnified Party, or if a claim for any advancement of expenses under this Article VII is not paid in full within thirty (30) days after the Corporation has received a statement or statements requesting such amounts to be advanced, the Indemnified Party shall thereupon (but not before) be entitled to file suit to recover the unpaid amount of such claim. If successful in whole or in part, the Indemnified Party shall be entitled to be paid the expense of prosecuting such claim to the fullest extent permitted by law. In any such action, the Corporation shall have the burden of proving that the Indemnified Party is not entitled to the requested indemnification or advancement of expenses under applicable law.

7.6     Non-Exclusivity of Rights; Survival. The rights conferred on any Indemnified Party by this Article VII are not exclusive of other rights arising under the Certificate of Incorporation, the Stockholders Agreement, or any other agreement vote of the directors or stockholders or otherwise. The rights conferred on any Indemnified Party by this Article VII shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a Director or officer and shall inure to the benefit of the heirs, executors and administrators of such a person. Any amendment, repeal or elimination of the foregoing provisions of this Article VII will be prospective only and shall not adversely affect any right or protection of an Indemnified Party existing at the time of, or increase the liability of any Indemnified Party with respect to any acts or omissions of such Indemnified Party occurring prior to, such amendment, repeal or elimination.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1     Fiscal Year. The fiscal year of the Corporation shall be January 1 to December 31, unless otherwise fixed by resolution of the Board.

8.2     Corporate Seal. The Corporation may adopt and may subsequently alter the corporate seal and it may use the same by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

8.3     Maintenance and Inspection of Records. The Corporation shall, either at its principal executive office or at such place or places as designated by the Board, keep a record of its stockholders listing their names and

addresses and the number and class of shares held by each stockholder, a copy of these Bylaws as amended to date, accounting books and other records.

8.4     <u>Reliance upon Books, Reports and Records</u>. Each Director and each member of any committee designated by the Board shall, in the performance of his or her duties, be fully protected in relying in good faith upon the books of account or other records of the Corporation and upon such information, opinions, reports or statements presented to the Corporation by any of its officers or employees, or committees of the Board so designated, or by any other person as to matters which such Director or committee member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Corporation.

8.5     <u>Dividends</u>. Subject to the requirements of the DGCL and the provisions of the Certificate of Incorporation and the Stockholders Agreement, dividends on the capital stock of the Corporation may be declared by the Board at any regular or special meeting of the Board (or any action by written consent in lieu thereof in accordance with <u>Section 3.10</u> hereof), and may be paid in cash, in property, or in shares of the Corporation's capital stock. Before payment of any dividend, there may be set aside out of any funds of the Corporation available for dividends such sum or sums as the Board from time to time, in its absolute discretion, deems proper as a reserve or reserves to meet contingencies, or for purchasing any of the shares of capital stock, warrants, rights, options, bonds, debentures, notes, scrip or other securities or evidences of indebtedness of the Corporation, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for any proper purpose, and the Board may modify or abolish any such reserve. In the event that the Board declares a dividend on the capital stock of the Corporation pursuant to this <u>Section 8.5</u>, the Board may fix a record date in order that the Corporation may determine the stockholders entitled to receive payment of any dividend, which record date shall be fixed in accordance with <u>Section 2.10(b)</u>.

8.6     <u>Emergency Bylaws</u>. In the event of any emergency, disaster or catastrophe, as referred to in Section 110 of the DGCL or any successor provision, or other similar emergency condition, as a result of which a quorum of the Board or a standing committee of the Board cannot readily be convened for action, then the Director or Directors in attendance at the meeting shall constitute a quorum. Such Director or Directors in attendance may further take action to appoint one (1) or more of themselves or other Directors to membership on any standing or temporary committees of the Board as they shall deem necessary and appropriate.

8.7     <u>Interpretation</u>. Except where the context otherwise requires, wherever used, the singular includes the plural, the plural the singular, the use of any gender shall be applicable to all genders and the word "or" is used in the inclusive sense (and/or). The headings and captions of these Bylaws are for convenience of reference only and in no way define, describe, extend or limit the scope, construction, interpretation or intent of these Bylaws or any provision contained in these Bylaws. The term "including" as used herein does not limit the generality of any description preceding such term. Unless otherwise specified or where the context otherwise requires, (a) references in these Bylaws to any Article or Section are references to such Article or Section of these Bylaws; (b) references in any Section to any clause are references to such clause of such Section; (c) "hereof," "hereto," "hereby," "herein" and "hereunder" and words of similar import when used in Bylaws refer to these Bylaws as a whole and not to any particular provision of these Bylaws; (d) references to a law include any amendment or modification to such law and any rules or regulations issued thereunder, in each case, as in effect at the relevant time of reference thereto; (e) references to any agreement, instrument or other document in these Bylaws refer to such agreement, instrument or other document as originally executed or, if subsequently amended, replaced or supplemented from time to time, as so amended, replaced or supplemented and in effect at the relevant time of reference thereto; and (f) references to monetary amounts are denominated in United States Dollars.

8.8     <u>Conflicts</u>. If there is any conflict between any provisions of the Stockholders Agreement, on one hand, and the Restated Certificate or these Bylaws, on the other hand, the provisions of the Stockholders Agreement will prevail unless such prevalence would be in contravention of the requirements of the DGCL.
**AMENDMENTS**

9.1     <u>Amendments</u>. The affirmative vote of the holders of at least sixty-six and two-thirds percent (66-2/3%) of the voting power of the Outstanding Shares, voting together as a single class, shall be required to amend, alter, change, repeal, or adopt any provision of these Bylaws; <u>provided</u>, that These Bylaws may not be amended, modified or terminated and the observance of any term hereunder may not be waived with respect to any stockholder

Case 23-19865-JKS    Doc 1997    Filed 05/26/24    Entered 05/26/24 21:02:57    Desc Main
Document    Page 138 of 257    *Draft 5.26.24*

or group of stockholders without the written consent of such stockholder or holders constituting a majority-in-interest of such group of stockholders, if such amendment, modification, termination or waiver would (by its terms or effect) materially, adversely and disproportionately affect the rights of such stockholder or group of stockholders as compared to any other stockholder or other group of stockholders; provided, further, that during such time or times as the AHG Director is then seated, the provisions of Section 3.2 (Number and Qualification), Section 3.4(b) (Removal of Directors), Section 3.6 (Regular Meetings), Section 3.7 (Special Meetings), Section 3.10 (Action of the Board by Written Consent), Section 3.12 (Chairperson and Vice Chairperson of the Board), Section 5.2 (Transfers), and Section 5.3 (Right of First Refusal), may not be amended, modified or terminated and the observance of any term thereunder may not be waived with respect to any of the AHG Stockholders without the written consent of the AHG Director for so long as the AHG Approval Right is in effect (as defined in the Stockholders Agreement), if such amendment, modification, termination or waiver would adversely affect the rights of the AHG Stockholders thereunder. Notwithstanding anything herein to the contrary, any amendment, alteration, change or repeal of the provisions of these Bylaws that would, by its terms or effect, impact any rights or obligations of any of the AHG Stockholders (as defined in the Stockholders Agreement) under Section 2.9, Section 3.1, Section 3.2, Section 3.3, Section 3.4, Section 3.5, Section 3.6, Section 4.2, Section 4.3, Section 4.4, Article 5, Article 6, Article 7, Article 8 and this Section 10.1(f) of the Stockholders Agreement will also require the written consent of the AHG Director for so long as the AHG Approval Right is in effect.

\* \* \*

**<u>Exhibit D-5</u>**

**Form of the Registration Rights Agreement**

_____

**REGISTRATION RIGHTS AGREEMENT**


**dated as of**


**[●], 2024**


**by and among**


**[WEWORK INC.]**


**and**


**THE HOLDERS BOUND HERETO**


_____

**ARTICLE I REGISTRATION RIGHTS** ...........................................................................1

    **Section 1.1**    **Definitions** ...............................................................1

    **Section 1.2**    **Demand Registration.** ..................................................5

    **Section 1.3**    **Piggyback Registrations.** ...........................................9

    **Section 1.4**    **Shelf Registration Statement.** ..................................11

    **Section 1.5**    **Holdback Agreements.** ..............................................12

    **Section 1.6**    **Registration Procedures.** ..........................................12

    **Section 1.7**    **Registration Expenses and Selling Expenses** ...........17

    **Section 1.8**    **Indemnification.** .......................................................17

    **Section 1.9**    **Rule 144 and 144A; Other Exemptions** ...................20

    **Section 1.10**    **Certain Limitations On Registration Rights** ............20

    **Section 1.11**    **Limitations on Subsequent Registration Rights** ......20

    **Section 1.12**    **Transfer of Registration Rights** ...............................20

    **Section 1.13**    **Parties to Agreement** ................................................21

    **Section 1.14**    **Number of Registrable Securities Outstanding** .......21

    **Section 1.15**    **Alternative IPO Entities** ..........................................21

**ARTICLE II GENERAL PROVISIONS** ...................................................................21

    **Section 2.1**    **Entire Agreement** .....................................................21

    **Section 2.2**    **Assignment; Binding Effect; No Third Party Beneficiaries** .........................21

    **Section 2.3**    **Notices** ......................................................................22

    **Section 2.4**    **Specific Performance; Remedies** .............................22

    **Section 2.5**    **Submission to Jurisdiction; Waiver of Jury Trial.** ....22

    **Section 2.6**    **Governing Law** .........................................................23

    **Section 2.7**    **Headings** ...................................................................23

    **Section 2.8**    **Amendments; Waivers** .............................................23

    **Section 2.9**    **Severability** ..............................................................24

    **Section 2.10**    **Counterparts; Effectiveness** ....................................24

    **Section 2.11**    **Construction** .............................................................24

    **Section 2.12**    **Termination of Registration Rights** .........................25

    **Section 2.13**    **Aggregation of Registrable Securities** .....................25

    **Section 2.14**    **Deemed Execution; Effectiveness** ...........................25

## REGISTRATION RIGHTS AGREEMENT[1]

This **REGISTRATION RIGHTS AGREEMENT** (this "<u>Agreement</u>") is made as of [●], 2024, by and among [WeWork Inc.], a Delaware corporation (together with any successor entity thereto, the "<u>Corporation</u>"), and each Holder (as defined herein) who becomes a party to this Agreement from time to time pursuant to <u>Section 1.13</u> hereof.

## RECITALS

**WHEREAS**, the Corporation and certain of its direct and indirect subsidiaries filed (a) voluntary petitions for relief under Chapter 11 (the "<u>Chapter 11 Cases</u>") of title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>") and (b) a joint plan of reorganization (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Plan</u>"), as confirmed on [●], 2024, by order of the Bankruptcy Court in the Chapter 11 Cases jointly administered under the caption *In re: WeWork Inc.*, *et al.*, Case No. 23-19865 (JKS) (the "<u>Confirmation Order</u>");

**WHEREAS**, pursuant to the Plan and the Confirmation Order, the Corporation is authorized to enter into this Agreement and the Corporation has agreed to enter into this Agreement for the benefit of each Holder of Registrable Securities (as defined herein);

**NOW, THEREFORE**, in consideration of the premises and respective covenants and agreements set forth in this Agreement and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE I

## REGISTRATION RIGHTS

**Section 1.1**      <u>Definitions</u>. For purposes of this Agreement:

"<u>Affiliate</u>" means, with respect to any specified Person, any other Person who directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person. For purposes of this definition of Affiliate, (i) "control" (including, with correlative meanings, the terms "controls," "controlled by," and "under common control with") as used with respect to any Person, means the possession, directly or indirectly, of the right or power to direct, or cause the direction of, the management or policies of such Person, whether through the ownership of voting securities, by contract or otherwise, and (ii) solely for determining the Registrable Securities or Common Stock held by a Holder, any funds and/or accounts holding Registrable Securities that are managed, advised and/or sub-advised by a third-party asset manager will be "under common control" with any and all other funds and/or accounts

---

[1] THIS DRAFT IS SUBJECT TO CONTINUING DUE DILIGENCE AND CUPAR'S CONTINUING REVIEW AND COMMENT IN ALL RESPECTS. THIS DRAFT IS NOT INTENDED NOR SHALL IT BE DEEMED TO CREATE A LEGALLY-BINDING OR ENFORCEABLE AGREEMENT OF ANY TYPE OR NATURE UNLESS AND UNTIL FINALIZED AND AGREED UPON BY CUPAR AND EACH OF THE OTHER PARTIES.

In addition, this draft is subject to the review and comment by Potter Anderson, Delaware counsel to Cupar, in all respects.

holding Registrable Securities that are managed, advised and/or sub-advised by such third-party asset manager.

"Agent" and "Agents" have the meaning specified in Section 1.6(a)(ii) hereof.

"Agreement" has the meaning specified in the preamble hereof.

"AHG Director" shall have the meaning ascribed to such term in the Stockholders Agreement (as defined below).

"AHG Stockholder" shall have the meaning ascribed to such term in the Stockholders Agreement.

"Alternative IPO Entities" has the meaning specified in Section 1.15 hereof.

"beneficial ownership" (and related terms such as "beneficially-owned" or "beneficial owner") has the meaning set forth in Rule 13d-3 (or any successor rule then in effect) under the Exchange Act, except that in calculating the beneficial ownership of any Holder, such Holder shall be deemed to have beneficial ownership of all securities that such Holder has the right to acquire, whether such right is currently exercisable or is exercisable upon the occurrence of a subsequent event or with the passage of time.

"Board" means the board of directors of the Corporation (or any successor governing body) or any authorized committee thereof.

"Business Day" means any day except a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to be closed.

"Common Stock" means the Corporation's common stock, par value $0.0001 per share.

"Corporation" has the meaning specified in the preamble hereof and includes the Corporation's successors by merger, acquisition, reorganization or otherwise.

"Corporation-Indemnified Parties" has the meaning specified in Section 1.8(a) hereof.

"Corporation Securities" means the securities that the Corporation proposes to register for its own account on a registration statement in accordance with the terms of this Agreement.

"Demand Notice" has the meaning specified in Section 1.2(a) hereof.

"Demand Registration" has the meaning specified in Section 1.2(a) hereof.

"Demand Shelf Registration" has the meaning specified in Section 1.2(a) hereof.

"Effective Date" has the meaning specified in the Plan.

"Exchange Act" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder, or any similar or successor statute.

"FINRA" means the Financial Industry Regulatory Authority, Inc., or any successor entity thereof.

"Holder" means a Person who becomes a party to this Agreement in accordance with Section 1.13 hereof (so long as such Person holds any Registrable Securities). The term Holder shall not include any

registered owner of Registrable Securities that holds such Registrable Securities in "street name" on behalf of beneficial owners thereof.

"Holder-Indemnified Parties" has the meaning specified in Section 1.8(b) hereof.

"Indemnified Party" has the meaning specified in Section 1.8(c) hereof.

"Indemnifying Party" has the meaning specified in Section 1.8(c) hereof.

"Initial Registration Statement" has the meaning specified in Section 1.4(b) hereof.

"Initial Registrable Securities" has the meaning specified in Section 1.4(b) hereof.

"IPO" means an underwritten offering which is an initial public offering of the Common Stock pursuant to an effective Registration Statement filed under the Securities Act (which excludes, among others, a registration (i) pursuant to a registration statement on Form S-8 (or other registration solely relating to an offering or sale to employees or directors of the Corporation pursuant to any employee stock plan or other employee benefit arrangement), (ii) pursuant to a registration statement on Form S-4 (or similar form that relates to a transaction subject to Rule 145 under the Securities Act or any successor rule thereto), or (iii) in connection with any dividend reinvestment or similar plan) as a result of which the Common Stock is publicly traded on a National Securities Exchange.

"Losses" has the meaning specified in Section 1.8(a) hereof.

"Major Stockholder" shall have the meaning ascribed to such term in the Stockholders Agreement.

"Maximum Offering Amount" has the meaning specified in Section 1.2(c)(ii) hereof.

"National Securities Exchange" means the New York Stock Exchange LLC, The Nasdaq Stock Market LLC (including, for the avoidance of doubt, the New York Stock Exchange, NYSE American, the Nasdaq Global Select Market, the Nasdaq Global Market, the Nasdaq Capital Market) or another U.S. national securities exchange registered with the SEC.

"New Shelf Registration Statement" has the meaning specified in Section 1.4(b) hereof.

"Non-Demand Shelf Registration" has the meaning specified in Section 1.4 hereof.

"Other Securities" has the meaning specified in Section 1.3(c)(iii) hereof.

"Participating Holders" means Holders participating, or electing to participate, in an offering of Registrable Securities pursuant to the terms of this Agreement.

"Parties" has the meaning specified in Section 1.13 hereof.

"Person" means any individual, firm, corporation, company, partnership, trust, incorporated or unincorporated association, limited liability company, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind, and shall include any successor (by merger or otherwise) of any such entity.

"Piggyback Holder" has the meaning specified in Section 1.3(b) hereof.

"Piggyback Registration" has the meaning specified in Section 1.3(a) hereof.

"<u>Plan</u>" has the meaning specified in the recitals hereof.

"<u>Proposed Registration</u>" has the meaning specified in <u>Section 1.3(a)</u> hereof.

"<u>Registrable Securities</u>" means (a) any Common Stock acquired by any Holder (or any of its Affiliates) pursuant to the Plan or subsequently acquired by any Holder (or any of its Affiliates) after the Effective Date and (b) any equity interests or other securities of the Corporation issued or issuable with respect to the Common Stock referred to in clause (a): (i) upon any conversion or exchange thereof, (ii) by way of dividend or other distribution, split or reverse split, or (iii) in connection with a combination of securities, recapitalization, merger, consolidation, exchange offer, reorganization or other similar event; <u>provided</u>, <u>however</u>, that Common Stock or other securities that are considered to be Registrable Securities shall cease to be Registrable Securities (A) upon the sale thereof pursuant to and in accordance with an effective Registration Statement, (B) upon the sale thereof pursuant to Rule 144 under the Securities Act (or any similar rule promulgated by the SEC then in force), (C) when such securities are eligible for sale without registration pursuant to Rule 144 under the Securities Act (or any similar rule promulgated by the SEC then in force) without limitation thereunder on volume or manner of sale and without the need for current public information required by Rule 144(c)(1) or (D) under the Securities Act when such securities cease to be outstanding.

"<u>Registration Expenses</u>" mean all expenses (other than Selling Expenses) arising from or incident to the performance by the Corporation of, or compliance by the Corporation with, this <u>Article I</u>, including, without limitation, (i) SEC, stock exchange, FINRA and other registration and filing fees, (ii) all fees and expenses incurred in connection with complying with any state securities or blue sky laws (including, without limitation, fees, charges and disbursements of counsel to the underwriters in connection with blue sky qualifications of Registrable Securities), (iii) all printing, messenger and delivery expenses, (iv) the fees, charges and disbursements of counsel to the Corporation and of its independent certified public accountants and any other accounting and legal fees, charges and expenses incurred by the Corporation (including, without limitation, any expenses arising from any special audits or "comfort letters" required in connection with or incident to any registration), (v) the fees, charges and disbursements of any special experts retained by the Corporation in connection with any registration pursuant to the terms of this Agreement, (vi) all internal expenses of the Corporation (including, without limitation, all salaries and expenses of its officers and employees performing legal or accounting duties), (vii) the fees and expenses incurred in connection with the listing of the Registrable Securities on any National Securities Exchange, (vii) Securities Act liability insurance (if the Corporation elects to obtain such insurance), (viii) the reasonable and documented fees and expenses incurred in connection with any road show for underwritten offerings and (ix) all rating agency fees, regardless of whether any Registration Statement filed in connection with such registration is declared effective. "Registration Expenses" shall also include reasonable and documented fees, charges and disbursements of one (1) firm of counsel to all of the Participating Holders participating in any underwritten public offering pursuant to this Article I (which shall be selected by Holders holding at least a majority of the Registrable Securities held by the Participating Holders) with such fees not to exceed $50,000, unless otherwise approved by the Board; <u>provided</u>, <u>however</u>, that (a) any underwriting discounts, commissions or fees in connection with the sale of the Registrable Securities will be borne by the Holders pro rata on the basis of the number of Common Stock so registered and sold, (b) transfer taxes with respect to the sale of Registrable Securities will be borne by the Holder of such Registrable Securities and (c) the fees and expenses of any other counsel, accountants or other persons retained or employed by any Holder will be borne by such Holder.

"<u>Registration Statement</u>" shall mean any registration statement of the Corporation filed with the SEC on the appropriate form (including on Form S-8, if applicable) pursuant to the Securities Act which covers any of the Common Stock and/or any other equity securities of the Corporation pursuant to the provisions of this Agreement and all amendments and supplements to any such registration statement,

including post-effective amendments, in each case including the prospectus contained therein, all exhibits thereto and all materials incorporated by reference therein.

"<u>Requesting Holder</u>" means any Holder making a request for a Demand Registration pursuant to <u>Section 1.2(a)</u> hereof.

"<u>SEC</u>" or "<u>Commission</u>" means the United States Securities and Exchange Commission.

"<u>Securities Act</u>" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder, or any successor statute.

"<u>Selling Expenses</u>" shall mean the underwriting fees, discounts, selling commissions and transfer taxes applicable to any Registrable Securities.

"<u>Shelf Registration Statement</u>" means a Registration Statement filed with the Commission in accordance with the Securities Act for the offer and sale of Registrable Securities by Holders on a continuous or delayed basis pursuant to Rule 415 under the Securities Act (or any similar rule promulgated by the SEC then in force).

"<u>Stockholders Agreement</u>" means the Stockholders Agreement, dated as of [●], 2024, by and among the Corporation and the persons bound thereto.

"<u>underwritten registration, underwritten offering or underwritten public offering</u>" means an offering in which securities of the Corporation are sold to or through one or more underwriters (as defined in Section 2(a)(11) of the Securities Act) for resale to the public.

"<u>Valid Business Reason</u>" has the meaning specified in <u>Section 1.2(d)(i)</u> hereof.

### Section 1.2    <u>Demand Registration</u>.

(a)    <u>Request by Holders</u>. At any time on or following the date that is the later of six (6) months after the completion of an IPO and the expiration of any lock-up agreement with the underwriters in such IPO, and subject to the terms and conditions set forth in this Agreement, Holders of at least five percent (5%) of all Registrable Securities outstanding at such time may make a written request to the Corporation (a "<u>Demand Notice</u>") to register all or part of their Registrable Securities for resale under the Securities Act (a "<u>Demand Registration</u>"). Each Demand Notice shall (A) specify the aggregate number and class or classes of Registrable Securities that the Requesting Holders (and their respective Affiliates) intend to sell or dispose of and (B) state the intended method or methods of sale or disposition of the Registrable Securities (including whether or not such offer shall be an underwritten offering). In connection with any Demand Registration, the Requesting Holders may request the Corporation file a Shelf Registration Statement (a "<u>Demand Shelf Registration</u>"), <u>provided</u>, that the Corporation is then eligible to use Form S-3 (or any successor form) under the Securities Act for such intended resale.

(b)    <u>Demand Registration</u>. Following receipt of a Demand Notice, the Corporation shall:

(i)    give written notice of such request for registration to all Holders of Registrable Securities within ten (10) Business Days after receipt of such Demand Notice;

(ii)    use its commercially reasonable efforts to file (or confidentially submit), as soon as practicable, but in any event within ninety (90) days after the date of receipt of

such Demand Notice, a Registration Statement covering such Registrable Securities that the Corporation has been so requested to register by the Requesting Holders and other Holders of Registrable Securities who make a request to the Corporation, within ten (10) days of the mailing of the Corporation's notice referred to in Section 1.2(b)(i) hereof, that their Registrable Securities also be registered, providing for the registration under the Securities Act of such Registrable Securities to the extent necessary to permit the disposition of such Registrable Securities in accordance with the intended method of distribution specified in such Demand Notice;

(iii)    use its commercially reasonable efforts to have such Registration Statement declared effective by the SEC as soon as practicable thereafter, but in no event later than sixty (60) days or, if a Registration Statement is reviewed by the staff of the SEC, not later than ninety (90) days following the date of initial filing thereof with the SEC;

(iv)    refrain from filing any other Registration Statements, other than pursuant to a Registration Statement on Form S-4 or Form S-8 (or similar or successor forms), with respect to any equity securities of the Corporation until such date which is at least ninety (90) days following effectiveness of the Registration Statement relating to such Demand Registration; and

(v)    if the Corporation shall have previously effected a Demand Registration pursuant to Section 1.2, the Corporation shall not be required to effect any registration pursuant to Section 1.2 until a period of one hundred eighty (180) days shall have elapsed from the effective date of such previous Registration Statement.

(c)    Selection of Underwriters; Priority for Demand Registrations.

(i)    In the event that the Requesting Holders intend to distribute the Registrable Securities covered by the Demand Notice by means of an underwritten offering, they shall so advise the Corporation as part of the Demand Notice and the Corporation shall include such information in the notice it provides to all Holders pursuant to Section 1.2(b)(i) hereof. The managing underwriter or underwriters for such underwritten offering shall be one or more reputable nationally-recognized investment banks selected by Holders holding at least a majority of the Registrable Securities held by the Requesting Holders, subject to the consent of the Corporation, which consent shall not be unreasonably withheld, delayed or conditioned. In such event, the right of any Holder to include such Holder's Registrable Securities in such registration shall be conditioned upon such Holder's participation in such underwritten offering and the inclusion of such Holder's Registrable Securities in the underwritten offering to the extent provided in this Section 1.2(c). In the case of any Proposed Registration pursuant to Section 1.3 or registration initiated by the Corporation for its own account or any other offering not effected pursuant to this Section 1.2, the Corporation shall select one or more investment banks at its sole discretion as an underwriter for such offering. If requested by the underwriters, the Corporation and all Holders proposing to distribute their securities through such underwriting pursuant to this Section 1.2 shall enter into an underwriting agreement with the underwriters selected for such underwritten offering, which underwriting agreement shall be in customary form and reasonably satisfactory in form and substance to the Corporation, Holders holding at least a majority of the Registrable Securities held by the Participating Holders and the underwriters and shall contain such representations and warranties by the Corporation and such other terms and provisions as are customarily contained in agreements of this type, including, but not limited to, indemnities to the effect and to the extent provided in this Agreement or as are otherwise then customary (if more extensive), provisions for the delivery of officers' certificates, opinions of counsel for the Corporation and the Participating Holders and accountants' "comfort" letters, and lock-up arrangements.

(ii)      Notwithstanding any other provision of this Agreement, if any Demand Registration involves an underwritten offering and the managing underwriter of such offering advises the Corporation that, in its good faith view, the number of Registrable Securities and other securities, if any, to be included in such offering exceeds the largest number of securities which can reasonably be sold in an orderly manner without having a significant and adverse effect on such offering (the "Maximum Offering Amount"), then the Corporation shall include in such registration the number which can be so sold in the following order of priority:

(A)      first, all Registrable Securities requested by the Participating Holders to be included in such registration shall be included, but, if the number of Registrable Securities requested to be included in such registration exceeds the Maximum Offering Amount, then the number of Registrable Securities that each Participating Holder will be entitled to include in such registration will be allocated on a *pro rata* basis based on the number of Registrable Securities owned by such Participating Holder as compared to the aggregate number of Registrable Securities owned by all Participating Holders;

(B)      second, to the extent that the number of Registrable Securities to be included in such registration is less than the Maximum Offering Amount, the Corporation Securities; and

(C)      third, other securities, if any, to be included in such registration at the Corporation's discretion up to the Maximum Offering Amount after including the Registrable Securities and the Corporation Securities to be included in such registration.

(d)      Limitations on Demand Registrations.

(i)      Notwithstanding anything herein to the contrary, the Corporation may suspend the registration process and/or any Holder's ability to use a prospectus or delay making a filing of a Registration Statement or taking any other action in connection therewith when the Board has determined in good faith that it would be materially adverse to the Corporation if such Registration Statement (or an amendment or supplement thereto) were filed, such Registration Statement (or amendment or supplement) were to become effective or remain effective for the time otherwise required for such Registration Statement to remain effective or any other action were taken in connection therewith because such filing, effectiveness or other action either would (A) materially adversely affect a significant financing, acquisition, disposition, merger or other material transaction, (B) require premature disclosure of material information that the Corporation has a bona fide business purpose for preserving as confidential or (C) render the Corporation unable to comply with requirements under the Securities Act or the Exchange Act (each, a "Valid Business Reason"); provided, however, that such right to delay shall be exercised by the Corporation not more than twice in any twelve (12)-month period and the Corporation shall only have the right to delay as long as such Valid Business Reason exists. The Corporation shall give notice to each Participating Holder that the registration process has been delayed and upon notice duly given pursuant to Section 2.3, each Holder agrees not to sell any Registrable Securities pursuant to any Registration Statement until such Holder's receipt of copies of the supplemented or amended prospectus, or until it is advised in writing by the Corporation that the prospectus may be used, and has received copies of any additional or supplemental filings that are incorporated or deemed incorporated by reference in such prospectus. The Corporation shall not specify the nature of the event giving rise to a suspension in any notice to Holders.

(ii)      Notwithstanding anything herein to the contrary, the Corporation shall not be required to effect more than two (2) Demand Registrations. A Demand Registration shall not be deemed to have been effected and shall not count as one of the Demand Registrations referenced in the immediately preceding sentence (A) unless a Registration Statement with respect thereto has been declared effective by the Commission and remained effective in compliance with the provisions of the Securities Act and the laws of any U.S. state or other jurisdiction applicable to the disposition of Registrable Securities covered by such Registration Statement for: (x) in the case of a Registration Statement other than a Shelf Registration Statement, not less than one hundred and eighty (180) days (or such shorter period as will terminate when all of such Registrable Securities shall have been disposed of in accordance with such Registration Statement) or, if such Registration Statement relates to an underwritten offering, such longer period as, in the opinion of external counsel for the Company, a prospectus is required by law to be delivered in connection with sales of Registrable Securities by an underwriter or dealer, or (y) in the case of a Shelf Registration Statement, three (3) years; (B) if, after it has become effective, such registration is interfered with by any stop order, injunction or other order or requirement of the SEC or other governmental agency or court for any reason (other than a violation of applicable law solely by any Participating Holder) and has not thereafter become effective; or (C) if the offering of Registrable Securities is not consummated because the underwriters of an underwritten public offering advise the Participating Holders that the Registrable Securities cannot be sold at a net price per share equal to or above the minimum net price acceptable to Holders holding at least a majority of the Registrable Securities held by the Participating Holders; provided, however, that this clause (C) shall not apply to an underwritten public offering conducted on a "firm commitment basis" which is not consummated following the commencement of a road show; (D) if the conditions to closing specified in the underwriting agreement to which the Corporation is a party, if any, entered into in connection with such registration are not satisfied or waived (unless a cause of such conditions to closing not being satisfied shall be attributable to any Participating Holder or underwriter); or (E) if the amount of Registrable Securities of Requesting Holders included in the registration are reduced to fewer than fifty percent (50%) of the Registrable Securities originally requested to be registered; provided, however, that this subsection (E) shall not apply to any underwritten public offering that is not conducted on a "firm commitment" basis.

(iii)      Notwithstanding anything herein to the contrary, the Corporation will not be required to effect any Demand Registration relating to a Demand Notice made pursuant to Section 1.2(a) if the Corporation reasonably believes, based on the advice of an underwriter that is a reputable nationally-recognized investment bank, that such an offering would not reasonably be expected to generate gross proceeds (before deducting underwriters' commissions and fees and other expenses) of at least $75,000,000.

(iv)      Notwithstanding anything herein to the contrary, the Corporation will not be required to effect any Demand Registration (A) during the period starting on the date thirty (30) days prior to the Corporation's estimated date of filing of, and ending on the date one hundred eighty (180) days immediately following the effective date of, any Registration Statement (other than on Form S-4 or S-8 under the Securities Act, or any successor form) pertaining to the securities of the Corporation; provided, that the Corporation is employing in good faith all commercially reasonable efforts to cause such Registration Statement to become effective and (B) with respect to any Registrable Securities requested to be registered that are already covered by an existing and effective Registration Statement and such Registration Statement may be utilized for the offer and sale of the Registrable Securities requested to be registered; provided, however, that this subsection (B) shall not apply if the contemplated distribution of such Demand Registration will be an underwritten public offering that is not conducted on a "firm commitment" basis.

(e)     <u>Cancellation of Registration</u>. Holders holding at least a majority of the Registrable Securities held by the Participating Holders shall have the right to cancel a proposed registration of Registrable Securities pursuant to <u>Section 1.2(a)</u> prior to the effectiveness of such registration when (i) in their discretion, market conditions are so unfavorable as to be seriously detrimental to an offering pursuant to such registration or (ii) the request for cancellation is based upon material adverse information relating to the Corporation that is different from the information known to the Participating Holders at the time of the Demand Notice. Such cancellation of a registration shall not be counted as one of the total of two (2) Demand Registrations referenced in <u>Section 1.2(d)(ii)</u> hereof and notwithstanding anything to the contrary in this Agreement, the Corporation shall be responsible for all Registration Expenses incurred in connection with the registration prior to the time of cancellation.

(f)     <u>Withdrawal by Participating Holders</u>. Any Participating Holder shall have the right to withdraw such Holder's request for inclusion of such Holder's Registrable Securities in any Registration Statement pursuant to <u>Section 1.2(a)</u> by giving written notice to the Corporation of such withdrawal; <u>provided</u>, <u>however</u>, that the Corporation may ignore a notice of withdrawal made within forty-eight (48) hours of the time the Registration Statement is to become effective. The Corporation may not effect such Registration Statement in the event that Holders of Registrable Securities that have not elected to withdraw, own in the aggregate, less than the percentage of the Registrable Securities required to initiate a request under <u>Section 1.2(a)</u>; <u>provided</u>, that if such Demand Registration is not effected for such reason, such Demand Registration shall still count as one of the total of two (2) Demand Registrations referenced in <u>Section 1.2(d)(ii)</u> hereof.

**Section 1.3     Piggyback Registrations**.

(a)     <u>Right to Include Registrable Securities</u>. Following the completion of an IPO, each time that the Corporation proposes for any reason to register any of its securities of the same class as the Registrable Securities under the Securities Act, either for its own account or for the account of a stockholder or stockholders exercising demand registration rights (other than Demand Registrations pursuant to <u>Section 1.2</u> hereof) (a "<u>Proposed Registration</u>"), the Corporation shall promptly give written notice (which notice shall be given not less than thirty (30) days prior to the expected filing date of the Proposed Registration and shall describe the intended method of distribution for the offering relating to the Proposed Registration) of such Proposed Registration to all Major Stockholders and shall offer such Major Stockholders the right to request inclusion of any of such Major Stockholders' Registrable Securities in the Proposed Registration (a "<u>Piggyback Registration</u>"); <u>provided</u>, <u>however</u>, that Major Stockholders shall have no right to include Registrable Securities in a registration statement relating to a registration (i) pursuant to a registration statement on Form S-8 (or other registration solely relating to an offering or sale to employees or directors of the Corporation pursuant to any employee stock plan or other employee benefit arrangement), (ii) pursuant to a registration statement on Form S-4 (or similar form that relates to a transaction subject to Rule 145 under the Securities Act or any successor rule thereto), or (iii) in connection with any dividend reinvestment or similar plan. No registration pursuant to this <u>Section 1.3</u> shall relieve the Corporation of its obligation to effect a Demand Registration, as contemplated by <u>Section 1.2</u> hereof. The rights to Piggyback Registration may be exercised on an unlimited number of occasions.

(b)     <u>Piggyback Procedure</u>. Each Major Stockholder shall have ten (10) days from the date of receipt of the Corporation's notice referred to in <u>Section 1.3(a)</u> above to deliver to the Corporation a written request specifying the number of Registrable Securities such Major Stockholder intends to register and sell in the offering relating to such Piggyback Registration (any Major Stockholders so requesting to have any of their Registrable Securities included in the Proposed Registration, a "<u>Piggyback Holder</u>"). Any Piggyback Holder shall have the right to withdraw such Piggyback Holder's request for inclusion of such Piggyback Holder's Registrable Securities in any Registration Statement pursuant to this <u>Section 1.3</u> by giving written notice to the Corporation of such withdrawal; <u>provided</u>,

however, that the Corporation may ignore a notice of withdrawal made within forty-eight (48) hours of the time the Registration Statement is to become effective. Subject to Section 1.3(c) below, the Corporation shall use commercially reasonable efforts to include in such Registration Statement all such Registrable Securities requested to be included therein; provided, further, that the Corporation may at any time withdraw or cease proceeding with any such Proposed Registration if it shall at the same time withdraw or cease proceeding with the registration of all other securities of the same class as the Registrable Securities originally proposed to be registered, without prejudice, however, to the rights of any Holder to request that a Demand Registration be effected; and provided, further, that no registration effected under this provision will relieve the Corporation from its obligations to effect a Demand Registration upon a Demand Notice, subject to the express terms and conditions set forth in this Agreement, including Section 1.2(d)(iv).

        (c)     Priority for Piggyback Registration. If any Proposed Registration involves an underwritten offering and the managing underwriter of such offering advises the Corporation that, in its good-faith view, that the number of Registrable Securities and other securities to be included in such offering exceeds the Maximum Offering Amount, then the Corporation shall include in such registration the number of securities which can be so sold in the following order of priority:

        (i)     first, the Corporation Securities, if any;

        (ii)     second, to the extent that the number of Corporation Securities is less than the Maximum Offering Amount, the remaining securities to be included in such registration will be allocated among all Piggyback Holders requesting that Registrable Securities be included in such Registration on a *pro rata* basis based on the number of Registrable Securities owned by each such Piggyback Holder as compared to the aggregate number of Registrable Securities owned by all Piggyback Holders; and

        (iii)     third, all other holders of the Corporation's securities exercising "demand" rights with respect to such securities (the "Other Securities") or who have been granted "piggy-back" registration rights with respect to such Other Securities and have requested that such Other Securities be included in such registration.

        (d)     Underwritten Offering. In the event that the Proposed Registration by the Corporation is, in whole or in part, an underwritten public offering of securities of the Corporation, any notice from the Corporation to Major Stockholders under this Section 1.3 shall offer Major Stockholders the right to include any Registrable Securities covered by the Proposed Registration in the underwriting on the same terms and conditions as the securities, if any, otherwise being sold through underwriters under such Proposed Registration.

        (e)     Cancellation and Delay of Registration. If at any time after giving written notice of its Proposed Registration and prior to the effective date of the Registration Statement filed in connection with the Proposed Registration or, in the case of a Shelf Registration Statement, prior to the consummation of such offering, the Corporation shall determine for any reason not to register or to delay registration of such offering, the Corporation may, at its election, give written notice of such determination to each Piggyback Holder and (i) in the case of a determination not to register, the Corporation shall be relieved of its obligation to register any Registrable Securities in connection with such Proposed Registration (but not from any obligation of the Corporation to pay the Registration Expenses in connection therewith), without prejudice, however, to the rights of any Major Stockholder to include Registrable Securities in any future registrations pursuant to this Section 1.3 and (ii) in the case of a determination to delay registering, shall be permitted to delay registering any Registrable Securities, for the same period as the delay in registering other securities in the Proposed Registration.

**Section 1.4**        **Shelf Registration Statement**.

(a)        <u>Filing of Shelf Registration Statement</u>. Following the Company's IPO and from and after such time as the Corporation shall have qualified for the use of a Shelf Registration Statement on Form S-3 or any successor form thereto, the Corporation shall (i) promptly prepare and file with (or confidentially submit to) the Commission a Shelf Registration Statement on Form S-3 or its successor form that covers all Registrable Securities then outstanding for an offering to be made on a delayed or continuous basis pursuant to Rule 415 under the Securities Act or any successor rule thereto (a "<u>Non-Demand Shelf Registration</u>") and (ii) use its commercially reasonable efforts to cause such Shelf Registration Statement to be declared effective by the Commission as soon as practicable thereafter; <u>provided</u>, that following a registered offering of Corporation Securities (other than a registration (a) pursuant to a registration statement on Form S-8 (or other registration solely relating to an offering or sale to employees or directors of the Corporation pursuant to any employee stock plan or other employee benefit arrangement), (b) pursuant to a registration statement on Form S-4 (or similar form that relates to a transaction subject to Rule 145 under the Securities Act or any successor rule thereto), or (c) in connection with any dividend reinvestment or similar plan, the Corporation shall not be required to file a Shelf Registration Statement pursuant to this <u>Section 1.4</u> until ninety (90) days following the effective date of such Registration Statement covering the Corporation Securities. If, after the filing of a Shelf Registration Statement, a Holder of Registrable Securities requests registration under the Securities Act of additional Registrable Securities pursuant to such Non-Demand Shelf Registration, the Corporation shall use its commercially reasonable efforts to amend such Shelf Registration Statement to cover such additional Registrable Securities; <u>provided,</u> that the Corporation shall not be required to so amend such Shelf Registration Statement more than once every fiscal quarter of the Corporation. The Corporation shall use its commercially reasonable efforts to cause such Shelf Registration Statement to remain effective for as long as any Registrable Securities are outstanding. In no event shall the Company be required to file, and maintain effectiveness of, more than one Shelf Registration Statement at any one time pursuant to this <u>Section 1.4.</u>

(b)        <u>Expiration of Shelf Registration Statement</u>. If (i) the Corporation has filed a Shelf Registration Statement (the "<u>Initial Registration Statement</u>") with the Commission that covers Registrable Securities (the "<u>Initial Registrable Securities</u>"), (ii) pursuant to Rule 415(a)(5) under the Securities Act or any successor rule thereto, the Initial Registration Statement may no longer be used for offers and sales of any of the Initial Registrable Securities, and (iii) any of the Initial Registrable Securities are Registrable Securities at the time that (ii) above occurs, the Corporation shall prepare and file with the Commission within the time limits required by Rule 415 under the Securities Act or any successor rule thereto a new Shelf Registration Statement covering any Initial Registrable Securities that have not ceased to be Registrable Securities for an offering to be made on a delayed or continuous basis pursuant to Rule 415 under the Securities Act or any successor rule thereto (a "<u>New Shelf Registration Statement</u>") and shall use its reasonable efforts to cause such New Shelf Registration Statement to be declared effective by the Commission as soon as practicable thereafter; <u>provided</u>, that, if at the time it is required to file a New Shelf Registration Statement pursuant to this <u>Section 1.4(b)</u> the Corporation is not qualified to use a Registration Statement on Form S-3 or its successor form, the Corporation shall not be required to file a New Shelf Registration Statement with the Commission and the Holders shall be permitted to request registration under the Securities Act of all or any portion of their Initial Registrable Securities that have not ceased to be Registrable Securities pursuant to another form of registration statement under the Securities Act and such registration shall not count as a Demand Registration for purposes of the limitations set out in <u>Section 1.2(d)(ii)</u>.

(c)        <u>Shelf Takedowns</u>. Upon the demand of one or more Major Stockholders, the Corporation shall facilitate up to two (2) "takedowns" of Registrable Securities in the form of an underwritten offering utilizing the Shelf Registration Statement filed in connection with the Non-Demand Shelf Registration, in the manner and subject to the conditions described in <u>Sections 1.2(b)(iv)</u>, <u>1.2(c)</u>,

1.2(e) and 1.2(f) of this Agreement; provided, that the Corporation will not be required to effect a "takedown" made pursuant to this Section 1.4(b) if the Corporation reasonably believes, based on the advice of an underwriter that is a reputable nationally-recognized investment bank, that such an offering would not reasonably be expected to generate gross proceeds (before deducting underwriters' commissions and fees and other expenses) of at least $75,000,000.

> ### Section 1.5        Holdback Agreements.

> (a)        Restrictions on Sale by Holders. Each Holder hereby agrees that, if and whenever the Corporation (i) proposes to register any of its equity securities under the Securities Act, whether or not for its own account, (ii) is required to use its commercially reasonable efforts to effect the registration of any Registrable Securities under the Securities Act pursuant to a Demand Registration, or (iii) is conducting an underwritten "takedown" as described in Section 1.4(c), such Holder, if requested by the managing underwriter in an underwritten offering, agrees to enter into a "lock-up agreement" containing terms (including the duration of the lock-up period, which, for the avoidance of doubt shall commence (1) in the case of clauses (i) or (ii) above, no earlier than ten (10) days prior to the effectiveness of the registration statement and shall not exceed ninety (90) days following the effectiveness of the registration statement and (2) in the case of clause (iii) above, no earlier than ten (10) days prior to the closing date of such offering and shall not exceed ninety (90) days following such closing date) that are customary at the time such agreement is entered into for offerings of similar size and type, and the Corporation shall cause all of the Corporation's directors and executive officers, and shall use its commercially reasonable efforts to cause any stockholder owning more than two percent (2%) of the Corporation's outstanding Common Stock, to sign lock-up agreements on comparable terms in connection therewith. Any such lock-up agreements signed by Holders shall contain reasonable and customary exceptions, including, without limitation, the right of a Holder to make transfers to certain Affiliates, subject to such Affiliates entering into such lock-up agreement. The Corporation may impose stop-transfer instructions with respect to the Common Stock or other securities subject to the foregoing restrictions until the end of the relevant lock-up period. For purposes of the foregoing, the term "lock-up agreement" refers to an agreement by the undersigned thereto not to effect for a specified period of time any sale or distribution (other than in connection with the public offering for which such lock-up agreement is being requested and other customary exceptions), including, without limitation, any sale pursuant to Rule 144 under the Securities Act (or any similar rule promulgated by the SEC then in force), of any Registrable Securities, any other equity securities of the Corporation or any securities convertible into or exchangeable or exercisable for any equity securities of the Corporation, without the prior consent of the managing underwriter. The provisions of this Section 1.5 will not apply to a Holder unless such Holder is a Participating Holder or is otherwise a director, executive officer or a stockholder owning more than two percent (2%) of the Corporation's outstanding Common Stock.

> (b)        Restrictions on Sale by the Corporation. The Corporation agrees not to effect (except pursuant to registrations on Form S-4 or S-8 or any similar or successor form) any sale or distribution, or to file any Registration Statement covering, any of its equity securities, or any securities convertible into or exchangeable or exercisable for such securities during the period (i) beginning no earlier than ten (10) days prior to the effective date of the Registration Statement, and up to ninety (90) days after the effective date of the Registration Statement for any Demand Registration, and (ii) with respect to an underwritten "takedown" as described in Section 1.4(c), beginning no earlier than ten (10) days prior to the closing date thereof, and up to ninety (90) days following such closing date, in each case to the extent reasonably requested by the managing underwriter thereto (except for securities being sold by the Corporation for its own account under such Registration Statement).

> ### Section 1.6        Registration Procedures.

(a)    <u>Obligations of the Corporation</u>. Whenever registration of Registrable Securities is required pursuant to this Agreement, the Corporation shall use commercially reasonable efforts to effect the registration and sale of such Registrable Securities in accordance with the intended method of distribution thereof as promptly as practicable, and in connection with any such request, the Corporation shall, as promptly as practicable, use its commercially reasonable efforts to:

(i)    *Preparation of Registration Statement; Effectiveness*. Prepare and file with the SEC (and in any event, with respect to a Demand Registration under <u>Section 1.2</u>, not later than the time permitted under <u>Section 1.2(b)(ii)</u>) a Registration Statement on any form on which the Corporation then qualifies, which counsel for the Corporation shall deem appropriate and pursuant to which such offering may be made in accordance with the intended method of distribution thereof (except that the Registration Statement shall contain such information as may reasonably be requested for marketing or other purposes by the managing underwriter, if applicable), and use commercially reasonable efforts to cause any registration required hereunder to become effective as soon as practicable (and, in any event, with respect to a Demand Registration under <u>Section 1.2</u>, not later than the time permitted under <u>Section 1.2(b)(iii)</u>) and, with respect to a Demand Registration that is not a Demand Shelf Registration or a Demand Shelf Registration, remain effective for the period specified in <u>Section 1.2(d)(ii)</u> (or such shorter period in which all Registrable Securities have been sold in accordance with the methods of distribution set forth in the Registration Statement); <u>provided</u>, <u>however</u>, that, in the case of any Demand Shelf Registration of Registrable Securities which are intended to be offered on a continuous or delayed basis, such three (3)-year period shall be extended, if necessary, to keep the Registration Statement effective to the extent necessary to ensure that it is available for sales of such Registrable Securities, and to ensure that it conforms with the requirements of this Agreement, the Securities Act and the policies, rules and regulations of the Commission as announced from time to time, until the earlier to occur of (i) the date on which all such Registrable Securities are sold or (ii) all of such Registrable Securities have become eligible for sale pursuant to Rule 144 under the Securities Act by the Holder thereof without limitation thereunder on volume or manner of sale and without the need for current public information required by Rule 144(c)(1) or (D) under the Securities Act; <u>provided</u>, <u>further</u>, that provisions in <u>Section 1.4</u> shall govern Non-Demand Shelf Registrations;

(ii)    *Participation in Preparation*. Upon the reasonable request of any Participating Holder, any underwriter participating in any disposition pursuant to a Registration Statement, and any attorney, accountant or other agent retained by any Participating Holder or underwriter (each, an "<u>Agent</u>" and, collectively, the "<u>Agents</u>"), provide the opportunity to participate (including, but not limited to, reviewing, commenting on and attending all meetings) in the preparation of such Registration Statement, each prospectus included therein or filed with the SEC and each amendment or supplement thereto;

(iii)    *Due Diligence*. For a reasonable period prior to the filing of any Registration Statement pursuant to this Agreement, make available for inspection and copying (such copying to be at the Corporation's expense) by the Agents such financial and other information and books and records, pertinent corporate documents and properties of the Corporation and its subsidiaries and cause the officers, directors, employees, counsel and independent certified public accountants of the Corporation and its subsidiaries to respond to such inquiries and to supply all information reasonably requested by any such Agent in connection with such Registration Statement, as shall be reasonably necessary, in the judgment of the Agents, to conduct a reasonable investigation within the meaning of the Securities Act;

(iv)    *General Notifications*. Promptly notify in writing the Participating Holders, the sales or placement agent, if any, therefor, and the managing underwriter of the

securities being sold, if applicable, (A) when such Registration Statement or the prospectus included therein or any prospectus amendment or supplement or post-effective amendment has been filed, and, with respect to any such Registration Statement or any post-effective amendment, when the same has become effective, (B) when the SEC notifies the Corporation whether there will be a "review" of such Registration Statement, (C) of the receipt of any comments (oral or written) by the SEC and by the blue sky or securities commissioner or regulator of any state with respect thereto and (D) of any request by the SEC for any amendments or supplements to such Registration Statement or the prospectus or for additional information;

(v)      *10b-5 Notification.* Promptly notify in writing the Participating Holders, the sales or placement agent, if any, therefor, and the managing underwriter of the securities being sold pursuant to any Registration Statement at any time when a prospectus relating thereto is required to be delivered under the Securities Act upon discovery that, or upon the happening of any event as a result of which, any prospectus included in such Registration Statement (or amendment or supplement thereto) contains an untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading in the light of the circumstances under which they were made, and the Corporation shall promptly prepare a supplement or amendment to such prospectus and file it with the SEC (in any event no later than ten (10) Business Days following notice of the occurrence of such event to each Participating Holder, the sales or placement agent and the managing underwriter) so that after delivery of such prospectus, as so amended or supplemented, to the purchasers of such Registrable Securities, such prospectus, as so amended or supplemented, shall not contain an untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading in light of the circumstances under which they were made;

(vi)      *Notification of Stop Orders; Suspensions of Qualifications and Exemptions.* Promptly notify in writing the Participating Holders, the sales or placement agent, if any, therefor, and the managing underwriter of the securities being sold of (A) any stop order issued or threatened to be issued by the SEC or (B) any notification with respect to the suspension of the qualification or exemption from qualification of any of the Registrable Securities for sale in any jurisdiction or the initiation or threatening of any proceeding for such purpose and the Corporation agrees to use commercially reasonable efforts to (x) prevent the issuance of any such stop order, and in the event of such issuance, to obtain the withdrawal of any such stop order, (y) obtain the withdrawal of any order suspending or preventing the use of any related prospectus or suspending the qualification of any Registrable Securities included in such Registration Statement for sale in any jurisdiction at the earliest practicable date and (z) if necessary to satisfy (x) and (y) hereof, the Corporation shall promptly prepare a supplement or amendment to such prospectus or Registration Statement and file it with the SEC, and, in connection with any of the foregoing events which has resulted in a suspension of a Participating Holder's ability to dispose of securities under a Registration Statement, the Corporation shall promptly advise, in writing, any such Participating Holders that the use of the prospectus may be resumed;

(vii)      *Amendments and Supplements; Acceleration.* (A) Prepare and file with the SEC such amendments and supplements to each Registration Statement as may be necessary to comply with the provisions of the Securities Act, including post-effective amendments to each Registration Statement as may be necessary to keep such Registration Statement continuously effective for the applicable time period required hereunder and if applicable, file any Registration Statements pursuant to Rule 462(b) under the Securities Act; (B) cause the related prospectus to be supplemented by any required prospectus supplement, and as so supplemented to be filed pursuant to Rule 424 (or any similar provisions then in force) promulgated under the

Securities Act; and (C) comply with the provisions of the Securities Act and the Exchange Act with respect to the disposition of all securities covered by such Registration Statement during such period in accordance with the intended methods of disposition by the sellers thereof set forth in such Registration Statement as so amended or in such prospectus as so supplemented;

(viii)    *Copies*. Furnish as promptly as practicable to each Participating Holder and Agent prior to filing a Registration Statement or any supplement or amendment thereto, copies of such Registration Statement, supplement or amendment as it is proposed to be filed, and after such filing such number of copies of such Registration Statement, each amendment and supplement thereto (in each case including all exhibits thereto), the prospectus included in such Registration Statement (including each preliminary prospectus) and such other documents as each such Participating Holder or underwriter may reasonably request in order to facilitate the disposition of the Registrable Securities owned by such Participating Holder;

(ix)    *Blue Sky*. Use commercially reasonable efforts to, prior to any public offering of the Registrable Securities, register or qualify (or seek an exemption from registration or qualifications) such Registrable Securities under such other securities or blue sky laws of such jurisdictions as any Participating Holder or underwriter may request, and to continue such qualification in effect in each such jurisdiction for as long as is permissible pursuant to the laws of such jurisdiction, or for as long as a Participating Holder or underwriter reasonably requests or until all of such Registrable Securities are sold, whichever is shortest, and do any and all other acts and things which may be reasonably necessary or advisable to enable any Participating Holder to consummate the disposition in such jurisdictions of the Registrable Securities; provided, however, that the Corporation shall not be required in connection therewith or as a condition thereto to qualify to do business or to consent to general service of process in any such states or jurisdictions or subject itself to taxation in any such state or jurisdiction, but for this subparagraph;

(x)    *Other Approvals*. Use commercially reasonable efforts to obtain all other approvals, consents, exemptions or authorizations from such governmental agencies or authorities as may be necessary upon the advice of counsel of the Corporation or counsel to the Participating Holders to enable the Participating Holders and underwriters to consummate the disposition of Registrable Securities;

(xi)    *Agreements*. Enter into and perform customary agreements (including any underwriting agreements in customary form), and take such other actions as may be reasonably required in order to expedite or facilitate the disposition of Registrable Securities;

(xii)    *"Cold Comfort" Letters*. If such registration is in connection with an underwritten offering, obtain "cold comfort" letters, dated the dates of the pricing and the closing under the underwriting agreement and addressed to the underwriters and signed by the Corporation's independent public accountants in customary form and covering such matters of the type customarily covered by "cold comfort" letters as the managing underwriter of such offering may reasonably request;

(xiii)    *Legal Opinion and 10b-5 Letter*. If such registration is in connection with an underwritten offering, furnish, at the request of the managing underwriter of such offering on the date such securities are delivered to the underwriters for sale pursuant to such registration, an opinion and 10b-5 letter, dated such date, of outside or in-house legal counsel representing the Corporation for the purposes of such registration, addressed to the Holders, and the placement agent or sales agent, if any, thereof and the underwriters, if any, thereof, covering such legal matters with respect to the registration in respect of which such opinion is being given

as such underwriter may reasonably request and as are customarily included in such opinions and 10b-5 letters;

(xiv)    *SEC Compliance, Earnings Statement*. Use commercially reasonable efforts to comply with all applicable rules and regulations of the SEC and make available to its shareholders, as soon as practicable, but no later than fifteen (15) months after the effective date of any Registration Statement, an earnings statement covering a period of twelve (12) months beginning after the effective date of such Registration Statement, in a manner which satisfies the provisions of Section 11(a) of the Securities Act and Rule 158 thereunder and which requirement will be deemed satisfied if the Corporation timely files complete and accurate information on Forms 10-Q and 10-K and Current Reports on Form 8-K under the Exchange Act and otherwise complies with Rule 158 under the Securities Act;

(xv)    *Certificates, Closing*. If such registration is in connection with an underwritten offering, provide officers' certificates and other customary closing documents as the managing underwriter of such offering may reasonably request;

(xvi)    *FINRA*. Cooperate with each Participating Holder and each underwriter participating in the disposition of such Registrable Securities and underwriters' counsel in connection with any filings required to be made with the FINRA;

(xvii)    *Road Show*. If such registration is in connection with an underwritten offering, cause appropriate officers as are requested by a managing underwriter to participate in an electronic "road show" or similar marketing effort being conducted by such underwriter with respect to an underwritten public offering;

(xviii)    *Listing*. Cause all such Registrable Securities to be listed or quoted on each securities exchange or market system on which similar securities issued by the Corporation are so listed or quoted (or, in the case of the IPO, to become so listed or quoted if requested);

(xix)    *Transfer Agent, Registrar and CUSIP*. Provide a transfer agent and registrar for all Registrable Securities registered pursuant hereto and a CUSIP number for all such Registrable Securities, in each case, no later than the effective date of such registration;

(xx)    *Efforts*. Take all other actions necessary to effect the registration of the Registrable Securities contemplated hereby;

(xxi)    *Controlling Person*. Permit any Holder of Registrable Securities which Holder, in its sole and exclusive judgment, might be deemed an underwriter or a "controlling person" (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act) of the Corporation, to participate in the preparation of such Registration Statement and to require the insertion therein of language, furnished to the Corporation in writing, which in the reasonable judgment of such Holder and its counsel should be included.

(b)    <u>Seller Information</u>. The Corporation may require each Participating Holder as to which any registration of such Holder's Registrable Securities is being effected to furnish to the Corporation, such information regarding such Participating Holder and such Participating Holder's method of disposition of such Registrable Securities as the Corporation may from time to time reasonably request in writing as may be required by law. If a Participating Holder refuses to provide the Corporation with any of such information on the grounds that it is not necessary to include such information in the Registration Statement, the Corporation may exclude such Participating Holder's Registrable Securities

from the Registration Statement if the Corporation determines, based on the advice of counsel, that such information must be included in the Registration Statement and such Participating Holder continues thereafter to withhold such information. The exclusion of a Participating Holder's Registrable Securities shall not affect the registration of the other Registrable Securities to be included in the Registration Statement.

Notice to Discontinue. Each Participating Holder whose Registrable Securities are covered by a Registration Statement filed pursuant to this Agreement agrees that, upon receipt of written notice from the Corporation of the happening of any event of the kind described in Sections 1.2(d)(i), 1.2(d)(ii) and/or 1.6(a)(v) or a notice of a stop order pursuant to Section 1.6(a)(vi), such Participating Holder shall forthwith discontinue the disposition of Registrable Securities until such Participating Holder's receipt of the copies of the supplemented or amended prospectus contemplated by Sections 1.2(d)(i), 1.2(d)(ii) and/or 1.6(a)(v) or until it is advised in writing by the Corporation that the use of the prospectus may be resumed and has received copies of any additional or supplemental filings which are incorporated by reference into the prospectus, and, if so directed by the Corporation in the case of an event described in Sections 1.2(d)(i), 1.2(d)(ii) and/or 1.6(a)(v) or following a notice of a stop order pursuant to Section 1.6(a)(vi), such Participating Holder shall deliver to the Corporation (at the Corporation's expense) all copies, other than permanent file copies then in such Participating Holder's possession, of the prospectus covering such Registrable Securities which is current at the time of receipt of such notice. If the Corporation shall give any such notice, the Corporation shall extend the period during which such Registration Statement is to be maintained effective by the number of days during the period from and including the date of the giving of such notice pursuant to Sections 1.2(d)(i), 1.2(d)(ii) and/or 1.6(a)(v) or the notice of a stop order pursuant to Section 1.6(a)(vi) to and including the date when the Participating Holder shall have received the copies of the supplemented or amended prospectus contemplated by, and meeting the requirements of Sections 1.2(d)(i), 1.2(d)(ii) and/or 1.6(a)(v) or notice from the Corporation of the withdrawal of such stop order, as applicable. Each Participating Holder whose Registrable Securities are covered by a Registration Statement filed pursuant to this Agreement agrees that as of the date that a final prospectus is made available to it for distribution to prospective purchasers of Registrable Securities, it shall cease to distribute copies of any preliminary prospectus prepared in connection with the offer and sale of such Registrable Securities.

Section 1.7    **Registration Expenses and Selling Expenses**. Except as otherwise provided herein, all Registration Expenses shall be borne by the Corporation. All Selling Expenses relating to Registrable Securities registered shall be borne by the Participating Holders of such Registrable Securities pro rata on the basis of the number of Registrable Securities sold.

Section 1.8    **Indemnification**.

(a)    Indemnification by the Corporation. In the event any Registrable Securities are included in a Registration Statement, the Corporation will indemnify and hold harmless to the fullest extent permitted by law each Participating Holder, the officers, directors, agents, partners, members, managers, stockholders, Affiliates and employees of each of them, each Person who controls any such Participating Holder (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act) and the officers, directors, partners, members, managers, stockholders, agents and employees of each such controlling Person (collectively, "Corporation Indemnified Parties") from and against any and all losses, claims, damages, expenses (including, without limitation, reasonable costs of investigation and fees, reasonable disbursements and other charges of counsel (subject to Section 1.8(c)), any amounts paid in settlement effected with the Corporation's consent, and any costs reasonably incurred in enforcing the Corporation's indemnification obligations hereunder) or other liabilities (collectively, "Losses") to which any such Corporation Indemnified Party may become subject under the Securities Act or the Exchange Act insofar as such Losses (or actions or proceedings, whether commenced or threatened, in respect thereof) are resulting from or arising out of or based upon any untrue, or alleged untrue, statement

of a material fact contained in any Registration Statement, including any prospectus or preliminary prospectus contained therein or any amendments or supplements thereto, any free writing prospectuses (as defined in Rule 405 under the Securities Act or any successor rule thereto) or any document incorporated by reference in any of the foregoing or resulting from or arising out of or based upon any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein (in the case of a prospectus, preliminary prospectus or free writing prospectus, in the light of the circumstances under which they were made), not misleading and the Corporation will promptly reimburse each such Corporation Indemnified Party for any legal and any other Losses reasonably incurred in connection with investigating, preparing or defending any such claim, loss, damage, liability, action or investigation or proceeding; underlined provided, underlined however, that the Corporation shall not be liable to any Corporation Indemnified Party for any Losses that arise out of or are based upon any untrue statement or omission, made in conformity with written information provided by, or on behalf of, such Corporation Indemnified Party expressly for use in any Registration Statement, including any prospectus or preliminary prospectus contained therein or any amendments or supplements thereto, any free writing prospectuses (as defined in Rule 405 under the Securities Act or any successor rule thereto) or any document incorporated by reference in any of the foregoing. Such indemnity obligation shall remain in full force and effect regardless of any investigation made by or on behalf of the Corporation Indemnified Parties and shall survive the transfer of Registrable Securities by such Corporation Indemnified Parties.

(b)      <u>Indemnification by Participating Holders</u>. In connection with any proposed registration in which a Holder is participating pursuant to this Agreement, each such Participating Holder agrees, severally and not jointly, to indemnify and hold harmless the Corporation, each other Participating Holder, their directors, officers, agents and employees, each Person who controls the Corporation or any other Participating Holder (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act), and the directors, officers, agents or employees of such controlling Persons (collectively, "<u>Holder Indemnified Parties</u>") to the same extent as the foregoing indemnity from the Corporation to the Participating Holders as set forth in <u>Section 1.8(a)</u> (subject to the exceptions set forth in the foregoing indemnity, the proviso to this sentence and applicable law), but only with respect to any such untrue statement or omission that is contained in the information relating to such Participating Holder furnished in writing to the Corporation by such Participating Holder expressly for use in such Registration Statement; <u>provided</u>, <u>however</u>, that the obligation to indemnify under this subsection 1.8(b) shall be several, not joint and several, among the Participating Holders, and the total liability of any Participating Holder under this <u>Section 1.8(b)</u> shall be limited to the amount of the net proceeds actually received by such Participating Holder in the offering giving rise to such liability. Such indemnity obligation shall remain in full force and effect regardless of any investigation made by or on behalf of the Holder Indemnified Parties and shall survive the transfer of Registrable Securities by such Participating Holder.

(c)      <u>Conduct of Indemnification Proceedings</u>. Any Person entitled to indemnification hereunder (the "<u>Indemnified Party</u>") agrees to give prompt (but in any event within 30 days after such Person has actual knowledge of the facts constituting the basis for indemnification) written notice to the indemnifying party (the "<u>Indemnifying Party</u>") after the receipt by the Indemnified Party of any written notice of the commencement of any action, suit, proceeding or investigation or threat thereof made in writing for which the Indemnified Party intends to claim indemnification or contribution pursuant to this Agreement; <u>provided</u>, <u>however</u>, that the failure so to notify the Indemnifying Party shall not relieve the Indemnifying Party of any liability that it may have to the Indemnified Party hereunder unless and to the extent such Indemnifying Party is materially prejudiced by such failure. If notice of commencement of any such action is given to the Indemnifying Party as above provided, the Indemnifying Party shall be entitled to participate in and, to the extent it may wish, jointly with any other Indemnifying Party similarly notified, to assume the defense of such action at its own expense, with counsel chosen by it and reasonably satisfactory to such Indemnified Party. The Indemnified Party shall have the right to employ separate counsel in any such action and participate in the defense thereof, but the fees and expenses of such counsel

shall be paid by the Indemnified Party unless (i) the Indemnifying Party agrees to pay the same, (ii) the Indemnifying Party fails to assume the defense of such action within a reasonable time after receipt of notice of such claim from the Person entitled to indemnification hereunder and employ counsel satisfactory to the Indemnified Party in its reasonable judgment, (iii) the Indemnified Party reasonably believes that the joint representation of the Indemnified Party and any other party in such proceeding (including but not limited to the Indemnifying Party) would be inappropriate under applicable standards of professional conduct, (iv) the Indemnified Party has reasonably concluded, based on the advice of counsel, that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Indemnifying Party or (v) in the reasonable judgment of any such Person, based upon advice of counsel, a conflict of interest may exist between such Person and the Indemnifying Party with respect to such claims (in which case, if such Person notifies the Indemnifying Party in writing that such Person elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such claim on behalf of such Person). No Indemnifying Party shall be liable for any settlement entered into without its written consent. No Indemnifying Party shall, without the written consent of the Indemnified Party, effect the settlement or compromise of, or consent to the entry of any judgment with respect to, any pending or threatened action or claim in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party is an actual or potential party to such action or claim) unless such settlement, compromise or judgment (A) includes an unconditional release of the Indemnified Party from all liability arising out of such action or claim and (B) does not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of any Indemnified Party. The rights afforded to any Indemnified Party hereunder shall be in addition to any rights that such Indemnified Party may have at common law, by separate agreement or otherwise.

(d)     Contribution. If the indemnification provided for in this Section 1.8 from the Indemnifying Party is unavailable or insufficient to hold harmless an Indemnified Party in respect of any Losses referred to herein, then each Indemnifying Party, in lieu of indemnifying such Indemnified Party, shall contribute to the amount paid or payable by such Indemnified Party as a result of such Losses, in such proportion as is appropriate to reflect the relative fault of the Indemnifying Party and Indemnified Party in connection with the actions, statements or omissions that resulted in such Losses as well as any other relevant equitable considerations. The relative faults of the Indemnifying Party and Indemnified Party shall be determined by reference to, among other things, whether any action in question, including any untrue or alleged untrue statement of a material fact or omission or alleged omission to state a material fact, was made by, or relates to information supplied by, such Indemnifying Party or Indemnified Party, and the Indemnifying Party's and Indemnified Party's relative intent, knowledge, access to information and opportunity to correct or prevent such action; provided, however, that the liability of any Holder under this Section 1.8(d) shall be limited to the amount of the net proceeds actually received by such Holder in the offering giving rise to such liability. The amount paid or payable by a party as a result of the Losses or other liabilities referred to above shall be deemed to include, subject to the limitations set forth in Section 1.8(a), Section 1.8(b) and Section 1.8(c), any legal or other fees, charges or expenses reasonably incurred by such party in connection with any investigation or proceeding. The Parties hereto agree that it would not be just and equitable if contribution pursuant to this Section 1.8(d) were determined by *pro rata* allocation or by any other method of allocation which does not take account of the equitable considerations referred to in the immediately preceding paragraph. No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution pursuant to this Section 1.8(d) from any Person who was not guilty of such fraudulent misrepresentation.

(e)     The obligations of the Corporation and Holders under this Section 1.8 shall survive the completion of any offering of Registrable Securities pursuant to a registration statement under this Article I, and shall survive the termination of this Agreement.

**Section 1.9**    **Rule 144 and 144A; Other Exemptions**. If the Corporation has a class of equity securities registered under the Exchange Act, the Corporation shall take all actions reasonably necessary to enable Holders to sell Registrable Securities without registration under the Securities Act to the maximum extent permitted by the exemptions provided by (a) Rule 144 under the Securities Act (or any similar rule promulgated by the SEC then in force), as such Rule may be amended from time to time, (b) Rule 144A under the Securities Act (or any similar rule promulgated by the SEC then in force), as such Rule may be amended from time to time, or (c) any similar rules or regulations hereafter adopted by the Commission, including, without limiting the generality of the foregoing, filing on a timely basis all reports required to be filed under the Exchange Act. Upon the written request of any Holder, the Corporation shall deliver to such Holder a written statement as to whether it has complied with such requirements.

**Section 1.10**    **Certain Limitations On Registration Rights**. No Holder may participate in any Registration Statement hereunder involving an underwritten public offering unless such Holder completes and executes all questionnaires, powers of attorney, indemnities, underwriting agreements, and other documents reasonably required under the terms of the underwriting arrangements made in connection with such Registration Statement and agrees to sell such Holder's Registrable Securities on the basis provided in any underwriting agreement approved by the Holder or Holders entitled hereunder to approve such arrangements; provided, however, that no such Holder shall be required to make any representations or warranties to the Corporation or the underwriters in connection with any such registration other than representations and warranties as to (i) such Holder's ownership of its Registrable Securities to be sold or transferred, (ii) such Holder's power and authority to effect such transfer and (iii) such matters pertaining to compliance with securities laws or to undertake any indemnification obligations to the Corporation or the underwriters with respect thereto, except as otherwise provided in Section 1.8. Such Holders holding Registrable Securities to be sold by such underwriters may, at their option, require that any or all of the representations and warranties by, and the other agreements on the part of the Corporation to and for the benefit of such underwriters, shall also be made to and for the benefit of such Holders and that any or all of the conditions precedent to the obligations of the underwriters under the underwriting agreement be conditions precedent to the obligations of Holders.

**Section 1.11**    **Limitations on Subsequent Registration Rights**. The Corporation represents and warrants that it has not granted registration rights prior to the date hereof that remain in effect. If the Corporation shall at any time hereafter provide to any holder of any securities of the Corporation rights with respect to the registration of such securities under the Securities Act or the Exchange Act, such rights shall not be in conflict with or adversely affect any of the rights provided to Holders in, or conflict (in a manner that adversely affects Holders) with any other provisions included in, this Agreement.

**Section 1.12**    **Transfer of Registration Rights**. The rights of a Holder hereunder may be transferred or assigned in connection with any transfer of Registrable Securities if (i) such transfer is permitted under and accomplished in accordance with the requirements set forth in the Corporation's Third Amended and Restated Certificate of Incorporation, Amended and Restated Bylaws, Stockholders Agreement and applicable securities laws, (ii) the transferee or assignee after giving effect to the transfer, (a) beneficially owns, collectively with its Affiliates, five percent (5%) or more of the outstanding Common Stock or (b) other than solely as a result of holding Common Stock, is an Affiliate of the Corporation, and, in each of (a) or (b), becomes a party to this Agreement as a "Holder" in accordance with Section 1.13 of this Agreement and (iii) the Corporation is given written notice by such Holder of such transfer or assignment, stating the name and address of the transferee or assignee and identifying the Registrable Securities with respect to which such rights are being transferred or assigned; provided, that the rights and obligations that are assigned shall apply only to the Registrable Securities sold or transferred by a Holder, including any securities issued in respect of such Registrable Securities pursuant to clause (b) of the

definition of "Registrable Securities," but expressly excluding any other securities of the Corporation acquired by such assignee, including without limitation, pursuant to clause (a) of such definition.

Section 1.13    **Parties to Agreement**. The parties (collectively, the "Parties") to this Agreement shall be (i) the Corporation, (ii) each of the holders of Registrable Securities registered on the books of the Transfer Agent as of the opening of business on the Effective Date, each of which, pursuant to Section 2.14, is deemed to have entered into this Agreement pursuant to the Plan regardless of whether such holder has actually executed this Agreement, and (iii) any Person who is a permitted transferee of Registrable Securities pursuant to Section 1.12 hereof that (A) provides written notice of its election to become party to this Agreement to the Corporation in accordance with Section 2.3 hereof within fifteen (15) days after the date of any transfer pursuant to Section 1.12, and (B) in connection therewith promptly executes and returns to the Corporation a counterpart signature page to this Agreement. The Corporation shall furnish, without charge, to each Person referred to in the immediately preceding sentence a copy of this Agreement upon written request to the Corporation in accordance with Section 2.3 hereof.

Section 1.14    **Number of Registrable Securities Outstanding**. In order to determine the number of Registrable Securities outstanding at any time, upon the written request of the Corporation to Holders, each Holder shall promptly inform the Corporation of the number of Registrable Securities that such Holder owns and that the Corporation may conclusively rely upon any certificate provided under this Agreement for the purpose of determining the number of such Registrable Securities.

Section 1.15    **Alternative IPO Entities**. In the event that the Corporation elects to effect an underwritten registered offering of equity securities of any subsidiary or parent of the Corporation (collectively, "Alternative IPO Entities") rather than the equity securities of the Corporation, whether as a result of a reorganization of the Corporation or otherwise, the Parties shall cause the Alternative IPO Entity to enter into an agreement with the Parties that provides the Parties with registration rights with respect to equity securities of the Alternative IPO Entity that such Parties beneficially own that are substantially the same as, and in any event no less favorable in the aggregate to, the registration rights provided to the Parties in this Agreement.

## ARTICLE II

## GENERAL PROVISIONS

Section 2.1    **Entire Agreement**. This Agreement, together with the Third Amended and Restated Certificate of Incorporation, Amended and Restated Bylaws, Stockholders Agreement, and any certificates, documents, instruments and writings that are delivered pursuant hereto, constitutes the entire agreement and understanding of the Parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

Section 2.2    **Assignment; Binding Effect; No Third Party Beneficiaries**. No party may assign either this Agreement or any of its rights, interests, remedies, liabilities, or obligations hereunder (i) without the prior written approval of the other parties or (ii) except in accordance with the express provisions of this Agreement. All of the terms, agreements, covenants, representations, warranties, and conditions of this Agreement are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and permitted assigns. Nothing expressed or implied in this Agreement is intended or will be construed to confer upon or give any Person, other than the parties hereto, and their successors and permitted assigns, any right or remedies under or by reason of this Agreement.

**Section 2.3**      **Notices**. All notices, requests and other communications provided for or permitted to be given under this Agreement must be in writing and be given by personal delivery, by certified or registered United States mail (postage prepaid, return receipt requested), by a nationally-recognized overnight delivery service for next day delivery, or by e-mail of a PDF document (with confirmation of transmission), as follows (or to such other address as any party may give in a notice given in accordance with the provisions hereof):

If to any Holder, at its last known address appearing on the books of the Corporation maintained for such purpose.

If to the Corporation, at

> WeWork Inc.
> 71 5th Avenue, 2nd Floor
> New York, NY 10003
> E-mail:  legal@wework.com
> Attention:  Pamela Swidler, Chief Legal Officer

All notices, requests or other communications will be effective and deemed given only as follows: (i) if given by personal delivery, upon such personal delivery, (ii) if sent by certified or registered mail, on the fifth (5th) Business Day after being deposited in the United States mail, (iii) if sent for next day delivery by overnight delivery service, on the date of delivery as confirmed by written confirmation of delivery, and (iv) if sent by e-mail, upon the transmitter's confirmation, except that if such confirmation as required by (i) through (iv) above is received after 5:00 p.m. (in the recipient's time zone) on a Business Day, or is received on a day that is not a Business Day, then such notice, request or communication will not be deemed effective or given until the next succeeding Business Day. Notices, requests, and other communications sent in any other manner will not be effective.

If any time period for giving notice or taking action hereunder expires on a day which is a Saturday, Sunday or legal holiday in the State of New York or the jurisdiction in which the Corporation's principal office is located, the time period shall automatically be extended to the Business Day immediately following such Saturday, Sunday or legal holiday.

**Section 2.4**      **Specific Performance; Remedies**. Each party acknowledges and agrees that the other parties would be damaged irreparably if any provision of this Agreement were not performed in accordance with its specific terms or were otherwise breached and the Corporation agrees that it shall not oppose any such demand for specific performance on the basis that monetary damages are available. Accordingly, the Parties will be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and its provisions in any action or proceeding instituted in any court of the United States or any state thereof having jurisdiction over the Parties and the matter, in addition to any other remedy to which they may be entitled, at law or in equity. Except as expressly provided herein, the rights, obligations and remedies created by this Agreement are cumulative and in addition to any other rights, obligations or remedies otherwise available at law or in equity. Except as expressly provided herein, nothing herein will be considered an election of remedies.

**Section 2.5**      **Submission to Jurisdiction; Waiver of Jury Trial**.

(a)      **Submission to Jurisdiction**. Any action, suit or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be heard and determined exclusively in the Court of Chancery of the State of Delaware and any state appellate court therefrom within the State of Delaware (or if the Court

of Chancery of the State of Delaware does not have subject matter jurisdiction, any federal court within the State of Delaware and the appellate court(s) therefrom), and each party consents to the exclusive jurisdiction and venue of such courts in any such action, suit or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such, action, suit or proceeding brought in any such court or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. Process in any such action, suit or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

(b)      <u>Waiver of Jury Trial</u>. EACH PARTY ACKNOWLEDGES THAT ANY DISPUTE THAT MAY ARISE OUT OF OR RELATING TO THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE SUCH PARTY HEREBY EXPRESSLY WAIVES ITS RIGHT TO JURY TRIAL OF ANY DISPUTE BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY OTHER AGREEMENTS RELATING HERETO OR ANY DEALINGS AMONG THEM RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY. THE SCOPE OF THIS WAIVER IS INTENDED TO ENCOMPASS ANY AND ALL ACTIONS, SUITS AND PROCEEDINGS THAT RELATE TO THE SUBJECT MATTER OF THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. EACH PARTY REPRESENTS THAT (i) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) SUCH PARTY UNDERSTANDS AND WITH THE ADVICE OF COUNSEL HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (iii) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (iv) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND REPRESENTATIONS IN THIS <u>SECTION 2.5(b)</u>.

**Section 2.6      <u>Governing Law</u>**. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice of law principles.

**Section 2.7      <u>Headings</u>**. The article and section headings contained in this Agreement are inserted for convenience only and will not affect in any way the meaning or interpretation of this Agreement.

**Section 2.8      <u>Amendments; Waivers</u>**. Any term of this Agreement may be amended, modified or terminated and the observance of any term of this Agreement may be waived (either generally or in a particular instance, and either retroactively or prospectively) only with the written consent of the Corporation and Holders holding at least sixty-six and two-thirds percent (66-2/3%) of the then-outstanding Registrable Securities held by all Holders; <u>provided</u>, that any provision hereof may be waived by any waiving party on such party's own behalf, without the consent of any other party; and <u>provided</u>, <u>further</u>, that the Corporation may from time to time add additional Holders as parties to this Agreement through the execution of, in each case, a counterpart signature page to this Agreement, pursuant to <u>Section 1.13</u>, without the consent of the other parties. Notwithstanding the foregoing:

(a)      this Agreement may not be amended, modified, or terminated and the observance of any term hereunder may not be waived with respect to any Holder without the written consent of such Holder, if such amendment, modification, termination, or waiver would materially, adversely, and disproportionately affect the rights of such Holder as compared to the other Holders generally under this Agreement;

(b)      this Agreement may not be amended, modified or terminated and the observance of any term hereunder may not be waived with respect to any group of Holders without the written consent of a majority-in-interest of such group of Holders, if such amendment, modification, termination or waiver would materially, adversely and disproportionately affect the rights of such group of Holders as compared to the other Holders or other group of Holders generally under this Agreement;

(c)      during such time or times as the AHG Director is then seated, the provisions of Section 1.2 and Section 1.3 may not be amended, modified or terminated and the observance of any term thereunder may not be waived with respect to any of the Holders who are also AHG Stockholders ("AHG Holders") without the written consent of the AHG Director, if such amendment, modification, termination or waiver would adversely affect the rights of the AHG Holders thereunder; and

(d)      in the case of any amendment, modification or waiver of any warranty, covenant, obligation or other provision of this Agreement relating only to a particular Registration Statement which has been filed with the SEC, only the written consent of Holders holding at least a majority of the Registrable Securities held by the Participating Holders relating to that Registration Statement will be required.

The Corporation shall give prompt notice of any amendment, modification or termination hereof or waiver hereunder to any party hereto that did not consent in writing to such amendment, modification, termination, or waiver, solely to the extent such amendment, modification, or termination is applicable with respect to such party. Any amendment, modification, termination, or waiver effected in accordance with this Section 2.8 shall be binding on all parties hereto, regardless of whether any such party has consented thereto.

No waiver by any party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, may be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising because of any such prior or subsequent occurrence. Neither the failure nor any delay on the part of any party to exercise any right or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy preclude any other or further exercise of the same or of any other right or remedy.

Section 2.9      **Severability**. The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof; provided, that if any provision of this Agreement, as applied to any party or to any circumstance, is judicially determined not to be enforceable in accordance with its terms, the Parties agree that the court judicially making such determination may modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its modified form, such provision will then be enforceable and will be enforced.

Section 2.10      **Counterparts; Effectiveness**. This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the Parties and delivered to the other parties.

Section 2.11      **Construction**. This Agreement has been freely and fairly negotiated among the Parties. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement. Any reference to any law will be deemed to refer to such law as in effect on the date hereof and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include," "includes," and

"including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine, and neuter genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The Parties intend that each representation, warranty, and covenant contained herein will have independent significance. If any party has breached any covenant contained herein in any respect, the fact that there exists another covenant relating to the same subject matter (regardless of the relative levels of specificity) which the party has not breached will not detract from or mitigate the fact that the party is in breach of the first covenant.

     **Section 2.12      Termination of Registration Rights**. This Agreement, including, without limitation, the Corporation's obligations under Sections 1.2 and 1.3 hereof to register Registrable Securities for sale under the Securities Act shall terminate (i) with respect to any Holder, at such time as such Holder has no Registrable Securities and (ii) in full and be of no further effect at such time as there are no Registrable Securities held by any Holders. Notwithstanding any termination of this Agreement pursuant to this Section 2.13, the Parties' rights and obligations under Sections 1.7 and 1.8 and Article II hereof shall continue in full force and effect.

     **Section 2.13      Aggregation of Registrable Securities**. All Registrable Securities owned or acquired by any Holder or its Affiliated entities or persons (assuming full conversion, exchange and exercise of all convertible, exchangeable and exercisable securities into Registrable Securities) shall be aggregated together for the purpose of determining the availability of any right under this Agreement.

     **Section 2.14      Deemed Execution; Effectiveness**. On the Effective Date, pursuant to the Plan and the Confirmation Order, each Person who receives any Registrable Securities pursuant to the Plan or in connection with any of the transactions contemplated thereby shall be deemed to have entered into this Agreement, regardless of whether any such holder has executed this Agreement, and this Agreement shall be deemed to be a valid, binding and enforceable obligation of such Person (including any obligation set forth herein to waive or refrain from exercising any appraisal, dissenters or similar rights) even if such Person has not actually executed and delivered a counterpart hereof.

**[SIGNATURE PAGES FOLLOW]**

*Draft 5.26.24*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**CORPORATION:**                                     WeWork Inc.


By:_____
Name: [●]
Title: [●]

*Draft 5.26.24*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**HOLDER:**                              [●]


By:_____
Name: [●]
Title: [●]

**<u>Exhibit D-6</u>**

**List of New Board Members**

**List of New Board Members**

As of the Effective Date, the terms of the current members of the board of directors of WeWork Inc. shall expire and the new directors of Reorganized WeWork (the "Reorganized WeWork Board") shall be appointed. The Reorganized WeWork Board, which, for the avoidance of doubt, will also include the Chief Executive Officer and a seventh board member whose identity will be disclosed at a date prior to the Combined Hearing, will consist of the following members:

| Name and Position | Biography |
|---|---|
| Anant Yardi, *Director, Yardi Appointment* | Anant Yardi is the founder and CEO of Yardi Systems. In the early 1980s, Mr. Yardi recognized a gap in the market for integrated real estate software. Leveraging his programming expertise, he designed Basic Property Management for the Apple II in 1984. This marked the beginning of Yardi Systems, a company Mr. Yardi has steered through 40 years of continuous growth driven by a focus on technology innovation and client collaboration. He has been recognized for his pioneering role in the real estate automation process and his leadership skills with Lifetime Achievement Awards from the Realcomm Conference Group and the National Multifamily Housing Council, along with multiple Glassdoor Employees' Choice Awards for being one of the top-rated CEOs in the U.S. Mr. Yardi holds an M.A. in engineering from the University of California at Berkeley and a B.Tech from the Indian Institute of Technology Delhi. |
| Adnan Ahmad, *Director, Yardi Appointment* | Adnan Ahmad is an advisor to Yardi Systems. Previously, Mr. Ahmad served as Managing Director at Willoughby Capital, where he oversaw public and private investments across software, consumer and financial services sectors. Prior to Wiloughby, Mr. Ahmad was a Principal at Roystone Capital where he managed long/short equity and credit investments. Mr. Ahmad began his career at Bain & Company in 2008, before moving to Bain Capital private equity in 2010 and Tremblant Capital in 2012. Mr. Ahmad received his Bachelor of Arts from the Johns Hopkins University in 2007 and was a Fulbright Scholar. |
| Arnie Brier *Director, Yardi Appointment* | Arnold Brier is the Senior Vice President, General Counsel for Yardi Systems. He joined Yardi in 2011 with 25 years of experience in corporate and commercial real estate law. He currently leads the Yardi legal and human resource departments, oversees key operational areas, and manages Yardi's M&A efforts. Previously, Mr. Brier was a shareholder at a national law firm, leading the firm's California corporate department. His professional experience also includes serving as general counsel for technology companies and senior counsel for a Fortune 5 company. Mr. Brier earned his J.D. from the University of Michigan and his B.A. in Economics from the University of California, Los Angeles. |
| Daniel Ehrmann *Director, Ad Hoc Group Appointment* | Daniel Ehrmann is a Partner and Head of Restructuring at King Street. He is based in New York and is a member of the Management Committee. Prior to joining King Street in 2015, Daniel was a Partner in the |

*Draft 5.26.24*

| | |
|---|---|
| | restructuring practice at Alvarez & Marsal. Prior to Alvarez & Marsal, Daniel held Associate positions in the M&A practices of Cleary, Gottlieb, Steen & Hamilton as well as at Salès Vincent & Associés. Daniel received a L.L.M. in Corporation Law from New York University School of Law, a post graduate degree in Business and Economic Law (DEA en droit des Affaires et Droit Economique) from Sorbonne Paris I University, and a Masters in Commercial Law (Maitrise en Droit des Affaires et Droit Fiscal des Societes, J.D. equivalent) in Business Law from Assas Paris II University. |
| Jagannath Iyer<br>*Director, SoftBank Appointment* | Jagannath Iyer is a Partner at SoftBank Investment Advisers focusing on debt and equity capital markets. Jagannath's experience at SoftBank includes debt financing, structured equity financings, spin-outs, private M&A, financial restructurings and a board seat in a private Vision Fund 2 portfolio company. Prior to joining SoftBank in 2020, Jagannath worked as a lawyer specializing in leveraged finance and equity derivatives at Weil Gotshal & Manges and Allen & Overy. Jagannath holds a Masters in Law & Economics from Erasmus University Rotterdam and a B.A., LL.B (Honours) degree from the National Law School of India University, Bangalore. |

## **Exhibit G**

### **Schedule of Go-Forward Guaranty Claims**

Certain documents, or portions thereof, contained in this **Exhibit G** and the Plan Supplement remain subject to continued review and comment by the Debtors and the Consenting Stakeholders in accordance with the consent rights set forth in the Plan and the RSA. The respective rights of the Debtors and the Consenting Stakeholders are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court, and no consent of the Required Consenting Stakeholders has been given or shall be presumed or deemed to have been given by the Required Consenting Stakeholders as a result of or in connection with the filing of this **Exhibit G**; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

"*Go-Forward Guaranty Claims*" means the Claims and/or guarantees in favor of any creditor on account of a Debtor's guaranty obligation under any leases for nonresidential real property, solely to the extent such guaranty obligation is associated with: (a) an Unexpired Lease that is assumed by any Debtor, in which case such guaranty obligation shall be Reinstated pursuant to the terms of such assumption (including any applicable modification approved therein) and any adequate assurance of future performance provided in connection with such assumption; and/or, without limiting the foregoing, (b) an international lease that is identified in an exhibit to the Plan Supplement or identified via written notice provided by the Debtors (or the Reorganized Debtors) to such creditor at any time on or after the Effective Date; provided that the identification of such international leases shall be subject to the consent of the Required Lenders and the Required Consenting Stakeholders and limited to those international leases that the Debtors believe are necessary for the business operations of any of the Debtors, their Affiliates, or franchisees.

Pursuant to Article III.B.11 of the Plan, each Allowed Go-Forward Guaranty Claim shall be Reinstated. Accordingly, Holders of Allowed Go-Forward Guaranty Claims are Unimpaired and are conclusively presumed to have accepted the Plan.

## **Exhibit H**

### **UCC Settlement Trust Documents**

Certain documents, or portions thereof, contained in this **Exhibit H** and the Plan Supplement remain subject to continued review and comment by the Debtors, the Creditors' Committee, and the Consenting Stakeholders in accordance with the consent rights set forth in the Plan and the RSA.  The respective rights of the Debtors, the Creditors Committee, and the Consenting Stakeholders are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court, and no consent of the Required Consenting Stakeholders has been given or shall be presumed or deemed to have been given by the Required Consenting Stakeholders as a result of or in connection with the filing of this **Exhibit H**; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

## **Exhibit H-1**

**UCC Settlement Trust Agreement**

## GUC Trust Agreement and Declaration of Trust

This GUC Trust Agreement and Declaration of Trust (the "<u>Agreement</u>"), dated as of [•], 2024, is made by and among WeWork Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1], Entity Services (SPV), LLC (the "<u>Trustee</u>," and together with the Debtors, each, a "<u>Party</u>" and collectively, the "<u>Parties</u>").

### RECITALS

1.  On November 6, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"), and their chapter 11 cases are being jointly administered as *In re WeWork Inc., et al.*, Case No. 23-19865 (JKS).

2.  On or about November 16, 2023, the United States Trustee for the District of New Jersey (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors [Docket No. 150] (the "<u>Creditors' Committee</u>").

3.  On April 29, 2024, the Bankruptcy Court entered the *Order (A) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1787] (the "<u>Conditional DS Order</u>").[2] On May 1, 2024, the Debtors filed the solicitation versions of the (a)

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

[2]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Conditional DS Order (as defined herein), the Plan (as defined herein), the Disclosure Statement (as defined herein), the Disclosure Statement Supplement (as defined herein), or the Confirmation Order (as defined herein), as applicable.

1

*Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1816] (as may be modified, amended, or supplemented from time, the "Plan") and (b) *Third Amended Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1816] (the "Disclosure Statement").

4.      On [•], the Bankruptcy Court entered an order ("Confirmation Order") [Docket No. [•]] confirming the Plan, which became effective on [•] ("Effective Date").

5.      Articles I, IV and IX of the Plan provides for the creation of the UCC Settlement Trust (the "Trust") on the Effective Date of the Plan.

6.      The Plan provides for the establishment of the Trust for the benefit of Holders of Allowed Class 6 3L Notes Claims and Allowed Class 8 General Unsecured Claims entitled to distributions from the UCC Settlement Proceeds (collectively, the "Beneficiaries").

7.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (as defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, and the Confirmation Order, and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

8.      Pursuant to the Plan, the Trust (other than with respect to any Disputed Ownership Fund ("DOF")) is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-679 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).  For the avoidance of doubt, the decision to elect whether or

2

not to have the Disputed Claim Reserve (as defined below) treated as a DOF for tax purposes shall be determined by the Trustee in its sole discretion and nothing in this Trust Agreement or the Plan shall be construed otherwise.

9.     Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the UCC Settlement Proceeds, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as defined in the Plan), to the Trust as a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the Trust in exchange for their pro rata share of the Trust Interests,[3] and to treat the Beneficiaries as the grantors and owners of the Trust Assets for federal income tax purposes, except with respect to any DOF.

---

[3]     "Trust Interests" means, collectively, non-certificated beneficial interests in the Trust granted to each Holder of Allowed 3L Notes Claims and Allowed General Unsecured Claims, which shall entitle such Holder to their share of the UCC Settlement Proceeds, subject to the terms of the Plan and this Agreement.

10.     In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Articles I, IV and IX of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, the Trust shall be established and, all the UCC Settlement Proceeds shall automatically be transferred to and vest in the Trust, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as

4

defined in the Plan), free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided in the Plan or this Agreement, and shall comprise Trust Assets (as defined below) for all purposes;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the UCC Settlement Proceeds, any claims, causes of action or objections relating to any Disputed General Unsecured Claim, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, the "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and the Plan, solely for the benefit of the Beneficiaries and to the Reorganized Debtors for a limited purpose and as more fully set forth in the Plan, and this Agreement, for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2    [Conflict Among Plan Documents.  In the event of any inconsistency between the Plan, the Confirmation Order, and this Agreement, the Plan or Confirmation Order, as applicable, shall control.]

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>.    This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "WeWork Settlement Trust."

2.2     <u>Purpose of Trust</u>.    The Debtors and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust in furtherance of the UCC Settlement and for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     <u>Transfer of Trust Assets</u>.

2.3.1     <u>Conveyance of Trust Assets</u>.    Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, for the benefit of the Beneficiaries, the UCC Settlement Proceeds, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the

6

Professionals retained by the Creditors' Committee (each as defined in the Plan), to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries, which shall, together with any and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon, comprise Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan. None of the Debtors shall have any further obligations with respect to the Allowed 3L Notes Claims or Allowed General Unsecured Claims under the Plan or the distribution or payment of any proceeds of the Trust Assets to any of the Beneficiaries upon the transfer of the Trust Assets to the Trust in accordance with this Agreement and the Plan, except that the Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action reasonably requested by the Trustee as may be necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan, and/or the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2  <u>Title to Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually imposed restrictions, and other interests, except as specifically provided in the Plan or this Agreement, and such transfer is for the benefit of the Beneficiaries to establish the Trust. The

7

Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue, settle and/or resolve any litigation related to the Disputed General Unsecured Claims, and assert and/or and exercise any and all rights of setoff and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all Holders of Disputed General Unsecured Claims, in each case, in accordance with the terms of the Plan and this Agreement.  Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets.  On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets and administration of 3L Notes Claims and General Unsecured Claims.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust in accordance with this Agreement and the Plan, and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without the need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such aforementioned property as Trust Assets, to be held in trust for the benefit of the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4    <u>Capacity of Trust</u>.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all

8

adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     <u>Cooperation of Debtors</u>.    The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Trust Assets and of creditors' 3L Notes Claims and General Unsecured Claims; *provided* that the Debtors shall not be required to incur any out-of-pocket costs and expenses, including attorneys' fees, without reimbursement from the Trust.    The Trustee may request an updated Claims Register from the Claims Agent within thirty (30) days after the Effective Date and, upon request, the Debtors shall instruct the Claims Agent to make such register available to the Trustee.

2.6     <u>No Retention of Excess Cash</u>.    Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet 3L Notes Claims, General Unsecured Claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to Sections 3 and/or Section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7     <u>Acceptance by Trustee</u>.    The Trustee accepts its appointment as Trustee of the Trust.

## ARTICLE III

## ADMINISTRATION OF TRUST

3.1     <u>Rights, Powers, and Privileges of Trustee Generally</u>.    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the UCC

Settlement Proceeds are transferred to the Trust and become Trust Assets, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.2    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.3    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement, unless otherwise specifically limited or restricted by the Plan or this Agreement.

3.4    <u>Powers of Trustee</u>.  Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in

its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

   3.4.1 hold legal title to the Trust Assets and to any and all rights of the Debtors (or Reorganized Debtors as applicable) and the Beneficiaries in or arising from the Trust Assets;

   3.4.2 receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of Section 3.6 hereof;

   3.4.3 open and maintain bank accounts on behalf of or in the name of the Trust;

   3.4.4 cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

   3.4.5 collect and liquidate all Trust Assets, including the sale of any Trust Assets;

   3.4.6 protect and enforce the rights to the Trust Assets vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

   3.4.7 review, reconcile, compromise, settle, or object to General Unsecured Claims of any kind, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

   3.4.8 cause the Trust to employ or retain professionals, a Distribution Agent, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.4.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities (including any taxes imposed on any DOF), and make all other payments relating to the Trust Assets, solely out of Trust Assets;

3.4.10  cause the Trust to review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue all Disputed General Unsecured Claims pursuant to the terms of the Plan and this Agreement;

3.4.11  calculate, authorize and make all distributions to the Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.4.12  establish, adjust, and maintain a reserve for Disputed General Unsecured Claims (the "Disputed Claims Reserve");

3.4.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.4.14  in reliance upon the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, as may be amended or supplemented from time to time, the "Schedules") and the official Claims Register maintained in these chapter 11 cases, review, and where appropriate, cause the Trust to allow or object to General Unsecured Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims required to be administered by the Trust;

3.4.15  in reliance upon the Debtors' Schedules and the Claims Register maintained in these chapter 11 cases, maintain a register evidencing the Trust Interest herein held by each Beneficiary and, in accordance with Section 3.7 of this Agreement, such register may be the official Claims Register maintained in these chapter 11 cases;

3.4.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC sections 671-679 and Treasury Regulations section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust, *provided*, *however*, that nothing contained herein shall provide the Trustee with authority or responsibility to file any tax returns for the Debtors' (or Reorganized Debtors') estates, nor shall the Trust or the Trustee have any responsibility or liability in any capacity whatsoever for the filing of Debtors' (or Reorganized Debtors') income tax returns for any period either prior to or after the Effective Date;

3.4.17  cause the Trust to abandon or donate to a qualified section 501(c)(3) of the Tax Code charitable organization any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.4.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.4.19  cause the Trust to seek an expedited determination of tax liability or refund under section 505 of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Trust for all taxable periods through the termination of the Trust;

3.4.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.4.21  cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.22  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.4.23  exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement, as applicable; and

3.4.24  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.5    Abandonment.  Notwithstanding the foregoing, if, in the Trustee's reasonable judgment, any Trust Asset cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a qualified section 501(c)(3) of the Tax Code charitable organization.

3.6    <u>Responsibility for Administration of Claims</u>.  From and after the Effective Date, the Trust shall become responsible for administering and paying distributions to the Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims.  The Trust, acting by and through the Trustee, shall have the exclusive right to object to the allowance of any General Unsecured Claim on any ground, to file, withdraw or litigate to judgment objections to General Unsecured Claims, to settle or compromise any Disputed General Unsecured Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.[4]  The Trust, acting by and through the Trustee, shall also be entitled to assert all of the Debtors' and the Estates rights under, with respect to matters arising out of or relating to the Trust Assets or the Trust, section 558 of the Bankruptcy Code, and may seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.7    <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors or the Creditors' Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business.

---

[4]    For the avoidance of doubt, nothing in this Agreement restricts the ability of the Debtors to object to Claims that are not General Unsecured Claims.

3.8     <u>Safekeeping and Investment of Trust Assets</u>.   All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution on account of Allowed 3L Notes Claims and Allowed General Unsecured Claims or payment to the Beneficiaries except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any IRS guidelines (including Revenue Procedure 94-45), whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.9     <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and

disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a

claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update

the Claims Register maintained in the Chapter 11 Cases throughout the administration of the

Trust.  To the extent of any 3L Notes Claims or General Unsecured Claims reflected thereon, the

Claims Register may serve as the Trustee's register of Trust Interests held by Beneficiaries.  The

books and records maintained by the Trustee and any records of the Debtors transferred to the

Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines

that the continued possession or maintenance of such books and records is no longer necessary

for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of

the winding down or dissolution of the Trust.

       3.10    <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other

applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt

from giving any bond or other security in any jurisdiction and shall serve hereunder without

bond.  The Trustee is hereby authorized, but not required, to obtain all reasonable insurance

coverage for itself, its agents, representatives, employees or independent contractors, including,

without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee

and its agents, representatives, employees or independent contractors under this Agreement.  The

cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust

Assets.

# ARTICLE IV

## DISTRIBUTIONS

       4.1    <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of Trust Assets

to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate,

and distribute all Trust Assets, subject to the reserves deemed necessary by the Trustee pursuant to this Agreement.

4.1.1  <u>Distributions</u>.  The Trustee shall cause the Trust to make distributions of its net income (if any) plus all net proceeds from the sale of assets (if any), at least annually, to the Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude distributions to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims.

4.1.2  <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain a reserve in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with Section 3.4.12 of this Agreement, the Trust may also maintain as necessary the Disputed Claims Reserve with respect to Disputed General Unsecured Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to any General Unsecured Claim.  Any such withheld distribution shall become part of the Disputed Claims Reserve and shall be distributed to the appropriate Holder of an Allowed General Unsecured Claim no later than the first distribution date after a decision is made not to object to the pertinent General Unsecured Claim or the General Unsecured Claim becomes Allowed.  The Trustee need not maintain any of the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and

other funds of the Trust; *provided*, *however*, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.

4.1.4    <u>Right to Rely on Professionals</u>.   Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.2    <u>Method and Timing of Distributions</u>.   Distributions to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims will be made from the Trust in accordance with the terms of the Plan and this Agreement; *provided* that no disbursement or distribution shall be made from the Trust until after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as defined in the Plan).  The Trust may engage disbursing agents and other Persons to assist in making distributions.

4.3     <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.  All amounts properly withheld or deducted from distributions to the Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Beneficiary shall be treated as part of the Distribution to such Beneficiary.  To the extent that the operation of the Trust or the liquidation of the Trust Assets creates a tax liability imposed on the Trust, the Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Trust payable without Bankruptcy Court order.

4.4     <u>IRS Forms</u>.  The Trustee may require any Holder of a 3L Notes Claim or General Unsecured Claim to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan or this Agreement.  If a Holder of a 3L Notes Claim or General Unsecured Claim does not provide to the Trustee within ninety (90) days of written request with all documentation, that in the Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirement for such Allowed 3L Notes Claim or Allowed General Unsecured Claim, including a IRS Form W-8 or IRS Form W-9, the distribution on such Allowed 3L Notes Claim or Allowed General Unsecured Claim shall be deemed disallowed and expunged in its entirety and the funds shall become Trust Assets and

redistributed to the other Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims in accordance with the terms of the Plan and this Agreement.

4.5    <u>Unclaimed and Undeliverable Distributions</u>.  Unclaimed property, together with any distributions to Holders of Allowed 3L Notes Claim and Allowed General Unsecured Claims returned as undeliverable, such shall be held by the Trustee in an unclaimed property reserve (the "<u>Unclaimed Property Reserve</u>") for a period of ninety (90) days and may be released by the Trustee prior to the expiration of the ninety (90) days if presentation of proper proof by such holder of its entitlement thereto is presented to the Trustee.  After the expiration of the ninety (90) days, the respective Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims otherwise entitled to such unclaimed property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan or this Agreement, and (a) such Allowed 3L Notes Claims or Allowed General Unsecured Claims shall be deemed disallowed and expunged in their entirety; (b) the funds in respect of such unclaimed property shall become Trust Assets and shall revert to the Trust for all purposes including, but not limited to, for distribution to other Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims in accordance with the terms of the Plan, Confirmation Order and this Agreement, automatically and without any need for further order of the Bankruptcy Court; and (c) the corresponding Trust Interest of any Beneficiary holding a disallowed 3L Notes Claim or General Unsecured Claim shall be deemed cancelled.  Any such funds that revert to the Trust hereunder shall not be subject to the escheat, abandonment or unclaimed property laws of any federal, state, provincial or local government authority.

4.6    <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  If a distribution is returned to the Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be

made to such Beneficiary unless and until the Beneficiary notifies the Trustee of such Beneficiary's then-current address and taxpayer identification number. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.6.1    <u>Inapplicability of Escheat, Abandoned or Unclaimed Property Laws</u>. Unclaimed property held by the Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, or any state, provincial or local governmental unit.

4.7    <u>Request for Reissuance</u>.    Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Distribution checks not cashed within such ninety-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 4.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under Section 4.5 of this Agreement. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.8    <u>Conflicting Claims</u>.    If any conflicting claims or demands are made or asserted with respect to the Trust Interest of a Beneficiary, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

22

4.8.1    The Trustee may elect to cause the Trust to make no payment or distribution with respect to the Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.8.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the Trust Interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.9    In acting or refraining from acting under and in accordance with this Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

23

4.10   <u>Priority of Expenses of Trust</u>.   The Trust must pay all of its expenses before making any distributions in respect of any Allowed 3L Notes Claim or Allowed General Unsecured Claim.

**ARTICLE V**

**BENEFICIARIES**

5.1   <u>Interest Beneficial Only</u>.   The ownership of a Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2   <u>Ownership of Beneficial Interests Hereunder</u>.   Each Beneficiary shall own a Trust Interest herein which shall, subject to Section 4.1 of this Agreement and subject to the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan.

5.3   <u>Evidence of Beneficial Interest</u>.   Ownership of a Trust Interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4   <u>No Right to Accounting</u>.   Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.   Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

5.5   <u>No Standing</u>.   Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to

24

institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6     <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 5.6 shall not apply to any suit by the Trustee.

5.7     <u>Limitation on Transferability</u>.  It is understood and agreed that the Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8     <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Distributions.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan or in this Agreement.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee Liability.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's reasonable best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, Distribution Agent or other disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order of a court of competent jurisdiction (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.  In no event shall the Trustee be liable for indirect, punitive, special, incidental or

26

consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.3    No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4    Limitation of Debtors' Liability.  The Debtors or their respective successors shall have no liabilities or obligations to the Beneficiaries, the Trust, or the Trustee (each in its capacity as such), other than the liabilities and obligations expressly contemplated by the Plan.

6.5    Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.6    No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.7    No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order

27

of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was

grossly negligent in ascertaining the pertinent facts.

6.8     <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>.

Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon

any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order

or other paper or document believed by them to be genuine and to have been signed or presented

by the proper party or parties.  The Trustee also may engage and consult with its respective legal

counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or

suffered in reliance upon the advice of such counsel, agents, or advisors.

6.9     <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Trustee shall have the

right at any time to seek instructions from the Bankruptcy Court concerning the administration or

disposition of the Trust and 3L Notes Claims and the General Unsecured Claims required to be

administered by the Trust.  The Trustee shall not be liable for any act or omission that has been

approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be

deemed not to constitute fraud, gross negligence, or willful misconduct.

6.10    <u>No Personal Obligation for Trust Liabilities</u>.  Persons dealing with the Trustee

shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any

such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal,

individual obligation to satisfy any such liability.

6.11    <u>Indemnification</u>.  The Trustee and each of its respective accountants, agents,

assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors,

investment bankers, real estate brokers, transfer agents, independent contractors, managers,

members, officers, partners, predecessors, principals, professional persons, representatives,

affiliate, employer and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Trust and solely from the Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust or its Beneficiaries.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud.  The amounts necessary for the indemnification provided in this Section 6.11 (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section 6.11) shall be paid by the Trustee out of the Trust Assets.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee personally for the payment of any such expense or liability.  The indemnification provided in this Section 6.11 shall survive the death, dissolution, incapacity, resignation or removal of the Trustee, Indemnified Party or the termination of the Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

6.11.1  Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this Section 6.9 shall be expenses of the Trust.

The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.11.2  Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.9 on submission of invoices for such amounts by the Indemnified Party.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.11.

6.12  No Implied Obligations.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.13  Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## TAX MATTERS

30

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45 and transfer of the UCC Settlement Proceeds to the Trust shall be treated as a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Debtors to the Beneficiaries in satisfaction of their Allowed 3L Notes Claims and Allowed General Unsecured Claims, followed by a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the Trust in exchange for their pro rata Trust Interest.  The Beneficiaries shall be treated as the grantors and deemed owners of the Trust Assets (other than to the extent the Trust Assets are allocable to Disputed General Unsecured Claims) for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).  In addition, the Trustee shall file in a timely manner for the Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon.  The Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any Trust Assets allocable to Disputed General Unsecured Claims) will be allocated to the Beneficiaries in accordance with their relative ownership of Trust Interests.  Within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate

statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

7.3    <u>Payment of Taxes</u>.  The Trust shall be responsible for payment, from the Trust Assets, of any taxes imposed on the Trust (including any taxes imposed on any DOF) or the Trust Assets.  In accordance therewith, any taxes imposed on any DOF or its assets will be paid from the Trust Assets.

7.4    <u>Tax Treatment of Reserves for Disputed General Unsecured Claims</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any Disputed Claims Reserve, including filing a tax election to treat any and all Disputed Claims Reserves as a DOF within the meaning of Treasury Regulations section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust.  If an election is made to report any Disputed Claims Reserve as a DOF, (i) all parties (including the Trustee and the Holders of Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing and (ii) the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.5    <u>Valuation of Trust Assets</u>.  As soon as possible after the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall determine the fair market value of the UCC Settlement Proceeds, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not

occur until such point in time as final amounts have been determined (including in the case of

Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee,

until such point in time as final fee applications have been approved and Allowed) in respect of

(i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee

Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee

Claims of the Professionals retained by the Creditors' Committee (each as defined in the Plan),

as of the Effective Date, based on the Trustee's good faith determination and establish

appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used

consistently by all parties (including, without limitation, the Debtors or Reorganized Debtors as

applicable, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

8.1    Initial Trustee.  The Trustee has been selected by the Creditors' Committee and its

appointment is effective as of the Effective Date of the Plan.  The initial trustee shall be the

Trustee.

8.2    Term of Service.  The Trustee shall serve until (a) the completion of the

administration of the Trust Assets and the Trust, including the winding up of the Trust, in

accordance with this Agreement and the Plan; (b) termination and dissolution of the Trust in

accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death,

dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment

terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the

Trustee shall be immediately compensated for all reasonable fees and expenses accrued but

unpaid through the effective date of termination, whether or not previously invoiced.  The

provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3   <u>Removal of Trustee</u>.   Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.   The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4   <u>Resignation of Trustee</u>.   The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.   The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court.   In the event of a resignation, the resigning Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that Trustee.

8.5   <u>Appointment of Successor Trustee</u>.   Upon the resignation, death, dissolution, incapacity, liquidation or removal of a Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor trustee.   In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.   Any successor Trustee so appointed (a) shall consent to and accept his, her or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her or its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).   Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>.  The resignation, death, dissolution, incapacity, liquidation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any distribution to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee

hereunder, subject to the conditions and limitations of this Agreement, except as modified or

limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the

state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent

necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall

require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and

other property that may be received in connection with the administration of all property.  The

Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or

without cause, and appoint a successor Supplemental Trustee at any time by executing a written

instrument declaring such Supplemental Trustee removed from office and specifying the

effective date and time of removal.

### ARTICLE IX

### DURATION OF TRUST

9.1    <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan,

the Trust and this Agreement shall remain and continue in full force and effect until the Trust is

terminated.

9.2    <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>.

Upon the payment of all costs, expenses, and obligations incurred in connection with

administering the Trust, and the distribution of all Trust Assets in accordance with the provisions

of the Plan and this Agreement, the Trust shall terminate and dissolve and the Trustee shall have

no further responsibility in connection therewith except as may be required to effectuate such

termination under relevant law.

9.3    <u>Termination after Five Years</u>.  If the Trust has not been previously terminated and

dissolved pursuant to Section 9.2 hereof, no later than five (5) years from the Effective Date

(the "Termination Date"), the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall dissolve and terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement; *provided* that the Termination Date may be extended if the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets.

9.4     No Termination by Beneficiaries.  The Trust may not be terminated and dissolved at any time by the Beneficiaries.

9.5     Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trustee.   Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> Entity Services (SPV), LLC
> 251 Little Falls Drive
> Wilmington, DE 19808
> Attn: Michelle A. Dreyer (michelle.dreyer@cscglobal.com)
>
> with a copy to its counsel:
>
> [•]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.2.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

10.2.2    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.2.3    <u>Particular Words</u>.    Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The

words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.2.4    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order and this Agreement.

10.2.5    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.2.6    <u>No Waiver</u>.   No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.2.7    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to cause any relationship created by this Agreement to constitute an association, partnership or joint venture of any kind.

10.2.8    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.2.9    Further Assurances.  Without limitation of the generality of Section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

10.2.10   Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.2.11   Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to the administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these chapter 11 cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN  WITNESS  WHEREOF,  the  Parties  have  or  are  deemed  to  have  executed  this

Agreement as of the day and year written above.

WeWork Inc. and Affiliated Debtors

By: _____

Name: _____

Title: _____

Entity Services (SPV), LLC, not individually but
solely in its capacity as Trustee under this
Agreement

By: _____

Name: _____

Title: _____

## Exhibit H-1a

**Redline to Previously Filed
UCC Settlement Trust Agreement**

## GUC Trust Agreement and Declaration of Trust

This GUC Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [•], 2024, is made by and among WeWork Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1], Entity Services (SPV), LLC (the "Trustee," and together with the Debtors, each, a "Party" and collectively, the "Parties").

### Recitals

1.     On November 6, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re WeWork Inc., et al.*, Case No. 23-19865 (JKS).

2.     On or about November 16, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 150] (the "Creditors' Committee").

3.     On April 29, 2024, the Bankruptcy Court entered the *Order (A) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1787] (the "Conditional DS Order").[2] On May 1, 2024, the Debtors filed the solicitation versions of the (a)

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/WeWork.  The location of Debtor WeWork Inc.'s principal place of business is 12 East 49th Street, 3rd Floor, New York, NY 10017; the Debtors' service address in these chapter 11 cases is WeWork Inc. c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

[2]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Conditional DS Order (as defined herein), the Plan (as defined herein), the Disclosure Statement (as defined herein), the Disclosure Statement Supplement (as defined herein), or the Confirmation Order (as defined herein), as applicable.

*Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1816] (as may be modified, amended, or supplemented from time, the "Plan") and (b) *Third Amended Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of Reorganization of WeWork Inc. and Its Debtor Subsidiaries* [Docket No. 1816] (the "Disclosure Statement").

4.      On [•], the Bankruptcy Court entered an order ("Confirmation Order") [Docket No. [•]] confirming the Plan, which became effective on [•] ("Effective Date").

5.      Articles I, IV and IX of the Plan provides for the creation of the UCC Settlement Trust (the "Trust") on the Effective Date of the Plan.

6.      The Plan provides for the establishment of the Trust for the benefit of Holders of Allowed Class 6 3L Notes Claims and Allowed Class 8 General Unsecured Claims entitled to distributions from the UCC Settlement Proceeds (collectively, the "Beneficiaries").

7.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (as defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, and the Confirmation Order, and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

8.      Pursuant to the Plan, the Trust (other than with respect to any Disputed Ownership Fund ("DOF")) is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-679 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).  For the avoidance of doubt, the decision to elect whether or

2

not to have the Disputed Claim Reserve (as defined below) treated as a DOF for tax purposes shall be determined by the Trustee in its sole discretion and nothing in this Trust Agreement or the Plan shall be construed otherwise.

9.      Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the UCC Settlement Proceeds, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as defined in the Plan), to the Trust as a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the Trust in exchange for their pro rata share of the Trust Interests,[3] and to treat the Beneficiaries as the grantors and owners of the Trust Assets for federal income tax purposes, except with respect to any DOF.

---

[3]     "Trust Interests" means, collectively, non-certificated beneficial interests in the Trust granted to each Holder of Allowed 3L Notes Claims and Allowed General Unsecured Claims, which shall entitle such Holder to their share of the UCC Settlement Proceeds, subject to the terms of the Plan and this Agreement.

10.    In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Articles I, IV and IX of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, the Trust shall be established and, all the UCC Settlement Proceeds shall automatically be transferred to and vest in the Trust, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as

4

defined in the Plan), free and clear of all Claims, Liens, Interests, encumbrances, and

contractually imposed restrictions except as otherwise provided in the Plan or this Agreement,

and shall comprise Trust Assets (as defined below) for all purposes;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the UCC

Settlement Proceeds, any claims, causes of action or objections relating to any Disputed General

Unsecured Claim, and all other property held from time to time by the Trust under this

Agreement and any proceeds thereof and earnings thereon (collectively, the "Trust Assets") are

to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and

conditions set forth herein and the Plan, solely for the benefit of the Beneficiaries and to the

Reorganized Debtors for a limited purpose and as more fully set forth in the Plan, and this

Agreement, for no other party.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER
### DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2    [Conflict Among Plan Documents.  In the event of any inconsistency between the

Plan, the Confirmation Order, and this Agreement, the Plan or Confirmation Order, as

applicable, shall control.]

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1    <u>Effectiveness of Agreement; Name of Trust</u>.    This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "WeWork Settlement Trust."

2.2    <u>Purpose of Trust</u>.    The Debtors and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust in furtherance of the UCC Settlement and for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3    <u>Transfer of Trust Assets</u>.

2.3.1    <u>Conveyance of Trust Assets</u>.    Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, for the benefit of the Beneficiaries, the UCC Settlement Proceeds, which shall only occur after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the

Professionals retained by the Creditors' Committee (each as defined in the Plan), to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries, which shall, together with any and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon, comprise Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan.  None of the Debtors shall have any further obligations with respect to the Allowed 3L Notes Claims or Allowed General Unsecured Claims under the Plan or the distribution or payment of any proceeds of the Trust Assets to any of the Beneficiaries upon the transfer of the Trust Assets to the Trust in accordance with this Agreement and the Plan, except that the Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action reasonably requested by the Trustee as may be necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets.  The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan, and/or the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

       2.3.2   <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually imposed restrictions, and other interests, except as specifically provided in the Plan or this Agreement, and such transfer is for the benefit of the Beneficiaries to establish the Trust.  The

Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue, settle and/or resolve any litigation related to the Disputed General Unsecured Claims, and assert and/or and exercise any and all rights of setoff and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all Holders of Disputed General Unsecured Claims, in each case, in accordance with the terms of the Plan and this Agreement. Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets. On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets and administration of 3L Notes Claims and General Unsecured Claims. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust in accordance with this Agreement and the Plan, and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without the need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such aforementioned property as Trust Assets, to be held in trust for the benefit of the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4    <u>Capacity of Trust</u>. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all

8

adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5      Cooperation of Debtors.    The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Trust Assets and of creditors' 3L Notes Claims and General Unsecured Claims; *provided* that the Debtors shall not be required to incur any out-of-pocket costs and expenses, including attorneys' fees, without reimbursement from the Trust.    The Trustee may request an updated Claims Register from the Claims Agent within thirty (30) days after the Effective Date and, upon request, the Debtors shall instruct the Claims Agent to make such register available to the Trustee.

2.6      No Retention of Excess Cash.    Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet 3L Notes Claims, General Unsecured Claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to Sections 3 and/or Section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7      Acceptance by Trustee.    The Trustee accepts its appointment as Trustee of the Trust.

## ARTICLE III

## ADMINISTRATION OF TRUST

3.1      Rights, Powers, and Privileges of Trustee Generally.    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the UCC

9

Settlement Proceeds are transferred to the Trust and become Trust Assets, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.2    Power to Contract.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement, unless otherwise specifically limited or restricted by the Plan or this Agreement.

3.4    Powers of Trustee.  Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in

its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

       3.4.1   hold legal title to the Trust Assets and to any and all rights of the Debtors (or Reorganized Debtors as applicable) and the Beneficiaries in or arising from the Trust Assets;

       3.4.2   receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of Section 3.6 hereof;

       3.4.3   open and maintain bank accounts on behalf of or in the name of the Trust;

       3.4.4   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

       3.4.5   collect and liquidate all Trust Assets, including the sale of any Trust Assets;

       3.4.6   protect and enforce the rights to the Trust Assets vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

       3.4.7   review, reconcile, compromise, settle, or object to General Unsecured Claims of any kind, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

       3.4.8   cause the Trust to employ or retain professionals, a Distribution Agent, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.4.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities (including any taxes imposed on any DOF), and make all other payments relating to the Trust Assets, solely out of Trust Assets;

3.4.10 cause the Trust to review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue all Disputed General Unsecured Claims pursuant to the terms of the Plan and this Agreement;

3.4.11  calculate, authorize and make all distributions to the Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.4.12  establish, adjust, and maintain a reserve for Disputed General Unsecured Claims (the "Disputed Claims Reserve");

3.4.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.4.14  in reliance upon the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, as may be amended or supplemented from time to time, the "Schedules") and the official Claims Register maintained in these chapter 11 cases, review, and where appropriate, cause the Trust to allow or object to General Unsecured Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims required to be administered by the Trust;

12

3.4.15  in reliance upon the Debtors' Schedules and the Claims Register maintained in these chapter 11 cases, maintain a register evidencing the Trust Interest herein held by each Beneficiary and, in accordance with Section 3.7 of this Agreement, such register may be the official Claims Register maintained in these chapter 11 cases;

3.4.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC sections 671-679 and Treasury Regulations section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust, *provided*, *however*, that nothing contained herein shall provide the Trustee with authority or responsibility to file any tax returns for the Debtors' (or Reorganized Debtors') estates, nor shall the Trust or the Trustee have any responsibility or liability in any capacity whatsoever for the filing of Debtors' (or Reorganized Debtors') income tax returns for any period either prior to or after the Effective Date;

3.4.17  cause the Trust to abandon or donate to a qualified section 501(c)(3) of the Tax Code charitable organization any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.4.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.4.19 cause the Trust to seek an expedited determination of tax liability or refund under section 505 of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Trust for all taxable periods through the termination of the Trust;

3.4.20 cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.4.21 cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.22 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.4.23 exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement, as applicable; and

3.4.24 take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.5 _Abandonment_. Notwithstanding the foregoing, if, in the Trustee's reasonable judgment, any Trust Asset cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a qualified section 501(c)(3) of the Tax Code charitable organization.

3.6     <u>Responsibility for Administration of Claims</u>.  From and after the Effective Date,

the Trust shall become responsible for administering and paying distributions to the Holders of

Allowed 3L Notes Claims and Allowed General Unsecured Claims.  The Trust, acting by and

through the Trustee, shall have the exclusive right to object to the allowance of any General

Unsecured Claim on any ground, to file, withdraw or litigate to judgment objections to General

Unsecured Claims, to settle or compromise any Disputed General Unsecured Claims without any

further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses

of the Debtors and their Estates.[4]  The Trust, acting by and through the Trustee, shall also be

entitled to assert all of the Debtors' and the Estates rights under, with respect to matters arising

out of or relating to the Trust Assets or the Trust, section 558 of the Bankruptcy Code, and may

seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.7     <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult

with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the

Trustee believes have qualifications necessary to assist in the administration of the Trust,

including professionals previously retained by the Debtors or the Creditors' Committee.  For the

avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall

limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the

Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable

salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of

business.

---

[4]     For the avoidance of doubt, nothing in this Agreement restricts the ability of the Debtors to object to Claims that are not General Unsecured Claims.

3.8    <u>Safekeeping and Investment of Trust Assets</u>.  All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution on account of Allowed 3L Notes Claims and Allowed General Unsecured Claims or payment to the Beneficiaries except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any IRS guidelines (including Revenue Procedure 94-45), whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.9    <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and

16

disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a

claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update

the Claims Register maintained in the Chapter 11 Cases throughout the administration of the

Trust. To the extent of any 3L Notes Claims or General Unsecured Claims reflected thereon, the

Claims Register may serve as the Trustee's register of Trust Interests held by Beneficiaries. The

books and records maintained by the Trustee and any records of the Debtors transferred to the

Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines

that the continued possession or maintenance of such books and records is no longer necessary

for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of

the winding down or dissolution of the Trust.

3.10   No Bond Required; Procurement of Insurance. Notwithstanding any state or other

applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt

from giving any bond or other security in any jurisdiction and shall serve hereunder without

bond. The Trustee is hereby authorized, but not required, to obtain all reasonable insurance

coverage for itself, its agents, representatives, employees or independent contractors, including,

without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee

and its agents, representatives, employees or independent contractors under this Agreement. The

cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust

Assets.

## ARTICLE IV

## DISTRIBUTIONS

4.1   Distribution and Reserve of Trust Assets. Following the transfer of Trust Assets

to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate,

and distribute all Trust Assets, subject to the reserves deemed necessary by the Trustee pursuant to this Agreement.

      4.1.1   <u>Distributions</u>.  The Trustee shall cause the Trust to make distributions of its net income (if any) plus all net proceeds from the sale of assets (if any), at least annually, to the Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude distributions to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims.

      4.1.2   <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain a reserve in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with Section 3.4.12 of this Agreement, the Trust may also maintain as necessary the Disputed Claims Reserve with respect to Disputed General Unsecured Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to any General Unsecured Claim.  Any such withheld distribution shall become part of the Disputed Claims Reserve and shall be distributed to the appropriate Holder of an Allowed General Unsecured Claim no later than the first distribution date after a decision is made not to object to the pertinent General Unsecured Claim or the General Unsecured Claim becomes Allowed.  The Trustee need not maintain any of the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and

other funds of the Trust; *provided*, *however*, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

       4.1.3   <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.

       4.1.4   <u>Right to Rely on Professionals</u>.  Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

       4.2   <u>Method and Timing of Distributions</u>.  Distributions to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims will be made from the Trust in accordance with the terms of the Plan and this Agreement; *provided* that no disbursement or distribution shall be made from the Trust until after there has been a final determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC Settlement Consideration minus the UCC Settlement Deduction), which determination shall not occur until such point in time as final amounts have been determined <u>(including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed)</u> in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the <u>Creditors'</u> Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the <u>Creditors'</u> Committee (each as defined in the Plan).  The Trust may engage disbursing agents and other Persons to assist in making distributions.

4.3     <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.  All amounts properly withheld or deducted from distributions to the Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Beneficiary shall be treated as part of the Distribution to such Beneficiary.  To the extent that the operation of the Trust or the liquidation of the Trust Assets creates a tax liability imposed on the Trust, the Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Trust payable without Bankruptcy Court order.

4.4     <u>IRS Forms</u>.  The Trustee may require any Holder of a 3L Notes Claim or General Unsecured Claim to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan or this Agreement.  If a Holder of a 3L Notes Claim or General Unsecured Claim does not provide to the Trustee within ninety (90) days of written request with all documentation, that in the Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirement for such Allowed 3L Notes Claim or Allowed General Unsecured Claim, including a IRS Form W-8 or IRS Form W-9, the distribution on such Allowed 3L Notes Claim or Allowed General Unsecured Claim shall be deemed disallowed and expunged in its entirety and the funds shall become Trust Assets and

redistributed to the other Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims in accordance with the terms of the Plan and this Agreement.

4.5     Unclaimed and Undeliverable Distributions.  Unclaimed property, together with any distributions to Holders of Allowed 3L Notes Claim and Allowed General Unsecured Claims returned as undeliverable, such shall be held by the Trustee in an unclaimed property reserve (the "Unclaimed Property Reserve") for a period of ninety (90) days and may be released by the Trustee prior to the expiration of the ninety (90) days if presentation of proper proof by such holder of its entitlement thereto is presented to the Trustee.  After the expiration of the ninety (90) days, the respective Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims otherwise entitled to such unclaimed property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan or this Agreement, and (a) such Allowed 3L Notes Claims or Allowed General Unsecured Claims shall be deemed disallowed and expunged in their entirety; (b) the funds in respect of such unclaimed property shall become Trust Assets and shall revert to the Trust for all purposes including, but not limited to, for distribution to other Holders of Allowed 3L Notes Claims or Allowed General Unsecured Claims in accordance with the terms of the Plan, Confirmation Order and this Agreement, automatically and without any need for further order of the Bankruptcy Court; and (c) the corresponding Trust Interest of any Beneficiary holding a disallowed 3L Notes Claim or General Unsecured Claim shall be deemed cancelled.  Any such funds that revert to the Trust hereunder shall not be subject to the escheat, abandonment or unclaimed property laws of any federal, state, provincial or local government authority.

4.6     No Responsibility to Attempt to Locate Beneficiaries.  If a distribution is returned to the Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be

made to such Beneficiary unless and until the Beneficiary notifies the Trustee of such Beneficiary's then-current address and taxpayer identification number. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.6.1   <u>Inapplicability of Escheat, Abandoned or Unclaimed Property Laws</u>. Unclaimed property held by the Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, or any state, provincial or local governmental unit.

4.7   <u>Request for Reissuance</u>.   Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Distribution checks not cashed within such ninety-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 4.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under Section 4.5 of this Agreement. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.8   <u>Conflicting Claims</u>.   If any conflicting claims or demands are made or asserted with respect to the Trust Interest of a Beneficiary, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.8.1    The Trustee may elect to cause the Trust to make no payment or distribution with respect to the Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.8.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the Trust Interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.9    In acting or refraining from acting under and in accordance with this Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.10    <u>Priority of Expenses of Trust</u>.  The Trust must pay all of its expenses before making any distributions in respect of any Allowed 3L Notes Claim or Allowed General Unsecured Claim.

**ARTICLE V**

**BENEFICIARIES**

5.1    <u>Interest Beneficial Only</u>.  The ownership of a Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a Trust Interest herein which shall, subject to Section 4.1 of this Agreement and subject to the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a Trust Interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to

24

institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6    <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Distributions.   Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan or in this Agreement.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee.   In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee Liability.   In exercising the rights granted herein, the Trustee shall exercise the Trustee's reasonable best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, Distribution Agent or other disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order of a court of competent jurisdiction (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.   In no event shall the Trustee be liable for indirect, punitive, special, incidental or

26

consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     Limitation of Debtors' Liability. The Debtors or their respective successors shall have no liabilities or obligations to the Beneficiaries, the Trust, or the Trustee (each in its capacity as such), other than the liabilities and obligations expressly contemplated by the Plan.

6.5     Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.6     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.7     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order

of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.8    <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.9    <u>No Liability For Acts Approved by Bankruptcy Court</u>. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust and 3L Notes Claims and the General Unsecured Claims required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.10    <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.11    <u>Indemnification</u>. The Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives,

affiliate, employer and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Trust and solely from the Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust or its Beneficiaries.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud.  The amounts necessary for the indemnification provided in this Section 6.11 (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section 6.11) shall be paid by the Trustee out of the Trust Assets.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee personally for the payment of any such expense or liability.  The indemnification provided in this Section 6.11 shall survive the death, dissolution, incapacity, resignation or removal of the Trustee, Indemnified Party or the termination of the Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

6.11.1  Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this Section 6.9 shall be expenses of the Trust.

The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.11.2 _Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay_.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.9 on submission of invoices for such amounts by the Indemnified Party.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.11.

6.12    _No Implied Obligations_.    The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.13    _Confirmation of Survival of Provisions_.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

**ARTICLE VII**

**TAX MATTERS**

30

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45 and transfer of the UCC Settlement Proceeds to the Trust shall be treated as a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Debtors to the Beneficiaries in satisfaction of their Allowed 3L Notes Claims and Allowed General Unsecured Claims, followed by a transfer of the UCC Settlement Proceeds (other than to the extent the UCC Settlement Proceeds are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the Trust in exchange for their pro rata Trust Interest.  The Beneficiaries shall be treated as the grantors and deemed owners of the Trust Assets (other than to the extent the Trust Assets are allocable to Disputed General Unsecured Claims) for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).  In addition, the Trustee shall file in a timely manner for the Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon.  The Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any Trust Assets allocable to Disputed General Unsecured Claims) will be allocated to the Beneficiaries in accordance with their relative ownership of Trust Interests.  Within a reasonable time following the end of the taxable year, the Trust shall send to each Beneficiary a separate

statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and
will instruct each such Beneficiary to report such items on his/her applicable income tax return.

7.3    <u>Payment of Taxes</u>.  The Trust shall be responsible for payment, from the Trust
Assets, of any taxes imposed on the Trust (including any taxes imposed on any DOF) or the
Trust Assets.  In accordance therewith, any taxes imposed on any DOF or its assets will be paid
from the Trust Assets.

7.4    <u>Tax Treatment of Reserves for Disputed General Unsecured Claims</u>.  The Trustee
may, in the Trustee's sole discretion, determine the best way to report for tax purposes with
respect to any Disputed Claims Reserve, including filing a tax election to treat any and all
Disputed Claims Reserves as a DOF within the meaning of Treasury Regulations
section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the
Trust.  If an election is made to report any Disputed Claims Reserve as a DOF, (i) all parties
(including the Trustee and the Holders of Trust Interests) shall report for U.S. federal, state and
local income tax purposes consistently with the foregoing and (ii) the Trust shall comply with all
federal and state tax reporting and tax compliance requirements of the DOF, including but not
limited to the filing of a separate federal tax return for the DOF and the payment of federal
and/or state income tax due.

7.5    <u>Valuation of Trust Assets</u>.  As soon as possible after the Effective Date, but in no
event later than the due date for timely filing of the Trust's first federal income tax return
(taking into account applicable tax filing extensions), the Trustee shall determine the fair market
value of the UCC Settlement Proceeds, which shall only occur after there has been a final
determination of the amount of the UCC Settlement Proceeds (which shall be equal to the UCC
Settlement Consideration minus the UCC Settlement Deduction), which determination shall not

32

occur until such point in time as final amounts have been determined (including in the case of Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee, until such point in time as final fee applications have been approved and Allowed) in respect of (i) the Ad Hoc Unsecured Noteholder Group Expenses, (ii) the 3L/Unsecured Notes Trustee Expenses, (iii) the Creditors' Committee Member Expenses, and (iv) Allowed Professional Fee Claims of the Professionals retained by the Creditors' Committee (each as defined in the Plan), as of the Effective Date, based on the Trustee's good faith determination and establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors or Reorganized Debtors as applicable, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

8.1     Initial Trustee.  The Trustee has been selected by the Creditors' Committee and its appointment is effective as of the Effective Date of the Plan.  The initial trustee shall be the Trustee.

8.2     Term of Service.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination and dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The

provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3    <u>Removal of Trustee</u>.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court.  In the event of a resignation, the resigning Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that Trustee.

8.5    <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, dissolution, incapacity, liquidation or removal of a Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (a) shall consent to and accept his, her or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her or its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>.  The resignation, death, dissolution, incapacity, liquidation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any distribution to Holders of Allowed 3L Notes Claims and Allowed General Unsecured Claims.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee

hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property.  The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF TRUST

9.1     <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all Trust Assets in accordance with the provisions of the Plan and this Agreement, the Trust shall terminate and dissolve and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     <u>Termination after Five Years</u>.  If the Trust has not been previously terminated and dissolved pursuant to Section 9.2 hereof, no later than five (5) years from the Effective Date

(the "Termination Date"), the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall dissolve and terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement; *provided* that the Termination Date may be extended if the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets.

9.4     No Termination by Beneficiaries.  The Trust may not be terminated and dissolved at any time by the Beneficiaries.

9.5     Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X

## MISCELLANEOUS

37

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> Entity Services (SPV), LLC
> 251 Little Falls Drive
> Wilmington, DE 19808
> Attn: Michelle A. Dreyer (michelle.dreyer@cscglobal.com)
>
> with a copy to its counsel:
>
> [•]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.2.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

10.2.2    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.2.3    <u>Particular Words</u>.    Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The

words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

       10.2.4    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order and this Agreement.

       10.2.5    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

       10.2.6    <u>No Waiver</u>.   No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

       10.2.7    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to cause any relationship created by this Agreement to constitute an association, partnership or joint venture of any kind.

       10.2.8    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.2.9    Further Assurances.  Without limitation of the generality of Section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

10.2.10  Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.2.11  Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to the administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these chapter 11 cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

WeWork Inc. and Affiliated Debtors

By: _____

Name: _____

Title: _____


Entity Services (SPV), LLC, not individually but solely in its capacity as Trustee under this Agreement

By: _____

Name: _____

Title: _____